1 | **AKIN GUMP STRAUSS HAUER & FELD LLP**
2 | SUSAN K. LEADER (SBN 216743)
JOSHUA A. RUBIN (SBN 308421)
3 | sleader@akingump.com
rubinj@akingump.com
4 | 1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
5 | Telephone: 310.229.1000
Facsimile:  310.229.1001

7 | Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,

Plaintiffs,

v.

STEPHAN "SAEED" NOURMAND, an individual; MICHAEL B. NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10,

Defendants.

Case No.:   2:19-cv-05019

### COMPLAINT FOR:

1. **VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(c)**

2. **VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(d), BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(c)**

3. **VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(d), BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(b)**

**DEMAND FOR JURY TRIAL**

Plaintiffs Relevant Group, LLC; 1541 Wilcox Hotel LLC; 6516 Tommie Hotel LLC; and 6421 Selma Wilcox Hotel LLC (collectively "Plaintiffs") allege as follows:

## SUMMARY OF THE ACTION

1.      This case concerns an enterprise of Los Angeles property developers led by patriarch Saeed Nourmand ("Nourmand Enterprise").  Dead-set on expanding their reach and influence, Defendants have crossed the line from tough business practices to outright extortion, threatening competing developers that if they do not accede to Defendants' exorbitant demands, Defendants will bombard them with frivolous environmental litigation.  Through his network of individuals and entities working with him, Saeed Nourmand has conspired to extort millions of dollars from his business rivals.

2.      Nourmand Enterprise accomplishes its goals by targeting competing developers and initiating (or threatening to initiate) sham environmental lawsuits for the sole purpose of delaying the development of competing properties.  Instilling fear of severe economic loss and harm in competing developers, Nourmand Enterprise extracts ransom money from its victims in exchange for their agreement to not pursue what it admits to be sham litigation.

3.      One such target of this scheme is Plaintiff Relevant Group.  Relevant Group develops hotels, restaurants, and entertainment venues in urban markets.  Several years ago, Relevant Group set out to revitalize the Hollywood area with upscale hotels and restaurants.  In 2017, Relevant Group opened its Dream Hollywood Hotel on the corner of Selma Avenue and Cahuenga Boulevard.  It has also received approval from city agencies and begun construction on two additional hotels—the Thompson and Tommie Hotels.  Relevant Group works closely with local leaders and regulators to ensure that any development projects adhere to the City's environmental standards.

4.      Although the construction of these hotels and other projects in the area would have provided an immediate boost to the local economy and helped revitalize the area, Nourmand Enterprise immediately and reflexively stood in opposition.  As Nourmand Enterprise openly admits, the opposition is unrelated to concern over the purported impact any of the projects could have on the environment.  Instead, Defendants use the litigation to extort millions of dollars in what is in effect a ransom fee from competing developers.  Defendants' unlawful profit is of course at the great expense

of the City of Los Angeles and the taxpayers, who are forced to host these sham proceedings until the ransom is paid.

5.      Nourmand Enterprise was successful in its efforts to extort Relevant Group.  After months of fighting the litigation, Nourmand Enterprise agreed to dismiss the claim only after extracting a payment of $5.5 million from Relevant Group.  Tellingly, Nourmand Enterprise did not demand any action to be taken with respect to the "environmental issues" at the heart of the litigation, and instead demanded payment of the $5.5 million ransom fee.

6.      But Nourmand Enterprise's unlawful conduct did not stop there.  Only months after Relevant Group cut the check, Nourmand Enterprise turned its focus on a new project that Relevant Group was developing at 6421 Selma Avenue in Hollywood.  Using the same playbook, Nourmand Enterprise initiated another frivolous lawsuit to oppose the development, again citing trumped-up and baseless "environmental concerns."  When a representative from Relevant Group attempted to reason with Saeed Nourmand by reminding him of the $5.5 million check that had been cut only days ago, Nourmand made it crystal clear that the only way for Relevant Group to move forward with its project was by paying the requested ransom.  As Mr. Nourmand said: "***You know the drill.  It's going to take a check to make this go away.***"

7.      Sadly, Relevant Group is not the only developer that has been victimized by Nourmand Enterprise's extortionate conduct.  Members of Nourmand Enterprise approached another developer in the area, making the same threats to initiate baseless environmental litigation to grind the project to a halt.  When that developer told Nourmand Enterprise that it had the resources to simply sit on the property or forego the development entirely, Nourmand Enterprise immediately backed off its threats.  Of course, by doing so, Nourmand Enterprise revealed it had no genuine motive in seeing any modifications (environmental or otherwise) to the development; to the contrary, its sole interest was in extorting the developer, holding the possibility of delayed development over the developer's head as a threat.

8.      The conduct of Nourmand Enterprise reveals a pattern of coercion, extortion, and other unlawful conduct.  Through its bullying tactics, Defendants have engaged in a pattern of lucrative racketeering activity, at the expense of Plaintiffs and other developers in the Los Angeles area.  Not

only does this scheme of extortion damage the targeted developers, but it also serves as a drain on the City of Los Angeles and the California judicial system, as the City is forced to expend significant resources investigating and defending these meritless claims.  Perhaps most significantly, this extortionate scheme risks delaying or eliminating needed developments that would revitalize the economy in blighted areas in Los Angeles.

