1  JAYESH PATEL(SBN 132939)
   jayesh.patel@gmlaw.com
2  KATHLEEN C. HIPPS (SBN 268019)
   kathleen.hipps@gmlaw.com
3  GEORGIANA NIKIAS (SBN 283718)
   georgiana.nikias@gmlaw.com
4  **GREENSPOON MARDER LLP**
   1875 Century Park East, Suite 1900
5  Los Angeles, California 90067
   Telephone:  323.880.4520
6  Facsimile:  954.771.9264

7  Attorneys for Defendants
   STEPHAN "SAEED" NOURMAND, and
8  THE SUNSET LANDMARK INVESTMENT
   LLC

9

10                  **UNITED STATES DISTRICT COURT**

11           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12  RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHAN "SAEED" NOURMAND, an individual; MICHAEL B. NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, <br><br> Defendants. | **Case No.:  2:19-cv-05019-ODW** <br><br> [Hon. Judge Otis D. Wright, II] <br><br> **DEFENDANTS STEPHAN NOURMAND AND THE SUNSET LANDMARK INVESTMENT, LLC'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL OF RECORD** <br><br> [*Notice of Motion and Motion for Sanctions; Declarations of Jayesh Patel, Kathleen Hipps, Saeed Nourmand, Myra Nourmand; Request for Judicial Notice Filed Concurrently Herewith; [Proposed] Order Submitted Concurrently Herewith*] <br><br> Date:          November 25, 2019, <br> Time:          1:30 p.m. <br> Courtroom: 5D <br><br> Complaint Filed:  June 10, 2019 |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................1

    A.  The Proper Forum And Process ................................................................2

    B.  The Abuse Of The System Through Crafty And False Pleading .............2

II.  PROCEDURAL & FACTUAL BACKGROUND ................................................6

    A.  Thompson Hotel Litigation and Settlement (2016-2018) .......................6

    B.  Tommie Hotel Litigation and Settlement (2017-2018) ...........................7

    C.  Selma Project & Litigation (2019) ..........................................................8

III.  LEGAL STANDARD ...........................................................................................9

IV.  Application OF RULE 11 ...................................................................................11

    A.  Plaintiffs Misrepresented Multiple Facts In Their FAC and Any Reasonable And Competent Inquiry Would Have Revealed the Lack of Evidentiary Support to Plaintiffs' Counsel. .......................................................................................11

        1.  Plaintiffs misrepresented and concealed certain settlement terms ............11

        2.  Plaintiffs' boldly mispresent the substance of the settlements .................14

        3.  Plaintiffs' FAC conceals the CEQA actions brought and won by non-parties to this action ...............................................................................14

    B.  Plaintiffs' Claims Are Not Legally Warranted (Rule 11(b)(2)) ............15

        1.  Settlements & releases preclude a pattern of predicate acts .....................15

        2.  Plaintiffs cannot allege obtaining of property, criminal intent, or wrongful use of fear .............................................................................................16

        3.  Plaintiffs' Counsel Knew Noerr-Pennington Immunity Applies ..............17

        4.  Plaintiffs lack standing ...........................................................................18

        5.  Any Reasonable And Competent Inquiry Would Have Revealed That *Res Judicata* Bars This Action. .....................................................................22

    C.  Plaintiffs' Claims Have an Improper Purpose (Rule 11(b)(1)) ............22

V.  S DEFENDANTS ARE ENTITLED TO ALL FEES INCURRED IN DEFENDING PLAINTIFFS' CLAIMS .....................................................................................24

VI.  CONCLUSION ...................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

*<u>Cases</u>*                                                                    Page

*Avirgan v. Hull*,
932 F.2d 1572 (11th Cir.1991) ...................................................21

*Beck v. Prupis*,
    529 U.S. 494 (2000) ............................................................19

*Bethesda Lutheran Homes & Services, Inc. v. Born*,
    238 F.3d 853 (7th Cir. 2001) ..............................................22

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ............................................10

*Cooter & Gell v. Hartmarx Corp.*,
    110 S.Ct. 2447 (1990) .........................................................10

*Fahrenz v. Meadow Farm Partnership*,
    850 F.2d 207 (4th Cir. 1988) ..............................................24

*First Nationwide Bank v. Gelt Funding Corp*,
    27 F.3d 763 (2d Cir. 1994) ..................................................20

*Golden Eagle Distrib. Co. v. Burrough Corp.*,
    801 F.2d 1531 (9th Cir. 1986) .......................................10, 11

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) ............................................................15

*Hemi Grp., LLC v. City of New York, N.Y.*,
    130 S. Ct. 983 (2010) ..........................................................19

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992) ......................................................19, 20

*Imagineering, Inc. v. Kiewit Pac. Co.*,
    976 F.2d 1303 (9th Cir. 1992) ............................................21

*In re Indian Rocks Landscaping of Indian Rocks Beach, Inc.*,
    77 B.R. 909 (Bankr.M.D.Fla.1987) ....................................24

*In re Itel Securities Litigation*,
    791 F.2d 672 (9th Cir. 1986) ..............................................10

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS

*In re Phoenix Piccadilly, Ltd.*,
   849 F.2d 1393 (11th Cir.1988)........................................................................24

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   865 F.Supp.2d 1002 (C.D. Cal. 2011)............................................................16

*Joseph v. Linehaul Logistics, Inc.*,
   291 F.R.D. 511 (D. Mont. 2013)....................................................................22

*Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*,
   886 F.2d 1485.................................................................................................22

*Laurel Heights Improvement Assn. v. Regents of Univ. of California*,
   47 Cal.3d 376 (1988)........................................................................................9

*Levitt*,
   765 F.3d.........................................................................................................17

*Mitan v. Int'l Fidelity Ins. Co.*,
   23 Fed.Appx. 292 (6th Cir. 2001)..................................................................22

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
   981 F.2d 429 (9th Cir. 1992)..........................................................................19

*Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*,
   792 F.2d 797 (9th Cir. 1986)..........................................................................24

*Pioneer Lumber Treating, Inc. v. Cox*,
   5 F.3d 539 (1993).....................................................................................21, 24

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
   508 U.S. 49 (1993)..........................................................................................18

*Rock Rivers Commc'ns Inc. v. Universal Music Grp. Inc.*,
   745 F.3d 343 (9th Cir. 2014)..........................................................................17

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006)..............................................................15, 16, 17

*Sparling v. Hoffman Const. Co., Inc.*,
   864 F.2d 635 (9th Cir. 1988)..........................................................................19

*Stagner v. Pitts*,
   7 F.3d 1045 (10th Cir. 1993)..........................................................................12

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS

*Stitt v. Williams*,
  919 F.2d 516 (9th Cir.1990)........................................................21

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
  546 F.3d 991 (9th Cir. 2008)...................................................18

*Thomas v. Baca*,
  308 F.App'x 87 (9th Cir. 2009)..........................................20, 21

*UBC*,
  770 F.3d.............................................................................17

*United States v. Enmons*,
  410 U.S. 396 (1973).............................................................17

*USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Const.*,
  31 F.3d 800 (9th Cir. 1994)..................................................18

*White v. General Motors Corp., Inc.*,
  908 F.2d 675 (10th Cir.1990)................................................12

