O

# United States District Court
# Central District of California

RELEVANT GROUP, LLC, et al.,

    Plaintiffs,

    v.

NOURMAND, et al.,

    Defendants.

Case № 2:19-cv-05019-ODW (KSx)

**ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS AND DENYING MOTION FOR SANCTIONS [22, 23, 24, 34]**

## I. INTRODUCTION

Before the Court are three concurrently filed motions: (1) Defendants Nourmand & Associates ("N&A") Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") ("Motion I") (Mot. to Dismiss ("Mot. I"), ECF No. 22); (2) Stephan "Saeed" Nourmand ("Saeed") and The Sunset Landmark Investment LLC ("Sunset") (collectively "Defendants S") Motion to Dismiss Plaintiffs' FAC ("Motion II") (Mot. to Dismiss ("Mot. II"), ECF No. 23); (3) Defendants S Motion to Sanction Plaintiffs ("Motion III"). (Mot. for Sanction ("Mot. III"), ECF No. 34.) For the reasons discussed below, the Motions to Dismiss are **GRANTED** in part, and **DENIED** in part, and the Motion for Sanctions is **DENIED**.[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND

Plaintiffs allege the following facts. Plaintiffs Relevant Group, LLC ("Relevant"), 1541 Wilcox Hotel LLC ("Wilcox"), and 6516 Tommie Hotel LLC ("Tommie") 5421 Selma Wilcox Hotel LLC ("Selma") (collectively "Plaintiffs") are limited liability companies operating in Los Angeles. (First Am. Compl. ("FAC") ¶¶ 10–13, ECF No. 21.) Wilcox, Tommie, and Selma are special purpose entities created to develop properties in Hollywood and are managed by Relevant. (FAC ¶ 14.)

Sunset is a California limited liability company, whereas N&A is a California corporation that functions as a real estate broker. Both Defendants share employees and officers and operate in Los Angeles. (FAC ¶¶ 15, 17.) Saeed is an individual who does business and lives in Los Angeles. (FAC ¶ 16.) According to Plaintiffs, Saeed operates with Sunset and N&A as a unified enterprise ("Nourmand Enterprise") that develop and sell real estate in the Los Angeles area. (FAC ¶ 18.) Plaintiffs allege that Defendants conspired against and extorted millions of dollars from competing developers by reflexively initiating frivolous litigation under the California Environmental Quality Act ("CEQA") without intention of reducing adverse environmental impact. (FAC ¶¶ 2, 23–24.)

As a pattern of conduct, Plaintiffs allege that Defendants targeted developers which they knew were economically vulnerable and dependent upon the development of their property, and thus, susceptible to extortion. (FAC ¶¶ 8, 24, 42, 61, 74.) Defendants would then reflexively initiate and pursue sham CEQA litigation against vulnerable developers with the simple goal of padding their own wallets and securing personal concessions, rather than reducing adverse environmental impact. (FAC ¶ 24.)

Plaintiffs specifically allege four instances where Defendants conspired and extorted from competing developers, aware that Relevant managed three of the four developers. (FAC ¶¶ 39–79.) The first instance occurred on March 3, 2016, when Sunset initiated a lawsuit against the City of Los Angeles naming Wilcox as a real

party in interest. (FAC ¶ 39.) Plaintiffs allege that Sunset advanced meritless arguments to delay the competing development and unlawfully extort millions of dollars. (FAC ¶ 42.) On June 9, 2017, Sunset again initiated a lawsuit against the City of Los Angeles and named Tommie as a real party in interest. (FAC ¶ 60.) Again, Sunset made more of the same meritless arguments. (FAC ¶ 61.) Even though Plaintiffs believed that the CEQA litigation was frivolous and a sham, nevertheless, Plaintiffs decided to negotiate with Defendants. (FAC ¶ 50.) On January 8, 2018, after lengthy negotiations, Sunset, Wilcox and Tommie settled both CEQA actions for $5.5 million and other unrelated CEQA concessions. (FAC ¶¶ 52–55.)

The third incident involved Owners of the Schrader Hotel ("Schrader"). Sunset initiated another frivolous and sham administrative CEQA appeal in attempt to extort monies and unrelated CEQA concessions from Schrader. (FAC ¶¶ 65–66.) Schrader agreed to negotiate only legitimate environmental concerns and "would not negotiate any request . . . unrelated to CEQA." (FAC ¶ 67.) Consequently, Defendants dismissed its administrative CEQA appeal. (FAC ¶ 68.)

