1  JAMES H. TURKEN (SBN 89618)
   james.turken@gmlaw.com
2  JAYESH PATEL (SBN 132939)
   jay.patel@gmlaw.com
3  BLAKE L. OSBORN (SBN 271849)
   blake.osborn@gmlaw.com
4  MICHAEL J. DAILEY (SBN 301394)
   michael.dailey@gmlaw.com
5  **GREENSPOON MARDER LLP**
   1875 Century Park East, Suite 1900
6  Los Angeles, California 90067
   Telephone: 323.880.4520
7  Facsimile: 954.771.9264

8  *Attorneys for Defendants*
   *Stephan Saeed Nourmand and The Sunset*
9  *Landmark Investment, LLC*

10            **UNITED STATES DISTRICT COURT**

11        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12

13
   RELEVANT GROUP, LLC, a Delaware          | **Case No. 2:19-cv-05019-ODW (KSx)**
14 limited liability company; 1541 WILCOX   |
   HOTEL LLC, a Delaware limited liability  | [Hon. Judge Otis D. Wright, II]
15 company; 6516 TOMMIE HOTEL LLC, a        |
   Delaware limited liability company; and  | **DEFENDANTS STEPHAN**
16 6421 SELMA WILCOX HOTEL LLC, a           | **NOURMAND AND THE SUNSET**
   California limited liability company,    | **LANDMARK INVESTMENT,**
17                                          | **LLC'S ANSWER TO**
              Plaintiffs,                   | **PLAINTIFFS' SECOND**
18                                          | **AMENDED COMPLAINT (Dkt.**
        v.                                  | **No. 41)**
19
   STEPHAN "SAEED" NOURMAND, an             |
20 individual; THE SUNSET LANDMARK          | Complaint Filed: June 10, 2019
   INVESTMENT LLC, a California limited     | FAC Filed:       August 30, 2019
21 liability company; and DOES 1-10,        | SAC Filed:       June 3, 2020
22            Defendants.                   |

23

24

25

26

27

28

---

Defendants Stephan Saeed Nourmand ("Stephan") and The Sunset Landmark Investment LLC ("Sunset Landmark") (collectively, "Defendants"), through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby respond to, answer and generally deny Plaintiffs Relevant Group, LLC ("Relevant"), 1541 Wilcox Hotel LLC ("Wilcox"), 6516 Tommie Hotel LLC ("Tommie"), and 6421 Selma Wilcox Hotel LLC's ("Selma") (collectively, "Plaintiffs") Second Amended Complaint ("SAC") filed on June 3, 2020 (Dkt. No. 41).  As to any part of the SAC not specifically admitted, denied, or discussed with respect to Defendants, Defendants hereby deny said allegations, including, but not limited to, any allegation contained in the SAC's preamble, headings, subheadings, and wherefore clause.  Further, any averments in the SAC to which no responsive pleadings are capable or required shall be deemed denied.  Defendants further deny Plaintiffs' characterization and repeated use of the term "Nourmand Enterprise" in every paragraph that it appears in the SAC as no such enterprise exists, it is misleading, and it is a legal conclusion designed to presume a necessary element that Plaintiffs must prove in their case in chief.  Further, any admission in this response is limited to the expressed language used herein and shall not be deemed an admission of additional facts.  Defendants hereby respond as follows:

## SUMMARY OF THE ACTION

1.   Defendants deny the allegations contained in paragraph 1 of the SAC.

2.   Defendants admit that Stephan is a member of Sunset Landmark, and that Robert P. Silverstein ("Silverstein") has worked as an attorney for Sunset Landmark, but deny the remaining allegations in paragraph 2 of the SAC, including the descriptions and characterizations of any actions undertaken by those referenced. Defendants further deny that any "Nourmand Enterprise" exists.

3.   Defendants deny the allegations contained in paragraph 3 of the SAC.

4.   Defendants deny the allegations contained in paragraph 4 of the SAC.

5.   Defendants admit that Sunset Landmark presently engages The

Silverstein Law Firm and its principal Silverstein on a single pending legal matter, that The Silverstein Law Firm is known in the CEQA space, but deny the remaining allegations in paragraph 5 of the SAC, including the descriptions and characterizations of any actions undertaken by those referenced.  Defendants further deny that any "Nourmand Enterprise" exists.

6.    Defendants deny the allegations contained in paragraph 6 of the SAC.

7.    Defendants admit that Relevant purports to develop hotels, restaurants, and entertainment venues as its business.  Defendants further admit that a Plaintiff opened the Dream Hollywood Hotel, that Wilcox has a project for the Thompson Hotel, and that Tommie has a project for the Tommie Hotel.  Defendants further admit that the projects by Wilcox and Tommie abut the property owned by Sunset Landmark.  Defendants also admit that the project by Selma for the Selma Hotel and the Dream Hollywood Hotel are within one block of the property owned by Sunset Landmark.  Defendants deny that Relevant, or any Plaintiff, is a common target of Defendants.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7 of the SAC, and therefore deny such allegations.  Defendants further deny that any "Nourmand Enterprise" exists.

8.    Defendants admit that Sunset Landmark opposed certain aspects of the development of the two hotels owned by Wilcox and Tommie, and filed two separate lawsuits against each one.  On the eve of trial in Sunset Landmark's lawsuit against the City of Los Angeles with Wilcox as the real party in interest, the court issued a tentative ruling, denying the City of Los Angeles's motion to augment the record because the City of Los Angeles did not follow standard procedures to inform the public of the design changes to Wilcox's hotel project, it would be misleading to permit the inclusion of non-record materials to strengthen the City's and Real Party's argument that the public should have known about the design changes, and further that these last-minute design changes were not published in the manner required by

CEQA.  After the tentative ruling on the eve of trial in Sunset Landmark's litigation against the City of Los Angeles with Wilcox as the real party in interest was in favor of Sunset Landmark, Wilcox and Sunset Landmark had certain settlement discussions for that litigation.  During these discussions, Wilcox demanded that any settlement with Sunset Landmark be a global settlement so as to include Tommie and to settle Sunset Landmark's litigation against Tommie at the same time.  The parties then reached two settlement agreements simultaneously – one between Wilcox and Sunset Landmark, and one between Tommie and Sunset Landmark – which both referenced the Parties desire to resolve and settle fully and finally both litigations.  As part of that global settlement of both litigations, there was a single payment made by Wilcox of $5.5 million for the benefit of both Wilcox and Tommie.  Each of Wilcox and Tommie's share of that payment was to be determined exclusively by Wilcox and Tommie.  As part of that global settlement agreement, Wilcox agreed to certain concessions regarding the height of the hotel, light well dimensions, hotel setback, hotel balconies and windows, hotel loading, drop off and trash removal, and rooftop noise levels and hours of operation.  As part of that global settlement agreement, Tommie also agreed to certain concessions regarding the hotel loading, drop off, and trash removal, stairwell and set back, rooftop noise levels and hours of operation. Wilcox and Tommie further both agreed to negotiated tieback agreements, one for each of their hotel projects.  However, the tieback agreement for Tommie was the only one signed and recorded because Wilcox had already excavated its property to comply with certain measures such that the tieback agreement was no longer necessary at the time of execution of the settlements.  All of the above was the consideration for mutual releases and dismissals of Sunset Landmark's lawsuits against real parties in interest Wilcox and Tommie.  Defendants deny the remaining allegations in paragraph 8 of the SAC, including the descriptions and characterizations of any actions undertaken by those referenced.  Defendants further deny that any "Nourmand Enterprise" exists.

