1  **AKIN GUMP STRAUSS HAUER & FELD LLP**
   SUSAN K. LEADER (SBN 216743)
2  ALI R. RABBANI (SBN 253730)
   JOSHUA A. RUBIN (SBN 308421)
3  BRETT M. MANISCO (SBN 318351)
   sleader@akingump.com
4  arabbani@akingump.com
   rubinj@akingump.com
5  bmanisco@akingump.com
   1999 Avenue of the Stars, Suite 600
6  Los Angeles, CA 90067-6022
   Telephone:  310.229.1000
7  Facsimile:  310.229.1001

8  *Attorneys for Plaintiffs*

9

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  | RELEVANT GROUP, LLC, a Delaware | Case No.:  2:19-cv-05019-ODW (KSx) |
    limited liability company; 1541 WILCOX
13  HOTEL LLC, a Delaware limited liability    DISCOVERY DOCUMENT:
    company; 6516 TOMMIE HOTEL LLC, a         REFERRED TO MAGISTRATE JUDGE
14  Delaware limited liability company; and    KAREN L. STEVENSON [ECF NO. 70]
    6421 SELMA WILCOX HOTEL LLC, a
15  California limited liability company,       **PLAINTIFFS' MEMORANDUM OF**
                                                **POINTS AND AUTHORITIES IN**
16                         Plaintiffs,          **SUPPORT OF PLAINTIFFS'**
                                                **MOTION TO COMPEL**
17          v.                                  **PRODUCTION OF A PRIVILEGE**
                                                **LOG AND RESPONSES TO**
18  STEPHAN "SAEED" NOURMAND, an                **PLAINTIFFS' REQUEST FOR**
    individual; THE SUNSET LANDMARK            **PRODUCTION NO. 25**
19  INVESTMENT LLC, a California limited
    liability company; and DOES 1-10,          Date: July 28, 2021
20                                             Time: 10:00 a.m.
                           Defendants.          Place: Courtroom 580, 5th Floor
21
                                               Discovery Cut-off:  8/16/2021
22                                             Pretrial Conference: 11/8/2021
                                               Trial: 11/30/2021
23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND ................................................................................. 2

    A.    PLAINTIFFS' REQUEST FOR PRODUCTION AND SILVERSTEIN'S OBJECTIONS. .............................................................................. 2

    B.    THE PARTIES' MEET-AND-CONFER HISTORY ................................. 3

III.  ARGUMENT ...................................................................................... 7

    A.    THIS COURT SHOULD COMPEL SILVERSTEIN TO PRODUCE A PRIVILEGE LOG IDENTIFYING ALL DOCUMENTS WITHHELD ON THE BASIS OF PRIVILEGE. ................................................................. 7

        1.    Rule 45(e)(2) Requires Silverstein to Produce a Privilege Log Describing the Nature of Any Documents Withheld. ........................ 7

        2.    A Privilege Log will Reveal Critical Information Material to Relevant's Claims. ................................................................. 8

        3.    A Privilege Log Is Necessary to Relevant's Evaluation of Whether the Crime-Fraud Exception Applies. ................................. 9

        4.    Silverstein's Objections Lack Merit. ........................................ 10

        5.    Silverstein's Untimely Objection to Producing a Privilege Log should be Denied. ............................................................... 13

    B.    THIS COURT SHOULD COMPEL DEFENDANTS TO PRODUCE DOCUMENTS RESPONSIVE TO REQUEST 25. ................................ 14

        1.    Silverstein's Asserted Objections to Request 25 Lack Merit. ......... 14

        2.    Silverstein's Subsequently Raised Objections to Request 25 Also Lack Merit. ....................................................................... 18

IV.   CONCLUSION ................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
   306 F.R.D. 234 (N.D. Cal. 2015)..................................................................9

*Banks v. Off. of the Senate Sergeant-at-Arms & Doorkeeper*,
   226 F.R.D. 113 (D.D.C. 2005) ....................................................................12

*Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*,
   253 F.R.D. 521 (C.D. Cal. 2008)................................................................18

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*,
   408 F.3d 1142 (9th Cir. 2005) .....................................................................8

*California Inst. of Tech. v. Hughes Commc'ns, Inc.*,
   No. 13-cv-07245, 2015 WL 11120674 (C.D. Cal. Feb. 24, 2015).....................17

*Compaq Computer Corp. v. Packard Bell Elecs., Inc.*,
   163 F.R.D. 329 (N.D. Cal. 1995)..................................................................7

*Conopco, Inc. v. Wein*,
   No. 05-cv-9899, 2007 WL 1040676 (S.D.N.Y. Apr. 4, 2007)..........................19

*Endsley v. Travelers Prop. Cas. Ins. Co.*,
   No. 14-cv-00346, 2015 WL 2380657 (E.D. Cal. May 18, 2015)................13, 18

*Epstein v. MCA, Inc.*,
   54 F.3d 1422 (9th Cir. 1995) .....................................................................15

*Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*,
   136 F.R.D. 179 (E.D. Cal. 1991) ..................................................................8

*In re Grand Jury Investigation*,
   810 F.3d 1110 (9th Cir. 2016) .....................................................................9

ii

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO
COMPEL PRODUCTION OF A PRIVILEGE LOG AND RESPONSES TO PLAINTIFFS' REQUEST FOR
PRODUCTION NO. 25
Case No.: 2:19-cv-05019-ODW (KSx)

