ANDREW J. WAXLER (SBN 113682)
Email: awaxler@kdvlaw.com
JENNIFER E. NEWCOMB (SBN 287314)
Email: jnewcomb@kdvlaw.com
ROBERT J. BOROWSKI (SBN 305334)
Email: rborowski@kdvlaw.com
KAUFMAN DOLOWICH & VOLUCK LLP
11755 Wilshire Boulevard, Suite 2400
Los Angeles, California 90025
Tel:   (310) 775-6511
Fax:   (310) 525-9720

Attorneys for Non-Party
ROBERT SILVERSTEIN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RELEVANT GROUP, LLC, a
Delaware limited liability company;
1541 WILCOX HOTEL LLC, a
Delaware limited liability company;
6516 TOMMIE HOTEL LLC, a
Delaware limited liability company; and
6421 SELMA WILCOX HOTEL LLC,
a California limited liability company,

              Plaintiffs,

      vs.

STEPHAN "SAEED" NOURMAND,
an individual; THE SUNSET
LANDMARK INVESTMENT LLC, a
California limited liability company;
and DOES 1-10,

              Defendants,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:19-cv-05019-ODW (KSx)

**NON-PARTY ROBERT SILVERSTEIN'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF A PRIVILEGE LOG AND RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION NO. 25**

Date: July 28, 2021
Time: 10:00 a.m.
Place: Courtroom 580, 5th Floor

Discovery Cut-off: 8/16/2021
Pretrial Conference: 11/8/2021
Trial: 11/30/21

     Non-party Robert Silverstein ("Silverstein") respectfully submits the following Opposition to Plaintiffs Relevant Group, LLC, 1541 Wilcox Hotel LLC, 6516 Tommie Hotel LLC, and 6421 Selma Wilcox Hotel LLC's (collectively "Plaintiffs") Motion to Compel Production of a Privilege Log and Responses to Plaintiffs' Request for Production No. 25 (the "Motion").

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 5

II. BACKGROUND ON MEET AND CONFER DISCUSSIONS ........................... 10

III. ARGUMENT .................................................................................................... 12

    A.     Silverstein Should Not be Compelled to Produce a Privilege Log ........................................................................................................ 12

        1.     A Privilege Log is Not Required Under FRCP Rule 45 ................. 12

        2.     The Benefit of a Privilege Log is Outweighed by the Significant Burden Placed on a Non-Party ...................................... 13

    B.     Plaintiffs' Litigation Strategy Does Not Compel Production of a Privilege Log ............................................................................................ 16

    C.     If A Privilege Log Is Required, It Should Be a Modified Privilege Log ............................................................................................ 18

    D.     Silverstein Should Not Be Compelled to Produce Any Documents Under Request for Production No. 25 ...................................... 19

IV. CONCLUSION .................................................................................................. 21

NON-PARTY ROBERT SILVERSTEIN'S OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL PRODUCTION OF A PRIVILEGE LOG AND RESPONSES TO PLAINTIFFS'
REQUEST FOR PRODUCTION NO. 25

# TABLE OF AUTHORITIES

**Cases**

*Amini Innovation Corporation v. McFerran Home Furnishings, Inc.*
(C.D. Cal. 2014) 300 F.R.D. 406...............................................................14

*Apple Inc. v. Samsung Electronics Co., Ltd.*
(N.D. Cal. 2015) 306 F.R.D. 234 ............................................................12

*Arthrex, Inc. v. Parcus Medical, LLC*
2011 WL 6415540 (S.D.Ind. Dec. 21, 2011) ..........................................15

*Brown v. City of Syracuse*
648 F.Supp.2d 461 (N.D.N.Y. 2009) ......................................................15

*Cusumano v. Microsoft Corp.*
(1st Cir. 1998) 162 F.3d 708 ....................................................................14

*Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.*
(9th Cir. 1980) 649 F.2d 646 .............................................................13, 14

*Diva Limousine, Ltd. v. Uber Technologies, Inc.*
(N.D. Cal. 2019) 2019 WL 144589 ........................................................20

*Franco-Gonzalez v. Holder*
(C.D. Cal. 2013) 2013 WL 8116823 .......................................................18

*In re Allergan, Inc.*
(C.D. 2016) 2016 WL 5922717.................................................................15

*In re Grand Jury Investigation,*
(9th Cir. 1992) 974 F.2d 1068 .................................................................12

*In re Icenhower*
(9th Cir. 2014) 755 F.3d 1130 .................................................................17

*In re Imperial Corp. of America*
(S.D. Cal. 1997) 174 F.R.D. 475 .............................................................18

*Jackson v. County of Sacramento*
(E.D. Cal. 1997) 175 F.R.D. 653 .............................................................13

*Katz v. Batavia Marine & Sporting Supplies, Inc.*
(Fed.Cir. 1993) 984 F.2d 422 ..................................................................14

*Marina Point Development Associates v. United States*
(C.D. Cal. 2005) 364 F.Supp.2d 1144 .......................................................5

*Misc. Docket Matter No. 1. v. Misc. Docket Matter No. 2.*
(8th Cir. 1999) 197 F.3d 922 ...................................................................14

*Moon v. SCP Pool Corp.*
(C.D. Cal. 2005) 232 F.R.D. 633..............................................................15

