**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
GRANVILLE C. KAUFMAN, State Bar No. 330603
gkaufman@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
Telephone:  (323) 210-2900
Facsimile:  (866) 974.7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
KAREN KWOK, State Bar No. 307464
kkwok@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100

Attorneys for Plaintiffs Relevant Group, LLC,
1541 Wilcox Hotel LLC, 6516 Tommie Hotel
LLC, and 6421 Selma Wilcox Hotel LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, <br><br> Defendants. | Case No.: 2:19-cv-05019-ODW (KSx) <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT NOURMAND & ASSOCIATES' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT** <br><br> Date:  November 15, 2021 <br> Time:  1:30 p.m. <br> Dept:  Courtroom 5D, 5th Floor <br><br> Before:  Hon. Otis D. Wright II |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND ..................................................................2

    A.   THE NOURMAND ENTERPRISE .................................................3

    B.   DEFENDANTS' UNLAWFUL CONDUCT ......................................4

III.  LEGAL STANDARD ............................................................................6

IV.   THE COURT SHOULD DENY N&A'S MOTION TO DISMISS ...............7

    A.   PLAINTIFFS' RICO CLAIMS ARE NOT TIME-BARRED ...........7

        1.   Plaintiffs' Claims Did Not Accrue Until at Least January 2018 ......................................................................................7

        2.   Failure to Comport with the Standard for Establishing Affirmative Defenses at the Pleading Stage ...........10

        3.   Failure to Comply with Local Rule 7-3 .................13

    B.   NOERR-PENNINGTON DOES NOT INSULATE N&A'S CONDUCT .............14

    C.   PLAINTIFFS ADEQUATELY ALLEGE RICO VIOLATIONS ......16

        1.   Plaintiffs Adequately Allege a Distinct Enterprise .................17

        2.   Plaintiffs Adequately Allege N&A's Enterprise Conduct .......18

V.    CONCLUSION .................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affordable Hous. Dev. Corp. v. City of Fresno*,
433 F.3d 1182 (9th Cir. 2006)................................................................14, 16

*Agency Holding Corp. v. Malley-Duff & Assoc.*,
483 U.S. 143 (1987) .............................................................................................7

*Albino v. Baca*,
747 F.3d 1162 (9th Cir. 2014)..........................................................................7

*Alexander v. Incway Corp.*,
633 F. App'x 472 (9th Cir. 2016)..................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................6

*Beneficial Standard Life Ins. Co. v. Madariaga*,
851 F.2d 271 (9th Cir. 1988)............................................................................7

*Brewer v. Salyer*,
2007 U.S. Dist. LEXIS 36156 (E.D. Cal. May 17, 2007)............................6

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001) .........................................................................................17

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 998 (9th Cir. 2010)............................................................................6

*Fikre v. FBI*,
904 F.3d 1033 (9th Cir. 2018),
*aff'd*, 738 F. App'x 545 (9th Cir. 2018) .........................................................6

*Grimmett v. Brown*,
75 F.3d 506 (9th Cir. 1996).....................................................8, 9, 10, 12, 13

*Hardwick v. Cty. of Orange*,
2017 WL 5664991 (C.D. Cal. Aug. 22, 2017) .............................................13

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
2014 U.S. Dist. LEXIS 149732 (C.D. Cal. Sept. 4, 2014).....................8, 10

*In re Outlaw Lab., LP Litig.*,
2019 U.S. Dist. LEXIS 41940 (S.D. Cal. Mar. 14, 2019)...........................16

*InnoZen, Inc. v. T. Lynn Mitchell Cos., LLC*,
2010 U.S. Dist. LEXIS 152642 (C.D. Cal. Oct. 26, 2010)...................14, 15

*Keener v. Antinoro,*
 2019 U.S. Dist. LEXIS 85105 (D. Nev. May 21, 2019) .................................7

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.,*
 431 F.3d 353 (9th Cir. 2005) .................................................................... 17

*Lopez v. Wells Fargo Bank, N.A.,*
 2016 U.S. Dist. LEXIS 144380 (C.D. Cal. Oct. 17, 2016) ........................ 13

*MCM Partners v. Andrews-Bartlett & Assocs.,*
 62 F.3d 967 (7th Cir. 1995) ...................................................................... 18

*MD Helicopters, Inc. v. Aerometals, Inc.,*
 2021 U.S. Dist. LEXIS 49353 (E.D. Cal. Mar. 15, 2021) .......................... 12

*Munoz-Guzman v. Humberto's Mexican Food,*
 2018 U.S. Dist. LEXIS 232033 (C.D. Cal. Dec. 4, 2018) .......................... 14

*NuÑag-Tanedo v. E. Baton Rouge Parish Sch. Bd.,*
 2011 U.S. Dist. LEXIS 164140 (C.D. Cal. May 12, 2011) ................... 10, 11

*Odom v. Microsoft Corp.,*
 486 F.3d 541 (9th Cir. 2007) .................................................................... 18

*Puri v. Khasla,*
 844 F.3d 1152 (9th Cir. 2017),
 *aff'd,* 674 F. App'x 679 (9th Cir. 2017) .......................................................7

*Reeves v. Ernst & Young,*
 507 U.S. 170 (1993) ............................................................................. 18, 19

*Relevant Grp., LLC v. Nourmand,*
 No. 2:19-cv-05019-ODW (C.D. Cal. Sept. 14, 2021) ................................. 13

*Rescuecom Corp. v. Google, Inc.,*
 562 F.3d 123 (2d Cir. 2009) .........................................................................6

*Rotella v. Wood,*
 528 U.S. 549 (2000) ......................................................................7, 8, 9, 10

*S.F. BART Dist. v. Spencer,*
 2005 U.S. Dist. LEXIS 42096 (N.D. Cal. Sept. 2, 2005) ...................... 10, 11

