1  **WILSON SONSINI GOODRICH & ROSATI**
   **Professional Corporation**
2  SUSAN K. LEADER, State Bar No. 216743
   sleader@wsgr.com
3  ALI R. RABBANI, State Bar No. 253730
   arabbani@wsgr.com
4  CONOR TUCKER, State Bar No. 318075
   ctucker@wsgr.com
5  633 West Fifth Avenue, Suite 1550
   Los Angeles, CA 90071-2027
6  Telephone:  (323) 210-2900
   Facsimile:   (866) 974.7329
7
8  **WILSON SONSINI GOODRICH & ROSATI**
   **Professional Corporation**
9  DALE R. BISH, State Bar No. 235390
   dbish@wsgr.com
10 CHARLES A. TALPAS, State Bar No. 308505
   ctalpas@wsgr.com
11 650 Page Mill Road
   Palo Alto, CA 94304-1050
12 Telephone:  (650) 493-9300
   Facsimile:   (650) 565-5100
13
   Attorneys for Plaintiffs
14 Relevant Group, LLC, 1541 Wilcox Hotel
   LLC, 6516 Tommie Hotel LLC, and 6421
15 Selma Wilcox Hotel LLC

16              **UNITED STATES DISTRICT COURT**

17            **CENTRAL DISTRICT OF CALIFORNIA**

18 RELEVANT GROUP, LLC, a Delaware         ) Case No.: 2:19-cv-05019-ODW
   limited liability company; 1541 WILCOX   ) (KSx)
19 HOTEL LLC, a Delaware limited liability  )
   company; 6516 TOMMIE HOTEL LLC; a        ) **MEMORANDUM OF POINTS**
20 Delaware limited liability company; and  ) **AND AUTHORITIES IN**
   6421 SELMA WILCOX HOTEL LLC, a           ) **SUPPORT OF PLAINTIFFS'**
21 California limited liability company,     ) **MOTION FOR PARTIAL**
                                            ) **SUMMARY JUDGMENT**
22           Plaintiffs,                    )
                                            )
23        v.                                ) Date:      June 13, 2022
                                            ) Time:      1:30 p.m.
24 STEPHAN "SAEED" NOURMAND, an             ) Place:     Courtroom 5D
   individual; THE SUNSET LANDMARK          ) Judge:     Hon. Otis D. Wright II
25 INVESTMENT LLC, a California limited     )
   liability company; NOURMAND &            )
26 ASSOCIATES, a California corporation;    )
   and DOES 1-10,                           )
27                                          )
            Defendants.                     )
28                                          )
                                            )

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 2

ARGUMENT ............................................................................................................... 5

I.    THE GENERAL RELEASES DO NOT EXEMPT DEFENDANTS FROM RICO LIABILITY ................................................ 5

    A.    California law renders unenforceable provisions attempting to exempt a party from its own statutory violations, including RICO. ................................................... 6

    B.    The releases are unenforceable under California law because Defendants' extortion occurred concurrent with, and continued after, execution of the Settlement Agreements. .......................................................................... 7

    C.    California federal district courts agree that Section 1542 Waivers are unenforceable to bar RICO claims. .................... 9

II.    NOURMAND & ASSOCIATES IS NOT PARTY TO THE SETTLEMENT AGREEMENTS AND THEREFORE CANNOT ENFORCE THE RELEASES ...................................... 11

CONCLUSION .......................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ........................................................................ 5

*Bhakta v. Bhakta,*
No. 21-55328, 2022 WL 301552 (9th Cir. Feb. 1, 2022) ................ 6, 9

*Blankenheim v. E.F. Hutton & Co.,*
217 Cal. App. 3d 1463 (1990) ............................................................. 6

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ........................................................................ 5

*Hardwick v. Wilcox,*
11 Cal. App. 5th 975 (2017) ..................................................... 7, 8, 9

*Kallen v. Delug,*
157 Cal. App. 3d 940 (1984) ............................................................ 9

