Patrick M. Maloney – CSBN 197844
Gregory M. Smith – CSBN 259971
**THE MALONEY FIRM, APC**
2381 Rosecrans Avenue, Suite 405f
El Segundo, California 90245
T: 310-540-1505 | F: 310-540-1507
E: pmaloney@maloneyfirm.com
E: gsmith@maloneyfirm.com

Attorneys for Defendant Nourmand & Associates

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

RELEVANT GROUP, LLC, a
Delaware limited liability company;
1541 WILCOX HOTEL LLC, a
Delaware limited liability company;
6516 TOMMIE HOTEL LLC, a
Delaware limited liability company; and
6421 SELMA WILCOX HOTEL LLC,
a California limited liability company,

        Plaintiffs,

v.

STEPHAN "SAEED" NOURMAND,
an individual; THE SUNSET
LANDMARK INVESTMENT LLC, a
California limited liability company;
NOURMAND & ASSOCIATES, a
California corporation; and DOES 1-10,

        Defendants.

Case No.:     2:19-cv-05019-ODW (KSx)
Judge:       Hon. Otis D. Wright II
Department:  Courtroom 5D, 5th Floor
Action Filed: June 10, 2019

**DEFENDANT NOURMAND AND
ASSOCIATES' MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

**Date:**        **June 13, 202**
**Time:**       **1:30 p.m.**
**Dept.:**      **Courtroom 5D**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00194010

# TABLE OF CONTENTS AND AUTHORITIE

I.    INTRODUCTION ............................................................................1

II.   STATEMENT OF FACTS .............................................................4

    A.   PLAINTIFF'S ALLEGATIONS CONCERNING THE ALLEGED
        RACKETEERING ACTIVITY..............................................4

    B.   NOURMAND & ASSOCIATES .........................................10

        1.   N&A is a Residential Real Estate Brokerage…….................10

        2.   Saeed Maintains Relationships With N&A Employees,
            Who Occasionally Provide Administrative Assistance to
            Him…………...................................................................11

III.  THE ENTERPRISE DID NOT ENGAGE IN RACKETEERING
    ACTIVITY BY FILING SHAM CEQA LAWSUITS.......................12

    A.   *NOERR-PENNINGTON* IMMUNIZES LITIGANTS FROM
        LIABILITY….................................................................12

    B.   PLAINTIFFS CANNOT MEET THEIR BURDEN OF SHOWING
        THE CEQA LAWSUITS ARE NOT IMMUNIZED BY *NOERR-
        PENNINGTON*…...........................................................14

        1.   Courts Apply A "Low Threshold" In CEQA Suits…............15

        2.   Plaintiffs Have Not Identified Any Particular Evidence
            Establishing that the CEQA Suits Lack Merit .................16

        3.   Sunsets' CEQA Lawsuits Were Not Objectively Baseless ....16

IV.   N&A DID NOT MANAGE OR OPERATE THE ENTERPRISE….....19

    A.   RICO Liability Requires Management or Operation of the
        Enterprise…...................................................................19

    B.   N&A's Employees' Conduct Does Not Expose N&A to Liability…. 23

V.    N&A DID NOT CONSPIRE TO VIOLATE RICO ..........................25

VI.   CONCLUSION……............................................................25

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## <u>TABLE OF CONTENTS AND AUTHORITIES</u>

<u>Case</u>

*Amarel v. Connell,*
102 F.3d 1494, (9th Cir.1996) …………………………………………..……….. 19

*Aydin Corp. v. Loral Corp.,*
718 F.2d 897, (9th Cir. 1983)  …………………...……………….…………1, 12, 16, 17

*Baumer v. Pachl,*
8 F.3d 1341 (9th Cir. 1993) ...…………………………………………………24, 25

*Boone* v. Redevelopment Agency, 841 F.2d 886 (1988)…………………………...16

*Brady v. Dairy Fresh Prod. Co.*,
974 F.2d 1149 (9th Cir. 1992) ………………………….……………………..3, 23

*Bunnett & Company, Inc. v. Gearhart*,
2018 WL 1070298, (N.D. Cal. Feb. 27, 2018) …..…………………………………3, 25

*C&M Cafe v. Kinetic Farm, Inc.,*
WHO (N.D. Cal. Nov. 18, 2016) …………………………………………………24

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 510, 511 (1972) …………………………..………………………..13

*Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n,*
434 U.S. 412, (1978) …………………….…………………………………..13

*Coca–Cola Co. v. Omni Pac. Co.,*
 1998 U.S. Dist. LEXIS 23277, (N.D.Cal. Dec. 9, 1998)……………….……………19

*Coquina Investments v. Rothstein*,
2011 WL 4971923, (S.D. Fla. Oct. 19, 2011), …..……..…...………………21, 22

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) …………………………………………………………13

*Energy Conservation, Inc. v. Heliodyne, Inc.,*
698 F.2d 386, (9th Cir. 1983) …………………………………………..……13

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# <u>TABLE OF CONTENTS AND AUTHORITIES</u>

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
629 F.3d 1278, (Fed. Cir. 2010) ……………………………………………………..19

*Evans Hotels, LLC v. Unite Here Loc.*
*30*, 433 F. Supp. 3d 1130, (S.D. Cal. 2020) …………………….……………………16

*Freeney v. Bank of Am. Corp.*,
2016 WL 5897773, (C.D. Cal. Aug. 4, 2016), …………………………………………23

*Gianelli v. Schoenfeld*,
2021 WL 4690724, (E.D. Cal. Oct . 6, 2021) ……………….……………………23

*Howard v. Am. Online Inc.*,
208 F.3d 741, (9th Cir. 2000) ……………………………………………..8, 25

*Icon at Panorama, LLC v. Sw. Reg'l Council of Carpenters*,
2019 WL 7205899, (C.D. Cal. Aug. 7, 2019) ……………….……………………14

In re *Brocade Securities Litigation*,
2008 WL 2050847 ……………………………………………………….. 23

*In re Flonase Antitrust Litig.*,
795 F. Supp. 2d 300, (E.D. Pa. 2011) ……………………………………………..19

*In re Terazosin Hydrochloride Antitrust Litig.*,
335 F. Supp. 2d 1336, (S.D. Fla. 2004) ………………………..……………………17

*Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*,
863 F.3d 1178, (9th Cir. 2017) ……………….……………………………..14

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
508 U.S. 49, (1993) …………………………………………..12, 13, 16, 17, 18

*Keep Our Mtns Quiet v. Cnty of Santa Clara*,
236 Cal.App.4th 714, (2015). ………………………..……………………15

*Kottle v. Nw. Kidney Ctrs.*,
146 F.3d 1056, (9th Cir. 1998) …………………….…..……………………14

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## <u>TABLE OF CONTENTS AND AUTHORITIES</u>

*Koziol v. United States*,
993 F. 3d 1160 (2021)……….…………………………………………...13, 14

*Linens of Europe, Inc. v. Best Mfg., Inc.*,
2004 WL2071689 (S.D.N.Y 2004)………………..…………………………….3, 12

*Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*,
192 F.Supp.2d 519, (M.D.La.2001) …………………………....……………..…19

*Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*,
404 F. Supp. 2d 1214, (E.D. Cal. 2005). ………………………………………13

*New West, L.P. v. City of Joliet*,
491 F.3d 717, (7th Cir. 2007) …………………………...…………………...1, 12, 17

*Ocean View Estates Homeowners Assn., Inc. v. Montecito Water Dist.*
116 Cal.App.4th 396, (2004) ……………….…………………………………15

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
298 F.3d 768, (9th Cir. 2002) ……………….…..…………………………..24

*Oregon Nat. Res. Council v. Mohla*,
944 F.2d 531, (9th Cir. 1991) ………………………………………………...14, 16