9.      Relevant Group has suffered significant damage as the proximate result of Nourmand Enterprise's conduct.  The amount of damages suffered by Relevant Group will be proven at trial, but is believed to be in excess of $100 million.  Relevant Group paid millions of dollars to Nourmand and his co-conspirators as ransom to get them to drop their frivolous claims concerning the Thompson and Tommie Hotels.  Moreover, Nourmand Enterprise's initiation of a lawsuit regarding the 6421 Selma Hotel has put the project at risk of being brought to a screeching halt, and has exposed Relevant Group to risk of loss of financing, and other damages.

## THE PARTIES

10.     Plaintiff Relevant Group, LLC ("Relevant Group") is a Delaware limited liability company, which operates in Los Angeles, California.

11.     Plaintiff 1541 Wilcox Hotel LLC ("Wilcox") is a Delaware limited liability company, which operates in Los Angeles, California.

12.     Plaintiff 6516 Tommie Hotel LLC ("Tommie") is a Delaware limited liability company, which operates in Los Angeles, California.

13.     Plaintiff 6421 Selma Wilcox Hotel LLC ("Selma") is a California limited liability company, which operates in Los Angeles, California.

14.     Plaintiffs Wilcox, Tommie, and Selma are special purpose entities created for the purpose of developing certain properties in the Hollywood area of Los Angeles.  These special purpose entities are all managed by Relevant Group.  Wilcox was formed for the purpose of developing the Thompson Hotel.  Tommie was formed for the purpose of developing the Tommie Hotel.  Selma was formed for the purpose of developing the hotel located at 6421 Selma Ave.

15.     Defendant The Sunset Landmark Investment LLC ("Sunset Landmark") is a California limited liability company, which operates in Los Angeles, California.

16.     Defendant Stephan "Saeed" Nourmand is an individual who resides in and does business in Los Angeles California.  Saeed Nourmand is a manager and/or member of Sunset Landmark.

17.     Saeed Nourmand is in business with his son, Defendant Michael Nourmand.  Michael Nourmand is the President of Defendant Nourmand & Associates, a California corporation that functions as a real estate broker.  On information and belief, although Saeed Nourmand no longer has a formal role at Nourmand & Associates, Nourmand & Associates holds Saeed Nourmand out as the "founder" of Nourmand & Associates.

18.     Together with his son, Saeed Nourmand operates with Sunset Landmark and Nourmand & Associates as a unified enterprise that develops and sells real estate in the Los Angeles area.  Nourmand Enterprise exists separate and apart from the unlawful and extortionate acts of racketeering described in this complaint.

19.     Plaintiffs are unaware of the true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiffs will seek leave of the Court to amend this pleading to set forth the true names and capacities of said Doe Defendants when the same are ascertained.  Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, or was acting in concert with, and with the permission, approval, and authorization of, the specifically named Defendants.

**JURISDICTION AND VENUE**

20.     This Court has jurisdiction over the subject matter of Plaintiffs' Complaint under 28 U.S.C. § 1331 and § 1337, because it arises under the Racketeering Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. § 1964(a).

21.     The conduct alleged in this Complaint occurred in interstate commerce, and has substantially affected and will continue to substantially and directly affect interstate commerce.

22.     The Court has personal jurisdiction over the Defendants and venue is proper in the Central District of California because: (1) the Defendants reside and/or conduct business in the State of

California and at least one of the Defendants resides and/or conducts business in this District; and (2) substantial parts of the events or omissions giving rise to the claims alleged herein occurred in this District.

## DEFENDANTS' UNLAWFUL CONDUCT

### *Defendants' Goal: Shake Down Developers for Millions of Dollars by Threatening and Initiating Frivolous Environmental Litigation.*

23.    For years, Saeed Nourmand and the other Defendants have been engaged in a scheme to use the threat of frivolous environmental litigation against competing developers in the Los Angeles area to extort millions of dollars from those developers.  This scheme has proven lucrative, as Defendants have obtained millions of dollars by holding development projects hostage.

24.    While expressing opposition to a project—either through speaking publicly on the subject or initiating litigation—is lawful, Defendants' pattern of reflexively initiating and pursuing sham litigation regardless of the project's size, merit, or consequence to the residents of Los Angeles is not.  Defendants pursue these frivolous challenges by initiating litigation either directly or indirectly under state statutes such as the California Environmental Quality Act ("CEQA").  Defendants' goal in these actions is not to reduce any adverse environmental impact of these developments, but simply to pad their own wallets.

25.    In doing so, Defendants exploit CEQA for their own monetary profit and gain.  CEQA was enacted in 1970 in an effort to ensure that all physical developments were reviewed for significant environmental impact, and to prevent or minimize damage to the environment through development of project alternatives, mitigation measures, and mitigation monitoring.  CEQA requires that local agency review and ultimately approve development proposals, taking into consideration the goal of preventing or mitigating environmental impact.

26.    In determining whether to approve a project, the City of Los Angeles (the "City") and its agencies are required by law to consider various factors and guidelines.  To this end, the City has adopted California's state-wide CEQA guidelines as its own.  The City has also issued guidance to assist both developers and City staff in assessing the environmental impact of potential developments.

27.     Under both state and local law, no development may be approved that would cause significant environmental effects if there are feasible alternatives or mitigation measures that would lessen those effects.  For that reason, any project approved by the City is necessarily found to have no significant environmental effect.

28.     Although CEQA's objective is laudable, Defendants' misuse of the legislation for their own monetary (and anti-competitive) gain is not.  For each target they identify, Defendants delay, oppose and, if necessary, eliminate the project by painting it as environmentally harmful.  After first objecting to the projected development, Defendants then initiate meritless litigation challenging the City's determination that the project may proceed.  As explained in further detail below, Nourmand and the other Defendants have brazenly admitted that the objective of their litigation is not to address environmental concerns, but to extract money and other competitive advantages from their victims.