### ***Statutes***

18 U.S.C. §1951(b)(2) ............................................................16

18 U.S.C. §1964(c) .................................................................18

18 U.S.C. § 1951.....................................................................20

18 U.S.C. § 1951(b)...............................................................16

18 U.S.C. § 1961(5) ...............................................................15

Cal. Penal Code § 518...................................................16, 20

Cal. Penal Code § 664.6............................................................7

Cal. Penal Code § 128.7.....................................................2, 18

### ***Rules***

Fed. R. Civ. P. 11..................................................10, 11, 12, 13

Fed. R. Civ. P. 11(b) ...........................................................11

1   Defendants STEPHAN "SAEED" NOURMAND ("S. Nourmand") and THE
2   SUNSET LANDMARK INVESTMENT LLC ("Sunset") (collectively, the "S
3   Defendants") submit this Memorandum of Points Authorities in support of their
4   Motion to Sanction Plaintiffs RELEVANT GROUP, LLC ("Relevant"); 1541
5   WILCOX HOTEL LLC ("Wilcox"); 6516 TOMMIE HOTEL LLC ("Tommie"); and
6   6421 SELMA WILCOX HOTEL LLC's ("Selma") (collectively, "Plaintiffs") and
7   their counsel of record, Akin Gump Strauss Hauer & Feld LLP.[1]

8   **I.    INTRODUCTION**

9   Duplicity still permeates Plaintiffs' First Amended Complaint ("FAC" [Doc.
10  21]), even after they took the opportunity to amend. Perhaps the most revealing is the
11  ongoing deceptive reference to "extracting a payment of $5.5 million…" without
12  referencing the two **settlement agreements** entered in January of 2018 between
13  Defendant Sunset and two Plaintiffs to this case: Wilcox and Tommie, under whose
14  terms that sum was paid.   In fact, the key and contextual words "settlement
15  agreement"[2] or "release" are found nowhere in the FAC.  The artifice of "extracting"
16  payment supports Plaintiffs' ruse that the S Defendants engaged in some concocted
17  extortion, without alerting the Court to the several California Environmental Quality
18  Act ("CEQA") concessions and highly negotiated agreements involving sophisticated
19  counsel that underlie the true factual basis, exposing this action for what it is:  the very
20  type of false claim it purports to remedy.   In fact, on closer scrutiny, the only
21  conceivable motive for such misleading allegations is to achieve the very purpose of
22  which Plaintiffs accuse the S Defendants, as further evidenced by recent emails that
23  Plaintiffs' representatives have sent exhibiting their own, true, motives.

---

[1] With respect to judicial economy, S Defendants will not repeat the substance of their earlier-filed motions, and incorporate by reference into this Motion for Sanctions all of the points they raise in their two Motions to Dismiss and Special Motion to Strike papers, along with any points that other defendants to this action raise in their Motions to Dismiss.

[2] Plaintiffs' make an offhand reference to Defendants' allegedly "knowing" that a "settlement" would be funded by Relevant, but remain silent on any of the salient details or facts.

Even though Sunset has complied with all of its obligations under the settlement agreements, Plaintiffs now misrepresent the settlement terms as "ransom" procured by "extortion," despite Plaintiffs and their counsel knowing that Wilcox and Tommie entered those settlements after months of negotiations through their well-qualified lawyers.

## A. The Proper Forum And Process

If Plaintiffs Wilcox and Tommie, and their co-Plaintiff alter egos, truly believed both of those CEQA lawsuits objectively lacked merit, the same "extract[ed] payment of $5.5 million" would have funded their lawyers to file, and *win* sanctions motions under the state law equivalent of Rule 11, Code of Civil Procedure section 128.7. If Plaintiffs Wilcox and Tommie truly believed both of those lawsuits objectively lacked merit, the same "extract[ed] payment of $5.5 million" would have funded their lawyers to win at trial, and then sue for malicious prosecution. If Plaintiffs Wilcox and Tommie truly believed their settlements were unenforceable, they would have moved to set them aside in superior court, the forum they agreed and stipulated to, and which has retained jurisdiction over the settlement agreements. Plaintiffs Wilcox and Tommie, and their co-Plaintiff alter egos, have done *none* of the above. (*See* Exs. "1," "7," "12," "16" to Request for Judicial Notice in Support of Motion for Sanctions ["RJN"], ¶¶ 1, 7, 12, 16.)

## B. The Abuse Of The System Through Crafty And False Pleading

Instead, four Plaintiffs decided to accuse Sunset, Sunset's manager (Stephan "Saeed" Nourmand), Saeed Nourmand's son, Michael (initially), and Michael's business, Nourmand & Associates, of racketeering, of *organized crime*. Wilcox and Tommie have breached the confidentiality, release, and jurisdiction parameters of their respective settlement agreements in bringing and publicizing this action. Plaintiffs' attorneys at Akin Gump admitted they knew about those settlement agreements before signing and filing the Complaint (and FAC) with select, incomplete and misleading segments of the settlement intentionally conveyed in this venal

campaign. (*See* Declaration of Kathleen Hipps in Support of Motion for Sanctions ["Hipps Decl."], ¶¶ 4, 5 & Ex. "B" thereto.)

Plaintiffs are not the victims they attempt to depict. While *all* of the Plaintiffs to this action accuse *all* Defendants of perpetuating a pattern of filing "sham" lawsuits, this lawsuit is the only sham. Indeed, one of **Plaintiffs' representatives has admitted** both verbally and in writing **that Plaintiffs only brought this RICO lawsuit to pressure Sunset into dropping a CEQA case** Sunset filed on April 2, **2019, involving Plaintiff Selma's proposed hotel development** (the "Selma Litigation"). Forwarding an article entitled, "LA Developer Accuses Rival Of Using CEQA For Extortion," touted as, "[j]ust the start of press," **and dated the same day the Complaint was filed**, June 10, 2019, he wrote to Myra Nourmand (the wife of Saeed and mother of Michael):

> SHAME, SHAME, SHAME ON ALL OF YOU!!! I know you don't care because that's what you told me when I called you and asked you to get together with you and Saeed to discuss this amicably . . . **I strongly suggest that Saeed drops his extortion law suit for his own as well as for your family name** otherwise this is going to get very ugly for your entire family . . .

(Declaration of Myra Nourmand in Support of Motion for Sanctions ["Myra Decl."], ¶ 2, Ex. "A." emphasis added)

To harass Sunset into dropping the Selma Litigation, Plaintiffs and their attorneys trumpeted the filing of their RICO Complaint with a coordinated and concerted press strategy, apparently led by a public relations firm that has relationships with Akin Gump, the large firm representing Plaintiffs in this action, and Sheppard Mullin, Richter & Hampton LLP ("Sheppard Mullin"), one of two prestigious law firms representing Plaintiffs Wilcox and Tommie in the underlying CEQA cases and settlement negotiations (along with Jeffer Mangels Butler & Mitchell LLP). (Myra Decl., Ex. "A"; Hipps Decl., ¶¶ 8-15, Exs. "D"-"K.")

It is no coincidence that Plaintiffs and their attorneys named *the individual* who manages the only Defendant who has ever brought CEQA cases involving three of the four parties to this action, Saeed Nourmand.

It is no coincidence that Plaintiffs and their attorneys originally named Saeed Nourmand's son Michael as a Defendant, without making a single specific allegation against him, as part of their strategy to make things "very ugly" for the "entire [Nourmand] family." (Myra Decl.,¶2, Ex. "A".)  The later amendment still leaves Michael's business as a defendant, creating another artful cover up for Plaintiffs' true motives.