The final incident involved, yet again, Sunset filing a lawsuit against the City of Los Angeles naming Selma as a real party in interest. (FAC ¶ 73.) But before Sunset initiated the lawsuit against Selma, Selma met with Saeed to inquire why Sunset had appealed its proposed development. (FAC ¶ 77.) Saeed told Selma, "[y]ou know the drill. It's going to take a check to make this go away." (FAC ¶ 78.) Plaintiffs assert that Saeed's statement establishes that he used the threat of litigation for the sole purpose of extorting money from Selma and not based on any purported concern regarding environmental impacts. (FAC ¶ 78.) Defendants filed suit against Selma on April 2, 2019. Selma refused to settle the lawsuit because it allegedly contained sham environmental concerns. (FAC ¶ 79.)

Ultimately on June 10, 2019, Plaintiffs filed suit against Defendants and filed a first amended complaint ("FAC") alleging three counts of conspiracy to violate the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), and extortion

in violation of California Penal Code sections 518, 522–24. (FAC ¶¶ 80–131.) Defendants now move to dismiss Plaintiffs' claims and seek sanctions for violation of Federal Rules Civil Procedure ("Rule") 11. (Mot. I; Mot. II; Mot. III.) The Court now turns to the Parties' arguments.

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A court may also dismiss a complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).

To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These factual allegations must provide fair notice and enable the opposing party to defend itself effectively. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 688. But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, leave to amend a complaint that has been dismissed should be

freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### IV. REQUESTS FOR JUDICIAL NOTICE

The Court may take judicial notice of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court shall take judicial notice of such a fact if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d). "A trial court may presume that public records are authentic and trustworthy." *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999).

Here, the parties submitted dozens of documents that they claim are relevant to the underlying evidence regarding the facts in dispute. (Req. for Jud. Not., ECF Nos. 22-3, 23-3, 23-4, 24.) The Court **DENIES** the requests, as the documents are hotly disputed, and the full record of events has yet to be established in this case. *See In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996), *rev'd on other grounds sub nom. Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) (courts generally cannot consider materials outside of the complaint in ruling on a Rule 12(b)(6) motion to dismiss).

### V. DISCUSSION

Defendants assert five arguments as to why this Court should dismiss Plaintiffs' FAC, they include (1) the *Noerr-Pennington* doctrine; (2) Plaintiffs released their RICO claims; (3) Prudential and Abstention doctrines; (4) Plaintiffs lack standing; and (5) Plaintiffs fail to adequately plead RICO claims. (Mot. I 2; Mot. II 2–3.) The Court shall address each argument in turn.

### A. *Noerr-Pennington* Doctrine

The Court begins by considering the threshold issue whether the *Noerr-Pennington* doctrine immunizes Defendants from RICO liability.

"Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The Supreme Court has since applied *Noerr-Pennington* principles outside the antitrust field based on the First Amendment Petition Clause. *Id.* at 929–30; *see also Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 648 (9th Cir. 2009) (the doctrine was subsequently extended to bar other causes of action brought against a protected petitioner, including RICO actions). However, "courts rarely award *Noerr-Pennington* immunity at the motion to dismiss stage, where the Court must accept as true the non-moving party's well-pleaded allegations with respect to sham litigation." *In re Outlaw Lab., LP Litig.*, No. 3:18-CV-1820-GPC-BGS, 2019 WL 1205004, at *5 (S.D. Cal. Mar. 14, 2019)

Defendants argue that *Noerr-Pennington* doctrine immunizes their act of petitioning CEQA lawsuits, and thus, Plaintiffs' RICO claims are barred. (Mot. I 7–9; Mot. II 8–10.) Plaintiffs argue not so because Defendants CEQA petitions are "reflexive sham environmental lawsuits for the sole purpose of delaying the development of competing properties," thus the doctrine is inapplicable. (FAC ¶ 2.)

In the context of litigation, the Ninth Circuit has identified three types of situations in which the sham exception to *Noerr-Pennington* immunity may apply: (1) "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful"; (2) "where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose"; and (3) "if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive

1  the litigation of its legitimacy." *Sosa*, 437 F.3d at 938 (internal quotation marks and
2  citations omitted). Here, only the first two exceptions are relevant.