9.     Defendants admit that Sunset Landmark and Wilcox—not Relevant—and that Sunset Landmark and Tommie—not Relevant—both reached two arms'-length confidential settlements as part of a global settlement, which contained full releases, tieback agreements, and environmental concessions by Wilcox and Tommie.  As part of that global settlement of both litigations, there was a single payment made by Wilcox of $5.5 million for the benefit of both Wilcox and Tommie.  Each of Wilcox and Tommie's share of that payment was to be determined exclusively by Wilcox and Tommie.  As part of that global settlement agreement, Wilcox agreed to certain concessions regarding the height of the hotel, light well dimensions, hotel setback, hotel balconies and windows, hotel loading, drop off and trash removal, and rooftop noise levels and hours of operation.  As part of that global settlement agreement, Tommie also agreed to certain concessions regarding the hotel loading, drop off, and trash removal, stairwell and set back, rooftop noise levels and hours of operation.  Wilcox and Tommie further both agreed to negotiated tieback agreements, one for each of their hotel projects.  However, the tieback agreement for Tommie was the only one signed and recorded because Wilcox had already excavated its property to comply with certain measures such that the tieback agreement was no longer necessary at the time of execution of the settlements.  All of the above was the consideration for mutual releases and dismissals of Sunset Landmark's lawsuits against real parties in interest Wilcox and Tommie.  Defendants deny the remaining allegations in paragraph 9 of the SAC, including the descriptions and characterizations of any actions undertaken by those referenced.  Defendants further deny that any "Nourmand Enterprise" exists.

10.     Defendants admit that Sunset Landmark filed suit against the City of Los Angeles on April 2, 2019, naming Selma as a real party in interest (the "Selma Litigation"), more than a year after Wilcox wired its last installment of settlement monies to Sunset Landmark.  The Selma Litigation asserted CEQA-related claims, including the allegation that Relevant created shell corporations to submit the

Selma/Thompson/Tommie hotel projects to the City of Los Angeles in piecemeal, in violation of CEQA, and to circumvent an accurate environmental assessment. Defendants deny the remaining allegations contained in paragraph 10 of the SAC, including that any "Nourmand Enterprise" exists.

11.     Defendants deny the allegations contained in paragraph 11 of the SAC.

12.     Defendants deny the allegations contained in paragraph 12 of the SAC.

13.     Defendants specifically deny the allegations that Maddren was being directed by the alleged "Nourmand Enterprise." Defendants further deny that any "Nourmand Enterprise" exists. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 13 of the SAC, and therefore deny such allegations.

14.     Defendants admit that Sunset Landmark filed a legal challenge to the Selma Hotel on April 2, 2019, naming Selma as a real party in interest, and the lawsuit asserted CEQA-related claims, including the allegation that Relevant created shell corporations to submit the Selma/Thompson/Tommie hotel projects to the City of Los Angeles in piecemeal, in violation of CEQA, and to circumvent an accurate environmental assessment, but deny the remaining allegations contained in paragraph 14 of the SAC.

15.     Defendants deny the allegations contained in paragraph 15 of the SAC.

16.     Defendants deny the allegations contained in paragraph 16 of the SAC.

17.     Defendants deny the allegations contained in paragraph 17 of the SAC.

## THE PARTIES

18.     Defendants cannot admit or deny these allegations defining the entity and how it is related to the other Plaintiffs. To the extent a response is required, Defendants deny paragraph 18 of the SAC. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 18 of the SAC, and therefore deny such allegations.

19.     Defendants cannot admit or deny these allegations defining the entity and

how it is related to the other Plaintiffs.   To the extent a response is required, Defendants deny paragraph 19 of the SAC.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 19 of the SAC, and therefore deny such allegations.

20.   Defendants cannot admit or deny these allegations defining the entity and how it is related to the other Plaintiffs.   To the extent a response is required, Defendants deny paragraph 20 of the SAC.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 20 of the SAC, and therefore deny such allegations.

21.   Defendants cannot admit or deny these allegations defining the entity and how it is related to the other Plaintiffs.   To the extent a response is required, Defendants deny paragraph 21 of the SAC.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 21 of the SAC, and therefore deny such allegations.

22.   Defendants cannot admit or deny these allegations defining the entities, their purpose, how they are managed and how they are interrelated.   To the extent a response is required, Defendants deny paragraph 22 of the SAC.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 22 of the SAC, and therefore deny such allegations.

23.   Defendants admit the allegations contained in paragraph 23 of the SAC.

24.   Defendants admit that Stephan is an individual who resides in Beverly Hills, California, does business in Los Angeles, California, and that he is a member of Sunset Landmark, but deny any remaining allegations contained in paragraph 24 of the SAC.

25.   Defendants neither admit nor deny paragraph 25 of the SAC as it asserts legal conclusions not capable of admission or denial.   To the extent a response is required, Defendants deny paragraph 25 of the SAC.

DEFENDANTS' ANSWER TO PLAINTIFFS' SAC

26.     Defendants admit that The Silverstein Law Firm, APC is a law firm based in Pasadena, California, that Silverstein works there, that the firm's practice areas include CEQA, planning and zoning issues, among several other areas of law. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 26 of the SAC, and therefore deny such allegations.

27.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the SAC, and therefore deny such allegations.

28.     Defendants admit that Nourmand & Associates ("N&A") is a California corporation that functions as a real estate broker, that Michael Nourmand ("Michael") is the son of Stephan, that Stephan was the original founder of N&A, and that Sunset Landmark and N&A have the same registered address.   Defendants deny the remaining allegations contained in paragraph 28 of the SAC.

## JURISDICTION AND VENUE

29.     Defendants admit the Court may have subject matter jurisdiction to consider Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (i.e., "federal question" jurisdiction) to the extent the SAC purports to plead claims for alleged violations of the Racketeering Influenced and Corrupt Practices Act ("RICO"), but does not admit to any actionable conduct.

30.     Defendants neither admit nor deny paragraph 30 of the SAC as it asserts legal conclusions not capable of admission or denial.  To the extent a response is required, Defendants deny paragraph 30 of the SAC.

31.     Defendants neither admit nor deny paragraph 31 of the SAC as it asserts legal conclusions not capable of admission or denial.  To the extent a response is required, Defendants deny paragraph 31 of the SAC.

## THE ENTERPRISE

32.     Defendants deny the allegations contained in paragraph 32 of the SAC.

33.     Defendants admit that Sunset Landmark opposed certain aspects of the development of the two hotels owned by Wilcox and Tommie, and filed two separate lawsuits against each one.  On the eve of trial in Sunset Landmark's lawsuit against the City of Los Angeles with Wilcox as the real party in interest, the court issued a tentative ruling, denying the City of Los Angeles's motion to augment the record because the City of Los Angeles did not follow standard procedures to inform the public of the design changes to Wilcox's hotel project, it would be misleading to permit the inclusion of non-record materials to strengthen the City's and Real Party's argument that the public should have known about the design changes, and further that these last-minute design changes were not published in the manner required by CEQA.  After the tentative ruling on the eve of trial in Sunset Landmark's litigation against the City of Los Angeles with Wilcox as the real party in interest was in favor of Sunset Landmark, Wilcox and Sunset Landmark had certain settlement discussions for that litigation.  During these discussions, Wilcox demanded that any settlement with Sunset Landmark be a global settlement so as to include Tommie and to settle Sunset Landmark's litigation against Tommie at the same time.  The parties then reached two settlement agreements simultaneously – one between Wilcox and Sunset Landmark, and one between Tommie and Sunset Landmark – which both referenced the Parties desire to resolve and settle fully and finally both litigations.  As part of that global settlement of both litigations, there was a single payment made by Wilcox of $5.5 million for the benefit of both Wilcox and Tommie.  Each of Wilcox and Tommie's share of that payment was to be determined exclusively by Wilcox and Tommie.  As part of that global settlement agreement, Wilcox agreed to certain concessions regarding the height of the hotel, light well dimensions, hotel setback, hotel balconies and windows, hotel loading, drop off and trash removal, and rooftop noise levels and hours of operation.  As part of that global settlement agreement, Tommie also agreed to certain concessions regarding the hotel loading, drop off, and trash removal, stairwell and set back, rooftop noise levels and hours of operation.