*In re Grand Jury Investigation*,
   974 F.2d 1068 (9th Cir. 1992) ........................................................7, 9, 11

*In re Grand Jury Proc.*,
   87 F.3d 377 (9th Cir. 1996) ...................................................................10

*Grande v. U.S. Bank Nat'l Ass'n*,
   No. C19-333 MJP, 2020 WL 832307 (W.D. Wash. Feb. 20, 2020) .................15

*In re Imperial Corp of America*,
   174 F.R.D. 475 (E.D. Cal. 1997) .......................................................10, 11

*Infanzon v. Allstate Ins. Co.*,
   335 F.R.D. 305 (C.D. Cal. 2020).............................................................7

*Iroquois Master Fund, Ltd. v. Glob. ePoint, Inc.*,
   No. 08-cv-7761, 2018 WL 6929337 (C.D. Cal. Jan. 9, 2018) ............................8

*Jackson v. County of Sacramento*,
   175 F.R.D. 653 (E.D. Cal. 1997) .......................................................11, 12

*Miller v. Pancucci*,
   141 F.R.D. 292 (C.D. Cal. 1992)........................................................7, 9

*In re Mortgage Realty Trust*,
   212 B.R. 649 (Bankr. C.D. Cal. 1997) .....................................................17

*Moser v. Health Ins. Innovations, Inc.*,
   No. 17-cv-1127, 2019 WL 2996950 (S.D. Cal. July 8, 2019)...........................19

*Natural-Immunogenics Corp. v. Newport Trial Grp.*,
   No. 15-cv-2034, 2020 WL 2412524 (N.D. Cal. Mar. 24, 2020)........................15

*In re Outlaw Labs., L.P. Litigation*,
   No. 18-cv-840, 2020 WL 3513492 (N.D. Cal. June 26, 2020) ....................15, 16

*In re Pac. Pictures Corp.*,
   679 F.3d 1121 (9th Cir. 2012) ................................................................17

*Porter v. City & Cnty. of San Francisco*,
   No. 16-cv-03771, 2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) .......................8

iii

*Pulse Eng'g, Inc. v. Mascon, Inc.*,
    No. 08-cv-0595, 2009 WL 3234177 (S.D. Cal. Oct. 2, 2009) ..........................17

*Ragge v. MCA/Universal Studios, Inc.*,
    165 F.R.D. 601 (C.D. Cal. 1995).........................................................................15

*Rambus, Inc. v. Infineon Techs. AG*,
    220 F.R.D. 264 (E.D. Va. 2004).........................................................................12

*Ramirez v. Cnty. of Los Angeles*,
    231 F.R.D. 407 (C.D. Cal. 2005).......................................................................13

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir. 1992) ....................................................................13, 18

*Rodriguez v. City of Fresno*,
    No. 09-cv-1176, 2010 WL 5059644 (E.D. Cal. Dec. 6, 2010)..........................12

*Save Our Big Trees v. City of Santa Cruz*,
    241 Cal. App. 4th 694 (2015) ...............................................................................1

*Shoen v. Shoen*,
    5 F.3d 1289 (9th Cir. 1993) ...............................................................................15

*U.S. v. Bergonzi*,
    216 F.R.D. 487 (N.D. Cal. 2003).......................................................................17

**Other Authorities**

Fed. R. Civ. P. 45(e)....................................................................................1, 7, 16

## I.  **INTRODUCTION**

Plaintiff Relevant Group ("Relevant") is a real estate developer that has developed several hotels in the Hollywood area.  Two years ago, Relevant brought this RICO action against a competing developer, Sunset Landmark, and its principal, Stephan Nourmand (collectively, "Defendants").  As outlined in the Second Amended Complaint (the "SAC"), Defendants automatically and reflexively initiated sham CEQA challenges against Relevant's projects (or projects they believed were associated with Relevant) for reasons entirely untethered to CEQA's purpose and remedial scheme.[1]  Specifically, Defendants' intention was not to extract environmental concessions from the City of Los Angeles (the party to the suit) and Relevant (the real party in interest), but rather to extort money and other costly concessions in exchange for abandonment of the CEQA actions.

Relevant alleges that third party attorney, Robert Silverstein ("Silverstein") is a key member of Defendants' enterprise.  A seasoned environmental lawyer well known for wielding CEQA to hold up real estate developments, Silverstein partnered with Defendants to use environmental statutes to delay economically vitalizing developments and to secure rich monetary payouts and personal concessions for Defendants.

Relevant served a subpoena for documents on Silverstein on November 9, 2020 ("Subpoena"), and received Silverstein's written responses and objections on January 1, 2021.  In his responses and objections, Silverstein objected to 15 of Relevant's document requests on the basis that they sought information "protected by the attorney-client and/or attorney work product privileges."   And even though Rule 45(e)(2) requires subpoenaed third parties to produce a privilege log describing the nature of the withheld documents, Silverstein has flatly refused to do so.