3

*Oregon Natural Res. Council v. Mohla*
  (9th Cir. 1991) 944 F.2d 531 ................................................................. 5, 17

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*
  (N.D. Cal. 2019) 2019 WL 1950377 ....................................................... 17

*Precourt v. Fairbank Reconstruction Corp.*
  280 F.R.D. 462 (D.S.D. 2011) ................................................................ 15

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,*
  (1993) 508 U.S. 49 ................................................................................ 5, 8

*Rocky Mountain Medical Management*
  (D. Idaho Dec. 5, 2013) 2013 WL 6446704 ............................................ 15

*Sosa v. DIRECTV, Inc.*
  (9th Cir. 2006) 437 F.3d 923 .................................................................... 5

*U.S. v. Gonzalez*
  (9th Cir. 2012) 69 F.3d 974 ..................................................................... 20

*United States v. Zolin*
  (1989) 491 U.S. 554 ................................................................................ 17

**<u>Statutes</u>**

FCRP Rule 45(e)(2)(A)(ii) ............................................................................. 12

FRCP Rule 26(b)(5)(ii) .................................................................................. 12

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I. **INTRODUCTION**

Plaintiffs' subpoena to non-party Silverstein is nothing more than a fishing expedition designed to frustrate, impair and impede Silverstein's continuing representation of Defendant The Sunset Landmark Investment LLC ("Sunset"). That follows from the fact that Plaintiffs' lawsuit is intended to chill the underlying and ongoing California Environmental Quality Act ("CEQA") litigation and administrative objections that have successfully resulted most recently in an order vacating environmental findings that had favored Plaintiffs over the public on matters such as cancer risks from Plaintiffs' project. Looking at the discovery dispute in the context of existing litigation makes clear Plaintiffs' attempt here is to chill Sunset's right to petition for redress of grievances.

Silverstein's filing of the subject CEQA actions on behalf of Sunset are immunized from RICO liability under the *Noerr-Pennington* doctrine. See *Sosa v. DIRECTV, Inc.,* (9th Cir. 2006) 437 F.3d 923, 929[1]. To overcome this immunity, Plaintiffs **must** prove that the CEQA actions were sham lawsuits. See *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* (1993) 508 U.S. 49, 60-61. A "sham" lawsuit is one where the suit is both "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and "an attempt to interfere directly with the business relationship of a competitor through the governmental process – as opposed to the outcome of that process." *Id.*

---

[1] The right to petition a governmental body is so fundamental that a claim involving a defendant's right to petition must meet a heightened pleading standard before a court will strip a defendant's activities of their *Noerr-Pennington* protections. *See Marina Point Development Associates v. United States,* (C.D. Cal. 2005) 364 F.Supp.2d 1144, 1146.  "This heightened level of protection accorded petitioning activity is necessary to avoid a chilling effect on the exercise of this fundamental First Amendment right." *Id.* (internal quotation marks omitted) citing *Oregon Natural Res. Council v. Mohla,* (9th Cir. 1991) 944 F.2d 531, 533.

Plaintiffs cannot meet their burden of proof on these issues and their overreaching discovery requests to non-party Silverstein are of no help.

First, Sunset and Plaintiffs are not competitors, despite Plaintiffs' false assertions that they are. Sunset does *not* develop, own or operate hotels, restaurants or bars – which comprise the projects pursued by Plaintiffs in the underlying CEQA cases. That alone should defeat the Motion and further expose Plaintiffs' RICO case as the harassing sham that it is. More critically, however, is the fact that the underlying CEQA actions were/are all legitimate, merit based actions brought in good faith and which were legally resolved by way of a negotiated settlement or order in favor of Silverstein's client, Sunset. Much of this was briefed and supported with admissible evidence in Sunset's Motion to Dismiss. (Declaration of Jennifer E. Newcomb ("Newcomb Decl.") ¶¶ 1-2; Request for Judicial Notice ("RJN") ¶¶ A(1), (2); Dkt. Nos. 23-1, 23-3.) However, Sunset's success in the Selma/Sunset Litigation was not included as it had not yet occurred at the time of Sunset's Motion to Dismiss. (Newcomb Decl. ¶ 4; Exs. 3, 4 to Newcomb Decl.; RJN ¶¶ B(1), (2).)

Here is a brief breakdown of the CEQA actions at issue:

**<u>Thompson Litigation</u>**

The Thompson Litigation is titled *The Sunset Landmark Investment, LLC v. City of Los Angeles, et al.,* Los Angeles Superior Court Case No. BS160807, filed on March 3, 2016. Plaintiff 1541 Wilcox Hotel LLC ("Wilcox") was the real party in interest and was represented by counsel. Sunset's case going into trial was strong. On the eve of trial, the trial court issued a tentative ruling on a pending motion to augment the administrative record, filed by the City of Los Angeles (the "City"). The trial court's tentative ruling held that the City could not introduce evidence of amended design plans at trial because those plans were not published in the manner required by CEQA. (Ex. 1 to Newcomb Decl., p. 4:3-5:7; Ex. 2 to Newcomb Decl., Ex. 6; RJN ¶¶ A(1), (2).) The tentative ruling also took strong issue with the City's conduct, which deprived Sunset and the public of critical notice and public

participation rights as required by CEQA.   Immediately after that ruling was released, *Wilcox* approached *Sunset* about settlement of both the Thompson Litigation and the Tommie Litigation, discussed below. A settlement was ultimately reached between Wilcox and Sunset following an arm's length negotiation through the parties' respective attorneys. (Ex. 1 to Newcomb Decl., p. 5:1-7; Ex. 2 to Newcomb Decl., Ex. 7; RJN ¶¶ A(1), (2).)