*Sever v. Alaska Pulp Corp.,*
 978 F.2d 1529 (9th Cir. 1992) ................................................................... 17

*Sisseton-Wahpeton Sioux Tribe v. United States,*
 895 F.2d 588 (9th Cir. 1990) .................................................................... 11

*Sosa v. DirecTV, Inc.,*
 437 F.3d 923 (9th Cir. 2006) .................................................................... 16

*State Comp. Ins. Fund v. Capen,*
 2015. U.S. Dist. LEXIS 199764 (C.D. Cal. Dec. 18, 2015) ........................ 11

*Stearns v. Select Comfort Retail Corp.*,
        763 F. Supp. 2d 1128 (N.D. Cal. 2010) ........................................ 15

*Supermail Cargo, Inc. v. U.S.*,
        68 F.3d 1204 (9th Cir. 1995) ............................................... 10, 13

*U.S. v. Oreto*,
        37 F.3d 739 (1994) .............................................................. 18

*Underwood v. Future Income Payments, LLC*,
        2018 U.S. Dist. LEXIS 233539 (C.D. Cal. Apr. 26, 2018) ........................ 13

*United States v. Diaz*,
        649 F. App'x 373 (9th Cir. 2016) ............................................... 19

*Wade v. Gaither*,
        623 F. Supp. 2d 1277 (D. Utah 2009) ............................................. 8

*Westways World Travel, Inc. v. AMR Corp.*,
        2005 U.S. Dist. LEXIS 47293 (C.D. Cal. Sept. 13, 2005) ........................ 12

**Statutes**

15 U.S.C. § 15b ..................................................................... 7

18 U.S.C. § 1951(b)(2) ............................................................. 12

**Rules**

C.D. Cal. L.R. 7-3 .............................................................. 13, 14

Fed. R. Civ. P. 8 .................................................................. 6

Fed. R. Civ. P. 12 ................................................................ 14

Fed. R. Civ. P. 12(b)(6) ........................................................... 6

Plaintiffs Relevant Group, LLC ("Relevant"), 1541 Wilcox Hotel LLC ("Wilcox"), 6516 Tommie Hotel LLC ("Tommie") and 6421 Selma Wilcox Hotel LLC ("Selma") submit this Opposition to Defendant Nourmand & Associates' ("N&A") Motion to Dismiss the Third Amended Complaint.

## I.  **INTRODUCTION**

Plaintiffs filed this RICO action more than two years ago after it became clear that a competing developer, Defendants Sunset Landmark Investment LLC ("Sunset Landmark") and its principal, Stephan "Saeed" Nourmand, were pursuing a patterned campaign to automatically and reflexively initiate sham environmental challenges against Plaintiffs' projects in order to extort money and other concessions untethered to environmental concerns.

At the outset of this litigation, Plaintiffs believed and alleged that N&A, a real estate brokerage firm founded by Nourmand and owned by his son, is a key member of the Nourmand Enterprise.  Plaintiffs therefore named N&A as a defendant in the original pleading.  However, faced with N&A's repeated denials that it was involved in any way in the underlying CEQA challenges or alleged extortion, going so far as to say that it "has nothing to do with" the Thompson, Tommie or Selma Hotels, Plaintiffs agreed to remove N&A as a party in an amended complaint.  N&A thereafter reiterated its lack of involvement in a verified response to Plaintiffs' subpoena, when N&A's owner, Michael Nourmand, after seeking multiple extensions to respond, stated that N&A had no documents in its possession related to the CEQA challenges because "such documents have never existed."

Plaintiffs subsequently discovered that N&A's representations were blatantly false.  As it turns out, N&A was intimately involved in the CEQA challenges and there were hundreds of emails between N&A employees and Nourmand reflecting their coordinated effort to impede the development of any project believed to be associated with Plaintiffs.  Plaintiffs promptly sought leave to amend, and the Court found good cause, based on this misconduct, to allow Plaintiffs to file the Third

Amended Complaint ("TAC"), which supplemented Plaintiffs' allegations regarding N&A's role in the enterprise.

Rather than defending its own misconduct in submitting a false affidavit in response to a subpoena, N&A brazenly argues it is somehow shielded by the resulting passage of time and the statute of limitations on Plaintiffs' claims. N&A's position is baseless and riddled with false assumptions. Specifically, N&A argues that the statute of limitations began to run after Sunset Landmark filed its *first* sham lawsuit, at which point Defendants had not even completed the first predicate act of extortion, let alone two predicate acts as the RICO statute requires. Thus, N&A contends that the statute of limitations period began *before* the elements of Plaintiffs' RICO cause of action existed. N&A does not even try to base its argument on the "face of the complaint," as it must at the pleading stage. These problems alone are fatal to N&A's misguided statute of limitations argument.

More fundamentally, after lying about its role in the CEQA challenges and improperly withholding discovery, it is audacious, to put it mildly, for N&A to ask the Court to dismiss the TAC based on a statute of limitations argument that it failed to raise in either its opposition to Plaintiffs' motion for leave to amend or in the parties' meet and confer discussions related to this motion.

N&A's other arguments—based on the *Noerr-Pennington* doctrine and the adequacy of Plaintiffs' "enterprise" allegations—also lack merit. N&A merely rehashes arguments that have already been rejected during the prior round of motion to dismiss briefing or in connection with Plaintiffs' motion for leave to amend.

The motion should be denied.

## II.    FACTUAL BACKGROUND

Relevant develops properties in the Hollywood area of Los Angeles. ¶ 23. Relevant manages its development projects through special purpose entities, like Wilcox, Tommie and Selma, which were formed to develop the Thompson Hotel, the Tommie Hotel and the Selma Hotel, respectively. ¶¶ 23, 66, 90, 105. Relevant's

projects will revitalize the Hollywood area with upscale hotels and restaurants.  ¶ 8.  At all times, Relevant has worked closely with the City of Los Angeles to ensure that its projects adhere to environmental standards.  ¶ 8.