*LA Open Door Presbyterian Church v. Evangelical Christian Credit Union,*
No. B263647, 2016 WL 4987116 (Cal. Ct. App. Sept. 19, 2016) ........ 7

*Local Motion, Inc. v. Niescher,*
105 F.3d 1278 (9th Cir. 1997) ........................................................... 6

*Marani v. Cramer,*
No. 4:19-cv-05538-YGR, 2021 WL 254308
(N.D. Cal. Jan. 26, 2021) ........................................................ 7, 10, 11

*Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC,*
116 F. Supp. 3d 1010 (N.D. Cal. 2015) ..................................... 6, 9, 10

*Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC,*
No. 14-cv-03953-BLF, 2015 WL 4624678 (N.D. Cal. Aug. 3, 2015) ............ 7, 10

*Pakootas v. Teck Cominco Metals, Ltd.,*
905 F.3d 565 (9th Cir. 2018) ............................................................. 5

*SI 59 LLC v. Variel Warner Ventures, LLC,*
29 Cal. App. 5th 146 (2018) ........................................................... 6, 7

*Vahle v. Barwick,*
93 Cal. App. 4th 1323 (2001) ......................................................... 11

**Statutes**

18 U.S.C. § 1951(b)(2) ...................................................................... 8

Cal. Civ. Code § 1542 .................................................................. *passim*

Cal. Civ. Code § 1668.................................................................*passim*

**Other Authorities**

Fed. R. Civ. Proc. 56(a) .......................................................................5

## **INTRODUCTION**

Plaintiffs Relevant Group, LLC ("Relevant"), 1541 Wilcox Hotel LLC ("Thompson"), 6516 Tommie Hotel LLC ("Tommie"), and 6421 Selma Wilcox Hotel LLC ("Selma") (collectively "Plaintiffs") move for partial summary judgment on the ground that releases contained in two Settlement Agreements implicated by this case are inapplicable or unenforceable. Defendants claim that these Settlement Agreements would release, in whole or in part, their liability in this case, including at least the Eighteenth and Twentieth Affirmative Defenses in the answers filed by Defendants Stephan "Saeed" Nourmand ("Stephan"), The Sunset Landmark Investment LLC ("Sunset"), and Nourmand & Associates ("N&A") (collectively "Defendants"). *See, e.g.*, ECF Nos. 117, 118.

As the Court knows from its prior rulings in the case (ECF Nos. 39, 114), these Settlement Agreements lie at the very core of Plaintiffs' allegations and are two of the principal vehicles through which defendants sought and achieved their extortionate objectives. *See* ECF No. 89 ¶¶ 10, 76. As fact and expert witnesses alike will testify at trial, the complete disconnect between CEQA litigation initiated by Defendants and what was extorted in the Settlement Agreements is "shocking," even in the world of CEQA litigation where practitioners are accustomed to vexatious litigation and rampant abuse. Ex. 12 (Report of T. Thomas). California law is clear that releases are unenforceable where, as here, they constitute part of the activity giving rise to RICO liability. The Court should grant Plaintiffs' partial summary judgment motion and hold that the releases in the Settlement Agreements are inapplicable or unenforceable as to Defendants' defenses and affirmative defenses.

Because they were part of the extortionate scheme, and an integral part of Defendants' shakedown, the Settlement Agreements (and the releases contained therein) should not and cannot as a matter of law preclude Plaintiffs' claim. Partial summary judgment is therefore warranted.

**STATEMENT OF FACTS**

Plaintiffs sought to develop three boutique hotels in Hollywood: the Thompson, the Tommie, and the Selma. Defendants engaged in a RICO enterprise to extort monetary payments and aesthetic design changes from Plaintiffs, using sham legal challenges and litigation under the California Environmental Quality Act (CEQA) to induce fear of incessant project delays and irreparable harm to their reputation with project investors.