*Perdomo v. Garcia*,
2010 WL 3324304,  (N.D. Cal. Aug. 23, 2010) ……………………..….……24

*Pineda v. Saxon Mortgage Services*,
2008 WL 5187813, (C.D.Cal. Dec. 10, 2008) ………...………………….……2, 4

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49, (1993) ……………………………………..….………………… 12

*Reves v. Ernst & Young*,
507 U.S. 170 (1993). ……………………………………………..2, 20, 21

*Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*,
745 F.3d 343, (9th Cir. 2014) …………………………………..……………14

## <u>TABLE OF CONTENTS AND AUTHORITIES</u>

*Salinas v. United States*,
522 U.S. 52, (1997). ……………………………..…………………………..25

*Save Our Big Trees v. City of Santa Cruz*,
241 Cal.App.4th 694, (2015). ……………………………….……………..15

*Sever v. Alaska Pulp Corp.*,
978 F.2d 1529, (9th Cir. 1992) ………………..……………………………3, 12

*Sierra Club v. County of Sonoma*
Cal.App.4th 1307, (1992) ……………………………………………………15

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923, (9th Cir.2006) …………………..……………………….13, 14

*STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.*,
2011 WL 1362163, (N.D.Cal. Apr. 11, 2011) ………………………………18

*Tatung Co., Ltd. v. Shu Tze Hsu*,
217 F. Supp. 3d 1138, (C.D. Cal. 2016) …………………..……………20

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991, (9th Cir. 2008) ………………..………………………..1, 13, 17

*U.S. v. Viola*,
35 F.3d 37, (2d Cir. 1994) …………………………………………..20, 21

*United Mine Workers v. Pennington*,
381 U.S. 657 (1965) …………………………………………..1, 13, 16

*United States v. Valera*,
845 F.2d 923, (11th Cir.1988) …………………….……………..25

*Uss-Posco Indust. v. Contra Costa Cty. Bldg*,
31 F.3d 800 (9th Cir. 1994) ………………………..……………14

*Walter v. Drayson*,
538 F.3d 1244, (9th Cir.2008) ……………..…………………..2, 20

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# **TABLE OF CONTENTS AND AUTHORITIES**

*WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
2013 WL 12130034, (C.D. Cal. July 19, 2013) ………………...……………22

*White v. Lee,*
227 F.3d 1214, (9th Cir. 2000) …………………………………...……..12, 13, 16

*Wonderful Real Est. Dev. LLC v. Laborers Int'l Union of N. Am. Loc.
220,* 2020 WL 91998, (E.D. Cal. Jan. 8, 2020) ………………………...……………19

<u>Statutes</u>

18 U.S.C. § 1861 …………………………………………………………1, 12

18 U.S.C. § 1951 ……………………………………………………………6

18 U.S.C. § 1962 …………………………………………………4, 21, 25

Cal. Pub. R. Code § 21060.5. ……………………………………………17

California Penal Code § 518 …………………………………………….6

California Penal Code § 522 ……………………………………………...6

California Penal Code § 523, …………………………………………….6

California Penal Code § 524. ……………………………………………6

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# I.     INTRODUCTION

In this civil lawsuit arising under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1861; "RICO"), Nourmand & Associates ("N&A") is accused of participating in an unlawful enterprise that threatened and initiated sham environmental lawsuits, arising under the California Environmental Quality Act ("CEQA"), for purposes of extorting settlements. N&A did <u>not</u> communicate any of the allegedly extortionate demands. Undisputed Material Facts ("UF") 73, 74, . N&A was <u>not</u> a party to any the alleged sham lawsuits. UF 3,  9, 12, 17. Rather, the suits were filed either by Sunset Landmark Investments, LLC ("Sunset") or Casey Maddren ("Maddren"), an alleged member of the enterprise. UFs 1, 7, 11 ,16. N&A did <u>not</u> sign or benefit from the settlements in the two of those suits that have settled. UFs 4, 5, 10, .  Nor did N&A receive any of the $5,500,000 settlement payment. UF 4, 5.

Contrary to Plaintiffs' assertions, the CEQA suits were not objectively baseless, the standard required to deprive litigants of protections provided by the *Noerr-Pennington* doctrine.  As a result, Plaintiffs cannot show a pattern of racketeering activity. To start, Plaintiffs have not prevailed on the merits of any of the cases Sunset filed. UFs 4, 9, 14, 58. *See New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) ("New West also maintains that the suits that Joliet has filed are "shams. Yet none has been adjudicated in New West's favor—and even if New West ultimately wins them all, that would not demonstrate that the suits were shams, . . . ."). Unable to prevail, Plaintiffs instead paid $5,500,000 and agreed to environmental concessions to settle the lawsuits concerning Plaintiffs' Tommie and Thompson hotel projects. UFs 58, 60, 62. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) ("The fact that this ongoing litigation settled suggests that the original suit was not objectively baseless"). The suit concerning the Plaintiffs' Selma hotel project is still pending (UF 14), and the trial court presiding over that suit found substantial evidence supported Sunset's claim. UF 63. *Aydin Corp. v. Loral Corp.,* 718 F.2d 897, 903 (9th Cir. 1983) (granting summary judgment; it was

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

premature to find pending suit a sham). While it did not find in Maddren's favor, the court found that "Maddren raised a valid internal piecemealing argument, . . ." UF 74.

Because N&A was not involved in Sunset's CEQA lawsuits, Plaintiffs assert N&A is part of a broader, association-in-fact enterprise, comprised of numerous participants, including Sunset, Stephen "Saeed" Nourmand ("Saeed"),[1] Maddren, and others. Even assuming *arguendo* that a criminal enterprise existed and N&A was a member of that enterprise, N&A did not participate in the management or operation of that enterprise. *Reves v. Ernst & Young,* 507 U.S. 170 (1993). Liability attaches only to those who direct the enterprise. *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir.2008) (noting that "[o]ne can be 'part' of an enterprise without having a role in its management and operation[;][s]imply performing services for the enterprise does not rise to the level of direction" ).

Since N&A, itself, was not involved in the predicate acts and did not, itself, direct the enterprise, Plaintiffs focus on the role of N&A's employees. In recently provided discovery responses, Plaintiffs assert a laundry list of supposed "predicate acts," supposedly conducted by N&A's employees. This strategy fails.

<u>First</u>, the majority of predicate acts identified in Plaintiffs' discovery responses were not identified as predicate acts in the Third Amended Complaint ("TAC"). The TAC asserts that the pattern of racketeering arose from "a series of extortionate sham environmental lawsuits," comprising criminal extortion. TAC ¶¶ 65, 129.  Plaintiffs' new characterization of predicate acts does not, nor can it, change the nature of the suit. *Pineda v. Saxon Mortgage Services*, 2008 WL 5187813, at *4 (C.D.Cal. Dec. 10, 2008) ("plaintiff must give each defendant notice of the particular predicate act it participated in and must allege each predicate act with specificity).  Nor does breaking a chain of events into constituent parts create more predicate acts. "[M]ultiple acts in

---

[1] N&A refers to Saeed by his first name because there are multiple indivduals involved in this suit that share the last name "Nourmand."  No disrespect is intended, nor should any be inferred.

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

furtherance of a single extortion episode constitute only a single predicate act of extortion, not a pattern of two or more acts." *Linens of Europe, Inc. v. Best Mfg.*, *Inc.*, 2004 WL2071689 (S.D.N.Y 2004); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) ("First, although Sever alleges a number of "acts," APC's collective conduct is in a sense a single episode having the singular purpose of impoverishing Sever, rather than a series of separate, related acts.").