29.     This sham litigation results in a huge expenditure of resources not just for competing owners/developers, who are required to respond to hundreds or thousands of pages of drummed up environmental comments and prepare environmental assessments that would not otherwise be required, but also for the residents of Los Angeles, and the judicial system that is forced to expend time and money defending these proceedings.

30.     These actions also delay development for years, causing owners/developers to lose financial backing, to incur costs associated with holding undeveloped land for an extended time, and to incur escalating construction costs.  This environmental and zoning opposition bottlenecks the development cycle, resulting in limited development, less competition, less commerce, lower transient occupant tax ("TOT") revenue, and lost rent revenue for the City.

31.     Despite Relevant's expenditure of significant resources to obtain approval on its developments, Defendants have engaged in a pattern of using the threat of subsequent litigation in order to extract what is effectively a ransom payment from Relevant and other developers.  Knowing the importance of having City approval for developments, Defendants have abused the judicial system by filing frivolous lawsuits challenging the City's approval of these developments and determination that the developments do not have a significant environmental impact.

32.     Sham environmental litigation obstructs and in some instances destroys development. Regardless of the merits (or lack thereof), the mere filing of the lawsuit delays funding, diverts resources, and pushes back the start date for construction, potentially by years.  By filing these lawsuits, Defendants have delayed, and in some instances completely obstructed, development in areas that are in dire need of improvement.  Defendants then exploit this economic pressure by demanding large sums of money in order to drop their sham claims.

33.     The abusive and extortionate nature of CEQA litigation is well-documented.  For example, a 2018 article published in the Hastings Environmental Law Journal finds that there is "widespread abuse of CEQA lawsuits for nonenvironmental purposes" and that CEQA litigation is often initiated not by citizens truly concerned about environmental impact, but by "business competitors" or "'bounty hunter' lawyers seeking quick cash settlements."

### *Thompson Project and Litigation*

34.     On October 3, 2014, 1541 Wilcox Hotel LLC ("Wilcox") filed an application with the City relating to property owned by Wilcox located at 1523-1541 North Wilcox Avenue, in the Hollywood area of Los Angeles.  The proposed project was the creation of a hotel to be called the Thompson Hotel.  The proposed project involved the demolition of the existing structures on the project site and the construction of a hotel   The application sought a vesting zone change (to permit residential and commercial use); a height district change to increase the floor area ratio ("FAR") of the property; a zoning administrator's adjustment; and a site plan review.

35.     In March 2015, the City published the first Initial Study and mitigated negative declaration ("MND") regarding the Thompson Hotel project.  An Initial Study is a preliminary analysis prepared by and for the City as the lead agency to determine whether an Environmental Impact Report ("EIR") must be prepared, or whether a negative declaration or an MND is sufficient.  In its first Initial Study and MND, the City concluded that the Thompson Hotel would not have a significant environmental impact, so an EIR was not required.

36.     Between March and April 2015, Wilcox made various revisions to the Thompson Hotel development plan to address certain comments from the City and residents.  After reviewing and analyzing the revised project, the City concluded that its proposed mitigation measures would reduce

any potentially significant adverse environmental effects to a level of insignificance.  Specifically, the City considered approximately 90 different environmental factors, and concluded that the vast majority of those factors either would not be impacted by the proposed project, or that any impact would be less than significant.  For those factors that the City concluded had the potential to be significantly impacted by the project, the City proposed various changes to the project that would mitigate the potential environmental impacts.

37.     Wilcox adopted all of the City's requested mitigation measures in its project, thus eliminating any potential significant environmental impacts identified by the City.

38.     On or around September 10, 2015, the Los Angeles City Planning Commission ("Commission") convened a meeting.  At that meeting, the Commission took various actions with respect to the Thompson Hotel project, including approving a vested zone and height district change, approving a site plan review, and adopting the mitigated negative declaration described above.  The Commission also recommended that the City Council approve these changes and adopt the mitigated negative declaration.  In early February 2016, the City Council followed the Commission's recommendation and approved the project, including the zoning and height district changes sought by Wilcox.  In doing so, the City Council approved the mitigated negative declaration, finding that the project did not pose a risk of significant environmental impact.

39.     Despite the rigorous process by which the City and Commission reviewed and approved Wilcox's proposed development of the Thompson Hotel, Defendants nonetheless saw an opportunity to delay its competitor and extort millions of dollars.  On March 3, 2016, Defendant The Sunset Landmark Investment LLC ("Sunset Landmark") initiated a lawsuit against the City of Los Angeles, naming Wilcox as a real party in interest.  The lawsuit alleged that notwithstanding the City's detailed findings, the Thompson Hotel would cause "significant, unmitigable impacts to the environment."  The lawsuit also alleged that the City should have required a full EIR prior to approval.  Sunset Landmark was represented by Robert P. Silverstein of The Silverstein Law Firm, APC.

40.     In litigating its claim, Sunset Landmark primarily pursued the theory that Wilcox's development plan for the Thompson Hotel exceeded certain "zoning density" requirements allegedly imposed by the 1988 Hollywood Community Plan Revision.  However, this argument was objectively

meritless.  The Los Angeles Municipal Code expressly permitted heighted density for projects like the Thompson Hotel that are designated "Regional Commercial."  Sunset Landmark also advanced the frivolous theory that earlier zoning decisions were "permanent" legislation, and were "not something the City was free to cancel at will."  Of course, any decision by a government body such as the City Council may be subsequently amended or revoked by that same body, so this argument on its face lacked merit.