It is no coincidence that Plaintiffs and their representatives ramped up their threats against the extended Nourmand family after the July 17, 2019 conference of counsel, when defense counsel walked Plaintiffs' attorneys Susan Leader and Joshua Rubin through the fatal flaws of their clients' "RICO" claims for over two hours.  Six days later, on July 23, 2019, Plaintiffs' representative wrote an email to Myra Nourmand, forwarding an email containing an article entitled, **"CEQA Meets RICO: True Stories Of Extortion And Litigation Abuse In Tinseltown,"** which the managing partner of each Plaintiff, Richard Heyman, flaunted as, "**More negative exposure for the Nourmand's!**"  (Myra Decl., ¶3, Ex. "B" [emphasis added].)

It is no coincidence that Plaintiffs and their attorneys **never** disputed the validity of Plaintiffs Wilcox and Tommie's settlements with Sunset:

(1)    when representing they had "reached an agreement in principle" on August 25, 2017, the day after the superior court issued a tentative ruling that Wilcox had violated CEQA (RJN ¶ 1, Ex. "1" at 3; ¶ 6, Ex. "6");

(2)    when Mr. Heyman signed the Wilcox Settlement Agreement and related documents, including the Deed of Trust and Assignment of Rents Securing a Promissory Note, and the Covenant and Agreement Regarding Use of Hotel Property, both of which Mr. Heyman signed on Wilcox's behalf on January 8, 2018, *before a notary* (RJN ¶¶ 2, 4, Ex. "2" and "4");

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS

(3)     when Mr. Heyman signed the Tommie Settlement Agreement and related documents, including the Covenant and Agreement Regarding Use of Hotel Property, which Mr. Heyman signed on Tommie's behalf on January 8, 2018, *before a notary* (RJN ¶ 5, Ex. "5");

(4)     when Wilcox paid the first installment of settlement funds to Sunset on January 12, 2018 (S. Nourmand Decl., ¶2, Ex. "A" at 1);

(5)     when Wilcox signed, and its attorney filed on January 16, 2018, a stipulation requesting that the superior court retain jurisdiction over its settlement agreement with Sunset (RJN ¶7, Ex. "7");

(6)     when Tommie signed, and its attorney filed on January 16, 2018, a stipulation requesting that the superior court retain jurisdiction over its settlement agreement with Sunset (RJN ¶16, Ex. "15");

(7)     when Wilcox paid the second installment payment of settlement funds to Sunset on February 22, 2018 (S. Nourmand Decl., ¶2, Ex. "A" at 2); or

(8)     when Wilcox paid the final installment payment of settlement funds to Sunset on March 13, 2018. (*Id*., Ex. "A" at 3.)

It is no coincidence that Plaintiffs and their attorneys never portrayed the January 8, 2018 Wilcox and Tommie settlement agreements as extortion until June 10, 2019, in a new forum, just two months after Sunset filed the Selma Litigation.

This Court should sanction Plaintiffs and their counsel for all of these reasons, each of which independently warrant sanctions. Notably, Plaintiffs' FAC affirmatively misrepresents and conceals the facts surrounding the CEQA lawsuits brought not only by Sunset, but also by other Hollywood neighbors, and their resolutions; the terms of the settlement agreements which Plaintiffs' counsel admits to have read, and their environmental concessions which were also recorded and thus publicly available, along with all superior court documents.  Even the most cursory review of those documents reveal the lack of factual support and the frivolity of this action. Moreover,

Plaintiffs' RICO claims are not warranted by existing law, as briefed more fully in Defendants' Motions to Dismiss.

Plaintiffs and their counsel are improperly using the instant lawsuit to bully their way into a dismissal of the Selma lawsuit, by harassing the Nourmand family. Notwithstanding the complete lack of merit of the FAC, and despite protracted attempts to meet and confer, Plaintiffs refuse to dismiss this retaliatory and legally untenable case that they have brazenly forum shopped into federal court.   Such behavior is an abuse of the legal system and should be sanctioned.  Our legal system is not a forum for petty revenge.  The law requires that Plaintiffs pursue litigation only for proper purposes, when it is warranted by law, and supported by evidence.  None of these prerequisites is present here.

Accordingly, S Defendants respectfully request that this Court sanction Plaintiffs and their attorneys of record by ordering them to pay S Defendants their reasonable attorneys' fees and other expenses incurred in defending this action.

## II.   PROCEDURAL & FACTUAL BACKGROUND

Defendant Sunset owns the Hollywood Athletic Club, a historic landmark located at 6525 West Sunset Boulevard, in Hollywood, which was founded by Charlie Chaplin, Rudolf Valentino, and Cecil B. DeMille.  Plaintiffs have been developing hotels in a two-block area adjacent to the Hollywood Athletic Club, spurring multiple neighbors to object and litigation under CEQA.

### A.   Thompson Hotel Litigation and Settlement (2016-2018)

Wilcox used to own the property at 1523-1541 N. Wilcox Avenue (RJN ¶ 17, Ex. "16"), the sight of Wilcox's proposed Thompson Hotel project.  After the City of Los Angeles approved the Thompson Hotel project, its neighbor, Sunset, filed a CEQA suit against the City on March 3, 2016, naming Wilcox as a real party in interest (the "Wilcox/Thompson Hotel Litigation").  (FAC, ¶ 39; *see also* Ex. "3" to RJN ¶ 3.)  While Plaintiffs allege that attorney Robert Silverstein represented Sunset (FAC, ¶¶ 39), they conceal that the Sheppard Mullin and Jeffer Mangels firms

represented Wilcox, including one of "the most experienced and accomplished litigators in disputes involving [] CEQA."  (Hipps Decl., ¶ 14, Ex. "J.")

Notably, Plaintiffs' FAC conceals a key fact from the Wilcox/Thompson Hotel Litigation, which is that on the eve of trial, Wilcox misleadingly submitted **amended** design plans that were *not* provided to the public *"in the manner required by CEQA."*  (Exs. "1" & "6" to RJN ¶¶1, 6 at 5 [emphasis added].) The superior court initially found Wilcox had explicitly violated CEQA, spurring Wilcox into settlement discussions with Sunset; Wilcox knew it was probably going to lose at trial on the merits of the CEQA claims.  In fact, one day after the superior court issued its tentative ruling in the Wilcox/Thompson Hotel Litigation, the docket reflects "Case Deemed Settled" and shows settlement status conferences throughout the rest of 2017, up until January 18, 2018, when Sunset filed a Request for Dismissal, and Wilcox filed a Stipulation and Order to Retain Jurisdiction to Enforce Settlement Agreement Pursuant to CCP Section 664.6, which the superior court entered as an order.  (Exs. "1," "3" & "7" to RJN, ¶¶ 1, 3, 7.)

## B.   Tommie Hotel Litigation and Settlement (2017-2018)

Plaintiff Tommie owns the property at 6516-6526 W. Selma Avenue, the site of its proposed Tommie Hotel project.  The City Council approved the Tommie Hotel project on May 10, 2017, and Sunset filed a CEQA suit against the City on June 9, 2017.  (FAC, ¶¶58, 60.)Like with the Thompson Hotel, Plaintiffs misrepresent that multiple Defendants filed suit, when only Sunset did, and that "Defendants' [sic] lawsuit was not filed to address environmental concerns.  Defendants' [sic] sole desire was to harm a competing project and extort money from Tommie and its owners." (*Id.*, ¶61.)  In reality, Sunset's lawsuit only pursued claims under CEQA.