3  **Under the first exception, there is a two-part test for whether something
4  meets the definition of "sham" litigation: (1) "the lawsuit must be objectively
5  baseless in the sense that no reasonable litigant could realistically expect success
6  on the merits[;]" and (2) "whether the baseless lawsuit conceals an attempt to
7  interfere directly with the business relationships of a competitor." *Prof'l Real
8  Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993).
9  However, the strict two-part analysis from *Prof'l Real Estate Inv'rs* does not
10 apply under the second exception, known as the *USS-POSCO* exception. *USS-
11 POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO*,
12 31 F.3d 800, 810–11 (9th Cir. 1994). Instead, "the question is not whether any
13 one [suit] has merit . . . but whether they are brought pursuant to a policy of
14 starting legal proceedings without regard to the merits and for the purpose of
15 injuring a market rival." *Int'l Longshore & Warehouse Union v. ICTSI Oregon,
16 Inc.*, 863 F.3d 1178, 1187 (9th Cir. 2017) (internal citations omitted). In such a
17 context, the legal success of an occasional sham suit is irrelevant. *Id.***

18  Regardless of which exception may apply, Defendants assert that Plaintiffs have
19 not met their burden to satisfy either exception. (Mot. I 7–9; Mot. II 8–10.) **Plaintiffs
20 argue that they need only satisfy the *USS-POSCO* exception, as they allege a
21 series of improper lawsuits. (Opp'n to Mot. I ("Opp'n I") 6, ECF No. 27; Opp'n
22 to Mot. II ("Opp'n II") 4, ECF No. 26.)** As an initial matter the Court shall
23 determine whether the *Prof'l Real Estate Inv'rs* exception or *USS-POSCO*
24 exception applies.

25  **The Ninth Circuit has not established how many lawsuits are required to
26 meet the pleading requirements of a "pattern" such that *Prof'l Real Estate
27 Inv'rs*'s strict two-part analysis is not applied. *Compare USS-POSCO Indus.*, 31
28 F.3d at 811 (finding twenty-nine lawsuits potentially a "pattern"), *with Amarel v.***

*Connell*, 102 F.3d 1494, 1519 (9th Cir. 1996) ("Although we do not attempt to define here the number of legal proceedings needed to allege a 'series' or 'pattern' of litigation" two lawsuits do not constitute a "pattern"). Rather, the Ninth Circuit and district courts make such determinations on a case by case basis. *See generally Wonderful Real Estate Dev. LLC v. Laborers Int'l Union of N. Am. Local 220*, No. 119CV00416LJOSKO, 2020 WL 91998, at *9–10 (E.D. Cal. Jan. 8, 2020) (collecting cases). To determine whether the *USS-POSCO* exception applies, the Court finds the Third Circuit's decision in *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, persuasive. 806 F.3d 162, 181 (3d Cir. 2015). In *Hanover*, the Third Circuit held that four sham petitions were sufficient to amount to a "series of lawsuits" as required by the *USS-POSCO* exception. *Id.* The Third Circuit made such a determination because plaintiff had sufficiently alleged that defendants filed four sham petitions for the purpose of obstructing plaintiff in obtaining necessary government approvals for a real estate project. *Id.*

Defendants proffer a strawman argument, narrowly focused on the quantity of lawsuits, which is not dispositive to the Court's analysis. (Mot. 9–10.) Again, the question is whether Plaintiff has appropriately alleged that the CEQA suits "are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *USS-POSCO Indus.*, 31 F.3d at 811. According to Plaintiffs, Defendants target competing developers, and initiate or threaten to initiate reflexive sham environmental lawsuits for the sole purpose of delaying the development of competing properties. (FAC ¶¶ 2, 23–33.) Plaintiffs also allege four instances where Defendants initiated such environmental lawsuits for the sole purpose of delaying competing real estate projects and extorting money from competitors. (FAC ¶¶ 1–2, 34–79.) The Court finds that Plaintiffs' allegations are adequate

for the purposes of alleging the *USS-POSCO* sham exception. *Hanover*, 806 at 181.

At the pleading stage, Plaintiffs have sufficiently alleged that Defendants' environmental lawsuits constitute "sham" litigation as an exception to the *Noerr-Pennington* doctrine. *See In re Outlaw Lab.*, 2019 WL 1205004, at *5 (courts rarely award *Noerr-Pennington* immunity at the motion to dismiss stage). **For instance, Plaintiffs allege that Defendants demanded "aesthetic changes" unrelated to environmental concerns to settle lawsuits and told Plaintiffs "[y]ou know the drill. It's going to take a check to make this go away." (FAC ¶¶ 45, 77.)** Accordingly, the *Noerr-Pennington* doctrine does not immunize Defendants from RICO liability, therefore, Defendants' motion to dismiss premised upon the *Noerr-Pennington* doctrine is **DENIED**.