DEFENDANTS' ANSWER TO PLAINTIFFS' SAC

Wilcox and Tommie further both agreed to negotiated tieback agreements, one for each of their hotel projects.  However, the tieback agreement for Tommie was the only one signed and recorded because Wilcox had already excavated its property to comply with certain measures such that the tieback agreement was no longer necessary at the time of execution of the settlements.  All of the above was the consideration for mutual releases and dismissals of Sunset Landmark's lawsuits against real parties in interest Wilcox and Tommie.  Defendants deny the remaining allegations contained in paragraph 33 of the SAC.

34.    Defendants neither admit nor deny paragraph 34 of the SAC as it asserts legal conclusions and irrelevant argument not capable of admission or denial.  To the extent a response is required, Defendants deny paragraph 34 of the SAC.

35.    Defendants neither admit nor deny paragraph 35 of the SAC as it asserts legal conclusions and irrelevant argument not capable of admission or denial.  To the extent a response is required, Defendants deny paragraph 35 of the SAC.  Defendants further deny that any "Nourmand Enterprise" exists.

36.    Defendants neither admit nor deny paragraph 36 of the SAC as it asserts legal conclusions and irrelevant argument not capable of admission or denial.  To the extent a response is required, Defendants deny paragraph 36 of the SAC.

37.    Defendants neither admit nor deny paragraph 37 of the SAC as it asserts legal conclusions and irrelevant argument not capable of admission or denial.  To the extent a response is required, Defendants deny paragraph 37 of the SAC.

38.    Defendants admit that Sunset Landmark opposed certain aspects of the development of the two hotels owned by Wilcox and Tommie, and filed two separate lawsuits against each one.  On the eve of trial in Sunset Landmark's lawsuit against the City of Los Angeles with Wilcox as the real party in interest, the court issued a tentative ruling, denying the City of Los Angeles's motion to augment the record because the City of Los Angeles did not follow standard procedures to inform the public of the design changes to Wilcox's hotel project, it would be misleading to

permit the inclusion of non-record materials to strengthen the City's and Real Party's argument that the public should have known about the design changes, and further that these last-minute design changes were not published in the manner required by CEQA.  Defendants neither admit nor deny the remaining allegations contained in paragraph 38 of the SAC as it asserts legal conclusions and irrelevant argument not capable of admission or denial.  To the extent a response is required, Defendants deny paragraph 38 of the SAC.  Defendants further deny that any "Nourmand Enterprise" exists.

39.    Defendants neither admit nor deny paragraph 39 of the SAC as it asserts legal conclusions and irrelevant argument not capable of admission or denial.  To the extent a response is required, Defendants deny paragraph 39 of the SAC.

40.    Defendants neither admit nor deny paragraph 40 of the SAC as it asserts legal conclusions and irrelevant argument not capable of admission or denial.  To the extent a response is required, Defendants deny paragraph 40 of the SAC.

41.    Defendants deny the allegations contained in paragraph 41 of the SAC.

42.    Defendants deny the allegations contained in paragraph 42 of the SAC.

43.    Defendants neither admit nor deny paragraph 43 of the SAC as it asserts legal conclusions not capable of admission or denial.   To the extent a response is required, Defendants deny paragraph 43 of the SAC.  Defendants further deny that any "Nourmand Enterprise" exists.

44.    Defendants deny the allegations contained in paragraph 44 of the SAC.

45.    Defendants admit that Sunset Landmark opposed certain aspects of the development of the two hotels owned by Wilcox and Tommie, and filed two separate lawsuits against each one.  On the eve of trial in Sunset Landmark's lawsuit against the City of Los Angeles with Wilcox as the real party in interest, the court issued a tentative ruling, denying the City of Los Angeles's motion to augment the record because the City of Los Angeles did not follow standard procedures to inform the public of the design changes to Wilcox's hotel project, it would be misleading to

permit the inclusion of non-record materials to strengthen the City's and Real Party's argument that the public should have known about the design changes, and further that these last-minute design changes were not published in the manner required by CEQA.  After the tentative ruling on the eve of trial in Sunset Landmark's litigation against the City of Los Angeles with Wilcox as the real party in interest was in favor of Sunset Landmark, Wilcox and Sunset Landmark had certain settlement discussions for that litigation.  During these discussions, Wilcox demanded that any settlement with Sunset Landmark be a global settlement so as to include Tommie and to settle Sunset Landmark's litigation against Tommie at the same time.  The parties then reached two settlement agreements simultaneously – one between Wilcox and Sunset Landmark, and one between Tommie and Sunset Landmark – which both referenced the Parties desire to resolve and settle fully and finally both litigations.  As part of that global settlement of both litigations, there was a single payment made by Wilcox of $5.5 million for the benefit of both Wilcox and Tommie.  Each of Wilcox and Tommie's share of that payment was to be determined exclusively by Wilcox and Tommie.  As part of that global settlement agreement, Wilcox agreed to certain concessions regarding the height of the hotel, light well dimensions, hotel setback, hotel balconies and windows, hotel loading, drop off and trash removal, and rooftop noise levels and hours of operation.  As part of that global settlement agreement, Tommie also agreed to certain concessions regarding the hotel loading, drop off, and trash removal, stairwell and set back, rooftop noise levels and hours of operation. Wilcox and Tommie further both agreed to negotiated tieback agreements, one for each of their hotel projects.  However, the tieback agreement for Tommie was the only one signed and recorded because Wilcox had already excavated its property to comply with certain measures such that the tieback agreement was no longer necessary at the time of execution of the settlements.  All of the above was the consideration for mutual releases and dismissals of Sunset Landmark's lawsuits against real parties in interest Wilcox and Tommie.  Defendants deny the remaining allegations contained in

DEFENDANTS' ANSWER TO PLAINTIFFS' SAC

paragraph 45 of the SAC.

46.    Defendants deny the allegations contained in paragraph 46 of the SAC.

47.    Defendants admit that Silverstein and The Silverstein Law Firm have represented Sunset Landmark in three lawsuits, two of which were settled with mutual general releases of known and unknown claims.  Indeed, after the tentative ruling on the eve of trial in Sunset Landmark's litigation against the City of Los Angeles with Wilcox as the real party in interest was in favor of Sunset Landmark, Wilcox and Sunset Landmark had certain settlement discussions for that litigation.  During these discussions, Wilcox demanded that any settlement with Sunset Landmark be a global settlement so as to include Tommie and to settle Sunset Landmark's litigation against Tommie at the same time.  The parties then reached two settlement agreements simultaneously – one between Wilcox and Sunset Landmark, and one between Tommie and Sunset Landmark – which both referenced the Parties desire to resolve and settle fully and finally both litigations.  As part of that global settlement of both litigations, there was a single payment made by Wilcox of $5.5 million for the benefit of both Wilcox and Tommie.  Each of Wilcox and Tommie's share of that payment was to be determined exclusively by Wilcox and Tommie.  As part of that global settlement agreement, Wilcox agreed to certain concessions regarding the height of the hotel, light well dimensions, hotel setback, hotel balconies and windows, hotel loading, drop off and trash removal, and rooftop noise levels and hours of operation.  As part of that global settlement agreement, Tommie also agreed to certain concessions regarding the hotel loading, drop off, and trash removal, stairwell and set back, rooftop noise levels and hours of operation.  Wilcox and Tommie further both agreed to negotiated tieback agreements, one for each of their hotel projects.  However, the tieback agreement for Tommie was the only one signed and recorded because Wilcox had already excavated its property to comply with certain measures such that the tieback agreement was no longer necessary at the time of execution of the settlements.  All of the above was the consideration for mutual releases and

dismissals of Sunset Landmark's lawsuits against real parties in interest Wilcox and Tommie. Defendants deny the remaining allegations contained in paragraph 47 of the SAC, including the descriptions and characterizations of any actions undertaken by those referenced. Defendants further deny that any "Nourmand Enterprise" exists.