---

[1] CEQA is a California statute designed to ensure that public agencies mitigate environmental damage arising out of activities that may affect the quality of the environment.  *See Save Our Big Trees v. City of Santa Cruz*, 241 Cal. App. 4th 694, 704 (2015) (citation omitted).  CEQA primarily achieves this by compelling government officials to implement alternatives or mitigation measures.  *Id.*

Silverstein has also refused to produce documents responsive to Request for Production ("Request") No. 25, which seeks "[a]ll agreements and contracts RELATING TO or referencing the sharing of information or litigation strategy between SUNSET LANDMARK and/or Saeed Nourmand, on the one hand, and any other PERSON, on the other hand, in connection with any CEQA CHALLENGE." Silverstein objected to Request 25 because, in his view, any such agreement is irrelevant and privileged. Silverstein is wrong. Request No. 25 is central to Relevant's RICO allegations because an agreement between Defendants and a third party relating to the underlying CEQA challenges is likely to reveal key facts about the formation and objectives of Defendants' RICO enterprise, as well as to the identity of any additional enterprise members. To the extent Silverstein asserts that any such agreement is privileged, he must identify it in a privilege log so that Relevant can assess the merits of the privilege claim.

Accordingly, Relevant seeks an order compelling Silverstein to produce a privilege log describing the nature of any documents withheld and to produce documents responsive to Request 25. For the reasons stated below, the Court should grant this Motion.

## II. __BACKGROUND__

### A. __PLAINTIFFS' REQUEST FOR PRODUCTION AND SILVERSTEIN'S OBJECTIONS.__

The specific requests at issue in this Motion fall into two categories. Requests 10-15 seek documents that "RELATE TO any administrative appeal, objection, legal petition, or other COMMUNICATION with the City of Los Angeles," in which Mr. Silverstein's client objected to various specific aspects of the Thompson and Tommie Hotel Projects, two of the underlying CEQA lawsuits that Defendants in this matter

initiated against Relevant that form the basis of Relevant's RICO claims.[2]  Manisco Decl. ¶ 2; Ex. 1.  And Request 25 seeks "[a]ll agreements and contracts RELATING TO or referencing the sharing of information or litigation strategy between SUNSET LANDMARK and/or Saeed Nourmand, on the one hand, and any other PERSON, on the other hand, in connection with any CEQA CHALLENGE."  *Id.*

In his responses to Requests 10-15, Silverstein objected, in relevant part, that these Requests seek, "disclosure of information protected by the attorney-client and/or work product privilege."[3]  Manisco Decl. ¶ 3; Ex. 2.  In his response to Request 25, Silverstein made the following objection:

> Responding Party objects to this request as overbroad, vague and ambiguous. Responding Party further objects to this request as it is not reasonably calculated to seek disclosure of admissible evidence and as such seeks disclosure of information irrelevant to the subject matter of this litigation. Responding Party further objects to this request as it seeks disclosure of information protected by the attorney-client and/or work product and/or common interest privileges.  Responding Party further objects to this request as it assumes facts not in evidence.  *Id*.

To date, Silverstein has failed to produce documents responsive to Requests 10-15 or 25, and has failed to produce a privilege log identifying any documents withheld on the basis of privilege.  Manisco Decl. ¶ 11.

**B.    The parties' meet-and-confer history**

---

[2] During the meet and confer process, Relevant agreed that Silverstein did not need to produce documents that are otherwise publicly available.

[3] Silverstein made this same objection to Requests 10-18, 25-27, 29 and 31. However, in his response to Requests 26, 27, 29 and 31, Silverstein stated that "there are no responsive documents."

3

On March 22, 2021, Relevant sent Silverstein a letter requesting, in relevant part, that Silverstein provide a privilege log describing any documents withheld on the basis of privilege so that Relevant could evaluate the merits of Silverstein's privilege claims. Manisco Decl. ¶ 4; Ex. 3.

In addition, Relevant explained that Request 25 sought documents plainly relevant to its claims because "any agreements and contracts relating to or referencing sharing information or litigation strategy […] could show, among other things, an agreement regarding the formation of the enterprise, or a discussion regarding how to accomplish the goals of the enterprise." *Id.* at 4. Relevant also explained that, to withhold responsive documents on the basis of the "common interest privilege[,]" Silverstein must first establish that each withheld document was privileged as a threshold matter because the common interest doctrine was an exception to waiver of privilege, rather than an independent privilege. *Id.* at 6. Relevant explained that, without showing that the responsive documents were privileged *and* shared with a third party to facilitate a joint strategy pursuant to a common interest agreement, Silverstein could not withhold documents on the basis of a purported "common interest privilege." *Id.*

On April 1, 2021, Silverstein declined to produce a privilege log. He insisted that it would be unduly burdensome and inappropriate under the circumstances. Manisco Decl. ¶ 5; Ex. 4 at 3. Silverstein also argued that Relevant failed to "articulate any reasonable position as to why the attorney-client privilege would not apply to these requests." *Id.*

As to Request 25, Silverstein argued again that the Request is overbroad, vague and ambiguous because the Request sought documents related to "*any* CEQA challenge" not just those at issue in Plaintiff's SAC." *Id.* at 5. Moreover, Silverstein explained that he was standing on his privilege and common interest objection because he "construes this request not only to seek agreements between [Defendants] and other persons to share

information or litigation strategy, but documents RELATING TO those agreements[,]" and that this request therefore "necessarily implicates attorney-client communications and responding party's work product." *Id.* In other words, Silverstein rewrote the language of Request 25 to expand its scope, as Request 25 **does not** seek documents "relating to" agreements or contracts between Defendants and any third party—it simply seeks the agreements or contracts themselves. Manisco Decl. ¶ 2; Ex. 1.