### **Tommie Litigation**

The Tommie Litigation is titled *The Sunset Landmark Investment, LLC v. City of Los Angeles, et al.,* Los Angeles Superior Court Case No. BS169821, filed on June 9, 2017. Plaintiff 6516 Tommie Hotel LLC ("Tommie") was the real party in interest and was represented by counsel. Silverstein was not the only attorney to file a CEQA action relating to Tommie. Another attorney, Gideon Krakov, filed a separate CEQA suit on behalf of neighbors of the hotel project[2]. (Ex. 1 to Newcomb Decl., p. 5:19-22; Ex. 2 to Newcomb Decl., Ex. 8; RJN ¶¶ A(1), (2).) In addition, the law firm of Greenberg Glusker filed a CEQA action on behalf of another neighbor of the hotel[3]. (Ex. 1 to Newcomb Decl., p. 5:22-23; Ex. 2 to Newcomb Decl., Ex. 9; RJN ¶¶ A(1), (2).) Mr. Krakov's case went to trial and resulted in a finding of CEQA violations. (Ex. 1 to Newcomb Decl., p. 5:24-27; Ex. 2 to Newcomb Decl. Exs. 10, 14; RJN ¶¶ A(1), (2).) The only reason Sunset's Tommie Litigation did not proceed to trial was because it was settled along with the Thompson Litigation following arms-length negotiations initiated by Relevant

---

[2] See *Lauren "Elle" Farmer, et al. v. City of Los Angeles,* Los Angeles Superior Court Case No. BS169855.

[3] See *Mama Wilcox Land, LLC v. City of Los Angeles, et al.,* Los Angeles Superior Court Case No. BS169855.

NON-PARTY ROBERT SILVERSTEIN'S OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL PRODUCTION OF A PRIVILEGE LOG AND RESPONSES TO PLAINTIFFS'
REQUEST FOR PRODUCTION NO. 25

1  (through Wilcox and/or Tommie). That settlement included environmental

2  concessions as sought by Sunset. (Ex. 1 to Newcomb Decl., p. 6:4-17; RJN ¶ A(1).)[4]

3       Given that *multiple* attorneys/law firms filed suits in the Tommie Litigation,

4  and that the law firm that proceeded to trial on behalf of non-competitors prevailed,

5  it is likewise impossible for Sunset's Tommie Litigation to have been a "sham."

6  *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., supra*,

7  508 U.S. at 60-61.

8  **Selma/Sunset Litigation**

9       The Selma/Sunset Litigation is titled *The Sunset Landmark Investment, LLC*

10  *v. City of Los Angeles, et al.,* Los Angeles Superior Court Case No. 19STCP01027,

11  filed on April 2, 2019. Plaintiff 6421 Selma Wilcox Hotel LLC ("Selma Wilcox") is

12  the real party in interest and is represented by counsel. The Selma/Sunset Litigation

13  proceeded to trial in January 2021. The trial resulted in a finding in favor of Sunset

14  on a number of issues. (Newcomb Decl., ¶ 4, Ex. 3; RJN ¶ B(1).) In furtherance of

15  its ruling, the court also issued an Interlocutory Writ and Order of Remand. (*Id.*, Ex.

16  4; RJN ¶ B(2).) The Writ and Order of Remand instructed the City to conduct

17  further proceedings regarding the subject project. (*Id.*) It further instructed the City

18  to submit a return to the court with specific additional information. (*Id.*) The court

19  retained jurisdiction over the Selma/Sunset Litigation until such time as the City

20  filed its return. (*Id.*)

21       Sunset filed an appeal from the Interlocutory Writ and Order of Remand. The

22  appeal was dismissed on June 10, 2021 based upon a finding that the appeal was

23  premature. (Newcomb Decl. ¶ 4.) The Selma/Sunset Litigation has not concluded. It

24  is still on remand to the City to conduct further proceedings on critical

25

26      [4] Neither Tommie nor Wilcox has moved to set aside the settlement

27  agreements entered into with Sunset. (Ex. 1 to Newcomb Decl., p. 10:26-11:10; RJN

28  ¶ A(1).) Their RICO claims against Sunset therefore amount to breaches of those

agreements and the releases included therein.

environmental issues before returning to the court for final judgment. (*Id.*, Ex. 5; RJN ¶ B(3).)

In view of the powerful tentative ruling in favor of Sunset in the first CEQA case, and the actual merits successes in the second and third CEQA cases, Plaintiffs cannot establish that "no reasonable person" would expect success on the merits of the three CEQA actions. Therefore, the only plausible explanation for the RICO litigation and this burdensome discovery on a non-party is to make it as time consuming and expensive as possible to try to discourage future litigation involving these Plaintiffs. In fact, this continued harassment of Silverstein in discovery will not remedy Plaintiffs' inability to prove their case.