Saeed Nourmand, Sunset Landmark and N&A are also engaged in real estate development and related activities in the greater Los Angeles market.   ¶¶ 1-4.  Nourmand is the owner, manager and principal of Sunset Landmark.  ¶ 48.  He is also the founder of N&A, a real estate brokerage firm operated by his son, Michael Nourmand.  ¶ 51.  While Nourmand no longer has a formal role at N&A, Sunset Landmark and N&A share employees, resources and an office space, with both companies operating out of the Hollywood Athletic Club.  ¶¶ 26, 51.

Plaintiffs allege that Nourmand, Sunset Landmark and N&A are members of and operate a criminal enterprise (the "Nourmand Enterprise"), which has an existence separate and apart from each member entity. ¶¶ 34, 46, 50.  The Nourmand Enterprise uses the threat of sham environmental litigation to extort millions of dollars from Relevant or developers believed to be associated with Relevant.  ¶ 34.  Other nonparties, like the Silverstein Law Firm and Casey Maddren, participate in and conduct the business of the Nourmand Enterprise as well.  ¶¶ 57-64.

**A.   THE NOURMAND ENTERPRISE**

The Nourmand Enterprise is not an incorporated or legal entity.  ¶ 43.  Rather, it is an informal group that associates with each other to carry out the common goal of the enterprise: threatening frivolous environmental litigation to extort millions of dollars and unrelated concessions from Relevant or developers associated with Relevant in the Los Angeles area.  ¶ 43.  Nourmand, Sunset Landmark and N&A have specific roles and manners of contribution in furtherance of the Nourmand Enterprise's work.  ¶ 44.

Sunset Landmark is the entity that formally initiates the sham environmental lawsuits that the Nourmand Enterprise uses to extort payments from Relevant or associated developers.  ¶ 47.  Sunset Landmark is also the entity that receives the

immediate financial benefit of the extortion payments made by the Nourmand Enterprise's victims.  ¶ 47.

Nourmand conducts the business of the enterprise through his role as owner, manager and principal of Sunset Landmark.  ¶ 48.  Nourmand is the ultimate decision-maker who decides which developments to target.  ¶ 48.  Nourmand also handles interactions with the enterprise's victims, including by making overt threats and leading the "negotiations" with targeted developers.  ¶ 48.

N&A participates in the enterprise's targeting process, engages in "negotiations" with targeted victims and provides resources and support to other members of the Nourmand Enterprise.  ¶¶ 51-52.  N&A and its employees effectively serve as the "boots on the ground" for the Nourmand Enterprise with respect to a wide range of activities, including:

- the formulation of administrative strategies in response to Relevant projects;
- the preparation and review of written documents in support of Sunset Landmark's objections to Relevant projects;
- attendance at public hearings to support Sunset Landmark's objections;
- recruitment of other parties to join in opposition to targeted developers;
- the facilitation and coordination of meetings to extort targeted developers;
- research and fact gathering related to targeted development projects;
- the formulation of legal strategies, including conversations with counsel, to delay targeted development projects;
- and enforcement of extortionate payments against targeted developers.

¶¶ 51-56.  Because N&A employees have carried out these critical functions, N&A has been vital to the enterprise's ability to extort ransom payments from developers that seek to avoid the devastating costs associated with project delays.  ¶ 56.

## B.   DEFENDANTS' UNLAWFUL CONDUCT

The Nourmand Enterprise engages in a pattern of extortion.  ¶¶ 65-123.  As the Court previously held, "Plaintiffs specifically allege four instances" of extortion

and that "Relevant managed three of the four developers" targeted by the Nourmand Enterprise.  MTD Order, ECF No. 39, at 2; *see also* ¶¶ 65-123.

The first instance began around March 2016, when Sunset Landmark initiated the first sham environmental lawsuit in order to delay the development of the Thompson Hotel project and extract millions of dollars from Wilcox and Relevant. ¶¶ 71-74.   Defendants knew Wilcox was economically dependent on the development of the Thompson Hotel, and thus vulnerable to extortion, and took advantage of that fact by demanding millions of dollars in monetary payments to end the litigation.  ¶¶ 74-88.

The second instance began around June 2017, when Sunset Landmark initiated another sham environmental lawsuit against the City of Los Angeles, this time in order to delay development of the Tommie Hotel project and extract payments from Tommie and Relevant.  ¶¶ 93-95.  Defendants again knew that Tommie was economically dependent on the development of the Tommie Hotel, and thus vulnerable to extortion, and took advantage of that fact by demanding millions of dollars in monetary payments to end the litigation. ¶¶ 94-98.

On January 8, 2018, after lengthy negotiations, Plaintiffs succumbed to the Nourmand Enterprise's extortion and agreed to pay Sunset Landmark a $5.5 million ransom, plus other unrelated concessions, in exchange for ending the sham lawsuits that were filed to delay the Thompson Hotel and Tommie Hotel projects.  ¶¶ 87-88, 97-98.  Plaintiffs completed the payment in or around March 2018.  ¶ 104.

The third instance involved the Schrader Hotel.  ¶¶ 99-103.  Sunset Landmark initiated another sham environmental challenge in an attempt to extort money and aesthetic concessions from the owners.  ¶¶ 99-101.  However, because the Schrader owners had no debt on the property, they were not vulnerable to the extortion attempts.  ¶ 102.  When Defendants realized that they lacked leverage to extort the Schrader owners, Sunset Landmark dismissed its administrative appeal.  ¶ 103.