The basic facts relating to these CEQA suits are undisputed. On March 3, 2016, the Silverstein Law Firm, on behalf of Sunset, filed a writ petition against the City of Los Angeles, challenging the City's approvals of the Thompson project under CEQA. Statement of Uncontroverted Facts and Conclusions of Law ("SUF") ¶ 1.[1] On June 9, 2017, the Silverstein Law Firm, on behalf of Sunset filed another writ petition against the City of Los Angeles, challenging the City's approvals of the Tommie project under CEQA. SUF ¶ 2. Sunset, and members of the alleged enterprise acting in concert with it, knew that Relevant owned both Thompson and Tommie. SUF ¶ 3.

In both suits, Sunset claimed that the City was required to perform an Environmental Impact Report ("EIR"), based on purported evidence of environmental impacts in the administrative record, and that the City's failure to do so invalidated its approvals of the Thompson and Tommie projects. Sunset did not seek monetary damages (relief unavailable to them under CEQA), aside from attorneys' fees under the Private Attorney General Act, California Code of Civil Procedure Section 1021.5 ("PAGA"). SUF ¶¶ 4, 9. Sunset's suit also did not seek specific changes to the hotel projects' design or operations (relief that would be equally unavailable to them). SUF ¶ 5. Accordingly, had Sunset prevailed on the

---

[1] Plaintiffs incorporate by reference to SUF paragraphs the supporting evidence cited therein. Unless otherwise specified, all references to "Ex." or "Exhibit" refer to those attached to the Declaration of Charles Talpas in Support of Plaintiffs' Motion for Partial Summary Judgment (filed concurrently herewith).

merits of its CEQA suits, the City would have been required to prepare EIRs for Plaintiffs to proceed with development of the hotels. SUF ¶¶ 1, 2, 6, 7; *cf.* SUF ¶ 12.

On April 21, 2017, counsel for Sunset sent a list of thirteen demands related to the Thompson project. SUF ¶ 10. None of these demands was sought—nor could they be—through Sunset's CEQA Petition. *Compare* SUF ¶¶ 6, 7, 11 (remedies sought in CEQA complaints) *with* SUF ¶ 12 *and* Ex. 6. The list of demands included a monetary payment beyond and unrelated to attorneys' fees. SUF ¶¶ 13, 14. That demand started at $2 million dollars and ultimately rose to $5,500,000 after Defendants obtained further delays in the litigation and filed a CEQA petition against Tommie. SUF ¶¶ 14, 18. Evidence at trial will show that when Plaintiffs' counsel asked how much of the monetary demand was "blood money," Defendants' lawyer indicated that only approximately $500,000 of attorneys' fees had been incurred by April 2017. Ex. 7 at 160-61 (tr. 62:22-63:8); SUF ¶ 15. Defendants' counsel further stated that even if Plaintiffs prepared an EIR for the hotel projects, he would "come up with something else" to delay the projects. Ex. 7 at 163-64 (tr. 83:8-84:4); *see also* SUF ¶ 16.

There is no dispute, however, that on January 8, 2018, Relevant (through its affiliates Thompson and Tommie) acceded to Defendants' demands and signed an agreement to settle both of Sunset's then-pending CEQA litigations against the City. SUF ¶¶ 19, 20; *see also* Ex. 10 *and* Ex. 9 (collectively, "Settlement Agreements"). Relevant—owner of both the Thompson and Tommie project entities—participated in the settlement discussions. SUF ¶¶ 19, 20. The City of Los Angeles is not a party to the Settlement Agreements, nor did Defendants ever engage in settlement discussions with the City of Los Angeles regarding these CEQA suits. SUF ¶ 21. Nourmand & Associates is not a party to the Settlement Agreements. SUF ¶¶ 22, 24.

Although ostensibly settling environmental litigation, the Settlement Agreements neither granted Sunset the relief it sought through its CEQA suits nor included remedies Sunset could have received had it succeeded at trial. SUF ¶ 26.