<u>Second</u>, the majority of the alleged predicate acts do not embody illegal conduct rising to the level of a felony, the threshold under RICO. 18 U.S.C. § 1961(a). By way of example, Plaintiffs contend that N&A committed a predicate act because at Saeed's request some N&A employees attended a public hearing related to Plaintiffs' project, at which none of them spoke. UF 34. Plaintiffs concede that attending public hearings, signing petitions, and reviewing public documents is lawful.  UFs 32, 33

<u>Third</u>, despite recognizing that many of the individuals who carried out the accused conduct work for both Sunset and N&A (TAC, ¶ 26), Plaintiffs make no effort in either their TAC or their responses to discovery to indicate on whose behalf the individuals were acting. The undisputed evidence establishes that conduct that Plaintiffs attribute to N&A's employees occurred, if at all, under the auspices of their relationship with either or both Sunset or Saeed, or due to their own interests, and not their affiliation with N&A. UFs 5, 10, 22.

<u>Fourth</u>, RICO liability does not attach to a corporation under the doctrine of *respondeat superior*, **unless** the employer is found to have benefitted from the employee's conduct. *Brady v. Dairy Fresh Prod. Co.*, 974 F.2d 1149 (9th Cir. 1992). N&A has not benefitted from Sunset's lawsuits (UFs 5, 10, 22), nor has it benefitted from its employees taking direction from Saeed regarding those suits. *Id.*  That some of N&A's conducted business for Sunset through "nourmand.com" email addresses does not create liability for N&A. *Bunnett & Company, Inc. v. Gearhart*, 2018 WL 1070298, *8 (N.D. Cal. Feb. 27, 2018) (*respondeat superior* not applicable where "Todd Gearheart used his J.D. Heiskell e-mail account and carried out plans in

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

furtherance of the scheme from his J.D. Heiskell office during business hours . . .").

Plaintiffs cannot establish either a pattern of racketeering activity, nor can it establish that N&A directed, managed, or operated an enterprise engaged in racketeering activity. N&A is entitled to summary judgment.

## II.   STATEMENT OF FACTS

### A.   PLAINTIFF'S ALLEGATIONS CONCERNING THE ALLEGED RACKETEERING ACTIVITY

The TAC is the operative pleading. Within the TAC, Plaintiffs name Saeed, Sunset, and N&A as defendants. Though in the TAC and their discovery responses Plaintiffs assert that many of N&A's employees carried out the alleged wrongful conduct, none of N&A's employees are name as Defendants.

The TAC contains three causes of action:

**1.**   Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)

**2.**   Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d), by Conspiring to Violate 18 U.S.C § 1962(c)

**3.**   Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d), by Conspiring to Violate 18 U.S.C § 1962(b)

The TAC identifies the supposedly racketeering activity to be criminal extortion. TAC ¶¶ 1, 3, 6, 65, 129. In paragraph 65 of the TAC, Plaintiffs specifically identify the alleged racketeering activity as follows:

> 65.   Defendants Nourmand, Sunset Landmark, and Nourmand & Associates have conducted and participated in the conduct of the Nourmand Enterprise through a pattern of racketeering activity, ***namely a series of extortionate sham environmental lawsuits***.

TAC ¶ 65; *Pineda,* 2008 WL 5187813, at *4 (complaint must disclose predicate acts).

The TAC and Plaintiffs discovery responses identify three extortionate lawsuits filed by Sunset Landmark and a fourth filed by Maddren.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00194010

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

***Thompson Project:*** Sunset filed the lawsuit styled as *The Sunset Landmark Investment LLC v. City of Los Angeles (1541 Wilcox Hotel LLC, Real Party-in-Interest),* Case No. BS160807. UF 1. Sunset filed this suit on March 3, 2016. UF 2. N&A was not a party to this lawsuit or the settlement agreements resolving the Tommie and Thompson suits; N&A did not receive any money, financial or other benefits from the suit or the settlement.  UFs 3, 4, 5.

***Tommie Project:*** Sunset filed the lawsuit styled as *The Sunset Landmark Investment LLC v. City of Los Angeles (6516 Tommie Hotel LLC, Real Party in Interest),* Case No, BS169821.  UF 6. Sunset filed this lawsuit on June 9, 2017. UF 7. N&A is not a party to this lawsuit or the settlement of this suit. Nor did it receive any of benefits from the suit or the settlement. UFs 8, 9, 10.

***Selma Project:*** Sunset filed a lawsuit styled as *The Sunset Landmark Investment LLC v. City of Los Angeles (6421 Selma Wilcox Hotel LLC, Real Party in Interest),* Case No. 19STCP01027. UF 11. N&A is not a party to this lawsuit. UF 12. Sunset filed this suit on April 2, 2019, and it remains pending. UFs 13, 14.  Finding Sunset had met its burden, the Court remanded the CEQA determination to the City, granting the City the option of conducting an environmental impact report. UF 15.

Maddren filed a lawsuit styled as *Maddren v. City of Los Angeles (6421 Selma Wilcox Hotel LLC, Real Party in Interest)*, Case No. 19STCP00988. UF 16.  N&A and Sunset are not parties to this lawsuit. UF 17. Maddren vehemently denies being a co-conspirator with Saeed or bringing this lawsuit in furtherance of the alleged RICO enterprise. UF 18. He brought his CEQA lawsuit believing it to be meritorious. UF 19.

Plaintiffs also contend Sunset attempted, but failed, to extort the proponents of the Schrader Hotel project. TAC ¶¶ 99-103; UF 20.

Plaintiffs assert the enterprise filed sham lawsuits "simply to pad its members' own wallets and to secure personal concessions that benefit only its members and their own developments."  TAC ¶ 35. Plaintiffs also assert that Sunset brought these lawsuits to extort settlements and that Sunset received the settlement payments:

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

47. Sunset Landmark conducts the business of Nourmand Enterprise through its role as the entity that formally initiates the sham CEQA litigation that is used to extort competing developers into making payments in order to avoid the devastating costs associated with the delay of projects. *Sunset Landmark is also the entity that receives the immediate financial benefit of the extortion payments made by victims.*

TAC ¶ 47 (emphasis added); UF21.

Plaintiffs assert that Sunset's CEQA attorneys, The Silverstein Firm, also received financial benefits from the CEQA suits. TAC ¶ 61, 89. The TAC does not contain any specific allegation that N&A received any benefit from its participation in the enterprise or the assistance its employees provided to the enterprise. See TAC; UF 22.

In Paragraph 129, of the TAC, Plaintiffs assert that the predicate acts are extortion arising under state and federal criminal statutes:

129. . . . . through a pattern of activity unlawful under 18 U.S.C. § 1961(1)(A) and (B), including multiple, repeated, and continuous acts or threats involving extortion and/or attempted extortion, chargeable under 18 U.S.C. § 1951 and California Penal Code §§ 518, 522, 523, 524.

TAC ¶ 129, see also TAC ¶ 143, 149156, 157, 161, 167, 174, 175, 178; UF 23.

The TAC reflects that Saeed directed the asserted enterprise:

48. Nourmand conducts the business of the enterprise through his role as the owner, manager, and principal of Sunset Landmark. *Nourmand is also the ultimate decision-maker* as to which competing developers will be targeted. *Nourmand also makes the overt threats* telling developers that their projects will continue to be subject to sham litigation until they accede to

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1
2
3

Nourmand Enterprise's demands, and ***he leads the "negotiations"*** with these developers that ultimately lead to multi-million dollar ransom payments.