41.     In the Thompson Hotel litigation, Sunset Landmark further argued that there was a "fair argument" that the Wilcox development plan may have certain environmental impacts, including that the project "may" have construction or operational noise impacts, traffic impacts, and "land use" impacts.  In doing so, Sunset Landmark no doubt sought to exploit CEQA's low threshold standard of review to invalidate this well-studied project.  Sunset Landmark knew the challenge was frivolous because the administrative record contained no "substantial evidence" in the form of expert analysis (or any other evidence) to support its claims, much less sufficient evidence to contradict the City's detailed findings.

42.     The reason why Sunset Landmark advanced these meritless arguments is clear: to delay a competing development and unlawfully extort millions of dollars from Wilcox and its owners to which Defendants were not entitled.  Defendants knew that Wilcox was economically dependent on the development of the Thompson Hotel, and it took advantage of that fact.  Sunset Landmark therefore exploited CEQA and zoning regulations for its own economic and competitive gain, and for the gain of Nourmand Enterprise more generally.  As described below, Plaintiffs succumbed to the threats, and ultimately paid Defendants millions of dollars.

43.     After filing this meritless and frivolous claim against Wilcox, Defendants then set out to extract a payment from Wilcox and Relevant Group.  Defendants informed representatives of Wilcox that they would continue to pursue and litigate these lawsuits unless Wilcox agreed to pay Defendants a significant amount of money.

44.     Although the Thompson Hotel litigation lacked merit, in order to escape the untenable legal and financial situation that Defendants had created, Wilcox succumbed to Defendants' threats and paid Sunset Landmark the millions of dollars demanded.

45.     Specifically, on or around January 8, 2018, Wilcox paid Sunset Landmark $5.5 million as a ransom to get Sunset Landmark to drop its claims.  Notably, Sunset Landmark did not demand any action to be taken regarding the purported environmental concerns at the core of Defendants' lawsuit.  As explained above, the primary objection that Sunset Landmark raised regarding the Thompson Hotel concerned the density of the project and its Floor Area Ratio ("FAR").  Yet Sunset Landmark demanded no concessions relating to either of these points.   Similarly, despite the fact that, in litigating the Wilcox case, Sunset Landmark was ostensibly concerned with construction noise, Sunset Landmark did not demand any mitigation of construction noise.

***Tommie Project and Litigation***

46.     On January 28, 2016, 6516 Tommie Hotel LLC ("Tommie") filed an application with the City relating to property owned by Tommie located at 6516-6526 West Selma Avenue, in the Hollywood area of Los Angeles.  The proposed project involved the construction of a new mixed use hotel consisting of 212 guest rooms and ground and rooftop restaurants.  The application sought a vesting zone change, a height district change, a site plan review, and a conditional use permit for the on-site sale and dispensing of alcohol.

47.     On December 20, 2016, the City issued an initial study and a proposed MND for the Tommie project.  After analyzing the potential environmental impacts of the project, the City proposed that an MND be adopted because the mitigation measures it proposed would reduce any potential significant adverse environmental effects to a level of insignificance.  Specifically, the City considered approximately 90 different environmental factors, and concluded that the vast majority of those factors either would not be impacted by the proposed project, or that any impact would be less than significant.  For those factors that the City concluded had the potential to be significantly impacted by the proposed project, the City proposed various changes to the project that would mitigate the potential environmental impacts.

48.     On or around January 26, 2017, the Commission held a meeting at which it considered the Tommie project.  The Commission found that, with the imposition of certain mitigation measures, there was no substantial evidence that the project would have a significant effect on the environment, and that those mitigation measures had been made enforceable conditions of the project.  The

Commission also approved the Tommie project site plan and conditional use permit for alcohol sale, and recommended that that the City Council adopt the zone and height district changes requested in the application.  On or around May 10, 2017, the City Council followed the recommendation of the Commission and approved the Tommie project MND and the requested zone and height district changes.

49.     Despite the rigorous process by which the City and Commission reviewed Tommie's proposed development and determined that, as modified, it would not pose the risk of a significant environmental impact, Defendants nonetheless seized the opportunity to extort millions of dollars in ransom.

50.     On June 9, 2017, Sunset Landmark initiated a lawsuit against the City of Los Angeles and the City Community Redevelopment Agency ("CRA/LA"), naming Tommie as a real party in interest.  Sunset Landmark was represented by Robert P. Silverstein of The Silverstein Law Firm, APC.

51.     The lawsuit pertaining to the Tommie Hotel falsely alleged that the Tommie Hotel development would have a significant negative impact on the environment.  Defendants' lawsuit was not filed to address environmental concerns.  Defendants' sole desire was to harm a competing project and extort money from Tommie and its owners to which Defendants were not entitled.  Defendants knew that Tommie was economically dependent on the development of the property, and it exploited that fact.  Sunset Landmark lacked a good faith basis for initiating the lawsuit against the City of Los Angeles concerning the Tommie property.

52.     Defendants ultimately dismissed the Tommie litigation at the same time it dismissed Thompson Hotel litigation, based on the payment to Sunset Landmark of the $5.5 million ransom.