In fact, Plaintiffs' FAC conceals the fact that many other neighbors also filed CEQA suits, naming Tommie as a real party in interest.  On June 8, 2017, attorney Gideon Krakov filed a CEQA suit on behalf of multiple neighbors.  (RJN, ¶8 [*Lauren "Elle" Farmer, et al. v. City of Los Angeles*, Case No. BS169855 ("Farmer Tommie

7

Litigation")].) On June 9, 2017, the Greenburg Glusker firm filed a CEQA suit on behalf of another neighbor. (Ex. "9" to RJN, ¶9 [*Mama Wilcox Land, LLC v. City of Los Angeles, et al.,* Case No. BS169855 ("Mama Wilcox Tommie Litigation")].)  In fact, after trial in the Farmer Tommie Litigation, the superior court ruled that the Tommie Hotel project's CEQA analysis was defective, and that it  had unmitigated significant noise impacts in violation of CEQA.  (Exs. "10" & "14" to RJN, ¶¶ 10, 14.)  Both cases lasted much longer than Sunset's, with the Mama Wilcox Tommie Litigation ending on July 18, 2018, six months after Sunset's dismissal, and the Farmer Tommie Litigation concluding on May 7, 2019, more than a year after Sunset's dismissal. (Exs. "8" & "9" to RJN, ¶¶ 8, 9.)

Plaintiffs allege that "Defendants [sic] ultimately dismissed the Tommie litigation at the same time it dismissed [the] Thompson Hotel litigation, based on the *payment to Sunset Landmark* of the $5.5 million ransom."  (FAC, ¶62 [emphasis added].)  While Plaintiffs admit that only one Defendant—Sunset—received $5.5 million, they misrepresent settlement funds paid pursuant to highly negotiated agreements as "ransom," and also misrepresent that Sunset (and other unknown Defendants) dismissed Sunset's lawsuit after the $5.5 million payment.  In fact, Plaintiff Wilcox did not pay the final installment payment until March (Ex. "A" to S. Nourmand Decl., ¶ 2), well after Sunset had dismissed both the Wilcox/Thompson Hotel Litigation and the Tommie Hotel Litigation. (Ex. "7" & 15 to RJN, ¶¶ 7, 16.)

Plaintiffs' FAC also misrepresents that the Tommie Settlement and Release did not include any environmental terms, even though the most cursory review of either the confidential Tommie Settlement and Release *or* the publicly recorded environmental settlement terms, show a tieback easement, height, setback, noise, and shoring/support concessions. (Exs. "4" & "5" to RJN ¶¶ 4, 5, 15.)

## C.  Selma Project & Litigation (2019)

Plaintiff Selma seeks to develop a hotel on the block that is directly northeast of the Thompson/Tommie/Hollywood Athletic Club block.  More than a year after the

"$5.5 million ransom payment" from Wilcox, Sunset filed a CEQA suit against the City on April 2, 2019, naming Selma as a real party in interest (the "Selma Litigation"). (FAC, ¶ 73.) Plaintiffs again misrepresent that multiple Defendants filed the Selma Litigation (when it was only Sunset), and that Sunset's suit is not really about environmental objections. (*Id*., ¶ 76.) The Selma Litigation, however, only includes CEQA-related claims, including the key allegation that Relevant Group created shell corporations to submit the Selma/Thompson/Tommie hotel projects to the City in piecemeal, in violation of CEQA, and to circumvent an accurate environmental assessment. (Ex. "11" to RJN, ¶ 11.) In fact, "CEQA forbids piecemeal review" because "chopping a large project up into many little ones . . . cumulatively may have disastrous consequences." *Laurel Heights Improvement Assn. v. Regents of Univ. of California*, 47 Cal.3d 376, 395-96 (1988).

Two months after Sunset filed the Selma Litigation, Plaintiffs filed the instant action, on June 10, 2019, which actually admits to piecemealing, validating the very complaint in the Selma Litigation that Plaintiffs argue is "extortionate." By filing the instant action, Plaintiffs also breached the confidentiality provisions of the settlement agreements by publicly disclosing certain terms, such as the settlement amount, in addition to violating a non-publication clause and the agreement for the superior court to retain jurisdiction. On the same day, Plaintiffs' counsel, Akin Gump, issued a press release also disclosing those confidential terms and portraying allegations as true facts, when even a cursory review of the evidence would reveal their falsity to competent counsel. (*See* Ex. "D" to Hipps Decl., ¶ 8.) While these actions are shocking and warrant sanctions, they pale in comparison to the written admission that Plaintiffs only filed this lawsuit to threaten and harass the extended Nourmand family to bully Sunset into dropping the Selma Litigation.

## III.   LEGAL STANDARD

When filing a pleading in federal court, an attorney certifies that he or she has conducted a reasonable inquiry, and that the pleading is well grounded in fact, is

legally tenable, and is not presented for any improper purpose. *See* Fed. R. Civ. P. 11; *see also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).  Federal Rule of Civil Procedure 11 ("Rule 11") imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the factual basis and viability of a pleading before signing it.  *See Golden Eagle Distrib. Co. v. Burrough Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986).  Rule 11 provides, in relevant part:

> (b) By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating – an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, ***formed after an inquiry reasonable under the circumstances***:
>
> (1)   it is not being presented for any ***improper purpose***, such as to ***harass*** or to cause unnecessary delay, or needlessly increase in the cost of litigation;
>
> (2)   the claims, defenses, and other legal contentions are ***warranted*** by existing law or by a nonfrivolous argument for extending, modifying, or reversing of existing law or the establishment of new law;
>
> (3) the factual contentions ***have evidentiary support*** or, if specifically so identified, will likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .

Fed. R. Civ. P. 11(b) (emphasis added).

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus, . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 110 S.Ct. 2447, 2454 (1990).  Additionally, Rule 11 exists in part to protect both parties and the court from wasteful and frivolous actions "where counsel willfully abused [the] judicial process or otherwise conducted litigation in bad faith." *In re Itel Securities Litigation*, 791 F.2d 672, 675 (9th Cir. 1986) (internal citations omitted). Bad faith may warrant sanctions regardless of whether "the legal and factual basis for the action prove totally frivolous." *Id.* ["where a litigant is

substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar the assessment of attorney's fees."]. The 1993 Advisory Committee Note explains that "[t]he sanction should be imposed on the persons – whether attorneys, law firms, or parties – who have violated the rule or who may be determined to be responsible for the violations."  Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments.

If the Court finds a violation of Rule 11, sanctions are mandatory.  *Golden Eagle*, 801 F.2d at 1540.  Due to the gravity of the issues presented in this Motion, S Defendants have given overly fair warning to Plaintiffs, including a "Rule 11 letter" dated July 11, 2019, an hours-long conference of counsel on July 17, 2019, another conference of counsel after filing their FAC, and the service of this Motion on Plaintiffs at least 21 days before filing it, to give them the opportunity to withdraw their FAC.  (Hipps Decl., ¶¶ 2-4, 7, Ex. "A.")