B.   Release of RICO Claims

Defendants further argue that Wilcox and Tommie released their RICO claims upon execution of the settlement agreements with Sunset, and thus Plaintiffs' RICO claims fail. (Mot. II 10–11.) Plaintiffs oppose by arguing that the releases contained in the Wilcox and Tommie settlement agreements were expressly limited, and Defendants had not yet attempted to extort Selma. (Opp'n II 11.)

In a motion to dismiss, a court may consider only the content of the pleadings. *See* Fed. R. Civ. P. 12(d) (noting that if the court considers evidence beyond the pleadings, the motion is one for summary judgment). However, the scope of the pleadings includes documents that are incorporated by reference into the pleadings. Fed. R. Civ. Pro. 10(c). Here, the parties have incorporated the Wilcox and Tommie agreements executed with Sunset, accordingly, the Court takes notice of their existence. However, the Court finds that the agreements are susceptible to interpretations other than the one set forth by Defendants, and thus, declines to make such a determination at the pleading stage where the court must construe the complaint in the light most favorable to Plaintiff. *See Prime Healthcare Serv., Inc. v.*

*Illinois Union Ins. Co.*, No. 2:19-CV-2242-RGK-PJW, 2019 WL 6729700, at *2–3 (C.D. Cal. Oct. 3, 2019) (declining to make a contractual interpretation where the writing was susceptible to two or more reasonable interpretations.). Therefore, Defendants motion to dismiss premised upon the release of RICO claims is **DENIED** at this stage of litigation.

### C. Choice of Law, Res Judicata, *Younger* Abstention

*1. Choice of Law*

Defendants absurdly argue Plaintiffs' claims are barred from federal court because the Wilcox and Tommie agreements contain choice of law clauses. (Mot. II 21.) Plaintiffs correctly point out that Defendants have conflated a choice-of-law clause with a forum selection clause. (Opp'n II 23.) To educate, "a forum selection clause designates the state or court where litigation may be brought, while a choice-of-law clause identifies the substantive law that will be applied." *Khokhar v. Yousuf*, No. C 15-06043-SBA, 2017 WL 3535055, at *3 (N.D. Cal. Aug. 16, 2017). Bordering the line of frivolous, Defendants argument is rejected and their request to dismiss Plaintiffs' complaint premised on a choice of law clause is **DENIED**.

*2. Res Judicata*

Defendants next argue that *res judicata* bars Plaintiffs' RICO claims because they should have brought their RICO claims in the earlier state court action. (Mot. II 22.) Plaintiffs argue that neither identity of claims nor privity exist between Parties, and thus, *res judicata* is inapplicable. (Opp'n II 23.) "*Res judicata* is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). "Identity of claims exists when two suits arise from the same transactional nucleus of facts. Newly articulated claims based on the same nucleus of facts may still be subject to a *res judicata* finding if the claims could have been brought in the earlier action." *Id.*

Here, Plaintiffs RICO claims are not based on the same nucleus of facts as Sunset's CEQA lawsuits. For instance, Plaintiffs allege: (1) new Defendants in addition to Sunset, (2) Defendants functioned as an enterprise, (3) Defendants engaged in repeated acts of racketeering, (4) Saeed stated "[y]ou know the drill. It's going to take a check to make this go away." (*See generally* FAC.) These facts are not of the same nucleus of facts as Sunset's CEQA lawsuits filed against the City of Los Angeles. *Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1077 (stating "[i]dentity of claims exists when two suits arise from the same transactional nucleus of facts.") Furthermore, only after settling the state court actions did Saeed make the alleged statement, consequently, Plaintiffs could not have brought their claims in the prior actions. *Id.* (finding that *res judicata* applies if claims could have been brought in the earlier action.) As Plaintiffs' RICO claims are not barred by *res judicata*, therefore, Defendants motion to dismiss premised upon that doctrine is **DENIED**.

3. *Younger Abstention*

The *Younger* abstention is narrow and limited to "three exceptional categories" of proceedings: (1) "parallel, pending state criminal proceeding[s]," (2) "state civil proceedings that are akin to criminal prosecutions," and (3) state civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013).