48.      Defendants deny the allegations contained in paragraph 48 of the SAC.

49.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49 of the SAC, and therefore deny such allegations.

50.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50 of the SAC, and therefore deny such allegations.

51.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 of the SAC, and therefore deny such allegations.

52.      Defendants admit that The Silverstein Firm has been retained to represent Sunset Landmark for specific litigation matters.  With respect to the remaining allegations, Defendants are either (a) without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 52 of the SAC, and therefore deny such allegations, or (b) can neither admit nor deny the remaining allegations contained in paragraph 52 of the SAC as it asserts legal conclusions not capable of admission or denial, but to the extent a response is required, Defendants deny paragraph 52 of the SAC.  Defendants further deny that any "Nourmand Enterprise" exists.

53.      Defendants neither admit nor deny paragraph 53 of the SAC as it asserts legal conclusions not capable of admission or denial.  To the extent a response is required, Defendants deny paragraph 53 of the SAC.  Moreover, Defendants are without knowledge or information sufficient to form a belief as to the truth of any allegations concerning Maddren contained in paragraph 53 of the SAC, and therefore

deny such allegations.   Defendants further deny that any "Nourmand Enterprise" exists.

54.   Defendants deny the allegations contained in paragraph 54 of the SAC.

55.   Defendants admit that N&A is a real estate brokerage operated by Michael, Stephan's son, but deny the remaining allegations contained in paragraph 55 of the SAC, including the descriptions and characterizations of any actions undertaken by those referenced.  Defendants further deny that any "Nourmand Enterprise" exists.

## <u>DEFENDANTS' UNLAWFUL CONDUCT</u>

56.   Defendants deny the allegations contained in paragraph 56 of the SAC.

57.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 57 of the SAC, and therefore deny such allegations.

58.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 58 of the SAC, and therefore deny such allegations.

59.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 59 of the SAC, and therefore deny such allegations.

60.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60 of the SAC, and therefore deny such allegations.

61.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 61 of the SAC, and therefore deny such allegations.

62.   Defendants admit that Sunset Landmark filed a lawsuit against the City of Los Angeles, naming Wilcox as a real party in interest, on March 3, 2016, and that Sunset Landmark was represented by Silverstein in that lawsuit.  Defendants further admit that on the eve of trial in Sunset Landmark's lawsuit against the City of Los

Angeles with Wilcox as the real party in interest, the court issued a tentative ruling, denying the City of Los Angeles's motion to augment the record because the City of Los Angeles did not follow standard procedures to inform the public of the design changes to Wilcox's hotel project, it would be misleading to permit the inclusion of non-record materials to strengthen the City's and Real Party's argument that the public should have known about the design changes, and further that these last-minute design changes were not published in the manner required by CEQA.  Defendants deny the remaining allegations contained in paragraph 62 of the SAC.

63.    Defendants admit that Sunset Landmark pursued various legal theories in that litigation including that Wilcox misleadingly submitted amended design plans that were not provided to the public in the manner required by CEQA and for which the Los Angeles Superior Court issued a tentative ruling to that effect on the eve of trial, but deny the remaining allegations contained in paragraph 63 of the SAC, including any descriptions and characterizations of the lawsuit or actions undertaken by those referenced.

64.    Defendants admit that Sunset Landmark pursued various legal theories in that litigation including that Wilcox misleadingly submitted amended design plans that were not provided to the public in the manner required by CEQA and for which the Los Angeles Superior Court issued a tentative ruling to that effect on the eve of trial, but deny the remaining allegations contained in paragraph 64 of the SAC, including any descriptions and characterizations of the lawsuit or actions undertaken by those referenced.

65.    Defendants deny the allegations contained in paragraph 65 of the SAC.

66.    Defendants deny the allegations contained in paragraph 66 of the SAC.

67.    Defendants deny the allegations contained in paragraph 67 of the SAC.

68.    Defendants deny the allegations contained in paragraph 68 of the SAC.

69.    Defendants deny the allegations contained in paragraph 69 of the SAC.

70.    Defendants deny the allegations contained in paragraph 70 of the SAC.

DEFENDANTS' ANSWER TO PLAINTIFFS' SAC

71.     Defendants deny the allegations contained in paragraph 71 of the SAC.

72.     Defendants admit that Guy Maisnik, on behalf of Wilcox, on the one hand, met with Stephan and Jayesh Patel ("Patel"), on behalf of Sunset Landmark, on the other hand, at the offices of N&A at the request of Guy Maisnik.  Defendants deny the remaining allegations contained in paragraph 72 of the SAC.  Defendants further deny that any "Nourmand Enterprise" exists.

73.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73 of the SAC, and therefore deny such allegations.  Defendants further deny that any "Nourmand Enterprise" exists.

74.     Defendants admit that Sunset Landmark opposed certain aspects of the development of the two hotels owned by Wilcox and Tommie, and filed two separate lawsuits against each one.  After the tentative ruling on the eve of trial in Sunset Landmark's litigation against the City of Los Angeles with Wilcox as the real party in interest was in favor of Sunset Landmark, Wilcox and Sunset Landmark had certain settlement discussions for that litigation.  During these discussions, Wilcox demanded that any settlement with Sunset Landmark be a global settlement so as to include Tommie and to settle Sunset Landmark's litigation against Tommie at the same time.  The parties then reached two settlement agreements simultaneously – one between Wilcox and Sunset Landmark, and one between Tommie and Sunset Landmark – which both referenced the Parties desire to resolve and settle fully and finally both litigations.  As part of that global settlement of both litigations, there was a single payment made by Wilcox of $5.5 million for the benefit of both Wilcox and Tommie.  Each of Wilcox and Tommie's share of that payment was to be determined exclusively by Wilcox and Tommie.  As part of that global settlement agreement, Wilcox agreed to certain concessions regarding the height of the hotel, light well dimensions, hotel setback, hotel balconies and windows, hotel loading, drop off and trash removal, and rooftop noise levels and hours of operation.  As part of that global

settlement agreement, Tommie also agreed to certain concessions regarding the hotel loading, drop off, and trash removal, stairwell and set back, rooftop noise levels and hours of operation.  Wilcox and Tommie further both agreed to negotiated tieback agreements, one for each of their hotel projects.  However, the tieback agreement for Tommie was the only one signed and recorded because Wilcox had already excavated its property to comply with certain measures such that the tieback agreement was no longer necessary at the time of execution of the settlements.  All of the above was the consideration for mutual releases and dismissals of Sunset Landmark's lawsuits against real parties in interest Wilcox and Tommie.  Defendants deny the remaining allegations contained in paragraph 74 of the SAC.