On April 14, 2021, Relevant sent Silverstein a second letter again requesting that he produce a privilege log for any documents withheld on the basis of privilege. Further, Relevant noted that Silverstein improperly misconstrued the scope of Request 25, as it was seeking only the "agreements and contracts themselves," not all documents "relating to" these agreements and contracts. Manisco Decl. ¶ 6; Ex. 5 at 6. Critically, Relevant noted that "Defendants have represented to [Relevant] that the four projects referenced in the SAC are the **only** projects they ever challenged, so [Request 25] should relate to a discrete set of matters that are necessarily limited in both scope and time." *Id.*; Rubin Decl. ¶ 3. Lastly, Relevant reiterated that Silverstein cannot simply withhold documents on the basis of a "common interest privilege" without first establishing both the privileged nature of each document withheld, and the existence of a common interest. Manisco Decl. ¶ 6; Ex. 5 at 6.

On April 23, 2021, Relevant and Silverstein met and conferred telephonically regarding the various issues raised in their meet and confer letters, and in particular, Silverstein's refusal to produce a privilege log and documents responsive to Request 25. Silverstein again asserted that he would not produce a privilege log because (1) the privileged nature of any documents withheld was clear from the face of the request such that there was no compelling reason for the privilege log; and (2) as a third party, Silverstein has narrow discovery obligations. Manisco Decl. ¶ 7. As for Request 25, Silverstein indicated that he was in possession of agreements between Defendants and

some other party, but that any such agreement has a confidentiality provision such that it would not be subject to discovery.  *Id.*

On May 5, 2021, Silverstein confirmed his position in regards to the privilege log and Request 25, claiming that (1) he "is not required to provide a privilege log under the present circumstances"; and (2) that any such agreements relating to Defendants' CEQA actions are confidential, irrelevant, and that disclosure would be highly prejudicial to Silverstein.  Manisco Decl. ¶ 10; Ex. 6.  Notably, Silverstein also claimed in his May 5, 2021 letter that, during the April 23, 2021 call, Relevant "indicated that [Relevant was] really looking for any joint defense/common interest agreements between Silverstein and Casey Maddren and/or Nourmand & Associates"—implying both that Relevant agreed to alter and limit the scope of Request 25.  *Id.* at 5. This is false.  Manisco Decl. ¶ 9. Relevant has never agreed to limit Request 25 to seek only agreements between "between Silverstein and Casey Maddren and/or Nourmand & Associates."  *Id.*  Rather, Relevant has always maintained that it is entitled to the documents ***actually requested*** in Request 25—that is, "all ***agreements and contracts*** RELATING to or referencing the sharing of information or litigation strategy between ***SUNSET LANDMARK and/or Saeed Nourmand***, on one hand, and ***any other person*** on the other hand, in connection with any CEQA CHALLENGE."  *Id.*

On May 27, 2021, Relevant and Silverstein appeared before Hon. Karen L. Stevenson for a Pre-Motion Telephonic Conference, at which Hon. Stevenson ordered Relevant to bring a noticed motion to compel regarding Silverstein's obligation to produce a privilege log, as well as his response to Request 25.  Hon. Stevenson also relieved the parties of their obligations under LR 37-2.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF A PRIVILEGE LOG AND RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION NO. 25
Case No.: 2:19-cv-05019-ODW (KSx)

III.     **ARGUMENT**

A.     **This Court Should Compel Silverstein to Produce a Privilege Log Identifying All Documents Withheld on the Basis of Privilege.**

1.     Rule 45(e)(2) Requires Silverstein to Produce a Privilege Log Describing the Nature of Any Documents Withheld.

Under Federal Rules of Civil Procedure and the law of this Circuit, Silverstein must produce a privilege log describing the nature of any documents he withheld from his production. *See* Fed. R. Civ. P. 45(e)(2)(A) ("A person withholding subpoenaed information under a claim that it is privileged . . . must . . .describe the nature of the withheld documents, communications, or tangible things in a manner that . . . will enable the parties to assess the claim."); *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 309 (C.D. Cal. 2020) ("[T]he Federal Rules have long required the production of a privilege log when withholding responsive documents based on an asserted evidentiary privilege."). Silverstein's status as a third party does not negate or limit this obligation, as courts also require third parties to produce a privilege log when they withhold documents on the basis of privilege. *Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995) (third party asserting privilege claim in response to a Rule 45 subpoena must "serve a privilege log listing all documents withheld on the ground of privilege against disclosure and providing information as to each document sufficient to sustain the burden of asserting the privilege(s)").

As the party asserting privilege, Silverstein bears the burden of proving that the privilege applies to each withheld document. *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992); *Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992) ("To properly claim attorney-client privilege, the claimant must specifically designate and describe the documents claimed to be within the scope of the privilege and to be reasonably precise in stating the reasons for preserving their confidentiality."). Further,

"blanket objections" of privilege and/or work product—precisely the kind of privilege objections Silverstein invokes here—are improper. *See Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 182-83 (E.D. Cal. 1991) ("Although it may be time-consuming to specifically assert the attorney-client or work product privilege in a document intensive litigation, the courts nevertheless clearly require such specific identification."). Indeed, by refusing to timely produce a privilege log, parties and non-parties alike waive their privilege claims. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (party waived privilege because its privilege log was not filed until five months after responses were due); *Iroquois Master Fund, Ltd. v. Glob. ePoint, Inc.*, No. 08-cv-7761, 2018 WL 6929337, at *12 (C.D. Cal. Jan. 9, 2018) (subpoenaed third party waived privilege claim where it unreasonably delayed its production of a privilege log); *Porter v. City & Cnty. of San Francisco*, No. 16-cv-03771, 2018 WL 4215602, at *7 (N.D. Cal. Sept. 5, 2018) (party waived privilege claims where it only served boilerplate objections and failed to produce a privilege log). Thus, Silverstein must produce a privilege log identifying any documents withheld on the basis of privilege. His failure to do so effects a waiver of his privilege claims.