In their Motion, Plaintiffs argue that a document by document privilege log is necessary because it *may* provide Plaintiffs with information relating to whether the crime-fraud exception applies. Of course, Plaintiffs offer no explanation how the limited information afforded under a privilege log – author, recipient, date, applicable privilege – provides any useable information to establish the crime-fraud exception. It would not. Plaintiffs further brush aside the burden to this non-party saying in essence, the number of documents are "only" in the hundreds, not the thousands, so what is the big deal?  Well, preparing a privilege log of supposedly only hundreds of documents over five years of litigation in three separate cases is burdensome and oppressive. And the benefit, of which there is none, is far outweighed by the burden on this non-party.

The same issue exists with respect to Request for Production No. 25 which seeks all common interest/joint defense agreements between Silverstein's client and any other person. Silverstein's counsel has already represented that there are no agreements with any of the alleged enterprise parties, including Nourmand & Associations and/or Casey Maddren, as identified in the Second Amended Complaint ("SAC"). Plaintiffs have not established any relevance in seeking

agreements for any other person. Plaintiffs are therefore not entitled to production of any such agreements.

Silverstein satisfied his obligations to cooperate with the discovery process as a non-party. Any additional information that Plaintiffs claim to need can be obtained directly from Silverstein's client, defendant Sunset. Plaintiffs' Motion should be denied in its entirety.

## II. BACKGROUND ON MEET AND CONFER DISCUSSIONS

Plaintiffs' description of the meet and confer discussions between Plaintiffs' counsel and Silverstein's counsel is deceptively inaccurate. In the April 1, 2021 letter from Silverstein's counsel, Silverstein's counsel argued that all of Silverstein's objections, including the attorney-client privilege objection, had merit. (Declaration of Brett Manisco ("Manisco Decl."), Ex. 4 (Dkt. No. 73-7).) Counsel argued the attorney-client privilege objection was warranted due to the unreasonable overbreadth in Plaintiffs' requests seeking any and all documents that "relate to" the subject matter of the request. These requests unreasonably encompassed not only communications between Silverstein and his client, but they also encompassed communications between Silverstein and his own counsel in this action.

Silverstein's counsel argued that the burden of producing a privilege log encompassing each of these communications between attorney and client outweighed any benefit resulting therefrom. Counsel also provided authorities supporting the argument that Silverstein is not legally required to produce a document by document privilege log as demanded by Plaintiffs. With ongoing litigation both before this Court and relating to at least one of the underlying CEQA actions, a document by document privilege log risks prejudicing Silverstein's representation of his client and his own representation in this matter, potentially showing a pattern and/or subject matter of the communications, therefore disclosing litigation strategy.

Plaintiffs' counsel responded on April 14, 2021. (Manisco Decl., Ex. 5 (Dkt. No. 73-8).) Counsel for both Plaintiffs and Silverstein thereafter engaged in a telephonic meet and confer on April 23, 2021. (Newcomb Decl., ¶5.) The privilege log and the common interest agreement issues were the only subjects discussed. (*Id.*) Plaintiffs' counsel represented that all other previously discussed issues were considered to be resolved. (*Id.*) Silverstein's counsel reiterated the undue burden of producing a privilege log as requested, emphasizing that defendant Sunset in this action was already preparing a privilege log concerning the same documents that Plaintiffs seek to have Silverstein address in the privilege log they are demanding here. (*Id.*) Such duplicate demands serve to reinforce the true motive here to harass this non-party.

Counsel also questioned the relevance of the information that Plaintiffs sought to obtain from a privilege log. (*Id.*) Counsel represented that the only communications withheld were communications between Silverstein and his client in furtherance of Silverstein's legal representation of the client. Therefore, no information would be disclosed in any such log that could possibility provide information relevant to whether the crime-fraud exception applies. (*Id.*)

During the call, Silverstein's counsel also inquired into the relevance of the request for common interest agreements. (Newcomb Decl. ¶5.) Counsel specifically asked what Plaintiffs were looking for because Request for Production No. 25 was overbroad. (*Id.*) Despite what they now write in their moving papers, Plaintiffs' counsel advised that they were looking for agreements between Silverstein/Sunset and Casey Maddren ("Maddren")[5] and/or Nourmand & Associates. (*Id.*) Counsel responded stating that no such agreements exist. (*Id.*) In fact, Silverstein already produced all materials relating to Maddren. (*Id.*) Silverstein also provided a verified

---

[5] Maddren brought his own suit against Selma Wilcox referred to in the SAC as the Maddren Litigation.  (SAC ¶ 107.)

response that no materials relating to Nourmand & Associates existed. (*Id.*) In response to these representations, Plaintiffs' counsel advised that the issue relating to Request for Production No. 25 may be resolved. (*Id.*)

Now in their Motion, Plaintiffs dispute that there was ever any limitation to Request for Production No. 25. Thankfully, Silverstein's counsel confirmed the discussion in a May 5, 2021 letter. (*Id.*) Plaintiffs' counsel confirmed their receipt and review of the letter and failed to raise any objection to the summary of the April 23rd discussion.  (Newcomb Decl. ¶7.)