The fourth instance involved another sham environmental lawsuit filed by

1  Sunset Landmark in April 2019 against the City of Los Angeles, in order to delay
2  development of the Selma Hotel project and extract money from Plaintiffs.  ¶ 108.
3  This time, shortly before the lawsuit was filed, Plaintiffs met with Nourmand in late
4  March 2018 to inquire why Sunset Landmark was appealing the Selma project.  ¶
5  113.  At the meeting, Nourmand stated: "You know the drill.  It's going to take a
6  check to make this go away."  ¶ 114.

7  ## III.   LEGAL STANDARD

8       A motion to dismiss under Rule 12(b)(6) tests a plaintiff's compliance with
9  the liberal requirements of Rule 8 of the Federal Rules of Civil Procedure.  The
10 complaint must contain sufficient facts to state a claim that is plausible on its face,
11 and the inquiry is "a context-specific task that requires the reviewing court to draw
12 on its judicial experience and common sense."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679
13 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard is "not
14 akin to a 'probability requirement.'"  *Iqbal*, 556 U.S. at 678.  Plaintiffs can "proceed
15 even if it strikes a savvy judge that actual proof of those facts is improbable, and that
16 a recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal
17 quotation and citation omitted).[1]

18      The Court must "'accept as true all of the factual allegations set out in a
19 plaintiff's complaint, draw inferences from those allegations in the light most
20 favorable to plaintiff, and construe the complaint liberally.'"  *Rescuecom Corp. v.*
21 *Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009) (citation omitted); *Fikre v. FBI*, 904
22 F.3d 1033, 1035, n.1 (9th Cir. 2018) (same), *aff'd*, 738 F. App'x 545 (9th Cir. 2018);
23 *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 998, 998 (9th Cir. 2010) (same).

24      An affirmative defense "can serve as the basis for dismissing a complaint at
25 the pleading stage under Rule 12(b)(6) only when the elements of the defense appear
26 *on the face of the complaint*."  *Puri v. Khasla*, 844 F.3d 1152, 1158 (9th Cir. 2017)

27
28 [1] RICO claims that do not allege fraud are not subject to heightened pleading requirements.  *See*
   *Brewer v. Salyer*, 2007 U.S. Dist. LEXIS 36156, at *6 n.2 (E.D. Cal. May 17, 2007).

(emphasis in original) (internal citations omitted), *aff'd*, 674 F. App'x 679 (9th Cir. 2017).   "Where an affirmative defense is not clear from the face of the complaint sought to be dismissed, it cannot be determined until (at least) the summary judgment stage."   *Keener v. Antinoro*, 2019 U.S. Dist. LEXIS 85105, at *5-6 (D. Nev. May 21, 2019) (citing *Albino v. Baca*, 747 F.3d 1162, 1168-69 (9th Cir. 2014)).

## IV.   **THE COURT SHOULD DENY N&A'S MOTION TO DISMISS**

### A.   PLAINTIFFS' RICO CLAIMS ARE NOT TIME-BARRED

Civil RICO claims must be "commenced within four years after the cause of action accrued."   *See* 15 U.S.C. § 15b; *Agency Holding Corp. v. Malley-Duff & Assoc.*, 483 U.S. 143, 156 (1987) (adopting 15 U.S.C. § 15b as the uniform statute of limitations for civil RICO claims); *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 274 (9th Cir. 1988) ("all civil RICO actions will hereafter be governed by 15 U.S.C. § 15b"); *Rotella v. Wood*, 528 U.S. 549, 552 (2000) (four-year limitations period for civil RICO claims).

N&A contends that the four-year statute of limitations period for Plaintiffs' RICO claims began on July 7, 2016 and expired on July 7, 2020.   MTD at 6.   N&A's statute of limitations argument is deficient for multiple reasons.

#### 1.   *Plaintiffs' Claims Did Not Accrue Until at Least January 2018*

According to N&A, Plaintiffs' claims accrued on July 7, 2016 because—on that day—Plaintiffs purportedly "received notice" of the first sham environmental lawsuit through a "Proof of Publication" filed with the Los Angeles Superior Court. *See* MTD at 2, 6; RJN Ex. 2.   At that point, N&A argues Plaintiffs "knew or should have known of [their] injury," which "means that Plaintiffs' statute of limitations began to run no later than July 7, 2016."   MTD at 6.

Even if the Court were to accept N&A's factual contention regarding Plaintiffs' purported knowledge of injury (and it should not because it is not based on the "face of the complaint," *infra* pp. 10-11), its argument regarding accrual is fundamentally flawed as a matter of law.

It is axiomatic that "a RICO cause of action cannot accrue until all the elements *exist*." *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996) (emphasis added). "The elements of a civil RICO claim [are]: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Id.* at 510. Notably, the "pattern" element requires at least "two predicate acts" and "continuity" of the racketeering activity. *Id.* at 512. Thus, according to the same case law cited by N&A: "[N]o statute of limitations can begin to tick" until "all the elements [] exist," including "a pattern." *Id.*

In its motion to dismiss, N&A did not even try to show that the elements of Plaintiffs' RICO claims existed as of July 7, 2016. *Grimmett*, 75 F.3d at 512. Nor could they have. Here, because the "pattern" element requires at least *two* predicate acts of extortion, the "pattern" element could not have been established based solely on the *first* sham lawsuit. *Id.* "Even if the actions constituted a predicate act under RICO, a pattern of racketeering activity is not established by a single event. Rather, at least two predicate acts must occur[.]" *Wade v. Gaither*, 623 F. Supp. 2d 1277, 1289 (D. Utah 2009). For example, here, no predicate act of extortion could have been established until January 8, 2018, when Plaintiffs finally "succumbed to Defendants' threats and agreed to pay" the $5.5 million ransom payment (¶¶ 87-88). *Infra* p. 12.