For example, Relevant (through its affiliates Thompson and Tommie) agreed to pay Sunset the amount it demanded: $5,500,000. SUF ¶¶ 18, 26. Although the only monetary remedy available to Sunset in the CEQA suits was attorneys' fees, Sunset stated that a payment for "money . . . based on legal fees incurred to date" was "not adequate" to resolve the dispute. SUF ¶ 13; Ex. 6.  Indeed, the agreements make clear that none of the $5,500,000 payment constituted redress for Sunset's attorneys' fees, stating that each party "shall bear their own attorney's fees and costs incurred in connection with" the CEQA suits and the "negotiation, execution, and performance" of the Settlement Agreements. Ex. 9 at 180; Ex. 10 at 207. Plaintiffs were forced to make further concessions as well. Those concessions, listed in the "Hotel Covenants" section of the Settlement Agreements, were designed to benefit Sunset as an adjacent and competing property owner. SUF ¶ 26. Neither the monetary payment nor the "Hotel Covenants" concessions were sought as remedies in the CEQA petitions, nor could they be awarded by the court as remedies from the City of Los Angeles even if Sunset had been successful at trial. SUF ¶¶ 18, 26. Thus, as Plaintiffs allege, Defendants were not actually interested in the relief sought or available under CEQA; rather, Plaintiffs contend the Petitions (and other challenges to the projects) were pretextual shams designed to delay the projects, disrupt financing, and ultimately force Plaintiffs to acquiesce to Defendants' extortionate demands.

Both Settlement Agreements are governed by California law and contain, in relevant part, a release and purported waiver of California Civil Code Section 1542 (the "Section 1542 Waivers"). Ex. 10 at ¶ 11.11 (California law governs), ¶ 6 (release and purported Section 1542 Waiver); Ex. 9 at ¶ 10.11 (same); ¶ 5 (same).

After the Settlement Agreements were executed and paid in full, Sunset proceeded to object to two additional hotel projects that Relevant was developing (or that Sunset thought Relevant was developing): the Schrader Hotel project and Selma.  Tellingly, Defendants dropped their challenge to the Schrader Hotel

project—which asserted nearly identical objections as those raised to the Selma project—as soon as they discovered it was not a Relevant project. Sunset continued, however, to challenge the Selma project and filed a further writ petition against the City of Los Angeles, challenging the City's approvals under CEQA, in April 2019. SUF ¶ 27.

Plaintiffs filed this RICO suit against Defendants on June 10, 2019. ECF No. 1; SUF ¶ 28. All Defendants have asserted affirmative defenses alleging that Plaintiffs' claims are barred in whole or in part by the Settlement Agreements. *See* ECF Nos. 117, 118.

## <u>ARGUMENT</u>

## I.   THE GENERAL RELEASES DO NOT EXEMPT DEFENDANTS FROM RICO LIABILITY

Defendants raise various defenses suggesting that even when Plaintiffs succeed in proving that Defendants carried out an extortionate RICO scheme, the Settlement Agreements should be interpreted to release their liability. Such an interpretation of the releases would be rendered unenforceable as a matter of law by California Civil Code Section 1668. The releases are thus unenforceable in this litigation, and the Court should grant partial summary judgment to Plaintiffs.

Summary judgment is appropriate where there is "no genuine dispute as to any material fact," Fed. R. Civ. Proc. 56(a), regarding a defense, *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 587, 595 (9th Cir. 2018); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("Rule 56 must be construed with due regard . . . for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."). "Factual disputes that are irrelevant or unnecessary will not be counted:" only "*genuine* issues of *material* fact" may defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether an agreement is valid or enforceable "is a matter of law, and therefore it [is] proper for the court

to determine the issue on summary judgment." *Local Motion, Inc. v. Niescher*, 105 F.3d 1278, 1280 (9th Cir. 1997). Where a settlement agreement is not entered by a court as a final judgment, "the validity of the parties' Section 1542 waiver is a matter of contract interpretation." *Bhakta v. Bhakta*, No. 21-55328, 2022 WL 301552, at *1 (9th Cir. Feb. 1, 2022).