4 TAC, ¶ 48 (emphasis added); UF 24.

5 Plaintiffs do not allege in the TAC that N&A adopted or maintained corporate
6 policies to engage in CEQA litigation or to extort developers. UF 25. Instead, the
7 TAC and Plaintiff's responses to written discovery reveal that Plaintiff's allegations
8 arise from the conduct of N&A's employees, as opposed to corporate activities or
9 policies of N&A. For example, in Paragraphs 51, 53, 54, 55, and 56 the TAC refers to
10 acts taken by "Nourmand & Associates' ***employees***." UF 26 (emphasis added).

11 Further, the TAC reveals that Saeed – who has not been an officer, owner,
12 director, or shareholder of N&A for over a decade - attempted to direct the activity of
13 individuals who happened to work for N&A. For example, Paragraph 53 alleges that
14 "**<u>Nourmand insisted</u>** that Michael Nourmand participate in the meeting where Sunset
15 Landmark and Nourmand extorted the $5.5 million ransom payment." Michael was
16 neither invited to, nor attended, that meeting. UF 27. In Paragraph 56, Plaintiffs make
17 clear that the supposed conduct taken by N&A employees was ***directed by Saeed***,
18 asserting, in relevant part:

19
20
21
22
23
24

56. In this and similar ways, Nourmand & Associates' employees functioned as Nourmand's own recruiting pool ***through which Nourmand tasked Nourmand & Associates' employees*** with critical support functions to extort competing developers into making payments avoid the devastating costs associated with the delay of projects.

25 TAC ¶ 56 (emphasis added); UF 28.

26 Plaintiffs' discovery responses also reflect that any involvement of N&A
27 employees in the enterprise was solely the product of Saeed's interactions with them,
28 not the direction of N&A, nor as a result of N&A's corporate policy. Examples of

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Saeed directing the enterprise appear in Plaintiffs' response to Interrogatory No. 14:

- On March 3, 2015, Mohamad Iravani and Sarah Gould **received correspondence from Saeed Nourmand** regarding the Wilcox Hotel

- On March 6, 2015, pursuant to the **request of Saeed Nourmand**, Sarah Gould assists with forwarding Wilcox Hotel plans, including an environmental assessment form, a site plan review, renderings, and master land use permit application, to zoning consultant Jeff Seymour, and arranges a call for Saeed Nourmand and Jeff Seymour;

- On March 11, 2015, Sarah Gould forwards public hearing information for the Thompson Hotel and notes that **he** [Saeed] would like a host of people to attend, including Karen Lewis at N&A, Howard Lorey at N&A, and Michael Nourmand; she copies Saeed and Mohamad Iravani;

- On March 17, 2015, **Saeed Nourmand forwards** his concerns regarding the Thompson Hotel to Carolyn Rae Cole;

- On March 17, 2015, Carolyn Rae Cole emails Fred Gains noting that **she has volunteered her assistance to Saeed** to provide arguments that could be helpful at the hearing on Wednesday at the City;

- On March 18, 2015, **Saeed sends more** information regarding 1541 Wilcox project to Carolyn Rae Cole with respect to arguments against the project;

- In or around March 2015 and April 2015, employees of N&A, **acting under the direction of Saeed Nourmand** and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, **acting under the direction of Saeed Nourmand** and the Nourmand Enterprise, concocted and submitted written comments in opposition to the

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- On March 3, 2015, Mohamad Iravani **received the Wilcox Hotel Drawings from Saeed Nourmand**;

UF 29.

With Interrogatory No. 4, N&A asked Plaintiffs to identify the predicate acts carried out by the enterprise. Plaintiffs' responses claim that the enterprise committed some thirty-three predicate acts over the period spanning March 2015 through April 2019. UF 30. The vast majority of the supposed predicate acts do not concern the filing of "extortionate sham environmental lawsuits," nor do they constitute criminal activity, much less extortion. The bulk of the supposed predicate acts involve lawful petitioning activity, such as submitting comments to city bodies, attending hearings, and signing petitions, activities Plaintiffs admit are lawful.

With Interrogatory No. 5, N&A asked Plaintiffs to identify each and every act they claimed N&A took in furtherance of the predicate acts disclosed in response to Interrogatory No. 4. With Interrogatory No. 6, N&A asked Plaintiffs to provide detailed information regarding its supposed involvement with the asserted RICO enterprise. Plaintiffs' responses to Interrogatories Nos. 5 and 6 are identical, identifying nine allegedly distinct sets of activities, six of which occurred in March and April 2015, roughly a year before Sunset filed the first CEQA suit. UF 31. These responses focus on attendance at public hearing, signing a petition, and reviewing public materials, all of which Plaintiffs admit is generally lawful.  UFs 32, 33. Further, Plaintiffs chose not to depose any such N&A employees, who have submitted declarations stating that they attended the public hearing in their individual capacity and not on behalf of N&A, and N&A did not ask or require them to attend. UF. 34.

The remaining categories of activities allegedly taken by N&A are as follows:

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

00194010

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

UF 35.

In response to Interrogatory No. 7, Plaintiffs identified documents they contend establish N&A's role in the enterprise. UF 36. The identified documents predominantly focus on events during March and April 2015 and Saeed's use of certain individuals for secretarial support. UF 37.

Sunset and N&A both propounded written discovery to ascertain who Plaintiffs contend acted on behalf of the enterprise. In response to N&A's interrogatories Plaintiffs identified the following employees of N&A as engaging in the activities carried out by the enterprise as a result of being directed by Saeed:

> Despite having "no role" at N&A himself, **Saeed Nourmand would regularly use, direct, and assign** N&A staff, including Mohammad Iravani, Sarah Gould, Rachelle DeCastro and Carolyn Rae Cole, for the benefit of the Nourmand Enterprise;

Interrogatory 5 (emphasis added). UF 38.

**B.     NOURMAND & ASSOCIATES**

    **1.     N&A is a Residential Real Estate Brokerage.**

N&A is a residential real estate brokerage. UF 39. N&A does not engage in either residential or commercial real estate development. UF 40. N&A generally does not take a position on commercial real estate development. UF 41. Although Saeed founded N&A some years ago, at least a decade ago, Saeed sold the entirety of his interest in N&A. UF 42. Since the sale, N&A has been owned by Michael Nourmand, his siblings, and his mother. UF 43. Since the sale, Saeed has not had any ownership interest, management role or other involvement in the operations of N&A. UF 44. For over a decade, Michael Nourmand has been the CEO and President of N&A. UF 45.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

### 2.   Saeed Maintains Relationships With N&A Employees, Who Occasionally Provide Administrative Assistance to Him.

Because Saeed founded N&A, he maintains relationships with certain of N&A's personnel, including Mohammed Iravani. TAC, ¶ 26 (Sunset and N&A share employees). Until 2020, Iravani worked for both N&A and Sunset. UF 46. Iravani's involvement in the CEQA suits stemmed solely from his work with Sunset, not his role with N&A. UF 47. For example, Plaintiffs erroneously assert that Iravani was working on behalf of N&A when pursuing the collection of the settlement payments Plaintiffs owed only to Sunset. When Iravani pursued the unpaid settlement payments, he was doing so on behalf of Sunset. UF 48. Demonstrating this, Iravani provided Plaintiffs with wire instructions so they could transmit the settlement funds into Sunset's account – not N&A's. UF 49.

Plaintiffs contend that N&A employee Carolyn Rae Cole provided advice to regarding the CEQA lawsuits. She did not. In March 2015, Saeed sought advice from her regarding upcoming public hearings, and she volunteered to provide advice to him outside of her role at N&A. UFs 50, 51. Since March 2015, she has not provided any additional advice to Saeed or Sunset regarding Plaintiffs' projects. UF 52.