53.     Not surprisingly, the terms of this payment were divorced from the earlier-touted purported environmental issues with the Tommie Hotel.  The fact that Defendants dismissed their CEQA litigation regarding the Tommie Hotel without any alterations made to the proposed property development demonstrates the sham nature of the litigation.  Defendants' sole objective in filing the lawsuit was to extort money.  As soon as Plaintiffs agreed to pay Defendants the millions of dollars demanded, Defendants immediately dismissed their "environmental" lawsuits.

//

1    *Attempted Extortion of Schrader Hotel Owners*

2          54.    Defendants' scheme to extort developers through the filing of meritless litigation

3    extended beyond Wilcox and Tommie.  Indeed, Plaintiffs are informed and believe, and on that basis

4    allege, that Defendants have approached other developers and have threatened to file frivolous

5    objections and lawsuits related to their properties unless those developers agreed to pay the monies

6    demanded by Defendants.

7          55.    For example, Plaintiffs are informed and believe that Defendants approached owners of

8    a competing property on Schrader Boulevard (the "Schrader Owners") in Hollywood that was in the

9    process of seeking approval from the City for development.  Defendants threatened the Schrader

10   Owners that if the Schrader Owners did not pay Defendants a substantial amount of money,

11   Defendants would initiate CEQA litigation against the City relating to the Schrader development,

12   causing the Schrader Owners to suffer significant delay and expense relating to that property.

13         56.    However, unlike the situation with the Wilcox and Tommie properties, Defendants'

14   playbook did not work on the Schrader Owners.  On information and belief, the Schrader Owners

15   informed Defendants that unlike other owners/developers, they could afford to simply keep the

16   property undeveloped and that they would prefer to pay the money to fight the CEQA action regardless

17   of the delay than to pay anything to Defendants.  Because the Defendants realized that they lacked

18   leverage to extort money from the Schrader Owners, Defendants never initiated any litigation against

19   the Schrader Owners or the City relating to the Schrader property.

20         57.    If Defendants were truly concerned about the environmental effect of the Schrader

21   property, they would not have been dissuaded by the Schrader Owners' statement that they would not

22   pay Defendants the money demanded, and would instead have initiated the CEQA litigation.

23   Defendants never initiated this litigation because they do not care about the environmental impacts of

24   these projects, but merely seize on the opportunity to use the threat of delay in development to extort

25   money from those developers who are unable to afford the delay.

26   *Selma Project and Litigation*

27         58.    On July 22, 2016, prior to Sunset Landmark's initiation of the litigation against the

28   City involving Tommie, Plaintiff 6421 Selma Wilcox Hotel LLC ("Selma LLC") filed an application to

develop a property owned by Selma LLC located at 6421 W. Selma Avenue in the Hollywood area of Los Angeles.  The proposed project was a new 8-story mixed-use building with 114 guest rooms.  Selma LLC's application sought, among other things, a vesting zone change, a height district change, a site plan review, and a conditional use permit for the on-site sale and dispensing of alcohol.

59.     On July 12, 2018, the Commission held a public hearing concerning the Selma LLC property.  Approximately one month later, on August 17, 2018, the Commission issued a decision letter in which it recommended an MND, finding that, with mitigation efforts enacted, there was no substantial evidence that the Selma LLC project would have a significant effect on the environment.  In this same letter, the Commission also issued the conditional use permit for the on-site sale and dispensing of alcohol, and recommended that the City grant the requested vesting zone change and height district change.

60.     On November 17, 2018, the Planning and Land Use Management Committee of the Los Angeles City Council convened an additional hearing on the Selma LLC property.  Several months later, on March 5, 2019, the City Council adopted the MND and granted the requested zone and district changes for the Selma LLC property.

61.     Again, Defendants seized on the opportunity to extract millions of dollars from Selma LLC.  On April 2, 2019, Sunset Landmark initiated yet another lawsuit against the City of Los Angeles, this time naming Selma LLC as a real party in interest.  The lawsuit alleged that notwithstanding the City's detailed findings, the Selma LLC project would cause significant, unmitigable impacts to the environment.  The lawsuit also alleged that the City should have required a full EIR prior to approval.  Once again, Sunset Landmark was represented by Robert P. Silverstein of The Silverstein Law Firm, APC.

62.     Notwithstanding the statements made to the contrary by Sunset Landmark in its complaint, Defendants were not in fact concerned with the environmental impacts of the Selma LLC project.  To the contrary, Defendants desired to extort money from Selma LLC and its owners to which Defendants were not entitled.  Defendants knew that Selma LLC was economically dependent on the development of the property, and it exploited that fact and initiated a lawsuit against the City of Los

Angeles concerning the Selma LLC property in order to stop Selma LLC from proceeding with the development.

63.     Several facts compel the conclusion that the Selma LLC litigation was initiated to extort money from Selma.    Defendant Sunset Landmark, the entity that initiated the Selma LLC litigation, and Defendant Saeed Nourmand (who owns and/or controls Sunset Landmark) own property that abuts the properties that were sought to be developed by Wilcox and Tommie.  But these Defendants' properties do *not* border the property sought to be developed by Selma LLC, which is located on a completely different block.  Furthermore, although Defendants have targeted certain developers that it perceives to be potential victims for its extortion scheme, it has ignored certain other developers with virtually identical project descriptions in the same area.  Were Defendants truly interested in preventing or mitigating environmental impact, they would certainly have objected to these other projects, which would have had similar environmental impact, or initiated litigation to halt their development.