## IV.   APPLICATION OF RULE 11

Here, (1) Plaintiffs' allegations are objectively baseless, and (2) Plaintiffs' attorneys more than simply failed to perform their "affirmative duty" to conduct a reasonable and competent inquiry before signing and filing the Complaint and FAC, in violation of Rule 11; they actually concealed significant facts and their admitted knowledge from the Court.  As such, sanctions are mandatory.

### A.   Plaintiffs Misrepresented Multiple Facts In Their FAC and Any Reasonable And Competent Inquiry Would Have Revealed the Lack of Evidentiary Support to Plaintiffs' Counsel.

Sensational and blatant misstatements of fact abound throughout Plaintiffs' FAC, making it impossible to address each one in a 25-page brief.  Thus, a summary follows.

### 1.   <u>Plaintiffs misrepresented and concealed certain settlement terms</u>

While Plaintiffs' counsel believes that "the complaint does not conceal the existence of the settlement agreement[s]," they admitted to possessing and reading the settlement agreements, and also admitted discussing the confidential settlement

negotiations with one of Wilcox and Tommie's lawyers, Guy Masnik of Jeffer Mangels. (Patel Decl., ¶ 3; Hipps Decl., ¶¶ 4, 5, Ex. "B.")  Thus, Plaintiffs and their attorneys know a "Nourmand Enterprise" has not "extorted Plaintiffs" into making "them" a "ransom" payment.  First, a cursory review of the settlement agreements and evidence shows that Plaintiffs Relevant, Tommie, and Selma have never paid a penny to any Defendant.  In fact, Plaintiffs' FAC admits that the only money paid to any Defendant in this case, was by one Plaintiff, Wilcox, to one Defendant, Sunset (FAC, ¶62), but glaringly omits that this "ransom payment" was actually Wilcox's payment of settlement funds in installments, pursuant to two arms-length, confidential settlement agreements, which also contained *full releases* and *environmental concessions* made by Plaintiffs Wilcox and Tommie. Thus, Plaintiffs' counsel knowingly caused their clients to breach these agreements and also misrepresented their substance to the Court and the press, which reasonably competent, ethical counsel would have declined to do.

It is important to note that even if Plaintiffs adequately implied the existence of two settlement agreements in their FAC, without once using the word "settlement," at no point did they disclose or imply the full releases contained therein.  At the outset, S Defendants' counsel notified Plaintiffs' counsel that it is sanctionable conduct to conceal the releases from the court. (Ex. "A" to Hipps Decl., ¶ 2.)  Courts have sanctioned plaintiffs who failed to notify the court of a prior release contained in a settlement, which render plaintiffs' RICO claim baseless.  "There was a day when clever counsel were admired by some for inventive methods to resurrect dead litigation. That day has passed." *Stagner v. Pitts*, 7 F.3d 1045 (10th Cir. 1993) (unpublished table decision) (sanctioning plaintiffs for baseless RICO claim and failure to notify court of prior release); *see also White v. General Motors Corp., Inc.*, 908 F.2d 675 (10th Cir.1990), cert. denied, 498 U.S. 1069 (1991) (court approved sanctions when counsel knew of certain releases and failed to disclose them, and also failed to present a colorable argument to avoid the releases).

It is patently improper for Plaintiffs to conceal the existence of these releases from the Court, because the releases preclude any finding of continuous predicate acts, since two of the three alleged predicate acts were fully released CEQA lawsuits, (not to mention that each of Sunset's three CEQA cases involved allegedly distinct and separate entities).[3]  During the July 17, 2019 conference of counsel, the only justification Plaintiffs' counsel gave for basing predicate acts on fully released conduct was that a release is not valid if it is signed "with a gun to the head."  (Ex. "B" to Hipps Decl., ¶ 3.)  Despite repeated requests, Plaintiffs' counsel *refused* to provide any case law that is actually analogous to the facts at hand, where there was no gun to any Plaintiff's head, to any attorney's head, or to the head of the notary witnessing the signings.  (Exs. "B" & "C" to Hipps Decl., ¶¶ 4, 5; Exs. "4" & "5" to RJN, ¶¶ 4, 5.) These were highly negotiated agreements, in which Tommie and Wilcox were represented by "top real estate attorney" Guy Masnik, who is a partner at Jeffer Mangels Butler & Mitchell LLP, along with Arthur Friedman, "widely-recognized as among the most experienced and accomplished litigators in disputes involving [] CEQA," and Alex Merritt of Sheppard Mullin, (Exs. "1," "3" & "12" to RJN ¶¶1, 3, 12, 15; Exs. "I," "J," & "K" to Hipps Decl., ¶¶ 13-15), who would surely be the subject of a malpractice action and State Bar investigation if they aided the extortion of their clients. Plaintiffs' counsel makes a mockery of this forum by arguing that a settling party represented by two prestigious law firms settled "with a gun to the head."  Plaintiffs continue to waste this Court's time by concealing the releases in their FAC, and then by their attorneys' failure to present a colorable argument to either avoid the releases or allow the Plaintiffs make allegations as the alter ego of each other.  Tellingly, despite their right to do so, neither Wilcox nor Tommie has moved the superior court to set aside the settlement agreements and releases.  This is

---

[3] The distinction between Plaintiffs as separate entities, as opposed to a common enterprise was only revealed by Plaintiffs in this litigation.  Before that, in submitting plans for approval to the City of Los Angeles, Plaintiff's maintained that their projects were separate and distinct, not piecemealed.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS

because Plaintiffs and their counsel know there is no extortionate conduct or evidence warranting set aside orders.

### 2. Plaintiffs' boldly mispresent the substance of the settlements

Plaintiffs misrepresent that "[t]ellingly, Nourmand Enterprise did not demand any action to be taken with respect to the 'environmental issues' at the heart of the litigation, and instead demanded payment of the $5.5 million ransom fee." (FAC, ¶5.) Even a cursory review shows the written record to be 180 degrees opposite, and that Wilcox and Tommie made environmental concessions to Sunset, which Mr. Heyman signed before a notary, and then were recorded with the County of Los Angeles. (Exs. "4" & "5" to RJN, ¶¶ 4, 5.) Plaintiffs and their attorneys had to know they agreed to those environmental concessions. Indeed, Mr. Heyman, who signed on behalf of Wilcox and Tommie, is the managing member of Relevant and Selma. (Exs. "17" & "18" to RJN, ¶¶ 18, 19.)

Plaintiffs' FAC purposely omits any reference to other consideration, like a Tie-Back Agreement, that Defendant Sunset gave in exchange for the settlement money, and brazenly misrepresents who paid settlement monies and to whom, when it is undisputable that only one Plaintiff, Wilcox, paid only one Defendant, Sunset. Even if it were proper for Plaintiffs to admit that they are the alter egos of each other, such that Wilcox's payment can be imputed to all Plaintiffs, then they have conceded violating CEQA's prohibition against piecemeal submissions of developments which is the gravamen of the Selma Litigation.