Defendants assert that the third category applies because the underlying CEQA cases involves California's interest in enforcing its environmental laws, thus the *Younger* abstention bars Plaintiffs' RICO claims. (Mot. II 23.) The Plaintiffs argue that *Younger* does not bar their RICO claims because the underlying CEQA litigation is neither a quasi-criminal action nor involves California's interest in enforcing the orders and judgments of its Courts. (Opp'n II 23–24.)

The Ninth Circuit has held that it is not the bare subject matter of the underlying state law that is tested to determine whether the state proceeding implicates an important state interest for *Younger* purposes. *Potrero Hills Landfill, Inc. v. Cty. of*

*Solano*, 657 F.3d 876, 884 (9th Cir. 2011). "Rather, the content of state laws becomes 'important' for *Younger* purposes only when coupled with the state executive's interest in enforcing such laws." *Id*.

Here, Defendants have not met its burden to establish that the City of Los Angeles has taken an enforcement posture, rather, Defendants sued the City of Los Angeles for failing to take an enforcement posture. *Id*. (finding *Younger* inapplicable because the county had not taken action to enforce the state law against the parties, thus, the county had not taken an enforcement posture); (Mot. II 23.) As the City of Los Angeles has not taken an enforcement posture and Defendants are the ones taking action, the Court finds that *Younger* is inapplicable. *See Potrero Hills Landfill, Inc.*, 657 F.3d at 882 ("a private litigant's interest in seeing such measures enforced . . . does not implicate the principles of comity and federalism with which *Younger* and its progeny are concerned."). Therefore, Defendants' motion to dismiss premised upon the *Younger* abstention is **DENIED**.

**D.     RICO Claims**

To state a RICO claim Plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014). In addition, a plaintiff only has standing if the RICO predicate offenses were both the "but for" and proximate cause of an injury to plaintiff's business or property. *See* § 1964(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("[P]laintiff only has standing if . . . he has been injured in his business or property by the conduct constituting the violation.")

Defendants assert that Plaintiffs neither have standing nor have adequately pled the elements of a RICO claim. The Court shall now address each issue in turn.

   1. *Standing to Assert RICO Claims*

To allege civil RICO standing under 18 U.S.C. § 1964(c), a "plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was [brought about] 'by reason of' the RICO violation.'" *Canyon Cty v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008). To determine whether a plaintiff has sufficiently alleged injury to his business or property, our circuit requires that a plaintiff asserting injury to property allege concrete financial loss. *Id*. "[B]y reason of" requires the plaintiff to establish proximate causation. *Id*. "Proximate causation requires some direct relation between the injury asserted and the injurious conduct alleged." *Id*.

Defendants assert Plaintiffs lack standing to assert RICO claims because Plaintiffs fail to adequately allege any harm to any specific business or property. (Reply to Opp'n II (Reply II) 10–11, ECF No. 31.) Plaintiffs argue their attorneys' fees and costs constitute a concrete financial loss because they were incurred responding to Defendants' sham CEQA lawsuits. (Opp'n II 21.) Courts have previously held that attorneys' fees incurred in fighting "frivolous lawsuits" initiated by the defendants qualify as an injury to business or property. *See In re Outlaw Lab., LP Litig.*, 2020 WL 1953584, at * 9–10 (holding that attorneys' fees quality as injury to business and property when a plaintiff alleges that the process of litigating a lawsuit is part and parcel of the scheme) (collecting cases). Moreover, Plaintiffs allege Defendants' conduct inflicted harm to their business by causing loss of funding and other income associated with the delays to their developments. (FAC ¶¶ 50, 98.) Accordingly, the Court finds that Plaintiffs have adequately alleged harm that qualifies as injury to Plaintiffs' business or property.

Lastly, Defendants assert that Plaintiffs lacks standing because it cannot meet the causation requirement. (Mot. II 18–19.) Again, by reason of Defendants' scheme of filing sham CEQA lawsuits against Plaintiffs, Plaintiffs have, at a minimum, sustained damages in the form attorneys' fees. (Opp'n II 21.) Therefore, Plaintiffs have demonstrated a direct relation between the injury they have asserted, and the

injurious conduct alleged. Accordingly, Defendants' motion to dismiss premised upon Plaintiffs' lack of standing is **DENIED**.

### 2. *Whether Plaintiff Adequately Pled RICO Claims*

Here, N&A and Defendants S assert that Plaintiffs have failed to adequately allege an enterprise. First, the FAC is silent on any specific factual allegations pertaining to the actions of N&A, other than providing a conference room for Defendants S and Plaintiffs to meet. (Mot. I 6; Mot. II 17.) Second, Plaintiffs have failed to allege sufficient facts establishing Defendants' participation in the operation or management of the enterprise itself. (Mot. II 17.) Accordingly, Defendants' argue that Plaintiffs have failed to adequately allege an ongoing organization.