75.    Defendants admit that Sunset Landmark opposed certain aspects of the development of the two hotels owned by Wilcox and Tommie, and filed two separate lawsuits against each one.  After the tentative ruling on the eve of trial in Sunset Landmark's litigation against the City of Los Angeles with Wilcox as the real party in interest was in favor of Sunset Landmark, Wilcox and Sunset Landmark had certain settlement discussions for that litigation.  During these discussions, Wilcox demanded that any settlement with Sunset Landmark be a global settlement so as to include Tommie and to settle Sunset Landmark's litigation against Tommie at the same time.  The parties then reached two settlement agreements simultaneously – one between Wilcox and Sunset Landmark, and one between Tommie and Sunset Landmark – which both referenced the Parties desire to resolve and settle fully and finally both litigations.  As part of that global settlement of both litigations, there was a single payment made by Wilcox of $5.5 million for the benefit of both Wilcox and Tommie.  Each of Wilcox and Tommie's share of that payment was to be determined exclusively by Wilcox and Tommie.  As part of that global settlement agreement, Wilcox agreed to certain concessions regarding the height of the hotel, light well dimensions, hotel setback, hotel balconies and windows, hotel loading, drop off and trash removal, and rooftop noise levels and hours of operation.  As part of that global

settlement agreement, Tommie also agreed to certain concessions regarding the hotel loading, drop off, and trash removal, stairwell and set back, rooftop noise levels and hours of operation.  Wilcox and Tommie further both agreed to negotiated tieback agreements, one for each of their hotel projects.  However, the tieback agreement for Tommie was the only one signed and recorded because Wilcox had already excavated its property to comply with certain measures such that the tieback agreement was no longer necessary at the time of execution of the settlements.  All of the above was the consideration for mutual releases and dismissals of Sunset Landmark's lawsuits against real parties in interest Wilcox and Tommie.  Defendants deny the remaining allegations contained in paragraph 75 of the SAC.

76.    Defendants admit that Sunset Landmark, through Patel, responded to an offer by Wilcox in or around June 2019 with its own counteroffer.  Defendants deny the remaining allegations contained in paragraph 76 of the SAC.  Defendants further deny that any "Nourmand Enterprise" exists.

77.    Defendants admit that Sunset Landmark opposed certain aspects of the development of the two hotels owned by Wilcox and Tommie, and filed two separate lawsuits against each one.  On the eve of trial in Sunset Landmark's lawsuit against the City of Los Angeles with Wilcox as the real party in interest, the court issued a tentative ruling, denying the City of Los Angeles's motion to augment the record because the City of Los Angeles did not follow standard procedures to inform the public of the design changes to Wilcox's hotel project, it would be misleading to permit the inclusion of non-record materials to strengthen the City's and Real Party's argument that the public should have known about the design changes, and further that these last-minute design changes were not published in the manner required by CEQA.  After the tentative ruling on the eve of trial in Sunset Landmark's litigation against the City of Los Angeles with Wilcox as the real party in interest was in favor of Sunset Landmark, Wilcox and Sunset Landmark had certain settlement discussions for that litigation.  During these discussions, Wilcox demanded that any settlement

with Sunset Landmark be a global settlement so as to include Tommie and to settle Sunset Landmark's litigation against Tommie at the same time. The parties then reached two settlement agreements simultaneously – one between Wilcox and Sunset Landmark, and one between Tommie and Sunset Landmark – which both referenced the Parties desire to resolve and settle fully and finally both litigations. As part of that global settlement of both litigations, there was a single payment made by Wilcox of $5.5 million for the benefit of both Wilcox and Tommie. Each of Wilcox and Tommie's share of that payment was to be determined exclusively by Wilcox and Tommie. As part of that global settlement agreement, Wilcox agreed to certain concessions regarding the height of the hotel, light well dimensions, hotel setback, hotel balconies and windows, hotel loading, drop off and trash removal, and rooftop noise levels and hours of operation. As part of that global settlement agreement, Tommie also agreed to certain concessions regarding the hotel loading, drop off, and trash removal, stairwell and set back, rooftop noise levels and hours of operation. Wilcox and Tommie further both agreed to negotiated tieback agreements, one for each of their hotel projects. However, the tieback agreement for Tommie was the only one signed and recorded because Wilcox had already excavated its property to comply with certain measures such that the tieback agreement was no longer necessary at the time of execution of the settlements. All of the above was the consideration for mutual releases and dismissals of Sunset Landmark's lawsuits against real parties in interest Wilcox and Tommie. Defendants deny the remaining allegations contained in paragraph 77 of the SAC. Defendants further deny that any "Nourmand Enterprise" exists.

78.    Defendants admit that Sunset Landmark opposed certain aspects of the development of the two hotels owned by Wilcox and Tommie, and filed two separate lawsuits against each one. On the eve of trial in Sunset Landmark's lawsuit against the City of Los Angeles with Wilcox as the real party in interest, the court issued a tentative ruling, denying the City of Los Angeles's motion to augment the record

DEFENDANTS' ANSWER TO PLAINTIFFS' SAC

because the City of Los Angeles did not follow standard procedures to inform the public of the design changes to Wilcox's hotel project, it would be misleading to permit the inclusion of non-record materials to strengthen the City's and Real Party's argument that the public should have known about the design changes, and further that these last-minute design changes were not published in the manner required by CEQA. After the tentative ruling on the eve of trial in Sunset Landmark's litigation against the City of Los Angeles with Wilcox as the real party in interest was in favor of Sunset Landmark, Wilcox and Sunset Landmark had certain settlement discussions for that litigation. During these discussions, Wilcox demanded that any settlement with Sunset Landmark be a global settlement so as to include Tommie and to settle Sunset Landmark's litigation against Tommie at the same time. The parties then reached two settlement agreements simultaneously – one between Wilcox and Sunset Landmark, and one between Tommie and Sunset Landmark – which both referenced the Parties desire to resolve and settle fully and finally both litigations. As part of that global settlement of both litigations, there was a single payment made by Wilcox of $5.5 million for the benefit of both Wilcox and Tommie. Each of Wilcox and Tommie's share of that payment was to be determined exclusively by Wilcox and Tommie. As part of that global settlement agreement, Wilcox agreed to certain concessions regarding the height of the hotel, light well dimensions, hotel setback, hotel balconies and windows, hotel loading, drop off and trash removal, and rooftop noise levels and hours of operation. As part of that global settlement agreement, Tommie also agreed to certain concessions regarding the hotel loading, drop off, and trash removal, stairwell and set back, rooftop noise levels and hours of operation. Wilcox and Tommie further both agreed to negotiated tieback agreements, one for each of their hotel projects. However, the tieback agreement for Tommie was the only one signed and recorded because Wilcox had already excavated its property to comply with certain measures such that the tieback agreement was no longer necessary at the time of execution of the settlements. All of the above was the consideration for

DEFENDANTS' ANSWER TO PLAINTIFFS' SAC

mutual releases and dismissals of Sunset Landmark's lawsuits against real parties in interest Wilcox and Tommie. Defendants deny the remaining allegations contained in paragraph 78 of the SAC.

79. Defendants deny the allegations contained in paragraph 79 of the SAC.

80. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 80 of the SAC, and therefore deny such allegations.

81. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 81 of the SAC, and therefore deny such allegations.

82. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 82 of the SAC, and therefore deny such allegations.

83. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 83 of the SAC, and therefore deny such allegations. Defendants further deny that any "Nourmand Enterprise" exists.

84. Defendants admit the allegations contained in paragraph 84 of the SAC.

85. Defendants admit that Sunset Landmark filed a lawsuit pertaining to the Tommie Hotel regarding its negative impact on the environment. Defendants also admit that several other neighbors to the Tommie Hotel development also filed CEQA lawsuits against Tommie, some of which lasted longer than Sunset Landmark's litigation, and that in one of the litigations filed against Tommie, the Superior Court ruled that the Tommie Hotel project's CEQA analysis was defective and that it had unmitigated significant noise impacts in violation of CEQA. Defendants deny the remaining allegations contained in paragraph 85 of the SAC, including all description and characterizations therein. Defendants further deny that any "Nourmand Enterprise" exists.