## 2.    A Privilege Log will Reveal Critical Information Material to Relevant's Claims.

To properly assert a privilege claim, a claimant must produce a log listing:

1. Date of document; 2. Author; 3. Primary addressee; 4. Secondary addressee(s); persons copied and recipient (and the relationship of that person(s) to the client and/or author of the document); 5. Type of document (*e.g.*, internal memo, letter with enclosures, draft affidavit, etc.); 6. Client (*i.e.*, party asserting privilege); 7. Attorneys; 8. Subject matter of document or privileged communication; 9. Purpose of document or privileged

8

communication (*i.e.*, legal claim for privilege); and 10. Whether the document or communication is work product or attorney-client privilege.

*Miller*, 141 F.R.D. at 302; *see also Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015) ("[A] privilege log must identify '(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.'") (quoting *In re Grand Jury Investigation*, 974 F.2d at 1071).  It is critical that Silverstein produce a privilege log that includes such information so that Relevant can evaluate the merits of his privilege claim.

Not only do the facts of this dispute not warrant a deviation from this well-established standard, but a privilege log is also necessary here because it could very well reveal facts material to Relevant's claims.  For instance, the identities of those with whom Silverstein communicated about aspects of the underlying CEQA litigation, the timing of those communications, and/or the subject matter of these communications are all material to Relevant's enterprise allegations.  In particular, this kind of non-privileged information might reveal critical details about the formation, goals, and strategy of the alleged criminal enterprise.

> 3.    A Privilege Log Is Necessary to Relevant's Evaluation of Whether the Crime-Fraud Exception Applies.

Moreover, a privilege log here will inform whether the crime-fraud exception applies.  Under the crime-fraud exception, communications between an attorney and client are not privileged when the client consults an attorney for advice that will serve him in the commission of a fraud or crime.  *In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016).  Here, Relevant alleges that Silverstein knowingly brought CEQA actions on behalf of the Nourmand Enterprise solely to extract large monetary

9

payouts and personal aesthetic concessions from Relevant even though Silverstein "kn[ew] that these payouts and concessions ha[d] nothing to do with CEQA or the environment[.]" SAC ¶ 48. Simply put, Relevant alleges that Defendants consulted Silverstein for advice to aid Defendants in the commission of the crime of extortion.

To challenge any privilege designation on the basis of the crime-fraud exception, Relevant must first show that (1) "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme"; and (2) that the attorney-client communications for which production is sought are "sufficiently related to" and were made "in furtherance of [the] intended, or present, continuing illegality." *In re Grand Jury Proc.*, 87 F.3d 377, 381-83 (9th Cir. 1996). Without a privilege log describing the nature of any withheld communications, Relevant will be left guessing about the nature of Silverstein's allegedly privileged communications and whether the crime-fraud exception applies. But Relevant is entitled to assess whether the crime-fraud exception applies. For this reason, Silverstein must produce a privilege log describing the nature of any withheld documents.

4.    Silverstein's Objections Lack Merit.

In refusing to produce a privilege log, Silverstein asserts three arguments. These arguments all lack merit.

*First*, Silverstein argues that Relevant's "demand for a privilege log does not account for the burden this undertaking would impose on responding party[.]" Manisco Decl. ¶ 5; Ex. 4 at 3. He relies on *In re Imperial Corp of America*, 174 F.R.D. 475 (E.D. Cal. 1997), for the broad and conclusory proposition that "a document-by-document privilege log would be unduly burdensome and inappropriate[,]" without explaining why such a log would unduly burdensome here.

*In re Imperial Corp of America* is distinguishable. There, the court permitted the responding party to produce a privilege log describing the nature of the withheld

documents in a categorical fashion, but only because the requests sought "hundreds of thousands, if not millions, of documents." *Id.* at 478.  By contrast, here, Silverstein concedes that a privilege log would reflect only "*hundreds* of communications with Mr. Silverstein's client"—not hundreds of thousands or millions of documents, as was the case in *In re Imperial Corp of America*.[4]  And Silverstein has failed to *articulate any burden* he would endure in preparing a privilege log describing the nature of any withheld documents.  Thus, *In re Imperial Corp of America* does not absolve Silverstein of his obligation to produce a document-by-document privilege log.

*Second*, Silverstein cites *Jackson v. County of Sacramento*, 175 F.R.D. 653, 656 (E.D. Cal. 1997), to argue that he is excused from producing a privilege log because Relevant did not "articulate any reasonable position as to why the attorney-client privilege would not apply to these requests."  Manisco Decl. ¶ 5; Ex. 4 at 3.  But this argument has it backwards.  It is *Silverstein's* burden to prove that a privilege applies to any documents withheld, not *Relevant*'s.  *See In re Grand Jury Investigation*, 974 F.2d at 1070 ("The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications.").  Courts have rejected similar attempts to stretch the holding of *Jackson* to avoid producing a privilege log.  As one court observed:

> [T]o the extent Defendants are attempting to use *Jackson* for the proposition that a privilege log or its equivalent need not be produced until a court hearing on the matter, the court points out that a "good faith dispute" for purposes of any attempt to invoke the governmental privilege *exists as of the time that a defendant decides to invoke the privilege in response to a request for*

---

[4]  *See* Silverstein's one-sentence description of his position submitted to the Court on May 20, 2021, prior to the May 27, 2021 pre-motion telephonic conference.