## III.   ARGUMENT

### A. Silverstein Should Not be Compelled to Produce a Privilege Log

#### 1.  A Privilege Log is Not Required Under FRCP Rule 45

Federal Rules of Civil Procedure ("FRCP") Rule 45 does *not* require production of a privilege log. What it says is that a person withholding documents under a claim of privilege must state the claim and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." FRCP Rule 45(e)(2)(A)(ii); see also *Apple Inc. v. Samsung Electronics Co., Ltd.*, (N.D. Cal. 2015) 306 F.R.D. 234, 237 [holding that briefs, declarations or other proof may establish the purpose of the communication or the specific role of the sender and each individual recipient]; and *In re Grand Jury Investigation,* (9th Cir. 1992) 974 F.2d 1068 [holding that a privilege log is only one of a number of ways in which a party may sufficiently establish privilege].

Rule 45(e)(2)(A)(ii) is akin to Rule 26(b)(5)(ii). In analyzing Rule 26(b)(5)(ii), it has been held that:

> A lawyer's statement that information is being withheld under a claim of attorney-client privilege is an implicit assertion that the information was conveyed in confidence by a client to an attorney for the purpose of facilitating legal services to the client. The assertion of attorney work product protection carries its own implicit assertion about the factual predicate of the

claim. In many circumstances this information may be entirely sufficient. It would be a rare case, for instance, that an attorney could not withhold a file of correspondence with his client on the ground that it was privileged without providing a bibliographic "log" of the entire contents. Construing Rule 26(b)(5) in such fashion would undermine the cardinal mandate of Rule 1, which requires the rules be construed and administered to secure the just, speedy, and *inexpensive* determination of every action. Thus the duty to provide the description required by Rule 26(b)(5) is flexible and does not arise until there is a good faith challenge to the privilege claim.

*Jackson v. County of Sacramento,* (E.D. Cal. 1997) 175 F.R.D. 653, 656 [finding that attorney's description of materials withheld and purpose for withholding satisfied the "description" requirement of Rule 26(b)(5).].

Silverstein timely asserted the attorney-client privilege in response to Requests for Production Nos. 10-15[6]. (Manisco Decl., Ex. 2 (Dkt. No. 73-5).) In numerous discussions with Plaintiffs' counsel, Silverstein's counsel represented the materials withheld were communications between Silverstein and his client in furtherance of Silverstein's legal representation of the client. (Manisco Decl., Ex. 6 (Dkt. No. 73-9); Newcomb Decl., ¶ 5.) Silverstein has satisfied the "description" requirement of Rule 45. A privilege log is not necessary.

## 2. The Benefit of a Privilege Log is Outweighed by the Significant Burden Placed on a Non-Party

Federal courts have long held the rules of discovery must be protectively construed when it comes to non-parties. See *Dart Industries Co., Inc. v. Westwood Chemical Co., Inc. ("Dart"),* (9th Cir. 1980) 649 F.2d 646 [finding the district court

---

[6] The objection was asserted in connection with additional requests, but it is Silverstein's understanding that Nos. 10-15 are the only requests at issue.

did not abuse its discretion in barring third-party discovery]. In *Dart,* the Ninth Circuit held:

> While discovery is a valuable right and should not be unnecessarily restricted, [citation], the "necessary" restriction may be broader when a nonparty is the target of discovery. As one district has noted, "(t)here appear to be quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents." [Citation.] One author has stated that the more appropriate nomenclature is "nonparty" discovery, not "third-party" discovery, as "the word nonparty serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery." [Citation.]
>
> Although the strong policy in favor of liberal discovery is clear, [citation], commentators have recognized that there is a potential for abuse in such a policy. . . . (Internal citations omitted.)
>
> *Id.* at 649.

The Central District of California has itself ruled that non-party discovery should be limited. See *Amini Innovation Corporation v. McFerran Home Furnishings, Inc. ("Amini"),* (C.D. Cal. 2014) 300 F.R.D. 406. In *Amini* the Central District held: "'[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs' in a Rule 45 inquiry." *Id.* at 409, citing *Cusumano v. Microsoft Corp.,* (1st Cir. 1998) 162 F.3d 708, 717); *Misc. Docket Matter No. 1. v. Misc. Docket Matter No. 2.,* (8th Cir. 1999) 197 F.3d 922, 927; *Dart Industries Co., Inc., supra,* 649 F.2d 646; and *Katz v. Batavia Marine & Sporting Supplies, Inc.,* (Fed.Cir. 1993) 984 F.2d 422, 424. The court further held:

> Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party. **Accordingly, "[a] court may prohibit a party from obtaining discovery from a non-party if that same**

14

NON-PARTY ROBERT SILVERSTEIN'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF A PRIVILEGE LOG AND RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION NO. 25

**information is available from another party to the litigation."** *Rocky Mountain Medical Management,* (D. Idaho Dec. 5, 2013) 2013 WL 6446704, at *4; *see also Precourt v. Fairbank Reconstruction Corp.* 280 F.R.D. 462, 467 (D.S.D. 2011) ("If the party seeking information can easily obtain the same information without burdening the non-party, the court will quash the subpoena."); *Brown v. City of Syracuse,* 648 F.Supp.2d 461, 466 (N.D.N.Y. 2009) (when balancing hardships between requesting party and non-party, court should consider whether there are other sources for obtaining the material); *Arthrex, Inc. v. Parcus Medical, LLC,* 2011 WL 6415540, at *6 (S.D.Ind. Dec. 21, 2011) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same requests."). (Emphasis added.)