N&A's inability to identify in the TAC two predicate acts that had occurred by July 7, 2016 is fatal to its statute of limitations argument.[2]

N&A mistakenly contends that it was not required to show that the elements of Plaintiffs' claims existed as of July 7, 2016 and that knowledge of injury is sufficient to "star[t] the clock" on Plaintiffs' RICO claims. MTD at 6 (citing *Rotella*,

---

[2] *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 149732, at *57 (C.D. Cal. Sept. 4, 2014) ("Because the statute of limitations is an affirmative defense, courts address it at the pleading stage only to the extent that limitations problems are apparent on the face of the complaint").

528 U.S. at 554-55; *Grimmett*, 75 F.3d at 511-12).  That is wrong.  N&A conflates two distinct questions related to accrual: (i) whether the elements of a cause of action must, in fact, *exist* before a claim can accrue and (ii) whether a plaintiff must *know* that the elements of a cause of action exist before a claim can accrue.

N&A's cited authorities, *Rotella* and *Grimmett*, merely addressed a circuit split regarding the latter question (i.e., about what a plaintiff must know).  *See* 528 U.S. at 553-54; 75 F.3d at 510-11.  Some courts applied the "injury discovery rule," which held that the statute of limitations period could begin once a plaintiff discovers that she had been injured.  *Id.*  Other courts applied the "injury and pattern discovery rule," which held that the statute of limitations period could not begin until a plaintiff discovers her injury *and* that "the injury is part of a 'pattern of racketeering.'"  *Id.*

N&A is correct insofar as it argues that, under the "injury discovery rule" endorsed by *Rotella* and *Grimmett*, a RICO claim can accrue once a plaintiff discovers the injury element, even if the plaintiff does not *know* that the other elements of her RICO claim exist.  *See* MTD at 6.  Neither case, however, stands for the bizarre proposition that a RICO claim can accrue before all the elements of that claim *actually exist*.  In both cases, it was not disputed that all elements of the RICO claims "w[ere] complete and subject to suit" at the time those plaintiffs discovered their injuries.  *Rotella*, 528 U.S. at 558-59, n.4; *Grimmett*, 75 F.3d at 512.

Rather, the plaintiffs in *Rotella* and *Grimmett* argued that the "injury discovery rule" was unfair because they did not learn until much later that there had been other victims who had suffered other predicate acts, and thus a "pattern" of racketeering activity existed.  *See Rotella*, 528 U.S. at 558-59, n.4; *Grimmett*, 75 F.3d at 511-12.  In rejecting the argument, neither court challenged the fundamental proposition that a claim cannot accrue until all elements, in fact, exist:

> While Siragusa's exposition of the law is correct, it does not advance her argument to favor the "injury and pattern discovery" rule.  Because a RICO cause of action cannot accrue until all the elements exist, no statute of limitations can begin to tick until a pattern exists …  Both accrual rules at issue here require all the elements to exist[.]

*Grimmett*, 75 F.3d at 511-12; *Rotella*, 528 U.S. at 558-59, n.4 ("cardinal principle that a limitations period does not begin to run until the cause of action is complete").

Thus, N&A fails to raise a statute of limitations issue that the Court can address at the pleading stage. "Because the statute of limitations is an affirmative defense, courts address it at the pleading stage only to the extent that limitations problems are apparent on the face of the complaint." *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 149732, at \*57 (C.D. Cal. Sept. 4, 2014) (internal citations omitted). Significantly, N&A does not even attempt to identify (because it cannot) allegations that demonstrate all elements of Plaintiffs' RICO claims existed as of July 7, 2016. Rather, N&A mistakenly argues that it did not have to do so. MTD at 6. Its own case law shows that N&A is wrong.

### 2. <u>Failure to Comport with the Standard for Establishing Affirmative Defenses at the Pleading Stage</u>

N&A's motion should be denied for the independent reason that it does not meet the standard for establishing an affirmative defense at the pleading stage.

On a motion to dismiss, defendants bear the "burden of proving [a] statute of limitations affirmative defense." *S.F. BART Dist. v. Spencer*, 2005 U.S. Dist. LEXIS 42096, at \*13-14 (N.D. Cal. Sept. 2, 2005). A defendant is required to show that the grounds for its statute of limitations defense appear "on the face of the complaint." *See In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 149732, at \*57 (statute of limitations "problems" must be "apparent on the face of the complaint"). The Court may not consider arguments that "improperly rely on facts outside the [complaint]." *NuÑag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 2011 U.S. Dist. LEXIS 164140, at \*26 (C.D. Cal. May 12, 2011).

Moreover, the burden of proof for a statute of limitations defense at the pleading stage is a high bar: "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207 (9th

Cir. 1995).    A defendant must prove that the allegations of the complaint "conclusively" show "when the limitations clock started ticking." *State Comp. Ins. Fund v. Capen*, 2015. U.S. Dist. LEXIS 199764, at *16 (C.D. Cal. Dec. 18, 2015). The motion must be denied if any factual question remains: "Where the issue of limitations requires determinations of when a claim begins to accrue, the complaint should be dismissed only if the evidence is so clear that there is no genuine factual issue and the determination can be made as a matter of law." *S.F. BART Dist.*, 2005 U.S. Dist. LEXIS 42096 at *13 (citing *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 591 (9th Cir. 1990)).

Here, N&A's statute of limitations argument does not comport with the requirements for establishing a statute of limitations defense at the pleading stage for several reasons.