**A. California law renders unenforceable provisions attempting to exempt a party from its own statutory violations, including RICO.**

California law, through California Civil Code Section 1668, renders unenforceable contractual provisions releasing a party from its own violations of the law. California Civil Code Section 1668 reads:

> All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

Cal. Civ. Code § 1668. The provision "reflects the policy of [California] to look with disfavor upon those who attempt to contract away their legal liability to others for the commission of torts." *Blankenheim v. E.F. Hutton & Co.*, 217 Cal. App. 3d 1463, 1471 (1990). Section 1668 applies "when all or some of the elements of the tort are concurrent or future events at the time the contract is signed," and renders inapplicable and unenforceable clauses "exempting a party from responsibility for fraud or a statutory violation." *See, e.g.*, *SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146, 148 (2018).

Section 1668 renders inapplicable and unenforceable contractual provisions purporting to exempt a party from liability for RICO based on its "own misconduct," or where the settlement agreement was a "key tool" of the RICO scheme. *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, 116 F. Supp. 3d 1010, 1051 (N.D. Cal. 2015) ("own misconduct"), *vacated in part on other grounds*, No. 14-cv-03953-

BLF, 2015 WL 4624678 (N.D. Cal. Aug. 3, 2015); *Marani v. Cramer*, No. 4:19-cv-05538-YGR, 2021 WL 254308, at *3 (N.D. Cal. Jan. 26, 2021) ("key tool"). Under California law, Section 1668 applies with equal force to general releases purporting to include waivers of Section 1542.[2] *See Hardwick v. Wilcox*, 11 Cal. App. 5th 975, 989 (2017) (general release cannot be construed to allow a party "to escape the consequences of his violation of the law"); *cf. also LA Open Door Presbyterian Church v. Evangelical Christian Credit Union*, No. B263647, 2016 WL 4987116, at *9 (Cal. Ct. App. Sept. 19, 2016) (unpublished) ("Under section 1668, the releases in the 2009 Loan Modification Agreement [which included Section 1542 Waivers] and 2011 Forbearance Agreement were ineffective in shielding ECCU from a claim of fraudulent inducement.").

**B.      The releases are unenforceable under California law because Defendants' extortion occurred concurrent with, and continued after, execution of the Settlement Agreements.**

Under California law, where execution of releases coincides with execution of an illegal contract or culmination of an illegal scheme, it is unenforceable. *See Hardwick*, 11 Cal. App. 5th at 989; *Variel*, 29 Cal. App. 5th at 148;

The releases at issue were executed concurrently with Defendants' extortion. The Defendants could only obtain the property and concessions through Settlement Agreements—they could not seek them in their CEQA suits. The Settlement Agreements were the vehicle by which Defendants extracted significant concessions from Plaintiffs, including a $5,500,000 payoff—a monetary award that Sunset could neither seek nor obtain through the CEQA litigation. Defendants obtained additional concessions that they did not and could not seek in their CEQA suit (for example, reducing the height of the hotel, eliminating balconies that faced properties owned

---

[2] California law provides in relevant part that a "general release does not extend to claims" that a party "does not know or suspect exist . . , at the time of executing the release." California Civil Code § 1542 ("Section 1542"). Under certain circumstances, parties may waive the protections of Section 1542.

by Sunset, and requiring a cosmetic light well facing the parking lot on Sunset's property). And the Settlement Agreements did not include the City or address the remedies sought by Defendants in their CEQA suits, such as preparation of an EIR. The Settlement Agreements were the only way Defendants could extract millions of dollars from the Plaintiffs and receive costly aesthetic changes to the projects. None of these remedies were available in the CEQA suits against the City of Los Angeles.

Examination of the RICO predicate acts at issue shows how the extortion and execution of the Settlement Agreements were, at the very least, concurrent. For example, under the Hobbs Act, extortion occurs "with [the] consent" of the extorted individual. 18 U.S.C. § 1951(b)(2). The Settlement Agreements embodied the culmination of one phase of Defendants' extortionate scheme: the act of consent giving Defendants the benefits they could not otherwise obtain. Additionally, the Settlement Agreements were integral to the elements of "wrongful use of . . . fear, or under color of official right." *Id.* The CEQA suits had generated significant business uncertainty for Plaintiffs. The Settlement Agreements were the method by which Defendants capitalized on their extortionate campaign. Additionally, evidence at trial will show that Defendants' pattern of racketeering continued after the Settlement Agreements were signed and Plaintiffs' payment of the extortionate buyout occurred later as well. But the extortion memorialized in the Settlement Agreements themselves are, at the very least, concurrent with the releases and Section 1542 Waivers.