Plaintiffs make similar arguments concerning Sarah Gould, contending she was an N&A employee centrally involved in the managing and directing the supposed enterprise. Gould worked at N&A as a Receptionist, Listing Coordinator, and Relocation Director. UF 53.  She also occasionally handled secretarial tasks for Saeed, such as helping with calendaring or setting meetings. UF 54. When she assisted Saeed, Gould typically updated her email signature block to reflect that her emails were being sent for the "Office of Saeed Nourmand" or she was acting as "Saeed Nourmand's assistant." UF 55.

Gould did not provide advice to Saeed or Sunset regarding CEQA or how CEQA applies in a lawsuit. UF 56. The same is true of Rachelle DeCastro, who Plaintiffs accuse of similar conduct. UF 57.

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

### III.   THE ENTERPRISE DID NOT ENGAGE IN RACKETEERING ACTIVITY BY FILING SHAM CEQA LAWSUITS

A pattern of racketeering activity requires at least two acts of racketeering activity, *i.e.,* two predicate acts. 18 U.S.C. § 1861(5). Plaintiffs cannot establish the requisite number of predicate acts.

- The lawsuits concerning Tommie and Thompson have been settled (UF 58), and thus cannot be established to be shams. *New West*, 491 F.3d at 722 ("New West has settled (for a substantial payment) one of the suits that Joliet filed in state court, so that one cannot have been a sham;")

- The lawsuit concerning Selma is ongoing (UF 14), and thus it cannot yet be determined if that suit is a sham. *Aydin Corp.*, 718 F.2d at 903 premature to determine whether still pending suit was objectively baseless).

- The supposed threat regarding Schader did not violate the Hobbs Act, because there is no evidence it induced fear. UF 20.

- Maddren filed his lawsuit entirely on his own (UF16. 19), and the court found that he raised valid, albeit unsuccessful, arguments. UF 74.

- The numerous predicate acts claimed in Plaintiffs' discovery responses are not separate offenses and do not establish a pattern. *Sever*, *supra,* 978 F.2d at 1535; *Linens of Europe, supra*, 2004 WL2071689.

#### A.   *Noerr-Pennington* Immunizes Litigants From Liability.

The asserted enterprises' conduct – petitioning through lobbying at the local level and filing lawsuits - is immunized under *Noerr Pennington*. TAC ¶ 65 ("a series of extortionate sham environmental lawsuits.")  "The *Noerr–Pennington* doctrine ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved. *White v. Lee,* 227 F.3d 1214, 1231 (9th Cir. 2000) (citing *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("*PRE*"). Under the *Noerr–*

00194010

12

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1  *Pennington* doctrine, those who petition the government for redress are generally

2  immune from antitrust, statutory, or tort liability as part of the First Amendment right

3  to petition the government. *Theme Promotions, supra,* 546 F.3d at 1007; *Sosa v.*

4  *DIRECTV, Inc.,* 437 F.3d 923, 929 (9th Cir.2006) (citing *Eastern R.R. Presidents*

5  *Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine*

6  *Workers v. Pennington*, 381 U.S. 657 (1965)).

7         The *Noerr–Pennington* doctrine protects a party's effort initiate lawsuits, ***unless***

8  the litigation "is a mere sham to cover what is actually nothing more than an attempt

9  to interfere directly with the business relationships of a competitor." *Cal. Motor*

10 *Transp. Co. v. Trucking Unlimited*, 404 U.S. 510, 511 (1972) (internal quotation

11 omitted; emphasis added). Thus, the court "must be critical in reviewing claims to

12 determine whether the sham exception is properly invoked."  *Energy Conservation,*

13 *Inc. v. Heliodyne, Inc.*, 698 F.2d 386, 389 (9th Cir. 1983). "Courts may properly be

14 more critical in reviewing complaints which invoke the sham exception to the *Noerr-*

15 *Pennington* doctrine since the conduct is presumptively protected by the first

16 amendment, involving here the right of access to the court." *Id.*

17        "A suit is not objectively meritless if it is 'arguably warranted by existing law

18 or at the very least [is] based on an objectively good faith argument for the extension,

19 modification, or reversal of existing law.'" *PRE,* 508 U.S. at 65. "Even when the law

20 or the facts appear questionable or unfavorable at the outset, a party may have an

21 entirely reasonable ground for bringing suit." *White v. Lee*, 227 F.3d 1214, 1232 (9th

22 Cir. 2000) (*quoting Christiansburg, supra*, 434 U.S. at 422, 98 S.Ct. 694. The entire

23 lawsuit must be objectively baseless, not just a single claim. *Meridian Project Sys.,*

24 *Inc. v. Hardin Constr. Co., LLC*, 404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005).

25        In *Koziol v. United States*, 993 F. 3d 1160, a criminal RICO case, the Ninth

26 Circuit departed from its sister circuits in holding that a sham lawsuit may provide a

27 basis for extortion under the Hobbs Act. The Ninth Circuit rationalized that sham

28 lawsuits are not immunized by *Noerr-Pennington*. *Id.* at 1171. Elaborating on the type

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

of suits that constitutes a sham, the *Koziol* Court explained:

> Litigation is a sham "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful." [*Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 938 (9th Cir. 2006)] (*citing Kottle v. Nw. Kidney Ctrs.,* 146 F.3d 1056, 1060 (9th Cir. 1998)). A lawsuit is objectively baseless where "no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs.*, 508 U.S. at 60, 113 S.Ct. 1920.

*Koziol*, 993 F.3d at 1171 (italics in original; bolding added).

The facts that have allowed courts to determine that a lawsuit was objectively baseless generally reflect egregious circumstances. In *Koziol,* Koziol used falsified evidence and lied about the existence of evidence to support his claims. *Koziol*, 993 F.3d. at 1170. In *Icon at Panorama, LLC v. Sw. Reg'l Council of Carpenters*, 2019 WL 7205899, at *3 (C.D. Cal. Aug. 7, 2019), the plaintiff alleged a reviewing official had labelled the CEQA lawsuits "specious at best" and "patently false."  In *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 352 (9th Cir. 2014), the court found a jury could conclude litigation was a sham litigation when a party sent cease and desist letter concerning rights it did not hold.

**B.**   **Plaintiffs Cannot Meet Their Burden of Showing The CEQA Lawsuits Are Not Immunized By *Noerr-Pennington*.**

Plaintiffs bear the burden of proving that Defendants lacked probable cause to bring the alleged shame lawsuits. The burden is on "the plaintiff to disprove the challenged lawsuit's legal viability." *Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.,* 863 F.3d 1178, 1187 (9th Cir. 2017) (*quoting Prof'l Real Estate Investors*, 508 U.S. at 61, 113 S.Ct. 1920 (emphasis omitted); *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994) (plaintiff bears burden in cases involving pattern of allegedly baseless litigation: "Given that the plaintiff has the burden in litigation, a batting average

14

1  exceeding .500 cannot support BE & K's theory.")

2    **1. Courts Apply A "Low Threshold" In CEQA Suits.**

3    Sunset's lawsuits arose from the CEQA environmental review process. In this

4  process, agencies evaluate proposed development projects to determine if they fall

5  within the scope of CEQA.  If CEQA is implicated, then the agencies determine

6  whether the project will have environmental impacts. If not, then the agency issues a

7  negative declaration. If the project will have environmental impacts, then further

8  study through an environmental impact report is required. *Save Our Big Trees v. City*

9  *of Santa Cruz*, 241 Cal.App.4th 694, 704–705 (2015).

10    Where a negative declaration issues, third parties with standing may seek

11  judicial review of the adoption of the negative declaration. The standard on review is

12  very low. The party challenging the negative declaration need only establish with

13  substantial evidence there is a "fair argument" concerning environmental impacts:

14     "whether there is substantial evidence in the record supporting a

15     fair argument that the Project will significantly impact the

16     environment; if there is, it was an abuse of discretion not to require

17     an EIR. [Citation.] ' "Whether a fair argument can be made is to be

18     determined by examining the entire record." ' [Citation.]"