64.     Of course, the reason Defendants had no interest in these other projects is because Defendants' scheme is not premised in any way on environmental impact.  Rather, Defendants target developers that are vulnerable to extortion.

65.     Shortly after Sunset Landmark initiated the lawsuit against Selma LLC, Richard Heyman, a member of Selma LLC, met with Defendant Nourmand.  This meeting had been scheduled prior to Sunset Landmark's initiation of the Selma LLC litigation.  At that meeting, Heyman asked Nourmand why Sunset Landmark was suing Selma LLC, given that (1) neither Sunset Landmark nor Nourmand owned property abutting the proposed Selma LLC development; (2) there were no justifiable environmental objections to the property development; (3) Sunset Landmark had not objected to, or initiated any litigation regarding, any other similar developments; and (4) Sunset Landmark had just dismissed its lawsuit against Wilcox and Tommie after it received the millions of dollars demanded.

66.     In a moment of honesty, Nourmand responded: ***"You know the drill.  It's going to take a check to make this go away."***  Defendants thus openly admit that the threatened litigation relating to the Selma LLC project is for the sole purpose of extorting money from Selma LLC, and not based on any purported concern regarding the environmental impacts of the Selma LLC property.

**FIRST CLAIM FOR RELIEF**

**Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)**

**(Against All Defendants)**

67.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 66, as if fully set forth herein.

68.     Relevant Group, LLC; 1541 Wilcox Hotel LLC; 6516 Tommie Hotel LLC; and 6421 Selma Wilcox Hotel LLC, are each a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

69.     Each of the Defendants is a "person" under 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d).

70.     Defendants Saeed Nourmand, Michael Nourmand, Sunset Landmark Investment, and Nourmand & Associates, along with non-defendant enterprise member the Silverstein Law Firm APC, and all of their affiliated entities, agents, and/or any subsidiaries, constitute an "enterprise" engaged in, and whose activities affect, interstate commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) ("Nourmand Enterprise").  Nourmand Enterprise is an informal association that operates for the common purpose of developing and selling real estate in Los Angeles.  To further its goals, Nourmand Enterprise has engaged in a scheme of extorting money from Los Angeles developers by threatening to file or maintain meritless environmental lawsuits relating to the developers' projects, unless the developers pay members of Nourmand Enterprise significant money.  Nourmand Enterprise exists separate and apart from the pattern of racketeering activity alleged and the Defendants themselves.

71.     As part of Nourmand Enterprise, each of the Defendants was and is associated with Nourmand Enterprise and has conducted or participated, directly or indirectly, in the management and operation of the affairs of Nourmand Enterprise in relation to Plaintiffs and other developers, including, but not necessarily limited to, owners and developers of certain property located on Schrader Boulevard, through a pattern of activity unlawful under 18 U.S.C. § 1961(1)(A) and (B), including multiple, repeated, and continuous acts or threats involving extortion and/or attempted extortion, chargeable under 18 U.S.C. § 1951 and California Penal Code §§ 518, 522, 524.

72.     Members of Nourmand Enterprise, including Sunset Landmark Investment and Saeed Nourmand, have threatened Plaintiffs and other developers with economic harm and harm to their

property by threatening to ruin development plans by bringing baseless lawsuits and challenges for the purpose of delaying and frustrating developments.  These threats have caused developers to lose business partners or financing, as well as incur substantial legal fees to fight the baseless challenges.

73.     Out of a fear of the economic harm that would result from Defendants' pursuit of baseless litigation, and in response to Defendants' extortionate threats, Plaintiffs 1541 Wilcox Hotel LLC and 6516 Tommie Hotel LLC paid Defendants a significant amount of money.

74.     Members of Nourmand Enterprise, including Sunset Landmark Investment and Saeed Nourmand, additionally threatened and attempted to extort money from 6421 Selma Wilcox Hotel LLC.  After Sunset Landmark Investment filed a meritless lawsuit related to the Selma Wilcox property, Nourmand stated to a representative of 6421 Selma Wilcox Hotel LLC: "You know the drill. It's going to take a check to make this go away," demonstrating that the lawsuit was motivated by a desire to extort money from Plaintiffs, rather than a good faith belief in the merit of the lawsuit, or a desire to cure or mitigate any environmental impacts in the 6421 Selma Wilcox development.

75.     Defendants have carried out their threats by filing sham CEQA lawsuits, and have threatened further sham CEQA litigation unless developers agree to pay Defendants millions of dollars.

76.     Defendants also have raised sham challenges against other developers.  On information and belief, Defendants approached owners and developers of certain property located on Schrader Boulevard, and threatened to initiate meritless CEQA litigation unless those owners paid Defendants significant money.  The only reason such litigation was not initiated is because the owners of the Schrader property were able to stand up to Defendants by credibly informing them that the Schrader owners could afford to allow the property to remain undeveloped.

77.     The threats described above have instilled reasonable fear of economic harm in Plaintiffs and other developers, leading some developers to capitulate to Defendants' demands.

78.     Defendants have employed unlawful means to extort Plaintiffs and other developers, including but not limited to filing sham lawsuits and challenges to various development projects.

79.     Defendants' actions have been for the purpose of seeking unlawful ends.  Defendants have no right to demand money from Plaintiffs and other developers.

80.     As a result of their actions, Defendants have obtained property within the meaning of 18 U.S.C. § 1951, including money.

81.     As a result of their actions, Defendants have obtained property and consideration for purposes of California Penal Code § 518, including money.