### 3. Plaintiffs' FAC conceals the CEQA actions brought and won by non-parties to this action

Plaintiffs' FAC conceals the fact that other Hollywood neighbors also filed CEQA cases, including the Farmer Tommie Litigation and the Mama Wilcox Tommie Litigation. The superior court's findings of CEQA violations in both of those cases prove that Sunset was not pursuing objectively baseless environmental litigation, which refutes not only the FAC's allegations, but also any defenses Plaintiffs may try

14

to assert when seeking to chill Sunset's right to petition by arguing that *Noerr-Pennington* immunity does not apply. *See Section B(3), infra.*

## B. Plaintiffs' Claims Are Not Legally Warranted (Rule 11(b)(2))

### 1. <u>Settlements & releases preclude a pattern of predicate acts</u>

Plaintiffs' FAC requires the Court to find that one could never settle a case without subjecting oneself to a racketeering claim brought by anyone and everyone who claims to be "an affiliate" of the other party to the settlement. This is absurd. First, Plaintiffs' RICO claims fail because Plaintiffs Wilcox and Tommie cannot, as a matter of law, allege facts that Defendants extorted them since they released all such claims. Plaintiff Relevant has not made any allegations about extortionary threats to it, unless it is attempting to pierce its own corporate veil. Plaintiff Selma cannot lawfully allege that a statement made pursuant to litigation is an extortionary threat. *Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 929 (9th Cir. 2006).

Even if Plaintiffs had properly alleged *isolated* acts of extortion (which they did not), their RICO claims still fail because they have not shown a "pattern" of racketeering activity – that is, "at least two acts of racketeering activity" within a ten-year period, 18 U.S.C. § 1961(5), that are "related" and "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Plaintiffs' FAC artificially tries to plead RICO claims to seek relief from two settlement agreements: (1) the Wilcox/Thompson Hotel Settlement, and (2) the Tommie Hotel Settlement. The FAC admits that ***Wilcox*** made a $5.5 million payment on behalf of Wilcox and Tommie (FAC, ¶¶54, 55), but omits that it was pursuant to two highly negotiated settlement agreements, which also contained CEQA-related concessions, full releases, and agreements to the continuing jurisdiction of the state court. (Exs. "1," "2," "4," "5," & "7" to RJN, ¶¶1, 2, 4, 5, 7.)

Plaintiffs' allegations that Defendants initiate sham environmental lawsuits fail since two of the three lawsuits Sunset (and only Sunset) has filed were fully settled and released, and the one remaining litigation (and a dubious "threat" allegedly made

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS

after the third case was already filed) cannot constitute a pattern. Even if the first two lawsuits were not settled and released, at most, the FAC shows a "pattern" of *First Amendment protected speech and petitioning*, directed at the City.

Plaintiffs' pleading deficiencies on this RICO element are particularly blatant. *Each* RICO plaintiff "must allege **at least two** predicate acts by **each** defendant" to show a "pattern" of "racketeering" activity. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F.Supp.2d 1002, 1035 (C.D. Cal. 2011)(emphasis added). First, Plaintiffs Wilcox, Tommie and Selma cannot allege a predicate act against Defendant Sunset for filing lawsuits or against the mystery "Mr. Nourmand" for threatening a lawsuit, unless the lawsuits and threat were objectively baseless. *Sosa*, 437 F.3d at 939-40 (discussing *Noerr-Pennington* and California's extortion statute). Second, Plaintiffs Wilcox and Tommie have released all known and unknown claims against Sunset, its manager, and its affiliates, and there is no allegation that the settlements were signed only because Plaintiffs Wilcox and Tommie had "a gun to their head" as their attorney stated in the conference of counsel. (Hipps Decl., ¶ 3, Ex. "B.")

### 2. **Plaintiffs cannot allege obtaining of property, criminal intent, or wrongful use of fear**

Plaintiffs *also* fail to satisfy the separate "obtaining of property" element of extortion. 18 U.S.C. § 1951(b). This is because the only "property" that "Defendants" allegedly obtained is the $5.5 million settlement payment that Plaintiff Wilcox paid to Sunset, on behalf of Plaintiffs Wilcox and Tommie. (FAC, ¶¶54, 55; Ex. "2" to RJN, ¶¶2, 15.) Plaintiffs Wilcox and Tommie fully released all known and unknown claims related to those actions, so neither they nor their admitted affiliates can now claim Sunset wrongfully obtained the settlement monies.

The conduct alleged does not involve any "wrongful" use of fear. *See* 18 U.S.C. §1951(b)(2); Cal. Penal Code §518 (defining extortion to require "wrongful use of force or fear"). Plaintiffs' theory is that Defendants induced fear of economic harm in

all four Plaintiffs by Sunset's filing of three lawsuits involving three separate Plaintiffs, even though Sunset filed the third lawsuit a year *after* the settlement payments. This theory fails because the use of *non-violent economic pressure* to achieve a *lawful* objective does not constitute extortion. Conduct is "wrongful" only where "the obtaining of the property would itself be 'wrongful' because the alleged extortionist has *no lawful claim* to that property." *United States v. Enmons,* 410 U.S. 396, 400 (1973) (emphasis added). Accordingly, "unless a person has a *preexisting right* to be free of the threatened economic harm, threatening economic harm to induce a person to pay for a legitimate service is not extortion." *Levitt*, 765 F.3d at 1130 (emphasis added); *UBC*, 770 F.3d at 839.

The facts alleged do not show that any Defendant had a "wrongful" purpose. Indeed, over years of CEQA litigation, no Plaintiff ever filed motions for sanctions or claims of malicious prosecution against either Sunset or the petitioners in the Farmer Tommie Litigation and Mama Wilcox Litigation. (Exs. "8" & "9" to RJN ¶¶8, 9.) Plaintiffs do not have a "pre-existing right to be free" from fear of economic loss resulting from constitutionally protected petitioning.

### 3.  Plaintiffs' Counsel Knew Noerr-Pennington Immunity Applies

The *Noerr-Pennington* doctrine derives from the First Amendment's Petition Clause and immunizes those who petition the government from statutory liability for their petitioning conduct. *Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 929 (9th Cir. 2006). Threats of litigation, and other pre-litigation actions are also subject to *Noerr-Pennington* immunity. *Rock Rivers Commc'ns Inc. v. Universal Music Grp. Inc.,* 745 F.3d 343, 351 (9th Cir. 2014).

The Supreme Court recognizes a narrow exception to *Noerr-Pennington* immunity for "sham" petitioning. A "sham" lawsuit is one where the suit is **both** "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and "an attempt to interfere directly with the business relationship of a competitor through the use of the governmental process—as opposed

17

to the outcome of that process." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.* 508 U.S. 49, 60-61 (1993) ("*PRE II*").  Both parts of the "strict two-step analysis" must be met for the exception to apply, though the inquiry into the party's subjective motivations does not take place unless the litigation is alleged to be sufficiently and objectively baseless. *USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Const.,* 31 F.3d 800, 810 (9th Cir. 1994). As the Supreme Court recognized in *PRE II*, "the sham exception contains an indispensable objective component." *Id*. at 58. The threat of litigation is objectively baseless if it involves "the pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief." *Id*. at 62. Litigation is "objectively baseless" only if it fails a Rule 11-type standard.  *Id*. at 65.  Here, a reasonable inquiry would reveal that the superior court found CEQA violations in the Wilcox/Thompson Hotel Litigation, the Farmer Tommie Litigation, and the Mama Wilcox Tommie Litigation.  (Exs. "6," "10" & "14" to RJN, ¶¶6, 10, 14.)