A RICO claim requires a plaintiff to plead the existence of an "enterprise" within the meaning of 18 U.S.C. § 1961(4). An enterprise may be a legal entity, or it may be an association-in-fact. 18 U.S.C. § 1961(4). "[A]n associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007). To allege an association-in-fact, the complaint must (1) describe "a group of persons associated together for a common purpose of engaging in a course of conduct," (2) provide both evidence of an ongoing organization, formal or informal, and (3) evidence that the various associates function as a continuing unit. *Id*. at 552 (citing *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)).

Plaintiffs assert that it has adequately satisfied the ongoing organization prong by alleging that N&A held a meeting in its offices between Defendants S and Plaintiffs, where N&A holds out Saeed as its founder, and N&A participated in the racketeering activity. (FAC ¶¶ 1, 17, 49, 83, 102; Opp'n I 4.) However, the Court finds Plaintiffs allegations insufficient to establish an ongoing organization between Defendant S and N&A. An ongoing organization is "a vehicle for the commission of two or more predicate crimes." *Odom*, 486 F.3d at 551. Here, the FAC does not contain factual allegations explaining N&A's role in the "enterprise" nor explain how

the act of holding a meeting in its office is a predicate crime. *Gomez v. Guthy-Renker, LLC*, No. 14-CV-01425-JGB (KKx), 2015 WL 4270042, at *10 (C.D. Cal. July 13, 2015) (listing cases that have dismissed RICO claims based on failure to allege an enterprise's structure and organization). Accordingly, the Court finds that Plaintiffs have not adequately pled the enterprise prong of a RICO claim. Therefore, Defendants' motion to dismiss premised upon failure to adequately plead a RICO claim is **GRANTED**. However, the Court finds it conceivable that Plaintiffs could amend the pleadings to allege facts to establish RICO violations against Defendants, and thus, **GRANTS** leave to amend.

### E.    SANCTIONS

Defendants move for sanctions against Plaintiffs pursuant to Rule 11. Defendants provide three arguments why the Court should levy sanctions. (Mot. III 11–24.) First, Plaintiffs misrepresented multiple facts and failed to perform a reasonable and competent inquiry. (Mot. III 11–14.) Second, Plaintiffs' claims are not legally warranted. (Mot. III 15–22.) Third, by using this RICO action as a sword to harass Defendants, Plaintiffs' claims have an improper purpose. (Mot. III 22–24.)

The reasons proffered by Defendants are all dead-on arrival. The bulk of these arguments are simply a rehash of Defendants motion to dismiss. (*Compare* Mot. III, *with* Mot. II.) For the reasons set forth above, the latter two arguments fail. Regarding Defendants' first argument, the Court cautions Defendants again, that their argument borders the line of frivolous. The FAC explicitly states "agreement." (FAC ¶¶ 45, 46, 55.) Accordingly, the Court finds that Plaintiff did not conceal the existence of the settlement agreement, but instead expressly disclosed the agreement's existence. (FAC ¶¶ 45, 46, 55, 62.) Moreover, at the pleading stage the court declines to look beyond the pleading and make determinations of facts as to whether the settlement agreement contained environmental concessions, a hotly disputed topic. (Mot. III 14.) Lastly, Defendants cite to no legal authority supporting the proposition that Plaintiffs are required to disclose other CEQA cases filed against Plaintiffs. (Mot.

III 15.) Accordingly, this argument also fails. Therefore, Defendants motion for sanctions is **DENIED**.

Parties are cautioned that this Court shall not tolerate frivolous filings or arguments, bad faith negotiation tactics, or the use of ellipses to mischaracterize statements. Future conduct that abut these affronts to the Court may result in Parties being ordered to show cause as to why the Court should not issue sanctions.

## VI. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendants' Motion to Dismiss (ECF Nos. 22, 23); **DENIES** Defendants' Motion for Sanctions (ECF No. 34); **DENIES** Defendants' Motion for in camera review at the pleading stage. (ECF No. 24.) Lastly, the Court **GRANTS** Plaintiff leave to amend their FAC. Said amended pleading shall be filed within 21 days of this order.

**IT IS SO ORDERED.**

May 18, 2020

_____
      **OTIS D. WRIGHT, II**
  **UNITED STATES DISTRICT JUDGE**