86.     Defendants admit that Sunset Landmark opposed certain aspects of the development of the two hotels owned by Wilcox and Tommie, and filed two separate lawsuits against each one.  On the eve of trial in Sunset Landmark's lawsuit against the City of Los Angeles with Wilcox as the real party in interest, the court issued a tentative ruling, denying the City of Los Angeles's motion to augment the record because the City of Los Angeles did not follow standard procedures to inform the public of the design changes to Wilcox's hotel project, it would be misleading to permit the inclusion of non-record materials to strengthen the City's and Real Party's argument that the public should have known about the design changes, and further that these last-minute design changes were not published in the manner required by CEQA.  After the tentative ruling on the eve of trial in Sunset Landmark's litigation against the City of Los Angeles with Wilcox as the real party in interest was in favor of Sunset Landmark, Wilcox and Sunset Landmark had certain settlement discussions for that litigation.  During these discussions, Wilcox demanded that any settlement with Sunset Landmark be a global settlement so as to include Tommie and to settle Sunset Landmark's litigation against Tommie at the same time.  The parties then reached two settlement agreements simultaneously – one between Wilcox and Sunset Landmark, and one between Tommie and Sunset Landmark – which both referenced the Parties desire to resolve and settle fully and finally both litigations.  As part of that global settlement of both litigations, there was a single payment made by Wilcox of $5.5 million for the benefit of both Wilcox and Tommie.  Each of Wilcox and Tommie's share of that payment was to be determined exclusively by Wilcox and Tommie.  As part of that global settlement agreement, Wilcox agreed to certain concessions regarding the height of the hotel, light well dimensions, hotel setback, hotel balconies and windows, hotel loading, drop off and trash removal, and rooftop noise levels and hours of operation.  As part of that global settlement agreement, Tommie also agreed to certain concessions regarding the hotel loading, drop off, and trash removal, stairwell and set back, rooftop noise levels and hours of operation.

DEFENDANTS' ANSWER TO PLAINTIFFS' SAC

Wilcox and Tommie further both agreed to negotiated tieback agreements, one for each of their hotel projects.  However, the tieback agreement for Tommie was the only one signed and recorded because Wilcox had already excavated its property to comply with certain measures such that the tieback agreement was no longer necessary at the time of execution of the settlements.  All of the above was the consideration for mutual releases and dismissals of Sunset Landmark's lawsuits against real parties in interest Wilcox and Tommie.  Defendants deny the remaining allegations contained in paragraph 86 of the SAC, including the characterizations therein.

87.   Defendants deny the allegations contained in paragraph 87 of the SAC.

88.   Defendants deny the allegations contained in paragraph 88 of the SAC.

89.   Defendants admit that Sunset Landmark filed a CEQA administrative appeal regarding a property on Schrader Boulevard in Hollywood, but deny the remaining allegations contained in paragraph 89 of the SAC, including the characterizations therein.

90.   Defendants admit that Sunset Landmark met with the Schrader Owners pertaining to Sunset Landmark's appeal, but deny the remaining allegations contained in paragraph 90 of the SAC, including the characterizations therein.

91.   Defendants deny the allegations contained in paragraph 91 of the SAC.

92.   Defendants deny the allegations contained in paragraph 92 of the SAC.

93.   Defendants deny the allegations contained in paragraph 93 of the SAC.

94.   Defendants deny that the Selma hotel was the target of Defendants or that extortion took place.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 94 of the SAC, and therefore deny such allegations.  Defendants further deny that any "Nourmand Enterprise" exists.

95.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 95 of the SAC, and therefore deny such allegations.

96.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 96 of the SAC, and therefore deny such allegations.

97.   Defendants admit that Sunset Landmark filed a CEQA lawsuit on April 2, 2019, naming Selma as a real party in interest, and the lawsuit asserted CEQA-related claims, including the allegation that Relevant created shell corporations to submit the Selma/Thompson/Tommie hotel projects to the City of Los Angeles in piecemeal, in violation of CEQA, and to circumvent an accurate environmental assessment, but deny the remaining allegations contained in paragraph 97 of the SAC, including the characterizations therein.  Defendants further deny that any "Nourmand Enterprise" exists.

98.   Defendants deny the allegations contained in paragraph 98 of the SAC.

99.   Defendants deny the allegations contained in paragraph 99 of the SAC.

100.   Defendants deny the allegations contained in paragraph 100 of the SAC.

101.   Defendants deny the allegations contained in paragraph 101 of the SAC.

102.   Defendants deny the allegations contained in paragraph 102 of the SAC.

103.   Defendants admit Sunset Landmark filed a lawsuit on April 2, 2019 naming Selma as a real party in interest, and the lawsuit asserted CEQA-related claims, including the allegation that Relevant created shell corporations to submit the Selma/Thompson/Tommie hotel projects to the City of Los Angeles in piecemeal, in violation of CEQA, and to circumvent an accurate environmental assessment, but deny the remaining allegations contained in paragraph 103 of the SAC, including the descriptions and characterizations therein.

104.   Defendants deny the allegations contained in paragraph 104 of the SAC.

105.   Defendants deny that they are part of any enterprise that found a solution to any problem.  Defendants further deny that Silverstein had a preexisting close relationship with Maddren, that Silverstein secured Maddren's services, that Silverstein providing support to Maddren for legal filings, and that Maddren is entitled

to any proceeds from Sunset Landmark's litigation.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 105 of the SAC, and therefore deny such allegations.

106.   Defendants deny the allegations contained in paragraph 106 of the SAC.

107.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 107 of the SAC, and therefore deny such allegations.

108.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 108 of the SAC, and therefore deny such allegations.

109.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 109 of the SAC, and therefore deny such allegations.

110.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 110 of the SAC, and therefore deny such allegations.

111.   Defendants deny the allegations contained in paragraph 111 of the SAC. Defendants are further without knowledge or information sufficient to form a belief as to the truth of any of the allegations concerning Maddren contained in paragraph 111 of the SAC, and therefore deny such allegations.   Defendants further deny that any "Nourmand Enterprise" exists.

## FIRST CLAIM FOR RELIEF

112.   Paragraph 112 is merely an incorporating paragraph to which no response is required.   To the extent a response is required, Defendants incorporate their responses to paragraphs 1 through 111 of the SAC as if fully set forth herein. Defendants deny all remaining allegations of this paragraph 112 of the SAC.

113.   Defendants deny the allegations contained in paragraph 113 of the SAC,

DEFENDANTS' ANSWER TO PLAINTIFFS' SAC

and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 113 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 113 of the SAC.

114.  Defendants deny the allegations contained in paragraph 114 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 114 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 114 of the SAC.

115.  Defendants deny the allegations contained in paragraph 115 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 115 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 115 of the SAC. Defendants further deny that any "Nourmand Enterprise" exists.

116.  Defendants deny the allegations contained in paragraph 116 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 116 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 116 of the SAC. Defendants further deny that any "Nourmand Enterprise" exists.

117.  Defendants deny the allegations contained in paragraph 117 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 117 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 117 of the SAC. Defendants further deny that any "Nourmand Enterprise" exists.

118.  Defendants deny the allegations contained in paragraph 118 of the SAC,

and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 118 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 118 of the SAC. Defendants further deny that any "Nourmand Enterprise" exists.