> ***production.*** […]  ***There is nothing in Jackson that excuses Defendants from the obligation to produce a privilege log***[.]

*Rodriguez v. City of Fresno*, No. 09-cv-1176, 2010 WL 5059644, at *7 (E.D. Cal. Dec. 6, 2010) (emphasis added); *see also Banks v. Off. of the Senate Sergeant-at-Arms & Doorkeeper*, 226 F.R.D. 113, 116-17 (D.D.C. 2005) (distinguishing *Jackson* and observing that "an accurate summary of the existing case law would have been that federal courts are insistent upon the timely production of a privilege log, [and] have enforced waivers when the production was not timely"); *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 273 (E.D. Va. 2004) ("[T]he *Jackson* court was correct to note that a claim of privilege carries with it an implicit assertion that the claim is factually warranted. That, however, does not absolve a party from its duty under Rule 26 to provide an adequate privilege log, and Jackson did not so hold.").  Silverstein's attempt to stretch the holding of *Jackson* to avoid producing a privilege log must likewise be rejected.

*Third*, Silverstein argues that his "claim of privilege, and the nature of the request that the claim is responding to, is so clear as to what documents are being withheld that there is no need for a separate log to allow [Relevant] to assess the claim." Manisco Decl. ¶ 10; Ex. 6 at 2.  Not so.  For example, Request 10 seeks "[a]ll documents that relate to any administrative appeal, objections, legal petition, or other communication with the city of Los Angeles in which you or your client objected to the height of the Thompson Hotel Protect." Manisco Decl. ¶ 2; Ex. 1.  If Silverstein is withholding documents responsive to this request, it is unclear from his privilege objection with whom he may have communicated or *when* such communications may have occurred. The basis of Silverstein's privilege claims is particularly salient because, by his own

admission, Silverstein possesses common interest agreement(s)[5] relating to the
underlying CEQA challenges.  This strongly suggests that Silverstein was sharing
information and strategy with some unknown third party regarding the CEQA challenges
underlying the RICO claims in the SAC.  For this reason, Silverstein must produce a
document-by-document privilege log describing the nature of any documents withheld.

       5.    <u>Silverstein's Untimely Objection to Producing a Privilege Log should
be Denied.</u>

In the neutral statement submitted to the Court before the May 27, 2021 pre-
motion telephonic conference, Silverstein contended that he "should not be required to
produce materials which could far more easily and cheaply be obtained from a party who
has already been requested and ordered to produce a responsive documents, including a
privilege log for hundreds of communications with Mr. Silverstein's client, and which
Plaintiffs can get from such Defendant directly."  This argument lacks merit for at least
two reasons.

First, because Silverstein failed to timely assert the objection, he has waived it.
*See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992)
("It is well established that a failure to object to discovery requests within the time
required constitutes a waiver of any objection.") (citations omitted); *Ramirez v. Cnty. of
Los Angeles*, 231 F.R.D. 407, 410 (C.D. Cal. 2005) ("[T]he court will not consider any
objections that were not asserted in the responding party's original discovery responses,
*i.e.*, it will not consider objections raised for the first time in the Joint Stipulation.");
*Endsley v. Travelers Prop. Cas. Ins. Co.*, No. 14-cv-00346, 2015 WL 2380657, at *3
(E.D. Cal. May 18, 2015) (failure to assert an objection or privilege in initial responses to
discovery requests results in waiver).  Indeed, Silverstein failed to expressly raise this

---

[5] These agreements are the subject of the dispute arising from Silverstein's
objections to Request 25.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO
COMPEL PRODUCTION OF A PRIVILEGE LOG AND RESPONSES TO PLAINTIFFS' REQUEST FOR
PRODUCTION NO. 25
Case No.: 2:19-cv-05019-ODW (KSx)

argument in his written responses to the Subpoena or during meet-and-confer process, and raised it for the first time in his neutral statement prior to the May 27, 2021 pre-motion telephonic conference.  Court should reject Silverstein's belated attempt to introduce a new objection here.

Second, there is simply no way for Relevant to confirm that all of the withheld documents are in Defendants' possession, such that Defendants could identify them in a privilege log.  Unsurprisingly, Silverstein has failed to identify any case law allowing a third party to withhold a privilege log simply based on a third party's conclusory representation that the documents are in the possession of a party to the lawsuit.

**B.    This Court Should Compel Defendants to Produce Documents Responsive to Request 25.**

1.    Silverstein's Asserted Objections to Request 25 Lack Merit.

In his original objections to Request 25, Silverstein objected on the grounds that the request: (1) was overbroad, vague and ambiguous; (2) sought disclosure of information irrelevant to the litigation; (3) sought "information protected by the attorney-client and/or work product and/or common interest privileges"; and (4) assumes facts not in evidence.[6]  Each of these objections lacks merit.