*Id.* at 410.

*See also, Moon v. SCP Pool Corp.,* (C.D. Cal. 2005) 232 F.R.D. 633, 638 [holding that a subpoena to a non-party should be quashed as the requests "all pertain to defendant, who is a party, and, thus, **plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from nonparty [ ]**." (Emphasis added.).] The Central District has also given special weight against imposing non-party discovery when the non-party is an attorney. *See In re Allergan, Inc.,* (C.D. 2016) 2016 WL 5922717, at *4.

The foregoing authorities support a denial of the relief sought by Plaintiffs' Motion. Silverstein is a non-party. He is also an attorney actively representing a named defendant, Sunset. (Newcomb Decl. ¶4.) Plaintiffs have already propounded discovery on Sunset. (*Id.* at ¶8.) That discovery is substantially the same as the discovery subsequently propounded on Silverstein. Silverstein is informed and reasonably believes that Sunset is in the process of preparing a privilege log relating to documents withheld based on attorney-client privilege. (*Id.*) There is no legitimate reason to compel non-party Silverstein to produce a duplicative privilege log.

Plaintiffs' Motion erroneously argues that because Silverstein's counsel referenced there being "hundreds" of e-mails subject to the attorney-client privilege, that somehow putting together a privilege log would not be burdensome. Plaintiffs are wrong. Hundreds of e-mails, over three underlying cases dating to 2016, take time to cull, review, and independently log. Hundreds of e-mails could easily turn into thousands of e-mails during the process of review. Hundreds of e-mails can also equal thousands of dollars of client and attorney time. All of this for something that Plaintiffs are already getting from a party to this action.

Plaintiffs' suggestion that they need to cross-reference Silverstein's log with Sunset's log is a further waste of time and resources. Plaintiffs have provided no evidence that there is any reason to believe Sunset's log would be less than complete. There is no reason to believe that Silverstein would have an attorney-client communication which his own client, to whom the communication was sent, would not have. Without evidence that Sunset's log is or will be somehow deficient, Silverstein should not be saddled with the substantial burden of having to complete a duplicative log.

Finally, Plaintiffs' Motion erroneously suggests that Silverstein has waived the burden argument as it was not set forth in his written responses. Plaintiffs forget that this dispute is over a privilege log and not a written response. The request for a privilege log, and Silverstein's objections thereto, all followed Silverstein's written responses. From the outset, Silverstein asserted an objection to production of a privilege log based on burden.  (Manisco Decl., Ex. 5 (Dkt. No. 73-8).)

**B. Plaintiffs' Litigation Strategy Does Not Compel Production of a Privilege Log**

Plaintiffs argue a privilege log is necessary because it will help them evaluate whether the crime-fraud exception applies. Their argument must be rejected. Plaintiffs have provided no authorities suggesting their *potential and hypothetical* pursuit of the crime-fraud exception outweighs the significant burden that would be

placed on Silverstein in preparing a privilege log.  In fact, Plaintiffs' statement that a privilege log will inform whether the crime-fraud exception applies is simply false.

A party seeking production under the crime-fraud exception must make a showing that: (1) the client was engaged in or planning a criminal or fraudulent scheme when he or she sought the advice of counsel to further the scheme; and (2) the attorney-client communications for which production is sought are sufficiently related to, and were made in furtherance of, the scheme. *In re Icenhower,* (9th Cir. 2014) 755 F.3d 1130, 1141. Plaintiffs cannot get past the first element.

To satisfy the first element, Plaintiffs must make a "threshold showing" that the communications will show a crime or fraud was planned. The showing must be made using relevant, nonprivileged evidence. *United States v. Zolin,* (1989) 491 U.S. 554, 572-573. Accordingly, before Silverstein's privileged documents (and therefore the privilege log) become an issue, Plaintiffs **must** first establish that they have relevant, admissible and nonprivileged evidence showing that Silverstein's client was part of some crime or fraud. Plaintiffs have presented no admissible evidence of any purported crime or fraud outside of the unverified allegations in the SAC. Conclusory and speculative arguments are not enough to support the threshold requirement. See *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress,* (N.D. Cal. 2019) 2019 WL 1950377 [holding that "unfounded suspicion" is insufficient to justify review of the allegedly privileged materials for purposes of evaluating the crime-fraud exception]; *Oregon Natural Res. Council v. Mohla*, *supra*, 944 F.2d at 533 ["Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr–Pennington* protection"].

Even if Silverstein were compelled to produce a privilege log, the limited information provided by the log – author, recipient, date, applicable privilege – would not give Plaintiffs anything they need to evaluate crime-fraud. Silverstein's counsel repeatedly advised that all that was withheld were communications between Silverstein and his client regarding his legal representation of the client. (Manisco

Decl., Ex. 6 (Dkt. No. 73-9); Newcomb Decl., ¶5.) That is all the information Plaintiffs will get out of a log. There is no smoking gun. Plaintiffs have not provided any evidence suggesting otherwise.