*First*, N&A fails to identify any allegations in the TAC that demonstrate Plaintiffs' RICO claims are time-barred.    N&A literally does not cite *a single paragraph* from the TAC to support its statute of limitations argument. *See* MTD at 6.  Instead, its argument is based entirely on N&A's own assertion that "Plaintiffs received notice" of the first sham lawsuit through a "Proof of Publication" filed on July 7, 2016.  *See* MTD at 2, 6; RJN Ex. 2.  Plaintiffs "never alleged" that they received notice of the Proof of Publication—on July 7, 2016 or otherwise—and N&A fails to "justif[y] why the Court may consider this information now," which "improperly rel[ies] on facts outside the [TAC]."  *NuÑag-Tanedo*, 2011 U.S. Dist. LEXIS 164140, at *26.

*Second*, even if the Court were to accept N&A's improper factual contention, it "is not the silver bullet [N&A] thinks it is."  *State Comp. Ins. Fund*, 2015 U.S. Dist. LEXIS 199764, at *16.  As set forth above, N&A fails to explain (because it cannot) why notice of the first sham lawsuit was sufficient to place Plaintiffs "on actual or constructive notice of its injuries" due to the Nourmand Enterprise's extortion.  *Id.* at *17; *see also S.F. BART Dist.*, 2005 U.S. Dist. LEXIS 42096, at

*13-14 ("it is not fully clear that such a discovery was sufficient to put BART on notice of its injury").

The TAC alleges that Plaintiffs only "succumbed to Defendants' threats and agreed to pay" the $5.5 million ransom payment a year and a half later on January 8, 2018. ¶¶ 87-88. Because extortion is defined as "the obtaining of property from another, with consent, induced by wrongful use of actual or threatened force, violence, or fear" (18 U.S.C. § 1951(b)(2)), the "injury from extortion would not occur until the defendant obtained property from the plaintiff." *Westways World Travel, Inc. v. AMR Corp.*, 2005 U.S. Dist. LEXIS 47293, at *30 (C.D. Cal. Sept. 13, 2005) (denying statute of limitations defense on motion for summary judgment).

More problematically, as explained above, the first sham lawsuit relates only to the first predicate act of extortion alleged in the TAC. *Supra* pp. 5, 8. As a result, knowledge of the first sham lawsuit does not and cannot establish when a subsequent second predicate act occurred. *Id.* Thus, N&A cannot demonstrate that all the elements of Plaintiffs' RICO claims even existed as of July 7, 2016, a prerequisite to accrual. *Id.*

*Third*, the "Ninth Circuit has also adopted the 'separate accrual rule,' under which a 'new cause of action accrues for each new and independent injury, even if the RICO violation causing injury happened more than four years ago.'" *MD Helicopters, Inc. v. Aerometals, Inc.*, 2021 U.S. Dist. LEXIS 49353, at *18 (E.D. Cal. Mar. 15, 2021) (citing *Grimmett*, 75 F.3d at 510-11)). Here, even if the filing of the first sham lawsuit constituted injury, then the filing of another sham lawsuit in April 2019 (¶ 108) must also constitute a "new and independent injury" under the "separate accrual rule." *Id.* at *18-19. Because "four years have not passed from [April 2019]," the "Court cannot definitively find [Plaintiffs'] claims to be time-barred." *Id.*

*Fourth*, under the "continuous accrual rule," where, as here, "the plaintiff is repeatedly injured" over time, it "is not barred from recovering … for alleged harm"

that occurred "within the applicable statute of limitations period." *Underwood v. Future Income Payments, LLC*, 2018 U.S. Dist. LEXIS 233539, at *30-34 (C.D. Cal. Apr. 26, 2018) (applying continuous accrual rule to civil RICO claims). Thus, the Court cannot dismiss all of Plaintiffs' claims where it is clear that injuries were suffered within the applicable statute of limitations period. *Id.*

*Finally*, "[a] motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo*, 68 F.3d at 1206. The Court already held that Plaintiffs acted with "diligence in trying to obtain the necessary information to determine whether they had a cognizable claim against N&A," but were delayed due to N&A's misrepresentations about its role in the misconduct and improper withholding of discovery.[3] Based on that same finding, equitable tolling would also be appropriate here. *See Grimmett*, 75 F.3d at 514 (equitable tolling appropriate where plaintiff lacks knowledge of RICO claim, despite due diligence, because defendant misled plaintiff).

### 3.   *Failure to Comply with Local Rule 7-3*

Aside from the merits-based issues described above, N&A's statute of limitations argument suffers from a threshold problem. Local Rule ("L.R.") 7-3 requires the moving party to confer regarding "the substance of the contemplated motion and any potential resolution" at least seven days prior to filing the motion. *See* C.D. Cal. L.R. 7-3. The rule is not "a mere formalism." *Lopez v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 144380, at *5 (C.D. Cal. Oct. 17, 2016); *Hardwick v. Cty. of Orange*, 2017 WL 5664991, at *2 (C.D. Cal. Aug. 22, 2017) ("the purpose of Rule 7-3" is to "focus and tailor the issues presented to the court

---

[3] *See* Order Modifying Scheduling Order & Granting Leave to File Third Am. Compl., *Relevant Grp., LLC v. Nourmand,* No. 2:19-cv-05019-ODW (KSx) (C.D. Cal. Sept. 14, 2021),ECF No. 88, at 6.

1    [and the] Court would be justified in denying" the motion for failure to meet and

2    confer).

3        Here, N&A complied with L.R. 7-3 with respect to its arguments under the

4    *Noerr-Pennington* doctrine and the "enterprise" element of Plaintiffs' RICO claims.

5    However, N&A did not meet and confer regarding its intention to raise the statute of

6    limitations as a ground for dismissal, even after Plaintiffs confirmed the scope of

7    arguments contemplated by N&A in writing.  *See* Talpas Decl. ¶¶ 3-9; Ex. A; Ex. B.