This case is similar to situations where the California Court of Appeal has found that Section 1668 renders Section 1542 waivers unenforceable. For example, in *Hardwick*, the Court of Appeal considered a series of contracts in which one party agreed to a usurious interest and in which the final agreement included a Section 1542 waiver. 11 Cal. App. 5th at 982-83. The defendant argued on appeal that the final agreement (with the Section 1542 waiver) released it from liability of the prior agreements imposing usurious interest rates. *Id.* at 989. Applying Section 1668, the

Court of Appeal rejected that interpretation. It upheld a finding that the final forbearance agreement amounted to "an extension of the underlying usurious loan transaction," which rendered the Section 1542 waiver and general release unenforceable: "[C]onstruing the unilateral general release in that [final] agreement as a waiver of usury would allow [the defendant] to escape the consequences of his violation of the law by permitting him to benefit from his illegal contract and retain the usurious interest he extracted from [plaintiff]." *Id.*

The Settlement Agreement in this case resembles the final forbearance agreement in *Hardwick*. Both are the culmination of a pattern: in *Hardwick*, of usurious contracts; here, of some of Defendants' extortionate activities. In both contracts, a Section 1542 waiver, concurrent with the illegal activity, would have the effect of allowing a party to "escape the consequences" and "benefit from [an] illegal contract." That *Hardwick* involved usury and this case involves extortion does not change the analysis. *Cf. Kallen v. Delug*, 157 Cal. App. 3d 940, 949-50 n.3 (1984) ("[I]f the sole benefit of an agreement is its extortionate effect on the promisor, the agreement is unenforceable as against public policy."). Like *Hardwick*, then, Section 1668 renders the general releases and Section 1542 waivers unenforceable.

## C. California federal district courts agree that Section 1542 Waivers are unenforceable to bar RICO claims.

California district courts addressing the issue have found that a Section 1542 waiver cannot release RICO liability.[3] In *Monterey Bay*, for example, a company executive argued that a section of his employment agreement precluded bringing RICO claims against him in his personal capacity. 116 F. Supp. 3d at 1051. The Northern District of California rejected that argument, as the party's "reading of [the relevant provision of the contract] would completely exculpate him from liability for his own misconduct and would accordingly be unenforceable under California Civil

___
[3] The 9th Circuit recently reversed a district court finding that Section 1542 released RICO claims. *See Bhakta*, 2022 WL 301552, at *1.

Code § 1668." *Id.* Upon "careful consideration," *Monterey Bay* court later expanded this holding, and found that Section 1668 rendered unenforceable further contractual provisions asserted as barriers to RICO liability as to additional defendants. *Monterey Bay*, 2015 WL 4624678, at *2. Defendants' affirmative defenses suggest the same: that the Section 1542 Waiver removes any potential liability for their extortionate or racketeering acts (that were consummated through the Settlement Agreements themselves and then continued thereafter).

The Settlement Agreements' waivers cannot be construed, consistently with Section 1668, to release RICO claims. The plain language of the statute renders unenforceable "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own . . . violation of law." Cal. Civ. Code § 1668. Yet interpreting the Settlement Agreements to release Defendants' RICO violations would effectively "exempt" Defendants from "their own misconduct." *Monterey Bay*, 116 F. Supp. 3d at 1051. Such a reading must be rejected as a matter of law. That is particularly so when Defendants' intent to continue their extortionate scheme continued, and only became apparent, after the ink had dried on the Settlement Agreements. *See* SUF ¶ 18.