19  *Keep Our Mtns Quiet v. Cnty of Santa Clara,* 236 Cal.App.4th 714, 731, (2015).

20     This unusual "fair argument" standard of review over a public

21     agency's decision has been characterized as setting a "low

22     threshold requirement for initial preparation of an EIR and reflects

23     a preference for resolving doubts in favor of environmental review

24     when the question is whether any such review is warranted.

25     [Citations.]" (*Sierra Club v. County of Sonoma* (1992)

26     Cal.App.4th 1307, 1316-1317, 8 Cal.Rptr.2d 473 ; *see Ocean View*

27     *Estates Homeowners Assn., Inc. v. Montecito Water Dist.* (2004)

28     116 Cal.App.4th 396, 399, 10 Cal.Rptr.3d 451 ["Because a

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00194010

15

negative declaration ends environmental review, the fair argument test provides a low threshold for requiring an EIR"].)

*Id.*

### 2. Plaintiffs Have Not Identified Any Particular Evidence Establishing that the CEQA Suits Lack Merit.

Though Plaintiffs bear the burden of establishing that Sunset's CEQA suits lack merit, Plaintiffs have failed to articulate plainly how the any of the cases lack merit. Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr–Pennington* protection. *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991), *citing Boone v.  Redevelopment Agent of City of San Jose*, 841 F.2d 886, 893 (9th Cir. 1988); *Aydin Corp*, 718 F.2d at 903 ("No evidence of sham, aside from the filings of the actions, was pointed out to us by Aydin.").

In response to Interrogatories Nos. 1 and 2, Plaintiffs primarily focused on conclusory assertions that Sunset brought the lawsuits in bad faith. This puts the cart before the horse. "Defendants' subjective motivations are irrelevant unless Defendants could not "realistically expect success on the merits" of a petition." *Evans Hotels, LLC v. Unite Here Loc. 30*, 433 F. Supp. 3d 1130, 1149 (S.D. Cal. 2020) (citing *White*, 227 F.3d at 1232 (holding that "a court may not even consider the defendant's allegedly illegal objective unless it first determines that his lawsuit was objectively baseless); *see also PRE,* 508 U.S. at 61, 113 S. Ct. at 1928, 123 L. Ed. 2d at 611 (plaintiff must "disprove the challenged lawsuit's legal viability **before** the court will entertain evidence of the suit's economic viability.").

Similarly, Plaintiffs also refused to allow their attorney from the underlying CEQA case, Arthur Friedman, answer questions concerning the merits of the lawsuits in deposition, asserting the attorney client privilege.   UF 59. Thus, the record established through discovery does not show that the lawsuits were shams.

### 3. Sunsets' CEQA Lawsuits Were Not Objectively Baseless.

Several objective facts demonstrate that the lawsuits concerning the Tommie,

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Thompson, and Selma projects were **_not_** objectively baseless. To begin, Plaintiffs have not yet prevailed in any of the suits. *New West*, *supra*, 491 F.3d at 722. Unable to show even a single victory, it entirely disingenuous for Plaintiffs to claim that all of the environmental suits were completely frivolous.

Where, as here, the parties settle their disputes short of trial, federal courts regard the settlement as establishing the merits of the underlying suit. *Theme Promotions,* 546 F.3d at 1008 ("The fact that this ongoing litigation settled suggests that the original suit was not objectively baseless"); *New West,* 491 F.3d at 722 ("New West has settled (for a substantial payment) one of the suits that Joliet filed in state court, so that one cannot have been a sham;"). Far from prevailing on the merits, 1541 Wilcox Hotel LLC and 6516 Tommie Hotel LLC settled the Tommie and Thompson suits at the same time, for a total payment of $5.5M as well as environmental concessions. UF 60.

To detract from the significance of the settlements, Plaintiffs assert the settlements did not provide any relief on environmental concerns. They are wrong. Noise is plainly within the scope of CEQA. Cal. Pub. R. Code § 21060.5. Noise was raised in Sunset's CEQA suits.  UF 61.  The settlements include environmental concessions including those relating to noise. The settlement terms included, among other things, limiting the hours for deliveries and trash pickup, and mitigating noise generated by the outdoor bars, pools, and restaurants to be located on the hotel roofs. UF 62; *In re Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1358 (S.D. Fla. 2004) ("Moreover, the Court cannot agree with Plaintiffs that a plaintiff who has filed suit and receives the relief sought (e.g., monetary compensation, a change in conduct, etc.) could only have been deemed to have "won" under PRE if it continued to litigate the case and received a favorable judgment from the court.")

Plaintiffs have not secured victory in the still pending Selma suit. UF 14; *Aydin*, 718 F.2d at 902 (affirming grant of summary judgment where plaintiff produced no evidence of sham aside from the filings of the actions; court was unable to determine

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

whether the suit was baseless because the action was still pending). Moreover, the court presiding over the Selma suit found merit to Sunset's claims:

> Sunset has presented substantial evidence supporting a fair argument that the Project may have significant effects on air quality. As such, the City's decision to adopt an MND was an abuse of discretion.

UF 63; *PRE*, 508 U.S. at 63, ("a proper probable cause determination irrefutably demonstrates that an antitrust plaintiff has not proved the objective prong of the sham exception and that the defendant is accordingly entitled to Noerr immunity"; *STMicroelectronics, Inc. v. Avago Tech. U.S., Inc*., 2011 WL 1362163, at *2 (N.D.Cal. Apr. 11, 2011) (" . . .courts often look to . . . rulings on dispositive motions as evidence of the merits of the case.")

Also demonstrating that viability of the CEQA challenges, Plaintiffs concede that numerous others initiated similar CEQA challenges concerning the Tommie, Thompson, and Selma projects, including: Casey Maddren, Lauren Farmer and Liliana Hernandez, Unite Here Local 1l; Mama Wilcox Land, LLC; Alexis Olbrei; Southwest Carpenters; Fran Offenhauser; Hollywood Heritage; and David Carrera. UF 64. Plaintiffs admit to settling several of these CEQA disputes, once again demonstrating the validity of the CEQA challenges. UF 65.

Further, other litigants filed CEQA suits concerning Plaintiffs' projects, showing that other "reasonable litigant[s] in the defendant's position could realistically expect success on the merits of the challenged lawsuit. *PRE*, 508 U.S. at 63-64.

- *Mama Wilcox Land LLC v. City of Los Angeles,* Case No. BS169883. UF 66. In that suit, Mama Wilcox Land LLC is represented by the law firm of Greenberg Glusker Fields Claman & Matchinger, LLP. UF 67.

- *Farmer v. City of Los Angeles,* Case No.BS169855. UF 68. In that suit, Farmer, et al., is represented by the Law Office of Gideon Kracov. UF 69.

- *Maddren v. City of Los Angeles (6421 Selma Wilcox Hotel LLC, Real*

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

*Party in Interest),* Case No. 19STCP00988. UF 70.

In one of these matters, the *Farmer Wilcox* Case, concerning the Tommie project, the Superior Court held that the Mitigated Negative Declaration issued by the City of Los Angeles was defective, and on that basis granted a writ of mandate:

> Accordingly, the court finds that the MND is defective, and cannot be upheld. Thus, writ of mandate is GRANTED as to the 1st cause of action.

UF 71. Thus, the Court's finding for Mama Wilcox establishes that Sunset's CEQA suit regarding the Tommie project was not objectively baseless.