82.     These acts or threats form a pattern of racketeering activity as they all have occurred within 10 years of one another, are related insofar as they involve the same participants, share the same purpose of forcing developers to cave to the demands made to enrich Nourmand Enterprise, and employ the same methods, including, but not limited to pursuing sham opposition to and litigation over projects.

83.     Using the threat of injury to Plaintiffs' business interests, including the Thompson, Tommie, and Selma Wilcox projects, Defendants have conspired and attempted to take property from Plaintiffs.

84.     Defendants' activities described herein were taken knowingly and willfully and have obstructed, delayed, or otherwise affected commerce.

85.     Defendants' conduct was designed to, and has in fact, injured Plaintiffs.  As a direct result of Defendants' unlawful and ongoing threats of extortion in violation of 18 U.S.C. § 1951 and Cal. Penal Code §§ 518, 522, and 524, Plaintiffs have paid money to Defendants, have incurred attorneys' fees and costs in litigating meritless claims, and have lost funding and experienced delays in hotel projects.

### SECOND CLAIM FOR RELIEF

**Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.**

**§ 1962(d), by Conspiring to Violate 18 U.S.C. § 1962(c)**

**(Against All Defendants)**

86.     Plaintiffs incorporate the allegations contained in Paragraphs 1 through 85, as if fully set forth herein.

87.     Relevant Group, LLC; 1541 Wilcox Hotel LLC; 6516 Tommie Hotel LLC; and 6421 Selma Wilcox Hotel LLC, are each a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

88.     Each of the Defendants is a "person" under 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d).

89.     Defendants Saeed Nourmand, Michael Nourmand, Sunset Landmark Investment, and Nourmand & Associates, along with non-defendant enterprise member the Silverstein Law Firm APC, and all of their affiliated entities, agents, and/or any subsidiaries, constitute Nourmand Enterprise. Nourmand Enterprise engaged in, and its activities affect, interstate commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  Nourmand Enterprise is an informal association that operates for the common purpose of developing and selling real estate in Los Angeles.  To further its goals, Nourmand Enterprise has engaged in a scheme of extorting money from Los Angeles developers by threatening to file or indeed filing meritless environmental lawsuits relating to the developers' projects, unless the developers pay members of the Nourmand Enterprise significant money.  Nourmand Enterprise exists separate and apart from the pattern of racketeering activity alleged and the Defendants themselves.

90.     Each of the Defendants was and is associated with Nourmand Enterprise, and they have all conspired among themselves within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c).  Specifically, each of the Defendants agreed and intended, and/or adopted the goal of furthering or facilitating the following endeavor: to conduct or participate, directly or indirectly, in the management and operation of the affairs of Nourmand Enterprise in relation to Plaintiffs and other developers, including, but not necessarily limited to, the Thompson, Tommie, and Selma Wilcox projects, through a pattern of activity unlawful under 18 U.S.C. § 1961(1)(A) and (B), including multiple, repeated, and continuous acts or threats involving extortion and/or attempted extortion, chargeable under 18 U.S.C. § 1951 and California Penal Code §§ 518, 522, 524.  Defendants engage in this endeavor with the purpose of obtaining money from Plaintiffs.

91.     Defendants have threatened Plaintiffs and other developers with economic harm and harm to their property by threatening to ruin development plans by bringing baseless lawsuits and challenges for the purpose of delaying and frustrating developments.  These threats have caused developers to lose business partners or financing, as well as incur substantial legal fees to fight the baseless challenges.

92.     Defendants have carried out their threats by filing sham lawsuits, and have threatened further sham CEQA litigation unless developers agree to pay Defendants millions of dollars.

93.     Defendants also have raised sham challenges against other developers.  On information and belief, Defendants approached certain property owners and developers located on Schrader Boulevard, and threatened to initiate meritless CEQA litigation unless those owners paid Defendants significant money.  The only reason this litigation was not initiated is because the owners of the Schrader property were able to stand up to Defendants by credibly informing them that the Schrader owners could afford to allow the property to remain undeveloped.

94.     The threats described above have instilled reasonable fear of economic harm in Plaintiffs and other developers, leading some developers to capitulate to Defendants' demands.

95.     Defendants have employed unlawful means to extort Plaintiffs and other developers, including but not limited to filing sham lawsuits and challenges to various development projects.

96.     Defendants' actions have been for the purpose of seeking unlawful ends.  Defendants have no right to demand money from Plaintiffs and other developers.

97.     As a result of their actions, Defendants have obtained property within the meaning of 18 U.S.C. § 1951, including money.

98.     As a result of their actions, Defendants have obtained property and consideration for purposes of Penal Code 518, including money.

99.     These acts or threats form a pattern of racketeering activity as they all have occurred within 10 years of one another, are related insofar as they involve the same participants, share the same objective of forcing developers to cave to the demands made to enrich Nourmand Enterprise, and employ the same methods, including, but not limited to pursuing sham opposition to and litigation over projects in an effort to hold projects hostage unless Plaintiffs and the other developers accede to Defendants' demands.

100.    Using the threat of injury to Plaintiffs' business interests, Defendants have conspired and attempted to take property from Plaintiffs.

101.    Defendants' activities described herein were taken knowingly and willfully and have obstructed, delayed, or otherwise affected commerce.

102.    Defendants' conduct was designed to, and has in fact, injured Plaintiffs.  As a direct result of Defendants' unlawful and ongoing threats of extortion in violation of 18 U.S.C. § 1951 and

Cal. Penal Code §§ 518, 522, and 524, Plaintiffs have paid money to Defendants, have incurred attorneys' fees and costs in litigating meritless claims, and have lost funding and experienced delays in hotel projects.