Moreover, none of the Plaintiffs have ever served or filed a Motion for Sanctions under California Code of Civil Procedure section 128.7 (the state law equivalent to Rule 11), or a complaint for malicious prosecution.  (*See* Exs. "3" & "12" to RJN ¶¶3, 12.)   Indeed, the tentative ruling attached as Exhibit "6" to S Defendants' Request for Judicial Notice shows that the superior court favored Sunset's position.   In fact, the hearing on that motion never took place, because Plaintiffs Tommie and Wilcox both settled with Sunset after the adverse tentative ruling (*id*.), for a much larger amount than it would have cost them to simply defend through trial. (Exs. "1" & "2" to RJN ¶¶1, 2, 15.)   "The fact that this ongoing litigation settled suggests that the original suit was not objectively baseless." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008).

### 4.   Plaintiffs lack standing

Plaintiffs' RICO claims also fail because they have not alleged, and cannot allege facts showing that they have been "injured in [their] business or property by

reason of" any RICO violation, as required to bring a civil RICO claim. 18 U.S.C. §1964(c). To have standing to sue for violations of § 1962(c) (i.e. Count 1), each Plaintiffs must show that its injury was caused by conduct proscribed by § 1962(c). *See Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.,* 981 F.2d 429, 436-37 (9th Cir. 1992). Similarly, to have standing to bring civil RICO conspiracy claim (i.e. Counts 2-3), each Plaintiff must show that its injury was caused by "an act of racketeering" or conduct that otherwise violates §§ 1962(a)-(c). *Beck v. Prupis*, 529 U.S. 494, 507 (2000). More specifically, each Plaintiff must show that conduct that violated §§ 1962(a)-(c) "not only was a 'but for' cause of [the] injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of New York, N.Y.*, 130 S. Ct. 983, 989 (2010) (internal quotations omitted). "[T]he focus is on the directness of the relationship between the conduct and the harm." *Id.* at 991.

Plaintiffs fail to meet this causation requirement. All three RICO claims allege the same injury: "specifically," that *Plaintiff Wilcox* paid $5.5 million to Defendant Sunset.  (FAC, ¶¶54, 55.)  The FAC admits that not one of the Plaintiffs have been injured, or indeed even made any payments  to any Defendant other than Wilcox's settlement payment, for which all claims have been released. Additionally, the Settlement Agreements prove that Wilcox's payment was directly caused by Wilcox and Tommie's decision to settle two superior court cases. But for their decision to settle (more than a year *before* the alleged oral "threat" occurred), there would have been no $5.5 million payment to Sunset. If the other Plaintiffs are members of the Wilcox LLC, they have no standing because there is no shareholder standing to assert RICO claims where the harm is derivative of harm to the corporation. *Sparling v. Hoffman Const*. Co., Inc., 864 F.2d 635, 640 (9th Cir. 1988). Even if Wilcox's settlement payment somehow harmed the other Plaintiffs because the Plaintiffs were improperly commingling their funds, their harm was proximately caused by Wilcox's and Tommie's desire to settle, and their commingling of funds with Relevant and Selma, and not by any action of a Defendant. *See Holmes v. Sec. Inv'r Prot. Corp.*,

503 U.S. 258, 286 (1992).  Moreover, Wilcox does not even own the Thompson Hotel land as of October 5, 2018, which the FAC glaringly omits.  (Ex. "16" to RJN, ¶ 17.)

The timeline of events makes Plaintiffs' lack of standing even more obvious. The FAC alleges that "on or around January 8, 2018 . . . Wilcox agreed to pay Sunset Landmark $5.5 million as a ransom to get Sunset Landmark to drop its claims."  (FAC ¶¶54, 55.)  The FAC then admits that "[o]n April 2, 2019, Sunset" sued the City, "naming Selma as a real party in interest," which is more than a year *after* Wilcox made the $5.5 million settlement payment to Sunset. (*Id.*, ¶61.) The FAC alleges that on March 29, 2018, Mr. Nourmand said, "You know the drill.  It's going to take a check to make this go away."  (*Id.*, ¶¶77, 78.)  Thus, it is factually **impossible** for *either* the Selma lawsuit or the "threat" to have *caused* Wilcox to pay Sunset $5.5 million, since both of those "acts" occurred over a year later.  Moreover, Selma's legal fees and costs incurred over the last five months (and indeed *any* of Plaintiffs' legal fees and costs), cannot stand as damages.  *See Thomas v. Baca*, 308 F.App'x 87, 88 (9th Cir. 2009) (legal fees and costs are not cognizable injuries under RICO). Indeed, the Selma Litigation is ongoing, so it remains unknown whether Selma will prevail, or Selma or the City will succeed in winning a sanctions motion or malicious prosecution action to prove it was objectively baseless.  *Id.*  A "risk of loss" is simply not an injury ripe for a RICO claim.  *First Nationwide Bank v. Gelt Funding Corp*, 27 F.3d 763, 769-70 (2d Cir. 1994).

Plaintiffs' FAC alleges verbatim generic "injury" for each cause of action:  "As a direct result of Defendants' unlawful and ongoing threats of extortion in violation of 18 U.S.C. § 1951 and Cal. Penal Code §§ 518, 522, and 524, Plaintiffs [1] have paid money to Defendants, [2] have incurred attorneys' fees and costs in litigating meritless claims, and [3] have lost funding and experienced delays in hotel projects." (FAC, ¶¶98, 115, 131.)

However, (1) Plaintiffs' FAC admits that only Plaintiff Wilcox has made a $5.5 million settlement payment to Defendant Sunset, and concedes that Plaintiffs

Relevant, Tommie, and Sunset have not suffered a concrete financial loss as a result of any action by a Defendant (*see Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1310 (9th Cir. 1992)); (2) none of Plaintiffs' attorneys' fees and costs are injuries under RICO (*Thomas*, 308 F.App'x at 88); and (3) Plaintiffs' FAC does not allege which Plaintiffs have lost funding as a direct result of specific criminal actions by each Defendant, and does not even allege that any Plaintiff has suffered a concrete financial loss as a result of "lost funding" and "delays in hotel projects."  This is because the Plaintiffs cannot do so, especially considering that Relevant Group publicized its receipt of a $63 million loan in February 2019.  (Ex. "L" to Hipps Dec., ¶ 16.) Moreover, the other lawsuits involving Plaintiffs' developments lasted much longer than Sunset's, and the rulings in those cases reveal that Plaintiffs' *CEQA violations* caused the purported delays.  In fact, on December 19, 2018, the superior court issued a ruling after trial in the Farmer Tommie Litigation, finding, in part, that the Tommie project's "CEQA analysis of construction and operational noise was defective" and issued an Interlocutory Remand Order to the City, including an injunction, and in May 2019 issued various orders concerning the construction and its noise. (Exs. "10" & "14" to RJN ¶10, 14.)  The Farmer Tommie Litigation was filed *before* Sunset's Tommie Litigation, and was made final about a year *after* Sunset and Tommie settled the Sunset Tommie Litigation. (*Id.* at ¶¶8-9.) For many reasons, the conclusory allegation that Plaintiffs "have lost funding and experienced delays in hotel projects" is the type of injury the Ninth Circuit deems an inadequate pleading of proximate cause.  Moreover, "[t]he Ninth Circuit, as well as other circuits, has held that Rule 11 sanctions may be appropriate when a RICO complaint consists of conclusory or otherwise improper allegations. *Pioneer Lumber Treating, Inc. v. Cox*, 5 F.3d 539 (1993)(unpublished)(*citing Stitt v. Williams,* 919 F.2d 516, 528 (9th Cir.1990); *Avirgan v. Hull,* 932 F.2d 1572, 1581–83 (11th Cir.1991), *cert. denied,* 112 S.Ct. 913 (1992) (sanctions exceeding $1 million against plaintiffs in civil RICO action).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS

**5.**   **Any Reasonable And Competent Inquiry Would Have Revealed That *Res Judicata* Bars This Action.**

"If a party pleads a claim that is clearly barred by res judicata, that may be grounds for sanctions under Rule 11." *Joseph v. Linehaul Logistics, Inc.*, 291 F.R.D. 511, 516 (D. Mont. 2013). A complaint is barred by *res judicata* where there were several prior suits on the same claim. *See Bethesda Lutheran Homes & Services, Inc. v. Born*, 238 F.3d 853, 859 (7th Cir. 2001). "For the purposes of res judicata, a claim is not an argument or a ground but the events claimed to give rise to a right to a legal remedy." *Id.*

Here, the events claimed to give rise to predicate acts, that of Sunset's allegedly "sham" lawsuits, were known to the Plaintiffs when their managing member signed the settlement agreements. California recognizes causes of action for the filing of frivolous or sham lawsuits. Accordingly, Plaintiffs should have brought their claims asserting that Defendants were filing sham lawsuits when Sunset filed those alleged "sham" lawsuits. Plaintiffs did not and *res judicata* prevents them from now raising this allegation for the *first time* in federal court. Any reasonable and competent inquiry would have revealed this deficiency to Plaintiffs' counsel. Therefore, this Court should award sanctions not only under res judicata, but for improper forum shopping. *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.* 886 F.2d 1485, 1492 (affirming sanctions where second complaint filed in part to shop for a different forum); *Mitan v. Int'l Fidelity Ins. Co.*, 23 Fed.Appx. 292, 294-95, 298-99 (6th Cir. 2001).

**C.**   **Plaintiffs' Claims Have an Improper Purpose (Rule 11(b)(1))**

Plaintiffs have forum shopped their way into federal court without first moving to set aside the settlement agreements because their true objective is to use the stigma of RICO as a sword to harass Sunset into dismissing the Selma Litigation.  To that end, Plaintiffs and their counsel have violated both the confidentiality and non-publication clauses of the settlement and release agreements.  The end goal does not justify the means.

It is egregious that Plaintiffs and their attorneys are still pursuing this action given that one of **Plaintiffs' representatives has admitted** both verbally and in writing **that Plaintiffs only brought this RICO lawsuit to leverage a dismissal of the Selma Litigation.** Forwarding an article entitled, "LA Developer Accuses Rival Of Using CEQA For Extortion," which Mr. Heyman touted as, "[j]ust the start of press," and dated the same day the Complaint was filed, June 10, 2019, Selma's organizer, Elias Shokrian, wrote to Myra Nourmand (the wife of Saeed and mother of Michael):

> SHAME, SHAME, SHAME ON ALL OF YOU!!! I know you don't care because that's what you told me when I called you and asked you to get together with you and Saeed to discuss this amicably . . . **I strongly suggest that Saeed drops his extortion law suit for his own as well as for your family name** otherwise this is going to get very ugly for your entire family . . .

(Myra Decl., Ex. "A.") In addition to organizing Selma, Mr. Shokrian is also a member Wilcolsel, LLC, a member of Selma. (RJN, ¶¶ 19-22; Exs. "18"-"21.")

Purely to make things "very ugly" for the "entire family," Plaintiffs and their attorneys named *the individual* who manages Sunset, the only Defendant who has ever brought CEQA cases involving three of the four parties to this action, Saeed Nourmand, in his individual capacity. Plaintiffs and their attorneys named Saeed Nourmand's son Michael as a Defendant, without making a single specific allegation against him, as part of their strategy to make things "very ugly" for the "entire [Nourmand] family."

Plaintiffs and their attorneys trumpeted the filing of this action with a coordinated and concerted press strategy led by a public relations firm that has a relationship with Akin Gump, the firm representing Plaintiffs in this action, and Sheppard Mullin, one of two law firms representing Plaintiffs Wilcox and Tommie in the underlying CEQA cases and settlement negotiations (along with Jeffer Mangels). (Hipps Decl., ¶¶ 8-15, Exs. "D"-"K.")

The goal of harassment continues. Plaintiffs and their representatives have continued to threaten the extended Nourmand family, such as in a July 23, 2019 email to Myra Nourmand forwarding an article entitled, **"CEQA Meets RICO: True Stories Of Extortion And Litigation Abuse In Tinseltown,"** which Plaintiff Relevant Group's managing partner, Richard Heyman, gleefully flaunted as, "More negative exposure for the Nourmand's!"  (Ex. "B" to Myra Decl., ¶ 3.)

Admissions or other evidence that a plaintiff filed a lawsuit for an improper purpose, such as to freeze or delay other court actions, warrants sanctions under Rule 11.  *Pioneer Lumber Treating, Inc. v. Cox*, 5 F.3d 539 (1993)(unpublished)(upholding sanctions order against plaintiff who filed a RICO case to freeze a state court action and bankruptcy action)(*citing In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir.1988); *In re Indian Rocks Landscaping of Indian Rocks Beach, Inc.,* 77 B.R. 909 (Bankr.M.D.Fla.1987).

## V.   S DEFENDANTS ARE ENTITLED TO ALL FEES INCURRED IN DEFENDING PLAINTIFFS' CLAIMS

Under these circumstances, this Court has discretion to award S Defendants all of the fees incurred in opposing the Complaint and FAC, both of which lack evidentiary and legal support, which Plaintiffs filed for the purpose of harassing the Defendants after Wilcox and Tommie executed settlement agreements releasing all liability. *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 211 (4th Cir. 1988)["What constitutes reasonable expenses within the context of Rule 11 must be considered in relation with the Rule's goals of deterrence, punishment, and compensation....Rule 11 leave the determination of the 'appropriate sanction' to the sound discretion of the trial court...."]; *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797, 801 (9th Cir. 1986) [awarding "sanctions of $50,102.00 for attorney fees" in opposing single frivolous complaint].)

///

///

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS

## VI.    CONCLUSION

Plaintiffs and their counsel know they face significant liability if the superior court finds they submitted their hotel projects in piecemeal, in violation of CEQA, which is why they will stop at nothing—including a scorched-earth campaign to paint the Defendants and Nourmand family as mafiosos—to try to make that suit go away. Plaintiffs' FAC is part of their publicity stunt, and their actions against Defendants and the extended Nourmand family is the very definition of harassment and the improper use of a pleading.

Plaintiffs' FAC conceals and misrepresents its way around the simple truth: there are not facts to support their allegations of predicate acts or sham litigations. Plaintiffs' claims are plainly defective, frivolous, and serve only to harass Sunset for exercising its right to petition, and those who Plaintiffs think they can use as leverage to get Sunset to drop the Selma Litigation.  Plaintiffs and their counsel of record, Akin Gump Strauss Hauer & Feld LLP, should be ordered to pay S Defendants' reasonable attorneys' fees and other expenses incurred as a direct result of their violation of Rule 11, and the Court should dismiss Plaintiffs' action with prejudice.

Respectfully submitted,

Dated:  September 30, 2019          GREENSPOON MARDER LLP

By: ____/s/ Kathleen C. Hipps_____
            Kathleen C. Hipps
ATTORNEYS FOR DEFENDANTS STEPHAN "SAEED" NOURMAND, AND THE SUNSET LANDMARK INVESTMENT LLC