119.  Defendants admit that Sunset Landmark opposed certain aspects of the development of the two hotels owned by Wilcox and Tommie, and filed two separate lawsuits against each one.  On the eve of trial in Sunset Landmark's lawsuit against the City of Los Angeles with Wilcox as the real party in interest, the court issued a tentative ruling, denying the City of Los Angeles's motion to augment the record because the City of Los Angeles did not follow standard procedures to inform the public of the design changes to Wilcox's hotel project, it would be misleading to permit the inclusion of non-record materials to strengthen the City's and Real Party's argument that the public should have known about the design changes, and further that these last-minute design changes were not published in the manner required by CEQA.  After the tentative ruling on the eve of trial in Sunset Landmark's litigation against the City of Los Angeles with Wilcox as the real party in interest was in favor of Sunset Landmark, Wilcox and Sunset Landmark had certain settlement discussions for that litigation.  During these discussions, Wilcox demanded that any settlement with Sunset Landmark be a global settlement so as to include Tommie and to settle Sunset Landmark's litigation against Tommie at the same time.  The parties then reached two settlement agreements simultaneously – one between Wilcox and Sunset Landmark, and one between Tommie and Sunset Landmark – which both referenced the Parties desire to resolve and settle fully and finally both litigations.  As part of that global settlement of both litigations, there was a single payment made by Wilcox of $5.5 million for the benefit of both Wilcox and Tommie.  Each of Wilcox and Tommie's share of that payment was to be determined exclusively by Wilcox and Tommie.  As part of that global settlement agreement, Wilcox agreed to certain

concessions regarding the height of the hotel, light well dimensions, hotel setback, hotel balconies and windows, hotel loading, drop off and trash removal, and rooftop noise levels and hours of operation.  As part of that global settlement agreement, Tommie also agreed to certain concessions regarding the hotel loading, drop off, and trash removal, stairwell and set back, rooftop noise levels and hours of operation. Wilcox and Tommie further both agreed to negotiated tieback agreements, one for each of their hotel projects.  However, the tieback agreement for Tommie was the only one signed and recorded because Wilcox had already excavated its property to comply with certain measures such that the tieback agreement was no longer necessary at the time of execution of the settlements.  All of the above was the consideration for mutual releases and dismissals of Sunset Landmark's lawsuits against real parties in interest Wilcox and Tommie.  Defendants deny the remaining allegations contained in paragraph 119 of the SAC, including all characterizations therein.

120.   Defendants deny the allegations contained in paragraph 120 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 120 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 120 of the SAC. Defendants further deny that any "Nourmand Enterprise" exists.

121.   Defendants deny the allegations contained in paragraph 121 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 121 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 121 of the SAC.

122.   Defendants deny the allegations contained in paragraph 122 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 122 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required,

Defendants deny the legal conclusions contained in paragraph 122 of the SAC.

123.   Defendants deny the allegations contained in paragraph 123 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 123 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 123 of the SAC.

124.   Defendants deny the allegations contained in paragraph 124 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 124 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 124 of the SAC.

125.   Defendants deny the allegations contained in paragraph 125 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 125 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 125 of the SAC.

126.   Defendants deny the allegations contained in paragraph 126 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 126 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 126 of the SAC.

127.   Defendants deny the allegations contained in paragraph 127 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 127 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 127 of the SAC.

128.   Defendants deny the allegations contained in paragraph 128 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal

conclusions contained in paragraph 128 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 128 of the SAC.

129.   Defendants deny the allegations contained in paragraph 129 of the SAC, and specifically deny violating RICO.   Defendants neither admit nor deny the legal conclusions contained in paragraph 129 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 129 of the SAC.

130.   Defendants deny the allegations contained in paragraph 130 of the SAC, and specifically deny violating RICO.   Defendants neither admit nor deny the legal conclusions contained in paragraph 130 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 130 of the SAC.

131.   Defendants deny the allegations contained in paragraph 131 of the SAC, and specifically deny violating RICO.   Defendants neither admit nor deny the legal conclusions contained in paragraph 131 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 131 of the SAC.

## SECOND CLAIM FOR RELIEF

132.   Paragraph 132 is merely an incorporating paragraph to which no response is required.   To the extent a response is required, Defendants incorporate their responses to paragraphs 1 through 131 of the SAC as if fully set forth herein. Defendants deny all remaining allegations of this paragraph 132 of the SAC.

133.   Defendants deny the allegations contained in paragraph 133 of the SAC, and specifically deny violating RICO.   Defendants neither admit nor deny the legal conclusions contained in paragraph 133 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 133 of the SAC.

134.   Defendants deny the allegations contained in paragraph 134 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 134 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 134 of the SAC.

135.   Defendants deny the allegations contained in paragraph 135 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 135 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 135 of the SAC. Defendants further deny that any "Nourmand Enterprise" exists.

136.   Defendants deny the allegations contained in paragraph 136 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 136 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 136 of the SAC. Defendants further deny that any "Nourmand Enterprise" exists.

137.   Defendants deny the allegations contained in paragraph 137 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 137 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 137 of the SAC. Defendants further deny that any "Nourmand Enterprise" exists.

138.   Defendants deny the allegations contained in paragraph 138 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 138 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 138 of the SAC.

139.   Defendants deny the allegations contained in paragraph 139 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 139 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 139 of the SAC.

140.   Defendants deny the allegations contained in paragraph 140 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 140 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 140 of the SAC.

141.   Defendants deny the allegations contained in paragraph 141 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 141 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 141 of the SAC.

142.   Defendants deny the allegations contained in paragraph 142 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 142 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 142 of the SAC.

143.   Defendants deny the allegations contained in paragraph 143 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 143 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 143 of the SAC.

144.   Defendants deny the allegations contained in paragraph 144 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 144 of the SAC as the legal conclusions are not

allegations capable of admission or denial. To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 144 of the SAC.

145. Defendants deny the allegations contained in paragraph 145 of the SAC, and specifically deny violating RICO. Defendants neither admit nor deny the legal conclusions contained in paragraph 145 of the SAC as the legal conclusions are not allegations capable of admission or denial. To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 145 of the SAC.

146. Defendants deny the allegations contained in paragraph 146 of the SAC, and specifically deny violating RICO. Defendants neither admit nor deny the legal conclusions contained in paragraph 146 of the SAC as the legal conclusions are not allegations capable of admission or denial. To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 146 of the SAC.

147. Defendants deny the allegations contained in paragraph 147 of the SAC, and specifically deny violating RICO. Defendants neither admit nor deny the legal conclusions contained in paragraph 147 of the SAC as the legal conclusions are not allegations capable of admission or denial. To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 147 of the SAC.

148. Defendants deny the allegations contained in paragraph 148 of the SAC, and specifically deny violating RICO. Defendants neither admit nor deny the legal conclusions contained in paragraph 148 of the SAC as the legal conclusions are not allegations capable of admission or denial. To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 148 of the SAC.

149. Defendants deny the allegations contained in paragraph 149 of the SAC, and specifically deny violating RICO. Defendants neither admit nor deny the legal conclusions contained in paragraph 149 of the SAC as the legal conclusions are not allegations capable of admission or denial. To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 149 of the SAC.

## **THIRD CLAIM FOR RELIEF**

150.   Paragraph 150 is merely an incorporating paragraph to which no response is required.   To the extent a response is required, Defendants incorporate their responses to paragraphs 1 through 149 of the SAC as if fully set forth herein. Defendants deny all remaining allegations of this paragraph 150 of the SAC.

151.   Defendants deny the allegations contained in paragraph 151 of the SAC, and specifically deny violating RICO.   Defendants neither admit nor deny the legal conclusions contained in paragraph 151 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 151 of the SAC.

152.   Defendants deny the allegations contained in paragraph 152 of the SAC, and specifically deny violating RICO.   Defendants neither admit nor deny the legal conclusions contained in paragraph 152 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 152 of the SAC.