First, in support of his argument that Request 25 is overbroad,[7] Silverstein argues that the Request seeks documents "involving *any* CEQA challenge, not just those at issue in plaintiff's SAC" and argues that there is no timeframe associated with the request. Manisco Decl. ¶ 5; Ex. 4 at 3.  But as Relevant pointed out in its April 14, 2021 letter, Defendants have represented to Relevant that the projects referenced in the SAC are the ***only projects they have ever challenged***.  Rubin Decl. ¶ 3; Manisco Decl. ¶ 6; Ex. 5 at 6.

---

[6] Silverstein has confirmed that he is not withholding any documents responsive to Request 25 on the grounds that the request "assumes facts not in evidence."  *See* Manisco Decl. ¶ 5; Ex. 4.
[7] In his meet and confer letters, Silverstein has failed to articulate why the requests are "vague and ambiguous."

1    Thus, Request 25 is not overbroad, as it relates to a discrete set of CEQA matters

2    necessarily limited in both scope and time.

3            Second, Silverstein's objection that Request 25 seeks irrelevant information also

4    misses the mark.  Relevant is entitled to discovery relating to its allegations in the SAC

5    that Defendants are engaged in a long-running and continuous pattern of extortion based

6    on the initiation of sham CEQA lawsuits. [8]  *See, e.g.*, *Natural-Immunogenics Corp. v.*

7    *Newport Trial Grp.*, No. 15-cv-2034, 2020 WL 2412524, at *6 (N.D. Cal. Mar. 24, 2020)

8    (describing RICO claim based on allegations that "Defendants created and profited off of

9    sham litigation over time").  Relevant alleges that Silverstein, a key member of the

10   Nourmand Enterprise, coordinated with Defendants and nonparties to further the goals of

11   the enterprise.  SAC ¶¶ 47-52.  Accordingly, any agreements and contracts relating to or

12   referencing sharing information or litigation strategy between Defendants any third party

13   would be directly relevant to Relevant's enterprise allegations.  These documents could

14   show, among other things, an agreement regarding the formation of Defendants'

15   enterprise, or a discussion regarding how to accomplish the goals of Defendants'

16   enterprise.  For instance, contracts or agreements relating to the sharing of information or

17   litigation strategy would be highly relevant to Relevant's allegations that the underlying

18   CEQA actions were shams, and that Defendants' strategy was simply to extract

19   extortionate settlements from Relevant unrelated to the merits of the CEQA allegations.

20           *In re Outlaw Labs., L.P. Litigation*, No. 18-cv-840, 2020 WL 3513492 (N.D. Cal.

21   June 26, 2020), is instructive.  There, the plaintiffs asserted RICO claims based on

22

23           [8] "A request for discovery should ordinarily be allowed under the concept of
     relevancy unless it is clear that the information sought can have no possible bearing upon
24   the subject matter of this action."  *Grande v. U.S. Bank Nat'l Ass'n*, No. C19-333 MJP,
     2020 WL 832307, at *2 (W.D. Wash. Feb. 20, 2020) (quoting *Ragge v. MCA/Universal*
25   *Studios, Inc.*, 165 F.R.D. 601, 604 (C.D. Cal. 1995)).  In the Ninth Circuit, a broad scope
     of discovery is favored because "wide access to relevant facts serves the integrity and
26   fairness of the judicial process by promoting the search for the truth."  *Epstein v. MCA,*
     *Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th
27   Cir. 1993)).

28

defendants' alleged pattern of extorting settlements from businesses after sending sham demand letters claiming that the businesses had injured defendants by selling their "TriSteel" product. *Id.* at \*5. The plaintiffs served requests for production seeking communications between the defendants and certain third parties relating to any damages allegedly caused by the sales of the TriSteel product. *Id.* at \*6. The plaintiffs argued that the communications were "relevant to demonstrate whether [defendants] were actually concerned about TriSteel's competitive position or if this was all just about extracting money from stores." *Id.* The court compelled the defendants to produce all documents responsive to the plaintiffs' requests, reasoning that, "[t]here might be some highly relevant admission in communications indicating that [defendants] knew there were no lost or lessened sales of TriSteel, ***but they did not care because TriSteel was just a vehicle to extract settlements from target stores***." *Id.* (emphasis added).

The same logic applies here. There is a strong possibility—sufficient to satisfy the broad standard for discovery—that Defendants' agreements or contracts with third-parties relating to Defendants' litigation strategy will reveal that they were not "actually concerned" about the environmental impacts underlying their CEQA challenges, and that "they did not care because [the CEQA suit] was just a vehicle to extract settlements from [Relevant]." *Id.* Thus, the documents responsive to Request 25 are highly relevant.

Third, Silverstein's objection that Request 25 seeks "information protected by the attorney-client and/or work product and/or common interest privileges" is inadequate. As discussed above, Silverstein's privilege objection does not sufficiently "describe the nature of the withheld documents, communications, or tangible things in a manner that . . . will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A). This is particularly true where, as here, Silverstein is asserting a "common interest" privilege. It is well established that the "common interest" doctrine is not a separate privilege, but rather, "an exception to ordinary waiver rules designed to allow attorneys for different

clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012); *Pulse Eng'g, Inc. v. Mascon, Inc.*, No. 08-cv-0595, 2009 WL 3234177, at *3 (S.D. Cal. Oct. 2, 2009) ("The common interest doctrine is not a privilege in and of itself, rather, it constitutes an exception to the rule on waiver where communications are disclosed to third parties."). Thus, any communication withheld on the basis of "common interest" privilege must be privileged as a threshold matter. *California Inst. of Tech. v. Hughes Commc'ns, Inc.*, No. 13-cv-07245, 2015 WL 11120674, at *1 (C.D. Cal. Feb. 24, 2015) (finding the common interest exception inapplicable because the documents were not privileged in the first instance and Caltech has not shown that the parties "had agreed to a joint legal strategy with any attorney"). But because Silverstein has refused to produce a privilege log, Relevant cannot evaluate the merits of Silverstein's privilege claim.