### C. If A Privilege Log Is Required, It Should Be a Modified Privilege Log

As discussed above, Rule 45 does not mandate a document by document privilege log. In some cases, like here, preparation of a document by document privilege log can be burdensome and oppressive. Not only that, but a document by document privilege log can also result in the inadvertent disclosure of litigation strategy. *See In re Imperial Corp. of America ("In re Imperial"),* (S.D. Cal. 1997) 174 F.R.D. 475, 478. To avoid these risks, the court in *In re Imperial* adopted a modified privilege log that only required identification of: "(1) an aggregate listing of the numbers of the withheld documents; (2) an identification of the time periods encompassed by the withheld documents; (3) an affidavit containing the representation(s) that: (a) the withheld documents were: (1) either prepared to assist in anticipated or pending litigation, or (2) contain information reflecting communications between (i) counsels or counsels' representatives, and (ii) plaintiffs or plaintiffs' representatives, for the purpose of facilitating the rendition of legal services to plaintiffs; and, (b) intended to be confidential communications." *Id.* at 479. The Central District followed *In re Imperial* in ordering a modified privilege log in *Franco-Gonzalez v. Holder,* (C.D. Cal. 2013) 2013 WL 8116823 *7.

Silverstein represented defendant Sunset in the three underlying CEQA matters at issue. The Selma/Sunset Litigation is still active.  (Newcomb Decl. ¶ 4.) There is no dispute the communications withheld are communications between Silverstein and Sunset relating to Silverstein's representation of Sunset in these matters. (Manisco Decl., Ex. 6 (Dkt. No. 73-9); Newcomb Decl. ¶ 5.)  Like in *In re Imperial* "it would be foolish to believe that very many of [these] documents would be other than protected by the attorney-client privilege or work product." *Id.*

Accordingly, although the facts and law discussed above show that no privilege log should be required, if a privilege log were to be compelled, it should be a modified privilege log such as the ones in *In re Imperial* and *Holder*. This will reduce the burden on Silverstein and lessen the risk of exposing Silverstein's litigation strategy.

**D. Silverstein Should Not Be Compelled to Produce Any Documents Under Request for Production No. 25**

Request for Production No. 25 is so overbroad that it seeks disclosure of documents which are irrelevant to the subject matter of this litigation. Specifically, it seeks disclosure of all agreements and contracts with *any* other person in connection with *any* CEQA challenge.   (Manisco Decl., Ex. 1, No. 25 (Dkt. No. 73-4).) Silverstein objected to this request due to its overbreadth and inherent request for irrelevant information. (Manisco Decl., Ex. 2, No. 25 (Dkt. No. 73-5).)

During the meet and confer process, Plaintiffs' counsel indicated Plaintiffs were only seeking agreements with either Maddren or Nourmand & Associates. (Newcomb Decl. ¶5.) Now Plaintiffs claim they want any agreements with *any* other person. They contend agreements with persons other than Maddren and Nourmand & Associates are relevant to their purported contention that Silverstein coordinated with other nonparties to further the goals of the enterprise.   They claim that contention is reflected in paragraphs 47-52 of the SAC.  No such contention exists.

In fact, Silverstein is only alleged to have coordinated with Maddren and "other members of the Nourmand Enterprise." (SAC ¶¶ 47, 53 (Dkt. No. 41.) The Nourmand Enterprise is defined as Defendants Saeed Nourmand ("Nourmand"), The Sunset Landmark Investment LLC ("Sunset Landmark"), Nourmand's son's business (Nourmand & Associates[7]), and Silverstein. (*Id.* at ¶ 2.) There are no allegations anywhere in the SAC suggesting that Silverstein may have coordinated

---

[7] (*Id.* at ¶ 55.)

with any nonparties other than Maddren and/or Nourmand & Associates. Thus, only common interest agreements with Maddren and/or Nourmand & Associates would be relevant to the claims made in the SAC. *See* FRCP Rule 401 [relevant evidence is "evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence."].

Knowing that their first argument would not hold water, Plaintiffs alternatively claim that all common interest agreements are relevant to the issue of the CEQA actions being a sham. This argument is nonsensical and proves that Plaintiffs' purpose is to chill CEQA litigation. A common interest agreement is an agreement between parties who share a common interest in litigation allowing them to share information to effectively prosecute or defend their claims. See *U.S. v. Gonzalez,* (9th Cir. 2012) 69 F.3d 974, 978 [discussing the purpose of the joint defense/common interest rule]; see also *Diva Limousine, Ltd. v. Uber Technologies, Inc.,* (N.D. Cal. 2019) 2019 WL 144589 *7 [holding that a common interest agreement is not required to be documented in writing to be enforceable]. The agreement would not reflect the communications themselves, which are undisputedly privileged. *Gonzalez, supra,* 69 F.3d at 981. There is simply no information that Plaintiffs would get out of a common interest agreement which would have a tendency of proving or disproving that the CEQA actions were a sham[8]. And it should not be forgotten that Plaintiffs' counsel previously represented they only needed agreements relating to Maddren or Nourmand & Associates.