8        The fact that N&A failed to notify Plaintiffs of its intention to move to dismiss

9    on statute of limitations grounds, much less to meet and confer pursuant to L.R. 7-

10   3, warrants denial of N&A's motion.  *See Munoz-Guzman v. Humberto's Mexican*

11   *Food*, 2018 U.S. Dist. LEXIS 232033, at *3-4 (C.D. Cal. Dec. 4, 2018) (denying

12   motion to dismiss where moving party did not meet and confer with plaintiff

13   regarding the substance of the contemplated motion prior to filing: "The Court

14   generally does not excuse noncompliance with Rule 7-3"); *InnoZen, Inc. v. T. Lynn*

15   *Mitchell Cos., LLC*, 2010 U.S. Dist. LEXIS 152642, at *6-7 (C.D. Cal. Oct. 26,

16   2010) (denying Rule 12 motion for moving party's failure to meet and confer and

17   "discus[s] thoroughly … the substance of" the motion).

18       **B.    *NOERR-PENNINGTON* DOES NOT INSULATE N&A'S CONDUCT**

19       N&A argues that its conduct is constitutionally protected under the *Noerr-*

20   *Pennington* doctrine.  MTD at 8-10.  N&A concedes that this Court has already ruled

21   that "the sham litigation exception bars dismissal of this case in its entirety" but

22   contends that the Court has not yet considered whether the exception applies

23   specifically to the conduct alleged against N&A.  *Id.* at 9.

24       According to N&A, the "sham litigation exception" should not apply here

25   because "the TAC lacks any allegation that N&A was party" to any of the underlying

26   sham environmental lawsuits.  *Id.*  N&A further argues that a complaint based on

27   similar allegations was dismissed in *Affordable Hous. Dev. Corp. v. City of Fresno*,

28   433 F.3d 1182, 1193 (9th Cir. 2006).  *Id.* at 9-10.  Both arguments lack merit.

*First*, N&A's purported summary of the allegations against it is incomplete. *See* MTD at 9 (citing ¶¶ 52-53, 56).  According to N&A:

> [T]he TAC alleges that various employees of N&A attended public hearings for the City of Los Angeles, signed petitions for the City of Los Angeles, and drafted or reviewed documents opposing Relevant's developments before the materials were submitted to the City of Los Angeles.

*Id.*   N&A ignores all other allegations against it, including multiple allegations regarding N&A's participation in the sham lawsuits, as well as other activities related to extortion.

In particular, Plaintiffs allege that N&A:

- "is involved in the 'negotiations' of" the sham lawsuits (¶ 51);

- offers "its own employees to perform support and administrative functions" for the enterprise in connection with "the initiation of sham CEQA litigation" (¶ 52);

- "participated in the legal strategy of Nourmand and Sunset's CEQA litigation and extortionate scheme," including discussions with "Sunset Landmark's attorney" (¶ 54);

- "spearheaded the enforcement of the $5.5 million extortionate payout against Relevant" (¶ 55);

- "facilitate[ed] Nourmand's overt threats" to developers (¶ 56); and

- "participated in the creation of the meritless objections and legal arguments that Sunset Landmark and the Silverstein Firm advanced" against the Thompson Hotel, Tommie Hotel and Selma Hotel projects (¶¶ 75, 95, 109).

Thus, Plaintiffs plainly allege that N&A directly participated in the Nourmand Enterprise's sham legal challenges, which the Court has already held are not protected by the *Noerr-Pennington* doctrine.  *See* MTD Order at 9.[4]

*Second*, N&A argues that its participation in the enterprise's pre-lawsuit administrative challenges does not demonstrate sufficient involvement in the sham lawsuits.  MTD at 9.  N&A takes an unduly narrow view of the sham legal challenges

---

[4] Not only was the Court's holding correct and consistent with legal precedent, but it is also the law of the case and should not be disturbed.  *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140, n.5 (N.D. Cal. 2010) ("conclusions in prior [motion to dismiss] orders" should be relied upon as law of the case).

1   alleged in this action, which include not only the CEQA lawsuits themselves but also

2   the sham administrative challenges asserted during the entitlement process.

3        The "sham litigation" exception is not limited to formal litigation and includes

4   pre-suit legal activity such as demand letters and participation in administrative

5   hearings.  *See In re Outlaw Lab., LP Litig.*, 2019 U.S. Dist. LEXIS 41940, at *5

6   (S.D. Cal. Mar. 14, 2019); *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006)

7   ("private discovery conduct, not itself a petition, may fall within the sham

8   exception").  Thus, for the same reason that Sunset Landmark's and Nourmand's

9   petitioning activity falls within the sham exception, so too does N&A's conduct in

10  assisting and facilitating that activity.

11       *Finally*, N&A's reliance on *Affordable Hous. Dev. Corp.* is inapposite.  MTD

12  at 9 (citing 433 F.3d 1182, 1193 (9th Cir. 2006)).  In that case, at the summary

13  judgment stage, the court held that "ma[king] and distribut[ing] flyers" and

14  "organiz[ing] a neighborhood meeting" in opposition to a proposed development

15  were protected activities under the *Noerr-Pennington* doctrine.  433 F.3d at 1193.

16       However, *Affordable Hous. Dev. Corp.* is not analogous.  In that case, the

17  developer brought claims against the city for denying approvals purportedly in

18  violation of the Fair Housing Act, California Fair Housing Act, Americans with

19  Disabilities Act and Civil Rights Laws.  *See* 433 F.3d at 1189-90.  Unlike here,

20  *Affordable Hous. Dev. Corp.* did not involve allegations of extortion through

21  frivolous litigation, and the "sham litigation" exception was not even an issue.  Thus,

22  the case is inapposite insofar as the petitioning activity there was not part of pre-suit

23  activity at all, much less lawsuits that meet the "sham litigation" exception.