Similarly, Section 1668 renders unenforceable releases that are themselves a key part of a defendant's extortionate scheme. In *Marani*, the court considered whether plaintiff had effectively plead RICO against a defendant. The court took it as a given that Section 1668 would apply "if the [] settlement agreement was a 'key tool' in . . . the civil RICO claim." *Marani*, 2021 WL 254308, at *3. While the plaintiff in *Marani* had failed to plead sufficiently against a particular defendant, here, the Court has multiple times held that Plaintiffs had sufficiently pled RICO violations. *See, e.g.*, ECF Nos. 39, 114. Just as the court recognized in *Marani*, the Settlement Agreements here are indisputably a 'key tool' in the Defendants' RICO scheme. It was the very method by which Defendants realized the gains of their extortionate behavior, gains to which they were not entitled under CEQA.

-10-

Defendants could only have received the $5,500,000 extortionate payout through a settlement agreement as it was not a remedy available to them even if they succeeded on the merits in their CEQA suit. *See, e.g.*, SUF ¶¶ 4–9. As the Settlement Agreements were "part of the RICO scheme itself," they are unenforceable to bar plaintiff's RICO claims as Defendants' affirmative defenses suggest. Summary judgment is warranted. *See Marani*, 2021 WL 254308, at *3.

## II.   NOURMAND & ASSOCIATES IS NOT PARTY TO THE SETTLEMENT AGREEMENTS AND THEREFORE CANNOT ENFORCE THE RELEASES

Independently, Nourmand & Associates is not released by the Settlement Agreements. It is undisputed that Nourmand & Associates is not party to the Settlement Agreements. SUF ¶¶ 22, 24. Nor do the Settlement Agreements purport to release Nourmand & Associates. Ex. 10 at 205 (releasing "Sunset and its officers . . ."); Ex. 9 at 177 (same). Nourmand & Associates was not a party to the agreements nor specifically mentioned in the releases. As such, Nourmand & Associates cannot enforce the releases or rely on them as a bar to Plaintiffs' RICO claims. SUF ¶¶ 22, 24.

The limited circumstances where a Settlement Agreement may release a non-signatory do not apply. California law may release non-signatories to Settlement Agreements where the agreements themselves purport to release "all other persons" from causes of action "regarding or related to this litigation" and the parties intended to release the specific non-signatory. *See, e.g., Vahle v. Barwick*, 93 Cal. App. 4th 1323, 1326 (2001). But the Settlement Agreements in this case do not contain language purporting to release "all other persons." They apply simply to "Sunset and its officers, members, managers, agents, employees . . ." Ex. 10 at 205; Ex. 9 at 177. Nourmand & Associates cannot meet even the threshold showing that the release might apply to it, much less that all parties intended it to.

1   Thus, Nourmand & Associates is not released by the plain language of the

2   Settlement Agreements. Nor do the Settlement Agreements contain a catch-all

3   provision which Nourmand & Associates could argue applies to itself. For these

4   reasons, entirely independent of Section 1668, the general release is inapplicable to,

5   and unenforceable against, Nourmand & Associates' racketeering activities.

6                                   **CONCLUSION**

7   Defendants suggest that the Settlement Agreements release them from

8   liability in this case. But if Defendants are found liable for their extortionate

9   behavior, Section 1668 would render those releases unenforceable. Because the

10  releases in the Settlement Agreements cannot be construed consistently with Section

11  1668 while exempting Defendants from liability for their extortionate acts

12  consummated by those agreements, Plaintiffs respectfully request this Court grant

13  their motion for partial summary judgment and hold that the releases in the

14  Settlement Agreements are unenforceable.

15

16  Dated:  May 9, 2022                WILSON SONSINI GOODRICH & ROSATI
17                                     Professional Corporation

18
                                       By: */s/ Susan K. Leader*_____
19                                          Susan K. Leader

20                                     Attorneys for Plaintiffs
21                                     Relevant Group, LLC, 1541 Wilcox Hotel
                                       LLC, 6516 Tommie Hotel LLC and 6421
22                                     Selma Wilcox Hotel LLC

23

24

25

26

27

28