Whether the three lawsuits are evaluated individually or as series does not change the *Noerr-Pennington* analysis.[2] *USS-POSCO* at 31 F.3d 800, 811 (9th Cir. 1994) ("The fact that more than half of all the actions as to which we know the results turn out to have merit cannot be reconciled with the charge that the unions were filing lawsuits and other actions willy-nilly without regard to success. Given that the plaintiff has the burden in litigation, a batting average exceeding .500 cannot support BE & K's theory.")  Sunset has not lost any of the lawsuits. UF 14, 58. It settled two of them, and the third remains ongoing. UF 14, 58.

For these reasons, Plaintiffs cannot establish a pattern of racketeering activity.

## IV.   N&A DID NOT MANAGE OR OPERATE THE ENTERPRISE.

### A.   RICO Liability Requires Management or Operation of the Enterprise.

For an individual or entity to be liable for civil damages by virtue of being a

---

[2] *See Coca–Cola Co. v. Omni Pac. Co.,* 1998 U.S. Dist. LEXIS 23277, at *24 (N.D.Cal. Dec. 9, 1998) (**four** lawsuits not a series) *Wonderful Real Est. Dev. LLC v. Laborers Int'l Union of N. Am. Loc. 220,* 2020 WL 91998, at *10 (E.D. Cal. Jan. 8, 2020)(" **five or six** lawsuits is on the lower end of what can constitute a pattern or series of harassing litigation.") *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.,* 192 F.Supp.2d 519, 538–39 (M.D.La.2001) (**nine** petitions); *ERBE Elektromedizin GmbH v. Canady Tech. LLC,* 629 F.3d 1278, 1291 (Fed. Cir. 2010)(**three** lawsuits); *Amarel v. Connell,* 102 F.3d 1494, 1519–20 (9th Cir.1996) (**two** lawsuits); *In re Flonase Antitrust Litig.,* 795 F. Supp. 2d 300, 310 (E.D. Pa. 2011) (**five** petitions).

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00194010

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

RICO enterprise, the defendant **must** be involved in the management or operations of the enterprise. *Reves*, 507 U.S. 170. Liability does not attach merely because a defendant is a member of an enterprise. *Walter*, 538 F.3d at 1249. "One can be 'part' of an enterprise without having a role in its management and operation." *Id.*

> In evaluating whether a defendant "had some part in directing the affairs" of the enterprise, the Ninth Circuit has considered whether that defendant (1) gave or took directions; (2) occupied a position in the "chain of command" through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to the achievement of the enterprise's goal.

*Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1152–53 (C.D. Cal. 2016) (*citing Walter*, 538 F.3d at 1249).

Plaintiffs' supposed scheme involve the filing of frivolous lawsuits to extort settlements from plaintiffs. TAC ¶ 65 ("namely a series of extortionate sham environmental lawsuits"). N&A was not a central actor to or a participant in this allegedly extortionate conduct. N&A was not a party to the CEQA suits purportedly filed in furtherance of the enterprise. UF 3. Nor was N&A in the chain of command regarding the lawsuits. N&A did not participate in the allegedly extortionate settlement demands made with respect to the CEQA suits. UF 72. Rather, Plaintiffs concede the demands were communicated by others not employed by N&A. UF 73. N&A was not a party to the settlement agreements resolving the Tommie and Thompson suits. UF 4. N&A did not receive money or any financial or other benefit from those settlements. UF 5. The settlement money was paid to and received by Sunset. UF 48. Iravani collected the funds for Sunset, directing the settlement money be wired to Sunset's account. UF 47, 49.

N&A also was not in the enterprises' chain of command. Illustrating how the "chain of command" concept applies, in *U.S. v. Viola,* 35 F.3d 37, 43 (1994), the

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00194010

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Second Circuit overturned a criminal conviction against an individual who had limited participation in the enterprise and had no role in the decision-making process:

> The entirety of the proof with respect to Formisano showed that, acting under Viola's instructions, he transported some stolen beer and lamps to buyers and returned most of the proceeds from the sales to Viola. In contrast with the other defendants, Formisano's participation was limited to these two acts which were undertaken without the exercise of appreciable discretionary authority. Viola was the kingpin of the operation who was contacted by drug owners and who would decide how best to remove the drugs from the docks. Viola and the other defendants also decided to whom to sell stolen goods, and for how much. Formisano, on the other hand, was not consulted in the decision-making process and exercised no discretion in carrying out Viola's orders. *Compare Thai*, 29 F.3d at 816 (defendant conceived and performed racketeering acts without prior approval). There was no evidence that he was even aware of the broader enterprise. While Formisano's acts might have contributed to the success of the RICO enterprise, he simply did not come within the circle of people who operated or managed the enterprise's affairs. Although *Reves* still attaches liability to those down the "ladder of operation" who nonetheless played some management role, it is plain to us that, since *Reves*, § 1962(c) liability cannot cover Formisano. Formisano was not on the ladder at all, but rather, as Viola's janitor and handyman, was sweeping up the floor underneath it.

*Id.*

Similarly, in *Coquina Investments v. Rothstein*, 2011 WL 4971923, *8 (S.D. Fla. Oct. 19, 2011), the court found that individuals doing what they were told by the

00194010

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

central actor were not responsible for management or operation of the enterprise:

> First, there is no evidence that Spinosa or other employees directed the affairs of the enterprise. Even viewed in the light most favorable to Coquina, the facts show that Rothstein was the person responsible for directing and managing the Ponzi scheme. The evidence shows that Rothstein directed his associates, Villegas, Renie, and Caputi, among others, to forge TD Bank documents, create fake TD Bank websites, and pose as TD Bank bankers and as plaintiffs. The evidence shows that Rothstein told Spinosa what to say during a conference call with Coquina investors. The evidence also shows that Rothstein provided Spinosa with a draft "lock letter" and directed him to place it on TD Bank letterhead and sign it. In short, there is no evidence whatsoever that TD Bank, through Spinosa or any other employee, directed the enterprise's affairs.

Plaintiffs' allegations and discovery responses plainly reflect their contention that Saeed – not N&A - managed and operated the RICO enterprise, to the exclusion of all others, including N&A. *Coquina*, 2011 WL 4971923, *8.

Nor was N&A vital to the enterprises' purpose of using lawsuits to extract allegedly extortionate settlement. A person or enterprise is indispensable to an enterprise's goal when the goal cannot be accomplished without that individual. *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, at *15 (C.D. Cal. July 19, 2013) ("The allegations do not, however, indicate that Ingenix could not have continued with the alleged scheme absent WellPoint's participation."). Since N&A did not file the suits, did not make demands in connection with them, did not sign the settlement agreements, and did not receive the settlement funds, N&A plainly was not indispensable to the scheme to bring extortionate lawsuits. *Coquina Investments,* 2011 WL 4971923, *8 ("Moreover, the evidence shows that, to operate

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

his Ponzi scheme, Rothstein directed others to create fake TD Bank account statements, TD Bank websites, and TD Bank correspondence, and pose as TD Bank bankers. The evidence demonstrates that the TD Bank's participation was not vital.")

### B.    N&A's Employees' Conduct Does Not Expose N&A to Liability.

Because N&A did not, itself, carry out RICO violations, nor manage or operate the enterprise, Plaintiffs are left to focus on the acts of N&A's employees. In *Brady, supra,* 974 F.2d 1149, the Ninth Circuit rejected the plaintiff's argument that a corporation was liable under RICO because corrupt conduct occurred at the managerial level, because "the involvement of high level officials in the underlying scheme would have to be much more pervasive" than had been established. *Id.* at 1153. Plaintiffs' evidence of N&A's employees' involvement with the alleged enterprise is isolated and sporadic and outside the scope of their employment.