## THIRD CLAIM FOR RELIEF

### Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d), by Conspiring to Violate 18 U.S.C. § 1962(b)

### (Against All Defendants)

103.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 102, as if fully set forth herein.

104.    Relevant Group, LLC; 1541 Wilcox Hotel, LLC; 6516 Tommie Hotel LLC; and 6421 Selma Wilcox Hotel LLC, are each a "person" under 18 U.S.C. §§ 1961(3) and 1964(b).

105.    Each of the Defendants is a "person" under 18 U.S.C. §§ 1961(3), 1962(b), and 1962(d).

106.    Defendants Saeed Nourmand, Michael Nourmand, Sunset Landmark Investment, and Nourmand & Associates, along with non-defendant enterprise member the Silverstein Law Firm APC, and all of their affiliated entities, agents, and/or any subsidiaries, constitute Nourmand Enterprise. Nourmand Enterprise engaged in, and its activities affect, interstate commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  Nourmand Enterprise is an informal association that operates for the common purpose of developing and selling real estate in Los Angeles.  To further its goals, Nourmand Enterprise has engaged in a scheme of extorting money from Los Angeles developers by threatening to file or indeed filing meritless environmental lawsuits relating to the developers' projects, unless the developers pay members of the Nourmand entity significant money.  Nourmand Enterprise exists separate and apart from the pattern of racketeering activity alleged and the Defendants themselves.

107.    Each of the Defendants were and are associated with Nourmand Enterprise, and they have all conspired among themselves within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(b). Specifically, each of the Defendants agreed and intended, and/or adopted the goal of furthering or facilitating, the following endeavor: to conduct or participate, directly or indirectly, in the

management and operation of the affairs of Nourmand Enterprise in relation to Plaintiffs and other developers, including, but not necessarily limited to, the Thompson, Tommie, and Selma Wilcox projects, through a pattern of activity unlawful under 18 U.S.C. § 1961(1)(A) and (B), including multiple, repeated, and continuous acts or threats involving extortion and/or attempted extortion, chargeable under 18 U.S.C. § 1951 and California Penal Code §§ 518, 522, 524.  Defendants engage in this endeavor with the purpose of obtaining money from Plaintiffs.

108.    Defendants have threatened Plaintiffs and other developers with economic harm and harm to their property by threatening to ruin development plans by bringing baseless lawsuits and challenges for the purpose of delaying and frustrating developments.  These threats have caused developers to lose business partners or financing, as well as incur substantial legal fees to fight the baseless challenges.

109.    Defendants have carried out their threats by filing sham lawsuits, and have threatened further sham CEQA litigation unless developers agree to pay Defendants millions of dollars.

110.    Defendants also have raised sham challenges against other developers.  On information and belief, Defendants approached certain property owners and developers located on Schrader Boulevard, and threatened that they would initiate meritless CEQA litigation regarding that property, unless those owners paid Defendants significant money.  The only reason this litigation was not initiated is because the owners of the Schrader property were able to stand up to Defendants by credibly informing them that the Schrader owners could afford to allow the property to remain undeveloped.

111.    These threats have instilled reasonable fear in Plaintiffs and other developers of economic harm, leading many developers to capitulate to Defendants' demands.

112.    Defendants have employed unlawful means to extort Plaintiffs and other developers, including but not limited to filing sham lawsuits and challenges to the project.

113.    Defendants' actions have been for the sole purpose of seeking unlawful ends.  Defendants have no right to demand money from Plaintiffs or other developers.

114.    As a result of their actions, Defendants have obtained property within the meaning of 18 U.S.C. § 1951, including money.

115.    As a result of their actions, Defendants have obtained property and consideration for purposes of Penal Code § 518 including money.

116.    Defendants have conspired and attempted to take property from Plaintiffs, including money.

117.    Defendants' activities described herein were taken knowingly and willfully, and have obstructed, delayed, or otherwise affected commerce.

118.    Defendants' conduct was designed to, and has in fact, injured Plaintiffs.  As a direct result of Defendants' unlawful and ongoing threats of extortion in violation of 18 U.S.C. § 1951 and Cal. Penal Code §§ 518, 522, and 524, Plaintiffs have paid money to Defendants, have incurred attorneys' fees and costs in litigating meritless claims, and have lost funding and experienced delays in hotel projects.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Relevant Group, LLC; 1541 Wilcox Hotel, LLC; 6516 Tommie Hotel LLC; and 6421 Selma Wilcox Hotel LLC respectfully request that the Court issue the following relief:

A. Defendants and their agents be enjoined from engaging in further extortion and attempted extortion with respect to the Selma Wilcox Hotel project;

B. Damages against Defendants, jointly and severally, for a sum of money equal to the amount of damages Plaintiffs have sustained or will sustain, in an amount to be proven at trial, but believed to be in excess of $100 million (trebled pursuant to 18 U.S.C. § 1964(c));

C. Prejudgment interest;

D. Costs of suit incurred, including all costs, expenses, attorneys' and experts' fees;

E. Punitive damages; and

F. Such other relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury.

Dated:  June 10, 2019                    **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                        Susan K. Leader
                                        Joshua A. Rubin

                                        By: _____*s/* Susan Kay Leader_____
                                                    Susan Leader
                                             Attorneys for Plaintiffs