153.   Defendants deny the allegations contained in paragraph 153 of the SAC, and specifically deny violating RICO.   Defendants neither admit nor deny the legal conclusions contained in paragraph 153 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 153 of the SAC. Defendants further deny that any "Nourmand Enterprise" exists.

154.   Defendants deny the allegations contained in paragraph 154 of the SAC, and specifically deny violating RICO.   Defendants neither admit nor deny the legal conclusions contained in paragraph 154 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 154 of the SAC. Defendants further deny that any "Nourmand Enterprise" exists.

155.   Defendants deny the allegations contained in paragraph 155 of the SAC,

DEFENDANTS' ANSWER TO PLAINTIFFS' SAC

and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 155 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 155 of the SAC. Defendants further deny that any "Nourmand Enterprise" exists.

156.   Defendants deny the allegations contained in paragraph 156 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 156 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 156 of the SAC.

157.   Defendants deny the allegations contained in paragraph 157 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 157 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 157 of the SAC.

158.   Defendants deny the allegations contained in paragraph 158 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 158 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 158 of the SAC.

159.   Defendants deny the allegations contained in paragraph 159 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 159 of the SAC as the legal conclusions are not allegations capable of admission or denial.  To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 159 of the SAC.

160.   Defendants deny the allegations contained in paragraph 160 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 160 of the SAC as the legal conclusions are not

allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 160 of the SAC.

161.   Defendants deny the allegations contained in paragraph 161 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 161 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 161 of the SAC.

162.   Defendants deny the allegations contained in paragraph 162 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 162 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 162 of the SAC.

163.   Defendants deny the allegations contained in paragraph 163 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 163 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 163 of the SAC.

164.   Defendants deny the allegations contained in paragraph 164 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 164 of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 164 of the SAC.

165.   Defendants deny the allegations contained in paragraph 165 of the SAC, and specifically deny violating RICO.  Defendants neither admit nor deny the legal conclusions contained in paragraph 165of the SAC as the legal conclusions are not allegations capable of admission or denial.   To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 165 of the SAC.

166.   Defendants deny the allegations contained in paragraph 166 of the SAC,

DEFENDANTS' ANSWER TO PLAINTIFFS' SAC

and specifically deny violating RICO. Defendants neither admit nor deny the legal conclusions contained in paragraph 166 of the SAC as the legal conclusions are not allegations capable of admission or denial. To the extent a response is required, Defendants deny the legal conclusions contained in paragraph 166 of the SAC.

## **PRAYER FOR RELIEF**

Defendants deny that Plaintiffs are entitled to any relief whatsoever, and instead, Defendants respectfully requests that the Court deny the relief requested, dismiss the SAC, and award Defendants their attorneys' fees and costs from Plaintiffs for the defense of this action to the greatest extent permitted by applicable law.

## **DEMAND FOR JURY**

Defendants demand a trial by jury for all issues so triable.

## **AFFIRMATIVE DEFENSES**

Without assuming the burden of proof where it otherwise rests with Plaintiffs, Defendants plead the following affirmative defenses to the SAC. Defendants reserve the right to plead additional defenses at such time and to such extent as warranted by discovery and the factual development in this case.

### **FIRST AFFIRMATIVE DEFENSE**
### **(Failure to State a Cause of Action)**

Plaintiffs fail to state a cause of action in the SAC upon which relief may be granted.

### **SECOND AFFIRMATIVE DEFENSE**
### **(Standing)**

Plaintiffs lack standing to pursue their claims in the SAC as they have not suffered any concrete or particularized injury.

## THIRD AFFIRMATIVE DEFENSE

### (*Noerr-Pennington* Doctrine)

Plaintiffs' claims fail because the *Noerr-Pennington* doctrine, which provides immunity from antitrust liability for engaging in conduct (including litigation) aimed at influencing decision making by the government, applies to the conduct of Defendants.

## FOURTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Plaintiffs' claims fail or otherwise are barred, in whole or in part, by the applicable statutes of limitation.

## FIFTH AFFIRMATIVE DEFENSE

### (Laches)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

### (Waiver)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

## SEVENTH AFFIRMATIVE DEFENSE

### (Estoppel)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

### (*Res Judicata* and/or Collateral Estoppel)

Plaintiffs' claims fail or otherwise are barred, in whole or in part, through the preclusive effect of *res judicata* and/or collateral estoppel.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

If Plaintiffs have suffered damages by virtue of any conduct, acts or omissions of Defendants, which is denied, Plaintiffs have failed to mitigate those damages.

**TENTH AFFIRMATIVE DEFENSE**

**(No Proximate Cause)**

The damages Plaintiffs seek to hold Defendants liable for resulted in whole or in part from the negligent, deliberate, intentional, reckless, or unlawful acts or omissions of third parties and Defendants are in no way responsible for or liable to Plaintiffs for any of such acts or omissions on the part of any such third parties.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Lack of Willful or Knowing Conduct)**

Defendants did not willfully or knowingly violate RICO, which is expressly denied.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Lack of Damages)**

Plaintiffs did not sustain any damages. To the extent Plaintiffs sustained any damages, such damages are *de minimis* and non-actionable, which deprives the Court of subject matter jurisdiction in this action.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Fault of Plaintiffs)**

Plaintiffs are not entitled to recover any losses they could have reasonably avoided.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(*In Pari Delicto*)**

Plaintiffs' claims fail and Plaintiffs may not recover because Plaintiffs are equally responsible for any harmful conduct.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Doctrine of Unclean Hands)**

Plaintiffs' claims fail or otherwise are barred, in whole or in part, or limited by the doctrine of unclean hands.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Ordinary Course of Conduct)

Defendants are neighbors of the developments of Plaintiffs, and therefore Defendants' actions and/or lawsuits cannot constitute an inference of an agreement to conspire to violate RICO as such actions and communications are done in the normal course of conduct.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Consent/Acquiescence)

Plaintiffs' claims fail or otherwise are barred, in whole or in part, or limited by Plaintiffs' consent/acquiescence to Defendants' actions.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Settlement/Payment)

Plaintiffs' claims fail or otherwise are barred, in whole or in part, by the settlement agreements reached among certain parties to this litigation and the corresponding payments made to settle such claims.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Assumption of Risk)

Plaintiffs' claims fail or otherwise are barred, in whole or in part, by the assumption of risk doctrine for developing the properties and having to comply with various federal, state, and local laws.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Ratification)

Plaintiffs ratified the contractual relationship and settlements at issue. Plaintiffs ratified the settlements by accepting the benefits of and, with full knowledge of the terms of the settlement and the circumstances complained of in the SAC, otherwise performed in accordance with its terms. Plaintiffs now seek damages based upon the exact settlement transaction that they agreed to and expressly authorized. Any harm allegedly suffered resulted from Plaintiffs' own action/inaction.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Set-Off)

Defendants are entitled to a set-off against any damage awarded to Plaintiffs for any and all payments made by any collateral source.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Preemption)

Federal and/or state law preempts some or all of Plaintiffs' claims.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Reservation of Rights)

Defendants expressly reserve the right to raise additional affirmative defenses at trial as facts supporting any such affirmative defenses may become known to it during the pendency of this action.

WHEREFORE, Defendants pray for judgment as follows:

1.     That Plaintiffs take nothing by reason of their SAC;

2.     That judgment be enter in favor of Defendants;

3.     That Defendants be awarded all of their costs and recoverable attorneys' fees incurred in defending against the SAC; and

4.     That Defendants be granted such other and further relief as this Court deems just and proper.

Dated:  June 24, 2020

Respectfully submitted,

GREENSPOON MARDER LLP

By: */s/ Jayesh Patel*
        Jayesh Patel

*Attorneys for Defendants Stephan Saeed Nourmand and The Sunset Landmark Investment LLC*