Even if the withheld documents are privileged, Silverstein must also demonstrate that "the parties [made] the communication in pursuit of a joint strategy in accordance with some form of agreement[.]" *Pac. Pictures*, 679 F.3d at 1129. Further, the common interest exception applies only when "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *U.S. v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003) (citing *In re Mortgage Realty Trust*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997)). Because he has refused to produce a privilege log identifying any withheld documents responsive to Request 25, Silverstein cannot invoke the common interest doctrine to protect these documents from disclosure. Accordingly, Silverstein must produce all contracts or agreements responsive to Request 25.[9]

---

[9] At a minimum, Silverstein should produce all contracts or agreements responsive to Request 25 in redacted form.

17

2. <u>Silverstein's Subsequently Raised Objections to Request 25 Also Lack Merit.</u>

During the parties' April 23, 2021 meet-and-confer call, Silverstein raised several additional reasons why he would not produce documents responsive to Request 25. Specifically, Silverstein argued that the agreements in his possession that are responsive to Request 25 could not be produced because (1) they are confidential; and (2) they would be highly prejudicial to Silverstein.[10]  These arguments do not help Silverstein.

As an initial matter, "[i]t is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark*, 959 F.2d at 1473; *see also Endsley*, 2015 WL 2380657, at *3 (failure to assert an objection or privilege in initial responses to discovery requests results in waiver).  Accordingly, the objections that Silverstein raised for the first time during the parties' meet and confer should be deemed waived.  But even if the Court considers Silverstein's belated objections, they should nonetheless be rejected on the merits.

First, Silverstein argues that, although he possesses agreement(s) responsive to Request 25, he cannot produce it because it includes a confidentiality provision, which memorializes an understanding between Defendants and an unknown third party to keep the agreement(s) confidential.  But courts routinely reject attempts to protect "confidential" agreements from disclosure, particularly where, as here, there is a stipulated protective order on file that will protect such confidential documents from disclosure.  *See, e.g., Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008) ("the simple fact that parties to a settlement

---

[10] Silverstein confirmed his position on these newly introduced objections in his May 5, 2021 letter following the parties' meet and confer call.  *See* Manisco Decl. ¶ 10; Ex. 6 at 3 ("[t]o the extent that you are continuing to seek any and all joint defense/common interest agreements from Silverstein, we continue to object that those agreements are confidential, they serve no relevant purpose to your litigation, and disclosure would be highly prejudicial to Silverstein, a third party, who is still actively engaged in CEQA actions as defined in the subpoena.")

agreement agreed to its confidentiality does not shield it from discovery […] this is especially true […] where there is a Confidentiality order in place … that is more than adequate to protect […] information from misuse"); *see also Moser v. Health Ins. Innovations, Inc.*, No. 17-cv-1127, 2019 WL 2996950, at * 4 (S.D. Cal. July 8, 2019) ("Federal courts have typically found that a settlement agreement 'is discoverable despite a confidential designation, especially when there is a protective order in place to prevent unauthorized disclosure."); *Conopco, Inc. v. Wein*, No. 05-cv-9899, 2007 WL 1040676, at *5 (S.D.N.Y. Apr. 4, 2007) ("[T]he simple fact that the parties to the settlement agreement agreed to its confidentiality 'does not shield it from discovery.'") (citations omitted).  Thus, documents responsive to Request 25 may be produced on a confidential basis pursuant to the protective order on file such that the responsive document(s) will remain confidential.

Second, Silverstein belatedly argues that production of documents responsive to Request 25 will be "prejudicial to Silverstein, a third party, who is actively engaged in CEQA actions as defined in the subpoena."[11]  But Silverstein does not articulate *how* he would be prejudiced by having to produce documents responsive to Request 25.  Nor could he.  If Silverstein is in possession of agreements or contracts relating to the sharing of information or litigation strategy between Defendants and another party in connection with Defendants' CEQA challenges, disclosing such agreements would unlikely prejudice *Silverstein*, who is not a party in any of the underlying CEQA challenges.  Further, it is unclear how disclosure of such agreements would prejudice anyone else given that the underlying CEQA litigation has all but concluded.[12]

---

[11] Manisco Decl. ¶ 10; Ex. 6 at 3.
[12] The Thompson and Tommie litigations have both been resolved, and bench trial in the Selma-Wilcox litigation has concluded.  Notably, it is unclear which litigation the withheld documents relate to, and it is therefore unclear how production of such agreements could prejudice Silverstein.

19

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Relevant's motion and order Silverstein to produce a privilege log identifying any documents withheld on the basis of privilege, and documents responsive to Relevant's Request No. 25.

Dated:  June 17, 2021                    Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Susan K. Leader
Joshua A. Rubin


By<u>:          */s/ Susan K. Leader*</u>
             Susan K. Leader
             Attorneys for Plaintiffs