Silverstein has satisfied his discovery obligations with respect to Request for Production No. 25. The only relevant agreements would be with Maddren and/or

---

[8] Sunset has already presented ample evidence that there was no sham. (See Dkt. No. 23-1) Sunset's claims had merit, including as shown by judicial findings in its favor, and as also pursued by other, reputable, law firms.

1   Nourmand & Associates. No such agreements exist. In his verified responses,
2   Silverstein represented that all documents and communications relating to Maddren
3   have been produced. (Manisco Decl., Ex. 2 (Dkt No. 73-5).) Silverstein also
4   represented that there are no documents that exist relating to Nourmand &
5   Associates. (*Id.*) Plaintiffs have not given any reason to question Silverstein's
6   verified responses. Therefore, there is no reason to compel any further response, or
7   production, to Request for Production No. 25.

8   **IV.    <u>CONCLUSION</u>**

9        In light of the foregoing points and authorities, Silverstein respectfully
10  requests the Court deny Plaintiffs' Motion in its entirety.

12  Dated: July 7, 2021                KAUFMAN DOLOWICH & VOLUCK LLP

15                          By:    _____
16                                 ANDREW J. WAXLER
17                                 JENNIFER E. NEWCOMB
                                   ROBERT J. BOROWSKI
18                                 Attorneys for Non-Party
                                   ROBERT SILVERSTEIN

NON-PARTY ROBERT SILVERSTEIN'S OPPOSITION TO PLAINTIFFS' MOTION TO
COMPEL PRODUCTION OF A PRIVILEGE LOG AND RESPONSES TO PLAINTIFFS'
REQUEST FOR PRODUCTION NO. 25

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA          )
COUNTY OF LOS ANGELES )

3

4

        I am employed in Los Angeles County.  My business address is 11755 Wilshire Blvd., Suite 2400, Los Angeles, CA 90025, where this mailing occurred.  I am over the age of 18 years and am not a party to this cause.  I am readily familiar with the practices of KAUFMAN DOLOWICH & VOLUCK LLP for collection and processing of correspondence for mailing with the United States Postal Service.  Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

5

6

7

8

        On July 7, 2021, I served the foregoing documents on the interested parties in this action entitled as follows:

9

**NON-PARTY ROBERT SILVERSTEIN'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF A PRIVILEGE LOG AND RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION NO. 25**

10

11

[XX]  by placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

12

13

## SEE ATTACHED SERVICE LIST

14

15

[XX]  (**BY THE COURT'S ECF SYSTEM**):  I caused each such document(s) to be transmitted electronically by posting such document electronically to the ECF website of the United States District Court for the Central District of California, on all ECF-registered parties in the action.

16

17

[   ]  (**BY FEDEX**)  I am "readily familiar with the firm's practice of collection and processing correspondence for mailing via Express Mail (or another method of delivery providing for overnight delivery pursuant to *C.C.P.* § 1005(b)).  Under that practice, it would be deposited with the United States Postal Service or other overnight delivery carrier (in this case, FedEx) on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

18

19

20

21

[   ]  (**BY FACSIMILE**)  I caused to be served, via facsimile, the above-entitled document(s) to the office of the addressee so indicated.

22

23

[   ]  (**STATE**)  I declare under penalty of perjury that the foregoing is true and correct.

24

[XX]  (**FEDERAL**)  I declare that I am employed in the office of a member of the bar of this court at whose direction the services was made.

25

26

Executed on July 7, 2021, at Los Angeles, California.

27

_____

28

Noemi Bernal

1
2
3

**SERVICE LIST**

*Relevant Group, LLC, et al. v. Stephan "Saeed" Nourmand, et al.*
*USDC – Central District, Case No. 2:19-cv-05019-ODW (KSx)*

| | |
|---|---|
| 4 | Susan K. Leader, Esq. |
| 5 | Joshua A. Rubin, Esq. |
| | Akin Gump Strauss Hauer & Feld LLP |
| 6 | 1999 Avenue of the Stars, Suite 600 |
| | Los Angeles, CA 90067-6022 |
| 7 | Phone: (310) 229-1000 |
| | Fax: (310) 229-1001 |
| 8 | Email: sleader@akingump.com; |
| | rubinj@akingump.com |

Susan K. Leader, Esq.
Joshua A. Rubin, Esq.
Akin Gump Strauss Hauer & Feld LLP
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
Phone: (310) 229-1000
Fax: (310) 229-1001
Email: sleader@akingump.com;
rubinj@akingump.com

**Attorneys for Plaintiffs RELEVANT GROUP, LLC, 1541 WILCOX HOTEL LLC, 6516 TOMMIE HOTEL LLC and 6421 SELMA WILCOX HOTEL LLC**

Jayesh Patel
Neil Thakor
Norton Rose Fulbright US LLP
555 South Flower Street, Forty-First Fl
Los Angeles, California 90071
Telephone: (213) 892-9200
Jayesh.patel@nortonrosefulbright.com
Neil.thakor@nortonrosefulbright.com

**Attorneys for Defendants STEPHAN SAEED NOURMAND AND THE SUNSET LANDMARK INVESTMENT, LLC**

9
10
11
12
13
14
15

4818-6139-4130, v. 2

16
17
18
19
20
21
22
23
24
25
26
27
28