24       **C.   PLAINTIFFS ADEQUATELY ALLEGE RICO VIOLATIONS**

25       Finally, N&A argues that Plaintiffs failed to plead the "enterprise" element

26  for two reasons.  First, N&A contends that Plaintiffs fail to allege the existence of a

27  "distinct" enterprise because Plaintiffs purportedly "admit" the Nourmand

28  Enterprise "is one and the same with Sunset Landmark." MTD at 11.  Second, N&A

contends that "Plaintiffs do not allege that N&A did anything to direct the conduct" of the enterprise because N&A "was subservient to Saeed and followed his bidding." MTD at 12. Neither argument is availing.

### 1. *Plaintiffs Adequately Allege a Distinct Enterprise*

N&A argues that the "Nourmand Enterprise" is not a "distinct entity" from Sunset Landmark but rather "simply the same 'person' referred to by a different name." MTD at 11 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). According to N&A, because "Sunset Landmark, and Sunset Landmark alone, brought the CEQA actions," Plaintiffs thereby "admit that the 'Nourmand Enterprise' is one and the same with Sunset Landmark." *Id.* Not so.

As an initial matter, a RICO plaintiff must allege "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal citations omitted). Here, Plaintiffs allege that the Nourmand Enterprise consists of Nourmand, Sunset Landmark, N&A, the Silverstein Law Firm and Casey Maddren. ¶¶ 43-64. Plaintiffs allege that each member of the enterprise has "an existence that is separate and apart" from the enterprise itself. ¶¶ 46, 50, 62, 64.

Thus, Plaintiffs allege that the "Nourmand Enterprise" includes individuals and entities that are formally "distinct" from Sunset Landmark. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992). "[N]othing in the statute that requires more 'separateness' than that." *King*, 533 U.S. at 163. It is well-established that the particular composition of enterprise members, as alleged here, satisfies the "distinctness" requirement. An "inter-related group of corporate entities" can constitute an "enterprise" for RICO purposes, and a "corporate owner/employee, a natural person, is distinct from the corporation itself." *Alexander v. Incway Corp.*, 633 F. App'x 472, 473 (9th Cir. 2016). And, a "litigation 'enterprise'" can consist of a client and its legal team. *Living Designs*, 431 F.3d at 361-62.

N&A's observation that only Sunset Landmark was a "party" to the sham lawsuits does not negate the existence of a RICO enterprise.  Plainly, the Nourmand Enterprise's pattern of extortion includes activity beyond merely filing sham lawsuits.  *Supra* pp. 3-6.  A RICO "enterprise" does not fall apart simply because one RICO "person" plays a particular role in the pattern of racketeering, while other enterprise members perform other roles.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) ("an associated-in-fact enterprise under RICO does not require any particular organizational structure").

### 2.   *Plaintiffs Adequately Allege N&A's Enterprise Conduct*

N&A argues that Plaintiffs do not allege that N&A "direct[ed] the conduct" of the enterprise and that Plaintiffs actually allege the opposite, i.e., that Nourmand maintains "immense control over" N&A employees.  MTD at 12.

At the outset, N&A overstates the *Reeves* holding regarding the level of "direction" required to show that a defendant "conducted or participated in the conduct of the 'enterprise's affairs.'"  *See* MTD at 12; *Reeves v. Ernst & Young*, 507 U.S. 170, 179, 184 (1993).   In *Reeves*, the Supreme Court held that the word "conduct" requires an element of direction.  507 U.S. at 177-78.  At the same time, the word "participate" connotes "to take part in."  *Id.* at 177-79.   Thus, "to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs."  *Id.* at 179.

The Supreme Court made clear that the test includes "not just" the "upper management" but also "***lower rung participants*** in the enterprise who are ***under the direction of upper management***."  *Id.* at 184 (emphasis added).   Thus, "direction includes both those who direct, as well as those who take direction."  *MCM Partners v. Andrews-Bartlett & Assocs.*, 62 F.3d 967, 978-79 (7th Cir. 1995) (internal citations omitted).   In other words, as the Supreme Court clarified, anyone in "the chain of command."  *U.S. v. Oreto*, 37 F.3d 739, 750 (1994).

As already shown, Plaintiffs allege that N&A engaged in a wide range of

conduct in furtherance of the enterprise's pattern of extortion. *Supra* pp. 3-6. Indeed, N&A provided the "boots on the ground" for much of the enterprise's activities. *Id.* Plaintiffs also specifically allege that certain N&A employees— Michael Nourmand, Mohamed Iravani, and N&A's Branch Manager and Training Director—helped direct the enterprise's strategy and led efforts "to delay the development of competing properties" (¶ 53), "advised Nourmand and his consultants and attorneys on legal strategies" (¶ 54), and "spearheaded" interactions related to enforcement of the enterprise's demands (¶ 55).

Such allegations easily satisfy the *Reeves* standard, as N&A's activity was both under the direction of high-level individuals within the Nourmand Enterprise and, at times, part of the high-level direction of the enterprise. *See* 507 U.S. at 184; *see also United States v. Diaz*, 649 F. App'x 373, 383 (9th Cir. 2016) (the *Reeves* standard "specifically permits the conviction of 'lower rung participants in the enterprise who are under the direction of upper management") (citing *Reeves*, 507 U.S. at 184).

## V.   **CONCLUSION**

For the foregoing reasons, the Court should deny N&A's Motion to Dismiss in its entirety.  If the Court grants the Motion to Dismiss, Plaintiffs respectfully request leave to amend.

Dated:  October 25, 2021                    WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation


                                            By: */s/ Susan K. Leader*
                                                Susan K. Leader

                                            Attorneys for Plaintiffs
                                            Relevant Group, LLC, 1541 Wilcox Hotel
                                            LLC, 6516 Tommie Hotel LLC and 6421
                                            Selma Wilcox Hotel LLC