The doctrine of *respondeat superior* does not assist Plaintiffs in establishing corporate liability. Under Ninth Circuit precedent, *respondeat superior* applies in RICO cases only where the corporation benefits from the employee's conduct. *Brady,* 974 F.2d at 1154. "Unlike *respondeat superior* under California law, 'benefit to the employer is a threshold requirement that must be satisfied before examining whether the employee's conduct that underlies a RICO claim was 'within the scope of the employee's employment.'" *Freeney v. Bank of Am. Corp.*, 2016 WL 5897773, at *13 (C.D. Cal. Aug. 4, 2016), *quoting See Brocade Securities Litigation*, 2008 WL 2050847 at *3. N&A did not benefit from either the RICO enterprise or its employees' supposed acts in furtherance of it because N&A did not receive any of the allegedly extorted settlement funds, nor any other benefits. UF 5. 10, 22.

Plaintiffs suggest that N&A is liable because Saeed asked his son, Michael, to attend settlement meetings. *Gianelli v. Schoenfeld*, 2021 WL 4690724, *11 (E.D. Cal. Oct . 6, 2021) ("Being a friend or mentor to a person conducting a RICO enterprise does not amount to participating in the conduct of the enterprise.")  Michael did not go to those meetings, which his father asked him to attend.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00194010

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Plaintiffs have asserted that N&A employee Carolyn Rae Cole provided legal advice to the enterprise. But that argument fails for several reasons. First, Carolyn Rae Cole was not providing any advice to the enterprise through or on behalf of N&A – she *volunteered* her advice because Saeed requested her to do so. UF 51; *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002) (respondeat superior requires that "(2) the employee was motivated, at least in part, by a purpose to serve the employer"). Second, "providing legal services does not constitute the operation or management of a RICO enterprise." *Walter*, 538 F.3d at 1246 *see also Baumer v. Pachl*, 8 F.3d 1341(9th Cir.1993). Third, Cole provided limited advice in 2015 regarding public hearings, not the allegedly extortionate lawsuits, the first of which was not filed until March 2016, nearly a full year later. UFs 52. *Id.* (attorney's sporadic involvement not management or operation).

Plaintiffs have also claimed that Iravani pursued payments due under the settlement agreements while he was an officer of N&A. But the evidence is that (a) Iravani also worked for Sunset, (b) the settlement proceeds belonged to Sunset, not N&A, (c) Iravani was pursuing payment on behalf of Sunset. UFs 47, 48, 49. There is no evidence that N&A benefitted from Iravani's work for Sunset, nor is there any evidence Iravani was motivated to collect funds for Sunset due to his employment with N&A. *See also C&M Café v. Kinetic Farm, Inc.*, 2016 WL 682071 (N.D. Cal. Nov. 18, 2016) (individual's position alone does not show management or operation of RICO enterprise); *Perdomo v. Garcia*, 2010 WL 3324304, at *2 (N.D. Cal. Aug. 23, 2010). ("Rather, Plaintiffs allege that Ms. Garcia used her position within Biomeda, which involved processing invoices and receiving and depositing payments, to transfer funds from Biomeda's accounts to her own accounts. When the Court accepts these allegations as true and in the light most favorable to Plaintiffs, the Court concludes that they are insufficient to establish that Ms. Garcia's position within Biomeda gave her the ability to control its affairs.")

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Finally, Plaintiffs' assertion that liability attached due to the use of "nourmand.com" email addresses fails. In *Bunnett, supra,* 2018 WL 1070298, *8 (use of corporate email address did not render entity liable for employee's conduct).

## V.   N&A DID NOT CONSPIRE TO VIOLATE RICO

18 U.S.C. § 1962(d) makes it unlawful to conspire to violate sections (a), (b), or (c)—that is, to violate RICO. To be liable for conspiracy under (d), "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997). "Association, alone, with the enterprise is, of course, insufficient for violation of RICO: an individual must agree to participate in the affairs of the enterprise." *Baumer*, 8 F.3d at 1347 (quoting *United States v. Valera*, 845 F.2d 923, 929 (11th Cir.1988)).  "A defendant must also have been 'aware of the essential nature and scope of the enterprise and intended to participate in it." *Howard v. Am. Online Inc*., 208 F.3d 741, 751 (9th Cir. 2000) (*quoting Baumer*, 8 F.3d at 1346.)

The undisputed evidence demonstrates, at most, that N&A is associated with Sunset and Saeed. But that is not enough. N&A has not carried out any of the predicate acts, nor did it agree to violate the law.

## VI.   CONCLUSION

Plantiffs cannot establish any racketeering activity. Even if they could, they cannot establish that N&A managed, operated, or directed that activity or conspired to do so. Summary Judgment should be granted for N&A.

Dated: May 9, 2022

**THE MALONEY FIRM, APC**

By:   <u>      /s/ Patrick M. Maloney      </u>
PATRICK M. MALONEY, ESQ.
Attorneys for Defendant,
NOURMAND & ASSOCIATES

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2381 Rosecrans Avenue, Suite 405, El Segundo, CA 90245.

I served the foregoing document(s) described as:

**DEFENDANT NOURMAND AND ASSOCIATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

on the interested party(ies) below, using the following means:

SEE ATTACHED SERVICE LIST

☐ BY PERSONAL SERVICE I delivered such envelope(s) by hand to the offices of the addressee(s).

☐ BY UNITED STATES MAIL I enclosed the documents in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at El Segundo, California.

☐ BY OVERNIGHT DELIVERY I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the respective address(es) of the party(ies) stated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ BY MESSENGER SERVICE I served the documents by placing them in an envelope or package addressed to the respective address(es) of the party(ies) stated above and providing them to a professional messenger service for service.

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 9, 2022, at El Selgundo, California.

                                        /s/ Marilyn Vigil
                                        Marilyn Vigil

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

0019428400194010.DOCX

i

**PROOF OF SERVICE**

## <u>MAILING LIST</u>

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Susan K. Leader, Esq.
Granville C. Kaufman, Esq.
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
T: (323) 210-2900 | F: (866) 974.7329
E: sleader@wsgr.com
E: gkaufman@wsgr.com

Attorneys for Plaintiffs,
Relevant Group, LLC
1541 Wilcox Hotel LLC,
6516 Tommie Hotel LLC,
and 6421 Selma Wilcox
Hotel LLC

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Dale R. Bish, Esq.
Charles A. Talpa, Esq.
Karen Kwok, Esq.
650 Page Mill Road
Palo Alto, CA 94304-1050
T: (650) 493-9300 | F: (650) 565-5100
E: dbish@wsgr.com
E: Sctalpas@wsgr.com
E: kkwok@wsgr.com

WILSON SONSINI GOODRICH &ROSATI
Conor Tucker, Esq.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2048
T: (323) 210-2900 | F: (866) 974-7329
E: ctucker@wsgr.com

Attorneys for Plaintiffs
Relevant Group, LLC; 1541
Wilcox Hotel, LLC; 6516
Tommie Hotel, LLC: 6421
Selma Wilcox Hotel, LLC

NORTON ROSE FULBRIGHT US LLP
James H. Turken, Esq.
Neil P. Thakor, Esq.
Phillip R. Di Tullio, Esq.
Christopher Pelham, Esq.
555 South Flower Street, Forty-First Floor
Los Angeles, CA 90071
T: (213) 892-9200 | (323) 892-9200
F: (213) 892-9494 | (323) 892-9400
E: james.turken@nortonrosefulbright.com
E: neil.thakor@nortonrosefulbright.com
E: christopher.pelham@nortonrosefulbright.com

Attorneys for Defendants
STEPHEN "SAEED"
NOURMAND and
THE SUNSET
LANDMARK
INVESTMENT, LLC

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

0019428400194010.DOCX