# EXHIBIT 10

Patrick M. Maloney – CSBN 197844
Gregory M. Smith – CSBN 259971
**THE MALONEY FIRM, APC**
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
T: 310-540-1505 | F: 310-540-1507
E: pmaloney@maloneyfirm.com
E: gsmith@maloneyfirm.com

Attorneys for Defendant Nourmand & Associates

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, | Case No.:    2:19-cv-05019-ODW (KSx)<br>Judge:       Hon. Otis D. Wright II<br>Dept.:       Courtroom 5D, 5th Floor<br>Filed:       June 10, 2019 |
| Plaintiffs, | **DECLARATION OF ELIZABETH SCHAUS** |
| v. | |
| STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, | **Date:  June 13, 2022**<br>**Time: 1:30 p.m.**<br>**Dept.: Courtroom 5D** |
| Defendants. | |

*THE MALONEY FIRM, APC*
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00188315                                    1
**DECLARATION OF ELIZABETH SCHAUS**

## DECLARATION OF ELIZABETH SCHAUS

I, Elizabeth Schaus, declare as follows:

1.      I am an attorney at The Maloney Firm, duly admitted to practice law in the State of California. The Maloney Firm is counsel of record for Defendant Nourmand & Associates ("N&A"). I make this declaration in support of Nourmand & Associates' Motion for Summary Judgment.  If called as a witness, I could and would competently testify to the following facts based on my personal knowledge, except to those matters stated based on information and belief, and as for those matters, I am informed and believe them to be true.

2.      On or about April 26, 2022, more than seven days prior to filing the instant motion, the parties met and conferred pursuant to Local Rule 7-3 and discussed thoroughly, "in person" via a Zoom call, the substance of N&A's contemplated motion for summary judgment and any potential resolution. The contemplated motions for summary judgment by Defendants Stephan "Saeed" Nourmand and The Sunset Landmark Investment, LLC ("Sunset Landmark") (collectively the "S Defendants") was also discussed. I personally attended the Zoom meet and confer call and was a sender or recipient of subsequent email meet and confer communications regarding the motions. The parties were unable to reach a resolution, and accordingly N&A has proceeded with filing the instant Motion for Summary Judgment.

3.      Attached hereto as Exhibit A is a true and correct copy of Plaintiff's Operative Third Amended Complaint in this action.

4.      Attached hereto as Exhibit B is a true and correct copy of Sunset Landmark's Second Amended Verified Petition for Writ of Mandamus and Complaint for Declaratory Relief with respect to the Wilcox (aka Thompson) Hotel project, Los Angeles County Superior Court case no. BS160807 ("Thompson Suit").

5.      Attached hereto as Exhibit C is a true and correct copy of the settlement agreement in the Thompson Suit.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00188315

**DECLARATION OF ELIZABETH SCHAUS**

6.      Attached hereto as Exhibit D is a true and correct copy of Sunset Landmark's Verified Petition for Writ of Mandamus with respect to the Tommie Hotel project, Los Angeles County Superior Court case no. BS169821 ("Thompson Suit").

7.      Attached hereto as Exhibit E is a true and correct copy of the Tommie Settlement Agreement.

8.      Attached hereto as Exhibit F is a true and correct copy of Sunset Landmark's Verified Petition for Writ of Mandamus with respect to the Selma Hotel project, Los Angeles County Superior Court case no. 19STCP01027 ("Selma Suit").

9.      Attached hereto as Exhibit G is a true and correct copy of Casey Maddren's Verified Petition for Writ of Mandamus and Complaint for Declaratory and Injunctive Relief with respect to the Selma Hotel project, Los Angeles County Superior Court case no. 19STCP00988.

10.      Attached hereto as Exhibit H is a true and correct copy of relevant excerpts of the certified deposition transcript of Casey Maddren in this action.

11.      Attached hereto as Exhibit I is a true and correct copy of relevant excerpts of the certified deposition transcript of David Carrera in this action.

12.      Attached hereto as Exhibit J is a true and correct copy of relevant excerpts of the certified deposition transcript of Arthur Friedman.

13.      Attached hereto as Exhibit K is a true and correct copy of relevant excerpts of all Plaintiffs' Responses to Sunset Landmark's Special Interrogatories Set Two.

14.      Attached hereto as Exhibit L is a true and correct copy of relevant excerpts of all Plaintiffs' Supplemental Responses to Sunset Landmark's Special Interrogatories Set One.

15.      Attached hereto as Exhibit M is a true and correct copy of relevant excerpts of all Plaintiffs' Responses to N&A's Request for Admissions Set One.

16.      Attached hereto as Exhibit N is a true and correct copy of relevant

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DECLARATION OF ELIZABETH SCHAUS**

excerpts of all Plaintiffs' Responses to N&A's Interrogatories Set One.

17.     Attached hereto as Exhibit O is a true and correct copy of all documents identified in Plaintiffs' Responses to N&A's Interrogatories Set One, No. 7, as supporting Plaintiffs' claims against N&A. The highlighted copy of the Sunset Landmark privilege log was introduced by Plaintiffs as an exhibit to the deposition of Michael Nourmand of N&A. A certified transcript of the deposition is not yet available.

18.     Attached hereto as Exhibit P is a true and correct copy of the Verified Petition for Writ of Mandate by Mama Wilcox Land LLC in *Mama Wilcox Land LLC v. City of Los Angeles,* Case No. BS169883.

19.     Attached hereto as Exhibit Q is a true and correct copy of the Verified Petition for Writ of Mandate by Petitioners, Lauren "Elle" Farmer, Liliana Hernandez and Hollywood for the Environmental and Equitable Development ("Petitioners") in *Farmer v. City of Los Angeles,* Case No. BS169855.

20.     Attached hereto as Exhibit R is a true and correct copy of the Court's December 19, 2018 Order/Ruling with respect to Petitioners' Verified Petition for Writ of Mandate in *Farmer v. City of Los Angeles,* Case No. BS169855.

21.     Attached hereto as Exhibit S is a true and correct copy of the Court's January 11, 2021, Order re: Petitions for Writ of Mandate of Sunset Landmark, I9STCPOIO27 (Sunset Case) and Casey Maddren, I9 STCPOO9SS (Maddren Case) in the Selma CEQA litigation, and Notice of Entry of Ruling. The Court's entrance of an interlocutory order and the grounds are set forth and highlighted, in pertinent part, at page 65.

/ / /

/ / /

/ / /

/ / /

/ / /

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00188315

4

**DECLARATION OF ELIZABETH SCHAUS**

22.    Pursuant to the meet and confer correspondence attached hereto as Exhibit T, the S Defendants withdrew their confidentiality designation as to all documents identified by Plaintiffs in response to N&A's Special Interrogatories Set One, No. 7 (see Exhibit N) as supporting their claims against N&A, and as to the document produced by the S Defendants and attached to the Declaration of Mohamad Iravani as Exhibit A. All of these documents were initially produced by the S Defendants with a confidentiality designation.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on May 9, 2022, in El Segundo, California

_/s/ Elizabeth Schaus_
Elizabeth Schaus

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DECLARATION OF ELIZABETH SCHAUS**

# EXHIBIT A

1   **AKIN GUMP STRAUSS HAUER & FELD LLP**
    SUSAN K. LEADER (SBN 216743)
2   ALI R. RABBANI (SBN 253730)
    JOSHUA A. RUBIN (SBN 308421)
3   BRETT M. MANISCO (SBN 318351)
    SLEADER@AKINGUMP.COM
4   arabbani@akingump.com
    rubinj@akingump.com
5   bmanisco@akingump.com
    1999 Avenue of the Stars, Suite 600
6   Los Angeles, CA 90067-6022
    Telephone: 310.229.1000
7   Facsimile: 310.229.1001

8   *Attorneys for Plaintiffs*

9

10           UNITED STATES DISTRICT COURT

11      FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12 RELEVANT GROUP, LLC, a Delaware limited liability company; | Case No.: 2:19-cv-05019-ODW (KSx) |
| 13 1541 WILCOX HOTEL LLC, a Delaware limited liability company; | **THIRD AMENDED COMPLAINT FOR:** |
| 14 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; | **1. VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(c)** |
| 15 and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, | |
| 16 | |
| 17          Plaintiffs, | **2. VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(d), BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(c)** |
| 18   v. | |
| 19 STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET | |
| 20 LANDMARK INVESTMENT LLC, a California limited liability company; | |
| 21 NOURMAND & ASSOCIATES, a California corporation; and DOES 1- | **3. VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(d), BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(b)** |
| 22 10, | |
| 23          Defendants. | |
| 24 | |
| 25 | **DEMAND FOR JURY TRIAL** |
| 26 | |
| 27 | |
| 28 | |

Plaintiffs Relevant Group, LLC; 1541 Wilcox Hotel LLC; 6516 Tommie Hotel LLC; and 6421 Selma Wilcox Hotel LLC (collectively "Plaintiffs") allege as follows:

## SUMMARY OF THE ACTION

1.      This case concerns a criminal enterprise orchestrated by a Los Angeles property developer, his family business run by his son, and his lawyer, in order to punish competitors who refuse to give in to the enterprise's demands for "blood money" and other concessions.  Under the guise of voicing environmental concerns, the enterprise executes a playbook in which it files reflexive, sham litigation for the sole purpose of burdening and delaying developments until the competing developers have no choice but to cave to the enterprise's extortionate demands.  This extortion harms not only the competing developers who are victimized, but also the community at large, which sees new developments in blighted areas delayed for years as the enterprise holds them up for ransom.

2.      The enterprise ("Nourmand Enterprise") is led by patriarch Saeed Nourmand and his closely held company The Sunset Landmark Investment LLC ("Sunset Landmark"), which works in concert with the Nourmand family business, Nourmand & Associates, and Nourmand's attorney, Robert Silverstein, a CEQA lawyer who develops and initiates the sham environmental litigation.  Nourmand Enterprise's goal is clear: to increase Nourmand's own power and the economic reach of his businesses by any means necessary—legal or otherwise.

3.      Dead-set on expanding its reach and influence, Nourmand Enterprise has crossed the line from tough business practices to criminal conduct.  Nourmand Enterprise has decided that any developer wishing to do business in Hollywood must first seek its permission before it can go forward (referred to as "kissing the ring").  Nourmand Enterprise aspires to control not only who is allowed to develop in its domain, but also the aesthetic of those projects that go forward.  When developers stand up to Nourmand Enterprise and refuse to comply with its demands, Nourmand Enterprise switches tactics from pressure to outright extortion.

THIRD AMENDED COMPLAINT

4.     Specifically, Nourmand Enterprise targets competing developers and initiates (or threatens to initiate) reflexive sham environmental lawsuits for the sole purpose of delaying the development of competing properties.  Instilling fear of severe economic loss, Nourmand Enterprise extracts ransom money and aesthetic concessions from its victims in exchange for their agreement to drop these sham lawsuits.  As Nourmand Enterprise openly admits, its objective in opposing the competing developments is largely unrelated to concern over the purported impact any of the projects could have on the environment.  Instead, Nourmand Enterprise uses the litigation to extort millions of dollars in what has been described as "blood money" from competing developers.  To date, Nourmand Enterprise has extorted millions of dollars from business rivals, and attempted to extort more.

5.     Nourmand and Sunset Landmark know that they cannot execute their scheme alone.  Nourmand's threats to use CEQA to impose devastating delay costs on developers who do not "kiss the ring" would be hollow if he did not have a lawyer able and willing to follow through on the threats and initiate the sham lawsuits.  To that end, Nourmand works in close concert with the Silverstein Law Firm, APC and its principal Robert P. Silverstein (collectively "the Silverstein Firm").   The Silverstein Firm is a frequent player in the CEQA space, and well known for holding up developments, such as the much-anticipated Target store in Hollywood, which was delayed for almost a decade.  Silverstein partners with Nourmand to utilize environmental statutes to delay economically vitalizing developments—often for years—in order to secure rich monetary payouts and personal concessions.

6.     Even with a notorious CEQA lawyer by his side, Nourmand requires additional support to run his extortionate enterprise.  Enter Nourmand & Associates, a well-known and established real estate brokerage founded by Nourmand and owned and operated by Nourmand's son, Michael Nourmand ("Michael").  Although Nourmand has not had a formal role at Nourmand & Associates in years (and thus can feign independence from its operations), he uses a "@nourmand.com" email address housed

on Nourmand & Associates' server and wields immense control over Michael and the other Nourmand & Associates employees. At Nourmand's request, Michael and Nourmand & Associates lend material support to Nourmand Enterprise by, among other things, drafting key documents in support of Sunset Landmark's CEQA appeals, and attending public hearings to pressure officials to oppose certain development projects, all as part of a the coordinated scheme to impose costs on Plaintiffs as a way of stifling competition.

7. The combination of Nourmand, Nourmand & Associates, and the Silverstein Firm is a dangerous force. Although the ultimate goal of Nourmand Enterprise is to expand Nourmand's own power and reach, the enterprise relies on the Silverstein Firm's creativity and greenmail to provide Nourmand Enterprise with a seemingly-legal cover for its extortion. Indeed, the Silverstein Firm has been involved in each of the acts of extortion and threatened extortion described in this complaint. The Silverstein Firm acts as Nourmand Enterprise's legal muscle and allows the enterprise to function, initiating the sham CEQA actions that cause massive and often ruinous harm to Nourmand's competing developers.

8. The primary target of Nourmand Enterprise's scheme is Plaintiff Relevant Group, LLC ("Relevant"). Relevant develops hotels, restaurants, and entertainment venues in urban markets. Several years ago, Relevant set out to revitalize the Hollywood area with upscale hotels and restaurants. In 2017, Relevant opened its Dream Hollywood Hotel on the corner of Selma Avenue and Cahuenga Boulevard. It also received approval from city agencies and begun construction on two additional hotels—the Thompson and Tommie Hotels. Relevant works closely with local leaders and regulators to ensure that any development projects adhere to the City's environmental standards.

9. Although the construction of these hotels and other projects in the area would have provided an immediate boost to the local economy, Sunset Landmark, Nourmand & Associates, and the Silverstein Firm automatically and reflexively stood in

THIRD AMENDED COMPLAINT

opposition to both the Thompson and Tommie Hotels.  Of course, this opposition was not the result of a principled disagreement about the developments.  Rather, Nourmand Enterprise was simply executing its playbook and holding those developments hostage until it received the millions of dollars and aesthetic concessions it demanded from Relevant.  Nourmand Enterprise does not hide the fact that the majority of the changes extracted and corresponding "blood money" are unrelated to any recovery to which Sunset Landmark would be entitled under the CEQA statute.  And even though the lawsuits are filed separately, the Silverstein Firm is always at the helm leading the charge.

10.    In the past, Nourmand Enterprise was successful in its efforts to extort Relevant.  After months of pursuing its sham litigation, Sunset Landmark agreed to dismiss the claim only after extracting a $5.5 million payout from Relevant.  Tellingly, Sunset Landmark did not demand any significant action with respect to the "environmental issues" at the heart of the litigation, and instead demanded payment of the $5.5 million ransom fee and various other concessions to the development that personally benefitted members of Nourmand Enterprise, including by benefiting the Hollywood Athletic Club, a building out of which both Sunset Landmark and Nourmand & Associates operate.

11.    But Nourmand Enterprise's unlawful conduct did not stop there.  Only months after Relevant cut the check, Nourmand Enterprise turned its focus on a new project that Relevant was developing at 6421 Selma Avenue in Hollywood (the "Selma Hotel").  Using the same playbook, Sunset Landmark initiated another frivolous lawsuit to oppose the development, again citing trumped-up and baseless "environmental concerns."  Once again, it was enterprise-member the Silverstein Firm spearheading the litigation.

12.    In this instance, however, Nourmand Enterprise realized that it needed additional cover and pretextual justification for its sham lawsuit.  The Silverstein Firm, on behalf of Sunset Landmark, had already filed sham legal challenges to the Thompson

and Tommie Hotels, and Nourmand Enterprise was concerned that its pattern would be exposed, leading to a quick dismissal of their litigation. For that reason, Plaintiffs are informed and believe that the Silverstein Firm engaged the services of Casey Maddren, with whom the Silverstein Firm had a preexisting relationship, to file his own lawsuit concerning the Selma Hotel.

13. Plaintiffs are informed and believe that Nourmand Enterprise and Maddren agreed that Maddren would initiate a separate legal action and assert the same sham allegation that Relevant was engaging in "piecemealing" through its development of the Selma Hotel (the "Maddren Litigation"). Although Maddren purportedly initiated the Maddren Litigation pro se, Plaintiffs are informed and believe that Nourmand Enterprise, through the Silverstein Firm, directed the litigation.

14. Tellingly, even though Maddren is the President and CEO of United Neighborhoods for Los Angeles ("United Neighborhoods"), a self-described "community group" that has previously taken legal action to halt or delay property developments in the neighborhood, Maddren initiated the subject litigation solely in his personal capacity. On information and belief, Maddren did so because even though the claims are in his name, he was directed by Nourmand Enterprise. Had Maddren truly believed that Selma Hotel needed further environmental review and/or that it somehow poses an environmental or other threat to the neighborhood, there is no reason why he would not have caused his organization, United Neighborhoods, to initiate the legal action pursuant to its mandate, which relates directly to challenging land use and development.

15. Relevant was shocked when Sunset Landmark filed a legal challenge to the Selma Hotel. After all, the ink was barely dry on the $5.5 million check that Relevant had given Sunset Landmark. When a representative from Relevant attempted to reason with Saeed Nourmand in a meeting that took place at the Dream Hotel on or around March 29, 2018, Nourmand made it crystal clear that the only way for Relevant to move

THIRD AMENDED COMPLAINT

forward with its project was by paying the requested ransom.  Mr. Nourmand said: "**You know the drill.  It's going to take a check to make this go away.**"

16.     Unfortunately, Relevant is not the only developer that has been victimized by Nourmand Enterprise's extortionate conduct.  Members of Nourmand Enterprise approached another developer in the area (the "Schrader Owners") making the same threats to initiate baseless environmental litigation to grind their project to a halt.  Tellingly, the Silverstein Firm was involved in these threats as well.  The Schrader Owners told Nourmand Enterprise that while it was willing to discuss any legitimate environmental concerns, it would simply sit on the property or forego the development entirely before it would agree to discuss or negotiate what appeared to be Nourmand Enterprise's true, self-interested demands.  Rather than negotiate as to any legitimate changes (and because there were none), Sunset Landmark withdrew its CEQA challenge.  Of course, by doing so, Sunset Landmark revealed it had no genuine motive in seeing any modifications (environmental or otherwise) to the development.  Instead, when it learned that its shake-down of the Schrader Owners would not be possible, Nourmand Enterprise immediately abandoned the plan.

17.     The conduct of Nourmand Enterprise reveals a pattern of coercion, extortion, and other unlawful conduct.  Through its bullying tactics, the enterprise has engaged in a pattern of lucrative racketeering activity, at the expense of Plaintiffs and other developers in the Los Angeles area.  Not only does this scheme of extortion damage the targeted developers, but it also serves as a drain on the City of Los Angeles and the California judicial system, as the City is forced to expend significant resources investigating and defending these meritless claims, and the judicial system is forced to host these sham proceedings until the ransom is paid.  Perhaps most significantly, this extortionate scheme risks delaying or eliminating needed developments that would revitalize the economy in blighted areas in Los Angeles.

18.     Relevant has suffered significant damage as the proximate result of Nourmand Enterprise's conduct.  The amount of damages suffered by Relevant will be

proven at trial, but is believed to be in excess of $100 million.  Nourmand Enterprise's initiation of a lawsuit regarding the Selma Hotel has exposed Relevant to the risk of lost financing—which would jeopardize the entire development—as well as other damages.

## THE PARTIES

### Plaintiffs

19.     Plaintiff Relevant Group, LLC ("Relevant") is a Delaware limited liability company, which operates in Los Angeles, California.

20.     Plaintiff 1541 Wilcox Hotel LLC ("Wilcox") is a Delaware limited liability company, which operates in Los Angeles, California.

21.     Plaintiff 6516 Tommie Hotel LLC ("Tommie") is a Delaware limited liability company, which operates in Los Angeles, California.

22.     Plaintiff 6421 Selma Wilcox Hotel LLC ("Selma") is a California limited liability company, which operates in Los Angeles, California.

23.     Plaintiffs Wilcox, Tommie, and Selma are special purpose entities created for the purpose of developing certain properties in the Hollywood area of Los Angeles.  These special purpose entities are all managed by Relevant.  Wilcox was formed for the purpose of developing the Thompson Hotel.  Tommie was formed for the purpose of developing the Tommie Hotel.  Selma was formed for the purpose of developing the hotel located at 6421 Selma Ave.

### Defendants

24.     Defendant The Sunset Landmark Investment LLC ("Sunset Landmark") is a California limited liability company, which operates in Los Angeles, California.

25.     Defendant Stephan "Saeed" Nourmand is an individual who resides in and does business in Los Angeles California.  Saeed Nourmand is a manager and/or member of Sunset Landmark.

26.     Saeed Nourmand is in business with Defendant Nourmand & Associates, a California corporation that functions as a real estate broker.  Although Saeed Nourmand no longer has a formal role at Nourmand & Associates, Nourmand & Associates holds

Saeed Nourmand out as the "founder" of Nourmand & Associates and provides him with an email address from Nourmand & Associates' server with an "@nourmand.com" domain name.  Sunset Landmark and Nourmand & Associates share a registered address as well as employees and officers.  Nourmand & Associates provides material support to Nourmand and Sunset Landmark in connection with Sunset Landmark's filing of sham and extortionate CEQA challenges

27.     Nourmand Enterprise exists separate and apart from the unlawful and extortionate acts of racketeering described in this complaint.

28.     Plaintiffs are unaware of the true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiffs will seek leave of the Court to amend this pleading to set forth the true names and capacities of said Doe Defendants when the same are ascertained.  Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, or was acting in concert with, and with the permission, approval, and authorization of, the specifically named Defendants.

**Nonparty Enterprise Members**

29.     The Silverstein Law Firm, APC (the "Silverstein Firm") is a California corporation based in Pasadena, California, which functions as a law firm.  Robert P. Silverstein is the Chief Executive Officer of the Silverstein Firm.  The Silverstein Firm states on its website that it focuses on eminent domain, California Environmental Quality Act (CEQA), planning and zoning, government law, real property litigation, California Public Records Act litigation, Brown Act litigation, and general civil litigation.

30.     Casey R. Maddren is an individual who resides and does business in Los Angeles.

THIRD AMENDED COMPLAINT

## JURISDICTION AND VENUE

31.     This Court has jurisdiction over the subject matter of Plaintiffs' Complaint under 28 U.S.C. § 1331 and § 1337, because it arises under the Racketeering Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. § 1964(a).

32.     The conduct alleged in this Complaint occurred in interstate commerce, and has substantially affected and will continue to substantially and directly affect interstate commerce.

33.     The Court has personal jurisdiction over the Defendants and venue is proper in the Central District of California because: (1) the Defendants reside and/or conduct business in the State of California and at least one of the Defendants resides and/or conducts business in this District; and (2) substantial parts of the events or omissions giving rise to the claims alleged herein occurred in this District.

## THE ENTERPRISE

### The Enterprise's Playbook: Shake Down Developers for Millions of Dollars by Threatening and Initiating Frivolous Environmental Litigation

34.     For years, Saeed Nourmand, through his and his family's closely-held companies Sunset Landmark and Nourmand & Associates, has organized and orchestrated a criminal enterprise ("Nourmand Enterprise") to engage in a pattern of extortion.  Working in close association with his lawyer at the Silverstein Firm, Nourmand and his companies use the threat of frivolous environmental litigation against competing developers in the Los Angeles area to extort millions of dollars from those developers.  This scheme has proven lucrative, as the enterprise has obtained millions of dollars by holding development projects hostage.

35.     While expressing opposition to a project—either through speaking publicly on the subject or initiating litigation—is lawful, Nourmand Enterprise's pattern of reflexively initiating and pursuing sham litigation regardless of the project's size, merit, or consequence to the residents of Los Angeles is not.  Nourmand Enterprise pursues these frivolous challenges by initiating litigation under the California Environmental

Quality Act ("CEQA"). Nourmand Enterprise's goal in these actions is not to reduce any adverse environmental impact of these developments, but simply to pad its members' own wallets and to secure personal concessions that benefit only its members and their own developments. In doing so, the enterprise exploits CEQA for monetary profit and gain. Despite competing developers' expenditure of significant resources to obtain approval on their developments, Defendants have engaged in a pattern of using the threat of subsequent litigation in order to extract what is effectively a ransom payment from their competitors.

36.     CEQA was enacted in 1970 in an effort to ensure that all physical developments were reviewed for significant environmental impact, and to prevent or minimize damage to the environment through development of project alternatives, mitigation measures, and mitigation monitoring. CEQA requires that local agencies review and ultimately approve development proposals, taking into consideration the goal of preventing or mitigating environmental impact. In determining whether to approve a project, the City of Los Angeles (the "City") and its agencies are required by law to consider various factors and guidelines. To this end, the City has adopted California's state-wide CEQA guidelines as its own. The City has also issued guidance to assist both developers and City staff in assessing the environmental impact of potential developments. Under both state and local law, no development may be approved that would cause significant environmental effects if there are feasible alternatives or mitigation measures that would lessen those effects. For that reason, any project approved by the City is necessarily found to have no significant environmental effect.

37.     Although CEQA's objective is laudable, the members of Nourmand Enterprise misuse the legislation for their own monetary (and anti-competitive) gain. For each target it identifies, Nourmand Enterprise delays, opposes and, if necessary, eliminates the project by painting it as environmentally harmful. After first objecting to the projected development, Defendants then initiate meritless litigation challenging the

City's determination that the project may proceed.  As explained in further detail below, Nourmand has brazenly admitted that the objective of his enterprise is not to address environmental concerns, but to extract money and other competitive advantages from their victims.

38.     This sham litigation results in a huge expenditure of resources not just for competing owners/developers, who are required to respond to hundreds or thousands of pages of drummed up environmental comments and prepare environmental assessments that would not otherwise be required, but also for the residents and taxpayers of Los Angeles, and the judicial system that is forced to expend time and money defending these proceedings.

39.     These actions delay development for years, causing owners/developers to lose financial backing, to incur costs associated with holding undeveloped land for an extended time, and to incur escalating construction costs.  This environmental and zoning opposition bottlenecks the development cycle, resulting in limited development, less competition, less commerce, lower transient occupant tax ("TOT") revenue, and lost rent revenue for the City.

40.     Sham environmental litigation obstructs and in some instances destroys development.  Regardless of the merits (or lack thereof), the mere filing of the lawsuit delays funding, diverts resources, and pushes back the start date for construction, potentially by years.  By filing these lawsuits, Nourmand Enterprise has delayed, and in some instances completely obstructed, development in areas that are in dire need of improvement.  The enterprise then exploits this economic pressure by demanding large sums of money in order to drop their sham claims.

41.     The abusive and extortionate nature of CEQA litigation is well-documented.  For example, a 2018 article published in the Hastings Environmental Law Journal finds that there is "widespread abuse of CEQA lawsuits for nonenvironmental purposes" and that CEQA litigation is often initiated not by citizens truly concerned

about environmental impact, but by "business competitors" or "'bounty hunter' lawyers seeking quick cash settlements."

42.    A detailed 140-page report on CEQA's widespread abuse was published in 2015 by land use and environmental lawyers.[1]  The study reviewed every CEQA lawsuit filed over a three year period and concluded that "CEQA litigation abuse is indeed widespread," and that abusers of CEQA use the statute "to pursue non-environmental objectives," preventing needed development and raising costs on developers and in many cases tax-payers.  The report also noted that individuals who initiate CEQA litigation "often conflate their individual 'environment' (i.e., the view outside their bedroom window) with environmental policies and mandates that require acceptance of neighborhood-scale changes . . . ."

### The Members of the Enterprise and Their Respective Roles in the Enterprise

43.    The above-described playbook is executed by the members of Nourmand Enterprise, acting in concert on behalf of the enterprise.  Nourmand Enterprise is not an incorporated or legal entity.  Rather, it is an informal group that associates in order to effect the common goals of the enterprise: using the threat of frivolous environmental litigation against competing developers in the Los Angeles area to extort millions of dollars and unrelated personal concessions from those developers.

44.    As described further below, these members have associated with each other as Nourmand Enterprise for years.  Each member has a specific role and manner in which it or he contributes to, and works on behalf of, the enterprise.

*Nourmand and Sunset Landmark*

45.    Defendants Nourmand and Sunset Landmark conduct the business of, and are associated with, Nourmand Enterprise.

---

[1] Jennifer L. Hernandez, et al., Holland & Knight LLP, *In the Name of Environment: How Litigation Abuse under the California Environmental Quality Act Undermines California's Environmental, Social, Equity and Economic Priorities – and Proposed Reforms to Protect the Environment from CEQA Litigation Abuse*, (Jul. 15, 2015), *available at* https://issuu.com/hollandknight/docs/ceqa_litigation_abuseissuu.

THIRD AMENDED COMPLAINT

46.    While Defendants Nourmand and Sunset Landmark are members of Nourmand Enterprise, Nourmand Enterprise has an existence separate and apart from Nourmand and Sunset Landmark as well as the other individual members of the enterprise.

47.    Sunset Landmark conducts the business of Nourmand Enterprise through its role as the entity that formally initiates the sham CEQA litigation that is used to extort competing developers into making payments in order to avoid the devastating costs associated with the delay of projects.  Sunset Landmark is also the entity that receives the immediate financial benefit of the extortion payments made by victims.

48.    Nourmand conducts the business of the enterprise through his role as the owner, manager, and principal of Sunset Landmark.  Nourmand is also the ultimate decision-maker as to which competing developers will be targeted.   Nourmand also makes the overt threats telling developers that their projects will continue to be subject to sham litigation until they accede to Nourmand Enterprise's demands, and he leads the "negotiations" with these developers that ultimately lead to multi-million dollar ransom payments.

*Nourmand & Associates*

49.    Defendant Nourmand & Associates conducts the business of, and is associated with, Nourmand Enterprise.

50.    While Defendant Nourmand & Associates is a member of the Nourmand Enterprise, Nourmand & Associates has an existence separate and apart from Nourmand and Sunset Landmark as well as the other individual members of the enterprise.

51.    Nourmand & Associates is a real estate brokerage founded by Nourmand. It is operated by his son Michael Nourmand, and conducts the business of Nourmand Enterprise.  Nourmand & Associates operates out of Sunset Landmark's property, the Hollywood Athletic Club.   Plaintiffs are informed and believe, and on that basis allege, that Nourmand and Associates participates in the decision as to which developers the enterprise will target with sham CEQA lawsuits, and is involved in the "negotiations" of

those claims in which other members of the enterprise make extortionate threats.  In facilitating the business of the Nourmand Enterprise, Nourmand & Associates' employees used "@nourmand.com" email addresses and stated Nourmand & Associates in their email signatures.  Nourmand & Associates also granted Saeed Nourmand the ability to utilize an "@nourmand.com" email address.

52.     Nourmand & Associates played a key role in the initiation of sham CEQA litigation, including by strategically attending public hearings at Nourmand's request in order to support Sunset Landmark's objections, drafting written statements articulating objections to Relevant's projects and otherwise discussing Sunset's strategy in objecting to the projects; and offering its own employees to perform support and administrative functions for Sunset Landmark and Nourmand.

53.     Nourmand & Associates' employees materially assisted Sunset Landmark and Nourmand in their efforts to delay the development of competing properties through the duration of the scheme.  Specifically, Nourmand & Associates' employees, including Chief Financial Officer Mohamad Iravani, participated in the drafting of Nourmand's letters objecting to the projects, reviewing and revising Nourmand's drafts before they were circulated to the City of Los Angeles.  In addition, several meetings between Nourmand and competing developers, including the Schrader Owners and Relevant, were held in Nourmand & Associates' office space, and were organized and coordinated by Nourmand & Associates' employees.  Nourmand requested that several Nourmand & Associates, including to Michael Nourmand, attend a public hearing at Los Angeles City Hall on the development of the Thompson Hotel.  Michael Nourmand, along with other Nourmand & Associates employees, signed the petition opposing the Thompson Hotel at the public hearing.  Nourmand shared Relevant's entitlement plans with Mohamad Iravani and Michael Nourmand.  Nourmand insisted that Michael Nourmand participate in the meeting where Sunset Landmark and Nourmand extorted the $5.5 million ransom payment.

THIRD AMENDED COMPLAINT

54.     Nourmand & Associates' employees also actively participated in the legal strategy of Nourmand and Sunset's CEQA litigation and extortionate scheme. Nourmand & Associates' Associate Branch Manager and Training Director advised Nourmand and his consultants and attorneys on legal strategies to forestall the development of the competing properties.  Nourmand & Associates' employees also communicated with Nourmand and Sunset Landmark's attorney, Jayesh Patel, about the extortionate scheme, and actively communicated with the Silverstein Firm, a non-party member of the Nourmand Enterprise, about the CEQA litigation.

55.     Third parties routinely communicated with Nourmand & Associates' employees about the extortionate scheme.  For example, Relevant's consultants shared updates of hotel plans in response to Nourmand and Sunset Landmark's demands to Nourmand & Associates' employees, including Michael Nourmand and Mohamad Iravani.  Additionally, Mohamad Iravani spearheaded the enforcement of the $5.5 million extortionate payout against Relevant, having been "instructed" by Defendants Sunset Landmark and Nourmand "to go by the note terms" in enforcing the payout. Third parties, including public accountants, communicated with Iravani about Sunset Landmark's tax obligations arising from the extortionate scheme.  Third parties also conferred with Nourmand and Michael Nourmand to recruit other businesses to oppose the development of Relevant's competing properties.

56.     In this and similar ways, Nourmand & Associates' employees functioned as Nourmand's own recruiting pool through which Nourmand tasked Nourmand & Associates' employees with critical support functions to extort competing developers into making payments avoid the devastating costs associated with the delay of projects. Nourmand & Associates' employees were also actively involved in facilitating Nourmand's overt threats telling Relevant that its projects will continue to be subject to sham litigation until it accedes to Nourmand Enterprise's demands.

THIRD AMENDED COMPLAINT

*The Silverstein Firm*

57.     A key member of the enterprise is the Silverstein Firm, led by attorney Robert P. Silverstein.  The Silverstein Firm has represented Sunset Landmark in most if not all of Sunset Landmark's sham CEQA lawsuits.  Through its role as Sunset Landmark's counsel, the Silverstein Firm conducts the business of Nourmand Enterprise and associates with the other members of Nourmand Enterprise to achieve the enterprise's goals.  The Silverstein Firm is essential to the functioning of Nourmand Enterprise and the enterprise could not achieve its goals without it.

58.     The Silverstein Firm conducts the business of Nourmand Enterprise by formulating the legal theories associated with the sham CEQA lawsuits, filing administrative objections and legal complaints, and exploiting CEQA to cause costly delays to the competing developers.  The Silverstein Firm knows that the CEQA actions it initiates on behalf of Nourmand Enterprise are being promulgated for the sole purpose of extracting large monetary payouts and personal aesthetic concessions to Nourmand and Sunset Landmark.  The Silverstein Firm knows that these payouts and concessions have nothing to do with CEQA or the environment, and are far beyond anything that Sunset Landmark could recover in a CEQA lawsuit.

59.     The Silverstein Firm is no stranger to the use—and abuse—of CEQA. Silverstein has been described in local publications as "a well-known thorn in the side of development interests in Hollywood" who routinely files legal challenges to local developments, "kill[ing] some and add[ing] to the cost of all."  Others have labeled him a "bounty hunter" who "use[s] the threat of CEQA-based lawsuits to generate cash from developers for things that have nothing to do with the environment."  The Silverstein Firm and the La Mirada Avenue Neighborhood Association ("La Mirada Association")—an organization with which the Silverstein Firm has a close affiliation— have caused the delay of countless projects, most notably a Target on Sunset Boulevard and Western Avenue, which the Silverstein Firm first sued to stop in 2012 and which has only recently begun construction.

60.     Silverstein made headlines in 2013 when a settlement agreement in an environmental lawsuit was leaked, showing a substantial payment of "attorneys' fees" made directly to the Silverstein Firm, along with a six-figure payment to La Mirada Association in the form of a "monitoring fees" that contained *no* requirement the funds be actually used for monitoring or environmental purposes.

61.     The Silverstein Firm takes many claims on contingency, thus securing a direct benefit in the proceeds.

62.     Although the Silverstein Firm is retained to represent Sunset Landmark, the Silverstein Firm independently conducts the business of Nourmand Enterprise and is separate and distinct from Sunset Landmark as a practical and legal matter.  The Silverstein Firm is required by law to conform to ethical rules and is not simply an unquestioning agent of Sunset Landmark or Nourmand.  The rules of professional conduct require that the Silverstein Firm be a distinct entity from its clients and that it maintain its professional independence.  In the context of the attorney-client relationship between Sunset Landmark and the Silverstein Firm, the Silverstein Firm retains control over important functions, such as tactical and strategic litigation decisions.

*Casey Maddren*

63.     In an attempt to avoid detection of the sham nature of their most recent CEQA lawsuit and to bolster their claims, the Silverstein Firm and the other Nourmand Enterprise members have conspired with Casey R. Maddren.  As explained in more detail below, Maddren initiated a CEQA lawsuit against Plaintiffs' most recent development, raising frivolous and meritless objections to the project.  Plaintiffs are informed and believe that although Maddren has represented to the court in that case that he is representing himself, he has received material support from Nourmand Enterprise, including the Silverstein Firm.

64.     Maddren has conducted the business of Nourmand Enterprise by initiating his frivolous lawsuit, which assists and supports the goals of the enterprise.  Nourmand Enterprise believes that if "third parties" initiate CEQA lawsuit alleging similar or

THIRD AMENDED COMPLAINT

additional violations of the statute, it will lend credence to Sunset Landmark's own filings and make them appear to be meritorious and not shams. Maddren is also not subject to certain legal defenses applicable to Sunset Landmark, making Maddren a useful pawn to pursue certain meritless legal theories concocted by the Silverstein Firm.

## DEFENDANTS' UNLAWFUL CONDUCT

65.     Defendants Nourmand, Sunset Landmark, and Nourmand & Associates have conducted and participated in the conduct of Nourmand Enterprise through a pattern of racketeering activity, namely a series of extortionate sham environmental lawsuits.

### Thompson Project and Litigation

66.     On October 3, 2014, 1541 Wilcox Hotel LLC ("Wilcox") filed an application with the City relating to property owned by Wilcox located at 1523-1541 North Wilcox Avenue, in the Hollywood area of Los Angeles. The proposed project was the creation of a hotel to be called the Thompson Hotel. The proposed project involved the demolition of the existing structures on the project site and the construction of a hotel. The application sought a vesting zone change (to permit residential and commercial use); a height district change to increase the floor area ratio ("FAR") of the property; a zoning administrator's adjustment; and a site plan review.

67.     In March 2015, the City published the first Initial Study and mitigated negative declaration ("MND") regarding the Thompson Hotel project. An Initial Study is a preliminary analysis prepared by and for the City as the lead agency to determine whether an Environmental Impact Report ("EIR") must be prepared, or whether a negative declaration or an MND is sufficient. In its first Initial Study and MND, the City concluded that the Thompson Hotel would not have a significant environmental impact, so an EIR was not required.

68.     Between March and April 2015, Wilcox made various revisions to the Thompson Hotel development plan to address certain comments from the City and residents. After reviewing and analyzing the revised project, the City concluded that its

proposed mitigation measures would reduce any potentially significant adverse environmental effects to a level of insignificance. Specifically, the City considered approximately 90 different environmental factors, and concluded that the vast majority of those factors either would not be impacted by the proposed project, or that any impact would be less than significant. For those factors that the City concluded had the potential to be significantly impacted by the project, the City proposed various changes to the project that would mitigate the potential environmental impacts.

69. Wilcox adopted all of the City's requested mitigation measures in its project, thus eliminating any potential significant environmental impacts identified by the City.

70. On or around September 10, 2015, the Los Angeles City Planning Commission ("Commission") convened a meeting. At that meeting, the Commission took various actions with respect to the Thompson Hotel project, including approving a vested zone and height district change, approving a site plan review, and adopting the mitigated negative declaration described above. The Commission also recommended that the City Council approve these changes and adopt the mitigated negative declaration. In early February 2016, the City Council followed the Commission's recommendation and approved the project, including the zoning and height district changes sought by Wilcox. In doing so, the City Council approved the mitigated negative declaration, finding that the project did not pose a risk of significant environmental impact.

71. Despite the rigorous process by which the City and Commission reviewed and approved Wilcox's proposed development of the Thompson Hotel, Defendants nonetheless saw an opportunity to delay its competitor and extort millions of dollars. On March 3, 2016, Sunset Landmark initiated a lawsuit against the City of Los Angeles, naming Wilcox as a real party in interest. The lawsuit alleged that notwithstanding the City's detailed findings, the Thompson Hotel would cause "significant, unmitigable impacts to the environment." The lawsuit also alleged that the City should have

required a full EIR prior to approval.  Sunset Landmark was represented by Robert P. Silverstein of the Silverstein Firm.

72.    In litigating the CEQA suit, the Silverstein Firm, on behalf of Sunset Landmark, primarily pursued the theory that Wilcox's development plan for the Thompson Hotel exceeded certain "zoning density" requirements allegedly imposed by the 1988 Hollywood Community Plan Revision.  However, this argument was objectively meritless.  The Los Angeles Municipal Code expressly permitted heighted density for projects like the Thompson Hotel that are designated "Regional Commercial."  The Silverstein Firm and Sunset Landmark also advanced the frivolous theory that earlier zoning decisions were "permanent" legislation, and were "not something the City was free to cancel at will."  Of course, any decision by a government body such as the City Council may be subsequently amended or revoked by that same body, so this argument on its face lacked merit.

73.    In the Thompson Hotel litigation, Sunset Landmark further argued that there was a "fair argument" that the Wilcox development plan may have certain environmental impacts, including that the project "may" have construction or operational noise impacts, traffic impacts, and "land use" impacts.  In doing so, Sunset Landmark no doubt sought to exploit CEQA's low threshold standard of review to invalidate this well-studied project.  Sunset Landmark and the Silverstein Firm knew the challenge was frivolous because the administrative record contained no "substantial evidence" in the form of expert analysis (or any other evidence) to support its claims, much less sufficient evidence to contradict the City's detailed findings.

74.    The reason why Sunset Landmark and the Silverstein Firm advanced these meritless arguments is clear: to delay a competing development and unlawfully extort millions of dollars from Wilcox and Relevant to which Defendants were not entitled.  Defendants knew that Wilcox was economically dependent on the development of the Thompson Hotel, and it took advantage of that fact.  As described below, Plaintiffs

1    succumbed to the threats, and ultimately paid Defendants millions of dollars in blood

2    money.

3        75.    Nourmand & Associates participated in the creation of the meritless

4    objections and legal arguments that Sunset Landmark and the Silverstein Firm

5    advanced.

6        76.    After filing this meritless and sham claim against Wilcox, Nourmand

7    Enterprise, through Nourmand, Sunset Landmark, and Nourmand & Associates, then set

8    out to extract a payment from Wilcox and Relevant.  Although Wilcox was the owner of

9    the property in question and the real party in interest in the CEQA litigation, on

10   information and belief, Nourmand Enterprise believed and understood that any

11   settlement payment would be funded by Relevant, the entity that managed Wilcox.  As

12   explained in more detail below, Nourmand and Sunset Landmark informed

13   representatives of Wilcox and Relevant that even if it agreed to all of its non-monetary

14   demands—which were largely unrelated to the CEQA litigation—it would continue to

15   pursue and litigate these lawsuits unless Wilcox and Relevant agreed to pay Sunset

16   Landmark a significant amount of money.

17       77.    In subsequent communications between the parties related to the CEQA

18   litigation, Nourmand and Sunset Landmark made it clear that the claimed environmental

19   concerns with the Thompson project were pretextual.  In or around April 2017, Sunset

20   Landmark sent to Plaintiff Relevant a list of "demands" that would need to be met

21   before Sunset Landmark would consider dropping the CEQA litigation.

22       78.    Tellingly, the vast majority if not all of these demands had nothing to do

23   with any environmental concerns that were raised in Sunset Landmark's CEQA

24   complaint.  The demands included aesthetic changes to the Thompson Hotel

25   development that would only benefit the members of Nourmand Enterprise personally,

26   such as flipping a light well to face the opposite direction so that the bulk of the building

27   would face away from Sunset Landmark's property, and planting hedges between the

28   Thompson property and the Sunset Landmark property.  These demands also included

personal concessions to Sunset Landmark, including the granting of a covenant running with the land in favor of Sunset Landmark and an agreement that Relevant would not oppose any development of Sunset Landmark in the future.

79.    These personal demands—especially the agreement of non-opposition— clearly belied any notion that Sunset Landmark or Nourmand Enterprise subjectively cared about the environmental concerns raised in their CEQA litigation.  Indeed, a covenant by Relevant *not* to challenge Sunset Landmark's future developments would arguably undercut the goals of CEQA by insulating Sunset Landmark from bona fide environmental challenges to its developments.

80.    Most notably, the demands communicated from Sunset Landmark to Relevant included a demand for millions of dollars.  Sunset Landmark *admitted* that this money was unrelated to the amount of legal fees that it had incurred in filing its CEQA appeals and litigating the CEQA lawsuit to that point.  Indeed, Sunset Landmark represented that compensation for attorneys' fees was "not adequate," and demanded additional money on top of the personal concessions and aesthetic changes.

81.    After receiving these demands, a representative from Relevant contacted a representative of Sunset Landmark in order to discuss them.  The representative of Relevant asked the representative from Sunset Landmark how much of the demanded money was for attorneys' fees and how much was "blood money."  In responding, the representative of Sunset Landmark did not disagree that this was "blood money" and acknowledged that the legal fees were only a fraction of what was being demanded.

82.    On other occasions, Nourmand Enterprise and its members made it clear that its objective was primarily, if not exclusively, about extracting a monetary payout. After Sunset Landmark initiated the CEQA appeal, representatives from Relevant met with representatives from Sunset Landmark at the offices of Nourmand & Associates, a member of the enterprise.  This meeting was attended by, among others, Relevant's attorney Guy Maisnik, Sunset Landmark's attorney Jayesh Patel, and Nourmand.  At this meeting, a representative from Relevant commented that it appeared that Sunset

Landmark only cared about money.  Nourmand acted offended by this statement, saying that he had not brought the lawsuit in order to recover money.  In response, Maisnik asked whether Sunset Landmark would agree to take the money (other than attorneys' fees) off the negotiating table.  Tellingly, Nourmand refused.

83.     Although Relevant believed that the CEQA litigation was frivolous and a sham, it nonetheless made the decision to try to negotiate a resolution with Nourmand and Sunset Landmark.  As the members of Nourmand Enterprise were well aware, Relevant had sourced certain immigrant investors under the EB-5 program, who needed the Thompson Project to go forward with development in order to secure their Visas.

84.     In or around May 2017, Relevant responded to Sunset Landmark's list of demands.  Relevant agreed to address certain concerns that Sunset Landmark had raised in its CEQA litigation, including reducing the floor area ratio ("FAR") of the building and adopting certain construction and hauling noise mitigation measures.  Relevant also agreed to pay Sunset Landmark $1 million, *twice* the amount that Sunset Landmark had indicated it had incurred in attorneys' fees.  Yet a representative from Sunset Landmark responded and said that the parties were still "far apart."

85.     Following Sunset Landmark's rejection of Relevant's offer, in or around May 2017, Relevant made additional concessions to its development of the Thompson Hotel in an effort to avoid the serious economic consequences that the Thompson Hotel litigation imposed.  Specifically, Relevant agreed to several of Sunset Landmark's demands for aesthetic changes to the building, including lowering the planned height of the building and including green hedges.  Relevant also reaffirmed its offer to make a monetary payment to Sunset Landmark.

86.     Sunset Landmark, through attorney Patel, responded to this offer in or around June 2017.  Sunset Landmark's proposed "counter-offer" was not a counter-offer at all.  Rather than address Relevant's proposal, Patel on behalf of Sunset Landmark demanded *millions of dollars **more*** than Nourmand Enterprise had previously demanded.  Patel also indicated that his client was still demanding that Relevant both

further lower the height of the building and change the orientation of the light well on the development to appease Sunset Landmark's desire to have the bulk of the building face away from its property. Of course, neither the demand for a payout nor the aesthetic changes were in any way related to the CEQA litigation.

87. In order to escape the untenable legal and financial situation that Sunset Landmark, Nourmand, Nourmand & Associates, the Silverstein Firm, and the other members of Nourmand Enterprise had created, on our around January 8, 2018, Wilcox and Relevant succumbed to Defendants' threats and agreed to pay Sunset Landmark the millions of dollars demanded as well as make the requested design changes.

88. Specifically, Wilcox agreed to pay Sunset Landmark $5.5 million as a ransom to get Sunset Landmark to drop its claims. As part of this agreement, and in addition to the $5.5 million payout, Wilcox and Relevant agreed to make the requested design changes, including rotating the direction of the light well, reducing the height of the hotel, and entering into a covenant running in favor of Sunset Landmark. Sunset Landmark also demanded, and Wilcox agreed, to assist and support Sunset Landmark on any future development proposal for the Sunset Property. Wilcox and Relevant also agreed to enter into a tie-back agreement related to the construction of the building that would be completely paid for by Wilcox and Relevant.

89. On information and belief, the Silverstein Firm obtained personal economic benefit from the $5.5 million payment, through the form of a contingency agreement or related arrangement between the Silverstein Firm, Sunset Landmark, and Nourmand.

**Tommie Project and Litigation**

90. On January 28, 2016, 6516 Tommie Hotel LLC ("Tommie") filed an application with the City relating to property owned by Tommie located at 6516-6526 West Selma Avenue, in the Hollywood area of Los Angeles. The proposed project involved the construction of a new mixed use hotel consisting of 212 guest rooms and ground and rooftop restaurants. The application sought a vesting zone change, a height

district change, a site plan review, and a conditional use permit for the on-site sale and dispensing of alcohol.

91.    On December 20, 2016, the City issued an initial study and a proposed MND for the Tommie project.  After analyzing the potential environmental impacts of the project, the City proposed that an MND be adopted because the mitigation measures it proposed would reduce any potential significant adverse environmental effects to a level of insignificance.  Specifically, the City considered approximately 90 different environmental factors, and concluded that the vast majority of those factors either would not be impacted by the proposed project, or that any impact would be less than significant.  For those factors that the City concluded had the potential to be significantly impacted by the proposed project, the City proposed various changes to the project that would mitigate the potential environmental impacts.

92.    On or around January 26, 2017, the Commission held a meeting at which it considered the Tommie project.  The Commission found that, with the imposition of certain mitigation measures, there was no substantial evidence that the project would have a significant effect on the environment, and that those mitigation measures had been made enforceable conditions of the project.  The Commission also approved the Tommie project site plan and conditional use permit for alcohol sale, and recommended that that the City Council adopt the zone and height district changes requested in the application.  On or around May 10, 2017, the City Council followed the recommendation of the Commission and approved the Tommie project MND and the requested zone and height district changes.

93.    Despite the rigorous process by which the City and Commission reviewed Tommie's proposed development and determined that, as modified, it would not pose the risk of a significant environmental impact, members of Nourmand Enterprise nonetheless seized the opportunity to extort millions of dollars in ransom.

94.    On June 9, 2017, Sunset Landmark initiated a lawsuit against the City of Los Angeles and the City Community Redevelopment Agency ("CRA/LA"), naming

1    Tommie as a real party in interest.  Sunset Landmark was again represented by the

2    Silverstein Firm.

3        95.    In the lawsuit pertaining to the Tommie Hotel, the Silverstein Firm, on

4    behalf of Sunset Landmark, falsely alleged that the Tommie Hotel development would

5    have a significant negative impact on the environment.  Like the litigation surrounding

6    the Thompson Hotel developments, Sunset Landmark's Tommie Hotel lawsuit was a

7    sham, and was not filed to address environmental concerns.  Nourmand Enterprise's

8    sole desire was to harm a competing project and extort money from Tommie and its

9    owners to which it was not entitled.  The members of Nourmand Enterprise knew that

10   Tommie was economically dependent on the development of the property, and it

11   exploited that fact.  Sunset Landmark and the Silverstein Firm lacked a good faith basis

12   for initiating the lawsuit against the City of Los Angeles concerning the Tommie

13   property.  This is confirmed by the fact that, after filing the lawsuit, Sunset used the

14   increased leverage created by the lawsuit to put further pressure on Plaintiffs to make

15   the monetary and aesthetic concessions to Nourmand Enterprise (unrelated to

16   environmental concerns) that had been previously demanded.

17       96.    Nourmand & Associates participated in the creation of the meritless

18   objections and legal arguments that Sunset Landmark and the Silverstein Firm advanced

19   both in the administrative entitlement process and in the CEQA action.

20       97.    Sunset Landmark and the Silverstein Firm ultimately dismissed the

21   Tommie litigation at the same time it dismissed the Thompson Hotel litigation, based on

22   the payment to Sunset Landmark of the $5.5 million ransom.  Thus, Sunset Landmark

23   was able to extract payment from Plaintiffs based on the multiple sham challenges to the

24   projects Relevant was developing.

25       98.    Not surprisingly, the terms of this payment were divorced from the earlier-

26   touted purported environmental issues with the Tommie Hotel.  The fact that Sunset

27   Landmark dismissed its CEQA litigation regarding the Tommie Hotel without any

28   significant alterations made to the proposed property development demonstrates the

THIRD AMENDED COMPLAINT

sham nature of the litigation. The members of Nourmand Enterprise's sole objective in filing the lawsuit was to extort money. As soon as Plaintiffs agreed to pay Sunset Landmark the millions of dollars demanded, Sunset Landmark immediately dismissed its "environmental" lawsuits.

### **Attempted Extortion of Schrader Hotel Owners**

99.     Nourmand Enterprise has executed its playbook against other developers as well. Indeed, Plaintiffs are informed and believe that Sunset Landmark and Nourmand have approached other developers and have threatened to file frivolous objections and lawsuits related to their properties unless those developers agreed to pay the monies and/or make the aesthetic concessions demanded by members of Nourmand Enterprise to appease the personal tastes of Nourmand.

100.     For example, Plaintiffs are informed and believe that Sunset Landmark initiated a frivolous and sham CEQA administrative appeal against a competing property on Schrader Boulevard (the "Schrader Owners") in Hollywood that was in the process of seeking approval from the City for development. Sunset Landmark appealed the Schrader Owner's application to the city on the basis of manufactured and fabricated environmental concerns, including concerns related to FAR density. Plaintiffs are informed and believe that the Silverstein Firm was involved in developing the frivolous and sham legal theory associated with this administrative appeal. Sunset Landmark initiated this sham appeal despite having no good faith belief that there were environmental concerns in the Schrader Owners' proposed development that warranted a CEQA litigation.

101.     After initiating this appeal, Sunset Landmark met with the Schrader Owners in order to provide the Schrader Owners with its demands. Unsurprisingly, these demands were unrelated to the "environmental" concerns raised in the CEQA appeal.

102.     However, unlike the situation with the Thompson and Tommie properties, Nourmand Enterprise's playbook did not work on the Schrader Owners. Plaintiffs are

THIRD AMENDED COMPLAINT

informed and believe that the Schrader Owners informed Sunset Landmark that unlike other owners/developers, the Schrader Owners did not have any debt on the property, and therefore could afford to simply keep the property undeveloped.  Moreover, while they would be willing to negotiate any legitimate environmental concerns, the Schrader Owners made clear that they would not negotiate any requests from Sunset Landmark unrelated to CEQA.  Instead, the Schrader owners indicated that they would either leave the property undeveloped or just incur the cost and delay associated with the environmental litigation.

103.   Because Nourmand Enterprise realized that it lacked leverage to extort the Schrader Owners, Sunset Landmark dismissed its administrative appeal and Nourmand Enterprise moved on to its next victim.

**Selma Project and Litigation**

104.   Following Plaintiffs' payment of $5.5 million to Sunset Landmark, Plaintiffs believed that they would no longer be targets of Nourmand Enterprise's threats and extortion.  On or around March 19, 2018, Richard Heyman, a member of Selma LLC, sent a text message to Nourmand in which he stated that he was glad the issue was resolved and that "you have now been paid in full."  What Heyman did not know at the time he sent this message, was that far from the issues between them being resolved, Nourmand Enterprise was planning to extort Plaintiffs once again.

105.   This time, the target of Nourmand Enterprise's extortion was Plaintiffs' Selma Hotel development.  Two years earlier, on July 22, 2016, prior to Sunset Landmark's initiation of the litigation against the City involving Tommie, Plaintiff 6421 Selma Wilcox Hotel LLC ("Selma LLC") filed an application to develop a property owned by Selma LLC located at 6421 W. Selma Avenue in the Hollywood area of Los Angeles.  The proposed project was a new 8-story mixed-use building with 114 guest rooms.  Selma LLC's application sought, among other things, a vesting zone change, a height district change, a site plan review, and a conditional use permit for the on-site sale and dispensing of alcohol.

106.   On July 12, 2018, the Commission held a public hearing concerning the Selma LLC property.  Approximately one month later, on August 17, 2018, the Commission issued a decision letter in which it recommended an MND, finding that, with mitigation efforts enacted, there was no substantial evidence that the Selma LLC project would have a significant effect on the environment.  In this same letter, the Commission also issued the conditional use permit for the on-site sale and dispensing of alcohol, and recommended that the City grant the requested vesting zone change and height district change.

107.   On November 17, 2018, the Planning and Land Use Management Committee of the Los Angeles City Council convened an additional hearing on the Selma LLC property.  Several months later, on March 5, 2019, the City Council adopted the MND and granted the requested zone and district changes for the Selma LLC property.

108.   Again, Nourmand Enterprise seized on the opportunity to execute its playbook and attempt to extract millions of dollars from Selma LLC by asserting sham legal objections to the project and ultimately filing a sham CEQA lawsuit in April 2019.

109.   Nourmand & Associates participated in the creation of the meritless objections and legal arguments that Sunset Landmark and the Silverstein Firm advanced both in the administrative entitlement process and in the CEQA action.

110.   Notwithstanding the statements made to the contrary by Sunset Landmark in its CEQA complaint, Sunset Landmark was not concerned with the environmental impacts of the Selma LLC project.  To the contrary, Nourmand Enterprise desired to extort money from Selma LLC and its owners to which Defendants were not entitled. Nourmand Enterprise knew that Selma LLC was economically dependent on the development of the property and that it could not risk delaying the project, and it exploited that fact and initiated a lawsuit against the City of Los Angeles concerning the Selma LLC property in order to stop Selma LLC from proceeding with the development.

111.    Several facts further compel the conclusion that the Selma LLC litigation was initiated to extort money from Selma.  Sunset Landmark, the entity that initiated the Selma LLC litigation, and Nourmand (who owns and/or controls Sunset Landmark) owns property (the Hollywood Athletic Club) that abuts the properties that were sought to be developed by Wilcox and Tommie.  Likewise, Nourmand & Associates operates out of the Hollywood Athletic Club.  But the Hollywood Athletic Club does **not** border the property sought to be developed by Selma, which is located on a completely different block.  Thus, even if there were any argument that Sunset Landmark initiated the Thompson and Tommie CEQA lawsuits based on the impact those developments would have on Sunset Landmark, such an argument would not be applicable in the Selma litigation.  Furthermore, although Sunset Landmark and Nourmand have targeted certain developers that they perceives to be potential victims for its extortion scheme, it has ignored certain other developers with virtually identical project descriptions in the same area.  Were Sunset Landmark and Nourmand truly interested in preventing or mitigating environmental impact, they would certainly have objected to these other projects, which would have had similar environmental impact, or initiated litigation to halt their development.

112.    Of course, the reason Nourmand Enterprise had no interest in these other projects is because its scheme is not premised in any way on environmental impact.  Rather, Nourmand Enterprise targets developers that are vulnerable to extortion.

113.    Shortly after Sunset Landmark initiated the appeal concerning the Selma LLC Hotel project, Heyman met with Nourmand.  This meeting took place on or around March 29, 2018 at the Dream Hotel in Hollywood.  This meeting had been scheduled prior to Sunset Landmark's initiation of the Selma LLC appeal.  At that meeting, Heyman asked Nourmand why Sunset Landmark was appealing the Selma project, given that (1) neither Sunset Landmark nor Nourmand owned property abutting the proposed Selma LLC development; (2) there were no justifiable environmental objections to the property development; (3) Sunset Landmark had not objected to, or

THIRD AMENDED COMPLAINT

initiated any litigation regarding, any other similar developments; and (4) Sunset Landmark had just dismissed its lawsuit against Wilcox and Tommie after it received the millions of dollars demanded.

114.    In a moment of honesty, Nourmand responded: ***"You know the drill.  It's going to take a check to make this go away."***  Nourmand thus openly admit that the threatened litigation relating to the Selma LLC project was for the sole purpose of extorting money from Selma LLC, and not based on any purported concern regarding the environmental impacts of the Selma LLC property.

115.    When Plaintiffs refused to succumb to this renewed extortionate threat, the Silverstein Law Firm, on behalf of Sunset Landmark, initiated a lawsuit on April 2, 2019 naming Selma LLC as a real party in interest.  Like the earlier litigation, the lawsuit alleged that notwithstanding the City's detailed findings, the Selma LLC project would cause significant, unmitigable impacts to the environment.  The lawsuit also alleged that the City should have required a full EIR prior to approval.  This lawsuit incorporated the same sham environmental concerns that formed the basis of Sunset Landmark's original appeal.

116.    In filing this litigation, however, Nourmand Enterprise had a problem.  Sunset Landmark knew that it had already filed two sham lawsuits concerning properties developed by Relevant, and the initiation of a third such lawsuit could risk exposure of the sham and reflexive nature of these lawsuits.  Moreover, the Silverstein Firm had developed a meritless legal theory that through the Selma Hotel development, Relevant had engaged in improper "piecemealing," i.e., that it had developed a large-scale multi-property development but had submitted the project to the City in individual pieces.  This allegation is contrary to reality.  Nourmand Enterprise was concerned that because Sunset Landmark had already settled and released its CEQA claims relating to the Thompson and Tommie Hotels (the two properties alleged to be part of the "piecemealing"), Sunset Landmark might be legally foreclosed from maintaining a CEQA claim against Selma pertaining to piecemealing.

117.   The members of Nourmand Enterprise found a solution to both of these problems.  Plaintiffs are informed and believe that Silverstein had a preexisting close relationship with Maddren, which enabled Silverstein to secure Maddren's services in aid of Nourmand Enterprise.  In exchange, the Silverstein Firm agreed to provide support to Maddren in the form of assistance with drafting legal filings and pleadings.  Plaintiffs are also informed and believe that Maddren may be entitled to a portion of proceeds Sunset Landmark obtains in any settlement with Plaintiffs.

118.   The members of Nourmand Enterprise and Maddren agreed that Maddren would initiate a frivolous and sham CEQA lawsuit similarly challenging the Selma Hotel.  This act would assist Nourmand Enterprise because the filing of this lawsuit would make it appear as though Sunset Landmark's challenge had merit.  Moreover, because Maddren was not a party to the Thompson and Tommie CEQA lawsuits or the settlement of those claims, Maddren would not be vulnerable to an attack that he had released any claim of improper piecemealing.

119.   Two business days before Sunset Landmark filed its CEQA complaint concerning the Selma Hotel, Maddren filed a complaint in Los Angeles Superior Court against the City of Los Angeles, naming Selma LLC as real party in interest (the "Maddren Litigation").

120.   Notably, the Maddren Litigation was filed by Maddren in his personal capacity, notwithstanding the fact that Maddren is the President and CEO of United Neighborhoods.  On its website, United Neighborhoods identifies its "primary areas of focus" as "planning, development, budget/finance, environment/open space, and ethics."  It is revealing that the Maddren Litigation, which alleges that the Selma Hotel will have "adverse impacts on surrounding residential uses," was brought by Maddren personally and not United Neighborhoods.

THIRD AMENDED COMPLAINT

121.    Indeed, United Neighborhoods had less than a year earlier filed a CEQA lawsuit against the City relating to a different development.[2]  In that lawsuit, United Neighborhoods was represented by counsel.  As President and CEO, Maddren caused United Neighborhoods to initiate that prior litigation, with Maddren verifying United Neighborhood's petition.

122.    If Maddren had a genuine belief that the City violated CEQA in approving the Selma Hotel and that the Selma Hotel would have "adverse impacts on surrounding residential uses," Maddren would have caused United Neighborhoods to retain counsel and initiate a CEQA lawsuit on behalf of the organization.  The fact that Maddren—or others at United Neighborhoods—were unwilling to put the organization's name behind the Maddren Litigation demonstrates the frivolous nature of the litigation, and the fact that Maddren's actions were designed to support his friend Silverstein and the other members of Nourmand Enterprise, rather than being a good faith legal challenge.

123.    Maddren and the other members of Nourmand Enterprise knew that the Maddren Litigation was a sham and that the allegations in the complaint were frivolous and meritless, and Maddren did not have a good faith basis for filing the complaint.  Maddren filed the Maddren Litigation in order to assist and contribute to the goals of Nourmand Enterprise to extort Plaintiffs and extract monetary payment and personal concessions.

## FIRST CLAIM FOR RELIEF

### Violation of the Racketeer Influenced and Corrupt Organizations Act,

### 18 U.S.C. § 1962(c)

### (Against All Defendants)

124.    Plaintiffs incorporate the allegations contained in Paragraphs 1 through 111, as if fully set forth herein.

---

[2] *United Neighborhoods for Los Angeles, et al. v. City of Los Angeles*, BS174353 (L.A. Super. Ct.).

125.   Relevant Group, LLC; 1541 Wilcox Hotel LLC; 6516 Tommie Hotel LLC; and 6421 Selma Wilcox Hotel LLC, are each a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

126.   Each of the Defendants is a "person" under 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d).

127.   Defendants Saeed Nourmand, Sunset Landmark Investment, and Nourmand & Associates, along with non-defendant enterprise members the Silverstein Law Firm APC and Casey Maddren, and all of their affiliated entities, agents, and/or any subsidiaries, constitute an "enterprise" engaged in, and whose activities affect, interstate commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) ("Nourmand Enterprise").  Nourmand Enterprise is an informal association that operates for a common purpose.  To further its goals, Nourmand Enterprise has engaged in a scheme of extorting money from Los Angeles developers by threatening to file or maintain meritless environmental lawsuits relating to the competing developers' projects, unless the developers pay members of Nourmand Enterprise significant money.  Nourmand Enterprise exists separate and apart from the pattern of racketeering activity alleged and the Defendants themselves.  The various members of Nourmand Enterprise have agreed to each perform individual roles to carry out the unlawful goals of the enterprise.

128.   In addition to being a member of Nourmand Enterprise, Sunset Landmark itself constitutes an "enterprise" engaged in, and whose activities affect, interstate commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  Nourmand is a person who conducts the business of Sunset Landmark.

129.   As part of Nourmand Enterprise, each of the Defendants was and is associated with Nourmand Enterprise and has conducted or participated, directly or indirectly, in the management and operation of the affairs of Nourmand Enterprise in relation to Plaintiffs and other developers, including, but not necessarily limited to, owners and developers of certain property located on Schrader Boulevard, through a

pattern of activity unlawful under 18 U.S.C. § 1961(1)(A) and (B), including multiple, repeated, and continuous acts or threats involving extortion and/or attempted extortion, chargeable under 18 U.S.C. § 1951 and California Penal Code §§ 518, 522, 523, 524.

130.   Members of Nourmand Enterprise, including Sunset Landmark Investment, Saeed Nourmand, Nourmand & Associates, and the Silverstein Firm have threatened Plaintiffs and other developers with economic harm and harm to their property by threatening to ruin development plans by bringing baseless lawsuits and challenges for the purpose of delaying and frustrating developments.  These threats have caused developers to lose business partners or financing, as well as incur substantial legal fees to fight the baseless challenges.

131.   Out of a fear of the economic harm that would result from Defendants' pursuit of baseless litigation, and in response to Defendants' extortionate threats, Plaintiffs 1541 Wilcox Hotel LLC and 6516 Tommie Hotel LLC paid Defendants a significant amount of money.

132.   Members of Nourmand Enterprise, including Sunset Landmark Investment, Saeed Nourmand, Nourmand & Associates, the Silverstein Firm, and Casey Maddren, additionally threatened and attempted to extort money from 6421 Selma Wilcox Hotel LLC.  After Sunset Landmark Investment filed a meritless lawsuit related to the Selma Wilcox property, Nourmand stated to a representative of 6421 Selma Wilcox Hotel LLC: "You know the drill.  It's going to take a check to make this go away," demonstrating that the lawsuit was motivated by a desire to extort money from Plaintiffs, rather than a good faith belief in the merit of the lawsuit, or a desire to cure or mitigate any environmental impacts in the 6421 Selma Wilcox development.  Non-defendant enterprise member Casey Maddren contributed to these threats by likewise filing a sham CEQA lawsuit at the direction of, or in connection with, other members of the enterprise including Sunset Landmark, Nourmand & Associates, and the Silverstein Firm.

THIRD AMENDED COMPLAINT

133.   Defendants have carried out their threats by filing sham CEQA lawsuits, and have threatened further sham CEQA litigation unless developers agree to pay Defendants millions of dollars.

134.   Defendants also have raised sham challenges against other developers.  On information and belief, Defendants approached owners and developers of certain property located on Schrader Boulevard, and threatened to initiate meritless CEQA litigation unless those owners paid Defendants significant money.  The only reason such litigation was not initiated is because the owners of the Schrader property were able to stand up to Defendants by credibly informing them that the Schrader owners could afford to allow the property to remain undeveloped.

135.   The threats described above have instilled reasonable fear of economic harm in Plaintiffs and other developers, leading some developers to capitulate to Defendants' demands.

136.   Defendants have employed unlawful means to extort Plaintiffs and other developers, including but not limited to filing sham lawsuits and challenges to various development projects.

137.   Defendants' actions have been for the purpose of seeking unlawful ends. Defendants have no right to demand money from Plaintiffs and other developers.

138.   As a result of their actions, Defendants have obtained property within the meaning of 18 U.S.C. § 1951, including money, as well as the abandonment of Plaintiffs' causes of action pursuant to covenants given to Defendants.

139.   As a result of their actions, Defendants have obtained property and consideration for purposes of California Penal Code § 518, including money, as well as the abandonment of Plaintiffs' causes of action pursuant to covenants given to Defendants.

140.   These acts or threats form a pattern of racketeering activity as they all have occurred within 10 years of one another, are related insofar as they involve the same participants, share the same purpose of forcing developers to cave to the demands made

36

to enrich Nourmand Enterprise, and employ the same methods, including, but not limited to pursuing sham opposition to and litigation over projects.

141.   Using the threat of injury to Plaintiffs' business interests, including the Thompson, Tommie, and Selma Wilcox projects, Defendants have conspired and attempted to take property from Plaintiffs and other developers.

142.   Defendants' activities described herein were taken knowingly and willfully and have obstructed, delayed, or otherwise affected commerce.

143.   Defendants' conduct was designed to, and has in fact, injured Plaintiffs.  As a direct result of Defendants' unlawful and ongoing threats of extortion in violation of 18 U.S.C. § 1951 and Cal. Penal Code §§ 518, 522, and 524, Plaintiffs have paid money to Defendants, have incurred attorneys' fees and costs in litigating meritless claims, and have lost funding and experienced delays in hotel projects.

## SECOND CLAIM FOR RELIEF

### Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d), by Conspiring to Violate 18 U.S.C. § 1962(c) (Against All Defendants)

144.   Plaintiffs incorporate the allegations contained in Paragraphs 1 through 131, as if fully set forth herein.

145.   Relevant Group, LLC; 1541 Wilcox Hotel LLC; 6516 Tommie Hotel LLC; and 6421 Selma Wilcox Hotel LLC, are each a "person" under 18 U.S.C. §§ 1961(3) and 1964(c).

146.   Each of the Defendants is a "person" under 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d).

147.   Defendants Saeed Nourmand, Sunset Landmark Investment, and Nourmand & Associates, along with non-defendant enterprise member the Silverstein Law Firm APC and Casey Maddren, and all of their affiliated entities, agents, and/or any subsidiaries, constitute Nourmand Enterprise.  Nourmand Enterprise engaged in, and its activities affect, interstate commerce within the meaning of 18 U.S.C.

§§ 1961(4) and 1962(c).  Nourmand Enterprise is an informal association that operates for a common purpose.  To further its goals, Nourmand Enterprise has engaged in a scheme of extorting money from Los Angeles developers by threatening to file or indeed filing meritless environmental lawsuits relating to the developers' projects, unless the developers pay members of the Nourmand Enterprise significant money.  Nourmand Enterprise exists separate and apart from the pattern of racketeering activity alleged and the Defendants themselves.

148.   In addition to being a member of Nourmand Enterprise, Sunset Landmark itself constitutes an "enterprise" engaged in, and whose activities affect, interstate commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  Nourmand is a person who conducts the business of Sunset Landmark.

149.   Each of the Defendants was and is associated with Nourmand Enterprise, and they have all conspired among themselves within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c).  Specifically, each of the Defendants agreed and intended, and/or adopted the goal of furthering or facilitating the following endeavor: to conduct or participate, directly or indirectly, in the management and operation of the affairs of Nourmand Enterprise in relation to Plaintiffs and other developers, including, but not necessarily limited to, the Thompson, Tommie, and Selma Wilcox projects, through a pattern of activity unlawful under 18 U.S.C. § 1961(1)(A) and (B), including multiple, repeated, and continuous acts or threats involving extortion and/or attempted extortion, chargeable under 18 U.S.C. § 1951 and California Penal Code §§ 518, 522, 523, 524.  Defendants engage in this endeavor with the purpose of obtaining money from Plaintiffs.

150.   Defendants have threatened Plaintiffs and other developers with economic harm and harm to their property by threatening to ruin development plans by bringing baseless lawsuits and challenges for the purpose of delaying and frustrating developments.  These threats have caused developers to lose business partners or financing, as well as incur substantial legal fees to fight the baseless challenges.

151.   Defendants have carried out their threats by filing sham lawsuits, and have threatened further sham CEQA litigation unless developers agree to pay Defendants millions of dollars.

152.   Defendants also have raised sham challenges against other developers.  On information and belief, Defendants approached certain property owners and developers located on Schrader Boulevard, and threatened to initiate meritless CEQA litigation unless those owners paid Defendants significant money.  The only reason this litigation was not initiated is because the owners of the Schrader property were able to stand up to Defendants by credibly informing them that the Schrader owners could afford to allow the property to remain undeveloped.

153.   The threats described above have instilled reasonable fear of economic harm in Plaintiffs and other developers, leading some developers to capitulate to Defendants' demands.

154.   Defendants have employed unlawful means to extort Plaintiffs and other developers, including but not limited to filing sham lawsuits and challenges to various development projects.

155.   Defendants' actions have been for the purpose of seeking unlawful ends.  Defendants have no right to demand money from Plaintiffs and other developers.

156.   As a result of their actions, Defendants have obtained property within the meaning of 18 U.S.C. § 1951, including money, as well as the abandonment of Plaintiffs' causes of action pursuant to covenants given to Defendants.

157.   As a result of their actions, Defendants have obtained property and consideration for purposes of Penal Code 518, including money, as well as the abandonment of Plaintiffs' causes of action pursuant to covenants given to Defendants.

158.   These acts or threats form a pattern of racketeering activity as they all have occurred within 10 years of one another, are related insofar as they involve the same participants, share the same objective of forcing developers to cave to the demands made to enrich Nourmand Enterprise, and employ the same methods, including, but not

limited to pursuing sham opposition to and litigation over projects in an effort to hold projects hostage unless Plaintiffs and the other developers accede to Defendants' demands.

159.   Using the threat of injury to Plaintiffs' and other developers' business interests, Defendants have conspired and attempted to take property from Plaintiffs and other developers.

160.   Defendants' activities described herein were taken knowingly and willfully and have obstructed, delayed, or otherwise affected commerce.

161.   Defendants' conduct was designed to, and has in fact, injured Plaintiffs.  As a direct result of Defendants' unlawful and ongoing threats of extortion in violation of 18 U.S.C. § 1951 and Cal. Penal Code §§ 518, 522, and 524, Plaintiffs have paid money to Defendants, have incurred attorneys' fees and costs in litigating meritless claims, and have lost funding and experienced delays in hotel projects.

**THIRD CLAIM FOR RELIEF**

**Violation of the Racketeer Influenced and Corrupt Organizations Act,**

**18 U.S.C. § 1962(d), by Conspiring to Violate 18 U.S.C. § 1962(b)**

**(Against All Defendants)**

162.   Plaintiffs incorporate the allegations contained in Paragraphs 1 through 149, as if fully set forth herein.

163.   Relevant Group, LLC; 1541 Wilcox Hotel, LLC; 6516 Tommie Hotel LLC; and 6421 Selma Wilcox Hotel LLC, are each a "person" under 18 U.S.C. §§ 1961(3) and 1964(b).

164.   Each of the Defendants is a "person" under 18 U.S.C. §§ 1961(3), 1962(b), and 1962(d).

165.   Defendants Saeed Nourmand, Sunset Landmark Investment, and Nourmand & Associates, along with non-defendant enterprise member the Silverstein Law Firm APC and Casey Maddren, and all of their affiliated entities, agents, and/or any subsidiaries, constitute Nourmand Enterprise.  Nourmand Enterprise engaged in,

THIRD AMENDED COMPLAINT

1    and its activities affect, interstate commerce within the meaning of 18 U.S.C.

2    §§ 1961(4) and 1962(c).  Nourmand Enterprise is an informal association that operates

3    for a common purpose.  To further its goals, Nourmand Enterprise has engaged in a

4    scheme of extorting money from Los Angeles developers by threatening to file or

5    indeed filing meritless environmental lawsuits relating to the developers' projects,

6    unless the developers pay members of the Nourmand entity significant money.

7    Nourmand Enterprise exists separate and apart from the pattern of racketeering activity

8    alleged and the Defendants themselves.

9          166.   In addition to being a member of Nourmand Enterprise, Sunset Landmark

10   itself constitutes an "enterprise" engaged in, and whose activities affect, interstate

11   commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  Nourmand is a

12   person who conducts the business of Sunset Landmark.

13         167.   Each of the Defendants were and are associated with Nourmand Enterprise,

14   and they have all conspired among themselves within the meaning of 18 U.S.C. §

15   1962(d) to violate 18 U.S.C. § 1962(b). Specifically, each of the Defendants agreed and

16   intended, and/or adopted the goal of furthering or facilitating, the following endeavor: to

17   conduct or participate, directly or indirectly, in the management and operation of the

18   affairs of Nourmand Enterprise, and to acquire or maintain, directly or indirectly,

19   interest in Nourmand Enterprise, in relation to Plaintiffs and other developers, including,

20   but not necessarily limited to, the Thompson, Tommie, and Selma Wilcox projects,

21   through a pattern of activity unlawful under 18 U.S.C. § 1961(1)(A) and (B), including

22   multiple, repeated, and continuous acts or threats involving extortion and/or attempted

23   extortion, chargeable under 18 U.S.C. § 1951 and California Penal Code §§ 518, 522,

24   523 524.  Defendants engage in this endeavor with the purpose of obtaining money from

25   Plaintiffs.

26         168.   Defendants have threatened Plaintiffs and other developers with economic

27   harm and harm to their property by threatening to ruin development plans by bringing

28   baseless lawsuits and challenges for the purpose of delaying and frustrating

1  developments.  These threats have caused developers to lose business partners or

2  financing, as well as incur substantial legal fees to fight the baseless challenges.

3      169.   Defendants have carried out their threats by filing sham lawsuits, and have

4  threatened further sham CEQA litigation unless developers agree to pay Defendants

5  millions of dollars.

6      170.   Defendants also have raised sham challenges against other developers.  On

7  information and belief, Defendants approached certain property owners and developers

8  located on Schrader Boulevard, and threatened that they would initiate meritless CEQA

9  litigation regarding that property, unless those owners paid Defendants significant

10  money.  The only reason this litigation was not initiated is because the owners of the

11  Schrader property were able to stand up to Defendants by credibly informing them that

12  the Schrader owners could afford to allow the property to remain undeveloped.

13      171.   These threats have instilled reasonable fear in Plaintiffs and other

14  developers of economic harm, leading many developers to capitulate to Defendants'

15  demands.

16      172.   Defendants have employed unlawful means to extort Plaintiffs and other

17  developers, including but not limited to filing sham lawsuits and challenges to the

18  project.

19      173.   Defendants' actions have been for the sole purpose of seeking unlawful

20  ends.  Defendants have no right to demand money from Plaintiffs or other developers.

21      174.   As a result of their actions, Defendants have obtained property within the

22  meaning of 18 U.S.C. § 1951, including money, as well as the abandonment of

23  Plaintiffs' causes of action pursuant to covenants given to Defendants.

24      175.   As a result of their actions, Defendants have obtained property and

25  consideration for purposes of Penal Code § 518 including money, as well as the

26  abandonment of Plaintiffs' causes of action pursuant to covenants given to Defendants.

27

28

THIRD AMENDED COMPLAINT

176.   Defendants have conspired and attempted to take property from Plaintiffs, including money, as well as the abandonment of Plaintiffs' causes of action pursuant to covenants given to Defendants.

177.   Defendants' activities described herein were taken knowingly and willfully, and have obstructed, delayed, or otherwise affected commerce.

178.   Defendants' conduct was designed to, and has in fact, injured Plaintiffs.  As a direct result of Defendants' unlawful and ongoing threats of extortion in violation of 18 U.S.C. § 1951 and Cal. Penal Code §§ 518, 522, and 524, Plaintiffs have paid money to Defendants, have incurred attorneys' fees and costs in litigating meritless claims, and have lost funding and experienced delays in hotel projects.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Relevant Group, LLC; 1541 Wilcox Hotel, LLC; 6516 Tommie Hotel LLC; and 6421 Selma Wilcox Hotel LLC respectfully request that the Court issue the following relief:

A.   Defendants and their agents be enjoined from engaging in further extortion and attempted extortion with respect to the Selma Wilcox Hotel project;

B.   Damages against Defendants, jointly and severally, for a sum of money equal to the amount of damages Plaintiffs have sustained or will sustain, in an amount to be proven at trial, but believed to be in excess of $100 million (trebled pursuant to 18 U.S.C. § 1964(c));

C.   Prejudgment interest;

D.   Costs of suit incurred, including all costs, expenses, attorneys' and experts' fees;

E.   Punitive damages; and

F.   Such other relief as the Court deems just and proper.

/ / /

/ / /

/ / /

THIRD AMENDED COMPLAINT

## JURY DEMAND

Plaintiffs demand a trial by jury.


Dated:  September 14, 2021          **AKIN GUMP STRAUSS HAUER & FELD LLP**
Susan K. Leader
Joshua A. Rubin


By:_____ */s/ Susan K. Leader*_____
Susan K. Leader
Attorneys for Plaintiffs

THIRD AMENDED COMPLAINT

# EXHIBIT B

COPY

THE SILVERSTEIN LAW FIRM, APC
ROBERT P. SILVERSTEIN (State Bar No. 185105)
DANIEL E. WRIGHT (State Bar No. 144490)
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504
Telephone:   (626) 449-4200
Facsimile:   (626) 449-4205
Robert@RobertSilversteinLaw.com

Attorneys for Petitioner
THE SUNSET LANDMARK INVESTMENT, LLC

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JAN 2 0 2017

Sherri R. Carter, Executive Officer/Clerk
By: Shaunya Bolden, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| THE SUNSET LANDMARK INVESTMENT, LLC, a California limited liability company,<br><br>Petitioner,<br><br>vs.<br><br>CITY OF LOS ANGELES, a municipal corporation; the CITY OF LOS ANGELES CITY COUNCIL; and DOES 1 through 10, inclusive,<br><br>and<br><br>CRA/LA, a designated local agency as successor to the former Community Redevelopment Agency of the City of Los Angeles; the CRA/LA GOVERNING BOARD; the CRA/LA OVERSIGHT BOARD, ALL PERSONS INTERESTED IN THE OWNER PARTICIPATION AGREEMENT APPROVED ON MAY 5, 2016 WITH AN ENTITY KNOWN AS 1541 WILCOX HOTEL, LLC, and DOES 11 through 20, inclusive,<br><br>Respondents. | Case No. BS160807<br><br>**SECOND AMENDED VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY RELIEF**<br><br>**[Code Civ. Proc. §§ 1085, 1094.5; Pub. Res. Code §§ 21000, et seq. (CEQA); Pub. Res. Code § 21092.4; CEQA Guideline § 15073; Los Angeles City Charter § 558; Los Angeles Municipal Code §§ 12.03, 12.14, 12.27; Constitutional Due Process Fair Hearing Requirements; Hollywood Redevelopment Plan § 506.2.3; Govt. Code § 53511, Code Civ. Proc. §§ 860-870, 1060]**<br><br>**Exhibit 3**<br>Friedman<br>03/21/2022 |

SECOND AMENDED VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY RELIEF

1
2  1541 WILCOX HOTEL LLC, a Delaware
3  limited liability company doing business in
   California; and ROES 1 through 10,
4  inclusive,
5
           Real Parties in Interest.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1    Petitioner THE SUNSET LANDMARK INVESTMENT, LLC ("Petitioner") seeks

2    a writ of mandamus against Respondents City of Los Angeles and the Los Angeles City

3    Council (sometimes collectively the "City"), the CRA/LA, the CRA/LA Governing

4    Board, and the CRA/LA Oversight Board (sometimes collectively the "CRA/LA"), and

5    ALL PERSONS INTERESTED IN THE OWNER PARTICIPATION AGREEMENT

6    APPROVED ON MAY 5, 2016 WITH AN ENTITY KNOWN AS 1541 WILCOX

7    HOTEL LLC, and alleges as follows:

8                              **INTRODUCTION**

9         1.    This petition challenges the City's February 3, 2016 decisions, and all

10   subsequent actions, in approving:  (a) a Mitigated Negative Declaration; (b) Vesting Zone

11   and Height District Changes, (c) Zoning Administrator's Adjustment, (d) Site Plan Review,

12   and other associated entitlements (collectively "Land Use Entitlements") for the Wilcox

13   Hotel project, an 11-story, approximately 120-foot-tall, 109,470 square foot hotel with 200

14   rooms/suites, a 4,600 square foot restaurant/bar on the first floor, and an outdoor swimming

15   pool and restaurant/bar on top of the building, all on an approximately 20,682 square foot

16   lot, located at 1523-1541 North Wilcox Avenue in Hollywood (the "Project").

17        2.    Additionally, this petition challenges the CRA/LA's May 5, 2016 decision

18   to approve a discretionary owner participation agreement ("OPA") and to adopt the City's

19   Mitigated Negative Declaration for the Project, related to the CRA/LA's approval of an

20   increase in the authorized density of the Project from a floor area ratio ("FAR") of 4.5:1 to

21   5.5:1 without having sufficient evidence to make any of the required findings and by using

22   the flawed Mitigated Negative Declaration as the supporting environmental review

23   document.  The petition challenges the OPA under the state validation statute as well.

24        3.    The Project site sits mid-block on North Wilcox Avenue, a narrow collector

25   street between Sunset Boulevard on the south and Selma Avenue on the north, within a

26   portion of the Hollywood Community Plan specifically planned and zoned in the 1980s to

27   comply with the mandate of Government Code Section 65860, subdivision (d) ("AB 283").

28   AB 283 required the City to make its zoning consistent with its General Plan land use

                                   - 1 -

1   designations.

2          4.      The land use designations in the 1988 Hollywood Community Plan were

3   less dense than the land use designations allowed in the 1973 Hollywood Community Plan.

4   To make its zoning consistent with the 1988 Community Plan, the City Council adopted

5   numerous ordinances, including Ordinance No. 165660, to limit density and height because

6   the area was so distant from high capacity transit.  The City Planning Commission and City

7   Council, in the course of approving the Project, misunderstood or ignored the 2:1 Floor

8   Area Ratio ("FAR") limitation placed on the Project site (via the 1990 Ordinance No.

9   165660 to restrict these parcels using a "D" Development Limitation), which was

10  specifically imposed to mitigate City-acknowledged areawide significant environmental

11  impacts.  The City's approval actions in this regard are a fatal defect in the proceedings

12  pointed out to the City by an expert who worked on the 1988 Hollywood Community Plan.

13         5.      In addition, all of the proceedings at the City were null, void and *ultra vires*

14  because Real Party failed to first obtain the approval of the successor Board of the former

15  Community Redevelopment Agency of the City of Los Angeles ("CRA/LA").  Section

16  506.2.3 of the Hollywood Redevelopment Plan provides that a property in the Regional

17  Center Commercial land use designation can receive approval of the CRA/LA to increase

18  density if the CRA/LA determines:  (1) the proposed project furthers the goals and intent of

19  the Redevelopment Plan and the Community Plan, (2) places "high density and/or density

20  development in areas with reasonable proximity or direct access to high capacity

21  transportation facilities, or which effectively utilize transportation demand management

22  programs," and (3) meets at least one other goal listed in the plan.  The Project is located

23  between .5 miles to .8 miles from the nearest Metrorail or high capacity bus route – when

24  the CRA/LA usually requires a Project of this size to be no more than 1,500 feet from high

25  capacity transit.  Thus, when Real Party took the City Council's reckless and illegal

26  approvals to the CRA/LA, which continues to have oversight responsibilities and approval

27  powers over projects in the Hollywood Redevelopment Plan area, the CRA/LA was

28  required to deny OPA for the Project because the location of the Project is remote from any

- 2 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504



1    high capacity transit that could justify the type and amount of density requested in this

2    case.

3        6.    Objections submitted by Petitioner and others before the City proceedings

4    focused, in significant part, on the inappropriate injection of enormous density and height

5    into a quiet side street significantly impacting, *inter alia*, nearby existing residential and

6    commercial uses.  Objections submitted by Petitioner before the CRA/LA proceedings

7    focused on similar defects, including details regarding the failure of the MND to disclose

8    or analyze any aspect of permanent development conditions imposed on the Project to

9    avoid significant environmental impacts from excessive density development of the

10   property.

11       7.    Petitioner seeks a writ of mandamus invalidating the City's approval and/or

12   certification of the MND and invalidating and setting aside the Land Use Entitlements

13   because of the City's violations of the California Environmental Quality Act ("CEQA"),

14   the City Charter, the Los Angeles Municipal Code, and other laws.  Additionally, Petitioner

15   seeks a writ of mandamus invalidating the CRA/LA's violations of CEQA, the Hollywood

16   Redevelopment Plan, and the other laws.  Petitioner further seeks declaratory relief against

17   the CRA/LA and ALL PERSONS INTERESTED, declaring the OPA invalid for all

18   reasons set forth in this petition and complaint.

19                                    **PARTIES**

20       8.    Petitioner THE SUNSET LANDMARK INVESTMENT, LLC is a

21   California limited liability company which owns a building within 100 feet of the Wilcox

22   Hotel site and parking facilities immediately adjacent, and which participated in the

23   Project's administrative proceedings before the City and objected to the Project in those

24   proceedings, leading up to the City Council's February 3, 2016 approvals of the Project.

25   Petitioner has a substantial interest in ensuring that the City's decisions are in conformity

26   with the requirements of law, and in having those requirements properly executed and the

27   public duties of the City enforced.  Petitioner will be adversely affected by impacts

28   resulting from the City's actions and approvals, and is aggrieved by the acts, decisions and

- 3 -

1 │ omissions of the City as alleged in this petition. Petitioner is suing on its behalf, and on

2 │ behalf of others who will be affected in the Hollywood area, as well as for all citizens of

3 │ the City of Los Angeles and more broadly, including all those who seek to maintain the

4 │ integrity of the land use entitlement process in Los Angeles.

5 │      9.    Respondent City of Los Angeles is a California charter city located in the

6 │ County of Los Angeles, California. The Project is within the jurisdictional limits of the

7 │ City of Los Angeles.

8 │      10.    Respondent Los Angeles City Council is the elected governing body of the

9 │ City, and is the body responsible for its decisions at issue herein.

10 │      11.    Respondent CRA/LA is the designated local agency created by Health and

11 │ Safety Code Section 34173(d)(3), as the successor agency to the assets, liabilities,

12 │ obligations, plans and settlement agreements of the former Community Redevelopment

13 │ Agency of the City of Los Angeles located in the County of Los Angeles, California.

14 │      12.    Respondent CRA/LA Governing Board is the appointed governing body of

15 │ the CRA/LA pursuant to Health and Safety Code Section 34173(d)(3), and is the body

16 │ responsible for its decisions at issue herein.

17 │      13.    Respondent CRA/LA Oversight Board is the appointed oversight board of

18 │ the CRA/LA pursuant to Health and Safety Code Section 34179, and is the body that has

19 │ oversight responsibilities over certain CRA/LA Governing Board decisions, including

20 │ possibly the decisions at issue herein.

21 │      14.    Defendants named as "ALL PERSONS INTERESTED IN THE OWNER

22 │ PARTICIPATION AGREEMENT APPROVED ON MAY 5, 2016 WITH AN ENTITY

23 │ KNOWN AS 1541 WILCOX HOTEL LLC" are persons named **in rem** pursuant to Code

24 │ Civ. Proc. §§ 860 to 870 who are specifically unknown to plaintiffs but may have some

25 │ stake or interest in the outcome of this lawsuit and will be served by publication in the

26 │ manner required by law.

27 │      15.    Petitioner is informed and believes, and based thereon alleges, that 1541

28 │ Wilcox Hotel LLC (sometimes "Real Party"), named as a real party in interest, is a

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 4 -



1  Delaware limited liability company operating in California, to which the City granted all of

2  the Project approvals.

3          16.      Petitioner is ignorant of the true names of respondents sued herein as DOES

4  1 through 10, inclusive, and therefore sues said respondents by those fictitious names.

5  Petitioner will amend the petition to allege their true names and capacities when the same

6  have been ascertained.  Petitioner is informed and believes, and based thereon alleges, that

7  each of these fictitiously named respondents is in some manner responsible for the

8  wrongful conduct alleged in this petition.  Petitioner is informed and believes, and based

9  thereon alleges, that these fictitiously named respondents were, at all times mentioned in

10  this petition, the agents, servants, and employees of their co-respondents and were acting

11  within their authority as such with the consent and permission of their co-respondents.

12          17.      Petitioner is ignorant of the true names of real parties sued herein as ROES

13  1 through 10, inclusive, and therefore sues said real parties by those fictitious names.

14  Petitioner will amend the petition to allege their true names and capacities when the same

15  have been ascertained.  Petitioner is informed and believes, and based thereon alleges, that

16  each of these fictitiously named real parties is in some manner responsible for the wrongful

17  conduct alleged in this petition.  Petitioner is informed and believes, and based thereon

18  alleges, that these fictitiously named real parties were, at all times mentioned in this

19  petition, the agents, servants, and employees of their co-real parties and were acting within

20  their authority as such with the consent and permission of their co-real parties.

21                          **JURISDICTION AND VENUE**

22          18.      Jurisdiction over Respondents and Real Party, and each of them, exists

23  because each of the Respondents and Real Party named in this litigation are present and

24  operating within the jurisdictional limits of the County of Los Angeles.

25          19.      Venue is proper because most or all of the acts and omissions complained of

26  in this litigation took place within this judicial district.

27

28

SECOND AMENDED VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY RELIEF

## STATUTORY SCHEME

### California Environmental Quality Act

20.     The California Environmental Quality Act ("CEQA"), found at Public Resources Code Section 21000, *et seq.*, is based on the principle that "the maintenance of a quality environment for the people of this state now and in the future is a matter of statewide concern." (Pub. Res. Code § 21000(a).)

21.     In CEQA, the Legislature has established procedures designed to achieve these goals, principally the Environmental Impact Report ("EIR"). These procedures provide both for the determination and for full public disclosure of the potential adverse effects on the environment of discretionary projects that governmental agencies propose to approve, and require a description of feasible alternatives to such proposed projects and feasible mitigation measures to lessen their environmental harm. (Pub. Res. Code § 21002.)

22.     CEQA is not merely a procedural statute; it imposes clear and substantive responsibilities on agencies that propose to approve projects, requiring that public agencies not approve projects that harm the environment unless and until all feasible mitigation measures are employed to minimize that harm. (Pub. Res. Code §§ 21002, 21002.1(b).)

23.     Failure either to comply with the substantive requirements of CEQA or to carry out the full CEQA procedures so that complete information as to a project's impacts is developed and publicly disclosed constitutes a prejudicial abuse of discretion that requires invalidation of the public agency action regardless of whether full compliance would have produced a different result. (Pub. Res. Code § 21005.)

24.     CEQA authorizes and directs the State Office of Planning and Research to adopt guidelines for the implementation of CEQA by public agencies. (Pub. Res. Code § 21083.) These guidelines, which are found at title 14, California Code of Regulations, Section 15000, *et seq.* ("Guidelines"), are binding on all state and local agencies, including Respondents.

25.     The Guidelines establish procedures for calculating the baseline

- 6 -

1   environmental conditions at a proposed project site, providing that "[a]n EIR must include

2   a description of the physical environmental conditions in the vicinity of the project, as they

3   exist at the time the notice of preparation is published, or if no notice of preparation is

4   published, at the time of the environmental analysis is commenced. . . ." (14 Cal. Code

5   Regs. § 15125(a).)

6         26.     Agencies may not undertake actions that could have a significant adverse

7   effect on the environment, or limit the choice of alternatives or mitigation measures, before

8   complying with CEQA. (14 Cal. Code Regs. § 15004(b)(2).) The "lead agency," which is

9   the public agency that has the principal responsibility for carrying out the project, is

10  responsible for conducting an initial study to determine, in consultation with other relevant

11  state agencies, whether an environmental impact report, a negative declaration, or a

12  mitigated negative declaration will be prepared for a project. (Pub. Res. Code §§ 21067;

13  21080.1(a); 21083(a).)

14        27.     The Guidelines require "all phases of project planning, implementation, and

15  operation" to be considered in the Initial Study for a project. (14 Cal. Code Regs. §

16  15063(a)(1).) CEQA defines a project as "the whole of an action, which has a potential for

17  resulting in either a direct physical change to the environment, or a reasonably foreseeable

18  indirect physical change in the environment." (14 Cal. Code Regs. § 15378(a).)

19        28.     The Guidelines require that a project description containing the "precise

20  location and boundaries of the proposed project" be included in the environmental review.

21  (14 Cal. Code Regs. § 15124(a).)

22        29.     An EIR must be prepared "[i]f there is substantial evidence, in light of the

23  whole record before the lead agency, that the project may have a significant effect on the

24  environment. . . ." (Pub. Res. Code § 21080(d).) This is, an EIR must be prepared "if a

25  lead agency is presented with a fair argument that the project may have a significant effect

26  on the environment . . . even though it may also be presented with other substantial

27  evidence that the project will not have a significant effect." (14 Cal. Code Regs. §

28  15064(f)(1).)

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 7 -

30.     Under specific and limited circumstances, the public agency evaluating a proposed project may find that an EIR is not required.  In such cases, the agency may adopt a negative declaration or a mitigated negative declaration ("MND").  A negative declaration may be prepared and adopted for a proposed project that "will not have a significant effect on the environment and does not require the preparation of an environmental impact report." (Pub. Res. Code § 21064.)  An MND may be prepared or adopted when "revisions in the project plans . . . would avoid the effects or mitigate the effects to a point where clearly no significant effect on the environment would occur" and "there is not substantial evidence in light of the whole record before the public agency that the project, as revised, may have a significant effect on the environment." (Pub. Res. Code § 21064.5.)  If either of these conditions does not apply to the project in question, the agency must prepare an EIR.

31.     A negative declaration must contain:  (1) a description of the project; (2) the location of the project; (3) a proposed finding that the project will not have a significant environmental impact; (4) a copy of the initial study documenting the reasons to support the finding; and (5) mitigation measures, if any, incorporated into the project.  (14 Cal. Code Regs. § 15071.)

32.     Because informing the public about the environmental impacts of a proposed project is a critical function of CEQA, any proposed mitigation measures in the MND must be made available for public review and comment prior to adoption of the declaration.  (Pub. Res. Code § 21081.6(c).)

**The City of Los Angeles General Plan and Elements**

33.     The City of Los Angeles was once a California pioneer in placing the general plan at the top of the hierarchy of land use plans of the City.  A significant May 1969 Charter amendment approved by voters after an extensive investigation and report in a July 1968 Citizens Committee report overhauled City planning processes.  For instance, the Charter amendment changed the name of the City's former "master plans," which were not always enforceable, to the "General Plan," to designate a change that would be

- 8 -

1   enforceable law of the City.  It was not until two years later that the Legislature adopted

2   State Planning Code provisions that henceforth required every city in California, including

3   charter cities, to adopt a "general plan" to serve as a "comprehensive, long-term general

4   plan for the physical development" of the city (Gov. Code § 65300), and all zoning

5   ordinances and land uses within the city must be consistent with the general plan (Gov.

6   Code §§ 65300, 65860 & 66473.5).  State law now requires that all general plans include

7   certain mandatory "elements" of general plans including:  Land Use, Circulation, Housing,

8   Conservation, Open Space, Noise, and Safety.  (Gov. Code § 65302.)

9        34.    The City of Los Angeles General Plan's Land Use Element consists of two

10   parts:  the Framework Element and the subordinate 35 community plans.  The Framework

11   Element provides a strategy for the City's long-term growth in a citywide context.

12        35.    The Framework Element is intended to guide the updates of the 35 various

13   community plans that comprise, together, the Land Use Element.  The Framework Element

14   contains policy 3.3.2, "monitor population, development, and infrastructure and service

15   capacities within the City and each community plan area. . . .  The results of this

16   monitoring effort . . . shall be used in part as a basis to . . . change or increase the

17   development forecast within the City and or community plan area . . .when it can be

18   demonstrated that (1) transportation improvements have been implemented or funded that

19   increase capacity and maintain the level of service, (2) demand management or behavioral

20   changes have reduced traffic volumes and maintained or improved levels of service, and

21   (3) the community character will not be significantly impacted by such increases."

22   Moreover, policy 3.3.2 provides that this monitoring shall be used to "consider regulating

23   the type, location, and/or timing of development, when all preceding steps have been

24   complete, additional infrastructure and services have been provided, and there remains

25   inadequate public infrastructure or service to support land use development."  The City has

26   described this policy as requiring "that type, amount, and location of development be

27   correlated with the provision of adequate supporting infrastructure and services."  This

28   policy was also provided as a mitigation measure for the General Plan Framework Element

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 9 -

1  Environmental Impact Report as a specific mitigation of impacts on Fire and Police
2  Emergency Services.

3      36.      The 35 community plans set forth limits on land uses, residential unit
4  density, and floor area ratios in order to accommodate anticipated growth up to a future
5  date, and identifies policies and programs the City will pursue to carry out the goals of the
6  framework and community plan for each discrete community of the City.

7      37.      The 1988 Hollywood Community Plan ("1988 HCP") is the portion of the
8  General Plan of the City of Los Angeles that sets forth the land use law governing
9  development in that area of the City where the parcel for the proposed Wilcox Hotel
10 Project is located.  All development within that area must proceed in accordance with the
11 1988 HCP, and the Plan includes specific substantive and procedural policies and
12 mandatory guidelines for obtaining Land Use Entitlements, such as those at issue here.
13 The 1988 HCP includes all permanent [Q] Qualified and "D" Development Conditions
14 enacted into the 1988 HCP in compliance with the City's General Plan Consistency
15 Program in order to comply with Government Code Section 65680(d) and a court
16 settlement referenced herein.

17      **City of Los Angeles Charter Planning Provisions Legislative History**

18     38.      The origin of the City Charter sections governing planning processes was a
19 City Hall bribery and corruption scandal.  In November 1966, the Los Angeles Civil Grand
20 Jury issued a report concerning "a complex zoning case in the West Valley section of Los
21 Angeles."  "The evidence before us indicated that a developer had represented to his
22 partners that he could secure favorable zoning treatment from the City of Los Angeles in
23 exchange for payment of monies."  The Grand Jury was unable to conclusively determine
24 that monies were paid in exchange for the City Council to reverse adverse
25 recommendations from every agency that considered the West Valley zoning proposal from
26 its inception.  The Grand Jury observed:

27          "We regretfully report that evidence we heard demonstrated
28          that influence can and has been and in all probability will be

SECOND AMENDED VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY RELIEF

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504



exerted through the medium of campaign contributions, political obligations and friendships."

The Grand Jury called for an in-depth study of the City's lack of adherence to its Master Plan (the predecessor name of the General Plan) and zoning.

39.     The City appointed a group of prominent community leaders to the Citizens Committee on Zoning Practices and Procedures ("Citizens Committee").  Former Los Angeles City Mayor and former Presiding Judge of the Los Angeles Superior Court, Fletcher Bowron, became the Chair of the Citizens Committee.  It conducted 14 months of public hearings on planning and zoning practices and procedures with the assistance of planning and legal professionals.

40.     In July 1968, the Citizen's Committee issued its First Report to the Mayor and City Council entitled "A Program to Improve Planning and Zoning in Los Angeles." The report contained 36 recommendations for improvement including charter amendments, municipal code amendments, uniform zoning hearing procedures, and ethics reforms.

41.     Subsequent to the Citizens Committee recommendations, and City Council debates over the proposed charter amendments, the Council placed recommended charter amendments on the municipal ballot.  In May 1969, Los Angeles voters approved a comprehensive overhaul of the City Charter planning provisions based upon the Committee's recommendations.

42.     As the Citizens Committee conducted its careful study of planning and zoning practices in 1967 to 1969, some City officials, commissioners, and at least one real estate developer were indicted, convicted, and/or pled guilty to various crimes involving *quid pro quo* for favorable rezoning, variances, or conditional use permits.  Other commissioners of planning bodies of the City resigned over alleged conflicts of interest, or were reassigned.  Over the next two years, Councilmember Thomas Shepard would be tried twice for bribery charges in connection with the scandal, and would not run for re-election. In January 1970, Shepard was convicted of one count of bribery in connection with a San Fernando Valley rezoning case in his district.  In sentencing Shepard to 1-14 years in state

- 11 -

the SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1    prison, the judge refused probation, observing that "the power to rezone is the power to

2    create great wealth." The judge analogized the actions of Shepard as nothing less than

3    stealing from the public till, as the rezoning process was used to transfer tremendous

4    wealth from the taxpayers to those lobbying City officials. It was within the context of

5    these cases and news stories showing City officials traded upzoning for bribes, gifts, meals,

6    loans and friendship that the City Charter's procedural requirements for planning were

7    overhauled, including certain provisions relevant to these proceedings.

8         43.    One of the key reforms added to the City Charter in May 1969 is the

9    fundamental requirement that any rezoning of property must be found to be consistent with

10   the City's general plan. Section 558 governs "the adoption, amendment or repeal of

11   ordinances, orders or resolutions by the Council concerning . . . the creation or change of

12   any zones or districts for the purpose of regulating the use of land . . . ." (Charter § 558(a).)

13   Such ordinance may be initiated by the Director of Planning, City Planning Commission,

14   or City Council, or by the owner of affected property. (Charter § 558(b)(1).)

**General Plan Consistency Program Background**

16        44.    The City's General Plan is the "constitution" of land use. It sits atop a

17   hierarchy of subordinate land use zoning regulations in the LAMC. All zoning regulations

18   and Zoning Administrator Interpretations of the zoning code must be consistent with the

19   General Plan land use designations, density limits, and related policies and programs

20   regarding future physical development of the City set forth in the General Plan. Zoning

21   regulations or interpretations thereof which are inconsistent with the General Plan are void

22   and unenforceable.

23        45.    After Los Angeles voters in the City Charter (1969), and the state

24   Legislature in the State Planning Code (1971), required the City to prepare and follow its

25   General Plan, the City Council of Los Angeles refused to do so. The Los Angeles zoning

26   code was enacted in 1946 before general plans were mandatory and enforceable. If the

27   City were built out at the densities permitted under the 1946 zoning code, the City would

28   hold about 8 million people (instead of the current 4 million). In the 1970s and 1980s, the

- 12 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1  City studied population projections and public infrastructure capacity and concluded the

2  1946 zoning densities would cause devastating environmental impacts if allowed to be

3  fully built out.  Accordingly, many, if not all, of the City's 35 community plans included

4  mitigation, incorporated into the Plans as a policy/program to reduce authorized density in

5  order to avoid overwhelming public infrastructure and municipal service delivery systems.

6       46.      By the late 1970s, however, the City Council had failed to downzone the

7  City's properties to be consistent with the reduced densities required by its 35 community

8  plans.  The City Council continued to approve projects based upon the old zoning laws

9  even though it was inconsistent with the reduced density land use designations in the new

10  community plans of the General Plan.  In response, the State Legislature passed AB 283.  It

11  added Government Code Section 65680(d).  That subsection mandated that the City of Los

12  Angeles make its zoning consistent with its general plan, as all other general law cities and

13  counties were required to do, and most other chartered cities were voluntarily doing.

14       47.      The Los Angeles City Council sued the state to avoid being required to

15  make Los Angeles' zoning consistent with its community plans.  In City of Los Angeles v.

16  State of California (1982) 138 Cal.App.3d 526, 534, the City lost its effort to evade

17  downzoning.  After dragging its feet for several more years and failing to show a good faith

18  effort at implementing the statutory mandatory duty of land use consistency, the City was

19  sued in Federation of Hillside and Canyon Associations v. City of Los Angeles (LA

20  Superior Ct. No. 526,616) and entered a settlement agreement requiring it to rezone all

21  parcels within three years to conform to its general plan (the 35 community plans) lower

22  density land use designations or general plan intent.  The City was placed under the

23  supervision of a court monitor to assure it was done.  It took more than ten years for the

24  parties to agree that the City had made a credible effort to try to bring its zoning into

25  conformity with its general plan.

**AB 283 General Plan Consistency Implemented In Conjunction With**

**The 1988 Hollywood Community Plan**

28       48.      The 1973 HCP, the predecessor to the 1988 HCP, specifically

- 13 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1    acknowledged that development and density in Hollywood would have to be carefully

2    monitored to assure the projected 1990 population could be accommodated without

3    overwhelming the street systems. One objective of the 1973 Plan was: "To designate lands

4    at appropriate locations for the various private uses and public facilities in the quantities

5    and at densities required to accommodate populations and activities projected to the year

6    1990."

7        49.    The 1973 Plan bluntly stated that development should not be permitted if

8    impacts on the local transportation system were overwhelming: "**No increase in density**

9    **shall be effected by zone change** or subdivision unless it is determined that the local

10   streets, major and secondary highways, freeways, and public transportation available in the

11   area of the property involved, are adequate to serve the traffic generated.  Adequate

12   highway improvements shall be assured prior to the approval of zoning permitting

13   intensification of land use in order to avoid congestion and assure proper development."

14   (Emphasis added.)

15       50.    As outlined herein, by 1985, the City prepared an EIR to support adoption

16   of the Hollywood Redevelopment Plan by the City Council in 1986.  Facing the AB 283

17   settlement agreement requirement to reduce its zoning density, and dealing with the

18   additional regulatory layer of the overlay of the Hollywood Redevelopment Plan, in 1988

19   the City released an EIR for the purpose of updating the 1973 Hollywood Community Plan

20   and coordinate the process with the ongoing AB 283 zoning consistency program.

21       51.    The 1985 Redevelopment Plan EIR described the redevelopment project in

22   Hollywood as: "the primary characteristics of the proposed project are changes in land use

23   designation and changes in development densities, and active encouragement of

24   redevelopment." (1985 Draft Redevelopment Plan EIR, p. 12.)  The 1985 Redevelopment

25   Plan EIR expressly acknowledged the forthcoming rezoning as the EIR was released in

26   November 1985, about five months after the City entered into the settlement agreement in

27   the Hillside Federation case to make its general plans consistent with zoning.  This is how

28   the 1985 Redevelopment Plan EIR described the expected process:

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 14 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA  91101-1504

"The project would require amendment of the Hollywood Community Plan and adoption of the proposed Redevelopment Plan by the City Council of Los Angeles.  By state law [Government Code § 65860(d)(AB 283)], the Redevelopment Plan **and subsequent future development in the project area must conform to the Hollywood Community Plan with respect to land use and the density of development permitted**.  Subsequent to adoption of the Redevelopment Plan, City Planning Department **would initiate rezonings as needed for zoning designations to be consistent with land use designations in the Community Plan,** as may be amended.  Specific development projects could then be prepared and approved, along with development agreements between CRA and private developers." (1985 Draft Redevelopment Plan EIR, pp. 16-17.) (Emphasis added.)

The 1985 Draft Redevelopment Plan also acknowledged that the rezoning required by the Redevelopment Plan would be implemented as part of the Hollywood Community Plan Update: "The project would require some rezoning of land in the Redevelopment Area. The City has plans to undertake extensive rezoning of the Hollywood area during 1986-87." (1985 Draft Redevelopment Plan EIR, p. 35.)

52.     On February 8, 1988, the City released the Draft EIR for the 1988 Hollywood Community Plan ("1988 HCP"). The 1988 HCP EIR explained to the public that modifications in zoning density laws would be required to comply with state law: "State law [Government Code Section 65860(d)] requires that the General Plan and zoning in the City of Los Angeles be consistent.  To comply with this law, the City now requires that what the Plan says about generalized use, density and intensity for an area be the same as the zoning assigned to each parcel in that area.  As a result of this law, there are two

things that the Community Plan regulates definitively: 1) the general type of use, and 2) the residential density (number of units) or commercial intensity (square feet of floor space) permitted in a particular area."  (1988 HCP EIR, p. 14.)

53.     Of the four reasons the City had to conduct the 1988 update of the Hollywood Community Plan, one was: "The City is under court order to bring its General Plan and zoning into conformance by March 1988."

54.     In 1986, the former Community Redevelopment Agency of Los Angeles adopted the 1986 Hollywood Redevelopment Plan that modified the land use designations and densities within the Project area (core Hollywood area) to avoid the environmental impacts of the maximum buildout under the City's 1946 zoning.  In 1988, the Los Angeles City Council adopted the 1988 HCP for the areas of the Hollywood Community Plan area outside the Redevelopment Project area.  This created what was colloquially referred to as "the donut hole" [the Hollywood Redevelopment Plan area], and "the donut" [the 1988 Hollywood Community Plan update for the areas of the Hollywood Community outside the redevelopment plan "donut hole."]  Land within the donut is subject to the land uses designations and density limits of both the Hollywood Community Plan and the Hollywood Redevelopment Plan.

55.     Separate from the Hollywood Redevelopment Plan and 1988 Hollywood Community Plan Update process, the Los Angeles City Planning staff carried out the General Plan Consistency program for Hollywood under City Planning Case No. 86-835. Petitioner is informed and believes, and based thereon alleges, that on July 28, 1988 and August 11, 1988, the City Planning Commission adopted and recommended to the City Council in Planning Case No. 86-835 a resolution "to achieve consistency between zoning and the adopted plan as required by Government Code Section 65680(d) and settlement of Superior Court Case No. C526616 **that amended the Hollywood Community Plan itself** to designate the properties in the various subareas as recommended exhibits to the staff report.  Petitioner is informed and believes, and based thereon alleges, that on December 13, 1988, the City Council subsequently adopted the Resolution which amended into the

- 16 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1  Hollywood Community Plan the designation of a series of permanent [Q] Qualified

2  Conditions and permanent "D" Development Conditions into the Hollywood Community

3  Plan as set forth in various zoning map amendments affecting subareas and particular

4  parcels of land.

5        56.    Even though a number of parcels were shown on the HCP map with

6  Regional Center land use designation that under certain circumstances might be as high as

7  6:1 Floor Area Ratio ("FAR"), the amendment of the HCP to include the general plan

8  consistency program downzoned many Regional Center lots through the use of the

9  permanent [Q] and "D" Development Conditions.  For instance, a typical "D"

10  Development Condition read as follows:

11       "The total floor area contained in all buildings on a lot shall

12       not exceed two (2) times the buildable area of the lot.  A

13       project may exceed the 2:1 floor area ratio provided that:

14            a.    Community Redevelopment Agency

15       Board finds that the project conforms to: (1) the Hollywood

16       Redevelopment Plan, (2) a Transportation Program adopted

17       by the Community Redevelopment Agency Board pursuant to

18       Section 518.1 of the Redevelopment Plan and, if applicable,

19       (3) any Designs for Development adopted pursuant to Section

20       503 of the Redevelopment Plan; and

21            b.    The project complies with the following

22       two requirements:

23       A Disposition and Development Agreement or Owner

24       Participation Agreement has been executed by the

25       Community Redevelopment Agency Board; and the Project is

26       approved by the City Planning Commission, or the City

27       Council on appeal, pursuant to the procedures set forth in

28       Municipal Code Section 12.24-B.3."

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 17 -

1       57.    Under the City's General Plan Consistency Program, the widespread use of

2  "D" Development Conditions like this were determined by the City Council to be

3  necessary to bring the City's HCP and zoning into conformity, as mandated by

4  Government Code Section 65680(d) and the settlement agreement signed by the Hillside

5  Federation case.

6       58.    Using a process that amended the HCP to incorporate permanent conditions

7  to reduce the zoning of certain parcels of land in the Hollywood Redevelopment Plan area,

8  the City Council committed itself to enforce these zoning conditions as provisions of the

9  HCP.  Due to the General Plan's superiority to the municipal code, these conditions on

10  parcels in Hollywood cannot be deleted, amended, or substituted unless or until the

11  Hollywood General Plan is comprehensively planned and the cumulative impacts of all

12  densities are reassessed under a new and adequate environmental review that reconfirms

13  general plan consistency, or the particular permanent condition imposed on any particular

14  parcel is satisfied by the redevelopment agency implementing the required transportation

15  specific plan set forth in the Hollywood Redevelopment Plan, and finding a project

16  proposed for that particular parcel consistent with the adopted Transportation Plan.

17  Because the record is devoid of any evidence that the former redevelopment agency, or its

18  successor, CRA/LA has ever adopted a Transportation Plan for the Hollywood

19  Redevelopment Plan area, it is currently impossible for any of the permanent "D"

20  Development Conditions that contain such a condition to be cleared to allow a density

21  higher than the limit imposed by the condition.

22  **GENERAL ALLEGATIONS ABOUT THE WILCOX HOTEL PROJECT**

23       59.    Petitioner is informed and believes, and based thereon alleges, that Real

24  Party brought forward to the City Planning Commission and City Council an application

25  that sought the following actions and approvals:  (1) Vesting Zone Change from C4-2D

26  Zone to [T][Q]C4-2D Zone (to permit residential and commercial uses); (2) Height District

27  Change which increases the allowed Floor Area Ratio ("FAR") from 2:1 to an FAR of

28  5.5:1; (3) a Zoning Administrator's Adjustment to permit a zero side yard in lieu of the

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 18 -

1  required 14-foot side yards at the second floor level; and (4) a Site Plan Review for a

2  mixed-use hotel/restaurant project with 200 rooms, 144 parking spaces, and a total of about

3  9,000 square feet of restaurant uses.

4      60.    The City designated the City Land Use Entitlements for the application as

5  Case No. CPC 2014-3706-VZC-HD-ZAA-SPR ("CPC Entitlements").

6      61.    The City caused a Mitigated Negative Declaration ("MND") for the Project

7  to be prepared and designated as ENV-2014-3707-EAF.

8      62.    On or about September 10, 2015, the City Planning Commission held a

9  public hearing and recommended approval of the Project.

10      63.    On or about October 19, 2015, the City Planning Commission issued a

11  corrected decision letter recommending that the City Council adopt a Vesting Zone Change

12  and Height District Change for the subject site, approve the adjustments of the side yards,

13  approve the site plan review, and adopt the Project MND.

14      64.    On or about January 26, 2016, a hearing was held before the Planning and

15  Land Use Management ("PLUM") Committee of the City Council, where Petitioner and

16  others objected to the proposed Project.

17      65.    On or about February 3, 2016, a hearing was held before the full City

18  Council, where Petitioner's representative and others objected to the proposed Project.

19  Over the objections of Petitioner and others, the City Council approved the MND and the

20  Project, including all of the Land Use Entitlements.

21      66.    On or about May 5, 2016, without giving notice to Petitioner or any

22  property owner or tenant in nearby buildings, the CRA/LA acting as a responsible agency,

23  after allowing only 2 minutes of presentation by any affected person, considered and

24  approved the OPA, and adopted the City's MND as the supporting environmental

25  document.

26      67.    Petitioner and other interested parties and individuals made oral and written

27  comments on the Project and MND, and raised each of the legal deficiencies asserted in

28  this petition.  Petitioner has exhausted all administrative remedies.  Specifically,

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 19 -



1  Hollywood Heritage, represented by Fran Offenhauser, submitted in her land use appeal

2  written materials including a copy of Ordinance No. 165,660, implementing CPC Case No.

3  86-0835-GPC concerning general plan consistency that imposed the 2:1 FAR limitation set

4  forth in Paragraph 56 on the project parcel for the Wilcox Hotel.  At proceedings before the

5  PLUM Committee, Ms. Offenhauser testified that she was one of the principal planners for

6  the City on the 1988 Hollywood Community Plan Update, demonstrating she was a land

7  use expert on these issues, and pointing out how the staff report at page A-6 erroneously

8  stated that the "D" limitations on the parcel could be removed with "no action".  She also

9  specifically noted that the MND failed to disclose or analyze this critical issue.

10       68.     A Notice of Determination for certification of the MND and project

11  approval was posted by the City with the Los Angeles County Clerk in Norwalk, with a

12  posting date of February 4, 2016.  A Notice of Determination for certification of the MND

13  and project approval was posted by the CRA/LA with the Los Angeles County Clerk in

14  Norwalk, with a posting date of May 5, 2016.

15       69.     Petitioner has performed all conditions imposed by law precedent to filing

16  this action, including complying with the requirement of Public Resources Code Section

17  21167.5 by providing notice to the City and the CRA/LA that this action would be filed.

18       70.     Petitioner will also serve a copy of this petition, and each amended petition,

19  on the California Attorney General as required by law.

20       71.     Petitioner has no plain, speedy or adequate remedy available in the ordinary

21  course of law to redress the claims alleged in this petition.

22       72.     Petitioner as well as members of the general public will suffer irreparable

23  harm if the relief requested herein is not granted and the Project is commenced based upon

24  the MND, Land Use Entitlements, and OPA granted for the Project.

25                              **FIRST CAUSE OF ACTION**

26                        **(Violation of CEQA And CEQA Guidelines;**

27                   **Improper Approval of Mitigated Negative Declaration)**

28       73.     Petitioner realleges and incorporates herein by reference the allegations of

- 20 -

SECOND AMENDED VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY RELIEF

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504



1    Paragraphs 1 through 72, inclusive, of this petition and complaint.

2        74.    The record contains substantial evidence to support a fair argument that the

3    Project may cause significant, unmitigable impacts to the environment, including but not

4    limited to land use, transportation, traffic operational, circulation, emergency response

5    times, parking, pedestrian safety, noise, air quality and health risks, historic resources,

6    shade/shadow, public services, cumulative impacts and growth inducing impacts, and

7    further, that the City also illegally piecemealed the Project, in violation of CEQA.

8        75.    By adopting the MND, the City, as lead agency, and the CRA/LA, as

9    responsible agency,  have prejudicially abused their discretion and failed to proceed in the

10   manner required by law, requiring this Court to issue a writ of mandamus vacating and

11   invalidating all Project approvals, including all Land Use Entitlements and the OPA, which

12   rely on the illegal MND.

13       76.    Petitioner is further informed and believes, and based thereon alleges, that

14   the City improperly approved the Project while deferring mitigation for potentially

15   significant impacts, as well as deferring studies, alternatives analysis, and consideration

16   and implementation of potential mitigation measures, all in violation of CEQA.

17       77.    In violation of Public Resources Code Section 21082.2(d), the City and the

18   CRA/LA refused to prepare an Environmental Impact Report ("EIR") or further study any

19   of the issues raised by Petitioner and other members of the public.

20       78.    Petitioner as well as members of the general public will suffer irreparable

21   harm if the relief requested herein is not granted and the Project is commenced without

22   compliance with all applicable provisions of the California Environmental Quality Act

23   ("CEQA").

24                          **SECOND CAUSE OF ACTION**

25   **(Failure Of City To Provide Full Environmental Review Documents And Notice To**

26   **Transportation Planning Agency And Public Agency With Transportation Facilities)**

27       79.    Petitioner realleges and incorporates herein by reference the allegations of

28   Paragraphs 1 through 78 inclusive, of this petition and complaint.

- 21 -

SECOND AMENDED VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY RELIEF

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1    80.   On July 13, 2015, the City released through the State Clearinghouse the

2    second mitigated negative declaration, i.e., the operative MND, for the Project.  Among the

3    state agencies the State Clearinghouse forwarded the MND to was the California

4    Department of Transportation ("Caltrans"), District 7 in Los Angeles.

5    81.   The MND stated at page 1-2 that "This Initial Study (IS) is organized

6    into six sections as follows:

7    •   <u>Introduction:</u>  This section provides introductory information such as

8        the Project title, the Project applicant, and the lead agency for the

9        Project.

10   •   <u>Project Description:</u>  This section provides a detailed description of

11       the environmental setting and the Project, including project

12       characteristics and environmental review requirements.

13   •   <u>Initial Study Checklist:</u>  This section contains the completed Initial

14       Study Checklist.

15   •   <u>Environmental Impact Analysis:</u>  Each environmental issue identified

16       in the Initial Study Checklist contains an assessment and discussion

17       of impacts associated with each subject area.  Then the evaluation

18       identifies potentially significant effects, as identified in the Checklist,

19       mitigation measures are provided to reduce such impacts to a less

20       than significant level.

21   •   <u>List of Preparers:</u>  This section provides a list of City personnel, other

22       governmental agencies, and consultant team members that

23       participated in the preparation of this IS.

24   •   **<u>Appendices:</u>  Includes various documents and information used**

25       **in the preparation of this IS."**  (Emphasis added.)

26   82.   Petitioner is informed and believes, and based thereon alleges, that when the

27   City, Real Party, or representative of these parties, forwarded an electronic version of the

28   MND to the State Clearinghouse and other interested parties, the document forwarded to

- 22 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

reviewing state agencies or other interested parties did NOT include any of the appendices. The appendices included the various technical studies and data that the text of the MND cites to and relies upon as alleged substantial evidence to support the conclusions of the study checklist and environmental analysis in the main body of the MND.  Consistent with this failure to include the technical appendices, the electronic version of the same document placed in the online City Council File 15-1320, including through the date of the filing of this lawsuit, also has the first five sections, but NONE of the supporting technical appendices and studies that allegedly supported the City's approval of the Project and Land Use Entitlements.

83.     On August 11, 2015, Caltrans responded to the City's MND.  In its letter, Caltrans specifically raised the issue of the missing technical appendices and studies that should have been attached to the MND:  "The MND information submitted does not contain a traffic impact analysis, if one has been prepared please provide a copy for our review.  Otherwise, Caltrans requests that a traffic impact analysis is prepared."

84.     Petitioner is informed and believes, and based thereon alleges, that the City ignored the Caltrans comment letter and never recirculated the MND with any of the supporting technical appendices and studies, including the missing traffic study that Caltrans objected to as being missing from the MND circulated to the reviewing state agencies and the interested public.

85.     The Caltrans comment letter additionally stated that the Project may have an impact on transportation facilities "when combined with numerous other development projects."  Thus, Caltrans as a reviewing agency asked for not only a traffic analysis, but an examination of potential cumulative impacts of the Project in conjunction with the many other past, ongoing and reasonably foreseeable Hollywood projects in the area.

86.     Petitioner is informed and believes, and based thereon alleges, that Caltrans asserted that the Project might have areawide significance, but that the City had not provided a traffic analysis to enable Caltrans' review of the potential cumulative impacts on its facilities, including "potential transportation impacts to US-101 ramp intersections at

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 23 -



1  Cahuenga Boulevard and Sunset Boulevard."

2        87.     Petitioner is informed and believes, and based thereon alleges, that the

3  MND was circulated by the State Clearinghouse to all state agencies which the City or its

4  representatives had identified as having potential jurisdiction over parts of the Project,

5  potential mitigation measures associated with the Project, and/or public facilities that may

6  be affected by the Project.

7        88.     Public Resources Code Section 21092.4 requires consultation with public

8  agencies with jurisdiction over facilities that might be affected by Project with potential

9  statewide, regional, or areawide significance.  The act of consultation, as provided in

10  Section 21092.4, requires at a minimum that such a transportation planning agency or

11  public agency "shall be notified of, and provided with copies of, environmental documents

12  pertaining to the project."  Petitioner is informed and believes, and based thereon alleges,

13  that the City never responded to the Caltrans' August 11, 2015 comment letter where

14  Caltrans provided information relevant to a legally adequate and complete environmental

15  review of the Project, and made a specific request to be provided with the traffic analysis if

16  it existed, and if it did not, demanding that a full traffic analysis be conducted.  In its

17  comment letter Caltrans letter specifically listed the requirements for a proper traffic

18  analysis.

19        89.     In violating the mandate of Public Resources Code Section 21092.4 to

20  provide complete copies of the technical appendices and studies that allegedly supported

21  the conclusions of the MND, the City has failed to proceed in accordance with law,

22  requiring invalidation of the MND and all of the City's Land Use Entitlements, which rely

23  on the invalid MND.

24        90.     The CEQA Guidelines provide further details of lead agencies' mandatory

25  duties with respect to projects of statewide, regional, or areawide significance including

26  CEQA Guideline Section 15073, subdivision (d), which imposes a mandatory duty to "send

27  copies of the proposed negative declaration or mitigated negative declaration to the State

28  Clearinghouse for distribution to state agencies."  Petitioner is informed and believes, and

- 24 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1   based thereon alleges, that the City forwarded the MND, although an incomplete version of

2   it, to the State Clearinghouse because the Project is one of significance requiring

3   consultation.

4        91.    Further, despite the fact that Caltrans submitted a comment letter on the

5   proposed MND, Petitioner is informed and believes, and based thereon alleges, that the

6   City, in violation of CEQA Guideline Section 15073, subdivision (e), failed to give

7   Caltrans notice of all the public hearings "to be held for the project for which the document

8   was prepared."

9        92.    In violating the mandate of CEQA Guideline Section 15073, subdivision (e)

10  to provide a commenting agency like Caltrans notice of all public hearings "to be held for

11  the project for which the document was prepared," the City again failed to proceed in

12  accordance with law.

13       93.    In so doing, the City derailed the mandatory public review processes by

14  state reviewing agencies, including Caltrans, because the MND forwarded to state

15  agencies, including Caltrans, was incomplete and without any of the required technical

16  appendices and studies.  The City also ignored Caltrans' requests for a traffic study, and the

17  City failed to give Caltrans notice of all public hearings "to be held for the project for

18  which the document was prepared".

19       94.    For the foregoing reasons, the City has failed to proceed in accordance with

20  law, and Petitioner is entitled to issuance of a writ of mandate setting aside the MND and

21  all Project approvals issued in reliance on the MND.

22           **THIRD CAUSE OF ACTION**

23      **(Illegal Project City Approval By Not Requiring A Zoning Variance**

24         **For Rooftop Outdoor Dining/Drinking Areas)**

25       95.    Petitioner realleges and incorporates herein by reference the allegations of

26  Paragraphs 1 through 94 inclusive, of this petition and complaint.

27       96.    In February 2015, the City released for public review a proposed mitigated

28  negative declaration for an earlier version of the Project.  That version included a request

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 25 -

1   for: "a Variance to permit an outdoor seating area above the ground floor to allow service

2   of food and/or alcohol on the second-floor pool deck and roof deck." The February 2015

3   mitigated negative declaration is an admission by the City and Real Party that a variance

4   was required in order to locate an outdoor eating/drinking area on the second floor level,

5   which is above the ground floor.

6       97.     Multiple development proposals approved by the City in recent years in

7   Hollywood have required disclosure of, mitigation of, and zoning variance approval of

8   outdoor eating and drinking areas above the ground floor. This includes: CPC-2008-3440-

9   ZC-CUB-CU-ZV-DA-HD (2013) at 1720-1770 Vine Street (Millennium Hollywood), and

10  CPC-207-ZC-HD-CUB-CU-ZV-SPR (2008) at 6415 Selma Avenue (Selma Hotel).

11      98.     After severe criticism of the Project at the Hearing Officer hearing, the

12  Project was revised to delete the pool and outdoor eating and drinking area from the second

13  floor of the building and to move it up to the eleventh floor rooftop. The revised design

14  shown on page 2-27 of the MND depicts a 69-seat rooftop restaurant bar with "operable

15  glass wall" doors that enable this facility to operate in the open air whenever the operable

16  glass walls are opened up. Additionally, the floor plan for the roof shows an uncovered an

17  outdoor 36-seat area with chairs and tables immediately adjacent to one of the operable

18  glass walls of the rooftop restaurant bar. This outdoor eating and seating area is also

19  immediately adjacent to the pool deck. The roof top floor plan depicts two retractable

20  cabanas with couches and tables, and multiple pool lounging chairs with small tables

21  between some of the lounge chairs. The hotel pool area, the rooftop restaurant both

22  covered and uncovered, share the same bathrooms. In essence, with the exception of a

23  929-square-foot fitness area for hotel guests only, the entire rooftop of the building is

24  dedicated to restaurant/drink activity, most of which is uncovered and outdoors, and even

25  the "enclosed" restaurant area is not fully enclosed because 50% of the restaurant walls are

26  operable glass walls that open the restaurant noise and activity to the outside. The City

27  confirmed that most of the rooftop area will be oriented toward an all-day outdoor party

28  space, with the following description of the extent of the alcohol permit Real Party will

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 26 -

1   seek at a later time from the City: "a Master Conditional Use Permit for the on-site sale and

2   consumption of a full line of alcoholic beverages in the following locations:  (a) the ground

3   floor restaurant and lobby bar from 8 a.m. to 2 a.m. daily; (b) the roof restaurant and pool

4   deck from 8 a.m. to 2 a.m. daily; (c) controlled access liquor cabinets to be located within

5   guest rooms at all times; (d) guest rooms by way of room service at all times."

6       99.     Los Angeles Municipal Code Section 12.03 defines an Outdoor Eating Area

7   as "covered or uncovered portion of a ground floor restaurant which is not completely

8   enclosed within the building; is used primarily for the consumption of food and/or drinks

9   by the patrons of the restaurant; and is not larger than 50 percent of the dining area of the

10  ground floor restaurant."  Given that that outdoor space of the restaurant/bar/cabana/pool

11  deck totals 4,781 square feet, and the "enclosed" restaurant/bar with operable glass walls

12  totals 1,430 square feet, none of this arrangement would meet the definition of a ground

13  floor Outdoor Eating Area if it were on the first floor.  On this ground, the Project as

14  proposed and approved would not properly qualify as an Outdoor Eating Area above the

15  ground floor because the outdoor portion is much greater than the indoor enclosed area and

16  cannot even meet the definition of an Outdoor Eating Area.

17      100.    LAMC Section 12.14A(1)(a)(10), applicable to projects in the C2 zone,

18  limit by-right Outdoor Eating Areas in size and restrict them to the ground floor of the

19  building.  Any proposal to maintain an Outdoor Eating Area above the ground floor would

20  violate LAMC Section 12.14 unless Real Party filed for and obtained a variance under

21  LAMC Section 12.27 to allow development of an Outdoor Eating Area above the ground

22  floor.  Additionally, in order to qualify as an Outdoor Eating Area, the rooftop restaurant

23  would have to be fully enclosed and have such square footage that the Outdoor Eating Area

24  will be no more than 50% of the enclosed indoor restaurant.

25      101.    The City has no authority to approve this Project without the processing of a

26  variance for the rooftop Outdoor Eating Area.  The processing of a variance would require

27  factual findings justifying the variance request and strict usage conditions would be

28  necessary to prevent the Outdoor Eating Area from becoming a nuisance to adjoining

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 27 -



1  landowners including Petitioner.

2      102.    In approving the Project without requiring the application for and proper

3  processing of a variance under LAMC 12.27, the City has failed to proceed in accordance

4  with law and Petitioner is entitled to a writ of mandate setting aside the Project and Land

5  Use Entitlements.

6                          **FOURTH CAUSE OF ACTION**

7              **(Violation of City Charter Section 558; Unsupported Findings)**

8      103.    Petitioner realleges and incorporates herein by reference the allegations of

9  Paragraphs 1 through 102, inclusive, of this petition and complaint.

10     104.    Los Angeles City Charter Section 558 requires that before a proposed

11  zoning ordinance, resolution or order may be adopted, the City Planning Commission and

12  City Council must determine "the relation of the proposed ordinance, order or resolution to

13  the General Plan and, in the case of proposed zoning regulations, whether adoption of the

14  proposed ordinance, order or resolution will be in conformity with public necessity,

15  convenience, general welfare and good zoning practice."

16     105.    During the entire proceedings from and through the Hearing Officer

17  Hearing, the City Planning Commission hearing, the City Council hearings, and during the

18  environmental review of the Project, significant comments and objections were submitted

19  orally and in writing regarding the Planning Department's inaccurate description and

20  analysis of the history of the zoning for the Project site.  Additionally, significant

21  objections were submitted regarding how the City's proposal to change the zoning to triple

22  the FAR as had been restricted by the City pursuant to AB 283 (Government Code Section

23  65860) was inconsistent with the implementation of the General Plan Consistency program

24  as it applied to the Project site.

25     106.    At no time, either in the MND, in any staff report, or in the staff

26  presentations to the City Planning Commission and the City Council, did the City Planning

27  staff ever provide an accurate analysis of the history of General Plan and zoning

28  restrictions imposed on the Project site by law.

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 28 -

107.   Additionally, throughout the adopted findings for the Project, the City
repeatedly and erroneously claimed that an increase in FAR from 4.5:1 to 6.0:1 could be
approved by the City Planning Commission.  This is legally and factually erroneous as only
the CRA/LA may increase the FAR, and then only upon proper factual findings.

108.   Accordingly, there was no substantial evidence in the record and no factual
basis for the City to adopt the proposed zoning change to modify the FAR for the Project
site to any ratio higher than 2.0:1, which 2.0:1 FAR was imposed to comply with a court
settlement related to AB 283 and compliance with the General Plan consistency
requirement of Government Code Section 65860.

109.   The City's approval of the zone change and FAR modifications to the
Project site without accurate and proper factual basis was a failure to proceed in accordance
with law, and must be invalidated.

110.   Accordingly, Petitioner is entitled to a writ of mandamus overturning the
Land Use Entitlements so that the City limits the Project density, height, and other
attributes to those provided for under the preexisting zoning.

## FIFTH CAUSE OF ACTION

### (Violation of Fair Hearing Rights By The City)

111.   Petitioner realleges and incorporates herein by reference the allegations of
Paragraphs 1 through 110, inclusive, of this petition and complaint.

112.   Government Code Section 65804 imposes a mandatory duty upon cities and
counties, including chartered cities such as Los Angeles, to enact procedural rules for the
conduct of zoning hearings.  Cities across the state cite Section 65804 as a basis for their
enactment of procedural rules for hearings before their city planning commissions and city
councils, including for quasi-judicial hearings.  Since the enactment of Section 65804 in
the early 1970s, the Los Angeles City Council has failed to adopt and publish procedural
rules for its land use/zoning hearings, both legislative and quasi-judicial.

113.   Due to the refusal of the City Council to enact procedural hearing rules and
follow them, land use appellants go to hearings conducted by the Planning and Land Use

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 29 -

1    Committee ("PLUM Committee") of the Los Angeles City Council without knowing in

2    advance what procedures will be followed.  Land use appellants and their representatives

3    are unable to know with any certainty the order of presentation of the case, the number of

4    minutes they will be allowed to present their appeal, whether or not they will be given an

5    opportunity to meet and rebut new information presented by City staff or the applicant, and

6    similar due process procedural matters.

7        114.    On January 12, 2016, the Project was scheduled for a hearing before the

8    PLUM Committee.  The PLUM Committee consists of five City Councilmembers of the

9    15-member Los Angeles City Council.  Under the City Council's Operating Rules, each of

10   its committees, including the PLUM Committee, does not have the authority to take final

11   action on a matter.  Instead, after a hearing before a City Council committee, the

12   committee's recommendation report is forwarded to the City Council to consider in

13   connection with the City Council's final action on legislative and quasi-judicial matters.

14       115.    The hearing scheduled for January 12, 2016 was continued until January 26,

15   2016, when the PLUM Committee conducted a hearing of three land use appeals filed

16   related to the Project approvals recommended by the City Planning Commission, including

17   one filed by Petitioner.  At the outset of the hearing, the acting Chair announced that all

18   three appellants would be given only five minutes in total to present their separately filed

19   appeals.  The appellants were told to divide their five minutes among themselves.

20       116.    Thereafter, the Chair reversed himself.  He announced that he had been

21   informed that each of the appellants should be given five minutes each to present their

22   individual appeals.  Petitioner's representative and an expert in noise together attempted to

23   present whatever issues they could within the limited period of time allowed by the Chair;

24   however, the time allotted, a time that varies at the whim of the Chair from meeting to

25   meeting due to the lack of adopted and published procedural rules, was not sufficient to

26   present all or even some of the complex zoning and environmental issues raised by the

27   case.  The actions of the PLUM Committee deprived Petitioner of a fair hearing at the

28   PLUM Committee level.

- 30 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1    117.   At the conclusion of the PLUM Committee hearing, the PLUM Committee

2 voted to recommend to the City Council that the Project be approved as requested, and that

3 the appeals be denied.  The denial of Petitioner's due process rights was prejudicial because

4 the Committee might have voted differently had Petitioner been given a constitutionally

5 appropriate amount of time to present its case, including given the magnitude of potential

6 impacts on its immediately-adjoining property to the proposed 11-story Wilcox Hotel

7 Project.

8    118.   Prior to February 3, 2016, the City Clerk erroneously placed the item

9 concerning the Project on the portion of the City Council's agenda entitled "Items For

10 Which Hearing Has Been Held," even though the full City Council had not heard any

11 testimony or argument of Petitioner, or any of the other land use appellants.

12    119.   On February 3, 2016, the City Council scheduled the Project on a portion of

13 its meeting agenda entitled "Items for Which Public Hearing Has Been Held."  Petitioner is

14 informed and believes, and based thereon alleges, that some of the other land use appellants

15 were discouraged from attending the City Council meeting because they thought their

16 appeals would not be heard by the City Council because of how the matter appeared on the

17 City Council's meeting agenda.  However, on February 3, 2016, Petitioner's attorney

18 appeared at the City Council meeting and submitted a speaker card in an attempt to present

19 Petitioner's appeal to the full City Council.

20    120.   Even though Petitioner's attorney identified himself as representing a land

21 use appellant before the City Council, the Council President only allowed Petitioner one

22 minute to present his appeal.  One minute was not sufficient time for members of the

23 remainder of the City Council to comprehend the nature of the appeal, and similarly, one

24 minute was not sufficient time for Petitioner's attorney to explain the complex zoning and

25 environmental deficiencies to make its case.

26    121.   Additionally, during the full City Council "hearing", the City Clerk

27 announced there was an amending motion, but the text of the proposed motion was neither

28 read aloud, given to the land use appellants so they might prepare a considered response,

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA  91101-1504

- 31 -

1  nor distributed to the public at the back of City Hall chambers.  Petitioner is informed and

2  believes, and based thereon alleges, that instead of providing the amending motion to the

3  land use appellants such as Petitioner, the amending motion was silently posted on an

4  unmarked bulletin board that sits behind marble pillars in the City Council chamber.  No

5  one is permitted to remove this single copy of the amending motion.  No procedural land

6  use/zoning hearing rule of the City Council, made available to land use appellants or the

7  public, informs anyone about this amending motion process.  In fact, Petitioner's attorney

8  was not cognizant of the amending motion until he found it on the City Council File system

9  the day after the hearing.  Accordingly, Petitioner was given no reasonable opportunity to

10  know the content of the amending motion, nor provided any time to formulate a response to

11  it, even if the one minute time to present the appeal had been adequate, which it was not.

12      122.   The actions of the Los Angeles City Council in failing to have uniform

13  hearing procedures for its hearings that guarantee a fair amount of time for a land use

14  appellant to present its case and/or to respond to amending motions was a failure to

15  proceed in accordance with precepts of fundamental fairness.

16      123.   The actions of the Los Angeles City Council in allowing only five minutes

17  at the PLUM Committee hearing was a failure to proceed in accordance with minimum

18  concepts of due process of law, including given the value of the property interests of

19  Petitioner as an owner of property adjoining the Project site.

20      124.   The actions of the Los Angeles City Council in allowing only one minute at

21  the full City Council hearing was a failure to proceed in accordance with minimum

22  concepts of due process of law, including given the value of the property interests of

23  Petitioner as an owner of property adjoining the Project site.

24      125.   It is a fundamental precept of due process of law that he who decides must

25  hear.  Having refused to afford Petitioner any fair amount of time to be heard before taking

26  an action that may deprive Petitioner of valuable property rights as an adjoining landowner,

27  the City failed to provide a fair hearing.

28      126.   Accordingly, Petitioner is entitled to a writ of mandate overturning the

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 32 -

1   City's approval of the MND and all Land Use Entitlements and approvals, and must be

2   afforded a fair hearing before all planning and approval bodies of the City, and in

3   particular, the PLUM Committee and the City Council.

4   <u>SIXTH CAUSE OF ACTION</u>

5   **(Declaratory And Injunctive Relief**

6   **City's Failure To Comply With The Legislative Mandate In Government Code**

7   **Section 65804)**

8   127.   Petitioner realleges and incorporates herein by reference the allegations of

9   Paragraphs 1 through 126, inclusive, of this petition and complaint.

10   128.   An actual and present controversy has arisen and now exists between

11   Petitioner, on the one hand, and the City, on the other, in that the City has an overarching,

12   quasi-legislative policy of City officials of refusing to enact fair land use hearing rules and

13   procedures for zoning hearings conducted by the Los Angeles City Council, which are

14   mandated by Government Code Section 65804.

15   Four-Decade Failure To Adopt Fair Procedures For Land Use/Zoning Hearings

16   129.   In November 1966, a Los Angeles County Civil Grand Jury report found

17   credible evidence that the City's zoning processes were improperly influenced by campaign

18   contributions, friendships and other extra-hearing influences.  After investigations by the

19   Los Angeles Times and the Los Angeles County District Attorney, criminal bribery

20   charges resulted in pleas and convictions, including against a Los Angeles City

21   Councilmember.

22   130.   The Citizens Committee on Zoning Practices and Procedures was appointed

23   by the City Council in March 1967 as a result of the Grand Jury Report.  After months of

24   public hearings and testimony, it issued a first report in July 1968 making 36

25   recommendations, including eight recommendations regarding procedural matters in City

26   planning and zoning hearing processes.  In its final May 1969 report, the Citizen's

27   Committee recommended amendment of the Municipal Code "to provide simple and

28   uniform procedural requirements governing applications, notices, hearings, time limits and

- 33 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1  appeals for all types of planning and zoning codes." (Recommendation 16.)

2      131.    Pursuant to its recommendations, the Citizen's Committee provided a set of

3  draft municipal code amendments.  Despite recommendations to the City Council to enact a

4  simple and uniform set of procedural rules, including rules for hearings before all appellate

5  bodies including the City Council, as of the filing of this pleading, the City Council has

6  failed to enact any significant procedural rules for its own operation of land use and zoning

7  hearings.  As a result, the conduct of a City Council hearing is at the whim and discretion

8  of the PLUM Committee Chair or the City Council Presiding Officer.

9      132.    In the early 1970s, the state legislature enacted Government Code Section

10  65804 which mandated some of the same type of reforms that the Citizen's Committee

11  recommended, including the requirement to adopt and publish procedural rules for land

12  use/zoning hearings.  Petitioner is informed and believes and thereon alleges that the

13  legislation adding Section 65804 was sponsored by former Assemblymember Yvonne

14  Braithwaite Burke whose district included portions of the City of Los Angeles where unfair

15  hearing processes had been documented by the Citizen's Committee report.  The legislation

16  passed as Section 65804 provides:

17          "It shall be the purpose of this section to implement minimum
            *procedural standards for the conduct* of City and county zoning
18          hearings.  Further, it is the intent of the Legislature that this section
            provide those standards to *insure uniformity of, and public access to,*
19          *zoning and planning hearings* while maintaining the maximum
            control of cities and counties over zoning matters.
20

21          "The following procedures shall govern City and county zoning
            hearings:
22
            "(a)    All local City and county zoning agencies ***shall develop and***
23          ***publish procedural rules for conduct of their hearings*** so that all
            interested parties shall have advance knowledge of procedures to be
24          followed.  The procedural rules shall incorporate the procedures in
            Section 65854."  (Emphasis added.)
25

26      133.    Section 65804 requires the City to develop and publish actual rules for the

27  conduct of City zoning and land use hearings. Section 65804 does not just require by its

28  plain terms that hearings be conducted; rather, section 65804 requires the development and

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 34 -

1  publishing of rules for the conduct of the hearings that are held by a city or county.  Rules

2  for the uniform access to and conduct of zoning hearings concern themselves with how

3  documentary evidence and argument is submitted to the administrative zoning decision

4  making body, and to assure parties have an opportunity to respond to such written

5  submissions before an administrative decision is rendered.  They also specify an orderly

6  process for the administrative zoning decision making body to hear testimony, argument,

7  and rebuttal before rendering an administrative decision at the public hearing that is

8  conducted.  As established by California case law, such rules for the conduct of

9  administrative zoning hearings do not contemplate formal trial-like rules such as a power to

10  subpeonea witnesses, conduct formal pre-hearing discovery, require all witnesses to be

11  sworn, or to permit cross-examination of witnesses, but they do contemplate rules for the

12  orderly and fair conduct of zoning hearings based upon evidence, testimony, and argument

13  received and considered by the administrative decision making body in a fair way, and to

14  assure the ability of all parties to make a complete and accurate administrative record.

15      134.    Past official actions by the City of Los Angeles itself evidence the City's

16  understanding that administrative zoning decision making bodies are required to develop

17  and adopt rules of conduct for zoning hearings conducted by the City's administrative

18  bodies.  Petitioner is informed and believes, and thereon alleges that the City of Los

19  Angeles Planning Commission has developed and adopted what it calls "rules and

20  operating procedures".  These rules have been supplemented in recent years with a set of

21  rules related to written submissions of evidence and argument to the City Planning

22  Commission and its administrative record.  Taken together, these operating rules specify

23  rules for the submission of administrative evidence and argument to the administrative

24  record and for consideration by the City of Los Angeles Planning Commission, and specify

25  a process for the City Planning Commission to hear testimony, argument, and rebuttal

26  before deliberating and rendering an administrative decision.

27      135.    In 2000, voters of the City approved a charter reform proposal that, among

28  other things, created area planning commissions, to hear quasi-judicial zoning appeals,

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 35 -

1   instead of the former city-wide board of zoning appeals which was abolished.  Petitioner is

2   informed and believes, and thereon alleges that upon voter approval of the charter reform

3   proposal, the City created seven area planning commissions with jurisdiction over zoning

4   cases arising out of projects within their geographically defined areas.  The seven area

5   planning commissions are: (1) Central Area Planning Commission, (2) East Los Angeles

6   Area Planning Commission, (3) South Los Angeles Area Planning Commission, (4) Harbor

7   Area Planning Commission, (5) West Los Angeles Area Planning Commission, (6) South

8   Valley Area Planning Commission, and (7) North Valley Area Planning Commission.

9   Petitioner is informed and believes and thereon alleges that each of the newly formed area

10  planning commissions took official action to develop and adopt their own operating rules

11  for their respective commissions, largely patterned upon the operating rules of the City

12  Planning Commission.  Recently, the area planning commissions have also adopted rules

13  related to the submission of written evidence and argument to the area planning

14  commission for consideration and inclusion in the administrative record.  Accordingly,

15  these operating rules of the area planning commissions include rules about the submission

16  of written evidence and argument, and an orderly process for the conduct of zoning

17  administrative hearings.

18       136.   Based upon the foregoing, the City of Los Angeles City Planning

19  Commission and all seven of the Los Angeles City Area Planning Commissions have

20  developed and adopted operating rules that give "interested persons . . . advance knowledge

21  of the procedures to be followed" at the hearings that the various City planning

22  commissions are required to conduct by law.  While various provisions of the Los Angeles

23  Municipal Code might require that any one of these planning commissions conduct a

24  zoning administrative hearing, none of these Los Angeles City planning commission

25  operating rules are found in the municipal code itself, but rather, are a separate and discrete

26  set of operating rules gathered in a single document and meeting agendas for each planning

27  commission and promulgated by the City.  By their terms, none of the operating rules

28  adopted by the Los Angeles City Planning Commission or the seven Los Angeles Area

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3ʳᵈ Floor
Pasadena, CA 91101-1504

1  Planning Commissions applies to the conduct of zoning hearings when the Los Angeles

2  City Council sits as an administrative zoning decision making body.

3       137.    Although the Los Angeles City Council often sits as a quasi-judicial

4  administrative decision making body, unlike all other City of Los Angeles administrative

5  zoning decision making bodies, the Los Angeles City Council has failed and refuses to

6  develop and adopt a set of operating rules to govern its own conduct of a zoning

7  administrative hearing when a provision of state law or the Los Angeles Municipal Code

8  requires the City Council to conduct such a zoning hearing.  Accordingly, the Los Angeles

9  City Council has no rules related to the fair submission of written evidence and argument

10 to the City Council for consideration and for inclusion in the administrative record.

11 Additionally, hearings conducted by the City of Los Angeles City Council and its PLUM

12 Committee are at the whim of the chair of the meeting, with no order of proceedings,

13 provisions for land use appellant speaking times, and similar procedures for the fair

14 conduct of such hearings, including the ability of all parties to make a complete and

15 accurate administrative record on all the issues in the zoning case.

16      138.    The Los Angeles City Council stands as one of the only major public

17 entities in the state to have failed to develop and publish rules for the conduct of zoning

18 hearings that state or local laws may require it to conduct.  The following local

19 governmental entities have adopted ordinances or resolutions that cite section 65804 and

20 specify that land use and zoning proceedings must be held in compliance with the

21 requirements of that section and/or call for the creation of rules for such proceedings:

22 Arvin (Sec. 16.40.150), Berkeley (Resolution 67,500), Buena Park (19.112.030), Calexico

23 (Sec. 16.52.080), Colton (Sec. 18.58.102), Delmar (Sec. 24.65.080), Huntington Beach

24 (Sec. 248.06), Imperial County (Sec. 92303.03, Sec. 92313.03, Sec. 92323.03), Kern

25 County (Sec. 19.103.060), Madera County (Sec. 15.01.070, Sec. 18.110.010), Moraga

26 (Sec. 8.12.080), Orinda (Sec. 17.42.3 ), Palo Alto Planning And Transportation

27 Commission (Bylaws), Pittsburg (Sec. 18.14.030), Ridgecrest (Sec. 20-30.4),  San

28 Anselmo (Resolution 1490), and Suisun City (Sec. 18.62.120).  While not specifically

- 37 -

1  citing section 65804, the following local governmental entities have adopted rules for the

2  hearings of land use and zoning matters are: County of Fresno (Resolution 05-158), San

3  Buenaventura Planning Commission (Resolution 8557), San Diego County Planning

4  Commission Policy (Policy PC-2), San Jose City Planning Commission (Policy 64-1) and

5  West Hollywood (Resolution 13-4451).  Petitioner is informed and believes, and thereon

6  alleges that the number of California cities and counties who have adopted zoning

7  administrative hearing procedural rules, citing section 65804, or consistent with section

8  65804, far exceeds this list that was compiled solely via a search of rules published on the

9  internet.

10      139.   The San Diego County Planning Commission published specific rules

11  including matters concerning the submission of writings considered evidence, the order of

12  the taking of evidence (including the testimony at hearings), and the time limit for speakers

13  at the hearings.  In its rules, the San Diego Planning Commission said:  "The State of

14  California has enacted certain minimum procedural standards for the conduct of City and

15  county zoning and planning hearings and has imposed the requirement that all local City

16  and county agencies publish procedural rules for conduct of their hearings.  This action was

17  taken with the stated intent of ensuring uniformity of, and access to, such hearings while

18  maintaining the maximum control of cities and counties over zoning matters.  (Government

19  Code Section 65804.)"

20      140.   The San Francisco Planning Commission in Appendix A to its Rules and

21  Regulations specifies the timing of submittals, hearing procedures for discretionary and

22  mandatory review, cases, and CEQA appeals, and the submission of revisions.

23      141.   The San Jose Planning Commission in Article IV of its rules provides

24  detailed process for the public hearings, and the taking and marking of evidence and

25  testimony.

26      142.   The Ventura Planning Commission, citing Section 65804, adopted "Rules of

27  Procedure For the Conduct of Business and Hearings on Land Use Matters", which specify

28  in detail in Section 4 how evidence is handled, the time for filing submissions and

- 38 -



1  testimony at hearings.

2        143.   The Fresno County Board of Supervisors adopted rules for the conduct of

3  hearings before the Board, Planning Commission and Board of Review.  Those rules, like

4  the rules in San Francisco, San Jose, Ventura and San Diego set out the procedures for

5  taking documentary evidence as well as oral testimony.

6        144.   Resolution 13-4451 of the City Council of City of the West Hollywood

7  includes rules for City Council hearings that provide the process for the public hearings,

8  the taking of written submissions and testimony.

9        145.   Resolution 67,500 of the City of Berkeley provides specific rules for

10  conduct of public hearings on land use matters, including the taking of evidence.

11        146.   Despite having had the tarnish of criminal convictions for bribery in

12  planning and land use matters, a detailed Citizen's Committee report recommending

13  adoption of fair hearing procedural rules, and the enactment of a state law mandating

14  adoption of fair hearing procedural rules, the Los Angeles City Council in the intervening

15  four decades has refused and failed to adopt these land use/zoning hearing reforms in the

16  form of a set of operating rules similar to that applicable to zoning hearings conducted

17  before the City's various subordinate planning commissions.

18        147.   Instead, the City Council has referenced 4 scattered municipal code

19  provisions as "evidence" of compliance with Section 65804.  However, these sections

20  merely specify when the City's planning commissions or City Council must conduct a

21  hearing as part of a particular zoning or land use entitlement process -- not how to conduct

22  it in a uniformly fair way.  For instance, LAMC Section 12.32 speaks of setting hearings

23  and the manner in which an appeal is filed in land use legislative actions, but does not

24  include any provisions respecting the actual conduct of the required hearings.  Likewise,

25  LAMC Section 12.28, which concerns zoning administrator adjustments and slight

26  modifications, requires the setting of hearings but nothing concerning the actual conduct of

27  them.  LAMC Section 12.24 merely provides for the notice and timing of hearings and

28  filings for conditional use permits, but contains nothing regarding how to conduct the

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 39 -

1  required hearing.  As with the others, LAMC Section 12.36 contains no provisions of the

2  conduct of hearings for projects requiring multiple approvals.  The City's four LAMC

3  sections it has previously cited to courts merely describe a few of the City's land use

4  entitlement processes that require hearings and/or a right to appeal.  They fail to comply

5  with the requirements of Section 65804 for the development and publication of rules for

6  conduct of hearings once the parties reach the zoning hearing room.

7         148.    Accordingly, the 4 particular land use entitlement processes set forth in the

8  Los Angeles Municipal Codes and described in the previous Paragraph provides examples

9  of laws that may mandate a City of Los Angeles planning commission or City Council

10  conduct a hearing.  None of these code sections specify the operating rules of such hearings

11  when they are conducted.  Every zoning administrative decision making body of the City

12  of Los Angeles except the City Council itself has taken official action to develop and adopt

13  procedural rules for the conduct of their zoning hearings, and such rules are available from

14  the City so that "interested parties shall have advance knowledge of procedures to be

15  followed."

16         149.    Petitioner is informed and believes, and based thereon alleges, that the City

17  Council will never voluntarily enact rules for the conduct of land use or zoning hearings

18  without the compulsory declaratory or injunctive relief from this Court.

19

20                            **SEVENTH CAUSE OF ACTION**

21                            **(Declaratory And Injunctive Relief**

22    **City Pattern And Practice Of Violation Of Due Process And Fair Hearing Rights)**

23         150.    Petitioner realleges and incorporates herein by reference the allegations of

24  Paragraphs 1 through 149, inclusive, of this petition and complaint.

25         151.    An actual and present controversy has arisen and now exists between

26  Petitioner, on the one hand, and the City, on the other, in that the City has in this case and

27  in other cases demonstrated a pattern and practice that constitutes an overarching, quasi-

28  legislative policy of City officials of refusing to conduct land use appeal hearings so as to

                                          - 40 -

1  ensure that the parties are afforded a fair hearing in accordance with due process of law

2  under the federal constitution, the state constitution, and Code of Civil Procedure Section

3  1094.5.

4  Status of Land Use Appellants

5  152.   Under various provisions of state law (i.e., Government Code Section

6  66452.5(d)), the City Charter (i.e., Sections 562, 563, and 564), and various City Municipal

7  Code provisions, persons aggrieved by a City decision involving the use or development of

8  land have a statutory- or Municipal Code-created right to timely appeal the decision, and to

9  participate in a land use appeal hearing before the City Council.  Having been granted a

10  right to file an administrative appeal under state or local law, a land use appellant is entitled

11  to a hearing that is fair and in accordance with due process of law.  A land use appellant

12  will have filed a Master Appeal Form designating individuals and organizations aggrieved

13  by the decision and who are exercising the right to appeal provided by state or municipal

14  law.  The appellant has incurred expense to prepare the appeal arguments, gather

15  supporting evidence, reproduce the required copies which may be voluminous, and paid

16  required appeal fees.  Because the law grants a right to an appeal hearing to those who

17  undertake these actions, a land use appellant has a right to a fair hearing before the City

18  Council.  A land use appellant's fair hearing rights are in addition to, and separate and apart

19  from, those of interested persons who may simply appear at a public hearing seeking to

20  testify, or from those who provide general comment under the state's open meeting law.

21  153.   Under various City code provisions, land use hearing appellants are entitled

22  to a minimum notice of the date, time, and location where their land use hearing will be

23  conducted.  The minimum notice period specified in the City's code provisions constitute

24  the City's determination of the period of time the parties to a land use appeal hearing

25  should have as a matter of fundamental fairness to prepare their arguments, marshal their

26  evidence, and organize others to attend the City Council hearing(s) in support of their

27  positions.  In addition to adequate notice of the hearing, land use appellants have a

28  constitutional due process right to be treated fairly once they arrive at City Hall for their

- 41 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

constitutionally-protected hearing.

### Practices That Expose Land Use Appellants To No Opportunity To Respond To Significant Changes To Projects Or New Argument/Evidence/Studies

154. Petitioner is informed and believes, and based thereon alleges, that upon the filing of a land use appeal of a discretionary quasi-judicial administrative decision, the staff of the Planning Department prepares a transmittal cover sheet, assembles the land use entitlement and environmental review files for the case, adds the appeal papers filed by the land use hearing appellant, and forwards it to the City Clerk. Upon receipt, the City Clerk, opens a "City Council File" with an assigned number (i.e., CF 15-0001). Historically, hard copies of the City Council File are usually available for inspection at City Hall in the City Clerk's office, but recently the City Clerk apparently only maintains the online scanned file as the official content of City Council files.

155. Petitioner is informed and believes, and based thereon alleges, that the City Clerk scans the contents of the City Council File and is supposed to make it available to inspect or download documents placed in the City Council File. Furthermore, as new documents are submitted to the City Clerk leading up to the City Council's land use appeal hearing(s), the City Clerk scans and posts such newly submitted documents to an "Online City Council File".

156. Petitioner is informed and believes, and based thereon alleges, that as each new document is submitted to the City Clerk for inclusion in the City Council File, the document is not automatically file-stamped with the date and time submitted to the City Clerk. Petitioner is informed and believes, and based thereon alleges, that the failure of the City Clerk to physically file-stamp each document with the date and time received results in:

- no consistent and reliable way to independently verify the date and time each document was actually submitted to the City Clerk;
- no consistent and reliable means to detect if a document submitted to

- 42 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1  the City Clerk was not promptly uploaded to the Online City Council

2  File; and

3  • no consistent and reliable process to prevent backdated documents

4  from being inserted in the City Council File.

5  157. Petitioner is informed and believes, and based thereon alleges, that the

6  administrative burden upon the City to file-stamp each document submitted to the City

7  Council File as received so that a contemporaneous record is made of the date and time it

8  was filed with the City Clerk would be minimal compared to the public benefit of assuring

9  that, *inter alia,* backdated documents have not been inserted into the administrative record.

10  158. Petitioner is informed and believes, and based thereon alleges, that even

11  though each document submitted to the City Clerk for a land use appeal is supposed to be

12  scanned/posted to the corresponding Online City Council File, the City Clerk does not

13  forward each new scanned document to the parties of the land use appeal as they are filed,

14  or provide an automated email notice to land use hearing parties that a new document has

15  been placed in the City Council File and uploaded to the Online City Council File. As a

16  result of this set of practices, parties may submit to the City Council File documents that

17  afford the opposing party no time to review, digest, or prepare argument and evidence to

18  reasonably respond to significant changes to the Project, or new arguments, evidence, and

19  even last minute environmental studies placed into the City Council file by the project

20  applicant. The procedural rules of our court system do not permit submission of

21  documents to the courts without notice thereof to assure fundamental fairness. California

22  case law holds that a person owed due process, whether a person affected or aggrieved by a

23  project or a land use appellant, is not required to haunt public buildings to learn of projects

24  that may affect their interests. In an analogous way, land use appellants who have a right to

25  hearing by state or local law should not be required to haunt the City Clerk's office or

26  website each hour of each day to learn of new filings in an administrative land use case.

27  159. Petitioner is informed and believes, and based thereon alleges, that the City

28  Council has a documented record for one recent period of time of approving more than

- 43 -

SECOND AMENDED VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY RELIEF



1   99% of all matters coming before it (including by denying appeals filed by persons

2   aggrieved or granting appeals of applicants for land use approvals, or both). Petitioner is

3   informed and believes, and thereon alleges that this near unanimity of voting is a practice

4   that does not appear to have significantly changed today. Given that almost 100% of City

5   Council land use appeals are resolved adverse to the interests of land use appellants, the

6   lack of some method of notifying parties that new documents were filed disproportionately

7   prejudices the ability of land use appellants to know about project changes, new studies,

8   new arguments, and new evidence so as to reasonably present countervailing argument and

9   evidence consistent with California fair hearing case authorities such as <u>Clark v. City of</u>

10  <u>Hermosa Beach</u> (1996) 48 Cal.App.4th 1152, 1171. The inability to respond to new project

11  changes, evidence, argument, or studies defeats the ability of all parties to make a complete

12  and accurate administrative record on all issues before the City Council.

13       160.   By way of illustration, in the case of <u>La Mirada Avenue Neighborhood</u>

14  <u>Association of Hollywood v. City of Los Angeles</u> (BS 132533), the Los Angeles County

15  Superior Court (Hon. Ann Jones), on July 23, 2012, found that the City allowed the

16  developer's attorneys to submit to City Planners one hour prior to hearing of La Mirada's

17  appeal before the City Council's PLUM Committee a letter and attached new

18  traffic/parking study that was never given to La Mirada or the public for review and

19  comment as part of the Draft Environmental Impact Report of the Project. Emails of City

20  staff members showed they never reviewed the new traffic/parking study although they

21  submitted at the PLUM Committee hearing proposed supplemental "findings" that cited the

22  new traffic/parking study as substantial evidence supporting the City Council's approval of

23  the project and a conclusion there would be no negative traffic/parking impact. Further,

24  counsel for the developer submitted his letter and attached traffic/parking study to the

25  PLUM Committee at the hearing so that La Mirada was denied the ability to review the

26  new traffic/parking study until the day after the PLUM Committee decision. The trial court

27  ruled the City's actions deprived La Mirada of a fair hearing and "derailed" the public input

28  process of the California Environmental Quality Act.

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 44 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

161.    By way of further illustration, just prior to a hearing conducted by the City

Council in connection with a proposed museum project by the Academy of Motion Picture

Arts and Sciences on June 23, 2015, the Academy and City announced changes to the

building that would add thousands of square feet of elevated outdoor balconies where

before the Academy's project was described as not being open toward the adjoining

neighborhood.  Other last minutes changes to the Academy's project included a substantial

expansion of the onsite restaurant/café.  In support of these major changes to the

Academy's project, the City claimed it had released an 828-page "errata" to the Final EIR

for the Academy's Project that analyzed the traffic and noise impacts of the changes.

Unlike prior practices, when the City Clerk created the Online City Council File for the

Academy's Project, the environmental documents were not scanned into the Online City

Council File.  The City claimed instead that the 828-page errata was posted on the City

Planning Department's website on June 12, 2015, but there is no way to easily verify when

the 828-page errata was actually posted online, or why it was not scanned into the Online

City Council File for the Academy's project where the City in the past has usually placed

scanned copies of environmental documents.

162.    Petitioner is informed and believes, and based thereon alleges, that in the

case of land use development projects for which an appeal is filed, a central purpose of the

hearing is to allow persons aggrieved by the lower administrative decision to air concerns,

make arguments, and submit countervailing evidence to provide an opportunity for

decision makers to modify the project or further condition the project to achieve a balance

of land use development and protection of affected persons and communities.  The Los

Angeles City Council and City Clerk, through both a lack of formal procedural hearing

rules and the existence of informal patterns and practices, permits project applicants to

place substantial new documents concerning project changes, modified conditions, new

argument, and new studies to bolster the administrative record in favor of the applicant

without a fair chance for the land use appellant to provide countervailing argument or

evidence to assure a complete and accurate administrative record for all parties.

- 45 -

Unveiling Development Project Amending Motions At Hearings

163.     Petitioner is informed and believes, and based thereon alleges, that for land use quasi-judicial hearings heard at the full City Council meeting, there frequently are written motions crafted in consultation with City officials and the project applicant outside the quasi-judicial hearing process, but only revealed to land use appellants in the midst of or at the end of the public hearing conducted by the City Council.

164.     Petitioner is informed and believes, and based thereon alleges, that once the quasi-judicial public hearing is called, if there is a typewritten motion to amend the project or its project conditions, the City Clerk will announce that there is an amending motion and that copies of the motion have been "distributed." At or near the same time, clerical staff hand distribute the amending motion document to each of the 15 City Council members and other City staff at the front of City Council Chambers.

165.     The Los Angeles City Council Chambers has a central aisle with adjacent pews for audience members to sit in while watching the proceedings. There are also aisles on the sides of the Chamber but these aisles are behind rows of large ornate marble columns. Positioned against the wall of one aisle, there is a wooden bulletin board on legs. There is no sign on the bulletin board indicating what it is or what anything posted on it is ("nameless bulletin board"). Petitioner is informed and believes, and based thereon alleges, that at some point during the quasi-judicial hearing, but never before the item was actually called by the Council President, a copy of the amending motion is carried by a clerk out from behind a velvet rope on the side of City Council Chambers frequently guarded by a uniformed police officer. The clerk posts the amending motion on the nameless bulletin board behind the row of stone columns and returns behind the velvet rope. Neither the City Clerk nor anyone else alerts a land use appellant or the public that a copy of the proposed amending motion has been posted on the nameless bulletin board – it just silently happens.

166.     Petitioner is informed and believes, and based thereon alleges, that anyone curious enough to walk over to the nameless bulletin board, if they thought to or knew to, would find the amending motion which may be one page or many pages. Petitioner is

- 46 -

215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1   informed and believes, and based thereon alleges, that each document that a City staff

2   member posts on the nameless bulletin board has a stamped warning label in red ink. The

3   label states that the document may not be removed from the bulletin board. Petitioner is

4   informed and believes, and based thereon alleges, that if anyone removes an item posted on

5   the nameless bulletin board, even a person in a wheelchair or with other disability, City

6   staff or uniformed officers instruct the person to reattach the document to the bulletin

7   board.

8       167.   Petitioner is informed and believes, and based thereon alleges, that there is

9   no explanation of the purpose of the nameless bulletin board either during the City Council

10   land use hearing, on the meeting agenda, or in the City Council's limited adopted Rules,

11   including Rule 34, which only provides that proposed amending resolutions or motions

12   shall be distributed to City Council members.

13       168.   Petitioner is informed and believes, and based thereon alleges, that although

14   the text of amending motions may be prepared in advance of a City Council meeting, such

15   existence of a planned amending motion is not added to the meeting agenda description if

16   time allows, is not distributed to a land use appellant or the public via mail or electronic

17   means prior to the meeting as would be required by Government Code Section 54954.1 if

18   the amending motion were distributed to City Council members before the land use

19   hearing, is not distributed to land use appellants or the public when they arrive at City

20   Council Chambers by making a stack of copies available on a table in the City Council

21   Chambers, and is limited to the single copy thumbtacked to the nameless bulletin board

22   behind the side aisle columns, but only after the public hearing is actually called by the

23   Council President and in the midst of the City Council meeting.

24       169.   Petitioner is informed and believes, and based thereon alleges, that the City

25   Clerk rarely, if ever, reads the content of the proposed amending motion aloud so that land

26   use appellants, the interested public at the hearing, or anyone watching the Council meeting

27   on television could comprehend the content of the proposed amendment. Instead, an

28   observer of the call of a public hearing on a quasi-judicial land use appeal would hear the

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 47 -

1    City Clerk announce to no one in particular that "There is an amending motion on this item

2    and it has been distributed", or words to that effect.

3         170.   Petitioner is informed and believes, and based thereon alleges, that the

4    practical effect of the withholding of amending motions until the call of the land use

5    hearing places land use appellants present for the hearing at a fundamentally unfair

6    disadvantage.  If the land use appellant is unaware of the significance of the nameless

7    bulletin board, he or she may be unaware until the close of the final hearing on the project

8    that the City authorized significant changes to the project, or changed project conditions

9    without any meaningful opportunity to know about the proposed changes, to prepare

10   countervailing argument, or gather supporting evidence.  Conversely, if the land use

11   appellant is aware of the significance of the nameless bulletin board, the land use appellant

12   must walk to the board, try to read it while it is attached to the bulletin board or risk

13   admonition from uniformed officers, miss argument and testimony occurring in the room

14   while he or she is trying to comprehend the import of the amending motion, and then try to

15   incorporate new argument and evidence into his or her appeal response – even if that were

16   possible.  Meanwhile, the project applicant, already knowledgeable of the project change or

17   modification of project entitlement/conditions may come to the final hearing with

18   arguments and supporting evidence prepared in advance.

19        171.   In previous cases challenging the lack of due process at City Council

20   hearings, the City has claimed, without citation to any authority, that because land use

21   appellants may have submitted written appeal argument and evidence, they are entitled to

22   less time to make presentations and arguments at the public hearing before the decision

23   makers.  Regardless of the City's contention regarding prior written submissions, its

24   amending motion patterns and practices would remain fundamentally unfair if heretofore

25   significant project changes and modified project entitlements/conditions were never before

26   disclosed to a land use appellant so that any written argument and evidence could be

27   prepared and submitted.

28        172.   Petitioner is informed and believes, and based thereon alleges, that if one

- 48 -

1   were to try to conceive of a process and procedure to give a land use appellant the least

2   possible opportunity to know of the content of changes to a real estate development project

3   or the conditions under which it is proposed to be approved prior to the presentation of

4   their case or testimony before the City Council, the City's cryptic "Kabuki Theater"

5   described herein is it.  Once an amending motion has been reduced to writing by a City

6   official, there is no legitimate basis for the City to "hide" the content of the amending

7   motion until it is practically impossible to digest, formulate a rebuttal argument, or procure

8   countervailing evidence.  In fact, the process described herein appears specifically tailored

9   to "sandbag" land use appellants from learning significant information known to City

10  officials and the project applicant until it is too late to respond and make an appropriate

11  administrative record.  An inability to present countervailing argument and evidence to

12  changes to a real estate development project or its conditions creates a high risk of

13  systematic and prejudicial deprivation of the ability to create an adequate administrative

14  record to show a violation of law, if a lawsuit is filed over the City Council's approval.

15  Such pattern and practice that results in denial of a reasonable right to know project

16  changes or modified project conditions in order to prepare countervailing argument and

17  evidence for the administrative record is a violation of the due process rights of land use

18  appellants.

19          173.   Without this Court's declaratory and injunctive relief invalidating the City's

20  current practices specified herein, Petitioner's and other future appellants' and interested

21  persons' due process and fair hearing rights will be denied.

22                        **EIGHTH CAUSE OF ACTION**

23       **(CRA/LA's Violation of Section 506.2.3 of the Hollywood Redevelopment Plan;**

24            **Insufficient Findings to Grant Increase Of FAR to 5.5:1)**

25          174.   Petitioner realleges and incorporates herein by reference the allegations of

26  Paragraphs 1 through 173, inclusive, of this petition and complaint.

27          175.   Ordinance No. 165,660, adopted as part of a comprehensive general plan

28  consistency process, imposed the following "D" Development Condition on the Project

215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 49 -

1    parcel for the proposed Wilcox Hotel:

2            "The total floor area contained in all buildings on a lot shall

3            not exceed two (2) times the buildable area of the lot.  A

4            project may exceed the 2:1 floor area ratio provided that:

5                    a.      Community Redevelopment Agency

6            Board finds that the project conforms to: (1) the Hollywood

7            Redevelopment Plan, (2) a Transportation Program adopted

8            by the Community Redevelopment Agency Board pursuant to

9            Section 518.1 of the Redevelopment Plan and, if applicable,

10           (3) any Designs for Development adopted pursuant to Section

11           503 of the Redevelopment Plan; and

12                   b.      The project complies with the following

13           two requirements:

14                   A Disposition and Development Agreement or Owner

15           Participation Agreement has been executed by the

16           Community Redevelopment Agency Board; and the Project is

17           approved by the City Planning Commission, or the City

18           Council on appeal, pursuant to the procedures set forth in

19           Municipal Code Section 12.24-B.3."

20   Until the former redevelopment agency (or now the CRA/LA) addressed the several

21   transportation infrastructure deficiencies with enactment of the required Transportation

22   Plan, as worded, this condition could not and cannot be satisfied or cleared for a FAR

23   exceeding 2:1.

24           176.    In fact, the former redevelopment agency was sued in Hollywood Heritage,

25   Inc. v. City of Los Angeles (BS 108249) for having failed to prepare and adopt the required

26   Transportation Plan, which was first a requirement of the 1986 Hollywood Redevelopment

27   Plan, and then reaffirmed as a requirement of the 2003 Amended Hollywood

28   Redevelopment Plan.  The former redevelopment agency entered into a settlement

- 50 -

SECOND AMENDED VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY RELIEF

1  agreement committing to complete the Transportation Plan for which the agency and its

2  successor agency, CRA/LA, are in default.

3      177.   Because the Transportation Plan condition cannot be satisfied, the "D"

4  Development Condition could not be found to be satisfied by CRA/LA, the successor

5  agency to the former redevelopment agency.

6      178.   The City ignored the history of the "D" Development Condition, and failed

7  to disclose or discuss the history that prohibited its removal by way of Real Party's

8  rezoning request.  On this basis, the City removed the 2:1 FAR limit violating the 1988

9  HCP and the AB 283 consistency actions taken to comply with the settlement agreement in

10 the general plan consistency litigation.  Then the City purported to authorize the highest

11 density the City could itself authorize: 4.5:1 FAR.

12     179.   Despite being referred to the record before the City, the CRA/LA also

13 ignored the permanent nature of the 2:1 FAR limit on the Wilcox Hotel parcel.

14 Accordingly, the record is devoid of any evidence that the CRA/LA considered the "D"

15 Development Condition or endeavored to make the mandatory finding that the Project

16 complied with the Transportation Plan that does not exist.

17     180.   Instead, like the City, the CRA/LA improperly assumed that the City validly

18 approved the increase in FAR on the Wilcox Hotel parcel from 2:1 to 4.5:1.

19     181.   Under Section 506.2.3 of the Hollywood Redevelopment Plan, which is

20 separate and apart from the "D" Development Condition imposed under AB 283

21 consistency actions, the former redevelopment agency had the conditional authority to

22 increase density to as high as 6:1 FAR, if and only if, the land was zoned originally at

23 4.5:1.  In other words, there were only certain parcels of land originally zoned in the 1988

24 HCP and 1986 Hollywood Redevelopment Map that were even eligible for an increase

25 above 4.5:1 FAR.  Those parcels were in the immediate vicinity of the Metro Red Line

26 stations (approximately 1,500 feet walking distance without need of connecting transit or

27 car service), and Petitioner submitted to the CRA/LA Board a map showing the originally-

28 authorized 4.5:1 density on parcels surrounding the Metro Red Line stations.  The Wilcox

- 51 -

215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1  Hotel parcel was not ever zoned 4.5:1 because it is located more than one-half mile

2  walking distance to these high capacity transit stations.

3      182.    Based upon the map showing the Wilcox Hotel parcel was never originally

4  zoned at 4.5:1, and based upon evidence showing the City had not lawfully exercised

5  authority to raise the parcel density to 4.5:1, the record is devoid of any evidence that the

6  CRA/LA possessed authority to enter into an Owner Participation Agreement ("OPA")

7  authorizing a further bump in Project density from 4.5:1 to 5.5:1

8      183.    Following the CRA/LA's approval of the OPA, Petitioner's representative

9  sent correspondence to the CRA/LA Governing Board and CRA/LA Oversight Board

10  asking for a right to appeal or be heard regarding the CRA/LA Governing Board's May 5,

11  2016 action.  No one ever responded to that correspondence.

12      184.    Because the CRA/LA had no proper basis to take action approving the

13  proposed increase in density, the CRA/LA's purported approval of the OPA was a failure

14  to proceed in accordance law.

15      185.    Accordingly, Petitioner is entitled to a writ of mandamus commanding the

16  CRA/LA to set aside its approval of the OPA.

17                      **NINTH CAUSE OF ACTION**

18  **(CRA/LA's Violation Of Constitutional Right of Adequate Notice of Proposed Action**

19  **and Meaningful Opportunity to be Heard)**

20      186.    Petitioner realleges and incorporates herein by reference the allegations of

21  Paragraphs 1 through 185, inclusive, of this petition and complaint.

22      187.    Federal and state constitutional law requires a public agency to give persons

23  with significant property or other interests adequate notice of the proposed action and a

24  meaningful opportunity to be heard before taking action that may affect those significant

25  property and other interests.

26      188.    Petitioner owns the Hollywood Athletic Club building and land situated

27  immediately adjacent to the Wilcox Hotel parcel.

28      189.    Petitioner received no mailed notice of the intent of the CRA/LA to consider

- 52 -

SECOND AMENDED VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY RELIEF

1  and approve an OPA significantly increasing the density of the proposed Wilcox Hotel.

2  Petitioner is informed and believes, and based thereon alleges, that there was no notice of

3  the CRA/LA's proposed action to approve an OPA on the Project site.  Petitioner is

4  informed and believes, and based thereon alleges, that no one owning property or living

5  near the proposed Wilcox Hotel site was mailed notices of the CRA/LA's proposed action.

6       190.   Only by happenstance did Petitioner's counsel learn just a few days before

7  May 5, 2016, that the CRA/LA would consider the proposed OPA in this case, a similar

8  proposed OPA in another case involving the complex Palladium Residences Project, and an

9  item to delegate future actions to approve density increase OPAs to staff with no provision

10  for procedural due process to persons affected by such future decisions.

11       191.   Petitioner and its counsel had only three days before the CRA/LA's May 5,

12  2016, meeting to prepare and submit to the administrative record what little information

13  could be gathered in this limited and grossly deficient time to prepare for a hearing

14  affecting significant property rights.

15       192.   At the hearing on the matter, even though prior correspondence submitted to

16  the CRA/LA put it on notice that Petitioner was an adjoining landowner, Petitioner's

17  representative was treated as if he was only an open meeting law general commenter.

18  Accordingly, the CRA/LA set the clock at 2 minutes in which time it was not possible to

19  explain to the CRA/LA Governing Board members the complexities of this case, including

20  the difficult land use history of the property.  At the conclusion of his remarks, Petitioner's

21  representative objected to being afforded only two minutes to attempt to make a record

22  before the decision making body.

23       193.   Without comment or apparent concern about the fairness of the process, the

24  CRA/LA Governing Board took action to adopt the City's MND and approve the request

25  OPA.

26       194.   By the actions of the CRA/LA in providing no advance mailed notice of its

27  proposed actions, in failing to provide sufficient time for Petitioner to participate in the

28  hearing on the OPA in a meaningful way to protect its significant property interests, and in

- 53 -

215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1  failing to allow enough time to make a full and sufficient administrative record, the

2  CRA/LA has failed to proceed in accordance with law.

3       195.    Accordingly, Petitioner is entitled to a writ of mandate commanding the

4  CRA/LA to set aside adoption of the MND and approval of the OPA, with direction to

5  provide constitutionally proper notice and meaningful opportunity to be heard before the

6  CRA/LA Governing Board takes action on any reconsidered item.

7

8  **TENTH CAUSE OF ACTION**

9  **(Reverse Validation Action Against CRA/LA and ALL PERSONS INTERESTED)**

10       196.    Petitioner realleges and incorporates herein by reference the allegations of

11  Paragraphs 1 through 195, inclusive, of this petition and complaint.

12       197.    Pursuant to Government Code Section 53511 and Code of Civil Procedure

13  Sections 860 and 863, Petitioner brings action in the county in which the principal office of

14  the CRA/LA is located to determine the validity of the CRA/LA Governing Board's

15  approval of an owner participation agreement ("OPA") for the benefit of Real Party, 1541

16  Wilcox Hotel, LLC.

17       198.    The principal office of the CRA/LA is located in Los Angeles County,

18  California.

19       199.    Pursuant to Code of Civil Procedure Section 864, the date of the contract

20  challenged in this action is May 5, 2016, which is the date upon which the governing body

21  of the CRA/LA adopted a resolution approving the contract and authorizing its execution.

22       200.    Based upon the foregoing allegations, the OPA approved by the CRA/LA

23  Governing Board for which the CRA/LA Oversight Board failed to grant further

24  administrative review is invalid because:

25       a.    The CRA/LA Governing Board violated CEQA when it adopted the

26  City's legally deficient MND as the environmental clearance document supporting its

27  approval of the resolution authorizing the OPA and its execution;

28       b.    The CRA/LA Governing Board violated the provisions of the

- 54 -

215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1  Hollywood Redevelopment Plan because the administrative record is devoid of any

2  evidence that the Wilcox Hotel parcel was ever originally zoned by the City and the

3  former redevelopment agency at 4.5:1 FAR because of immediate adjacency to high

4  capacity rail transit, and the administrative record is devoid of any evidence that the City

5  possessed lawful authority to delete the permanent 2:1 FAR "D" Development Condition

6  when it was imposed to comply with Government Code Section 65680(d) and fulfill legal

7  duties imposed by the settlement agreement in the Hillside Federation general plan

8  consistency litigation, and therefore the CRA/LA could not validly find the Project was

9  adjacent to high capacity transit, or that the Project ever validly possessed a 4.5:1 FAR

10 that would authorize the CRA/LA to grant a further increase of FAR to 5.5:1; and

11          c.       The CRA/LA Governing Board violated the constitutional procedural

12 due process rights of Petitioner and all persons owning property interests or living in the

13 area impacted by the Wilcox Hotel Project by:  (1) failing to provide adequate advance

14 notice of the meeting at which the CRA/LA proposed to consider and adopt the OPA for

15 the Project, and (2) failing to provide a meaningful opportunity to be heard and to make

16 an administrative record before the CRA/LA meeting where it considered and adopted the

17 OPA whose increased density and height would impair significant rights of Petitioner and

18 others not present at the May 5, 2016 meeting.

19                              **PRAYER**

20       WHEREFORE, Petitioner prays for judgment as follows:

21 **On the First and Second Causes of Action:**

22       1.       For a peremptory writ of mandamus directing the City and City Council to

23 vacate and set aside the actions approving the MND, Land Use Entitlements, and all

24 Project approvals.

25       2.       That the Court enjoin the City, City Council, City Planning Commission,

26 their officers, employees, agents, boards, commissions and other subdivisions, including

27 but not limited to the Planning Dept. and Dept. of Building & Safety, from granting any

28 authority, permits or entitlements as part of the Project pursuant to the City's approval of

- 55 -

SECOND AMENDED VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY RELIEF

1   the MND, Land Use Entitlements, and all Project approvals.

2      3.      That the Court enjoin Real Party and any successors in interest from

3   undertaking any Project construction pursuant to the City's approval of the MND, Land

4   Use Entitlements, and all Project approvals.

5      **On the Third through Fifth Causes of Action:**

6      4.      For a peremptory writ of mandamus directing the City and City Council to

7   vacate and set aside its approvals of the MND, Land Use Entitlements, and all Project

8   approvals.

9      5.      That the Court enjoin the City, City Council, City Planning Commission,

10  their officers, employees, agents, boards, commissions and other subdivisions, including

11  but not limited to the Planning Dept. and Dept. of Building & Safety, from granting any

12  authority, permits or entitlements as part of the Project pursuant to the City's approvals of

13  the MND, Land Use Entitlements, and all Project approvals, and further, mandate that a

14  new hearing be provided at the PLUM Committee and the City Council, which comports

15  with due process rights.

16     6.      That the Court enjoin Real Party and any successors in interest from

17  undertaking any Project construction pursuant to the City's approvals of the General Plan

18  Amendment and associated Land Use Entitlements.

19     **On the Sixth Cause of Action:**

20     7.      That the Court grant declaratory and injunctive relief to enjoin the City of

21  Los Angeles City Council to develop and publish rules for the conduct of its zoning and

22  land use hearings as required by Government Code Section 65804.

23     **On the Seventh Cause of Action:**

24     8.      That the Court grant declaratory and injunctive relief to enjoin the City from

25  conducting unfair land use/zoning appeal hearings, and eliminate the fundamentally unfair

26  practices set forth in this complaint for declaratory relief.

27     **On the Eighth Cause of Action:**

28     9.      For a peremptory writ of mandamus directing the CRA/LA Governing

215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 56 -

1 | Board and CRA/LA Oversight Board to vacate and set aside the approvals of the OPA.

2 | **On the Ninth Cause of Action:**

3 | 10.    For a peremptory writ of mandamus directing the CRA/LA Governing

4 | Board and CRA/LA Oversight Board to vacate and set aside the approvals of the MND and

5 | OPA, and mandate that a new hearing be provided that comports with minimum procedural

6 | due process requirements.

7 | **On the Tenth Cause of Action:**

8 | 11.    That the Court issue an order declaring and determining that the OPA

9 | approved by the CRA/LA in its proceedings on May 5, 2016 was invalid for all the reasons

10 | set forth in this petition and complaint.

11 | **On All Causes of Action:**

12 | 12.    For attorney fees, including pursuant to Code of Civil Procedure Section

13 | 1021.5.

14 | 13.    For costs of suit; and

15 | 14.    For such other and further relief as the Court may deem just and proper.

16 |

17 | DATED: January 18, 2016      **THE SILVERSTEIN LAW FIRM, APC**

18 |

19 | By: _Daniel Wright_

20 | ROBERT P. SILVERSTEIN
DANIEL E. WRIGHT

21 | Attorneys for Petitioner
THE SUNSET LANDMARK INVESTMENT, LLC

22 |

215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 57 -

1

## VERIFICATION

2    STATE OF CALIFORNIA          )
3    COUNTY OF LOS ANGELES        )    ss:
4

5        I, STEPHAN SAEED NOURMAND, declare as follows:

6        I am authorized to make this verification on behalf of the Petitioner in this action.

7        I have read the foregoing Second Amended Petition for Writ of Mandamus and

8    Complaint for Declaratory Relief and am familiar with its contents.  The same is true of

9    my own knowledge, except as to those matters which are therein stated on information

10   and belief, and, as to those matters, I believe them to be true.

11       I declare under penalty of perjury under the laws of the State of California that the

12   foregoing is true and correct.  Executed at Los Angeles, California, on the _18_ day of

13   January, 2017.

14

15                              _____
                                STEPHAN SAEED NOURMAND
16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

I, JILLIAN M. REYES, declare:

I am a resident of the state of California and over the age of eighteen years, and not a party to the within action; my business address is The Silverstein Law Firm, 215 North Marengo Ave, Third Floor, Pasadena, California 91101-1504.  On January 20, 2017, I served the within document(s):

**SECOND AMENDED VERIFIED PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY RELIEF**

☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Pasadena, California addressed as set forth below.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒   by transmitting the document(s) listed above via e-mail to the person(s) named below at the respective e-mail addresses and receiving confirmed transmission reports indicating that the document(s) were successfully transmitted.

| | |
|---|---|
| **CASE NAME:** | **THE SUNSET LANDMARK INVESTMENT, LLC v. CITY OF LOS ANGELES, et al.** |
| **CASE No.:** | **BS160807** |

*[SEE ATTACHED SERVICE LIST]*

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 20, 2017, at Pasadena, California.

_____
JILLIAN M. REYES

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 1 -

## SERVICE LIST

Michael N. Feuer, City Attorney
Terry Kaufman-Macias,
    Asst. City Attorney
Saro Balian, Deputy City Attorney
Monica D. Castillo, Deputy City Attorney
Office of the City Attorney
City of Los Angeles
200 N. Main Street, Room 800
Los Angeles, CA 90012
monica.castillo@lacity.org
*Attorney for Respondents City of Los Angeles and Los Angeles City Council*

Andrea K. Leisy, Esq.
Nathan George, Esq.
Remy Moose Manley, LLP
555 Capitol Mall, Ste. 800
Sacramento, CA 95814
ALeisy@rmmenvirolaw.com
*Attorney for Respondents City of Los Angeles and Los Angeles City Council*

Arthur Friedman, Esq.
Alexander Merritt, Esq.
Sheppard, Mullin, Richter
    & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
amerritt@sheppardmullin.com
afriedman@sheppardmullin.com
*Attorneys for Real Party in Interest*

Matthew D. Hinks, Esq.
Jeffer Mangels Butler & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-4308
MH2@jmbm.com
*Attorneys for Real Party in Interest*

Daniel S. Maroon, Esq.
Celia W. Lee, Esq.
Goldfarb & Lipman, LLP
1300 Clay Street, 11th Floor
Oakland, CA 94612
dmaroon@goldfarblipman.com
*Attorneys for CRA/LA and CRA/LA Governing Board*

Thomas H. Webber, Esq.
Goldfarb & Lipman, LLP
523 W. Sixth Street, Suite 610
Los Angeles, CA 90014
twebber@goldfarblipman.com
*Attorneys for CRA/LA and CRA/LA Governing Board*

Suzanne M. Bryant, Esq.
Varner & Brandt LLP
3750 University Ave., 6th Floor
Riverside, CA 92501
Suzanne.Bryant@varnerbrandt.com
*Attorneys for CRA/LA Oversight Board*

Sally Magnani, Senior Assistant Deputy
    Attorney General
Office of the Attorney General
State of California Department of Justice
Ronald Reagan Building
300 South Spring Street, Suite 1702
Los Angeles, CA 90013

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 2 -

# EXHIBIT C

SETTLEMENT AGREEMENT AND RELEASE
(1523-1541 Wilcox)

This Settlement Agreement and Release ("**Agreement**") is made as of January_5_, 2018 by and among (1) The Sunset Landmark Investment, LLC, a California limited liability company ("**Sunset**"), and (2) 1541 Wilcox Hotel LLC, a Delaware limited liability company ("**Wilcox**"), each of which may be referred to herein individually as a "**Party**," and all of them collectively, as the "**Parties**."

## RECITALS

A.     Wilcox is the owner of the real property located at 1523-1541 North Wilcox Avenue in the Hollywood area of the City of Los Angeles, County of Los Angeles, State of California, which is legally described on **Exhibit A** attached to and made a part of this Agreement (the "**Wilcox Property**"), upon which Wilcox plans to construct a hotel presently intended to be known as the Thompson Hotel (the "**Hotel**").

B.     Sunset is the owner of the real property located at 1520-1540 Schrader Boulevard and 6525 W. Sunset Boulevard in the Hollywood area of the City of Los Angeles, County of Los Angeles, State of California, which is legally described on **Exhibit B-1** attached to and made a part of this Agreement (the "**Sunset Property**"). Sunset may develop the Sunset Property (the "**Sunset Project**"). Any multi-family residential project developed on the Sunset Property is referred to as the "**Sunset Residential Project**."

C.     There is now pending among Sunset and Wilcox litigation entitled The Sunset Landmark Investment, LLC, a California limited liability company, Petitioner, v. City of Los Angeles, etc., et al., Respondents, and 1541 Wilcox Hotel LLC, etc., et al, Real Parties in Interest, in the Superior Court of the State of California for the County of Los Angeles("**Court**"), Case No. BS160807 (the "**Wilcox Action**") to address, inter alia, a diminution in value to the Sunset Property. In the Wilcox Action, Sunset challenges various decisions of the City of Los Angeles and the CRA/LA granting approvals for the development of the Thompson Hotel on the Wilcox Property. There is also now pending among Sunset and 6516 Tommie Hotel LLC, a California limited liability company ("**Tommie**") litigation entitled The Sunset Landmark Investment, LLC, a California limited liability company, Petitioner, v. City of Los Angeles,, etc., et al., Respondents, and 6516 Tommie Hotel LLC, etc., et al, Real Parties in Interest, in the Superior Court of the State of California for the County of Los Angeles("**Court**"), Case No. BS169821 (the "**Tommie Action**") also to address, inter alia, a diminution in value to the Sunset Property. The Wilcox Action and Tommie Action are collectively referred to as the "**Actions**."

D.     The Parties desire to resolve and settle fully and finally the Actions and any and all differences and claims between them, including but not limited to those arising from or relating to the Actions.

## AGREEMENT AND SETTLEMENT TERMS

Now, therefore, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.      **Payment.** Wilcox shall pay to Sunset to address, inter alia, a diminution in value to the Sunset Property, its share of a total settlement payment of Five Million Five Hundred Thousand Dollars ($5,500,000) (the "**Settlement Payment**") to resolve the Actions, payable on execution of the Agreement. This Agreement shall not be complete until and unless Wilcox meets its obligations set forth in a contemporaneously executed settlement agreement between Sunset and Tommie. Wilcox's share of the Settlement Payment shall be determined exclusively between Wilcox and Tommie, without affecting the total amount of the Settlement Payment or the other obligations under this Agreement, as follows:

        1.1     First Payment. The sum of Three Million Seven Hundred Fifty Thousand Dollars ($3,750,000 ) (the "**Payment**") in cash by wire transfer to Sunset in accordance with its wire transfer instructions, contemporaneously with the execution and delivery of this Agreement by all Parties; and

        1.2     Promissory Note. The sum of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000), by execution and delivery by Wilcox of a promissory note in the form of **Exhibit C-1** attached to this Agreement (the "**Promissory Note**"), within three (3) business days after the execution and delivery of this Agreement by all Parties.

        1.3     Deed of Trust. The Promissory Note shall be secured by a deed of trust in the form of **Exhibit C-2** attached to this Agreement, which shall encumber the Wilcox Property, and which shall be signed and delivered currently with the execution and delivery of the Promissory Note.

2.      **Disposition of the Action.** Concurrent with the execution and delivery of this Agreement by all Parties, the following shall be delivered to Jeffer Mangels Butler & Mitchell LLP c/o Matthew Hinks: (a) Sunset shall deliver executed dismissals with prejudice of the Wilcox Action, which it shall authorized to file with the Court when it has verification from Silverstein (which may be by e-mail) that Sunset has received confirmation of actual receipt of funds,, Promissory Note and Recorded Deed of Trust; and (b) the Parties shall execute a Stipulation and [Proposed] Order providing that the Court shall retain jurisdiction to enforce the terms of this Settlement Agreement pursuant to Code of Civil Procedure § 664.6 after the Dismissals are filed. JMBM shall be authorized to file the Dismissal anytime on or after the date that Sunset receives the Payment, Promissory Note and Deed of Trust. If for any reason, the Court refuses to approve the [Proposed] Order referred to herein retaining jurisdiction to enforce the terms of this Settlement Agreement, this Agreement and all of its terms shall nevertheless remain in full force and effect. The date when the Payment, Promissory Note and Deed of Trust has been delivered to Sunset is referred to as the "**Settlement Effective Date**.

3.      **Hotel Covenants.** From and after the Settlement Effective Date, Wilcox agrees to the following respecting the design, construction, and operation of the Hotel:

2177-1003 / 1017775.1                                                                       Settlement Agreement and Release
                                                                                          Sunset and 1541 Wilcox

2

REL000115

3.1    Height of Hotel.  The height of the Hotel shall be reduced by eight (8) feet), as depicted for dimension purposes only in the plans listed on **Exhibit D** attached to and made a part of this Agreement, for a maximum height of 115 feet 10 inches;

3.2    Light Well of Hotel. The Hotel will have a light well facing west, towards the Sunset Property, with dimensions no less than 17 feet wide and 25 feet deep, as depicted for dimension purposes only in the plans listed on **Exhibit D** except that there shall be no covering of any sort over the Light Well;

3.3    Hotel Setback.  The setback on the Thompson Property from the Sunset Property line above ground level (i.e., above grade) will be 10 feet, except for the segment housing the electrical vault, as depicted for dimension purposes only in the plans listed on **Exhibit D**, and foliage and landscaping between the two properties.  Improvements below ground level and not extruding above grade into the 10 foot setback area will extend up to the Thompson Property line;

3.4    Hotel Balconies and Windows.  There shall be no balconies or operable windows on the west-facing side of the building, including eliminating the wrap-around balconies on the corners on the west-facing side of the Hotel;

3.5    Hotel Loading, Drop Off, and Trash Removal.  Wilcox shall establish and implement upon the opening of the Hotel a program for the Hotel for on-site hotel drop-off, loading and trash removal.  Such restrictions shall include, without limitation, employing a guard to receive deliveries from 6am-6pm, no deliveries after 6 p.m. and before 6 a.m., trash collection on weekdays, only, after 10 a.m. (or such earlier times as is routine in the area of the Wilcox Property) and before 6:00 p.m., installing signs prohibiting stopping and warning of towing for violators, in appropriate areas, utilizing valet services and parking for events held at the property with a minimum of 1 attendant per 20 expected vehicles and providing a hotline number to management of the Sunset Property to improve communications and response time, obtain city approval for additional loading zones in areas to mitigate congestion, as needed, and informing all delivery vendors of rules and requirements and require their agreement;

3.6    Rooftop Noise Levels at Hotel.  Wilcox shall cause the Hotel to comply with the requirements of its design and development approvals from the City of Los Angeles respecting the hours of operation and noise levels of rooftop restaurants, rooftop bars, and other rooftop uses, and, in addition, include the following restrictions:

3.6.1    Hours of operation of outdoor rooftop areas shall be limited to 7 a.m. to 12 a.m.  After 12 a.m. until 7 a.m., use of the outdoor rooftop areas shall be restricted to routine maintenance and clean-up;

3.6.2    Hours of operation of the enclosed rooftop areas shall be limited to 7a.m. to 1 a.m..  Wilcox shall provide a "hotline" phone number for Sunset to call in the event noise level issues need to be addressed on an immediate basis.

3.6.3    From 12 a.m. to 1 a.m., except for the front doors to the enclosed rooftop restaurant, doors to the enclosed rooftop restaurant shall be kept closed.  All doors to the rooftop

restaurant except the front doors shall be equipped on the inside with automatic locking devices
and kept closed at all times other than to permit temporary access for delivery of supplies and
trash removal and ingress and egress during emergencies. The doors to the enclosed rooftop
restaurant shall be solid and shall not include screens.

    If Wilcox has violated the provisions of Sections 3.6.1, 3.6.2 or 3.6.3 , of
which violations Sunset has notified Wilcox, but Wilcox has failed or is unwilling to cure, or if
there are repeated violations of such Sections of which Sunset has given notice, Sunset may seek
all rights and remedies against Wilcox as permitted by applicable law. In addition to claims for
damages, as a result of such violations, Wilcox shall be liable to Sunset for the payment of all
legal expenses incurred in the enforcement of Sunset's rights and remedies, upon a showing by
Sunset of notice to Wilcox of a violation and Wilcox's failure to cure such violation within
twenty-four hours of notice. Provided, however, Wilcox shall have no obligation to reimburse
Sunset's legal costs under this provision if Wilcox prevails in demonstrating that it was correct in
any disagreement over the violations of Sections 3.6.1, 3.6.2 or 3.6.3. This provision stands
independent of, and in addition to such provisions contained herein otherwise addressing rights
to recover attorney's fees. Nothing in this Agreement shall require any governmental approvals
of the provisions of Sections 3.6.1, 3.6.2 and 3.6.3.

    Contemporaneously with the Settlement Effective Date, Sunset and Wilcox shall each
execute, acknowledge, and deliver a covenant agreement in form and content reasonably
acceptable to them to ensure that the obligations of Wilcox and restrictions on the Hotel in
Sections 3.6.1 through 3.6.3, inclusive shall be binding upon Wilcox and successor owners,
managers and operators of the Thompson Hotel, which may be recorded in the official records of
Los Angeles County in favor of Sunset and restricting the Wilcox Property as reflected above.

4.  **Assistance and Support for Sunset Development Proposals**. From and after the
Settlement Effective Date, at Sunset's request, but at no material cost or expense to Wilcox,
Wilcox shall take reasonable actions requested by Sunset to assist and support Sunset with the
City of Los Angeles on any future development proposal for the Sunset Property. Sunset shall
not be obligated to provide any shoring and/or support for dirt and/or any materials on Wilcox's
property should Sunset commence construction on its own property, provided however, that
under no circumstances shall Sunset undermine the foundation of the Wilcox property. To that
end, upon completion of its project, Wilcox shall supply a copy of its "as-built" plans, soils and
geological reports and environmental reports, to assist Sunset in meeting its obligations under
this Agreement.

5.  **Mutual Releases**.

    5.1  **Release by Wilcox**. Except as provided in Section 5.4, effective from and after
the Settlement Effective Date, Wilcox fully, finally, and forever releases and discharges Sunset
and its officers, members, managers, agents, employees, subsidiaries, affiliates, parent
companies, insurers, attorneys, accountants, heirs, executors, spouses, predecessors, successors
and assigns from any and all claims, demands, liens, actions, suits, causes of action, obligations,
controversies, debts, costs, attorneys' fees, expenses, damages, judgments, orders, subrogation,
contribution, reimbursement, indemnity and liabilities of every kind or nature, in law, equity or

2177-1003 / 1017775.1                       Settlement Agreement and Release
                                          Sunset and 1541 Wilcox

4

61296131v3

REL000117

otherwise, whether now known or unknown, suspected or unsuspected, and whether concealed or hidden, relating to, arising out of, or in any way stemming from the Wilcox Action or any claim or cause of action alleged in the Wilcox Action.

     5.2    **Release by Sunset**.  Except as provided in Section 5.4, below, effective from and after the Settlement Effective Date, Sunset fully, finally, and forever releases and discharges Wilcox and its officers, members, managers, agents, employees, subsidiaries, affiliates, parent companies, insurers, attorneys, accountants, heirs, executors, spouses, predecessors, successors and assigns from any and all claims, demands, liens, actions, suits, causes of action, obligations, controversies, debts, costs, attorneys' fees, expenses, damages, judgments, orders, subrogation, contribution, reimbursement, indemnity and liabilities of every kind or nature, in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, relating to, arising out of, or in any way stemming from the Wilcox Action or any claim or cause of action alleged in the Wilcox Action.

     5.3    **Waiver of Cal. Civ. Code § 1542**.  The Parties acknowledge that there is a possibility that subsequent to the execution of this Agreement they will discover facts, or incur or suffer claims, which were unknown or unsuspected at the time this Agreement was executed and which, if known by them at that time, may have materially affected their decision to execute this Agreement, and that notwithstanding such discovery this Agreement shall remain unmodified and in full force and effect.  The Parties acknowledge and agree that by reason of this Agreement, and the releases contained in this **Section 5**, above, they are assuming the risk of any such unknown and unsuspected facts and claims.  The Parties have been advised of the existence of Cal. Civ. Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Notwithstanding such provision, the releases contained in this Agreement are intended to be, and shall constitute, full releases in accordance with their terms.  In further consideration of this Agreement, and except for those obligations created by, or arising out of, this Agreement, the Parties knowingly and voluntarily waive the provisions of Civil Code Section 1542, as well as any other statute, law or rule of similar effect, and acknowledge and agree that this waiver is an essential and material term of this Agreement.  The Parties represent that they have been advised by their legal counsel and that they understand and acknowledge the significance and consequences of this release and the waiver of Section 1542 and other such laws.

     5.4    Exclusions from the Releases.  The releases and waivers provided in **Section 5** shall not apply to any rights or obligations created or expressly preserved by (a) this Agreement, or (b) any document entered into pursuant to this Agreement.

REL000118

6. **Admissibility of the Agreement**. The Parties specifically agree that this Agreement is expressly made admissible in a court of competent jurisdiction and otherwise subject to disclosure pursuant to the provisions of Cal. Evid. Code § 1123, and that this Agreement is not rendered inadmissible by California's mediation privilege, or any other similar provision, whether arising under state or federal law.

7. **Denial of Liability**. This Agreement is the result of a compromise and shall not at any time for any purpose be construed by the Parties, their attorneys, or by anyone else as an admission by any of the Parties of any liability or responsibility for any injuries and/or damages allegedly suffered.

8. **Reliance on Own Judgment and Legal Consultation**. Other than the acknowledgements, warranties and representations set forth in **Section 9**, each of the Parties acknowledges, warrants and represents that it relies wholly upon its own (and its own attorneys') investigation, judgment, belief and knowledge as to the causes of action asserted in the Wilcox Action, the facts underlying those causes of action, the matters released in **Section 5**, and the nature, extent and duration of the issues, claims, defenses, rights and obligations relating to this Agreement. Each of the Parties represents that it has not been influenced to any extent whatsoever in making this Agreement by any representations or statements concerning the subject matter of this Agreement or regarding any other matters made by persons, firms, or corporations that are hereby released, or by any person or persons representing them. The Parties acknowledge, warrant, and represent that they have retained and consulted their own attorneys in executing this Agreement.

9. **Acknowledgements, Warranties, and Representations**. Each of the Parties represents and warrants to the other Party that:

    9.1    Authority. It is duly authorized to enter into this Agreement, and that it does not require any additional approval, permission or consent from any person, public authority or entity to enter into this Agreement;

    9.2    No Assignment of Released Claims. The claims, counterclaims, counts, causes of action, or rights which it has released under **Section 5** belong to the releasing Party, and that the releasing Party has not assigned or transferred any of the released claims, counterclaims, counts, causes of action, or rights;

    9.3    No Duress. It has executed this Agreement voluntarily, with full knowledge of the Agreement and its contents, and without duress or undue influence on the part of or on behalf of the other Party or any other person or entity.

10. **Miscellaneous**.

    10.1    Legal Capacity; Execution Authority. The Parties acknowledge, warrant, and represent that they are legally competent and authorized to execute this Agreement. Each natural person who executes this Agreement on behalf of an entity represents and warrants that he has the authority to execute this Agreement on behalf of such entity.

REL000119

10.2    Entire Agreement.  This Agreement is the entire understanding between the Parties respecting the subject matter discussed herein and supersedes any prior understandings of the Parties, whether oral or written, respecting the subject matter hereof.

10.3    Amendments and Modifications.  No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all the Parties.

10.4    Survival.  All covenants, representations, and warranties contained herein shall survive the execution and delivery of this Agreement and the execution and delivery of any other document or instrument referred to herein.

10.5    No Waiver.  No waiver of any of the provisions of this Agreement shall be deemed a waiver of, nor shall it constitute a waiver of, any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

10.6    Collaborative Drafting.  Neither this Agreement, nor any provision within it, shall be construed against any Party or its attorney because counsel for each of the Parties took part in the negotiation and drafting of this Agreement.

10.7    Attorney's Fees, Expenses, and Costs.  Each of the Parties shall bear their own attorney's fees and costs incurred in connection with the Wilcox Action, the subject matter of the Wilcox Action and the negotiation, execution, and performance of this Agreement.   The preceding sentence notwithstanding, the prevailing Party on any motion, lawsuit, or action to interpret or enforce the terms of this Agreement shall be entitled to recover its reasonable attorneys' fees, costs, and expenses in connection with such motion, lawsuit, or action, including any expert witness fees and expenses, from the Party against which it prevailed.

10.8    Necessary Action.  Each of the Parties shall promptly do any act or thing reasonably necessary and execute any or all documents or instruments reasonably necessary or proper to effectuate the provisions and intent of this Agreement.

10.9    Counterparts.  This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall be an original, but all such counterparts shall constitute one and the same agreement.  Signatures of this Agreement may be transmitted via electronic means (including facsimile or e-mailed PDF scan) and shall be considered an original and binding against the Party that executed and delivered such signature via electronic means.

10.10   Notice.  All notices shall be in writing and shall be addressed to the affected Parties at the addresses set forth below. Notices shall be: (a) hand delivered to the addresses set forth below, in which case they shall be deemed delivered on the date of delivery; (b) sent by certified mail, return receipt requested, in which case they shall be deemed delivered three (3) business days after deposit in the United States mail; (c) sent by nationally recognized overnight courier (e.g., Federal Express or UPS), return receipt requested, in which case they shall be deemed delivered upon delivery; or (d) transmitted by both email and facsimile transmission in which case they shall be deemed delivered the first business day after delivery has been electronically confirmed by the recipient's facsimile machine (provided that such notice is concurrently sent by one of the other methods). Any Party may change its notice address by

2177-1003 / 1017775.1

Settlement Agreement and Release
Sunset and 1541 Wilcox

61296131v3

REL000120

giving notice thereof in compliance with this Agreement. Notice of such a change shall be effective only upon actual delivery. Notice given on behalf of a Party by any attorney purporting to represent a Party shall constitute notice by such Party if the attorney is, in fact, authorized to represent such Party. The respective notice addresses of the Parties are:

| To Sunset | To Wilcox |
|---|---|
| The Sunset Landmark Investment, LLC<br>6525 W. Sunset Blvd., Suite 100<br>Los Angeles, CA 90028 | 1541 Wilcox Hotel LLC<br>1605 Cahuenga Blvd.<br>Hollywood, CA 90028<br>Attention: Richard Heyman<br>Facsimile: 310) 388-0305<br>Email: richard@relevantgroup.com |
| with a copy to: | with a copy to: |
| Jayesh Patel, Esq.<br>Zuber Lawler & Del Duca LLP<br>350 South Grand Avenue, 32nd Floor<br>Los Angeles, CA 90071<br>Facsimile: (213) 596-5621<br>Email: jpatel@zuberlaw.com_ | M. Guy Maisnik, Esq.<br>Jeffer Mangels Butler & Mitchell LLP<br>1900 Avenue of the Stars, 7th Floor<br>Los Angeles, California 90067<br>Facsimile: (310) 712-3388<br>Email: mgm@jmbm.com |

10.11  Governing Law.  The laws of the State of California, without giving effect to choice of law or conflict of law principles, shall govern the validity, construction, performance and effect of this Agreement.

10.12  Tax Matters.  The Parties agree that they have not received tax advice from any other Party and acknowledge they are responsible for their own tax liability, if any, that may result from this Agreement.

10.13  Captions.  Captions, numbering and headings in this Agreement are for convenience of reference only and shall not be considered in the interpretation of this Agreement.

10.14  Severability.  Wherever possible, each provision of this Agreement will interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement is found to be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

10.15  Binding Effect.  This Agreement is binding on and inures to the benefit of the parties and their respective heirs, executors, administrators, successors, and permitted assigns.

10.16  Calendar and Business Days.  All references herein to "days" shall mean calendar days unless specifically referencing Business Days.  As used herein, "Business Day" shall mean any day other than a Saturday, Sunday or Federal or California holiday on which banks in Los Angeles, California are customarily closed.

10.17   Enforcement under California Code of Civil Procedure Section 664.6.  In addition to all other rights and remedies available under this Agreement, if this Agreement is breached by a Party, then pursuant to California Code of Civil Procedure Section 664.6, the other Party may enforce this Agreement in the Court, and, if approved by the Court, the Court shall retain jurisdiction at the request of the Parties.

10.18   Confidentiality/No Public Announcements.  To the maximum extent permitted by applicable law, the Parties, and each of them, shall keep the following confidential:  (a) all terms and conditions of this Agreement; (b) all communications by and between the Parties regarding this Agreement; (c) all communications and information gathered, obtained or furnished in connection with negotiations of this Agreement, except that a Party may disclose the terms of this Agreement to (i) its attorneys, accountants or other legal, financial or tax advisor(s) and/or consultant(s), (ii) its financial institutions or lenders and lenders' participants, (iii) its direct or indirect owners as part of its normal reporting practices and (iv) the Court (each, a "**Permitted Recipient**").  The Parties shall inform each Permitted Recipient of this confidentiality provision and require that he/she, they or it agree to abide by this confidentiality provision.  The foregoing confidentiality obligation shall not prohibit any Party from disclosing information which (x) is required in response to any valid summons, subpoena or discovery order to comply with any applicable law, order, regulation, or ruling or rule of any stock exchange, provided that the Party shall not provide or disclose any information without first giving written notice to the other Parties to this Agreement, and the other Parties shall have an opportunity to take legal steps in order to prevent disclosure of the information, (y) is required to comply with or carry out the terms of this Agreement, or (z) is required in order to enforce the terms of this Agreement.  None of the Parties shall make a public announcement or issue a press release respecting this Agreement.

**THE PARTIES EACH WARRANT AND ACKNOWLEDGE THAT THEY HAVE HAD THE FULL OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL TO REVIEW THE TERMS OF THIS AGREEMENT, AND THAT THEY ARE RELYING FULLY UPON THEIR OWN JUDGMENT AND THE ADVICE OF THEIR OWN COUNSEL IN EXECUTING THIS AGREEMENT.**

*[Signatures being on Next Page]*

Settlement Agreement and Release
Sunset and 1541 Wilcox

6129613 v3

REL000122

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates set forth below.

Dated as of: January __, 2018

Sunset:

The Sunset Landmark Investment, LLC, a California limited liability company

By _____
Name _STEPHAN NOURMAND_
Its _MANAGER_

Dated as of: January __, 2018

Wilcox:

1541 Wilcox Hotel LLC, a Delaware limited liability company

By _____
Name Richard Heyman
Its Authorized Signatory

## EXHIBIT A

### Legal Description of Wilcox Property

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF HOLLYWOOD, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 5 AND 6 OF H. J. WHITLEY TRACT 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE(S) 31 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

THAT PORTION OF BLOCK 2 OF HOLLYWOOD, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 28 PAGE 59 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE WEST LINE OF WILCOX AVENUE, SAID POINT BEING 233.30 FEET NORTH OF THE NORTH LINE OF SUNSET BOULEVARD, AS SHOWN ON SAID MAP; THENCE NORTH ALONG THE WEST LINE OF WILCOX AVENUE, 50 FEET; THENCE WEST PARALLEL WITH THE NORTH LINE OF SUNSET BOULEVARD, 143 FEET; THENCE SOUTH PARALLEL WITH THE WEST LINE OF WILCOX AVENUE, 50 FEET; THENCE EAST PARALLEL WITH THE NORTH LINE OF SUNSET BOULEVARD, 143 FEET TO THE POINT OF BEGINNING.

APN: **5547-017-003**

REL000124

## EXHIBIT B

Legal Description of Sunset Property

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 1:

THE WEST 10.13 FEET OF LOT 4 AND ALL OF LOTS 5,6,7 AND 8 OF THE M.P. FILLMORE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORINIA, AS PER MAP RECORDED IN BOOK 16, PAGE 178 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

LOT 9 AND THE NORTHERLY 10 FEET OF THE WESTERLY 200 FEET OF LOT 12 OF THE SAID M.P. FILLMORE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 16, PAGE 178 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTH 5 FEET OF THE NORTHERLY 10 FEET OF LOT 12 CONVEYED TO THE CITY OF LOS ANGELES FOR ALLEY PURPOSES BY DEED DATED JUNE 22, 1921 AND RECORDED IN BOOK 295, PAGE 344, OF OFFICIAL RECORDS.

PARCEL 3:

LOT 11 OF THE M.P. FILLMORE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 16, PAGE 178 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 4:

THAT PORTION OF LOT 7 OF THE H.J. WHITLEY TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2, PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTYRECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF SAID LOT 7; THENCE WESTERLY ALOMG THE SOUTHERLY LINE OF SAID LOT, 45 FEET; THENCE NORTHERLY PARALLEL WITH THE WESTERLY LINE OD SAID LOT; 15 FEET; THENCE EASTERLY PARALLEL WITH THE SOUTHERLY LINE OF SAID LOT, TO A POINT IN THE EASTERLY LINE OF SAID LOT; THENCE SOUTHERLY ALONG SAID EASTERLY LINE 15 FEET TO THE PLACE OF BEGINNING.

PARCEL 5:

PART OF BLOCK 2 "HOLLYWOOD", IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 28,
PAGES 59 AND 60 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY AND PART OF THE ALLEY IN SAID BLOCK AND OF
DAC AVENUE, NOW VACATED, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE WEST LINE OF SAID BLOCK 2, DISTANT 283.3 FEET
NORTH OF THE SOUTHWEST CORNER THEROF, THENCE EAST ALONG THE NORTH
LINE OF THE LAND OF M.P. FILLMORE, AS DESCRIBED IN DEED RECORDED IN
BOOK 1635, PAGE 89 OF DEEDS, 195 FEET; THENCE SOUTH PARALLEL WITH THE
WEST LINE OF SAID BLOCK, 55 FEET; THENCE WEST PARALLEL WITH SAID
NORTH LINE OF FILLMORE'S LAND 200 FEET TO A POINT IN THE EAST LINE OF
HUDSON AVENUE, AS ESTABLISHED BY DEED TO THE CITY OF HOLLYWOOD,
RECORDED IN BOOK 2741, PAGE 87 OF DEEDS; THENCE NORTH ALONG SAID LAST
LINE 55 FEET; THENCE EAST 5 FEET TO THE PLACE OF BEGINNING.

PARCEL 6:

THAT PORTION OF LOT 7 OF THE H.J. WHITLEY TRACT NO. 2, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 2, PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF SAID LOT 7; THENCE WESTERLY
ALONG SOUTHERLY LINE OF SAID LOT, 247.80 FEET TO THE EAST LINE OF THE
WEST 16 FEET OF SAID LOT; THENCE NORTHERLY ALONG SAID EST LINE 73 FEET
TO A POINT; THENCE EASTERLY AND PARALLEL WITH THE SOUTHERLY LINE OF
SAID LOT, 247.80 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT; THENCE
SOUTHERLY ALONG SAID EASTERLY LINE 73 FEET TO THE PLACE OF BEGINNING.

EXCEPT THE EASTERELY 45 FEET OF THE SOUTH 15 FEET OF THE ABOVE
DESCRIBED PROPERTY.

PARCEL 7:

THAT PORTION OF LOT 7 OF THE H.. WHITLEY TRACT NO. 2, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 2, PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT APOINT IN THE EAST LINE OF LOT 7, DISTATN NORTHERLY
THEREON 73 FEET FROM THE SOUTHEAST CORNER THEREOF; THENCE
NORTHERLY ALONG THE EAST LINE OF SAID LOT 73 FEET; THENCE WESTERLY
PARALLEL WITH THE SOUTH LINE OF SAID LOT, 247.8 FEET TO THE EAST LINE OF
THE PROPERTY CONVEYED TO THE COUNTY OF LOS ANGELES FOR ROAD
PURPOSES OF DEED RECORDED IN BOOK 1783, PAGE 94 OF DEEDS; THENCE
SOUTHERLY ALONG SAID EAST LINE, 73 FEET; THENCE EASTERLY PARALLEL

REL000126

WITH THE SOUTHERLY LINE OF SAID LOT, 247.8 FEET TO THE POINT OF BEGINNING.

APN; 5547-017-005 AND 5547-017-006 AND 5547-017-018 AND 5547-017-026 AND 5547-017-028

Settlement Agreement and Release
Sunset and 1541 Wilcox

REL000127

## EXHIBIT C-1

Form of Promissory Note
[ATTACHED]

REL000128

## PROMISSORY NOTE

$_____                                                Los Angeles, California
_____, 2018

FOR  VALUE  RECEIVED,  the  undersigned,  **[INSERT  NAME  OF
BORROWER:**_____] ("**Borrower**"), promise(s) to pay to
the order of **[INSERT NAME OF LENDER:**_____]("**Lender**") or order, at
its office in _____, California, or at such other place as may be designated in writing
by Lender, the principal sum of **[INSERT LOAN AMOUNT:**_____
**DOLLARS ($**_____)], with interest thereon at the rate of **[Twelve Percent (12.00%)]**
per month (based on a 30-day month and charged on the basis of actual days elapsed). All sums
owing hereunder are payable in lawful money of the United States of America, in immediately
available funds.

Borrower shall make monthly interest only payments in arrears on the first day of each month
beginning on the first day of the month following the date of this Note.

Notwithstanding any provision of this Note to the contrary, in the event that all or any portion of
the real property commonly known as [_____, California] shall be
sold by Borrower, all unpaid principal and all accrued but unpaid interest under this Note shall
immediately become all due and payable, without notice or any action by Lender.

The outstanding principal balance of this Note, together with all accrued and unpaid interest,
shall be due and payable in full on [_____] or sooner ("**Maturity Date**").

If any interest or principal payment required hereunder is not received by Lender (whether by
direct debit or otherwise) on or before the 3rd calendar day following the date it becomes due,
Borrower shall pay, at Lender's option, a late or collection charge equal to **[ten percent (10%)]**
of the amount of such unpaid interest payment.

From and after the Maturity Date, or such earlier date as all sums owing on this Note become
due and payable by acceleration or otherwise, all sums owing on this Note shall bear interest
until paid in full at a rate equal to ten percent (10%) per month (based on a 30-day month and
charged on the basis of actual days elapsed) in excess of the interest rate otherwise accruing
under this Note.

If Borrower shall fail to pay when due any sums payable hereunder THEN Lender may, at its
sole option, declare all sums owing under this Note immediately due and payable; provided,
however, that if any document related to this Note provides for automatic acceleration of
payment of sums owing hereunder, all sums owing hereunder shall be automatically due and
payable in accordance with the terms of that document.

If any attorney is engaged by Lender to enforce or defend any provision of this Note, or as a
consequence of any default, with or without the filing of any legal action or proceeding, then
Borrower shall pay to Lender immediately upon demand all reasonable attorneys' fees and all
costs incurred by Lender in connection therewith, together with interest thereon from the date of

such demand until paid at the rate of interest applicable to the principal balance owing thereunder as if such unpaid attorneys' fees and costs had been added to the principal.

No previous waiver and no failure or delay by Lender in acting with respect to the terms of this Note shall constitute a waiver of any breach, default, or failure of condition under this Note or the obligations secured thereby. A waiver of any term of this Note or of any of the obligations secured thereby must be made in writing and shall be limited to the express written terms of such waiver. In the event of any inconsistencies between the terms of this Note and the terms of any other document related to the loan evidenced by this Note, the terms of this Note shall prevail.

This Note is secured by a Deed of Trust of even date herewith.

If this Note is executed by more than one person or entity as Borrower, the obligations of each such person or entity shall be joint and several. No person or entity shall be a mere accommodation maker, but each shall be primarily and directly liable hereunder. Except as otherwise provided in this Note or any agreement executed in connection with this Note, Borrower waives: presentment; demand; notice of dishonor; notice of default or delinquency; notice of acceleration; notice of protest and nonpayment; notice of costs, expenses or losses and interest thereon; notice of late charges; and diligence in taking any action to collect any sums owing under this Note or in proceeding against any of the rights or interests in or to properties securing payment of this Note. Time is of the essence with respect to every provision hereof. This Note shall be construed and enforced in accordance with the laws of the State of California, except to the extent that Federal laws preempt the laws of the State of California, and all persons and entities in any manner obligated under this Note consent to the jurisdiction of any Federal or State

Court within the State of California and County of Los Angeles having proper venue and also consent to service of process by any means authorized by California or Federal law.

**"Borrower"**

[_____],
a _____

By: _____
Print Name: _____
Title: _____

By: _____
Print Name: _____
Title: _____

REL000130

**EXHIBIT C-2**

**Form of Deed of Trust**

[ATTACHED]

2177-1003 / 1017775.1

61296131v3

REL000131

Recording requested by:

[[__Lender's Name__]]

And when recorded, mail to:

[[__Lender's Name__]]
[[__Mailing Address__]]
[[__City, State ZIP__]]

## DEED OF TRUST AND ASSIGNMENT OF RENTS SECURING A PROMISSORY NOTE

This Deed of Trust, made [[____ __, 201_]] Date, between [[__Borrower's Name(s)__]], whose address is [[__Borrower's Address__]], as the "Trustor", [[__Title Company__]], whose address is [[__Trustee Address__]], as the "Trustee", and [[__Lender's Name(s)__]], whose address is [[__Lender's Address__]] as the "Beneficiary".

1.  Trustor hereby IRREVOCABLY GRANTS TO TRUSTEE IN TRUST, WITH POWER OF SALE:

    1.1  The real property in the City of [[__City__]], County of [[__County__]], State of California, described in Exhibit "A" attached hereto, and having an APN of [[__Parcel Number__]];

    1.2  TOGETHER WITH the rents, issues and profits of the real property, subject to the provisions of §3.4, herein to collect and apply the rents, issues and profits;

    1.3  FOR THE PURPOSE OF SECURING PAYMENT OF:

        a)  The indebtedness evidenced by a Promissory Note of the same date executed by Trustor, in the sum of [[$_____.00]] borrowed;
        b)  Any additional sums and interest hereafter loaned by Beneficiary to the then record Owner of the real property, evidenced by a promissory note or notes, referencing this Deed of Trust as security for payment;
        c)  The Beneficiary's charge for a statement regarding the secured obligations requested by or for Trustor; and
        d)  The performance of each agreement contained in this Deed of Trust.

2.  TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

    2.1  CONDITION OF PROPERTY. To keep the property in good condition and repair; not to remove or demolish any building; to complete and restore any building which may be constructed, damaged or destroyed; to comply with all laws affecting the property or requiring any alterations or improvements to be made; not to commit or permit waste; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the property may be reasonably necessary.

2.2   HAZARD INSURANCE.  Trustor will continuously maintain hazard insurance against loss by fire, hazards included within the term "extended coverage," and any other hazards for which Beneficiary requires insurance. The insurance will be maintained in the amounts and for the periods Beneficiary requires. The insurance carrier providing the insurance will be chosen by Trustor, subject to Beneficiary's approval, which will not be unreasonably withheld. All insurance policies will be acceptable to Beneficiary, and contain loss payable clauses acceptable to Beneficiary. Beneficiary will have the right to hold policies and renewals.

In the event of loss, Trustor will give prompt notice to the insurance carrier and Beneficiary. Beneficiary may make proof of loss if not made promptly by Trustor. Beneficiary may place the proceeds in a non-interest bearing account to be used for the cost of reconstruction of the damaged improvements. If Trustor fails to reconstruct, Beneficiary may receive and apply the loan proceeds to the principal debt hereby secured, without a showing of impairment.

2.3   ATTORNEY FEES.  To appear in and defend any action or proceeding purporting to affect the security, or the rights and powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidencing title and attorney fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear.

2.4   TAXES AND SENIOR ENCUMBERANCES.   To pay at least 10 days before delinquency: all taxes and assessments affecting the property, including water stock assessments when due, all encumbrances, charges and liens, with interest, on the property which are or appear to be senior to this Deed of Trust; and all expenses of this Deed of Trust.

2.5   ACTS AND ADVANCES TO PROTECT THE SECURITY.  If Trustor fails to make any payment or to perform any act provided for in this Deed of Trust, then Beneficiary or Trustee may, without obligation to do so, and with or without notice or demand upon Trustor, and without releasing Trustor from any obligation under this Deed of Trust:

a)   Make or do the same to the extent either deems necessary to protect the security, Beneficiary or Trustee being authorized to enter upon the property to do so;

b)   Appear in or commence any action or proceeding purporting to affect the security, or the rights or powers of Beneficiary or Trustee;

c)   Pay, purchase, contest or settle any encumbrance, charge or lien that appears to be senior to this Deed of Trust.

In exercising the power of this provision, Beneficiary or Trustee may incur necessary expenses, including reasonable attorney fees.

Trustor to immediately pay all sums expended by Beneficiary or Trustee provided for in this Deed of Trust, with interest from date of expenditure at the same rate as the principal debt hereby secured.

3.   IT IS FURTHER MUTUALLY AGREED THAT:

REL000133

3.1   ASSIGNMENT OF DAMAGES.  Any award of damages made in connection with:

    a)   Condemnation for use of or injury to the property by the public, or conveyance in lieu of condemnation; or

    b)   Injury to the property by any third party;

is assigned to Beneficiary, who may apply or release the proceeds of such an award in the same manner and with the same effect as above provided for the disposition of hazard insurance proceeds.

3.2   WAIVER.  By accepting payment of any sum due after its due date, Beneficiary does not waive Beneficiary's right to either require prompt payment when due of all other sums or to declare a default for failure to pay. Beneficiary may waive a default of any agreement of this Deed of Trust, by consent or acquiescence, without waiving any prior or subsequent default.

3.3   DUE-ON-SALE.   If Trustor decides to sell, transfer or convey any interest in the property, legal or equitable, either voluntarily or by operation of law, then Beneficiary may, at Beneficiary's option, declare all sums secured by this Deed of Trust immediately due and payable.

3.4   ASSIGNMENT OF RENTS.  Trustor hereby assigns and transfers to Beneficiary all right, title and interest in rents generated by the property, including rents now due, past due, or to become due under any use of the property, to be applied to the obligations secured by this Deed of Trust.

    a)   Prior to a default on this Deed of Trust by Trustor, Trustor will collect and retain the rents

    b)   On default by Trustor, Beneficiary will immediately be entitled to possession of all unpaid rents.

3.5   ACCELERATION.  If payment of any indebtedness or performance of any agreement secured by this Deed of Trust is in default, Beneficiary may at Beneficiary's option, with or without notice to Trustor, declare all sums secured immediately due and payable by:

    a)   Commencing suit for their recovery or for foreclosure of this Deed of Trust

    b)   Delivering to Trustee a written notice declaring a default with demand for sale; a written Notice of Default and election to sell to be recorded by Trustee.

3.6   TRUSTEE'S SALE.  On default of any obligation secured by this Deed of Trust and acceleration of all sums due, Beneficiary may instruct Trustee to proceed with a sale of the secured property under the power of sale granted herein, noticed and held in accordance with California Civil Code §2924 et seq.

3.7   TRUSTOR'S OFFSET STATEMENT.  Within 10 days of Trustor's receipt of a written request by Beneficiary, Trustor will execute a written estoppel affidavit identifying for the benefit of any assignee or successor in interest of Beneficiary: the then owner of the secured property; the terms of the secured note, including its remaining principal balance; any taxes or assessments due on the secured property; that the secured note

REL000134

is valid and the Trustor received full and valid consideration for it; and that Trustor understands the note and this Deed of Trust are being assigned.

4   RECONVEYANCE.  Upon written request from Beneficiary stating that all sums secured by this Deed of Trust have been paid, surrender of this Deed of Trust and the note to Trustee for cancellation, and payment of Trustee's fees, Trustee will reconvey the property held under this Deed of Trust.

5   SUCCESSORS, ASSIGNS AND PLEDGEES.  This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary will mean the holders and owner of the secured note, or, if the note has been pledged, the pledgee.

6   TRUSTEE'S FORECLOSURE NOTICES.  The undersigned Trustor(s) requests a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to Trustor at the address herein set forth.

Date:_____

Trustor:_____
                                                                *(signature)*

Date:_____
Trustor: _____
                                                                *(signature)*

EXHIBIT "A"

LEGAL DESCRIPTION

REL000136

## EXHIBIT D

Plans for Hotel



EAST ELEVATION



NORTH-EAST ELEVATION

116365.4

61296131v3

REL000137

Exhibit D (cont)
<u>Plans for Hotel</u>



SOUTH-WEST ELEVATION



WEST ELEVATION

2177-1003 / 948129.1
61296131v3

REL000138

EXHIBIT D (cont)
Plans for the Hotel



NORTH-EAST ELEVATION



GROUND FLOOR - CPC EXHIBIT "A"

GROUND FLOOR - UPDATED

GROUND FLOOR COMPARISON

EXHIBIT D (cont)
Plans for the Hotel



EXHIBIT D (cont)
Plans for the Hotel



**SECTION COMPARISON**

2177-1003 / 948129.1

61296131v3

REL000142

# EXHIBIT D

A6151          90012

**THE SILVERSTEIN LAW FIRM, APC**
ROBERT P. SILVERSTEIN (State Bar No. 185105)
DANIEL E. WRIGHT (State Bar No. 144490)
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504
Telephone:   (626) 449-4200
Facsimile:   (626) 449-4205
Robert@RobertSilversteinLaw.com

Attorneys for Petitioner
THE SUNSET LANDMARK INVESTMENT, LLC

**FILED**
Superior Court of California
County of Los Angeles

JUN 09 2017

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Moses Soto

D-1

WEINTRAUB

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| THE SUNSET LANDMARK INVESTMENT, LLC, a California limited liability company,<br><br>        Petitioner,<br><br>    vs.<br><br>CITY OF LOS ANGELES, a municipal corporation; the CITY OF LOS ANGELES CITY COUNCIL; CRA/LA, a designated local agency as successor to the former Community Redevelopment Agency of the City of Los Angeles; CRA/LA GOVERNING BOARD; CRA/LA OVERSIGHT BOARD, and DOES 1 through 10, inclusive,<br><br>        Respondents.<br><br><br>6516 TOMMIE HOTEL LLC, a California limited liability company; and ROES 1 through 10, inclusive,<br><br><br>        Real Parties in Interest. | Case No. **BS 1 6 9 8 2 1**<br><br>**VERIFIED PETITION FOR WRIT OF MANDAMUS**<br><br>[Code Civ. Proc. §§ 1085, 1094.5; Pub. Res. Code §§ 21000, *et seq.* (CEQA); Los Angeles Municipal Code §§ 12.03, 12.14, 16.05; City Charter Section 558; Ordinance No. 165,660 as incorporated into the Hollywood Community Plan] |

CIT/CRSE: LEA/DEF#: BS169821

RECEIPT #: CCH524800080
DATE PAID: 06/09/17 02:17 PM
PAYMENT: $435.00
RECEIVED:

CHECK:      $435.00
CASH:       $0.00
CHANGE:     $0.00
CARD:       $0.00

310

**ORIGINAL**

VERIFIED PETITION FOR WRIT OF MANDAMUS

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1    Petitioner THE SUNSET LANDMARK INVESTMENT, LLC ("Petitioner") seeks

2    a writ of mandamus against Respondents City of Los Angeles and the Los Angeles City

3    Council (sometimes collectively the "City"), the CRA/LA, the CRA/LA Governing Board,

4    and the CRA/LA Oversight Board (sometimes collectively the "CRA/LA"), and alleges as

5    follows:

6                               **INTRODUCTION**

7    1.    This petition challenges the City Planning Commission and City Council

8    actions in approving:  (a) a Mitigated Negative Declaration; (b) Vesting Zone and Height

9    District Changes, (c) Site Plan Review, (d) Conditional Use Permit for on-site sale and

10   dispensing of alcohol and other associated entitlements (collectively "Land Use

11   Entitlements") for the Tommie Hotel project, an 8-story, approximately 95-foot-tall,

12   79,621-square-foot hotel with 212 rooms, a restaurant/bar on the first floor, and an outdoor

13   rooftop swimming pool and restaurant/bar on top of the building, all on an approximately

14   20,736-square-foot lot, located at 6516-6526 W. Selma Avenue in Hollywood (the

15   "Project").

16   2.    This Project is more accurately described as a youth hostel swimming in

17   alcohol.  The floor plans for the Project depict 204 of the 212 rooms without a separate

18   bathroom, but according to the environmental review and Project conditions, there will be

19   in-room minibars and/or 24/7 alcohol room service.  Fourteen of the rooms on the third

20   floor may not have a bathroom, but they have a balcony on which to have a private party

21   just a few feet away from the next door, affordable housing apartment complex.

22   Considering the above, and its 8,500-square-foot outdoor rooftop bar and party space, the

23   Project is destined to become a public nuisance, harming the adjoining community.

24   3.    Throughout the Los Angeles Municipal Code, commercial uses are to be

25   conducted "wholly within" the building, with the exception of limited outdoor dining

26   associated with a restaurant on the ground floor.  The Los Angeles City Council is ignoring

27   well-established planning principles by allowing outdoor party spaces, including on the

28   ground floor and rooftops, in the same block where people are trying to sleep.  With the

1   same group of developers obtaining City approval of the Dream Hotel one-half block away,

2   the Thompson Hotel around the corner at 1541 Wilcox Avenue, and this hostel, what Real

3   Party likes to call a "new hotel district" is a set of spot zoned, environmentally damaging

4   projects – individually and cumulatively – that will negatively impact property owners and

5   residents of the neighborhood, as well as of the broader area.

6          4.      This petition also challenges the City's null, void and *ultra vires* actions in

7   violating Los Angeles Municipal Code Section 16.05G.  That law mandates that the City

8   refer all applications for Site Plan Review for projects proposed within a redevelopment

9   plan area to the Community Redevelopment Agency (now the CRA/LA, as the successor

10  agency to the former Community Redevelopment Agency), which has primary

11  responsibility for environmental review, conducting a review, and issuing a report to the

12  City regarding the proposed project's conformity with the adopted redevelopment plan.

13  This petition also challenges the CRA/LA's dereliction of duty because it was aware of the

14  City's lack of fundamental jurisdiction and usurpation of the CRA/LA's primary

15  environmental review and project conformity status, yet failed to require that the City,

16  pursuant to the CRA/LA's duty under LAMC Section 16.05G, permit the CRA/LA to carry

17  out its role as primary environmental and redevelopment plan reviewer.  Instead of the

18  CRA/LA conducting the project environmental review and initial project decision making

19  in this case, the City purported to act as lead agency for environmental review, and made

20  the Site Plan Review decision without referral of the proposed Project to the CRA/LA for

21  environmental review or first obtaining from the CRA/LA Governing Board "a report as to

22  conformity with the adopted Redevelopment Plan applicable to the project."

23         5.      The Project site sits mid-block on West Selma Avenue, a narrow collector

24  street between Wilcox Avenue and Schrader Boulevard, within a portion of the Hollywood

25  Community Plan specifically planned and zoned to comply with the mandate of

26  Government Code Section 65860, subdivision (d) ("AB 283").  AB 283 required the City

27  to make its zoning consistent with its General Plan land use designations by restricting

28  building heights and floor area ratios ("FAR").

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 2 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

6.    The land use designations in the 1988 Hollywood Community Plan were less dense than the land use designations allowed in the 1973 Hollywood Community Plan. To make its zoning consistent with the 1988 Community Plan, the City Council carried out a General Plan/Zoning Consistency Program and EIR at the same time as the 1988 Hollywood Community Plan Revision, adopted numerous ordinances, including Ordinance No. 165660, to limit density and height because the Project area was so distant from high capacity transit to justify dense development at the full amount that might be permitted otherwise under the Regional Center Commercial Land Use Designation in the General Plan Framework and Hollywood Community Plan.

7.    The City Planning Commission and City Council, in the course of approving the Project, violated and ignored the 2:1 Floor Area Ratio ("FAR") limitation placed on the Project site via the 1990 Ordinance No. 165660 to restrict these parcels by using a "D" Development Limitation, which was specifically imposed to mitigate City-acknowledged areawide significant environmental impacts that would follow overdevelopment of the Hollywood area before certain other mitigation strategies, including a Transportation Plan, were prepared.  In a form of bait-and-switch, Real Party purports to "use" the increased FAR and height allowed by a 2008 City Council approval for a commercial office building on this site, which project was abandoned.  Claiming that Real Party gets to "keep" the increased FAR and height for a completely different project without the City analyzing the land use impacts or justifying the ongoing removal of mitigation measures imposed in the 1990 Ordinance No. 165660, the City is violating its own mitigation measures.

8.    In addition, in order to jam 212 tiny rooms, most without bathrooms, into this building, the Planning Director and Real Party rely upon two incorrect Zoning Administrator Interpretations of the LAMC that purport to:  (1) allow R5 residential unit density on commercially zoned lots within mixed use projects in the Regional Center Commercial area; and (2) assert that developers may include "unlimited" units in such projects because R5 zoning in LAMC 12.12C specifies no residential unit density limit. Both of these "interpretations" of the LAMC are a violation of residential unit limits for

- 3 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1  commercial lots.  In this case, a lot zoned C2 has a limit of 200 square feet of lot area for

2  each hotel guest room.  The Project therefore has more than twice the LAMC's legal limit

3  of 103.68, or rounded, 104 guest rooms.

4     9.     Objections submitted by Petitioner and others before the City proceedings

5  focused, in significant part, on the inappropriate injection of enormous density and height

6  into a quiet side street significantly impacting, *inter alia*, nearby existing residential and

7  commercial uses.  This massive spot zoning more than doubles the legally authorized guest

8  rooms, nearly doubles the authorized 2:1 FAR limit imposed in the 1990 Ordinance

9  165,660, creates an echo chamber outdoor bar and food court/patio on the first floor, an

10  8,500-square-foot outdoor bar and party space on the rooftop, and allows alcohol use

11  throughout these outdoor spaces.

12     10.     Petitioner seeks a writ of mandamus invalidating the City's approval and/or

13  certification of the MND and invalidating and setting aside the Land Use Entitlements

14  because of the City's violations of the California Environmental Quality Act ("CEQA"),

15  the City Charter, the Los Angeles Municipal Code, and other laws.

16                                        **PARTIES**

17     11.     Petitioner THE SUNSET LANDMARK INVESTMENT, LLC is a

18  California limited liability company which owns buildings and land immediately adjacent

19  to the Project site, and which participated in the Project's administrative proceedings before

20  the City and objected to the Project in those proceedings, leading up to the City Council's

21  May 10, 2017 approvals of the Project.  Petitioner has a substantial interest in ensuring that

22  the City's decisions are in conformity with the requirements of law, and in having those

23  requirements properly executed and the public duties of the City enforced.  Petitioner will

24  be adversely affected by impacts resulting from the City's actions and approvals, and is

25  aggrieved by the acts, decisions and omissions of the City as alleged in this petition.

26  Petitioner is suing on its behalf, and on behalf of others who will be affected in the

27  Hollywood area, as well as for all citizens of the City of Los Angeles and more broadly,

28  including all those who seek to maintain the integrity of the land use entitlement process in

- 4 -

1   Los Angeles.

2       12.    Respondent City of Los Angeles is a California charter city located in the

3   County of Los Angeles, California.  The Project is within the jurisdictional limits of the

4   City of Los Angeles.

5       13.    Respondent Los Angeles City Council is the elected governing body of the

6   City, and is the body responsible for its decisions at issue herein.

7       14.    Respondent CRA/LA is the designated local agency created by Health and

8   Safety Code Section 34173(d)(3), as the successor agency to the assets, liabilities,

9   obligations, plans and settlement agreements of the former Community Redevelopment

10  Agency of the City of Los Angeles located in the County of Los Angeles, California.

11      15.    Respondent CRA/LA Governing Board is the appointed governing body of

12  the CRA/LA pursuant to Health and Safety Code Section 34173(d)(3), and is the body

13  responsible for its decisions at issue herein.

14      16.    Respondent CRA/LA Oversight Board is the appointed oversight board of

15  the CRA/LA pursuant to Health and Safety Code Section 34179, and is the body that has

16  oversight responsibilities over certain CRA/LA Governing Board decisions, including

17  possibly the decisions at issue herein.

18      17.    Petitioner is informed and believes, and based thereon alleges, that 6516

19  Tommie Hotel, LLC (sometimes "Real Party"), named as a real party in interest, is a

20  California limited liability company, to which the City granted all of the Project approvals.

21      18.    Petitioner is ignorant of the true names of respondents sued herein as DOES

22  1 through 10, inclusive, and therefore sues said respondents by those fictitious names.

23  Petitioner will amend the petition to allege their true names and capacities when the same

24  have been ascertained.  Petitioner is informed and believes, and based thereon alleges, that

25  each of these fictitiously named respondents is in some manner responsible for the

26  wrongful conduct alleged in this petition.  Petitioner is informed and believes, and based

27  thereon alleges, that these fictitiously named respondents were, at all times mentioned in

28  this petition, the agents, servants, and employees of their co-respondents and were acting

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 5 -

1   within their authority as such with the consent and permission of their co-respondents.

2       19.    Petitioner is ignorant of the true names of real parties sued herein as ROES

3   1 through 10, inclusive, and therefore sues said real parties by those fictitious names.

4   Petitioner will amend the petition to allege their true names and capacities when the same

5   have been ascertained. Petitioner is informed and believes, and based thereon alleges, that

6   each of these fictitiously named real parties is in some manner responsible for the wrongful

7   conduct alleged in this petition. Petitioner is informed and believes, and based thereon

8   alleges, that these fictitiously named real parties were, at all times mentioned in this

9   petition, the agents, servants, and employees of their co-real parties and were acting within

10   their authority as such with the consent and permission of their co-real parties.

11                 **JURISDICTION AND VENUE**

12       20.    Jurisdiction over Respondents and Real Parties, and each of them, exists

13   because each of the Respondents and Real Parties named in this litigation are present and

14   operating within the jurisdictional limits of the County of Los Angeles.

15       21.    Venue is proper because most or all of the acts and omissions complained of

16   in this litigation took place within this judicial district.

17                     **STATUTORY SCHEME**

18             **California Environmental Quality Act**

19       22.    The California Environmental Quality Act ("CEQA"), found at Public

20   Resources Code Section 21000, *et seq.*, is based on the principle that "the maintenance of a

21   quality environment for the people of this state now and in the future is a matter of

22   statewide concern." (Pub. Res. Code § 21000(a).)

23       23.    In CEQA, the Legislature has established procedures designed to achieve

24   these goals, principally the Environmental Impact Report ("EIR"). These procedures

25   provide both for the determination and for full public disclosure of the potential adverse

26   effects on the environment of discretionary projects that governmental agencies propose to

27   approve, and require a description of feasible alternatives to such proposed projects and

28   feasible mitigation measures to lessen their environmental harm. (Pub. Res. Code §

THE SILVERSTEIN LAW FIRM, APC<br>215 North Marengo Avenue, 3rd Floor<br>Pasadena, CA 91101-1504

- 6 -

1 | 21002.)

2 |     24.    CEQA is not merely a procedural statute; it imposes clear and substantive

3 | responsibilities on agencies that propose to approve projects, requiring that public agencies

4 | not approve projects that harm the environment unless and until all feasible mitigation

5 | measures are employed to minimize that harm. (Pub. Res. Code §§ 21002, 21002.1(b).)

6 |     25.    Failure either to comply with the substantive requirements of CEQA or to

7 | carry out the full CEQA procedures so that complete information as to a project's impacts

8 | is developed and publicly disclosed constitutes a prejudicial abuse of discretion that

9 | requires invalidation of the public agency action regardless of whether full compliance

10 | would have produced a different result. (Pub. Res. Code § 21005.)

11 |     26.    CEQA authorizes and directs the State Office of Planning and Research to

12 | adopt guidelines for the implementation of CEQA by public agencies. (Pub. Res. Code §

13 | 21083.) These guidelines, which are found at title 14, California Code of Regulations,

14 | Section 15000, *et seq.* ("Guidelines"), are binding on all state and local agencies, including

15 | Respondents.

16 |     27.    The Guidelines establish procedures for calculating the baseline

17 | environmental conditions at a proposed project site, providing that "[a]n EIR must include

18 | a description of the physical environmental conditions in the vicinity of the project, as they

19 | exist at the time the notice of preparation is published, or if no notice of preparation is

20 | published, at the time of the environmental analysis commenced. . . ." (14 Cal. Code

21 | Regs. § 15125(a).)

22 |     28.    Agencies may not undertake actions that could have a significant adverse

23 | effect on the environment, or limit the choice of alternatives or mitigation measures, before

24 | complying with CEQA. (14 Cal. Code Regs. § 15004(b)(2).)

25 |     29.    The Guidelines require "all phases of project planning, implementation, and

26 | operation" to be considered in the Initial Study for a project. (14 Cal. Code Regs. §

27 | 15063(a)(1).) CEQA defines a project as "the whole of an action, which has a potential for

28 | resulting in either a direct physical change to the environment, or a reasonably foreseeable

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 7 -

1    indirect physical change in the environment." (14 Cal. Code Regs. § 15378(a).)

2        30.    The Guidelines require that a project description containing the "precise

3    location and boundaries of the proposed project" be included in the environmental review.

4    (14 Cal. Code Regs. § 15124(a).)

5        31.    An EIR must be prepared "[i]f there is substantial evidence, in light of the

6    whole record before the lead agency, that the project may have a significant effect on the

7    environment. . . ." (Pub. Res. Code § 21080(d).)  That is, an EIR must be prepared "if a

8    lead agency is presented with a fair argument that the project may have a significant effect

9    on the environment . . . even though it may also be presented with other substantial

10   evidence that the project will not have a significant effect." (14 Cal. Code Regs. §

11   15064(f)(1).)

12       32.    Under specific and limited circumstances, the public agency evaluating a

13   proposed project may find that an EIR is not required.  In such cases, the agency may adopt

14   a negative declaration or a mitigated negative declaration ("MND").  A negative

15   declaration may be prepared and adopted for a proposed project that "will not have a

16   significant effect on the environment and does not require the preparation of an

17   environmental impact report." (Pub. Res. Code § 21064.)  An MND may be prepared or

18   adopted when "revisions in the project plans . . . would avoid the effects or mitigate the

19   effects to a point where clearly no significant effect on the environment would occur" and

20   "there is not substantial evidence in light of the whole record before the public agency that

21   the project, as revised, may have a significant effect on the environment." (Pub. Res. Code

22   § 21064.5.)  If either of these conditions does not apply to the project in question, the

23   agency must prepare an EIR.

24       33.    A negative declaration must contain:  (1) a description of the project; (2) the

25   location of the project; (3) a proposed finding that the project will not have a significant

26   environmental impact; (4) a copy of the initial study documenting the reasons to support

27   the finding; and (5) mitigation measures, if any, incorporated into the project.  (14 Cal.

28   Code Regs. § 15071.)

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA  91101-1504

- 8 -

1       34.    Because informing the public about the environmental impacts of a

2   proposed project is a critical function of CEQA, any proposed mitigation measures in the

3   MND must be made available for public review and comment prior to adoption of the

4   declaration.  (Pub. Res. Code § 21081.6(c).)

5                 **The City of Los Angeles General Plan and Elements**

6       35.    The City of Los Angeles was once a California pioneer in placing the

7   general plan at the top of the hierarchy of land use plans of the City.  A significant May

8   1969 Charter amendment approved by voters after an extensive investigation and report in

9   a July 1968 Citizens Committee on Zoning Practices and Procedures First Report and May

10  1969 Final Report overhauled City planning processes.  For instance, the Charter

11  amendment changed the name of the City's former "master plans," which were not always

12  enforceable, to the "General Plan," to designate a change that would be enforceable law of

13  the City.  It was not until two years later that the Legislature adopted State Planning Code

14  provisions that henceforth required every city in California, including charter cities, to

15  adopt a "general plan" to serve as a "comprehensive, long-term general plan for the

16  physical development" of the city (Gov. Code § 65300), and all zoning ordinances and land

17  uses within the city must be consistent with the general plan (Gov. Code §§ 65300, 65860

18  & 66473.5).  State law now requires that all general plans include certain mandatory

19  "elements" of general plans including:  Land Use, Circulation, Housing, Conservation,

20  Open Space, Noise, and Safety.  (Gov. Code § 65302.)

21      36.    The City of Los Angeles General Plan's Land Use Element consists of two

22  parts:  the Framework Element and the subordinate 35 community plans.  The Framework

23  Element provides a strategy for the City's long-term growth in a citywide context.  The

24  1969 overhaul of the City Charter's Planning Provisions, recognizing that Los Angeles was

25  too large to plan all at once, included a mandate that officials divide the City into planning

26  areas that respected known communities and neighborhoods, and relied upon physical

27  boundaries and streets to help define the planning areas.  In accordance with this Charter

28  mandate, the City was divided into 35 community plans and two special districts (Harbor

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 9 -

1  and Airport) for periodic comprehensive planning of the City's land uses, residential unit

2  densities, building size and heights, and supporting infrastructure.

3      37.    The Framework Element is intended to guide the updates of the 35 various

4  community plans and two district plans that comprise, together, the General Plan's Land

5  Use Element.  The Framework Element contains policy 3.3.2, "monitor population,

6  development, and infrastructure and service capacities within the City and each community

7  plan area. . . .  The results of this monitoring effort . . . shall be used in part as a basis to . . .

8  change or increase the development forecast within the City and or community plan area

9  . . . when it can be demonstrated that (1) transportation improvements have been

10  implemented or funded that increase capacity and maintain the level of service, (2) demand

11  management or behavioral changes have reduced traffic volumes and maintained or

12  improved levels of service, and (3) the community character will not be significantly

13  impacted by such increases."  Moreover, policy 3.3.2 provides that this monitoring shall be

14  used to "consider regulating the type, location, and/or timing of development, when all

15  preceding steps have been complete, additional infrastructure and services have been

16  provided, and there remains inadequate public infrastructure or service to support land use

17  development."  The City has described this policy as requiring "that type, amount, and

18  location of development be correlated with the provision of adequate supporting

19  infrastructure and services."  This policy was also provided as a mitigation measure for the

20  General Plan Framework Element Environmental Impact Report as a specific mitigation of

21  impacts on Fire and Police Emergency Services.

22      38.    The 35 community plans set forth limits on land uses, residential unit

23  density, and floor area ratios in order to accommodate anticipated growth up to a future

24  date, and identify policies and programs the City will pursue to carry out the goals of the

25  framework and community plan for each discrete community of the City.

26      39.    While the Framework and some community plans of the City provide for

27  areas known as Regional Center Commercial that permit up to 6:1 FAR under certain

28  limited circumstances where the City's streets, transit, infrastructure, and emergency

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 10 -

1 service systems are adequate, the City's community plans and zoning adopted to be

2 consistent with those more limited development scenarios impose limits that do not allow

3 every lot within the Regional Center Commercial Land Use designation to be developed to

4 the maximum 6:1 FAR. Thus, to simply say a lot is located within the Regional Center

5 Commercial area without disclosing and analyzing mitigation measures imposed to limit

6 development is to mislead decisionmakers and the public. Only a fraction of the lots in

7 Regional Center Commercial, those immediately adjacent to high capacity transit systems

8 or incorporating extraordinary transportation protections, were ever intended to be

9 developed at the full 6:1 FAR.

10     40. The 1988 Hollywood Community Plan ("1988 HCP") is the portion of the

11 General Plan of the City of Los Angeles that sets forth the land use law governing

12 development in that area of the City where the parcel for the proposed Tommie Hotel

13 Project is located. All development within that area must proceed in accordance with the

14 1988 HCP, and the Plan includes specific substantive and procedural policies and

15 mandatory guidelines for obtaining Land Use Entitlements, such as those at issue here.

16 The 1988 HCP includes all permanent [Q] Qualified and "D" Development Conditions

17 enacted into the 1988 HCP in compliance with the City's General Plan/Zoning Consistency

18 Program in order to comply with Government Code Section 65680(d) and a court

19 settlement referenced herein.

20     **City of Los Angeles Charter Planning Provisions Legislative History**

21     41. The origin of the City Charter sections governing planning processes was a

22 City Hall bribery and corruption scandal. In November 1966, the Los Angeles Civil Grand

23 Jury issued a report concerning "a complex zoning case in the West Valley section of Los

24 Angeles." "The evidence before us indicated that a developer had represented to his

25 partners that he could secure favorable zoning treatment from the City of Los Angeles in

26 exchange for payment of monies." The Grand Jury was unable to conclusively determine

27 that monies were paid in exchange for the City Council to reverse adverse

28 recommendations from every agency that considered the West Valley zoning proposal from

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 11 -

1   its inception.  The Grand Jury observed:

2           "We regretfully report that evidence we heard demonstrated

3           that influence can and has been and in all probability will be

4           exerted through the medium of campaign contributions,

5           political obligations and friendships."

6   The Grand Jury called for an in-depth study of the City's lack of adherence to its Master

7   Plan (the predecessor name of the General Plan) and zoning.

8           42.     The City appointed a group of prominent community leaders to the Citizens

9   Committee on Zoning Practices and Procedures ("Citizens Committee").  Former Los

10  Angeles City Mayor and former Presiding Judge of the Los Angeles Superior Court,

11  Fletcher Bowron, became the Chair of the Citizens Committee.  It conducted 14 months of

12  public hearings on planning and zoning practices and procedures with the assistance of

13  planning and legal professionals.

14          43.     In July 1968, the Citizen's Committee issued its First Report to the Mayor

15  and City Council entitled "A Program to Improve Planning and Zoning in Los Angeles."

16  The report contained 36 recommendations for improvement including charter amendments,

17  municipal code amendments, uniform zoning hearing procedures, and ethics reforms.

18          44.     Subsequent to the Citizens Committee recommendations, and City Council

19  debates over the proposed charter amendments, the Council placed recommended charter

20  amendments on the municipal ballot largely unmodified as recommended.  In May 1969,

21  Los Angeles voters approved a comprehensive overhaul of the City Charter planning

22  provisions based upon the Committee's recommendations.

23          45.     As the Citizens Committee conducted its study of planning and zoning

24  practices in 1967 to 1969, some City officials, commissioners, and at least one real estate

25  developer were indicted, convicted, and/or pled guilty to various crimes involving *quid pro*

26  *quo* for favorable rezoning, variances, or conditional use permits.  Other commissioners of

27  planning bodies of the City resigned over alleged conflicts of interest, or were reassigned.

28  Over the next two years, Councilmember Thomas Shepard would be tried twice for bribery

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3ʳᵈ Floor
Pasadena, CA 91101-1504

- 12 -

1   charges in connection with the scandal, and would not run for re-election.  In January 1970,

2   Shepard was convicted of one count of bribery in connection with a San Fernando Valley

3   rezoning case in his district.  In sentencing Shepard to 1-14 years in state prison, the judge

4   refused probation, observing that "the power to rezone is the power to create great wealth."

5   The judge analogized the actions of Shepard as nothing less than stealing from the public

6   till, as the rezoning process was used to transfer tremendous wealth from the taxpayers to

7   those lobbying City officials.  It was within the context of these cases and news stories

8   showing City officials traded upzoning for bribes, gifts, meals, loans and friendship that the

9   City Charter's procedural requirements for planning were overhauled, including certain

10   provisions relevant to these proceedings.

11          46.    One of the key reforms added to the City Charter in May 1969 is the

12   fundamental requirement that any rezoning of property must be found to be consistent with

13   the City's general plan.  Section 558 governs "the adoption, amendment or repeal of

14   ordinances, orders or resolutions by the Council concerning . . . the creation or change of

15   any zones or districts for the purpose of regulating the use of land . . . ." (Charter § 558(a).)

16   Such ordinance may be initiated by the Director of Planning, City Planning Commission,

17   or City Council, or by the owner of affected property. (Charter § 558(b)(1).)

18                        **General Plan Consistency Program Background**

19          47.    The City's General Plan is the "constitution" of land use.  It sits atop a

20   hierarchy of subordinate land use zoning regulations in the LAMC.  All zoning regulations

21   and Zoning Administrator Interpretations of the zoning code must be consistent with the

22   General Plan land use designations, density limits, and related policies and programs

23   regarding future physical development of the City set forth in the General Plan.  Zoning

24   regulations or interpretations thereof which are inconsistent with the General Plan are void

25   and unenforceable.

26          48.    After Los Angeles voters in the City Charter (1969), and the state

27   Legislature in the State Planning Code (1971), required the City to prepare and follow its

28   General Plan, the City Council of Los Angeles refused to do so.  The Los Angeles zoning

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 13 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA  91101-1504

1  code was enacted in 1946 before general plans were mandatory and enforceable.  If the

2  City were built out at the densities permitted under the 1946 zoning code, the City would

3  hold about 10 million people (instead of the current 3.9 million).  In the 1970s and 1980s,

4  the City studied population projections and public infrastructure capacity and concluded

5  the 1946 zoning densities would cause devastating environmental impacts if allowed to be

6  fully built out.  Accordingly, many, if not all, of the City's 35 community plans included

7  mitigation, incorporated into the Plans as a policy/program to reduce authorized density in

8  order to avoid overwhelming public infrastructure and municipal service delivery systems.

9      49.    By the late 1970s, however, the City Council had failed to downzone the

10  City's properties to be consistent with the reduced densities required by its 35 community

11  plans.  The City Council continued to approve projects based upon the old zoning laws

12  even though it was inconsistent with the reduced density land use designations in the new

13  community plans of the General Plan.  In response, the State Legislature passed AB 283.  It

14  added Government Code Section 65680(d).  That subsection mandated that the City of Los

15  Angeles make its zoning consistent with its general plan, as all other general law cities and

16  counties were required to do, and most other chartered cities were voluntarily doing.

17      50.    The Los Angeles City Council sued the state to avoid being required to

18  make Los Angeles' zoning consistent with its community plans.  In City of Los Angeles v.

19  State of California (1982) 138 Cal.App.3d 526, 534, the City lost its effort to evade

20  downzoning.  After delaying for several more years and failing to show a good faith effort

21  at implementing the statutory mandatory duty of land use consistency, in December 1984

22  the City was sued in Federation of Hillside and Canyon Associations v. City of Los

23  Angeles (LA Superior Ct. No. 526,616).  In December 1984, Department 86 of this Court

24  issued a writ commanding Los Angeles to make its zoning consistent with its General Plans

25  within 120 days.  The City Council, on April 2, 1985 enacted Ordinance No. 159,758.  The

26  ordinance requires that the LADBS and City Planning determine that each building permit

27  be consistent with the General Plan Land Use Designation or the permit cannot be issued.

28  Ordinance No. 159,758 is still operative law, but on information and belief, Petitioner

- 14 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1   alleges that the City stopped enforcing the Ordinance in recent years.  In mid-1985, the

2   City and plaintiffs in the Hillside Federation litigation entered into a settlement agreement

3   requiring the City to rezone all parcels within three years to conform to its general plan (the

4   35 community plans) lower density land use designations or general plan intent.  The City

5   was placed under the supervision of a court monitor to assure it was done, but it took an

6   extraordinary amount of time for the City to be released from court-enforced monitoring.

7   Unfortunately, it appears that the lack of a court monitor has led certain City officials back

8   to granting spot zoning influenced by political campaign contributions, money for

9   Councilmember legal defense funds, officeholder accounts, and favorite non-profit causes.

10   **GENERAL ALLEGATIONS ABOUT THE TOMMIE HOTEL PROJECT**

11       51.   Petitioner is informed and believes, and based thereon alleges, that Real

12   Party brought forward to the City Planning Commission and City Council an application

13   that sought the following actions and approvals:  (1) Vesting Zone Change from C4-2D

14   Zone to [T][Q]C4-2D Zone (to permit residential and commercial uses); (2) Zoning and

15   Height District Change which increases the allowed height to 99.5 feet and the allowed

16   Floor Area Ratio ("FAR") to 3.83:1; (3) a Conditional Use Permit to allow on-site alcohol

17   throughout the hotel site, (4) a Site Plan Review for a mixed-use hotel/restaurant project

18   with 212 rooms, with a ground level indoor and outdoor courtyard bar/lounge/restaurant,

19   rooftop open air bar, swimming pool, and rooftop outdoor eating and drinking areas

20   (including lounge with moveable walls).  Real Party also filed an application for a Vesting

21   Tract Map to subdivide all 212 rooms into 212 hotel condominium units (presumably to

22   facilitate selling each room to foreign investors under the EB-5 investor visa program).

23       52.   The City designated the City Land Use Entitlements for the application as

24   Case No. CPC 2016-270-VZC-HD-CUB-SPR ("CPC Entitlements").  The City also

25   designated the vesting tract map as VTT-74735.  While the City Planning Commission and

26   City Council on appeal ultimately considered and approved the CPC Entitlements, the

27   Advisory Agency never issued a written determination related to the proposed vesting tract

28   map.  Currently, the City's case summary system online lists the VTT-74735 as "on hold".

- 15 -

53.     The City caused a Mitigated Negative Declaration ("MND") for the Project to be prepared and designated as ENV-2016-4313-MND.

54.     On or about January 25, 2017, the City Planning Commission held a public hearing and recommended approval of the Project.

55.     On or about February 1, 2017, the City Planning Commission issued a corrected decision letter recommending that the City Council adopt a Vesting Zone Change and Height District Change for the subject site, approve the alcohol CUB, approve the site plan review, and adopt the Project MND.

56.     On or about March 1, 2017, the Advisory Agency conducted a hearing on the proposed vesting tract map, but to date, no decision was issued related to the proposal to create condominiums for each of the 212 guest rooms.

57.     On or about April 25, 2017, a hearing was held before the Planning and Land Use Management ("PLUM") Committee of the City Council, where Petitioner and others objected to the proposed Project. The PLUM Committee voted to deny the land use appeals and approve the Land Use Entitlements.

58.     On or about May 2, 2017, May 5, 2017, and May 10, 2017, the City Council took a series of actions related to the Project including continuances, amending motions, receiving public comment but not permitting land use appellants to meaningfully present project objections to the full City Council, and ultimately, Project approval. The "hearing" on the Project was conducted only on May 5, 2017, where Petitioner's attorney strenuously objected to being allowed only 1 minute to present the complex issues involving the land use appeal to the Council.

59.     On or about May 10, 2017, the full City Council approved the MND and the Project, including all of the Land Use Entitlements, except the still pending Vesting Tentative Tract Map.  As part of the actions taken on May 10, 2017, the City Council amended the PLUM Committee Report and ordinance using an amending motion, but failed to permit anyone submitting a speaker's card request from speaking on the item.

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA  91101-1504

60.     During all of the proceedings before the City, no representative of the CRA/LA entered an objection to the City usurping the CRA/LA's municipal code authority to environmentally review the Project, proposed mitigation consistent with the Hollywood Redevelopment Plan, actively participated in the Site Plan Review process, or enforced the "D" Development Limitation imposed on the Project site by Ordinance No. 165,660 which the CRA/LA must review in order for any lawful increase in development density to potentially be approved.

61.     Petitioner and other interested parties and individuals made oral and written comments on the Project and MND, and raised each of the legal deficiencies asserted in this petition.  Petitioner has exhausted all administrative remedies.

62.     A Notice of Determination for certification of the MND and project approval was posted by the City with the Los Angeles County Clerk in Norwalk, with a posting date of May 12, 2017.  In violation of Public Resources Code Section 21167(f), the City failed to mail a copy of the Notice of Determination to Petitioner within five days of the City's project approvals, although Petitioner specifically requested that this be done so it would not have to monitor the physical posting site at the County Clerk's offices in Norwalk, California.

63.     Petitioner has performed all conditions imposed by law precedent to filing this action, including complying with the requirement of Public Resources Code Section 21167.5 by providing notice to the City and the CRA/LA that this action would be filed.

64.     Petitioner will also serve a copy of this petition, and any amended petitions, on the California Attorney General as required by law.

65.     Petitioner has no plain, speedy or adequate remedy available in the ordinary course of law to redress the claims alleged in this petition.

66.     Petitioner as well as members of the general public will suffer irreparable harm if the relief requested herein is not granted and the Project is commenced based upon the MND and Land Use Entitlements granted for the Project.

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 17 -

## FIRST CAUSE OF ACTION

### (Against City, CRA/LA and its Governing and Oversight Boards)

### (Code Civ. Proc. § 1085; Violation of LAMC § 16.05G)

### Illegal Site Plan Review

67.    Petitioner realleges and incorporates herein by reference the allegations of Paragraphs 1 through 66, inclusive, of this petition.

68.    AB1x26 and follow up legislation abolished community redevelopment agencies, and became effective in 2012.  This legislation required successor agencies, such as the CRA/LA, to wind down the activities of the former redevelopment agencies to which they are the legal successors.  Although some financial obligations of the CRA/LA are terminated and others continue to wind down, the various CRA redevelopment plans remain in effect, and the CRA/LA retains all land use approval and administration powers over the redevelopment plans, as well as overall building permits issued within those redevelopment plan areas.  The CRA/LA retains power and authority for development review/approvals in the Hollywood Redevelopment Project Area – where the Project is located.

69.    The CRA/LA has publicly declared on its website at http://www.crala.org/internet-site/index.cfm, "Notice: ABx1-26 does not abolish the 31 existing Redevelopment Plans.  The land-use authorities in the Redevelopment Plans remain in effect and continue to be administered by the CRA/LA until transferred to the Department of City Planning."

70.    The land use authorities in the Redevelopment Plans have not been transferred to the Department of City Planning.  The City has not accepted responsibility for administering environmental review and land use approval authority from the CRA/LA.  Although legislation to transfer the CRA/LA environmental review and land use authority responsibilities to the Department of City Planning has been considered by the Los Angeles City Council for several years, it has repeatedly declined to enact any such legislation.  Until such enactment occurs, and only if it occurs, the CRA/LA is, and at all times relevant

- 18 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA  91101-1504

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1    herein was, required to perform its mandatory environmental and land use approval duties

2    under law.

3        71.    Both the City and CRA/LA have publicly acknowledged that the City of Los

4    Angeles has not assumed jurisdiction over the CRA/LA's duties, nor effectuated a transfer

5    of authority from the CRA/LA to the City.

6        72.    CEQA, found at Public Resources Code Section 21000, et seq., provides

7    procedures for determination of a project's environmental impacts and for full public

8    disclosure of the potential adverse effects on the environment of discretionary projects that

9    governmental agencies propose to approve.  CEQA requires a description of feasible

10   alternatives to such proposed projects and feasible mitigation measures to lessen their

11   environmental harm.  (Pub. Res. Code § 21002.)

12       73.    The "lead agency," under CEQA is the public agency that is responsible for

13   conducting an initial study to determine whether an environmental impact report, a

14   negative declaration, or a mitigated negative declaration, among other documents, will be

15   prepared for a project.  (Pub. Res. Code §§ 21067; 21080.1(a); 21083(a).)  The lead agency

16   must also provide for public review and comment on a project and its associated

17   environmental documentation.  The lead agency makes the first critical, and threshold,

18   environmental project review approvals.  Subsequently, and based on the work first

19   performed by the lead agency, other responsible agencies might make secondary approvals.

20       74.    In addition to duties imposed on a lead agency under CEQA, the LAMC

21   designates the CRA/LA's predecessor agency as the "lead agency" for projects – like the

22   Tommie Hotel Project – requesting site plan review in an adopted redevelopment project

23   plan area.  LAMC Section 16.05G2 mandates that environmental review of a project's Site

24   Plan Review proposed within adopted redevelopment project areas be conducted by the

25   CRA (and now the CRA/LA as successor agency), not the City of Los Angeles.  LAMC

26   Section 16.05G2 provides:

27       "Environmental Review.  As part of the application for site plan

28       review, the applicant shall file necessary forms and information for

- 19 -

VERIFIED PETITION FOR WRIT OF MANDAMUS

1   environmental review as prescribed by the Director.  The Director,

2   or his/her designee, shall cause to be prepared, concurrently with the

3   review and approval of the site plan, the required environmental

4   studies and notices for the project, **except that in the adopted**

5   **redevelopment project areas, the CRA shall assume lead agency**

6   **responsibilities for environmental review of all projects subject**

7   **to the provisions of this section and shall prepare the required**

8   **environmental studies and notices.**" (Emphasis added.)

9       75.    The Project is located in the adopted and still-valid Hollywood

10  Redevelopment Plan Area.

11      76.    The Project is subject to the provisions of LAMC Section 16.05 because the

12  Project, due to its proposed size, requires Site Plan Review.

13      77.    Under LAMC Section 16.05G2, the lead agency responsible for preparing

14  the CEQA environmental review for the Project, and determining in the first instance

15  whether an EIR must be prepared, was and is the CRA/LA.

16      78.    The CRA/LA had a clear, present and ministerial duty to perform

17  environmental review of the Project as the lead agency, and to "prepare the required

18  environmental studies and notices," as mandated by LAMC Section 16.05G2, including in

19  connection with the Project's Site Plan Review.  Despite this clear, present and ministerial

20  duty, the CRA/LA has failed to carry out its responsibilities of administering adopted and

21  active redevelopment plans such as the instant Hollywood Redevelopment Plan.  Petitioner

22  is informed and believes, and based thereon alleges, that the CRA/LA has illegally stood by

23  as the City Planning Department, which lacks fundamental jurisdiction to do so, unlawfully

24  undertook lead agency duties in Site Plan Reviews of projects in redevelopment plan areas,

25  including the Tommie Project, instead of the CRA/LA fulfilling its mandatory duties as

26  lead agency to environmentally review all Site Plan Review projects proposed in the City's

27  redevelopment plan areas.

28

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 20 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

79.     Prior to the City's approval of the Project, the CRA/LA failed to "assume lead agency responsibilities for environmental review" of the Project or "prepare the required environmental studies and notices," as required by LAMC Section 16.05G2. Additionally, the City failed to refer the Project to and the CRA/LA failed assert its responsibility to review and prepare a report to the City "as to conformity with the adopted Redevelopment Plan applicable to the project," as mandated by LAMC Section 16.05G3. In the proceedings leading up to the City's action approving the Project, the record is devoid of any review and report from the CRA/LA.  Accordingly, the CRA/LA failed to perform its mandatory duties under LAMC Section 16.05G, and the City violated the law, including by lacking fundamental jurisdiction to act.

80.     Because the CRA/LA never assumed lead agency responsibilities for the Project or made the determination whether the Project required an EIR, the City's actions purportedly acting as lead agency and in approving the Project and its Site Plan Review in violation of LAMC Section 16.05G, were without fundamental jurisdiction, *ultra vires*, unauthorized and void.

81.     Based on the facts as alleged herein, Petitioner is entitled to a writ of mandamus compelling the City to set aside and invalidate the Project Approvals, including the Site Plan Review, and simultaneously mandating that the CRA/LA conduct independent environmental review of the Project, beginning with the preparation of an initial study under CEQA, should Real Party reapply for Project approvals following their invalidation by this Court.

## SECOND CAUSE OF ACTION

### (Violation of CEQA And CEQA Guidelines;

### Improper Approval of Mitigated Negative Declaration)

82.     Petitioner realleges and incorporates herein by reference the allegations of Paragraphs 1 through 81, inclusive, of this petition.

83.     The record contains substantial evidence to support a fair argument that the Project may cause significant, unmitigable impacts to the environment, including but not

- 21 -

1  limited to land use, transportation, traffic operational, circulation, emergency response

2  times, parking, pedestrian safety, noise, air quality and health risks, greenhouse gases,

3  historic resources, shade/shadow, public services, cumulative impacts and growth inducing

4  impacts, and further, that the City also illegally piecemealed and/or allowed Real Party to

5  piecemeal the whole of the Project, in violation of CEQA.

6       84.    By adopting the MND, the City, purporting to act as lead agency, has

7  prejudicially abused its discretion and failed to proceed in the manner required by law,

8  requiring this Court to issue a writ of mandamus vacating and invalidating all Project

9  approvals, including all Land Use Entitlements, which rely on the illegal MND.

10       85.    Petitioner is further informed and believes, and based thereon alleges, that

11  the City improperly approved the Project while deferring mitigation for potentially

12  significant impacts, as well as deferring studies, alternatives analysis, and consideration

13  and implementation of potential mitigation measures, all in violation of CEQA.

14       86.    In violation of Public Resources Code Section 21082.2(d), the City refused

15  to prepare an Environmental Impact Report ("EIR") or further study any of the issues

16  raised by Petitioner and other members of the public.

17       87.    Petitioner as well as members of the general public will suffer irreparable

18  harm if the relief requested herein is not granted and the Project is commenced without

19  compliance with all applicable provisions of the California Environmental Quality Act

20  ("CEQA").

21                          **THIRD CAUSE OF ACTION**

22  **(Against City under Code Civ. Proc. § 1085; City's Violation of Residential Dwelling**

23  **Unit Limits of LAMC Section 12.14 Using Two Invalid Zoning Administrator**

24  **Interpretations)**

25       88.    Petitioner realleges and incorporates herein by reference the allegations of

26  Paragraphs 1 through 87 inclusive, of this petition.

27       89.    The residential unit density of a project is determined by reference to Los

28  Angeles Municipal Code Sections 12.14 (C2 Zone) and 12.11 (R4 Zone).  LAMC Section

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 22 -

1    12.14C provides that the residential unit density of a project constructed in the C2 Zone

2    shall be the same as that allowed in the R4 Zone as set forth in LAMC Section 12.11C.

3    Section 12.11C provides that the residential unit density for hotel guest rooms shall be 200

4    square feet of lot area per guest room.

5        90.    Determination of the allowable number of guest rooms for the Project is

6    simple mathematics.  The lot area of the Project is 20,736 square feet.  Dividing the lot area

7    of the Project site by 200 equals 103.63.  Thus, at most, the authorized number of

8    residential units for the Project is 104 hotel guest rooms.

9        91.    Real Party applied for, and the City approved, a Project with 212 hotel guest

10   rooms.  The City relied upon two Zoning Administrator Interpretations ("ZAI") of the

11   LAMC to rationalize its contention that Real Party may construct "unlimited" hotel guest

12   rooms.  Both of these ZAIs purport to permit the City to more than double the residential

13   unit density of every mixed use project proposed on a commercially zoned lot located in a

14   Regional Center Commercial Land Use designation. The ZAIs and their use in the manner

15   as occurred here exceed the authority of City officials because they amount to an unlawful

16   insertion of wording into the LAMC, which wording simply is not there.

17       92.    Throughout the LAMC, the regulations of authorized land uses are found

18   under subdivision "A"; restrictions are found under subdivision "B"; and lot area

19   (including residential density) is found under subdivision "C".  Both LAMC Sections 12.14

20   (C2 Zone) and 12.11 (R4 Zone) in subdivision C provide that any exceptions to their rules

21   on residential unit density, if any, shall be found in LAMC Section 12.22 (Exceptions),

22   subdivision C.

23       93.    The first portion of LAMC Section 12.22A18 (USE) provides:

24       "18.  Developments Combining Residential and Commercial Uses.

25       Except where the provisions of Section 12.24.1 of this Code apply,

26       notwithstanding any other provision of this chapter to the contrary,

27       the following **uses** shall be permitted in the following zones subject

28       to the following limitations:  (Amended by Ord. No. 163,679, Eff.

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 23 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA  91101-1504

1    7/18/88.)

2    (a)  Any **use** permitted in the R5 Zone on any lot in the CR, C1,

3    C1.5, C2, C4 or C5 Zones provided that such lot is located within

4    the Central City Community Plan Area or within an area designated

5    on an adopted community plan as "Regional Center" or "Regional

6    Commercial".  Any combination of R5 **uses** and **the uses** permitted

7    in the underlying commercial zone shall also be permitted on such

8    lot."  (Emphasis added.)

9        94.    The express language of this code section applies only to permitted <u>uses</u>, not

10   to permitted residential dwelling unit <u>density</u> expressed in lot area regulation.  Thus, the

11   assertion by the Real Party and City that Section 12.22A18 "allows" R5 residential

12   dwelling unit density in a C2 Zone is incorrect.

13       95.    The City, without ever disclosing this information in the MND, relies on a

14   May 18, 2000 Zoning Administrator Interpretation of LAMC 12.22A as the basis to allow

15   more than doubling of residential dwelling unit density.  The ZAI reads as follows:

16   "***Q*** - Section 12.22A18(a) allows '... any combination of R5 uses and

17   the uses permitted in the underlying commercial zone...' in the CR,

18   C1, C1.5, C2, C4, and C5 Zones within the area specified in this

19   section. Does the phrase 'R5 uses' as used therein refer to the lot

20   area requirements (density) of the R5 zone or the underlying C zone?

21   ***A*** - Generally, the lot area requirements for the C zones, as

22   mentioned in the section, refer to the lot area requirements of R4 or

23   R3 Zones. However, this section for developments combining

24   residential and commercial uses specifically allows R5 uses.

25   One question related to density that arises is whether to apply R5 lot

26   area requirements or R3 / R4 lot area requirements as referenced in

27   the lot area requirements of C zones.  In the enforcement of this

28   section, the Zoning Administrator has determined that the lot area

- 24 -

VERIFIED PETITION FOR WRIT OF MANDAMUS

1    requirements of the R5 zone are to be applied to projects subject to

2    this section.  **Although it is not explicitly stated in the section**, the

3    last sentence of the section implies applying area requirements of R5

4    zone, not R3 or R4 zone.  This interpretation has been confirmed by

5    the Office of Zoning Administrator who reviewed the original staff

6    report for the ordinance." (Emphasis added.)

7        96.    Express provisions of 12.22, subdivision C, where a reviewing court would

8    expect to find an express provision allowing R5 residential unit density in a mixed use

9    project developed on a commercially zoned lot in a Regional Center Commercial Land Use

10   Designation, is instead silent.  Thus, although subdivisions "C" of LAMC Sections 12.14

11   and 12.11 expressly state that any exception to residential unit density rules in those

12   sections will be found in subdivision "C" of Section 12.22 (Exceptions), no such exception

13   is provided by the City Council in its enacted laws.

14       97.    The Zoning Administrator has no authority to re-write a City ordinance to

15   include a provision, especially an exception, without grounding it in express language.

16   Only the City Council has that authority to rewrite its zoning code.

17       98.    The City has relied upon this improper ZAI in order to allow R5 density on

18   the Project site.

19       99.    The May 18, 2000 ZAI is void because it violates the plain language of

20   LAMC Section 12.22.

21       100.   The Zoning Administrator's misconduct did not end with the mis-

22   interpretation to allow R5 residential unit density into this Project.  Reference to LAMC

23   subdivision C of Section 12.12 (R5 Zone) reveals that the City Council listed no residential

24   unit density limit for hotel guest rooms, only residential unit density for apartment and

25   condominiums.  But once again, the Zoning Administrator offered a novel theory of

26   statutory interpretation.  The Zoning Administrator opined that the silence on hotel guest

27   room density in LAMC Section 12.12C is to be interpreted so that there is no limit at all on

28   hotel guest rooms in the R5 Zone.

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA  91101-1504

- 25 -

1    101.   The City, without ever disclosing this information in the MND, relies on a

2  Zoning Engineer interpretation dated February 10, 2009:

3       **"Section 12.12C4 Minimum Lot Area for Guest Rooms in R5 Zone**.

4       Q- Under this code section, minimum lot area in the R5 zone are not

5       defined for guest rooms as in the R3 and R4 zones, but guest rooms are a

6       permitted use in the R5 Zone.  Is there a minimum lot area per guest room

7       in the R5 zone even though it does not specify such?

8       A- The R5 zone has no lot area regulation for the guest rooms.  The only lot

9       area provision for the R5 zone is that the minimum lot area unit shall be

10      200 sq. ft.  This is not an error by omission since the guest rooms are a

11      permitted use in the R5 zone.

12      Height district limitations on total floor area in the building prevent an

13      unlimited number of guest rooms.

14      (From Memo by Zoning Engineer Nick Trotta on 2/10/2009)"

15     102.   Thus, with no public notice and no environmental review, the Zoning

16  Engineer purported to exercise authority to say that silence in LAMC Section 12.12C

17  equals the word "unlimited" as to hotel guest rooms.  If silence in the LAMC empowers a

18  Zoning Administrator or Engineer to declare what the silence means, the legislative powers

19  of the City Council have been illegally usurped by City bureaucrats.

20     103.   If the LAMC is found to be lacking, the proper course of action by City

21  officials would be to make a report to the City Planning Commission, and to propose

22  corrective amendments to the LAMC to allow the higher densities, and then support such a

23  proposal with proper analysis.  However, zoning amendments, especially those that purport

24  to authorize a more than doubling of density, must also be environmentally studied City-

25  wide to determine if the City's infrastructure and community plans were intended to permit

26  such dramatic increases in density.  The AB 283 General Plan/Zoning Consistency

27  Program carried out density reductions from 1985 to 1996 to make the City's zoning

28  consistent with the General Plan and community plans.  Petitioner is informed and

- 26 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1    believes, and based thereon alleges, that the ZAIs were issued because City officials could

2    not justify increasing density in a zoning amendment proceeding, so it was accomplished

3    with these improper and "under the radar" ZAIs.

4         104.    For the foregoing reasons, the City has failed to proceed in accordance with

5    law, and Petitioner is entitled to issuance of a writ of mandate setting aside all Project

6    approvals that were issued in reliance on any alleged maximum residential dwelling unit

7    density above the 104 hotel guest rooms permitted for this Project under the authority of

8    LAMC 12.14(C2 Zone), as applicable to the Project site.

9                              **FOURTH CAUSE OF ACTION**

10        **(Against City, CRA/LA and its Governing and Oversight Boards,**

11   **Code Civ. Proc. § 1085; Violation of City Charter Section 558 and City Ordinance**

12   **165,660 and Its Incorporation Into The 1988 Hollywood Community Plan)**

13        105.    Petitioner realleges and incorporates herein by reference the allegations of

14   Paragraphs 1 through 104, inclusive, of this petition.

15        **AB 283 General Plan Consistency Implemented In Conjunction With**

16                      **The 1988 Hollywood Community Plan**

17        106.    The 1973 Hollywood Community Plan ("HCP"), the predecessor to the

18   1988 HCP, specifically acknowledged that development and density in Hollywood would

19   have to be carefully monitored to assure the projected 1990 population could be

20   accommodated without overwhelming the street systems.  One objective of the 1973 HCP

21   was: "To designate lands at appropriate locations for the various private uses and public

22   facilities in the quantities and at densities required to accommodate populations and

23   activities projected to the year 1990."

24        107.    The 1973 HCP stated that development should not be permitted if impacts

25   on the local transportation system were overwhelming: **"No increase in density shall be**

26   **effected by zone change** or subdivision unless it is determined that the local streets, major

27   and secondary highways, freeways, and public transportation available in the area of the

28   property involved, are adequate to serve the traffic generated.  Adequate highway

- 27 -

1   improvements **shall be assured prior to the approval of zoning permitting**

2   **intensification of land use** in order to avoid congestion and assure proper development.",

3   (Emphasis added.)

4       108.   As outlined herein, by 1985, the City prepared an EIR to support adoption

5   of the Hollywood Redevelopment Plan by the City Council in 1986.  Facing the AB 283

6   settlement agreement requirement to reduce its zoning density, and dealing with the

7   additional regulatory layer of the overlay of the Hollywood Redevelopment Plan, in 1988

8   the City released an EIR for the purpose of updating the 1973 HCP and coordinating the

9   process with the ongoing AB 283 zoning consistency program.

10       109.   The previously prepared 1985 Redevelopment Plan EIR described the

11   redevelopment project in Hollywood as:  "the primary characteristics of the proposed

12   project are changes in land use designation and changes in development densities, and

13   active encouragement of redevelopment." (1985 Draft Redevelopment Plan EIR, p. 12.)

14   The 1985 Redevelopment Plan EIR expressly acknowledged the forthcoming rezoning as

15   the EIR was released in November 1985, about five months after the City entered into the

16   settlement agreement in the <u>Hillside Federation</u> case to make its general plan and zoning

17   consistent.  This is how the 1985 Redevelopment Plan EIR described the expected process:

18       "The project would require amendment of the Hollywood

19       Community Plan and adoption of the proposed Redevelopment Plan

20       by the City Council of Los Angeles.  By state law [Government

21       Code § 65860(d) (AB 283)], the Redevelopment Plan and

22       subsequent future development in the project area **must conform to**

23       **the Hollywood Community Plan with respect to land use and the**

24       **density of development permitted.**  Subsequent to adoption of the

25       Redevelopment Plan, City Planning Department would initiate

26       rezonings as needed for zoning designations to be consistent with

27       land use designations in the Community Plan, as may be amended.

28       Specific development projects could then be prepared and approved,

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA  91101-1504

- 28 -

1    along with development agreements between CRA and private

2    developers." (1985 Draft Redevelopment Plan EIR, pp. 16-17.)

3    (Emphasis added.)

4         110.    The 1985 Draft Redevelopment Plan also acknowledged that the rezoning

5    required by the Redevelopment Plan would be implemented as part of the Hollywood

6    Community Plan Update: "The project would require some rezoning of land in the

7    Redevelopment Area. The City has plans to undertake extensive rezoning of the

8    Hollywood area during 1986-87." (1985 Draft Redevelopment Plan EIR, p. 35.)

9         111.    On February 8, 1988, the City released the Draft EIR for the 1988

10   Hollywood Community Plan ("1988 HCP"). The 1988 HCP EIR explained to the public

11   that modifications in zoning density laws would be required to comply with state law:

12   "State law [Government Code Section 65860(d)] requires that the General Plan and zoning

13   in the City of Los Angeles be consistent. To comply with this law, the City now requires

14   that what the Plan says about generalized use, density and intensity for an area be the same

15   as the zoning assigned to each parcel in that area. As a result of this law, there are two

16   things that the Community Plan regulates definitively: 1) the general type of use, and 2) the

17   residential density (number of units) or commercial intensity (square feet of floor space)

18   permitted in a particular area." (1988 HCP EIR, p. 14.)

19        112.    Of the four reasons the City had to conduct the 1988 update of the

20   Hollywood Community Plan, one was: "The City is under court order to bring its General

21   Plan and zoning into conformance by March 1988."

22        113.    In 1986, the former Community Redevelopment Agency of Los Angeles

23   adopted the 1986 Hollywood Redevelopment Plan that modified the land use designations

24   and densities within the Project area (core Hollywood area) to avoid the environmental

25   impacts of the maximum buildout under the City's 1946 zoning. In 1988, the Los Angeles

26   City Council adopted the 1988 HCP for the areas of the Hollywood Community Plan area

27   outside the Redevelopment Project area. This created what was colloquially referred to as

28   "the donut hole" [the Hollywood Redevelopment Plan area], and "the donut" [the 1988

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 29 -

1   Hollywood Community Plan update for the areas of the Hollywood Community outside the

2   redevelopment plan "donut hole."] Land within the donut, including that for the Tommie

3   Hotel Project site, is subject to the land uses designations and density limits of both the

4   Hollywood Community Plan and the Hollywood Redevelopment Plan.

5        114.   Separate from the Hollywood Redevelopment Plan and 1988 Hollywood

6   Community Plan Update process, the Los Angeles City Planning staff carried out the

7   General Plan/Zoning Consistency Program for Hollywood under City Planning Case No.

8   86-835. Petitioner is informed and believes, and based thereon alleges, that on July 28,

9   1988 and August 11, 1988, the City Planning Commission adopted and recommended to

10  the City Council in Planning Case No. 86-835 a resolution "to achieve consistency between

11  zoning and the adopted plan as required by Government Code Section 65680(d) and

12  settlement of Superior Court Case No. C526616" that amended the Hollywood Community

13  Plan itself to designate the properties in the various subareas as recommended exhibits to

14  the staff report. Petitioner is informed and believes, and based thereon alleges, that on

15  December 13, 1988, the City Council subsequently adopted the Resolution which amended

16  into the Hollywood Community Plan the designation of a series of permanent [Q] Qualified

17  Conditions and permanent "D" Development Conditions into the Hollywood Community

18  Plan as set forth in various zoning map amendments affecting subareas and particular

19  parcels of land.

20       115.   Even though a number of parcels were shown on the HCP map with

21  Regional Center Commercial land use designation that under certain circumstances might

22  be as high as 6:1 Floor Area Ratio ("FAR"), the amendment of the HCP to include the

23  general plan consistency program downzoned many Regional Center lots through the use

24  of the permanent [Q] and "D" Development Conditions. For instance, a typical "D"

25  Development Condition, such as the particular one set forth in 1990 Ordinance No.

26  165,660 for the Tommie Hotel Project site, read as follows:

27       "The total floor area contained in all buildings on a lot shall not

28       exceed two (2) times the buildable area of the lot. A project may

- 30 -

VERIFIED PETITION FOR WRIT OF MANDAMUS

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1    exceed the 2:1 floor area ratio provided that:

2    Community Redevelopment Agency Board finds that the project

3    conforms to: (1) the Hollywood Redevelopment Plan, (2) a

4    Transportation Program adopted by the Community Redevelopment

5    Agency Board pursuant to Section 518.1 of the Redevelopment Plan

6    and, if applicable, (3) any Designs for Development adopted

7    pursuant to Section 503 of the Redevelopment Plan; and

8    The project complies with the following two requirements:

9    A Disposition and Development Agreement or Owner Participation

10    Agreement has been executed by the Community Redevelopment

11    Agency Board; and the Project is approved by the City Planning

12    Commission, or the City Council on appeal, pursuant to the

13    procedures set forth in Municipal Code Section 12.24-B.3."

14 Thus, in order for a project subject to this "D" Development Limitation to obtain an FAR

15 greater than the authorized 2:1 FAR, the CRA/LA has a mandatory role to make

16 conformity findings and to enter into an owner participation agreement with the

17 developer.  Although the Real Party requested approval of an increased height and FAR to

18 the City, no application for the required owner participation agreement was made or

19 processed with the CRA/LA for the Tommie Hotel.

20    116.   Under the City's General Plan/Zoning Consistency Program, the widespread

21 use of "D" Development Conditions like this were determined by the City Council to be

22 necessary to bring the City's HCP and zoning into conformity, as mandated by

23 Government Code Section 65680(d) and the settlement agreement in the <u>Hillside</u>

24 <u>Federation</u> case.

25    117.   Using a process that amended the HCP to incorporate permanent conditions

26 to reduce the zoning of certain parcels of land in the Hollywood Redevelopment Plan area,

27 the City Council committed itself to enforce these zoning conditions as provisions of the

28 HCP, unless or until the City undertook the comprehensive reassessment of the "Q"

- 31 -

1   Conditions and "D" Development Limitations previously adopted as part of a new revision

2   of the Hollywood Community Plan.  Due to the General Plan's superiority to the municipal

3   code, these conditions on parcels in Hollywood cannot be deleted, amended, or substituted

4   unless or until the HCP is comprehensively planned and the cumulative impacts of all

5   densities are reassessed under a new and adequate environmental review that reconfirms

6   general plan consistency.

7          118.   Other than completion of a lawful revision of the HCP, the only other

8   practical way for the City to allow more than the 2:1 FAR limit on the Project site as

9   provided by Ordinance 165,660 would be to satisfy the particular permanent condition

10  imposed on it.  But years of dereliction of duty by the former redevelopment agency, and

11  now CRA/LA, and the City Council, have resulted in the required Transportation Plan

12  never being completed or adopted.  In fact, due to the ongoing failure of the former

13  redevelopment agency, and CRA/LA, to complete multiple plans that were supposed to

14  protect Hollywood from devastating effects of overdevelopment, Hollywood Heritage, Inc.,

15  which previously sued the former redevelopment agency, has now again sued the CRA/LA

16  for its derelictions of duties to complete multiple missing plans in connection with the

17  Hollywood Redevelopment Plan.  Because the record is devoid of any evidence that the

18  former redevelopment agency, or its successor CRA/LA, and the City, has ever adopted a

19  Transportation Plan for the Hollywood Redevelopment Plan area, it is currently impossible

20  for any of the permanent "D" Development Conditions that contain such a condition to be

21  cleared to allow a density higher than the limit imposed by the particular development

22  limitation.  The City and CRA/LA's failures to meet the obligations imposed on themselves

23  in the Hollywood Redevelopment Plan is the reason the Project site is not permitted to have

24  an FAR exceeding 2:1 FAR.

25         119.   Despite these significant limitations, both the City and CRA/LA have taken

26  actions or engaged in inactions that violate their obligations to enforce Ordinance No.

27  165,660.  The CRA/LA has not only failed to assert its primary subject matter jurisdiction

28  over the Project in its redevelopment plan area as alleged above as to its lead agency status,

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 32 -

1  but it has failed to object to the City's entertaining and approving in this case new zoning

2  ordinances that purport to ignore the incorporation of the "D" Development Limitation into

3  the Hollywood Community Plan, and to ignore the findings that imposition of the "D"

4  Development Limitation was necessary to avoid or mitigate significant environmental

5  impacts.  Instead, the CRA/LA has stood by silently as the City purported to enact new

6  ordinances that tried to override or replace Ordinance 165,660, when that is not within the

7  authority of the City in the absence of either: (1) a lawful comprehensive revision of the

8  Hollywood Community Plan to revise all "Q" Conditions and "D" Development

9  Limitations imposed in connection with the last Hollywood Community Plan revision

10  process; or (2) findings by the CRA/LA that it could approve an increase in FAR above 2:1

11  FAR pursuant to the limitations specified in Ordinance No. 165,600.  Neither of those pre-

12  conditions has occurred, and therefore the City has acted without authority to adopt new

13  ordinances purporting to override Ordinance No. 165,660, and the CRA/LA has failed to

14  proceed in accordance with law by refusing to enforce Ordinance No. 165,660.

15  Accordingly, all ordinances of the City that purport to override Ordinance No. 165,660 are

16  null, void and *ultra vires*.

17       120.    Specifically, Respondents and/or Real Party have asserted that Ordinance

18  No. 180,309 adopted in connection with a prior 2008 project proposed for this lot but

19  abandoned, remains permanently in effect, allowing a height of 95 feet and an FAR of

20  3.5:1.  But the entitlements for that abandoned project have expired, and the City was

21  required to set aside and/or treat Ordinance No. 180,309 aside as null, void and *ultra vires*

22  because there was never City authority to enact it.  Moreover, even if somehow Ordinance

23  No. 180,309 survives, the "D" Development Limitation only allowed the height of 95 feet

24  if the project depicted in "Exhibit 3" attached to the Planning file was constructed.  Exhibit

25  3 is the plan set for the abandoned project, and therefore, the 95-foot limit, based upon

26  what is now an obsolete set of plans, cannot ever be satisfied to allow a 95-foot high

27  project.  Thus, Real Party's assertion during the current administrative proceedings that

28  2008 Ordinance No. 180,309 still is in effect is false.

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 33 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA  91101-1504

121.    But even if Ordinance No. 180,309 was not null and void, the City still had no authority to double down on its unlawful conduct by granting an even greater FAR of 3.83:1 for the Tommie Hotel Project in the 2017 Ordinance No. 184,916.  Just like the City's first effort to override Ordinance No. 165,660 without a comprehensive revision of the Hollywood Community Plan, the City's effort to adopt the second Ordinance No. 184,916 in the instant proceedings to further raise the FAR is null, void and *ultra vires*.  In fact, the City's adoption of 2017 Ordinance No. 184,916 is an admission that 2008 Ordinance No. 180,309 is null and void in the face of the abandoned project it had authorized, because instead of simply authorizing a further increase in height (from 95 feet to 99.5 feet) and floor area ratio (from 3.5:1 to 3.83:1), 2017 Ordinance No. 184,916 would improperly seek to displace Ordinance No. 165,660 and 2008 Ordinance No. 180,309 by trying to authorize a maximum height of 99.5 feet and a maximum floor area ratio of 3.83:1 FAR all in the single 2017 Ordinance No. 184,916.  For all of these reasons, Ordinance No. 165,660 adopted as a mitigation measure for and incorporated by reference into the Hollywood Community Plan, cannot be overridden by the City's subsequent null, void and *ultra vires* acts.

122.    Moreover, City Charter Section 558 mandates that in adopting a zoning ordinance the City shall make findings that the proposed action is consistent with the City's General Plan.  The record in these proceedings is devoid of any substantial evidence that 2017 Ordinance No. 184,916 is consistent with the City's General Plan because this ordinance unlawfully purports to replace the lower density 1990 Ordinance No. 165,660 -- which was incorporated by reference into the 1988 Hollywood Community Plan as necessary mitigation to avoid overdevelopment that would overwhelm infrastructure of the community plan area.  The City may not lawfully remove the 1988 Hollywood Community Plan mitigation of 2:1 FAR on a piecemeal basis – essentially allowing increased density that incrementally violates the overall density limits imposed as part of the last comprehensive Hollywood Community Plan process.  Accordingly, the City's adoption of Ordinance No. 184,916 cannot be found consistent with provisions and findings of the

- 34 -

1   1988 Hollywood Community Plan, and the City may not adopt it by failing to address this

2   critical general plan issue in its City Charter Section 558 findings for this Project.

3        123.   Based upon the foregoing, the City and the CRA/LA have failed to proceed

4   in the manner required by law.

5                       **PRAYER**

6        WHEREFORE, Petitioner prays for judgment as follows:

7   **On the First and Second Causes of Action:**

8        1.    For a peremptory writ of mandamus directing the City and City Council to

9   vacate and set aside the actions approving the MND, Land Use Entitlements, and all

10   Project approvals.

11        2.    That the Court enjoin the City, City Council, City Planning Commission,

12   their officers, employees, agents, boards, commissions and other subdivisions, including

13   but not limited to the Planning Dept. and Dept. of Building & Safety, from granting any

14   authority, permits or entitlements as part of the Project pursuant to the City's approval of

15   the MND, Land Use Entitlements, and all Project approvals.

16        3.    For a peremptory writ of mandamus directing the CRA/LA and its

17   Governing Board to assume its lead agency responsibilities for Site Plan and CEQA

18   Review.

19        4.    That the Court enjoin the CRA/LA, its Governing Board, and their officers,

20   employees, agents, boards, commissions and other subdivisions, from granting any

21   authority, permits or entitlements as part of the Project pursuant to the City's Project

22   Approvals, unless and until the CRA/LA first performs its mandatory and exclusive duties

23   as lead agency, including under LAMC Section 16.05G.

24        5.    That the Court enjoin Real Party and any successors in interest from

25   undertaking any Project construction pursuant to the City's approval of the MND, Land

26   Use Entitlements, and all Project approvals.

27

28

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 35 -

**On the Third through Fourth Causes of Action:**

6.     For a peremptory writ of mandamus directing the City and City Council to vacate and set aside its approvals of the Land Use Entitlements, and all Project approvals.

7.     That the Court enjoin the City, City Council, City Planning Commission, their officers, employees, agents, boards, commissions and other subdivisions, including but not limited to the Planning Dept. and Dept. of Building & Safety, from granting any authority, permits or entitlements as part of the Project pursuant to the City's approvals of the Land Use Entitlements, and all Project approvals.

8.     That the Court enjoin Real Party and any successors in interest from undertaking any Project construction pursuant to the City's approvals of the General Plan Amendment and associated Land Use Entitlements.

**On All Causes of Action:**

9.     For attorney fees, including pursuant to Code of Civil Procedure Section 1021.5.

10.    For costs of suit; and

11.    For such other and further relief as the Court may deem just and proper.

DATED: June 9, 2017          **THE SILVERSTEIN LAW FIRM, APC**


                             By: _Daniel Wright_____
                                 ROBERT P. SILVERSTEIN
                                 DANIEL E. WRIGHT
                                 Attorneys for Petitioner
                                 THE SUNSET LANDMARK INVESTMENT, LLC

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA  91101-1504

- 36 -

1                                     **VERIFICATION**

2   STATE OF CALIFORNIA     )

3   COUNTY OF LOS ANGELES   )   ss:

4

5       I, STEPHAN SAEED NOURMAND, declare as follows:

6       I am authorized to make this verification on behalf of the Petitioner in this action.

7       I have read the foregoing Petition for Writ of Mandamus and am familiar with its

8 contents. The same is true of my own knowledge, except as to those matters that are

9 therein stated on information and belief, and, as to those matters, I believe them to be true.

10       I declare under penalty of perjury under the laws of the State of California that the

11 foregoing is true and correct. Executed at   Florence, Italy  , on the 9th day of June, 2017.

12

13

14

15                               STEPHAN SAEED NOURMAND

16

17

18

19

20

21

22

23

24

25

26

27

28

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

The Silverstein Law Firm, APC
Robert P. Silverstein, Esq. (Bar No. 185105)
Daniel E. Wright, Esq. (Bar No. 144490)
215 N. Marengo Ave., 3rd Floor, Pasadena, CA 91101
TELEPHONE NO.: (626) 449-4200     FAX NO.: (626) 449-4205
ATTORNEY FOR *(Name):* The Sunset Landmark Investment, LLC

**FILED**
Superior Court of California
County of Los Angeles

JUN 09 2017

Sherri R. Carter, Executive Officer/Clerk
By _M. Sula_, Deputy
Moses Soto

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District - Stanley Mosk Courthouse

CASE NAME:
The Sunset Landmark Investment, LLC v. City of Los Angeles, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **BS 169821** |
| | | | JUDGE: |
| | | | DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☑ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☐ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* 4
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 9, 2017
Robert P. Silverstein/Daniel E. Wright
(TYPE OR PRINT NAME)
_David Wright_ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET**<br>**ORIGINAL** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |



CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex
case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-
domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified
above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

| SHORT TITLE: The Sunset Landmark Investment, LLC v. City of Los Angeles, et a | CASE NUMBER BS 1 6 9 8 2 1 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.

2. Permissive filing in central district.

3. Location where cause of action arose.

4. Mandatory personal injury filing in North District.

5. Location where performance required or defendant resides.

6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.

8. Location wherein defendant/respondent functions wholly.

9. Location where one or more of the parties reside.

10. Location of Labor Commissioner Office.

11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

ORIGINAL

Local Rule 2.3
Page 1 of 4



| SHORT TITLE: The Sunset Landmark Investment, LLC v. City of LA, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation     Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032 Quiet Title | 2, 6 |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

| SHORT TITLE: The Sunset Landmark Investment, LLC v. City of LA, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐  A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐  A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☑  A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐  A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐  A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐  A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐  A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐  A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐  A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐  A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐  A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐  A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐  A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐  A6160  Abstract of Judgment | 2, 6 |
| | | ☐  A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐  A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐  A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐  A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐  A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐  A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐  A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐  A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐  A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐  A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐  A6121  Civil Harassment | 2, 3, 9 |
| | | ☐  A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐  A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐  A6190  Election Contest | 2 |
| | | ☐  A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐  A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐  A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

 

| SHORT TITLE: The Sunset Landmark Investment, LLC v. City of LA, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☑ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: City Hall 200 North Spring Street |
|---|---|

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: June 9, 2017

_Daniel Wright_
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

# EXHIBIT E

SETTLEMENT AGREEMENT AND RELEASE
(6516-6526 West Selma)

This Settlement Agreement and Release ("**Agreement**") is made as of January ____, 2018
by and among (1) The Sunset Landmark Investment, LLC, a California limited liability company
("**Sunset**"), and (2) 6516 Tommie Hotel LLC, a California limited liability company
("**Tommie**"), each of which may be referred to herein individually as a "**Party**," and all of them
collectively, as the "**Parties**."

## RECITALS

A.    Tommie is the owner of the real property located at 6516-6526 West Selma
Avenue in the Hollywood area of the City of Los Angeles, County of Los Angeles, State of
California, which is legally described on **Exhibit A** attached to and made a part of this
Agreement (the "**Tommie Property**"), upon which Tommie plans to construct a hotel or other
project, which is a currently entitled use (the "**Tommie Project**;" and if the Tommie Project is a
hotel, the "**Hotel**").

B.    Sunset is the owner of the real property located at 1520-1540 Schrader Boulevard
and 6525 W. Sunset Boulevard in the Hollywood area of the City of Los Angeles, County of Los
Angeles, State of California, which is legally described on **Exhibit B-1** attached to and made a
part of this Agreement (the "**Sunset Property**"). Sunset may develop the Sunset Project (the
"**Sunset Project**"). Any multi-family residential project developed on the Sunset Property is
referred to as the "**Sunset Residential Project**."

C.    There is now pending among Sunset and Tommie litigation entitled The Sunset
Landmark Investment, LLC, a California limited liability company, Petitioner, v. City of Los
Angeles,, etc., et al., Respondents, and 6516 Tommie Hotel LLC, etc., et al, Real Parties in
Interest, in the  Superior Court of the State of California for the County of Los
Angeles("**Court**"), Case No. BS169821 (the "**Tommie Action**") to address, inter alia, a
diminution in value to the Sunset Property.  In the Tommie Action, Sunset challenges various
decisions of the City of Los Angeles and the CRA/LA granting approvals for the development of
the Hotel by Tommie.  There is also now pending among Sunset and 1541 Wilcox Hotel LLC, a
Delaware limited liability company ("**Wilcox**") a separate litigation entitled The Sunset
Landmark Investment, LLC, a California limited liability company, Petitioner, v. City of Los
Angeles,, etc., et al., Respondents, and 1541 Wilcox Hotel LLC, etc., et al, Real Parties in
Interest, in the Superior Court of the State of California for the County of Los Angeles, Case No.
BS160807 (the "**Wilcox Action**") also to address, inter alia, a diminution in value to the Sunset
Property.  The Tommie Action and Wilcox Action are collectively referred to as the "**Actions**."

D.    The Parties desire to resolve and settle fully and finally the Actions and any and
all differences and claims between them, including but not limited to those arising from or
relating to the Actions.

## AGREEMENT AND SETTLEMENT TERMS

Now, therefore, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1. **Payment**. Tommie shall pay to Sunset to address, inter alia, a diminution in value to the Sunset Property, its share of a total settlement payment of Five Million Five Hundred Thousand Dollars ($5,500,000.00) (the "**Settlement Payment**") to resolve the Actions, payable on execution of this Agreement. Tommie's share of the Settlement Payment shall be determined exclusively between Tommie and Wilcox, without affecting the total amount of the Settlement Payment or the other obligations under this Agreement. This Agreement shall not be complete until and unless Wilcox meets its obligations set forth in a contemporaneously executed settlement agreement between Sunset and Wilcox.

2. **Disposition of the Action**. Concurrent with the execution and delivery of this Agreement by all Parties, the following shall be delivered to Jeffer Mangels Butler & Mitchell LLP c/o Matthew Hinks: (a) Sunset shall deliver executed dismissals with prejudice of the Tommie Action, which it shall authorized to file with the Court when it has verification from Silverstein (which may be by e-mail) that Sunset has received confirmation of actual receipt of funds, Promissory Note and Recorded Deed of Trust; and (b) the Parties shall execute a Stipulation and [Proposed] Order providing that the Court shall retain jurisdiction to enforce the terms of this Settlement Agreement pursuant to Code of Civil Procedure § 664.6 after the Dismissals are filed. JMBM shall be authorized to file the Dismissal anytime on or after the date that Sunset receives the Payment, Promissory Note and Deed of Trust. If for any reason, the Court refuses to approve the [Proposed] Order referred to herein retaining jurisdiction to enforce the terms of this Settlement Agreement, this Agreement and all of its terms shall nevertheless remain in full force and effect. The date when the Payment, Promissory Note and Deed of Trust has been delivered to Sunset is referred to as the "**Settlement Effective Date.**"

3. **Hotel Covenants**. From and after the Settlement Effective Date, Tommie agrees to the following respecting the design, construction, and operation of the Hotel:

    3.1  Hotel Loading, Drop Off, and Trash Removal. Tommie shall establish and implement upon the opening of the Hotel a program for the Hotel for on-site hotel drop-off, loading and trash removal. Such restrictions shall include, without limitation, employing a guard to receive deliveries from 6am-6pm, no deliveries after 6 p.m. and before 6 a.m., trash collection on weekdays, only, after 10 a.m. (or such earlier times as is routine in the area of the Tommie Property) and before 6 p.m., installing signs prohibiting stopping and warning of towing for violators, in appropriate areas, utilizing valet services and parking for events held at the property with a minimum of 1 attendant per 20 expected vehicles, and providing a hotline number to management of the Sunset Property to improve communications and response time, obtain city approval for additional loading zones in areas to mitigate congestion, as needed, and informing all delivery vendors of rules and requirements and require their agreement;

    3.2  Tommie Project Stairwell and Set Back. The Tommie Project stairwell, exiting at ground level from the underground parking, shall terminate at ground level, and not extrude into

2177-1003 / 1017774.1

Settlement Agreement and Release<br>Sunset and 6516 Tommie

2

6129669v4

REL000079

above in to the 10 foot setback area. In addition, the setback from ground level (i.e., above grade
and the subterranean levels) and above on the Tommie from the Sunset Property line will be 10
feet along the entire border between Tommie and the Sunset Property, with no construction
above ground level in the 10 foot setback area, including the project stairwell, as described
above, excluding foliage and landscaping. Improvements below ground level and not extruding
above grade into the 10 foot setback area will extend up to the Tommie Property line; and

     3.3    Rooftop Noise Levels at Hotel. Tommie shall limit hours of operation of outdoor
rooftop areas to 7 a.m. to 12 a.m. After 12 a.m. until 7 a.m., use of the outdoor rooftop areas
shall be restricted to routine maintenance and clean-up only. Tommie shall provide a "hotline"
phone number for Sunset to call in the event noise level issues need to be addressed on an
immediate basis.

     If Tommie has violated the provisions of Sections 3.1, 3.2 or 3.3, of which violations
Sunset has notified Tommie, but Tommie has failed or is unwilling to cure, or if there are
repeated violations of such Sections of which Sunset has given notice, Sunset may seek all rights
and remedies against Tommie as permitted by applicable law. In addition to claims for damages,
as a result of such violations, Tommie shall be liable to Sunset for the payment of all legal
expenses incurred in the enforcement of Sunset's rights and remedies, upon a showing by Sunset
of notice to Tommie of a violation and Tommie's failure to cure such violation within twenty-
four hours of notice. Provided, however, Tommie shall have no obligation to reimburse Sunset's
legal costs under this provision if Tommie prevails in demonstrating that it was correct in any
disagreement over the violations of Sections 3.1, 3.2 or 3.3. This provision stands independent
of, and in addition to such provisions contained herein otherwise addressing rights to recover
attorneys fees. Nothing in this Agreement shall require any governmental approvals of the
provisions of Sections 3.1, 3.2 and 3.3.

     Contemporaneously with the Settlement Effective Date, Sunset and Tommie shall each
execute, acknowledge, and deliver a covenant agreement in form and content reasonably
acceptable to them to ensure that the obligations of Tommie and restrictions on the Hotel in
**Sections 3.1, 3.2** and **3.3** shall be binding upon Tommie and successor owners, managers and
operators of the Tommie Property, which may be recorded in the official records of Los Angeles
County in favor of Sunset and restricting the Tommie Property as reflected, above.

4.    **Temporary Tieback Easement Agreement**. Concurrently with the execution and
delivery of this Agreement, Sunset shall execute, acknowledge, and deliver to Jeffer Mangels
Butler & Mitchell LLP (Guy Maisnik) a Temporary Tieback Agreement in the form of **Exhibit
C** attached to this Agreement in favor of Tommie, which shall become effective upon the
Settlement Effective Date. Sunset is delivering the Temporary Tieback Agreement in reliance
upon Tommie's representations as set forth in the executed letter in the form and substance of
that attached hereto as **Exhibit D** signed by Cefali & Associates.

5.    **Assistance and Support for Sunset Development Proposals**. From and after the
Settlement Effective Date, at Sunset's request, but at no material cost or expense to Tommie,
Tommie shall take reasonable actions requested by Sunset to assist and support Sunset with the
City of Los Angeles on any future development proposal for the Sunset Property. Sunset shall

REL000080

not be obligated to provide any shoring and/or support for dirt and/or any materials on Tommie's property should Sunset commence construction on its own property, provided however, that under no circumstances shall Sunset undermine the foundation of the Tommie property. To that end, upon completion of its project, Tommie shall supply a copy of its "as-built" plans, soils and geological reports and environmental reports, to assist Sunset in meeting its obligations under this Agreement.

6.      **Mutual Releases**.

6.1      **Release by Tommie**. Except as provided in Section 6.4, below, effective from and after the Settlement Effective Date, Tommie fully, finally, and forever releases and discharges Sunset and its officers, members, managers, agents, employees, subsidiaries, affiliates, parent companies, insurers, attorneys, accountants, heirs, executors, spouses, predecessors, successors and assigns from any and all claims, demands, liens, actions, suits, causes of action, obligations, controversies, debts, costs, attorneys' fees, expenses, damages, judgments, orders, subrogation, contribution, reimbursement, indemnity and liabilities of every kind or nature, in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether concealed or hidden, relating to, arising out of, or in any way stemming from the Tommie Action or any claim or cause of action alleged in the Tommie Action.

6.2      **Release by Sunset**. Except as provided in Section 6.4, below, effective from and after the Settlement Effective Date, Sunset fully, finally, and forever releases and discharges Tommie and its officers, members, managers, agents, employees, subsidiaries, affiliates, parent companies, insurers, attorneys, accountants, heirs, executors, spouses, predecessors, successors and assigns from any and all claims, demands, liens, actions, suits, causes of action, obligations, controversies, debts, costs, attorneys' fees, expenses, damages, judgments, orders, subrogation, contribution, reimbursement, indemnity and liabilities of every kind or nature, in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, relating to, arising out of, or in any way stemming from the Tommie Action or any claim or cause of action alleged in the Tommie Action.

6.3      **Waiver of Cal. Civ. Code § 1542**. The Parties acknowledge that there is a possibility that subsequent to the execution of this Agreement they will discover facts, or incur or suffer claims, which were unknown or unsuspected at the time this Agreement was executed and which, if known by them at that time, may have materially affected their decision to execute this Agreement, and that notwithstanding such discovery this Agreement shall remain unmodified and in full force and effect. The Parties acknowledge and agree that by reason of this Agreement, and the releases contained in this **Section 6**, above, they are assuming the risk of any such unknown and unsuspected facts and claims. The Parties have been advised of the existence of Cal. Civ. Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY**

**AFFECTED HIS OR HER SETTLEMENT WITH THE
DEBTOR.**

Notwithstanding such provision, the releases contained in this Agreement are intended to be, and
shall constitute, full releases in accordance with their terms. In further consideration of this
Agreement, and except for those obligations created by, or arising out of, this Agreement, the
Parties knowingly and voluntarily waive the provisions of Civil Code Section 1542, as well as
any other statute, law or rule of similar effect, and acknowledge and agree that this waiver is an
essential and material term of this Agreement. The Parties represent that they have been advised
by their legal counsel and that they understand and acknowledge the significance and
consequences of this release and the waiver of Section 1542 and other such laws.

      6.4    Exclusions from the Releases. The releases and waivers provided in **Section 6**
shall not apply to any rights or obligations created or expressly preserved by (a) this Agreement,
or (b) any document entered into pursuant to this Agreement.

7.    **Admissibility of the Agreement**. The Parties specifically agree that this Agreement is
expressly made admissible in a court of competent jurisdiction and otherwise subject to
disclosure pursuant to the provisions of Cal. Evid. Code § 1123, and that this Agreement is not
rendered inadmissible by California's mediation privilege, or any other similar provision,
whether arising under state or federal law.

8.    **Denial of Liability**. This Agreement is the result of a compromise and shall not at any
time for any purpose be construed by the Parties, their attorneys, or by anyone else as an
admission by any of the Parties of any liability or responsibility for any injuries and/or damages
allegedly suffered.

9.    **Reliance on Own Judgment and Legal Consultation**. Other than the
acknowledgements, warranties and representations set forth in **Section 10**, each of the Parties
acknowledges, warrants and represents that it relies wholly upon its own (and its own attorneys')
investigation, judgment, belief and knowledge as to the causes of action asserted in the Tommie
Action, the facts underlying those causes of action, the matters released in **Section 6**, and the
nature, extent and duration of the issues, claims, defenses, rights and obligations relating to this
Agreement. Each of the Parties represents that it has not been influenced to any extent
whatsoever in making this Agreement by any representations or statements concerning the
subject matter of this Agreement or regarding any other matters made by persons, firms, or
corporations that are hereby released, or by any person or persons representing them. The
Parties acknowledge, warrant, and represent that they have retained and consulted their own
attorneys in executing this Agreement.

10.    **Acknowledgements, Warranties, and Representations**. Each of the Parties represents
and warrants to the other Party that:

      10.1    Authority. It is duly authorized to enter into this Agreement, and that it does not
require any additional approval, permission or consent from any person, public authority or
entity to enter into this Agreement;

10.2     No Assignment of Released Claims.  The claims, counterclaims, counts, causes of
action, or rights which it has released under **Section 6** belong to the releasing Party, and that the
releasing Party has not assigned or transferred any of the released claims, counterclaims, counts,
causes of action, or rights;

10.3     No Duress.  It has executed this Agreement voluntarily, with full knowledge of
the Agreement and its contents, and without duress or undue influence on the part of or on behalf
of the other Party or any other person or entity.

11.     **Miscellaneous**.

11.1     Legal Capacity; Execution Authority.  The Parties acknowledge, warrant, and
represent that they are legally competent and authorized to execute this Agreement.  Each natural
person who executes this Agreement on behalf of an entity represents and warrants that he has
the authority to execute this Agreement on behalf of such entity.

11.2     Entire Agreement.  This Agreement is the entire understanding between the
Parties respecting the subject matter discussed herein and supersedes any prior understandings of
the Parties, whether oral or written, respecting the subject matter hereof.

11.3     Amendments and Modifications.  No supplement, modification or amendment of
this Agreement shall be binding unless executed in writing by all the Parties.

11.4     Survival.  All covenants, representations, and warranties contained herein shall
survive the execution and delivery of this Agreement and the execution and delivery of any other
document or instrument referred to herein.

11.5     No Waiver.  No waiver of any of the provisions of this Agreement shall be
deemed a waiver of, nor shall it constitute a waiver of, any other provision, whether or not
similar, nor shall any waiver constitute a continuing waiver.

11.6     Collaborative Drafting.  Neither this Agreement, nor any provision within it, shall
be construed against any Party or its attorney because counsel for each of the Parties took part in
the negotiation and drafting of this Agreement.

11.7     Attorney's Fees, Expenses, and Costs.  Each of the Parties shall bear their own
attorney's fees and costs incurred in connection with the Tommie Action, the subject matter of
the Tommie Action and the negotiation, execution, and performance of this Agreement.   The
preceding sentence notwithstanding, the prevailing Party on any motion, lawsuit, or action to
interpret or enforce the terms of this Agreement shall be entitled to recover its reasonable
attorneys' fees, costs, and expenses in connection with such motion, lawsuit, or action, including
any expert witness fees and expenses, from the Party against which it prevailed.

11.8     Necessary Action.  Each of the Parties shall promptly do any act or thing
reasonably necessary and execute any or all documents or instruments reasonably necessary or
proper to effectuate the provisions and intent of this Agreement.

Settlement Agreement and Release
Sunset and 6516 Tommie

6

REL000083

11.9    Counterparts. This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall be an original, but all such counterparts shall constitute one and the same agreement. Signatures of this Agreement may be transmitted via electronic means (including facsimile or e-mailed PDF scan) and shall be considered an original and binding against the Party that executed and delivered such signature via electronic means.

11.10    Notice. All notices shall be in writing and shall be addressed to the affected Parties at the addresses set forth below. Notices shall be: (a) hand delivered to the addresses set forth below, in which case they shall be deemed delivered on the date of delivery; (b) sent by certified mail, return receipt requested, in which case they shall be deemed delivered three (3) business days after deposit in the United States mail; (c) sent by nationally recognized overnight courier (e.g., Federal Express or UPS), return receipt requested, in which case they shall be deemed delivered upon delivery; or (d) transmitted by both email and facsimile transmission in which case they shall be deemed delivered the first business day after delivery has been electronically confirmed by the recipient's facsimile machine (provided that such notice is concurrently sent by one of the other methods). Any Party may change its notice address by giving notice thereof in compliance with this Agreement. Notice of such a change shall be effective only upon actual delivery. Notice given on behalf of a Party by any attorney purporting to represent a Party shall constitute notice by such Party if the attorney is, in fact, authorized to represent such Party. The respective notice addresses of the Parties are:

To Sunset

The Sunset Landmark Investment, LLC
6525 W. Sunset Blvd. Suite 100
Los Angeles, CA  90028

with a copy to:

Jayesh Patel, Esq.
Zuber Lawler & Del Duca LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA 90071
Facsimile: (213) 596-5621
Email: jpatel@zuberlaw.com

To Tommie

6516 Tommie Hotel LLC
1605 Cahuenga Blvd.
Hollywood, CA 90028
Attention: Richard Heyman
Facsimile: 310) 388-0305
Email: richard@relevantgroup.com

With a copy to:

M. Guy Maisnik, Esq.
Jeffer Mangels Butler & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California  90067
Facsimile: (310) 712-3388
Email: mgm@jmbm.com

11.11    Governing Law. The laws of the State of California, without giving effect to choice of law or conflict of law principles, shall govern the validity, construction, performance and effect of this Agreement.

11.12    Tax Matters. The Parties agree that they have not received tax advice from any other Party and acknowledge they are responsible for their own tax liability, if any, that may result from this Agreement.

2177-1003 / 1017774.1

Settlement Agreement and Release
Sunset and 6516 Tommie

7

61296569v4

REL000084

11.13   Captions.  Captions, numbering and headings in this Agreement are for convenience of reference only and shall not be considered in the interpretation of this Agreement.

11.14   Severability.  Wherever possible, each provision of this Agreement will interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement is found to be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

11.15   Binding Effect.  This Agreement is binding on and inures to the benefit of the parties and their respective heirs, executors, administrators, successors, and permitted assigns.

11.16   Calendar and Business Days.  All references herein to "days" shall mean calendar days unless specifically referencing Business Days.  As used herein, "Business Day" shall mean any day other than a Saturday, Sunday or Federal or California holiday on which banks in Los Angeles, California are customarily closed.

11.17   Enforcement under California Code of Civil Procedure Section 664.6.  In addition to all other rights and remedies available under this Agreement, if this Agreement is breached by a Party, then pursuant to California Code of Civil Procedure Section 664.6, the other Party may enforce this Agreement in the Court, and, if approved by the Court, the Court shall retain jurisdiction at the request of the Parties.

11.18   Confidentiality/No Public Announcements.  To the maximum extent permitted by applicable law, the Parties, and each of them, shall keep the following confidential: (a) all terms and conditions of this Agreement; (b) all communications by and between the Parties regarding this Agreement; (c) all communications and information gathered, obtained or furnished in connection with negotiations of this Agreement, except that a Party may disclose the terms of this Agreement to (i) its attorneys, accountants or other legal, financial or tax advisor(s) and/or consultant(s), (ii) its financial institutions or lenders and lenders' participants, (iii) its direct or indirect owners as part of its normal reporting practices and (iv) the Court (each, a "**Permitted Recipient**").  The Parties shall inform each Permitted Recipient of this confidentiality provision and require that he/she, they or it agree to abide by this confidentiality provision.  The foregoing confidentiality obligation shall not prohibit any Party from disclosing information which (x) is required in response to any valid summons, subpoena or discovery order to comply with any applicable law, order, regulation, or ruling or rule of any stock exchange, provided that the Party shall not provide or disclose any information without first giving written notice to the other Parties to this Agreement, and the other Parties shall have an opportunity to take legal steps in order to prevent disclosure of the information, (y) is required to comply with or carry out the terms of this Agreement, or (z) is required in order to enforce the terms of this Agreement.  None of the Parties shall make a public announcement or issue a press release respecting this Agreement.

**THE PARTIES EACH WARRANT AND ACKNOWLEDGE THAT THEY HAVE HAD THE FULL OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL TO REVIEW THE TERMS OF THIS AGREEMENT, AND THAT THEY ARE RELYING FULLY**

2177-1003 / 1017774.1

Settlement Agreement and Release
Sunset and 6516 Tommie

8

61296569v4

REL000085

**UPON THEIR OWN JUDGMENT AND THE ADVICE OF THEIR OWN COUNSEL IN EXECUTING THIS AGREEMENT.**

*[Signatures being on Next Page]*

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates set forth below.

Dated as of: January __, 2018          **Sunset:**

The Sunset Landmark Investment, LLC, a California limited liability company

By _____
Name _STEPHAN NOVRMAND_
Its _MANAGER_

Dated as of: January __, 2018          **Tommie:**

6516 Tommie Hotel LLC, a California limited liability company

By _____
Name: Richard Heyman
Its: Authorized Signatory

REL000087

## EXHIBIT A

### Legal Description of Tommie Property

THE LAND REFERRED TO HEREIN BELOW IS SITUATED  LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

THE WEST 48 FEET OF THE EAST 144 FEET OF THE NORTH 144 FEET OF LOT 7 OF THE H. J. WHITLEY TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 AT PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSORS PARCEL NUMBER: 5547-017-008

PARCEL 2:

THE EAST 96.00 FEET OF THE NORTH 144.00 FEET OF LOT 7 OF THE H. J. WHITLEY TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PORTION OF ASSESSORS PARCEL NUMBER: 5547-017-030

REL000088

## EXHIBIT B

Legal Description of Sunset Property

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 1:

THE WEST 10.13 FEET OF LOT 4 AND ALL OF LOTS 5,6,7 AND 8 OF THE M.P. FILLMORE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 16, PAGE 178 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

LOT 9 AND THE NORTHERLY 10 FEET OF THE WESTERLY 200 FEET OF LOT 12 OF THE SAID M.P. FILLMORE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 16, PAGE 178 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTH 5 FEET OF THE NORTHERLY 10 FEET OF LOT 12 CONVEYED TO THE CITY OF LOS ANGELES FOR ALLEY PURPOSES BY DEED DATED JUNE 22, 1921 AND RECORDED IN BOOK 295, PAGE 344, OF OFFICIAL RECORDS.

PARCEL 3:

LOT 11 OF THE M.P. FILLMORE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 16, PAGE 178 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 4:

THAT PORTION OF LOT 7 OF THE H.J. WHITLEY TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2, PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTYRECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF SAID LOT 7; THENCE WESTERLY ALOMG THE SOUTHERLY LINE OF SAID LOT, 45 FEET; THENCE NORTHERLY PARALLEL WITH THE WESTERLY LINE OD SAID LOT; 15 FEET; THENCE EASTERLY PARALLEL WITH THE SOUTHERLY LINE OF SAID LOT, TO A POINT IN THE EASTERLY LINE OF SAID LOT; THENCE SOUTHERLY ALONG SAID EASTERLY LINE 15 FEET TO THE PLACE OF BEGINNING.

PARCEL 5:

REL000089

PART OF BLOCK 2 "HOLLYWOOD", IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 28, PAGES 59 AND 60 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND PART OF THE ALLEY IN SAID BLOCK AND OF DAC AVENUE, NOW VACATED, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE WEST LINE OF SAID BLOCK 2, DISTANT 283.3 FEET NORTH OF THE SOUTHWEST CORNER THEROF, THENCE EAST ALONG THE NORTH LINE OF THE LAND OF M.P. FILLMORE, AS DESCRIBED IN DEED RECORDED IN BOOK 1635, PAGE 89 OF DEEDS, 195 FEET; THENCE SOUTH PARALLEL WITH THE WEST LINE OF SAID BLOCK, 55 FEET; THENCE WEST PARALLEL WITH SAID NORTH LINE OF FILLMORE'S LAND 200 FEET TO A POINT IN THE EAST LINE OF HUDSON AVENUE, AS ESTABLISHED BY DEED TO THE CITY OF HOLLYWOOD, RECORDED IN BOOK 2741, PAGE 87 OF DEEDS; THENCE NORTH ALONG SAID LAST LINE 55 FEET; THENCE EAST 5 FEET TO THE PLACE OF BEGINNING.

PARCEL 6:

THAT PORTION OF LOT 7 OF THE H.J. WHITLEY TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2, PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF SAID LOT 7; THENCE WESTERLY ALONG SOUTHERLY LINE OF SAID LOT, 247.80 FEET TO THE EAST LINE OF THE WEST 16 FEET OF SAID LOT; THENCE NORTHERLY ALONG SAID EST LINE 73 FEET TO A POINT; THENCE EASTERLY AND PARALLEL WITH THE SOUTHERLY LINE OF SAID LOT, 247.80 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT; THENCE SOUTHERLY ALONG SAID EASTERLY LINE 73 FEET TO THE PLACE OF BEGINNING.

EXCEPT THE EASTERLY 45 FEET OF THE SOUTH 15 FEET OF THE ABOVE DESCRIBED PROPERTY.

PARCEL 7:

THAT PORTION OF LOT 7 OF THE H.. WHITLEY TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2, PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT APOINT IN THE EAST LINE OF LOT 7, DISTATN NORTHERLY THEREON 73 FEET FROM THE SOUTHEAST CORNER THEREOF; THENCE NORTHERLY ALONG THE EAST LINE OF SAID LOT 73 FEET; THENCE WESTERLY PARALLEL WITH THE SOUTH LINE OF SAID LOT, 247.8 FEET TO THE EAST LINE OF THE PROPERTY CONVEYED TO THE COUNTY OF LOS ANGELES FOR ROAD PURPOSES OF DEED RECORDED IN BOOK 1783, PAGE 94 OF DEEDS; THENCE SOUTHERLY ALONG SAID EAST LINE, 73 FEET; THENCE EASTERLY PARALLEL

WITH THE SOUTHERLY LINE OF SAID LOT, 247.8 FEET TO THE POINT OF BEGINNING.

APN; 5547-017-005 AND 5547-017-006 AND 5547-017-018 AND 5547-017-026 AND 5547-017-028

Settlement Agreement and Release
Sunset and 6516 Tommie

REL000091

## EXHIBIT C

Form of Tieback Easement Agreement

RECORDING REQUESTED BY

WHEN RECORDED, RETURN TO:

Hollywood International Regional Center
1605 Cahuenga Blvd.
Los Angeles, CA 90028
Attn: Demien Farrel

## TEMPORARY TIEBACK EASEMENT AGREEMENT

THIS TEMPORARY TIEBACK EASEMENT AGREEMENT (this "**Agreement**") is made as of January 8, 2018 (the "**Effective Date**") by and between The Sunset Landmark Investment, LLC, a California limited liability company (the "**Grantor**") and 6516 Tommie Hotel LLC, a California limited liability company (the "**Developer**"). Grantor and Developer are individually referred to as a "**Party**" and collectively as the "**Parties**."

RECITALS:

     A.     Developer is the owner of the real property commonly known as 6516-6526 West Selma Avenue, Los Angeles, California, and legally described on **Exhibit A** (the "**Development Property**"). Developer wishes to develop a hotel on the Development Property (the "**Development Project**").

     B.     Grantor is the owner of the real property commonly known as The Hollywood Athletic Club and legally described on **Exhibit B** (the "**Grantor Property**"), which is located adjacent to the Development Property.

     C.     In connection with the construction of the Development Project, Developer needs limited temporary access to the Grantor Property to install underground a tieback anchor system, underpinnings and shoring material extending into the Grantor Property in the area shown on **Exhibit C** ("**Tieback Easement Area**") and to take all reasonable and usual actions necessary in connection therewith.

     D.     Grantor is willing to grant to Developer various temporary access rights and easements as described herein, subject to the terms and conditions of this Agreement, governed by two primary principles: (1) that Grantor's property shall be restored to its condition as it existed prior to the installation of a temporary tie-back before Developer secures any Certificate of Occupancy for Developer's project, and (2) that Grantor will not incur any costs or expenses from Developer's use of this grant of rights and easements such that Developer shall reimburse

2177-1003 / 1017774.1

61296569v4

REL000092

Grantor for all costs, including any costs to safeguard Grantor's interests in Grantor's property from any actions taken by Developer under this Agreement.

AGREEMENT:

NOW, THEREFORE, in consideration of the mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.     EASEMENTS; MATERIALS.

    1.1     Temporary Tieback and Shoring Easement.

        1.1.1     Subject to the terms and conditions of this Agreement, Grantor grants and conveys to Developer a temporary easement, within and beneath the surface of the Grantor Property (the "**Tieback and Shoring Easement**") to construct, install and maintain temporary underground tieback anchors and temporary shoring materials (the "**Tieback Anchor System**") as shown on the plans attached hereto as **Exhibit C** (the "**Approved Plans**"). Developer's engineer may make non-material changes to the Approved Plans without further approval from Grantor to accommodate requirements of the City of Los Angeles and field conditions (provided that the changes do not adversely affect the integrity or stability of the Grantor Property. If any material changes are made to the Approved Plans, Developer will provide to Grantor for approval, reasonably detailed drawings and specifications showing the proposed changes and stamped by Developer's geotechnical engineer. Grantor may, at its option, have the proposed changes reviewed by one or more engineers retained by Grantor and reimbursed by Developer. Grantor agrees not to unreasonably withhold, condition or delay its approval of such proposed changes. If Grantor fails to give Developer written notice of its disapproval with detailed reasons based upon such proposed changes to the Approved Plans as to any disapproval within fifteen (15) business days of submission to Grantor of such proposed changes, and such failure continues for five (5) business days following Grantor's receipt of written notice thereof (together with another copy of such reasonably detailed drawings and specifications showing the proposed changes and stamped by Developer's geotechnical engineer), such proposed changes shall be deemed to have been approved by Grantor. If Developer submits proposed changes to Grantor, Developer shall reimburse Grantor for engineering and consultants' fees incurred by Grantor in connection with the review of such proposed changes. The tiebacks shall be constructed of concrete, steel cable, or other appropriate materials and accessory parts. The Tieback Anchor System shall be used to temporarily shore the vertical faces of unexcavated soils in connection with construction or development activities on the Developer Property. Subject to the terms and conditions of this Agreement, Grantor hereby consents to the installation of the Tieback Anchor System pursuant to the terms of this Agreement, and hereby consents to Developer applying for all permits necessary to allow the Developer to install the Tieback Anchor System.

        1.1.2     Developer shall provide notice ("**Access Notice**") to Grantor at least ten (10) business days prior to the start of construction of the Tieback Anchor System. The Access Notice shall also provide: (a) a brief description of the Development Project; and (b) a

REL000093

construction schedule for the Development Project, including the dates for commencement of access/excavation.

1.1.3     Grantor shall permit Developer and its contractors reasonable ingress and egress over the Grantor Property (excluding access to all improvements located thereon) for the purpose of determining the precise locations of all tiebacks to be installed on the Grantor Property, and the locations of all existing foundations, utility facilities, and other underground improvements within and beneath the surface of the Grantor Property.

1.1.4     In the case of any damage to the Grantor Property or improvements thereon caused by Developer's access thereto, installation, use or removal of the Tieback Anchor System, or if such access, use or removal of the Tieback Anchor System by Developer impacts (or presents a material risk of impacting) the health, safety or welfare of Grantor or the Grantor Property, or any of its occupants, invitees or any improvements thereon, Developer shall initiate corrective action within no more than two (2) Business Days after discovering or receiving notice of the damage or threat, and thereafter shall diligently pursue corrective action until complete. If Developer fails to commence corrective action within the time frames specified above, or fails to diligently pursue the corrective action to completion, after five (5) Business Days' prior notice to Developer, Grantor may initiate and complete the corrective action and Developer shall reimburse Grantor for the costs of such work within fifteen (15) days of receipt of invoices for same.

1.1.5     [Intentionally Omitted]

1.1.6     Developer covenants that at all times during the term of this Agreement and until all obligations of Developer hereunder (including, under Section 4 below) have been fulfilled, Developer will, at its sole expense, maintain the Tiebacks Anchor System in good repair and structurally sound condition.

1.2     Grantor consents to removal of, and agrees that Developer and the Los Angeles Department of Water & Power may remove the corner pole as shown on **Exhibit D** (currently on Developer Property) at Developer's expense, and to feed future power and any other utilities associated with that pole to Sunset's property at Developer's expense for installation, from a location on Selma Avenue in accordance with all applicable laws; provided that no such change shall:  (a)  result in any interruption of electrical power at the Grantor Property or (b)  reduce or in any other manner adversely affect the amount of electrical power that can be delivered to the Grantor Property.  Developer will install at Developer's cost and expense new subterranean – utility service lines located along the property line that divides Grantor Property and Developer Property.  Grantor shall have the right to approve the location and manner of installation of such utility service lines.

1.3     In addition, during the term of this Agreement (as described in Section 6.1 below), Grantor grants to Developer and its designated contractors, a temporary easement and right of way for minor movement of the boom(s) and counterweight(s) of one or more cranes or portions of similar construction equipment requiring use of the airspace over Grantor Property in accordance with applicable laws and in a manner that does not impair or endanger the use of the Grantor Property.

REL000094

2.    INDEMNIFICATION.  Developer shall indemnify, defend and hold harmless Grantor and all of the other Grantor Parties (defined below) from and against any and all losses, damages, liability, claims, lawsuits, proceedings, judgments, damages, injuries, deaths, losses, fines, penalties, liens (including mechanic's and materialmen's liens), awards, costs and expenses, whatsoever, including reasonable attorneys' fees arising from or in any manner connected to: (i) all excavation, tieback installation and other activities performed by Developer, its agents, employees and independent contractors to install the Tieback Anchor System in the Tieback Easement Area and/or to exercise any of its other rights under this Agreement; and (ii) Developer's use of the Tieback Easement Area; (iii) Developer's exercise of the rights granted to Developer under Sections 1.2 and 1.3 above; (iv) and breach of this Agreement; (v) any negligent or willful acts or omissions of Developer, its agents, employees, consultants, contractors and invitees. **"Grantor Parties"** means Grantor and its affiliates and their respective tenants, officers, directors, members, partners, shareholders, first mortgees, agents and employees.  This Section 2 shall survive the expiration or termination of this Agreement.

3.    MONITORING BY ENGINEER.

    3.1    Prior to commencement of the installation of the Tieback Anchor System at the Grantor Property, Developer may retain an engineer to prepare a report as to the condition of the Grantor Property and all improvements located on the Grantor Property for the purposes of installing the Tieback Anchor System (the **"Pre-Installation Engineering Report"**).  Developer shall provide a copy of such Pre-Installation Engineering Report to Grantor for approval. Grantor may, at its option, have the Pre-Installation Engineering Report peer reviewed by one or more engineers retained by Grantor (and Developer shall reimburse Grantor upon demand for any out of pocket costs incurred by Grantor in connection with such peer review). Grantor agrees not to unreasonably withhold, condition or delay its approval of such Pre-Installation Engineering Report.  If Grantor fails to give Developer written notice of its disapproval with reasonably detailed reasons therefor within ten (10) business days of submission to Grantor of such Pre-Installation Engineering Report, and such failure continues for five (5) business days following Grantor's receipt of written notice thereof, such Pre-Installation Engineering Report shall be deemed to have been approved by Grantor.

    3.2    Following the installation of the Tieback Anchor System, Developer will retain an engineer to prepare a report identifying and describing any actual physical damage to the Grantor Property and all improvements located on the Grantor Property that was caused by the installation of the Tieback Anchor System (the **"Post-Installation Engineering Report"**). Developer will provide Grantor with a copy of the Post-Installation Engineering Report.  Grantor may, at its option, have the Post-Installation Engineering Report peer reviewed by one or more engineers retained by Grantor (and Developer shall reimburse Grantor upon demand for any out of pocket costs incurred by Grantor in connection with such peer review).  Grantor agrees not to unreasonably withhold, condition or delay its approval of such Post-Installation Engineering Report.  If Grantor fails to give Developer written notice of its disapproval with reasonably detailed reasons therefor within ten (10) business days of submission to Grantor of such Post-Installation Engineering Report, and such failure continues for five (5) business days following Grantor's receipt of written notice thereof, such Post-Installation Engineering Report shall be

C-4

REL000095

deemed to have been approved by Grantor.  Developer agrees to pay for any actual physical damage to the Grantor Property and improvements located on the Grantor Property identified in the approved Post-Installation Engineering Report.

3.3     Following the removal of the Tieback Anchor System, Developer will retain an engineer to prepare a report identifying and describing any actual physical damage to the Grantor Property and all improvements located on the Grantor Property that was caused by the use and/or removal of the Tieback Anchor System (the **"Post-Removal Engineering Report"**).  Developer will provide Grantor with a copy of the Post-Removal Engineering Report for approval.  Grantor may, at its option, have the Post-Removal Engineering Report peer reviewed by one or more engineers retained by Grantor (and Developer shall reimburse Grantor upon demand for any out of pocket costs incurred by Grantor in connection with such peer review).  Grantor agrees not to unreasonably withhold, condition or delay its approval of such Post-Removal Engineering Report.  If Grantor fails to give Developer written notice of its disapproval with reasonably detailed reasons therefor within ten (10) business days of submission to Grantor of such Post-Removal Engineering Report, and such failure continues for five (5) business days following Grantor's receipt of written notice thereof, such Post-Removal Engineering Report shall be deemed to have been approved by Grantor.  Developer agrees to pay for any actual physical damage to the Grantor Property and improvements located on the Grantor Property identified in the approved Post-Removal Engineering Report.  This <u>Section 3.3</u> shall survive the expiration or termination of this Agreement.

4.      <u>REMOVAL OF TIEBACKS</u>.

4.1     After any Tiebacks are no longer needed, and in any event on or before the date that is [sixty (60)] days before expiration of the term of the Tieback Easement in accordance with Section 6.1 below, Developer shall de-tension the tiebacks, remove the Tieback Anchor System (and any underpinnings or any other materials installed in the Tieback Easement Area pursuant to this Agreement) other than slurry, grout, steel pipe "nuts" six inches (6") in diameter and no longer than 10 feet in length and other minor remains that shall not interfere with or impair future excavation and construction activities on the Grantor Property.  Developer represents and warrants that such remnants are capable of being removed by ordinary construction excavation equipment, without special resources needed to dissemble or otherwise break apart those remnants, as set forth in the accompanying letter from Cefali & Associates.  Upon completion of such work, the affected area of the Grantor Property shall be restored as nearly as practicable to the appearance and condition in existence immediately prior to installation of the Tieback Anchor System.

4.2     If Developer has failed to complete removal of the remove the Tieback Anchor System (and any underpinnings or any other materials installed in the Tieback Easement Area pursuant to this Agreement) on or before on or before the date that is [[sixty (60)]] days before expiration of the term of the Tieback Easement in accordance with <u>Section 6.1</u> below, which violations Developer is unwilling to cure, Grantor may seek all rights and remedies against Developer as permitted by applicable law.  If Grantor has suffered any damages as a result of such failure, Developer shall liable to Grantor for such damages, including the payment of all reasonable legal expenses incurred in the enforcement of such rights and remedies.  If Grantor files legal action in court against Developer to enforce such rights and remedies, Developer shall

REL000096

be responsible for payment of Grantor's legal expenses incurred in connection with such enforcement, unless a court of competent jurisdiction determines that Developer did not materially violate such provisions.

    4.3    This Section 4 shall survive the expiration or termination of this Agreement.

5.    ACCESS TO INSTALL TIEBACKS.  Developer shall have the right and easement to subsurface entry in the Tieback Easement Area at various times for maintenance, repair, replacement and removal of the Tieback Anchor System. Developer warrants that its agents, employees and independent contractors shall limit their entry upon the Tieback License Area to those instances where the activities requiring entry may not in a commercially reasonable manner be performed exclusively on the Development Property. Developer further warrants that at no time shall the activities impair normal use or safety of the Tieback Easement Area, Grantor Property or improvements thereon.

6.    TIMING TO INSTALL TIEBACKS; TERM.

    6.1    Developer agrees that all work and entry upon or over the Tieback Easement Area shall be done under the supervision of Developer.  The term of the Tieback and Shoring Easement and of all other rights granted to Developer under this Agreement shall commence as of the date of commencement of excavation on the Developer Property, which is anticipated to commence in twelve (12) months from the execution of this Agreement, and shall expire upon the earliest of (a) two (2) calendar years from the date of execution of this Agreement, (b) completion of the Development Project, or (c) termination of this Agreement pursuant to any other provision of this Agreement.

    6.2    Notwithstanding anything to the contrary herein, Developer shall have no right to install the Tieback Anchor System, and this Agreement shall become null, void and of further force or effect unless Developer commences installation of such Tieback Anchor System on or before one (1) calendar year from the date of execution of this Agreement.

    6.3    The dates and time periods in this **Section 6** are subject to extension arising from Force Majeure, but only if and to the extent that Developer notifies Grantor in writing of the occurrence of any alleged event of Force Majeure within five (5) business days after Developer becomes aware of the same.  For purposes of this Agreement, "**Force Majeure**" means: war; terrorist attack (including, without limitation, bio-terror); civil unrest; inclement weather; natural catastrophe; strikes, protests, walkouts or other such disturbances; government delays, interference from any government, court or regulatory body having jurisdiction; moratorium or injunction; major material shortages; embargo; riot; civil disorder; or any other cause beyond the reasonable control of Developer and its agents, employees, consultants, contractors and invitees.

7.    NO INVASION OF AIR SPACE OR OTHER AREAS EXCEPT TIEBACK EASEMENT AREA. Except as contemplated under Sections 1.2 and 1.3 above, Developer shall not (and shall have no right hereunder to) invade the airspace of, the surface of, the improvements on, or any subsurface area under the Grantor Property , except within the Tieback Easement Area.

REL000097

8.  WAIVER; RELEASE. Developer waives and releases Grantor from any claim related to any hazardous substances encountered during the installation of the Tieback Anchor System and/or the construction of the Development Project.

9.  INSURANCE. During the period of exercise by Developer of its rights under this Agreement, Developer shall maintain in force, at its expense, or cause its contractor to maintain, a policy of Commercial General Liability Insurance issued by an insurer having a Best's rating of not less than A-/[VIII], and naming Grantor and Stephan Saeed Nourmand as an additional insured. Such insurance shall be provided by a policy with a combined single limit for bodily injury, personal injury, death and property damage of [$5,000,000] each occurrence, [$10,000,000] aggregate (and these limits may be met by a combination of primary coverage and excess umbrella coverage) insuring against the liability of Developer arising out of, or in connection with it use of the Grantor Property (the **"Insurance"**). All commercial general liability and property damage insurance shall insure Developer's performance of its obligations under the indemnity provisions of this Agreement. The Insurance shall contain provisions providing that such insurance shall be primary insurance insofar as Grantor and Developer are concerned, with any other insurance maintained by Grantor being excess and non-contributing with the Insurance required hereunder. Developer shall provide a certificate evidencing the Insurance to Grantor or any of its agents, employees, consultants, or contractors prior to entry onto the Grantor Property pursuant to this Agreement and annually thereafter until this Agreement terminates.

10.  PERFORMACE COVENANTS; AND HELP REMEDIES.

10.1  Developer shall, in exercising any rights hereunder, comply with all applicable federal, state and local laws, rules and regulations, permits and plans. Without limiting the generality of the foregoing, Developer shall comply with all applicable federal, state and local laws, rules and regulations, permits and plans in constructing the Development Project and the Tieback Anchor System. In this regard, in the exercise of the rights under this Agreement, Developer shall (i) obtain all necessary governmental permits, licenses and approvals; (ii) comply in all respects with all applicable laws, regulations, and ordinances and with the terms and conditions of all permits and approvals applicable thereto; (iii) use the rights granted in this Agreement in such a manner as to not materially interfere with or adversely affect any improvements on the Grantor Property; (iv) keep the Grantor Property free and clear of all liens, charges, and other monetary encumbrances arising out of its use of the Grantor Property as authorized by this Agreement; and (vii) enter the Grantor Property only at reasonable times and shall use commercially reasonable efforts to avoid disturbance of any occupants of the Grantor Property. Grantor shall have the right, without obligation, to install typical notices of non-responsibility with respect to any work performed by Developer on or in the Grantor Property.

10.2  All installation, maintenance, replacement and removal of the Tieback Anchor System shall be performed in a manner which, to the extent commercially feasible, causes the least amount of interference with the use and enjoyment of the Grantor Property and, once commenced, shall be diligently prosecuted to completion.

10.3  If any liens against the Grantor Property are filed or asserted as a result of any entry by Developer onto the Grantor Property or any activity by Developer conducted pursuant

REL000098

to this Agreement, Developer shall, within ten (10) business days following delivery to Developer by Grantor of written notice of the same, remove such liens as an exception to title to the Grantor Property, by bonding or otherwise.

10.4    If Developer fails to perform any of its obligations under this Agreement, in whole or in part, in addition to all other remedies it may have at law or in equity, Grantor shall have the right, but not the obligation, upon ten (10) business days' prior written notice to Developer (unless within that ten (10) business day period Developer shall cure the default, or in the case of a default which by its nature cannot be cured within that ten (10) business day period, the Developer shall commence to cure the default within that ten (10) business day period, and thereafter shall diligently prosecute the curing of the default to completion) to proceed to take such action as shall be reasonably necessary to cure the default, including entering the Tieback Easement Area (and entering such reasonable portion of the Development Parcel, as reasonably necessary to cure the default), all in the name of Developer and for the account of Developer; provided, however, in the event of an emergency, Grantor may take such action to cure the default without notice to Developer.  The rights granted to Grantor pursuant to this Section 10.4 do not include the right to cause harm to persons or the Developer's property.  If Grantor expends sums for the performance of any obligations of Developer pursuant to the exercise of any self-help remedies under this Agreement, Developer shall reimburse Grantor for the cost of that performance within fifteen (15) days after the receipt of a statement therefore along with reasonable documentation substantiating the costs incurred by Grantor.  Thereafter, interest shall accrue upon any unpaid amounts at the maximum rate allowed by law.  If Developer fails to promptly pay any payment due under this Agreement, Grantor is hereby granted a lien against the Development Parcel to secure the payment of all sums due and payable by Developer hereunder, which lien may be foreclosed by suit, power of sale or in any other manner permitted by applicable law, including power of sale foreclosure.  Any lien granted under this <u>Section 10.4</u> shall automatically be subordinate to any mortgage or deed of trust or any other security now or hereafter placed on the Development Parcel, or any portion thereof, and to all renewals, modifications, consolidations and replacements of such mortgages or deeds of trust.  This Section 10.4 shall survive the expiration or termination of this Agreement

11.    <u>MISCELLANEOUS.</u>

11.1    <u>Legal Capacity; Execution Authority.</u>  The Parties acknowledge, warrant, and represent that they are legally competent and authorized to execute this Agreement.  Each Party represents and warrants that the natural person who executes this Agreement on its behalf has the authority to execute this Agreement on its behalf.

11.2    <u>Entire Agreement.</u>  This Agreement is the entire understanding between the Parties respecting the subject matter discussed herein and supersedes any prior understandings of the Parties, whether oral or written, respecting the subject matter hereof.

11.3    <u>Amendments and Modifications.</u>  No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all the Parties.

REL000099

11.4    Survival. All covenants, representations, and warranties contained herein shall survive the execution and delivery of this Agreement and the execution and delivery of any other document or instrument referred to herein.

11.5    No Waiver. No waiver of any of the provisions of this Agreement shall be deemed a waiver of, nor shall it constitute a waiver of, any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

11.6    Collaborative Drafting. Neither this Agreement, nor any provision within it, shall be construed against any Party or its attorney because counsel for each of the Parties took part in the negotiation and drafting of this Agreement.

11.7    Attorney's Fees, Expenses, and Costs. Each of the Parties shall bear their own attorney's fees and costs incurred in connection with the Tommie Action, the subject matter of the Tommie Action and the negotiation, execution, and performance of this Agreement. The preceding sentence notwithstanding, the prevailing Party on any motion, lawsuit, or action to interpret or enforce the terms of this Agreement shall be entitled to recover its reasonable attorneys' fees, costs, and expenses in connection with such motion, lawsuit, or action, including any expert witness fees and expenses, from the Party against which it prevailed.

11.8    Necessary Action. Each of the Parties shall promptly do any act or thing reasonably necessary and execute any or all documents or instruments reasonably necessary or proper to effectuate the provisions and intent of this Agreement.

11.9    Counterparts; Electronic Signatures. This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall be an original, but all such counterparts shall constitute one and the same agreement. Signatures of this Agreement may be transmitted via electronic means (including facsimile or e-mailed PDF scan) and shall be considered an original and binding against the Party that executed and delivered such signature via electronic means.

11.10    Notice. All notices shall be in writing and shall be addressed to the affected Parties at the addresses set forth below. Notices shall be: (a) hand delivered to the addresses set forth below, in which case they shall be deemed delivered on the date of delivery (or the date delivery is rejected); (b) sent by certified mail, return receipt requested, in which case they shall be deemed delivered on the date of delivery (or the date delivery is rejected); (c) sent by nationally recognized overnight courier (e.g., Federal Express or UPS), return receipt requested, in which case they shall be deemed delivered upon delivery (or on the date delivery is rejected). Any Party may change its notice address by giving notice thereof in compliance with this Agreement. Notice of such a change shall be effective only upon actual delivery (or rejection of delivery). Notice given on behalf of a Party by any attorney purporting to represent a Party shall constitute notice by such Party if the attorney is, in fact, authorized to represent such Party. The respective notice addresses of the Parties are:

To Grantor                                    To Developer

The Sunset Landmark Investment, LLC           6516 Tommie Hotel LLC
6525 W. Sunset Blvd.                          1605 Cahuenga Blvd.

REL000100

Los Angeles, CA 90028

with a copy to:

Hollywood, CA 90028
Attention: Richard Heyman
Facsimile: 310) 388-0305
Email: richard@relevantgroup.com

with a copy to:

Jayesh Patel, Esq.
Zuber Lawler & Del Duca LLP
350 South Grand Avenue, 32nd Floor
Los Angeles, CA 90071
Facsimile: (213) 596-5621
Email: jpatel@zuberlaw.com

M. Guy Maisnik, Esq.
Jeffer Mangels Butler & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
Facsimile: (310) 712-3388
Email: mgm@jmbm.com

11.11   Governing Law.  The laws of the State of California, without giving effect to choice of law or conflict of law principles, shall govern the validity, construction, performance and effect of this Agreement.

11.12   Captions.  Captions, numbering and headings in this Agreement are for convenience of reference only and shall not be considered in the interpretation of this Agreement.

11.13   Severability.  Wherever possible, each provision of this Agreement will interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement is found to be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

11.14   Binding Effect.  This Agreement is binding on and inures to the benefit of the parties and their respective heirs, executors, administrators, successors, and permitted assigns.

11.15   Cooperation with Construction.  Grantor agrees to reasonably cooperate with Developer, at no out-of-pocket cost to Grantor, in connection with any construction-related issues and issues or requirements relating to permits from the City of Los Angeles or other City or municipality-related issues in connection with the construction of the Development Project, and any adjustments to this Agreement as may be required by an title insurer or mortgagee, provided such cooperation and adjustments do not materially and adversely impact Grantor or the Grantor Property or material increase Developer's rights or Grantor's obligations thereunder.

11.16   Easements Run with the Land.  The easements, covenants, conditions, restrictions, rights and other agreements contained in this Agreement shall be covenants running with the Grantor Property and the Developer Property during the term hereof, and shall be binding on and inure to the benefit of the successor owners of the Grantor Property and the owners and successor owners of the Developer Property during the term hereof.

11.17   Quitclaim Deed.  At the time of the execution of this Agreement, Developer shall execute, acknowledge and deliver to Grantor, a customary quitclaim deed (a "**Quitclaim Deed**")

REL000101

pursuant to which Developer shall remise, release and quitclaim any interest in and to the Grantor Property and any and all rights under this Agreement.  Grantor shall hold the Quitclaim Deed in trust, and upon expiration of the term of this Agreement, or at any earlier time with the written consent of Developer, shall thereafter have the right to record such Quitclaim Deed in the Official Records of Los Angeles County.

11.18   [Intentionally Omitted]

11.19   <u>Calendar and Business Days</u>. All references herein to "days" shall mean calendar days unless specifically referencing Business Days.  As used herein, "Business Day" shall mean any day other than a Saturday, Sunday or Federal or California holiday on which banks in Los Angeles, California are customarily closed.

<SIGNATURE PAGE TO FOLLOW>

REL000102

IN WITNESS WHEREOF, Grantor and Developer have executed this Agreement as of the Effective Date.

**GRANTOR**:

The Sunset Landmark Investment, LLC, a California limited liability company

By_____
Name_____
Its _____

**DEVELOPER:**

6516 Tommie Hotel LLC, a California limited liability company

By_____
Name_____
Its_____

SIGNATURE PAGE

REL000103

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                 )
                                    )
COUNTY OF LOS ANGELES               )

On _____, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

(SEAL)

2177-1003 / 1017774.1

61296569v4

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       )
COUNTY OF LOS ANGELES                  )

On _____, before me, _____, a Notary

Public, personally appeared _____, who proved to me on the

basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within

instrument and acknowledged to me that he/she/they executed the same in his/her/their

authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or

the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that

the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

(SEAL)

REL000105

EXHIBIT A to TIEBACK EASEMENT AGREEMENT

Legal Description of Development Property

THE LAND REFERRED TO HEREIN BELOW IS SITUATED  LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

THE WEST 48 FEET OF THE EAST 144 FEET OF THE NORTH 144 FEET OF LOT 7 OF THE H. J. WHITLEY TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 AT PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ASSESSORS PARCEL NUMBER: 5547-017-008

PARCEL 2:

THE EAST 96.00 FEET OF THE NORTH 144.00 FEET OF LOT 7 OF THE H. J. WHITLEY TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2 PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PORTION OF ASSESSORS PARCEL NUMBER: 5547-017-030

2177-1003 / 1017774.1
61296569v4

REL000106

EXHIBIT B to TIEBACK EASEMENT AGREEMENT

Legal Description of Grantor Property

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

PARCEL 1:

THE WEST 10.13 FEET OF LOT 4 AND ALL OF LOTS 5,6,7 AND 8 OF THE M.P. FILLMORE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORINIA, AS PER MAP RECORDED IN BOOK 16, PAGE 178 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

LOT 9 AND THE NORTHERLY 10 FEET OF THE WESTERLY 200 FEET OF LOT 12 OF THE SAID M.P. FILLMORE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 16, PAGE 178 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTH 5 FEET OF THE NORTHERLY 10 FEET OF LOT 12 CONVEYED TO THE CITY OF LOS ANGELES FOR ALLEY PURPOSES BY DEED DATED JUNE 22, 1921 AND RECORDED IN BOOK 295, PAGE 344, OF OFFICIAL RECORDS.

PARCEL 3:

LOT 11 OF THE M.P. FILLMORE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 16, PAGE 178 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 4:

THAT PORTION OF LOT 7 OF THE H.J. WHITLEY TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2, PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTYRECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF SAID LOT 7; THENCE WESTERLY ALOMG THE SOUTHERLY LINE OF SAID LOT, 45 FEET; THENCE NORTHERLY PARALLEL WITH THE WESTERLY LINE OD SAID LOT; 15 FEET; THENCE EASTERLY PARALLEL WITH THE SOUTHERLY LINE OF SAID LOT, TO A POINT IN THE EASTERLY LINE OF SAID LOT; THENCE SOUTHERLY ALONG SAID EASTERLY LINE 15 FEET TO THE PLACE OF BEGINNING.

REL000107

PARCEL 5:

PART OF BLOCK 2 "HOLLYWOOD", IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 28, PAGES 59 AND 60 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY AND PART OF THE ALLEY IN SAID BLOCK AND OF DAC AVENUE, NOW VACATED, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE WEST LINE OF SAID BLOCK 2, DISTANT 283.3 FEET NORTH OF THE SOUTHWEST CORNER THEROF, THENCE EAST ALONG THE NORTH LINE OF THE LAND OF M.P. FILLMORE, AS DESCRIBED IN DEED RECORDED IN BOOK 1635, PAGE 89 OF DEEDS, 195 FEET; THENCE SOUTH PARALLEL WITH THE WEST LINE OF SAID BLOCK, 55 FEET; THENCE WEST PARALLEL WITH SAID NORTH LINE OF FILLMORE'S LAND 200 FEET TO A POINT IN THE EAST LINE OF HUDSON AVENUE, AS ESTABLISHED BY DEED TO THE CITY OF HOLLYWOOD, RECORDED IN BOOK 2741, PAGE 87 OF DEEDS; THENCE NORTH ALONG SAID LAST LINE 55 FEET; THENCE EAST 5 FEET TO THE PLACE OF BEGINNING.

PARCEL 6:

THAT PORTION OF LOT 7 OF THE H.J. WHITLEY TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2, PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF SAID LOT 7; THENCE WESTERLY ALONG SOUTHERLY LINE OF SAID LOT, 247.80 FEET TO THE EAST LINE OF THE WEST 16 FEET OF SAID LOT; THENCE NORTHERLY ALONG SAID EST LINE 73 FEET TO A POINT; THENCE EASTERLY AND PARALLEL WITH THE SOUTHERLY LINE OF SAID LOT, 247.80 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT; THENCE SOUTHERLY ALONG SAID EASTERLY LINE 73 FEET TO THE PLACE OF BEGINNING.

EXCEPT THE EASTERLY 45 FEET OF THE SOUTH 15 FEET OF THE ABOVE DESCRIBED PROPERTY.

PARCEL 7:

THAT PORTION OF LOT 7 OF THE H.. WHITLEY TRACT NO. 2, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 2, PAGE 31 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT APOINT IN THE EAST LINE OF LOT 7, DISTATN NORTHERLY THEREON 73 FEET FROM THE SOUTHEAST CORNER THEREOF; THENCE NORTHERLY ALONG THE EAST LINE OF SAID LOT 73 FEET; THENCE WESTERLY PARALLEL WITH THE SOUTH LINE OF SAID LOT, 247.8 FEET TO THE EAST LINE OF THE PROPERTY CONVEYED TO THE COUNTY OF LOS ANGELES FOR ROAD PURPOSES OF DEED RECORDED IN BOOK 1783, PAGE 94 OF DEEDS; THENCE

2177-1003 / 1017774.1
61296569v4

REL000108

SOUTHERLY ALONG SAID EAST LINE, 73 FEET; THENCE EASTERLY PARALLEL
WITH THE SOUTHERLY LINE OF SAID LOT, 247.8 FEET TO THE POINT OF
BEGINNING.

APN; 5547-017-005 AND 5547-017-006 AND 5547-017-018 AND 5547-017-026 AND 5547-
017-028

EXHIBIT C to TIEBACK EASEMENT AGREEMENT
Approved Plans

Those certain Shoring Plans prepared by Cefali & Associates, Inc., entitled Support of Excavation Tommie Office Condo, 6516 Selma Ave., Los Angeles, CA 90028, a copy of which has been provided to Grantor, and described as follows:

| Sheets (1-8): | Entitled | Date |
|---|---|---|
| SS -1.0 (page 1 of 8) | Notes | July 22, 2016 |
| SS – 1.1 (page 2 of 8) | Soils Approval Letter, Special Order & Larr | July 1, 2016 |
| SS – 2.0 (page 3 of 8) | TYP Details | July 22, 2016 |
| SS – 2.1 (page 4 of 8) | Schedule & TYP Details | July 22, 2016 |
| SS – 3.0 (page 5 of 8) | Support of Excavation Details | July 22, 2016 |
| SS – 4.0 (page 6 of 8) | Elevations & Sections | July 22, 2016 |
| SS – 4.1 (page 7 of 8) | Elevations & Sections | July 22, 2016 |
| SS – 4.2 (page 8 of 8) | Elevations & Sections | July 22. 2016 |

2177-1003 / 1017774.1

61296569v4

REL000111

<u>EXHIBIT D to TIEBACK EASEMENT AGREEMENT</u>
<u>Power Pole</u>

<u>Intentionally left Blank</u>

2177-1003 / 1017774.1
61296569v4

REL000112

## EXHIBIT D

### Form of CEFALI Letter Regarding Tieback Easement Agreement

LETTERHEAD OF CEFALI

January 3, 2018

Relevant Group
1605 N. Cahuenga Blvd.
Hollywood, CA 90028

Attention: Josh Frantz

Subject:     Use of tiebacks for temporary earth support beneath adjoining lot
Reference:    Tommie Hotel,
                   6516 Selma, Los Angeles, CA, Engineer's Job No. 16-056

To Whom It May Concern:

As you have requested I would like to briefly describe the Dywidag QuickEx Removable Anchor System for supporting the proposed excavation at the southern adjoining lot.

Tiebacks have no detrimental effect on the adjacent property. The tieback itself is a small 6 inch diameter drilled shaft that has a steel tendon at the center and is surrounded by grout. These shafts range in length and depth from the surface. Because they are so deep they will cause no damage or conflict with the existing structure that is present on the site.

The Removable Anchor System allows the steel tendon at the center of the anchor to be disconnected and extracted at the conclusion of the project, leaving behind a PVC lined hole at the center of the grouted shaft and the compression body and footbox at the very deepest point the anchor. Even though conventional earthmoving equipment is capable of extracting a standard detensioned strand anchor, if the site were to undergo an open excavation, the Removable Anchor System facilitates the process by removing the steel core.

If you have any questions please do not hesitate to contact the undersigned.

Yours very truly,

CEFALI & ASSOCIATES, INC.
A California corporation
David A. Cefali, S.E.
President

# EXHIBIT F

Electronically FILED by Superior Court of California, County of Los Angeles on 04/02/2019 04:55 Sherri R. Carter, Executive Officer/Clerk of Court, by Nancy Alvarez, Deputy Clerk

**THE SILVERSTEIN LAW FIRM, APC**
ROBERT P. SILVERSTEIN (State Bar No. 185105)
DANIEL E. WRIGHT (State Bar No. 144490)
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504
Telephone: (626) 449-4200
Facsimile: (626) 449-4205
Robert@RobertSilversteinLaw.com

Attorneys for Petitioner
THE SUNSET LANDMARK INVESTMENT, LLC

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| THE SUNSET LANDMARK INVESTMENT, LLC, a California limited liability company, <br><br> Petitioner, <br><br> vs. <br><br> CITY OF LOS ANGELES, a municipal corporation; the CITY OF LOS ANGELES CITY COUNCIL; and DOES 1 through 10, inclusive, <br><br> Respondents. <br><br> 6421 SELMA WILCOX HOTEL LLC, a California limited liability company; and ROES 1 through 10, inclusive, <br><br> Real Parties in Interest. | Case No. 19STCP01027 <br><br> **VERIFIED PETITION FOR WRIT OF MANDAMUS** <br><br> **[Code Civ. Proc. §§ 1085, 1094.5; Pub. Res. Code §§ 21000, *et seq.* (CEQA)]** |

- 1 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

Petitioner THE SUNSET LANDMARK INVESTMENT, LLC ("Petitioner") seeks a writ of mandamus and declaratory and injunctive relief against Respondents City of Los Angeles and the Los Angeles City Council (sometimes collectively the "City" or "Respondents"), and alleges as follows:

## INTRODUCTION

1.      This petition challenges the City's March 5, 2019 decisions, and all subsequent actions, in approving:  (a) a Mitigated Negative Declaration; (b) Vesting Zone and Height District Changes; (c) Zoning Administrator's Adjustment; (d) Site Plan Review; (e) Conditional Use Beverage, and other associated entitlements (collectively "Land Use Entitlements") for the Selma Wilcox Hotel project, an 8-story, approximately 88.6-foot-tall, 79,878-square-foot hotel with 114 rooms/suites, a 20,624-square-foot restaurant/bar and a 1,939-square-foot hotel restaurant/bar on the first floors, and an outdoor swimming pool/nightclub/bar on top of the building, all on an approximately 21,505-square-foot "L"-shaped lot, located at 6421-6429 1/2 North Wilcox Avenue and 1600-04 Selma Avenue in Hollywood (the "Project").

2.      The Project site sits at the northeast corner of the intersection of Wilcox Avenue and Selma Avenue, two narrow collector streets between Sunset Boulevard on the south, Hollywood Boulevard on the north, Highland Avenue on the west, and Cahuenga Avenue on the east, within a portion of the Hollywood Community Plan and the Hollywood Redevelopment Plan areas.

3.      Objections submitted by Petitioner and others focused, *inter alia*, on the piecemeal submittal of permit and entitlement requests for the Project in a manner designed to obtain the City's approval for allowing construction to get underway before the discretionary hotel application was filed, and additionally, to allow the piecemeal development of other hotel projects surrounding the Project site into a constellation of noisy, alcohol-fueled hotels/nightclubs/bars and restaurants.  Petitioner is informed and believes, and based thereon alleges, that most or all of these other nearby sites are controlled by a parent organization called Relevant Group, LLC, with the piecemeal

- 2 -

1  environmental review accomplished in part by the filing of entitlement requests under the

2  names of differing subsidiary or shell corporations.

3      4.    Objections submitted by Petitioner and others also focused upon the City's

4  failure adequately to disclose, study, and mitigate the significant environmental impacts

5  related to, *inter alia*, noise, air emissions, greenhouse gases, and other environmental

6  issues.

7      5.    Petitioner seeks a writ of mandamus invalidating the City's approval and/or

8  certification of the MND and invalidating and setting aside the Land Use Entitlements, and

9  all Project approvals, because of the City's violations of the California Environmental

10  Quality Act ("CEQA"), the Los Angeles Municipal Code, and other laws.

11  <u>**PARTIES**</u>

12      6.    Petitioner The Sunset Landmark Investment, LLC is a California limited

13  liability company which owns a building and parking facilities within the scope of the

14  effects of traffic, parking, noise, air emissions and other impacts of the Project.  Petitioner

15  participated in the Project's administrative proceedings before the City and objected to the

16  Project in those proceedings, leading up to the City Council's March 5, 2019 approvals of

17  the Project.  Petitioner has a substantial interest in ensuring that the City's decisions are in

18  conformity with the requirements of law, and in having those requirements properly

19  executed and the public duties of the City enforced.  Petitioner will be adversely affected

20  by impacts resulting from the City's actions and approvals, and is aggrieved by the acts,

21  decisions and omissions of the City as alleged in this petition.  Petitioner is suing on its

22  behalf, and on behalf of others who will be affected in the Hollywood area, as well as for

23  all citizens of the City of Los Angeles and more broadly, including all those who seek to

24  maintain the integrity of the land use entitlement process in Los Angeles.

25      7.    Respondent City of Los Angeles is a California charter city located in the

26  County of Los Angeles, California.  The Project is within the jurisdictional limits of the

27  City of Los Angeles.

28      8.    Respondent Los Angeles City Council is the elected governing body of the

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 3 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1    City, and is the body responsible for the decisions at issue herein.

2       9.      Petitioner is informed and believes, and based thereon alleges, that 6421

3    Selma Wilcox Hotel LLC (sometimes "Real Party"), named as a real party in interest, is a

4    California limited liability company operating in California, to which the City granted the

5    Project approvals.

6       10.     Petitioner is ignorant of the true names of respondents sued herein as DOES

7    1 through 10, inclusive, and therefore sues said respondents by those fictitious names.

8    Petitioner will amend the petition to allege their true names and capacities when the same

9    have been ascertained.  Petitioner is informed and believes, and based thereon alleges, that

10   each of these fictitiously named respondents is in some manner responsible for the

11   wrongful conduct alleged in this petition.  Petitioner is informed and believes, and based

12   thereon alleges, that these fictitiously named respondents were, at all times mentioned in

13   this petition, the agents, servants, and employees of their co-respondents and were acting

14   within their authority as such with the consent and permission of their co-respondents.

15      11.     Petitioner is ignorant of the true names of real parties sued herein as ROES

16   1 through 10, inclusive, and therefore sues said real parties by those fictitious names.

17   Petitioner will amend the petition to allege their true names and capacities when the same

18   have been ascertained.  Petitioner is informed and believes, and based thereon alleges, that

19   each of these fictitiously named real parties is in some manner responsible for the wrongful

20   conduct alleged in this petition.  Petitioner is informed and believes, and based thereon

21   alleges, that these fictitiously named real parties were, at all times mentioned in this

22   petition, the agents, servants, and employees of their co-real parties and were acting within

23   their authority as such with the consent and permission of their co-real parties.

24                        **JURISDICTION AND VENUE**

25      12.     Jurisdiction over Respondents and Real Party, and each of them, exists

26   because each of the Respondents and Real Party named in this litigation are present and

27   operating within the jurisdictional limits of the County of Los Angeles.

28      13.     Venue is proper because most or all of the acts and omissions complained of

1    in this litigation took place within this judicial district.

2    <u>**GENERAL ALLEGATIONS**</u>

3        14.    Petitioner is informed and believes, and based thereon alleges, that Real

4    Party brought forward to the City Planning Commission and City Council an application

5    that sought the following actions and approvals:  (1) Vesting Zone Change from C4-2D to

6    (T)(Q)C2-2D (to permit residential and commercial uses); (2) Height District Change

7    which increased the allowed Floor Area Ratio ("FAR") from 2:1 to an FAR of 3.7:1; (3) a

8    Zoning Administrator's Adjustment to permit a 10-foot northerly side yard and a 19-foot

9    easterly rear yard in lieu of the required 11-foot side yard and 20-foot rear yard setbacks;

10   (4) a Site Plan Review for a mixed-use hotel/restaurant project with 114 rooms, 50 parking

11   spaces onsite and 36 parking spaces off-site through valet parking service, and a total of

12   about 22,563 square feet of restaurant/bar uses; and (5) Conditional Use Beverage to

13   authorize on-site alcohol sales and consumption for all restaurants, bars, and rooftop

14   entertainment facilities, as well as mini-bar service in each room.

15       15.    Petitioner is informed and believes, and based thereon alleges, that the City

16   designated the City Land Use Entitlements for the application as Case No. CPC-2016-

17   2601-VZC-HD-CUB-ZAA-SPR.

18       16.    The City caused a Mitigated Negative Declaration ("MND") for the Project

19   to be prepared and designated as ENV-2016-2602-MND.

20       17.    On or about July 12, 2018, the City Planning Commission held a public

21   hearing during which the piecemealing of the building and this Project, and the nuisance of

22   outdoor rooftop nightclubs, were raised.  While the City Planning Commission

23   recommended approval of the Project, in a rare circumstance, two Commissioners voted

24   against the Project.

25       18.    On or about August 17, 2018, the City Planning Commission issued a

26   decision letter recommending that the City Council adopt a Vesting Zone Change and

27   Height District Change for the subject site, approve the adjustments of the side yards,

28   approve the site plan review, approve the Conditional Use Permit for alcohol, and adopt the

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

- 5 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3ʳ Floor
Pasadena, CA 91101-1504

1   Project MND.

2       19.     On or about November 27, 2018, a hearing was held before the Planning

3   and Land Use Management ("PLUM") Committee of the City Council, where Petitioner

4   and others objected to the proposed Project.

5       20.     On or about March 5, 2019, a hearing was held before the full City Council,

6   where Petitioner's representative and others objected to the proposed Project.  Over the

7   objections of Petitioner and others, the City Council approved the MND and the Project,

8   including all of the Land Use Entitlements.

9       21.     Petitioner and other interested parties and individuals made oral and written

10   comments on the Project and MND, and raised each of the legal deficiencies asserted in

11   this petition.  Petitioner has exhausted all administrative remedies.

12       22.     A Notice of Determination for certification of the MND was posted with the

13   Los Angeles County Clerk in Norwalk, with a posting date of March 6, 2019.

14       23.     Petitioner has performed all conditions imposed by law precedent to filing

15   this action, including complying with the requirement of Public Resources Code Section

16   21167.5 by providing notice to the City that this action would be filed.

17       24.     Petitioner will also serve a copy of this petition on the California Attorney

18   General as required by law.

19       25.     Petitioner has no plain, speedy or adequate remedy available in the ordinary

20   course of law to redress the claims alleged in this petition.

21       26.     Petitioner as well as members of the general public will suffer irreparable

22   harm if the relief requested herein is not granted and the Project is commenced based upon

23   the MND and Land Use Entitlements granted for the Project.

24

25

26

27

28

- 6 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101–1504

**FIRST CAUSE OF ACTION**

**(Violation of CEQA And CEQA Guidelines;**

**Improper Approval of Mitigated Negative Declaration)**

27.     Petitioner realleges and incorporates herein by reference the allegations of Paragraphs 1 through 26, inclusive, of this petition.

28.     The record contains substantial evidence to support a fair argument that the Project may cause significant, unmitigable impacts to the environment, including but not limited to land use, transportation, traffic, circulation, emergency response times, parking, pedestrian safety, noise, air quality, GHG, health risks, historic resources, shade/shadow, public services, cumulative impacts and growth inducing impacts, during construction and/or operation.

29.     The record contains substantial evidence showing that the City and MND violated CEQA's requirement for a stable, accurate and finite project description.

30.     The record also contains substantial evidence showing that the City illegally piecemealed the Project in violation of CEQA.

31.     By adopting the MND, the City has prejudicially abused its discretion and failed to proceed in the manner required by law, requiring this Court to issue a writ of mandamus vacating and invalidating all Project approvals, including all Land Use Entitlements that rely on the illegal MND.

32.     Petitioner is further informed and believes, and based thereon alleges, that the City improperly approved the Project while deferring mitigation for potentially significant impacts, as well as deferring studies, alternatives analysis, and consideration and implementation of potential mitigation measures, all in violation of CEQA.

33.     In violation of Public Resources Code Section 21082.2(d), the City refused to prepare an Environmental Impact Report ("EIR") or further study any of the issues raised by Petitioner and other members of the public.

34.     Petitioner as well as members of the general public will suffer irreparable harm if the relief requested herein is not granted and the Project is commenced without

- 7 -

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

1    compliance with all applicable provisions of CEQA.

2    **PRAYER**

3    WHEREFORE, Petitioner prays for judgment as follows:

4    1.    For a peremptory writ of mandamus directing the City and City Council to

5    vacate and set aside the actions approving the MND, Land Use Entitlements, and all

6    Project approvals.

7    2.    That the Court enjoin the City, City Council, City Planning Commission,

8    their officers, employees, agents, boards, commissions and other subdivisions, including

9    but not limited to the Planning Dept. and Dept. of Building & Safety, from granting any

10   authority, permits or entitlements as part of the Project pursuant to the City's approval of

11   the MND, Land Use Entitlements, and all Project approvals.

12   3.    That the Court enjoin Real Party and any successors in interest from

13   undertaking any Project construction pursuant to the City's approval of the MND, Land

14   Use Entitlements, and all Project approvals.

15   4.    For attorney fees, including pursuant to Code Civ. Proc. § 1021.5.

16   5.    For costs of suit; and

17   6.    For such other and further relief as the Court may deem just and proper.

18   DATED:  April 2, 2019        **THE SILVERSTEIN LAW FIRM, APC**

19

20        By:    _/s/ Robert P. Silverstein_

21            ROBERT P. SILVERSTEIN
             DANIEL E. WRIGHT

22        Attorneys for Petitioner
         THE SUNSET LANDMARK INVESTMENT, LLC

23

24

25

26

27

28

- 8 -

VERIFICATION

STATE OF CALIFORNIA )
                    ) ss:
COUNTY OF LOS ANGELES )

I, STEPHAN SAEED NOURMAND, declare as follows:

I am authorized to make this verification on behalf of the Petitioner in this action.

I have read the foregoing Petition for Writ of Mandamus and am familiar with its contents. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Los Angeles, California, on the _2_ day of April, 2019.


STEPHAN SAEED NOURMAND

PETITION FOR WRIT OF MANDAMUS

THE SILVERSTEIN LAW FIRM, APC
215 North Marengo Avenue, 3rd Floor
Pasadena, CA 91101-1504

# EXHIBIT G

**Exhibit 0011**
4/15/2022

1   CASEY MADDREN
    2141 Cahuenga Blvd., Apt. 17
2   Los Angeles, CA   90068
    323 462-7804
3   cmaddren@gmail.com

4
    CASEY MADDREN, PRO PER
5

FILED
Superior Court Of California
County Of Los Angeles

MAR 29 2019

Sherri R. Carter, Executive Officer/Clerk of Court

By _____, Deputy
        Glorietta Robinson

6

7

8

9          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10              **FOR THE COUNTY OF LOS ANGELES**

11
    CASEY MADDREN, an individual       )   Case No.:  **19STCP00988**
12  residing in Los Angeles, CA        )
                                        )   **VERIFIED PETITION FOR WRIT**
13                      Plaintiff,      )   **OF MANDAMUS AND COMPLAINT**
                                        )   **FOR DECLARATORY AND**
14          vs.                         )   **INJUNCTIVE RELIEF**
                                        )
15  CITY OF LOS ANGELES, a municipal    )
    corporation; THE LOS ANGELES CITY   )   **[Code Civ. Proc. §§ 1085, 1094.5; Pub.**
16  COUNCIL; and DOES 1 through 10,     )   **Res. Code §§ 21000, *et seq.* (CEQA);**
    inclusive                           )   **CEQA Guideline § 15378; Los Angeles**
17                                      )   **City Charter § 558; Los Angeles**
                                        )   **Municipal Code § Section 12.24.W]**
18                      Respondent      )
    _____ )
19                                      )

20  6421 SELMA WILCOX HOTEL LLC, a
21  California limited liability company; and
    ROES 1 through 10, inclusive.
22  _____
23

24  Petitioner  CASEY  MADDREN  ("Petitioner")  seeks  a  writ  of  mandamus  against

25  Respondents City of Los Angeles and the Los Angeles City Council (sometimes

26  collectively the "City"), vacating and setting aside all approvals related to the Selma

27  Wilcox Hotel Project, and alleges as follows:

28

# **INTRODUCTION**

This petition challenges all approvals granted by the City of Los Angeles/Los Angeles City Council related to the construction of the Selma Wilcox Hotel Project, including: (a) the Mitigated Negative Declaration, CEQA No. ENV-2016-2602-MND, adopted as the environmental assessment for the project; (b) the Vesting Zone Change and Height District Change from C4-2D to (T)(Q)C2-2D; and (c) the Conditional Use for the on-site sale and dispensing of alcoholic beverages incidental to the proposed restaurant and throughout the hotel including the ground floor lobby bar, in-room mini-bars, and a rooftop amenity deck with bar/lounge area.

Over about the past ten years, entities associated with Richard Heyman and Grant King (Hollywood International Regional Center, Five Chairs, Relevant Group) have raised funds for and engaged in the construction of a number of hotels near the intersection of Selma and Wilcox in Hollywood, including the Dream 1 (6417 Selma), the Selma Wilcox Hotel/Dream 2 (6421 Selma), the tommie (6516 Selma), and the Thompson (1541 Wilcox). The Dream 1 has been completed, and the other three are currently under construction. In each case, Heyman and King have submitted applications for the projects using LLCs associated with the site's address, i.e. 6417 Selma Hotel LLC, 6421 Selma Wilcox Hotel LLC, 6516 Tommie Hotel LLC, and 1541 Wilcox Hotel, LLC.

In 2015 an application was filed with the City of Los Angeles for a project that at that time was called Tao Restaurant and Retail Project, ENV No. ENV-2015-2672-MND. The entity used to file the application was called "6421 Selma Wilcox Hotel LLC". The Statement of Information filed with the State of California for the LLC bears the name Richard Heyman. The project was described as restaurant and retail space with three levels of parking. During the approval process, community members contacted

1   the Department of City Planning (DCP) to point out the contrast between the project
2   described and the name given the LLC.

3

4   Also, while the DCP was processing the Tao Restaurant and Retail Project,
5   Hollywood resident David Carrera submitted evidence to the DCP showing that back
6   in 2014 Space Global, a company that partnered with Heyman and King's Hollywood
7   International Regional Center (HIRC) to raise funding for new hotels, had published
8   an on-line brochure describing a hotel complex on Selma between Cahuenga and
9   Wilcox which included the Dream 1, Dream 2, the restaurant Tao, and the bar Beauty
10  & Essex.  The brochure shows the Dream 2 occupying the same site as the proposed
11  Tao Restaurant and Retail Project.  The brochure describes the Dream 2 as the second
12  phase of the hotel complex, referring to it as a "$43 million extension" of the first
13  hotel.

14

15  In spite of having received this evidence, the DCP saw no reason to question the
16  developer's intentions and proceeded to process the project application for the Tao
17  Restaurant and Retail Project.

18

19  After the original restaurant/retail project had been approved and construction begun,
20  6421 Selma Wilcox Hotel LLC filed an application for a different project on the same
21  site, an 8-story hotel with a rooftop bar/lounge featuring live entertainment.  The
22  name was now changed to Selma Wilcox Hotel Project.

23

24  Though it originally seemed that Heyman and King had used the Tao restaurant/retail
25  project as a placeholder to start construction of the Selma Wilcox Hotel, in light of
26  the evidence it seems clear that as far back as 2014 the developers intended to build a
27  complex which included the Dream 1, the Dream 2 (Selma Wilcox Hotel), Tao, and
28  Beauty & Essex.  Had Heyman and King disclosed the full scope of their intention to

1  build two hotels with rooftop bars featuring live entertainment, along with the newly

2  constructed Tao and the refurbished bar to be called Beauty & Essex, and that every

3  component of this complex would require a CUP for a full line of alcohol, it is

4  reasonable to assume an EIR would have been required.

5

6  CEQA requires that an applicant submit plans for a project in its entirety so that it can

7  be comprehensively evaluated as part of the environmental assessment.   In Laurel

8  Heights vs. Regents of University of California (1988) 47 Cal.3d 376, the court said:

9

10  *We hold that an EIR must include an analysis of the environmental effects of future*

11  *expansion or other action if: (1) it is a reasonably foreseeable consequence of the*

12  *initial project; and (2) the future expansion or action will be significant in that it will*

13  *likely change the scope or nature of the initial project or its environmental effects.*

14

15  Given that the name of the LLC used by the applicant for both projects at 6421 Selma

16  was "6421 Selma Wilcox Hotel", and that before the Tao restaurant/retail application

17  was submitted the developer's funding partner had published a description of the

18  complete project, this "extension" was certainly "a reasonably foreseeable

19  consequence of the initial project".  The Selma Wilcox Hotel/Dream 2 project also

20  fulfills the court's second requirement which says that "the future expansion or action

21  will be significant in that it will likely change the scope or nature of the initial project

22  or its environmental effects."

23

24  In addition to violating CEQA, the City of Los Angeles/Los Angeles City Council

25  also violated Section 12.24.W of the Los Angeles Municipal Code by granting a

26  Conditional Use Permit for the sale and dispensing of alcohol on the hotel premises.

27  Under Section 12.24.W, the City must find: (1)    that the proposed use will not

28  adversely affect the welfare of the pertinent community; (2)   that the granting of the

1   application will not result in an undue concentration of premises for the sale or
2   dispensing for consideration of alcoholic beverages, including beer and wine, in the
3   area of the City involved, giving consideration to applicable State laws and to the
4   California Department of Alcoholic Beverage Control's guidelines for undue
5   concentration; and also giving consideration to the number and proximity of these
6   establishments within a one thousand foot radius of the site, the crime rate in the area
7   (especially those crimes involving public drunkenness, the illegal sale or use of
8   narcotics, drugs or alcohol, disturbing the peace and disorderly conduct), and whether
9   revocation or nuisance proceedings have been initiated for any use in the area; and (3)
10  that the proposed use will not detrimentally affect nearby residentially zoned
11  communities in the area of the City involved, after giving consideration to the
12  distance of the proposed use from residential buildings, churches, schools, hospitals,
13  public playgrounds and other similar uses, and other establishments dispensing, for
14  sale or other consideration, alcoholic beverages, including beer and wine.

15

16  In making its findings regarding the approval of the CUP for the sale and dispensing
17  of alcohol, the DCP ignored substantial evidence in the record that: (1) The
18  Hollywood area already is already oversaturated with ABC locations.  According to
19  the August 17, 2018 letter of determination issued for the Selma Wilcox Hotel by the
20  DCP, there are currently 62 active licenses, including 59 on-site and 3 off-site
21  licenses within 1,000 feet of the project site; (2) Within Crime Reporting District No.
22  646, which has jurisdiction over the subject property, a total of 1,777 crimes were
23  reported in 2017, compared to the Citywide Average of 191 crimes.  In other words,
24  crime in this reporting district is 9 times higher than the citywide average.  Alcohol-
25  related crimes reported in 2017 include Narcotics [167], Liquor Laws [58], Public
26  Drunkenness [27], Disturbing the Peace [2], Disorderly Conduct [159], and DUI
27  related [29]; and (3) There are numerous sensitive uses within 1,000 feet of the
28  project site which could be detrimentally affected by an additional business serving

1  alcohol, including Selma Park (6561 W. Selma, approx. 400 feet away) Selma

2  Avenue Elementary School (6611 W. Selma, approx. 600 feet away), the YMCA

3  (6560 W. Selma Avenue), Blessed Sacrament Church (6660 W. Selma), King's

4  Education (1555 Cassil Place) and First Baptist Church (6682 W. Selma).

5

6  Petitioner seeks a writ of mandamus invalidating and setting aside all approvals and

7  entitlements associated with the Selma Wilcox Hotel Project that were granted in

8  violation of CEQA, including (a) the Mitigated Negative Declaration, CEQA No.

9  ENV-2016-2602-MND, adopted as the environmental assessment for the project; (b)

10  the Vesting Zone Change and Height District Change from C4-2D to (T)(Q)C2-2D;

11  and (c) the Conditional Use for the on-site sale and dispensing of alcoholic beverages

12  at the proposed restaurant and throughout the hotel.

13

14  Additionally, Petitioner seeks a writ of mandamus invalidating and setting aside the

15  approval of the CUP for the sale and dispensing of alcohol which was which was

16  granted in violation of LAMC Section 12.24.W.  The data presented in the DCP's

17  own letter of determination for the project makes it clear that the findings are not

18  based on a reasonable assessment of factual evidence.

19

20  Petitioner also seeks a writ of mandamus enjoining 6421 Selma Wilcox Hotel/Real

21  Parties in Interest from continuing with further construction activities on the site until

22  the legal questions involved in this suit have been resolved.

23

24  **PARTIES**

25

26  Petitioner Casey Maddren is an individual who has lived in Hollywood for over 20

27  years, and who has serious concerns about the project's impacts on the Hollywood

28  community.  Petitioner is a former board member of the Hollywood Hills West

1   Neighborhood Council and a current member of United Neighborhoods for Los
2   Angeles, a community group that advocates for better planning and governance in the
3   County of Los Angeles.  Petitioner will be adversely impacted by the addition of yet
4   another establishment serving alcohol in an area which is already oversaturated with
5   ABC locations.  Research shows a relationship between alcohol density and violent
6   crime.  The addition of another party hotel in central Hollywood will likely push the
7   crime rate higher than it already is, and is also likely to result in an increase in DUIs.
8   Petitioner is also concerned that the dense concentration of party hotels planned for
9   the area immediately around the intersection of Selma and Wilcox, all offering a full-
10  line of alcohol from the ground floor to the rooftop deck (including hotel room mini-
11  bars), as well as live entertainment, will have multiple adverse impacts on
12  surrounding residential uses, in addition to having adverse impacts on surrounding
13  public and private educational facilities.

14

15  Respondent City of Los Angeles is a California charter city located in the County of
16  Los Angeles, California. The Project is within the jurisdictional limits of the City of
17  Los Angeles.

18

19  Respondent Los Angeles City Council is the elected governing body of the City, and
20  is the body responsible for its decisions at issue in this complaint.

21

22  Petitioner is unaware of the true names of all respondents sued herein as DOES 1
23  through 10, inclusive, and therefore sues those respondents using those fictitious
24  names.  Petitioner will amend the petition to allege their true names and to specify the
25  capacities in which they have acted when that information has been verified.
26  Petitioner is informed and believes, and upon that basis alleges, that each of these
27  fictitiously named respondents is to some degree responsible for the unlawful conduct
28  alleged in this petition. Petitioner is informed and believes, and upon that basis

alleges, that these fictitiously named respondents were the agents/employees/appointees of their co-respondents and were acting with the consent/permission/authority of said co-respondents in committing the unlawful acts described above.

Petitioner is informed and believes, and upon that basis alleges, that 6421 Selma Wilcox Hotel LLC, named as a Real Party in Interest, is a California limited liability company, and that 6421 Selma Wilcox Hotel LLC is the beneficiary of all approvals granted by the City for the projects located at 6421 Selma in Hollywood.

Petitioner is unaware of the true names of all respondents sued herein as ROES 1 through 10, inclusive, and therefore sues those respondents using those fictitious names. Petitioner will amend the petition to allege their true names and to specify the capacities in which they have acted when that information has been verified. Petitioner is informed and believes, and upon that basis alleges, that each of these fictitiously named respondents is to some degree responsible for the unlawful conduct alleged in this petition. Petitioner is informed and believes, and upon that basis alleges, that these fictitiously named respondents were the agents/employees of their co-respondents and were acting with the consent/permission/authority of said co-respondents in committing the unlawful acts described above.

**JURISDICTION AND VENUE**

Jurisdiction over Respondents and Real Parties in Interest exists because each of the Respondents and Real Parties named in this litigation are present and operating within the jurisdictional limits of the County of Los Angeles.

1 │ Venue is proper because all of the acts and omissions that are the described in the
2 │ complaint in this litigation took place within this judicial district.

3

4 │ **STATUTORY FRAMEWORK**

5

6 │ **California Environmental Quality Act**

7

8 │ The California Environmental Quality Act (CEQA), PRC Section 21000, was
9 │ approved by the State Legislature and signed into law in 1970 in response to
10 │ increasing concern regarding the impacts of development on the communities we live
11 │ in and on our natural resources.  The CEQA Guidelines tell us, "The purpose of
12 │ CEQA is not to generate paper, but to compel government at all levels to make
13 │ decisions with environmental consequences in mind."  The Guidelines go on to say
14 │ that, "The lead agency must consider the whole of an action, not simply its
15 │ constituent parts, when determining whether it will have a significant environmental
16 │ effect."

17

18 │ CEQA outlines specific procedures which are designed to examine the environmental
19 │ consequences of a proposed project, whether through a Negative Declaration (ND), a
20 │ Mitigated Negative Declaration (MND), or an Environmental Impact Report (EIR).
21 │ The purpose of these procedures is to gather credible information regarding a
22 │ proposed project's potential impacts, and to fully disclose that information to allow
23 │ the public to participate in the approval process.  CEQA is designed to make the
24 │ public aware of any significant project impacts, to help decision-makers identify the
25 │ means of mitigating those impacts, and to ensure full disclosure of significant impacts
26 │ that cannot be mitigated.

27

28

VERIFIED PETITION FOR WRIT OF MANDAMUS & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1  California Public Resources Code Section 21002.1. (d) says that: "[....] The lead

2  agency shall be responsible for considering the effects, both individual and collective,

3  of all activities involved in a project." [Emphasis added.]  And the CEQA Guidelines

4  Section 15378 defines a "Project" as "[....] the whole of an action, which has a

5  potential for resulting in either a direct physical change in the environment, or a

6  reasonably foreseeable indirect physical change in the environment [...,]" [Emphasis

7  added.]

8

9  California Public Resources Code, Sec. 21005 states: "(a)The Legislature finds and

10  declares that it is the policy of the state that noncompliance with the information

11  disclosure provisions of this division which precludes relevant information from

12  being presented to the public agency, or noncompliance with substantive

13  requirements of this division, may constitute a prejudicial abuse of discretion within

14  the meaning of Sections 21168 and 21168.5 , regardless of whether a different

15  outcome would have resulted if the public agency had complied with those

16  provisions."   The same section further states: "(c) It is further the intent of the

17  Legislature that any court, which finds, or, in the process of reviewing a previous

18  court finding, finds, that a public agency has taken an action without compliance with

19  this  division,  shall  specifically  address  each  of  the  alleged  grounds  for

20  noncompliance."

21

22  **Los Angeles Municipal Code**

23

24  The Los Angeles Municipal Code (LAMC) Section 12.24.W states that in order to

25  approve a Conditional Use for the sale and dispensing of alcohol the City must find:

26  (1)    that the proposed use will not adversely affect the welfare of the pertinent

27  community; (2)    that the granting of the application will not result in an undue

28  concentration of premises for the sale or dispensing for consideration of alcoholic

beverages, including beer and wine, in the area of the City involved, giving consideration to applicable State laws and to the California Department of Alcoholic Beverage Control's guidelines for undue concentration; and also giving consideration to the number and proximity of these establishments within a one thousand foot radius of the site, the crime rate in the area (especially those crimes involving public drunkenness, the illegal sale or use of narcotics, drugs or alcohol, disturbing the peace and disorderly conduct), and whether revocation or nuisance proceedings have been initiated for any use in the area; and (3) that the proposed use will not detrimentally affect nearby residentially zoned communities in the area of the City involved, after giving consideration to the distance of the proposed use from residential buildings, churches, schools, hospitals, public playgrounds and other similar uses, and other establishments dispensing, for sale or other consideration, alcoholic beverages, including beer and wine.

## **GENERAL ALLEGATIONS**

In 2007 an application was filed by 6417 Selma Hotel LLC, a company associated with Richard Heyman, to build a 9-story, 120-room hotel which included a restaurant, banquet facility and 2 bars.  A Mitigated Negative Declaration, ENV-2007-3932-MND, was prepared and adopted, but the project did not begin construction at that time and was on hold for a number of years.

In November 2013 applicant 6417 Selma Hotel applied for reconsideration of the earlier adopted MND with some revisions to the project.  The project would now be a 10-story hotel with 182 rooms, a pool, restaurant uses, a rooftop deck and parking on the 1st and 2nd levels.  After further revisions, the DCP issued a letter on April 4, 2014 approving the project and stating the conditions of approval.  The letter also

1  stated that the approved project would contain 77 parking spaces.  This is the project

2  that would become the Dream 1 Hotel, located at 6417 Selma in Hollywood.

3

4  In 2015 an application was filed with the City of Los Angeles for a project that at that

5  time was called Tao Restaurant and Retail Project, ENV-2015-2672-MND.   The

6  entity used to file the application was called "6421 Selma Wilcox Hotel LLC".  The

7  Statement of Information filed with the State of California for this LLC bears the

8  name Richard Heyman.

9

10  While the DCP was processing the Tao Restaurant and Retail Project, Hollywood

11  resident David Carrera submitted evidence to the DCP showing that back in 2014

12  Space Global, a company that partnered with Heyman and King's Hollywood

13  International Regional Center (HIRC) to raise funding for new hotels, had published

14  an on-line brochure describing a hotel complex on Selma between Cahuenga and

15  Wilcox which included the Dream 1, Dream 2, the restaurant Tao, and the bar Beauty

16  & Essex.  The brochure shows the Dream 2 occupying the same site as the proposed

17  Tao Restaurant and Retail Project.  The brochure describes the Dream 2 as the second

18  phase of the hotel complex, referring to it as a "$43 million extension" of the first

19  hotel.

20

21  After the original restaurant/retail project had been approved and construction begun,

22  6421 Selma Wilcox Hotel LLC filed an application for a different project on the same

23  site, an 8-story hotel with 114 rooms and a rooftop bar/lounge featuring live

24  entertainment.  The name was now changed to Selma Wilcox Hotel Project.

25

26  Though it originally seemed that Heyman and King had used the Tao restaurant/retail

27  project as a placeholder to start construction of the Selma Wilcox hotel, in light of the

28  evidence it seems clear that as far back as 2014 the developer intended to build a

1  complex which included the Dream 1, the Dream 2 (Selma Wilcox Hotel), Tao, and

2  Beauty & Essex.  Had Heyman and King disclosed the full scope of their intention to

3  build two hotels with rooftop bars featuring live entertainment, along with the newly

4  constructed Tao and the refurbished bar to be called Beauty & Essex, and that every

5  component of this complex would require a CUP for a full line of alcohol, it is

6  reasonable to assume an EIR would have been required.

7

8  Petitioner alleges that DCP staff had ample evidence to be aware of the fact that Real

9  Parties in Interest 6417 Selma Hotel LLC and 6421 Selma Wilcox Hotel LLC had

10  failed to disclose the full scope of the planned project, which included the Dream 1

11  Hotel, 6421 Selma Wilcox Hotel/Dream 2, the restaurant Tao and the bar Beauty &

12  Essex.

13

14  Petitioner further alleges that DCP staff knowingly violated both the letter and the

15  spirit of CEQA by completing the approval process for the Tao Restaurant and Retail

16  Project in spite of clear evidence that it would be replaced by a larger hotel project,

17  the 6421 Selma Wilcox Hotel/Dream 2.

18

19  Petitioner further alleges that DCP staff knowingly violated both the letter and the

20  spirit of CEQA by failing to start the approval process over from the beginning once

21  it had received the funding brochure posted in 2014 showing that the Real Parties in

22  Interest actually planned to build a complex containing the Dream 1 (6417 Selma

23  Hotel), Dream 2 (6421 Selma Wilcox Hotel), the restaurant Tao and the bar Beauty &

24  Essex.

25

26  CEQA Guidelines Section 15378 (a) states that:

27

28

VERIFIED PETITION FOR WRIT OF MANDAMUS & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1  *"'Project' means the whole of an action, which has a potential for resulting in either*
2  *a direct physical change in the environment, or a reasonably foreseeable indirect*
3  *physical change in the environment [....]"*

4

5  CEQA requires that an applicant submit plans for a project in its entirety so that it can
6  be comprehensively evaluated as part of the environmental assessment.  In Laurel
7  Heights vs. Regents of University of California (1988) 47 Cal.3d 376, the court said:

8

9  *We hold that an EIR must include an analysis of the environmental effects of future*
10  *expansion or other action if: (1) it is a reasonably foreseeable consequence of the*
11  *initial project; and (2) the future expansion or action will be significant in that it will*
12  *likely change the scope or nature of the initial project or its environmental effects.*

13

14  Given that the DCP was made aware of the fact that before the Tao restaurant/retail
15  application was submitted the developer's funding partner had published a
16  description of the complete project, this "extension" was certainly "a reasonably
17  foreseeable consequence of the initial project".  The Selma Wilcox Hotel/Dream 2
18  project also fulfills the court's second requirement which says that "the future
19  expansion or action will be significant in that it will likely change the scope or nature
20  of the initial project or its environmental effects."

21

22  California Public Resources Code Section 21005 says that failure to disclose
23  information relevant to a project may constitute a prejudicial abuse of discretion:

24

25  *(a) The Legislature finds and declares that it is the policy of the state that*
26  *noncompliance with the information disclosure provisions of this division which*
27  *precludes relevant information from being presented to the public agency, or*
28  *noncompliance with substantive requirements of this division, may constitute a*

- 14 -

1  *prejudicial abuse of discretion within the meaning of Sections 21168 and 21168.5 ,*
2  *regardless of whether a different outcome would have resulted if the public agency*
3  *had complied with those provisions.*

4

5  California Public Resources Code Section 21005 further states:

6

7  *(c) It is further the intent of the Legislature that any court, which finds, or, in the*
8  *process of reviewing a previous court finding, finds, that a public agency has taken*
9  *an action without compliance with this division, shall specifically address each of the*
10  *alleged grounds for noncompliance.*

11

12  PRC Section  21080.(d) states:

13

14  *If there is substantial evidence, in light of the whole record before the lead agency,*
15  *that the project may have a significant effect on the environment, an environmental*
16  *impact report shall be prepared.*

17

18  *Petitioner alleges that if the whole record had included all of the information*
19  *available to the DCP about the Real Party in Interest's intention to build a complex*
20  *containing 2 hotels containing almost 300 rooms total, each containing restaurants*
21  *and bars and each offering live entertainment, in addition to the separate Tao*
22  *restaurant, and that all components of the project would require CUPs for the sale*
23  *and dispensing of alcohol, it is reasonable to assume that an unbiased review of such*
24  *information would lead to the conclusion that the whole project would have had a*
25  *significant impact on the environment, and that an EIR would have been required.*

26

27  Petitioner further alleges that the City of Los Angeles/Los Angeles City Council also
28  violated  Section  12.24.W  of  the  Los  Angeles  Municipal  Code  by  granting  a

Conditional Use Permit for the sale and dispensing of alcohol on the hotel premises. Under Section 12.24.W, the City must find: (1)    that the proposed use will not adversely affect the welfare of the pertinent community; (2)   that the granting of the application will not result in an undue concentration of premises for the sale or dispensing for consideration of alcoholic beverages, including beer and wine, in the area of the City involved, giving consideration to applicable State laws and to the California Department of Alcoholic Beverage Control's guidelines for undue concentration; and also giving consideration to the number and proximity of these establishments within a one thousand foot radius of the site, the crime rate in the area (especially those crimes involving public drunkenness, the illegal sale or use of narcotics, drugs or alcohol, disturbing the peace and disorderly conduct), and whether revocation or nuisance proceedings have been initiated for any use in the area; and (3) that the proposed use will not detrimentally affect nearby residentially zoned communities in the area of the City involved, after giving consideration to the distance of the proposed use from residential buildings, churches, schools, hospitals, public playgrounds and other similar uses, and other establishments dispensing, for sale or other consideration, alcoholic beverages, including beer and wine.

In making its findings regarding the approval of the CUP for the sale and dispensing of alcohol, the DCP ignored substantial evidence in the record that: (1) The Hollywood area already is already oversaturated with ABC locations.  According to the August 17, 2018 letter of determination issued by the DCP for the Selma Wilcox Hotel Project, there are currently 62 active licenses, including 59 on-site and 3 off-site licenses within 1,000 feet of the project site; (2) Within Crime Reporting District No. 646, which has jurisdiction over the subject property, a total of 1,777 crimes were reported in 2017, compared to the Citywide Average of 191 crimes.  In other words, crime in this reporting district is 9 times higher than the citywide average.  Alcohol-related crimes reported in 2017 include Narcotics [167], Liquor Laws [58], Public

- 16 -

1  Drunkenness [27], Disturbing the Peace [2], Disorderly Conduct [159], and DUI

2  related [29] and (3) There are numerous sensitive uses within 1,000 feet of the project

3  site which could be detrimentally affected by an additional business serving alcohol,

4  including Selma Park (6561 W. Selma, approx. 400 feet away) Selma Avenue

5  Elementary School (6611 W. Selma, approx. 600 feet away), the YMCA (6560 W.

6  Selma Avenue), Blessed Sacrament Church (6660 W. Selma), King's Education

7  (1555 Cassil Place) and First Baptist Church (6682 W. Selma).

8

9  Subsequent to the approval of the 6421 Selma Wilcox Hotel/Dream 2 Project by the

10 City Planning Commission, Petitioner filed an appeal in August of 2018.  The appeal

11 was heard by the Planning & Land Use Management Committee of the Los Angeles

12 City Council near the end of 2018, and was denied by the Committee.

13

14 Petitioner has complied with all conditions imposed by law before filing this action,

15 having provided notice to the City that this action would be filed pursuant to Public

16 Resources Code Section 21167.5.

17

18 Petitioner will serve a copy of the petition, and each amended petition, to the

19 California Attorney General.

20

21 Petitioner has no other adequate remedy available to redress the claims alleged in this

22 petition.

23

24 Petitioner and members of the Hollywood community will suffer irreparable harm if

25 the relief requested in this petition is not granted and the Project is allowed to proceed

26 based on the flawed conclusions resulting from an environmental review process that

27 was clearly inadequate.

28

VERIFIED PETITION FOR WRIT OF MANDAMUS & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1

## **FIRST CAUSE OF ACTION**

2

3    The record for the Selma Wilcox Hotel Project contains clear evidence that the
4    project was planned as the second phase of a complex which will include the Dream
5    1 Hotel, the Selma Wilcox Hotel/Dream 2, the restaurant Tao, and the bar Beauty &
6    Essex.  This complex will contain almost 300 hotel rooms, feature two rooftop decks,
7    offer live entertainment, and serve alcohol in every component of the project.  There
8    is substantial evidence in the record supporting a fair argument that the Project may
9    cause significant, unmitigable impacts to the environment, including impacts with
10   regard to air quality, greenhouse gasses, pedestrian safety, public safety, noise, public
11   services, and traffic.

12

13   CEQA Guidelines Section 15378 (a) states that:  "'Project' means the whole of an
14   action, which has a potential for resulting in either a direct physical change in the
15   environment, or a reasonably foreseeable indirect physical change in the environment
16   [….]"  PRC Section  21082.2.(d) states: "If there is substantial evidence, in light of
17   the whole record before the lead agency, that the project may have a significant effect
18   on the environment, an environmental impact report shall be prepared."  By preparing
19   and adopting separate MNDs for the Dream 1 Hotel, the Tao Restaurant and Retail
20   Project, and the Selma Wilcox Hotel Project, decision-makers for the City of Los
21   Angeles have violated State law by breaking the project into separate components
22   requiring a lower level of environmental review rather than preparing a full EIR.

23

24   ## **SECOND CAUSE OF ACTION**

25

26   The MND prepared for the Selma Wilcox Hotel Project, ENV-2016-2602-MND, is
27   inadequate in many ways, but especially in its analysis under Public Services of the
28   need for police protection.  The only crime data provided is for the first four weeks of

VERIFIED PETITION FOR WRIT OF MANDAMUS & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

the year 2017, with no meaningful comparisons offered to crime rates in previous years or to crime rates in other LAPD divisions throughout the City.

The MND does not refer to the December 31, 2016 COMPSTAT Profile for the Hollywood Division which records 1,268 violent crimes committed in 2016, a 6.2% increase over 2015 and a 38.1% increase over 2014. Oddly, the August 17 2018 determination letter for the Selma Wilcox Hotel contains far more detailed information than the MND and shows that crime in Hollywood was 9 times higher than the Citywide average when it was published.

In spite of the exceedingly high existing crime rate in Hollywood, the MND asserts that crime generated by the project's operation can be reduced to insignificant levels by implementing two measures: (1) Incorporating into the hotel design features suggested by the "Design Out Crime Guidelines" published by the LAPD; and by (2) Providing the LAPD Hollywood Area commanding officer with a diagram of each portion of the property. The "Design Out Crime Guidelines" is a two-page pamphlet with general design recommendations. It does not appear that any data has been compiled to gauge the effectiveness of the guidelines.

CEQA Guidelines Section 15070 states that: [....] the Negative Declaration shall be adopted when two conditions are met: (1) the project or plan or proposals as agreed to by the applicant prior to public review of the proposed Negative Declaration has been revised to avoid significant effects or the effects have been mitigated down to a point where the effects are clearly insignificant and (2), there is no substantial evidence before the agency that the project as revised may have a significant effect.

Given that the Selma Wilcox Hotel will have 114 rooms, operate 24/7, will contain a bar and a restaurant that will both operate from 6:00 a.m. to 2:00 a.m. daily, and will

offer live entertainment, it seems likely that it will generate additional crime in an area that is already suffering from an extremely high crime rate.  The MND offers no analysis of increased crime from the project, and for mitigation measures during the operational phase offers only two passive measures, producing absolutely no statistical evidence to prove that they will be effective.  The MND clearly fails to meet the criteria set in CEQA Guidelines Section 15070.

## THIRD CAUSE OF ACTION

Approval of the Selma Wilcox Hotel violates Section 12.24.W of the Los Angeles Municipal Code by granting a Conditional Use Permit for the sale and dispensing of alcohol on the hotel premises.  As demonstrated above, there is already an exceedingly high concentration of ABC locations within a 1,000 foot radius of the project.  The determination letter for the project attests to the high crime rate in the area, including crimes involving public drunkenness, the illegal sale or use of narcotics, drugs or alcohol, disturbing the peace and disorderly conduct.  The required findings made by the DCP to approve the CUP for alcohol are not supported by the evidence given in the determination letter.  The DCP clearly erred in making those findings and approving the CUP, and the Los Angeles City Council's approval of the CUP clearly violates LAMC Section 12.24.W.

## PRAYER

Petitioner prays for judgment as follows:

On the First Cause of Action:

- 20 -

For a peremptory writ of mandate directing the City to vacate and set aside all actions approved for the Selma Wilcox Hotel, including the MND and all other approvals, and directing the City to restart the approval process taking into account all components of the hotel complex proposed by 6421 Selma Wilcox Hotel LLC and 6417 Selma Hotel LLC, including the Dream 1 Hotel, the Selma Wilcox Hotel/Dream 2, the restaurant Tao and the bar Beauty & Essex.

That the Court enjoin the City and its officers, employees, agents, boards, commissions and other subdivisions, including the Department of City Planning and the Department of Building and Safety, from granting any further entitlements for projects associated with the Dream 1 Hotel and Selma Wilcox Hotel/Dream 2 complex.

That the Court enjoin the Real Party in Interest and any successors in interest from continuing construction projects associated with the Dream 1 Hotel and the Selma Wilcox Hotel/Dream 2 complex.

On the Second Cause of Action:

For a peremptory writ of mandate directing the City to vacate and set aside the approval of the MND for the Selma Wilcox Hotel.

On the Third Cause of Action:

For a peremptory writ of mandate directing the City to vacate and set aside the approval of the Conditional Use Permit for the sale and dispensing of alcohol for the Selma Wilcox Hotel Project.

<u>On All Causes of Action:</u>

For costs of suit; and

For such other relief as the Court deems just and proper.

DATED: March 29, 2019

CASEY MADDREN
In Pro Per

/  /  /
/  /  /

VERIFIED PETITION FOR WRIT OF MANDAMUS & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1   / / /

2   / / /

3

4   March 29, 2019                                    CASEY MADDREN, PRO PER

5

6

7                                                     Casey Maddren,
                                                      Plaintiff
8   ,

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -

VERIFIED PETITION FOR WRIT OF MANDAMUS & COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

# EXHIBIT H

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3

 4   RELEVANT GROUP, LLC, a Delaware)

 5   limited liability company;    )

 6   et al.,                       )

 7                 Plaintiffs,     )

 8        VS.                      ) Case No.

 9   STEPHAN "SAEED" NOURMAND, an  ) 2:19-CV-05019 ODW-Ksx

10   individual, et al.,           )

11                 Defendants.     )

12   _____)

13

14

15         VIDEOCONFERENCE DEPOSITION OF:

16                 CASEY MADDREN

17            FRIDAY, APRIL 15, 2022

18                 10:11 A.M.

19

20

21   Reported by:

22   Sari M. Knudsen, CSR No. 13109

23   JOB No. 5171442

24

25
```

                                              Page 1

```
 1              Videoconference deposition of CASEY

 2              MADDREN, taken on behalf of the DEFENDANTS,

 3              at 555 South Flower Street, 41st Floor,

 4              Los Angeles, California, on FRIDAY,

 5              APRIL 15, 2022, before Sari M. Knudsen, CSR

 6              No. 13109.

 7

 8     APPEARANCES OF COUNSEL:

 9

10     FOR THE PLAINTIFFS:

11              WILSON SONSINI GOODRICH & ROSATI

12              BY:  CHARLES TALPAS, ESQ.

13              AND CLAY KAUFMAN, ESQ

14              650 Page Mill Road

15              Palo Alto, California  94304

16              650-493-9300

17              (VIA VIDEOCONFERENCE)

18

19     FOR THE DEFENDANTS:

20              NORTON ROSE FULBRIGHT US LLP

21              BY:  NEIL THAKOR, ESQ.

22              555 South Flower Street, 41st Floor

23              Los Angeles, California  90071

24              213-892-9200

25              (VIA VIDEOCONFERENCE)
```

Page 2

1    APPEARANCES OF COUNSEL:   (CONTINUED)

2

3    FOR THE DEFENDANT NOURMAND & ASSOCIATES:

4            THE MALONEY FIRM, APC

5            BY:  ELIZABETH SCHAUS, ESQ.

6            2381 Rosecrans Avenue, Suite 405

7            El Segundo, California  90245

8            310-540-1505

9            (VIA VIDEOCONFERENCE)

10

11   FOR THE DEPONENT:

12            VENSKUS & ASSOCIATES

13            BY:  SABRINA VENSKUS, ESQ.

14            1055 Wilshire Boulevard, Suite 1996

15            Los Angeles, California  90017

16            213-482-4200

17            (VIA VIDEOCONFERENCE)

18

19   ALSO PRESENT:

20            CASSIA LEET, VIDEOGRAPHER

21

22

23

24

25

                                          Page  3

```
1                          I N D E X

2    WITNESS              EXAMINATION           PAGE

3    CASEY MADDREN        (BY MR. TALPAS)          7

4                         (BY MR. THAKOR)        100

5                         (BY MS. SCHAUS)        108

6

7

8

9                        E X H I B I T S

10   EXHIBIT NO.    PAGE      DESCRIPTION

11

12   Exhibit 1      27        e-mail dated 12-7-18

13                            (SILVERSTEIN04896)

14   Exhibit 2      47        e-mail dated 12-8-18

15                            (SILVERSTEIN006486)

16   Exhibit 3      48        e-mail dated 12-11-18

17                            (SILVERSTEIN0006232)

18   Exhibit 4      49        e-mail dated 12-11-18

19                            (SILVERSTEIN0004907)

20   Exhibit 5      55        E-MAIL DATED 1-2-19

21                            (SILVERSTEIN006473)

22   Exhibit 6      62        e-mail dated 1-10-19

23                            (SILVERSTEIN004939)

24   Exhibit 7      67        e-mail dated 1-14-19

25                            (SILVERSTEIN006356)
```

Page 4

```
 1                E X H I B I T S

 2    EXHIBIT NO.     PAGE        DESCRIPTION

 3

 4    Exhibit 8       70          e-mail dated 1-14-19 from

 5                                Mr. Maddren to Mr. Wright

 6    Exhibit 9       75          Transcript of the CPC on

 7                                7-12-18 for the Dream 2

 8                                project

 9    Exhibit 10      82          CEQA Lawsuit Writ Petition

10    Exhibit 11      83          Verified Petition for Writ

11                                of Mandamus and Complaint

12                                for Declaratory and

13                                Injunctive Relief

14    Exhibit 12      89          e-mail dated 6-4-19

15                                (SILVERSTEIN007191)

16    Exhibit 13      92          e-mail dated 6-2-19

17                                (SILVERSTEIN000754)

18

19

20

21

22

23

24

25

                                                    Page 5
```

```
 1                    LOS ANGELES, CALIFORNIA

 2              FRIDAY, APRIL 15, 2022; 10:11 A.M.

 3

 4

 5

 6      THE VIDEOGRAPHER:  Good morning.  We are going      10:11:06

 7   on the record at 10:11 A.M. on April 15, 2022.         10:11:12

 8   Please note that the microphones may pick up           10:11:17

 9   background noise, conversations and interference if    10:11:20

10   unmuted.  Remember to unmute to speak.  Audio and      10:11:24

11   video recording will continue to take place unless     10:11:28

12   all parties agree to go off the record.                10:11:31

13          This is media unit one of the video             10:11:33

14   recorded deposition of Casey Maddren, taken by         10:11:38

15   counsel for plaintiffs in the matter of "Relevant      10:11:41

16   Group LLC, et al., versus Stephan Saeed Nourmand,      10:11:46

17   et al.," filed in the United States District Court,    10:11:50

18   Central District of California.                        10:11:53

19          Case No. 2:19-CV019-ODW-KSx.                    10:12:03

20          This deposition is being conducted using        10:12:04

21   Veritext Virtual Technology and all participants are   10:12:09

22   attending remotely.  My name is Cassia Leet from       10:12:14

23   Veritext Legal Solutions and I am the videographer.    10:12:16

24   Court reporter is Sari Knudsen of Veritext Legal       10:12:20

25   Solutions.                                             10:12:22
```

Page 6

| | | |
|---|---|---|
| 1 | I am not related to any party in this | 10:12:23 |
| 2 | action nor am I financially interested in the | 10:12:27 |
| 3 | outcome. | 10:12:29 |
| 4 | Would counsel and everyone attending | 10:12:29 |
| 5 | remotely please state your appearances and | 10:12:33 |
| 6 | affiliations for the record. | 10:12:36 |
| 7 | MR. TALPAS:  This is Charles Talpas of Wilson, | 10:12:37 |
| 8 | Sonsini, Goodrich & Rosati on behalf of Plaintiff | 10:12:41 |
| 9 | and with me today is Clay Kaufman. | 10:12:48 |
| 10 | MR. THAKOR:  Good morning.  This is Neil Thakor | 10:12:49 |
| 11 | on behalf of Defendants Sunset Landmark Investment | 10:12:52 |
| 12 | LLC and Stephan Saeed Nourmand. | 10:12:57 |
| 13 | MS. SCHAUS:  Good morning.  Elizabeth Schaus on | 10:12:59 |
| 14 | behalf of Nourmand & Associates, Defendant. | 10:13:16 |
| 15 | | 10:13:16 |
| 16 | CASEY MADDREN, | 10:13:16 |
| 17 | having been first duly sworn, was | 10:13:16 |
| 18 | examined and testified as follows: | 10:13:16 |
| 19 | | 10:13:16 |
| 20 | THE REPORTER:  You may begin. | 10:13:19 |
| 21 | | 10:13:19 |
| 22 | EXAMINATION | 10:13:19 |
| 23 | | 10:13:19 |
| 24 | BY MR. TALPAS: | 10:13:19 |
| 25 | Q    Good morning, Mr. Maddren.  And thank you | 10:13:22 |

Page 7

| | | |
|---|---|---|
| 1 | for your time today. | 10:13:23 |
| 2 | I'm just go to go over a bit of formality | 10:13:26 |
| 3 | up front, if you will bear with me. | 10:13:28 |
| 4 | First of all, could you state your name and | 10:13:32 |
| 5 | spell it for the record. | 10:13:33 |
| 6 | A    My name is Casey Maddren, C-A-S-E-Y, | 10:13:35 |
| 7 | M-A-D-D-R-E-N. | 10:13:35 |
| 8 | Q    Great.  And have you ever had your | 10:13:43 |
| 9 | deposition taken before? | 10:13:45 |
| 10 | A    Yes. | 10:13:46 |
| 11 | Q    Okay.  Okay.  So you may know some of this. | 10:13:51 |
| 12 | I'll just try to cover the basics just as a reminder | 10:13:54 |
| 13 | in case it's been a while. | 10:13:56 |
| 14 | But first of all, you understand that you | 10:13:59 |
| 15 | are testifying under oath today.  Right? | 10:14:01 |
| 16 | A    Yes. | 10:14:03 |
| 17 | Q    And is there any reason why you can't give | 10:14:05 |
| 18 | your best testimony today?  Are you on any | 10:14:08 |
| 19 | medications or any problems affecting memory? | 10:14:13 |
| 20 | A    No. | 10:14:14 |
| 21 | Q    Great.  So I'm going to try to ask | 10:14:18 |
| 22 | straightforward questions.  But if you don't | 10:14:20 |
| 23 | understand, please let me know and I'll try to | 10:14:24 |
| 24 | rephrase.  But otherwise, I'll assume that you | 10:14:27 |
| 25 | understood my question. | 10:14:28 |

Page 8

```
 1    clear.                                            1:25:51

 2       Q    Well, do you have an interpretation of this 1:25:52

 3    e-mail?                                            1:25:53

 4       A    I don't see --                            1:25:58

 5       MS. VENSKUS:  Objection.  Hold on.  Objection. 1:26:00

 6    Vague as to time.  You mean at this very moment when 1:26:03

 7    he's already stated on the record he doesn't have  1:26:05

 8    recollection?                                      1:26:06

 9       MR. TALPAS:  Correct.  I'm asking whether he has 1:26:08

10    an interpretation of it at this very moment.       1:26:13

11       THE WITNESS:  It appears that I reached out to  1:26:15

12    Romulus to see if he had filed an appeal or if he -- 1:26:21

13    oh, in this case, if he received the determination 1:26:24

14    letter.                                            1:26:24

15    BY MR. TALPAS:                                     1:26:25

16       Q    At this time in June, 2019, did you have  1:26:44

17    any objections to the Citizen project?            1:26:49

18       A    Yes.                                      1:26:50

19       Q    And what were those?                      1:26:53

20       A    Alcohol, density and noise.  And          1:26:58

21    piecemealing.                                     1:27:01

22       Q    Do you recall whether there were any other 1:27:19

23    instances where you would have tried to find people 1:27:23

24    who had appealed other Relevant projects?         1:27:27

25       MR. THAKOR:  I'm going to object to the        1:27:29
```

Page 97

```
 1       Q    Have you received any money from Sunset      1:37:29
 2   Landmark LLC?                                          1:37:31
 3       A    No.                                           1:37:32
 4       Q    Have you ever spoken with someone who is an  1:37:34
 5   agent of Sunset Landmark LLC?                          1:37:38
 6       A    If you include the people at the             1:37:40
 7   Silverstein firm, I've spoken with them.               1:37:44
 8       Q    Uh-huh.  And outside of Mr. Wright and       1:37:46
 9   Mr. Silverstein, do you remember having any            1:37:48
10   conversation at all with anyone else from Sunset       1:37:51
11   Landmark LLC?                                          1:37:53
12       A    No.                                           1:37:56
13       Q    Are you aware of allegations in this         1:37:58
14   complaint?                                             1:38:00
15       A    I've read the complaint.  I mean, I don't    1:38:03
16   understand the legalese.  But I understand in          1:38:05
17   general, yes, what the allegations are.                1:38:08
18       Q    And do you understand that Relevant Group    1:38:11
19   is alleging that you are a co-conspirator of Saeed     1:38:15
20   Nourmand?                                              1:38:15
21       A    Yes.                                          1:38:17
22       Q    And what are your thoughts on that           1:38:19
23   allegation?                                            1:38:21
24       MR. TALPAS:  Objection to form.                    1:38:22
25       THE WITNESS:  I'm sorry.                           1:38:23
```

Page 101

```
 1        MR. TALPAS:  Go ahead.  I said objection to      1:38:24

 2   form.  You can answer.                                1:38:25

 3        THE WITNESS:  It's rubbish.                       1:38:29

 4   BY MR. THAKOR:                                         1:38:29

 5     Q    I also want to discuss your concerns with      1:38:45

 6   Relevant's projects.  And I want to start with the    1:38:48

 7   Dream Hotel.                                           1:38:49

 8            Did you have concerns about the              1:38:53

 9   environmental impacts of the Dream Hotel at all?      1:38:56

10     A    The first phase of the Dream Hotel?            1:38:58

11     Q    Oh, I understand what you are saying.          1:39:00

12            Yes.  Let's talk -- let's talk about the     1:39:02

13   first phase and we'll get to the second phase in a    1:39:05

14   minute.                                                1:39:05

15            Did you have concerns about the first        1:39:06

16   phase?                                                 1:39:07

17     A    I was not aware of the approval process for    1:39:10

18   the first phase of the Dream Hotel.  It happened      1:39:12

19   before I was really even paying attention to          1:39:15

20   development in Hollywood.                             1:39:19

21     Q    And you live in the Hollywood neighborhood.    1:39:23

22   Right?                                                 1:39:24

23     A    Yes.                                            1:39:25

24     Q    Can you just describe how the Dream Hotel      1:39:28

25   has affected the Hollywood neighborhood since it's    1:39:31
```

Page 102

```
 1    been built?                                          1:39:32

 2        MR. TALPAS:  Objection to form.                  1:39:33

 3        THE WITNESS:  I would say there are few concerns 1:39:38

 4    I have.  One of my biggest concerns for the area is  1:39:40

 5    alcohol density.  Hollywood is already, in the words 1:39:44

 6    of Chief Charlie Beck to the City Planning           1:39:48

 7    Department back in 2014, Hollywood was               1:39:51

 8    over-saturated with alcohol in 2014.  And yet the    1:39:54

 9    City continues to approve new alcohol permits like   1:39:58

10    continuously, and with Relevant projects, I mean,    1:40:03

11    there are numerous alcohol permits that have been    1:40:04

12    issued for Relevant projects.  Every time they open  1:40:09

13    a project, I mean they all have alcohol -- they all  1:40:12

14    have gotten licenses from the State and the City     1:40:13

15    approving multiple permits for them.  So that's my   1:40:17

16    main concern.                                        1:40:18

17            I also know that noise is a major concern    1:40:21

18    not just from the Dream -- well, with regard to the  1:40:25

19    Dream Hotel or -- I mean, the noise has been a major 1:40:29

20    concern of people who I know in the Hollywood area.  1:40:32

21        Q   Is alcohol density also a concern of yours   1:40:35

22    with respect to the Thompson Hotel?                  1:40:37

23        A   Yes.                                         1:40:38

24        Q   What about Tommie Hotel?                     1:40:39

25        A   Yes.                                         1:40:40
```

Page 103

| | | | |
|---|---|---|---|
| 1 | Q | What about the Dream 2? | 1:40:42 |
| 2 | A | Yes. | 1:40:43 |
| 3 | Q | What about Citizen? | 1:40:44 |
| 4 | A | Yes. | 1:40:45 |
| 5 | Q | What about the Tao Restaurant? | 1:40:47 |
| 6 | A | Yes. | 1:40:49 |
| 7 | Q | What about the Highlight Room? | 1:40:51 |
| 8 | A | Yes. | 1:40:52 |

9  Q    What about noise?  I just asked you -- you          1:40:55
10  mentioned you have concerns about noise with respect      1:40:57
11  to the Dream Hotel.  Do you have concerns about           1:40:59
12  noise with respect to the Thompson Hotel?                 1:41:02

13  A    I have begun to hear reports from friends           1:41:06
14  who were saying that since the opening of the Tommie      1:41:10
15  and the Thompson, there is increased noise more           1:41:14
16  frequently that is affecting them.  I want to make        1:41:18
17  this clear.  I don't personally hear it because of        1:41:20
18  where I'm situated.  But I know a number of people        1:41:22
19  who have complained that there is more noise and in       1:41:26
20  some cases even louder noise than previously.             1:41:29

21  Q    And do you know if they made those                  1:41:32
22  complaints to just you or to other people as well?        1:41:35

23  A    They have reached out to the LAPD, to              1:41:37
24  Council District 13.  And they may have reached out       1:41:40
25  to others.  I don't know.                                 1:41:41

Page 104

```
 1        Q     Can you give me the names of some of these    1:41:47

 2   residents who have complained about the noise with      1:41:49

 3   respect to the Thompson Hotel?                          1:41:50

 4        A     David Carrera -- well, with respect to the   1:41:54

 5   Thompson -- it's -- I'll tell you at this point it's    1:41:56

 6   difficult.  Again, I don't have -- because I'm not      1:41:58

 7   personally impacted.  I can't say whether it's the      1:42:00

 8   Thompson or the Tommie.  But from what I've heard,      1:42:04

 9   since the opening of those hotels, noise is             1:42:08

10   increased.  There's some uncertainty about             1:42:10

11   specifically which hotel it's coming from.  But         1:42:14

12   David Carrera is one person who believes there's        1:42:17

13   more noise associated with the Tommie.                  1:42:20

14        I have another friend Jeff McDonough who           1:42:24

15   has also complained that noise has increased.  There    1:42:27

16   are other people.  I can't remember all the names       1:42:29

17   offhand because there's people I've seen making         1:42:32

18   complaints on social media that noise has increased.    1:42:36

19        Q     And could you please describe for me your    1:42:43

20   concerns about the Dream 2 Hotel.                       1:42:46

21        A     Yes.  I mean, it would be regarding alcohol  1:42:58

22   density.  Also with regard to noise impacting the       1:43:02

23   community and then also the larger problem with         1:43:07

24   piecemealing and the lack of following proper           1:43:11

25   process and City planning which I believe is a major    1:43:14
```

Page 105

```
 1    factor in degrading the quality of life in the      1:43:19

 2    Hollywood area because City planning is not          1:43:24

 3    following the law in either -- either in -- under    1:43:29

 4    CEQA or in other respects too.  They are not         1:43:33

 5    considering impacts to the Hollywood community as    1:43:35

 6    they approve multiple projects that are impacting    1:43:38

 7    the community in a variety of ways.                  1:43:46

 8        Q    And I know we talked about other people who 1:43:49

 9    shared your concerns with respect to the Thompson    1:43:50

10    and Tommie.  But I just want to ask that same        1:43:53

11    question with respect to Selma.                      1:43:55

12             Are you aware of other people who have      1:43:57

13    similar concerns with respect to the Dream 2 Hotel?  1:44:00

14        A    Who had -- well, the Dream 2 was never      1:44:05

15    built.  But I know of other people who had concerns  1:44:08

16    regarding the Dream 2, yes.                          1:44:11

17        Q    Do you know why -- well, strike that.       1:44:13

18             Do you remember Mr. Talpas asked you some   1:44:16

19    questions about whether or not your petition with    1:44:20

20    respect to Dream 2 was granted or not?               1:44:37

21        A    Yes.                                        1:44:48

22        Q    Do you know if Sunset Landmark's petition   1:44:51

23    with respect to Dream 2 was granted?                 1:44:53

24        MR. TALPAS:  Objection to form.                  1:44:55

25        THE WITNESS:  Yes, I know the resolution of      1:44:59
```

Page 106

```
 1        MS. SCHAUS:  Oh, really.  It shows up for me        1:48:11

 2   like it's something else.  There we go.                  1:48:13

 3        Q    Mr. Maddren, can you see my screen now?        1:48:16

 4        A    Yes.                                           1:48:17

 5        Q    Okay.  So I'll direct you to line 17 here.     1:48:20

 6   You say where it says "Casey Maddren"?                   1:48:21

 7        A    Yes.                                           1:48:23

 8        Q    Okay.  Allegation in paragraph 63 here is      1:48:29

 9   that the Silverstein firm and other Nourmand             1:48:32

10   Enterprise members have conspired with you to file a     1:48:36

11   frivolous CEQA lawsuit.                                  1:48:38

12            Now, I understand, Mr. Maddren, you've          1:48:42

13   discussed that CEQA lawsuit that you filed and that      1:48:45

14   you were pro per.  Is that right, sir?                   1:48:47

15        A    Yes.                                           1:48:48

16        Q    Did you file that lawsuit because anyone       1:48:50

17   else told you to?                                        1:48:53

18        A    No.                                            1:48:54

19        Q    And did you believe in the merit of your       1:48:57

20   CEQA lawsuit at the time that you filed it?              1:49:01

21        A    Absolutely.                                    1:49:01

22        Q    And I understand that ultimately you may       1:49:04

23   not have prevailed.  But did you believe in the          1:49:06

24   merits of the arguments that you were raising in         1:49:08

25   that CEQA lawsuit at all times until the court's         1:49:11
```

Page 110

| | | |
|---|---|---|
| 1 | order? | 1:49:12 |
| 2 | A    Yes. | 1:49:13 |
| 3 | Q    Okay.  Would you disagree with the | 1:49:15 |
| 4 | plaintiff's characterization that you raised | 1:49:17 |
| 5 | frivolous and meritless objections to the Dream 2 | 1:49:20 |
| 6 | project? | 1:49:21 |
| 7 | A    Yes. | 1:49:23 |
| 8 | Q    Okay.  There's also an allegation here, if | 1:49:26 |
| 9 | you see it -- start at the end of line 22. | 1:49:30 |
| 10 | "Plaintiffs are informed and believe | 1:49:31 |
| 11 | that although Maddren has represented to | 1:49:34 |
| 12 | the court in that case that he's | 1:49:35 |
| 13 | representing himself, he has received | 1:49:37 |
| 14 | material support from Nourmand Enterprise, | 1:49:41 |
| 15 | including the Silverstein firm." | 1:49:43 |
| 16 | Do you agree with that statement, sir? | 1:49:46 |
| 17 | A    No. | 1:49:46 |
| 18 | Q    Okay.  And why not? | 1:49:48 |
| 19 | A    It's completely untrue. | 1:49:53 |
| 20 | Q    There's also an allegation at paragraph 64 | 1:50:03 |
| 21 | that you are not subject to certain legal defenses | 1:50:07 |
| 22 | applicable to Sunset Landmark making you a useful | 1:50:11 |
| 23 | pawn to pursue certain meritless legal theories | 1:50:16 |
| 24 | concocted by the Silverstein firm. | 1:50:18 |
| 25 | Have you to your knowledge ever pursued any | 1:50:20 |

Page 111

| | | |
|---|---|---|
| 1 | meritless theories concocted by the Silverstein | 1:50:25 |
| 2 | firm? | 1:50:26 |
| 3 |     A    No. | 1:50:29 |
| 4 |     Q    In filing your CEQA lawsuit in pro per, was | 1:50:34 |
| 5 | your purpose ever to extort money or other | 1:50:37 |
| 6 | concessions from Relevant? | 1:50:39 |
| 7 |     A    No. | 1:50:44 |
| 8 |     Q    Did anyone -- strike that. | 1:50:47 |
| 9 |     Did Dan Wright or Robert Silverstein ever | 1:50:50 |
| 10 | communicate to you that their involvement in any | 1:50:54 |
| 11 | CEQA litigation was to extort money or concessions | 1:50:57 |
| 12 | from Relevant Group? | 1:51:00 |
| 13 |     A    No. | 1:51:10 |
| 14 |     Q    And sir, I know we -- we talked about the | 1:51:21 |
| 15 | letter that was sent -- that you signed for UN4LA. | 1:51:29 |
| 16 | And I believe you have -- you have already testified | 1:51:33 |
| 17 | to this but I just want to make sure I understand | 1:51:36 |
| 18 | correctly. | 1:51:37 |
| 19 |     My understanding from your testimony is | 1:51:40 |
| 20 | that that letter was sent and approved by UN4LA | 1:51:44 |
| 21 | because it agreed with the viewpoints expressed in | 1:51:48 |
| 22 | that letter.  Is that correct? | 1:51:49 |
| 23 |     A    Yes. | 1:51:56 |
| 24 |     Q    So you UN4LA had its own independent | 1:51:59 |
| 25 | reasons to send that letter.  Is that correct? | 1:52:00 |

Page 112

```
 1        A    Yes.                                    1:52:01

 2        Q    Okay.  I don't have any further questions  1:52:09

 3   for you, Mr. Maddren.  Thank you so much for your   1:52:11

 4   time today.                                        1:52:15

 5        MR. TALPAS:  Nothing for me.  I think we can go  1:52:17

 6   off the record.                                    1:52:18

 7        THE VIDEOGRAPHER:  Okay.  Then this concludes  1:52:20

 8   today's deposition of Casey Maddren.  Number of     1:52:23

 9   media used was two and will be retained by Veritext  1:52:26

10   Legal Solutions.  Time is 1:52 P.M.  We are off the  1:52:29

11   record.                                            1:52:30

12        THE REPORTER:  Normal copies for everyone?     1:53:05

13           Ms. Venskus, did you need a copy or no?     1:53:09

14        MS. VENSKUS:  Can you send me the original and  1:53:10

15   I'll forward it to my client.                      1:53:21

16           (Whereupon a discussion was held           1:53:21

17           off the record)                            1:53:21

18           (Whereupon the deposition concluded         1:53:21

19           at 1:53 P.M.)                              1:53:21

20                                                      1:53:21

21                                                      1:53:21

22

23

24

25

                                             Page 113
```

```
1              I, SARI M. KNUDSEN, CSR NO. 13109, in and

2       for the State of California, do hereby certify:

3              I am the deposition officer that

4       stenographically recorded the testimony in the

5       foregoing deposition;

6              Prior to being examined, the deponent was

7       first duly sworn by me;

8              The foregoing transcript is a true record of

9       the testimony given;

10             Before completion of the deposition, review

11      of the transcript was requested.  If requested, any

12      changes made by the deponent (and provided to the

13      reporter) during the period allowed are appended

14      hereto.

15

16             Dated the 4th day of May, 2022.

17

18

19

20

21

22        SARI M. KNUDSEN, CSR NO. 13109

23

24

25
```

Page 114

# EXHIBIT I

```
1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4

5   RELEVANT GROUP, LLC, a Delaware)

6   limited liability company;    )

7   et al.,                       )

8              Plaintiffs,   )

9      VS.                       )  NO. 2:19-CV-05019

10   STEPHAN "SAEED" NOURMAND, an  )      ODW-Ksx

11   individual, et al.,           )

12              Defendants.   )

13   _____)

14

15

16   VIDEOCONFERENCE DEPOSITION OF:

17              DAVID CARRERA

18              TUESDAY, APRIL 5, 2022

19              10:13 A.M.

20

21

22   REPORTED BY:

23              Sari M. Knudsen

24              CSR No. 13109

25
```

Page 1

```
 1            Videoconference deposition of DAVID

 2            CARRERA, taken on behalf of the DEFENDANTS,

 3            at Los Angeles, California, on TUESDAY,

 4            APRIL 5, 2022, before Sari M. Knudsen,

 5            CSR No. 13109.

 6

 7    APPEARANCES OF COUNSEL:

 8

 9    FOR THE PLAINTIFFS:

10            WILSON SONSINI GOODRICH & ROSATI

11            BY:  CHARLES TALPAS, ESQ.

12            AND CLAY KAUFMAN, ESQ.

13            650 Page Mill Road

14            Palo Alto, California  94304

15            650-493-9300

16            (VIA VIDEOCONFERENCE)

17

18    FOR THE DEFENDANTS:

19            NORTON ROSE FULBRIGHT US LLP

20            BY:  NEIL THAKOR, ESQ.

21            555 South Flower Street, 41st Floor

22            Los Angeles, California  90071

23            213-892-9200

24            (VIA VIDEOCONFERENCE)

25
```

Page  2

```
 1    APPEARANCES OF COUNSEL:   (CONTINUED)

 2

 3    FOR THE DEFENDANT NOURMAND & ASSOCIATES:

 4              THE MALONEY FIRM, APC

 5              BY:  ELIZABETH SCHAUS, ESQ.

 6              2381 Rosecrans Avenue, Suite 405

 7              El Segundo, California  90245

 8              310-540-1505

 9              (VIA VIDEOCONFERENCE)

10

11    ALSO PRESENT:

12              CASSIA LEET, VIDEOGRAPHER

13

14

15

16

17

18

19

20

21

22

23

24

25

                                            Page  3
```

```
 1                    I N D E X

 2   WITNESS              EXAMINATION          PAGE

 3   DAVID CARRERA          (BY MR. TALPAS)       8

 4                         (BY MS. SCHAUS)       88

 5                         (BY MR. THAKOR)      119

 6

 7

 8

 9

10                    E X H I B I T S

11   EXHIBIT NO.   PAGEDESCRIPTION

12   Exhibit 1       12      Image from Google maps

13   Exhibit 2       49      Letter dated 3-12-15 to

14                           Oliver Netburn from David

15                           Carrera

16   Exhibit 3       69      Letter from Acentech dated

17                           3-19-15 to David Carrera

18   Exhibit 4       70      e-mail dated 3-17-15

19                           (SUNSET00002180)

20   Exhibit 5       78      e-mail dated 4-21-15

21                           (SUNSET00002628)

22   Exhibit 6       84      e-mail dated 2-9-19 from

23                           Mr. Carrera to Xavier

24                           Becerra and Ms. Lacey

25   Exhibit 7      136      Appeal Application
```

Page 4

```
 1                    E X H I B I T S

 2   EXHIBIT NO.    PAGEDESCRIPTION

 3   Exhibit 8      136      Letter dated 1-14-16 to

 4                           Department of City Planning

 5                           from David Carrera

 6   Exhibit 9      136      Letter dated 3-12-15 to

 7                           Oliver Netburn from David

 8                           Carrera

 9   Exhibit 10     136      Appeal Application

10   Exhibit 11     136      Map of Hollywood Hotels

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Veritext Legal Solutions
866 299-5127

```
 1                LOS ANGELES, CALIFORNIA

 2           TUESDAY, APRIL 5, 2022; 10:13 A.M.

 3

 4

 5

 6      THE VIDEOGRAPHER:  Good morning.  We are going      10:13:27

 7   on the record at 10:13 A.M. on April 5, 2022.         10:13:33

 8   Please note that the microphones may pick up          10:13:36

 9   background noise, conversations and interference if   10:13:39

10   unmuted.  Remember to unmute to speak.  Audio and     10:13:43

11   video recording will continue to take place unless    10:13:45

12   all parties agree to go off the record.               10:13:49

13          This is media unit one of the video            10:13:52

14   recorded deposition of David Carrera, taken by        10:13:56

15   counsel for plaintiff in matter of "Relevant Group    10:13:59

16   LLC, et al., versus Saeed Stephan Nourmand, et al.,"  10:14:08

17   filed in the United States District Court, Central    10:14:11

18   District of California.                               10:14:12

19          Case No. 2:19-CV-05019-ODW-KSx.                10:14:23

20          This deposition is being conducted using       10:14:25

21   Veritext Virtual Technology and all participants are  10:14:29

22   attending remotely.                                   10:14:32

23          My name is Cassia Leet from Veritext Legal     10:14:35

24   Solutions and I'm the videographer.  The court        10:14:39

25   reporter is Sari Knudsen of Veritext Legal            10:14:41
```

                                                          Page 6

| | | |
|---|---|---|
| 1 | Solutions. | 10:14:42 |
| 2 | I'm not related to any party in this action | 10:14:46 |
| 3 | nor am I financially interested in the outcome. | 10:14:49 |
| 4 | Would counsel please state their | 10:14:51 |
| 5 | appearances and affiliations for the record. | 10:14:54 |
| 6 | MR. TALPAS:  Good morning.  Charles Talpas with | 10:14:56 |
| 7 | Wilson Sonsini Goodrich & Rosati on behalf of | 10:14:59 |
| 8 | plaintiffs, and with me today is Clay Kaufman. | 10:15:07 |
| 9 | MR. THAKOR:  Good morning.  This is Neil | 10:15:09 |
| 10 | Thakor with the law firm Norton Rose Fulbright on | 10:15:12 |
| 11 | behalf of the Defendants Sunset Landmark Investment | 10:15:15 |
| 12 | LLC and Saeed Nourmand. | 10:15:17 |
| 13 | MS. SCHAUS:  This is Elizabeth Schaus of the | 10:15:19 |
| 14 | Maloney Firm on behalf of Nourmand & Associates. | 10:15:21 |
| 15 | THE VIDEOGRAPHER:  Thank you. | 10:15:22 |
| 16 | Would the court reporter please swear in | 10:15:24 |
| 17 | the witness. | 10:15:34 |
| 18 | | 10:15:34 |
| 19 | DAVID CARRERA, | 10:15:45 |
| 20 | having been first duly sworn, was | 10:15:45 |
| 21 | examined and testified as follows: | 10:15:45 |
| 22 | /// | 10:15:45 |
| 23 | /// | 10:15:45 |
| 24 | /// | 10:15:45 |
| 25 | /// | 10:15:45 |

Page 7

```
 1                    EXAMINATION                  10:15:45

 2                                                 10:15:45

 3   BY MR. TALPAS:                                10:15:45

 4       Q    Good morning, Mr. Carrera.  Just a little   10:15:54

 5   bit of formality if you will bear with me.    10:15:58

 6            First, could you state your name and spell  10:16:02

 7   it for the record.                            10:16:02

 8       A    Yeah.  My name is David Carrera.  You need  10:16:05

 9   the first name spelled as well?               10:16:07

10       Q    Just the last name please.           10:16:10

11       A    C-A-R-R-E-R-A.                       10:16:12

12       Q    And have you ever had your deposition taken  10:16:17

13   before?                                       10:16:19

14       A    Yeah.  One time.                     10:16:22

15       Q    And when was that?                   10:16:25

16       A    Geez.  I don't know.  Five -- five to ten  10:16:28

17   years ago maybe.                              10:16:29

18       Q    Not virtual I'm guessing?            10:16:33

19       A    No.  No.                             10:16:33

20       Q    And what was that case about?        10:16:39

21       A    My neighbor didn't return a security  10:16:42

22   deposit and he got sued by the tenant.        10:16:47

23       Q    Okay.  So you were just a witness there,  10:16:49

24   not a party?                                  10:16:50

25       A    Correct.                             10:16:53
```

Page 8

```
 1   of us.                                            10:19:32

 2        A    Okay.  Just wasn't sure.                10:19:34

 3        Q    Yeah.  I don't handle that, but I'll make   10:19:36

 4   sure somebody on my team is following up on that.  10:19:40

 5             All right.  So are we ready to begin?   10:19:48

 6        A    Yes.                                     10:19:49

 7        Q    And you are a resident of Hollywood.  Is   10:19:56

 8   that right?                                        10:19:56

 9        A    Yes.                                     10:19:59

10        Q    And you live at 6530 Leland Way?         10:20:10

11        A    Yes.                                     10:20:31

12             (Whereupon a discussion was held        10:20:31

13             off the record)                          10:20:31

14   BY MR. TALPAS:                                     10:20:42

15        Q    And Mr. Carrera, how long have you lived at   10:21:30

16   6530 Leland Way?                                   10:21:35

17        A    I don't know.  15 years maybe.          10:21:36

18        Q    It's fair to say you are active with    10:21:43

19   respect to liquor and noise issues?                10:21:45

20        A    Yes.                                     10:21:49

21        Q    And I understand that you like to sleep   10:21:52

22   with your windows open.  Is that right?            10:21:55

23        A    If it's hot.  I don't have a choice.     10:22:00

24        Q    Okay.  And I'm not looking for an exact   10:22:05

25   number, but could you estimate how many public     10:22:08
```

Page 11

| | | |
|---|---|---|
| 1 | hearings you've attended to speak about liquor and | 10:22:11 |
| 2 | noise issues? | 10:22:12 |
| 3 | A    I don't have any idea but I probably would | 10:22:16 |
| 4 | say 20, 30.  Maybe -- I mean, public hearing | 10:22:21 |
| 5 | downtown in City of Los Angeles or does that include | 10:22:25 |
| 6 | Neighborhood Council? | 10:22:25 |
| 7 | Q    Or Neighborhood Councils, yes. | 10:22:30 |
| 8 | A    Oh.  Well, I was on the Neighborhood | 10:22:31 |
| 9 | Council for years.  So I don't know.  100.  You | 10:22:34 |
| 10 | know, 50. | 10:22:37 |
| 11 | Q    Okay. | 10:22:37 |
| 12 | And Clay, if we could pull up tab zero | 10:22:42 |
| 13 | again, which we'll mark as Exhibit 1. | 10:22:47 |
| 14 | I want to talk about some properties in | 10:22:50 |
| 15 | Hollywood today, and just to make sure we are all on | 10:22:55 |
| 16 | the same page, I want to show you Exhibit 1, which | 10:22:59 |
| 17 | is an image from Google maps that I've marked up | 10:23:03 |
| 18 | with four colored boxes.  Let me know when that | 10:23:08 |
| 19 | appears for you. | 10:23:14 |
| 20 | A    I don't see it.  But... | 10:23:16 |
| 21 | (Whereupon Plaintiff's Exhibit 1 | 10:23:16 |
| 22 | was marked for identification). | 10:23:30 |
| 23 | THE WITNESS:  Okay.  I see it. | 10:23:33 |
| 24 | MR. TALPAS:  And Clay, if could you maybe zoom | 10:23:35 |
| 25 | in just a bit over the -- yeah. | 10:23:42 |

Page 12

| | | |
|---|---|---|
| 1 | supposed to have a roof -- a nightclub on the | 10:45:13 |
| 2 | rooftop.  They are not supposed to have dancing. | 10:45:15 |
| 3 | They are not supposed to have lines of people, you | 10:45:20 |
| 4 | know.  I mean, I can go over all the specifics if | 10:45:23 |
| 5 | you want to hear them.  But... | 10:45:27 |
| 6 | Q    All of those would generally fall under the | 10:45:31 |
| 7 | rubric of not building or following the plan that | 10:45:36 |
| 8 | you said was approved by the City? | 10:45:39 |
| 9 | A    Yeah.  Absolutely.  I mean, every time that | 10:45:41 |
| 10 | they make noise on the rooftop, it's an illegal | 10:45:44 |
| 11 | activity. | 10:45:48 |
| 12 | Q    And I just want to make sure that the | 10:45:50 |
| 13 | record is clear.  Are you saying that that's a | 10:45:53 |
| 14 | crime? | 10:45:56 |
| 15 | A    I guess you would have to define "crime" | 10:45:58 |
| 16 | for me.  I mean, is any crime -- anything against | 10:46:01 |
| 17 | the law? | 10:46:05 |
| 18 | Q    Well, that's what I'm trying to understand. | 10:46:08 |
| 19 | Because when you say "illegal," you know, I just | 10:46:10 |
| 20 | want to be clear.  Are you saying that they could be | 10:46:12 |
| 21 | arrested for what they are doing? | 10:46:13 |
| 22 | A    I -- I don't know the law in that sense.  I | 10:46:18 |
| 23 | mean, it's probably a misdemeanor.  I mean, | 10:46:21 |
| 24 | considering the state of Los Angeles right now of | 10:46:24 |
| 25 | what we are living with, I -- I -- you know, you | 10:46:29 |

Page 26

```
 1      Q    Okay.  And then after, you know, CPC, maybe     11:00:06

 2   PLUM, City Council, did you have any discussions        11:00:09

 3   with Mr. Nourmand after that process?                   11:00:14

 4      A    Like I said, after that process, it would       11:00:17

 5   have gone to litigation, and if I remember              11:00:19

 6   correctly, he litigated it.  So I -- like I said,       11:00:28

 7   I'm pretty sure I -- I probably was pushing him to      11:00:34

 8   litigate it like to, you know -- again, because I       11:00:39

 9   see him as having the necessary -- you know, the        11:00:45

10   money to do so where I would have loved to have         11:00:48

11   litigated it but couldn't.                              11:01:12

12      Q    And so Mr. Nourmand did litigate the            11:01:27

13   Thompson.  Did you follow that litigation?              11:01:33

14      A    No.  Once in a while, his lawyer would          11:01:36

15   reach out to me for some -- some clarification or       11:01:39

16   like maybe a letter or -- something like that.  But     11:01:46

17   I never -- I never followed it.  I don't know too       11:01:48

18   much -- I've heard hearsay of what happened.  But       11:01:53

19   not -- I don't have any inside knowledge, no.  And I    11:02:01

20   was pissed -- I was pissed he never paid me because     11:02:07

21   I think on this project, I hired a noise consultant.    11:02:12

22   I hired a --                                            11:02:25

23      Q    Was that Acentech, A-C-E-N-T-E-C-H?             11:02:30

24      A    It's been a long time.  It might be.  I         11:02:34

25   don't remember.                                         11:02:34
```

Page 35

| | | |
|---|---|---|
| 1 | which, Clay, is going to be tab 2.  This is a letter | 11:36:11 |
| 2 | dated March 12, 2015 with bates stamps NNA000382. | 11:36:33 |
| 3 | (Whereupon Plaintiff's Exhibit 2 | 11:36:33 |
| 4 | Was marked for identification) | 11:36:33 |
| 5 | THE WITNESS:  Okay.  Looks like a letter of | 11:36:44 |
| 6 | mine. | 11:36:45 |
| 7 | BY MR. TALPAS: | 11:36:45 |
| 8 | Q    Right.  Is this the letter you submitted to | 11:36:51 |
| 9 | Oliver Netburn and City Planning concerning the | 11:36:54 |
| 10 | Thompson? | 11:36:56 |
| 11 | A    I would assume so.  Yeah.  That looks like | 11:36:58 |
| 12 | my letter. | 11:37:02 |
| 13 | Q    And I don't know if you can scroll or we'll | 11:37:04 |
| 14 | have to do that for you.  But do you see on the | 11:37:09 |
| 15 | first page in the third paragraph, you write | 11:37:14 |
| 16 | "As I hope you are aware, there's an | 11:37:17 |
| 17 | over-concentration of alcohol sales in | 11:37:18 |
| 18 | Hollywood.  Community is vastly impacted | 11:37:21 |
| 19 | from negative effects of so much alcohol | 11:37:24 |
| 20 | and the people and behavior that it | 11:37:26 |
| 21 | attracts.  Noise generated from these uses | 11:37:28 |
| 22 | is one of the greatest impacts that people | 11:37:31 |
| 23 | who live here deal with." | 11:37:33 |
| 24 | Do you see that? | 11:37:36 |
| 25 | A    Yeah. | 11:37:39 |

Page 49

| | | |
|---|---|---|
| 1 | MR. THAKOR:  Charles? | 11:37:41 |
| 2 | MR. TALPAS:  Yeah. | 11:37:42 |
| 3 | MR. THAKOR:  Real quick, is this on Exhibit | 11:37:44 |
| 4 | Share?  Is there a way I can download a copy of this | 11:37:47 |
| 5 | so I can scroll freely? | 11:37:51 |
| 6 | MR. TALPAS:  Clay, did you put it in Exhibit | 11:37:53 |
| 7 | Share? | 11:37:53 |
| 8 | MR. KAUFMAN:  Yeah.  It should be in Exhibit | 11:37:58 |
| 9 | Share.  I put it in Exhibit Share before. | 11:38:03 |
| 10 | MR. THAKOR:  Perfect.  Thank you. | 11:38:06 |
| 11 | BY MR. TALPAS: | 11:38:06 |
| 12 | Q    So coming back to that passage we just | 11:38:09 |
| 13 | read, it sounds like at the time you wrote this | 11:38:11 |
| 14 | letter, your neighborhood was already negatively | 11:38:13 |
| 15 | impacted by alcohol and choice issues.  Right? | 11:38:18 |
| 16 | A    Absolutely, yeah. | 11:38:21 |
| 17 | Q    And that problem had existed for a while? | 11:38:27 |
| 18 | A    Alcohol and noise, sure.  Yeah. | 11:38:29 |
| 19 | Q    And just a bit lower in the next sentence, | 11:38:37 |
| 20 | do you see where you wrote, | 11:38:39 |
| 21 | "In general, noise impacts are very | 11:38:41 |
| 22 | erratic, arbitrary and unpredictable"? | 11:38:45 |
| 23 | A    Yep. | 11:38:47 |
| 24 | Q    Please explain what you meant by that. | 11:38:50 |
| 25 | A    Well, if there is a establishment that | 11:38:58 |

Page 50

| | | |
|---|---|---|
| 1 | makes noise consistently, so every night at | 11:39:04 |
| 2 | midnight, it goes up to this many decibels.  I might | 11:39:08 |
| 3 | not hear it every night.  Because some of it depends | 11:39:11 |
| 4 | on weather or other things.  I don't know what. | 11:39:15 |
| 5 | But -- so it's -- it's hard to often pin down or to | 11:39:24 |
| 6 | locate these problems. | 11:39:28 |
| 7 |     Q     If you could -- | 11:39:39 |
| 8 |     A     I'm sorry.  Further, that would add to | 11:39:43 |
| 9 | the -- that sort of quality adds to a resident's | 11:39:50 |
| 10 | frustration or, you know -- it's -- it's -- you | 11:39:56 |
| 11 | know, it's like -- it just keeps you more on edge as | 11:40:02 |
| 12 | a resident. | 11:40:03 |
| 13 |     Q     And another problem, as you note, was that | 11:40:11 |
| 14 | there's virtually no enforcement for these issues. | 11:40:13 |
| 15 | Right? | 11:40:15 |
| 16 |     A     Enforcement is very difficult. | 11:40:21 |
| 17 |     Q     So if we could turn to the second page.  Do | 11:40:29 |
| 18 | you see under the "Planning and Zoning" section, you | 11:40:34 |
| 19 | acknowledge that the applicant correctly points out | 11:40:37 |
| 20 | that the Hollywood Community Plan designates the | 11:40:39 |
| 21 | site as regional center commercial and that the | 11:40:42 |
| 22 | general plan's framework elements says | 11:40:44 |
| 23 |         "Regional centers are planned to be a | 11:40:47 |
| 24 |       focal point of regional commerce, identity | 11:40:51 |
| 25 |       and activity." | 11:40:51 |

Page 51

```
 1    an L.A. agency, if you know?                    11:44:04

 2       A    No.   That's state.   Alcohol Beverage  11:44:06

 3    Control.                                        11:44:09

 4       Q    Was that part of the problem in your    11:44:11

 5    opinion that it was a state agency?             11:44:16

 6       A    I don't think of it in that way.   I just  11:44:19

 7    think of -- you know, we have plenty of local   11:44:25

 8    agencies where people don't care.   But you know, you  11:44:27

 9    go to West Hollywood, small city, this type of crap  11:44:32

10    doesn't happen.   You know, I can go on a website in  11:44:35

11    West Hollywood and there's a phone number for noise  11:44:38

12    enforcement.   And they are going to show up.   And  11:44:41

13    they are going to do something.   Whenever I had  11:44:43

14    encountered or worked with operators that were  11:44:47

15    coming from West Hollywood, they were always -- you  11:44:51

16    know, they had to mind their P's and Q's in West  11:44:55

17    Hollywood.   Here, it's all good.   Whatever happens  11:44:58

18    happens, you know.   Nobody cares.              11:45:00

19       Q    What was the name of the nightclub that  11:45:06

20    sold cupcakes?                                  11:45:09

21       A    Les Deux.                               11:45:10

22       MR. TALPAS:   And then if we could go to the  11:45:21

23    middle of page 6, Clay, which ends in bates 387.  11:45:31

24            Yeah.   Right there.                    11:45:34

25       Q    Do you see where you wrote,             11:45:38
```

Page 54

| | | |
|---|---|---|
| 1 | bates stamped SUNSET00004346. | 12:08:55 |
| 2 | (Whereupon Defendants' Exhibit 3 | 12:08:55 |
| 3 | was marked for identification) | 12:09:08 |
| 4 | THE WITNESS:  Okay. | 12:09:19 |
| 5 | BY MR. TALPAS: | 12:09:19 |
| 6 | Q    So Mr. Carrera, do you recognize this | 12:09:23 |
| 7 | document? | 12:09:25 |
| 8 | A    It's looking familiar.  Wait.  Oh, so this | 12:09:29 |
| 9 | is from the noise people to me? | 12:09:35 |
| 10 | Q    Correct. | 12:09:37 |
| 11 | A    Okay. | 12:09:37 |
| 12 | Q    And we can scroll down if you would like. | 12:09:43 |
| 13 | But earlier, you mentioned a sound study that you | 12:09:47 |
| 14 | submitted and that Mr. Nourmand used. | 12:09:52 |
| 15 | And my question is is this that study you | 12:09:55 |
| 16 | were referring to? | 12:09:56 |
| 17 | A    I'm going to say yes. | 12:10:01 |
| 18 | Q    And any reason to think you didn't receive | 12:10:03 |
| 19 | this on March 19, 2015? | 12:10:05 |
| 20 | A    I have no idea.  Was this an e-mail or is | 12:10:12 |
| 21 | this -- this is a letter in the file? | 12:10:14 |
| 22 | MS. SCHAUS:  Perhaps letting the witness review | 12:10:15 |
| 23 | the document in its entirety would help.  He's just | 12:10:19 |
| 24 | seeing a portion of the first page. | 12:10:41 |
| 25 | THE WITNESS:  Okay. | 12:11:50 |

Page 69

```
 1    BY MR. TALPAS:                                12:11:50

 2       Q    And if we could scroll back to the top,   12:11:53

 3    Clay.                                         12:11:54

 4            You know, my question was just simply you   12:11:57

 5    received this on March 19, 2015?              12:11:59

 6       A    I don't know.  I'm assuming.  It has that   12:12:04

 7    date.  I would assume.                        12:12:05

 8       Q    And Acentech, they are an acoustic analysis   12:12:12

 9    firm.  Is that right?                         12:12:14

10       A    I think so.  Yeah.                     12:12:15

11       Q    And I assume you paid Acentech for this   12:12:21

12    report because you yourself are not a technical   12:12:23

13    expert on acoustic analysis.  Right?          12:12:28

14       A    Correct.  Yeah.  I paid them.          12:12:31

15       Q    And does $1,600 sound about right?     12:12:36

16       A    Yeah.  Like I said, it was somewhere   12:12:38

17    between 1,000 and 2,000.  Yeah.               12:12:47

18       Q    And you hired them to contradict the MND   12:12:49

19    noise analysis.  Right?                       12:12:51

20       A    Correct.                              12:12:57

21       MR. TALPAS:  Let's go to tab 4 really quick,   12:13:02

22    Clay.                                         12:13:03

23       Q    this is a March 17, 2017 -- 2015 e-mail   12:13:17

24    bates stamped SUNSET00002180.                 12:13:29

25       THE REPORTER:  This is a Exhibit 4?        12:13:39
```

Page 70

| | | |
|---|---|---|
| 1 | what you are entitled to by right, you open yourself | 1:06:28 |
| 2 | up to litigation.  You open yourself up to these | 1:06:32 |
| 3 | arguments.  And then you're going to -- again, it's | 1:06:35 |
| 4 | the same old bullshit that these guys always do. | 1:06:38 |
| 5 | That they just -- you know, they are dishonest | 1:06:41 |
| 6 | people.  So now they are intimidating people that | 1:06:44 |
| 7 | are opposing them.  Like am I going to get a RICO | 1:06:49 |
| 8 | act against me if I, you know, object to their | 1:06:53 |
| 9 | liquor license?  I mean -- so yeah.  That's my | 1:06:59 |
| 10 | viewpoint of it, but I don't know too much about it. | 1:07:03 |
| 11 | Q    And I don't want to put words in your | 1:07:05 |
| 12 | mouth.  But it sounds like what you are saying is | 1:07:07 |
| 13 | you view this lawsuit as an intimidation tactic.  Is | 1:07:11 |
| 14 | that right? | 1:07:11 |
| 15 | MR. TALPAS:  Objection to form. | 1:07:13 |
| 16 | THE WITNESS:  I'm afraid it could be, yes. | 1:07:15 |
| 17 | BY MS. SCHAUS: | 1:07:15 |
| 18 | Q    And you are worried that you and other | 1:07:18 |
| 19 | individuals who challenge construction projects like | 1:07:21 |
| 20 | Relevant's will get hit with a RICO lawsuit.  Is | 1:07:26 |
| 21 | that right? | 1:07:26 |
| 22 | MR. TALPAS:  Objection to form. | 1:07:27 |
| 23 | THE WITNESS:  I'm scared, yeah.  I mean, they -- | 1:07:31 |
| 24 | what is to prevent -- I mean, Mr. -- again, I assume | 1:07:36 |
| 25 | Mr. Nourmand has the means to deal with this.  Like | 1:07:42 |

Page 93

```
 1    somebody like me doesn't.                        1:07:44

 2          So you know, it's very disconcerting from  1:07:48

 3    my perspective.  Like why -- why not just -- why 1:07:54

 4    don't we just argue over alcohol and noise and   1:07:58

 5    building height and floor area issue.  Why is there 1:08:02

 6    a suit against some racketeering thing?  I don't -- 1:08:08

 7    that doesn't make sense to me.  And if -- and if  1:08:12

 8    Relevant was so righteous and believed in the truth 1:08:17

 9    and that they were truthful, then why are they    1:08:19

10    paying these settlements anyway?  Why don't they  1:08:23

11    fight the case on its merits of the FAR and the   1:08:27

12    noise and these other things.  Because you know, we 1:08:31

13    have a judicial system and it will go before a judge 1:08:35

14    and a judge will decide, this way, that way.      1:08:38

15    Whatever it is.  Or a jury.  However it works.  But 1:08:43

16    I don't -- I just -- this is weird to me.         1:08:48

17    BY MS. SCHAUS:                                    1:08:48

18       Q    So some of the allegations in this lawsuit 1:08:51

19    by the plaintiffs, Relevant and others, are that the 1:08:56

20    challenges that Sunset Landmark to the Thompson,  1:09:00

21    Tommie and Selma Hotels were objectively baseless. 1:09:06

22          My understanding is that you, sir,          1:09:10

23    individually challenged the Thompson Hotel project. 1:09:16

24    Is that right, sir?                               1:09:19

25       MR. TALPAS:  Objection to form.               1:09:19
```

Page 94

```
 1    BY MS. SCHAUS:                                  1:11:00

 2        Q    And you as a nearby Hollywood resident felt   1:11:03

 3    that there were meritorious grounds to challenge the   1:11:06

 4    Tommie Hotel project.  Is that correct?        1:11:08

 5        A    Correct.                              1:11:10

 6        MR. TALPAS:  Objection to form.            1:11:10

 7    BY MS. SCHAUS:                                  1:11:10

 8        Q    And you as a nearby Hollywood resident felt   1:11:13

 9    that were there were meritorious grounds to    1:11:16

10    challenge the Selma Hotel project.  Is that right?   1:11:21

11        MR. TALPAS:  Objection to form.            1:11:23

12        THE WITNESS:  Very much so.                1:11:24

13    BY MS. SCHAUS:                                  1:11:24

14        Q    I believe your testimony previously was   1:11:26

15    that you individually paid $1,600 for a noise study   1:11:29

16    in connection with the Selma Hotel project.  Is that   1:11:35

17    right?                                         1:11:35

18        A    I think it was -- no.  The noise study was   1:11:37

19    for the Wilcox AKA Thompson.                   1:11:46

20        Q    So then did you feel that the noise   1:11:48

21    concerns among other things with respect to the   1:11:50

22    Thompson Hotel project were important enough for you   1:11:53

23    to spend $1,600 of your own money to challenge it?   1:11:58

24        A    Yeah.  Absolutely.  I wouldn't -- I   1:12:02

25    wouldn't have -- like I said, there's other issues   1:12:04
```

Page 96

| | | |
|---|---|---|
| 1 | that I could go into that I would like to challenge | 1:12:07 |
| 2 | that I haven't spent the money on.  And I thought | 1:12:11 |
| 3 | that -- I think that we really had a good case with | 1:12:15 |
| 4 | the noise. | 1:12:18 |
| 5 | Q    Now, I know you said that your primary | 1:12:20 |
| 6 | concern, based on where you live and in proximity to | 1:12:24 |
| 7 | these hotels, was noise.  Is that right? | 1:12:27 |
| 8 | A    Yes. | 1:12:28 |
| 9 | Q    Okay.  Were there any other concerns that | 1:12:31 |
| 10 | you had about the Thompson Hotel project from a CEQA | 1:12:35 |
| 11 | standpoint other than noise? | 1:12:40 |
| 12 | MR. TALPAS:  Objection to form. | 1:12:40 |
| 13 | THE WITNESS:  Well, my -- my letter probably | 1:12:44 |
| 14 | reflects the other concerns.  My -- | 1:12:52 |
| 15 | BY MS. SCHAUS: | 1:12:52 |
| 16 | Q    When you say your letter, are you able to | 1:12:54 |
| 17 | tell me which letter you are talking about? | 1:12:55 |
| 18 | A    No.  I mean, there's probably -- I don't | 1:12:59 |
| 19 | know -- five letters.  Maybe more.  I -- you know, | 1:13:03 |
| 20 | especially with the Thompson because it gets so | 1:13:07 |
| 21 | confusing.  They came back to ask for the CUB later. | 1:13:13 |
| 22 | CUB wasn't filed originally.  And I can't keep track | 1:13:18 |
| 23 | of all the details.  And -- | 1:13:21 |
| 24 | Q    Sure. | 1:13:21 |
| 25 | A    Again, because of Relevant's behavior, the | 1:13:23 |

Page 97

| | | |
|---|---|---|
| 1 | A    Yeah.  And you are missing more. | 1:14:26 |
| 2 | Q    Okay.  And what I -- what I see when I look | 1:14:29 |
| 3 | at this map, sir, is that your home is even further | 1:14:33 |
| 4 | away from these hotels than the Landmark.  Is that | 1:14:36 |
| 5 | your understanding? | 1:14:38 |
| 6 | A    Yeah. | 1:14:38 |
| 7 | Q    Okay.  And you all the way over here on | 1:14:41 |
| 8 | Leland Way -- you have noise-related concerns that | 1:14:44 |
| 9 | arise from these Relevant hotels.  Is that right? | 1:14:48 |
| 10 | MR. TALPAS:  Objection to form. | 1:14:51 |
| 11 | THE WITNESS:  I'm sorry.  Say that again. | 1:14:53 |
| 12 | BY MS. SCHAUS: | 1:14:53 |
| 13 | Q    Sure. | 1:14:54 |
| 14 | Your residence all the way over here on | 1:14:57 |
| 15 | Leland Way -- you can hear what you believe to be | 1:15:01 |
| 16 | noise from these Relevant Hotels that are in blue, | 1:15:06 |
| 17 | yellow and green boxes.  Is that right? | 1:15:09 |
| 18 | A    Yeah. | 1:15:09 |
| 19 | MR. TALPAS:  Objection to form. | 1:15:10 |
| 20 | THE WITNESS:  It's not that I believe it.  When | 1:15:12 |
| 21 | I -- if I make a real complaint about the noise, I | 1:15:18 |
| 22 | will get up and I will go and trace it.  I -- | 1:15:22 |
| 23 | BY MS. SCHAUS: | 1:15:22 |
| 24 | Q    What do you mean by that, you will go and | 1:15:24 |
| 25 | trace it? | 1:15:25 |

Page 99

| | | |
|---|---|---|
| 1 | A    I go and find where it's coming from.  I | 1:15:28 |
| 2 | don't just, you know, send an e-mail the next day or | 1:15:31 |
| 3 | make a phone call and say oh, my -- it's this | 1:15:35 |
| 4 | person.  I -- and sometimes it's, you know, 12:30 at | 1:15:40 |
| 5 | night, 1:00 at night.  I get up and get out of bed. | 1:15:44 |
| 6 | Many occasions I've gotten up, gotten out of bed, | 1:15:47 |
| 7 | walked and got in the car until I find the source of | 1:15:50 |
| 8 | the noise. | 1:15:50 |
| 9 | Q    And the occasions you've done this tracing | 1:15:52 |
| 10 | to the Relevant hotels as the source of the noise, | 1:15:55 |
| 11 | about how many times can you estimate you've done | 1:15:57 |
| 12 | that?  As big or a small of a range as you can give | 1:16:02 |
| 13 | me. | 1:16:02 |
| 14 | MR. TALPAS:  Objection to form. | 1:16:03 |
| 15 | THE WITNESS:  Oh, geez.  I don't know.  Ten. | 1:16:08 |
| 16 | BY MS. SCHAUS: | 1:16:08 |
| 17 | Q    Okay.  Can you tell me how many times you | 1:16:12 |
| 18 | traced and to which hotels? | 1:16:18 |
| 19 | A    The Dream is the No. 1 offender.  Thompson | 1:16:26 |
| 20 | I've never done.  Tommie I've done one time and I | 1:16:32 |
| 21 | can go into the details if you want because it's | 1:16:34 |
| 22 | more egregious than just they are making noise. | 1:16:38 |
| 23 | Q    Yes, please do. | 1:16:40 |
| 24 | A    So yeah.  One night -- I mean blasting | 1:16:43 |
| 25 | music and it started -- I don't remember the time it | 1:16:48 |

Page 100

```
 1   started.  But it was earlier.  Because generally the    1:16:50
 2   way these guys operate is they start -- they don't      1:16:54
 3   start making noise until about 11:30.  And then         1:16:58
 4   slowly, slowly, slowly it gets louder and louder the    1:17:01
 5   later it gets.  I'm sorry.  I'm -- my wife is           1:17:09
 6   needing to talk to me.                                  1:17:11
 7        Q    Okay.  We can take a short break.  We'll go   1:17:13
 8   off the record so you can have that conversation.       1:17:16
 9        A    Can I mute it and have one second?            1:17:19
10        Q    Yeah.  Go ahead.  And we can stay on the      1:17:21
11   record.                                                 1:17:42
12        A    Okay.  I'm back but my wife is going to       1:17:50
13   kill me soon.                                           1:17:51
14        Q    Okay.  I don't want her to kill you.  So      1:17:53
15   I'll go as quickly as I can.                            1:17:54
16        A    So the night that I had the problem with      1:17:57
17   the Tommie, I waited until 11:00 for -- to write my     1:18:02
18   e-mail, to call the police.  And then at about 11:30    1:18:07
19   I called the Tommie and I called the -- you know,       1:18:12
20   and said "Hey, you know, how long is this going to      1:18:16
21   go?"                                                    1:18:17
22             And they -- I think they said 2:00.          1:18:20
23             I said "What time does your rooftop close?"  1:18:23
24             And they said "2:00."                         1:18:24
25             I said "Really?  That's funny because your   1:18:28
```

Page 101

```
 1    CUB says midnight."                                1:18:30

 2           And on their website, it even said 2:00     1:18:34

 3    every night.  Or the nights that they were open.   1:18:38

 4    They weren't open every night.  It was like Thursday  1:18:41

 5    through Sunday or whatever.                         1:18:42

 6           But back to the Dream, again, and back to   1:18:46

 7    Charles earlier, he had some questions about in my  1:18:51

 8    letter about noise being mercurial and there's an   1:18:57

 9    individual that I'm in touch with mostly through    1:18:59

10    e-mail who records Dream's rooftop.  He's in the    1:19:03

11    music business.  He's a sound guy.  He doesn't care 1:19:06

12    and it's egregious for him and he's got like 40 or  1:19:11

13    50 -- his phone, and he's over a half mile away.    1:19:18

14           And you can see these parties.  And it's     1:19:20

15    often past 2:00 as well.                            1:19:23

16    Q     What is the name of this individual?          1:19:26

17    A     His name is Jeff McDonahue.                   1:19:30

18    Q     And you said he's a sound guy.  Is he also    1:19:34

19    a resident of Hollywood, nearby?                    1:19:35

20    A     Yeah.  He's a resident.  He's north.  And     1:19:38

21    I've had other people who live in Whitley Heights   1:19:43

22    tell me like Dream all the time.  Like you hear     1:19:46

23    conversations.  You hear, you know, drunk people.   1:19:52

24    Aside from the nights that they have bands, dancing, 1:19:56

25    all these things that they are not allowed to do,   1:19:59
```

Page 102

```
 1    according to their governing CUB.              1:20:01

 2       Q    Okay.  And have you had any concerns with  1:20:06

 3    these boxed-in hotels here in blue, yellow and  1:20:10

 4    green, with respect to traffic?                1:20:14

 5       A    Well, Dream.  I mean, Dream is a nightmare  1:20:16

 6    for traffic.  And now that they have opened their  1:20:18

 7    new one, not the Thompson, but right north where  1:20:25

 8    Citizens News is which is -- they have opened some  1:20:28

 9    event space and a restaurant and people block  1:20:31

10    traffic there all the time.                    1:20:33

11       Q    Can you show me which streets or I can give  1:20:36

12    you control here, remote control.              1:20:39

13       A    No.  It's right north of the Thompson.  1:20:41

14    It's at the corner -- it's below Mama Shelter --  1:20:45

15    between Mama Shelter which is on the corner of Selma  1:20:49

16    and Wilcox and the Thompson Hotel.  They opened a  1:20:52

17    new event space there.                         1:20:55

18       Q    So then you are saying there's a lot of  1:20:57

19    traffic along Selma?                           1:21:00

20       A    Selma forget about it.  Like the day that  1:21:02

21    Dream opened and now currently, you can't -- you  1:21:05

22    can't go down Selma most days or nights.  But at  1:21:09

23    nighttime, forget about it.                    1:21:11

24       Q    And do you as an individual citizen have  1:21:14

25    concerns about traffic along Wilcox?           1:21:17
```

Page 103

1              I, SARI M. KNUDSEN, CSR NO. 13109, in and

2     for the State of California, do hereby certify:

3              I am the deposition officer that

4     stenographically recorded the testimony in the

5     foregoing deposition;

6              Prior to being examined, the deponent was

7     first duly sworn by me;

8              The foregoing transcript is a true record of

9     the testimony given;

10              Before completion of the deposition, review

11     of the transcript was not requested.  If requested,

12     any changes made by the deponent (and provided to

13     the reporter) during the period allowed are appended

14     hereto.

15

16     Dated the 25th day of April, 2022.

17

18

19

20              SARI M. KNUDSEN, CSR NO. 13109

21

22

23

24

25

                                              Page 139

# EXHIBIT J

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE CENTRAL DISTRICT OF CALIFORNIA
 3     _____
                                    )
 4     RELEVANT GROUP, LLC, a       )
       Delaware limited liability   )
 5     company; 1541 WILCOX HOTEL   )
       LLC, a Delaware limited      )
 6     liability company; 6516      )
       TOMMIE HOTEL LLC, a          )
 7     Delaware limited liability   )
       company; and 6421 SELMA      )
 8     WILCOX HOTEL LLC, a          )
       California limited           )
 9     liability company,           )
                                    )
10              Plaintiffs,         )
                                    ) Case No.
11     vs.                          ) 2:19-cv-05019-ODW (KSx)
                                    )
12     STEPHAN "SAEED" NOURMAND,    )
       an individual; THE SUNSET    )
13     LANDMARK INVESTMENT LLC, a   )
       California limited           )
14     liability company; and      )
       DOES 1-10,                   )
15                                  )
                Defendants.         )
16     _____)
17
18       VIDEOTAPED DEPOSITION OF ARTHUR J. FRIEDMAN
19              San Francisco, California
20              Monday, March 21, 2022
21                     Volume I
22     Reported by:  CATHERINE A. RYAN, RMR, CRR, CSR No. 8239
23
24
25
                                              Page 1
```

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE CENTRAL DISTRICT OF CALIFORNIA
 3     _____
                                  )
 4     RELEVANT GROUP, LLC, a      )
       Delaware limited liability )
 5     company; 1541 WILCOX HOTEL  )
       LLC, a Delaware limited     )
 6     liability company; 6516     )
       TOMMIE HOTEL LLC, a         )
 7     Delaware limited liability  )
       company; and 6421 SELMA     )
 8     WILCOX HOTEL LLC, a         )
       California limited          )
 9     liability company,          )
                                   )
10              Plaintiffs,        )
                                   ) Case No.
11     vs.                         ) 2:19-cv-05019-ODW (KSx)
                                   )
12     STEPHAN "SAEED" NOURMAND,   )
       an individual; THE SUNSET   )
13     LANDMARK INVESTMENT LLC, a  )
       California limited          )
14     liability company; and     )
       DOES 1-10,                  )
15                                 )
                Defendants.        )
16     _____)
17
18            Videotaped deposition of ARTHUR J.
19     FRIEDMAN, Volume I, taken on behalf of Defendants,
20     at NORTON ROSE FULBRIGHT US LLP, 555 California
21     Street, Suite 3300, San Francisco, California,
22     beginning at 10:05 a.m. and ending at 3:19 p.m., on
23     Monday, March 21, 2022, before CATHERINE A. RYAN,
24     Certified Shorthand Reporter No. 8239.
25
```

Page 2

```
 1    APPEARANCES:
 2
 3    For Plaintiffs:
 4         WILSON, SONSINI, GOODRICH & ROSATI, P.C.
           BY:  DALE R. BISH
 5              SUSAN K. LEADER (appearing remotely)
           Attorneys at Law
 6         650 Page Mill Road
           Palo Alto, California  94304-1050
 7         (650) 804-4018
           (650) 493-6811 Fax
 8         dbish@wsgr.com
           sleader@wsgr.com
 9
10    For the Defendants STEPHAN "SAEED" NOURMAND and THE
      SUNSET LANDMARK INVESTMENT LLC:
11
           NORTON ROSE FULBRIGHT US LLP
12         BY:  CHRISTOPHER PELHAM
                NEIL PARESH THAKOR
13         Attorneys at Law
           555 South Flower Street, 41st Floor
14         Los Angeles, California  90071
           (213) 892-9221 (Mr. Pelham)
15         (213) 892-9359 (Mr. Thakor)
           christopher.pelham@nortonrosefulbright.com
16         neil.thakor@nortonrosefulbright.com
17
      For Defendant NOURMAND ASSOCIATES:
18
           THE MALONEY FIRM APC
19         BY:  ELIZABETH T. SCHAUS (appearing remotely)
                RON E. TORRES (appearing remotely)
20         Attorneys at Law
           2381 Rosecrans Avenue, Suite 405
21         El Segundo, California  90245
           (310) 347-4692 (Ms. Schaus)
22         (310) 347-4691 (Mr. Torres)
           eschaus@maloneyfirm.com
23         rtorres@maloneyfirm.com
24    (Mr. Torres was not present at the commencement of
      the deposition proceedings.)
25
```

Page 3

1     ALSO PRESENT:

2     NEIL GEORGE, Videographer, Veritext

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

```
 1                          INDEX

 2    WITNESS                                EXAMINATION

 3    ARTHUR J. FRIEDMAN

      Volume I

 4                        BY MR. PELHAM                 8

 5                        BY MS. SCHAUS                162

 6

 7

 8                         EXHIBITS

 9    NUMBER              DESCRIPTION               PAGES

10    Exhibit 1   Curriculum vitae of Arthur J. Friedman    7

11                on the letterhead of Sheppard Mullin;

12                4 pages

13

14    Exhibit 2   "THIRD AMENDED COMPLAINT FOR:"; 45        7

15                pages

16

17    Exhibit 3   "SECOND AMENDED VERIFIED PETITION FOR     7

18                WRIT OF MANDAMUS AND COMPLAINT FOR

19                DECLARATORY RELIEF"; 62 pages

20

21    Exhibit 4   "Initial Study/Proposed Mitigated         7

22                Negative Declaration, Hollywood

23                Community Plan Area, 1541 Wilcox

24                Hotel"; Bates REL033692 - REL033918

25    //

                                               Page 5
```

```
 1                    EXHIBITS (Continued)

 2     NUMBER                DESCRIPTION                 PAGES

 3     Exhibit 5   "#2 TENTATIVE RULING, 10 a.m., Friday,   67

 4                 August 25, 2017, SUNSET LANDMARK

 5                 INVESTMENTS, LLC v. CITY OF LOS

 6                 ANGELES, CITY OF LOS ANGELES CITY

 7                 COUNCIL and CRA/LA, (Real Party in

 8                 Interest, 1541 WILCOX HOTEL, LLC) Case

 9                 No. BS 160807"; 5 pages

10

11     Exhibit 6   "LASC - Case Access, THE SUNSET        82

12                 LANDMARK INVESTMENT LLC VS CITY OF LOS

13                 ANGELES ET"; 38 pages

14

15     Exhibit 7   "NOTICE OF RULING AT 12/19/18 TRIAL";   95

16                 27 pages

17

18     Exhibit 8   "PETITIONS FOR WRIT OF MANDATE"; 65    116

19                 pages

20

21     Exhibit 9   "The Use and Misuse of Motions to Stay 145

22                 the Project in CEQA Litigation" in the

23                 California Real Estate Journal, May

24                 29, 2007; 1 page

25

                                                   Page 6
```

```
 1          San Francisco, California; Monday, March 21, 2022

 2                     10:05 a.m.

 3

 4          (Exhibit 1, Exhibit 2, Exhibit 3, and

 5          Exhibit 4 were marked for identification      09:52:43

 6          by the court reporter.)

 7          THE VIDEOGRAPHER:  We are going on the

 8     record at 10:05 a.m. on March 21, 2022.

 9          This is Media Unit No. 1 of the

10     video-recorded deposition of Arthur Friedman, taken    10:05:13

11     by counsel for Defendant in the matter of Relevant

12     Group, LLC, et al., versus Stephan Saeed Nourmand,

13     filed in the United States District Court of the

14     Central District of California.  Case number is

15     2:19-cv-05019-ODW (KSx).                               10:05:32

16          This deposition is being held at

17     555 California Street, San Francisco, California.

18     My name is Neil George, from the firm of Veritext,

19     and I'm the videographer.  The court reporter is

20     Catherine Ryan, from the firm Veritext.                10:05:53

21          I am not related to any party in this

22     action, nor am I financially interested in the

23     outcome.

24          Counsel will now state their appearance

25     and affiliations for the record.  If there are any     10:06:01
```

Page 7

```
 1    objections to proceeding, please state them at the        10:06:04

 2    time of your appearance, beginning with the noticing

 3    attorney.

 4             MR. PELHAM:  Okay.  So noticing counsel is

 5    Christopher Pelham and Neil Thakor with the law firm       10:06:12

 6    of Norton Rose Fulbright LLC.

 7             MR. BISH:  Good morning.  Dale Bish,

 8    Wilson Sonsini, for Plaintiffs.

 9             MS. SCHAUS:  Good morning.  Elizabeth

10    Schaus of the Maloney firm, appearing via Zoom, on        10:06:28

11    behalf of Defendant Nourmand Associates.

12             THE VIDEOGRAPHER:  Will the court reporter

13    please swear in the witness.

14

15                     ARTHUR FRIEDMAN,                          10:06:37

16    having been administered an oath, was examined and

17    testified as follows:

18

19                      EXAMINATION

20    BY MR. PELHAM:                                             10:06:51

21       Q    Okay.  So good morning, Mr. Friedman.

22       A    Good morning.

23       Q    Mr. Friedman, since you are a litigator

24    and you've participated in depositions before, I'll

25    assume that these admonitions are very old hat for        10:06:58
```

Page 8

```
 1    timing we're talking about?                          11:26:37

 2              MR. PELHAM:  I think we had asked both

 3    time frames, so at the time it was filed and today,

 4    and I think he's answered both.

 5              MR. BISH:  Is that how you understood the    11:26:44

 6    question?

 7              THE WITNESS:  I think so, yeah.

 8    BY MR. PELHAM:

 9         Q    So, Mr. Friedman, when you say that when

10    you reviewed -- so at the time that you reviewed       11:26:49

11    this complaint, you say that your determination was

12    that it lacked legal merit.

13              Did you believe that there was a risk that

14    if the case proceeded to trial, the client may

15    sustain an adverse ruling from a court?               11:27:02

16         A    So I don't think I can answer that without

17    divulging privileged communications.

18         Q    We would still like to ask.

19              Is it your intention, then, to invoke the

20    privilege as to that answer?                          11:27:16

21              MR. BISH:  So we will certainly invoke

22    attorney-client privilege.  And, again, I -- you

23    know, Mr. Friedman obviously owns his own work

24    product and -- but we are asserting the privilege

25    and will -- will not waive that.                      11:27:29
```

Page 57

```
 1              MR. PELHAM:  Okay.                    11:27:30

 2              THE WITNESS:  I would add that that type

 3      of analysis would also be, in my opinion, work

 4      product.

 5      BY MR. PELHAM:                                11:27:40

 6         Q    Understanding what your and your counsel's

 7      position might be to this question, I'll ask:  Did

 8      you have conversations with your client wherein you

 9      discussed the possibility that they would -- that

10      Relevant would receive an adverse ruling if this    11:27:55

11      particular complaint were to proceed to trial before

12      the Superior Court?

13              MR. BISH:  So I'm going to object to the

14      form.  It's vague.  And to the extent it's seeking

15      attorney-client privilege, I'm going to object.  I   11:28:07

16      think -- yeah, I'm just -- I would instruct you not

17      to answer on the privilege --

18              MR. PELHAM:  Okay.

19              MR. BISH:  -- as phrased.

20              THE WITNESS:  And I would add work product   11:28:19

21      that I can assert to that as well, as phrased.

22              MR. PELHAM:  Understood.

23         Q    So this -- once this complaint was filed,

24      Mr. Friedman, do you recall there being any pretrial

25      motion practice?                              11:28:33
```

                                                     Page 58

1        I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby

3    certify:

4        That the foregoing proceedings were taken

5    before me at the time and place herein set forth;

6    that any witnesses in the foregoing proceedings,

7    prior to testifying, were administered an oath; that

8    a record of the proceedings was made by me using

9    machine shorthand which was thereafter transcribed

10   under my direction; that the foregoing is a true

11   record of the testimony given.

12       Further, that if the foregoing pertains to the

13   original transcript of a deposition in a Federal

14   Case, before completion of the proceedings, review

15   of the transcript [X] was [ ] was not requested.

16        I further certify that I am neither

17   financially interested in the action nor a relative

18   or employee of any attorney or any party to this

19   action.

20       IN WITNESS WHEREOF, I have this date

21   subscribed my name.

22   Dated:  04/06/2022

23

24

25       Catherine A. Ryan, RMR, CRR, CSR No. 8239

Page 166

# EXHIBIT K

1
**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

2
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com

3
GRANVILLE C. KAUFMAN, State Bar No. 330603
gkaufman@wsgr.com

4
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027

5
Telephone:  (323) 210-2900
Facsimile:    (866) 974.7329

6

7
**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390

8
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505

9
ctalpas@wsgr.com
650 Page Mill Road

10
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

11
Facsimile:    (650) 565-5100

12
Attorneys for Plaintiffs Relevant Group,
LLC, 1541 Wilcox Hotel LLC, 6516

13
Tommie Hotel LLC and 6421 Selma Wilcox
Hotel LLC

14

15
**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

16

17
RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX

18
HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a

19
Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a

20
California limited liability company,

21
                Plaintiffs,

22
        v.

23
STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK

24
INVESTMENT LLC, a California limited liability company; NOURMAND &

25
ASSOCIATES, a California corporation; and DOES 1-10,

26
                Defendants.

) Case No.: 2:19-cv-05019-ODW
) (KSx)
)
)
) **PLAINTIFF RELEVANT GROUP,**
) **LLC'S RESPONSES TO**
) **DEFENDANT SUNSET**
) **LANDMARK INVESTMENT**
) **LLC'S SECOND SET OF**
) **INTERROGATORIES**
)
)
)
)
)
)
)
)
)
)
)
)
)
)

27

28

**PROPOUNDING PARTY:      DEFENDANT THE SUNSET LANDMARK INVESTMENT LLC**

**RESPONDING PARTY:      PLAINTIFF RELEVANT GROUP, LLC**

**SET NUMBER:          TWO**

    **PLEASE TAKE NOTICE** that pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Relevant Group, LLC ("Relevant" or "Plaintiff"), by and through its undersigned counsel, hereby responds and objects to Defendant The Sunset Landmark Investment LLC's ("Sunset") Second Set of Interrogatories to Plaintiff (the "Interrogatories") as follows:

## <u>RESERVATION OF RIGHTS</u>

    1.    Plaintiff provides these responses and objections without waiving or intending to waive, and, on the contrary, preserving and intending to preserve:

        a.    the right to object on any ground to the use of these responses and objections or the subject matter thereof in any proceeding in this or any other action;

        b.    the right to object on any ground to a request for further responses to the Interrogatories or any other discovery request involving or relating to the subject matter of the Interrogatories responded to herein; and

        c.    the right at any time to supplement, amend, correct, add to, or clarify any of the responses and objections provided herein, as Plaintiff has not completed its investigation relating to this action, has not completed discovery, and has not completed preparation for trial.

    2.    Plaintiff's responses and objections to these Interrogatories are given without prejudice to its right to supplement and/or amend its objections and responses to these Interrogatories, to present relevant evidence at trial, and to correct inadvertent errors, mistakes, or omissions.

3.      Plaintiff objects to the Interrogatories to the extent that they contain express or implied assumptions of fact or law with respect to matters at issue in this case.  In responding to the Interrogatories, Plaintiff does not admit, concede, agree to the accuracy of any definitions of terms or descriptions of any facts, events, pleadings, or documents contained therein.  Plaintiff specifically does not waive its objections to any definition as vague, ambiguous, or overbroad and reserves the right to define terms differently or more specifically from the way they are defined in Interrogatories.  Plaintiff also does not admit, concede, or agree that any instructions contained in the Interrogatories are binding or permissible under the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the Central District of California ("Local Rules"), or any other applicable law or rules.

4.      In each and every instance in which Plaintiff asserts an objection to an, such objection shall be construed to preserve all of Plaintiff's rights to make similar objections in any future supplemental response to the Interrogatories. Moreover, a failure to object herein shall not constitute a waiver of any objections that Plaintiff may make in future supplemental responses.

5.      Inadvertent production or disclosure of information or documents otherwise protected from discovery under the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection from disclosure, shall not constitute a waiver of such privilege, immunity, or protection, either generally or specifically, with respect to such document or information or any other document or information, or with respect to the subject matter thereof, and Plaintiff reserves the right to request the return of any such documents or information and all copies thereof. Plaintiff reserves the right to object to the use of any such documents or information at any time during this action or in any subsequent proceeding.

6.      Plaintiff's responses and objections to the Interrogatories are based upon information currently available to Plaintiff and are made subject to the Specific

Objections below.  Plaintiff reserves the right to alter, amend, supplement, or revise any responses or objections as further information is discovered.

7.    In addition to the specific objections here, Plaintiff objects to each and every Interrogatory to the extent they seek information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Further, Plaintiff objects to the extent any request infringes on any privacy rights or is unduly burdensome, unreasonable, or overbroad.

<u>**SPECIFIC OBJECTIONS TO DEFINITIONS**</u>

The following Specific Objections to Definitions apply to each and every Interrogatory that includes any of the following defined terms and shall have the same force and effect as if fully set forth in Plaintiff's responses to each Interrogatory.

1.    Plaintiff objects to the Definition of "You" and "Your" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case as the terms attempt to extend the scope of these requests to individuals and entities other than Plaintiff.  Further, the definition potentially implicates the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

2.    Plaintiff objects to the Definition of "Plaintiffs" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case as the terms attempt to extend the scope of these requests to individuals and entities other than Plaintiff.  Further, the definition potentially implicates the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

3.    Plaintiff objects to the Definition of "Sunset" as overly broad, unduly burdensome and not proportional to the needs of the case.

4.    Plaintiff objects to the Definition of "Defendants" as overly broad, unduly burdensome and not proportional to the needs of the case.

5.      Plaintiff objects to the INSTRUCTIONS to the extent that they attempt to impose burdens on Plaintiff that are more onerous or broader than those established by the Federal Rules of Civil Procedure and this Court's Local Rules. Plaintiff shall not do anything more than that which is required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

## RESPONSES & OBJECTIONS TO SPECIFIC INTERROGATORIES

## INTERROGATORY NO. 18

Describe all of the ways in which YOU are a "competitor" of SUNSET as referenced in paragraphs 1, 4, 35, 41, and 71 of YOUR COMPLAINT.

## RESPONSE TO INTERROGATORY NO. 18

Relevant objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in seeking "all of the ways" in which Relevant is a "competitor" of Sunset.  Subject to and without waiving the foregoing objections, Relevant responds as follows:

Sunset owns a property consisting of five parcels in the Hollywood area of Los Angeles, i.e., 6525 Sunset Boulevard, 1520 Schrader Boulevard, 1522 Schrader Boulevard, 1530 Schrader Boulevard and 1540 Schrader Boulevard (collectively, the "Sunset Property").  Relevant owns a properties, 1541 Wilcox Avenue (the "Thompson Property") and 6516 Selma Avenue (the "Tommie Property"), which are located on the same block as the Sunset Property.  Relevant also owns properties, 6417 Selma Avenue (the "Dream Property") and 6421 Selma Avenue (the "Selma Property"), which are located on the block northeast of the block on which the Sunset Property is located.

Since at least 2015, both Sunset and Relevant have made efforts to pursue large commercial development projects on their respective properties.  Specifically, Sunset has entertained offers to pursue a range of commercial development opportunities for the Sunset Property, including with developers of hotel, office and residential projects.  During the same time period, Relevant has pursued the

development of the Thompson Property, the Tommie Property, the Dream Property and the Selma Property (collectively, the "Relevant Properties"), which include hotel and food and beverage uses.  Sunset and Relevant are competitors with respect to such commercial development opportunities within the specific area of Hollywood where they both own properties suitable for large commercial development projects.

Further, Sunset operates, or contracts with other third parties to operate, entertainment, hospitality, dining and beverage uses on the Sunset Property, including conferences, weddings and similar events.  Such uses include Sunset's leasing of the Hollywood Athletic Club as an event space wherein entertainment, hospitality, dining and beverage services can be offered to patrons.  Sunset also leases a portion of the Sunset Property to nightclub operators, which also offer entertainment, hospitality, dining and beverage services to patrons.  Sunset competes with Relevant the extent that the hotel, food and beverage operators on Relevant Properties also offer entertainment, hospitality, dining and beverage services to patrons within the same geographic market.

Further, the Sunset Property and the Thompson Hotel, Tommie Hotel, Dream Hotel, the proposed Dream II Hotel are located within the Hollywood "Regional Center," which is designated as the focal point of regional commerce, identity and activity.  Sunset competes with Relevant insofar as the Sunset Property and the Relevant Properties are among many attractions, destinations and points-of-interest that vie for attention, recognition and status with the core Hollywood "Regional Center" area.  Sunset viewed Relevant and the development projects on the Relevant Properties as a threat to the attention, recognition and status that the Hollywood Athletic Club enjoyed within its own block, and surrounding blocks, of the Hollywood core area.

**INTERROGATORY NO. 19**

Describe all of the ways in which the SCHRADER PROPERTY is a "competing property", as referenced in paragraph 100 of YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 19**

Relevant objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in seeking "all of the ways the SCHRADER PROPERTY" is a "competing property" of Sunset. Relevant further objects because the Interrogatory seeks information from third parties and information not within its possession, custody, or control. Subject to and without waiving the foregoing objections, Relevant responds as follows:

Since at least 2015, Sunset has made efforts and entertained offers to pursue a range of commercial development opportunities for the Sunset Property, including with developers of hotel, office and residential projects. During the same time period, the Schrader project owners have pursued the development of the Schrader Hotel project nearby. Sunset and Shrader are competitors with respect to such commercial development opportunities within the specific area of Hollywood where they both own properties suitable for large commercial development projects.

Further, Sunset operates, or contracts with other third parties to operate, entertainment, hospitality, dining and beverage uses on the Sunset Property, including conferences, weddings and similar events. Such uses include Sunset's leasing of the Hollywood Athletic Club as an event space wherein entertainment, hospitality, dining and beverage services can be offered to patrons. Sunset also leases a portion of the Sunset Property to nightclub operators, which also offer entertainment, hospitality, dining and beverage services to patrons. Sunset competes with the Schrader project the extent that hotel operators on the Schrader project also would offer entertainment, hospitality, dining and beverage services to patrons within the same geographic market.

Further, the Sunset Property and the Schrader Project are located within the Hollywood "Regional Center," which is designated as the focal point of regional commerce, identity and activity. Sunset competes with the Schrader project insofar as the Sunset Property and the Schrader Hotel are among many attractions,

destinations and points-of-interest that vie for attention, recognition and status with the core Hollywood "Regional Center" area.  Sunset viewed the Schrader project as a threat to the attention, recognition and status that the Hollywood Athletic Club enjoyed within its part of the Hollywood core "Regional Center" area.

**INTERROGATORY NO. 20**

IDENTIFY all "demand[s] for money, property or services" made by SUNSET or NOURMAND in the "Attempted Extortion of Schrader Hotel Owners" as referenced in paragraphs 99 through 103 of YOUR COMPLAINT.

As stated in definition 24(d), the term IDENTIFY shall mean the date, identity of the sender of the demand, recipient(s) of the demand, and a description of the substance of the demand.

**RESPONSE TO INTERROGATORY NO. 20**

Relevant objects to this Interrogatory as undefined, overbroad, and ambiguous as to the meaning of "all demand[s]" relating to the attempted extortion of the Schrader Hotel owners.  Relevant further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control.  Subject to and without waiving the foregoing objections, Tommie responds as follows:

Following Defendants' challenge to the Schrader Hotel project in a July 13, 2018 letter to the City of Los Angeles, Sunset and its agents and representatives (including Saeed Nourmand and Jayesh Patel) met with the ownership group for the Schrader Hotel project in October 2018, in an attempt to extract monetary payments and/or other concessions.  Once Defendants learned that the Schrader Hotel was not financially vulnerable to project delays at the October 2018 meeting, however, Defendants abandoned any further demand efforts.

**INTERROGATORY NO. 21**

Describe all of the ways in which YOU were harmed by the "Attempted Extortion of Schrader Hotel Owners" as referenced in paragraphs 99 through 103 of

YOUR COMPLAINT.

## RESPONSE TO INTERROGATORY NO. 21

Relevant does not contend or allege that it was harmed by the attempted extortion of the Schrader Hotel owners.

## INTERROGATORY NO. 22

State all facts and circumstances RELATING TO YOUR contention "that the Nourmand Enterprise's initiation of a lawsuit regarding the Selma Hotel has exposed Relevant to the risk of lost financing—which would jeopardize the entire development …"

## RESPONSE TO INTERROGATORY NO. 22

Relevant objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in seeking "all facts and circumstances" relating to the contention that the "initiation of a lawsuit regarding the Selma Hotel …exposed Relevant to the risk of lost financing–which would jeopardize the entire development." Relevant objects to the Interrogatory to the extent it calls for attorney work product or attorney client communications.  Relevant further objects to the contention interrogatory propounded prior to the close of fact discovery and reserves its right to supplement its response as additional information becomes known. Subject to and without waiving the foregoing objections, Relevant responds as follows:

The delays attributable to the Nourmand Enterprises' sham environmental challenges—as described in response to Sunset's Interrogatory No. 22 (to Wilcox and Tommie) and Interrogatory No. 17 (to Selma)—prevented the Selma project from proceeding in accordance with its planned construction schedule, budget and financing.  As a result, the Selma project remains incomplete at present.

1    Dated:  March 30, 2022                WILSON SONSINI GOODRICH & ROSATI
                                           Professional Corporation
2

3
                                           By: */s/ Susan K. Leader*
4                                               Susan K. Leader

5                                          Attorneys for Plaintiffs
                                           Relevant Group, LLC, 1541 Wilcox Hotel
6                                          LLC, 6516 Tommie Hotel LLC and 6421
                                           Selma Wilcox Hotel LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
GRANVILLE C. KAUFMAN, State Bar No. 330603
gkaufman@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
Telephone:  (323) 210-2900
Facsimile:   (866) 974.7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Plaintiffs Relevant Group,
LLC, 1541 Wilcox Hotel LLC, 6516
Tommie Hotel LLC and 6421 Selma Wilcox
Hotel LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10,<br><br>Defendants. | ) Case No.: 2:19-cv-05019-ODW<br>) (KSx)<br>)<br>) **PLAINTIFF 1541 WILCOX**<br>) **HOTEL LLC'S RESPONSES TO**<br>) **DEFENDANT SUNSET**<br>) **LANDMARK INVESTMENT**<br>) **LLC'S SECOND SET OF**<br>) **INTERROGATORIES**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PROPOUNDING PARTY:**     **DEFENDANT THE SUNSET LANDMARK INVESTMENT LLC**

**RESPONDING PARTY:**      **PLAINTIFF 1541 WILCOX HOTEL LLC**

**SET NUMBER:**            **TWO**

    **PLEASE TAKE NOTICE** that pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff 1541 Wilcox Hotel LLC ("Wilcox" or "Plaintiff"), by and through its undersigned counsel, hereby responds and objects to Defendant The Sunset Landmark Investment LLC's ("Sunset") Second Set of Interrogatories to Plaintiff (the "Interrogatories") as follows:

## <u>RESERVATION OF RIGHTS</u>

    1.    Plaintiff provides these responses and objections without waiving or intending to waive, and, on the contrary, preserving and intending to preserve:

        a.    the right to object on any ground to the use of these responses and objections or the subject matter thereof in any proceeding in this or any other action;

        b.    the right to object on any ground to a request for further responses to the Interrogatories or any other discovery request involving or relating to the subject matter of the Interrogatories responded to herein; and

        c.    the right at any time to supplement, amend, correct, add to, or clarify any of the responses and objections provided herein, as Plaintiff has not completed its investigation relating to this action, has not completed discovery, and has not completed preparation for trial.

    2.    Plaintiff's responses and objections to these Interrogatories are given without prejudice to its right to supplement and/or amend its objections and responses to these Interrogatories, to present relevant evidence at trial, and to correct inadvertent errors, mistakes, or omissions.

3.     Plaintiff objects to the Interrogatories to the extent that they contain express or implied assumptions of fact or law with respect to matters at issue in this case.  In responding to the Interrogatories, Plaintiff does not admit, concede, agree to the accuracy of any definitions of terms or descriptions of any facts, events, pleadings, or documents contained therein.  Plaintiff specifically does not waive its objections to any definition as vague, ambiguous, or overbroad and reserves the right to define terms differently or more specifically from the way they are defined in Interrogatories.  Plaintiff also does not admit, concede, or agree that any instructions contained in the Interrogatories are binding or permissible under the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the Central District of California ("Local Rules"), or any other applicable law or rules.

4.     In each and every instance in which Plaintiff asserts an objection to an, such objection shall be construed to preserve all of Plaintiff's rights to make similar objections in any future supplemental response to the Interrogatories. Moreover, a failure to object herein shall not constitute a waiver of any objections that Plaintiff may make in future supplemental responses.

5.     Inadvertent production or disclosure of information or documents otherwise protected from discovery under the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection from disclosure, shall not constitute a waiver of such privilege, immunity, or protection, either generally or specifically, with respect to such document or information or any other document or information, or with respect to the subject matter thereof, and Plaintiff reserves the right to request the return of any such documents or information and all copies thereof. Plaintiff reserves the right to object to the use of any such documents or information at any time during this action or in any subsequent proceeding.

6.     Plaintiff's responses and objections to the Interrogatories are based upon information currently available to Plaintiff and are made subject to the Specific

Objections below.  Plaintiff reserves the right to alter, amend, supplement, or revise any responses or objections as further information is discovered.

7.     In addition to the specific objections here, Plaintiff objects to each and every Interrogatory to the extent they seek information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Further, Plaintiff objects to the extent any request infringes on any privacy rights or is unduly burdensome, unreasonable, or overbroad.

## SPECIFIC OBJECTIONS TO DEFINITIONS

The following Specific Objections to Definitions apply to each and every Interrogatory that includes any of the following defined terms and shall have the same force and effect as if fully set forth in Plaintiff's responses to each Interrogatory.

1.     Plaintiff objects to the Definition of "You" and "Your" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case as the terms attempt to extend the scope of these requests to individuals and entities other than Plaintiff.  Further, the definition potentially implicates the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

2.     Plaintiff objects to the Definition of "Plaintiffs" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case as the terms attempt to extend the scope of these requests to individuals and entities other than Plaintiff.  Further, the definition potentially implicates the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

3.     Plaintiff objects to the Definition of "Sunset" as overly broad, unduly burdensome and not proportional to the needs of the case.

4.     Plaintiff objects to the Definition of "Defendants" as overly broad, unduly burdensome and not proportional to the needs of the case.

5.     Plaintiff objects to the INSTRUCTIONS to the extent that they attempt to impose burdens on Plaintiff that are more onerous or broader than those established by the Federal Rules of Civil Procedure and this Court's Local Rules. Plaintiff shall not do anything more than that which is required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

**RESPONSES & OBJECTIONS TO SPECIFIC INTERROGATORIES**

**INTERROGATORY NO. 18**

Describe all of the ways in which YOU are a "competitor" of SUNSET as referenced in paragraphs 1, 4, 35, 41, and 71 of YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 18**

Wilcox objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in seeking "all of the ways" in which Wilcox is a "competitor" of Sunset.   Subject to and without waiving the foregoing objections, Wilcox responds as follows:

Sunset owns a property consisting of five parcels in the Hollywood area of Los Angeles, i.e., 6525 Sunset Boulevard, 1520 Schrader Boulevard, 1522 Schrader Boulevard, 1530 Schrader Boulevard and 1540 Schrader Boulevard (collectively, the "Sunset Property").  Wilcox owns a property, 1541 Wilcox Avenue, which is located on the same block as the Sunset Property.

Since at least 2015, both Sunset and Wilcox have made efforts to pursue large commercial development projects on their respective properties.   Specifically, Sunset has entertained offers to pursue a range of commercial development opportunities for the Sunset Property, including with developers of hotel, office and residential projects.   During the same time period, Wilcox has pursued the development of the Thompson Hotel project at 1541 Wilcox Avenue.  Sunset and Wilcox are competitors with respect to such commercial development opportunities within the specific area of Hollywood where they both own properties suitable for large commercial development projects.

Further, Sunset operates, or contracts with other third parties to operate, entertainment, hospitality, dining and beverage uses on the Sunset Property, including conferences, weddings and similar events. Such uses include Sunset's leasing of the Hollywood Athletic Club as an event space wherein entertainment, hospitality, dining and beverage services can be offered to patrons. Sunset also leases a portion of the Sunset Property to nightclub operators, which also offer entertainment, hospitality, dining and beverage services to patrons. Sunset competes with Wilcox the extent that the hotel operators on Wilcox's property also offer entertainment, hospitality, dining and beverage services to patrons within the same geographic market.

Further, the Sunset Property and the Thompson Hotel are located within the Hollywood "Regional Center," which is designated as the focal point of regional commerce, identity and activity. Sunset competes with Wilcox insofar as the Sunset Property and the Thompson Hotel are among many attractions, destinations and points-of-interest that vie for attention, recognition and status with the core Hollywood "Regional Center" area. Sunset viewed Wilcox and the Thompson Hotel project as a threat to the attention, recognition and status that the Hollywood Athletic Club enjoyed within its own block of the Hollywood core area.

**INTERROGATORY NO. 19**

Describe how the THOMPSON HOTEL PROJECT is a "competing development" to SUNSET, as referenced in paragraphs 4 and 74 of YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 19**

Wilcox objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in seeking a description of "how" the Thompson Hotel project is a "competing development" to Sunset. Subject to and without waiving the foregoing objections, Wilcox responds as follows:

Sunset owns a property consisting of five parcels in the Hollywood area of

-6-

Los Angeles, i.e., 6525 Sunset Boulevard, 1520 Schrader Boulevard, 1522 Schrader Boulevard, 1530 Schrader Boulevard and 1540 Schrader Boulevard (collectively, the "Sunset Property").  Wilcox owns a property, 1541 Wilcox Avenue, which is located on the same block as the Sunset Property.

Since at least 2015, both Sunset and Wilcox have made efforts to pursue large commercial development projects on their respective properties.  Specifically, Sunset has entertained offers to pursue a range of commercial development opportunities for the Sunset Property, including with developers of hotel, office and residential projects.  During the same time period, Wilcox has pursued the development of the Thompson Hotel project at 1541 Wilcox Avenue.  Sunset and Wilcox are competitors with respect to such commercial development opportunities within the specific area of Hollywood where they both own properties suitable for large commercial development projects.

Further, Sunset operates, or contracts with other third parties to operate, entertainment, hospitality, dining and beverage uses on the Sunset Property, including conferences, weddings and similar events.  Such uses include Sunset's leasing of the Hollywood Athletic Club as an event space wherein entertainment, hospitality, dining and beverage services can be offered to patrons.  Sunset also leases a portion of the Sunset Property to nightclub operators, which also offer entertainment, hospitality, dining and beverage services to patrons.  Sunset competes with Wilcox the extent that the hotel operators on Wilcox's property also offer entertainment, hospitality, dining and beverage services to patrons within the same geographic market.

Further, the Sunset Property and the Thompson Hotel are located within the Hollywood "Regional Center," which is designated as the focal point of regional commerce, identity and activity.  Sunset competes with Wilcox insofar as the Sunset Property and the Thompson Hotel are among many attractions, destinations and points-of-interest that vie for attention, recognition and status with the core

Hollywood "Regional Center" area.  Sunset viewed Wilcox and the Thompson Hotel project as a threat to the attention, recognition and status that the Hollywood Athletic Club enjoyed within its own block of the Hollywood core area.

**INTERROGATORY NO. 20**

IDENTIFY all "demand[s] for money, property or services" made by SUNSET relating to the THOMPSON LITIGATION.

As stated in definition 24(d), the term IDENTIFY shall mean the date, identity of the sender of the demand, recipient(s) of the demand, and a description of the substance of the demand.

**RESPONSE TO INTERROGATORY NO. 20**

Wilcox objects to this Interrogatory as undefined, overbroad, and ambiguous as to the meaning of "all demand[s]" and "relating to the THOMPSON LITIGATION."  Subject to and without waiving the foregoing objections, Wilcox responds as follows:

Between March 2015 and January 2018, Sunset demanded millions of dollars in monetary payments, design changes to the Thompson Hotel project, rights to enforce certain restrictions and an agreement not to challenge Sunset's future development activity in order to cease its sham environmental challenges to the Thompson Hotel project, which threatened to delay the project and cause catastrophic damage to Wilcox's business.

Sunset made such demands on numerous instances and through multiple actors, including Saeed Nourmand, Robert Silverstein and Jayesh Patel.  Wilcox's investigation into the precise dates and details of those demands remains ongoing.  Such demands include, but are not limited to, statements made by Sunset and/or Sunset's representatives (including Saeed Nourmand, Robert Silverstein and Jayesh Patel) during meetings, conversations and correspondences between Sunset and Wilcox in or around March 13, 2015, May 5, 2015, June 18, 2015, January 2016 through February 2016, December 2016 through May 2017, June 7, 2017, June 27,

2017, July 13, 2017, August 2017 through January 2018, and March 29, 2018. Additional details regarding the facts and circumstances of such demands are reflected in SUNSET_00002131, SUNSET_00000158, SUNSET_00001118, SUNSET_00003792, SUNSET_00001129, SUNSET_00001028, REL076394, REL084846, REL113170, REL081015, REL113924, REL116981, REL115651, REL001627, REL114405, REL001562, REL115912 and REL001261, as well as paragraphs 9-10, 15, 76-88, 113-114 of the Third Amended Complaint.  Wilcox preserves all rights to include additional details regarding additional instances as they become known.

**INTERROGATORY NO. 21**

Identify the dates, or range of dates, on which the THOMPSON HOTEL PROJECT was "delayed" as a result of the THOMPSON LITIGATION, as referenced in paragraphs 37, 40, 47, 53, 56, 58, 71, 74, 130, 142, 143, and 150 of YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 21**

Wilcox objects to this Interrogatory as undefined, overbroad, ambiguous, unintelligible and unduly burdensome in seeking all specific dates "on which the THOMPSON HOTEL PROJECT was 'delayed.'"  Subject to and without waiving the foregoing objections, Wilcox responds as follows:

The Thompson Hotel project suffered ongoing delays due to Defendants' misconduct, as alleged throughout the Third Amended Complaint, during the period between March 2015 and August 2021.

**INTERROGATORY NO. 22**

For each date identified in Interrogatory 21, describe (a) the nature of the delay and (b) how that delay was caused by the THOMPSON LITIGATION.

**RESPONSE TO INTERROGATORY NO. 22**

Wilcox objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in requesting the "nature" of any delay.  Subject to and without

waiving the foregoing objections, Wilcox responds as follows:

The Thompson Hotel project suffered ongoing delays due to Defendants' misconduct, as alleged throughout the Third Amended Complaint, during the period between March 2015 and August 2021.  The nature of the delays includes:

> (i) delays related to obtaining entitlements during the administrative process due to Defendants' sham environmental challenges, which were raised prior to the filing of the Thompson Litigation in furtherance of standing requirements in connection with Defendants' sham Thompson Litigation;

> (ii) delays related to redesigns of the Thompson Hotel project in an effort to meet demands regarding aesthetic concessions that Defendants sought in exchange for ceasing their unrelated sham environmental challenges, including prior to and during the Thompson Litigation;

> (iii) delays caused by business considerations regarding the desirability of proceeding with the Thompson Hotel project while the Thompson Litigation was pending;

> (iv) delays related to Defendants' procedurally improper and meritless efforts to halt permitting processes with the Los Angeles Department of Building Safety during the pendency of the Thompson Litigation;

> (v) delays related to the need to procure financing as a result of cost increases caused by Defendants' sham environmental challenges, including the Thompson Litigation; and

> (vi) delays related to slower engineering, architectural, permitting and construction activities caused by demands regarding aesthetic concessions that Defendants sought in exchange for ceasing their unrelated sham environmental challenges, including the Thompson Litigation.

Moreover, Defendants intentionally threatened to inflict ongoing delays to the Thompson Hotel project, indefinitely at every step throughout the process, until their demands were met.  That is, Defendants made it clear that—before, during and after the Thompson Litigation—they would continue to assert sham environmental challenges and employ procedural tactics in litigation, which would maintain the threat of future project delays.  This ongoing threat of potential future delays, *per se*, created an untenable situation that Wilcox needed to resolve before it could proceed along a customary development timeline.

**INTERROGATORY NO. 23**

If you denied Sunset Landmark Investment, LLC's Request for Admission No. 1, please state all facts supporting YOUR denial.

**RESPONSE TO INTERROGATORY NO. 23**

Wilcox objects to RFA No. 1 and this Interrogatory on the grounds that both call for a legal conclusion, which Wilcox is not required to admit nor deny and that the RFA is compound.  To the extent that an answer is required to RFA No. 1 and this Interrogatory, and without waiving the foregoing objections, Wilcox responds as follows:

Wilcox denies that the Wilcox Settlement Agreement is enforceable by Sunset because of it is the instrument through which Sunset and the Defendants extorted Wilcox and was procured, *inter alia*, by fraud, duress, extortion and other means which would make its enforcement unjust, unlawful, and/or against public policy.

Dated:  March 30, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Susan K. Leader*
Susan K. Leader

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel LLC, 6516 Tommie Hotel LLC and 6421 Selma Wilcox Hotel LLC

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
GRANVILLE C. KAUFMAN, State Bar No. 330603
gkaufman@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
Telephone:  (323) 210-2900
Facsimile:   (866) 974.7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Plaintiffs Relevant Group,
LLC, 1541 Wilcox Hotel LLC, 6516
Tommie Hotel LLC and 6421 Selma Wilcox
Hotel LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,

Plaintiffs,

v.

STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10,

Defendants.

) Case No.: 2:19-cv-05019-ODW (KSx)
)
)
) **PLAINTIFF 6516 TOMMIE**
) **HOTEL LLC'S RESPONSES TO**
) **DEFENDANT SUNSET**
) **LANDMARK INVESTMENT**
) **LLC'S SECOND SET OF**
) **INTERROGATORIES**
)
)
)
)
)
)
)
)
)
)
)
)

**PROPOUNDING PARTY:**    **DEFENDANT THE SUNSET LANDMARK INVESTMENT LLC**

**RESPONDING PARTY:**    **PLAINTIFF 61516 TOMMIE HOTEL LLC**

**SET NUMBER:**    **TWO**

    **PLEASE TAKE NOTICE** that pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff 6516 Tommie Hotel LLC ("Tommie" or "Plaintiff"), by and through its undersigned counsel, hereby responds and objects to Defendant The Sunset Landmark Investment LLC's ("Sunset") Second Set of Interrogatories to Plaintiff (the "Interrogatories") as follows:

## **RESERVATION OF RIGHTS**

1.    Plaintiff provides these responses and objections without waiving or intending to waive, and, on the contrary, preserving and intending to preserve:

    a.    the right to object on any ground to the use of these responses and objections or the subject matter thereof in any proceeding in this or any other action;

    b.    the right to object on any ground to a request for further responses to the Interrogatories or any other discovery request involving or relating to the subject matter of the Interrogatories responded to herein; and

    c.    the right at any time to supplement, amend, correct, add to, or clarify any of the responses and objections provided herein, as Plaintiff has not completed its investigation relating to this action, has not completed discovery, and has not completed preparation for trial.

2.    Plaintiff's responses and objections to these Interrogatories are given without prejudice to its right to supplement and/or amend its objections and responses to these Interrogatories, to present relevant evidence at trial, and to correct inadvertent errors, mistakes, or omissions.

3.      Plaintiff objects to the Interrogatories to the extent that they contain express or implied assumptions of fact or law with respect to matters at issue in this case.  In responding to the Interrogatories, Plaintiff does not admit, concede, agree to the accuracy of any definitions of terms or descriptions of any facts, events, pleadings, or documents contained therein.  Plaintiff specifically does not waive its objections to any definition as vague, ambiguous, or overbroad and reserves the right to define terms differently or more specifically from the way they are defined in Interrogatories.  Plaintiff also does not admit, concede, or agree that any instructions contained in the Interrogatories are binding or permissible under the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the Central District of California ("Local Rules"), or any other applicable law or rules.

4.      In each and every instance in which Plaintiff asserts an objection to an, such objection shall be construed to preserve all of Plaintiff's rights to make similar objections in any future supplemental response to the Interrogatories. Moreover, a failure to object herein shall not constitute a waiver of any objections that Plaintiff may make in future supplemental responses.

5.      Inadvertent production or disclosure of information or documents otherwise protected from discovery under the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection from disclosure, shall not constitute a waiver of such privilege, immunity, or protection, either generally or specifically, with respect to such document or information or any other document or information, or with respect to the subject matter thereof, and Plaintiff reserves the right to request the return of any such documents or information and all copies thereof. Plaintiff reserves the right to object to the use of any such documents or information at any time during this action or in any subsequent proceeding.

6.      Plaintiff's responses and objections to the Interrogatories are based upon information currently available to Plaintiff and are made subject to the Specific

Objections below.  Plaintiff reserves the right to alter, amend, supplement, or revise any responses or objections as further information is discovered.

7.      In addition to the specific objections here, Plaintiff objects to each and every Interrogatory to the extent they seek information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Further, Plaintiff objects to the extent any request infringes on any privacy rights or is unduly burdensome, unreasonable, or overbroad.

## SPECIFIC OBJECTIONS TO DEFINITIONS

The following Specific Objections to Definitions apply to each and every Interrogatory that includes any of the following defined terms and shall have the same force and effect as if fully set forth in Plaintiff's responses to each Interrogatory.

1.      Plaintiff objects to the Definition of "You" and "Your" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case as the terms attempt to extend the scope of these requests to individuals and entities other than Plaintiff.  Further, the definition potentially implicates the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

2.      Plaintiff objects to the Definition of "Plaintiffs" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case as the terms attempt to extend the scope of these requests to individuals and entities other than Plaintiff.  Further, the definition potentially implicates the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

3.      Plaintiff objects to the Definition of "Sunset" as overly broad, unduly burdensome and not proportional to the needs of the case.

4.      Plaintiff objects to the Definition of "Defendants" as overly broad, unduly burdensome and not proportional to the needs of the case.

5.     Plaintiff objects to the INSTRUCTIONS to the extent that they attempt to impose burdens on Plaintiff that are more onerous or broader than those established by the Federal Rules of Civil Procedure and this Court's Local Rules. Plaintiff shall not do anything more than that which is required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

## RESPONSES & OBJECTIONS TO SPECIFIC INTERROGATORIES

## INTERROGATORY NO. 18

Describe all of the ways in which YOU are a "competitor" of SUNSET as referenced in paragraphs 1, 4, 35, 41, and 71 of YOUR COMPLAINT.

## RESPONSE TO INTERROGATORY NO. 18

Tommie objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in seeking "all of the ways" in which Tommie is a "competitor" of Sunset. Subject to and without waiving the foregoing objections, Tommie responds as follows:

Sunset owns a property consisting of five parcels in the Hollywood area of Los Angeles, i.e., 6525 Sunset Boulevard, 1520 Schrader Boulevard, 1522 Schrader Boulevard, 1530 Schrader Boulevard and 1540 Schrader Boulevard (collectively, the "Sunset Property"). Tommie owns a property, 6516 Selma Avenue, which is located on the same block as the Sunset Property.

Since at least 2015, both Sunset and Tommie (or their affiliated entities) have made efforts to pursue large commercial development projects on their respective properties. Specifically, Sunset has entertained offers to pursue a range of commercial development opportunities for the Sunset Property, including with developers of hotel, office and residential projects. During the same time period, Tommie has pursued the development of the Tommie Hotel project at 6516 Selma Avenue. Sunset and Tommie are competitors with respect to such commercial development opportunities within the specific area of Hollywood where they both own properties suitable for large commercial development projects.

Further, Sunset operates, or contracts with other third parties to operate, entertainment, hospitality, dining and beverage uses on the Sunset Property, including conferences, weddings and similar events.  Such uses include Sunset's leasing of the Hollywood Athletic Club as an event space wherein entertainment, hospitality, dining and beverage services can be offered to patrons.  Sunset also leases a portion of the Sunset Property to nightclub operators, which also offer entertainment, hospitality, dining and beverage services to patrons.  Sunset competes with Tommie the extent that the hotel operators on Tommie's property also offer entertainment, hospitality, dining and beverage services to patrons within the same geographic market.

Further, the Sunset Property and the Tommie Hotel are located within the Hollywood "Regional Center," which is designated as the focal point of regional commerce, identity and activity.  Sunset competes with Tommie insofar as the Sunset Property and the Tommie Hotel are among many attractions, destinations and points-of-interest that vie for attention, recognition and status with the core Hollywood "Regional Center" area.  Sunset viewed Tommie and the Tommie Hotel project as a threat to the attention, recognition and status that the Hollywood Athletic Club enjoyed within its own block of the Hollywood core area.

**INTERROGATORY NO. 19**

Describe how the TOMMIE PROJECT was a "competing project", as referenced in paragraph 95 of YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 19**

Tommie objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in seeking a description of "how" the Tommie Hotel project is a "competing project" to Sunset.  Subject to and without waiving the foregoing objections, Tommie responds as follows:

Sunset owns a property consisting of five parcels in the Hollywood area of Los Angeles, i.e., 6525 Sunset Boulevard, 1520 Schrader Boulevard, 1522 Schrader

Boulevard, 1530 Schrader Boulevard and 1540 Schrader Boulevard (collectively, the "Sunset Property"). Tommie owns a property, 6516 Selma Avenue, which is located on the same block as the Sunset Property.

Since at least 2015, both Sunset and Tommie (or their affiliated entities) have made efforts to pursue large commercial development projects on their respective properties. Specifically, Sunset has entertained offers to pursue a range of commercial development opportunities for the Sunset Property, including with developers of hotel, office and residential projects. During the same time period, Tommie has pursued the development of the Tommie Hotel project at 6516 Selma Avenue. Sunset and Tommie are competitors with respect to such commercial development opportunities within the specific area of Hollywood where they both own properties suitable for large commercial development projects.

Further, Sunset operates, or contracts with other third parties to operate, entertainment, hospitality, dining and beverage uses on the Sunset Property, including conferences, weddings and similar events. Such uses include Sunset's leasing of the Hollywood Athletic Club as an event space wherein entertainment, hospitality, dining and beverage services can be offered to patrons. Sunset also leases a portion of the Sunset Property to nightclub operators, which also offer entertainment, hospitality, dining and beverage services to patrons. Sunset competes with Tommie the extent that the hotel operators on Tommie's property also offer entertainment, hospitality, dining and beverage services to patrons within the same geographic market.

Further, the Sunset Property and the Tommie Hotel are located within the Hollywood "Regional Center," which is designated as the focal point of regional commerce, identity and activity. Sunset competes with Tommie insofar as the Sunset Property and the Tommie Hotel are among many attractions, destinations and points-of-interest that vie for attention, recognition and status with the core Hollywood "Regional Center" area. Sunset viewed Tommie and the Tommie Hotel

project as a threat to the attention, recognition and status that the Hollywood Athletic Club enjoyed within its own block of the Hollywood core area.

**INTERROGATORY NO. 20**

IDENTIFY all "demand[s] for money, property or services" made by SUNSET relating to the TOMMIE LITIGATION.

As stated in definition 24(d), the term IDENTIFY shall mean the date, identity of the sender of the demand, recipient(s) of the demand, and a description of the substance of the demand.

**RESPONSE TO INTERROGATORY NO. 20**

Tommie objects to this Interrogatory as undefined, overbroad, and ambiguous as to the meaning of "all demand[s]" and "relating to the TOMMIE LITIGATION." Subject to and without waiving the foregoing objections, Tommie responds as follows:

Between March 2015 and January 2018, Sunset demanded millions of dollars in monetary payments, design changes to the Tommie Hotel project and other development projects by entities affiliated with Tommie, rights to enforce certain restrictions and an agreement not to challenge Sunset's future development activity in order to cease its sham environmental challenges to the Tommie Hotel project, which threatened to delay the project and cause catastrophic damage to Tommie's business.

Sunset made such demands on numerous instances and through multiple actors, including Saeed Nourmand, Robert Silverstein and Jayesh Patel. Tommie's investigation into the precise dates and details of those demands remains ongoing. Such demands include, but are not limited to, statements made by Sunset and/or its representatives (including Saeed Nourmand, Robert Silverstein and Jayesh Patel) during meetings, conversations and correspondences between Sunset and Tommie (or affiliated entities) in or around March 13, 2015, May 5, 2015, June 18, 2015, January 2016 through February 2016, December 2016 through May 2017, June 7,

2017, June 27, 2017, July 13, 2017, August 2017 through January 2018, and March 29, 2018.  Additional details regarding the facts and circumstances of such demands are reflected in SUNSET_00002131, SUNSET_00000158, SUNSET_00001118, SUNSET_00003792, SUNSET_00001129, SUNSET_00001028, REL076394, REL084846, REL113170, REL081015, REL113924, REL116981, REL115651, REL001627, REL114405, REL001562, REL115912 and REL001261, as well as paragraphs 9-10, 15, 76-88, 113-114 of the Third Amended Complaint.  Tommie preserves all rights to include additional details regarding additional instances as they become known.

**INTERROGATORY NO. 21**

Identify the dates, or range of dates, on which the TOMMIE PROJECT was "delayed" as a result of the TOMMIE LITIGATION, as referenced in paragraphs 37, 40, 47, 53, 56, 58, 130, 142, 143, and 150 of YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 21**

Tommie objects to this Interrogatory as undefined, overbroad, ambiguous, unintelligible and unduly burdensome in seeking all specific dates "on which the TOMMIE PROJECT was 'delayed.'"  Subject to and without waiving the foregoing objections, Tommie responds as follows:

The Tommie Hotel project suffered ongoing delays due to Defendants' misconduct, as alleged throughout the Third Amended Complaint, during the period between March 2015 and December 2021.

**INTERROGATORY NO. 22**

For each date or dates identified in Interrogatory 21, describe (a) the nature of the delay and (b) how that delay was caused by the TOMMIE LITIGATION.

**RESPONSE TO INTERROGATORY NO. 22**

Tommie objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in requesting the "nature" of any delay.  Subject to and without waiving the foregoing objections, Tommie responds as follows:

The Tommie Hotel project suffered ongoing delays due to Defendants' misconduct, as alleged throughout the Third Amended Complaint, during the period between March 2015 and December 2021.  The nature of the delays includes:

> (i) delays related to obtaining entitlements during the administrative process due to Defendants' sham environmental challenges, which were raised prior to the filing of the Tommie Litigation in furtherance of standing requirements in connection with Defendants' sham Tommie Litigation;

> (ii) delays related to redesigns of the Tommie Hotel project in an effort to meet demands regarding aesthetic concessions that Defendants sought in exchange for ceasing their unrelated sham environmental challenges, including prior to and during the Tommie Litigation;

> (iii) delays caused by business considerations regarding the desirability of proceeding with the Tommie Hotel project while the Tommie Litigation was pending;

> (iii) delays related to the need to procure financing as a result of cost increases caused by Defendants' sham environmental challenges, including the Tommie Litigation; and

> (iv) delays related to slower engineering, architectural, permitting and construction activities caused by demands regarding aesthetic concessions that Defendants sought in exchange for ceasing their unrelated sham environmental challenges, including the Tommie Litigation.

Moreover, Defendants intentionally threatened to inflict ongoing delays to the Tommie Hotel project, indefinitely at every step throughout the process, until their demands were met.  That is, Defendants made it clear that—before, during and after the Tommie Litigation—they would continue to assert sham environmental challenges and employ procedural tactics in litigation, which would maintain the threat of future project delays.  This ongoing threat of potential future delays, *per se*, created an untenable situation that Tommie needed to resolve before it could proceed along a customary development timeline.

## INTERROGATORY NO. 23

If you denied Sunset Landmark Investment, LLC's Request for Admission No. 1, please state all facts supporting YOUR denial.

-10-

## RESPONSE TO INTERROGATORY NO. 23

Tommie objects to RFA No. 1 and this Interrogatory on the grounds that both call for a legal conclusion, which Tommie is not required to admit nor deny and that the RFA is compound.  To the extent that an answer is required to RFA No. 1 and this Interrogatory, and without waiving the foregoing objections, Tommie responds as follows:

Tommie denies that the Tommie Settlement Agreement is enforceable by Sunset because of it is the instrument through which Sunset and the Defendants extorted Tommie and was procured, *inter alia*, by fraud, duress, extortion and other means which would make its enforcement unjust, unlawful, and/or against public policy.


Dated:  March 30, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ Susan K. Leader*
Susan K. Leader

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel LLC, 6516 Tommie Hotel LLC and 6421 Selma Wilcox Hotel LLC

1  **WILSON SONSINI GOODRICH & ROSATI**
   **Professional Corporation**
2  SUSAN K. LEADER, State Bar No. 216743
   sleader@wsgr.com
3  GRANVILLE C. KAUFMAN, State Bar No. 330603
   gkaufman@wsgr.com
4  633 West Fifth Avenue, Suite 1550
   Los Angeles, CA 90071-2027
5  Telephone:  (323) 210-2900
   Facsimile:   (866) 974.7329
6
7  **WILSON SONSINI GOODRICH & ROSATI**
   **Professional Corporation**
8  DALE R. BISH, State Bar No. 235390
   dbish@wsgr.com
8  CHARLES A. TALPAS, State Bar No. 308505
   ctalpas@wsgr.com
9  650 Page Mill Road
   Palo Alto, CA 94304-1050
10 Telephone: (650) 493-9300
   Facsimile:   (650) 565-5100
11
12 Attorneys for Plaintiffs Relevant Group,
   LLC, 1541 Wilcox Hotel LLC, 6516
13 Tommie Hotel LLC and 6421 Selma Wilcox
   Hotel LLC
14
                 **UNITED STATES DISTRICT COURT**
15
                 **CENTRAL DISTRICT OF CALIFORNIA**
16
17 RELEVANT GROUP, LLC, a Delaware ) Case No.: 2:19-cv-05019-ODW
   limited liability company; 1541 WILCOX ) (KSx)
18 HOTEL LLC, a Delaware limited liability )
   company; 6516 TOMMIE HOTEL LLC; a ) **PLAINTIFF 6421 SELMA**
19 Delaware limited liability company; and ) **WILCOX HOTEL LLC'S**
   6421 SELMA WILCOX HOTEL LLC, a ) **RESPONSES TO DEFENDANT**
20 California limited liability company, ) **SUNSET LANDMARK**
                                         ) **INVESTMENT LLC'S SECOND**
21              Plaintiffs, ) **SET OF INTERROGATORIES**
                                         )
22        v. )
                                         )
23 STEPHAN "SAEED" NOURMAND, an )
   individual; THE SUNSET LANDMARK )
24 INVESTMENT LLC, a California limited )
   liability company; NOURMAND & )
25 ASSOCIATES, a California corporation; )
   and DOES 1-10, )
26              Defendants. )
   _____ )
27
28

**PROPOUNDING PARTY:**     **DEFENDANT THE SUNSET LANDMARK INVESTMENT LLC**

**RESPONDING PARTY:**     **PLAINTIFF 6421 SELMA WILCOX HOTEL LLC**

**SET NUMBER:**     **TWO**

    **PLEASE TAKE NOTICE** that pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff 6421 Selma Wilcox Hotel LLC ("Selma" or "Plaintiff"), by and through its undersigned counsel, hereby responds and objects to Defendant The Sunset Landmark Investment LLC's ("Sunset") Second Set of Interrogatories to Plaintiff (the "Interrogatories") as follows:

## RESERVATION OF RIGHTS

    1.     Plaintiff provides these responses and objections without waiving or intending to waive, and, on the contrary, preserving and intending to preserve:

    a.     the right to object on any ground to the use of these responses and objections or the subject matter thereof in any proceeding in this or any other action;

    b.     the right to object on any ground to a request for further responses to the Interrogatories or any other discovery request involving or relating to the subject matter of the Interrogatories responded to herein; and

    c.     the right at any time to supplement, amend, correct, add to, or clarify any of the responses and objections provided herein, as Plaintiff has not completed its investigation relating to this action, has not completed discovery, and has not completed preparation for trial.

    2.     Plaintiff's responses and objections to these Interrogatories are given without prejudice to its right to supplement and/or amend its objections and responses to these Interrogatories, to present relevant evidence at trial, and to correct inadvertent errors, mistakes, or omissions.

3.      Plaintiff objects to the Interrogatories to the extent that they contain express or implied assumptions of fact or law with respect to matters at issue in this case.  In responding to the Interrogatories, Plaintiff does not admit, concede, agree to the accuracy of any definitions of terms or descriptions of any facts, events, pleadings, or documents contained therein.  Plaintiff specifically does not waive its objections to any definition as vague, ambiguous, or overbroad and reserves the right to define terms differently or more specifically from the way they are defined in Interrogatories.  Plaintiff also does not admit, concede, or agree that any instructions contained in the Interrogatories are binding or permissible under the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the Central District of California ("Local Rules"), or any other applicable law or rules.

4.      In each and every instance in which Plaintiff asserts an objection to an, such objection shall be construed to preserve all of Plaintiff's rights to make similar objections in any future supplemental response to the Interrogatories. Moreover, a failure to object herein shall not constitute a waiver of any objections that Plaintiff may make in future supplemental responses.

5.      Inadvertent production or disclosure of information or documents otherwise protected from discovery under the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection from disclosure, shall not constitute a waiver of such privilege, immunity, or protection, either generally or specifically, with respect to such document or information or any other document or information, or with respect to the subject matter thereof, and Plaintiff reserves the right to request the return of any such documents or information and all copies thereof. Plaintiff reserves the right to object to the use of any such documents or information at any time during this action or in any subsequent proceeding.

6.      Plaintiff's responses and objections to the Interrogatories are based upon information currently available to Plaintiff and are made subject to the Specific

Objections below.  Plaintiff reserves the right to alter, amend, supplement, or revise any responses or objections as further information is discovered.

7.      In addition to the specific objections here, Plaintiff objects to each and every Interrogatory to the extent they seek information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Further, Plaintiff objects to the extent any request infringes on any privacy rights or is unduly burdensome, unreasonable, or overbroad.

## SPECIFIC OBJECTIONS TO DEFINITIONS

The following Specific Objections to Definitions apply to each and every Interrogatory that includes any of the following defined terms and shall have the same force and effect as if fully set forth in Plaintiff's responses to each Interrogatory.

1.      Plaintiff objects to the Definition of "You" and "Your" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case as the terms attempt to extend the scope of these RFAs to individuals and entities other than Plaintiff.  Further, the definition potentially implicates the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

2.      Plaintiff objects to the Definition of "Plaintiffs" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case as the terms attempt to extend the scope of these RFAs to individuals and entities other than Plaintiff.  Further, the definition potentially implicates the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

3.      Plaintiff objects to the Definition of "Sunset" as overly broad, unduly burdensome and not proportional to the needs of the case.

4.      Plaintiff objects to the Definition of "Defendants" as overly broad, unduly burdensome and not proportional to the needs of the case.

5.      Plaintiff objects to the INSTRUCTIONS to the extent that they attempt to impose burdens on Plaintiff that are more onerous or broader than those established by the Federal Rules of Civil Procedure and this Court's Local Rules. Plaintiff shall not do anything more than that which is required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

**RESPONSES & OBJECTIONS TO SPECIFIC INTERROGATORIES**

**INTERROGATORY NO. 12**

Describe all of the ways in which YOU are a "competitor" of SUNSET as referenced in paragraphs 1, 4, 35, 41, and 71 of YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 12**

Selma objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in seeking "all of the ways" in which Selma is a "competitor" of Sunset.  Subject to and without waiving the foregoing objections, Selma responds as follows:

Sunset owns a property consisting of five parcels in the Hollywood area of Los Angeles, i.e., 6525 Sunset Boulevard, 1520 Schrader Boulevard, 1522 Schrader Boulevard, 1530 Schrader Boulevard and 1540 Schrader Boulevard (collectively, the "Sunset Property").  Selma owns a property, 6421 Selma Avenue, which is located one block to the north and east of the block on which the Sunset Property is located.  Entities affiliated with Selma also own properties that are located on the same block as the Sunset Property.

Since at least 2015, both Sunset and Selma (or their affiliated entities) have made efforts to pursue large commercial development projects on their respective properties.  Specifically, Sunset has entertained offers to pursue a range of commercial development opportunities for the Sunset Property, including with developers of hotel, office and residential projects.  During the same time period, Selma has pursued the development of the Dream II Hotel project at 6421 Selma Avenue.  Sunset and Selma are competitors with respect to such commercial

development opportunities within the specific area of Hollywood where they both own properties suitable for large commercial development projects.

Further, Sunset operates, or contracts with other third parties to operate, entertainment, hospitality, dining and beverage uses on the Sunset Property, including conferences, weddings and similar events.  Such uses include Sunset's leasing of the Hollywood Athletic Club as an event space wherein entertainment, hospitality, dining and beverage services can be offered to patrons.  Sunset also leases a portion of the Sunset Property to nightclub operators, which also offer entertainment, hospitality, dining and beverage services to patrons.  Sunset competes with Selma the extent that the hotel operators on Selma's property also offer entertainment, hospitality, dining and beverage services to patrons within the same geographic market.

Further, the Sunset Property and the Selma's property are located within the Hollywood "Regional Center," which is designated as the focal point of regional commerce, identity and activity.  Sunset competes with Selma insofar as the Sunset Property and the Selma property are among many attractions, destinations and points-of-interest that vie for attention, recognition and status with the core Hollywood "Regional Center" area.  Sunset viewed Selma's project as a threat to the attention, recognition and status that the Hollywood Athletic Club enjoyed within its own block of the Hollywood core area.

**INTERROGATORY NO. 13**

Describe how the SELMA PROJECT is a "competing project" of the Hollywood Athletic Club.

**RESPONSE TO INTERROGATORY NO. 13**

Selma objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in seeking a description of "how" the Selma project is a "competing project" to Sunset.  Subject to and without waiving the foregoing objections, Selma responds as follows:

Sunset owns a property consisting of five parcels in the Hollywood area of Los Angeles, i.e., 6525 Sunset Boulevard, 1520 Schrader Boulevard, 1522 Schrader Boulevard, 1530 Schrader Boulevard and 1540 Schrader Boulevard (collectively, the "Sunset Property").  Selma owns a property, 6421 Selma Avenue, which is located one block to the north and east of the block on which the Sunset Property is located.  Entities affiliated with Selma also own properties that are located on the same block as the Sunset Property.

Since at least 2015, both Sunset and Selma (or their affiliated entities) have made efforts to pursue large commercial development projects on their respective properties.  Specifically, Sunset has entertained offers to pursue a range of commercial development opportunities for the Sunset Property, including with developers of hotel, office and residential projects.  During the same time period, Selma has pursued the development of the Dream II Hotel project at 6421 Selma Avenue.  Sunset and Selma are competitors with respect to such commercial development opportunities within the specific area of Hollywood where they both own properties suitable for large commercial development projects.

Further, Sunset operates, or contracts with other third parties to operate, entertainment, hospitality, dining and beverage uses on the Sunset Property, including conferences, weddings and similar events.  Such uses include Sunset's leasing of the Hollywood Athletic Club as an event space wherein entertainment, hospitality, dining and beverage services can be offered to patrons.  Sunset also leases a portion of the Sunset Property to nightclub operators, which also offer entertainment, hospitality, dining and beverage services to patrons.  Sunset competes with Selma the extent that the hotel operators on Selma's property also offer entertainment, hospitality, dining and beverage services to patrons within the same geographic market.

Further, the Sunset Property and the Selma's property are located within the Hollywood "Regional Center," which is designated as the focal point of regional

commerce, identity and activity.  Sunset competes with Selma insofar as the Sunset Property and the Selma property are among many attractions, destinations and points-of-interest that vie for attention, recognition and status with the core Hollywood "Regional Center" area.  Sunset viewed Selma's project as a threat to the attention, recognition and status that the Hollywood Athletic Club enjoyed within its own block of the Hollywood core area.

**INTERROGATORY NO. 14**

IDENTIFY all "demand[s] for money, property or services" made by SUNSET relating to the SELMA/SUNSET LITIGATION.

As stated in definition 24(d), the term IDENTIFY shall mean the date, identity of the sender of the demand, recipient(s) of the demand, and a description of the substance of the demand.

**RESPONSE TO INTERROGATORY NO. 14**

Selma objects to this Interrogatory as undefined, overbroad, and ambiguous as to the meaning of "all demand[s]" and "relating to the SELMA/SUNSET LITIGATION."  Subject to and without waiving the foregoing objections, Selma responds as follows:

The Selma litigation included claims related to the Dream II Hotel project as well as piecemealing claims related to other projects by entities affiliated with Selma, including the Thompson Hotel project and the Tommie Hotel project. Between March 2015 and January 2018, Sunset demanded millions of dollars in monetary payments, design changes to other hotel development projects by entities affiliated with Selma, rights to enforce certain restrictions and an agreement not to challenge Sunset's future development activity in order to cease its sham environmental challenges, which threatened to delay the project and cause catastrophic damage to Selma's business and the business of affiliated entities.

Sunset made such demands on numerous instances and through multiple actors, including Saeed Nourmand, Robert Silverstein and Jayesh Patel.  Selma's

investigation into the precise dates and details of those demands remains ongoing. Such demands include, but are not limited to, statements made by Sunset and/or its representatives (including Saeed Nourmand, Robert Silverstein and Jayesh Patel) during meetings, conversations and correspondences between Sunset and Selma (or affiliated entities) in or around March 13, 2015, May 5, 2015, June 18, 2015, January 2016 through February 2016, December 2016 through May 2017, June 7, 2017, June 27, 2017, July 13, 2017, August 2017 through January 2018, and March 29, 2018. Additional details regarding the facts and circumstances of such demands are reflected in SUNSET_00002131, SUNSET_00000158, SUNSET_00001118, SUNSET_00003792, SUNSET_00001129, SUNSET_00001028, REL076394, REL084846, REL113170, REL081015, REL113924, REL116981, REL115651, REL001627, REL114405, REL001562, REL115912 and REL001261, as well as paragraphs 9-10, 15, 76-88, 113-114 of the Third Amended Complaint. Selma preserves all rights to include additional details regarding additional instances as they become known.

**INTERROGATORY NO. 15**

IDENTIFY all "demand[s] for money, property or services" made by SUNSET relating to the SELMA/MADDREN LITIGATION.

As stated in definition 24(d), the term IDENTIFY shall mean the date, identity of the sender of the demand, recipient(s) of the demand, and a description of the substance of the demand.

**RESPONSE TO INTERROGATORY NO. 15**

Selma objects to this Interrogatory as undefined, overbroad, and ambiguous as to the meaning of "all demand[s]" and "relating to the SELMA/MADDREN LITIGATION." Subject to and without waiving the foregoing objections, Selma responds as follows:

The Selma litigation included claims related to the Dream II Hotel project as well as piecemealing claims related to other projects by entities affiliated with

Selma, including the Thompson Hotel project and the Tommie Hotel project. Between March 2015 and January 2018, Sunset demanded millions of dollars in monetary payments, design changes to other hotel development projects by entities affiliated with Selma, rights to enforce certain restrictions and an agreement not to challenge Sunset's future development activity in order to cease its sham environmental challenges, which threatened to delay the project and cause catastrophic damage to Selma's business and the business of affiliated entities.

Sunset made such demands on numerous instances and through multiple actors, including Saeed Nourmand, Robert Silverstein and Jayesh Patel. Selma's investigation into the precise dates and details of those demands remains ongoing. Such demands include, but are not limited to, statements made by Sunset and/or its representatives (including Saeed Nourmand, Robert Silverstein and Jayesh Patel) during meetings, conversations and correspondences between Sunset and Selma (or affiliated entities) in or around March 13, 2015, May 5, 2015, June 18, 2015, January 2016 through February 2016, December 2016 through May 2017, June 7, 2017, June 27, 2017, July 13, 2017, August 2017 through January 2018, and March 29, 2018. Additional details regarding the facts and circumstances of such demands are reflected in SUNSET_00002131, SUNSET_00000158, SUNSET_00001118, SUNSET_00003792, SUNSET_00001129, SUNSET_00001028, REL076394, REL084846, REL113170, REL081015, REL113924, REL116981, REL115651, REL001627, REL114405, REL001562, REL115912 and REL001261, as well as paragraphs 9-10, 15, 76-88, 113-114 of the Third Amended Complaint. Selma preserves all rights to include additional details regarding additional instances as they become known.

**INTERROGATORY NO. 16**

Identify the dates, or range of dates, on which the SELMA PROJECT was "delayed" as a result of the SELMA/SUNSET LITIGATION.

## RESPONSE TO INTERROGATORY NO. 16

Selma objects to this Interrogatory as undefined, overbroad, ambiguous, unintelligible and unduly burdensome in seeking all specific dates "on which the SELMA PROJECT was 'delayed.'"  Subject to and without waiving the foregoing objections, Selma responds as follows:

The Selma project suffered ongoing delays due to Defendants' misconduct, as alleged throughout the Third Amended Complaint, during the period between March 2015 and the present.

## INTERROGATORY NO. 17

For each date or dates identified in Interrogatory 16, describe (a) the nature of the delay and (b) how that delay was caused by the SELMA/SUNSET LITIGATION.

## RESPONSE TO INTERROGATORY NO. 17

Selma objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in requesting the "nature" of any delay.  Subject to and without waiving the foregoing objections, Selma responds as follows:

The Selma project suffered ongoing delays due to Defendants' misconduct, as alleged throughout the Third Amended Complaint, during the period between March 2015 and the present.  The nature of the delays includes:

(i) delays related to obtaining entitlements during the administrative process due to Defendants' sham environmental challenges to the Selma project and to other development projects by entities affiliated with Selma, which were raised prior to the filing of the Selma Litigation in furtherance of standing requirements in connection with Defendants' sham Selma Litigation and other CEQA litigations;

(ii) delays caused by business considerations regarding the desirability of proceeding with the Selma project while the Selma Litigation was pending; and

(iii) delays related to financing and cost increases caused by Defendants' sham environmental challenges, including the Selma Litigation; and

Moreover, Defendants intentionally threatened to inflict ongoing delays to the

Selma project, indefinitely at every step throughout the process, until their demands were met.  That is, Defendants made it clear that—before, during and after the Selma Litigation—they would continue to assert sham environmental challenges and employ procedural tactics in litigation, which would maintain the threat of future project delays.  This ongoing threat of potential future delays, *per se*, created an untenable situation that Selma needed to resolve before it could proceed along a customary development timeline.

**INTERROGATORY NO. 18**

Identify the dates, or range of dates, on which the SELMA PROJECT was "delayed" as a result of the SELMA/MADDREN LITIGATION.

**RESPONSE TO INTERROGATORY NO. 18**

Selma objects to this Interrogatory as undefined, overbroad, ambiguous, unintelligible and unduly burdensome in seeking all specific dates "on which the SELMA PROJECT was 'delayed.'"  Subject to and without waiving the foregoing objections, Selma responds as follows:

The Selma project suffered ongoing delays due to Defendants' misconduct, as alleged throughout the Third Amended Complaint, during the period between March 2015 and the present.

**INTERROGATORY NO. 19**

For each date or dates identified in Interrogatory 18, describe (a) the nature of the delay and (b) how that delay was caused by the SELMA/MADDREN LITIGATION.

**RESPONSE TO INTERROGATORY NO. 19**

Selma objects to this Interrogatory as undefined, overbroad, ambiguous, and unduly burdensome in requesting the "nature" of any delay.  Subject to and without waiving the foregoing objections, Selma responds as follows:

The Selma project suffered ongoing delays due to Defendants' misconduct, as alleged throughout the Third Amended Complaint, during the period between March

2015 and the present.  The nature of the delays includes:

(i) delays related to obtaining entitlements during the administrative process due to Defendants' sham environmental challenges to the Selma project and to other development projects by entities affiliated with Selma, which were raised prior to the filing of the Selma Litigation in furtherance of standing requirements in connection with Defendants' sham Selma Litigation and other CEQA litigations;

(ii) delays caused by business considerations regarding the desirability of proceeding with the Selma project while the Selma Litigation was pending; and

(iii) delays related to financing and cost increases caused by Defendants sham environmental challenges, including the Selma Litigation; and

Moreover, Defendants intentionally threatened to inflict ongoing delays to the Selma project, indefinitely at every step throughout the process, until their demands were met.  That is, Defendants made it clear that—before, during and after the Selma Litigation—they would continue to assert sham environmental challenges and employ procedural tactics in litigation, which would maintain the threat of future project delays.  This ongoing threat of potential future delays, *per se*, created an untenable situation that Selma needed to resolve before it could proceed along a customary development timeline.


Dated:  March 30, 2022          WILSON SONSINI GOODRICH & ROSATI
                                Professional Corporation


                                By: */s/ Susan K. Leader*
                                    Susan K. Leader

                                Attorneys for Plaintiffs
                                Relevant Group, LLC, 1541 Wilcox Hotel
                                LLC, 6516 Tommie Hotel LLC and 6421
                                Selma Wilcox Hotel LLC

# EXHIBIT L

1  **WILSON SONSINI GOODRICH & ROSATI**
   **Professional Corporation**
2  SUSAN K. LEADER, State Bar No. 216743
   sleader@wsgr.com
3  GRANVILLE C. KAUFMAN, State Bar No. 330603
   gkaufman@wsgr.com
4  633 West Fifth Avenue, Suite 1550
   Los Angeles, CA 90071-2027
5  Telephone:   (323) 210-2900
   Facsimile:    (866) 974.7329
6
7  **WILSON SONSINI GOODRICH & ROSATI**
   **Professional Corporation**
   DALE R. BISH, State Bar No. 235390
8  dbish@wsgr.com
   CHARLES A. TALPAS, State Bar No. 308505
9  ctalpas@wsgr.com
   KAREN KWOK, State Bar No. 307464
10 kkwok@wsgr.com
   650 Page Mill Road
11 Palo Alto, CA 94304-1050
   Telephone:   (650) 493-9300
12 Facsimile:    (650) 565-5100

13 Attorneys for Plaintiff
   Relevant Group, LLC

14
                    **UNITED STATES DISTRICT COURT**
15
                   **CENTRAL DISTRICT OF CALIFORNIA**
16

17 RELEVANT GROUP, LLC, a Delaware          ) Case No.: 2:19-cv-05019-ODW
   limited liability company; 1541 WILCOX   ) (KSx)
18 HOTEL LLC, a Delaware limited liability  )
   company; 6516 TOMMIE HOTEL LLC; a        ) **PLAINTIFF RELEVANT**
19 Delaware limited liability company; and  ) **GROUP LLC'S**
   6421 SELMA WILCOX HOTEL LLC, a           ) **SUPPLEMENTAL RESPONSES**
20 California limited liability company,     ) **TO DEFENDANT SUNSET**
                                            ) **LANDMARK INVESTMENT,**
21           Plaintiffs,                    ) **LLC'S FIRST SET OF**
                                            ) **INTERROGATORIES**
22      v.                                  )
                                            )
23 STEPHAN "SAEED" NOURMAND, an             )
   individual; THE SUNSET LANDMARK          )
24 INVESTMENT LLC, a California limited      )
   liability company; NOURMAND &            )
25 ASSOCIATES, a California corporation;     )
   and DOES 1-10,                           )
26                                          )
            Defendants.                     )
27 _____ )
                                            )
28

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Relevant Group, LLC ("Plaintiff"), by and through its undersigned counsel, hereby submits the following supplemental responses and objections to Defendant Sunset Landmark Investment, LLC's First Set of Interrogatories to Plaintiff (the "Interrogatories") as follows:

## **RESERVATION OF RIGHTS**

1.   Plaintiff provides these responses and objections without waiving or intending to waive, and, on the contrary, preserving and intending to preserve:

a.   the right to object on any ground to the use of these responses and objections or the subject matter thereof in any proceeding in this or any other action;

b.   the right to object on any ground to a request for further responses to the Interrogatories or any other discovery request involving or relating to the subject matter of the Interrogatories responded to herein; and

c.   the right at any time to supplement, amend, correct, add to, or clarify any of the responses and objections provided herein.

2.   In responding to the Interrogatories, Plaintiff does not admit, concede, or agree to the accuracy of any definitions of terms or descriptions of any facts, events, pleadings, or documents contained therein. Plaintiff specifically does not waive its objections to any definition as vague, ambiguous, or overbroad and reserves the right to define terms differently or more specifically from the way they are defined in the Requests. Plaintiff also does not admit, concede, or agree that any instructions contained in the Interrogatories are binding or permissible under the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the Central District of California ("Local Rules"), or any other applicable law or rules.

3.   In each and every instance in which Plaintiff asserts an objection to an Interrogatory, such objection shall be construed to preserve all of Plaintiff's

1  rights to make similar objections in any future supplemental response to the
2  Interrogatories. Moreover, a failure to object herein shall not constitute a waiver
3  of any objections that Plaintiff may make in future supplemental responses.

4      4.    Inadvertent production or disclosure of information or documents
5  otherwise protected from discovery under the attorney-client privilege, the work
6  product doctrine, or any other applicable privilege, immunity, or protection from
7  disclosure, shall not constitute a waiver of such privilege, immunity, or protection,
8  either generally or specifically, with respect to such document or information or any
9  other document or information, or with respect to the subject matter thereof, and
10 Plaintiff reserves the right to request the return of any such documents or information
11 and all copies thereof. Plaintiff reserves the right to object to the use of any such
12 documents or information at any time during this action or in any subsequent
13 proceeding.

14     5.    Plaintiff's responses and objections to the Interrogatories are based
15 upon information currently available to Plaintiff and are made subject to the
16 Specific Objections below. Plaintiff reserves the right to alter, amend, supplement,
17 or revise any responses or objections as further information is discovered.

18     **<u>GENERAL OBJECTIONS</u>**

19     In addition to those grounds for objection which may be set forth
20 specifically in response to a particular Interrogatory, Relevant sets forth the
21 following general objections. Relevant's general objections shall be incorporated
22 into its objections and responses to each Interrogatory contained herein to the full
23 extent applicable.

24     1.    Except for explicit facts admitted herein, no admissions of any nature
25 whatsoever are implied or should be inferred from Relevant's responses or
26 objections to these Interrogatories.

27     2.    Relevant objects to these Interrogatories to the extent that they exceed
28 the requirements of the Federal Rules of Civil Procedure and the Local Rules of

Practice for the United States District Court for the Central District of California, which will govern Relevant's responses.

3. Relevant objects to the Interrogatories to the extent that they call for information that is protected from disclosure by: (a) the attorney-client privilege, (b) the work product doctrine, and/or (c) any other privilege or doctrine. Relevant will not provide any information it contends is protected under any such privilege and/or doctrine.

4. Relevant objects to the Interrogatories to the extent that they purport to require Relevant to disclose confidential and/or proprietary commercial and/or business documents or documents containing trade secrets and/or confidential information protected by privacy laws. To the extent it agrees to provide such information subject to its objections, Relevant will only respond to these Interrogatories subject to an appropriate protective order entered by the Court.

5. Relevant objects to the Interrogatories and specifically to each Interrogatory therein to the extent they seek the identification of "all," "each," "any" or "every" fact, person, or document of a specific nature or type when a limited number of such facts, persons, or documents would supply the requested information, on the grounds that such a requirement makes the Interrogatory overbroad, unduly burdensome, and oppressive.

6. Relevant objects to the Interrogatories and specifically to each Interrogatory therein to the extent that they purport to require Relevant to provide information not in its possession, custody, or control, or already in the possession of Defendant or Defendant's counsel, or equally available to Defendant or Defendant's counsel.

7. Relevant objects to the Interrogatories to the extent they impose requirements upon Relevant not required by law, including but not limited to the "DEFINITIONS" and "INSTRUCTIONS" set forth in the Interrogatories.

Relevant responds to these Interrogatories as it interprets and understands

them. If Defendant subsequently asserts an interpretation of any Interrogatory that differs from Relevant's understanding, Relevant reserves the right to supplement its objections and/or responses herein.

## SUPPLEMENTAL RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

      IDENTIFY all PERSONS that raised any CEQA CHALLENGE TO the TOMMIE PROJECT, THOMSON HOTEL PROJECT, or the SELMA PROJECT.

**RESPONSE TO INTERROGATORY NO. 1:**

      Relevant objects to this Interrogatory as overbroad to the extent it seeks the identity of "all PERSONS," that "raised any CEQA CHALLENGE." Relevant also objects to this Interrogatory as the terms "raised" and "any CEQA CHALLENGE" are undefined, vague, and ambiguous. Relevant also objects to this Interrogatory because it calls for information already in Defendant's possession or information that is publicly available.

      Subject to and without waiving the foregoing objections, Relevant responds as follows: The following individuals are believed to have asserted CEQA challenges to the Tommie, Thompson, and/or the Selma Wilcox developments: Sunset Landmark Investment, LLC; Casey Maddren; Lauren Farmer and Liliana Hernandez, Unite Here Local 11; Mama Wilcox Land, LLC; Alexis Olbrei, Southwest Carpenters; Fran Offenhauser, Hollywood Heritage; and David Carrera.

**INTERROGATORY NO. 2:**

      For each PERSON IDENTIFIED in response to Interrogatory No. 1, DESCRIBE the CEQA CHALLENGE of that PERSON.

**RESPONSE TO INTERROGATORY NO. 2:**

      Relevant objects to this Interrogatory as overbroad as it seeks the identity of "all PERSONS," which is not limited to those lawsuits filed by Defendants. Relevant also objects to this Interrogatory as the term "CEQA CHALLENGE" as defined is

1 vague, and ambiguous. Relevant also objects to this Interrogatory because it calls for
2 information already in Defendants' possession or information that is publicly
3 available. Subject to and without waiving the foregoing objections, Relevant
4 responds as follows: Descriptions of each CEQA challenge are found in the appeals
5 and/or lawsuits filed by the appellant, all of which are matters of public record.
6 Relevant is unable to describe these challenges with any further specificity based on
7 the vague nature of the request.

8 **INTERROGATORY NO. 3:**

9      For each CEQA CHALLENGE described in response to Interrogatory No. 2,
10 DESCRIBE what, if any resolution, was reached with respect to each CEQA
11 CHALLENGE.

12 **RESPONSE TO INTERROGATORY NO. 3:**

13      Relevant objects to this Interrogatory as overbroad as it seeks information
14 about "any resolution." Relevant also objects to this Interrogatory as the terms
15 "resolution" and "CEQA CHALLENGE" are undefined, vague, and ambiguous.

16      Subject to and without waiving the foregoing objections, Relevant responds
17 as follows: The CEQA challenges asserted by Sunset Landmark Investment, LLC
18 (Tommie and Thompson only); Mama Wilcox Land, LLC (Tommie only); and
19 Lauren Farmer and Liliana Hernandez, Unite Here Local 11 (Tommie only) were
20 resolved through settlement agreements. The remaining CEQA challenges were
21 denied by the City of Los Angeles and/or courts.

22 **INTERROGATORY NO. 4:**

23      For each CEQA CHALLENGE described in response to Interrogatory No. 2,
24 state the amount of legal fees YOU incurred in connection with that CEQA
25 CHALLENGE.

26 **RESPONSE TO INTERROGATORY NO. 4:**

27      Relevant objects to this Interrogatory as it seeks information that is not
28 relevant to any parties' claims or defenses and/or information not proportional to the

it seeks the names of "all" investors who have received financing, including persons not concerning Defendants. Relevant also objects to this Interrogatory as seeking information not relevant or proportional to the needs of the case. Relevant also objects to this Interrogatory to the extent that it purports to require Relevant to disclose confidential and/or proprietary commercial and/or business information and/or information protected by privacy laws.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17:**

Subject to and without waiving the foregoing objections, Relevant supplements its response as follows:

Hundreds of individual EB-5 investors contributed to the financing of the development projects at issue in this litigation. The identities of those investors are not relevant to Plaintiffs' allegations regarding its economic dependence on the development projects moving forward. Rather, Plaintiffs' allegations regarding economic dependence relate to the number EB-5 investors, the amounts they invested, the material terms of those EB-5 investments, and the role of EB-5 investments in the overall funding structure for the Thompson Hotel project, the Tommie Hotel project and the Selma Hotel Project.

Pursuant to Federal Rule of Civil Procedure 33(d), Relevant will produce business records sufficient to show the number of individual EB-5 investors who contributed to the financing of the Thompson Hotel project, the Tommie Hotel project and the Selma Hotel project, respectively. Additionally, Relevant will produce business records sufficient to show the material terms of such EB-5 investments, the role that EB-5 investors played in the context of the overall funding structure for each of the above-described development projects, and the amount of money raised through EB-5 investments.

Dated: December 17, 2021                     WILSON SONSINI GOODRICH & ROSATI

1    Professional Corporation

2

3

4

5         By: */s/ Susan K. Leader*

6              Susan K. Leader

7

8         Attorneys for Plaintiff

9         Relevant Group, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

2

SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com

3

GRANVILLE C. KAUFMAN, State Bar No. 330603
gkaufman@wsgr.com

4

633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027

5

Telephone: (323) 210-2900
Facsimile: (866) 974.7329

6

7

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

8

DALE R. BISH, State Bar No. 235390
dbish@wsgr.com

9

CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
KAREN KWOK, State Bar No. 307464

10

kkwok@wsgr.com
650 Page Mill Road

11

Palo Alto, CA 94304-1050
Telephone:        (650) 493-9300

12

Facsimile:  (650) 565-5100

13

Attorneys for Plaintiff
Relevant Group, LLC

14

15

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

16

17

RELEVANT GROUP, LLC, a Delaware
limited liability company; 1541

18

WILCOX HOTEL LLC, a Delaware
limited liability company; 6516

19

TOMMIE HOTEL LLC; a Delaware
limited liability company; and 6421

20

SELMA WILCOX HOTEL LLC, a
California limited liability company,

21

Plaintiffs,

22

v.

23

STEPHAN "SAEED" NOURMAND, an

24

individual; THE SUNSET LANDMARK
INVESTMENT LLC, a California

25

limited liability company; NOURMAND
& ASSOCIATES, a California

26

corporation; and DOES 1-10,

27

Defendants.

28

)  Case No.: 2:19-cv-05019-ODW
)  (KSx)
)
)  **PLAINTIFF 1541 WILCOX**
)  **HOTEL LLC'S**
)  **SUPPLEMENTAL RESPONSES**
)  **TO DEFENDANT SUNSET**
)  **LANDMARK INVESTMENT,**
)  **LLC'S FIRST SET OF**
)  **INTERROGATORIES**
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

PLAINTIFF 1541 WILCOX HOTEL LLC'S
SUPPLEMENTAL RESPONSES TO
DEFENDANT SUNSET LANDMARK
INVESTMNET, LLC'S FIRST SET OF
INTERROGATORIES CASE NO.: 2:19-CV-
05019-ODW (KSx)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff 1541 Wilcox Hotel LLC ("Plaintiff"), by and through its undersigned counsel, hereby submits these supplemental responses and objections to Defendant Sunset Landmark Investment, LLC's First Set of Interrogatories to Plaintiff (the "Interrogatories") as follows:

## **RESERVATION OF RIGHTS**

1.      Plaintiff provides these responses and objections without waiving or intending to waive, and, on the contrary, preserving and intending to preserve:

      a.      the right to object on any ground to the use of these responses and objections or the subject matter thereof in any proceeding in this or any other action;

      b.      the right to object on any ground to a request for further responses to the Interrogatories or any other discovery request involving or relating to the subject matter of the Interrogatories responded to herein; and

      c.      the right at any time to supplement, amend, correct, add to, or clarify any of the responses and objections provided herein.

2.      In responding to the Interrogatories, Plaintiff does not admit, concede, or  agree to the accuracy of any definitions of terms or descriptions of any facts, events, pleadings, or documents contained therein. Plaintiff specifically does not waive its objections to any definition as vague, ambiguous, or overbroad and reserves the right to define terms differently or more specifically from the way they are defined in the Requests. Plaintiff also does not admit, concede, or agree that any instructions contained in the Interrogatories are binding or permissible under the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the Central District of California ("Local Rules"), or any other applicable law or rules.

-1-

PLAINTIFF 1541 WILCOX HOTEL LLC'S SUPPLEMENTAL RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMNET, LLC'S FIRST SET OF INTERROGATORIES CASE No.: 2:19-CV-05019-ODW (KSX)

3.      In each and every instance in which Plaintiff asserts an objection to an Interrogatory, such objection shall be construed to preserve all of Plaintiff's rights to make similar objections in any future supplemental response to the Interrogatories. Moreover, a failure to object herein shall not constitute a waiver of any objections that Plaintiff may make in future supplemental responses.

4.      Inadvertent production or disclosure of information or documents otherwise protected from discovery under the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection from disclosure, shall not constitute a waiver of such privilege, immunity, or protection, either generally or specifically, with respect to such document or information or any other document or information, or with respect to the subject matter thereof, and Plaintiff reserves the right to request the return of any such documents or information and all copies thereof. Plaintiff reserves the right to object to the use of any such documents or information at any time during this action or in any subsequent proceeding.

5.      Plaintiff's responses and objections to the Interrogatories are based upon information currently available to Plaintiff, and are made subject to the Specific Objections below. Plaintiff reserves the right to alter, amend, supplement, or revise any responses or objections as further information is discovered.

## SPECIFIC OBJECTIONS TO DEFINITIONS

The following Specific Objections to Definitions apply to each and every Interrogatory that includes any of the following defined terms, and shall have the same force and effect as if fully set forth in Plaintiff's responses to each Interrogatory.

1.      Plaintiff objects to the Definition of "You" and "Your" as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it includes persons or entities not currently within Plaintiff's control.

-2-                    PLAINTIFF 1541 WILCOX HOTEL LLC'S SUPPLEMENTAL RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMNET, LLC'S FIRST SET OF INTERROGATORIES CASE NO.: 2:19-CV-05019-ODW (KSX)

2.      Plaintiff objects to the Definition of "Relevant Period" as overly broad, unduly burdensome, and not proportional to the needs of the case because it purports to impose an obligation on Plaintiff to search for and produce information beyond the agreed-upon period stated in the ESI Protocol.

**SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

IDENTIFY all PERSONS that raised any CEQA CHALLENGE TO the TOMMIE PROJECT, THOMSON HOTEL PROJECT,   or the SELMA PROJECT.

**RESPONSE TO INTERROGATORY NO. 1:**

1541 WILCOX HOTEL LLC objects to this Interrogatory as overbroad to the extent it seeks the identity of "all PERSONS," that "raised any CEQA CHALLENGE." 1541 WILCOX HOTEL LLC also objects to this Interrogatory as the terms "raised" and "any CEQA CHALLENGE" are undefined, vague, and ambiguous. 1541 WILCOX HOTEL LLC also objects to this Interrogatory because it calls for information already in Defendant's possession or information that is publicly available.

Subject to and without waiving the foregoing objections, 1541 WILCOX HOTEL LLC responds as follows: The following individuals are believed to have asserted CEQA challenges to the Tommie, Thompson, and/or the Selma Wilcox developments: Sunset Landmark Investment, LLC; Casey Maddren; Lauren Farmer and Liliana Hernandez, Unite Here Local 11; Mama Wilcox Land, LLC; Alexis Olbrei, Southwest Carpenters; Fran Offenhauser, Hollywood Heritage; and David Carrera.

**INTERROGATORY NO. 2:**

For each PERSON IDENTIFIED in response to Interrogatory No. 1, DESCRIBE the CEQA CHALLENGE of that PERSON.

PLAINTIFF 1541 WILCOX HOTEL LLC'S
SUPPLEMENTAL RESPONSES TO
DEFENDANT SUNSET LANDMARK
INVESTMNET, LLC'S FIRST SET OF
INTERROGATORIES CASE NO.: 2:19-CV-
05019-ODW (KSx)

**RESPONSE TO INTERROGATORY NO. 2:**

1541 WILCOX HOTEL LLC objects to this Interrogatory as overbroad as it seeks the identity of "all PERSONS," which is not limited to those lawsuits filed by Defendants. 1541 WILCOX HOTEL LLC also objects to this Interrogatory as the term "CEQA CHALLENGE" as defined is vague, and ambiguous. 1541 WILCOX HOTEL LLC also objects to this Interrogatory because it calls for information already in Defendants' possession or information that is publicly available.

Subject to and without waiving the foregoing objections, 1541 WILCOX HOTEL LLC responds as follows: Descriptions of each CEQA challenge are found in the appeals and/or lawsuits filed by the appellant, all of which are matters of public record. 1541 WILCOX HOTEL LLC is unable to described these challenges with any further specificity based on the vague nature of the request.

**INTERROGATORY NO. 3:**

For each CEQA CHALLENGE described in response to Interrogatory No. 2, DESCRIBE what, if any resolution, was reached with respect to each CEQA CHALLENGE.

**RESPONSE TO INTERROGATORY NO. 3:**

1541 WILCOX HOTEL LLC objects to this Interrogatory as overbroad as it seeks information about "any resolution." 1541 WILCOX HOTEL LLC also objects to this Interrogatory as the terms "resolution" and "CEQA CHALLENGE" are undefined, vague, and ambiguous.

Subject to and without waiving the foregoing objections, 1541 WILCOX HOTEL LLC responds as follows: The CEQA challenges asserted by Sunset Landmark Investment, LLC (Tommie and Thompson only); Mama Wilcox Land, LLC (Tommie only); and Lauren Farmer and Liliana Hernandez, Unite Here Local

-4-

PLAINTIFF 1541 WILCOX HOTEL LLC'S
SUPPLEMENTAL RESPONSES TO
DEFENDANT SUNSET LANDMARK
INVESTMNET, LLC'S FIRST SET OF
INTERROGATORIES CASE NO.: 2:19-CV-
05019-ODW (KSX)

11 (Tommie only) were resolved through settlement agreements. The remaining
CEQA challenges were denied by the City of Los Angeles and/or courts.

**INTERROGATORY NO. 4:**

For each CEQA CHALLENGE described in response to Interrogatory No. 2,
state the amount of legal fees YOU incurred in connection with that CEQA
CHALLENGE.

**RESPONSE TO INTERROGATORY NO. 4:**

1541 WILCOX HOTEL LLC objects to this Interrogatory as it seeks
information that is not relevant to any parties' claims or defenses and/or information
not proportional to the needs of the case. 1541 WILCOX HOTEL LLC also objects
to the Interrogatory as overbroad as "CEQA CHALLENGE" as defined is not limited
to those challenges filed by Defendants. 1541 WILCOX HOTEL LLC also objects
to this Interrogatory to the extent that it calls for information that is protected from
disclosure by the attorney-client privilege, the work product doctrine, and/or any
other privilege or doctrine.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiving the foregoing objections, 1541 WILCOX
HOTEL LLC supplements its response as follows:

In order to provide a response to this Interrogatory, 1541 WILCOX HOTEL
LLC would be required to review the legal invoices related to the CEQA challenges
and sum the fees in such invoices.  As the burden of deriving a response to this
interrogatory is substantially the same for 1541 WILCOX HOTEL LLC as it is for
Defendants, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, 1541
WILCOX HOTEL LLC will produce the legal invoices incurred in connection with
the Thompson Litigation, the Tommie Litigation, the Maddren Litigation, the Lauren
"Elle" Farmer litigation, and the Mama Wilcox litigation to allow Defendant to

PLAINTIFF 1541 WILCOX HOTEL LLC'S
SUPPLEMENTAL RESPONSES TO
DEFENDANT SUNSET LANDMARK
INVESTMNET, LLC'S FIRST SET OF
INTERROGATORIES CASE NO.: 2:19-CV-
05019-ODW (KSx)

1

2

3   Dated: December 17, 2021          WILSON SONSINI GOODRICH & ROSATI

4                                     Professional Corporation

5

6

7

8                                     By: */s/ Susan K. Leader*

9                                          Susan K. Leader

10

11                                    Attorneys for Plaintiff

12                                    Relevant Group, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF 1541 WILCOX HOTEL LLC'S SUPPLEMENTAL RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMNET, LLC'S FIRST SET OF INTERROGATORIES Case No.: 2:19-cv-05019-ODW (KSx)

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
GRANVILLE C. KAUFMAN, State Bar No. 330603
gkaufman@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
Telephone: (323) 210-2900
Facsimile:  (866) 974.7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
KAREN KWOK, State Bar No. 307464
kkwok@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Plaintiff
Relevant Group, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, <br><br> Defendants. | Case No.: 2:19-cv-05019-ODW (KSx) <br><br> **PLAINTIFF 6516 TOMMIE HOTEL LLC'S SUPPLEMENTAL RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMENT, LLC'S FIRST SET OF INTERROGATORIES** |

1            Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff

2    6516 Tommie Hotel LLC ("Plaintiff"), by and through its undersigned counsel,

3    hereby submits these supplemental responses and objections to Defendant Sunset

4    Landmark Investment, LLC's First Set of Interrogatories to Plaintiff (the

5    "Interrogatories") as follows:

6            **RESERVATION OF RIGHTS**

7          1.    Plaintiff provides these responses and objections without waiving

8    or intending to waive, and, on the contrary, preserving and intending to

9    preserve:

10            a.    the right to object on any ground to the use of these responses

11    and objections or the subject matter thereof in any proceeding in this or any other

12    action;

13            b.    the right to object on any ground to a request for further responses

14    to the Interrogatories or any other discovery request involving or relating to the

15    subject matter of the Interrogatories responded to herein; and

16            c.    the right at any time to supplement, amend, correct, add to, or

17    clarify any of the responses and objections provided herein.

18          2.    In responding to the Interrogatories, Plaintiff does not admit, concede,

19    or agree to the accuracy of any definitions of terms or descriptions of any facts,

20    events, pleadings, or documents contained therein. Plaintiff specifically does not

21    waive its objections to any definition as vague, ambiguous, or overbroad and reserves

22    the right to define terms differently or more specifically from the way they are

23    defined in the Requests. Plaintiff also does not admit, concede, or agree that any

24    instructions contained in the Interrogatories are binding or permissible under the

25    Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the

26    Central District of California ("Local Rules"), or any other applicable law or rules.

27

28

PLAINTIFF 6516 TOMMIE HOTEL LLC'S SUPPLEMENTAL RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMNET, LLC'S FIRST SET OF INTERROGATORIES CASE NO.: 2:19-CV-05019-ODW (KSx)

3.      In each and every instance in which Plaintiff asserts an objection to an Interrogatory, such objection shall be construed to preserve all of Plaintiff's rights to make similar objections in any future supplemental response to the Interrogatories. Moreover, a failure to object herein shall not constitute a waiver of any objections that Plaintiff may make in future supplemental responses.

4.      Inadvertent production or disclosure of information or documents otherwise protected from discovery under the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection from disclosure, shall not constitute a waiver of such privilege, immunity, or protection, either generally or specifically, with respect to such document or information or any other document or information, or with respect to the subject matter thereof, and Plaintiff reserves the right to request the return of any such documents or information and all copies thereof. Plaintiff reserves the right to object to the use of any such documents or information at any time during this action or in any subsequent proceeding.

5.      Plaintiff's responses and objections to the Interrogatories are based upon information currently available to Plaintiff, and are made subject to the Specific Objections below. Plaintiff reserves the right to alter, amend, supplement, or revise any responses or objections as further information is discovered.

## SPECIFIC OBJECTIONS TO DEFINITIONS

The following Specific Objections to Definitions apply to each and every Interrogatory that includes any of the following defined terms, and shall have the same force and effect as if fully set forth in Plaintiff's responses to each Interrogatory.

1.      Plaintiff objects to the Definition of "You" and "Your" as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it includes persons or entities not currently within Plaintiff's control.

-2-                    PLAINTIFF 6516 TOMMIE HOTEL LLC'S SUPPLEMENTAL RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMNET, LLC'S FIRST SET OF INTERROGATORIES CASE No.: 2:19-CV-05019-ODW (KSx)

2.     Plaintiff objects to the Definition of "Relevant Period" as overly broad, unduly burdensome, and not proportional to the needs of the case because it purports to impose an obligation on Plaintiff to search for and produce information beyond the agreed-upon period stated in the ESI Protocol.

**SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

IDENTIFY all PERSONS that raised any CEQA CHALLENGE TO the TOMMIE PROJECT, TOOMSON HOTEL PROJECT, or the SELMA PROJECT.

**RESPONSE TO INTERROGATORY NO. 1:**

6516 TOMMIE HOTEL LLC'S objects to this Interrogatory as overbroad to the extent it seeks the identity of "all PERSONS," that "raised any CEQA CHALLENGE." 6516 TOMMIE HOTEL also objects to this Interrogatory as the terms "raised" and "any CEQA CHALLENGE" are undefined, vague, and ambiguous. 6516 TOMMIE HOTEL also objects to this Interrogatory because it calls for information already in Defendant's possession or information that is publicly available.

Subject to and without waiving the foregoing objections, 6516 TOMMIE HOTEL responds as follows: The following individuals are believed to have asserted CEQA challenges to the Tommie, Thompson, and/or the Selma Wilcox developments: Sunset Landmark Investment, LLC; Casey Maddren; Lauren Farmer and Liliana Hernandez, Unite Here Local 11; Mama Wilcox Land, LLC; Alexis Olbrei, Southwest Carpenters; Fran Offenhauser, Hollywood Heritage; and David Carrera.

**INTERROGATORY NO. 2:**

For each PERSON IDENTIFIED in response to Interrogatory No. 1, DESCRIBE the CEQA CHALLENGE of that PERSON.

PLAINTIFF 6516 TOMMIE HOTEL LLC'S
SUPPLEMENTAL RESPONSES TO
DEFENDANT SUNSET LANDMARK
INVESTMNET, LLC'S FIRST SET OF
INTERROGATORIES CASE NO.: 2:19-CV-
05019-ODW (KSx)

**RESPONSE TO INTERROGATORY NO. 2:**

6516 TOMMIE HOTEL objects to this Interrogatory as overbroad as it seeks the identity of "all PERSONS," which is not limited to those lawsuits filed by Defendants. 6516 TOMMIE HOTEL also objects to this Interrogatory as the term "CEQA CHALLENGE" as defined is vague, and ambiguous. 6516 TOMMIE HOTEL also objects to this Interrogatory because it calls for information already in Defendants' possession or information that is publicly available.

Subject to and without waiving the foregoing objections, 6516 TOMMIE HOTEL responds as follows: Descriptions of each CEQA challenge are found in the appeals and/or lawsuits filed by the appellant, all of which are matters of public record. 6516 TOMMIE HOTEL is unable to described these challenges with any further specificity based on the vague nature of the request.

**INTERROGATORY NO. 3:**

For each CEQA CHALLENGE described in response to Interrogatory No. 2, DESCRIBE what, if any resolution, was reached with respect to each CEQA CHALLENGE.

**RESPONSE TO INTERROGATORY NO. 3:**

6516 TOMMIE HOTEL objects to this Interrogatory as overbroad as it seeks information about "any resolution." 6516 TOMMIE HOTEL also objects to this Interrogatory as the terms "resolution" and "CEQA CHALLENGE" are undefined, vague, and ambiguous.

Subject to and without waiving the foregoing objections, 6516 TOMMIE HOTEL responds as follows: The CEQA challenges asserted by Sunset Landmark Investment, LLC (Tommie and Thompson only); Mama Wilcox Land, LLC (Tommie only); and Lauren Farmer and Liliana Hernandez, Unite Here Local 11 (Tommie only) were resolved through settlement agreements. The remaining CEQA challenges were denied by the City of Los Angeles and/or courts.

PLAINTIFF 6516 TOMMIE HOTEL LLC'S SUPPLEMENTAL RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMNET, LLC'S FIRST SET OF INTERROGATORIES CASE No.: 2:19-CV-05019-ODW (KSx)

1    Dated: December 17, 2021              WILSON SONSINI GOODRICH & ROSATI

2                                          Professional Corporation

3

4

5

6                                          By: */s/ Susan K. Leader*

7                                                Susan K. Leader

8

9                                          Attorneys for Plaintiff

10                                         Relevant Group, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF 6516 TOMMIE HOTEL LLC'S SUPPLEMENTAL RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMNET, LLC'S FIRST SET OF INTERROGATORIES Case No.: 2:19-CV-05019-ODW (KSx)

1  **WILSON SONSINI GOODRICH & ROSATI**
   **Professional Corporation**
2  SUSAN K. LEADER, State Bar No. 216743
   sleader@wsgr.com
3  GRANVILLE C. KAUFMAN, State Bar No. 330603
   gkaufman@wsgr.com
4  633 West Fifth Avenue, Suite 1550
   Los Angeles, CA 90071-2027
5  Telephone: (323) 210-2900
   Facsimile:  (866) 974.7329
6
7  **WILSON SONSINI GOODRICH & ROSATI**
   **Professional Corporation**
8  DALE R. BISH, State Bar No. 235390
   dbish@wsgr.com
   CHARLES A. TALPAS, State Bar No. 308505
9  ctalpas@wsgr.com
   KAREN KWOK, State Bar No. 307464
10 kkwok@wsgr.com
   650 Page Mill Road
11 Palo Alto, CA 94304-1050
   Telephone:       (650) 493-9300
12 Facsimile:  (650) 565-5100

13 Attorneys for Plaintiff
   Relevant Group, LLC
14
                **UNITED STATES DISTRICT COURT**
15
              **CENTRAL DISTRICT OF CALIFORNIA**
16

17 RELEVANT GROUP, LLC, a Delaware        )  Case No.: 2:19-cv-05019-ODW
   limited liability company; 1541        )  (KSx)
18 WILCOX HOTEL LLC, a Delaware           )
   limited liability company; 6516        )  **PLAINTIFF 6421 SELMA**
19 TOMMIE HOTEL LLC; a Delaware           )  **WILCOX HOTEL LLC'S**
   limited liability company; and 6421    )  **SUPPLEMENTAL RESPONSES**
20 SELMA WILCOX HOTEL LLC, a              )  **TO DEFENDANT SUNSET**
   California limited liability company,  )  **LANDMARK INVESTMENT,**
21                                        )  **LLC'S FIRST SET OF**
                Plaintiffs,               )  **INTERROGATORIES**
22                                        )
           v.                             )
23                                        )
   STEPHAN "SAEED" NOURMAND, an           )
24 individual; THE SUNSET LANDMARK        )
   INVESTMENT LLC, a California           )
25 limited liability company; NOURMAND    )
   & ASSOCIATES, a California             )
26 corporation; and DOES 1-10,            )
                                          )
27              Defendants.               )
                                          )
28 _____    )

                                    PLAINTIFF 6421 SELMA WILCOX
                                    HOTEL LLC'S SUPPLEMENTAL
                                    RESPONSES TO DEFENDANT SUNSET
                                    LANDMARK INVESTMNET, LLC'S
                                    FIRST SET OF INTERROGATORIES
                                    CASE NO.: 2:19-CV-05019-ODW (KSX)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff 6421 Selman Wilcox Hotel LLC ("Plaintiff"), by and through its undersigned counsel, hereby responds and objects to Defendant Sunset Landmark Investment, LLC's First Set of Interrogatories to Plaintiff (the "Interrogatories") as follows:

**RESERVATION OF RIGHTS**

1.     Plaintiff provides these responses and objections without waiving or intending to waive, and, on the contrary, preserving and intending to preserve:

a.     the right to object on any ground to the use of these responses and objections or the subject matter thereof in any proceeding in this or any other action;

b.     the right to object on any ground to a request for further responses to the Interrogatories or any other discovery request involving or relating to the subject matter of the Interrogatories responded to herein; and

c.     the right at any time to supplement, amend, correct, add to, or clarify any of the responses and objections provided herein.

2.     In responding to the Interrogatories, Plaintiff does not admit, concede, or agree to the accuracy of any definitions of terms or descriptions of any facts, events, pleadings, or documents contained therein. Plaintiff specifically does not waive its objections to any definition as vague, ambiguous, or overbroad and reserves the right to define terms differently or more specifically from the way they are defined in the Requests. Plaintiff also does not admit, concede, or agree that any instructions contained in the Interrogatories are binding or permissible under the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the Central District of California ("Local Rules"), or any other applicable law or rules.

3.     In each and every instance in which Plaintiff asserts an objection to an Interrogatory, such objection shall be construed to preserve all of Plaintiff's rights to make similar objections in any future supplemental response to the Interrogatories.

-1-

PLAINTIFF 6421 SELMA WILCOX
HOTEL LLC'S SUPPLEMENTAL
RESPONSES TO DEFENDANT SUNSET
LANDMARK INVESTMNET, LLC'S
FIRST SET OF INTERROGATORIES
Case No.: 2:19-cv-05019-ODW (KSx)

1  Moreover, a failure to object herein shall not constitute a waiver of any objections

2  that Plaintiff may make in future supplemental responses.

3        4.      Inadvertent production or disclosure of information or documents

4  otherwise protected from discovery under the attorney-client privilege, the work

5  product doctrine, or any other applicable privilege, immunity, or protection from

6  disclosure, shall not constitute a waiver of such privilege, immunity, or protection,

7  either generally or specifically, with respect to such document or information or any

8  other document or information, or with respect to the subject matter thereof, and

9  Plaintiff reserves the right to request the return of any such documents or information

10  and all copies thereof. Plaintiff reserves the right to object to the use of any such

11  documents or information at any time during this action or in any subsequent

12  proceeding.

13        5.      Plaintiff's responses and objections to the Interrogatories are based upon

14  information currently available to Plaintiff, and are made subject to the Specific

15  Objections below. Plaintiff reserves the right to alter, amend, supplement, or revise

16  any responses or objections as further information is discovered.

17                         **SPECIFIC OBJECTIONS TO DEFINITIONS**

18        The following Specific Objections to Definitions apply to each and every

19  Interrogatory that includes any of the following defined terms, and shall have the same

20  force and effect as if fully set forth in Plaintiff's responses to each Interrogatory.

21        1.      Plaintiff objects to the Definition of "You" and "Your" as overly broad,

22  unduly burdensome, and not proportional to the needs of the case to the extent it

23  includes persons or entities not currently within Plaintiff's control.

24        2.      Plaintiff objects to the Definition of "Relevant Period" as overly broad,

25  unduly burdensome, and not proportional to the needs of the case because it purports

26  to impose an obligation on Plaintiff to search for and produce information beyond the

27  agreed-upon period stated in the ESI Protocol.

28

-2-

PLAINTIFF 6421 SELMA WILCOX
HOTEL LLC'S SUPPLEMENTAL
RESPONSES TO DEFENDANT SUNSET
LANDMARK INVESTMNET, LLC'S
FIRST SET OF INTERROGATORIES
CASE NO.: 2:19-CV-05019-ODW (KSx)

## **SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

IDENTIFY all PERSONS that raised any CEQA CHALLENGE TO the TOMMIE PROJECT, THOMSON HOTEL PROJECT, or the SELMA PROJECT.

**RESPONSE TO INTERROGATORY NO. 1:**

6421 SELMA WILCOX HOTEL LLC objects to this Interrogatory as overbroad to the extent it seeks the identity of "all PERSONS," that "raised any CEQA CHALLENGE." 6421 SELMA WILCOX HOTEL LLC also objects to this Interrogatory as the terms "raised" and "any CEQA CHALLENGE" are undefined, vague, and ambiguous. 6421 SELMA WILCOX HOTEL LLC also objects to this Interrogatory because it calls for information already in Defendant's possession or information that is publicly available.

Subject to and without waiving the foregoing objections, 6421 SELMA WILCOX HOTEL LLC responds as follows: The following individuals are believed to have asserted CEQA challenges to the Tommie, Thompson, and/or the Selma Wilcox developments: Sunset Landmark Investment, LLC; Casey Maddren; Lauren Farmer and Liliana Hernandez, Unite Here Local 11; Mama Wilcox Land, LLC; Alexis Olbrei, Southwest Carpenters; Fran Offenhauser, Hollywood Heritage; and David Carrera.

**INTERROGATORY NO. 2:**

For each PERSON IDENTIFIED in response to Interrogatory No. DESCRIBE the CEQA CHALLENGE of that PERSON.

**RESPONSE TO INTERROGATORY NO. 2:**

6421 SELMA WILCOX HOTEL LLC objects to this Interrogatory as overbroad as it seeks the identity of "all PERSONS," which is not limited to those lawsuits filed by Defendants. 6421 SELMA WILCOX HOTEL LLC also objects to this Interrogatory as the term "CEQA CHALLENGE" as defined is vague, and

1  ambiguous. 6421 SELMA WILCOX HOTEL LLC also objects to this Interrogatory
2  because it calls for information already in Defendants' possession or information that
3  is publicly available.

4      Subject to and without waiving the foregoing objections, 6421 SELMA
5  WILCOX HOTEL LLC responds as follows: Descriptions of each CEQA challenge
6  are found in the appeals and/or lawsuits filed by the appellant, all of which are matters
7  of public record. 6421 SELMA WILCOX HOTEL LLC is unable to described these
8  challenges with any further specificity based on the vague nature of the request.

9  **INTERROGATORY NO. 3:**

10     For each CEQA CHALLENGE described in response to Interrogatory No. 2,
11  DESCRIBE what, if any resolution, was reached with respect to each CEQA
12  CHALLENGE.

13  **RESPONSE TO INTERROGATORY NO. 3:**

14     6421 SELMA WILCOX HOTEL LLC objects to this Interrogatory as
15  overbroad as it seeks information about "any resolution." 6421 SELMA WILCOX
16  HOTEL LLC also objects to this Interrogatory as the terms "resolution" and "CEQA
17  CHALLENGE" are undefined, vague, and ambiguous.

18     Subject to and without waiving the foregoing objections, 6421 SELMA
19  WILCOX HOTEL LLC responds as follows: The CEQA challenges asserted by
20  Sunset Landmark Investment, LLC (Tommie and Thompson only); Mama Wilcox
21  Land, LLC (Tommie only); and Lauren Farmer and Liliana Hernandez, Unite Here
22  Local 11 (Tommie only) were resolved through settlement agreements. The
23  remaining CEQA challenges were denied by the City of Los Angeles and/or courts.

24
25  **INTERROGATORY NO. 4:**

26
27
28

PLAINTIFF 6421 SELMA WILCOX
HOTEL LLC'S SUPPLEMENTAL
RESPONSES TO DEFENDANT SUNSET
LANDMARK INVESTMNET, LLC'S
FIRST SET OF INTERROGATORIES
CASE NO.: 2:19-CV-05019-ODW (KSx)

1    By: */s/ Susan K. Leader*

2    Susan K. Leader

3

4    Attorneys for Plaintiff

5    Relevant Group, LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF 6421 SELMA WILCOX
HOTEL LLC'S SUPPLEMENTAL
RESPONSES TO DEFENDANT SUNSET
LANDMARK INVESTMNET, LLC'S
FIRST SET OF INTERROGATORIES
CASE NO.: 2:19-CV-05019-ODW (KSx)

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
GRANVILLE C. KAUFMAN, State Bar No. 330603
gkaufman@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
Telephone: (323) 210-2900
Facsimile:  (866) 974.7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
KAREN KWOK, State Bar No. 307464
kkwok@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:       (650) 493-9300
Facsimile:  (650) 565-5100

Attorneys for Plaintiff
Relevant Group, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, | Case No.: 2:19-cv-05019-ODW (KSx) |
| | **PROOF OF SERVICE** |
| Plaintiffs, | |
| v. | |
| STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, | |
| Defendants. | |

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  633 West Fifth Avenue, Suite 1550.  On **December 17, 2021**, I served the foregoing document(s) described as:

1. ***Plaintiff 1541 Wilcox Hotel LLC's Supplemental Responses to Defendant Sunset Landmark Investment, LLC's First Set of Interrogatories;***

2. ***Plaintiff 6421 Selma Wilcox Hotel LLC's Supplemental Responses to Defendant Sunset Landmark Investment, LLC's First Set of Interrogatories ;***

3. ***Plaintiff 6516 Tommie Hotel LLC's Supplemental Responses to Defendant Sunset Landmark Investment, LLC's First Set of Interrogatories ;***

4. ***Plaintiff Relevant Group, LLC's Supplemental Responses to Defendant Sunset Landmark Investment LLC's First Set of Interrogatories;***

5. ***Plaintiff Relevant Group, LLC's Objections and Responses to Defendant Sunset Landmark Investment LLC's Second Set of Interrogatories; and***

6. ***Proof of Service.***

on the interested party(ies) below, using the following means:

## SEE ATTACHED SERVICE LIST

☐ BY UNITED STATES MAIL   I enclosed the documents in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated above and placed the envelope(s) for collection and mailing, following our ordinary business practices.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at Los Angeles, California.

☐ BY OVERNIGHT DELIVERY   I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the respective address(es) of the party(ies) stated above.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION.  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ (STATE)  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

1

PROOF OF SERVICE

☒ (FEDERAL)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 17, 2021 at Los Angeles, California.

*/s/ Laura A. Brown*
Laura A. Brown

**SERVICE LIST**
Attorneys for Defendants
Stephen "Saeed" Nourmand
The Sunset Landmark Investment LLC and
Nourmand & Associates

NORTON ROSE FULBRIGHT US LLP
James H. Turken
James.turken@nortonrosefulbright.com
Phillip R. Di Tullio
Phillip.ditullio@nortonrosefulbright.com
Neil Thakor
Neil.thakor@nortonrosefulbright.com
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: 213.892.9200


THE MALONEY FIRM, APC
Patrick M. Maloney
pmaloney@maloneyfirm.com
Gregory M. Smith
gsmith@maloneyfirm.com
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
Telephone: 310.540.1505

PROOF OF SERVICE

# EXHIBIT M

1  **WILSON SONSINI GOODRICH & ROSATI**
   **Professional Corporation**
2  SUSAN K. LEADER, State Bar No. 216743
   sleader@wsgr.com
3  633 West Fifth Avenue, Suite 1550
   Los Angeles, CA 90071-2027
4  Telephone:  (323) 210-2900
   Facsimile:   (866) 974.7329
5
   **WILSON SONSINI GOODRICH & ROSATI**
6  **Professional Corporation**
   DALE R. BISH, State Bar No. 235390
7  dbish@wsgr.com
   CHARLES A. TALPAS, State Bar No. 308505
8  ctalpas@wsgr.com
   650 Page Mill Road
9  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
10 Facsimile:   (650) 565-5100

11 Attorneys for Plaintiffs Relevant Group, LLC,
   1541 Wilcox Hotel LLC, 6516 Tommie Hotel
12 LLC and 6421 Selma Wilcox Hotel LLC

13

14                **UNITED STATES DISTRICT COURT**

15                **CENTRAL DISTRICT OF CALIFORNIA**

16
   RELEVANT GROUP, LLC, a Delaware       ) Case No.: 2:19-cv-05019-ODW
17 limited liability company; 1541 WILCOX   ) (KSx)
   HOTEL LLC, a Delaware limited liability  )
18 company; 6516 TOMMIE HOTEL LLC; a    ) **PLAINTIFF RELEVANT GROUP,**
   Delaware limited liability company; and   ) **LLC'S RESPONSES TO**
19 6421 SELMA WILCOX HOTEL LLC, a      ) **DEFENDANT NOURMAND &**
   California limited liability company,      ) **ASSOCIATES' REQUESTS FOR**
20                                        ) **ADMISISON (SET ONE)**
                Plaintiffs,               )
21                                        )
         v.                               )
22                                        )
   STEPHAN "SAEED" NOURMAND, an          )
23 individual; THE SUNSET LANDMARK       )
   INVESTMENT LLC, a California limited    )
24 liability company; NOURMAND &         )
   ASSOCIATES, a California corporation;    )
25 and DOES 1-10,                         )
                                          )
26                Defendants.             )
   _____)
27

28

Subject to and without waiving the foregoing objections, Relevant responds as follows: Relevant admits on information and belief that Mohamad Iravani has served as N&A's Chief Financial Officer.  Relevant denies on information and belief that Mohamad Iravani was an officer of Sunset Landmark.

**REQUEST FOR ADMISSION NO. 5**

Admit that attending a public hearing at Los Angeles City Hall on the development of a hotel is lawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5**

Relevant objects to this Request on the grounds that it is overly broad. Relevant also objects to this Request as vague and ambiguous, including in its use of the term "lawful."  Relevant further objects to this Request on the grounds that it calls for a legal conclusion.  Moreover, Relevant objects to this Request on the grounds that it calls for a hypothetical, not a fact.

Subject to and without waiving the foregoing objections, Relevant responds as follows: Relevant admits that attending a public hearing at Los Angeles City Hall is generally lawful.

**REQUEST FOR ADMISSION NO. 6**

Admit that signing a petition at a public hearing at Los Angeles City Hall on the development of a hotel is lawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6**

Relevant objects to this Request on the grounds that it is overly broad. Relevant also objects to this Request as vague and ambiguous, including in its use of the term "lawful."  Relevant further objects to this Request on the grounds that it calls for a legal conclusion.  Moreover, Relevant objects to this Request on the grounds that it calls for a hypothetical, not a fact.

Subject to and without waiving the foregoing objections, Relevant responds as follows: Relevant admits that signing a petition at a public hearing at Los Angeles City Hall is generally lawful.

**REQUEST FOR ADMISSION NO. 7**

Admit that reviewing publicly available design plans regarding the development of a hotel in Los Angeles County is lawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7**

Relevant objects to this Request on the grounds that it is overly broad. Relevant also objects to this Request as vague and ambiguous, including in its use of the term "lawful."  Relevant further objects to this Request on the grounds that it calls for a legal conclusion.  Moreover, Relevant objects to this Request on the grounds that it calls for a hypothetical, not a fact.

Subject to and without waiving the foregoing objections, Relevant responds as follows: Relevant admits that reviewing materials at a public hearing at Los Angeles City Hall is generally lawful

**REQUEST FOR ADMISSION NO. 8**

Admit that attached hereto as Exhibit A is a true and correct copy of the Order/Ruling, dated December 19, 2018, entered by the Court in *Farmer v. City of Los Angeles,* Los Angeles County Superior Court Case No. BS169855 (the "Farmer Case").

**RESPONSE TO REQUEST FOR ADMISSION NO. 8**

Relevant admits that Exhibit A appears to be a true and correct copy of the Order/Ruling, dated December 19, 2018, entered by the Court in the Farmer Case.

**REQUEST FOR ADMISSION NO. 9**

Admit that the Farmer Case concerned the Tommie Hotel.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9**

Relevant objects to this Request as vague and ambiguous, including in its use of the term "concerned."

Subject to and without waiving the foregoing objections, Relevant responds as follows: Relevant admits that the Tommie Hotel project was the project at issue in the Farmer Case.

Subject to and without waiving the foregoing objections, Relevant responds as follows: Relevant denies that the Court's Minute Order, dated January 11, 2021, in the Selma Lawsuit demonstrates that Sunset Landmark's CEQA lawsuit relating to the Selma Hotel project was not a sham lawsuit filed solely to harm a competing project and extort money from Plaintiffs.

Dated: April 28, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Susan K. Leader*_____
Susan K. Leader

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel LLC, 6516 Tommie Hotel LLC and 6421 Selma Wilcox Hotel LLC

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
Telephone:   (323) 210-2900
Facsimile:    (866) 974.7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Plaintiffs Relevant Group, LLC,
1541 Wilcox Hotel LLC, 6516 Tommie Hotel
LLC and 6421 Selma Wilcox Hotel LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,<br><br>                Plaintiffs,<br><br>        v.<br><br>STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10,<br><br>                Defendants. | Case No.: 2:19-cv-05019-ODW (KSx)<br><br>**PLAINTIFF 1541 WILCOX HOTEL LLC'S RESPONSES TO DEFENDANT NOURMAND & ASSOCIATES' REQUESTS FOR ADMISISON (SET ONE)** |

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits on information and belief that Mohamad Iravani has served as N&A's Chief Financial Officer.  Plaintiff denies on information and belief that Mohamad Iravani was an officer of Sunset Landmark.

**REQUEST FOR ADMISSION NO. 5**

Admit that attending a public hearing at Los Angeles City Hall on the development of a hotel is lawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5**

Plaintiff objects to this Request on the grounds that it is overly broad. Plaintiff also objects to this Request as vague and ambiguous, including in its use of the term "lawful."  Plaintiff  further objects to this Request on the grounds that it calls for a legal conclusion.  Moreover, Plaintiff objects to this Request on the grounds that it calls for a hypothetical, not a fact.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits that attending a public hearing at Los Angeles City Hall is generally lawful.

**REQUEST FOR ADMISSION NO. 6**

Admit that signing a petition at a public hearing at Los Angeles City Hall on the development of a hotel is lawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6**

Plaintiff objects to this Request on the grounds that it is overly broad. Plaintiff also objects to this Request as vague and ambiguous, including in its use of the term "lawful."  Plaintiff further objects to this Request on the grounds that it calls for a legal conclusion.  Moreover, Plaintiff objects to this Request on the grounds that it calls for a hypothetical, not a fact.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits that signing a petition at a public hearing at Los Angeles City Hall is generally lawful.

**REQUEST FOR ADMISSION NO. 7**

Admit that reviewing publicly available design plans regarding the development of a hotel in Los Angeles County is lawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7**

Plaintiff objects to this Request on the grounds that it is overly broad. Plaintiff also objects to this Request as vague and ambiguous, including in its use of the term "lawful." Plaintiff further objects to this Request on the grounds that it calls for a legal conclusion. Moreover, Plaintiff objects to this Request on the grounds that it calls for a hypothetical, not a fact.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits that reviewing materials at a public hearing at Los Angeles City Hall is generally lawful

**REQUEST FOR ADMISSION NO. 8**

Admit that attached hereto as Exhibit A is a true and correct copy of the Order/Ruling, dated December 19, 2018, entered by the Court in *Farmer v. City of Los Angeles,* Los Angeles County Superior Court Case No. BS169855 (the "Farmer Case").

**RESPONSE TO REQUEST FOR ADMISSION NO. 8**

Plaintiff admits that Exhibit A appears to be a true and correct copy of the Order/Ruling, dated December 19, 2018, entered by the Court in the Farmer Case.

**REQUEST FOR ADMISSION NO. 9**

Admit that the Farmer Case concerned the Tommie Hotel.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9**

Plaintiff objects to this Request as vague and ambiguous, including in its use of the term "concerned."

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits that the Tommie Hotel project was the project at issue in the Farmer Case.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff denies that the Court's Minute Order, dated January 11, 2021, in the Selma Lawsuit demonstrates that Sunset Landmark's CEQA lawsuit relating to the Selma Hotel project was not a sham lawsuit filed solely to harm a competing project and extort money from Plaintiffs.

Dated: May 2, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Susan K. Leader*
Susan K. Leader

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel LLC, 6516 Tommie Hotel LLC and 6421 Selma Wilcox Hotel LLC

1   **WILSON SONSINI GOODRICH & ROSATI**
    **Professional Corporation**
2   SUSAN K. LEADER, State Bar No. 216743
    sleader@wsgr.com
3   633 West Fifth Avenue, Suite 1550
    Los Angeles, CA 90071-2027
4   Telephone:  (323) 210-2900
    Facsimile:   (866) 974.7329
5
    **WILSON SONSINI GOODRICH & ROSATI**
6   **Professional Corporation**
    DALE R. BISH, State Bar No. 235390
7   dbish@wsgr.com
    CHARLES A. TALPAS, State Bar No. 308505
8   ctalpas@wsgr.com
    650 Page Mill Road
9   Palo Alto, CA 94304-1050
    Telephone:  (650) 493-9300
10  Facsimile:   (650) 565-5100

11  Attorneys for Plaintiffs Relevant Group, LLC,
    1541 Wilcox Hotel LLC, 6516 Tommie Hotel
12  LLC and 6421 Selma Wilcox Hotel LLC

13

14                  **UNITED STATES DISTRICT COURT**

15               **CENTRAL DISTRICT OF CALIFORNIA**

16
    RELEVANT GROUP, LLC, a Delaware        ) Case No.: 2:19-cv-05019-ODW
17  limited liability company; 1541 WILCOX ) (KSx)
    HOTEL LLC, a Delaware limited liability )
18  company; 6516 TOMMIE HOTEL LLC; a      ) **PLAINTIFF 6516 TOMMIE**
    Delaware limited liability company; and ) **HOTEL LLC'S RESPONSES TO**
19  6421 SELMA WILCOX HOTEL LLC, a         ) **DEFENDANT NOURMAND &**
    California limited liability company,   ) **ASSOCIATES' REQUESTS FOR**
20                                          ) **ADMISISON (SET ONE)**
                    Plaintiffs,             )
21                                          )
                                            )
22          v.                              )
                                            )
23  STEPHAN "SAEED" NOURMAND, an           )
    individual; THE SUNSET LANDMARK        )
24  INVESTMENT LLC, a California limited    )
    liability company; NOURMAND &          )
25  ASSOCIATES, a California corporation;   )
    and DOES 1-10,                          )
26                                          )
                    Defendants.             )
27  _____)

28

because it has insufficient knowledge and information.  Moreover, Plaintiff objects to this Request on the grounds that it is compound.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits on information and belief that Mohamad Iravani has served as N&A's Chief Financial Officer.  Plaintiff denies on information and belief that Mohamad Iravani was an officer of Sunset Landmark.

**REQUEST FOR ADMISSION NO. 5**

Admit that attending a public hearing at Los Angeles City Hall on the development of a hotel is lawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5**

Plaintiff objects to this Request on the grounds that it is overly broad. Plaintiff also objects to this Request as vague and ambiguous, including in its use of the term "lawful."  Plaintiff  further objects to this Request on the grounds that it calls for a legal conclusion.  Moreover, Plaintiff objects to this Request on the grounds that it calls for a hypothetical, not a fact.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits that attending a public hearing at Los Angeles City Hall is generally lawful.

**REQUEST FOR ADMISSION NO. 6**

Admit that signing a petition at a public hearing at Los Angeles City Hall on the development of a hotel is lawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6**

Plaintiff objects to this Request on the grounds that it is overly broad. Plaintiff also objects to this Request as vague and ambiguous, including in its use of the term "lawful."  Plaintiff further objects to this Request on the grounds that it calls for a legal conclusion.  Moreover, Plaintiff objects to this Request on the grounds that it calls for a hypothetical, not a fact.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits that signing a petition at a public hearing at Los Angeles City Hall is generally lawful.

**REQUEST FOR ADMISSION NO. 7**

Admit that reviewing publicly available design plans regarding the development of a hotel in Los Angeles County is lawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7**

Plaintiff objects to this Request on the grounds that it is overly broad. Plaintiff also objects to this Request as vague and ambiguous, including in its use of the term "lawful."  Plaintiff further objects to this Request on the grounds that it calls for a legal conclusion.  Moreover, Plaintiff objects to this Request on the grounds that it calls for a hypothetical, not a fact.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits that reviewing materials at a public hearing at Los Angeles City Hall is generally lawful

**REQUEST FOR ADMISSION NO. 8**

Admit that attached hereto as Exhibit A is a true and correct copy of the Order/Ruling, dated December 19, 2018, entered by the Court in *Farmer v. City of Los Angeles,* Los Angeles County Superior Court Case No. BS169855 (the "Farmer Case").

**RESPONSE TO REQUEST FOR ADMISSION NO. 8**

Plaintiff admits that Exhibit A appears to be a true and correct copy of the Order/Ruling, dated December 19, 2018, entered by the Court in the Farmer Case.

**REQUEST FOR ADMISSION NO. 9**

Admit that the Farmer Case concerned the Tommie Hotel.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9**

Plaintiff objects to this Request as vague and ambiguous, including in its use of the term "concerned."

including in its use of the terms "finding" and "objectively baseless."  Plaintiff further objects to this Request on the grounds that it calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff denies that the Court's Minute Order, dated January 11, 2021, in the Selma Lawsuit demonstrates that Sunset Landmark's CEQA lawsuit relating to the Selma Hotel project was not a sham lawsuit filed solely to harm a competing project and extort money from Plaintiffs.


Dated: May 2, 2022                          WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation

                                            By: /s/ Susan K. Leader
                                            Susan K. Leader

                                            Attorneys for Plaintiffs
                                            Relevant Group, LLC, 1541 Wilcox Hotel
                                            LLC, 6516 Tommie Hotel LLC and 6421
                                            Selma Wilcox Hotel LLC

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
Telephone:   (323) 210-2900
Facsimile:   (866) 974.7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Plaintiffs Relevant Group, LLC,
1541 Wilcox Hotel LLC, 6516 Tommie Hotel
LLC and 6421 Selma Wilcox Hotel LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, <br><br> Defendants. | Case No.: 2:19-cv-05019-ODW (KSx) <br><br> **PLAINTIFF 6421 SELMA WILCOX HOTEL LLC'S RESPONSES TO DEFENDANT NOURMAND & ASSOCIATES' REQUESTS FOR ADMISISON (SET ONE)** |

grounds that it improperly seeks information from Plaintiff concerning Defendants' own employee, which is an issue upon which Plaintiff cannot reasonably opine because it has insufficient knowledge and information.  Moreover, Plaintiff objects to this Request on the grounds that it is compound.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits on information and belief that Mohamad Iravani has served as N&A's Chief Financial Officer.  Plaintiff denies on information and belief that Mohamad Iravani was an officer of Sunset Landmark.

**REQUEST FOR ADMISSION NO. 5**

Admit that attending a public hearing at Los Angeles City Hall on the development of a hotel is lawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5**

Plaintiff objects to this Request on the grounds that it is overly broad. Plaintiff also objects to this Request as vague and ambiguous, including in its use of the term "lawful."  Plaintiff  further objects to this Request on the grounds that it calls for a legal conclusion.  Moreover, Plaintiff objects to this Request on the grounds that it calls for a hypothetical, not a fact.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits that attending a public hearing at Los Angeles City Hall is generally lawful.

**REQUEST FOR ADMISSION NO. 6**

Admit that signing a petition at a public hearing at Los Angeles City Hall on the development of a hotel is lawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6**

Plaintiff objects to this Request on the grounds that it is overly broad. Plaintiff also objects to this Request as vague and ambiguous, including in its use of the term "lawful."  Plaintiff further objects to this Request on the grounds that it

calls for a legal conclusion.  Moreover, Plaintiff objects to this Request on the grounds that it calls for a hypothetical, not a fact.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits that signing a petition at a public hearing at Los Angeles City Hall is generally lawful.

**REQUEST FOR ADMISSION NO. 7**

Admit that reviewing publicly available design plans regarding the development of a hotel in Los Angeles County is lawful.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7**

Plaintiff objects to this Request on the grounds that it is overly broad. Plaintiff also objects to this Request as vague and ambiguous, including in its use of the term "lawful."  Plaintiff further objects to this Request on the grounds that it calls for a legal conclusion.  Moreover, Plaintiff objects to this Request on the grounds that it calls for a hypothetical, not a fact.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff admits that reviewing materials at a public hearing at Los Angeles City Hall is generally lawful

**REQUEST FOR ADMISSION NO. 8**

Admit that attached hereto as Exhibit A is a true and correct copy of the Order/Ruling, dated December 19, 2018, entered by the Court in *Farmer v. City of Los Angeles,* Los Angeles County Superior Court Case No. BS169855 (the "Farmer Case").

**RESPONSE TO REQUEST FOR ADMISSION NO. 8**

Plaintiff admits that Exhibit A appears to be a true and correct copy of the Order/Ruling, dated December 19, 2018, entered by the Court in the Farmer Case.

**REQUEST FOR ADMISSION NO. 9**

Admit that the Farmer Case concerned the Tommie Hotel.

the Selma Lawsuit was not objectively baseless.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16**

Plaintiff objects to this Request on the grounds that it is overly broad. Plaintiff also objects to this Request as unintelligible vague, and ambiguous, including in its use of the terms "finding" and "objectively baseless."  Plaintiff further objects to this Request on the grounds that it calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff denies that the Court's Minute Order, dated January 11, 2021, in the Selma Lawsuit demonstrates that Sunset Landmark's CEQA lawsuit relating to the Selma Hotel project was not a sham lawsuit filed solely to harm a competing project and extort money from Plaintiffs.

Dated: May 2, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Susan K. Leader*
Susan K. Leader

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel LLC, 6516 Tommie Hotel LLC and 6421 Selma Wilcox Hotel LLC

# EXHIBIT N

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
Telephone:   (323) 210-2900
Facsimile:    (866) 974.7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:    (650) 565-5100

Attorneys for Plaintiffs Relevant Group,
LLC, 1541 Wilcox Hotel LLC, 6516
Tommie Hotel LLC and 6421 Selma Wilcox
Hotel LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,<br><br>                    Plaintiffs,<br><br>          v.<br><br>STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10,<br><br>                    Defendants. | Case No.: 2:19-cv-05019-ODW (KSx)<br><br>**PLAINTIFF RELEVANT GROUP, LLC'S RESPONSES TO DEFENDANT NOURMAND & ASSOCIATES' INTERROGATORIES (SET ONE)** |

**PROPOUNDING PARTY:**     **DEFENDANT NOURMAND & ASSOCIATES**

**RESPONDING PARTY:**     **PLAINTIFF RELEVANT GROUP, LLC**

**SET NUMBER:**                  **ONE**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Relevant Group, LLC ("Relevant" or "Plaintiff"), by and through its undersigned counsel, hereby responds and objects to Defendant Nourmand & Associates ("N&A") First Set of Interrogatories to Plaintiff (the "Interrogatories") as follows:

## **RESERVATION OF RIGHTS**

1.      Plaintiff provides these responses and objections without waiving or intending to waive, and, on the contrary, preserving and intending to preserve:

a.      the right to object on any ground to the use of these responses and objections or the subject matter thereof in any proceeding in this or any other action;

b.      the right to object on any ground to a request for further responses to the Interrogatories or any other discovery request involving or relating to the subject matter of the Interrogatories responded to herein; and

c.      the right at any time to supplement, amend, correct, add to, or clarify any of the responses and objections provided herein, as Plaintiff has not completed its investigation relating to this action, has not completed discovery, and has not completed preparation for trial.

2.      In responding to the Interrogatories, Plaintiff does not admit, concede, agree to the accuracy of any definitions of terms or descriptions of any facts, events, pleadings, or documents contained therein.  Plaintiff specifically does not waive its objections to any definition as vague, ambiguous, or overbroad and reserves the right to define terms differently or more specifically from the way they are defined in Interrogatories.  Plaintiff also does not admit, concede, or agree that any instructions contained in the Interrogatories are binding or permissible under the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the Central District

of California ("Local Rules"), or any other applicable law or rules.

3. In each and every instance in which Plaintiff asserts an objection to an Interrogatory, such objection shall be construed to preserve all of Plaintiff's rights to make similar objections in any future supplemental response to the Interrogatories. Moreover, a failure to object herein shall not constitute a waiver of any objections that Plaintiff may make in future supplemental responses.

4. Inadvertent production or disclosure of information or documents otherwise protected from discovery under the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection from disclosure, shall not constitute a waiver of such privilege, immunity, or protection, either generally or specifically, with respect to such document or information or any other document or information, or with respect to the subject matter thereof, and Plaintiff reserves the right to request the return of any such documents or information and all copies thereof. Plaintiff reserves the right to object to the use of any such documents or information at any time during this action or in any subsequent proceeding.

5. Plaintiff's responses and objections to the Interrogatories are based upon information currently available to Plaintiff and are made subject to the Specific Objections below. Plaintiff expressly reserves the right to alter, amend, supplement, or revise any responses or objections as further information is discovered.

6. Except for explicit facts admitted herein, no admissions of any nature whatsoever are implied or should be inferred from Plaintiff's responses or objections to these Interrogatories.

## **GENERAL OBJECTIONS**

The following Objections apply to each and every Interrogatory that includes any of the following defined terms and shall have the same force and effect as if fully set forth in Plaintiff's responses to each Interrogatory.

1.  Plaintiff objects to the Definition of "You" and "Your" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case as the terms attempt to extend the scope of these requests to individuals and entities other than Plaintiff.  Further, the definition potentially implicates the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

2.  Plaintiff objects to the Definition of "N&A" as overly broad, unduly burdensome and not proportional to the needs of the case.

3.  Plaintiff objects to the INSTRUCTIONS to the extent that they attempt to impose burdens on Plaintiff that are more onerous or broader than those established by the Federal Rules of Civil Procedure and this Court's Local Rules. Plaintiff shall not do anything more than that which is required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

4.  In addition to the specific objections here, Plaintiff objects to each and every Interrogatory to the extent they seek information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Further, Plaintiff objects to the extent any request infringes on any privacy rights or is unduly burdensome, unreasonable, or overbroad.

## **RESPONSES TO INTERROGATORIES**

### **INTERROGATORY NO. 1**

Identify by stating the case name and number each and every sham lawsuit YOU contend was initiated by the "Nourmand Enterprise," as "Nourmand Enterprise" defined in Paragraph 2 of the Third Amended Complaint on file in this action.

### **RESPONSE TO INTERROGATORY NO. 1**

Relevant objects to this Interrogatory as vague, ambiguous, and overbroad as to time with respect to the phrase "each and every sham lawsuit" initiated by the Nourmand Enterprise.  Relevant also objects to this Interrogatory on the grounds

argument nonetheless.  The court ultimately agreed that the city could merely clarify the record for the same reason that counsel previously anticipated;

- Although the Nourmand Enterprise vehemently opposed the Thompson Hotel, Tommie Hotel, and Selma Hotel projects, they did not oppose similar development projects in the Hollywood area.

## INTERROGATORY NO. 3

Separately, for each lawsuit identified in Response to Interrogatory No. 1, identify with particularity each and every act YOU contend N&A took in furtherance thereof.

## RESPONSE TO INTERROGATORY NO. 3

Relevant objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrase "each and every act" N&A took in furtherance of each 'lawsuit' identified in Response to Interrogatory No. 1.  Relevant also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case.  Relevant further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control.  Relevant objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 2.

Subject to and without waiving the foregoing objections, Relevant responds as follows: Relevant does not contend that N&A filed the lawsuits identified in response to Interrogatory No. 1.  According to documents produced by defendants, it was N&A staff that identified and initially drafted materials sent to the City and that subsequently permeated the lawsuits identified in Response to Interrogatory No. 1 regarding the allegedly improper removal of "D Development Limitation"—an argument that lacks merit.

## INTERROGATORY NO. 4

Identify with specificity each and every predicate YOU allege was committed by the Nourmand Enterprise.

**<u>RESPONSE TO INTERROGATORY NO. 4</u>**

Relevant objects to this Interrogatory as vague and ambiguous with respect to the phrase "each and every predicate." Further, Relevant objects that the Interrogatory on the grounds that it is overbroad and burdensome as to "each and every predicate YOU allege was committed by the Nourmand Enterprise." Relevant also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case. Relevant further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control. Further, Relevant objects that these Interrogatory calls for a legal conclusion. Subject to and without waiving the foregoing objections, Relevant responds as follows:

The Nourmand Enterprise committed multiple predicate act of extortion. The facts and events underlying those predicate acts of extortion include:

- Meetings and communications with Relevant Group principals in March 2015 in order to make extortionate demands;

- On March 13, 2015, the Nourmand Enterprise submitted written comments in opposition to the Thompson Hotel project submitted to City Council members;

- On March 18, 2015, the Nourmand Enterprise instructed subordinates to attend and/or provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning, at which the Nourmand Enterprise caused to be circulated and signed a petition containing false and misleading statements;

- On April 17, 2015, the Nourmand Enterprise concocted and submitted written comments in opposition to the Thompson Hotel project submitted to City officials;

- Meetings and communications with Relevant Group principals in May and June 2015 in order to make extortionate demands;

- On September 9, 2015, the Nourmand Enterprise submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning;

- On September 10, 2015, the Nourmand Enterprise provided oral testimony in opposition to the Thompson Hotel project provided at a hearing before the City Planning Commission;

- On November 3, 2015, the Nourmand Enterprise filed a frivolous Appeal of City Planning Committee action approving Thompson Hotel project entitlements and adoption of MND;

- On January 26, 2016, the Nourmand Enterprise provided oral testimony in opposition to the Thompson Hotel project provided at Planning and Land Use Management Committee meeting;

- Correspondences during January and February 2016 to communicate extortionate demands;

- On March 3, 2016, the Nourmand Enterprise filed a verified Petition for Writ of Mandamus regarding the Selma Wilcox Hotel project;

- On May 5, 2016, the Nourmand Enterprise submitted written comments in opposition to the Thompson Hotel project submitted to the CRA/LA;

- On August 12, 2016, the Nourmand Enterprise filed a frivolous appeal with the Department of Building and Safety to suspend permits issued for demolition, plumbing and HVAC work on the Thompson Hotel project;

- On October 18, 2016, the Nourmand Enterprise filed another Appeal with Director of Planning, challenging the decision by the Department of Building and Safety to deny Sunset Landmark's

August 12, 2016 appeal;

- On January 25, 2017, the Nourmand Enterprise submitted written comments in opposition to the Tommie Hotel project submitted to the City Planning Commission;

- On January 26, 2017, the Nourmand Enterprise provided oral testimony in opposition to the Tommie Hotel project provided at hearing before the City Planning Committee;

- On February 15, 2017, the Nourmand Enterprise filed an appeal with the Planning and Land Use Committee related to City Planning Committee approvals for Tommie Hotel project;

- Correspondences and phone calls during April 2017 to communicate extortionate demands;

- On April 25, 2017, the Nourmand Enterprise submitted written comments in opposition to the Tommie Hotel project submitted to the Planning and Land Use Management Committee and oral testimony at the Planning and Land Use Management Committee meeting;

- Correspondences and meetings during May and June 2017 to communicate extortionate demands and threats;

- On June 9, 2017, the Nourmand Enterprise filed a verified Petition for Writ of Mandamus with respect to the Tommie project;

- Correspondences and meetings between July 2017 and January 2018 to communicate extortionate demands and threats;

- Correspondences with Relevant Group principals between January and March 2018 in order to enforce extortionate payments from Plaintiffs;

- On March 28, 2018, the Nourmand Enterprise submitted written comments in opposition to the Selma Hotel project submitted to the City Planning Commission;

- On or around March 29, 2018, the Nourmand Enterprise met with a principal of Relevant Group in order to communicate extortionate demand and threats;

- On July 12, 2018, the Nourmand Enterprise attended a City Planning Commission meeting related to the Selma Hotel project in order to provide oral testimony in opposition to the Selma Hotel project;

- On July 13, 201, the Nourmand Enterprise submitted written comments in opposition to the Schrader Hotel project submitted to City Planning Commission;

- On August 10, 2018, the Nourmand Enterprise filed an appeal of the City Planning Commission approvals in connection with the Schrader Hotel project;

- On September 6, 2018, the Nourmand Enterprise filed an appeal of City Planning Commission approvals in connection with Selma Hotel project;

- Beginning in or around September 2018, the Nourmand Enterprise recruited Casey Maddren to draft and send a letter on behalf of UN4LA, alleging criminal acts against Relevant Group and City officials, in order to create fear of an investigation and threaten further delays to Relevant Group projects, in support of the Nourmand Enterprise's extortionate demands;

- In October 2018, the Nourmand Enterprise arranged and attended a meeting with principals of the Schrader Hotel project in order to further threaten delays against (perceived) Relevant Group projects and further to attempt to communicate extortionate demands;

- On November 27, 2018, the Nourmand Enterprise attended a PLUM Committee hearing in support of its meritless appeal of the Selma Hotel project;
- On April 2, 2019, the Nourmand Enterprise filed a verified Petition for Writ of Mandamus regarding the Selma Hotel project.

**INTERROGATORY NO. 5**

Separately, for each predicate act identified in Response to Interrogatory No. 4, identify with particularity each and every act YOU contend N&A took in furtherance thereof.

**RESPONSE TO INTERROGATORY NO. 5**

Relevant objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrase "each and every act" N&A took in furtherance of each 'predicate' identified in Response to Interrogatory No. 4. Relevant also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case. Relevant further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control. Relevant objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 4.

N&A provided support throughout the duration of the scheme by providing personnel and resources to carry out the actions described in the Response to Interrogatory No. 4. N&A employees served as a recruiting pool and acted as the boots on the ground for Nourmand and Sunset Landmark. In addition, N&A employees, including Michael Nourmand, Mohamad Iravani, Carolyn Rae Cole, Sarah Gould, Rachelle DeCastro, Howard Lorey, Karen Lewis and others, under the direction of Saeed Nourmand and/or other members of the Nourmand Enterprise, participated in the following:

- Throughout the scheme, the Nourmand Enterprise would use office personnel, office space, computer equipment and servers, and other

-17-

N&A assets in furtherance of the predicate acts.  Despite having "no role" at N&A himself, Saeed Nourmand would regularly use, direct, and assign N&A staff, including Mohammad Iravani, Sarah Gould, Rachelle DeCastro and Carolyn Rae Cole, for the benefit of the Nourmand Enterprise;

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in

opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

**INTERROGATORY NO. 6**

Describe with particularity each and every specific act or omission YOU contend N&A took in connection with the alleged Nourmand Enterprise, including identifying the date of the acts or omissions, the person acting on behalf of N&A, and the acts or omissions taken on behalf of Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 6**

Relevant objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "each and every specific act or omission" N&A took "in connection with" the Nourmand Enterprise. Relevant further objects because the Interrogatory's requests to identify "the date of the acts or omissions, the persons acting on behalf of N&A, and the acts or omissions taken on behalf of the Nourmand Enterprise" are overbroad, ambiguous, and burdensome. Relevant also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case. Relevant further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control. Relevant objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Relevant objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 5.

Subject to and without waiving the foregoing objections, Relevant responds as follows:

N&A provided support throughout the duration of the scheme by providing personnel and resources to carry out the actions described in the Response to Interrogatory No. 4. N&A employees served as a recruiting pool and acted as the boots on the ground for Nourmand and Sunset Landmark. In addition, N&A employees, including Michael Nourmand, Mohamad Iravani, Carolyn Rae Cole, Sarah Gould, Rachelle DeCastro, Howard Lorey, Karen Lewis and others, under the direction of Saeed Nourmand and/or other members of the Nourmand Enterprise, participated in the following:

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel

project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

**INTERROGATORY NO. 7**

Identify with particularity, including bates number, each and every document YOU contend establishes that N&A was or is part of the Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 7**

Relevant objects to this Interrogatory as overbroad, undefined, and unduly burdensome with respect to the phrase "each and every document" that "establishes" that N&A was or is part of the Nourmand Enterprise. Relevant also objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Plaintiff also objects to this Interrogatory because it calls for information already in Defendant's possession. Relevant further objects to this Interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, the work product doctrine, and/or any other privilege or doctrine. Additionally, Relevant objects that these Interrogatory calls for a legal conclusion. Subject to and without waiving the

1  foregoing objections, Relevant responds that the following documents are examples

2  of N&A's involvement in the Nourmand Enterprise.

3
- SUNSET_00002533
- SUNSET_00002442
4
- SUNSET_00001334
- SUNSET_00001335
5
- SUNSET_00001501
- SUNSET_00001503
6
- N&A_000476
- SUNSET_00001663
7
- SUNSET_00000136
- SUNSET_00000144
8
- SUNSET_00000146
- N&A_000377
9
- N&A_000427
- N&A_000472
10
- N&A_000474
- N&A_000377
11
- SUNSET_00002100
- N&A_000478
12
- SUNSET_00000158
- SUNSET_00000463
13
- N&A_000604
- N&A_000001
14
- N&A_000697
- N&A_000849
15
- N&A_000462
- N&A_000463
16
- SUNSET_00001284
- SUNSET_00001352
17
- SUNSET_00001335.

18
- SUNSET_00001501
- SUNSET_00002131
19
- SUNSET_00002134
- N&A_000692
20
- N&A_000899
- SUNSET_00000178
21
- SUNSET_00000271
- SUNSET_00000272
22
- SUNSET_00000326
- SUNSET_00000327
23
- SUNSET_00000687
- SUNSET_00000305
24
- SUNSET_00000306
- SUNSET_00002266
25
- SUNSET_00002265
- SUNSET_00002134
26
- SUNSET_00002131
- SUNSET_00002073
27
- SUNSET_00002069
- N&A_001054
28
- N&A_001034
- N&A_000699

RELEVANT'S RESPONSES TO N&A'S FIRST SET OF INTERROGATORIES

- N&A_000474
- N&A_000472
- N&A_000449
- N&A_000431
- N&A_000418
- SUNSET_00003803
- SUNSET_00002102
- SUNSET_00002060
- SUNSET_00001664
- The Sunset Landmark Privilege Log

Additional documents are undoubtedly within N&A's possession but it now appears that N&A did not search for relevant documents from N&A employees.

**INTERROGATORY NO. 8**

State with specificity all conduct by Mohamad Iravani that YOU contend was performed on behalf of N&A, as opposed to any other defendant, to provide material support in connection with the Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 8**

Relevant objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "all conduct by Mohamad Iravani performed" to provide "material support" "in connection with the Nourmand Enterprise." Relevant also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case. Relevant further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control. Relevant objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Relevant objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 6.

Subject to and without waiving the foregoing objections, Relevant responds as follows:

All actions taken by Mohamad Iravani described in response to Interrogatory Nos. 5 and 6 were on behalf of N&A. Additionally, the following acts by Mohamad Iravani were conducted on behalf of N&A:

- Michael Nourmand;

- Myra Nourmand;

- Mohamad Iravani;

- Sarah Gould;

- Rachelle DeCastro;

- Carolyn Rae Cole;

- Karen Lewis;

- Charlene Laraneta;

- Howard Lorey.

**INTERROGATORY NO. 14**

Describe all occasions that N&A offered its own employees to perform "support and administrative" functions for Sunset Landmark and Nourmand, as alleged in paragraph 52 of the TAC, other than sharing an administrative assistant.

**RESPONSE TO INTERROGATORY NO. 14**

Relevant objects to this Interrogatory as overbroad, vague and ambiguous, and burdensome as to "all occasions" that N&A "offered" its own employees.  Relevant further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control.  Relevant further objects to the contention interrogatory propounded prior to the close of fact discovery and reserves its right to supplement its response as additional information becomes known.

Subject to and without waiving the foregoing objections, Relevant responds as follows:

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- On March 3, 2015, Mohamad Iravani and Sarah Gould received correspondence from Saeed Nourmand regarding the Wilcox Hotel;

- On March 6, 2015, pursuant to the request of Saeed Nourmand, Sarah Gould assists with forwarding Wilcox Hotel plans, including an environmental assessment form, a site plan review, renderings, and master land use permit application, to zoning consultant Jeff Seymour, and arranges a call for Saeed Nourmand and Jeff Seymour;

- On March 7, 2015, Sarah Gould forwards public hearing documents to Jeff Seymour regarding the Thompson Hotel with Saeed copied;

- On March 10, 2015, N&A, including Michael Nourmand, rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- On March 11, 2015, Sarah Gould forwards public hearing information for the Thompson Hotel and notes that he would like a host of people to attend, including Karen Lewis at N&A, Howard Lorey at N&A, and Michael Nourmand; she copies Saeed and Mohamad Iravani;

- On March 17, 2015, Howard Nourmand forwards Saeed map project to Sarah Gould to print using the N&A printer;

- On March 17, 2015, Saeed Nourmand forwards his concerns regarding the Thompson Hotel to Carolyn Rae Cole;

- On March 17, 2015, Carolyn Rae Cole emails Fred Gains noting that she has volunteered her assistance to Saeed to provide arguments that could be helpful at the hearing on Wednesday at the City;

- On March 18, 2015, Saeed sends more information regarding 1541 Wilcox project to Carolyn Rae Cole with respect to arguments against the project;

- On March 18, 2015, Carolyn notes that she spoke with Fred Gaines regarding the Wilcox hotel;

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- On March 20, 2015, Sarah Gould is copied on emails for arranging discussions with design of Thompson hotel with the City of Los Angeles;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in

opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- On September 3, 2015, Mohamad Iravani emails plans for Thompson Hotel to Saeed Normand;

- On September 8, 2015, Mohamad Iravani emails 1541 Wilcox Hotel documents to Saeed Nourmand with letter attached;

- On March 3, 2015, Mohamad Iravani received the Wilcox Hotel Drawings from Saeed Nourmand;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018;

- N&A employees, including Mohamad Iravani, enforced extortionate payments, interest, and penalties associated with coerced settlement agreements from Plaintiffs in early 2018.

**INTERROGATORY NO. 15**

State all facts which support YOUR contention that support and administrative functions allegedly provided by N&A to Sunset Landmark and Nourmand "played a key role in the initiation of sham CEQA lawsuits", as alleged in paragraph 52 of the TAC.

**RESPONSE TO INTERROGATORY NO. 15**

Relevant objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "all facts" supporting the contention that N&A "support and administrative functions" for Sunset Landmark and Nourmand played a key role in the initiation of sham CEQA lawsuits. Relevant further objects because the

Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession. Relevant objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known.  Relevant objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 12.  Subject to and without waiving the foregoing objections, Relevant responds as follows:

N&A provided support throughout the duration of the scheme by providing personnel and resources to carry out the actions described in the Responses to Interrogatories No. 4 and 5.  N&A employees served as a recruiting pool and acted as the boots on the ground for Nourmand and Sunset Landmark.   N&A administrative support professionals, including but not limited to Sarah Gould, performed key functions for Nourmand's challenges to the Thompson Hotel project, including but not limited to arranging phone calls with consultants and others, circulating hearing information, coordinating attendance by N&A employees and others at those City hearings, and arranging meetings between Plaintiff and Saeed Nourmand to discuss Saeed Nourmand's demands, among other key tasks.

In addition, N&A employees, including Michael Nourmand, Mohamad Iravani, Carolyn Rae Cole, Sarah Gould, Rachelle DeCastro, Howard Lorey, Karen Lewis and others, under the direction of Saeed Nourmand and/or other members of the Nourmand Enterprise, participated in the following:

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

RELEVANT'S RESPONSES TO N&A'S FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 16**

IDENTIFY each and every N&A employee who YOU contend participated in the drafting of Nourmand's letters objecting to the projects before they were circulated to the City of LA, as alleged in paragraph 53 of the TAC.

**RESPONSE TO INTERROGATORY NO. 16**

Relevant objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "each and every N&A employee" who "participated in the drafting" of Nourmand's letters.  Relevant further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession.   Relevant objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known.

Subject to and without waiving the foregoing objections, Relevant responds as follows: Mohamad Iravani, Carolyn Rae Cole, Michael Nourmand, Sarah Gould, Rachelle DeCastro.

**INTERROGATORY NO. 17**

State the date and attendees for each and every meeting between Nourmand and competing developers that YOU contend was held in N&A's office space, as alleged in paragraph 53 of the TAC.

**RESPONSE TO INTERROGATORY NO. 17**

Relevant objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the request to state "the date and attendees for each and every meeting between Nourmand and competing developers" in N&A's office space.  Relevant further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession.   Relevant objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known.

1   Subject to and without waiving the foregoing objections, Relevant responds
2   as follows:

3   • October 4, 2018 meeting with principals of the Schrader Hotel
4     project, where the parties in attendance included Saeed Nourmand,
5     Jayesh Patel, Bruce Rothman and Laurent Opman.

6   **INTERROGATORY NO. 18**

7   State with specificity all conduct by N&A which YOU contend evidences that
8   N&A "organized and coordinated" meetings between Nourmand and competing
9   developers that were held in N&A's office space, as alleged in paragraph 53 of the
10  TAC.

11  **RESPONSE TO INTERROGATORY NO. 18**

12  Relevant objects to this Interrogatory as overbroad, vague and ambiguous, and
13  burdensome as to the request to state "with specificity all conduct by N&A"
14  "evidenc[ing] that N&A 'organized and coordinated' meetings between Nourmand
15  and competing developers in N&A's office space.  Relevant further objects because
16  the Interrogatory seeks information from third parties and information not within its
17  possession, custody or control or information already in Defendant's possession.
18  Relevant objects to the contention interrogatory as premature and reserves its right
19  to supplement its response as additional information becomes known.  Relevant
20  objects that this Interrogatory is harassing and burdensome given that it is
21  duplicative of Interrogatory No. 17.

22  Subject to and without waiving the foregoing objections, Relevant responds
23  as follows:

24  Saeed Nourmand and Sunset Landmark rely on N&A employees to provide
25  administrative and personnel support generally to carry out the operations of the
26  Nourmand Enterprise.  Meetings between competing developers and the Nourmand
27  Enterprise were held in N&A offices, including a October 4, 2018 meeting with

28

Schrader Hotel project (KOAR) in October 2018, in an attempt to extract monetary payments and/or other concessions.  Once Defendants learned that the Schrader Hotel was not financially vulnerable to project delays at the October 2018 meeting, however, Defendants abandoned any further demand efforts.

Dated:  April 28, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ Susan K. Leader*_____
        Susan K. Leader

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel
LLC, 6516 Tommie Hotel LLC and 6421
Selma Wilcox Hotel LLC

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
GRANVILLE V. KAUFMAN, State Bar No. 330603
gkaufman@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
Telephone:   (323) 210-2900
Facsimile:   (866) 974.7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Plaintiffs Relevant Group,
LLC, 1541 Wilcox Hotel LLC, 6516
Tommie Hotel LLC and 6421 Selma Wilcox
Hotel LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, <br><br> Defendants. | Case No.: 2:19-cv-05019-ODW (KSx) <br><br> **PLAINTIFF 1541 WILCOX HOTEL LLC'S RESPONSES TO DEFENDANT NOURMAND & ASSOCIATES' INTERROGATORIES (SET ONE)** |

**PROPOUNDING PARTY:**     **DEFENDANT NOURMAND & ASSOCIATES**

**RESPONDING PARTY:**      **PLAINTIFF 1541 WILCOX HOTEL LLC**

**SET NUMBER:**                **ONE**

  Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff 1541 Wilcox Hotel LLC ("Wilcox Hotel" or "Plaintiff"), by and through its undersigned counsel, hereby responds and objects to Defendant Nourmand & Associates ("N&A") First Set of Interrogatories to Plaintiff (the "Interrogatories") as follows:

## **<u>RESERVATION OF RIGHTS</u>**

  1. Plaintiff provides these responses and objections without waiving or intending to waive, and, on the contrary, preserving and intending to preserve:

   a. the right to object on any ground to the use of these responses and objections or the subject matter thereof in any proceeding in this or any other action;

   b. the right to object on any ground to a request for further responses to the Interrogatories or any other discovery request involving or relating to the subject matter of the Interrogatories responded to herein; and

   c. the right at any time to supplement, amend, correct, add to, or clarify any of the responses and objections provided herein, as Plaintiff has not completed its investigation relating to this action, has not completed discovery, and has not completed preparation for trial.

  2. In responding to the Interrogatories, Plaintiff does not admit, concede, agree to the accuracy of any definitions of terms or descriptions of any facts, events, pleadings, or documents contained therein.  Plaintiff specifically does not waive its objections to any definition as vague, ambiguous, or overbroad and reserves the right to define terms differently or more specifically from the way they are defined in Interrogatories.  Plaintiff also does not admit, concede, or agree that any instructions contained in the Interrogatories are binding or permissible under the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the Central District

of California ("Local Rules"), or any other applicable law or rules.

3.     In each and every instance in which Plaintiff asserts an objection to an Interrogatory, such objection shall be construed to preserve all of Plaintiff's rights to make similar objections in any future supplemental response to the Interrogatories.  Moreover, a failure to object herein shall not constitute a waiver of any objections that Plaintiff may make in future supplemental responses.

4.     Inadvertent production or disclosure of information or documents otherwise protected from discovery under the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection from disclosure, shall not constitute a waiver of such privilege, immunity, or protection, either generally or specifically, with respect to such document or information or any other document or information, or with respect to the subject matter thereof, and Plaintiff reserves the right to request the return of any such documents or information and all copies thereof. Plaintiff reserves the right to object to the use of any such documents or information at any time during this action or in any subsequent proceeding.

5.     Plaintiff's responses and objections to the Interrogatories are based upon information currently available to Plaintiff and are made subject to the Specific Objections below.  Plaintiff expressly reserves the right to alter, amend, supplement, or revise any responses or objections as further information is discovered.

6.     Except for explicit facts admitted herein, no admissions of any nature whatsoever are implied or should be inferred from Plaintiff's responses or objections to these Interrogatories.

## **GENERAL OBJECTIONS**

The following Objections apply to each and every Interrogatory that includes any of the following defined terms and shall have the same force and effect as if fully set forth in Plaintiff's responses to each Interrogatory.

1.      Plaintiff objects to the Definition of "You" and "Your" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case as the terms attempt to extend the scope of these requests to individuals and entities other than Plaintiff.  Further, the definition potentially implicates the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

2.      Plaintiff objects to the Definition of "N&A" as overly broad, unduly burdensome and not proportional to the needs of the case.

3.      Plaintiff objects to the INSTRUCTIONS to the extent that they attempt to impose burdens on Plaintiff that are more onerous or broader than those established by the Federal Rules of Civil Procedure and this Court's Local Rules. Plaintiff shall not do anything more than that which is required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

4.      In addition to the specific objections here, Plaintiff objects to each and every Interrogatory to the extent they seek information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Further, Plaintiff objects to the extent any request infringes on any privacy rights or is unduly burdensome, unreasonable, or overbroad.

## RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 1

Identify, by stating the case name and number, each and every sham lawsuit YOU contend was initiated by the "Nourmand Enterprise," as "Nourmand Enterprise" is defined in Paragraph 2 of the Third Amended Complaint on file in this action.

## RESPONSE TO INTERROGATORY NO. 1

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad as to time with respect to the phrase "each and every sham lawsuit" initiated by the Nourmand Enterprise.  Plaintiff also objects to this Interrogatory on the grounds that

argument nonetheless.  The court ultimately agreed that the city could merely clarify the record for the same reason that counsel previously anticipated;

- Although the Nourmand Enterprise vehemently opposed the Thompson Hotel, Tommie Hotel, and Selma Hotel projects, they did not oppose similar development projects in the Hollywood area.

**INTERROGATORY NO. 3**

Separately, for each lawsuit identified in Response to Interrogatory No. 1, identify with particularity each and every act YOU contend N&A took in furtherance thereof.

**RESPONSE TO INTERROGATORY NO. 3**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrase "each and every act" N&A took in furtherance of each 'lawsuit' identified in Response to Interrogatory No. 1.  Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case.  Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control.  Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 2.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff does not contend that N&A filed the lawsuits identified in response to Interrogatory No. 1.  According to documents produced by defendants, it was N&A staff that identified and initially drafted materials sent to the City and that subsequently permeated the lawsuits identified in Response to Interrogatory No. 1 regarding the allegedly improper removal of "D Development Limitation"—an argument that lacks merit.

**INTERROGATORY NO. 4**

Identify with specificity each and every predicate act YOU allege was committed by the Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 4**

Plaintiff objects to this Interrogatory as vague and ambiguous with respect to the phrase "each and every predicate." Further, Plaintiff objects that the Interrogatory on the grounds that it is overbroad and burdensome as to "each and every predicate YOU allege was committed by the Nourmand Enterprise." Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case. Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control. Further, Plaintiff objects that this Interrogatory calls for a legal conclusion. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

The Nourmand Enterprise committed multiple predicate act of extortion. The facts and events underlying those predicate acts of extortion include:

- Meetings and communications with Relevant Group principals in March 2015 in order to make extortionate demands;
- On March 13, 2015, the Nourmand Enterprise submitted written comments in opposition to the Thompson Hotel project submitted to City Council members;
- On March 18, 2015, the Nourmand Enterprise instructed subordinates to attend and/or provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning, at which the Nourmand Enterprise caused to be circulated and signed a petition containing false and misleading statements;
- On April 17, 2015, the Nourmand Enterprise concocted and submitted written comments in opposition to the Thompson Hotel project submitted to City officials;

- Meetings and communications with Relevant Group principals in May and June 2015 in order to make extortionate demands;

- On September 9, 2015, the Nourmand Enterprise submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning;

- On September 10, 2015, the Nourmand Enterprise provided oral testimony in opposition to the Thompson Hotel project provided at a hearing before the City Planning Commission;

- On November 3, 2015, the Nourmand Enterprise filed a frivolous Appeal of City Planning Committee action approving Thompson Hotel project entitlements and adoption of MND;

- On January 26, 2016, the Nourmand Enterprise provided oral testimony in opposition to the Thompson Hotel project provided at Planning and Land Use Management Committee meeting;

- Correspondences during January and February 2016 to communicate extortionate demands;

- On March 3, 2016, the Nourmand Enterprise filed a verified Petition for Writ of Mandamus regarding the Selma Wilcox Hotel project;

- On May 5, 2016, the Nourmand Enterprise submitted written comments in opposition to the Thompson Hotel project submitted to the CRA/LA;

- On August 12, 2016, the Nourmand Enterprise filed a frivolous appeal with the Department of Building and Safety to suspend permits issued for demolition, plumbing and HVAC work on the Thompson Hotel project;

- On October 18, 2016, the Nourmand Enterprise filed another Appeal with Director of Planning, challenging the decision by the Department of Building and Safety to deny Sunset Landmark's

August 12, 2016 appeal;

- On January 25, 2017, the Nourmand Enterprise submitted written comments in opposition to the Tommie Hotel project submitted to the City Planning Commission;

- On January 26, 2017, the Nourmand Enterprise provided oral testimony in opposition to the Tommie Hotel project provided at hearing before the City Planning Committee;

- On February 15, 2017, the Nourmand Enterprise filed an appeal with the Planning and Land Use Committee related to City Planning Committee approvals for Tommie Hotel project;

- Correspondences and phone calls during April 2017 to communicate extortionate demands;

- On April 25, 2017, the Nourmand Enterprise submitted written comments in opposition to the Tommie Hotel project submitted to the Planning and Land Use Management Committee and oral testimony at the Planning and Land Use Management Committee meeting;

- Correspondences and meetings during May and June 2017 to communicate extortionate demands and threats;

- On June 9, 2017, the Nourmand Enterprise filed a verified Petition for Writ of Mandamus with respect to the Tommie project;

- Correspondences and meetings between July 2017 and January 2018 to communicate extortionate demands and threats;

- Correspondences with Relevant Group principals between January and March 2018 in order to enforce extortionate payments from Plaintiffs;

- On March 28, 2018, the Nourmand Enterprise submitted written comments in opposition to the Selma Hotel project submitted to the City Planning Commission;

- On or around March 29, 2018, the Nourmand Enterprise met with a principal of Relevant Group in order to communicate extortionate demand and threats;

- On July 12, 2018, the Nourmand Enterprise attended a City Planning Commission meeting related to the Selma Hotel project in order to provide oral testimony in opposition to the Selma Hotel project;

- On July 13, 2018, the Nourmand Enterprise submitted written comments in opposition to the Schrader Hotel project submitted to City Planning Commission;

- On August 10, 2018, the Nourmand Enterprise filed an appeal of the City Planning Commission approvals in connection with the Schrader Hotel project;

- On September 6, 2018, the Nourmand Enterprise filed an appeal of City Planning Commission approvals in connection with Selma Hotel project;

- Beginning in or around September 2018, the Nourmand Enterprise recruited Casey Maddren to draft and send a letter on behalf of UN4LA, alleging criminal acts against Relevant Group and City officials, in order to create fear of an investigation and threaten further delays to Relevant Group projects, in support of the Nourmand Enterprise's extortionate demands;

- In October 2018, the Nourmand Enterprise arranged and attended a meeting with principals of the Schrader Hotel project in order to further threaten delays against (perceived) Relevant Group projects and further to attempt to communicate extortionate demands;

-16-

- On November 27, 2018, the Nourmand Enterprise attended a PLUM Committee hearing in support of its meritless appeal of the Selma Hotel project;

- On April 2, 2019, the Nourmand Enterprise filed a verified Petition for Writ of Mandamus regarding the Selma Hotel project.

**INTERROGATORY NO. 5**

Separately, for each predicate act identified in Response to Interrogatory No. 4, identify with particularity each and every act YOU contend N&A took in furtherance thereof.

**RESPONSE TO INTERROGATORY NO. 5**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrase "each and every act" N&A took in furtherance of each 'predicate' identified in Response to Interrogatory No. 4. Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case. Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control. Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 4.

N&A provided support throughout the duration of the scheme by providing personnel and resources to carry out the actions described in the Response to Interrogatory No. 4. N&A employees served as a recruiting pool and acted as the boots on the ground for Nourmand and Sunset Landmark. In addition, N&A employees, including Michael Nourmand, Mohamad Iravani, Carolyn Rae Cole, Sarah Gould, Rachelle DeCastro, Howard Lorey, Karen Lewis and others, under the direction of Saeed Nourmand and/or other members of the Nourmand Enterprise, participated in the following:

- Throughout the scheme, the Nourmand Enterprise would use office personnel, office space, computer equipment and servers, and other

N&A assets in furtherance of the predicate acts.  Despite having "no role" at N&A himself, Saeed Nourmand would regularly use, direct, and assign N&A staff, including Mohammad Iravani, Sarah Gould, Rachelle DeCastro and Carolyn Rae Cole, for the benefit of the Nourmand Enterprise;

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in

opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

**INTERROGATORY NO. 6**

Describe with particularity each and every specific act or omission YOU contend N&A took in connection with the alleged Nourmand Enterprise, including identifying the date of the acts or omissions, the person acting on behalf of N&A, and the acts or omissions taken on behalf of Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 6**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "each and every specific act or omission" N&A took "in connection with" the Nourmand Enterprise. Plaintiff further objects because the Interrogatory's requests to identify "the date of the acts or omissions, the persons acting on behalf of N&A, and the acts or omissions taken on behalf of the Nourmand Enterprise" are overbroad, ambiguous, and burdensome.  Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case.   Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control.   Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 5.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

N&A provided support throughout the duration of the scheme by providing personnel and resources to carry out the actions described in the Response to Interrogatory No. 4.  N&A employees served as a recruiting pool and acted as the boots on the ground for Nourmand and Sunset Landmark.  In addition, N&A employees, including Michael Nourmand, Mohamad Iravani, Carolyn Rae Cole, Sarah Gould, Rachelle DeCastro, Howard Lorey, Karen Lewis and others, under the direction of Saeed Nourmand and/or other members of the Nourmand Enterprise, participated in the following:

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel

project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

**INTERROGATORY NO. 7**

Identify with particularity, including bates number, each and every document YOU contend establishes that N&A was or is part of the Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 7**

Plaintiff objects to this Interrogatory as overbroad, undefined, and unduly burdensome with respect to the phrase "each and every document" that "establishes" that N&A was or is part of the Nourmand Enterprise. Plaintiff also objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Plaintiff also objects to this Interrogatory because it calls for information already in Defendant's possession. Plaintiff further objects to this Interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, the work product doctrine, and/or any other privilege or doctrine. Additionally, Plaintiff objects that this Interrogatory calls for a legal conclusion. Subject to and without waiving the

foregoing objections, Plaintiff responds that the following documents are examples of N&A's involvement in the Nourmand Enterprise.

- SUNSET_00002533
- SUNSET_00002442
- SUNSET_00001334
- SUNSET_00001335
- SUNSET_00001501
- SUNSET_00001503
- N&A_000476
- SUNSET_00001663
- SUNSET_00000136
- SUNSET_00000144
- SUNSET_00000146
- N&A_000377
- N&A_000427
- N&A_000472
- N&A_000474
- N&A_000377
- SUNSET_00002100
- N&A_000478
- SUNSET_00000158
- SUNSET_00000463
- N&A_000604
- N&A_000001
- N&A_000697
- N&A_000849
- N&A_000462
- N&A_000463
- SUNSET_00001284
- SUNSET_00001352
- SUNSET_00001335.

- SUNSET_00001501
- SUNSET_00002131
- SUNSET_00002134
- N&A_000692
- N&A_000899
- SUNSET_00000178
- SUNSET_00000271
- SUNSET_00000272
- SUNSET_00000326
- SUNSET_00000327
- SUNSET_00000687
- SUNSET_00000305
- SUNSET_00000306
- SUNSET_00002266
- SUNSET_00002265
- SUNSET_00002134
- SUNSET_00002131
- SUNSET_00002073
- SUNSET_00002069
- N&A_00T054
- N&A_001034
- N&A_000699

- N&A_000474
- N&A_000472
- N&A_000449
- N&A_000431
- N&A_000418
- SUNSET_00003803
- SUNSET_00002102
- SUNSET_00002060
- SUNSET_00001664
- The Sunset Landmark Privilege Log

Additional documents are undoubtedly within N&A's possession but it now appears that N&A did not search for relevant documents from N&A employees.

**INTERROGATORY NO. 8**

State with specificity all conduct by Mohamad Iravani that YOU contend was performed on behalf of N&A, as opposed to any other defendant, to provide material support in connection with the Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 8**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "all conduct by Mohamad Iravani performed" to provide "material support" "in connection with the Nourmand Enterprise." Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case. Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control. Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 6.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

All actions taken by Mohamad Iravani described in response to Interrogatory Nos. 5 and 6 were on behalf of N&A. Additionally, the following acts by Mohamad Iravani were conducted on behalf of N&A:

-23-

- Michael Nourmand;

- Myra Nourmand;

- Mohamad Iravani;

- Sarah Gould;

- Rachelle DeCastro;

- Carolyn Rae Cole;

- Karen Lewis;

- Charlene Laraneta;

- Howard Lorey.

**INTERROGATORY NO. 14**

Describe all occasions that N&A offered its own employees to perform "support and administrative" functions for Sunset Landmark and Nourmand, as alleged in paragraph 52 of the TAC, other than sharing an administrative assistant.

**RESPONSE TO INTERROGATORY NO. 14**

Plaintiff objects to this Interrogatory as overbroad, vague and ambiguous, and burdensome as to "all occasions" that N&A "offered" its own employees. Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control. Plaintiff further objects to the contention interrogatory propounded prior to the close of fact discovery and reserves its right to supplement its response as additional information becomes known.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- On March 3, 2015, Mohamad Iravani and Sarah Gould received correspondence from Saeed Nourmand regarding the Wilcox Hotel;

- On March 6, 2015, pursuant to the request of Saeed Nourmand, Sarah Gould assists with forwarding Wilcox Hotel plans, including an environmental assessment form, a site plan review, renderings, and master land use permit application, to zoning consultant Jeff Seymour, and arranges a call for Saeed Nourmand and Jeff Seymour;

- On March 7, 2015, Sarah Gould forwards public hearing documents to Jeff Seymour regarding the Thompson Hotel with Saeed copied;

- On March 10, 2015, N&A, including Michael Nourmand, rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- On March 11, 2015, Sarah Gould forwards public hearing information for the Thompson Hotel and notes that he would like a host of people to attend, including Karen Lewis at N&A, Howard Lorey at N&A, and Michael Nourmand; she copies Saeed and Mohamad Iravani;

- On March 17, 2015, Howard Nourmand forwards Saeed map project to Sarah Gould to print using the N&A printer;

- On March 17, 2015, Saeed Nourmand forwards his concerns regarding the Thompson Hotel to Carolyn Rae Cole;

- On March 17, 2015, Carolyn Rae Cole emails Fred Gains noting that she has volunteered her assistance to Saeed to provide arguments that could be helpful at the hearing on Wednesday at the City;

- On March 18, 2015, Saeed sends more information regarding 1541 Wilcox project to Carolyn Rae Cole with respect to arguments against the project;

- On March 18, 2015, Carolyn notes that she spoke with Fred Gaines regarding the Wilcox hotel;

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- On March 20, 2015, Sarah Gould is copied on emails for arranging discussions with design of Thompson hotel with the City of Los Angeles;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in

-30-

opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- On September 3, 2015, Mohamad Iravani emails plans for Thompson Hotel to Saeed Normand;

- On September 8, 2015, Mohamad Iravani emails 1541 Wilcox Hotel documents to Saeed Nourmand with letter attached;

- On March 3, 2015, Mohamad Iravani received the Wilcox Hotel Drawings from Saeed Nourmand;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018;

- N&A employees, including Mohamad Iravani, enforced extortionate payments, interest, and penalties associated with coerced settlement agreements from Plaintiffs in early 2018.

**INTERROGATORY NO. 15**

State all facts which support YOUR contention that support and administrative functions allegedly provided by N&A to Sunset Landmark and Nourmand "played a key role in the initiation of sham CEQA lawsuits", as alleged in paragraph 52 of the TAC.

**RESPONSE TO INTERROGATORY NO. 15**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "all facts" supporting the contention that N&A "support and administrative functions" for Sunset Landmark and Nourmand played a key role in the initiation of sham CEQA lawsuits. Plaintiff further objects because the

-31-

Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession. Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known.  Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 12.   Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

N&A provided support throughout the duration of the scheme by providing personnel and resources to carry out the actions described in the Responses to Interrogatories No. 4 and 5.  N&A employees served as a recruiting pool and acted as the boots on the ground for Nourmand and Sunset Landmark.   N&A administrative support professionals, including but not limited to Sarah Gould, performed key functions for Nourmand's challenges to the Thompson Hotel project, including but not limited to arranging phone calls with consultants and others, circulating hearing information, coordinating attendance by N&A employees and others at those City hearings, and arranging meetings between Plaintiff and Saeed Nourmand to discuss Saeed Nourmand's demands, among other key tasks.

In addition, N&A employees, including Michael Nourmand, Mohamad Iravani, Carolyn Rae Cole, Sarah Gould, Rachelle DeCastro, Howard Lorey, Karen Lewis and others, under the direction of Saeed Nourmand and/or other members of the Nourmand Enterprise, participated in the following:

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

## INTERROGATORY NO. 16

IDENTIFY each and every N&A employee who YOU contend participated in the drafting of Nourmand's letters objecting to the projects before they were circulated to the City of LA, as alleged in paragraph 53 of the TAC.

## RESPONSE TO INTERROGATORY NO. 16

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "each and every N&A employee" who "participated in the drafting" of Nourmand's letters.  Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession.   Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Mohamad Iravani, Carolyn Rae Cole, Michael Nourmand, Sarah Gould, Rachelle DeCastro.

## INTERROGATORY NO. 17

State the date and attendees for each and every meeting between Nourmand and competing developers that YOU contend was held in N&A's office space, as alleged in paragraph 53 of the TAC.

## RESPONSE TO INTERROGATORY NO. 17

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the request to state "the date and attendees for each and every meeting between Nourmand and competing developers" in N&A's office space.  Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession.   Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

- October 4, 2018 meeting with principals of the Schrader Hotel project, where the parties in attendance included Saeed Nourmand, Jayesh Patel, Bruce Rothman and Laurent Opman.

**INTERROGATORY NO. 18**

State with specificity all conduct by N&A which YOU contend evidences that N&A "organized and coordinated" meetings between Nourmand and competing developers that were held in N&A's office space, as alleged in paragraph 53 of the TAC.

**RESPONSE TO INTERROGATORY NO. 18**

Plaintiff objects to this Interrogatory as overbroad, vague and ambiguous, and burdensome as to the request to state "with specificity all conduct by N&A" "evidenc[ing] that N&A 'organized and coordinated' meetings between Nourmand and competing developers in N&A's office space. Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession. Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 17.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Saeed Nourmand and Sunset Landmark rely on N&A employees to provide administrative and personnel support generally to carry out the operations of the Nourmand Enterprise. Meetings between competing developers and the Nourmand Enterprise were held in N&A offices, including a October 4, 2018 meeting with

Schrader Hotel project (KOAR) in October 2018, in an attempt to extract monetary payments and/or other concessions.  Once Defendants learned that the Schrader Hotel was not financially vulnerable to project delays at the October 2018 meeting, however, Defendants abandoned any further demand efforts.

Dated:  May 2, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ Susan K. Leader*_____
      Susan K. Leader

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel LLC, 6516 Tommie Hotel LLC and 6421 Selma Wilcox Hotel LLC

1  **WILSON SONSINI GOODRICH & ROSATI**
   **Professional Corporation**
2  SUSAN K. LEADER, State Bar No. 216743
   sleader@wsgr.com
3  GRANVILLE C. KAUFMAN, State Bar No. 330603
   gkaufman@wsgr.com
4  633 West Fifth Avenue, Suite 1550
   Los Angeles, CA 90071-2027
5  Telephone:  (323) 210-2900
   Facsimile:   (866) 974.7329
6
7  **WILSON SONSINI GOODRICH & ROSATI**
   **Professional Corporation**
   DALE R. BISH, State Bar No. 235390
8  dbish@wsgr.com
   CHARLES A. TALPAS, State Bar No. 308505
9  ctalpas@wsgr.com
   650 Page Mill Road
10 Palo Alto, CA 94304-1050
   Telephone:  (650) 493-9300
11 Facsimile:   (650) 565-5100

12 Attorneys for Plaintiffs Relevant Group,
   LLC, 1541 Wilcox Hotel LLC, 6516
13 Tommie Hotel LLC and 6421 Selma Wilcox
   Hotel LLC

14

## UNITED STATES DISTRICT COURT

15

## CENTRAL DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| 17  RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, | ) Case No.: 2:19-cv-05019-ODW (KSx) |
| 18 | ) |
| 19 | ) **PLAINTIFF 6516 TOMMIE HOTEL LLC'S RESPONSES TO DEFENDANT NOURMAND & ASSOCIATES' INTERROGATORIES (SET ONE)** |
| 20 | ) |
| 21         Plaintiffs, | ) |
| 22     v. | ) |
| 23  STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, | ) |
| 24 | ) |
| 25 | ) |
| 26         Defendants. | ) |
| 27 | ) |

28

PROPOUNDING PARTY:    DEFENDANT NOURMAND & ASSOCIATES

RESPONDING PARTY:    PLAINTIFF 6516 TOMMIE HOTEL LLC

SET NUMBER:    ONE

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff 6516 Tommie Hotel LLC ("Tommie Hotel" or "Plaintiff"), by and through its undersigned counsel, hereby responds and objects to Defendant Nourmand & Associates ("N&A") First Set of Interrogatories to Plaintiff (the "Interrogatories") as follows:

**<u>RESERVATION OF RIGHTS</u>**

1.    Plaintiff provides these responses and objections without waiving or intending to waive, and, on the contrary, preserving and intending to preserve:

a.    the right to object on any ground to the use of these responses and objections or the subject matter thereof in any proceeding in this or any other action;

b.    the right to object on any ground to a request for further responses to the Interrogatories or any other discovery request involving or relating to the subject matter of the Interrogatories responded to herein; and

c.    the right at any time to supplement, amend, correct, add to, or clarify any of the responses and objections provided herein, as Plaintiff has not completed its investigation relating to this action, has not completed discovery, and has not completed preparation for trial.

2.    In responding to the Interrogatories, Plaintiff does not admit, concede, agree to the accuracy of any definitions of terms or descriptions of any facts, events, pleadings, or documents contained therein.  Plaintiff specifically does not waive its objections to any definition as vague, ambiguous, or overbroad and reserves the right to define terms differently or more specifically from the way they are defined in Interrogatories.  Plaintiff also does not admit, concede, or agree that any instructions contained in the Interrogatories are binding or permissible under the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the Central District

of California ("Local Rules"), or any other applicable law or rules.

3.     In each and every instance in which Plaintiff asserts an objection to an Interrogatory, such objection shall be construed to preserve all of Plaintiff's rights to make similar objections in any future supplemental response to the Interrogatories.  Moreover, a failure to object herein shall not constitute a waiver of any objections that Plaintiff may make in future supplemental responses.

4.     Inadvertent production or disclosure of information or documents otherwise protected from discovery under the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection from disclosure, shall not constitute a waiver of such privilege, immunity, or protection, either generally or specifically, with respect to such document or information or any other document or information, or with respect to the subject matter thereof, and Plaintiff reserves the right to request the return of any such documents or information and all copies thereof. Plaintiff reserves the right to object to the use of any such documents or information at any time during this action or in any subsequent proceeding.

5.     Plaintiff's responses and objections to the Interrogatories are based upon information currently available to Plaintiff and are made subject to the Specific Objections below.  Plaintiff expressly reserves the right to alter, amend, supplement, or revise any responses or objections as further information is discovered.

6.     Except for explicit facts admitted herein, no admissions of any nature whatsoever are implied or should be inferred from Plaintiff's responses or objections to these Interrogatories.

## **GENERAL OBJECTIONS**

The following Objections apply to each and every Interrogatory that includes any of the following defined terms and shall have the same force and effect as if fully set forth in Plaintiff's responses to each Interrogatory.

1.      Plaintiff objects to the Definition of "You" and "Your" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case as the terms attempt to extend the scope of these requests to individuals and entities other than Plaintiff.  Further, the definition potentially implicates the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

2.      Plaintiff objects to the Definition of "N&A" as overly broad, unduly burdensome and not proportional to the needs of the case.

3.      Plaintiff objects to the INSTRUCTIONS to the extent that they attempt to impose burdens on Plaintiff that are more onerous or broader than those established by the Federal Rules of Civil Procedure and this Court's Local Rules. Plaintiff shall not do anything more than that which is required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

4.      In addition to the specific objections here, Plaintiff objects to each and every Interrogatory to the extent they seek information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Further, Plaintiff objects to the extent any request infringes on any privacy rights or is unduly burdensome, unreasonable, or overbroad.

## RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 1

Identify, by stating the case name and number, each and every sham lawsuit YOU contend was initiated by the "Nourmand Enterprise," as "Nourmand Enterprise" is defined in Paragraph 2 of the Third Amended Complaint on file in this action.

## RESPONSE TO INTERROGATORY NO. 1

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad as to time with respect to the phrase "each and every sham lawsuit" initiated by the Nourmand Enterprise.  Plaintiff also objects to this Interrogatory on the grounds that

argument nonetheless.  The court ultimately agreed that the city could merely clarify the record for the same reason that counsel previously anticipated;

- Although the Nourmand Enterprise vehemently opposed the Thompson Hotel, Tommie Hotel, and Selma Hotel projects, they did not oppose similar development projects in the Hollywood area.

## INTERROGATORY NO. 3

Separately, for each lawsuit identified in Response to Interrogatory No. 1, identify with particularity each and every act YOU contend N&A took in furtherance thereof.

## RESPONSE TO INTERROGATORY NO. 3

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrase "each and every act" N&A took in furtherance of each 'lawsuit' identified in Response to Interrogatory No. 1.  Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case.  Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control.  Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 2.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff does not contend that N&A filed the lawsuits identified in response to Interrogatory No. 1.  According to documents produced by defendants, it was N&A staff that identified and initially drafted materials sent to the City and that subsequently permeated the lawsuits identified in Response to Interrogatory No. 1 regarding the allegedly improper removal of "D Development Limitation"—an argument that lacks merit.

## INTERROGATORY NO. 4

Identify with specificity each and every predicate act YOU allege was committed by the Nourmand Enterprise.

**<u>RESPONSE TO INTERROGATORY NO. 4</u>**

Plaintiff objects to this Interrogatory as vague and ambiguous with respect to the phrase "each and every predicate."  Further, Plaintiff objects that the Interrogatory on the grounds that it is overbroad and burdensome as to "each and every predicate YOU allege was committed by the Nourmand Enterprise."  Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case.  Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control.  Further, Plaintiff objects that this Interrogatory calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

The Nourmand Enterprise committed multiple predicate act of extortion.  The facts and events underlying those predicate acts of extortion include:

- Meetings and communications with Relevant Group principals in March 2015 in order to make extortionate demands;

- On March 13, 2015, the Nourmand Enterprise submitted written comments in opposition to the Thompson Hotel project submitted to City Council members;

- On March 18, 2015, the Nourmand Enterprise instructed subordinates to attend and/or provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning, at which the Nourmand Enterprise caused to be circulated and signed a petition containing false and misleading statements;

- On April 17, 2015, the Nourmand Enterprise concocted and submitted written comments in opposition to the Thompson Hotel project submitted to City officials;

- Meetings and communications with Relevant Group principals in May and June 2015 in order to make extortionate demands;

- On September 9, 2015, the Nourmand Enterprise submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning;

- On September 10, 2015, the Nourmand Enterprise provided oral testimony in opposition to the Thompson Hotel project provided at a hearing before the City Planning Commission;

- On November 3, 2015, the Nourmand Enterprise filed a frivolous Appeal of City Planning Committee action approving Thompson Hotel project entitlements and adoption of MND;

- On January 26, 2016, the Nourmand Enterprise provided oral testimony in opposition to the Thompson Hotel project provided at Planning and Land Use Management Committee meeting;

- Correspondences during January and February 2016 to communicate extortionate demands;

- On March 3, 2016, the Nourmand Enterprise filed a verified Petition for Writ of Mandamus regarding the Selma Wilcox Hotel project;

- On May 5, 2016, the Nourmand Enterprise submitted written comments in opposition to the Thompson Hotel project submitted to the CRA/LA;

- On August 12, 2016, the Nourmand Enterprise filed a frivolous appeal with the Department of Building and Safety to suspend permits issued for demolition, plumbing and HVAC work on the Thompson Hotel project;

- On October 18, 2016, the Nourmand Enterprise filed another Appeal with Director of Planning, challenging the decision by the Department of Building and Safety to deny Sunset Landmark's

August 12, 2016 appeal;

- On January 25, 2017, the Nourmand Enterprise submitted written comments in opposition to the Tommie Hotel project submitted to the City Planning Commission;

- On January 26, 2017, the Nourmand Enterprise provided oral testimony in opposition to the Tommie Hotel project provided at hearing before the City Planning Committee;

- On February 15, 2017, the Nourmand Enterprise filed an appeal with the Planning and Land Use Committee related to City Planning Committee approvals for Tommie Hotel project;

- Correspondences and phone calls during April 2017 to communicate extortionate demands;

- On April 25, 2017, the Nourmand Enterprise submitted written comments in opposition to the Tommie Hotel project submitted to the Planning and Land Use Management Committee and oral testimony at the Planning and Land Use Management Committee meeting;

- Correspondences and meetings during May and June 2017 to communicate extortionate demands and threats;

- On June 9, 2017, the Nourmand Enterprise filed a verified Petition for Writ of Mandamus with respect to the Tommie project;

- Correspondences and meetings between July 2017 and January 2018 to communicate extortionate demands and threats;

- Correspondences with Relevant Group principals between January and March 2018 in order to enforce extortionate payments from Plaintiffs;

- On March 28, 2018, the Nourmand Enterprise submitted written comments in opposition to the Selma Hotel project submitted to the City Planning Commission;

- On or around March 29, 2018, the Nourmand Enterprise met with a principal of Relevant Group in order to communicate extortionate demand and threats;

- On July 12, 2018, the Nourmand Enterprise attended a City Planning Commission meeting related to the Selma Hotel project in order to provide oral testimony in opposition to the Selma Hotel project;

- On July 13, 201, the Nourmand Enterprise submitted written comments in opposition to the Schrader Hotel project submitted to City Planning Commission;

- On August 10, 2018, the Nourmand Enterprise filed an appeal of the City Planning Commission approvals in connection with the Schrader Hotel project;

- On September 6, 2018, the Nourmand Enterprise filed an appeal of City Planning Commission approvals in connection with Selma Hotel project;

- Beginning in or around September 2018, the Nourmand Enterprise recruited Casey Maddren to draft and send a letter on behalf of UN4LA, alleging criminal acts against Relevant Group and City officials, in order to create fear of an investigation and threaten further delays to Relevant Group projects, in support of the Nourmand Enterprise's extortionate demands;

- In October 2018, the Nourmand Enterprise arranged and attended a meeting with principals of the Schrader Hotel project in order to further threaten delays against (perceived) Relevant Group projects and further to attempt to communicate extortionate demands;

- On November 27, 2018, the Nourmand Enterprise attended a PLUM Committee hearing in support of its meritless appeal of the Selma Hotel project;

- On April 2, 2019, the Nourmand Enterprise filed a verified Petition for Writ of Mandamus regarding the Selma Hotel project.

**INTERROGATORY NO. 5**

Separately, for each predicate act identified in Response to Interrogatory No. 4, identify with particularity each and every act YOU contend N&A took in furtherance thereof.

**RESPONSE TO INTERROGATORY NO. 5**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrase "each and every act" N&A took in furtherance of each 'predicate' identified in Response to Interrogatory No. 4. Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case. Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control. Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 4.

N&A provided support throughout the duration of the scheme by providing personnel and resources to carry out the actions described in the Response to Interrogatory No. 4. N&A employees served as a recruiting pool and acted as the boots on the ground for Nourmand and Sunset Landmark. In addition, N&A employees, including Michael Nourmand, Mohamad Iravani, Carolyn Rae Cole, Sarah Gould, Rachelle DeCastro, Howard Lorey, Karen Lewis and others, under the direction of Saeed Nourmand and/or other members of the Nourmand Enterprise, participated in the following:

- Throughout the scheme, the Nourmand Enterprise would use office personnel, office space, computer equipment and servers, and other

N&A assets in furtherance of the predicate acts.  Despite having "no role" at N&A himself, Saeed Nourmand would regularly use, direct, and assign N&A staff, including Mohammad Iravani, Sarah Gould, Rachelle DeCastro and Carolyn Rae Cole, for the benefit of the Nourmand Enterprise;

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in

opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

**INTERROGATORY NO. 6**

Describe with particularity each and every specific act or omission YOU contend N&A took in connection with the alleged Nourmand Enterprise, including identifying the date of the acts or omissions, the person acting on behalf of N&A, and the acts or omissions taken on behalf of Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 6**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "each and every specific act or omission" N&A took "in connection with" the Nourmand Enterprise. Plaintiff further objects because the Interrogatory's requests to identify "the date of the acts or omissions, the persons acting on behalf of N&A, and the acts or omissions taken on behalf of the Nourmand Enterprise" are overbroad, ambiguous, and burdensome. Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case. Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control. Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 5.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

N&A provided support throughout the duration of the scheme by providing personnel and resources to carry out the actions described in the Response to Interrogatory No. 4. N&A employees served as a recruiting pool and acted as the boots on the ground for Nourmand and Sunset Landmark. In addition, N&A employees, including Michael Nourmand, Mohamad Iravani, Carolyn Rae Cole, Sarah Gould, Rachelle DeCastro, Howard Lorey, Karen Lewis and others, under the direction of Saeed Nourmand and/or other members of the Nourmand Enterprise, participated in the following:

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel

project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

**INTERROGATORY NO. 7**

Identify with particularity, including bates number, each and every document YOU contend establishes that N&A was or is part of the Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 7**

Plaintiff objects to this Interrogatory as overbroad, undefined, and unduly burdensome with respect to the phrase "each and every document" that "establishes" that N&A was or is part of the Nourmand Enterprise. Plaintiff also objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Plaintiff also objects to this Interrogatory because it calls for information already in Defendant's possession. Plaintiff further objects to this Interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, the work product doctrine, and/or any other privilege or doctrine. Additionally, Plaintiff objects that this Interrogatory calls for a legal conclusion. Subject to and without waiving the

foregoing objections, Plaintiff responds that the following documents are examples of N&A's involvement in the Nourmand Enterprise.

- SUNSET_00002533
- SUNSET_00002442
- SUNSET_00001334
- SUNSET_00001335
- SUNSET_00001501
- SUNSET_00001503
- N&A_000476
- SUNSET_00001663
- SUNSET_00000136
- SUNSET_00000144
- SUNSET_00000146
- N&A_000377
- N&A_000427
- N&A_000472
- N&A_000474
- N&A_000377
- SUNSET_00002100
- N&A_000478
- SUNSET_00000158
- SUNSET_00000463
- N&A_000604
- N&A_000001
- N&A_000697
- N&A_000849
- N&A_000462
- N&A_000463
- SUNSET_00001284
- SUNSET_00001352
- SUNSET_00001335.

- SUNSET_00001501
- SUNSET_00002131
- SUNSET_00002134
- N&A_000692
- N&A_000899
- SUNSET_00000178
- SUNSET_00000271
- SUNSET_00000272
- SUNSET_00000326
- SUNSET_00000327
- SUNSET_00000687
- SUNSET_00000305
- SUNSET_00000306
- SUNSET_00002266
- SUNSET_00002265
- SUNSET_00002134
- SUNSET_00002131
- SUNSET_00002073
- SUNSET_00002069
- N&A_00T054
- N&A_001034
- N&A_000699

6516 TOMMIE HOTEL LLC'S RESPONSES TO N&A'S FIRST SET OF INTERROGATORIES

- N&A_000474
- N&A_000472
- N&A_000449
- N&A_000431
- N&A_000418
- SUNSET_00003803
- SUNSET_00002102
- SUNSET_00002060
- SUNSET_00001664
- The Sunset Landmark Privilege Log

Additional documents are undoubtedly within N&A's possession but it now appears that N&A did not search for relevant documents from N&A employees.

**INTERROGATORY NO. 8**

State with specificity all conduct by Mohamad Iravani that YOU contend was performed on behalf of N&A, as opposed to any other defendant, to provide material support in connection with the Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 8**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "all conduct by Mohamad Iravani performed" to provide "material support" "in connection with the Nourmand Enterprise."  Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case.  Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control.   Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 6.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

All actions taken by Mohamad Iravani described in response to Interrogatory Nos. 5 and 6 were on behalf of N&A.  Additionally, the following acts by Mohamad Iravani were conducted on behalf of N&A:

- Michael Nourmand;

- Myra Nourmand;

- Mohamad Iravani;

- Sarah Gould;

- Rachelle DeCastro;

- Carolyn Rae Cole;

- Karen Lewis;

- Charlene Laraneta;

- Howard Lorey.

**INTERROGATORY NO. 14**

Describe all occasions that N&A offered its own employees to perform "support and administrative" functions for Sunset Landmark and Nourmand, as alleged in paragraph 52 of the TAC, other than sharing an administrative assistant.

**RESPONSE TO INTERROGATORY NO. 14**

Plaintiff objects to this Interrogatory as overbroad, vague and ambiguous, and burdensome as to "all occasions" that N&A "offered" its own employees. Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control. Plaintiff further objects to the contention interrogatory propounded prior to the close of fact discovery and reserves its right to supplement its response as additional information becomes known.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- On March 3, 2015, Mohamad Iravani and Sarah Gould received correspondence from Saeed Nourmand regarding the Wilcox Hotel;

- On March 6, 2015, pursuant to the request of Saeed Nourmand, Sarah Gould assists with forwarding Wilcox Hotel plans, including an environmental assessment form, a site plan review, renderings, and master land use permit application, to zoning consultant Jeff Seymour, and arranges a call for Saeed Nourmand and Jeff Seymour;

- On March 7, 2015, Sarah Gould forwards public hearing documents to Jeff Seymour regarding the Thompson Hotel with Saeed copied;

- On March 10, 2015, N&A, including Michael Nourmand, rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- On March 11, 2015, Sarah Gould forwards public hearing information for the Thompson Hotel and notes that he would like a host of people to attend, including Karen Lewis at N&A, Howard Lorey at N&A, and Michael Nourmand; she copies Saeed and Mohamad Iravani;

- On March 17, 2015, Howard Nourmand forwards Saeed map project to Sarah Gould to print using the N&A printer;

- On March 17, 2015, Saeed Nourmand forwards his concerns regarding the Thompson Hotel to Carolyn Rae Cole;

- On March 17, 2015, Carolyn Rae Cole emails Fred Gains noting that she has volunteered her assistance to Saeed to provide arguments that could be helpful at the hearing on Wednesday at the City;

- On March 18, 2015, Saeed sends more information regarding 1541 Wilcox project to Carolyn Rae Cole with respect to arguments against the project;

- On March 18, 2015, Carolyn notes that she spoke with Fred Gaines regarding the Wilcox hotel;

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- On March 20, 2015, Sarah Gould is copied on emails for arranging discussions with design of Thompson hotel with the City of Los Angeles;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in

-30-

6516 TOMMIE HOTEL LLC'S RESPONSES TO N&A'S FIRST SET OF INTERROGATORIES

opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- On September 3, 2015, Mohamad Iravani emails plans for Thompson Hotel to Saeed Normand;

- On September 8, 2015, Mohamad Iravani emails 1541 Wilcox Hotel documents to Saeed Nourmand with letter attached;

- On March 3, 2015, Mohamad Iravani received the Wilcox Hotel Drawings from Saeed Nourmand;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018;

- N&A employees, including Mohamad Iravani, enforced extortionate payments, interest, and penalties associated with coerced settlement agreements from Plaintiffs in early 2018.

**INTERROGATORY NO. 15**

State all facts which support YOUR contention that support and administrative functions allegedly provided by N&A to Sunset Landmark and Nourmand "played a key role in the initiation of sham CEQA lawsuits", as alleged in paragraph 52 of the TAC.

**RESPONSE TO INTERROGATORY NO. 15**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "all facts" supporting the contention that N&A "support and administrative functions" for Sunset Landmark and Nourmand played a key role in the initiation of sham CEQA lawsuits. Plaintiff further objects because the

-31-

Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession. Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known.  Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 12.  Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

N&A provided support throughout the duration of the scheme by providing personnel and resources to carry out the actions described in the Responses to Interrogatories No. 4 and 5.  N&A employees served as a recruiting pool and acted as the boots on the ground for Nourmand and Sunset Landmark.   N&A administrative support professionals, including but not limited to Sarah Gould, performed key functions for Nourmand's challenges to the Thompson Hotel project, including but not limited to arranging phone calls with consultants and others, circulating hearing information, coordinating attendance by N&A employees and others at those City hearings, and arranging meetings between Plaintiff and Saeed Nourmand to discuss Saeed Nourmand's demands, among other key tasks.

In addition, N&A employees, including Michael Nourmand, Mohamad Iravani, Carolyn Rae Cole, Sarah Gould, Rachelle DeCastro, Howard Lorey, Karen Lewis and others, under the direction of Saeed Nourmand and/or other members of the Nourmand Enterprise, participated in the following:

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

**INTERROGATORY NO. 16**

IDENTIFY each and every N&A employee who YOU contend participated in the drafting of Nourmand's letters objecting to the projects before they were circulated to the City of LA, as alleged in paragraph 53 of the TAC.

**RESPONSE TO INTERROGATORY NO. 16**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "each and every N&A employee" who "participated in the drafting" of Nourmand's letters.  Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession.   Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Mohamad Iravani, Carolyn Rae Cole, Michael Nourmand, Sarah Gould, Rachelle DeCastro.

**INTERROGATORY NO. 17**

State the date and attendees for each and every meeting between Nourmand and competing developers that YOU contend was held in N&A's office space, as alleged in paragraph 53 of the TAC.

**RESPONSE TO INTERROGATORY NO. 17**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the request to state "the date and attendees for each and every meeting between Nourmand and competing developers" in N&A's office space.  Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession.   Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

- October 4, 2018 meeting with principals of the Schrader Hotel project, where the parties in attendance included Saeed Nourmand, Jayesh Patel, Bruce Rothman and Laurent Opman.

**INTERROGATORY NO. 18**

State with specificity all conduct by N&A which YOU contend evidences that N&A "organized and coordinated" meetings between Nourmand and competing developers that were held in N&A's office space, as alleged in paragraph 53 of the TAC.

**RESPONSE TO INTERROGATORY NO. 18**

Plaintiff objects to this Interrogatory as overbroad, vague and ambiguous, and burdensome as to the request to state "with specificity all conduct by N&A" "evidenc[ing] that N&A 'organized and coordinated' meetings between Nourmand and competing developers in N&A's office space. Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession. Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 17.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Saeed Nourmand and Sunset Landmark rely on N&A employees to provide administrative and personnel support generally to carry out the operations of the Nourmand Enterprise. Meetings between competing developers and the Nourmand Enterprise were held in N&A offices, including a October 4, 2018 meeting with

Schrader Hotel project (KOAR) in October 2018, in an attempt to extract monetary payments and/or other concessions.  Once Defendants learned that the Schrader Hotel was not financially vulnerable to project delays at the October 2018 meeting, however, Defendants abandoned any further demand efforts.

Dated:  May 2, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ Susan K. Leader*_____
     Susan K. Leader

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel LLC, 6516 Tommie Hotel LLC and 6421 Selma Wilcox Hotel LLC

1   **WILSON SONSINI GOODRICH & ROSATI**
    **Professional Corporation**
2   SUSAN K. LEADER, State Bar No. 216743
    sleader@wsgr.com
3   GRANVILLE C. KAUFMAN, State Bar No. 330603
    gkaufman@wsgr.com
4   633 West Fifth Avenue, Suite 1550
    Los Angeles, CA 90071-2027
5   Telephone:   (323) 210-2900
    Facsimile:    (866) 974.7329
6
    **WILSON SONSINI GOODRICH & ROSATI**
7   **Professional Corporation**
    DALE R. BISH, State Bar No. 235390
8   dbish@wsgr.com
    CHARLES A. TALPAS, State Bar No. 308505
9   ctalpas@wsgr.com
    650 Page Mill Road
10  Palo Alto, CA 94304-1050
    Telephone:  (650) 493-9300
11  Facsimile:    (650) 565-5100

12  Attorneys for Plaintiffs Relevant Group,
    LLC, 1541 Wilcox Hotel LLC, 6516
13  Tommie Hotel LLC and 6421 Selma Wilcox
    Hotel LLC

14
                  **UNITED STATES DISTRICT COURT**
15
                 **CENTRAL DISTRICT OF CALIFORNIA**
16

17  RELEVANT GROUP, LLC, a Delaware            ) Case No.: 2:19-cv-05019-ODW
    limited liability company; 1541 WILCOX     ) (KSx)
18  HOTEL LLC, a Delaware limited liability    )
    company; 6516 TOMMIE HOTEL LLC; a          ) **PLAINTIFF 6421 SELMA**
19  Delaware limited liability company; and    ) **WILCOX HOTEL LLC'S**
    6421 SELMA WILCOX HOTEL LLC, a             ) **RESPONSES TO DEFENDANT**
20  California limited liability company,       ) **NOURMAND & ASSOCIATES'**
                                               ) **INTERROGATORIES (SET ONE)**
21              Plaintiffs,                     )
                                               )
22        v.                                    )
                                               )
23  STEPHAN "SAEED" NOURMAND, an               )
    individual; THE SUNSET LANDMARK            )
24  INVESTMENT LLC, a California limited       )
    liability company; NOURMAND &             )
25  ASSOCIATES, a California corporation;      )
    and DOES 1-10,                            )
26                                             )
                Defendants.                     )
27  _____ )

28

---

PROPOUNDING PARTY:     **DEFENDANT NOURMAND & ASSOCIATES**

RESPONDING PARTY:     **PLAINTIFF 6421 SELMA WILCOX HOTEL LLC**

SET NUMBER:                **ONE**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff 6421 Selma Wilcox Hotel LLC ("Selma Wilcox Hotel" or "Plaintiff"), by and through its undersigned counsel, hereby responds and objects to Defendant Nourmand & Associates ("N&A") First Set of Interrogatories to Plaintiff (the "Interrogatories") as follows:

### <u>RESERVATION OF RIGHTS</u>

1.     Plaintiff provides these responses and objections without waiving or intending to waive, and, on the contrary, preserving and intending to preserve:

a.     the right to object on any ground to the use of these responses and objections or the subject matter thereof in any proceeding in this or any other action;

b.     the right to object on any ground to a request for further responses to the Interrogatories or any other discovery request involving or relating to the subject matter of the Interrogatories responded to herein; and

c.     the right at any time to supplement, amend, correct, add to, or clarify any of the responses and objections provided herein, as Plaintiff has not completed its investigation relating to this action, has not completed discovery, and has not completed preparation for trial.

2.     In responding to the Interrogatories, Plaintiff does not admit, concede, agree to the accuracy of any definitions of terms or descriptions of any facts, events, pleadings, or documents contained therein.  Plaintiff specifically does not waive its objections to any definition as vague, ambiguous, or overbroad and reserves the right to define terms differently or more specifically from the way they are defined in Interrogatories.  Plaintiff also does not admit, concede, or agree that any instructions

contained in the Interrogatories are binding or permissible under the Federal Rules of Civil Procedure, the Local Rules for the U.S. District Court for the Central District of California ("Local Rules"), or any other applicable law or rules.

3.    In each and every instance in which Plaintiff asserts an objection to an Interrogatory, such objection shall be construed to preserve all of Plaintiff's rights to make similar objections in any future supplemental response to the Interrogatories.  Moreover, a failure to object herein shall not constitute a waiver of any objections that Plaintiff may make in future supplemental responses.

4.    Inadvertent production or disclosure of information or documents otherwise protected from discovery under the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, or protection from disclosure, shall not constitute a waiver of such privilege, immunity, or protection, either generally or specifically, with respect to such document or information or any other document or information, or with respect to the subject matter thereof, and Plaintiff reserves the right to request the return of any such documents or information and all copies thereof. Plaintiff reserves the right to object to the use of any such documents or information at any time during this action or in any subsequent proceeding.

5.    Plaintiff's responses and objections to the Interrogatories are based upon information currently available to Plaintiff and are made subject to the Specific Objections below.  Plaintiff expressly reserves the right to alter, amend, supplement, or revise any responses or objections as further information is discovered.

6.    Except for explicit facts admitted herein, no admissions of any nature whatsoever are implied or should be inferred from Plaintiff's responses or objections to these Interrogatories.

## GENERAL OBJECTIONS

The following Objections apply to each and every Interrogatory that includes any of the following defined terms and shall have the same force and effect as if fully set forth in Plaintiff's responses to each Interrogatory.

1.      Plaintiff objects to the Definition of "You" and "Your" as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case as the terms attempt to extend the scope of these requests to individuals and entities other than Plaintiff.  Further, the definition potentially implicates the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege.

2.      Plaintiff objects to the Definition of "N&A" as overly broad, unduly burdensome and not proportional to the needs of the case.

3.      Plaintiff objects to the INSTRUCTIONS to the extent that they attempt to impose burdens on Plaintiff that are more onerous or broader than those established by the Federal Rules of Civil Procedure and this Court's Local Rules. Plaintiff shall not do anything more than that which is required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

4.      In addition to the specific objections here, Plaintiff objects to each and every Interrogatory to the extent they seek information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.  Further, Plaintiff objects to the extent any request infringes on any privacy rights or is unduly burdensome, unreasonable, or overbroad.

## RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 1

Identify, by stating the case name and number, each and every sham lawsuit YOU contend was initiated by the "Nourmand Enterprise," as "Nourmand Enterprise" is defined in Paragraph 2 of the Third Amended Complaint on file in this action.

subsequently permeated the lawsuits identified in Response to Interrogatory No. 1 regarding the allegedly improper removal of "D Development Limitation"—an argument that lacks merit.

**INTERROGATORY NO. 4**

Identify with specificity each and every predicate act YOU allege was committed by the Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 4**

Plaintiff objects to this Interrogatory as vague and ambiguous with respect to the phrase "each and every predicate." Further, Plaintiff objects that the Interrogatory on the grounds that it is overbroad and burdensome as to "each and every predicate YOU allege was committed by the Nourmand Enterprise." Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case. Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control. Further, Plaintiff objects that this Interrogatory calls for a legal conclusion. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

The Nourmand Enterprise committed multiple predicate act of extortion. The facts and events underlying those predicate acts of extortion include:

- Meetings and communications with Relevant Group principals in March 2015 in order to make extortionate demands;

- On March 13, 2015, the Nourmand Enterprise submitted written comments in opposition to the Thompson Hotel project submitted to City Council members;

- On March 18, 2015, the Nourmand Enterprise instructed subordinates to attend and/or provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning, at which the Nourmand Enterprise

caused to be circulated and signed a petition containing false and misleading statements;

- On April 17, 2015, the Nourmand Enterprise concocted and submitted written comments in opposition to the Thompson Hotel project submitted to City officials;

- Meetings and communications with Relevant Group principals in May and June 2015 in order to make extortionate demands;

- On September 9, 2015, the Nourmand Enterprise submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning;

- On September 10, 2015, the Nourmand Enterprise provided oral testimony in opposition to the Thompson Hotel project provided at a hearing before the City Planning Commission;

- On November 3, 2015, the Nourmand Enterprise filed a frivolous Appeal of City Planning Committee action approving Thompson Hotel project entitlements and adoption of MND;

- On January 26, 2016, the Nourmand Enterprise provided oral testimony in opposition to the Thompson Hotel project provided at Planning and Land Use Management Committee meeting;

- Correspondences during January and February 2016 to communicate extortionate demands;

- On March 3, 2016, the Nourmand Enterprise filed a verified Petition for Writ of Mandamus regarding the Selma Wilcox Hotel project;

- On May 5, 2016, the Nourmand Enterprise submitted written comments in opposition to the Thompson Hotel project submitted to the CRA/LA;

- On August 12, 2016, the Nourmand Enterprise filed a frivolous appeal with the Department of Building and Safety to suspend

-14-

permits issued for demolition, plumbing and HVAC work on the Thompson Hotel project;

- On October 18, 2016, the Nourmand Enterprise filed another Appeal with Director of Planning, challenging the decision by the Department of Building and Safety to deny Sunset Landmark's August 12, 2016 appeal;

- On January 25, 2017, the Nourmand Enterprise submitted written comments in opposition to the Tommie Hotel project submitted to the City Planning Commission;

- On January 26, 2017, the Nourmand Enterprise provided oral testimony in opposition to the Tommie Hotel project provided at hearing before the City Planning Committee;

- On February 15, 2017, the Nourmand Enterprise filed an appeal with the Planning and Land Use Committee related to City Planning Committee approvals for Tommie Hotel project;

- Correspondences and phone calls during April 2017 to communicate extortionate demands;

- On April 25, 2017, the Nourmand Enterprise submitted written comments in opposition to the Tommie Hotel project submitted to the Planning and Land Use Management Committee and oral testimony at the Planning and Land Use Management Committee meeting;

- Correspondences and meetings during May and June 2017 to communicate extortionate demands and threats;

- On June 9, 2017, the Nourmand Enterprise filed a verified Petition for Writ of Mandamus with respect to the Tommie project;

- Correspondences and meetings between July 2017 and January 2018 to communicate extortionate demands and threats;

- Correspondences with Relevant Group principals between January and March 2018 in order to enforce extortionate payments from Plaintiffs;

- On March 28, 2018, the Nourmand Enterprise submitted written comments in opposition to the Selma Hotel project submitted to the City Planning Commission;

- On or around March 29, 2018, the Nourmand Enterprise met with a principal of Relevant Group in order to communicate extortionate demand and threats;

- On July 12, 2018, the Nourmand Enterprise attended a City Planning Commission meeting related to the Selma Hotel project in order to provide oral testimony in opposition to the Selma Hotel project;

- On July 13, 2018, the Nourmand Enterprise submitted written comments in opposition to the Schrader Hotel project submitted to City Planning Commission;

- On August 10, 2018, the Nourmand Enterprise filed an appeal of the City Planning Commission approvals in connection with the Schrader Hotel project;

- On September 6, 2018, the Nourmand Enterprise filed an appeal of City Planning Commission approvals in connection with Selma Hotel project;

- Beginning in or around September 2018, the Nourmand Enterprise recruited Casey Maddren to draft and send a letter on behalf of UN4LA, alleging criminal acts against Relevant Group and City officials, in order to create fear of an investigation and threaten further delays to Relevant Group projects, in support of the Nourmand Enterprise's extortionate demands;

- In October 2018, the Nourmand Enterprise arranged and attended a meeting with principals of the Schrader Hotel project in order to further threaten delays against (perceived) Relevant Group projects and further to attempt to communicate extortionate demands;

- On November 27, 2018, the Nourmand Enterprise attended a PLUM Committee hearing in support of its meritless appeal of the Selma Hotel project;

- On April 2, 2019, the Nourmand Enterprise filed a verified Petition for Writ of Mandamus regarding the Selma Hotel project.

**INTERROGATORY NO. 5**

Separately, for each predicate act identified in Response to Interrogatory No. 4, identify with particularity each and every act YOU contend N&A took in furtherance thereof.

**RESPONSE TO INTERROGATORY NO. 5**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrase "each and every act" N&A took in furtherance of each 'predicate' identified in Response to Interrogatory No. 4.  Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case.  Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control.  Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 4.

N&A provided support throughout the duration of the scheme by providing personnel and resources to carry out the actions described in the Response to Interrogatory No. 4.  N&A employees served as a recruiting pool and acted as the boots on the ground for Nourmand and Sunset Landmark.  In addition, N&A employees, including Michael Nourmand, Mohamad Iravani, Carolyn Rae Cole, Sarah Gould, Rachelle DeCastro, Howard Lorey, Karen Lewis and others, under the

direction of Saeed Nourmand and/or other members of the Nourmand Enterprise, participated in the following:

- Throughout the scheme, the Nourmand Enterprise would use office personnel, office space, computer equipment and servers, and other N&A assets in furtherance of the predicate acts. Despite having "no role" at N&A himself, Saeed Nourmand would regularly use, direct, and assign N&A staff, including Mohammad Iravani, Sarah Gould, Rachelle DeCastro and Carolyn Rae Cole, for the benefit of the Nourmand Enterprise;

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel

project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

**INTERROGATORY NO. 6**

Describe with particularity each and every specific act or omission YOU contend N&A took in connection with the alleged Nourmand Enterprise, including identifying the date of the acts or omissions, the person acting on behalf of N&A, and the acts or omissions taken on behalf of Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 6**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "each and every specific act or omission" N&A took "in connection with" the Nourmand Enterprise. Plaintiff further objects because the Interrogatory's requests to identify "the date of the acts or omissions, the persons acting on behalf of N&A, and the acts or omissions taken on behalf of the Nourmand Enterprise" are overbroad, ambiguous, and burdensome. Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case. Plaintiff further objects because the

Interrogatory seeks information from third parties and information not within its possession, custody or control.    Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 5.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

N&A provided support throughout the duration of the scheme by providing personnel and resources to carry out the actions described in the Response to Interrogatory No. 4.  N&A employees served as a recruiting pool and acted as the boots on the ground for Nourmand and Sunset Landmark.  In addition, N&A employees, including Michael Nourmand, Mohamad Iravani, Carolyn Rae Cole, Sarah Gould, Rachelle DeCastro, Howard Lorey, Karen Lewis and others, under the direction of Saeed Nourmand and/or other members of the Nourmand Enterprise, participated in the following:

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the

Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

**INTERROGATORY NO. 7**

Identify with particularity, including bates number, each and every document YOU contend establishes that N&A was or is part of the Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 7**

Plaintiff objects to this Interrogatory as overbroad, undefined, and unduly burdensome with respect to the phrase "each and every document" that "establishes" that N&A was or is part of the Nourmand Enterprise. Plaintiff also objects to the contention interrogatory as premature and reserves its right to supplement its

response as additional information becomes known.  Plaintiff also objects to this Interrogatory because it calls for information already in Defendant's possession. Plaintiff further objects to this Interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, the work product doctrine, and/or any other privilege or doctrine.  Additionally, Plaintiff objects that this Interrogatory calls for a legal conclusion.  Subject to and without waiving the foregoing objections, Plaintiff responds that the following documents are examples of N&A's involvement in the Nourmand Enterprise.

- SUNSET_00002533
- SUNSET_00002442
- SUNSET_00001334
- SUNSET_00001335
- SUNSET_00001501
- SUNSET_00001503
- N&A_000476
- SUNSET_00001663
- SUNSET_00000136
- SUNSET_00000144
- SUNSET_00000146
- N&A_000377
- N&A_000427
- N&A_000472
- N&A_000474
- N&A_000377
- SUNSET_00002100
- N&A_000478
- SUNSET_00000158
- SUNSET_00000463
- N&A_000604
- N&A_000001
- N&A_000697
- N&A_000849
- N&A_000462
- N&A_000463
- SUNSET_00001284
- SUNSET_00001352
- SUNSET_00001335.

- SUNSET_00001501
- SUNSET_00002131
- SUNSET_00002134
- N&A_000692
- N&A_000899
- SUNSET_00000178
- SUNSET_00000271
- SUNSET_00000272
- SUNSET_00000326
- SUNSET_00000327

- SUNSET_00000687
- SUNSET_00000305
- SUNSET_00000306
- SUNSET_00002266
- SUNSET_00002265
- SUNSET_00002134
- SUNSET_00002131
- SUNSET_00002073
- SUNSET_00002069
- N&A_00T054
- N&A_001034
- N&A_000699
- N&A_000474
- N&A_000472
- N&A_000449
- N&A_000431
- N&A_000418
- SUNSET_00003803
- SUNSET_00002102
- SUNSET_00002060
- SUNSET_00001664
- The Sunset Landmark Privilege Log

Additional documents are undoubtedly within N&A's possession but it now appears that N&A did not search for relevant documents from N&A employees.

**INTERROGATORY NO. 8**

State with specificity all conduct by Mohamad Iravani that YOU contend was performed on behalf of N&A, as opposed to any other defendant, to provide material support in connection with the Nourmand Enterprise.

**RESPONSE TO INTERROGATORY NO. 8**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "all conduct by Mohamad Iravani performed" to provide "material support" "in connection with the Nourmand Enterprise."  Plaintiff also objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor proportional to the needs of the case.  Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control.   Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information

IDENTIFY each and every employee that N&A allegedly offered to perform "support and administrative" functions for Sunset Landmark and Nourmand, as alleged in paragraph 52 of the TAC.

**RESPONSE TO INTERROGATORY NO. 13**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "each and every employee" that N&A "offered to perform 'support and administrative' functions. Plaintiff further objects because the Interrogatory seeks information from third parties and because it calls for information already in Defendant's possession. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

- Michael Nourmand;
- Myra Nourmand;
- Mohamad Iravani;
- Sarah Gould;
- Rachelle DeCastro;
- Carolyn Rae Cole;
- Karen Lewis;
- Charlene Laraneta;
- Howard Lorey.

**INTERROGATORY NO. 14**

Describe all occasions that N&A offered its own employees to perform "support and administrative" functions for Sunset Landmark and Nourmand, as alleged in paragraph 52 of the TAC, other than sharing an administrative assistant.

**RESPONSE TO INTERROGATORY NO. 14**

Plaintiff objects to this Interrogatory as overbroad, vague and ambiguous, and burdensome as to "all occasions" that N&A "offered" its own employees. Plaintiff further objects because the Interrogatory seeks information from third parties and

information not within its possession, custody or control.  Plaintiff further objects to the contention interrogatory propounded prior to the close of fact discovery and reserves its right to supplement its response as additional information becomes known.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- On March 3, 2015, Mohamad Iravani and Sarah Gould received correspondence from Saeed Nourmand regarding the Wilcox Hotel;

- On March 6, 2015, pursuant to the request of Saeed Nourmand, Sarah Gould assists with forwarding Wilcox Hotel plans, including an environmental assessment form, a site plan review, renderings, and master land use permit application, to zoning consultant Jeff Seymour, and arranges a call for Saeed Nourmand and Jeff Seymour;

- On March 7, 2015, Sarah Gould forwards public hearing documents to Jeff Seymour regarding the Thompson Hotel with Saeed copied;

- On March 10, 2015, N&A, including Michael Nourmand, rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- On March 11, 2015, Sarah Gould forwards public hearing information for the Thompson Hotel and notes that he would like a

host of people to attend, including Karen Lewis at N&A, Howard Lorey at N&A, and Michael Nourmand; she copies Saeed and Mohamad Iravani;

- On March 17, 2015, Howard Nourmand forwards Saeed map project to Sarah Gould to print using the N&A printer;

- On March 17, 2015, Saeed Nourmand forwards his concerns regarding the Thompson Hotel to Carolyn Rae Cole;

- On March 17, 2015, Carolyn Rae Cole emails Fred Gains noting that she has volunteered her assistance to Saeed to provide arguments that could be helpful at the hearing on Wednesday at the City;

- On March 18, 2015, Saeed sends more information regarding 1541 Wilcox project to Carolyn Rae Cole with respect to arguments against the project;

- On March 18, 2015, Carolyn notes that she spoke with Fred Gaines regarding the Wilcox hotel;

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- On March 20, 2015, Sarah Gould is copied on emails for arranging discussions with design of Thompson hotel with the City of Los Angeles;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand

Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- On September 3, 2015, Mohamad Iravani emails plans for Thompson Hotel to Saeed Normand;

- On September 8, 2015, Mohamad Iravani emails 1541 Wilcox Hotel documents to Saeed Nourmand with letter attached;

- On March 3, 2015, Mohamad Iravani received the Wilcox Hotel Drawings from Saeed Nourmand;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;

- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018;

- N&A employees, including Mohamad Iravani, enforced extortionate payments, interest, and penalties associated with coerced settlement agreements from Plaintiffs in early 2018.

**INTERROGATORY NO. 15**

State all facts which support YOUR contention that support and administrative functions allegedly provided by N&A to Sunset Landmark and

Nourmand "played a key role in the initiation of sham CEQA lawsuits", as alleged in paragraph 52 of the TAC.

**RESPONSE TO INTERROGATORY NO. 15**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "all facts" supporting the contention that N&A "support and administrative functions" for Sunset Landmark and Nourmand played a key role in the initiation of sham CEQA lawsuits. Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession. Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known. Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 12. Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

N&A provided support throughout the duration of the scheme by providing personnel and resources to carry out the actions described in the Responses to Interrogatories No. 4 and 5. N&A employees served as a recruiting pool and acted as the boots on the ground for Nourmand and Sunset Landmark. N&A administrative support professionals, including but not limited to Sarah Gould, performed key functions for Nourmand's challenges to the Thompson Hotel project, including but not limited to arranging phone calls with consultants and others, circulating hearing information, coordinating attendance by N&A employees and others at those City hearings, and arranging meetings between Plaintiff and Saeed Nourmand to discuss Saeed Nourmand's demands, among other key tasks.

In addition, N&A employees, including Michael Nourmand, Mohamad Iravani, Carolyn Rae Cole, Sarah Gould, Rachelle DeCastro, Howard Lorey, Karen Lewis and others, under the direction of Saeed Nourmand and/or other members of the Nourmand Enterprise, participated in the following:

- On March 18, 2015, N&A in conjunction with the Nourmand Enterprise rallied attendees and speakers to provide oral testimony in opposition to the Thompson Hotel project provided at a hearing before the Department of City Planning;

- In March 2015, employees of N&A attended meetings with Saeed Nourmand and principals of Relevant Group in order to communicate extortionate demands;

- In March 2015, employees of N&A reviewed planning documents related to the Thompson Hotel project in order to provide input on arguments against the project;

- At the March 18, 2015 hearing, N&A employees caused to be circulated a false and misleading petition in opposition to the Thompson Hotel project, which they executed at the direction of Saeed Nourmand and the Nourmand Enterprise;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, acting under the direction of Saeed Nourmand and the Nourmand Enterprise, concocted and submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;

- N&A employees assisted in facilitating payments to attorneys engaged in sham CEQA lawsuits;
- N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018.

**INTERROGATORY NO. 16**

IDENTIFY each and every N&A employee who YOU contend participated in the drafting of Nourmand's letters objecting to the projects before they were circulated to the City of LA, as alleged in paragraph 53 of the TAC.

**RESPONSE TO INTERROGATORY NO. 16**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the phrases "each and every N&A employee" who "participated in the drafting" of Nourmand's letters. Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession. Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Mohamad Iravani, Carolyn Rae Cole, Michael Nourmand, Sarah Gould, Rachelle DeCastro.

**INTERROGATORY NO. 17**

State the date and attendees for each and every meeting between Nourmand and competing developers that YOU contend was held in N&A's office space, as alleged in paragraph 53 of the TAC.

**RESPONSE TO INTERROGATORY NO. 17**

Plaintiff objects to this Interrogatory as vague, ambiguous, and overbroad with respect to the request to state "the date and attendees for each and every meeting between Nourmand and competing developers" in N&A's office space. Plaintiff further objects because the Interrogatory seeks information from third parties and

information not within its possession, custody or control or information already in Defendant's possession.   Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

- October 4, 2018 meeting with principals of the Schrader Hotel project, where the parties in attendance included Saeed Nourmand, Jayesh Patel, Bruce Rothman and Laurent Opman.

**INTERROGATORY NO. 18**

State with specificity all conduct by N&A which YOU contend evidences that N&A "organized and coordinated" meetings between Nourmand and competing developers that were held in N&A's office space, as alleged in paragraph 53 of the TAC.

**RESPONSE TO INTERROGATORY NO. 18**

Plaintiff objects to this Interrogatory as overbroad, vague and ambiguous, and burdensome as to the request to state "with specificity all conduct by N&A" "evidenc[ing] that N&A 'organized and coordinated' meetings between Nourmand and competing developers in N&A's office space.  Plaintiff further objects because the Interrogatory seeks information from third parties and information not within its possession, custody or control or information already in Defendant's possession. Plaintiff objects to the contention interrogatory as premature and reserves its right to supplement its response as additional information becomes known.  Plaintiff objects that this Interrogatory is harassing and burdensome given that it is duplicative of Interrogatory No. 17.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

or doctrine.   Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

- Bruce Rothman;
- Laurent Opman;
- Jayesh Patel;
- Stephan Nourmand.

Following Defendants' challenge to the Schrader Hotel project in a July 13, 2018 letter to the City of Los Angeles, Sunset and its agents and representatives (including Saeed Nourmand and Jayesh Patel) met with the ownership group for the Schrader Hotel project (KOAR) in October 2018, in an attempt to extract monetary payments and/or other concessions.   Once Defendants learned that the Schrader Hotel was not financially vulnerable to project delays at the October 2018 meeting, however, Defendants abandoned any further demand efforts.

Dated:  May 2, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: /s/ Susan K. Leader_____
       Susan K. Leader

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel
LLC, 6516 Tommie Hotel LLC and 6421
Selma Wilcox Hotel LLC

**<u>VERIFICATION</u>**

I, Richard Heyman, was a co-founder and Managing Partner of Relevant Group, LLC during the relevant time period pertaining to this litigation, and I am authorized to execute this verification on behalf of Plaintiffs Relevant Group, LLC, 1541 Wilcox Hotel LLC, 6516 Tommie Hotel LLC, and 6421 Selma Wilcox Hotel LLC. I have reviewed the documents listed below and the matters set forth therein are true and correct to the best of my knowledge, information, and belief.

1. **PLAINTIFF RELEVANT GROUP LLC'S RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMENT, LLC'S FIRST SET OF INTERROGATORIES;**

2. **PLAINTIFF 6516 TOMMIE HOTEL LLC'S RESPONSES TO DEFENDANT SUNSET LANKDMARK INVESTMENT, LLC'S FIRST SET OF INTERROGATORIES;**

3. **PLAINTIFF 6421 SELMA WILCOX HOTEL LLC'S RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMENT, LLC'S FIRST SET OF INTERROGATORIES;**

4. **PLAINTIFF 1541 WILCOX HOTEL LLC'S RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMENT LLC'S FIRST SET OF INTERROGATORIES;**

5. **PLAINTIFF RELEVANT GROUP LLC'S RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMENT, LLC'S SECOND SET OF INTERROGATORIES;**

6. **PLAINTIFF 6516 TOMMIE HOTEL LLC'S RESPONSES TO DEFENDANT SUNSET LANKDMARK INVESTMENT, LLC'S SECOND SET OF INTERROGATORIES;**

7. **PLAINTIFF 6421 SELMA WILCOX HOTEL LLC'S RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMENT, LLC'S SECOND SET OF INTERROGATORIES;**

- 1 -

8. **PLAINTIFF 1541 WILCOX HOTEL LLC'S RESPONSES TO DEFENDANT SUNSET LANDMARK INVESTMENT LLC'S SECOND SET OF INTERROGATORIES.**

9. **PLAINTIFF RELEVANT GROUP LLC'S RESPONSES TO DEFENDANT NOURMAND & ASSOCIATES FIRST SET OF INTERROGATORIES;**

10. **PLAINTIFF 6516 TOMMIE HOTEL LLC'S RESPONSES TO DEFENDANT NOURMAND & ASSOCIATES FIRST SET OF INTERROGATORIES;**

11. **PLAINTIFF 6421 SELMA WILCOX HOTEL LLC'S RESPONSES TO DEFENDANT NOURMAND & ASSOCIATES FIRST SET OF INTERROGATORIES; and**

12. **PLAINTIFF 1541 WILCOX HOTEL LLC'S RESPONSES TO DEFENDANT NOURMAND & ASSOCIATES FIRST SET OF INTERROGATORIES**

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 2nd day of May, 2022, at   Beverky Hills , California.

_____
                                     Richard Heyman

- 2 -
VERIFICATION

# EXHIBIT O

**From:**         Karen Lewis </O=FIRST ORGANIZATION/OU=FIRST ADMINISTRATIVE
GROUP/CN=RECIPIENTS/CN=KLEWIS_NOURMAND>
**Sent:**         March 11, 2015 1:36 PM
**To:**           Brentwood Office
**Subject:**      FW: 1523-1541 North Wilcox Ave_Public Hearing

Hi Agents,

Please see below. This is next Wednesday. We will not have an office meeting that day. Please let me know if you can
attend this with us on Saeed's behalf. He just wants some bodies there.

Thanks,

Karen

**From:** Michael Nourmand
**Sent:** Wednesday, March 11, 2015 12:02 PM
**To:** Sarah Gould; Libby Gmail; Karen Lewis; Howard Lorey; Carolyn Rae Cole; Charlene Laraneta
**Cc:** Saeed Nourmand; Mohamad Iravani; Chuck Eberly; allen@kingsarch.com
**Subject:** RE: 1523-1541 North Wilcox Ave_Public Hearing

Good Morning.

I spoke to my dad and he would like to have 15 people at this Public Hearing.

Who can join us? Keep in mind that anyone can come - Management, Staff, Agents, Friends, Family.

Sincerely,

Mikey

**From:** Sarah Gould
**Sent:** Wednesday, March 11, 2015 9:09 AM
**To:** Libby Gmail; Karen Lewis; Howard Lorey; Carolyn Rae Cole; Charlene Laraneta; Michael Nourmand
**Cc:** Saeed Nourmand; Mohamad Iravani
**Subject:** 1523-1541 North Wilcox Ave_Public Hearing

Good morning,

Please find attached a Public Hearing Notice regarding **1523-1541 North Wilcox Ave**.

Per Saeed's request he would like all of you to attend the Wilcox Hotel's public hearing.

N&A_000377

Information for place, date, and time below.

**Hearing By:** Hearing Officer
**Date:** Wednesday, March 18, 2015
**Time:** 2:00 p.m.
**Place:** *Los Angeles City Hall*
200 North Spring Street, Room 1020
Los Angeles, California 90012

***Best Regards,***
***Sarah Gould***

**Office of Saeed Nourmand**

*6525 Sunset Boulevard Suite G-2*
*Los Angeles, California 90028*
*Phone: 323.462.6262*
*Fax: 323.462.6264*

N&A_000378

| From: | Sarah Gould <SGould@nourmand.com> |
| --- | --- |
| Sent: | March 11, 2015 9:08 AM |
| To: | Libby Gmail;Karen Lewis;Howard Lorey;'Carolyn Rae Cole';Charlene Laraneta;Michael Nourmand |
| Cc: | Saeed Nourmand;Mohamad Iravani |
| Subject: | 1523-1541 North Wilcox Ave_Public Hearing |
| Attachments: | 1523-1541 North Wilcox Ave.pdf |

Good morning,

Please find attached a Public Hearing Notice regarding **1523-1541 North Wilcox Ave**.

Per Saeed's request he would like all of you to attend the Wilcox Hotel's public hearing.

Information for place, date, and time below.

**Hearing By:** Hearing Officer
**Date:** Wednesday, March 18, 2015
**Time:** 2:00 p.m.
**Place:** *Los Angeles City Hall*
200 North Spring Street, Room 1020
Los Angeles, California 90012

*Best Regards,*
*Sarah Gould*

*Office of Saeed Nourmand*

*6525 Sunset Boulevard Suite G-2*
*Los Angeles, California 90028*
*Phone: 323.462.6262*
*Fax: 323.462.6264*

N&A_000427

| | |
|---|---|
| **From:** | Karen Lewis </O=FIRST ORGANIZATION/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=KLEWIS_NOURMAND> |
| **Sent:** | March 11, 2015 12:04 PM |
| **To:** | Michael Nourmand;Sarah Gould;Libby Gmail;Howard Lorey;Carolyn Rae Cole;Charlene Laraneta |
| **Cc:** | Saeed Nourmand;Mohamad Iravani;'Chuck Eberly';'allen@kingsarch.com' |
| **Subject:** | RE: 1523-1541 North Wilcox Ave_Public Hearing |

I will be there.  I will check with the agents to see if they can come and let you know.

Karen

**From:** Michael Nourmand
**Sent:** Wednesday, March 11, 2015 12:02 PM
**To:** Sarah Gould; Libby Gmail; Karen Lewis; Howard Lorey; Carolyn Rae Cole; Charlene Laraneta
**Cc:** Saeed Nourmand; Mohamad Iravani; Chuck Eberly; allen@kingsarch.com
**Subject:** RE: 1523-1541 North Wilcox Ave_Public Hearing

Good Morning.

I spoke to my dad and he would like to have 15 people at this Public Hearing.

Who can join us? Keep in mind that anyone can come - Management, Staff, Agents, Friends, Family.

Sincerely,

Mikey

**From:** Sarah Gould
**Sent:** Wednesday, March 11, 2015 9:09 AM
**To:** Libby Gmail; Karen Lewis; Howard Lorey; Carolyn Rae Cole; Charlene Laraneta; Michael Nourmand
**Cc:** Saeed Nourmand; Mohamad Iravani
**Subject:** 1523-1541 North Wilcox Ave_Public Hearing

Good morning,

Please find attached a Public Hearing Notice regarding **1523-1541 North Wilcox Ave**.

Per Saeed's request he would like all of you to attend the Wilcox Hotel's public hearing.

Information for place, date, and time below.

**Hearing By:** Hearing Officer
**Date:** Wednesday, March 18, 2015

**Time:** 2:00 p.m.
**Place:** *Los Angeles City Hall*
200 North Spring Street, Room 1020
Los Angeles, California 90012

*Best Regards,*
*Sarah Gould*

*Office of Saeed Nourmand*

*6525 Sunset Boulevard Suite G-2*
*Los Angeles, California 90028*
*Phone: 323.462.6262*
*Fax: 323.462.6264*

N&A_000473

**From:** Howard Lorey </O=FIRST ORGANIZATION/OU=FIRST ADMINISTRATIVE
GROUP/CN=RECIPIENTS/CN=HLOREY_NOURMAND>
**Sent:** March 11, 2015 3:47 PM
**To:** Michael Nourmand
**Subject:** RE: 1523-1541 North Wilcox Ave_Public Hearing

So far I've got Carolyn, Ken and myself but I will keep working on it.

- HL

**From:** Michael Nourmand
**Sent:** Wednesday, March 11, 2015 12:02 PM
**To:** Sarah Gould; Libby Gmail; Karen Lewis; Howard Lorey; Carolyn Rae Cole; Charlene Laraneta
**Cc:** Saeed Nourmand; Mohamad Iravani; Chuck Eberly; allen@kingsarch.com
**Subject:** RE: 1523-1541 North Wilcox Ave_Public Hearing

Good Morning.

I spoke to my dad and he would like to have 15 people at this Public Hearing.

Who can join us? Keep in mind that anyone can come - Management, Staff, Agents, Friends, Family.

Sincerely,

Mikey

**From:** Sarah Gould
**Sent:** Wednesday, March 11, 2015 9:09 AM
**To:** Libby Gmail; Karen Lewis; Howard Lorey; Carolyn Rae Cole; Charlene Laraneta; Michael Nourmand
**Cc:** Saeed Nourmand; Mohamad Iravani
**Subject:** 1523-1541 North Wilcox Ave_Public Hearing

Good morning,

Please find attached a Public Hearing Notice regarding **1523-1541 North Wilcox Ave**.

Per Saeed's request he would like all of you to attend the Wilcox Hotel's public hearing.

Information for place, date, and time below.

**Hearing By:** Hearing Officer
**Date:** Wednesday, March 18, 2015
**Time:** 2:00 p.m.

N&A_000474

**Place:** *Los Angeles City Hall*
200 North Spring Street, Room 1020
Los Angeles, California 90012

*Best Regards,*
*Sarah Gould*

*Office of Saeed Nourmand*

*6525 Sunset Boulevard Suite G-2*
*Los Angeles, California 90028*
*Phone: 323.462.6262*
*Fax: 323.462.6264*

N&A_000475

| | |
|---|---|
| **From:** | Allen Shamooilian <allen@kingsarch.com> |
| **Sent:** | March 02, 2015 4:07 PM |
| **To:** | Saeed Nourmand |
| **Cc:** | Michael Nourmand;Richard Shamooilian |
| **Subject:** | Wilcox |

Hi Saeed,

I am asking my assistant, Liz, to reach try to get the notice of hearing in front the Folbs (6464 Sunset among others) along with any of the other hotel owners and operators of the pending hotels on this list and existing competing projects like the W and the Loews.

Do you have contacts with any of these groups?

Best,



ALLEN SHAMOOILIAN
310.659.7575 x12
310.659.7576 Direct

If you are not the intended recipient, any disclosure or use of this information is prohibited. If received in error, please contact us and destroy the original transmission and its attachments without reading or saving in any manner. Unless the intent is otherwise expressly stated by us, this message shall not be binding on King's Arch, LP, its principals or its affiliates (together "KA") until reviewed by its attorneys and the execution of a more formal and definitive contract between the parties. Although this is believed to be free of defect, no responsibility is accepted by KA for any related loss or damage {.}

| From: | John Tronson (Avison Young) <John.Tronson@avisonyoung.com> |
|---|---|
| Sent: | March 17, 2015 3:20 PM |
| To: | Saeed Nourmand;sboulevard26@gmail.com;Michael Nourmand |
| Cc: | Mohamad Iravani;Steven Tronson (Avison Young);Thor Lee (Avison Young) |
| Subject: | FW: Wilcox Design Package |
| Attachments: | 2015-03-16 Wilcox Revised Setbacks.pdf, ATT00001.htm |

Hi Saeed,

Please find included Richard Heyman's latest plan which addresses you concern about setbacks, it essentially gives you what you want with respect to that issue. He is working on a plan to put the pool on the roof and enclose a ballroom to eliminate noise, which was also a concern of yours. With respect to height, the project doesn't come close to penciling out as profitable in a low rise envelope, and given there is no height limit in Hollywood there is nothing he could do to address your concerns on that front.

I hope you see these as positive signs that Richard is addressing your concerns and consider changing your position regarding supporting, or at least not opposing, his project. I believe it is projects like this which have taken Hollywood out of the gutter where it was and elevating it to a top tier market, and I believe the next generation of projects both coming out of the ground now and in the planning stages are critical to finishing that task.

Cordially,

**John P. Tronson**
Principal
*john.tronson@avisonyoung.com*
CA License #01153636

Avison Young
6711 Forest Lawn Drive
Los Angeles, CA 90068

D  323.603.5059
T  323.851.6666
C  323.574.0069
avisonyoung.com

 



Avison Young – Southern California, Ltd.
Legal Disclaimer

**From:** Richard Heyman [mailto:richard@fivechairs.net]
**Sent:** Monday, March 16, 2015 5:19 PM
**To:** John Tronson (Avison Young)
**Subject:** Fwd: Wilcox Design Package

Let's discuss tomorrow

Thanks

Richard

Sent from my iPad

Begin forwarded message:

> **From:** "Catherine Yatrakis" <CYatrakis@rockwellgroup.com>
> **To:** "Richard Heyman" <richard@fivechairs.net>
> **Subject: Wilcox Design Package**
>
> Hi Richard,
> Here is the updated Wilcox package.
> Thanks,
> Catherine
>
> Catherine Yatrakis, LEED AP
> Associate
> Rockwell Group
> 5 Union Sq. West
> New York, NY 10003
> T 212.463.0334
> T 212.901.9678 direct
> F 212.463.0335

N&A_000479

| | |
|---|---|
| **From:** | Sarah Gould <SGould@nourmand.com> |
| **Sent:** | March 03, 2015 1:57 PM |
| **To:** | 'Carolyn Rae Cole' |
| **Subject:** | FW: Wilcox Hotel Drawings |
| **Attachments:** | 2014-09-23 Wilcox Plans and Section2.pdf |

Hi Carolyn,

Please find attached per Saeed's request documents for Wilcox.

Let me know if you have any questions.

Best regards,
Sarah Gould

**From:** Saeed Nourmand
**Sent:** Tuesday, March 03, 2015 11:05 AM
**To:** Mohamad Iravani; Sarah Gould
**Subject:** FW: Wilcox Hotel Drawings


**From:** Oliver Netburn [mailto:oliver.netburn@lacity.org]
**Sent:** Friday, February 27, 2015 11:54 AM
**To:** Allen Shamooilian; Saeed Nourmand
**Subject:** Wilcox Hotel Drawings

Please see attached.


--

Oliver Netburn
City Planning Associate, City of Los Angeles
213.978.1382

N&A_000431

**From:**       Saeed Nourmand </O=FIRST ORGANIZATION/OU=FIRST ADMINISTRATIVE
GROUP/CN=RECIPIENTS/CN=SNOURMAND_NOURMAND>
**Sent:**       March 16, 2015 12:45 PM
**To:**         'fgaines@gaineslaw.com';Carolyn Rae Cole
**Cc:**         Saeed Nourmand
**Subject:**    FW: Wilcox Hotel

Hello Fred,

I had a meeting which was arranged by Mayor Garcetti's office to discuss my concerns about the above project.
In attendance were
 myself,
Mr. Allen Shamooilian who owns the property to the east of my property on Sunset Blvd. ,
Ms. Poonam Narewatt from the Mayor's office.
Mr. Gary Benjamin, Planning Deputy from Councilmember Mitch O'Farrell and
Ms. Ashley Atkinson, Planning and Housing specialist from the Mayor's office.
I handed out the letter below and had a very friendly discussion as to why me and Mr. Shamooilian opposed the changes
that the developer has asked for.
I left the meeting feeling that the group was sympathetic to the points made.
Later on Friday, I met with Mr. Scott Campbell who is a licensed real estate agent at Nourmand and Associates. Mr.
Campbell on the side works for developers. Mr. Campbell unbeknown to me till a few days ago has been hired by the
Wilcox Hotel developer to help him obtain the entitlements that the developer is seeking. Mr. Campbell has contacted
several organizations and  people excluding myself trying to drum up support for the project.
Mr. Campbell informed me that the developer has conceded to set his rear yard setback to 20 foot.
I told Mr. Campbell that the height was not compatible with the other properties on the street. I told him that Citizen News
Building next door is a beautiful building and to the north of the property on the same side of the street is a gorgeous
historical building which houses the Post Office. He replied that there is no high limit at this time. I replied that although
there are no high limits at this time the FAR is limited  to two to one, therefore I would support the FAR to be changed only
to the extent that  four story building would be allowed.
He also told me that the developer wants to put the pool on the roof and at this time is not asking to have a night club to
be placed on the roof.
Both of the above changes are very much to Mr. Shamooilian and my liking.
I also had a phone conversation with Mr. David Carrera, who lives very close to the property and is an active member with
respect to noise and liquor license activities in Hollywood. He told me that he has hired a sound engineer at his own
expense to contradict the developer's report that a night club on the roof is not going to have a negative effect. Please
note that he has paid $1,600 of his hard earned monies for the report and that $1,600 is a lot of money for him.
Today I met with Mr. Marwan Korban who is the service director of Hornburg Jaguar, Landrover dealership repair facility.
The facility is located across the street from the project. I asked him if he was in favor of the project. He replied that he
personally  was not in favor of the project; but he did not know what the position of the dealership was and therefore he
could not voice his opposition at this time. He is meeting with the management next week.
He also told me that the developer needed extra parking spaces at night and that  he had approached the dealership to
rent the parking spaces at night.
Mr. Korban had serious concerns about the 125 parking spaces, traffic as well as the size and the height of the proposed
project.
Please call me when you get a chance.
Thanks,
Saeed

N&A_000418

| | |
|---|---|
| **From:** | Carolyn Rae Cole <carolyn@carolynraecole.com> |
| **Sent:** | March 17, 2015 6:32 PM |
| **To:** | Saeed Nourmand |
| **Subject:** | RE: 1541 Wilcox |

Thank you.  I talked to Fred today, BTW.

**Carolyn Rae Cole, Attorney/Realtor**
**Associate Branch Manager – Training Director**
**Nourmand & Associates, Hollywood Office**
BRE# 01703618
323-359-7300
carolyn@carolynraecole.com
www.LAHome4You.com



**From:** Saeed Nourmand [mailto:SNourmand@Nourmand.com]
**Sent:** Tuesday, March 17, 2015 6:17 PM
**To:** carolyn@carolynraecole.com
**Subject:** FW: 1541 Wilcox

FYI

**From:** Sarah Gould
**Sent:** Tuesday, March 17, 2015 4:12 PM
**To:** fgaines@gaineslaw.com
**Cc:** Saeed Nourmand
**Subject:** 1541 Wilcox

Hello Fred,

Please find attached the revised document regarding Wilcox, per Saeed.

**Best Regards,**
**Sarah Gould**

**Office of Saeed Nourmand**

*6525 Sunset Boulevard Suite G-2*
*Los Angeles, California 90028*
*Phone: 323.462.6262*
*Fax: 323.462.6264*

N&A_000449

| | |
|---|---|
| **From:** | Michael Nourmand </O=OEXCH082/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=A78E776892634D6ABA3E481E675F00B8-MNOURMAND@NOURM> |
| **Sent:** | July 09, 2016 7:58 PM |
| **To:** | @Brentwood Office;@Beverly Hills Office;@Hollywood Office |
| **Subject:** | Department of City Planning Recommendation Report |
| **Attachments:** | CPC Staff Report CPC-2015-3484-CA.pdf, Fact Sheet.pdf, QA Revised 7-6-2016.pdf |

Dear Nourmand Agents,

I hope you are enjoying your weekend.

There has been a lot of antidevelopment talk throughout LA County.

My goal is to make sure you are well informed so please read through the attachments.

Sincerely,

Michael

N&A_000001

| From: | Saeed Nourmand </O=OEXCH082/OU=EXCHANGE ADMINISTRATIVE GROUP |
|---|---|
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=F439C9EE3DA84FDABE723CEE9CC6E855-SNOURMAND@NOURM> |
| Sent: | April 27, 2017 11:27 PM |
| To: | Mohamad Iravani;hnourmand@mac.com;'Howard Nourmand';Michael Nourmand;Howard Lorey |
| Cc: | snourmand@hotmail.com;Saeed Nourmand |
| Subject: | Re: Hotels In Hollywood |

http://la.curbed.com/2017/4/26/15443360/hollywood-hotel-tommie-appeal-rejected

N&A_000462

| From: | Howard Lorey </O=OEXCH082/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=AFE9DA095F754955A7C3AED9C48C462F-HLOREY@NOURMAND> |
|---|---|
| Sent: | April 28, 2017 2:13 PM |
| To: | Saeed Nourmand;Mohamad Iravani;hnourmand@mac.com;'Howard Nourmand';Michael Nourmand |
| Cc: | snourmand@hotmail.com |
| Subject: | RE: Hotels In Hollywood |

Sorry to see this. I hoped they would at least make them scale it back.

HL

HOWARD LOREY - BROKERAGE MANAGER
NOURMAND & ASSOCIATES - SUNSET/HOLLYWOOD
Three Offices. One Respected Name
6525 Sunset Blvd - Suite G2
Los Angeles, CA 90028
www.Nourmand.com
Office | 323.462.6262 | Mobile | 323.251.4553
BRE - 01263717



**From:** Saeed Nourmand
**Sent:** Thursday, April 27, 2017 11:28 PM
**To:** Mohamad Iravani; hnourmand@mac.com; 'Howard Nourmand'; Michael Nourmand; Howard Lorey
**Cc:** snourmand@hotmail.com; Saeed Nourmand
**Subject:** Re: Hotels In Hollywood

http://la.curbed.com/2017/4/26/15443360/hollywood-hotel-tommie-appeal-rejected

N&A_000463

d)   **Create a new source of substantial light or glare which would adversely affect day or nighttime views in the area?**

**Less than Significant Impact.** Light impacts are typically associated with the use of artificial light during the evening and nighttime hours. Glare may be a daytime occurrence caused by the reflection of sunlight or artificial light from highly polished surfaces, such as window glass and reflective cladding materials, and may interfere with the safe operation of a motor vehicle on adjacent streets. Daytime glare is common in urban areas and is typically associated with mid- to high-rise buildings with exterior façades largely or entirely comprised of highly reflective glass or mirror-like materials. Nighttime glare is primarily associated with bright point-source lighting that contrasts with existing low ambient light conditions.

Although vacant lots are located in the Project Area, in general the Project Area is made-up single-family units with high levels of ambient nighttime lighting, including street lights, architectural and security lighting, indoor building illumination (light emanating from the interior of structures which passes through windows) and automobile headlights.

In general, anticipated development includes additions to and demolition of existing single-family homes and a small amount of new development (in the form of new single-family homes on vacant lots). These uses either are currently producing some light (as in the case of existing homes) or would generally be located in areas that are urbanized and well lit. Further, single-family residential uses would not be expected to emit large amounts of nighttime lighting. Development (e.g., addition to and/or new construction) of single-family zoned parcels that occurs pursuant to the proposed Project would be required to comply with all applicable regulations that address light and glare including LAMC Chapter 9, Article 3, Section 93.0117.[7] Impacts would be less than significant and no further analysis is required.

---

[7]   LAMC Chapter 9, Article 3, Section 93.0117: No exterior light source may cause more than two footcandles of lighting intensity or generate direct glare onto exterior glazed windows or glass doors; elevated habitable porch, deck, or balcony; or any ground surface intended for uses such as recreation, barbecue or lawn areas or any other property containing a residential unit or units.

N&A_000604

**From:** Michael Nourmand </O=OEXCH082/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=A78E776892634D6ABA3E481E675F00B8-MNOURMAND@NOURM>
**Sent:** June 11, 2019 10:59 AM
**To:** Myra Nourmand
**Subject:** RE: Law360 - LA Developer Accuses Rival Of Using CEQA For Extortion

No need to respond.

M

Michael Nourmand
Nourmand & Associates Realtors
President
421 N. Beverly Drive, Suite 200
Beverly Hills, CA 90210
Office: (310) 274-4000
Mobile: (310) 666-3294
DRE# 01281017



**From:** Myra Nourmand <mynourmand@nourmand.com>
**Sent:** Tuesday, June 11, 2019 10:55 AM
**To:** Michael Nourmand <MNourmand@nourmand.com>
**Subject:** FW: Law360 - LA Developer Accuses Rival Of Using CEQA For Extortion

?????

**From:** Elias Shokrian <Elias@calitexllc.com>
**Sent:** Tuesday, June 11, 2019 10:41 AM
**To:** Myra Nourmand <mynourmand@nourmand.com>
**Cc:** Shokrian Shirley <shirleyshokrian@gmail.com>
**Subject:** FW: Law360 - LA Developer Accuses Rival Of Using CEQA For Extortion

SHAME, SHAME, SHAME ON ALL OF YOU!!! I know you don't care because that's what you told me when I called you and asked you to get together with you and Saeed to discuss this amicably but as you said you don't care because you said everyone in the community knows you and love you. I guess you didn't have enough money already so you guys have to resort to extortion! Your greed will destroy you and G will take away everything he has given you! I strongly suggest that Saeed drops his extortion law suit for his own as well as for your family name otherwise this is going to get very ugly for your entire family but I guess just like all other extortionists you already have so much money and power that you don't care!!!

**From:** Richard Heyman [mailto:richard@relevantgroup.com]
**Sent:** Tuesday, June 11, 2019 8:32 AM
**To:** Elias Shokrian; James Irving
**Subject:** Law360 - LA Developer Accuses Rival Of Using CEQA For Extortion

Just the start of press

# LA Developer Accuses Rival Of Using CEQA For Extortion

By _Hannah Albarazi_

Law360 (June 10, 2019, 10:36 PM EDT) -- A Los Angeles hotel developer filed a RICO suit in
California federal court Monday alleging a rival property developer brought sham California
Environmental Quality Act suits to extort multimillion-dollar ransoms, noting that the rival once
said, "You know the drill. It's going to take a check to make this go away."

Hotel developer Relevant Group LLC and their affiliates sued Saeed Nourmand, his son and
their companies, Sunset Landmark Investment LLC and Nourmand & Associates, alleging they
have been running a lucrative extortion scheme by bringing "frivolous" litigation under state
environmental statutes, in violation of the Racketeer Influenced and Corrupt Organizations Act.

The "meritless" litigation is a drain on the city of Los Angeles and the California judicial system,
the complaint alleges. Not only does the city expend resources investigating and defending the
claims, but efforts to revitalize parts of Los Angeles in need of economic investment are
hindered in the process, according to the complaint.

Nourmand's litigation is not brought in good faith to reduce environmental impact, the complaint
alleges, but in an attempt to bring Relevant and other developers' construction plans to a
standstill if they don't pay Nourmand to drop the claims.

Neither Saeed Nourmand nor his son responded to requests for comment Monday.

"Dead-set on expanding their reach and influence, defendants have crossed the line from tough
business practices to outright extortion, threatening competing developers that if they do not
accede to defendants' exorbitant demands, defendants will bombard them with frivolous

N&A_000693

environmental litigation," the complaint alleges. "Through his network of individuals and entities working with him, Saeed Nourmand has conspired to extort millions of dollars from his business rivals."

Relevant says Sunset Landmark pursued environmental litigation to halt development of Relevant's Thompson Hotel in 2016 and Relevant's Tommie Hotel in 2017, according to the complaint.

Relevant said it paid Sunset Landmark "a ransom" of $5.5 million in January 2018 so that it would drop its environmental litigation involving a hotel Relevant was developing. Once Relevant paid them, Sunset Landmark dismissed the litigation, the complaint alleges.

"Nourmand Enterprise was successful in its efforts to extort Relevant Group. After months of fighting the litigation, Nourmand Enterprise agreed to dismiss the claim only after extracting a payment of $5.5 million from Relevant Group," the complaint alleges.

Then, on April 2, 2019, Sunset Landmark again filed environmental litigation to halt development on Relevant's Selma Hotel, according to the complaint.

In all three suits, Robert P. Silverstein of The Silverstein Law Firm APC represented Sunset Landmark, according to the complaint.

Silverstein did not respond to a request for comment Monday.

Relevant maintains it has suffered damages in excess of $100 million, claiming in the complaint that the CEQA litigation put its Selma Hotel development in Hollywood under threat of coming to a standstill and placed Relevant at risk of losing its financing for the project.

"Defendants' goal in these actions is not to reduce any adverse environmental impact of these developments, but simply to pad their own wallets," the complaint alleges.

Relevant says Saeed Nourmand has himself admitted that the environmental litigation is a sham, the complaint alleges. Nourmand allegedly once told Relevant, "You know the drill. It's going to take a check to make this go away," according to the complaint.

Relevant claims Nourmand and his associates are bullying rival developers and engaging in

N&A_000694

"lucrative racketeering activity."

"We're taking a stand today because we cannot allow these bad actors to continue to rob
developers, the City and taxpayers blind by using bullying and extortion to delay development
projects that revitalize our communities," Relevant said in a statement sent to Law360 on
Monday.

Relevant Group is represented by Susan K. Leader and Joshua A. Rubin of Akin Gump Strauss
Hauer & Feld LLP.

Counsel information for Nourmand could not immediately be determined Monday.

The case is Relevant Group LLC et al. v. Stephen "Saeed" Nourmand et al., case number 2:19-
cv-05019, in the U.S. District Court for the Central District of California.

--Editing by Daniel King.


Cheryl Bame
Bame Public Relations
2001 S. Barrington Ave., Suite 305
Los Angeles, CA 90025
tel: 310-312-8800
cel: 714-608-9790
Cheryl@BamePR.com
www.BamePR.com
www.linkedin.com/in/cherylbame
Twitter: @cherylbame
Blog: TheLegalPRBlog.com
View my http://viz.me/CherylBame/t/7

N&A_000695

| From: | Michael Nourmand </O=OEXCH082/OU=EXCHANGE ADMINISTRATIVE GROUP |
| --- | --- |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=A78E776892634D6ABA3E481E675F00B8-MNOURMAND@NOURM> |
| Sent: | September 14, 2016 11:46 AM |
| To: | Allen Shamooilian;Saeed Nourmand |
| Cc: | howard@grand-jete.com |
| Subject: | RE: Two proposed projects on Sunset |

Allen,

Thanks for sharing. The building on Sunset looks great! I'm optimistic that it will help bring more foot traffic our way.

I hope all is well.

Sincerely,

Mikey

Michael Nourmand
Nourmand & Associates Realtors
President
421 N. Beverly Drive, Suite 200
Beverly Hills, CA 90210
Office: (310) 274-4000
Mobile: (310) 666-3294
www.nourmand.com

**From:** Allen Shamooilian [mailto:allen@kingsarch.com]
**Sent:** Wednesday, September 14, 2016 5:51 AM
**To:** Saeed Nourmand
**Cc:** Michael Nourmand; howard@grand-jete.com
**Subject:** Two proposed projects on Sunset

Hi Saeed and sons.

I hope all is well. Thought you'd find these two articles interesting.

http://la.curbed.com/2016/9/12/12894710/amoeba-music-demolition-development-hollywood

http://la.curbed.com/2016/6/16/11955276/ivar-gardens-hollywood-hotel-jack-in-the-box-sunset-cahuenga-rd-olson

If you are not the intended recipient, disclosure or use of this information is prohibited. Contact us and destroy the original. Unless otherwise stated by us, this message shall not be binding on King's Arch, Inc. or its affiliates

N&A_000697

("KA") until review by its attorneys and execution of a formal contract. KA is not liable for any errors, omissions, loss or damage {.}

N&A_000698

**From:**      Saeed Nourmand </O=OEXCH082/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=F439C9EE3DA84FDABE723CEE9CC6E855-SNOURMAND@NOURM>
**Sent:**      April 07, 2017 1:51 AM
**To:**        Mohamad Iravani;Michael Nourmand
**Subject:**   Fw: Approved Entitlement Plans


**From:** Richard Heyman <richard@relevantgroup.com>
**Sent:** Wednesday, April 05, 2017 4:21 PM
**To:** Saeed Nourmand
**Subject:** Approved Entitlement Plans

Hi Saeed

Pls click on the link below to review the Approved Hotel Plans

Let me know if you have any questions or comments

Thank you!

**RICHARD HEYMAN**
MANAGING PARTNER

1605 N CAHUENGA BLVD
HOLLYWOOD • CA • 90028
Office 323 466 1400
www.relevantgroup.com



http://planning.lacity.org/pdiscaseinfo/CaseId/MTk5MTc10
http://planning.lacity.org/pdiscaseinfo/CaseId/MTk5MTc10

N&A_000849

| From: | Michael Nourmand </O=FIRST ORGANIZATION/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=MNOURMAND_NOURMAND> |
|---|---|
| Sent: | March 11, 2015 12:02 PM |
| To: | Sarah Gould;Libby Gmail;Karen Lewis;Howard Lorey;Carolyn Rae Cole;Charlene Laraneta |
| Cc: | Saeed Nourmand;Mohamad Iravani;'Chuck Eberly';'allen@kingsarch.com' |
| Subject: | RE: 1523-1541 North Wilcox Ave_Public Hearing |

Good Morning.

I spoke to my dad and he would like to have 15 people at this Public Hearing.

Who can join us? Keep in mind that anyone can come - Management, Staff, Agents, Friends, Family.

Sincerely,

Mikey

**From:** Sarah Gould
**Sent:** Wednesday, March 11, 2015 9:09 AM
**To:** Libby Gmail; Karen Lewis; Howard Lorey; Carolyn Rae Cole; Charlene Laraneta; Michael Nourmand
**Cc:** Saeed Nourmand; Mohamad Iravani
**Subject:** 1523-1541 North Wilcox Ave_Public Hearing

Good morning,

Please find attached a Public Hearing Notice regarding **1523-1541 North Wilcox Ave**.

Per Saeed's request he would like all of you to attend the Wilcox Hotel's public hearing.

Information for place, date, and time below.

**Hearing By:** Hearing Officer
**Date:** Wednesday, March 18, 2015
**Time:** 2:00 p.m.
**Place:** *Los Angeles City Hall*
200 North Spring Street, Room 1020
Los Angeles, California 90012

*Best Regards,*
*Sarah Gould*

*Office of Saeed Nourmand*

6525 Sunset Boulevard Suite G-2
Los Angeles, California 90028
Phone: 323.462.6262
Fax: 323.462.6264

N&A_000700

| From: | Mohamad Iravani </O=FIRST ORGANIZATION/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=MIRAVANI_NOURMAND> |
|---|---|
| Sent: | May 04, 2015 10:13 AM |
| To: | Saeed Nourmand;'STEPHAN BOULEVARD' |
| Subject: | FW: CPC-2014-3706-VZC-HD-ZAA-SPR |

FYI.

**From:** Oliver Netburn [mailto:oliver.netburn@lacity.org]
**Sent:** Friday, May 01, 2015 5:11 PM
**To:** undisclosed-recipients
**Subject:** CPC-2014-3706-VZC-HD-ZAA-SPR

Hello,

This email is to inform you that the CPC hearing for 1523-1541 Wilcox (CPC-2014-3706-VZC-HD-ZAA-SPR) has been postponed and is tentatively set for July 23rd. If you signed the pink sheet at the public hearing, you will receive a copy of the Staff Report approximately 10 days prior to the hearing.

Thank you!

--
Oliver Netburn
City Planning Associate, City of Los Angeles
213.978.1382

N&A_000899

**From:** Sarah Gould </O=FIRST ORGANIZATION/OU=FIRST ADMINISTRATIVE
GROUP/CN=RECIPIENTS/CN=SGOULD_NOURMAND>
**Sent:** March 03, 2015 1:57 PM
**To:** 'Carolyn Rae Cole'
**Subject:** FW: Wilcox Hotel Drawings
**Attachments:** 2014-09-23 Wilcox Plans and Section2.pdf

Hi Carolyn,

Please find attached per Saeed's request documents for Wilcox.

Let me know if you have any questions.

Best regards,
Sarah Gould

**From:** Saeed Nourmand
**Sent:** Tuesday, March 03, 2015 11:05 AM
**To:** Mohamad Iravani; Sarah Gould
**Subject:** FW: Wilcox Hotel Drawings

**From:** Oliver Netburn [mailto:oliver.netburn@lacity.org]
**Sent:** Friday, February 27, 2015 11:54 AM
**To:** Allen Shamooilian; Saeed Nourmand
**Subject:** Wilcox Hotel Drawings

Please see attached.

--

Oliver Netburn
City Planning Associate, City of Los Angeles
213.978.1382

N&A_001034

**From:**          Sarah Gould </O=FIRST ORGANIZATION/OU=FIRST ADMINISTRATIVE
GROUP/CN=RECIPIENTS/CN=SGOULD_NOURMAND>
**Sent:**          March 03, 2015 2:14 PM
**To:**            'Carolyn Rae Cole'
**Subject:**       RE: FW: Wilcox Hotel Drawings

Not sure. Please stand by for directions. Per Saeed.

**From:** Carolyn Rae Cole [mailto:carolyn@carolynraecole.com]
**Sent:** Tuesday, March 03, 2015 2:09 PM
**To:** Sarah Gould
**Subject:** Re: FW: Wilcox Hotel Drawings

Why me?

Carolyn Rae Cole, Attorney /Realtor, Associate Branch Manager and Training Director, Nourmand & Associates
Hollywood, Carolyn@carolynraecole.com 323-359-7300

On Mar 3, 2015 1:57 PM, Sarah Gould <SGould@nourmand.com> wrote:

Hi Carolyn,

Please find attached per Saeed's request documents for Wilcox.

Let me know if you have any questions.

Best regards,

Sarah Gould

**From:** Saeed Nourmand
**Sent:** Tuesday, March 03, 2015 11:05 AM
**To:** Mohamad Iravani; Sarah Gould
**Subject:** FW: Wilcox Hotel Drawings

**From:** Oliver Netburn [mailto:oliver.netburn@lacity.org]
**Sent:** Friday, February 27, 2015 11:54 AM
**To:** Allen Shamooilian; Saeed Nourmand
**Subject:** Wilcox Hotel Drawings


Please see attached.


--

Oliver Netburn

City Planning Associate, City of Los Angeles

213.978.1382

Two questions:

1)  Is it possible to get a list of the mailing addresses to which the notices went out?

2)  Is there a process to request a delay of this hearing under any circumstance?

Best,

cid:image001.gif@01CFE21A.23C31BD0

ALLEN SHAMOOILIAN
310.659.7575 x12
310.659.7576 Direct

From: Allen Shamooilian
Sent: Wednesday, February 25, 2015 2:31 PM
To: 'Oliver Netburn'
Cc: SNourmand@Nourmand.com <mailto:SNourmand@Nourmand.com>
Subject: RE: 1541 Wilcox Project

See you then!

Best,

cid:image001.gif@01CFE21A.23C31BD0

ALLEN SHAMOOILIAN
310.659.7575 x12
310.659.7576 Direct

From: Oliver Netburn [mailto:oliver.netburn@lacity.org <mailto:oliver.netburn@lacity.org> ]
Sent: Wednesday, February 25, 2015 2:26 PM

To: Allen Shamooilian
Cc: SNourmand@Nourmand.com
Subject: Re: 1541 Wilcox Project

Friday 10 am is fine.

On Wed, Feb 25, 2015 at 2:25 PM, Allen Shamooilian <allen@kingsarch.com> wrote:
    Thank you Oliver.

CONFIDENTIAL                                                                      SUNSET_00002533

To: Hearing Officer

Department of City Planning

City of Los Angeles

Re: Case Number CPC-2014-3706-vzc-HD-ZAA-SPR

Concerning  1541 Wilcox Avenue, Los Angeles


Attention Hearing Officer:


I hereby object to the proposed 162 foot high proposed Hotel at 1541 Wilcox Avenue on the grounds that it is out of character with the neighborhood, will cast shadows on our properties, will make the traffic even worse in our neighborhood and will be a noise and parking nuisance with its proposed nightclub, bar and restaurant and will contribute to the already intolerable late night foot and car traffic on our largely residential streets late into the night.

| Signed: | Print Name: | Address: |
|---------|-------------|----------|
| | MARTIN WAWRYSCH | 1432 N HUDSON AVE |
| Anita Haegele | Anita Haegele | 1439 N. Hudson Ave. |
| Karen Lewis | KAREN Lewis | 6525 Sunset |
| Elizabeth Shapiro | Elizabeth Shapiro | " |
| Arnold Kryn | Arnold Kryn | " |
| Wynne Wallace | Wynne Wallace | |
| | Housing Corp - 6525 Sunset Blvd 900-B | |
| | Michael Nourmand | " |
| | Kenneth Sven | " " |
| Alieh Nourmand | Alieh Nourmand | " " |

SUNSET_00002442

## RE: Hotel Development on Wilcox

**From:**   Saeed Nourmand <"/o=first organization/ou=first administrative group/cn=recipients/cn=snourmand">
**To:**   Allen Shamooilian <allen@kingsarch.com>
**Date:**   Mon, 23 Feb 2015 18:23:19 +0000

Allen, Please call me when you get a chance.
Saeed

---

**From:** Allen Shamooilian [mailto:allen@kingsarch.com]
**Sent:** Monday, February 23, 2015 5:15 AM
**To:** Saeed Nourmand
**Cc:** Michael Nourmand (mbnourmand@gmail.com); howard@grand-jete.com; Richard Shamooilian
**Subject:** Hotel Development on Wilcox

Hello Saeed.

I hope all is going great.

Did you see the notice of public hearing regarding the project at 1521 N. Wilcox?
It is scheduled for March 18, 2015 and they are looking for a variance for height, density and setbacks.

I wonder what your thoughts are on this.  Please call me at your convenience or let me know if you'd like to do lunch sometime soon.  My cell is 310.502.0748.

Best,



**ALLEN SHAMOOILIAN**
310.659.7575 x12
310.659.7576 Direct

If you are not the intended recipient, any disclosure or use of this information is prohibited. If received in error, please contact us and destroy the original transmission and its attachments without reading or saving in any manner. Unless the intent is otherwise expressly stated by us, this message shall not be binding on King's Arch, LP, its principals or its affiliates (together "KA") until reviewed by its attorneys and the execution of a more formal and definitive contract between the parties. Although this is believed to be free of defect, no responsibility is accepted by KA for any related loss or damage {.}

CONFIDENTIAL

## FW: Wilcox Design Package

| | |
|---|---|
| **From:** | John Tronson (Avison Young) <john.tronson@avisonyoung.com> |
| **To:** | Saeed Nourmand <snourmand@nourmand.com>, sboulevard26@gmail.com, Michael Nourmand <mnourmand@nourmand.com> |
| **Cc:** | Mohamad Iravani <miravani@nourmand.com>, Steven Tronson (Avison Young) <steven.tronson@avisonyoung.com>, Thor Lee (Avison Young) <thor.lee@avisonyoung.com> |
| **Date:** | Tue, 17 Mar 2015 22:20:35 +0000 |
| **Attachments:** | 2015-03-16 Wilcox Revised Setbacks.pdf (915.02 kB); ATT00001.htm (168 bytes) |

Hi Saeed,

Please find included Richard Heyman's latest plan which addresses you concern about setbacks, it essentially gives you what you want with respect to that issue.  He is working on a plan to put the pool on the roof and enclose a ballroom to eliminate noise, which was also a concern of yours.  With respect to height, the project doesn't come close to penciling out as profitable in a low rise envelope, and given there is no height limit in Hollywood there is nothing he could do to address your concerns on that front.

I hope you see these as positive signs that Richard is addressing your concerns and consider changing your position regarding supporting, or at least not opposing, his project.  I believe it is projects like this which have taken Hollywood out of the gutter where it was and elevating it to a top tier market, and i believe the next generation of projects both coming out of the ground now and in the planning stages are critical to finishing that task.

Cordially,

**John P. Tronson**
Principal
*john.tronson@avisonyoung.com*
CA License #01153636

Avison Young
6711 Forest Lawn Drive
Los Angeles, CA 90068

| | |
|---|---|
| **D** | 323.603.5059 |
| **T** | 323.851.6666 |
| **C** | 323.574.0069 |

avisonyoung.com







Avison Young – Southern California, Ltd.
Legal Disclaimer

**From:** Richard Heyman [mailto:richard@fivechairs.net]
**Sent:** Monday, March 16, 2015 5:19 PM
**To:** John Tronson (Avison Young)
**Subject:** Fwd: Wilcox Design Package

Let's discuss tomorrow

CONFIDENTIAL

# Sunset Landmark Investments, LLC - Evidence of Insurance & Invoice

| | |
|---|---|
| **From:** | Mariah Alvarez <mariah.alvarez@meslee.com> |
| **To:** | Mohamad Iravani <miravani@nourmand.com> |
| **Cc:** | Solomon Meskin <solomon.meskin@meslee.com> |
| **Date:** | Thu, 30 Jul 2015 21:35:38 +0000 |
| **Attachments:** | 07-30-2015 Invoice - Remaining Balance.pdf (43.59 kB); 500180_CA_SunsetLandmarkInvestmentsLLC_A20295_07302015_EOI__0-1.pdf (1 MB) |

Hi Mohamad,

Please find attached evidence of insurance for the renewal policy along with the remaining balance invoice.

Should you have any questions, please feel free to contact me.

Thank you,

Mariah Alvarez
Commercial Account Manager
Meslee Insurance Services Inc.
Ca DOI License # 0B86528
Telephone: (213) 489-3615
E-Fax: (213) 785 6499
www.meslee.com



*Love Meslee & JSIS? Follow Us on Facebook, LinkedIn & Twitter or give us a review on Yelp !*



It is our hope and ambition to provide you with the best possible service, while offering the most competitive and secure markets. Our markets include the most recognizable, trusted companies in the industry, both in the domestic market and world-wide. We have absolute confidence in our abilities to provide you with the service and products you need to provide the security you desire.

Thank you for your trust in placing your business with Meslee Insurance Services.

**CONFIDENTIAL**

## RE: Meeting with the Hotel developers on Wilcox (adjacent to HAC parking lot)

| | |
|---|---|
| **From:** | Michael Nourmand <mnourmand@nourmand.com> |
| **To:** | John Tronson (Avison Young) <john.tronson@avisonyoung.com>, sboulevard26@gmail.com, Saeed Nourmand <snourmand@nourmand.com>, Mohamad Iravani <miravani@nourmand.com> |
| **Cc:** | Jill Basowski (Avison Young) <jill.basowski@avisonyoung.com> |
| **Date:** | Mon, 09 Mar 2015 22:27:58 +0000 |
| **Attachments:** | image012.jpg (2.32 kB); image013.jpg (1.92 kB); image014.jpg (815 bytes); image015.jpg (807 bytes); image016.jpg (807 bytes); image017.jpg (782 bytes) |

I can't make it tomorrow.

Not sure about my dad.

M

Michael Nourmand
Nourmand & Associates Realtors
President
421 N. Beverly Drive, Suite 200
Beverly Hills, CA  90210
Office: (310) 274-4000
Mobile: (310) 666-3294
Fax: (310) 888-3329
www.nourmand.com


-----Original Message-----
From: John Tronson (Avison Young) [mailto:John.Tronson@avisonyoung.com]
Sent: Mon 3/9/2015 3:17 PM
To: sboulevard26@gmail.com; Saeed Nourmand; Mohamad Iravani; Michael Nourmand
Cc: Jill Basowski (Avison Young)
Subject: Meeting with the Hotel developers on Wilcox (adjacent to HAC parking lot)
Hi Saeed,

Would you and Michael be available to meet at Cahuenga and Selma in the HIRC offices to review the proposed
hotel development adjacent to your parking lot tomorrow around noon?

Cordially,

John P. Tronson
Principal
john.tronson@avisonyoung.com<mailto:john.tronson@avisonyoung.com>
CA License #01153636
Avison Young
6711 Forest Lawn Drive
Los Angeles, CA 90068
D

323.603.5059

T

323.851.6666

C

323.574.0069

avisonyoung.com<http://www.avisonyoung.com/>
[cid:image006.jpg@01CE6073.5A17AE50]<http://www.avisonyoung.com/>

CONFIDENTIAL

## RE: Meeting with the Hotel developers on Wilcox (adjacent to HAC parking lot)

**From:** Saeed Nourmand <"/o=first organization/ou=first administrative group/cn=recipients/cn=snourmand_nourmand">
**To:** Michael Nourmand <mnourmand@nourmand.com>, John Tronson (Avison Young) <john.tronson@avisonyoung.com>, sboulevard26@gmail.com, Mohamad Iravani <miravani@nourmand.com>
**Cc:** Jill Basowski (Avison Young) <jill.basowski@avisonyoung.com>
**Date:** Tue, 10 Mar 2015 06:49:18 +0000

I would like Michael to be present.
Thanks,
Saeed

**From:** Michael Nourmand
**Sent:** Mon 3/9/2015 3:27 PM
**To:** John Tronson (Avison Young); sboulevard26@gmail.com; Saeed Nourmand; Mohamad Iravani
**Cc:** Jill Basowski (Avison Young)
**Subject:** RE: Meeting with the Hotel developers on Wilcox (adjacent to HAC parking lot)

I can't make it tomorrow.

Not sure about my dad.

M


Michael Nourmand
Nourmand & Associates Realtors
President
421 N. Beverly Drive, Suite 200
Beverly Hills, CA 90210
Office: (310) 274-4000
Mobile: (310) 666-3294
Fax: (310) 888-3329
www.nourmand.com


-----Original Message-----
From: John Tronson (Avison Young) [mailto:John.Tronson@avisonyoung.com]
Sent: Mon 3/9/2015 3:17 PM
To: sboulevard26@gmail.com; Saeed Nourmand; Mohamad Iravani; Michael Nourmand
Cc: Jill Basowski (Avison Young)
Subject: Meeting with the Hotel developers on Wilcox (adjacent to HAC parking lot)

Hi Saeed,

Would you and Michael be available to meet at Cahuenga and Selma in the HIRC offices to review the proposed hotel development adjacent to your parking lot tomorrow around noon?

Cordially,


John P. Tronson
Principal
john.tronson@avisonyoung.com<mailto:john.tronson@avisonyoung.com>
CA License #01153636
Avison Young
6711 Forest Lawn Drive
Los Angeles, CA 90068
D

CONFIDENTIAL

## RE: Meeting with the Hotel developers on Wilcox (adjacent to HAC parking lot)

**From:**  Saeed Nourmand <"/o=first organization/ou=first administrative group/cn=recipients/cn=snourmand_nourmand">

**To:**  John Tronson (Avison Young) <john.tronson@avisonyoung.com>, sboulevard26@gmail.com, Mohamad Iravani <miravani@nourmand.com>

**Cc:**  Jill Basowski (Avison Young) <jill.basowski@avisonyoung.com>

**Date:**  Tue, 10 Mar 2015 06:53:30 +0000

John,
I am not getting your emails to snourmand@nourmand.com or to sboulevard26@gmail.com.
I responded to this email because of Michael's reply. I got his reply; but not your email.
Saeed

**From:** Michael Nourmand
**Sent:** Mon 3/9/2015 3:27 PM
**To:** John Tronson (Avison Young); sboulevard26@gmail.com; Saeed Nourmand; Mohamad Iravani
**Cc:** Jill Basowski (Avison Young)
**Subject:** RE: Meeting with the Hotel developers on Wilcox (adjacent to HAC parking lot)

I can't make it tomorrow.

Not sure about my dad.

M


Michael Nourmand
Nourmand & Associates Realtors
President
421 N. Beverly Drive, Suite 200
Beverly Hills, CA  90210
Office: (310) 274-4000
Mobile: (310) 666-3294
Fax: (310) 888-3329
www.nourmand.com


-----Original Message-----
From: John Tronson (Avison Young) [mailto:John.Tronson@avisonyoung.com]
Sent: Mon 3/9/2015 3:17 PM
To: sboulevard26@gmail.com; Saeed Nourmand; Mohamad Iravani; Michael Nourmand
Cc: Jill Basowski (Avison Young)
Subject: Meeting with the Hotel developers on Wilcox (adjacent to HAC parking lot)

Hi Saeed,

Would you and Michael be available to meet at Cahuenga and Selma in the HIRC offices to review the proposed hotel development adjacent to your parking lot tomorrow around noon?

Cordially,


John P. Tronson
Principal
john.tronson@avisonyoung.com<mailto:john.tronson@avisonyoung.com>
CA License #01153636
Avison Young
6711 Forest Lawn Drive
Los Angeles, CA 90068
D

CONFIDENTIAL

# FW: Hollywood Community Plan - 25 Pages

| | |
|---|---|
| **From:** | Mohamad Iravani <"/o=first organization/ou=first administrative group/cn=recipients/cn=miravani_nourmand"> |
| **To:** | Saeed Nourmand <snourmand@nourmand.com> |
| **Date:** | Wed, 02 Sep 2015 22:36:38 +0000 |
| **Attachments:** | Hollywood Community Plan.pdf (2.53 MB) |

**From:** Rachelle DeCastro
**Sent:** Wednesday, September 02, 2015 3:07 PM
**To:** Mohamad Iravani
**Subject:** Hollywood Community Plan - 25 Pages

NOURMAND & ASSOCIATES
Three Offices. One Respected Name
6525 Sunset Blvd, Suite 100
Hollywood, CA 90028
www.Nourmand.com
Phone No. 323-460-6360
Fax No. 323-460-4914
e-mail : rdecastro@nourmand.com

CONFIDENTIAL

Good planning needs to be done in the context of the larger built environment and goals of the city. The proposed hotel is good and appropriate for the Hollywood area and the current revitalization occurring here, but the size and massing, 5.5 FAR and 125 feet tall, is woefully misplaced.

The City adopted the Hollywood Community Plan Update in 2012. While the courts rescinded that update due to the environmental document, it clearly establishes the City's goals and vision for the Hollywood area. Specifically for the property at 1541 Wilcox, the Community Plan established a 3:1 FAR with a 75-foot height limit. This direction is pulled directly from the CRA's Sunset Boulevard Urban Design Plan document, which the City Council adopted and is still in effective. This document shows where the city envisions the highest densities in the Hollywood area, specifically around Highland Avenue, Vine Street, the Hollywood civic center and along Sunset toward the 101 Freeway. As shown, property at 1541 Wilcox is not within any of those areas, and therefore should not be developed at the intensity proposed. In fact, if you look at the Community Plan Update, you will see the new FARs and height limits reflect the CRA's Plan. The CRA's Plan and the Community Plan Update demonstrate good planning and should be applied here.

This project should be limited to 3:1 FAR and at the most 4.5:1, and should be limited to 75 feet and at most 100 feet.

The recently adopted Mobility Plan calls for Wilcox to provide a 40-foot wide roadway and 70-foot wide right-of-way. This would mean a 15-foot wide sidewalk. (This is consistent with the Community Plan Update as well.) If the plan that this commission just adopted calls for a 15-foot sidewalk, then this project should provide such a sidewalk. Whether that is onto the property or into the roadway is immaterial, it would seem unfathomable that the city would adopt a visionary document, like the Mobility Plan, which tries to turn the focus away from cars, and toward bikes and pedestrians, and then not require the full development of the sidewalk required by that same document.

This project must provide the required 15-foot sidewalk. Failing to would completely undermine the most basic principle of the new Mobility Plan, by maintaining the status quo, which is an auto-centric city, instead of redirecting us to a more pedestrian- and bike-centric city.

In the end, while new hotel development is good for Hollywood, it needs to be done in line with the established goals and vision for Hollywood. That vision is high intensity development along the major corridors, not side streets, and fully improved streets, with wide sidewalks, conducive for pedestrians and the pedestrian experience.

CONFIDENTIAL

# APPROVED CONDITIONAL USE PERMIT - CASE NO. ZA 2012-1252 (CUB) (CUX)

| | |
|---|---|
| **From:** | Rachelle DeCastro <rdecastro@nourmand.com> |
| **To:** | Mohamad Iravani <miravani@nourmand.com> |
| **Date:** | Fri, 02 Sep 2016 18:13:05 +0000 |
| **Attachments:** | APPROVED CONDITIONAL USE PERMIT - CASE NO. ZA 2012-1252 (CUB) (CUX).pdf (958.77 kB) |

Your message is ready to be sent with the following file or link attachments:

APPROVED CONDITIONAL USE PERMIT - CASE NO. ZA 2012-1252 (CUB) (CUX)

Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments.  Check your e-mail security settings to determine how attachments are handled.

CONFIDENTIAL

LINN K. WYATT
CHIEF ZONING ADMINISTRATOR

ASSOCIATE ZONING
ADMINISTRATORS
R. NICOLAS BROWN
SUE CHANG
LOURDES GREEN
CHARLES J. RAUSCH, JR.
FERNANDO TOVAR
MAYA E. ZAITZEVSKY

# CITY OF LOS ANGELES
## CALIFORNIA



ANTONIO R. VILLARAIGOSA
MAYOR

DEPARTMENT OF
CITY PLANNING

MICHAEL J. LOGRANDE
DIRECTOR

OFFICE OF
ZONING ADMINISTRATION
200 N. SPRING STREET, 7TH FLOOR
LOS ANGELES, CA 90012
(213) 978-1318
FAX: (213) 978-1334
www.planning.lacity.org

December 20, 2012

Peter Famulari (A)
6523 Sunset Boulevard
Los Angeles CA 90028

Sunset Landmark Investment, LLC (O)
6525 Sunset Boulevard, #100
Los Angeles CA 90028

Lee Rabun (R)
CLR Enterprises, Inc.
420 South San Pedro Street, #225
Los Angeles CA 90013

CASE NO. ZA 2012-1252(CUB)(CUX)
CONDITIONAL USE
6523 West Sunset Boulevard
Hollywood Planning Area
Zone : C4-2D-SN
D. M. : 147A187
C. D. : 13
CEQA : ENV 2012-1251-ND
Legal Description: Lots 5-9, 11, Pt. Lots 4
and 12, M.P. Filmore Tract, Pt. Lot 7,
H.G. Whitley Tract No.

Pursuant to Los Angeles Municipal Code Section 12.24-W,1, I hereby APPROVE:

a conditional use to permit the continued sale and dispensing of a full line of
alcoholic beverages for on-site consumption; and

Pursuant to Los Angeles Municipal Code Section 12.24-W,18 of the Los Angeles Municipal
Code, I hereby APPROVE:

a conditional use to permit continued patron dancing with live entertainment, all in
conjunction with an existing nightclub in the C4-2D-SN Zone,

upon the following additional terms and conditions:

1. All other use, height and area regulations of the Municipal Code and all other
applicable government/regulatory agencies shall be strictly complied with in the
development and use of the property, except as such regulations are herein
specifically varied or required.

2. The use and development of the property shall be in substantial conformance with
the plot plan submitted with the application and marked Exhibit "A", except as may
be revised as a result of this action.

3. The authorized use shall be conducted at all times with due regard for the character
of the surrounding district, and the right is reserved to the Zoning Administrator to
impose additional corrective Conditions, if, in the Administrator's opinion, such



AN EQUAL EMPLOYMENT OPPORTUNITY – AFFIRMATIVE ACTION EMPLOYER



CONFIDENTIAL

## Wilcox Hotel Letter

| | |
|---|---|
| **From:** | Mohamad Iravani <"/o=first organization/ou=first administrative group/cn=recipients/cn=miravani_nourmand"> |
| **To:** | Saeed Nourmand <snourmand@nourmand.com> |
| **Date:** | Tue, 08 Sep 2015 20:54:58 +0000 |
| **Attachments:** | Saeed - 1541 Wilcox Hotel.doc (25.6 kB) |

**CONFIDENTIAL**

Good planning needs to be done in the context of the larger built environment and goals of the city. The proposed hotel is good and appropriate for the Hollywood area and the current revitalization occurring here, but he size and massing, 5.5 FAR and 125 feet tall, is woefully misplaced.

The City adopted the Hollywood Community Plan Update in 2012. While the courts rescinded that update due to the environmental document, it clearly establishes the City's goals and vision for the Hollywood area. Specifically for the property at 1541 Wilcox, the Community Plan established a 3:1 FAR with a 75 foot height limit. This direction is pulled directly from the CRA's Sunset Boulevard Urban Design Plan document, which the counsel adopted and still in effective. This document shows where the city envisions the highest densities in the Hollywood area, specifically around Highland Avenue, Vine Street, the Hollywood civic center and along Sunset toward the 101 Freeway. As shown, property at 1541 Wilcox is not within any of those areas, and therefore should not be developed at the intensity proposed. In fact, if you look at the Community Plan Update, you will see the new FARs and height limits reflect the CRA's plan. The CRA's Plan and The Community Plan Update demonstrate good planning and should be applied here.

This project should be limited to 3:1 FAR and the most 4.5:1, and should be limited to 75 feet and at most 100 feet.

The recent adopted Mobility Plan calls for Wilcox to provide a 40 foot wide roadway and 70 foot wide right of way. This would mean a 15 foot wide sidewalk. (This is consistent with the Community Plan Update as well.) If the plan that this commission just adopted calls for a 15 foot sidewalk, then this project should provide such a sidewalk. Whether that is onto the property or into the roadway is immaterial. It would seem unfathomable that the city would adopt a visionary document, like the Mobility Plan, which tries to turn the focus away from cars, and toward bikes and pedestrians, and then not require the full development of the sidewalk required by that same document.

This project must provide the required 15 foot sidewalk. Failing to would completely undermine the most basic principle of the new Mobility Plan, by maintaining the status quo, which is and auto-centric city, instead of redirecting us to a more pedestrian and bike-centric city.

In the end, while a new hotel development is good for Hollywood, it needs to be done in line with the established goals and vision for Hollywood. That vision is high intensity development along the major corridors, not side streets, and fully improved streets, with the sidewalks, conductive for pedestrians and the pedestrians experience.

SUNSET_00000306

# Fwd: 5/8/18 Open House - Proposed Crisis/Bridge Housing.

**From:**       Michael Nourmand <mnourmand@nourmand.com>
**To:**         Saeed Nourmand <snourmand@nourmand.com>, Mohamad Iravani <miravani@nourmand.com>
**Date:**       Sat, 05 May 2018 03:24:50 +0000
**Attachments:** 5-8-18 Schrader Bridge Housing Community Open House.pdf (312.35 kB); ATT00001.htm (168 bytes)

Michael Nourmand
Nourmand & Associates Realtors
President
421 N. Beverly Drive, Suite 200
Beverly Hills, CA 90210
Office: (310) 274-4000
Mobile: (310) 666-3294


Description: Description:
Decades_1

Begin forwarded message:

> **From:** Hollywood Property Owners Alliance <devinstrecker@list.hollywoodbid.org>
> **Date:** May 4, 2018 at 4:53:17 PM PDT
> **To:** <2019HollywoodBID@list.hollywoodbid.org>
> **Subject: 5/8/18 Open House - Proposed Crisis/Bridge Housing.**
> **Reply-To:** <2019hollywoodbid@list.hollywoodbid.org>

Hello,

Please join us for a Schrader Bridge Housing Community Open House and learn more about the proposal for a temporary crisis/bridge housing facility on City Parking Lot 649, at 1533 Schrader Boulevard. It will take place Tuesday, May 8, 2018 from 6:00 – 7:30 PM at the Hollywood YMCA (1553 Schrader Blvd Los Angeles, CA 90028). More information attached.

Thank you and have a great weekend!

**DEVIN TAIT STRECKER**

*Deputy Director, Business Development*

*RENEW THE BID IN 2018!* https://youtu.be/-Amhlt_EKsE

[ Hollywood Property Owners Alliance ]

6562 Hollywood Boulevard | Los Angeles, CA 90028

CONFIDENTIAL

# FW: Hollywood Community Plan - 25 Pages

| | |
|---|---|
| **From:** | Mohamad Iravani <"/o=first organization/ou=first administrative group/cn=recipients/cn=miravani_nourmand"> |
| **To:** | Saeed Nourmand <snourmand@nourmand.com> |
| **Date:** | Wed, 02 Sep 2015 22:36:38 +0000 |
| **Attachments:** | Hollywood Community Plan.pdf (2.53 MB) |

**From:** Rachelle DeCastro
**Sent:** Wednesday, September 02, 2015 3:07 PM
**To:** Mohamad Iravani
**Subject:** Hollywood Community Plan – 25 Pages

NOURMAND & ASSOCIATES
Three Offices. One Respected Name:
6525 Sunset Blvd, Suite 100
Hollywood, CA 90028
www.Nourmand.com
Phone No. 323-460-6360
Fax No. 323-460-4914
e-mail : rdecastro@nourmand.com

**CONFIDENTIAL**

## Re: 1530 1520 and 1522 & 1540 Schrader Blvd

| | |
|---|---|
| **From:** | Michael Nourmand <mnourmand@nourmand.com> |
| **To:** | Saeed Nourmand <snourmand@nourmand.com> |
| **Cc:** | Michael Nourmand <mnourmand@nourmand.com> |
| **Date:** | Sat, 10 Feb 2018 16:50:26 +0000 |

I've never heard of this company before and it looks like they do more lending than development. I think we should see what Skanska offers before we reach out to these guys.

Michael Nourmand
Nourmand & Associates Realtors
President
421 N. Beverly Drive, Suite 200
Beverly Hills, CA 90210
Office: (310) 274-4000
Mobile: (310) 666-3294



**From:** Saeed Nourmand
**Sent:** Friday, February 09, 2018 10:15 PM
**To:** Michael Nourmand
**Subject:** FW: 1530 1520 and 1522 & 1540 Schrader Blvd

Hello Michael joon,
I would like to talk to you about this email..
Love,
Dad

**From:** Sean J. Brannan [mailto:sbrannan@capitalfundingcorp.com]
**Sent:** Friday, February 09, 2018 3:07 PM
**To:** Saeed Nourmand
**Subject:** 1530 1520 and 1522 & 1540 Schrader Blvd

Dear Mr. Nourmand,

We are a Hotel and Multi Family Owner / Developer with a pending project locally to your Schrader property and are interested to make an offer on your property. We currently own several hotels in downtown Los Angeles and have purchased, sold and financed many in Texas also. I spoke with Mohammad today at your office, and he asked me to reach out to you directly.

If you can tell me if you are willing to accept an offer on your site, I would be very happy to submit an offer for outright purchase or a Joint Venture. We are very well capitalized and can move very quickly if there is interest.

Kind Regards,

Sean

--
Sean J. Brannan | President
**Capital Funding Corporation of America, Inc**
515 South Flower Street, 36th Floor
Los Angeles, California 90071
(310) 561-1400 (Main)
(310) 601-4417 (Desk)

CONFIDENTIAL

# Re: Updates re: Proposed Temporary Bridge Housing at 1533 Schrader Blvd (Parking Lot 649)

| | |
|---|---|
| **From:** | Michael Nourmand <mnourmand@nourmand.com> |
| **To:** | Howard Lorey <howardlorey@gmail.com> |
| **Cc:** | Saeed Nourmand <snourmand@nourmand.com> |
| **Date:** | Wed, 22 Aug 2018 06:55:29 +0000 |

Thanks Howard.

Michael Nourmand
Nourmand & Associates Realtors
President
421 N. Beverly Drive, Suite 200
Beverly Hills, CA 90210
Office: (310) 274-4000
Mobile: (310) 666-3294
DRE# 01281017



Description: Description: Decades_1

On Aug 21, 2018, at 3:37 PM, Howard Lorey <howardlorey@gmail.com> wrote:

Hi Michael and Saeed –

Not sure if either of you received this.

Best –
Howard
---------- Forwarded message ----------
From: **Dan Halden** <daniel.halden@lacity.org>
Date: Thu, Aug 16, 2018 at 5:29 PM
Subject: Updates re: Proposed Temporary Bridge Housing at 1533 Schrader Blvd (Parking Lot 649)
To: Tony Arranaga <tony.arranaga@lacity.org>, Angelo Yenko <angelo.yenko@lacity.org>

Neighbors,

I hope you have all had a great summer. Councilmember O'Farrell asked me to share some important updates regarding the proposal to build a temporary bridge housing facility on City Parking Lot 649, located at 1533 Schrader Boulevard in Hollywood. This facility would be built through Mayor Garcetti's "**A Bridge Home**" program.

- **Current Status:**The proposal is still being studied and is not yet an approved project. However, we expect the formal study to make its way back to City Council soon. You can subscribe to updates by following **this link** and clicking the "envelope" icon at the top of the page, where you will be asked to enter and verify your email address. Feedback from neighbors, service providers, and other stakeholders has been an important part of this process.

- **Recommended Provider(s):**As part of the proposal, the Los Angeles Homeless Services Authority (LAHSA) will be recommending that the facility be jointly operated by People Assisting The Homeless (**PATH**), which manages several similar sites throughout California; and **The Center at Blessed Sacrament** which is located in the immediate neighborhood and currently provides services to local homeless individuals on a daily basis.

- **Upcoming Outreach:**As this proposal makes its way through the process, we want to make sure all interested stakeholders have the opportunity continue to ask questions and learn more, and to dialogue directly with PATH and The Center. Accordingly, The Center will be hosting weekly **"Coffees with the Community"** on an

CONFIDENTIAL

## Hotel Development on Wilcox

**From:**  Allen Shamooilian <allen@kingsarch.com>

**To:**  Saeed Nourmand <snourmand@nourmand.com>

**Cc:**  "Michael Nourmand (mbnourmand@gmail.com)" <mbnourmand@gmail.com>, howard@grand-jete.com, Richard Shamooilian <richard@kingsarch.com>

**Date:**  Mon, 23 Feb 2015 13:14:59 +0000

Hello Saeed.

I hope all is going great.

Did you see the notice of public hearing regarding the project at 1521 N. Wilcox?
It is scheduled for March 18, 2015 and they are looking for a variance for height, density and setbacks.

I wonder what your thoughts are on this.  Please call me at your convenience or let me know if you'd like to do lunch sometime soon.  My cell is 310.502.0748.

Best,



**KING'S ARCH**

**ALLEN SHAMOOILIAN**
310.659.7575 x12
310.659.7576 Direct

If you are not the intended recipient, any disclosure or use of this information is prohibited. If received in error, please contact us and destroy the original transmission and its attachments without reading or saving in any manner. Unless the intent is otherwise expressly stated by us, this message shall not be binding on King's Arch, LP, its principals or its affiliates (together "KA") until reviewed by its attorneys and the execution of a more formal and definitive contract between the parties. Although this is believed to be free of defect, no responsibility is accepted by KA for any related loss or damage (.)

CONFIDENTIAL

SUNSET_00001501

## RE: Meeting Thompson Hotel Developers (Wilcox parcel adjacent to the HAC parking lot)

**From:**   Michael Nourmand <mnourmand@nourmand.com>

**To:**   John Tronson (Avison Young) <john.tronson@avisonyoung.com>, Saeed Nourmand
<snourmand@nourmand.com>

**Cc:**   sboulevard26@gmail.com, Steven Tronson (Avison Young) <steven.tronson@avisonyoung.com>, Tait
Gabrielsen (Avison Young) <tait.gabrielsen@avisonyoung.com>, Jill Basowski (Avison Young)
<jill.basowski@avisonyoung.com>

**Date:**   Thu, 12 Mar 2015 04:14:43 +0000

Hey Guys,

I won't be able to make it tomorrow morning but my dad still wants to go with you.

M

Michael Nourmand
Nourmand & Associates Realtors
President
421 N. Beverly Drive, Suite 200
Beverly Hills, CA  90210
Office: (310) 274-4000
Mobile: (310) 666-3294
Fax: (310) 888-3329
www.nourmand.com

-----Original Message-----
From: John Tronson (Avison Young) [mailto:John.Tronson@avisonyoung.com]
Sent: Wed 3/11/2015 6:27 PM
To: Saeed Nourmand
Cc: Michael Nourmand; sboulevard26@gmail.com; Steven Tronson (Avison Young); Tait Gabrielsen (Avison Young);
Jill Basowski (Avison Young)
Subject: Re: Meeting Thompson Hotel  Developers (Wilcox parcel adjacent to the HAC parking lot)
will do.

Sent from my iPad

On Mar 11, 2015, at 6:16 PM, "Saeed Nourmand"
<SNourmand@Nourmand.com<mailto:SNourmand@Nourmand.com>> wrote:

Hello John,
Please pick me up at HAC tomorrow.
Thanks,
Saeed

From: John Tronson (Avison Young) [mailto:John.Tronson@avisonyoung.com]
Sent: Wed 3/11/2015 5:21 PM
To: Michael Nourmand
Cc: sboulevard26@gmail.com<mailto:sboulevard26@gmail.com>; Saeed Nourmand; Steven Tronson (Avison
Young); Tait Gabrielsen (Avison Young); Jill Basowski (Avison Young)
Subject: Meeting Thompson Hotel Developers (Wilcox parcel adjacent to the HAC parking lot)

Hi Michael,

Saeed and I are meeting with the developers of the above referenced site tomorrow at 9am.  I hope you can join us,
if not we will debrief you at a later time.

Cordially,

CONFIDENTIAL

# RE: Meeting Thompson Hotel Developers (Wilcox parcel adjacent to the HAC parking lot)

**From:** Michael Nourmand <mnourmand@nourmand.com>

**To:** John Tronson (Avison Young) <john.tronson@avisonyoung.com>, Saeed Nourmand <"/o=first organization/ou=first administrative group/cn=recipients/cn=snourmand">

**Cc:** sboulevard26@gmail.com, Steven Tronson (Avison Young) <steven.tronson@avisonyoung.com>, Tait Gabrielsen (Avison Young) <tait.gabrielsen@avisonyoung.com>, Jill Basowski (Avison Young) <jill.basowski@avisonyoung.com>

**Date:** Thu, 12 Mar 2015 04:14:43 +0000

Hey Guys,

I won't be able to make it tomorrow morning but my dad still wants to go with you.

M

Michael Nourmand
Nourmand & Associates Realtors
President
421 N. Beverly Drive, Suite 200
Beverly Hills, CA 90210
Office: (310) 274-4000
Mobile: (310) 666-3294
Fax: (310) 888-3329
www.nourmand.com

-----Original Message-----
From: John Tronson (Avison Young) [mailto:John.Tronson@avisonyoung.com]
Sent: Wed 3/11/2015 6:27 PM
To: Saeed Nourmand
Cc: Michael Nourmand; sboulevard26@gmail.com; Steven Tronson (Avison Young); Tait Gabrielsen (Avison Young); Jill Basowski (Avison Young)
Subject: Re: Meeting Thompson Hotel Developers (Wilcox parcel adjacent to the HAC parking lot)
will do.

Sent from my iPad

On Mar 11, 2015, at 6:16 PM, "Saeed Nourmand" <SNourmand@Nourmand.com<mailto:SNourmand@Nourmand.com>> wrote:

Hello John,
Please pick me up at HAC tomorrow.
Thanks,
Saeed

From: John Tronson (Avison Young) [mailto:John.Tronson@avisonyoung.com]
Sent: Wed 3/11/2015 5:21 PM
To: Michael Nourmand
Cc: sboulevard26@gmail.com<mailto:sboulevard26@gmail.com>; Saeed Nourmand; Steven Tronson (Avison Young); Tait Gabrielsen (Avison Young); Jill Basowski (Avison Young)
Subject: Meeting Thompson Hotel Developers (Wilcox parcel adjacent to the HAC parking lot)

Hi Michael,

Saeed and I are meeting with the developers of the above referenced site tomorrow at 9am. I hope you can join us, if not we will debrief you at a later time.

Cordially,

CONFIDENTIAL

SUNSET_00002102

# Re: Meeting with the Hotel developers on Wilcox (adjacent to HAC parking lot)

**From:**   John Tronson (Avison Young) <john.tronson@avisonyoung.com>

**To:**   Saeed Nourmand <snourmand@nourmand.com>, Michael Nourmand <mnourmand@nourmand.com>, Saeed
Nourmand <sboulevard26@gmail.com>, Mohamad Iravani <miravani@nourmand.com>

**Cc:**   Jill Basowski (Avison Young) <jill.basowski@avisonyoung.com>

**Date:**   Tue, 10 Mar 2015 17:05:40 +0000

ok. I will reschedule. I would suggest you have a tech person look into your s Boulevard email account and find out why
it's pushing any email from Avison young into your spam folder.

Sent from my HTC One on the Verizon Wireless 4G LTE network

----- Reply message -----
From: "Saeed Nourmand" <SNourmand@Nourmand.com>
To: "Michael Nourmand" <MNourmand@Nourmand.com>, "John Tronson (Avison Young)"
<John.Tronson@avisonyoung.com>, "sboulevard26@gmail.com" <sboulevard26@gmail.com>, "Mohamad Iravani"
<MIravani@Nourmand.com>
Cc: "Jill Basowski (Avison Young)" <Jill.Basowski@avisonyoung.com>
Subject: Meeting with the Hotel developers on Wilcox (adjacent to HAC parking lot)
Date: Mon, Mar 9, 2015 11:50 PM

I would like Michael to be present.
Thanks,
Saeed

From: Michael Nourmand
Sent: Mon 3/9/2015 3:27 PM
To: John Tronson (Avison Young); sboulevard26@gmail.com; Saeed Nourmand; Mohamad Iravani
Cc: Jill Basowski (Avison Young)
Subject: RE: Meeting with the Hotel developers on Wilcox (adjacent to HAC parking lot)

I can't make it tomorrow.

Not sure about my dad.

M

Michael Nourmand
Nourmand & Associates Realtors
President
421 N. Beverly Drive, Suite 200
Beverly Hills, CA 90210
Office: (310) 274-4000
Mobile: (310) 666-3294
Fax: (310) 888-3329
www.nourmand.com

-----Original Message-----
From: John Tronson (Avison Young) [mailto:John.Tronson@avisonyoung.com]
Sent: Mon 3/9/2015 3:17 PM
To: sboulevard26@gmail.com; Saeed Nourmand; Mohamad Iravani; Michael Nourmand
Cc: Jill Basowski (Avison Young)
Subject: Meeting with the Hotel developers on Wilcox (adjacent to HAC parking lot)

Hi Saeed,

Would you and Michael be available to meet at Cahuenga and Selma in the HIRC offices to review the proposed hotel
development adjacent to your parking lot tomorrow around noon?

CONFIDENTIAL

Wilcox

| | |
|---|---|
| From: | Allen Shamooilian <allen@kingsarch.com> |
| To: | Saeed Nourmand <snourmand@nourmand.com> |
| Cc: | Michael Nourmand <mnourmand@nourmand.com>, Richard Shamooilian <richard@kingsarch.com> |
| Date: | Tue, 03 Mar 2015 00:07:33 +0000 |

Hi Saeed.

I am asking my assistant, Liz, to reach try to get the notice of hearing in front the Folbs (6464 Sunset among others) along with any of the other hotel owners and operators of the pending hotels on this list and existing competing projects like the W and the Loews.

Do you have contacts with any of these groups?

Best,



**ALLEN SHAMOOILIAN**
310.859.7575 x12
310.859.7576 Direct

If you are not the intended recipient, any disclosure or use of this information is prohibited. If received in error, please contact us and destroy the original transmission and its attachments without reading or saving in any manner. Unless the intent is otherwise expressly stated by us, this message shall not be binding on King's Arch, LP, its principals or its affiliates (together "KA") until reviewed by its attorneys and the execution of a more formal and definitive contract between the parties. Although this is believed to be free of defect, no responsibility is accepted by KA for any related loss or damage {.}

## FW: Wilcox Hotel

**From:**   Saeed Nourmand <"/o=first organization/ou=first administrative group/cn=recipients/cn=snourmand">
**To:**   carolyn@carolynraecole.com
**Date:**   Tue, 17 Mar 2015 04:19:06 +0000

**From:** Saeed Nourmand
**Sent:** Mon 3/16/2015 12:45 PM
**To:** 'fgaines@gaineslaw.com'; Carolyn Rae Cole
**Cc:** Saeed Nourmand
**Subject:** FW: Wilcox Hotel

Hello Fred,
I had a meeting which was arranged by Mayor Garcetti's office to discuss my concerns about the above project.
In attendance were
  myself,
Mr. Allen Shamooilian who owns the property to the east of my property on Sunset Blvd. ,
Ms. Poonam Narewatt from the Mayor's office.
Mr. Gary Benjamin, Planning Deputy from Councilmember Mitch O'Farrell and
Ms. Ashley Atkinson, Planning and Housing specialist from the Mayor's office.
I handed out the letter below and had a very friendly discussion as to why me and Mr. Shamooilian opposed the changes
that the developer has asked for.
I left the meeting feeling that the group was sympathetic to the points made.
Later on Friday, I met with Mr. Scott Campbell who is a licensed real estate agent at Nourmand and Associates. Mr.
Campbell on the side works for developers. Mr. Campbell unbeknown to me till a few days ago has been hired by the
Wilcox Hotel developer to help him obtain the entitlements that the developer is seeking. Mr. Campbell has contacted
several organizations and  people excluding myself trying to drum up support for the project.
Mr. Campbell informed me that the developer has conceded to set his rear yard setback to 20 foot.
I told Mr. Campbell that the height was not compatible with the other properties on the street. I told him that Citizen
News Building next door is a beautiful building and to the north of the property on the same side of the street is a
gorgeous historical building which houses the Post Office. He replied that there is no high limit at this time. I replied that
although there are no high limits at this time the FAR is limited  to two to one, therefore I would support the FAR to be
changed only to the extent that  four story building would be allowed.
He also told me that the developer wants to put the pool on the roof and at this time is not asking to have a night club to
be placed on the roof.
Both of the above changes are very much to Mr. Shamooilian and my liking.
I also had a phone conversation with Mr. David Carrera, who lives very close to the property and is an active member
with respect to noise and liquor license activities in Hollywood. He told me that he has hired a sound engineer at his own
expense to contradict the developer's report that a night club on the roof is not going to have a negative effect. Please
note that he has paid $1,600 of his hard earned monies for the report and that $1,600 is a lot of money for him.

Today I met with Mr. Marwan Korban who is the service director of Hornburg Jaguar, Landrover dealership repair facility.
The facility is located across the street from the project. I asked him if he was in favor of the project. He replied that he
personally  was not in favor of the project; but he did not know what the position of the dealership was and therefore he
could not voice his opposition at this time. He is meeting with the management next week.
He also told me that the developer needed extra parking spaces at night and that  he had approached the dealership to
rent the parking spaces at night.
Mr. Korban had serious concerns about the 125 parking spaces, traffic as well as the size and the height of the proposed
project.
Please call me when you get a chance.
Thanks,
Saeed

**From:** Saeed Nourmand
**Sent:** Friday, March 13, 2015 1:07 AM
**To:** Saeed Nourmand
**Subject:** RE: Wilcox Hotel

1 - The height is by far taller than what the community plan had recommended.

CONFIDENTIAL                                        SUNSET_00002131

## Wilcox Hotel Project

| | |
|---|---|
| **From:** | Carolyn Rae Cole <carolyn@carolynraecole.com> |
| **To:** | Saeed Nourmand <snourmand@nourmand.com>, fgaines@gaineslaw.com |
| **Date:** | Tue, 17 Mar 2015 04:45:23 +0000 |

Good evening Saeed and Fred –

I am sorry that I did not receive your email until tonight. Please note my correct email address below. This is my primary account and should be used for all future correspondence.

Fred, I know that you and I have not met. But I do understand that you are a highly reputable land use/real estate attorney and I know Saeed respects you immensely.

I am a real estate agent and also an attorney (although not a real estate/land use attorney), but nonetheless have been practicing law for over 30 years. Nourmand & Associates Hollywood is where I hang my real estate license. I one was of the first agents to come to the Hollywood office when it opened. I have a long history in the Hollywood area, having been born there and then raised in the area, and attended UCLA and Loyola Law School. I have a very strong interest in the continued development of the area, as I work there and live very nearby, and certainly frequent the area many nights a week for both social and business outings.

I have volunteered my assistance to Saeed and have provided him with some very specific arguments that could be helpful at the hearing on Wednesday.

I certainly do not want to step on your toes in any way. I have no desire to participate in any greater way than what I am doing now.

I did offer to Saeed, that if you have an outline of the issues you were going to raise on Wednesday, I am happy to add some commentary that may be useful on some of the legal issues. The commentary are points that I know the Dept. of Planning to be sensitive, and/or keen on and could be persuasive.

But I will leave it up to you as to whether any of my comments could be helpful.

Sincerely,

Carolyn

**Carolyn Rae Cole, Attorney/Realtor**
**Associate Branch Manager - Training Director**
**Nourmand & Associates, Hollywood/Sunset**
**BRE# 01703618**
**323-359-7300**
carolyn@carolynraecole.com



**CONFIDENTIAL**

# 1523-1541 North Wilcox Ave_Public Hearing

| | |
|---|---|
| **From:** | Sarah Gould <"/o=first organization/ou=first administrative group/cn=recipients/cn=sgould_nourmand"> |
| **To:** | Libby Gmail <elacsha@gmail.com>, Karen Lewis <klewis@nourmand.com>, Howard Lorey <hlorey@nourmand.com>, Carolyn Rae Cole <carolyn@carolynraecole.com>, Charlene Laraneta <camlis2@aol.com>, Michael Nourmand <mnourmand@nourmand.com> |
| **Cc:** | Saeed Nourmand <snourmand@nourmand.com>, Mohamad Iravani <miravani@nourmand.com> |
| **Date:** | Wed, 11 Mar 2015 16;08;50 +0000 |
| **Attachments:** | 1523-1541 North Wilcox Ave.pdf (312.04 kB) |

Good morning,

Please find attached a Public Hearing Notice regarding **1523-1541 North Wilcox Ave**

Per Saeed's request he would like all of you to attend the Wilcox Hotel's public hearing.

Information for place, date, and time below.

**Hearing By:** Hearing Officer
**Date:** Wednesday, March 18, 2015
**Time:** 2:00 p.m.
**Place:** *Los Angeles City Hall*
200 North Spring Street, Room 1020
Los Angeles, California 90012

*Best Regards,*
*Sarah Gould*

**Office of Saeed Nourmand**

*6525 Sunset Boulevard Suite G-2*
*Los Angeles, California 90028*
*Phone: 323.462.6262*
*Fax: 323.462.6264*

CONFIDENTIAL

# 1523-1541 North Wilcox Ave_Public Hearing

| | |
|---|---|
| **From:** | Sarah Gould <"/o=first organization/ou=first administrative group/cn=recipients/cn=sgould"> |
| **To:** | Libby Gmail <elacsha@gmail.com>, Karen Lewis <klewis@nourmand.com>, Howard Lorey <hlorey@nourmand.com>, Carolyn Rae Cole <carolyn@carolynraecole.com>, Charlene Laraneta <camlis2@aol.com>, Michael Nourmand <mnourmand@nourmand.com> |
| **Cc:** | Saeed Nourmand <snourmand@nourmand.com>, Mohamad Iravani <miravani@nourmand.com> |
| **Date:** | Wed, 11 Mar 2015 16:08:50 +0000 |
| **Attachments:** | 1523-1541 North Wilcox Ave.pdf (312.04 kB) |

Good morning,

Please find attached a Public Hearing Notice regarding **1523-1541 North Wilcox Ave**

Per Saeed's request he would like all of you to attend the Wilcox Hotel's public hearing.

Information for place, date, and time below.

**Hearing By:** Hearing Officer
**Date:** Wednesday, March 18, 2015
**Time:** 2:00 p.m.
**Place:** *Los Angeles City Hall*
200 North Spring Street, Room 1020
Los Angeles, California 90012

*Best Regards,*
*Sarah Gould*

**Office of Saeed Nourmand**

*6525 Sunset Boulevard Suite G-2*
*Los Angeles, California 90028*
*Phone: 323.462.6262*
*Fax: 323.462.6264*

CONFIDENTIAL

## Wilcox

| From: | Allen Shamooilian <allen@kingsarch.com> |
|-------|------------------------------------------|
| To:   | Saeed Nourmand <snourmand@nourmand.com> |
| Cc:   | Michael Nourmand <mnourmand@nourmand.com>, Richard Shamooilian <richard@kingsarch.com> |
| Date: | Tue, 03 Mar 2015 00:07:33 +0000 |

Hi Saeed,

I am asking my assistant, Liz, to reach try to get the notice of hearing in front the Folbs (6464
Sunset among others) along with any of the other hotel owners and operators of the pending
hotels on this list and existing competing projects like the W and the Loews.

Do you have contacts with any of these groups?

Best,



**KING'S ARCH**

**ALLEN SHAMOOILIAN**
310.659.7575 x12
310.659.7576 Direct

If you are not the intended recipient, any disclosure or use of this information is prohibited. If received in error, please contact us
and destroy the original transmission and its attachments without reading or saving in any manner. Unless the intent is
otherwise expressly stated by us, this message shall not be binding on King's Arch, LP, its principals or its affiliates (together
"KA") until reviewed by its attorneys and the execution of a more formal and definitive contract between the parties. Although
this is believed to be free of defect, no responsibility is accepted by KA for any related loss or damage {.}

## RE: 1541 Wilcox

| | |
|---|---|
| **From:** | Carolyn Rae Cole <carolyn@carolynraecole.com> |
| **To:** | Saeed Nourmand <snourmand@nourmand.com> |
| **Date:** | Wed, 18 Mar 2015 01:32:13 +0000 |

Thank you. I talked to Fred today, BTW.

**Carolyn Rae Cole, Attorney/Realtor**
**Associate Branch Manager - Training Director**
**Nourmand & Associates, Hollywood Office**
**BRE# 01703618**
**323-359-7300**
carolyn@carolynraecole.com
www.LAHome4You.com



**From:** Saeed Nourmand [mailto:SNourmand@Nourmand.com]
**Sent:** Tuesday, March 17, 2015 6:17 PM
**To:** carolyn@carolynraecole.com
**Subject:** FW: 1541 Wilcox

FYI

**From:** Sarah Gould
**Sent:** Tuesday, March 17, 2015 4:12 PM
**To:** fgaines@gaineslaw.com
**Cc:** Saeed Nourmand
**Subject:** 1541 Wilcox

Hello Fred,

Please find attached the revised document regarding Wilcox, per Saeed.

*Best Regards,*
*Sarah Gould*

*Office of Saeed Nourmand*

*6525 Sunset Boulevard Suite G-2*
*Los Angeles, California 90028*
*Phone: 323.462.6262*
*Fax: 323.462.6264*

CONFIDENTIAL

## RE: Wilcox Hotel

| | |
|---|---|
| **From:** | Carolyn Rae Cole <carolyn@carolynraecole.com> |
| **To:** | Saeed Nourmand <snourmand@nourmand.com> |
| **Date:** | Wed, 18 Mar 2015 01:32:20 +0000 |

Received.

**Carolyn Rae Cole, Attorney/Realtor**
**Associate Branch Manager - Training Director**
**Nourmand & Associates, Hollywood Office**
**BRE# 01703618**
**323-359-7300**
carolyn@carolynraecole.com
www.LAHome4You.com



**From:** Saeed Nourmand [mailto:SNourmand@Nourmand.com]
**Sent:** Tuesday, March 17, 2015 6:17 PM
**To:** carolyn@carolynraecole.com
**Subject:** FW: Wilcox Hotel

FYI

**From:** David Carrera [mailto:davidcarrera@prodigy.net]
**Sent:** Tuesday, March 17, 2015 2:27 PM
**To:** Saeed Nourmand
**Subject:** Re: Wilcox Hotel

Thanks Saeed,

I've attached my letter that I sent to Planning.

The sound analysis and assessment is not done yet. I will have bullet points for tomorrow's hearing, but the letter will be submitted in a few days.

Someone came around yesterday with a petition that I signed.

David

> **From:** Saeed Nourmand <SNourmand@Nourmand.com>
> **To:** David Carrera <davidcarrera@prodigy.net>
> **Sent:** Monday, March 16, 2015 11:39 AM
> **Subject:** FW: Wilcox Hotel
>
> FYI
>
> **From:** Saeed Nourmand
> **Sent:** Friday, March 13, 2015 1:07 AM
> **To:** Saeed Nourmand
> **Subject:** RE: Wilcox Hotel

**CONFIDENTIAL**

**Harridge Development Group, LLC**
*6363 Wilshire Blvd, Suite 600*
*Los Angeles, CA 90048*
*Tel. (323) 658-1511*
*Fax. (323) 658-1520*

August 15, 2018

Saed Nourmand
Nourmond and Associates
6525 Sunset Blvd Ste G2
Los Angeles, CA 90028

Los Angeles, CA

## NON-BINDING LETTER OF INTENT

Re:     Ground Lease and Re-development of 6525 W. Sunset Boulevard, 1520, 1522, and 1540 Schrader Boulevard, Los Angeles, CA comprising approximately 93,682 sf of land (APN's: 5547-017-038, 039, 030, 028, 05, 06) (the "Real Property") improved with an eleven story building (the "Building"), with associated parking and outbuildings, all as more fully described on Exhibit A attached hereto (the Real Property and the Building, together with all appurtenant easements, rights of way, and development rights and other personal property used in connection with the Real Property and the Building shall sometimes hereinafter collectively referred to as the "Property").

Dear Sayeed:

This letter sets forth the general terms and conditions upon which Harridge Development Group, or its permitted assignee, proposes to ground lease the Property from _____(the "Owner"), for a 99-year term, subject to the drafting and execution of a mutually acceptable Option Agreement ("Option Agreement") and Ground Lease ("Ground Lease") embodying, among others, the terms contained herein, as applicable:

1. **Option Period**.    The Option Agreement will commence at the end of the Feasibility Period (as defined below) and have a term of four (4) years ("Option Period") during which Harridge may elect, in its sole discretion, by providing notice to Owner, to cause the Ground Lease to be signed by the parties and become effective.   The Option Agreement shall provide that Harridge shall pay Owner as option consideration the following nor refundable and non- applicable payments (collectively, the "Option Consideration"): (i) $250,000 upon the expiration of the Feasibility Period, (ii) $250,000 on the one-year anniversary of the expiration of the Feasibility Period, (iii) $500,000 on the two-year anniversary of the expiration of the

28610146v.3

## FW: Hollywood Athletic Club LOI

| | |
|---|---|
| **From:** | David Schwartzman <david@harridgedevelopmentgroup.com> |
| **To:** | Saeed Nourmand <snourmand@nourmand.com> |
| **Date:** | Wed, 15 Aug 2018 21:53:46 +0000 |
| **Attachments:** | 6525 West Sunset LOI (Hollywood Athletic Club) 081518.docx (980.32 kB) |

Loi as we discussed.

**From:** Bill Myers <bmyersemail@gmail.com>
**Sent:** Wednesday, August 15, 2018 2:51 PM
**To:** David Schwartzman <david@harridgedevelopmentgroup.com>
**Cc:** YURI GUREVICH <ygurevich@sbcglobal.net>
**Subject:** Hollywood Athletic Club LOI

Attached

CONFIDENTIAL

## Fw: Approved Entitlement Plans Of Wilcox Hotel

| | |
|---|---|
| **From:** | Saeed Nourmand <snourmand@nourmand.com> |
| **To:** | offenhauser@oma-la.com |
| **Cc:** | Saeed Nourmand <snourmand@nourmand.com> |
| **Date:** | Wed, 12 Apr 2017 17:15:59 +0000 |

Good morning Fran,
Attached please find a copy of the Wilcox Hotel's approved plans for your review.
I am looking forward to seeing you for lunch today at 12:30 PM at Michel Richard.
Best,
Saeed
PS
My cell number is 310 210 1900

**From:** Saeed Nourmand
**Sent:** Friday, April 07, 2017 1:51 AM
**To:** Mohamad Iravani; Michael Nourmand
**Subject:** Fw: Approved Entitlement Plans

---

**From:** Richard Heyman <richard@relevantgroup.com>
**Sent:** Wednesday, April 05, 2017 4:21 PM
**To:** Saeed Nourmand
**Subject:** Approved Entitlement Plans

Hi Saeed

Pls click on the link below to review the Approved Hotel Plans

Let me know if you have any questions or comments

Thank you!

**RICHARD HEYMAN**
MANAGING PARTNER

1605 N CAHUENGA BLVD

HOLLYWOOD • CA • 90028

Office 323 466 1400

www.relevantgroup.com



http://planning.lacity.org/pdiscaseinfo/CaseId/MTk5MTc10
http://planning.lacity.org/pdiscaseinfo/CaseId/MTk5MTc10

**CONFIDENTIAL**

# Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV01 | 7/26/2018 | Saeed Nourmand (nourmand@nourmand.com) | Dan Wright (dan@robertsheridancrimlaw.com); Robert Silverstein (robert@robertsilversteinlaw.co m); Jayesh Patel (jpatel@rubyhoteline.com) | Nora Soghoyian (nasquitu@smithsridanlaw.com) | | Re: 10-2001: Relevant Hospitality Flow | Privilege Withheld | | Attorney Client Privilege | Email chain reporting legal advice from Dan Wright", Robert Silverstein", Jayesh Patel", and Nora Soghoyian with Jayesh Patel" regarding the Silverlake Motel |
| PRIV07 | 1/21/2016 | Stephen Weaver | | | | Re: [2-001: Summit/Landmark - Sublocation - File Memos 001.45.165.pdf | Privilege Withheld | | Attorney Client Privilege | Memorandum reflecting confidential attorney client communications with Jayesh Patel" and Stephen Weaver" regarding a CEQA lawsuit involving the Selma Wilcox Hotel |
| PRIV01 | 3/2/2016 | Robert Silverstein | Mohammad Honam (mhiranda@nourmand.com); Rochelle DeCastro (rdecastro@nourmand.com) | | | 1.2.16 Draft Petition for Writ of Mandate.docx | Privilege Withheld | | Attorney Client Privilege; Work Product | Draft court filing reflecting confidential Attorney Client communications with Robert Silverstein" and Dan Wright" prepared in the course of litigation regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV05 | 3/15/2016 | Saeed Nourmand (nourmand@nourmand.com) | Rochelle DeCastro (rdecastro@nourmand.com) | | | PW: 1573-1541 North Wilcox, Los Angeles | Privilege Withheld | | Attorney Client Privilege | Email reflecting confidential Attorney Client communications with Tiffany Perry" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV06 | 10/1/2015 | Fred Gaines | | | | Fully Executed Attorney Employment Agreement Sunset Landmark.pdf | Privilege Withheld | | Attorney Client Privilege | Agreement reflecting confidential Attorney Client communications with Gaines & Stacey LLP" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV08 | 11/10/2015 | Saeed Nourmand (nourmand@nourmand.com) | Saeed Nourmand (nourmand@nourmand.com) | | | FW: Appeal of 1523-1541 Wilcox Avenue Determination | Privilege Withheld | | Attorney Client Privilege | Email reflecting confidential Attorney Client communications with Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV09 | 11/10/2015 | Jayesh Patel | | | | ATTACHMENT (from 7769).docx | Privilege Withheld | | Attorney Client Privilege | Draft court filing reflecting confidential Attorney Client communications with Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV10 | 11/10/2015 | Jayesh Patel | | | | 7769 (Appeal Form).pdf | Privilege Withheld | | Attorney Client Privilege | Draft court filing reflecting confidential Attorney Client communications with Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV11 | 10/29/2015 | Paul Rosenberger (prosenberger@yumha.com) | Jayesh Patel (jpatel@yumha.com) | | | Appeal of 1523-1541 Wilcox Avenue Determination | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Paul Rosenberger" and Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV12 | 11/2/2015 | Jayesh Patel | | | | ATTACHMENT (from 7769).docx | Privilege Withheld | | Attorney Client Privilege; Work Product | Draft court filing reflecting confidential Attorney Client communications with Paul Rosenberger" and Jayesh Patel" prepared in the course of litigation regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV13 | 11/2/2015 | Jayesh Patel | | | | 7769 (Appeal Form).pdf | Privilege Withheld | | Attorney Client Privilege; Work Product | Draft court filing reflecting confidential Attorney Client communications with Paul Rosenberger" and Jayesh Patel" prepared in the course of litigation regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV15 | 10/29/2015 | Rochelle DeCastro (rdecastro@nourmand.com) | Rochelle DeCastro (rdecastro@nourmand.com) | Jared (sourmand@nourmand.com); Paul Rosenberger (prosenberger@yumha.com) | | RE: 1541 WILCOX HOTEL - FINAL APPEAL DATE 11.23.2015 | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel" and Paul Rosenberger" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV16 | 10/28/2015 | Rochelle DeCastro (rdecastro@nourmand.com) | Saeed Nourmand (nourmand@nourmand.com) | | | 1541 WILCOX HOTEL - FINAL APPEAL DATE 11.03 2015 | Privilege Withheld | | Attorney Client Privilege | Email providing information to assist in rendering legal advice from Jayesh Patel" and Paul Rosenberger" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV17 | 10/22/2015 | Rochelle DeCastro (rdecastro@nourmand.com) | Saeed Nourmand (nourmand@nourmand.com) | | | Re: Los Angeles City Planning Commission re: 1541 Wilcox Hotel, LLC | SUNSET_00001936 SUNSET_00001937 | | Attorney Client Privilege | Email providing information to assist in rendering legal advice from Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV18 | 10/22/2015 | Jayesh Patel | | | | Revised foreclose agreement and form of note and Terms.doc | SUNSET_00001956 SUNSET_00001937 | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV19 | 12/6/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 6516 Selma (Tommie Hotel) (03444).DOCX | Privilege Withheld | | Attorney Client Privilege | Draft agreement providing legal advice from Jayesh Patel" regarding a CEQA lawsuit involving the Tommie Hotel |
| PRIV20 | 12/6/2017 | Jayesh Patel | | | | Form of Promissory Note (secured by DOT) DOCX | Privilege Withheld | | Work Product | Draft agreement providing legal advice from Jayesh Patel" regarding a CEQA lawsuit involving the Tommie Hotel |
| PRIV21 | 12/12/2017 | Jayesh Patel (jpatel@rubyhoteline.com) | | | | SAMPLE DEEDS OF TRUST FORM.CA.DOCX | Privilege Withheld | | Attorney Client Privilege | Draft providing legal advice from Jayesh Patel" regarding settlement negotiations involving the Tommie Hotel |
| PRIV22 | 12/12/2017 | Jayesh Patel (jpatel@rubyhoteline.com) | Saeed Nourmand (nourmand@nourmand.com) | | | PW: Revised Tommie agreement and form of Note and Trust.DOCX | Privilege Withheld | | Attorney Client Privilege | Email providing settlement negotiations involving the Tommie Hotel |
| PRIV23 | 12/12/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 6516 Selma (Tommie Hotel) (03806).DOCX | Privilege Withheld | | Work Product | Draft prepared in the course of litigation by Jayesh Patel" regarding settlement negotiations involving the Tommie Hotel |
| PRIV24 | 12/12/2017 | Jayesh Patel | | | | Form of Promissory Note (secured by DOT).DOCX | Privilege Withheld | | Work Product | Draft agreement prepared in anticipation of litigation by Jayesh Patel" regarding settlement negotiations involving the Tommie Hotel |
| PRIV25 | 12/12/2017 | Jayesh Patel | | | | SIMPLE DEED OF TRUST FORM (CA).DOCX | Privilege Withheld | | Work Product | Draft agreement prepared in the course of litigation by Jayesh Patel" regarding settlement negotiations involving the Tommie Hotel |
| PRIV27 | 12/12/2017 | Robert Silverstein (robert@robertsilversteinlaw.co m) | Mohammad Honam (robert@robertsilversteinlaw.com); Saeed Nourmand (nourmand@nourmand.com); Jayesh Patel (jpatel@rubyhoteline.com) | Dan Wright (robert@robertsilversteinlaw.com); Tamra Silverstein (Tamra@robertsilversteinlaw.com); Veronica LaBan (veronica@rubyhoteline.com) | | Silverlake Investors (S,-001 & -002) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein", Jayesh Patel", Dan Wright", and Veronica LaBan" regarding settlement negotiations involving the Silverlake Motel |

Page 1 of 37

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type |
|---|---|---|---|---|---|---|---|---|---|
| PRIV029 | 12/11/2017 | Robert Silverstein | Jayesh Patel (jpatel@ktgslaw.com) | | | SK17.0001_Sunset_112617.tle November 2017 12-19 2017.pdf | Privilege Withheld | | Attorney Client Privilege |
| PRIV028 | 12/11/2017 | Robert Silverstein | Jayesh Patel (jpatel@ktgslaw.com) | | | SK17.0001_Sunset_111411.tle November 2017 12-19.2017.pdf | Privilege Withheld | | Attorney Client Privilege |
| PRIV027 | 12/21/2017 | Jayesh Patel (jpatel@ktgslaw.com) | Saeed Nourmand (snourmand@nourmand.com) | | | RW: Tenant/Thomason | Privilege Withheld | | Attorney Client Privilege |
| PRIV026 | 12/27/2017 | Jayesh Patel | Saeed Nourmand (snourmand@nourmand.com) | | | REDLINE_41568169v1_Settlement Agreement and Release for Sunset Landmark Litigation (Tennant)(Response)PDF | Privilege Withheld | | Attorney Client Privilege; Work Product |
| PRIV025 | 12/27/2017 | Jayesh Patel | Saeed Nourmand (snourmand@nourmand.com) | | | Signature Page (Wilkox Property).PDF | Privilege Withheld | | Attorney Client Privilege; Work Product |
| PRIV024 | 12/27/2017 | Jayesh Patel | | | | Signature Page (Wilkox Property).PDF | Privilege Withheld | | Attorney Client Privilege; Work Product |
| PRIV023 | 12/22/2017 | Jayesh Patel | | | | REDLINE_Settlement Agreement and Release for Sunset Landmark Litigation (Wilkox) (Response)PDF | Privilege Withheld | | Attorney Client Privilege; Work Product |
| PRIV022 | 12/22/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation (Wilkox).DOCX | Privilege Withheld | | Attorney Client Privilege; Work Product |
| PRIV021 | 12/22/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation (General).DOCX | Privilege Withheld | | Attorney Client Privilege; Work Product |
| PRIV020 | 12/22/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation (General).DOCX | Privilege Withheld | | Attorney Client Privilege; Work Product |
| PRIV019 | 1/5/2018 | Jayesh Patel | | | | RW: Checking in | Privilege Redact | | Attorney Client Privilege |
| PRIV018 | 1/5/2018 | Jayesh Patel | | | | RW: call me | Privilege Withheld | | Attorney Client Privilege |
| PRIV017 | 1/5/2018 | Jayesh Patel | | | | RW: packages – correct versions | Privilege Withheld | | Attorney Client Privilege |
| PRIV016 | 1/2/2018 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation (Wilkox) Final Redline.DOCX | Privilege Withheld | | Attorney Client Privilege; Work Product |
| PRIV015 | 1/2/2018 | Jayesh Patel | | | | REDLINE_Settlement Agreement and Release for Sunset Landmark Litigation (Tennant) Final Redline.DOCX | Privilege Withheld | | Attorney Client Privilege; Work Product |
| PRIV014 | 1/2/2018 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation (Tennant) Final Redline.DOCX | Privilege Withheld | SUNSET 00000104 SUNSET 00000105 | Attorney Client Privilege |
| PRIV013 | 1/5/2018 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation (General).DOCX | Privilege Withheld | | Attorney Client Privilege; Work Product |
| PRIV012 | 1/5/2018 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation (General).DOCX | Privilege Withheld | | Attorney Client Privilege; Work Product |
| PRIV011 | 1/8/2018 | Jayesh Patel | | | | REDLINE_00000104_SUNSET_00000105 Settlement Agreement and Release for Sunset Landmark Litigation (General)(Response) | Privilege Withheld | | Attorney Client Privilege; Work Product |
| PRIV010 | 1/8/2018 | Jayesh Patel | Saeed Nourmand (snourmand@nourmand.com) | | | 1513 1541 North Wilcox Avenue – Deed of Trust.DOCX | Privilege Withheld | | Attorney Client Privilege |
| PRIV009 | 1/8/2018 | Jayesh Patel | Saeed Nourmand (snourmand@nourmand.com) | | | 1513 1541 North Wilcox Avenue – Deed of Trust.DOCX | Privilege Withheld | | Attorney Client Privilege |
| PRIV008 | 1/26/2018 | Jayesh Patel | Saeed Nourmand (snourmand@nourmand.com) | | | Settlement Agreement and Release for Sunset Landmark Litigation (General).DOCX | Privilege Withheld | | Attorney Client Privilege |
| PRIV007 | 1/26/2018 | Jayesh Patel | Saeed Nourmand (snourmand@nourmand.com) | | | 1513 1541 North Wilcox Avenue – Deed of Trust.DOCX | Privilege Withheld | | Attorney Client Privilege |
| PRIV006 | 4/20/2018 | Jayesh Patel | | | | RW: clean up | Privilege Withheld | | Attorney Client Privilege |
| PRIV005 | 1/30/2018 | Jayesh Patel | | | | PW: Recordable Covenant | Privilege Withheld | | Attorney Client Privilege |
| PRIV004 | 1/26/2018 | Jayesh Patel | | | | Covenant And Agreement Regarding Use of Hotel.DOCX | Privilege Withheld | | Attorney Client Privilege |
| PRIV003 | 1/26/2018 | Jayesh Patel | | | | Covenant And Agreement Regarding Use of Hotel.DOCX | Privilege Withheld | | Attorney Client Privilege |
| PRIV002 | 1/30/2018 | Jayesh Patel | Saeed Nourmand (snourmand@nourmand.com) | | | | Privilege Withheld | | Attorney Client Privilege |
| PRIV001 | 1/26/2018 | Jayesh Patel | Saeed Nourmand (snourmand@nourmand.com) | | | PW: clean up | Privilege Withheld | | Attorney Client Privilege |

## Sunset Landmark Privilege Log

| Letter No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV54 | 1/8/2018 | Jayesh Patel | | | | RE0106_4160057PSC_(Covenant And Agreement) Regarding Use of Hotel (Wilcox) - 8160057A_3.pdf | Privilege Withheld | | Attorney Client Privilege | Agreement providing legal advice from Jayesh Patel regarding settlement negotiations involving the Wilcox Hotel |
| PRIV55 | 1/8/2018 | Jayesh Patel | | | | 8160057B_3.docx | Privilege Withheld | | Attorney Client Privilege | Agreement providing legal advice from Jayesh Patel regarding settlement negotiations involving the Wilcox Hotel |
| PRIV56 | 1/17/2018 | Mohamed Imran; Saeed Nourmand; Jayesh Patel | Robert Silverstein; Teresa Silverstein; Veronica Lubin | Jayesh Patel | | Silverstein Invoice (SL-001, 002 & Nourmand) | Privilege Withheld | SP577.001_3ml_11368 6-23-2018.pdf | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding settlement negotiations involving the Roberson Hotel |
| PRIV58 | 1/22/2018 | Robert Silverstein | | | | SP577.001_3ml_11347D_11-26-2018.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communication with Robert Silverstein regarding a CEQA lawsuit involving the Roberson Hotel |
| PRIV58 | 1/22/2018 | Robert Silverstein | | | | | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communication with Robert Silverstein regarding a CEQA lawsuit involving the Tramina Hotel |
| PRIV59 | 2/21/2018 | Robert Silverstein | Mohamed Imran; Saeed Nourmand; Jayesh Patel | | | Silverstein invoice (SL-001 and SL-002) | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communication with Robert Silverstein regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV60 | 2/21/2018 | Robert Silverstein | | | | SP577.001_3ml_11345C for January 2018 2-15-2018.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communication with Robert Silverstein regarding a CEQA lawsuit involving the Roberson Hotel |
| PRIV61 | 2/13/2018 | Robert Silverstein | | | | SP577.002_3ml_11345D for January 2018 2-15-2018.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communication with Robert Silverstein regarding a CEQA lawsuit involving the Roberson Hotel |
| PRIV62 | 2/27/2018 | Robert Silverstein | Mohamed Imran; Saeed Nourmand; Jayesh Patel | | | | Privilege Withheld | 2-22-2018 Sunset Landmark 002.pdf | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Selma Wilcox Hotel |
| PRIV63 | 2/27/2018 | Robert Silverstein | | | | | Privilege Withheld | | Attorney Client Privilege | Exhibit reflecting confidential Attorney Client communication with Robert Silverstein regarding a CEQA lawsuit involving |
| PRIV64 | 2/22/2018 | Robert Silverstein | | | | 2-22-2018 Sunset Landmark V1a.pdf | Privilege Withheld | | Attorney Client Privilege | Exhibit reflecting confidential Attorney Client communication with Robert Silverstein regarding a CEQA lawsuit involving |
| PRIV65 | 2/22/2018 | Robert Silverstein | | | | SP577.001_3ml_11365H Final.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communication with Robert Silverstein regarding a CEQA lawsuit involving |
| PRIV66 | 2/22/2018 | Robert Silverstein | | | | SP577.002_3ml_11346 Final_2.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communication with Robert Silverstein regarding a CEQA lawsuit involving the Tramina Hotel |
| PRIV67 | 3/25/2018 | Saeed Nourmand; Dan Wright; jbarkovic@silverlaw.com; Jayesh Patel | Robert Silverstein; robert@silverlaw.com | | | SL.001_Tax Hotel : Report From Advisory Agency and Hearing Officer Hearing | Privilege Withheld | | Attorney Client Privilege | Email reflecting confidential Attorney Client communication with Robert Silverstein / Dan Wright and Jayesh Patel regarding a CEQA lawsuit involving the Selma Wilcox Hotel |
| PRIV68 | 4/18/2018 | Robert Silverstein; robert@silverlaw.com | Saeed Nourmand | Saeed Nourmand | | RE: SL.001_Tax Hotel : Report From Advisory Agency and Hearing Officer Hearing | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Selma Wilcox Hotel |
| PRIV69 | 4/18/2018 | Jayesh Patel; jpatel@silverlaw.com | Robert Silverstein | Saeed Nourmand | | SL.001/Tax Hotel : Report From Advisory Agency and Hearing Officer Hearing | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein / Jayesh Patel regarding a CEQA lawsuit involving the Selma Wilcox Hotel |
| PRIV70 | 4/18/2018 | Robert Silverstein; robert@silverlaw.com | Saeed Nourmand | Saeed Nourmand | | 3-23-18 [SCAN] Objection Letter to City Planning Commission re Tax Hotel Project.PDF | Privilege Withheld | | Attorney Client Privilege | Letter providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Selma Wilcox Hotel and the Tax Hotel |
| PRIV71 | 4/18/2018 | Jayesh Patel; jpatel@silverlaw.com | Robert Silverstein; robert@silverlaw.com | | | RE: SL.001_Tax Hotel : Report From Advisory Agency and Hearing Officer Hearing | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Selma Wilcox Hotel and the Tax Hotel |
| PRIV72 | 4/20/2018 | Robert Silverstein; robert@silverlaw.com | Mohamed Imran; imran@silverlaw.com; Saeed Nourmand; jpatel@silverlaw.com | Robert Silverstein; Teresa Silverstein; imran@silverlaw.com; Veronica Lubin; veronica@silverlaw.com | | Silverstein Invoice (Sunset Landmark 003) | Privilege Withheld | SP577.001_3ml_11353 for March 2018 4-19-2018.pdf | Attorney Client Privilege | Email reflecting confidential Attorney Client communication with Robert Silverstein regarding a CEQA lawsuit involving the Selma Wilcox Hotel |
| PRIV74 | 4/20/2018 | Robert Silverstein | | | | Silverstein Invoice (Sunset Landmark 001) | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communication with Robert Silverstein regarding a CEQA lawsuit involving the Selma Wilcox Hotel |
| PRIV75 | 1/21/2017 | Robert Silverstein | | | | 11618 001_3ml_11184 for January 3 22-2017.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Selma Wilcox Hotel |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV79 | 3/21/2017 | Joseph Patel (jpatel@robsilverlaw.com) | Robert Silveraro (bronomu@rothnoumand.com); Morched Imrael (mimrael@rothnoumand.com) | | | File: Sherstein Invoice (Sunset Landmark 001) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Joseph Patel reflecting confidential Attorney Client communication with Robert Silveraro regarding a CCGA lawsuit involving the Wilcox Hotel |
| PRIV78 | 3/21/2017 | Joseph Patel (jpatel@robsilverlaw.com) | Robert Silveraro | | | [SKL8.001]_Desc_111184 to January 3 22; 2013.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communication with Robert Silveraro regarding a CCGA lawsuit involving the Wilcox Hotel |
| PRIV77 | 3/21/2017 | Robert Silveraro | Robert Silveraro | | | [SKL8.001]_Desc_111184 to January 3 22; 2013.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Joseph Patel reflecting confidential Attorney Client communication regarding the Wilcox Hotel |
| PRIV76 | 3/21/2017 | Joseph Patel (jpatel@robsilverlaw.com) | Morched Imrael (mimrael@rothnoumand.com); Saeed Noumand (snoumand@rothnoumand.com) | | | File: Sherstein Invoice (Sunset Landmark 001) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Joseph Patel regarding a CCGA lawsuit involving the Wilcox Hotel |
| PRIV75 | 3/21/2017 | Robert Silveraro | Saeed Noumand (snoumand@rothnoumand.com) | | | [SKL8.001]_Desc_111184 to January 3 22; 2013.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silveraro reflecting confidential communication with Saeed Noumand regarding a CCGA lawsuit involving the Wilcox Hotel |
| PRIV74 | 5/25/2017 | Robert Silveraro | Saeed Noumand (snoumand@rothnoumand.com); Dan Wright (dan@robsilverlaw.com); Joseph Patel (jpatel@robsilverlaw.com) | | | | Privilege Withheld | | Attorney Client Privilege | Email reflecting confidential Attorney Client communication with Robert Silveraro regarding a CCGA lawsuit involving the Wilcox Hotel |
| PRIV73 | 1/26/2017 | Robert Silveraro | Dan Wright (dan@robsilverlaw.com); Joseph Patel (jpatel@robsilverlaw.com) | | | Re: SL 001 Confirm Sunset Landmark owns residential building west of Wilcox Motel | Privilege Withheld | | Attorney Client Privilege | Email regarding legal advice from Robert Silveraro reflecting confidential communication |
| PRIV72 | 4/5/2017 | Robert Silveraro (jpatel@robsilverlaw.com) | Mahmoud Imrael (mimrael@rothnoumand.com); J Joseph Patel (jpatel@robsilverlaw.com) | Email Subject: Sherstein Invoice (Sunset Landmark 001) | | Sherstein Invoice (Sunset Landmark 001) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silveraro regarding the Sherstein Invoice |
| PRIV71 | 4/5/2017 | Robert Silveraro | Mahmoud Imrael; Saeed Noumand (snoumand@rothnoumand.com) | | | | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communication regarding the Wilcox Hotel |
| PRIV70 | 4/5/2017 | Robert Silveraro | Robert Silveraro (robertsilveraro@robsilverlaw.com); Saeed Noumand (snoumand@rothnoumand.com) | | | SKT7.001_Desc_111590 Re February 4 6; 2013.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communication regarding the Wilcox Hotel |
| PRIV69 | 4/15/2017 | Joseph Patel (jpatel@robsilverlaw.com) | Saeed Noumand (snoumand@rothnoumand.com); Robert Silveraro (robertsilveraro@robsilverlaw.com) | | | SKT7.001_Desc_111590 Re February 4 6; 2013.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Joseph Patel regarding a CCGA lawsuit involving the Wilcox Hotel |
| PRIV68 | 4/19/2017 | Robert Silveraro | Robert Silveraro (robertsilveraro@robsilverlaw.com) | | | RE: 1541 Wilcox Motel | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Joseph Patel regarding involving the Wilcox Motel |
| PRIV67 | 4/19/2017 | Saeed Noumand (snoumand@rothnoumand.com) | Saeed Noumand (snoumand@rothnoumand.com); Robert Silveraro | | | RE: 1541 Wilcox Motel | Privilege Withheld | | Attorney Client Privilege | Email reflecting confidential Attorney Client communications with Robert Silveraro regarding the Wilcox Motel |
| PRIV66 | 4/19/2017 | Saeed Noumand (snoumand@rothnoumand.com) | Dan Wright (dan@robsilverlaw.com); Jillian Reyes (jillian@robsilverlaw.com); Robert Silveraro | | | RE: 1541 Wilcox Motel | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Jillian Reyes; Dan Wright; and Joseph Patel regarding a CCGA lawsuit involving the Wilcox Motel |
| PRIV65 | 4/14/2017 | Saeed Noumand (snoumand@rothnoumand.com) | Saeed Noumand (snoumand@rothnoumand.com) | | | FW: 1541 Wilcox Sunset development doc | Privilege Withheld | | Attorney Client Privilege | Email reflecting confidential Attorney Client communication with Saeed Noumand regarding the Wilcox Motel |
| PRIV64 | 4/14/2017 | Saeed Noumand | | | | FW: 1541 Wilcox Sunset Landmark proposal for 1541 Wilcox development docs | Privilege Withheld | | Attorney Client Privilege | Email reflecting confidential Attorney Client communication involving the Wilcox Motel |
| PRIV63 | 7/9/2016 | Dan Wright (dan@robsilverlaw.com) | Saeed Noumand (snoumand@rothnoumand.com); Robert Silveraro (robertsilveraro@robsilverlaw.com); Joseph Patel (jpatel@robsilverlaw.com) | | | Re: Sunset Landmark - HGRINC FILMH Committee Meeting, Wed, July 13th 6:00PM, 1919-1925 Wilcox Ave; hotel project | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Joseph Patel; Dan Wright; and Robert Silveraro regarding a CCGA lawsuit involving the Wilcox Hotel |
| PRIV62 | 8/17/2016 | Esther Eizenfeld (esther@robsilverlaw.com) | Joseph Patel (jpatel@robsilverlaw.com); Robert Silveraro | | | Re: Sunset Landmark - Fwd: 1541 Wilcox Ave - Fees for Request for Modification | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Esther Eizenfeld regarding a CCGA lawsuit involving the Wilcox Hotel |
| PRIV61 | 8/24/2016 | Dan Wright (dan@robsilverlaw.com) | Robert Silveraro (robertsilveraro@robsilverlaw.com); Joseph Patel | | | RE: Sunset Landmark - Fwd: 1541 Wilcox Ave - Fees for Request for Modification | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communication with Joseph Patel; Dan Wright; and Robert Silveraro regarding a CCGA lawsuit involving the Wilcox Hotel |
| PRIV60 | 8/20/2016 | Dan Wright (dan@robsilverlaw.com) | Dan Wright (dan@robsilverlaw.com); Jillian Reyes (jillian@robsilverlaw.com) | | | | Privilege Withheld | | Attorney Client Privilege | Email reflecting confidential Attorney Client communications with Dan Wright; Jillian Reyes regarding a CCGA lawsuit involving the Wilcox Hotel |
| PRIV55 | 5/4/2015 | Robert Silveraro | Jillian Reyes (jillian@robsilverlaw.com); Susan Siyahzar | | | SL 001: RE10 re SA today/tonight's meeting tomorrow; and new discovery for p6; exhibits 1-4 | Privilege Withheld | | Attorney Work Product | Exhibit reflecting confidential Attorney Client communications and legal advice from Robert Silveraro; Joseph Patel; and Dan Wright prepared in the course of litigation regarding a CCGA lawsuit involving the Wilcox Hotel |
| PRIV50 | 5/6/2013 | Robert Silveraro | | | | Exhibits 1-4.pdf | Privilege Withheld | | Attorney Work Product | |

# Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Production Bates Range | Status | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRV094 | 5/9/2017 | Robert Silverstein | Lared Recommend; Jayesh Patel | Dan Wright; Esther Kornfeld; Sezan Durdan | | Re: SL-001: NEED to talk before/bring to or meeting tomorrow, and new discovery hr, w; exhibits 1-4 | | Privilege Withheld | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein, Jayesh Patel, and Dan Wright, regarding a CEQA lawsuit involving the Villa on Hotel |
| PRV095 | 5/8/2017 | Robert Silverstein | Lared Recommend; Jayesh Patel | Lared Recommend; Robert Silverstein | | SL-001: 5-7-17 Ex Parte Application for Modified Briefing of None | | Preview Withheld | Attorney Client Privilege | Email providing legal advice from Robert Silverstein, Jayesh Patel, and Dan Wright, regarding a CEQA lawsuit involving the Villa on Hotel |
| PRV096 | 5/8/2017 | Robert Silverstein | Jayesh Patel | Lared Recommend; Robert Silverstein | | 5-7-17 Ex Parte Application for Modified Briefing of None.docx | | Privilege Withheld | Work Product | Draft Court filing reflecting confidential Attorney Client communications with Robert Silverstein, Jayesh Patel, and Dan Wright, prepared in the course of litigation regarding a CEQA lawsuit involving the Villa on Hotel |
| PRV097 | 8/24/2016 | Dan Wright | Jayesh Patel | Dan Myers; Robert Silverstein | | Re: Sunset Landmark - Villa on Hotel | | Privilege Withheld | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein, Jayesh Patel, and Dan Wright, regarding a CEQA lawsuit involving the Villa on Hotel |
| PRV098 | 8/24/2016 | Dan Wright | Jayesh Patel | Lared Recommend; Robert Silverstein | | Re: Sunset Landmark - Villa on Hotel | | Privilege Withheld | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein, Jayesh Patel, and Dan Wright, regarding a CEQA lawsuit involving the Villa on Hotel |
| PRV099 | 5/12/2017 | Robert Silverstein | Lared Recommend; Jayesh Patel | Robert Silverstein; Esther Kornfeld; Lared Recommend | | SL-001: The [proposed] Lonbrooh Investments v. City of Los Angeles / R1168007 | SUNSET_00000591 SUNSET_00000593 | Privilege Redact | Attorney Client Privilege; Work Product | Email providing legal advice from Robert Silverstein and Jayesh Patel, prepared in the course of litigation from Robert Silverstein, Jayesh Patel, and Dan Wright, regarding a CEQA lawsuit involving the Landmark Investment and the City of Los Angeles |
| PRV100 | 5/15/2017 | Lared Recommend | Jayesh Patel | Lared Recommend | | Re: SL-001: SUNSET LANDMARK'S REPLY TRIAL BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDATE | | Privilege Withheld | Attorney Client Privilege; Work Product | Email chain requesting legal advice prepared in the course of litigation from Robert Silverstein, Jayesh Patel, and Dan Wright, regarding a CEQA lawsuit involving the Villa on Hotel |
| PRV101 | 5/15/2017 | Robert Silverstein | Jayesh Patel; Lared Recommend | Dan Wright; Esther Kornfeld | | Re: SL-001: SUNSET LANDMARK'S REPLY TRIAL BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDATE | | Privilege Withheld | Attorney Client Privilege; Work Product | Email chain providing legal advice prepared in the course of litigation from Robert Silverstein, Jayesh Patel, and Dan Wright, regarding a CEQA lawsuit involving the Villa on Hotel |
| PRV102 | 5/15/2017 | Robert Silverstein | Jayesh Patel; Dan Wright; Lared Recommend | Esther Kornfeld | | SL-001: settlement letter of last Friday | | Privilege Withheld | Attorney Client Privilege; Work Product | Email chain providing legal advice prepared in anticipation of litigation from Robert Silverstein, Jayesh Patel, and Dan Wright, regarding a CEQA lawsuit involving the Selma Villa on Hotel, the Tommie Hotel and the Villa on Hotel |
| PRV103 | 5/15/2017 | Dan Wright | Jayesh Patel; Robert Silverstein; Lared Recommend | Esther Kornfeld | | Re: SL-001: SUNSET LANDMARK'S REPLY TRIAL BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDATE | | Privilege Withheld | Attorney Client Privilege; Work Product | Email chain providing legal advice prepared in the course of litigation from Robert Silverstein, Jayesh Patel, and Dan Wright, regarding a CEQA lawsuit involving the Selma Villa on Hotel, the Tommie Hotel and the Villa on Hotel |
| PRV104 | 6/21/2017 | Robert Silverstein | Dan Wright; Lared Recommend | Esther Kornfeld | | SL-002: Tommie Hotel - Common Litigation Interest Agreement | GOOD57-FD11029 v.1-Final_Common_Interest_Agreement___.DOCX | Privilege Withheld | Attorney Client Privilege; Work Product; Common Interest | Email chain providing legal advice from Robert Silverstein, Dan Wright, Jayesh Patel, and Esther Kornfeld, prepared in the course of litigation reflecting common legal interest regarding a CEQA lawsuit involving the Tommie Hotel |
| PRV105 | 6/23/2017 | Robert Silverstein | Dan Wright; Lared Recommend | Esther Kornfeld | | 29084094-1_Common Litigation Interest Agreement_2811029v_Final_Common_.pdf | | Privilege Withheld | Attorney Client Privilege; Work Product; Common Interest | Draft agreement reflecting confidential Attorney Client communications with Robert Silverstein, Dan Wright, Jayesh Patel, and Esther Kornfeld, prepared in the course of litigation and reflecting common legal interest regarding a CEQA lawsuit involving the Tommie Hotel |
| PRV106 | 6/21/2017 | Robert Silverstein | | | | SL-002: 6-8-17 PPI video to Dan's Drah portion for sent of | | Privilege Withheld | Attorney Client Privilege; Work Product; Common Interest | Draft court filing reflecting confidential Attorney Client communications with Robert Silverstein, Dan Wright, Jayesh Patel, and Esther Kornfeld, prepared in anticipation of litigation and reflecting common legal interest regarding a CEQA lawsuit involving the Tommie Hotel |
| PRV107 | 6/8/2017 | Robert Silverstein | | | | SL-8 17 PPI video to Dan's drah portion for sent of | | Privilege Withheld | Attorney Client Privilege; Work Product | Draft court filing reflecting confidential Attorney Client communications with Robert Silverstein, Dan Wright, Jayesh Patel, and Esther Kornfeld, prepared in the course of litigation regarding a CEQA lawsuit involving the Tommie Hotel |
| PRV108 | 6/8/2017 | Robert Silverstein | | | | | | | | |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV126 | 8/19/2016 | Jaymik Patel | Robert Silverstein | Robert Silverstein; Dan Wright; Allan Reyes | | RE: Sunset Landmark | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications |
| PRIV125 | 8/19/2016 | Jaymik Patel | Robert Silverstein | Robert Silverstein; Allan Reyes | | RE: Request for Modification | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications |
| PRIV124 | 3/14/2017 | Jaymik Patel | Robert Silverstein | Allan Reyes | | RE: Sunset Landmark | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications |
| PRIV123 | 8/19/2016 | Jaymik Patel | Robert Silverstein | | | RE: Request for Modification | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications |
| PRIV122 | 8/15/2016 | Jaymik Patel | Saeed Nourmand; Robert Silverstein | | | RE: Sunset Landmark / Fwd: 1541 Wilcox Ave | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications |
| PRIV121 | 8/17/2016 | Jaymik Patel | Saeed Nourmand; Robert Silverstein | | | RE: Sunset Landmark / Fwd: 1541 Wilcox Ave | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications |
| PRIV120 | 8/15/2016 | Jaymik Patel | Saeed Nourmand | Robert Silverstein | | RE: 1541 Wilcox Ave | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications |
| PRIV119 | 3/16/2017 | Saeed Nourmand | Robert Silverstein | Saeed Nourmand; Dan Wright | | Re: SL 001 update | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice |
| PRIV118 | 4/26/2017 | Robert Silverstein | Saeed Nourmand | | | 6-6-17 PPS redline to draft common interest agreement DOC.docx | Privilege Withheld | | Attorney Client Privilege: Work Product; Common Interest | Email and document reflecting confidential Attorney Client communications |
| PRIV117 | 4/27/2017 | Robert Silverstein | Saeed Nourmand | Dan Wright | | Fwd: SL 001 - 6-6-17 PPS redline to draft common interest agreement | Privilege Withheld | | Attorney Client Privilege: Work Product; Common Interest | Email providing legal advice |
| PRIV116 | 4/27/2017 | Robert Silverstein | Saeed Nourmand; Jaymik Patel | Dan Wright | | SL 001 - Central Area Pt. Comm's determination letter - our May Pt. & Safety appeal | Privilege Withheld | | Attorney Client Privilege: Work Product | Email providing legal advice |
| PRIV115 | 4/27/2017 | Robert Silverstein | Saeed Nourmand; Jaymik Patel | | | 1C 001 - Tentative Nov POI re PI Comm Litigation interest Opposition | Privilege Withheld | | Attorney Client Privilege: Work Product; Common Interest | Email providing legal advice |
| PRIV114 | 5/4/2017 | Saeed Nourmand | Robert Silverstein; Jaymik Patel | | | GOODLES ADDENDUM - Common's Litigation, Interest Agreement...pdf | Privilege Withheld | | Attorney Client Privilege: Work Product; Common Interest | Email and document reflecting confidential Attorney Client communications |
| PRIV113 | 4/4/2017 | Saeed Nourmand | Jaymik Patel | Dan Wright | | SL 001 Central Area Pt. Comm's determination letter | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice |
| PRIV112 | 5/25/2017 | Robert Silverstein | Saeed Nourmand | Dan Wright | | SL57.001_Sent_1 13239 thru March 5-25-2015.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice |
| PRIV111 | 5/25/2017 | Robert Silverstein | Saeed Nourmand; Jaymik Patel | | | Silverstein Invoice Tunnel Landmark 001 | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice |
| PRIV110 | 5/25/2017 | Robert Silverstein | Saeed Nourmand; Jaymik Patel | | | Silverstein Invoice Tunnel Landmark 001 | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice |
| PRIV109 | 5/25/2017 | Robert Silverstein | Saeed Nourmand; Jaymik Patel | | | Silverstein Invoice Tunnel Landmark 001 | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV227 | 8/19/2016 | Jayesh Patel (jpatel@rubenlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Dan Myers (danmyers@robertsilversteinlaw.com) | (AlanTachiki@aol.com); Dan Wright (dan@robertsilversteinlaw.com); Alan Myers (danmyers@robertsilversteinlaw.com) | | RE: Sunset Landmark - Feet 1541 Wilcox Ave - Fees for Request for Modification | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein", Dan Wright", and Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV228 | 8/20/2016 | Jayesh Patel (jpatel@rubenlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Dan Myers (danmyers@robertsilversteinlaw.com) | (AlanTachiki@aol.com); Dan Wright (dan@robertsilversteinlaw.com); Alan Myers (danmyers@robertsilversteinlaw.com) | | RE: Sunset Landmark - Feet 1541 Wilcox Ave - Fees for Request for Modification | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein", Dan Wright", and Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV229 | 8/20/2016 | Jayesh Patel (jpatel@rubenlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com) | Saeed Nourmand (snourmand@nourmand.com); Dan Wright (dan@robertsilversteinlaw.com); Dan Myers (danmyers@robertsilversteinlaw.com); Alan Myers (danmyers@robertsilversteinlaw.com) | | Re: Sunset Landmark L- Feet 1541 Wilcox Ave - Fees for Request for Modification | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein", Dan Wright", and Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV230 | 8/20/2016 | Jayesh Patel (jpatel@rubenlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com) | Saeed Nourmand (snourmand@nourmand.com); (AlanTachiki@aol.com); Dan Wright (dan@robertsilversteinlaw.com); Alan Myers (danmyers@robertsilversteinlaw.com) | | Re: Sunset Landmark L- Feet 1541 Wilcox Ave - Fees for Request for Modification | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein", Dan Wright", and Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV231 | 4/24/2016 | Jayesh Patel (jpatel@rubenlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com) | Saeed Nourmand (snourmand@nourmand.com); Robert Silverstein (robert@robertsilversteinlaw.com); Alan Myers (danmyers@robertsilversteinlaw.com) | | Re: Sunset Landmark - Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein", Dan Wright", and Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV232 | 3/15/2017 | Jayesh Patel (jpatel@rubenlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com) | Saeed Nourmand (snourmand@nourmand.com); Alan Myers (danmyers@robertsilversteinlaw.com) | | RE: Silverstein Invoice (Sunset Landmark 0001) | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein", Dan Wright", and Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV233 | 8/26/2016 | Jayesh Patel (jpatel@rubenlaw.com) | Dan Wright (dan@robertsilversteinlaw.com); Robert Silverstein (robert@robertsilversteinlaw.com) | Dan Myers (danmyers@robertsilversteinlaw.com) | | RE: Sunset Landmark - Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein", Dan Wright", and Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV234 | 4/1/2017 | Saeed Nourmand (snourmand@nourmand.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Jayesh Patel (jpatel@rubenlaw.com) | Dan Wright (dan@robertsilversteinlaw.com) | | RE: 16-001 SUNSET LANDMARK'S REPLY TRIAL BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDATE | Privilege Withheld | | Attorney Client Privilege | Email chain regarding legal advice from Robert Silverstein", Dan Wright", Jayesh Patel", and Esther Kornfeld" regarding a CEQA lawsuit involving the Sunset Hotel and the Wilcox Hotel |
| PRIV235 | 2/26/2017 | Saeed Nourmand (snourmand@nourmand.com) | Jayesh Patel (jpatel@rubenlaw.com) | Mohamad Ezzat (jpatel@rubenlaw.com) | | Fw: 16-001 Reiss Contract | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein", Dan Wright", and Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV236 | 2/24/2017 | Saeed Nourmand (snourmand@nourmand.com) | Mohamad Ezzat (jpatel@rubenlaw.com) | | | Fw: 16-001 Reiss Contract | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein", Dan Wright", and Jayesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV237 | 2/27/2017 | Jayesh Patel (jpatel@rubenlaw.com) | Dan Wright (dan@robertsilversteinlaw.com) | Esther Kornfeld (estherk@robertsilversteinlaw.com); Robert Silverstein (robert@robertsilversteinlaw.com); Veronica Lobato (veronica@robertsilversteinlaw.co m) | | RE: 16-001 Sunset Landmark v. City of LA (Wilcox related Hearing of Friday Hearing | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein", Dan Wright", Jayesh Patel", and Esther Kornfeld" regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV238 | 11/22/2016 | Jayesh Patel (jpatel@rubenlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Robert Silverstein (robert@robertsilversteinlaw.com) | Alan Myers (danmyers@robertsilversteinlaw.com) | | RE: Sunset Landmark, status update | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Dan Wright", Robert Silverstein" regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV239 | 2/16/2017 | Jayesh Patel (jpatel@rubenlaw.com) | Dan Wright (dan@robertsilversteinlaw.com) | Robert Silverstein | | RE: 002 Tommie Hotel - Reiss Expert Report (at MND) | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting legal advice from Jayesh Patel" and Dan Wright" regarding settlement negotiations involving the Tommie Hotel and the Wilcox Hotel |
| PRIV240 | 2/16/2017 | Jayesh Patel (jpatel@rubenlaw.com) | Saeed Nourmand (snourmand@nourmand.com) | | | FW: SL 002 Tommie Hotel - Reiss Expert Report (at MND) | Privilege Withheld | SUNSET 00005720 SUNSET 00005731 | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel" and Dan Wright" regarding settlement negotiations involving the Tommie Hotel and the Wilcox Hotel |
| PRIV241 | 3/13/2017 | Robert Silverstein | Robert Silverstein | | | FW: SL 002 The Sunset Landmark Investment v. City of Los Angeles / 8C560803 | Privilege Withheld | SUNSET 00005819 SUNSET 00005867 | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein" and Jayesh Patel" regarding settlement negotiations involving the Wilcox Hotel |
| PRIV242 | 3/13/2017 | Robert Silverstein | Robert Silverstein | | | FW: SL 001 The Sunset Landmark Investment v. City of Los Angeles / 8C560803 | Privilege Withheld | SUNSET 00005816 SUNSET 00005818 | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein" and Jayesh Patel" regarding settlement negotiations involving the Wilcox Hotel |
| PRIV243 | 3/13/2017 | Robert Silverstein | Robert Silverstein | | | FW: SL 001 The Sunset Landmark Investment v. City of Los Angeles / 8C560803 | Privilege Withheld | SUNSET 00005810 SUNSET 00005815 | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein" and Jayesh Patel" regarding settlement negotiations involving the Wilcox Hotel |

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV142 | 4/2/2016 | Dan Wright | | | | | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright regarding a CEQA lawsuit involving the Relevant Group |
| PRIV143 | 4/3/2016 | Robert Silverstein | Dan Wright | | | 49; Sunset Landmark - 6-3-16 Redlined First Amended Petition.PDF to add DOLA 2A | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright regarding a CEQA lawsuit involving the Relevant Group |
| PRIV141 | 4/25/2017 | Mahammad Eyoond | | | | City of Los Angeles notice reverse priority | Privilege Withheld | SUNSET_00001822 SUNSET_00001823 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein |
| PRIV140 | 4/28/2017 | Samuel Rourmand | Samuel Rourmand | | | 90; Sunset Landmark - 6-3-16 Redlined First Amended Petition.PDF to add DOLA 2A | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein and regarding settlement negotiations involving the Relevant Group |
| PRIV139 | 4/21/2017 | Robert Silverstein | | | | 6-21-17 letter to Matt fields re settlement from LOCC.docx | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding settlement negotiations involving Wilcox Hotel |
| PRIV138 | 4/21/2017 | Robert Silverstein | | | | 31,000; 1141 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV137 | 4/20/2017 | Samuel Rourmand | | Jayesh Patel | | Re; 31,000; 1141 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV136 | 4/20/2017 | Jonvernus Rourmand contd | Veronica Lefron | | | Re; 31,000; 1141 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV135 | 4/20/2017 | Robert Silverstein | Jayesh Patel | | | Re; 31,000; 1141 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV134 | 4/20/2017 | Samuel Rourmand | | Jayesh Patel | | RW; 1141 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV133 | 4/19/2017 | Robert Silverstein | Samuel Rourmand | | | Re; 1141 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV132 | 4/18/2017 | Samuel Rourmand | | Jayesh Patel | | RW; 1141 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV131 | 4/15/2017 | Robert Silverstein | Jayesh Patel | | | 35,000; Sunset on Landmark's proposal for 1141 Wilcox development docs | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV130 | 4/15/2017 | Jonvernus Rourmand contd | | | | RW; 1141 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Robert Silverstein regarding the Wilcox Hotel |
| PRIV129 | 4/10/2017 | Samuel Rourmand | Sean Burton | | | 34,000; Sunset on Landmark's proposal for 1141 Wilcox development docs | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Robert Silverstein and Dan Wright regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV128 | 3/14/2017 | Robert Silverstein | Samuel Rourmand | Dan Wright; Veronica Lefron | | 34,000; Scan of ICF on Application, email before Dec 2nd | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein, Dan Wright, and Jillian Morales regarding a CEQA lawsuit involving the Relevant Group |
| PRIV124 | 3/14/2017 | Robert Silverstein | Samuel Rourmand | Sean Burton | | SS37 001; Sent; 111899 Re: December 1-6... 2017 Final.pdf | Privilege Withheld | SUNSET_00001836 SUNSET_00001837 SUNSET_00001838 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Wilcox Hotel |

# Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV164 | 6/1/2016 | Jayesh Patel (jpatel@subwine.com) | Dan Wright (dan@robertsilversteinlaw.com); Saeed Roummand (sroummand@mourid-mand.com); Robert Silverstein (robert@robertsilverstein-law.com) | Jillian Marcella (jillian@robertsilversteinlaw.com) | | RE: Sunset Landmark - 6-1-16 Redlined First Amended Petition FAP to add CRA LA | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Dan Wright", Robert Silverstein", and Jillian Marcella" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV165 | 6/1/2016 | Dan Wright (dan@robertsilversteinlaw.com) | Saeed Roummand (sroummand@mourid-mand.com); Robert Silverstein (robert@robertsilverstein-law.com) | Jillian Marcella (jillian@robertsilversteinlaw.com) | | Re: Sunset Landmark - 6-1-16 Redlined First Amended Petition FAP to add CRA LA | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright", Robert Silverstein", Jayesh Patel", and Jillian Marcella" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV166 | 6/1/2016 | Robert Silverstein (robert@robertsilverstein-law.com) | Saeed Roummand (sroummand@mourid-mand.com); Jayesh Patel (jpatel@subwine.com) | Dan Wright (dan@robertsilversteinlaw.com); Jillian Marcella (jillian@robertsilversteinlaw.com) | | Sunset Landmark - 6-1-16 Redlined First Amended Petition FAP to add CRA LA | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein", Jayesh Patel", and Jillian Marcella" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV167 | 6/1/2016 | Robert Silverstein | Saeed Roummand (sroummand@mourid-mand.com); Robert Silverstein (robert@robertsilverstein-law.com); Jayesh Patel (jpatel@subwine.com) | | | 6-1-16 FINAL First Amended Petition FAP to add CRA LA.docx | Privilege Withheld | | Attorney Client Privilege; Work Product | Draft court filing reflecting confidential Attorney Client communication with Dan Wright" and Robert Silverstein" prepared in the course of litigation regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV168 | 6/1/2016 | Jillian Marcella (jillian@robertsilversteinlaw.com); Robert Silverstein (robert@robertsilversteinlaw.com) | Jayesh Patel (jpatel@subwine.com) | Dan Wright (dan@robertsilversteinlaw.com) | | Re: Sunset Landmark's Verification for First Amended Petition | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jillian Marcella", Robert Silverstein", Jayesh Patel", and Dan Wright" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV169 | 6/1/2016 | Robert Silverstein | Jayesh Patel (jpatel@subwine.com) | Dan Wright (dan@robertsilversteinlaw.com) | | 5-31-16 Verification for FAP.docx | Privilege Withheld | | Attorney Client Privilege; Work Product | Draft court filing reflecting confidential Attorney Client communication with Jillian Marcella", Robert Silverstein", Jayesh Patel" and Dan Wright" prepared in the course of litigation regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV170 | 6/3/2016 | Robert Silverstein (robert@robertsilverstein-law.com) | Saeed Roummand (sroummand@mourid-mand.com); Jayesh Patel (jpatel@subwine.com) | Dan Wright (dan@robertsilversteinlaw.com); Jillian Marcella (jillian@robertsilversteinlaw.com) | | Sunset Landmark: Verification for First Amended Petition | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein", Jayesh Patel", Dan Wright", and Jillian Marcella" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV171 | 5/27/2016 | Jayesh Patel (jpatel@subwine.com) | Saeed Roummand (sroummand@mourid-mand.com); Jayesh Patel | Dan Wright (dan@robertsilversteinlaw.com) | | Sunset Landmark - Question re possible delft friendly plaintiff | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein", Jayesh Patel", and Dan Wright" regarding a CEQA lawsuit involving the Wilton Hotel. |
| PRIV172 | 3/16/2017 | Jayesh Patel (jpatel@subwine.com) | Saeed Roummand (sroummand@mourid-mand.com) | | | Fwd: Sunset Landmark 001 update | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel" and Robert Silverstein" regarding a CEQA lawsuit involving the Wilton Hotel. |
| PRIV173 | 5/6/2016 | Robert Silverstein (robert@robertsilverstein-law.com) | Saeed Roummand (sroummand@mourid-mand.com); Jayesh Patel (jpatel@subwine.com) | Dan Wright (dan@robertsilversteinlaw.com); Luther Kornfeld (luther@robertsilversteinlaw.com); Jillian Marcella (jillian@robertsilversteinlaw.com) | | RE: Sunset Landmark - Letter to CRA/LA, info re new filing | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Jayesh Patel", Dan Wright", Luther Kornfeld", and Jillian Marcella" regarding a CEQA lawsuit involving the Wilton Hotel. |
| PRIV174 | 5/6/2016 | Jayesh Patel (jpatel@subwine.com) | Saeed Roummand (sroummand@mourid-mand.com) | Dan Wright (dan@robertsilversteinlaw.com); Luther Kornfeld (luther@robertsilversteinlaw.com); Jillian Marcella (jillian@robertsilversteinlaw.com) | | RE: Sunset Landmark - Letter to CRA/LA, info re new filing | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Jayesh Patel", Dan Wright", Luther Kornfeld", and Jillian Marcella" regarding a CEQA lawsuit involving the Wilton Hotel. |
| PRIV175 | 5/6/2016 | Robert Silverstein (robert@robertsilverstein-law.com) | Saeed Roummand (sroummand@mourid-mand.com); Jayesh Patel (jpatel@subwine.com) | Dan Wright (dan@robertsilversteinlaw.com); Luther Kornfeld (luther@robertsilversteinlaw.com); Jillian Marcella (jillian@robertsilversteinlaw.com) | | Sunset Landmark - Letter to CRA/LA, info re new filing | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Jayesh Patel", Dan Wright", Luther Kornfeld", and Jillian Marcella" regarding a CEQA lawsuit involving the Wilton Hotel. |
| PRIV176 | 12/9/2015 | Rachelle DeCastro (rdecastro@subwine.com) | Saeed Roummand (sroummand@mourid-mand.com) | Jayesh Patel (jpatel@subwine.com) | | PLUM Committee Public Hearing - December 15, 2015 @ 1:30 pm | Privilege Withheld | SUNSET_00001466 SUNSET_00000133 SUNSET_00000155 | Attorney Client Privilege | Email providing information to assist in rendering legal advice from Jayesh Patel" regarding a CEQA lawsuit involving the Wilton Hotel. |
| PRIV177 | 12/9/2015 | Rachelle DeCastro (rdecastro@subwine.com) | Saeed Roummand (sroummand@mourid-mand.com) | Jayesh Patel (jpatel@subwine.com) | | Settlement Agreement and Mutual General Release (Landmark & Co-Castle & Nicholson, LLP) | Privilege Withheld | | Attorney Client Privilege | Email reflecting confidential Attorney Client communications with Jayesh Patel" regarding settlement negotiations involving the Relevant Group. |
| PRIV178 | 12/9/2015 | Jayesh Patel | Saeed Roummand (sroummand@mourid-mand.com) | Jayesh Patel (jpatel@subwine.com) | | Settlement Agreement and Mutual General Release.pdf | Privilege Withheld | | Attorney Client Privilege; Work Product | Draft agreement reflecting confidential Attorney Client communications with Jayesh Patel" prepared in the course of litigation regarding settlement negotiations involving the Relevant Group. |
| PRIV179 | 8/20/2016 | Jayesh Patel (jpatel@subwine.com) | Dan Wright (dan@robertsilversteinlaw.com); Saeed Roummand (sroummand@mourid-mand.com); Jillian Bones (jillian@robertsilversteinlaw.com); Robert Silverstein (robert@robertsilversteinlaw.com) | | | RE: Re: Notice of Construction Activity at 1541 N Wilcox (Wilton Hotel) Permit Not Issued and Under Appeal | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel", Dan Wright", Jillian Bones", Luther Kornfeld", and Robert Silverstein" regarding a CEQA lawsuit involving the Wilton Hotel. |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV2100 | 8/30/2016 | Dan Wright | Samuel Roumand; Jarysh Patel | | | RE: Notice of Construction Activity at 1145 N. Wilcox (Abbey Hotel Permit Not Issued and Under Appeal) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice |
| PRIV2099 | 3/18/2015 | Allen Okamoto | Fred Cohen | Samuel Roumand | | | Privilege Withheld | | Attorney Client Privilege | Email regarding |
| PRIV2098 | 3/18/2015 | Fred Cohen | | | RE: 1145 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2097 | 4/6/2017 | Samuel Roumand | Robert Silverstein | | Re: Sur 1141 Wilcox Hotel | Privilege Redact | | Attorney Client Privilege | Email |
| PRIV2096 | 4/25/2017 | Mohamad Siwani | | Samuel Roumand | Notice of Public Hearing 2015-1145 N Wilcox | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2095 | 4/25/2017 | Jarysh Patel | Samuel Roumand | Dan Wright | FW: SL-001: Memo to Saeed and Jay re 4-25-17 CalTrans Matt Nieis | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2094 | 4/25/2017 | Jarysh Patel | Samuel Roumand | Dan Wright | 5-2-17 Final Supplemental Letter SD Appeal | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2093 | 5/2/2017 | Dawid Wright | | Dan Wright | RE: SL-001: Memo to Saeed and Jay re 4-25-17 CalTrans Matt Nieis | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2092 | 5/12/2017 | Jarysh Patel | | Saeed Roumand | It Said Hennepin Properties.pdf | Privilege Withheld | | Attorney Client Privilege; Work Product | |
| PRIV2091 | 5/16/2017 | Saeed Roumand | | Dan Wright | Re: SL-001: Memo re on parts from Sat Friday | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2090 | 5/24/2013 | Robert Silverstein | | | Re: SL-001: Memo set align.com | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2089 | 5/20/2017 | Robert Silverstein | | | City of Los Angeles Letter of Determination May 11, 2017 | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2088 | 5/28/2012 | Robert Silverstein | Dan Wright | | RE: SL-001: Unsent set align.com | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2087 | 6/27/2017 | Mohamad Siwani | Saeed Roumand | | RE: SL Latence | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2086 | 6/27/2017 | Jarysh Patel | Dan Wright | | | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2085 | 4/5/2017 | Robert Silverstein | Dan Wright | | SL-001: Tommie Hotel/Draft Common Interest Agreement | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2084 | 4/7/2017 | Jarysh Patel | Dan Wright | | RE: SL-001: Tommie Hotel/Draft Common | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2083 | 4/7/2017 | Robert Silverstein | Dan Wright | | RE: SL-001: Tommie Hotel/Draft Common | Privilege Withheld | | Attorney Client Privilege | |
| PRIV2082 | 4/7/2017 | Jarysh Patel | Robert Silverstein | | RE: SL-001: Tommie Hotel/Draft Common Interest Agreement | Privilege Withheld | | Attorney Client Privilege | |

# Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV201 | 5/7/2017 | Jayesh Patel (jpatel@robertlew.com) | Robert Silverstein (robert@robertsilversteinlaw.co m); Tomme Nordheil (tomme@nordheilmod.com) | Dan Wright (dan@robertsilversteinlaw.com) | | RE: SL-002: Tomme Hotel/Draft Common Litigation Interest Agreement | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel*, Robert Silverstein*, Dan Wright* and reflecting common litigation interest regarding a CLOA lawsuit involving the Tomme Hotel |
| PRIV202 | 5/9/2017 | Robert Silverstein (robert@robertsilversteinlaw.co m) | Mohamad Izrawi (mizrawi@nourmod.com) | | | SL balance | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* and Esther Kornfeld* regarding a CLOA lawsuit involving the Tomme Hotel and the Wilton Hotel |
| PRIV203 | 5/16/2017 | Robert Silverstein (robert@robertsilversteinlaw.co m) | Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@robertlew.com) | Dan Wright (dan@robertsilversteinlaw.com); Esther Kornfeld (esther@robertsilversteinlaw.com); Veronica Lebron (veronica@robertsilversteinlaw.co m) | | SL-001: Matt Heala Meeting Request | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Jayesh Patel*, Dan Wright*, Esther Kornfeld* regarding a CLOA lawsuit involving the Wilton Hotel |
| PRIV204 | 5/16/2017 | Jayesh Patel (jpatel@robertlew.com) | Robert Silverstein (robert@robertsilversteinlaw.co m); Saeed Nourmand (snourmand@nourmand.com) | Dan Wright (dan@robertsilversteinlaw.com); Esther Kornfeld (esther@robertsilversteinlaw.com); Veronica Lebron (veronica@robertsilversteinlaw.co m) | | RE: SL-001: Matt Heala Meeting Request | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Jayesh Patel*, Dan Wright*, Esther Kornfeld*, and Veronica Lebron*, regarding a CLOA lawsuit involving the Wilton Hotel |
| PRIV205 | 6/16/2017 | Robert Silverstein (robert@robertsilversteinlaw.co m) | Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@robertlew.com) | Dan Wright (dan@robertsilversteinlaw.com); Veronica Lebron (veronica@robertsilversteinlaw.co m) | | RE: SL-001: Matt Heala Meeting Request | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Jayesh Patel*, Dan Wright*, Esther Kornfeld*, and Veronica Lebron* regarding a CLOA lawsuit involving the Wilton Hotel |
| PRIV206 | 6/17/2017 | Robert Silverstein (robert@robertsilversteinlaw.co m) | Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@robertlew.com) | Dan Wright (dan@robertsilversteinlaw.com) | | SL-001: 5-16-17 FINAL for coding supplemental opening trial brief | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Jayesh Patel*, Dan Wright* and Esther Kornfeld* prepared in the course of litigation regarding a CLOA lawsuit involving the Wilton Hotel |
| PRIV207 | 6/17/2017 | Robert Silverstein | | | | 6-16-17 FINAL for coding supplemental opening trial brief.pdf | Privilege Withheld | | Work Product | Draft court filing providing legal advice from Robert Silverstein*, Jayesh Patel*, Dan Wright*, and Esther Kornfeld* prepared in the course of litigation regarding a CLOA lawsuit involving the Wilton Hotel |
| PRIV208 | 6/21/2017 | Jayesh Patel (jpatel@robertlew.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Saeed Nourmand (snourmand@nourmand.com); Dan Wright (dan@robertsilversteinlaw.com) | Dan Wright (dan@robertsilversteinlaw.com); Esther Kornfeld (esther@robertsilversteinlaw.com) | | RE: SL-001: Tomme Hotel - Common Litigation Interest Agreement | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel*, Robert Silverstein*, Dan Wright*, and Esther Kornfeld* regarding a CLOA lawsuit involving the Tomme Hotel |
| PRIV209 | 5/16/2016 | Saeed Nourmand (snourmand@nourmand.com) | Mohamad Izrawi (mizrawi@nourmod.com) | | | For: Silverstein invoice (Tomek Landmark) | Privilege Withheld | | Attorney Client Privilege | Email reflecting confidential attorney client communications with Robert Silverstein*, Jayesh Patel* regarding a CLOA lawsuit involving the Wilton Hotel |
| PRIV210 | 5/16/2016 | Robert Silverstein | Mohamad Izrawi (mizrawi@nourmod.com) | | | SA577-001, invoice.12 FINAL, 5-17-2016.pdf | Privilege Withheld | | Work Product | Letter prepared in the course of litigation by Robert Silverstein* regarding a CLOA lawsuit involving the Wilton Hotel |
| PRIV211 | 3/7/2016 | Saeed Nourmand (snourmand@nourmand.com) | Mohamad Izrawi (mizrawi@nourmod.com) | | | For Sunset Landmark: Draft petition for your review | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Jayesh Patel*, Dan Wright* and Lillian Manavell* regarding a CLOA lawsuit involving the Wilton Hotel |
| PRIV212 | 3/2/2016 | Robert Silverstein | Saeed Nourmand (snourmand@nourmand.com); Robert Silverstein (robert@robertsilversteinlaw.com); Jayesh Patel (jpatel@robertlew.com) | Dan Wright (dan@robertsilversteinlaw.com); Esther Kornfeld (esther@robertsilversteinlaw.com) | | 3-2-16 Draft Petition for Writ of Mandate.docx | Privilege Withheld | | Attorney-Client Privilege; Work Product | Draft court filing providing legal advice from Robert Silverstein*, Jayesh Patel* and Lillian Manavell* prepared in the course of litigation regarding a CLOA lawsuit involving the Wilton Hotel |
| PRIV213 | 4/12/2016 | Saeed Nourmand (snourmand@nourmand.com) | Jayesh Patel (jpatel@robertlew.com); Robert Silverstein (robert@robertsilversteinlaw.com) | Dan Wright (dan@robertsilversteinlaw.com); Esther Kornfeld (esther@robertsilversteinlaw.com) | | Re: Sunset Landmark- Assigned to Judge Chua | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel*, Robert Silverstein*, Dan Wright*, and Esther Kornfeld* regarding a CLOA lawsuit involving the Wilton Hotel |
| PRIV214 | 4/26/2017 | Saeed Nourmand (snourmand@nourmand.com) | Robert Silverstein (robert@robertsilversteinlaw.com) | Saeed Nourmand (snourmand@nourmand.com) | | Re: SL-001: Memo to Saeed and Jay re 4-25-17 Call from Matt Heala | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Robert Silverstein* and Jayesh Patel* regarding a CLOA lawsuit involving the Tomme Hotel |
| PRIV215 | 5/11/2017 | Saeed Nourmand (snourmand@nourmand.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Jayesh Patel (jpatel@robertlew.com) | Dan Wright (dan@robertsilversteinlaw.com); Esther Kornfeld (esther@robertsilversteinlaw.com) | | Re: SL-002: Tomme Hotel 6-9-17 deadline to file CLOA lawsuit | Privilege Withheld | | Attorney Client Privilege | Email requesting and regarding legal advice from Robert Silverstein* and Jayesh Patel* regarding a CLOA lawsuit involving the Tomme Hotel |
| PRIV216 | 5/17/2017 | Robert Silverstein | Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@robertlew.com) | | | RE: Tomme ATTY-CLIENT AND WORK PRODUCT PRIVILEGED | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, and Jayesh Patel* regarding a CLOA lawsuit involving the Tomme Hotel and the Wilton Hotel |
| PRIV217 | 5/18/2017 | Saeed Nourmand (snourmand@nourmand.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Jayesh Patel (jpatel@robertlew.com) | Saeed Nourmand (snourmand@nourmand.com) | | RE: Tomme ATTY-CLIENT AND WORK PRODUCT PRIVILEGED | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Robert Silverstein*, and Jayesh Patel* regarding a CLOA lawsuit involving the Tomme Hotel and the Wilton Hotel |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

# Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV2186 | 11/18/2015 | Jayesh Patel | | | | 7769 [Appeal Form].pdf | Privilege Withheld | SUNSET_00001185-SUNSET_00001185 | Work Product | Draft court filing prepared in the course of litigation by Jayesh Patel* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2187 | 9/4/2015 | Saeed Nourmand (consumeradt@nourmand.com) | Jayesh Patel (jpatel@jayeslaw.com) | | | FW: Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email reflecting confidential Attorney Client communication with Saeed Nourmand* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2188 | 9/4/2015 | Saeed Nourmand (consumeradt@nourmand.com) | Jayesh Patel (jpatel@jayeslaw.com) | | | FW: 1541 Wilcox Hotel LLC | Privilege Withheld | SUNSET_00001970-SUNSET_00002082 | Attorney Client Privilege | Email providing information to assist in rendering legal advice from Saeed Nourmand* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2189 | 10/27/2015 | Saeed Nourmand (consumeradt@nourmand.com) | Jayesh Patel (jpatel@jayeslaw.com) | | | FW: 1541 Wilcox Hotel LLC | Privilege Withheld | SUNSET_00002812-SUNSET_00002820 | Attorney Client Privilege | Email providing information to assist in rendering legal advice from Saeed Nourmand* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2190 | 10/27/2015 | Saeed Nourmand (consumeradt@nourmand.com) | Jayesh Patel (jpatel@jayeslaw.com) | | | FW: 1541 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email reporting legal advice from Jayesh Patel* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2191 | 10/27/2015 | Saeed Nourmand (consumeradt@nourmand.com) | Jayesh Patel (jpatel@jayeslaw.com) | | | FW: 1541 Wilcox | Privilege Withheld | | Attorney Client Privilege | Email chain reporting legal advice from Jayesh Patel* regarding a CCUA lawsuit involving the Relevant Group the Wilcox Hotel |
| PRIV2192 | 10/27/2015 | Saeed Nourmand (consumeradt@nourmand.com) | Jayesh Patel (jpatel@jayeslaw.com) | | | FW: Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email requesting legal advice from Jayesh Patel* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2193 | 10/27/2015 | Saeed Nourmand (consumeradt@nourmand.com) | Jayesh Patel (jpatel@jayeslaw.com) | | | FW: Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2194 | 11/5/2015 | Saeed Nourmand (consumeradt@nourmand.com) | | | | ATTACHMENT (from 7769).docx | Privilege Withheld | SUNSET_00001981-SUNSET_00001981 | Work Product | Draft court filing providing legal advice from Jayesh Patel* prepared in the course of litigation regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2195 | 11/4/2015 | Jayesh Patel | | | | 7769 [Appeal Form].pdf | Privilege Withheld | SUNSET_00001983-SUNSET_00001983 | Work Product | Draft court filing providing legal advice from Jayesh Patel* prepared in the course of litigation regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2196 | 11/5/2015 | Jayesh Patel | | | | ATTACHMENT (from 7769).docx | Privilege Withheld | SUNSET_00001990-SUNSET_00001990 | Work Product | Draft court filing prepared in the course of litigation by Jayesh Patel* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2197 | 11/18/2015 | Jayesh Patel | | | | 7769 [Appeal Form].pdf | Privilege Withheld | SUNSET_00001991-SUNSET_00001991 | Work Product | Draft court filing prepared in the course of litigation by Jayesh Patel* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2198 | 9/2/2011 | Saeed Nourmand (consumeradt@nourmand.com) | Zigalaw@zigalawlaw.com | Saeed Nourmand (consumeradt@nourmand.com); Rhodenas@thomas.net | | FW: Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Trent Green* regarding settlement negotiations involving the Wilcox Hotel |
| PRIV2199 | 5/15/2017 | Saeed Nourmand (consumeradt@nourmand.com) | Jayesh Patel (jpatel@jayeslaw.com) | Saeed Nourmand (consumeradt@nourmand.com); Rhodenas@thomas.net | | Settlement Disruptions Of Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2200 | 5/30/2017 | STEPHAN BOXELVARD (sboxelvard208@gmail.com) | Jpatel@bluelaw.com | Saeed Nourmand (consumeradt@nourmand.com); Rhodenas@thomas.net | | FwE: Settlement Disruptions Of Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2201 | 5/31/2017 | Jayesh Patel (jpatel@jayeslaw.com) | Jpatel@bluelaw.com | | | RE: Settlement Disruptions Of Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel* and Robert Silverstein* regarding settlement negotiations involving the Wilcox Hotel |
| PRIV2202 | 5/9/2020 | Jayesh Patel | Saeed Nourmand (consumeradt@nourmand.com); sboxelvard208@gmail.com | | | 1-19-2011 stop extending time to file for motion and to stay motion on memorandum of costs.111.docx | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* and Jayesh Patel* regarding a CCUA lawsuit involving the license dispute |
| PRIV2203 | 8/8/2011 | Jayesh Patel | | Robert Silverstein (correy@robertsilversteinlaw.com) | | T&E payments and Trust account issues | Privilege Withheld | | Work Product | Email providing legal advice from Robert Silverstein* and Jayesh Patel* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV270 | 3/19/2011 | Robert Silverstein (correy@robertsilversteinlaw.com) | Matthew@nourmand-incohand.com | Robert Silverstein (correy@robertsilversteinlaw.com) | | TSE payments and trust account issues | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Teresa Silverstein* and Robert Silverstein* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2172 | 8/29/2018 | Robert Silverstein | | | | T&E Check Registry By_Trust_Acct.pdf | Privilege Withheld | | Attorney Client Privilege | Letter providing legal advice from Robert Silverstein* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2173 | 8/29/2018 | Robert Silverstein | | | | [A577.00]_Soeal_112946_a.2.016.pdf | Privilege Withheld | | Attorney Client Privilege | Letter providing legal advice from Robert Silverstein* and Either Kronfeld* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2174 | 8/29/2018 | Robert Silverstein | | | | [A577.00]_Soeal_111419_a.2.026.pdf | Privilege Withheld | | Attorney Client Privilege | Letter providing legal advice from Robert Silverstein* and Either Kronfeld* regarding a CCUA lawsuit involving the Wilcox Hotel |
| PRIV2175 | 8/29/2018 | Robert Silverstein | | | | 08_28_2018 LI_005 Visp 7749.pdf | Privilege Withheld | | Attorney Client Privilege | Letter providing legal advice from Robert Silverstein* and Either Kronfeld* regarding settlement negotiations involving the Wilcox Hotel |
| PRIV2176 | 8/29/2018 | Robert Silverstein | | | | 08_28_2018 LI_005 Visp 7749.pdf | Privilege Withheld | | Attorney Client Privilege | |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV293 | 5/31/2017 | Robert Silverstein | Mohamad Yerewi | | | RE: Electric Invoices | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Toronto Hotel and the Wilcox Hotel. |
| PRIV294 | 5/25/2017 | Robert Silverstein | | Esther Koroldai | | Silverstein Invoice (Sunset Landmark 001) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein, Joseph Polak*, Esther Koroldai*, and Teresa Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV295 | 5/25/2017 | Robert Silverstein | | | | SR37.001_Sent_131319 for March 5-25, 2013.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein*, Esther Koroldai*, Dan Wright*, and Susan Durban* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV296 | 3/21/2017 | Joseph Polak | | | | RE: Silverstein Invoice (Sunset Landmark 001) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Joseph Polak* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV297 | 3/21/2017 | Robert Silverstein | Mohamad Yerewi | | | 136137.001_Sent_131184 thru January 2-22-2017.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein*, Esther Koroldai*, Dan Wright*, Jillian Reyes*, and James Link* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV298 | 3/21/2017 | Robert Silverstein | | Esther Koroldai | | Silverstein Invoice (Sunset Landmark 001) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Teresa Silverstein*, and Veronica Lebron* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV299 | 3/21/2017 | Robert Silverstein | | | | 136138.001_Sent_131184 thru January 2-22-2017.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein*, Esther Koroldai*, Dan Wright*, and Jillian Reyes* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV300 | 3/14/2017 | Robert Silverstein | Mohamad Yerewi | | | Silverstein Invoice (Sunset Landmark 001) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Joseph Polak*, Esther Koroldai*, Teresa Silverstein*, and Veronica Lebron* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV301 | 3/14/2017 | Robert Silverstein | Mohamad Yerewi | | | SR37.001_Sent_131189 thru December 14-2017 Final.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein*, Esther Koroldai*, Dan Wright*, Jillian Reyes*, and James Link* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV302 | 1/12/2017 | Esther Koroldai | Mohamad Yerewi | | | RE: Silverstein Invoice (Sunset Landmark) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Esther Koroldai*, and Teresa Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV303 | 1/12/2017 | Esther Koroldai | Mohamad Yerewi | | | RE: Silverstein Invoice (Sunset Landmark) (Out of Office Reply) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Esther Koroldai* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV304 | 1/12/2017 | Joseph Polak | Mohamad Yerewi | | | Fwd: Silverstein Invoice (Sunset Landmark) | Privilege Withheld | SUNSET 00000166 SUNSET 00000166 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Esther Koroldai*, Dan Wright*, Jillian Reyes*, James Link* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV305 | 1/12/2017 | Joseph Polak | | | | SR37.001_Sent_131100_through November 2016, 1-11-17.pdf | Privilege Withheld | SUNSET 00000167 SUNSET 00000169 | Attorney Client Privilege | Report providing legal advice from Robert Silverstein*, Esther Koroldai*, Dan Wright*, Jillian Reyes*, and James Link* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV306 | 1/12/2017 | Robert Silverstein | Mohamad Yerewi | | | Silverstein Invoice (Sunset Landmark) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Joseph Polak*, Esther Koroldai*, Teresa Silverstein*, and Jillian Reyes* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV307 | 1/12/2017 | Robert Silverstein | | | | SR37.001_Sent_131100_through November 2016, 1-11-17.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein*, Esther Koroldai*, Dan Wright*, and Jillian Reyes* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV308 | 9/13/2016 | Saeed Nourmand | Mohamad Yerewi | | | Fwd: Silverstein Invoice (Sunset Landmark) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Joseph Polak*, Esther Koroldai*, Dan Wright*, and Jillian Reyes* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV309 | 9/13/2016 | Robert Silverstein | | | | ADV: City of Los Angeles & 1541 Wilcox Hotel Project.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein*, Esther Koroldai*, Dan Wright*, Jillian Reyes*, and Jalene Parrish* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV310 | 5/24/2016 | Robert Silverstein | | | | The Silverstein Law Firm Contract | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV311 | 5/24/2016 | Nicholle DeCuilio | Mohamad Yerewi | | | The Silverstein Law Firm.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV312 | 2/21/2016 | Saeed Nourmand | Saeed Nourmand | | | The Silverstein Law Firm.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV313 | 2/21/2016 | Robert Silverstein | | | | The Silverstein Law Firm.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel. |

Page 15 of 37

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV16 | 1/26/2016 | Thomas G. Zicher | | | | | | | | |
| PRIV15 | 3/4/2016 | Jayesh Patel | | | | | | | | |
| PRIV14 | 1/26/2016 | Jayesh Patel | Mohnish Israni | | | | | | | |
| PRIV13 | 3/4/2016 | Thomas G. Zicher | | | | | | | | |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV196 | 1/24/2018 | Robert Silverstein | | | | 01-05-2018 SL-002 Vou 2740.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Teresa Silverstein" and Robert Silverstein" regarding a CEQA lawsuit involving the Villou Hotel |
| PRIV197 | 1/26/2018 | Robert Silverstein | | | | SA577.001_Sonsl_1314:1 De November 2017 12-19-2017.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Teresa Silverstein" and Robert Silverstein" regarding a CEQA lawsuit involving the Villou Hotel |
| PRIV198 | 1/26/2018 | Robert Silverstein | | | | SA577.001_Sonsl_1314:1 De November 2012 12-19-2017.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Teresa Silverstein" regarding a CEQA lawsuit involving the Villou Hotel |
| PRIV199 | 6/5/2017 | Mohannad Emami mtsrms@hourmand.com] | Robert Silverstein [rsilver@silverstinelaw.com] | [James Baroni] [rsilver@silverstinelaw.com] ; Teresa Silverstein [teresa@silverstinelaw.com] ; Saeed Hourmand [hourmand@hourmand.com] | | | RE: SL balance | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Robert Silverstein", Esther Kornfeld", and Teresa Silverstein" regarding a CEQA lawsuit involving the Tsomes Hotel and Villou Hotel |
| PRIV200 | 6/1/2017 | Mohannad Emami mtsrms@hourmand.com] | Robert Silverstein [rsilver@silverstinelaw.com] | [jpatel@bunkerdonlaw.com]; Saeed Hourmand [hourmand@hourmand.com] | Mohannad Emami [mtsrms@hourmand.com] | | RE: SL: Sentrex Invoices | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Robert Silverstein" regarding the Tsomes Hotel and the Villou Hotel |
| PRIV201 | 4/19/2017 | Mohannad Emami mtsrms@hourmand.com] | [rsilver@silverstinelaw.com]; Saeed Hourmand [hourmand@hourmand.com] | | | Notice of Public Hearing 1525-1541 N Wilcox | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Robert Silverstein" and Joyesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV202 | 1/10/2017 | Mohannad Emami mtsrms@hourmand.com] | Dan Wright [dan@mrobertsilverstein.com]; Jeffer Kornfeld [esther@silverstinelaw.com]; [JRoberts@bunkerdonlaw.com]; Joyesh Patel [jpatel@bunkerdonlaw.com] | Esther Kornfeld [esther@silverstinelaw.com]; Jillian Reyes [jillian@silverstinelaw.com]; Robert Silverstein [rsilver@silverstinelaw.com] | | | RE: Sunset Landmark: City of LA Notice 89516 Tramote Hotel LLC) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright", Robert Silverstein", Esther Kornfeld", Jillian Reyes", and Joyesh Patel" regarding a CEQA lawsuit involving the Tsomes Hotel |
| PRIV203 | 1/10/2017 | Mohannad Emami mtsrms@hourmand.com] | Robert Silverstein [rsilver@silverstinelaw.com]; Saeed Hourmand [hourmand@hourmand.com]; Joyesh Patel [jpatel@bunkerdonlaw.com] | Esther Kornfeld [esther@silverstinelaw.com]; [Robert@silverstinelaw.com]; Teresa Silverstein [teresa@silverstinelaw.com] | | | RE: Sunset Landmark: City of LA Notice 89516 Tramote Hotel LLC) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Joyesh Patel", Esther Kornfeld", Jillian Reyes", and Teresa Silverstein" regarding a CEQA lawsuit involving the Villou Hotel |
| PRIV204 | 1/12/2017 | Mohannad Emami mtsrms@hourmand.com] | Robert Silverstein [rsilver@silverstinelaw.com]; Saeed Hourmand [hourmand@hourmand.com]; Joyesh Patel [jpatel@bunkerdonlaw.com] | Esther Kornfeld [esther@silverstinelaw.com]; [Robert@silverstinelaw.com]; Teresa Silverstein [teresa@silverstinelaw.com] | | | RE: Silverstein Invoice (Current Landmark) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Joyesh Patel", Esther Kornfeld", Jillian Reyes", and Teresa Silverstein" regarding a CEQA lawsuit involving the Villou Hotel |
| PRIV205 | 5/26/2016 | Robert Silverstein | | | | The Silverstein Law Firm | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Joyesh Patel" regarding a CEQA lawsuit involving the Villou Hotel |
| PRIV206 | 5/26/2016 | Robert Silverstein | | | | ADV: City of Los Angeles & 1541 Wilcox Hotel Project.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Joyesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV247 | 1/25/2016 | Mohannad Emami mtsrms@hourmand.com] | [jpatel@bunkerdonlaw.com] | Saeed Hourmand [hourmand@hourmand.com] | | | 1541 Wilcox Hotel | Privilege Withheld | SUNSET_00000243 SUNSET_00000244 | Attorney Client Privilege | Email chain providing legal advice from Joyesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV248 | 12/24/2015 | Mohannad Emami mtsrms@hourmand.com] | [jpatel@bunkerdonlaw.com] | Saeed Hourmand [hourmand@hourmand.com] | | | Public Hearing January 26, 2016 | Privilege Withheld | SUNSET_00000234 SUNSET_00000237 | Attorney Client Privilege | Email providing information to assist in rendering legal advice from Joyesh Patel" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV249 | 12/22/2016 | Rachelle DeCastro [rachelle@hourmand.com] | Saeed Hourmand [hourmand@hourmand.com] | Mohannad Emami [mtsrms@hourmand.com] | | | Wilcox Hotel/Silverstein Law Firm Contract | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV250 | 2/22/2016 | Robert Silverstein | | | | The Silverstein Law Firm.pdf | Privilege Withheld | | Attorney Client Privilege | Letter providing legal advice from Robert Silverstein" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV251 | 2/22/2016 | Rachelle DeCastro [rachelle@hourmand.com] | Saeed Hourmand [hourmand@hourmand.com] | Mohannad Emami [mtsrms@hourmand.com] | | | The Silverstein Law Firm Contract | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV252 | 2/22/2016 | Robert Silverstein | | | | The Silverstein Law Firm.pdf | Privilege Withheld | | Attorney Client Privilege | Letter providing legal advice from Robert Silverstein" regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV253 | 8/1/2018 | Ramesh, Jessica (US - Costa Mesa) [jkuranda@deloitte.com] | Mohannad Emami [mtsrms@hourmand.com]; [jpatel@deloitte.com] | Patel, Dina (US - Costa Mesa) [dpatel@deloitte.com] | | | FW: Novermeol - 2018 SL SM Settlement Payment | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Joyesh Patel" regarding settlement negotiations involving the Redwood Group |
| PRIV254 | 7/24/2018 | Patel, Dina (US - Costa Mesa) [dpatel@deloitte.com] | [jpatel@deloitte.com] | Karamanis, Nicole (US - Costa Mesa) [nkaramanis@deloitte.com] | | | FW: Novermeol - 2018 SL SM Settlement Payment | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Joyesh Patel" regarding settlement negotiations involving the Redwood Group |
| PRIV255 | 7/23/2018 | Saeed Hourmand [hourmand@hourmand.com] | Dan Wright [dan@mrobertsilverstein.com]; Robert Silverstein [rsilver@silverstinelaw.com]; [jpatel@deloitte.com]; Joyesh Patel [jpatel@bunkerdonlaw.com] | [mtsrms@hourmand.com]; Nora [nora@bunkerdonlaw.com]; Veronica Laforo [veronica@bunkerdonlaw.com]; Saeed Hourmand [hourmand@hourmand.com] | | | | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Dan Wright", Robert Silverstein", Joyesh Patel", Nora Soghbayan", and Veronica Laforo" regarding a CEQA lawsuit involving the Redwood Group |
| PRIV256 | 7/11/2018 | Joyesh Patel [jpatel@deloitte.com] | Dan Wright [dan@mrobertsilverstein.com] | [rsilver@silverstinelaw.com]; Saeed Hourmand [hourmand@hourmand.com] | | | Re: Selma Hotel Rendering | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Joyesh Patel", Dan Wright", and Robert Silverstein" regarding a CEQA lawsuit involving the Selma Hotel |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV578 | 3/21/2017 | Jayesh Patel (jpatel@saberlaw.com) | Mohamad Yarpez (mnirvana@nourmand.com); Saeed Nourmand (snourmand@nourmand.com) | | | VW_Silverstein invoice (Sunset Landmark 001) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV579 | 3/21/2017 | Robert Silverstein | | | | E3618 001_Sunset_113184 thru January 3 22-2017.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communications with Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV580 | 5/19/2016 | Saeed Nourmand (snourmand@nourmand.com) | Mohamad Yarpez (mnirvana@nourmand.com) | | | VW_Silverstein invoice (Sunset Landmark) | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV581 | 5/18/2016 | Robert Silverstein | | | | SR577 001_S4ml_113963_5-17-2016.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communications with Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV582 | 2/26/2019 | Brenda J Huizing (bhuizing@saberlaw.com) | Mohamad Yarpez (mnirvana@nourmand.com) | Maureen Muck (mmuck@saberlaw.com) | | 21272_Sunset Landmark Investment LLC invoice | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Jayesh Patel* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV583 | 2/29/2019 | Thomas Zolezzi | | | | New_2019 Sunset Landmark.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communications with Jayesh Patel* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV584 | 2/29/2019 | Thomas Zolezzi | | | | New_2019-Zolub-Custom Inv.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communications with Jayesh Patel* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV585 | 1/20/2019 | Thomas Zolezzi | | | | New_2019 Wilcox.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communications with Jayesh Patel* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV586 | 2/27/2017 | Mohamad Yarpez (mnirvana@nourmand.com) | Mohamad Yarpez (mnirvana@nourmand.com) | | | RE:SL-002: Noise Contract | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV587 | 3/17/2015 | Saeed Nourmand (snourmand@nourmand.com) | Robin DeVita (rdevita@nourmand.com) | | | RE:SL-002: Noise Contract | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with third party regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV588 | 3/21/2015 | Fred Gaines | | | | Fully Executed Attorney Employment Agreement Sunset Landmark.pdf | Privilege Withheld | | Attorney Client Privilege | Agreement reflecting confidential Attorney Client communications with Gaines & Stacey LLP* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV589 | 3/17/2015 | Mohamad Yarpez (mnirvana@nourmand.com) | Jayesh Patel (jpatel@saberlaw.com) | | | RE:SL-002: Noise Contract | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Jayesh Patel* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV590 | 2/11/2016 | Jayesh Patel (jpatel@saberlaw.com) | Saeed Nourmand (snourmand@nourmand.com) | | | Fwd: CORRECTION Re: Wilcox(note) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV591 | 1/30/2016 | Saeed Nourmand (snourmand@nourmand.com) | Saeed Nourmand (snourmand@nourmand.com) | | | Fwd: ZLD - Sunset Landmark - Wilcox Hotel - status update // preliminary litigation analysis | Privilege Withheld | SUNSET_0000063 to SUNSET_0000068 | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV592 | 3/30/2016 | Stephen Weaver | | | | A7700001.htm | Privilege Withheld | SUNSET_0000069 to SUNSET_0000088 | Attorney Client Privilege | Undue providing legal advice from Stephen Weaver* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV593 | 1/30/2016 | Saeed Nourmand | | | | C013 Recommendation to Pay/Rep Quarrel.pdf | Privilege Withheld | SUNSET_0000089 to SUNSET_0000098 | Attorney Client Privilege | Agreement reflecting confidential Attorney Client communications with Jayesh Patel* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV594 | 9/27/2015 | Saeed Nourmand (snourmand@nourmand.com) | Jayesh Patel (jpatel@saberlaw.com) | | | VW_Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV595 | 9/17/2015 | Saeed Nourmand (snourmand@nourmand.com) | Jayesh Patel (jpatel@saberlaw.com) | | | VW_1541 Wilcox | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV596 | 6/4/2019 | Saeed Nourmand (snourmand@nourmand.com) | Jayesh Patel (jpatel@saberlaw.com); Jay patel (jay.patel@saberlaw.com); Rachelle DeCarlo (rdecarlo@nourmand.com); Saeed Nourmand (snourmand@nourmand.com) | Blair (blair@saci.com), Dan (knight) (dan@silverstein/ziolaw.com); Esther (esther) (esther@silverstein/ziolaw.com); Veronica Lecion (veronica@resilient.silverstein.co) | | SL-003: Column News Building summary of doc.pdf re: VZ619 | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV597 | 1/4/2019 | Robert Silverstein (robert@silverstein/ziolaw.com); Veronica Lecion (veronica@resilient.silverstein.co) | Esther Koontz (esther@silverstein.co); Veronica Lecion (veronica@resilient.silverstein.co) | Esther Koontz (esther@silverstein.co); Veronica Lecion (veronica@resilient.silverstein.co) | | Silverstein invoice (Sunset Landmark 001-001-2019) | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting confidential Attorney Client communications with Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV598 | 1/4/2019 | Robert Silverstein | | | | SR577.001_5ml_113711_thr November 2018_1 1-2019.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communications with Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV599 | 1/4/2019 | Robert Silverstein | | | | SR577.001_5ml_113712_thr November 2018_1 1-2019.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communications with Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV600 | 1/4/2019 | Robert Silverstein | | | | SR577.001_5ml_113713_thr November 2018_1 1-2019.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communications with Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV601 | 1/4/2019 | Robert Silverstein | | | | SR577.001_5ml_113714_thr November 2018_1 1-2019.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communications with Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV602 | 1/4/2019 | Robert Silverstein | | | | SR577.001_5ml_113715_thr November 2018_1 1-2019.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communications with Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV603 | 1/4/2019 | Robert Silverstein | | | | SR577.001_5ml_113716_thr November 2018_1 1-2019.pdf | Privilege Withheld | | Attorney Client Privilege | Letter reflecting confidential Attorney Client communications with Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV604 | 1/4/2019 | Robert Silverstein | | | | VW_Settlement Agreement on Termine and Thornton | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel* regarding settlement negotiations involving the Termine Hotel |
| PRIV605 | 2/7/2016 | Jayesh Patel (jpatel@saberlaw.com) | Saeed Nourmand (snourmand@nourmand.com) | | | | Privilege Withheld | | Attorney Client Privilege | |

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV406 | 4/1/2008 | Samed Noureaud | Robert Silverstein | Jay Pant | | PW: 55-003 Meho Veh to Hotel Continue to Tuesday, March 5 | Privilege Withheld | | Attorney Client Privilege | Email Claim requesting legal advice from Robert Silverstein regarding a CCDA lawsuit involving the Hollywood Group Hotel |
| PRIV407 | 2/28/2018 | Samed Noureaud | Jay Pant | | | RE: 55-003 Meho Veh to Hotel Continue to Tuesday, March 5 | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice regarding a CCDA lawsuit involving the Saleh Wilkes Hotel |
| PRIV408 | 3/6/2015 | Sarah Gould | Samed Noureaud | | | PW: Ella Structure Request - 1527 Schrader | Privilege Withheld | | Attorney Client Privilege | Email regarding legal advice from Fred Gates |
| PRIV409 | 11/17/2017 | Robert Silverstein | Samed Noureaud | | | 1574 1542 March Wilkes Ave. Documents | Privilege Withheld | | Attorney Client Privilege | Email requesting legal advice from Robert Silverstein |
| PRIV410 | 5/15/2017 | Robert Silverstein | Jay Pant | | | 55-002 Building and Safety Appeal | Privilege Withheld | SUNSET-00001977-SUNSET-00001991 | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein regarding a CCDA lawsuit involving the Tommie Hotel |
| PRIV411 | 11/21/2017 | Jay Pant | Samed Noureaud | | | PW: Wilkes/Tommie 334884 LA-7132 (0014 F03 A67491) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jay Pant regarding settlement negotiations involving the Tommie Hotel and the Wilkes Hotel |
| PRIV412 | 11/21/2017 | Jay Pant | Samed Noureaud | | | PW: Wilkes/Tommie 334884 LA-7132 (0014 F03 A67491) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jay Pant regarding settlement negotiations involving the Tommie Hotel and the Wilkes Hotel |
| PRIV413 | 11/21/2017 | Jay Pant | Samed Noureaud | | | PW: Wilkes/Tommie 334884 LA-7132 (0014 F03 A67491) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jay Pant regarding settlement negotiations involving the Tommie Hotel and the Wilkes Hotel |
| PRIV414 | 11/21/2017 | Jay Pant | Samed Noureaud | | | PW: Wilkes/Tommie 334884 LA-7132 (0014 F03 A67491) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jay Pant regarding settlement negotiations involving the Tommie Hotel and the Wilkes Hotel |
| PRIV415 | 11/21/2017 | Jay Pant | Samed Noureaud | | | FW: Wilkes/Tommie 334884 LA-7132 (0014 F03 A67491) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jay Pant regarding settlement negotiations involving the Tommie Hotel and the Wilkes Hotel |
| PRIV416 | 11/21/2017 | Jay Pant | Samed Noureaud | | | FW: Wilkes/Tommie 334884 LA-7132 (0014 F03 A67491) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jay Pant regarding settlement negotiations involving the Tommie Hotel and the Wilkes Hotel |
| PRIV417 | 11/21/2017 | Jay Pant | Samed Noureaud | | | FW: Wilkes/Tommie 334884 LA-7132 (0014 F03 A67491) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jay Pant regarding settlement negotiations involving the Tommie Hotel and the Wilkes Hotel |
| PRIV418 | 11/21/2017 | Jay Pant | Samed Noureaud | | | FW: Wilkes/Tommie 334884 LA-7132 (0014 F03 A67491) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jay Pant regarding settlement negotiations involving the Tommie Hotel and the Wilkes Hotel |
| PRIV419 | 11/24/2017 | Samed Noureaud | Samed Noureaud | Robert Silverstein; Jay Pant; Dan Wright; Veronica Larson | | Progress report to Maureen | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Samed Noureaud |
| PRIV420 | 11/27/2017 | Samed Noureaud | Robert Silverstein; Dan Wright; Veronica Larson | | | FW: Wilkes/Tommie | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding settlement negotiations involving the Tommie Hotel and the Wilkes Hotel |
| PRIV421 | 12/22/2017 | Samed Noureaud | Samed Noureaud | | | FW: Wilkes/Tommie | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice regarding settlement negotiations involving the Tommie Hotel and the Wilkes Hotel |
| PRIV422 | 12/29/2017 | Jay Pant | Samed Noureaud | | | Landmark Litigation against 6516 Selma | Privilege Withheld | SUNSET-00002136-SUNSET-00002137 | Attorney Client Privilege | Email providing legal advice from Jay Pant regarding the license Hotel |
| PRIV423 | 12/29/2017 | Jay Pant | Samed Noureaud | | | Withdraw | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jay Pant regarding the license Hotel |
| PRIV424 | 12/29/2017 | Jay Pant | Samed Noureaud | | | Settlement Agreement and Release for Sunset Landmark Litigation against 6516 Selma (Tommie) | Privilege Withheld | SUNSET-00002136 / SUNSET-00001977-SUNSET-00001977 | Attorney Client Privilege | Draft agreement providing legal advice from Jay Pant regarding settlement negotiations involving the Tommie Hotel |
| PRIV425 | 10/8/2017 | Jay Pant | Samed Noureaud | | | Wilkes Litigation against 1541 Wilcox / Threatened | Privilege Withheld | | Attorney Client Privilege | Draft agreement providing legal advice from Jay Pant regarding settlement negotiations involving the Tommie Hotel |
| PRIV426 | 10/8/2017 | Jay Pant | Samed Noureaud | | | Re: L4.003 Wilcox | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jay Pant regarding settlement negotiations |
| PRIV427 | 10/8/2017 | Jay Pant | Samed Noureaud | | | PW: Thousand/Tommie | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jay Pant regarding settlement negotiations involving the Tommie Hotel |
| PRIV428 | 7/17/2017 | Samed Noureaud | Samed Noureaud | | | RE: Wilcox | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Samed Noureaud regarding the license Hotel |
| PRIV429 | 2/13/2018 | Jay Pant | Samed Noureaud | | | RE: Wilcox | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jay Pant regarding settlement negotiations involving the Wilcox Hotel |

## Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV432 | 7/31/2017 | Jayesh Patel (jpatel@trubeview.com) | Robert Silverstein (robert@robertsilversteinlaw.com) | Saeed Nourmand (snourmand@nourmand.com) | | | FW: Thompson/Townne - Meeting with Jayesh Patel and Gus Matesih | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel and Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV433 | 7/31/2017 | Jayesh Patel (jpatel@trubeview.com) | Saeed Nourmand (snourmand@nourmand.com) | | | | FW: Thompson/Townne - Meeting with Jayesh Patel and Gus Matesih | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel* regarding settlement negotiations involving the Townne Hotel and the Wilcox Hotel |
| PRIV434 | 7/6/2017 | Jayesh Patel (jpatel@trubeview.com) | Saeed Nourmand (snourmand@nourmand.com) | | | | FW: Thompson/Townne - Meeting with Jayesh Patel and Gus Matesih | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel* regarding settlement negotiations involving the Townne Hotel and the Wilcox Hotel |
| PRIV435 | 4/27/2017 | Jayesh Patel (jpatel@trubeview.com) | Robert Silverstein (robert@robertsilversteinlaw.com) | Saeed Nourmand (snourmand@nourmand.com) | | | FW: Thompson/Townne - Meeting with Jayesh Patel and Gus Matesih | Privilege Redact | SUNSET 00005110 SUNSET 00005112 | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* regarding involving the Townne Hotel and the Wilcox Hotel |
| PRIV436 | 5/16/2017 | Jayesh Patel (jpatel@trubeview.com) | Robert Silverstein (robert@robertsilversteinlaw.com) | Saeed Nourmand (snourmand@nourmand.com) | | | FW: Richard Mona re Profiles | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel* and Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV437 | 4/25/2017 | Jayesh Patel (jpatel@trubeview.com) | Robert Silverstein (robert@robertsilversteinlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Saeed Nourmand (snourmand@nourmand.com) | | | Re: 15,001 Money to Saeed and Jayne 4-25-17 Call from Matt Hale | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* and Robert Silverstein* regarding settlement negotiations involving the Townne Hotel |
| PRIV438 | 8/1/2017 | Jayesh Patel (jpatel@trubeview.com) | Dan Wright (dan@robertsilversteinlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Saeed Nourmand (snourmand@nourmand.com) | | | Re: 1541 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* and Dan Wright* and Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV439 | 4/1/2017 | Jayesh Patel (jpatel@trubeview.com) | Dan Wright (dan@robertsilversteinlaw.com) | Saeed Nourmand (snourmand@nourmand.com); Dan Wright (dan@robertsilversteinlaw.com) | | | Re: 1541 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* and Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV440 | 5/30/2016 | Jayesh Patel (jpatel@trubeview.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Lillian Mazurella (lillian@robertsilversteinlaw.com) | Saeed Nourmand (snourmand@nourmand.com); Lillian Mazurella (lillian@robertsilversteinlaw.com) | | | Re: SUNSET LANDMARK SM Transcription from Finishow 5.16.16 | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* Robert Silverstein*, and Lillian Mazurella* regarding settlement negotiations involving the Relevant Group |
| PRIV441 | 5/27/2016 | Jayesh Patel (jpatel@trubeview.com) | Dan Wright (dan@robertsilversteinlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Dan Wright (dan@robertsilversteinlaw.com) | | | RE: The Sunset Landmark Investment, LLC v. City of Los Angeles, et al. B01160807 | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel*, Robert Silverstein*, and Dan Wright* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV442 | 5/27/2016 | Jayesh Patel (jpatel@trubeview.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Lillian Mazurella (lillian@robertsilversteinlaw.com) | Dan Wright (dan@robertsilversteinlaw.com); Lillian Mazurella (lillian@robertsilversteinlaw.com) | | | RE: Sunset Landmark Investment, CNA/LA meeting on Thurs, 5/5/16, 9:30 a.m. | Privilege Withheld | | Attorney Client Privilege | Email from providing legal advice from Jayesh Patel* Robert Silverstein*, Dan Wright*, Esther Kornfeld*, and Lillian Mazurella* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV443 | 5/27/2016 | Jayesh Patel (jpatel@trubeview.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Lillian Mazurella (lillian@robertsilversteinlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Lillian Mazurella (lillian@robertsilversteinlaw.com) | | | RE: Sunset Landmark Investment, CNA/LA meeting on Thurs, 5/5/16, 9:30 a.m. | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* Robert Silverstein*, Dan Wright*, Esther Kornfeld*, and Lillian Mazurella* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV444 | 5/27/2016 | Jayesh Patel (jpatel@trubeview.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Lillian Mazurella (lillian@robertsilversteinlaw.com) | Dan Wright (dan@robertsilversteinlaw.com); Lillian Mazurella (lillian@robertsilversteinlaw.com) | | | RE: The Sunset Landmark Investment, LLC v. City of Los Angeles, et al. B01160807 | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel*, Robert Silverstein*, and Dan Wright* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV445 | 4/28/2016 | Jayesh Patel (jpatel@trubeview.com) | Saeed Nourmand (snourmand@nourmand.com) | Dan Wright (dan@robertsilversteinlaw.com); Esther Kornfeld (esther@robertsilversteinlaw.com); Lillian Mazurella (lillian@robertsilversteinlaw.com); Saeed Nourmand (snourmand@nourmand.com) | | | FW: Sunset Landmark Investment v City of Los Angeles - Settlement Conference 5/3 @2pm | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* Robert Silverstein*, Dan Wright*, Esther Kornfeld*, and Lillian Mazurella* regarding settlement negotiations involving the Relevant Group |
| PRIV446 | 4/28/2016 | Jayesh Patel (jpatel@trubeview.com) | Saeed Nourmand (snourmand@nourmand.com) | Dan Wright (dan@robertsilversteinlaw.com); Esther Kornfeld (esther@robertsilversteinlaw.com); Lillian Mazurella (lillian@robertsilversteinlaw.com); Saeed Nourmand (snourmand@nourmand.com) | | | FW: Sunset Landmark Investment v City of Los Angeles - Settlement Conference 5/3 @2pm | Privilege Withheld | SUNSET 00005093 SUNSET 00005094 | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* Robert Silverstein*, Dan Wright*, Esther Kornfeld*, and Lillian Mazurella* regarding settlement negotiations involving the Relevant Group |
| PRIV447 | 4/26/2016 | Robert Silverstein (robert@robertsilversteinlaw.com) | Jayesh Patel (jpatel@trubeview.com) | | | | Re: Sunset Landmark Investment v. City of Los Angeles - Settlement Conference 5/3 @2pm | Privilege Withheld | SUNSET 00005088 SUNSET 00005090 | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Jayesh Patel*, Dan Wright*, Esther Kornfeld*, and Lillian Mazurella* regarding settlement negotiations involving the Relevant Group |
| PRIV448 | 4/26/2016 | Robert Silverstein (robert@robertsilversteinlaw.com) | Jayesh Patel (jpatel@trubeview.com) | | | | Re: Sunset Landmark Investment, LLC v. City of Los Angeles | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Jayesh Patel*, Dan Wright*, Esther Kornfeld*, and Lillian Mazurella* regarding the Relevant Group |
| PRIV449 | 4/26/2016 | Robert Silverstein (robert@robertsilversteinlaw.com) | Jayesh Patel (jpatel@trubeview.com) | | | | Re: Sunset Landmark Investment, LLC v. City of Los Angeles | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Jayesh Patel*, Dan Wright*, Esther Kornfeld*, and Lillian Mazurella* regarding settlement negotiations involving the Relevant Group |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Protection Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV450 | 4/25/2016 | Jayesh Patel (jpatel@columbia.com) | Robert Silverstein (robsteel@robertsilverstein.com) | Saeed Roumand (soroumand@roumandlaw.com) | | Re: Sunset Landmark Investment, LLC v. City of Los Angeles | Privilege Withheld | SUNSET_000005884; SUNSET_000005884 | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel, Robert Silverstein, Jayesh Patel, Dan Wright, Esther Kornfeld, and Lillian Manuella regarding a CCEA lawsuit involving the City of Los Angeles. |
| PRIV451 | 4/25/2016 | Robert Silverstein (robsteel@robertsilverstein.com) | Robert Silverstein (robsteel@robertsilverstein.com) | Dan Wright (danw@robertsilverstein.com); Esther Kornfeld; Lillian Manuella | | Re: Sunset Landmark Investment, LLC v. City of Los Angeles | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein, Jayesh Patel, Esther Kornfeld, and Lillian Manuella regarding the City of Los Angeles. |
| PRIV452 | 4/25/2016 | Jayesh Patel (jpatel@columbia.com) | Robert Silverstein (robsteel@robertsilverstein.com) | Other Kornfeld; Lillian Manuella | | Sunset Landmark Investment, preliminary injunction, bond issues | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel, Esther Kornfeld, and Lillian Manuella regarding the Relevant Group. |
| PRIV453 | 4/25/2016 | Jayesh Patel (jpatel@columbia.com) | Robert Silverstein (robsteel@robertsilverstein.com); Saeed Roumand | Dan Wright; Esther Kornfeld; Lillian Manuella | | Sunset Landmark, CEQA petition | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel, Dan Wright, Esther Kornfeld, and Lillian Manuella regarding a CCEA lawsuit involving the Relevant Group. |
| PRIV454 | 4/25/2016 | Jayesh Patel (jpatel@columbia.com) | Robert Silverstein (robsteel@robertsilverstein.com) | Esther Kornfeld; Lillian Manuella | | RE: Sunset Landmark Investment, preliminary injunction, bond issues | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel, Esther Kornfeld, and Lillian Manuella regarding the Relevant Group. |
| PRIV455 | 4/25/2016 | Robert Silverstein (robsteel@robertsilverstein.com) | Jayesh Patel (jpatel@columbia.com); Saeed Roumand | Dan Wright; Esther Kornfeld; Lillian Manuella | | RE: Sunset Landmark Investment, LLC v. City of Los Angeles, et al. | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein, Jayesh Patel, Dan Wright, Esther Kornfeld, and Lillian Manuella regarding a CCEA lawsuit involving the Relevant Group. |
| PRIV456 | 4/25/2016 | Jayesh Patel (jpatel@columbia.com) | Robert Silverstein (robsteel@robertsilverstein.com); Saeed Roumand | Esther Kornfeld; Lillian Manuella | | Fwd: Re: Sunset Landmark Investment, LLC v. City of Los Angeles, et al. | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel, Esther Kornfeld, and Lillian Manuella regarding the Relevant Group. |
| PRIV457 | 4/25/2016 | Jayesh Patel (jpatel@columbia.com) | Robert Silverstein (robsteel@robertsilverstein.com); Saeed Roumand | Esther Kornfeld; Lillian Manuella | | RE: Re: Sunset Landmark Investment, LLC v. City of Los Angeles | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel, Esther Kornfeld, and Lillian Manuella regarding the Relevant Group. |
| PRIV458 | 4/12/2016 | Jayesh Patel (jpatel@columbia.com) | Robert Silverstein (robsteel@robertsilverstein.com) | Saeed Roumand (soroumand@roumandlaw.com) | | RE: Sunset Landmark is reengineered | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel, Robert Silverstein, "Dan Wright", Esther Kornfeld", and "Lillian Manuella" regarding a CCEA lawsuit involving the following Group. |
| PRIV459 | 4/12/2016 | Jayesh Patel (jpatel@columbia.com) | Robert Silverstein (robsteel@robertsilverstein.com) | Saeed Roumand (soroumand@roumandlaw.com) | | RE: Sunset Landmark Investment, LLC v. City of Los Angeles | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel, Robert Silverstein, "Dan Wright", Esther Kornfeld", and Lillian Manuella" regarding a CCEA lawsuit involving the Relevant Group. |
| PRIV460 | 4/11/2016 | Jayesh Patel (jpatel@columbia.com) | Saeed Roumand (soroumand@roumandlaw.com) | Robert Silverstein (robsteel@robertsilverstein.com) | | RE: Sunset Landmark is reengineered | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel" involving the following Group. |
| PRIV461 | 3/24/2016 | Jayesh Patel (jpatel@columbia.com) | Robert Silverstein (robsteel@robertsilverstein.com) | Saeed Roumand (soroumand@roumandlaw.com) | | RE: Sunset Landmark: Service on 3-7-16 8/18/2020 (Bryan) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Robert Silverstein", and Esther Kornfeld" regarding a CCEA lawsuit involving the Relevant Group. |
| PRIV462 | 3/24/2016 | Jayesh Patel (jpatel@columbia.com) | Robert Silverstein (robsteel@robertsilverstein.com) | Saeed Roumand (soroumand@roumandlaw.com) | | RE: Sunset Landmark: Service on 8 PM Fwd: First legal opinion for City of (nonbl16) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Robert Silverstein", and Esther Kornfeld" regarding a CCEA lawsuit involving the Relevant Group. |
| PRIV463 | 3/2/2016 | Jayesh Patel (jpatel@columbia.com) | Robert Silverstein (robsteel@robertsilverstein.com); Saeed Roumand (soroumand@roumandlaw.com) | | | FW: Sunset Landmark: "Service on 8 PM NOTCL with hear different "tentative" dates | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel" regarding a CCEA lawsuit involving the Relevant Group. |
| PRIV464 | 2/24/2016 | Jayesh Patel (jpatel@columbia.com) | Saeed Roumand (soroumand@roumandlaw.com) | | | RE: Sunset Landmark | SUNSET_0000xxxx; SUNSET_0000xxxx | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel" regarding a CCEA lawsuit involving the following Group. |
| PRIV465 | 2/19/2016 | Jayesh Patel (jpatel@columbia.com) | Saeed Roumand (soroumand@roumandlaw.com) | | | RE: Lillian Insel | Privilege Withheld | | Attorney Client Privilege | |

## Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV466 | 2/17/2016 | Jayesh Patel (jpatel@culverlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Saeed Nourmand (snourmand@nourmand.com) | | | FW: Aceytech Invoice | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel and Robert Silverstein regarding a CCIA lawsuit involving the Relevant Group. |
| PRIV467 | 7/11/2016 | Stephen Weaver | | | | CC132015016_0000G.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Stephen Weaver regarding a CCIA lawsuit involving the Wilcox Hotel. |
| PRIV468 | 1/25/2016 | Mohamad Invayai (mohamad@nourmand.com) | jpatel@culverlaw.com | Saeed Nourmand (snourmand@nourmand.com) | | 1541 Wilcox Hotel | Privilege Withheld | SUNSET_00000081 SUNSET_00000084 | Attorney Client Privilege | Email providing legal advice from Jayesh Patel regarding a CCIA lawsuit involving the Wilcox Hotel. |
| PRIV469 | 1/18/2016 | Jayesh Patel (jpatel@culverlaw.com) | Saeed Nourmand (snourmand@nourmand.com) | | | FW: ZLD - Sunset Landmark - Selma Wilcox - Reconsideration in last 20 hearing | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CCIA lawsuit involving the Selma Wilcox Hotel. |
| PRIV470 | 1/18/2016 | Jayesh Patel (jpatel@culverlaw.com) | Saeed Nourmand (snourmand@nourmand.com) | | | FW: ZLD - Sunset Landmark - Selma Wilcox - File Memo (01.15.16) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CCIA lawsuit involving the Selma Wilcox Hotel. |
| PRIV471 | 1/18/2016 | Stephen Weaver | | | | ZLD - Sunset Landmark - Selma Wilcox - File Memo (01.15.16).pdf | Privilege Withheld | | Attorney Client Privilege | Memorandum providing legal advice from Jayesh Patel and Stephen Weaver regarding a CCIA lawsuit involving the Selma Wilcox Hotel. |
| PRIV472 | 1/13/2016 | Saeed Nourmand (snourmand@nourmand.com); Mohamad Invayai (mohamad@nourmand.com) | Saeed Nourmand (snourmand@nourmand.com); Mohamad Invayai (mohamad@nourmand.com) | | | FW: ZLD - Landmark/Wilshire - Wilcox Hotel - Hearing date set before HLUM Center | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CCIA lawsuit involving the Wilcox Hotel. |
| PRIV473 | 1/11/2016 | Saeed Nourmand (snourmand@nourmand.com) | Jayesh Patel (jpatel@wawla.com) | | | Re: ZLC - Sunset Landmark - Wilcox Hotel // ZLC - Sunset Landmark - Selma Wilcox - Budgets | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel regarding a CCIA lawsuit involving the Wilcox Hotel. |
| PRIV474 | 1/11/2016 | Jayesh Patel (jpatel@wawla.com) | Saeed Nourmand (snourmand@nourmand.com); Mohamad Invayai (mohamad@nourmand.com) | | | RE: ZLC - Sunset Landmark - Wilcox Hotel // ZLC - Sunset Landmark - Selma Wilcox - Budgets | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel regarding a CCIA lawsuit involving the Selma Wilcox Hotel. |
| PRIV475 | 1/11/2016 | Saeed Nourmand (snourmand@nourmand.com) | Jayesh Patel (jpatel@wawla.com); Mohamad Invayai (mohamad@nourmand.com) | | | Re: ZLC - Sunset Landmark - Wilcox Hotel // ZLC - Sunset Landmark - Selma Wilcox - Budgets | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CCIA lawsuit involving the Selma Wilcox Hotel. |
| PRIV476 | 12/30/2015 | Jayesh Patel (jpatel@wawla.com) | Saeed Nourmand (snourmand@nourmand.com) | | | FW: ZLC - Sunset Landmark - Selma Wilcox - Budgets | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CCIA lawsuit involving the Selma Wilcox Hotel. |
| PRIV477 | 12/24/2015 | Jayesh Patel (jpatel@wawla.com) | Saeed Nourmand (snourmand@nourmand.com) | | | Public Hearing January 28, 2016 | Privilege Withheld | SUNSET_00000055 SUNSET_00000080 | Attorney Client Privilege | Email providing information to assist in receiving legal advice from Jayesh Patel regarding a CCIA lawsuit involving the Wilcox Hotel. |
| PRIV478 | 10/27/2015 | Saeed Nourmand (snourmand@nourmand.com) | Jayesh Patel (jpatel@wawla.com) | | | FW: Wilcox Hotel project | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel regarding a CCIA lawsuit involving the Wilcox Hotel. |
| PRIV479 | 10/27/2015 | Saeed Nourmand (snourmand@nourmand.com) | Jayesh Patel (jpatel@wawla.com) | | | FW: 1541 Wilcox Hotel LLC | Privilege Withheld | SUNSET_00000278 SUNSET_00000077 | Attorney Client Privilege | Email chain providing information to assist in receiving legal advice from Core Kahn' and Jayesh Patel regarding a CCIA lawsuit involving the Wilcox Hotel. |
| PRIV480 | 10/27/2015 | Saeed Nourmand (snourmand@nourmand.com) | Jayesh Patel (jpatel@wawla.com) | | | FW: Hollywood Community Plan - 26 Pages | Privilege Redact | SUNSET_00000741 SUNSET_00000074 | Attorney Client Privilege | Email providing information to assist in receiving legal advice from Jayesh Patel regarding a CCIA lawsuit involving the Relevant Group. |
| PRIV481 | 9/4/2015 | Saeed Nourmand (snourmand@nourmand.com) | Jayesh Patel (jpatel@wawla.com) | | | FW: 1541 Wilcox Hotel LLC | Privilege Withheld | SUNSET_00000721 SUNSET_00000072 | Attorney Client Privilege | Email providing information to assist in receiving legal advice from Core Kahn' regarding a CCIA lawsuit involving the Wilcox Hotel. |
| PRIV482 | 9/4/2015 | Saeed Nourmand (snourmand@nourmand.com) | B.Sinai@mindspring.com); b.B.sai@mindspring.com) | | | FW: Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Fred Gaines' regarding a CCIA lawsuit involving the Wilcox Hotel. |
| PRIV483 | 9/7/2015 | Mohamad Invayai (snourmand@nourmand.com) | jglickon@englishon.com | Saeed Nourmand (snourmand@nourmand.com) | | 1541 Wilcox Hotel LLC | Privilege Withheld | SUNSET_00000721 SUNSET_00000071 | Attorney Client Privilege | Email chain providing legal advice from Robert Glickon' regarding a CCIA lawsuit involving the Wilcox Hotel. |
| PRIV484 | 9/4/2015 | Saeed Nourmand (snourmand@nourmand.com) | bgaines@panielaw.com) | Saeed Nourmand (snourmand@nourmand.com) | | Re: Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Fred Gaines' regarding a CCIA lawsuit involving the Wilcox Hotel. |
| PRIV485 | 9/4/2015 | Fred Gaines | jglickon@englishon.com | Saeed Nourmand (snourmand@nourmand.com); Dan Weight (dan@robertsilversteinlaw.com); Esther (esther@robertsilversteinlaw.com); veronica@robertsilversteinlaw.com | | Hollywood Community Plan.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Fred Gaines' |
| PRIV491 | 10/30/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Jayesh Patel (jpatel@culverlaw.com) | | | Re: ELAY: Wilcox | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein'', Jayesh Patel'', Dan Weight'', Esther Nordfelt'' and Veronica Lebron'' regarding a CCIA lawsuit involving the Wilcox Hotel. |

# Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Item Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV654 | 5/4/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Sarved Nourmand (nourmand@nourmandial.com); Jayesh Patel (jpatel@relevantgrp.com) | | | Re: SL-001: Memo to Saved and Jayesh 4-25-17 Call from Matt Heis | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Tommie Hotel |
| PRIV655 | 4/25/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Sarved Nourmand (nourmand@nourmandial.com); Jayesh Patel (jpatel@relevantgrp.com) | Dan Wright (dan@robertsilversteinlaw.com) | | SL-002: Crafted LA Article - Tommie Hotel | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Tommie Hotel |
| PRIV656 | 4/26/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Sarved Nourmand (nourmand@nourmandial.com); Jayesh Patel (jpatel@relevantgrp.com) | | | RE: SL-001: Memo to Saved and Jayesh 4-25-17 Call from Matt Heis | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding the Tommie Hotel |
| PRIV657 | 4/21/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Sarved Nourmand (nourmand@nourmandial.com); Jayesh Patel (jpatel@relevantgrp.com) | | | RE: SL-001: Memo to Saved and Jayesh 4-25-17 Call from Matt Heis | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Tommie Hotel |
| PRIV658 | 4/21/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Jayesh Patel (jpatel@relevantgrp.com) | | | Re: Approved Entitlement Plans | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV659 | 4/21/2017 | Sarved Nourmand (nourmand@nourmandial.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Jayesh Patel (jpatel@relevantgrp.com) | Veronica Lebron (veronica@robertsilversteinlaw.com) | | Re: Approved Entitlement Plans | Privilege Withheld | | Attorney Client Privilege | Email chain regarding legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV660 | 4/10/2017 | Sarved Nourmand (nourmand@nourmandial.com) | Dan Wright (dan@robertsilversteinlaw.com) | | | RE: SL-001: Heidi on Salinas | Privilege Withheld | | Attorney Client Privilege | Email chain regarding legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel and the Wilcox Hotel |
| PRIV651 | 4/1/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Dan Wright (dan@robertsilversteinlaw.com) | | | Re: 1541 Wilcox Hotel | Privilege Withheld | SUNSET_00000560 SUNSET_00000562 | Attorney Client Privilege | Email chain providing legal advice from Dan Wright* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV652 | 4/1/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Dan Wright (dan@robertsilversteinlaw.com) | Sarved Nourmand (nourmand@nourmandial.com) | | Re: 1541 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV653 | 4/1/2017 | Dan Wright (dan@robertsilversteinlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com) | Sarved Nourmand (nourmand@nourmandial.com); Dan Wright (dan@robertsilversteinlaw.com) | | Re: 1541 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV654 | 4/1/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Dan Wright (dan@robertsilversteinlaw.com) | Sarved Nourmand (nourmand@nourmandial.com); Dan Wright (dan@robertsilversteinlaw.com) | | Re: 1541 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV655 | 4/1/2017 | Sarved Nourmand (nourmand@nourmandial.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Jayesh Patel (jpatel@relevantgrp.com) | | | Re: 1541 Wilcox Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV656 | 4/1/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Dan Wright (dan@robertsilversteinlaw.com) | | | Re: 1541 Wilcox Hotel | Privilege Withheld | SUNSET_00000517 SUNSET_00000000 | Attorney Client Privilege | Email chain regarding legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV657 | 4/1/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Jayesh Patel (jpatel@relevantgrp.com) | Dan Wright (dan@robertsilversteinlaw.com) | | Sunset Landmark, William Hotel Project at 1541 North Wilcox Avenue, City Council File: 15-1110; DCP Case: CPC-2014-3766-VZC-HD-ZAA-SPR | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV658 | 5/12/2016 | Robert Silverstein | | | | SL 5-10 (SCAM) Letter to Downright Board PDF | Privilege Withheld | | Attorney Client Privilege | Letter providing legal advice from Dan Wright* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV659 | 5/12/2016 | Robert Silverstein (robert@robertsilversteinlaw.com) | Lillian Marinello (info@robertsilversteinlaw.com); Jayesh Patel (jpatel@relevantgrp.com) | | | Re: Reminder: SUNSET LANDMARK, Get back to Downtown on VM 5/8/16 | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV660 | 5/12/2016 | Jayesh Patel (jpatel@relevantgrp.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Sarved Nourmand (nourmand@nourmandial.com) | Dan Wright (dan@robertsilversteinlaw.com) | | RE: The Sunset Landmark Investment, LLC v. City of Los Angeles, et al. BS160007 | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV670 | 4/26/2016 | Robert Silverstein (robert@robertsilversteinlaw.com) | Jayesh Patel (jpatel@relevantgrp.com) | Sarved Nourmand (nourmand@nourmandial.com) | | The Sunset Landmark Investment, LLC v. City of Los Angeles, et al. BS160007 | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV671 | 4/26/2016 | Robert Silverstein (robert@robertsilversteinlaw.com) | Dan Wright (dan@robertsilversteinlaw.com) | Sarved Nourmand (nourmand@nourmandial.com); John Kronstadt (john@robertsilversteinlaw.com); anthony@robertsilversteinlaw.com | | 4-26-16 (SCAM) Letter to Andrea Levy PDF | Privilege Withheld | | Attorney Client Privilege | Letter providing legal advice from Dan Wright* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV672 | 4/26/2016 | Dan Wright (dan@robertsilversteinlaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com) | Sarved Nourmand (nourmand@nourmandial.com); John Kronstadt (john@robertsilversteinlaw.com); anthony@robertsilversteinlaw.com | | Re: The Sunset Landmark Investment, LLC v. City of Los Angeles | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group |
| PRIV674 | 4/26/2016 | Robert Silverstein (robert@robertsilversteinlaw.com) | Dan Wright (dan@robertsilversteinlaw.com) | Sarved Nourmand (nourmand@nourmandial.com); John Kronstadt (john@robertsilversteinlaw.com); anthony@robertsilversteinlaw.com | | Sunset Landmark Investment, LLC v. City of Los Angeles | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group. |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV535 | 4/6/2016 | Robert Silverstein | Saeed Nourmand | | | | Privilege Withheld | SUNSET_00000083 SUNSET_00000083 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV536 | 3/24/2016 | Robert Silverstein | Jayesh Patel | | | Sunset Landmark - Confirmed Copy of Notice of Filing (PDF) | Privilege Withheld | SUNSET_00000084 SUNSET_00000084 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV537 | 3/24/2016 | Robert Silverstein | Jayesh Patel | | For: Sunset Landmark - Service Copy of REV. Fwd: First Legal Update for CSM (29558) (PDF) | | | Privilege Withheld | SUNSET_00000085 SUNSET_00000085 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV538 | 3/19/2016 | Saeed Nourmand | Jayesh Patel; Robert Silverstein | Dan Wright | | Sunset Landmark: Respondents were served today with summons, petition, etc. | Privilege Withheld | SUNSET_00000086 SUNSET_00000086 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV539 | 3/19/2016 | Robert Silverstein | Saeed Nourmand | Dan Wright | | Sunset Landmark: Verified Petition for Writ of Mandamus and Complaint | Privilege Withheld | SUNSET_00000087 SUNSET_00000087 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV540 | 3/17/2016 | Robert Silverstein | Saeed Nourmand | Dan Wright | | Sunset Landmark, 3-2-16 REVISED Draft Petition for Writ of Mandate | Privilege Withheld | SUNSET_00000088 SUNSET_00000088 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV541 | 3/17/2016 | Saeed Nourmand | Jayesh Patel | Dan Wright | | 3-1-16 REVISED Draft Petition for Writ of Mandate | Privilege Withheld | SUNSET_00000089 SUNSET_00000089 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV542 | 3/3/2016 | Robert Silverstein | | | | 3-3-16 Draft Petition for Writ of Mandate.docx | Privilege Withheld | SUNSET_00000090 | Attorney Work Product | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV543 | 3/2/2016 | Robert Silverstein | | | | For: Sunset Landmark: Notice of Intent to Sue Letter | Privilege Withheld | SUNSET_00000091 | Attorney Work Product | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV544 | 3/2/2016 | Robert Silverstein | Dan Wright | | | For: Sunset Landmark: Notice of Intent to Sue Letter | Privilege Withheld | SUNSET_00000092 SUNSET_00000092 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV545 | 3/2/2016 | Robert Silverstein | Saeed Nourmand | Dan Wright | | RE: Sunset Landmark: Notice of Intent to Sue Letter | Privilege Withheld | SUNSET_00000093 SUNSET_00000093 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV546 | 2/26/2016 | Robert Silverstein | Saeed Nourmand | Dan Wright | | 1-2-16 Draft Petition for Writ of Mandate.docx | Privilege Withheld | SUNSET_00000094 | Attorney Work Product | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV547 | 2/26/2016 | Robert Silverstein | Jayesh Patel | | | Sunset Landmark "agreed fee agreement (PDF) | Privilege Withheld | SUNSET_00000095 SUNSET_00000095 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV548 | 2/26/2016 | Robert Silverstein | Jayesh Patel | | | Sunset Landmark "agreed fee agreement | Privilege Withheld | SUNSET_00000096 SUNSET_00000096 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV549 | 2/24/2016 | Saeed Nourmand | Jayesh Patel | | | 2-22-16 SLAMS Signed Fee Agreement.PDF | Privilege Withheld | SUNSET_00000097 SUNSET_00000097 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV550 | 2/23/2016 | Robert Silverstein | Saeed Nourmand | | | The Silverstein Law Firm.pdf | Privilege Withheld | SUNSET_00000098 SUNSET_00000098 | Attorney Client Privilege; Work Product | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit involving the Relevant Group |
| PRIV551 | 2/22/2016 | Rochelle DeCastro | Saeed Nourmand | Mohamed Hadid | | The Silverstein Law Firm.pdf | Privilege Withheld | SUNSET_00000099 SUNSET_00000099 | Attorney Client Privilege | Letter providing legal advice from Robert Silverstein regarding a CLOA lawsuit |
| PRIV552 | 2/22/2016 | Robert Silverstein | Saeed Nourmand | | | The Silverstein Law Firm Contract | Privilege Withheld | SUNSET_00000100 | Attorney Work Product | Letter providing legal advice from Robert Silverstein regarding a CLOA lawsuit |
| PRIV553 | 2/22/2016 | Robert Silverstein | Saeed Nourmand | | | | Privilege Withheld | SUNSET_00000101 SUNSET_00000101 | Attorney Client Privilege | Letter providing legal advice from Robert Silverstein regarding a CLOA lawsuit |
| PRIV554 | 2/21/2016 | Robert Silverstein | Saeed Nourmand | | | 2-18-16 Agreement with Sunset Landmark Leased Nourmand for CLOA and Sunset Litigation | Privilege Withheld | SUNSET_00000102 SUNSET_00000102 | Attorney Client Privilege | Letter providing legal advice from Robert Silverstein regarding a CLOA lawsuit |
| PRIV555 | 2/21/2016 | Robert Silverstein | Saeed Nourmand | | | 2-18-16 Agreement with Sunset Landmark Investments, LLC and Stephan Nourmand for CLOA and Sunset Litigation.pdf | Privilege Withheld | SUNSET_00000103 SUNSET_00000103 | Attorney Client Privilege | Letter providing legal advice from Robert Silverstein regarding a CLOA lawsuit |
| PRIV556 | 2/19/2016 | Robert Silverstein | Jayesh Patel | | Nourmand, CLE CLOA Vol. 2.page | | | Privilege Withheld | SUNSET_00000104 SUNSET_00000104 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CLOA lawsuit |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV657 | 2/17/2016 | Alice Nomoto (www.amedht.dbclaw.com) | Jayesh Patel (jpatel@shoplaw.com) | Jayesh Patel (jpatel@shoplaw.com) | | Sunset Landmark - Wilcox | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel and Jayesh Patel regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV658 | 2/17/2016 | Jayesh Patel | | | | Letter re: Memestys.pdf | Privilege Withheld | | Attorney Client Privilege | Letter providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV659 | 11/17/2017 | Lamed Roummond (roummond@roummond.com) | Jayesh Patel (jpatel@shoplaw.com) | Laed Roummond (roummond@roummond.com) | | RE: Wilcox/Tommie | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding settlement negotiations involving the Tommie Hotel and the Wilcox Hotel |
| PRIV660 | 10/10/2017 | Laed Roummond (roummond@roummond.com) | Jayesh Patel (jpatel@shoplaw.com) | | | RE: Wilcox and Selma Settlement Agreement | Privilege Withheld | | Attorney Client Privilege | Email chain regarding legal advice from Jayesh Patel regarding settlement negotiations involving the Selma Wilcox Hotel |
| PRIV661 | 7/21/2017 | Laed Roummond (roummond@roummond.com) | Jayesh Patel (jpatel@shoplaw.com) | Laed Roummond (roummond@roummond.com) | | RE: Thompson/Tommie - Meeting with Jayesh Patel and Cus Matwick | Privilege Withheld | | Attorney Client Privilege | Email chain regarding legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV662 | 11/10/2017 | Jayesh Patel (jpatel@shoplaw.com) | Laed Roummond (roummond@roummond.com) | | | FW: Wilcox/Tommie | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV663 | 11/10/2017 | Jayesh Patel | | | | REDLINE_03/17/16_L_Settlement Agreement and Release for Sunset Landmark Litigation against 1541 Selma PDF | Privilege Withheld | | Attorney Client Privilege | Agreement providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV664 | 11/10/2017 | Jayesh Patel | | | | REDLINE_03/17/16_L_Settlement Agreement and Release for Sunset Landmark Litigation against 1541 Selma | Privilege Withheld | | Attorney Client Privilege | Agreement providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel |
| PRIV665 | 11/10/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 1541 Selma (Tommie) final.DOCX | Privilege Withheld | | Attorney Client Privilege | Agreement providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel |
| PRIV666 | 11/10/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 1541 Wilcox (Thompson Hotel).DOCX | Privilege Withheld | | Attorney Client Privilege | Agreement providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV667 | 11/1/2017 | Jayesh Patel (jpatel@shoplaw.com) | Laed Roummond (roummond@roummond.com) | | | FW: Wilcox/Tommie | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV668 | 11/1/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 1541 Wilcox (Thompson Hotel).DOCX | Privilege Withheld | | Attorney Client Privilege; Work Product | Draft agreement providing legal advice from Jayesh Patel prepared in the course of litigation regarding settlement negotiations involving the Wilcox Hotel |
| PRIV669 | 11/1/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 1541 Selma (Tommie).DOCX | Privilege Withheld | | Attorney Client Privilege; Work Product | Draft agreement providing legal advice from Jayesh Patel prepared in the course of litigation regarding settlement negotiations involving the Tommie Hotel and the Wilcox Hotel |
| PRIV670 | 11/1/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 1531 Selma (Tommie) install.DOCX | Privilege Withheld | | Attorney Client Privilege; Work Product | Draft agreement providing legal advice from Jayesh Patel prepared in the course of litigation regarding settlement negotiations involving the Tommie Hotel and the Wilcox Hotel |
| PRIV671 | 11/1/2017 | Jayesh Patel | | | | FW: Accepted: Meeting w/ Jayesh Patel/Andrea Shaw-Nolan/Laed Roummond | Privilege Withheld | | Attorney Client Privilege; Work Product | Email chain providing legal advice from Jayesh Patel prepared in anticipation of litigation regarding a CEQA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV672 | 10/10/2017 | Jayesh Patel (jpatel@shoplaw.com) | Laed Roummond (roummond@roummond.com) | | | RE: Thompson/Tommie Settlement Agreements - Revised | Privilege Withheld | | Attorney Client Privilege | Email chain regarding legal advice from Jayesh Patel regarding settlement negotiations involving the Tommie Hotel |
| PRIV673 | 9/26/2017 | Laed Roummond (roummond@roummond.com) | Jayesh Patel (jpatel@shoplaw.com) | Laed Roummond (roummond@roummond.com) | | RE: Thompson/Tommie Settlement Agreements - Revised | Privilege Withheld | | Attorney Client Privilege | Email chain regarding legal advice from Jayesh Patel regarding settlement negotiations involving the Tommie Hotel |
| PRIV674 | 9/27/2017 | Jayesh Patel (jpatel@shoplaw.com) | Laed Roummond (roummond@roummond.com) | | | RE: Thompson/Tommie Settlement Agreements - Revised | Privilege Withheld | SUNSET_00001101 – SUNSET_00001101 | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Rebecca's Group |
| PRIV675 | 9/26/2017 | Jayesh Patel (jpatel@shoplaw.com) | Laed Roummond (roummond@roummond.com) | | | FW: Thompson/Tommie Settlement Agreements - Revised | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding settlement negotiations involving the Tommie Hotel |
| PRIV676 | 9/26/2017 | Jayesh Patel (jpatel@shoplaw.com) | Laed Roummond (roummond@roummond.com) | | | REDLINE_02/09/16/6_L_Settlement Agreement and Release for Sunset Landmark Litigation | Privilege Withheld | | Attorney Client Privilege; Work Product | Draft agreement reflecting confidential Attorney Client communications with Jayesh Patel prepared in the course of litigation regarding settlement negotiations involving the Tommie Hotel |
| PRIV677 | 9/26/2017 | Jayesh Patel | | | | REDLINE_03/17/16/16/6_L_Settlement Agreement and Release for Sunset Landmark Litigation against 1541 Vag.PDF | Privilege Withheld | | Attorney Client Privilege; Work Product | Draft agreement reflecting confidential Attorney Client communications with Jayesh Patel prepared in the course of litigation regarding settlement negotiations involving the Tommie Hotel and the Wilcox Hotel |
| PRIV678 | 9/26/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 1541 Wilcox (Thompson Hotel).DOCX | Privilege Withheld | | Attorney Client Privilege; Work Product | Agreement reflecting confidential Attorney Client communications with prepared in the course of litigation from Jayesh Patel regarding settlement negotiations involving the Wilcox Hotel |
| PRIV679 | 9/26/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 1541 Wilcox (Thompson Hotel).DOCX | Privilege Withheld | | Attorney Client Privilege; Work Product | Agreement reflecting confidential Attorney Client communications with prepared in the course of litigation from Jayesh Patel regarding settlement negotiations involving the Wilcox Hotel |
| PRIV680 | 9/26/2014 | Robert Silverstein (robert@eisilverstorelaw.com) | Laed Roummond (roummond@roummond.com) Jayesh Patel (jpatel@shoplaw.com) | Dan Wright (dan@robertsilversteinlaw.com) | | Fwd: Sunset Landmark Inc. LLC v. City of L.A. et al (Token to the motion to augment | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Relevant Group |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV660 | 4/29/2017 | Robert Silverstein (robert@robertsilverstein.law.c om) | Dan Wright (dan@robertsilverstein.law.c om); Jerych Patel | | RE: SLC001: Hotel on Sunset | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Sunset Millennium Hotel |
| PRIV659 | 4/29/2017 | Robert Silverstein (robert@robertsilverstein.law.c om) | Dan Wright (dan@robertsilverstein.law.c om); Jerych Patel | | RE: SLC001: Hotel on Sunset | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Sunset Millennium Hotel |
| PRIV658 | 5/17/2017 | Saeed Nourmand (snourmand@nourmand.com) | Jerych Patel (jpatel@caberlaw.com) | | RE: Sunset ATTY CLIENT AND WORK PRODUCT PRIVILEGED | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Sunset Millennium Hotel |
| PRIV657 | 7/21/2012 | Saeed Nourmand (snourmand@nourmand.com) | Jerych Patel | | RE: Sunset ATTY CLIENT AND WORK PRODUCT | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein involving the Sunset Hotel |
| PRIV656 | 5/17/2017 | Robert Silverstein (robert@robertsilverstein.law.c om) | Saeed Nourmand (snourmand@nourmand.com) | Dan Wright (dan@robertsilverstein.law.c om); Veronica Lebron | SL 001: Sunset Hotel, possible amended petition to enhance CEQA law process cause of action | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Sunset Hotel |
| PRIV655 | 7/21/2012 | Robert Silverstein (robert@robertsilverstein.law.c om) | Jerych Patel; Saeed Nourmand | Dan Wright (dan@robertsilverstein.law.c om) | RE: SLC001: Sunset Hotel, possible amended petition to enhance CEQA law process cause of action | Privilege Withheld | | Attorney Client Privilege | Email chain requesting legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Sunset Hotel |
| PRIV654 | 7/21/2012 | Robert Silverstein (robert@robertsilverstein.law.c om) | Jerych Patel | Dan Wright (dan@robertsilverstein.law.c om) | SL 001: Sunset Hotel, possible amended petition to enhance CEQA law process cause of action | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Sunset Hotel |
| PRIV653 | 4/9/2012 | Robert Silverstein (robert@robertsilverstein.law.c om) | Jerych Patel | | SUBMITTED HERETOFORE | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Sunset Hotel |
| PRIV652 | 4/9/2012 | Robert Silverstein (robert@robertsilverstein.law.c om) | Jerych Patel | | Submission involving CEQA lawsuit | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Sunset Hotel |
| PRIV651 | 8/42/2013 | Robert Silverstein | Mohammad Imania (mohammad@roman.com) | Robert Silverstein; Veronica Lebron | FW: Tzemeva/Thompson | Privilege Withheld | | Work Product | Email providing legal advice regarding a CEQA lawsuit involving the Tzemeva Hotel |
| PRIV650 | 8/42/2013 | Dan Wright (dan@robertsilverstein.law.c om) | Saeed Nourmand | | SL 001: Tzemeva Hotel NEED WORKED VERIFICATION IN ORDER TO FILE TODAY | Privilege Withheld | | Attorney Client Privilege | Calendar entry providing legal advice from Jerych Patel regarding a CEQA lawsuit involving the Tzemeva Hotel |
| PRIV649 | 4/29/2012 | Mike Reisman (reisman@roman.com) | Jerych Patel (jpatel@caberlaw.com); Saeed Nourmand | William Hotel - telephone Call with Jerych, Saeed Nourmand and Robert Silverstein | Privilege Withheld | | Attorney Client Privilege | Calendar entry providing legal advice from Jerych Patel regarding a CEQA lawsuit involving the Wilton Hotel |
| PRIV648 | 4/29/2012 | Mike Reisman (reisman@roman.com) | Jerych Patel (jpatel@caberlaw.com); Saeed Nourmand | Robert Silverstein | SL 001: Sunset Landmark Initial Plans | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Sunset Hotel |
| PRIV647 | 4/29/2012 | Saeed Nourmand (snourmand@nourmand.com) | Jerych Patel; Saeed Nourmand | Saeed Nourmand | SL001: Sunset Landmark Investment v. City of Los Angeles, et al (Case No. BS140607) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Relevant Group |
| PRIV646 | 12/14/2017 | Robert Silverstein | Jerych Patel | Jerych Patel | SLC001: Sunset Landmark Investment v. City of Los Angeles, et al (Case No. BS160607) | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice regarding a CEQA lawsuit involving the Relevant Group |
| PRIV645 | 7/17/2017 | Saeed Nourmand (snourmand@nourmand.com) | Veronica Lebron (veronica@robertsilverstein law.co m) | | SLC001: Motion to File Writ Hearing - ON SL THE SUNSET LANDMARK INVESTMENT LLC V/CITY OF LOS ANGELES ET AL Court - 06/28/2017 10:00am (PT) (1:37PM) | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Relevant Group |

## Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | BCC | CC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV6601 | 4/7/2017 | Jayesh Patel (jpatel@callwline.com) | Robert Silverstein (robert@robertsilversteinlaw.com); Mr. Saeed Nourmand (snourmand@nourmand.com); Dan Wright (dan@millerbarondestein.com) | | Dan Wright (dan@millerbarondestein.com) | RE: SL-001 Hotel on Selma | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* regarding a CEQA lawsuit involving the Selma Wilcox Hotel, the Tommie Hotel and the Wilcox Hotel. |
| PRIV6602 | 4/9/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Jayesh Patel (jpatel@callwline.com); Dan Wright (dan@millerbarondestein.com) | | | SL-002: Hotel on Selma | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Selma Wilcox Hotel, the Tommie Hotel and the Wilcox Hotel. |
| PRIV6603 | 7/6/2017 | Robert Silverstein (robert@robertsilverstein... | Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@callwline.com) | | | Nourmand: RE: Objections to WLA APC Agenda Item 4 | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal and reporting legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV6604 | 5/9/2017 | Jay Patel (jpatel@callwline.com) | Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@callwline.com) | | Dan Wright (dan@millerbarondestein.com) | SL-001: Scan of Ex Parte Application; emails to/from City Atty | Privilege Withheld | SUNSET_0000952 SUNSET_0000954 | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Jayesh Patel*, Dan Wright*, and Susan Dunlap* regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV6607 | 12/14/2018 | Rochelle DeCastro (rdecastro@nourmand.com) | Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@callwline.com); plaintiff@callwline.com | | Mohamad Jamal (mohamad@nourmand.com) | Re: 1522 N. Schrader - Preliminary assessment memo - Draft | Privilege Withheld | SUNSET_0001142 SUNSET_0001145 | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV6608 | 10/11/2018 | Saeed Nourmand (snourmand@nourmand.com) | Saeed Nourmand (snourmand@nourmand.com) | | Alicia Navarro (anavarro@callwline.com) | Invitre to Appointment re 6421 Selma Wilcox Hotel, LLC | Privilege Withheld | | Attorney Client Privilege | Email reflecting confidential Attorney-Client communications with Jayesh Patel* regarding a CEQA lawsuit involving the Selma Wilcox Hotel. |
| PRIV6610 | 9/28/2018 | Jayesh Patel (jpatel@callwline.com) | Saeed Nourmand (snourmand@nourmand.com) | | | FW: 1600 Schrader | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel* and Alisa Nourmand* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV6613 | 9/24/2018 | Robert Silverstein (robert@robertsilverstein... | Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@callwline.com) | | Jayesh Patel (jpatel@callwline.com); Veronica Lebron (veronica@robertsilversteinlaw.com) | Silverstein Invoice Sunset Landmark 092.000 | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Jayesh Patel*, Esther Kornfeld*, Teresa Liberatore*, and Veronica Lebron* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV6614 | 9/24/2018 | Robert Silverstein | Robert Silverstein | | | SR577.002_Sind_133646_the August 2018_9-18_2018.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group and the Tommie Hotel. |
| PRIV6615 | 9/24/2018 | Robert Silverstein | Robert Silverstein | | | SR577.003_Sind_133647_the August 2018_9-18_2018.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV6616 | 9/24/2018 | Robert Silverstein | Robert Silverstein | | | SR577.004_Sind_133648_the August 2018_9-18_2018.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein* and Esther Kornfeld* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV6617 | 9/24/2018 | Robert Silverstein | Robert Silverstein | | | SR577.005_Sind_133649_the August 2018 9-18-2018.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV6618 | 9/24/2018 | Robert Silverstein | Robert Silverstein | | | SR577.006_Sind_133650_the August 2018 9-18-2018.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein* and Esther Kornfeld* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV6619 | 9/14/2018 | Robert Silverstein (robert@robertsilverstein... | Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@callwline.com); Saeed Nourmand (snourmand@nourmand.com) | | Ethan Kornfeld (ethan@robertsilversteinlaw.com); Esther Kornfeld (esther@robertsilversteinlaw.com); Veronica Lebron (veronica@robertsilversteinlaw.com) | SL-006, Schrader: Homeless Shelter / Bridge Housing | Privilege Withheld | SUNSET_0001193 SUNSET_0001197 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Jayesh Patel*, Dan Wright*, Esther Kornfeld*, and Veronica Lebron*, regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV6620 | 9/14/2018 | Robert Silverstein (robert@robertsilverstein... | Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@callwline.com) | | Dan Wright (dan@millerbarondestein.com); Robert Silverstein (robert@robertsilversteinlaw.com); Veronica Lebron (veronica@robertsilversteinlaw.com) | SL-003 and -005: Public Comment and continuance of Schrader Hotel | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Jayesh Patel*, and Dan Wright* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV6621 | 9/12/2018 | Dan Wright (dan@millerbarondestein.com) | Dan Wright (dan@millerbarondestein.com); Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@callwline.com) | | Robert Silverstein (robert@robertsilversteinlaw.com); Veronica Lebron (veronica@robertsilversteinlaw.com) | RE: SL-005: 1 Misleading Hearing Notice issued for the Schrader Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright*, Jayesh Patel*, Esther Kornfeld* Robert Silverstein*, and Veronica Lebron* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV6622 | 9/12/2018 | Jayesh Patel (jpatel@callwline.com) | Dan Wright (dan@millerbarondestein.com); Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@callwline.com) | | Esther Kornfeld (esther@robertsilversteinlaw.com); Veronica Lebron (veronica@robertsilversteinlaw.com) | RE: SL-005: 1 Misleading Hearing Notice issued for the Schrader Hotel | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel*, Dan Wright*, Esther Kornfeld*, and Veronica Lebron* regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV6623 | 9/11/2018 | Robert Silverstein (robert@robertsilverstein... | Jayesh Patel (jpatel@callwline.com) | | Veronica Lebron (veronica@robertsilversteinlaw.com) | Re: SL-005 Schrader Hotel - Copy of Mitch Tsai Preliminary Objection letter | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Jayesh Patel*, and Veronica Lebron* regarding a CEQA lawsuit involving the Relevant Group. |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRI644 | 9/12/2018 | Dan Wright (dan@indianlakemanizwillow.com) | Other Stanfield; Robert Silverstein (robert@silversteinattorneylaw.com); veronica@silversteinattorneylaw.com; oil; Jayesh Patel (jpatel@rcdavllaw.com) | | | KL 005 Schedule Hotel - Copy of Match Tier Free remaining Objection letter | Privilege Withheld | SUNSET_00001395-SUNSET_00001138 | Attorney Client Privilege | Email providing legal advice from Dan Wright", Robert Silverstein", and Veronica Lohman" regarding a CCDA lawsuit involving the Relevant Group. |
| PRI645 | 9/11/2018 | Dan Wright (dan@indianlakemanizwillow.com) | Sareel Rosemand (srosemand@rcdavllaw.com); veronica@silversteinattorneylaw.com; oil; Jayesh Patel (jpatel@rcdavllaw.com) | Robert Silverstein (robert@silversteinattorneylaw.com) | | | Privilege Withheld | SUNSET_00001395-SUNSET_00001138 | Attorney Client Privilege | Email providing legal advice from Dan Wright", Jayesh Patel", Sareel Rosemand", Robert Silverstein", and Veronica Lohman" regarding a CCDA lawsuit involving the Relevant Group. |
| PRI646 | 8/27/2018 | Robert Silverstein | Sareel Rosemand (srosemand@rcdavllaw.com); veronica@silversteinattorneylaw.com; oil; Jayesh Patel (jpatel@rcdavllaw.com); Dan Wright | | | | Privilege Withheld | SUNSET_00001395-SUNSET_00001138 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein", Jayesh Patel", and Sareel Rosemand" regarding the Relevant Group. |
| PRI647 | 8/27/2018 | Robert Silverstein | Sareel Rosemand (srosemand@rcdavllaw.com); Jayesh Patel | | | | Privilege Withheld | SUNSET_00001138 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein", Jayesh Patel" and Sareel Rosemand" regarding the Relevant Group. |
| PRI648 | 8/27/2018 | Robert Silverstein | Sareel Rosemand (srosemand@rcdavllaw.com); Jayesh Patel; Dan Wright | | | | Privilege Withheld | SUNSET_00001138 | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Dan Wright", and Jayesh Patel" regarding a CCDA lawsuit involving the Relevant Group. |
| PRI649 | 8/24/2018 | Mohamed Soroni | (srosemand@rcdavllaw.com); Sareel Rosemand; Robert Silverstein | Robert Silverstein (srosemand@rcdavllaw.com) | | Notice of Public Hearing 16005-165SUN Scheduler Boulevard | Privilege Withheld | SUNSET_00001138-SUNSET_00001138 | Attorney Client Privilege | Email chain providing information to assist in rendering legal advice from Robert Silverstein" and Jayesh Patel" regarding a CCDA lawsuit involving the Relevant Group. |
| PRI650 | 8/27/2018 | Mohamed Soroni (mohamed@rcdavllaw.com) | (srosemand@rcdavllaw.com); oil; Jayesh Patel; Mohamed Soroni | Robert Silverstein | | Generator Invoice Dorset Landmark 003-004 | Privilege Withheld | SUNSET_00001138-SUNSET_00001138 | Attorney Client Privilege | Email providing and requesting legal advice from Robert Silverstein", Jayesh Patel", Eddie Navarro", and Mohamed Soroni" regarding a CCDA lawsuit. |
| PRI651 | 8/24/2018 | Dan Wright (dan@indianlakemanizwillow.com) | Robert Silverstein (robert@silversteinattorneylaw.com); Sareel Rosemand; Jayesh Patel; Mohamed Soroni | Dan Wright | | FW: Updates re: Proposed Temporary Bridge Housing at 1513 Schrader Blvd (Parking Lot Left) | Privilege Withheld | SUNSET_00001138 | Attorney Client Privilege | Email chain providing legal advice from Dan Wright", Mohamed Soroni", Jayesh Patel" regarding the Villas Hotel. |
| PRI652 | 8/24/2018 | Dan Wright (dan@indianlakemanizwillow.com) | | | | FW: Updates re: Proposed Temporary Bridge Housing at 1513 Schrader Blvd (Parking Lot Left) | Privilege Withheld | SUNSET_00001138 | Attorney Client Privilege | Report providing legal advice from Dan Wright" regarding the Villas Hotel. |
| PRI653 | 8/24/2018 | Dan Wright (dan@indianlakemanizwillow.com) | Robert Silverstein; Jayesh Patel | | | SX577.001_Sent_113425_3sr-Jab_2018_8-24-2018.pdf | Privilege Withheld | SUNSET_00001138 | Attorney Client Privilege | Report providing legal advice to Dan Wright" regarding the Villas Hotel. |
| PRI654 | 8/14/2018 | Jayesh Patel (jpatel@rcdavllaw.com) | Robert Silverstein; Sareel Rosemand; oil | | | SX577.001_Sent_113425_3sr-Jab_2018_8-24-2018.pdf | Privilege Withheld | SUNSET_00001138-SUNSET_00001138 | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel" regarding a CCDA lawsuit involving the Tommee Hotel. |
| PRI655 | 8/14/2018 | Jayesh Patel (jpatel@rcdavllaw.com) | Robert Silverstein; Dan Wright | Dan Wright | | RE: Tommee Hotel | Privilege Withheld | SUNSET_00001138-SUNSET_00001138 | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Robert Silverstein", Dan Wright" and Dan Wright" regarding the Tommee Hotel. |
| PRI656 | 8/2/2018 | Robert Silverstein (robert@silversteinattorneylaw.com) | (srosemand@rcdavllaw.com); Jayesh Patel (jpatel@rcdavllaw.com) | | | RE: Tommee Hotel | Privilege Withheld | SUNSET_00001138 | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Sareel Rosemand", Jayesh Patel", and Mara Seghishasim regarding a CCDA lawsuit involving the Tommee Hotel. |
| PRI657 | 7/30/2018 | Jayesh Patel | (robert@silversteinattorneylaw.com) | Robert Silverstein (robert@silversteinattorneylaw.com); Mara Seghishasim | | RE: 5L 005: Relevant Hospitality Flyer | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Robert Silverstein", and Mara Seghishasim" regarding the Relevant Group. |
| PRI658 | 7/27/2018 | Dan Wright (dan@indianlakemanizwillow.com) | Robert Silverstein (robert@silversteinattorneylaw.com); Sareel Rosemand (srosemand@rcdavllaw.com); oil; Jayesh Patel | Sareel Rosemand; Mara Seghishasim | | Re: 5L 005: Relevant Hospitality Flyer | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright", Robert Silverstein", Jayesh Patel" and Mara Seghishasim" regarding the Relevant Group. |
| PRI659 | 7/27/2018 | Robert Silverstein | Sareel Rosemand (srosemand@rcdavllaw.com); Sareel Rosemand; oil; Jayesh Patel; Dan Wright | | | Re: 5L 005: Relevant Hospitality Flyer | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Dan Wright", Jayesh Patel", and Mara Seghishasim" regarding the Relevant Group. |
| PRI660 | 7/27/2018 | Jayesh Patel (jpatel@rcdavllaw.com) | Robert Silverstein; Dan Wright | | | Re: 5L 005: Relevant Hospitality Flyer | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Robert Silverstein", Dan Wright" and Dan Wright" regarding the Relevant Group. |
| PRI661 | 7/21/2018 | Robert Silverstein (robert@silversteinattorneylaw.com) | Dan Wright (dan@indianlakemanizwillow.com); Jayesh Patel | | | Re: 5L 005: Relevant Hospitality Flyer | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Dan Wright", and Jayesh Patel" regarding a CCDA lawsuit involving the Relevant Group. |
| PRI662 | 7/27/2018 | Dan Wright (dan@indianlakemanizwillow.com) | | | | Re: 5L 005: Relevant Hospitality Flyer | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright" regarding a CCDA lawsuit involving the Relevant Group. |

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV643 | 7/27/2018 | Jayesh Patel (jpatel@cdrelaw.com) | Dan Wright (dan@robertsilversteinlaw.com); Saeed Noumand (snoumand@noumand.com); Jayesh Patel (jpatel@cdrelaw.com) | Saeed Noumand (snoumand@noumand.com); Nara Soghbatyan (nara@robertsilversteinlaw.com); Robert Silverstein (robert@robertsilversteinlaw.com) | | Re: SL-001: Relevant Hospitality Flyer | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Dan Wright", Robert Silverstein", and Nara Soghbatyan" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV644 | 7/27/2018 | Dan Wright (dan@robertsilversteinlaw.com) | Saeed Noumand (snoumand@noumand.com); Jayesh Patel (jpatel@cdrelaw.com) | Nara Soghbatyan; Robert Silverstein (robert@robertsilversteinlaw.com) | | Re: SL-001: Relevant Hospitality Flyer | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Dan Wright", Robert Silverstein", and Nara Soghbatyan" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV645 | 7/27/2018 | Jayesh Patel (jpatel@cdrelaw.com) | Dan Wright (dan@robertsilversteinlaw.com); Saeed Noumand (snoumand@noumand.com); Jayesh Patel (jpatel@cdrelaw.com) | Saeed Noumand (snoumand@noumand.com); Nara Soghbatyan | | Re: SL-001: Relevant Hospitality Flyer | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Dan Wright", Robert Silverstein", and Nara Soghbatyan" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV646 | 7/26/2018 | Jayesh Patel (jpatel@cdrelaw.com) | Dan Wright (dan@robertsilversteinlaw.com) | Saeed Noumand (snoumand@noumand.com); Robert Silverstein (robert@robertsilversteinlaw.com); Jayesh Patel (jpatel@cdrelaw.com); Nara Soghbatyan | | Re: SL-001: Relevant Hospitality Flyer | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright", Robert Silverstein", and Nara Soghbatyan" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV647 | 7/26/2018 | Dan Wright (dan@robertsilversteinlaw.com) | Jayesh Patel (jpatel@cdrelaw.com) | Nara Soghbatyan | | Re: SL-001: Relevant Hospitality Flyer | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright", Robert Silverstein", Jayesh Patel", and Nara Soghbatyan" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV648 | 7/26/2018 | Robert Silverstein (robert@robertsilversteinlaw.com) | Saeed Noumand (snoumand@noumand.com); Jayesh Patel (jpatel@cdrelaw.com) | Dan Wright (dan@robertsilversteinlaw.com); Nara Soghbatyan | | Re: SL-001: Relevant Hospitality Flyer | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Jayesh Patel", Dan Wright", and Nara Soghbatyan" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV649 | 7/23/2018 | Robert Silverstein (robert@robertsilversteinlaw.com) | Mohamad Irawani (mirawani@noumand.com); Saeed Noumand (snoumand@noumand.com); Jayesh Patel (jpatel@cdrelaw.com) | Jayesh Patel (jpatel@robertsilversteinlaw.com); Veronica Lebron (vlebron@robertsilversteinlaw.com) | | Silverstein Retainer Sunset Landmark 002.docx | Privilege Withheld | SUNSET_00001321-SUNSET_00001322 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein", Jayesh Patel", Esther Kornfeld", Teresa Silverstein", and Veronica Lebron" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV650 | 7/23/2018 | Robert Silverstein | Robert Silverstein | | | SA577.0001_Smt_113900_the June 2018_7 30-2018.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein", Esther Kornfeld", and Dan Wright" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV651 | 7/23/2018 | Robert Silverstein | Robert Silverstein | | | SA577.0001_Smt_113610_the June 2018_7 30-2018.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV652 | 7/23/2018 | Robert Silverstein | Robert Silverstein | | | SA577.0001_Smt_113611_the June 2018_7 30-2018.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Dan Wright" regarding a CEQA lawsuit involving the Relevant Group. |
| PRIV653 | 7/23/2018 | Jayesh Patel (jpatel@cdrelaw.com) | Saeed Noumand (snoumand@noumand.com) | | | Fwd: Your threatening email, in Anticipation of Litigation, Civil Code 47 communication | Privilege Redact | SUNSET_00001365 SUNSET_00001365 | Attorney Client Privilege | Email providing legal advice from Jayesh Patel" regarding a CEQA lawsuit involving the Toremic Hotel and the Wilcox Hotel. |
| PRIV654 | 7/21/2018 | Jayesh Patel (jpatel@cdrelaw.com) | Saeed Noumand (snoumand@noumand.com) | | | Fwd: Your threatening email, in Anticipation of Litigation, Civil Code 47 communication | Privilege Redact | SUNSET_00001367 SUNSET_00001367 | Attorney Client Privilege | Email providing legal advice from Jayesh Patel" regarding a CEQA lawsuit involving the Toremic Hotel and the Wilcox Hotel. |
| PRIV655 | 7/20/2018 | Dan Wright (dan@robertsilversteinlaw.com) | Saeed Noumand (snoumand@noumand.com); Nara | Mohamad Irawani (mirawani@noumand.com); Dan Wright | | SL-001: parking operation | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright", Robert Silverstein", Jayesh Patel", Nara Soghbatyan", and Veronica Lebron" regarding a CEQA lawsuit involving the Relevant Group the Selma Wilcox Hotel. |
| PRIV656 | 7/20/2018 | Robert Silverstein (robert@robertsilversteinlaw.com) | Saeed Noumand (snoumand@noumand.com); Dan Wright; Jayesh Patel (jpatel@cdrelaw.com) | Mirawani (mirawani@noumand.com); Dan Wright; Nara Soghbatyan; Veronica Lebron (vlebron@robertsilversteinlaw.com) | | SL-001: parking operation | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Jayesh Patel", Dan Wright", Nara Soghbatyan", and Veronica Lebron" regarding a CEQA lawsuit involving the Relevant Group the Selma Wilcox Hotel. |
| PRIV657 | 7/20/2018 | Robert (robert@robertsilversteinlaw.com) | Jayesh Patel (jpatel@cdrelaw.com) | | | Re: SL-001, -002, -003 conference and possible incipient email exchange | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Jayesh Patel", Dan Wright", Nara Soghbatyan", and Veronica Lebron" regarding a CEQA lawsuit involving the Toremic Hotel and the Wilcox Hotel. |

## Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV674 | 12/12/2017 | Jayesh Patel (jpatel@robentandre.law.com) | Saeed Nourmand (snourmand@nourmand.com) | | | RE: Wilcox/Tomine | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tomine Hotel and the Wilcox Hotel |
| PRIV673 | 12/14/2017 | Jayesh Patel (jpatel@robentandre.law.com) | Saeed Nourmand (snourmand@nourmand.com) | | | | Privilege Withheld | SUNSET_00001239 SUNSET_00001240 | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tomine Hotel and the Wilcox Hotel |
| PRIV672 | 12/22/2017 | Robert Silverstein (robert@smlandmarklaw.com); Muhammad Farooqi (mfarooqi@nourmand.com) | Jayesh Patel (jpatel@robentandre.law.com) | Saeed Nourmand (snourmand@nourmand.com) | | FW: CourtCall Appearance - Serve Copy for DOL Hearing on 12-18-17 PDF | Privilege Withheld | SUNSET_00001241 SUNSET_00001243 | Attorney Client Privilege | Email providing legal advice from Robert Silverstein, "Jayesh Patel", and Dan Wright" regarding a CEQA lawsuit involving the Relevant Group, the Selma Wilcox Hotel |
| PRIV671 | 12/21/2017 | Jayesh Patel (jpatel@robentandre.law.com) | Robert Silverstein (robert@smlandmarklaw.com); Dan Wright | Saeed Nourmand (snourmand@nourmand.com) | | RE: SL-001: 30 Day Notice | Privilege Withheld | SUNSET_00001235 SUNSET_00001238 | Attorney Client Privilege | Email chain providing legal advice from "Jayesh Patel", Dan Wright" regarding a CEQA lawsuit involving the Relevant Group, the Selma Wilcox Hotel |
| PRIV670 | 12/28/2017 | Jayesh Patel (jpatel@robentandre.law.com) | Dan Wright | | | RE: SL-001: 30 Day Notice | Privilege Withheld | SUNSET_00001236 SUNSET_00001234 | Attorney Client Privilege | Email chain providing legal advice from "Jayesh Patel", and Dan Wright" regarding a CEQA lawsuit involving the Relevant Group, the Selma Wilcox Hotel |
| PRIV669 | 12/28/2017 | Robert Silverstein (robert@smlandmarklaw.com); Jayesh Patel (jpatel@robentandre.law.com) | Saeed Nourmand (snourmand@nourmand.com) | | | FW: Checking In | Privilege Withheld | SUNSET_00001233 SUNSET_00001234 | Attorney Client Privilege; Work Product | Email providing legal advice from Robert Silverstein" prepared in the course of litigation regarding a CEQA lawsuit involving the Relevant Group |
| PRIV668 | 3/12/2018 | Jayesh Patel (jpatel@robentandre.law.com) | Saeed Nourmand (snourmand@nourmand.com) | | | FW: Checking In | Privilege Withheld | | Attorney Client Privilege; Work Product | Email providing legal advice from Jayesh Patel" regarding the Relevant Group |
| PRIV667 | 5/4/2018 | Saeed Nourmand (snourmand@nourmand.com) | Jayesh Patel (jpatel@robentandre.law.com) | Dan Wright | | FW: PreliminCommitment.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice to the Wilcox Hotel |
| PRIV666 | 7/23/2018 | Saeed Nourmand (snourmand@nourmand.com) | Robert Silverstein (robert@smlandmarklaw.com) | Dan Wright; Jayesh Patel; Esther Turnford; Esther Turnford (esther@smlandmarklaw.com) | | SL-005: Transcript of Grant Ring speaking at HOLMBY POOLS de Novo Document PDF | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit |
| PRIV665 | 7/23/2018 | Robert Silverstein (robert@smlandmarklaw.com) | Jayesh Patel (jpatel@robentandre.law.com) | Dan Wright; Veronica Lebron (veronica@robentandre.law.com); Saeed Nourmand | | SL-005: First Objections to CHC 2018-2601 VCC 2018-3142-SPP_de Novo Document PDF | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit |
| PRIV664 | 7/27/2018 | Robert Silverstein (robert@smlandmarklaw.com) | Dan Wright | | | SL-005: Transcript of City of Los Angeles 7/27/18 CPC Hearing | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit |
| PRIV663 | 7/27/2018 | Robert Silverstein (robert@smlandmarklaw.com); Saeed Nourmand (snourmand@nourmand.com); Jayesh Patel (jpatel@robentandre.law.com) | Saeed Nourmand | Mark Saghbazarian; Mark Saghbazarian; Veronica Lebron (veronica@robentandre.law.com); Dan Wright | | Re: SL-001, -005: EB-5 conference and possible incognito intervention | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Robert Silverstein", Dan Wright", Naira Saghbazarian", and Veronica Lebron" regarding a CEQA lawsuit involving the Relevant Group and the Selma Wilcox Hotel |
| PRIV662 | 7/29/2018 | Robert Silverstein (robert@smlandmarklaw.com); Jayesh Patel (jpatel@robentandre.law.com) | Saeed Nourmand | Mark Saghbazarian; Mark Saghbazarian; Veronica Lebron (veronica@robentandre.law.com); Dan Wright | | Re: SL-001, -005: EB-5 conference and possible incognito intervention | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Robert Silverstein", Dan Wright", Naira Saghbazarian", and Veronica Lebron" regarding a CEQA lawsuit involving the Relevant Group and the Selma Wilcox Hotel |
| PRIV661 | 7/29/2018 | Robert Silverstein (robert@smlandmarklaw.com) | Saeed Nourmand | Mark Saghbazarian; Veronica Lebron (veronica@robentandre.law.com); Jayesh Patel | | Re: SL-001, -005: EB-5 conference and possible incognito intervention | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel", Robert Silverstein", Naira Saghbazarian", and Veronica Lebron" regarding a CEQA lawsuit involving the Relevant Group and the Selma Wilcox Hotel |
| PRIV660 | 7/29/2018 | Saeed Nourmand (snourmand@nourmand.com) | Robert Silverstein; Jayesh Patel | Mark Saghbazarian; Veronica Lebron | | Re: SL-001, -005: EB-5 conference and possible incognito intervention | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice to the Selma Wilcox Hotel |
| PRIV659 | 7/29/2018 | Saeed Nourmand (snourmand@nourmand.com) | Veronica Lebron (veronica@robentandre.law.com); Mark Saghbazarian; Mark Saghbazarian; Dan Wright; Robert Silverstein | | | Re: SL-001, -005: EB-5 conference and possible intervention | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice to the Selma Wilcox Hotel |
| PRIV658 | 7/29/2018 | Jayesh Patel (jpatel@robentandre.law.com) | Veronica Lebron (veronica@robentandre.law.com); Dan Wright; Mark Saghbazarian; Mark Saghbazarian; Robert Silverstein | | | RE: SL-001, -005: EB-5 conference and possible intervention | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel", Robert Silverstein", Dan Wright", Naira Saghbazarian", and Veronica Lebron" regarding a CEQA lawsuit involving the Relevant Group and the Selma Wilcox Hotel |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV676 | 11/27/2017 | Jayesh Patel (jpatel@rubulaw.com) | Saeed Noumand (snoumand@bhnyrelawfirm.com) | | | Fwd: 57-0007 Conversation with the Court's Clerk | Privilege Withheld | SUNSET_00001234 SUNSET_00001235 | Attorney Client Privilege | Email chain reflecting legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV677 | 11/16/2017 | Jayesh Patel (jpatel@rubulaw.com) | Robert Silverstein (robert@robertsilversteinlaw.com) | | | Re: 56-0007 Conversation with the Court's Clerk | Privilege Withheld | | Attorney Client Privilege | Email chain reflecting legal advice from Jayesh Patel, Robert Silverstein, and Veronica Lebron regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV678 | 11/8/2017 | Mohamad Irani | Jayesh Patel (jpatel@rubulaw.com); Saeed Noumand (snoumand@bhnyrelawfirm.com); Veronica Lebron (veronica@robertsilversteinlaw.com) | | | | Privilege Withheld | | Attorney Client Privilege | Email requesting legal advice from Robert Silverstein, Jayesh Patel, and Veronica Lebron regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV679 | 11/8/2017 | Robert Silverstein | | | | SK577.001_Simi_131381_the October 2017_11-7-2017.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein and Esther Kornfeld regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV680 | 11/8/2017 | Robert Silverstein | | | | SK577.001_Simi_131381_the October 2017_11-7-2017.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein and Dan Wright regarding a CEQA lawsuit involving the Tommie Hotel |
| PRIV681 | 11/8/2017 | Robert Silverstein | | | | HG577.001_Simi_131382_the October 2017_11-7-2017.pdf | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV682 | 10/27/2017 | Jayesh Patel (jpatel@rubulaw.com) | Saeed Noumand (snoumand@bhnyrelawfirm.com) | | | Fwd: Sunset Landmark | Privilege Withheld | SUNSET_00001189 SUNSET_00001190 | Attorney Client Privilege | Email chain reflecting legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel |
| PRIV683 | 10/27/2017 | Jayesh Patel (jpatel@rubulaw.com) | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 6516 Selma (Tommie Hotel).DOCX | Privilege Withheld | SUNSET_00001191 SUNSET_00001192 | Attorney Client Privilege | Agreement providing legal advice from Jayesh Patel regarding settlement negotiations involving the Tommie Hotel |
| PRIV684 | 10/27/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 1543 Wilcox (Thompson Hotel).DOCX | Privilege Withheld | SUNSET_00001193 SUNSET_00001194 | Attorney Client Privilege | Agreement providing legal advice from Jayesh Patel regarding settlement negotiations involving the Tommie Hotel |
| PRIV685 | 10/27/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 1543 Wilcox (Thompson Hotel).DOCX | Privilege Withheld | SUNSET_00001195 SUNSET_00001196 | Attorney Client Privilege | Agreement providing legal advice from Jayesh Patel regarding settlement negotiations involving the Tommie Hotel and the Wilcox Hotel |
| PRIV686 | 10/27/2017 | Jayesh Patel | Saeed Noumand (snoumand@bhnyrelawfirm.com) | | | Re: Settlements Agreements at Wilcox and Selma | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Selma Wilcox Hotel |
| PRIV687 | 10/24/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Mohamad Irani (mirany@silbyco.comAE.com); Saeed Noumand (snoumand@bhnyrelawfirm.com); Jayesh Patel | Jesus Silvestrani; Tracee Silverstein; Jesus Lebron (veronica@robertsilversteinlaw.com) | | | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein, Jayesh Patel, Esther Kornfeld, Tracee Silverstein, and Veronica Lebron regarding a CEQA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV688 | 10/24/2017 | Robert Silverstein | Saeed Noumand (snoumand@bhnyrelawfirm.com) | | | SK577.001_Simi_131361_10-20-2017_the September 2017.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV689 | 10/24/2017 | Robert Silverstein | | | | SK577.001_Simi_131375_10-20-2017_the September 2017.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein and Dan Wright regarding a CEQA lawsuit involving the Tommie Hotel |
| PRIV690 | 10/24/2017 | Robert Silverstein | | | | HG577.001_Simi_131374_10-20-2017_the September 2017.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Selma Wilcox Hotel and the Tommie Hotel |
| PRIV691 | 10/24/2017 | Jayesh Patel (jpatel@rubulaw.com) | Saeed Noumand (snoumand@bhnyrelawfirm.com) | | | Real-sections | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Wilcox Hotel |
| PRIV692 | 10/24/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 6516 Selma (Tommie Hotel).DOCX | Privilege Withheld | | Attorney Client Privilege | Agreement providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV693 | 10/24/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 1341 Wilcox (Thompson Hotel).DOCX | Privilege Withheld | | Attorney Client Privilege | Agreement providing legal advice from Robert Silverstein regarding a CEQA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV694 | 10/24/2017 | Jayesh Patel | | | | Settlement Agreement and Release for Sunset Landmark Litigation against 1341 Wilcox (Thompson Hotel).DOCX | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel regarding settlement negotiations involving the Selma Wilcox Hotel and the Tommie Hotel |
| PRIV695 | 10/23/2017 | Jayesh Patel (jpatel@rubulaw.com) | | | | Re: Wilcox and Selma Settlement Agreement | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel regarding settlement negotiations involving the Selma Wilcox Hotel and the Tommie Hotel |
| PRIV696 | 10/23/2017 | Jayesh Patel | | | | Re: Wilcox and Selma Settlement Agreement | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Jayesh Patel regarding settlement negotiations involving the Tommie Hotel and the Wilcox Hotel |
| PRIV697 | 10/19/2017 | Jayesh Patel (jpatel@rubulaw.com) | Saeed Noumand (snoumand@bhnyrelawfirm.com) | | | | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Selma Wilcox Hotel and the Wilcox Hotel |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV408 | 10/16/2017 | Esther Kornfeld | | | | | Privilege Withheld | | Attorney Client Privilege | |
| PRIV409 | 9/20/2017 | Jayesh Patel | Robert Silverstein | | | | Privilege Withheld | | Attorney Client Privilege | |
| PRIV407 | 9/29/2017 | | Jayesh Patel | | | RE: Thompson/Tommie Settlement Agreements | Privilege Withheld | | Attorney Client Privilege | |
| PRIV403 | 9/27/2017 | Robert Silverstein | Jayesh Patel | Dan Wright | RE: 6002: Tommie Hotel - Sunset Landmark / | Privilege Withheld | | Attorney Client Privilege | |
| PRIV404 | 9/27/2017 | Robert Silverstein | Jayesh Patel | | | | Privilege Withheld | | Attorney Client Privilege | |
| PRIV405 | 9/22/2017 | Robert Silverstein | Jayesh Patel | | | Revised Stipulation RE 2d Ghost | Privilege Withheld | | Work Product | |
| PRIV402 | 9/24/2017 | Robert Silverstein | Jayesh Patel | Dan Wright | Re: Wilton | Privilege Withheld | | Attorney Client Privilege | |
| PRIV401 | 9/22/2017 | Robert Silverstein | Jayesh Patel | | | | Privilege Withheld | | Attorney Client Privilege | |
| PRIV406 | 9/24/2017 | Robert Silverstein | Mahmood Imrani / Jayesh Patel | | | | Privilege Withheld | | Attorney Client Privilege | |
| PRIV400 | 9/18/2012 | Robert Silverstein | Jayesh Patel | | | SETTLEMENT_Draft_111918-915-2017.pdf | Privilege Withheld | | Attorney Client Privilege | |
| PRIV406 | 9/15/2012 | Robert Silverstein | Jayesh Patel | Dan Wright | Re: Wilton | Privilege Withheld | | Attorney Client Privilege | |
| PRIV410 | 8/29/2012 | | Jayesh Patel | Dan Wright / Veronica Lebron | SL-002 and 002 cases | Privilege Withheld | | Attorney Client Privilege | |
| PRIV708 | 9/12/2017 | Robert Silverstein | Jayesh Patel | Veronica Lebron | SL-002: Re: Adeva Wilton Land, LLC - City of Los | Privilege Withheld | | Attorney Client Privilege | |
| PRIV709 | 9/12/2017 | Robert Silverstein | Jayesh Patel | Veronica Lebron | | Privilege Withheld | | Attorney Client Privilege | |
| PRIV721 | 8/24/2012 | Robert Silverstein | Jayesh Patel | Veronica Lebron | RE: SL-002: Re: Tommie - et CONFIDENTIAL | Privilege Withheld | | Attorney Client Privilege | |
| PRIV721 | 8/24/2012 | Robert Silverstein | Jayesh Patel | Veronica Lebron | Fwd: SL Wilton - Important | Privilege Withheld | | Attorney Client Privilege | |
| PRIV722 | 8/24/2017 | Robert Silverstein | Jayesh Patel | Veronica Lebron | SL-002: SunsetJWilton-Keeping Tomorrow | Privilege Withheld | | Attorney Client Privilege | |
| PRIV723 | 8/24/2017 | | Jayesh Patel | | Fwd: SL Wilton - Important | Privilege Withheld | | Attorney Client Privilege | |
| PRIV724 | 8/24/2017 | Robert Silverstein | Jayesh Patel | | SL-005: Wilton - Important | Privilege Withheld | SUNSET 0000138-SUNSET 0000139 | Attorney Client Privilege | |

# Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | BCC | CC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV725 | 8/9/2017 | Robert Silverstein (robert@robertsilversteinlaw.com) | Mohamad Yermal (mehrom@hourmazd.com); Saeed Hourmazd (saeed@hourmazd.com); Veronica Labrun (veronica@robertsilversteinlaw.com) | | info@robertsilversteinlaw.com; Teresa Silverstein (teresa@robertsilversteinlaw.com); Veronica (veronica@robertsilversteinlaw.com) | Silverstein Invoice PX_001 | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Joseph Patel*, Esther Korelishi*, Teresa Silverstein*, and Veronica Labrun* regarding a CCIA lawsuit involving the Wilcox Hotel. |
| PRIV726 | 8/9/2017 | Robert Silverstein | | | | SX577.003_Libel_111117 Re May 8, 9 2017.pdf | Privilege Withheld | | Attorney Client Privilege | Report providing legal advice from Robert Silverstein*, Esther Korelishi*, Dan Weight*, and Joseph Durbin* regarding a CCIA lawsuit involving the Wilcox Hotel |
| PRIV727 | 8/11/2017 | Dan Wright (dan@robertsilversteinlaw.com); Robert Silverstein (robert@robertsilversteinlaw.com) | Veronica (veronica@robertsilversteinlaw.com); Robert Silverstein (robert@robertsilversteinlaw.com); Joseph Patel (jpatel@robertsilverlaw.com) | | | Re: Fwd: Tommie Hotel - Common's Litigation Veteran Agreements | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright*, Robert Silverstein*, and Joseph Patel* regarding a CCIA lawsuit involving the Tommie Hotel |
| PRIV728 | 8/11/2017 | Saeed Hourmazd (saeed@hourmazd.com); Robert Silverstein (robert@robertsilversteinlaw.com); Joseph Patel (jpatel@robertsilverlaw.com) | | | | Fwd: Tommie Hotel - Common Litigation Veteran Agreements | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Joseph Patel*, and Dan Wright* regarding a CCIA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV729 | 7/25/2017 | Robert Silverstein (robert@robertsilverlaw.com) | Veronica (veronica@robertsilversteinlaw.com); Joseph Patel (jpatel@robertsilverlaw.com) | | Dan Wright (dan@robertsilversteinlaw.com) | RE: 90.002_ Tommie Hotel_possible amended petition to enforce CCIA/due process cause of action | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Joseph Patel*, and Dan Wright* regarding a CCIA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV720 | 7/25/2017 | Robert Silverstein (robert@robertsilverlaw.com) | Veronica (veronica@robertsilversteinlaw.com); Joseph Patel (jpatel@robertsilverlaw.com) | | | SX.001 and SL.002 - Teleconference with Co-counsel on Tommie Hotel litigation | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Joseph Patel*, and Dan Wright* regarding a CCIA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV721 | 7/31/2017 | Joseph Patel (jpatel@robertsilverlaw.com) | Saeed Hourmazd (veronica@hourmazd.com) | | | Wilcox | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Joseph Patel* regarding a CCIA lawsuit involving the Wilcox Hotel |
| PRIV722 | 7/31/2017 | Joseph Patel | | | | 791.054_1 DOC | Privilege Withheld | | Attorney Client Privilege | Letter providing legal advice from Joseph Patel* regarding a CCIA lawsuit involving |
| PRIV723 | 7/6/2017 | Saeed Hourmazd (veronica@hourmazd.com); Robert Silverstein (robert@robertsilverlaw.com); Joseph Patel (jpatel@robertsilverlaw.com) | Veronica (veronica@robertsilversteinlaw.com); Joseph Patel (jpatel@robertsilverlaw.com) | | Dan Wright (dan@robertsilversteinlaw.com) | Re: SL.001 - First Overruled Memo of Richard Heyman Opens | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Joseph Patel*, and Dan Wright* regarding a CCIA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV724 | 7/6/2017 | Dan Wright (dan@robertsilversteinlaw.com) | Saeed Hourmazd (saeed@hourmazd.com); Joseph Patel (jpatel@robertsilverlaw.com); Robert Silverstein (robert@robertsilverlaw.com) | | Dan Wright (dan@robertsilversteinlaw.com) | SL.001 First Overruled Memo of Richard Heyman Opens | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein*, Joseph Patel*, and Dan Wright* regarding a CCIA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV725 | 4/20/2017 | Dan Wright (dan@robertsilversteinlaw.com) | Joseph Patel (jpatel@robertsilverlaw.com); Robert Silverstein (robert@robertsilverlaw.com) | | Joseph Patel (jpatel@robertsilverlaw.com) | Re: Setback Firms MAC | Privilege Withheld | | Attorney Client Privilege | Email chain providing legal advice from Dan Wright*, Robert Silverstein*, and Joseph Patel* regarding the Tommie Hotel and the Wilcox Hotel |
| PRIV726 | 6/30/2017 | Robert Silverstein (robert@robertsilverlaw.com) | Saeed Hourmazd (veronica@hourmazd.com) | | Dan Wright (dan@robertsilversteinlaw.com); Joseph Patel (jpatel@robertsilverlaw.com) | Re: Setback Firms MAC | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Dan Wright*, and Joseph Patel* regarding involving the Tommie Hotel and the Wilcox Hotel |
| PRIV727 | 6/29/2017 | Robert Silverstein (robert@robertsilverlaw.com) | Mohamad Yermal (mehrom@hourmazd.com); Saeed Hourmazd (saeed@hourmazd.com); Joseph Patel (jpatel@robertsilverlaw.com) | | info@robertsilversteinlaw.com; Teresa Silverstein (teresa@robertsilversteinlaw.com); Veronica Labrun (veronica@robertsilversteinlaw.com) | Silverstein Invoice PX_001 | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Joseph Patel*, Esther Korelishi*, Teresa Silverstein*, and Veronica Labrun* regarding a CCIA lawsuit involving the Wilcox Hotel |
| PRIV728 | 6/29/2017 | Robert Silverstein | | | | SX577.003_Libel_111117 Re April 8 open | Privilege Withheld | | Attorney Client Privilege | Email providing legal advice from Robert Silverstein*, Esther Korelishi*, Dan Wright*, and Joseph Durbin* regarding a CCIA lawsuit involving the Wilcox Hotel |
| PRIV729 | 11/14/2018 | Saeed Hourmazd (saeed@hourmazd.com) | Joseph Patel (jpatel@robertsilverlaw.com) | | | RE: 1522 N. Schrader - Preliminary assessment memos - Draft | Privilege Withheld | | Attorney Client Privilege | Email chain reporting legal advice from Joseph Patel* regarding a CCIA lawsuit involving the Tommie Hotel |
| PRIV730 | 1/2/2017 | Saeed Hourmazd (veronica@hourmazd.com) | Joseph Patel (jpatel@robertsilverlaw.com) | | Saeed Hourmazd (veronica@hourmazd.com) | RE: Wilcox/Tommie | Privilege Withheld | | Attorney Client Privilege | Email chain reporting legal advice from Joseph Patel* regarding a CCIA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV731 | 11/17/2017 | Saeed Hourmazd (veronica@hourmazd.com) | Joseph Patel (jpatel@robertsilverlaw.com) | | Saeed Hourmazd (veronica@hourmazd.com) | RE: Wilcox/Tommie | Privilege Withheld | | Attorney Client Privilege | Email chain reporting legal advice from Joseph Patel* regarding a CCIA lawsuit involving the Tommie Hotel and the Wilcox Hotel |
| PRIV732 | 11/17/2017 | Saeed Hourmazd (veronica@hourmazd.com) | Joseph Patel (jpatel@robertsilverlaw.com) | | | RE: SL-002: Conversation with the Court's Clerk - April 6 open | Privilege Withheld | | Attorney Client Privilege | Email claim requesting legal advice from Joseph Patel* regarding a CCIA lawsuit involving the Wilcox Hotel |
| PRIV733 | 11/17/2017 | Saeed Hourmazd (veronica@hourmazd.com) | Joseph Patel (jpatel@robertsilverlaw.com) | | | RE: Wilcox/Tommie | Privilege Withheld | | Attorney Client Privilege | Email claim requesting legal advice from Joseph Patel* regarding a CCIA lawsuit involving the Sativa Wilcox |
| PRIV734 | 10/27/2017 | Saeed Hourmazd (veronica@hourmazd.com) | Joseph Patel (jpatel@robertsilverlaw.com) | | | Settlement Agreements of Wilcox and Sativa | Privilege Withheld | | Attorney Client Privilege | Email reporting legal advice from Joseph Patel* regarding the Sativa Wilcox |
| PRIV735 | 10/27/2017 | Saeed Hourmazd (veronica@hourmazd.com) | Joseph Patel (jpatel@robertsilverlaw.com) | | | RE: Wilcox and Sativa Settlement Agreement | Privilege Withheld | | Attorney Client Privilege | Email reporting legal advice from Joseph Patel* regarding the Wilcox Hotel |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|---|---|---|---|---|---|---|---|---|---|---|
| PRIV756 | 9/1/2016 | Mahmood Karimi imkarimi@nourmand.com | Jayesh Patel jpatel@robofdaw.com | Saeed Nourmand snourmand@nourmand.com | | 1543 Wilcox hotel LLC | Privilege Withheld | SUNSET 0000073-SUNSET 0000075 | Attorney Client Privilege | Email requesting legal advice from Robert Glushon regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV755 | 10/27/2015 | Mahmood Karimi imkarimi@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | Flor 1543 Wilcox Hotel | Privilege Withheld | SUNSET 0000077-SUNSET 0000080 | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel involving the Wilcox Hotel. |
| PRIV754 | 12/13/2017 | Mahmood Karimi imkarimi@nourmand.com | Saeed Nourmand snourmand@nourmand.com | | | City of LA Notice 8516 Sunset Hotel, LLC | Privilege Withheld | SUNSET 0000080-SUNSET 0000081 | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel regarding a CEQA lawsuit. |
| PRIV753 | 10/27/2015 | Burbank DeCaEro luke.vinto@nourmand.com | jpatel@grunfeld.com | | | Los Angeles City Planning Commission for 1543 Wilcox Hotel, LLC | Privilege Withheld | SUNSET 0000085-SUNSET 0000087 | Attorney Client Privilege | Email providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Wilcox Hotel. |
| PRIV752 | 10/22/2013 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | Los Angeles City Planning Commission for 1543 Wilcox and Guy Matoukh | Privilege Withheld | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel. |
| PRIV751 | 6/24/2017 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | For Thompson/Tommie - Meeting with Jayesh Patel and Guy Matoukh | Privilege Withheld | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel. |
| PRIV750 | 4/25/2013 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | RE: CV-XXXX TO PETITION FOR WRIT OF MANDATE | Privilege Withheld | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel. |
| PRIV749 | 4/25/2013 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | WRIT IN SUPPORT OF PETITION FOR WRIT OF MANDATE | Privilege Withheld | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel. |
| PRIV748 | 7/23/2013 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | For Thompson/Tommie - Meeting with Jayesh Patel and Guy Matoukh | Privilege Withheld | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel. |
| PRIV747 | 7/23/2013 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | For Thompson/Tommie - Meeting with Jayesh Patel and Guy Matoukh | Privilege Withheld | Attorney Client Privilege | Email chain requesting legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel. |
| PRIV746 | 7/23/2013 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | RE: Thompson/Tommie - Meeting with Jayesh Patel and Guy Matoukh | Privilege Withheld | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel. |
| PRIV745 | 7/23/2013 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | Saeed Nourmand snourmand@nourmand.com | | RE: Thompson/Tommie - Settlement Documents | Privilege Withheld | Attorney Client Privilege | Email chain regarding settlement negotiations involving the Tommie Hotel. |
| PRIV744 | 7/2/2017 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | RE: Thompson/Tommie - Settlement Documents | Privilege Withheld | Attorney Client Privilege | Email chain regarding settlement negotiations involving the Tommie Hotel. |
| PRIV743 | 7/2/2017 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | RE: Thompson/Tommie - Meeting with Jayesh Patel and Guy Matoukh | Privilege Withheld | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding a CEQA lawsuit involving the Tommie Hotel. |
| PRIV742 | 7/21/2013 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | Saeed Nourmand snourmand@nourmand.com | | RE: 15-002: Re: Marina Wilcox Land, LLC v. City of Los Angeles - Re: Preparation of Record | Privilege Withheld | Attorney Client Privilege | Email chain providing legal advice from Jayesh Patel regarding settlement negotiations involving the Wilcox Hotel. |
| PRIV741 | 9/14/2017 | Saeed Nourmand snourmand@nourmand.com | Robert Silverstein robert@robertsilversteinlaw.com | Guy Wright (guy@robertsilversteinlaw.com); Esther Kornfeld (esther@robertsilversteinlaw.com); Veronica Lebron (veronica@robertsilversteinlaw.com) | | SM17-002: Javin L133137-Re: May 8 To 2013.pdf | Privilege Withheld | Attorney Client Privilege | Email chain providing legal advice from Robert Silverstein", Esther Kornfeld", Guy Wright", and Veronica Lebron" regarding settlement negotiations involving the Wilcox Hotel. |
| PRIV740 | 5/20/2017 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | RE: Thompson/Tommie - Settlement Documents | Privilege Withheld | Attorney Client Privilege | Email chain regarding settlement negotiations involving the Tommie Hotel. |
| PRIV739 | 9/20/2013 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | RE: Thompson/Tommie - Settlement Agreements | Privilege Withheld | Attorney Client Privilege | Email chain regarding settlement negotiations involving the Tommie Hotel. |
| PRIV738 | 9/27/2013 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | RE: Thompson/Tommie - Settlement Agreements - Revised | Privilege Withheld | Attorney Client Privilege | Email chain regarding settlement negotiations involving the Tommie Hotel. |
| PRIV737 | 9/27/2017 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | Saeed Nourmand snourmand@nourmand.com | | RE: Thompson/Tommie - Settlement Agreements - Revised | Privilege Withheld | Attorney Client Privilege | Email chain regarding settlement negotiations involving the Tommie Hotel. |
| PRIV736 | 10/19/2012 | Saeed Nourmand snourmand@nourmand.com | Jayesh Patel jpatel@robofdaw.com | | | We are and Sofrra Settlement Agreement | Privilege Withheld | Attorney Client Privilege | Email chain regarding settlement negotiations involving the Sofrra Wilcox Hotel. |

Sunset Landmark Privilege Log

| Entry No. | Date | From/Author | To | CC | BCC | Email Subject / File Name | Status | Production Bates Range | Privilege Type | Privilege Description |
|-----------|------|-------------|-----|-----|-----|---------------------------|--------|------------------------|----------------|-----------------------|
|           |      |             |     |     |     |                           |        |                        |                |                       |

Individuals

| Author/Recipient | Description of Individual: |
|---|---|
| **Table of Individuals Identified on Privilege Log** | |
| Saeed Nourmand (snourmand@nourmand.com); (snourmand@hotmail.com); (snourmand@nourmand.com); (sboulevard26@gmail.com) | Defendant |
| Sarah Gould (sgould@nourmand.com) | Assistant for Saeed Nourmand |
| Mohamad Iravani (miravani@nourmand.com) | Property Manager and Assistant for The Sunset Landmark Investment, LLC |
| Rachelle DeCastro (rdecastro@nourmand.com) | Assistant to Saeed Nourmand |
| Allen Shamooilian (allen@kingsarch.com) | Owner of neighboring building and individual who jointly retained Fred Gaines with The Sunset Landmark Investment, LLC |
| Jessica Karantonis (jkarantonis@deloitte.com) | Tax Consultant |
| Patel, Bina (bpatel@deloitte.com) | Tax Consultant |
| Thomas Zuber (tzuber@zuber.com) | Attorney at Zuber Lawlor, LLP |
| Robert Silverstein (robert@robertsilversteinlaw.com) | Attorney for The Sunset Landmark Investment, LLC |
| Alicia Navarro (anavarro@zuberlaw.com) | Attorney at Zuber Lawlor, LLP |
| Alicia Bartley (abartley@gaineslaw.com) | Staff at Gaines & Stacey Law |
| Brenda J. Harding (bharding@zuberlaw.com) | Staff at Zuber Lawlor, LLP |
| Fred Gaines | Attorney for The Sunset Landmark Investment, LLC |
| Paul Rosenberger (prosenberger@pumilia.com) | Attorney for The Sunset Landmark Investment, LLC |
| Tiffany Perry (tperry@gaineslaw.com) | Staff at Gaines & Stacey Law |
| Robert Glushon (rglushon@lunaglushon.com) | Attorney for The Sunset Landmark Investment, LLC |
| Teresa Silverstein (teresa@robertsilversteinlaw.com) | Staff at Silverstein Law |
| Lillian Manzella (lillian@robertsilversteinlaw.com) | Staff at Silverstein Law |
| Veronica Lebron (veronica@robertsilversteinlaw.com) | Staff at Silverstein Law |

Individuals

| Table of Individuals Identified on Privilege Log | |
|---|---|
| Jillian Reyes | Staff at Silverstein Law |
| Naira Soghbatyan (naira@robertsilversteinlaw.com) | Attorney at Silverstein Law |
| Corin Lenard Kahn (clkesq@mindspring.com) | Attorney for The Sunset Landmark Investment, LLC |
| Jay Patel (jpatel@zuberlaw.com); (jpatel@pumilia.com) | Attorney for The Sunset Landmark Investment, LLC and Saeed Nourmand |
| Dan Wright (dan@robertsilverstelnlaw.com); (fiberflash@aol.com); | Attorney at Silverstein Law |
| Esther Kornfield (esther@robertsilverstelnlaw.com); | Paralegal at Silverstein Law |
| Stephen Weaver | Attorney for The Sunset Landmark Investment, LLC |

# EXHIBIT P

1. GARRETT L. HANKEN (SBN 057213)
   GHanken@GreenbergGlusker.com
2. SEDINA L. BANKS (SBN 229193)
   SBanks@GreenbergGlusker.com
3. GREENBERG GLUSKER FIELDS CLAMAN &
4. MACHTINGER LLP
   1900 Avenue of the Stars, 21st Floor
5. Los Angeles, California 90067-4590
   Telephone: 310.553.3610
6. Fax: 310.553.0687

7. Attorneys for Petitioner and Plaintiff
8. MAMA WILCOX LAND LLC

**NO SUMMONS ISSUED**

**FILED**
Superior Court Of California
County Of Los Angeles

JUN 09 2017

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Gloria Kadison

Dept. 1

9.
10. SUPERIOR COURT OF CALIFORNIA
11. COUNTY OF LOS ANGELES

BS169883

| | |
|---|---|
| MAMA WILCOX LAND LLC, | Case No. |
| Petitioner, | VERIFIED PETITION FOR WRIT OF MANDATE AND/OR ADMINISTRATIVE MANDAMUS |
| v. | |
| CITY OF LOS ANGELES, CITY COUNCIL OF THE CITY OF LOS ANGELES, PLANNING COMMISION OF THE CITY OF LOS ANGELES and DOES 1 through 50, | (Code of Civ. Proc. §§ 1085 and 1094.5 and California Environmental Quality Act) |
| Respondents, | |
| 6516 TOMMIE HOTEL, LLC and DOES 51 through 100 | |
| Real Parties in Interest. | |

CIT/CASE:  BS169883
LEA/DEF#:

RECEIPT #: CCH505376111
DATE PAID: 06/09/17  03:50 PM
PAYMENT:  $435.00  310
RECEIVED:
   CHECK:    $435.00
   CASH:     $0.00
   CHANGE:   $0.00
   CARD:     $0.00

54482-00008/2806734.3

VERIFIED PETITION FOR WRIT OF MANDATE   **ORIGINAL**

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

Petitioner Mama Wilcox Land LLC ("Mama Wilcox") alleges as follows:

## INTRODUCTION

1.     Mama Wilcox challenges the approval by respondents City of Los Angeles, City Council of the City of Los Angeles, Planning Commission of the City of Los Angeles (collectively, "Respondents") of the project proposed by 6516 Tommie Hotel, LLC ("Tommie Hotel") to construct an eight-story, mixed-use building at 6516-6526 W. Selma Avenue (the "Tommie Hotel Project") and related entitlements, the adoption of Ordinance No. 184916 (the "Ordinance"), which creates a zone and height district change to accommodate the Tommie Hotel Project (collectively, the "Project Approvals"), and the approval of a Mitigated Negative Declaration for the Project Approvals.

2.     Respondents' approval of the Project Approvals and the Mitigated Negative Declaration were illegal and improper for many reasons including, without limitation, the following:

a.     Respondents' approval of the Project Approvals and Mitigated Negative Declaration violated the requirements of the California Environmental Quality Act ("CEQA"), Public Resources Code Sections 21000 *et seq.*, and the CEQA Guidelines, Title 14, California Code of Regulations, Section 15000 *et seq.* (the "CEQA Guidelines"). Respondents avoided proper environmental review by concluding that the Project Approvals would not have a significant impact on the environment despite the fact that substantial evidence supports a fair argument that the Project Approvals will have at least one or more significant environmental impacts including air quality impacts, land use impacts, geotechnical impacts, noise and vibration impacts, traffic impacts, greenhouse gas emissions and cumulative impacts.

b.     Respondents acted in excess of their jurisdiction and failed to proceed in a manner required by law in enacting the Ordinance and approving the Project Approvals.

3.     Mama Wilcox respectfully seeks this Court to issue a peremptory writ of mandate under California Code of Civil Procedure Sections 1085 and 1094.5, directing Respondents to vacate, rescind and set aside all Project Approvals, including adoption of the Ordinance and the Mitigated Negative Declaration and approval of the Tommie Hotel Project.

## THE PARTIES

4.     Petitioner Mama Wilcox is a limited liability company duly organized and existing

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

VERIFIED PETITION FOR WRIT OF MANDATE

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

under the laws of the State of California doing business in the City of Los Angeles, County of Los Angeles, State of California.

5.     Mama Wilcox is informed and believes and thereon alleges that Respondent the City of Los Angeles (the "City") is a municipal corporation organized and existing in the County of Los Angeles, State of California and is a Charter City under the State Constitution.

6.     Mama Wilcox is informed and believes and thereon alleges that Respondent the City Council of the City of Los Angeles (the "City Council") is a public agency and is the governing body of the City.

7.     Mama Wilcox is informed and believes and thereon alleges that Respondent Planning Commission of the City of Los Angeles (the "Planning Commission") is a public agency of the City.

8.     The true names and capacities of the respondents named herein as Does 1 through 50 are unknown to Mama Wilcox who therefore sues said respondents by such fictitious names. Mama Wilcox will ask leave of this Court to amend this Petition to show their true names and capacities when the same have been ascertained.  Mama Wilcox is informed and believes and thereon alleges that Does 1 through 50 were responsible in some manner for the acts and transactions hereinafter alleged and that Mama Wilcox is entitled to relief against such respondents therefor.

9.     Mama Wilcox is informed and believes and thereon alleges that real party in interest Tommie Hotel is a limited liability company duly organized and existing under the laws of the State of California doing business in the City of Los Angeles, County of Los Angeles, State of California.  Tommie Hotel is the Project proponent and developer of the Project.

10.     The true interests and capacities of real-parties-in-interest named herein as Does 51 through 100 are unknown to Mama Wilcox who therefore identifies said real-parties-in-interest by such fictitious names.  Mama Wilcox will ask leave of this Court to amend this Petition to show their true names when their interests and capacities have been ascertained. Mama Wilcox is informed and believes and thereon alleges that Does 51 through 100 are interested in some manner in the controversies hereinafter alleged.

## JURISDICTION AND VENUE

11.     Pursuant to California Code of Civil Procedure Sections 1085 and 1094.5 and Public Resources Code Sections 21168 and 21168.5, this Court has jurisdiction to hear this

54482-00008/2806734.3                                2

VERIFIED PETITION FOR WRIT OF MANDATE

matter.

12.     Venue is proper in this Court because the Tommie Hotel Project is located in Los Angeles County, Respondents are public entities located in Los Angeles County and the violations of CEQA occurred in Los Angeles County.

**IRREPARABLE HARM AND STANDING**

13.     Mama Wilcox is the owner of the Mama Shelter Hotel located directly adjacent to the Tommie Hotel Project site.  Due to the proximity of the proposed Tommie Hotel Project to the Mama Shelter Hotel, Mama Wilcox has a direct and substantial beneficial interest in ensuring that Respondents comply with CEQA and evaluate in an environmental impact report the impacts from the Tommie Hotel Project including air quality impacts, land use impacts, geotechnical impacts, noise and vibration impacts, traffic impacts and cumulative impacts, which will directly impact the Mama Shelter Hotel and its guests.

14.     Mama Wilcox has no plain, speedy, or adequate remedy at law, and thus seeks a writ of mandate from this Court.

15.     Mama Wilcox is informed and believes and thereon alleges that unless relief is granted as requested herein, Mama Wilcox will be irreparably harmed because the unexamined and unmitigated impacts will occur before Respondents have undertaken an adequate environmental review of the Tommie Hotel Project and Project Approvals.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES AND ATTORNEYS' FEES**

16.     Mama Wilcox has performed all conditions precedent to filing this action and has exhausted all administrative remedies by submitting written comments on the Tommie Hotel Project prior to final project approval.  All issues raised in this Petition were raised before Respondents by Mama Wilcox and/or other members of the public prior to approval of the Project Approvals and Respondents' adoption of the Mitigated Negative Declaration.

17.     Mama Wilcox has complied with Public Resources Code Section 21167.5 by prior service of notice upon Respondents indicating its intent to file this Petition.  Proof of Service of this notification, with the notification without attachments, is attached hereto as Exhibit A.

18.     This Petition is timely filed in accordance with Public Resources Code Section 21167 and CEQA Guidelines Section 15112.

19.     Mama Wilcox has incurred and will incur attorneys' fees and other costs and

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

VERIFIED PETITION FOR WRIT OF MANDATE

1    expenses as a result of this proceeding in amounts that cannot yet be ascertained, but which are

2    recoverable in this action under the provisions of California Code of Civil Procedure Section

3    1021.5 and/or Government Code Section 800.

## BACKGROUND INFORMATION

5    20.    Respondents are public agencies governed by CEQA as defined in California

6    Public Resources Code Section 21063.

7    21.    The proposed Tommie Hotel Project site is located at 6516-6526 W. Selma

8    Avenue, Los Angeles, California.  The Tommie Hotel Project consists of the demolishment of an

9    existing surface parking lot and construction of an eight-story approximately 95-foot-tall, 79,621

10   square foot mixed use building consisting of a 212 guest room hotel with guest amenities, and

11   ground-floor and roof-top restaurant/bars/lounges.  The Tommie Hotel Project will also include a

12   total of 205 automobile parking spaces and 52 bicycle parking spaces located within four levels of

13   a subterranean parking structure.

14   22.    The Tommie Hotel Project will be constructed directly adjacent to the Mama

15   Shelter Hotel, which is located at 6500 Selma Avenue, Los Angeles, California.

16   23.    Mama Wilcox is the owner of the Mama Shelter Hotel.  The Mama Shelter Hotel

17   opened in 2015 and includes a hotel with 70 guest rooms.  Construction of the Mama Shelter

18   Hotel involved the creative renovation of a classic masonry building dating to 1926.

19   24.    Mama Shelter Hotel guest rooms and sleeping quarters will directly abut and

20   overlook the Tommie Hotel Project.

21   25.    In December 2016, Respondents released the Initial Study and Mitigated Negative

22   Declaration for the Tommie Hotel Project and related Project Approvals.  As part of the Project

23   Approvals, Tommie Hotel requested the following approvals including, without limitation: (1)

24   vesting zone and height district change from C4-2D to [Q]C2-2D to permit the construction of the

25   212 guest room hotel, including 79,621 square feet of floor area and a 3.83:1 Floor Area Ratio

26   (i.e., the ratio of a building's total floor area to the size of the piece of land upon which it is built),

27   which required Respondents' adoption of the Ordinance, (2) a site plan review to permit the

28   construction, use and maintenance of a hotel with greater than 50 guest rooms (the "Site Plan

     Review"), and (3) miscellaneous demolition, grading, excavation, shoring and building permits.

     26.    On February 1, 2017, the Planning Commission issued a Letter of Determination

     with respect to the Tommie Hotel Project which discussed the following actions taken at its

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

January 26, 2017 meeting: (1) adopted the Mitigated Negative Declaration, finding that "there is no substantial evidence that the proposed project will have a significant effect on the environment," (2) recommended that the City Council adopt the Ordinance thus effecting a zone and height district change as proposed by Tommie Hotel, and (3) approved the Site Plan Review.

27.     On February 15, 2017, the Sunset Landmark Investments, LLC ("Sunset Landmark") and UNITE HERE! Local 11 ("UNITE HERE!") filed timely appeals of the Planning Commission's determination.  Sunset Landmark and UNITE HERE! also submitted comment letters throughout the public review process.

28.     At a meeting held on April 25, 2017, the Planning and Land Use Management Committee ("PLUM") considered the proposed Ordinance and the appeals submitted by Sunset Landmark and UNITE HERE!  The PLUM Committee recommended that the appeals be denied, that the City Council approve the Ordinance and Site Plan Review and adopt the Mitigated Negative Declaration.  The matter was submitted for City Council consideration.

29.     On May 1, 2017, Mama Wilcox submitted a letter to the City Council adopting and incorporating by reference all project objections raised by themselves and all others during the environmental review and land use entitlement processes for the Tommie Hotel Project and stated that Respondents improperly failed to prepare an environmental impact report.

30.     On May 10, 2017, the City Council adopted the PLUM Committee report and recommendations thereby adopting the Ordinance and the Mitigated Negative Declaration and approving the Site Plan Review.

31.     On May 12, 2017, the City filed a CEQA Notice of Determination with the Los Angeles County Clerk.

## FIRST CAUSE OF ACTION

(Mandate and/or Administrative Mandamus Under CEQA)

32.     Mama Wilcox realleges paragraphs 1 through 31 of this Petition and incorporates those paragraphs herein by this reference.

33.     The "purpose of an environmental impact report is to identify the significant effects on the environment of a project, identify alternatives to the project, and to indicate the manner in which those significant effects can be mitigated." CAL. PUB. RES. CODE § 21002.1(a). A mitigated negative declaration is appropriate only if project revisions would mitigate the potentially significant effects identified in the initial study "to a point where clearly no significant

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

effect on the environment would occur" and there is no substantial evidence in the record before the agency "that the project, as revised, may have a significant effect on the environment." CAL. PUB. RES. CODE § 21064.5, CEQA Guidelines § 15070(b), 15369.5.

34.     Respondents are public agencies governed by CEQA as defined in Public Resources Code Section 21063.

35.     The Tommie Hotel Project and Project Approvals are discretionary projects subject to the requirements of CEQA as defined in Public Resources Code Sections 21065 and 21080(a).

36.     The City Council and the Planning Department acted as the lead agency, as defined in Public Resources Code Section 21067, with principal responsibility for approving the Tommie Hotel Project and Project Approvals.

37.     Mama Wilcox is informed and believes and thereon alleges that Respondents failed to proceed in the manner required by law in adopting the Mitigated Negative Declaration.

38.     Mama Wilcox is informed and believes and thereon alleges that Respondents violated CEQA by adopting the Mitigated Negative Declaration and failing to prepare an environmental impact report for the Project Approvals.

39.     Mama Wilcox is informed and believes and thereon alleges that the record contains substantial evidence supporting a "fair argument" that the Project Approvals may have a significant impact on the environment that was not identified and mitigated to a less than significant level including air quality impacts, land use impacts, geotechnical impacts, noise and vibration impacts, traffic impacts, greenhouse gas emissions and cumulative impacts.

40.     Mama Wilcox is informed and believes and thereon alleges that Respondents also violated CEQA by failing to have an adequate project description in the Initial Study/Mitigated Negative Declaration.

41.     Mama Wilcox is informed and believes and thereon alleges that, as a result of the foregoing, Respondents violated their duty to prepare a legally adequate environmental review document as required by CEQA and the CEQA Guidelines.  Accordingly, Respondents' adoption of the Mitigated Negative Declaration and approval of the Project Approvals must be vacated and set aside.

## SECOND CAUSE OF ACTION

(Mandate re Invalidity of the Project Approvals)

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

42.     Mama Wilcox realleges paragraphs 1 through 41 of this Petition and incorporates those paragraphs herein by this reference.

43.     The Project Approvals including, without limitation, the Tommie Hotel Project, Ordinance and Site Plan Review were not lawfully approved.

44.     Mama Wilcox is informed and believes and thereon alleges that in reviewing the Site Plan Review for the Tommie Hotel Project, the CRA/LA (the successor to the former Community Redevelopment Agency of the City of Los Angeles) should have been the lead agency for all environmental review.

45.     Mama Wilcox is informed and believes and thereon alleges that in approving the Project Approvals, Respondents have permitted the Tommie Hotel Project to unlawfully exceed the zone density requirements for the area by allowing more than twice the number of guest rooms than should legally be allowed.

46.     Mama Wilcox is informed and believes and thereon alleges that in approving the Project Approvals, Respondents have also permitted the Tommie Hotel Project to unlawfully exceed the 2:1 Floor Area Ratio that should be imposed on the site.

47.     Mama Wilcox is informed and believes and thereon alleges that Respondents' approval of the Project Approvals was invalid for the following reasons:

    a.     Respondents acted in excess of their jurisdiction;

    b.     Respondents committed prejudicial abuse of discretion because Respondents failed to proceed in the manner required by law;

    c.     Respondents committed prejudicial abuse of discretion in that the approval of the Project Approvals was not supported by Respondents' findings; and

    d.     Respondents committed prejudicial abuse of discretion in that Respondents' findings were not supported by substantial evidence.

48.     Mama Wilcox is entitled to a writ of mandate commanding Respondents to vacate, set aside and rescind the approval of the Project Approvals including the Tommie Hotel Project, Ordinance and Site Plan Review.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner Mama Wilcox prays for a judgment against Respondents and the Real Parties in Interest as follows:

1.     For this Court to issue a peremptory writ of mandate commanding Respondents to:

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

a.   vacate and set aside the approval of the Mitigated Negative Declaration on the grounds that it violates the California Environmental Quality Act, Public Resources Code Section 21000 *et seq.*;

b.   vacate and rescind the Ordinance;

c.   vacate and set aside all Project Approvals for the Tommie Hotel Project including the Site Plan Review;

d.   withdraw the Notice of Determination for the Tommie Hotel Project;

e.   prepare, circulate and consider a legally adequate environmental impact report for the Tommie Hotel Project;

f.   suspend all activity that could result in a physical change or alteration to the physical environment until Respondents have taken such actions as may be necessary to comply with CEQA;

2.   For a stay of the Project Approvals pending determination of the issues raised in this Petition;

3.   For Petitioner Mama Wilcox's costs associated with this action;

4.   For an award of reasonable attorneys' fees pursuant to Code of Civil Procedure Section 1021.5; and

5.   For such other and further relief as the Court may deem just proper.

DATED:  June 9, 2017

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: _____

SEDINA L. BANKS (SBN 229193)
Attorneys for Petitioner Mama Wilcox Land LLC

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

54482-00008/2806734.3

8

VERIFIED PETITION FOR WRIT OF MANDATE

**EXHIBIT A**

1   GARRETT L. HANKEN (SBN 057213)
    GHanken@GreenbergGlusker.com
2   SEDINA L. BANKS (SBN 229193)
    SBanks@GreenbergGlusker.com
3   GREENBERG GLUSKER FIELDS CLAMAN &
    MACHTINGER LLP
4   1900 Avenue of the Stars, 21st Floor
    Los Angeles, California  90067-4590
5   Telephone:  310.553.3610
    Fax:  310.553.0687
6
7   Attorneys for Petitioner and Plaintiff
    MAMA WILCOX LAND LLC
8
9                   SUPERIOR COURT OF CALIFORNIA
10                  COUNTY OF LOS ANGELES
11

| | |
|---|---|
| 12   MAMA WILCOX LAND LLC, | Case No. |
| 13                  Petitioner, | NOTICE OF INTENT TO FILE CEQA PETITION |
| 14          v. | (California Environmental Quality Act) |
| 15   CITY OF LOS ANGELES, CITY COUNCIL OF THE CITY OF LOS ANGELES, PLANNING COMMISION OF THE CITY OF LOS ANGELES and DOES 1 through 50, | |
| 18                  Respondents, | |
| 19   6516 TOMMIE HOTEL, LLC and DOES 51 through 100 | |
| 21                  Real Parties in Interest. | |

54482-00008/2807274.1

NOTICE OF INTENT TO FILE CEQA PETITION

EX A

TO RESPONDENTS CITY OF LOS ANGELES, CITY COUNCIL OF THE CITY OF LOS ANGELES AND PLANNING COMMISION OF THE CITY OF LOS ANGELES:

PLEASE TAKE NOTICE, under Public Resources Code section 21167.5, that Petitioner, Mama Wilcox Land LLC, intends to file a petition under the provisions of the California Environmental Quality Act ("CEQA") against respondents, City of Los Angeles, City Council of the City of Los Angeles and the Planning Commission of the City of Los Angeles (collectively "Respondents"), challenging Respondents' approval of the Tommie Hotel Project and Mitigated Negative Declaration.

The Petition will seek to vacate, rescind and set aside all approvals related to the Tommie Hotel Project and the Mitigated Negative Declaration, require Respondents to comply with all requirements of CEQA and to suspend all activity that could result in any change or alteration to the physical environment until Respondents have taken all actions necessary to comply with CEQA.

A copy of the Petition to be filed by Petitioner is attached to this notice.

DATED:  June 8, 2017

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP

By: _____ FOR:

SEDINA L. BANKS (SBN 229193)
Attorneys for Petitioner Mama Wilcox Land LLC

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

54482-00008/2807274.1

2

NOTICE OF INTENT TO FILE CEQA PETITION

1    **PROOF OF SERVICE BY OVERNIGHT COURIER**

2        I am a citizen of the United States and employed in Los Angeles County, California.  I am

3    over the age of eighteen years and not a party to the within-entitled action.  My business address

4    is 1900 Avenue of the Stars, 21st Floor, Los Angeles, California 90067.  On June 8, 2017, I

5    caused to be served by FEDEX:

6                **NOTICE OF INTENT TO FILE CEQA LAWSUIT**

7    by delivering copies thereof to:

8    Los Angeles City Council                          City of Los Angeles
     Office of the City Clerk –                        City Clerk
9    Council and Public Services Division              200 N. Spring Street, Room 360
     200 N. Spring Street                              Los Angeles, CA 90012
10   City Hall - Room 395
     Los Angeles, CA 90012                             Los Angeles City Attorney
11                                                     200 N. Main Street, Room 800
                                                       Los Angeles, CA 90012-4131
12   Los Angeles Planning Department
     Vince Bertoni
13   200 N. Spring Street
     Los Angeles, CA 90012-2601
14
15       I declare under penalty of perjury under the laws of the State of California that the above

16   is true and correct.

17       Executed on June 8, 2017, at Los Angeles, California.

18

19                                         _____
20                                                  TANYA L. STEWART

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

54482-00008/2807274.1                          3

# VERIFICATION

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I have read the foregoing **VERIFIED PETITION FOR WRIT OF MANDATE AND/OR ADMINISTRATIVE MANDAMUS**, and know its contents.

☐    I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

☒    I am the manager of Mama Wilcox Land LLC, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

      ☒    I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

      ☐    The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐    I am one of the attorneys for Mama Wilcox Land LLC, a party to this action, and am personally familiar with the proceedings that are subject of this Petition, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on June 8, 2017, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Benjamin Nugano

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |

Sedina L. Banks (SBN 229193)
Greenberg Glusker Fields Claman & Machtinger LLP
1900 Avenue of the Stars, Suite 2100
Los Angeles, CA 90067
TELEPHONE NO.: 310 201-7436     FAX NO.: 310 201-4456
ATTORNEY FOR *(Name):* Mama Wilcox Land LLC

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: **111 North Hill Street**
MAILING ADDRESS: **Same**
CITY AND ZIP CODE: **Los Angeles, CA 90012**
BRANCH NAME: **Stanley Mosk Courthouse**

CASE NAME: Mama Wilcox Land LLC v. City of Los Angeles, *et al.*

FILED
Superior Court Of California
County Of Los Angeles

JUN 09 2017

Sherri R. Carter, Executive Officer/Clerk
By: Gloria J. Robinson, Deputy

**BS169883**

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☒ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties       d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve       e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence       f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☐ monetary   b. ☒ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* 2
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: June 9, 2017

Elizabeth Watson (SBN 102481)
_____
(TYPE OR PRINT NAME)       ► _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**
ORIGINAL

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

54482-00008/2812219.1

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

American LegalNet, Inc.
www.FormsWorkflow.com

| SHORT TITLE:<br>**Mama Wilcox Land LLC v. City of Los Angeles,** *et al.* | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

> **Applicable Reasons for Choosing Court Filing Location (Column C)**

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | **A**<br>Civil Case Cover Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons –<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death - Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04
C:\Users\sbanks\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\YFYNS8EM\GGDOCS1-#2812221-v1-Civil_Case_Cover_Sheet_Addendum.DOC

### CIVIL CASE COVER SHEET ADDENDUM
### AND STATEMENT OF LOCATION

Local Rule 2.3
Page 1 of 4

*ORIGINAL*


American LegalNet, Inc.<br>www.FormsWorkFlow.com

| SHORT TITLE: | CASE NUMBER |
|---|---|
| **Mama Wilcox Land LLC v. City of Los Angeles, et al.** | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |

LACIV 109 (Rev 2/16)

LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3

Page 2 of 4

 American LegalNet, Inc.<br>www.FormsWorkFlow.com

| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3

LASC Approved 03-04

Page 2 of 4

C:\Users\sbanks\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\YFYNS8EM\GGDOCS1-#2812221-v1-
Civil_Case_Cover_Sheet_Addendum.DOC



American LegalNet, Inc.
www.FormsWorkFlow.com

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| **Mama Wilcox Land LLC v. City of Los Angeles, et al.** | |

| **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| **Judicial Review** | | |
| Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| Writ of Mandate (02) | ☒ A6151  Writ - Administrative Mandamus | 2, 8 |
| | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | | |
| Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | | |
| Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | ☐ A6160  Abstract of Judgment | 2, 6 |
| | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | | |
| RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |

LACIV 109 (Rev 2/16)                **CIVIL CASE COVER SHEET ADDENDUM**                Local Rule 2.3
LASC Approved 03-04              **AND STATEMENT OF LOCATION**                Page 3 of 4
C:\Users\sbanks\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\YFYNS8EM\GGDOCS1-#2812221-v1-
Civil_Case_Cover_Sheet_Addendum.DOC


American LegalNet, Inc.
www.FormsWorkFlow.com

| | | |
|---|---|---|
| **Miscellaneous Civil Petitions** | Other Petitions (Not Specified Above) (43) | |
| | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | ☐ A6190  Election Contest | 2 |
| | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | ☐ A6100  Other Civil Petition | 2, 9 |

LACIV 109 (Rev 2/16)

LASC Approved 03-04

C:\Users\sbanks\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\YFYNS8EM\GGDOCS1-#2812221-v1-Civil_Case_Cover_Sheet_Addendum.DOC

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

Local Rule 2.3

Page 3 of 4



American LegalNet, Inc.
www.FormsWorkFlow.com

| SHORT TITLE: Mama Wilcox Land LLC v. City of Los Angeles, et al. | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address**: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: ☐ 1. ☒ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: 6516-6526 W. Selma Avenue, Los Angeles, CA |
|---|---|

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90028 |
|---|---|---|

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the __Central__ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: __June 9, 2017__

(SIGNATURE OF ATTORNEY/FILING PARTY)
**Elizabeth Watson (SBN 102481)**

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| LACIV 109 (Rev 2/16) LASC Approved 03-04 | **CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION** | Local Rule 2.3 Page 4 of 4 |
|---|---|---|

C:\Users\sbanks\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\YFYNS8EM\GGDOCS1-#2812221-v1-Civil_Case_Cover_Sheet_Addendum.DOC


American LegalNet, Inc. www.FormsWorkFlow.com

# EXHIBIT Q

1   GIDEON KRACOV (Cal. Bar No. 179815)
    LAW OFFICE OF GIDEON KRACOV
2   801 S. Grand Avenue, 11ᵗʰ Floor
    Los Angeles, CA  90017-4645
3   Tel: (213) 629-2071
    Fax: (213) 623-7755
4   gk@gideonlaw.net

**FILED**
Superior Court Of California
County Of Los Angeles

**JUN 08 2017**

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
         Charlie L. Coleman

A 6151
900 r

D 86
Hogue

5   Attorneys for Petitioners
6   Lauren "Elle" Farmer, Liliana Hernandez and
    Hollywood for the Environment and Equitable
7   Development

8

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA
                    COUNTY OF LOS ANGELES
10

11  LAUREN "ELLE" FARMER, LILIANA          Case No.   **BS 169855**
12  HERNANDEZ, HOLLYWOOD FOR
    THE ENVIRONMENT AND
13  EQUITABLE DEVELOPMENT,
                                           **VERIFIED PETITION FOR WRIT OF**
14          Petitioners,                   **MANDATE**

15  v.                                     **[California Environmental Quality Act, Cal.**
                                           **Pub Res. Code § 21000 *et seq.*, and Municipal**
16  CITY OF LOS ANGELES; CITY              **Code]**
    COUNCIL OF CITY OF LOS
17  ANGELES; LOS ANGELES
    DEPARTMENT OF CITY PLANNING;
18  DOES 1 through 4,

19          Respondents,

20  6516 TOMMIE HOTEL, LLC; DOES 5
21  through 10,

22

23          Real Parties in Interest.

24

25

26

27

28

-1-

VERIFIED PETITION FOR WRIT OF MANDATE

RECEIPT #: CCH243111032
DATE PAID: 06/08/17  10:04 AM
PAYMENT: $435.00
RECEIVED:
    CHECK:         $435.00
    CASH:            $0.00
    CHANGE:          $0.00
    CARD:            $0.00

CIT/CASE:
LEA/DEF#:            310

BS169855

**INTRODUCTION**

1.      By this action, Petitioners Lauren "Elle" Farmer, Liliana Hernandez and
Hollywood for the Environment and Equitable Development ("HEED") (collectively
"Petitioners") challenge the unlawful actions of the City of Los Angeles, acting through its City
Council ("Council") and Department of City Planning ("Planning Department"), (collectively
"City") in approving the Tommie Hotel project at 6516-6526 West Selma Avenue in Los
Angeles, California ("Site").  Specifically, on May 10, 2017, Council approved Council File No.
08-0887-S1 (connected to Council File Nos. 08-0887 and 08-0887-S2) related to the rezoning and
granting of various land use entitlements (Case No. CPC-2016-270-VZC-HD-CUB-SPR) and
adoption of the environmental review (Case No. ENV-2016-4313-MND), made effective by
Ordinance 184916, (collectively "Approval") to demolish an existing surface parking lot and
construct an eight-story, 79,621 square foot hotel/live-entertainment building and other related
improvements (the "Project").

2.      Petitioners allege that the Approval of the Project violated the California
Environmental Quality Act ("CEQA"), Pub. Res. Code § 21000 *et seq.*, and the Los Angeles
Municipal Code ("Municipal Code" or "LAMC").  Specifically, as set forth in the First Cause of
Action herein, the City used a Mitigated Negative Declaration ("MND") for the Project, not a
more comprehensive Environmental Impact Report ("EIR"), despite expert comments
establishing a *fair argument* that the Project poses various significant environmental impacts. The
City's MND and CEQA findings lacked substantial evidence in areas including greenhouse gas
("GHG") emissions, land use, hazardous substances, air quality, noise, traffic, and associated
cumulative impacts, as alleged in the First Cause of Action herein.  Additionally, as set forth in
the Second Cause of Action herein, the City's rezoning Approval and findings for the Project
lacked substantial evidence and were arbitrary and capricious in violation of the City's applicable
land use plans and Municipal Code.

///

VERIFIED PETITION FOR WRIT OF MANDATE

### JURISDICTION

3.      This Court has jurisdiction under sections 21168 or 21168.5 of the Pub. Res. Code and sections 1085 or 1094.5 of the Code Civ. Proc.  The parties and the Project Site are located in Los Angeles County.  The within action has been timely brought within 90 days of Project Approval pursuant to Gov. Code § 65009.  The within action has been timely brought within 30 days of the May 12, 2017 posting of a CEQA Notice of Determination for the Project pursuant to Pub. Res. Code § 21167.  Petitioners served Notice of Intent to File this Petition on the City Clerk pursuant to Pub. Res. Code § 21167.5 by mail on June 7, 2017 as reflected in Exhibit A hereto.  Concurrent with the filing of this action, Petitioners have notified the Attorney General of the State of California of the filing of the action in accordance with the requirements of Pub. Res. Code  § 21167.7.

### PARTIES

4.      Petitioners Lauren "Elle" Farmer and Liliana Hernandez are individuals and residents of the City of Los Angeles.  They have a beneficial interest and are impacted by the matters set forth in this Petition.  Their interests will be directly affected by the Project and the City's failure to comply with the requirements of CEQA and the Municipal Code in connection with the Project.  They visit the vicinity of the Project and the traffic intersections in the vicinity of the Project at least weekly, often daily, and will be affected by negative impacts of the Project including traffic and transportation, air quality, noise, GHG, cumulative and land use impacts. Petitioner Farmer filed an administrative land use appeal of the Project to the Respondent as explained in more detail below.  Petitioner Hernandez appeared through counsel during the appeal and lives in Hollywood approximately one mile from the Project Site.

5.      Petitioner HEED is an unincorporated association operating under a designated name by which it is known whose members include affected individuals including Farmer and Hernandez who have a beneficial interest in the matters set forth in this Petition including being affected by the negative impacts of the Project including traffic and transportation, air quality, noise, GHG, cumulative and land use impacts.  Petitioner's mission is to ensure responsible

VERIFIED PETITION FOR WRIT OF MANDATE

development in Los Angeles, particularly the Hollywood area, and informed decisionmaking by public officials with regard to projects that cause significant impacts to the environment in the City. Petitioner was formed after the date of Project Approval pursuant to Pub. Res. Code § 21167(c).

6.     Petitioners, individually and through their members, objected to the Approval of the Project orally and in writing during the public comment period or prior to the close of the public hearing on the Project. Petitioners have exhausted all administrative remedies in that the determinations by the City are final and no further administrative appeal procedures are provided by State or local law. All issues submitted for judicial review in this Petition were sufficiently raised and disputed with Respondents before Project Approval. Respondents were given notice and the opportunity to act in compliance with CEQA and the City's Municipal Code but failed to do so. It is well-established that any party who participates in the administrative process can assert all factual and legal issues raised by any commenting party, official or agency. *See Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 875.

7.     Respondent City of Los Angeles is a municipal corporation and Charter City under the State Constitution with its elected City Council and Planning Department responsible for, among other things, enforcing state and local planning laws and serving as the lead agency under CEQA.

8.     Real Party in Interest 6516 Tommie Hotel, LLC, (the "Real Party" or "Developer") is believed to be the Project applicant and recipient of the Project Approval.

9.     The true names, capacities, corporate, associate or otherwise of Respondents and Real Parties named herein as DOES 1 through 10, inclusive, are unknown to Petitioners who, therefore, sues said Respondents and Real Parties by fictitious names. Petitioners will amend this Petition to show the true names and capacities when they have been ascertained.

/ / /

VERIFIED PETITION FOR WRIT OF MANDATE

## GENERAL ALLEGATIONS

10. **The Project**: The Project includes the demolition of an existing surface parking lot and construction of an 8-story, approximately 95-foot-tall, 79,621-square-foot mixed-use building consisting of a 212-guest-room hotel with guest amenities, and ground-floor and rooftop bars/lounges primarily for the use of hotel guests but accessible to the public.  The proposed gross floor area would result in a floor-to-area ratio ("FAR") of 3.83:1.  Parking would be provided on-site within a four-level subterranean structure providing 205 parking stalls, including 140 stalls for the hotel use and 65 stalls for use by the off-site Hollywood Citizen News Building.

11. **Project Application**: In November 2016, the Project application was deemed complete, which included an Initial Study ("IS") of potential environmental impacts and several requested land use entitlements – Vesting Zone Change ("VZC"), Height District Change ("HD"), Conditional Use Permit ("CUB"), and Site Plan Review ("SPR") (collectively "Entitlements") – all requiring certain findings to be made under the City's Municipal Code.

12. **IS/MND Review**: Between November 2016 and January 2017, the Project IS and MND was prepared, circulated and made available for public comment prior to the Project hearing before the City Planning Commission ("CPC").  During this time, the City received comments from Hollywood Heritage, Inc. ("Hollywood Heritage") and Sunset Landmark Investments, LLC ("Sunset Landmark").

13. **Hollywood Heritage Comments**: Hollywood Heritage submitted its comments in in a January 11, 2017 letter, incorporated by this referenced in its entirety.  Issues raised included: (i) the MND omitted mitigation measures recommended by the Developer's historical resources consultant, including the need for a qualified structural engineer with historic preservation projects experience to prepare a shoring plan to protect the adjacent historical resources from damage during excavation and grading work; (ii) the absence of loading area and a formal mitigation measure limiting loading and delivery times to when traffic is lighter; (iii) unsubstantiated noise conclusions and the need to prohibit amplified sound; (iv) failure to properly indicate the land use inconsistency with the Site's zoning restrictions known as a "D"

-5-

1   conditions (part of state-mandated conformance of zoning and the Hollywood Community Plan),

2   nor make the necessary findings when requesting twice the FAR otherwise allowed in the area

3   under applicable plans; and (v) greater need to incorporate ground floor design features to avoid

4   aesthetic impacts.

5         14.    **Sunset Landmark Comments**:  Sunset Landmark submitted its first comments in

6   its letter dated January 25, 2017, incorporated by this referenced in its entirety.  To summarize,

7   issues raised included: (i) the City's improper reliance upon a facially invalid interpretation of

8   LAMC § 12.22.A.18 to allow 212 hotel rooms when otherwise limited to 104 hotel rooms; (ii)

9   potential cumulative negative impacts posed stemming from the Project's inconsistency with the

10   Site's "D" limitation of a 2:1 FAR density (imposed to avoid negative environmental impacts)

11   without first demonstrating maximum feasible mitigation has been achieved, that increased FAR

12   at the Site is adequately offset by density reductions on other lands in the community plan area, or

13   demonstrate that traffic improvements in the area had been made in compliance with the 1988

14   Hollywood Community Plan Revision ("Community Plan") or 1986/2003 Hollywood

15   Redevelopment Plan ("Redevelopment Plan"); (iii) the increase in density would violate the

16   Municipal Code without the City first adopting an adequate transportation improvement plan; and

17   (iv) an inadequate MND that fails to properly disclose the Project's land use inconsistencies, nor

18   properly analysis construction noise on nearby sensitive uses.

19         15.    **CPC Approval & Appeal**:  On January 26, 2017, CPC adopted the MND's

20   CEQA findings and the Municipal Code's land use findings, approved the CUB and SPR, and

21   recommended approval of the VZC and HD, and referred the matter to the City's Planning and

22   Land Use Management ("PLUM") Committee. On February 15, 2017, CPC's decision was

23   appealed by Sunset Landmark and Petitioner Farmer (collectively "Project Appeals").

24         16.    **Sunset Landmark Appeal**:  In addition to the issues raised its January 25, 2017

25   letter, the Sunset Landmark Appeal, incorporated by this referenced in its entirety, raised

26   additional issues  In its April 25, 2017 appeal letter, incorporated by this referenced in its entirety,

27   Sunset Landmark included extensive expert analysis and explained again why a CEQA-compliant

28

1  EIR was necessary (e.g. improper infrastructure, improper lead agent, invalid interpretation of

2  Code, inconsistency with "D" limitation, lack of transportation plan, inconsistent with

3  Redevelopment Plan).  Furthermore, it highlighted that the MND: (i) ignored air quality impacts

4  from diesel engine emissions *based on expert analysis*; (ii) used improper GHG significances

5  threshold and cumulative impact analysis; (iii) did not impose all feasible noise mitigation *based*

6  *on expert analysis;* and (v) used a flawed methodology to assess traffic cumulative impact that

7  masked significant impacts at five of seven studied intersections also *based on expert analysis.*

8      17.    **Farmer's Appeal**:  Farmer's appeal, including a GHG impact report from

9  qualified experts, incorporated by this reference in its entirety, argued that there was a *fair*

10  *argument* that the MND was inadequate and Project unlawful because of: (i) inconsistency with

11  the Site's "D" limitation; (ii) insufficient noise modeling analysis that failed to disclose nearby

12  residential uses, lacked adequate modeling, or inclusion of enforceable mitigation measures; (iii)

13  improper traffic analysis; (iv) potential air impacts due to conflicts with the applicable plans and

14  regulations of the South Coast Air Quality Management District ("SCAQMD"); and (iv) that the

15  GHG analysis was deficient due to improper calculations regarding construction-related and per-

16  capita emissions conclusions, compared only 2020 statewide targets and not the 2035 targets, and

17  failed to impose feasible mitigation.  Farmer's GHG experts reiterated their concerns with the

18  MND's deficiencies in an April 24, 2017 letter, incorporated by this referenced in its entirety.

19      18.    **Additional LAUSD Comments**:  Leading up to the Project Appeal hearing, the

20  Los Angeles Unified School District ("LAUSD") submitted MND comments contained in its

21  March 31, 2017 letter, incorporated by this referenced in its entirety.  Because the Project was

22  within 500 feet of Selma Avenue Elementary School, LAUSD urged the Developer to: (i) address

23  fugitive dust and air quality concerns; (ii) noise issues during construction phase; (iii) implement

24  effective traffic mitigation during construction and operation phase of the project; (iv) provide

25  adequate pedestrian safety, and (v) place reasonable limitations on the sale of alcohol beverages

26  and rooftop music events during the operation of the Project.

27

28

VERIFIED PETITION FOR WRIT OF MANDATE

1    19.    **PLUM Project Appeals Denial**:  On April 25, 2017, the Project Appeals were

2  before the PLUM Committee denied the Appeal, adopted the CEQA/land use findings, approved

3  the Entitlements, and submitted the matter to the City Council.

4    20.    **Sunset Landmark Supplemental Comments**:  Prior to City Council action,

5  Sunset Landmark supplemented its comments with its May 2, 2017 letter, including a noise report

6  from a qualified expert, incorporated by this referenced in its entirety, that the Project would

7  inflict significant noise impacts on nearby sensitive receptors based on expert analysis.

8    21.    **Council Project Appeals Denial and Project Approval**:  On May 10, 2017, the

9  Project was before the City Council that rejected the Project Appeals, approved the Project

10  Approval that was made effective by Ordinance No. 184916. Thereafter, the City filed the CEQA

11  Notice of Determination two days later on May 12, 2017.

12  <u>**FIRST CAUSE OF ACTION**</u>

13  **(Writ of Mandate Under Civil Procedure Code § 1094.5 – CEQA Violations)**

14    22.    Petitioners restate and reallege Paragraphs 1-21, as if fully set forth herein.

15    23.    CEQA has a strong presumption in favor of requiring preparation of an EIR.  This

16  presumption is reflected in what is known as the "fair argument" standard, under which an agency

17  must prepare an EIR whenever substantial evidence in the record supports a fair argument that a

18  project may have a significant effect on the environment. *Laurel Heights Improvement Ass'n v.*

19  *Regents of the Univ. of Cal.* (1993) 6 Cal.4th 1112, 1123; *No Oil. Inc, v. City of Los Angeles*

20  (1974) 13 Cal.3d 68, 75.  A lead agency must prepare an EIR if a project may cause significant

21  effects on the environment, even if the project is beneficial.  *See* Pub. Res. Code §§ 21100, 21151

22  and 14 Cal. Code Regs. ("<u>CEQA Guidelines</u>") § 15063(b)(1).

23    24.    The fair argument test is a "low threshold" where a project "may" have a

24  significant effect on the environment if there is a "reasonable probability" that it will result in a

25  significant impact. *No Oil, Inc*, 13 Cal.3d at 83-84 n. 16.  Substantial evidence is enough relevant

26  information and reasonable inference that a fair argument can be made to support a conclusion,

27  even though other conclusions. *See* CEQA Guidelines § 15384(a).  Substantial evidence includes

28

VERIFIED PETITION FOR WRIT OF MANDATE

1  facts, reasonable assumptions predicated on facts, and *expert opinions* supported by facts. *See*

2  Pub. Res. Code §§ 21080(e), 21082.2(c) and CEQA Guidelines §§ 15064(f)(5), 15384 (emphasis

3  added).

4        25.     An agency must prepare an EIR whenever it can be fairly argued on the basis of

5  substantial evidence that a project may have a significant environmental impact.  If there is

6  substantial evidence both for and against preparing an EIR, then the agency must prepare the EIR.

7  Here, the City was presented with substantial evidence – including a lot of expert opinion

8  testimony – demonstrating that the Project's MND was flawed and failed to fully disclose and

9  analyze potential impacts on traffic, GHG, air quality, noise, land use consistency, and

10  cumulative impacts.  Multiple commenters informed the City that there was a fair argument

11  contrary to the MND's CEQA findings, and requested a more thorough Project-specific EIR.

12  Despite this, the City proceeded to approve the Project without full disclosure and feasible

13  mitigation of the impacts described below.

14        26.    **Traffic:**  *Cumulative traffic impact analysis was flawed and masked significant*

15  *impacts to five of seven studied intersections*, according to expert analysis.  Under CEQA, the

16  Project's environmental review must analyze cumulative impacts, which may be "individually

17  minor but significant projects taking place over a period of time." CEQA Guidelines § 15355; *see*

18  *also* § 15065(a)(3).  Here, an expert traffic engineer identified that the Project and the 139 other

19  traffic generating projects in the MND collectively would cause significant worsening of Level of

20  Service ("LOS") at five crucial intersections within only two years.  However, the MND fails to

21  recognize the Project's contribution to this cumulatively significant impact by analyzing several

22  misleading traffic scenarios, all of which examine the Project's impacts individually and not

23  within the context of the 139 projects responsible to the cumulatively worsening of traffic in the

24  area.  Hence, the MND erroneously concludes that the Project will not be significant for traffic

25  impacts, and no mitigation measures are incorporated into the Project.  This is contrary to the

26  requirement that each project's cumulative impacts be discussed and mitigated if feasible through

27  traffic improvements measures, demand management plans, signal synchronization and fee-based

28

-9-

1    mitigation programs based on the project fair share contribution to the impacts.  *See* CEQA

2    Guidelines §§ 15130(a)(3), (b)(5); *see also Anderson First Coalition v. City of Anderson* (2005)

3    130 Cal.App.4th 1173, 1188; *Kings County Farm Bureau v. City of Hanford* (1990) 221

4    Cal.App.3d 692, 721 (condemning project analysis that "avoids analyzing the severity of the

5    problem and allows the approval of projects which, when taken in isolation, appears insignificant,

6    but when viewed together, appears startling."). Nor are there any required performance standards

7    to guide the efficacy of traffic mitigation, in violation of the principles set forth in *Madera*

8    *Oversight Coalition, Inc. v. County of Madera* (2011) 199 Cal.App.4th 48 and other guiding

9    authority. This is an abuse of discretion under CEQA.

10         27.    **Greenhouse Gas:** *The entire Project GHG analysis is flawed due to the omission*

11   *of fundamental project-specific land use information* in the California Emissions Estimator Model

12   Version CalEEMod.2016.3.1 ("CalEEMod") used to estimate the Project's GHG emissions.

13   Although the MND clarifies that the Project includes additional guest amenities (e.g. pools,

14   decks, raise lounge, bar, event space, game zones, etc.), these uses and associated square footage

15   values were not included in the CalEEMod analysis; only hotel rooms, parking, and the proposed

16   bars and restaurants servicing the hotel. These omissions were made without justification

17   supported by substantial evidence and had the effect of significantly underestimating the Project's

18   emissions during construction and operations.

19         28.    *The Project's GHG significance threshold analysis underestimates impacts with*

20   *developer-driven calculations inconsistent with recognized practices.* The MND uses a GHG

21   project- efficiency level as a significance threshold – specifically reliance on SCAQMD's draft

22   threshold of 4.8 metric tons of carbon dioxide equivalents per service population per year

23   ("MTCO2e/sp/year"). This level was established based on the goals of the Global Warming

24   Solutions Act of 2006 (commonly known as "AB 32"), to reduce statewide GHG emissions to

25   1990 levels by 2030, but improperly failed to account for SCAQMD's updated threshold target of

26   3.0 MTCO2e/sp/year for projects beyond 2020, or for the additional 40 percent reduction target in

27   GHG emissions by 2030 made law with the Governor's signing Senate Bill 32 (Health & Saf.

28

-10-

VERIFIED PETITION FOR WRIT OF MANDATE

1   Code § 38500 *et seq.*) prior to the release of the MND.  Moreover, the MND crafted its own

2   service population (one-half of the daily vehicles trips generated) resulting in an inflated 1,514

3   total employees, customers, and vendors.  As a result, the per capita GHG efficiency is skewed

4   down to a 3.02 MTCO2e/sp/year.  An appropriate GHG analysis demonstrates that the Project

5   would result in a 50.78 MTCO2e/sp/year -- well above the 2020 and 2030 thresholds.  The MND

6   fails to provide any evidence-based justification to support its self-serving definition of a service

7   population.

8        29.      Also, the GHG Analysis is not compliant with *Center for Biological Diversity v.*

9   *Department of Fish and Wildlife* ("<u>*Newhall Ranch*</u>") (2015) 62 Cal.4th 204 which allows

10  compliance with local GHG plans.  The MND makes no attempt to comply with the goals set by

11  the City's LA Green plan (35 percent reduction from 1990 levels by 2030) or SB 32 (40 percent

12  reduction by 2030).  The listing of Project characteristics (e.g. solar-ready roofs, low-water

13  plumbing fixtures, opportunities for recycling) showed compliance only with existing state and

14  local laws, none of which were adopted specifically as part of a GHG reduction plan.  Nor is there

15  any attempt to quantify any claimed GHG emission reductions.  Furthermore, like the cumulative

16  traffic impact analysis, the Project's cumulative GHG impacts taken together with the 139 related

17  projects, are cumulatively significant by generating increased traffic and GHG emissions.

18  Although all GHG analysis is somewhat a cumulative analysis (*see Newhall Ranch*, 62 Cal.4th at

19  219), the MND makes no attempt to assess and impose all feasible mitigation to the Project

20  contribution to this cumulative impact.

21       30.      *The wholesale watering-down of GHG significance allows the Project to escape*

22  *feasible mitigation*, as identified in the Project Appeals including but not limited to passive solar

23  heating and natural wind ventilation, a better street design to increase stormwater infiltration and

24  reduced heat reflection, more efficient building mechanical systems and installation materials,

25  maximizing opportunities for rooftop solar panels, accelerating the phase-in for non-diesel

26  powered trucks with buildings providing truck accessible electric charging stations near loading

27

28

-11-

1    docks, limiting parking supply, implementing commuter trip reduction programs for employees

2    and other ride-sharing programs.

3         31.    **Air Quality**: *The MND ignores the likely carcinogens exposure to the elementary*

4    *school during the Project's 85 days of construction.*  The MND properly lists exposure to

5    sensitive uses of substantial pollutants concentrations as a significant impact, but only examines

6    criteria pollutants and chiefly carbon monoxide from mobile sources.  It fails to assess the

7    pollutants caused by the 3,222 trips by heavy-duty diesel trucks hauling asphalt and excavating

8    soil during the 85 days of the construction phase of the Project.  These trucks will emit diesel

9    engine exhaust, designated a Toxic Air Contaminant by the California Air Resources Board (see

10   17 Cal. Code of Regs., § 93000) and listed by the State of California as a known carcinogen.

11   Although the MND states that these trucks will likely haul materials from the Site along Selma

12   Avenue next to the elementary school (a sensitive use), the MND say nothing about the exposure

13   of these carcinogenic substances, much less impose any mitigation for these pollutants or NOx

14   emissions resulting primarily from truck activity emissions during operational phase of the

15   Project, discussed above.

16        32.    *Air quality mitigation is completely avoided.*  The MND fails to adequately

17   mitigate potentially significant air quality and smog impacts caused by diesel trucks during the

18   Project's construction phase and all the car trips during the operation of the Project.   The MND

19   improperly concludes that there would be no significant air quality impacts and avoids commonly

20   used mitigation measures available as set forth Petitioners' comment letters and expert comment

21   letters on the Project.  This is an abuse of discretion under CEQA.  These measures provide many

22   simple design features, that when combined together, optimize vehicle miles traveled reductions

23   and diesel truck emissions, and thus reduce smog and NOx emissions.  A full EIR should be

24   prepared to include additional air quality mitigation measures, as well as an updated air quality

25   assessment to ensure that the necessary mitigation measures are implemented to reduce NOx,

26   mobile source, particulate matter and smog emissions to below SCAQMD thresholds.

27

28

33.   **Noise**:  CEQA requires full disclosure of expected and potential impacts using "plain language" suitable for the public's comprehension of the documents and making explicit connections between increased exposures to factors that will affect human health.  *See* CEQA Guidelines § 15140; *see also San Franciscans for Reasonable Growth v. City and County of San Francisco* (1987) 193 Cal.App.3d 1544, 1548; *Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184, 1219.  Here, experts pointed out that notwithstanding compliance with the local noise ordinance, construction noise could range from 77 to 86 dBAs at adjacent sites and exceed the City's threshold of a 5 dBA increase threshold.  While this is disclosed, the MND fails to include the noise impacts caused by the heavy duty diesel truck trips or provide basic information on the average human reactions to these noise levels, which is common in CEQA documents (including noise levels where people will experience interference with daily talks on the phone, physical discomfort, pain, or temporary/permanent hearing loss that may be caused by a project).  The MND fails to present the data to the public in a meaningful manner. Nor does the MND demonstrate with substantial evidence that *compliance with local noise ordinance is enough* to mitigate noise impacts to beneath a level of significance.  *See California for  Alternatives to Toxics v. Department of Food and Agriculture* (2005) 136 Cal.App.4th 1, 17.  Here, the City *forecloses the consideration of substantial evidence* showing that there might be a significant noise impact on adjacent properties, like those to nearby sensitive uses, by relying on compliance with its general noise ordinance.  *See Protect the Historic Amador Waterways v. Amador Water Agency* (2004) 116 Cal.App.4th 1099, 1108; *see also Mejia v. City of Los Angeles* (2005) 130 Cal.App.4th 322, 331 ("A [MND] is proper, however, only if project revisions would avoid or mitigate the potentially significant effects ... to a point *where clearly no significant effect* on the environmental would occur .... ") (emphasis added, internal quotations omitted).

34.   **Land Use Inconsistency**:  *The MND fails to disclose and address inconsistencies between the Project and applicable land use plans and zoning.*  *See* CEQA Guidelines § 15125(d). Here, the MND fails to fully disclose the Project's inconsistency with the Site's "D"

-13-

1    limitation as part of AB 283's General Plan Consistency program (City Ordinance 165,660 dated

2    May 6, 1990), Gov. Code § 65680(d), or the supporting environmental review (Hollywood Plan

3    Revision EIR [SCH NO. 87-112504]).  Removal of this limitation is contrary to LAMC § 12.32

4    making "D" limitations permanent until community plans are revised.  Nor is it consistent with

5    the 1986 Hollywood Redevelopment Plan until the CRA/LA (successor agency to the former

6    redevelopment agency) prepares a Transportation Plan, which has not occurred.  Additionally, the

7    Municipal Code specifies that the maximum number of rooms permissible on the Site is 104

8    units.  The Project unlawfully proposes 212 rooms based on an erroneous Zoning Administrator

9    interpretation authorizing R5 residential densities on the Site.

10        35.    **Lead Agency:**  LAMC § 16.05 G.2 requires the City Planning Director to forward

11    an application for Site Plan Review for all projects in an adopted redevelopment area to the CRA

12    to act as the lead agency.  Under current law, the CRA/LA exercises all land use powers of the

13    former redevelopment agency.  The City violated the mandatory lead agency review requirement

14    by considering the MND prepared by the City Planning Department as the CEQA lead agency

15    instead of CRA/LA.

16        36.    Petitioners have no plain, speedy or adequate remedy at law other than the relief

17    sought in this Petition.  If Respondents persist in their refusal to rescind the Project Approval, and

18    if Respondents and Real Party are not enjoined or stayed from undertaking acts in furtherance of

19    the Project, Petitioners and the public will suffer irreparable harm from which there is no

20    adequate remedy at law in that the Project will be built, operations commence and significant

21    adverse impacts on the environment would occur, contrary to State and local law.

23    / / /

26    / / /

-14-

VERIFIED PETITION FOR WRIT OF MANDATE

**SECOND CAUSE OF ACTION**

**(Writ of Mandate Under Code Civ. Proc. § 1094.5 – Municipal Code Violations)**

37.    Petitioners restate and reallege Paragraphs 1-36, as if fully set forth herein.

38.    The City's Project Approval and findings including but not limited to whether proposed land use will be in conformity with public necessity, convenience, general welfare; consistent with good zoning practice; would protect the best interests of and assure a development more compatible with the surrounding property or neighborhood; secure an appropriate development in harmony with the objectives of the General Plan; and prevent or mitigate potential adverse environmental effects of the zone change. *See* LAMC §§ 12.32.C, G, Q and § 12.24.W.1 and § 16.05.F.  Without a project-specific EIR, these findings cannot be made given the numerous potential impacts related to traffic, GHG, air quality, land use inconsistency, cumulative impacts and noise.

39.    As discussed above, the removal of the "D" limitation allowing greater than 2:1 FAR is inconsistent with the General Plan Consistency Program, Hollywood Community Plan, the Hollywood Redevelopment Plan, and their related environmental reviews.  A fair reading of the Project Site's zoning history makes clear that the City must prepare a defensible Transportation Plan or a project-specific EIR before removing the limitations.

40.    The approval of 212 hotel rooms rather than the code required 104 rooms was premised on an invalid interpretation of LAMC § 12.22.A.18.  The Municipal Code allows for 104 rooms based on the 20,736 square feet by 200 square foot per unit.  However, the City relies on a Zoning Administrator interpretation that LAMC § 12.22.A.18 allows R5 residential dwelling unit densities, which is incorrect as set forth in comment letters presented to the City.  Said interpretation cannot override the plain language of the law.

41.    All this is inconsistent with the City's Municipal Code and applicable land use plans as set forth in the numerous comment letters and Project Appeals.

/ / /

1    42.    Petitioners have no plain, speedy or adequate remedy at law other than the relief

2  sought in this Petition.  If Respondents persist in their refusal to rescind the Project Approval, and

3  if Respondents and Real Party are not enjoined or stayed from undertaking acts in furtherance of

4  the Project, Petitioners and the public will suffer irreparable harm from which there is no

5  adequate remedy at law in that the Project can be occupied, operations commence and significant

6  adverse impacts on the environment would occur, contrary to the requirements of State and local

7  law.

8

9                              **PRAYER FOR RELIEF**

10    WHEREFORE, Petitioners pray for the following relief:

11    1.    That the Court enters a peremptory writ of mandate ordering the City, its Council

12  and Planning Department to set aside and void the Project Approval, pending the City's full

13  compliance with CEQA and its Municipal Code including preparation of appropriate CEQA

14  documentation and zoning findings.

15    2.    That the Court issue a temporary stay, stay, temporary restraining order, and/or an

16  injunction ordering the City, Real Party in Interest, and (its) their agents and successors to refrain

17  from proceeding with the Project and issuing further permits while this Petition is pending.

18    3.    That the Court issue a permanent injunction ordering the City and Real Party in

19  Interest to refrain from proceeding with the Project pending the City's full compliance with

20  CEQA and the Municipal Code including preparation of appropriate CEQA documentation and

21  zoning findings.

22    4.    For Petitioners' costs and fees pursuant to Code of Civil Procedure; and

23

24    ///

25

26    ///

27

28

-16-

VERIFIED PETITION FOR WRIT OF MANDATE

5. For other and further relief as the Court finds proper.

DATED: ___6/17/17___

LAW OFFICE OF GIDEON KRACOV

By: _____
GIDEON KRACOV
Attorney for PETITIONERS

-17-

VERIFIED PETITION FOR WRIT OF MANDATE

1    I, Elle Farmer, have read the VERIFIED PETITION FOR WRIT OF MANDATE and

2 know its contents.  The matters stated therein are true to my own knowledge and belief, except as

3 stated on information and belief, and to those matters I believe them to be true.

4

5    I declare under penalty of perjury under the laws of the State of California that the

6 foregoing is true and correct.

7

8

9    Executed on June 7,        2017, at Los Angeles, California.

10

11    _Elle Farmer_

12    Elle Farmer

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-18-

VERIFIED PETITION FOR WRIT OF MANDATE

06/08/2017

EXHIBIT A

1    GIDEON KRACOV (Cal. Bar No. 179815)
      LAW OFFICE OF GIDEON KRACOV
2    801 S. Grand Avenue, 11th Floor
      Los Angeles, CA  90017-4645
3    Tel: (213) 629-2071
      Fax: (213) 623-7755
4    gk@gideonlaw.net

5

6    Attorneys for Petitioners
      Lauren "Elle" Farmer, Liliana Hernandez and
      Hollywood for the Environment and Equitable
7    Development

8

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA
                   COUNTY OF LOS ANGELES
10

| | |
|---|---|
| 11   LAUREN "ELLE" FARMER, LILIANA HERNANDEZ, HOLLYWOOD FOR THE ENVIRONMENT AND EQUITABLE DEVELOPMENT, | Case No. |
| 14           Petitioners and Plaintiffs, | **NOTICE OF INTENT TO SUE** |
| 15   v. | |
| 16   CITY OF LOS ANGELES; CITY COUNCIL OF CITY OF LOS ANGELES; LOS ANGELES DEPARTMENT OF CITY PLANNING; DOES 1 through 4, | **California Environmental Quality Act (Cal. Pub Res. Code § 21000 *et seq.*) and Municipal Code** |
| 19          Respondents and Defendants. | |
| 20   6516 TOMMIE HOTEL, LLC; DOES 5 through 10, | |
| 22          Real Parties in Interest. | |

24

25       PETITIONERS LAUREN "ELLE" FARMER, LILIANA HERNANDEZ AND

26    HOLLYWOOD FOR THE ENVIRONMENT AND EQUITABLE DEVELOPMENT

27    (COLLECTIVELY "PETITIONERS")  HEREBY PROVIDE NOTICE OF INTENT TO SUE the

28    City of Los Angeles, its City Council and Department of City Planning (collectively "City") in

ORIGINAL

06/08/2017

ExA

1   approving the 6516-6526 West Selma Avenue Tommie Hotel project (Council File No. 08-0887,

2   -S1, -S2; Planning Case No. CPC-2016-270-VZC-HD-CUB-SPR, ENV-2016-4313-MND;

3   Ordinance No. 184916) in Los Angeles, California (the "Project").

4          Petitioners allege that the approval of the Project violated the California Environmental

5   Quality Act ("CEQA") and the City's Municipal Code.  Specifically, a Mitigated Negative

6   Declaration was used for the Project, not a more comprehensive Environmental Impact Report

7   pursuant to CEQA.  This means the less deferential "fair argument" standard applies.  The suit

8   will allege the Project may have a "fair argument" of environmental impacts, including but not

9   limited to greenhouse gas emissions, land use inconsistency, hazardous substances, air quality,

10  noise, traffic, and cumulative impacts, and rezoning findings.

11         Petitioners intend to pray for the following relief:

12         1.     That the Court enter a peremptory writ of mandate ordering the City to set aside

13  the approval of the Project, pending full compliance with CEQA and its Municipal Code.

14         2.     That the Court issue a stay and/or injunction ordering the City, Real Parties in

15  Interest, and their agents to refrain from proceeding with the Project while the Petition is pending.

16         3.     That the Court issue a permanent injunction ordering the City and Real Parties in

17  Interest to refrain from proceeding with the Project pending the City's full compliance with

18  CEQA and the Municipal Code.

19         4.     For Petitioners' costs and fees pursuant to Code of Civil Procedure; and

20         5.     For other and further relief as the Court finds proper.

21

22  DATED: _____6/7/17_____                    LAW OFFICE OF GIDEON KRACOV

23

24                                            By: _____

25                                                 GIDEON KRACOV
                                                   Attorney for PETITIONERS
26

27

28

NOTICE OF INTENT TO SUE

**PROOF OF SERVICE**

1

2       I, Gideon Kracov, being duly sworn, deposes and says:

3       I am a citizen of the United States and work in Los Angeles County, California.  I am over the age of eighteen years and am not a party to the within entitled action.  My business address is: 801 S. Grand Ave., 11th Fl., LA, CA 90017.  On ____6/7/17____, I

4   served the attached service list of persons with the following documents:

5   NOTICE OF INTENT TO SUE – FARMER v. LA CITY

6   The document was served on:

7   Holly Wolcott
    LOS ANGELES CITY CLERK
8   200 N. Spring Street, Room 395
    Los Angeles, CA 90012
9

    Vincent P. Bertoni
10   DIRECTOR
    LOS ANGELES DEPARTMENT OF CITY PLANNING
11   201 N Figueroa St # 600, Los Angeles, CA 90012

12   Michael Feuer
    Los Angeles City Attorney
13   James K. Hahn City Hall East
    200 North Main Street, 8th Floor
14   Los Angeles, CA. 90012

15

16   ✕   by placing a true copy thereof enclosed in a sealed envelope, with postage
17       thereon fully prepaid, in the United States Post Office mail box at 801 S. Grand Ave., Los Angeles, California, addressed as set forth above.  I am
18       readily familiar with my firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on
19       the same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation
20       date of postage meter date is more than 1 day after date of deposit for mailing in affidavit.

21

22       I declare under penalty of perjury, according to the laws of the State of California,
23   that the foregoing is true and correct.

24       Executed this ____6/17____, 2017 at Los Angeles, California.

25                                        **Gideon Kracov**

26

27

28

06/08/2017

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Gideon Kracov SBN 179815<br>801 S. Grand Ave., 11th Floor<br>Los Angeles, CA 90017<br><br>TELEPHONE NO.: (212) 629-2071    FAX NO.: (213) 623-7755<br>ATTORNEY FOR *(Name)*: Lauren "Elle" Farmer, Liliana Hernandez and HEED | **FILED**<br>Superior Court Of California<br>County Of Los Angeles<br><br>**JUN 08 2017**<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By _____ Deputy<br>Charlie L. Coleman |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: Stanley Mosk Courthouse
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central

CASE NAME:
Farmer, et al. v. City of Los Angeles, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: BS 1 6 9 8 5 5 |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount demanded exceeds $25,000) | [ ] Limited<br>(Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[✓] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [ ] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify)*: 2
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 6/7/17

Gideon Kracov
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

ORIGINAL

BS 1 6 9 8 5 5

| SHORT TITLE: Farmer v. City of Los Angeles | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|
| Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| Other Personal<br>Injury Property<br>Damage Wrongful<br>Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g.,<br>assault, vandalism, etc.) | 1, 4, 11 |
| | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

*Auto Tort* (left row label for first two rows)

*Other Personal Injury/Property Damage/Wrongful Death Tort* (left row label for remaining rows)

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: Farmer v. City of Los Angeles | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: Farmer v. City of Los Angeles | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☑ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE:<br>Farmer v. City of Los Angeles | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address**: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br>Stanley Mosk Courthouse<br>111 N. Hill St.<br>Los Angeles, CA 90012 |
|---|---|

| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90012 | |
|---|---|---|---|

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 06/07/17 _____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.

2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.

3.  Civil Case Cover Sheet, Judicial Council form CM-010.

4.  Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5.  Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6.  A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# EXHIBIT R

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES**

**SOUTHEAST DISTRICT/NORWALK COURT**

FILED
Superior Court of California
County of Los Angeles

DEC 19 2018

Sherri R. Carter, Executive Officer/Clerk
By _____ Executive Officer/Clerk
ANA PEREZ          Deputy

| | |
|---|---|
| LAUREN ELLE FARMER ET AL, | Case No.: BS169855 |
| Plaintiff, | ORDER/RULING |
| vs. | |
| CITY OF LOS ANGELES ET AL, | |
| Defendant | |

**Petitioners Farmer, Hernandez, and Hollywood for the Environment and Equitable Development's petition for writ of mandate is GRANTED as to the 1st cause of action, and DENIED as to the 2nd cause of action.**

Petitioners Farmer, Hernandez, and Hollywood for the Environment and Equitable Development seek a peremptory writ of mandate, setting aside City of Los Angeles's land use entitlements. Petitioners file the instant writ on two grounds: 1) the mitigated negative declaration ("MND") violated CEQA; and 2) City violated its own zoning laws in approving the entitlements.

JUDICIAL NOTICE is taken of Petitioner and Respondent's Exhibits.

<u>Project Description</u>

The Tommie Hotel Project is a 212 room hotel located at 6516-6526 West Selma Avenue in Hollywood.

<u>Standard</u>

Where a writ is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer, the case shall be heard by the court sitting without a jury. (CCP 1094.5(a).)  The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. <u>Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.</u>

(CCP 1094.5(b).)  Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.  (CCP 1094.5(c).)

1st CAUSE OF ACTION:  CEQA VIOLATIONS

A public agency must prepare an EIR whenever substantial evidence supports a "fair argument" that a proposed project may have a significant effect on the environment.  (Pub. Res. Code 21100, 21151; 14 CCR 15002(f)(1), (f)(2); No Oil, Inc. v. City of Los Angeles (1974) 13 Cal. 3d 68, 75.)

The purpose of the environmental assessment and initial study is to "enable an applicant or lead agency to modify a project, mitigating adverse impacts before an EIR is prepared, thereby enabling the project to qualify for a negative declaration." (14 CCR 15063(c)(2).)  A negative declaration shall be prepared if there is no substantial evidence in light of the whole record before the lead agency that a project will have a significant effect on the environment.  (Pub. Res. Code 21080(c); San Joaquin Raptor/Wildlife Rescue Center v. County of Stanislaus (1996) 42 Cal. App. 4th 608 617.)

"Mitigated negative declaration" means a negative declaration prepared for a project when the initial study has identified potentially significant effects on the environment, but (1) revisions in the project plans or proposals made by, or agreed to by, the applicant before the proposed negative declaration and initial study are released for public review would avoid the effects or mitigate the effects to a point where clearly no significant effect on the environment would occur, and (2) there is no substantial evidence in light of the whole record before the public agency that the project, as revised, may have a significant effect on the environment.  (Pub. Res. Code 21064.5.)

In the present action, Petitioners contend that the Project will have significant environmental impacts on:  Noise, GHG, Traffic, Land Use, and Air Quality.

Noise

The MND discloses, "According to the L.A. CEQA Thresholds Guide, a significant impact would occur if construction activities lasting more than 10 days in a three-month period would increase the ambient noise levels by 5 dBA or more."  (AR 268.)  Thereafter, the MND admits that "construction activities associated with the proposed Project would increase daytime noise levels… by more than 5 dBA."  (AR 270.)

The MND then states that "compliance with the noise regulations under [LAMC 41.40] would reduce construction noise impacts to the maximum extent feasible.  These regulations would not permit construction activities to occur during recognized sleep hours for nearby residences… these regulations would ensure that construction-related noise impacts would be less than significant and no mitigation measures are required."  (AR 270.)

No mitigation measures are proposed to combat "significant" construction noise.

Respondents contend that the Threshold Guide is a "voluntary tool" that is appropriate under "normal" conditions, but different thresholds may apply under other circumstances. (Leisy Decl., Ex. G, pp. 30, 34-35)  According to Respondents, City determined that its noise ordinances were a "more appropriate threshold for this Project." (Opposition, 15:11.)  However, LAMC 41.40 is merely an ordinance that prohibits construction between the hours of 9:00 p.m. and 7:00 a.m.  It does not provide any guidance regarding "significance" thresholds/measurements for noise impacts.

Further, the LA CEQA Thresholds Guide states that its guide is appropriate for projects located within City boundaries under "normal" conditions.  The MND does not present any facts showing that this project is subject to a different threshold because its conditions are "abnormal."

The court therefore finds that Petitioner has produced substantial evidence of a "fair argument" that the project may have a "significant" effect on noise impacts for which no mitigation measures have been proposed.

Like in Keep Our Mountains Quiet v. County of Santa Clara (2015) 236 Cal.App.4th 714, 732, an EIR is required even if evidence shows the Project will not generate noise in excess of County's noise ordinance.

Respondents contend that Keep Our Mountains Quiet is distinguishable because there, the project concerned an environmentally-sensitive location, and the MND failed to mitigate "significant" noise impacts to wildlife.  However, such does not change the analysis or application of the case to the instant facts.  Here, the MND admits that construction noise impacts would be "significant" pursuant to the LA CEQA Thresholds Guide, but the MND failed to mitigate any such noise impacts.  Such evidence constitutes substantial evidence of a "fair argument" that the project may have a "significant" effect on noise impacts.

Respondents also contend that any mitigation would be "infeasible," but no such analysis of the infeasibility of alternatives is included in the MND.

Finally, Respondents' authorities are not on point.  Respondents rely on San Francisco Beautiful v. City and County of San Francisco (2014) 226 Cal.App.4th 1012, 1033, for the general proposition that an agency may rely on generally applicable regulations to conclude that an impact will be less than significant.  However, San Francisco Beautiful cites Tracy First v. City of Tracy (2009) 177 Cal.App.4th 912, 932–934, and Tracy First opined that reliance on the California Building Energy Efficiency Standards is sufficient to determine a significant energy impact because these building standards "are meant to promote energy efficiency, as the name implies.  In other words, they 'reduce the wasteful, inefficient, and unnecessary consumption of energy.'"  The court concluded that reliance on this regulation is adequate because the Project is 25 percent better than what is required by the state standards.  Here, LAMC 41.40 provides no standard against which to measure the construction noise impact of "more than 5 dBA." (AR 270.)  LAMC 41.40 simply prohibits noise during certain hours.  There is no "significance"

threshold to measure the project's noise against. Thus, the conclusion that these regulations would ensure that "construction-related noise impacts would be <u>less than significant</u> and <u>no mitigation measures are required</u>" (AR 270) is not based on any standard of measurement.

Similarly, National Parks & Conservation Assn. v. County of Riverside (1999) 71 Cal.App.4[th] 1341, 1358-1359, does not support Respondents. There, the regulation relied upon actually measured "levels of" significance and insignificance. There is no such measurement of "significance" versus "insignificance" in LAMC 41.40.

Sierra Club v. Tahoe Regional Planning Agency (E.D. Calif. 2013) 916 F. Supp.2d 1098 is also distinguishable because the standards of review are different. Sierra Club dealt with a situation where an EIR was prepared, and therefore, the deferential standard applied. <u>Here, only an MND and no EIR was prepared, and therefore, the fair argument test, a low threshold test for requiring the preparation of an EIR applies.</u> (No Oil, Inc. v. City of Los Angeles, 13 Cal.3d at 84.)

Furthermore, regarding the operational noise impact from rooftop events, the court finds that City's reliance on the additional measures adopted after circulation of the MND to contend that the significant noise impact (AR 2485, 5461) has been mitigated is improper pursuant to Gentry v. Murrieta (1995) 36 Cal.App.4[th] 1359, 1380 – "if there was substantial evidence to support a fair argument that the Project would have a significant effect... then the City could not adopt new mitigation conditions aimed at this effect without recirculating its proposed negative declaration. Nevertheless, the City added mitigation condition... without recirculating. In so doing, it abused its discretion."

Accordingly, the court finds that the MND is defective, and cannot be upheld. Thus, writ of mandate is GRANTED as to the 1st cause of action.

<u>2nd CAUSE OF ACTION:  VIOLATIONS OF LAMC, CHARTER, AND 1998 HOLLYWOOD COMMUNITY PLAN</u>

Petitioners contend that absent an exception under LAMC 12.22.C, the project site is limited to 104 guestrooms.  (See also LAMC 12.14, 12.16.C.3, AR 1243 and 11350.)

Petitioners contend that City relies on the wrong exemption in LAMC 12.22.A.18 because the Project does not contain "residential units." However, LAMC considers hotels a residential use. (LAMC 12.03 definition of "Hotel: A residential building designated or used for or containing six or more guest rooms.") The Project is located in a commercial district with public transit, and is therefore the type of project contemplated by Section 12.22-A.18.

Further, the court finds that the Zoning Administrator Interpretation of LAMC 12.22-A.18 is reasonable. The City is divided into various zones and land use designations based on use type and intensity. Land use and lot area relate to one another from a planning perspective. Thus, in the absence of an express provision for lot area in the section relating to mixed-use developments in commercial zones, City's determination that LAMC's reference to R5 uses included R5 lot area standard for the density of those uses is reasonable. (AR 2489, 4223.)

Finally, the court finds that City properly exercised its legislative authority in changing the "D" limitation.  There are no restrictions on the City's legislative authority to supersede old zoning ordinances and adopt new ones.  (Riggs v. City of Oxnard (1984) 154 Cal.App.3d 526, 530-531.) A "D" limitation is nothing more than a Special Zoning Classification governed by LAMC 12.32.  (AR 11476-11477.)

Writ of mandamus is DENIED as to 2nd cause of action for Violations of LAMC, Charter, and 1998 Hollywood Community Plan.

Remaining CEQA Issues:

Because the MND is defective based on the construction and operational noise impacts, the court need not address the remaining CEQA issues.  "[S]ection 21005 does not require [the court] to address additional alleged defects that may be addressed in a completely different and more comprehensive manner upon further CEQA review following remand." (North Coast Rivers Alliance v. Kawamura (2015) 243 Cal.App.4th 647, 682; see also Washoe Meadows Community v. Department of Parks & Recreation (2017) 17 Cal.App.5th 277, 290-291 – court declines to address the recirculation of improper deferral of formulating mitigation measures issues because they could "ultimately be rendered moot" upon a revised EIR".)

However, out of an abundance of caution, the court will analyze the remaining issues below:

GHG

When assessing the significance of greenhouse gas emissions, an agency should consider these factors among others: (1) The extent to which the project may increase or reduce greenhouse gas emissions as compared to the existing environmental setting; (2) Whether the project emissions exceed a threshold of significance that the lead agency determines applies to the project; (3) The extent to which the project complies with regulations or requirements adopted to implement a statewide, regional, or local plan for the reduction or mitigation of greenhouse gas emissions.... If there is substantial evidence that the possible effects of a particular project are still cumulatively considerable notwithstanding compliance with the adopted regulations or requirements, an environmental impact report must be prepared for the project. (Center for Biological Diversity v. Department of Fish & Wildlife (2015) 62 Cal. 4th 204, 217.)

The lead agency shall have discretion to determine, in the context of a particular project, whether to: (1)  Use a model or methodology to quantify greenhouse gas emissions resulting from a project, and which model or methodology to use. The lead agency has discretion to select the model or methodology it considers most appropriate provided it supports its decision with substantial evidence. The lead agency should explain the limitations of the particular model or methodology selected for use; and/or (2)  Rely on a qualitative analysis or performance based standards.  (Guideline 15064.4(a).)

The MND relies upon a 2010 Draft Threshold per person GHG efficiency target goal of reducing GHG emissions to 1990 levels by 2020, modeled after AB 32, the Global Warming Solutions Act of 2006.  (AR 233.)  Based on this threshold, the GHG per person is significant if it exceeds

a 4.8 metric ton a year per person threshold. (AR 235.) City's analysis showed that the GHG impacts were less than significant.

Petitioners contend that this threshold is outdated, and was replaced by SB 32 in September 2016 (just three months before the MND was published), when Governor Brown enacted H&S Code 38566 to achieve a 40% reduction in GHG emissions over the 1990 level by the end of 2030. The court finds that this objection lacks merit because City has broad "discretion" to select an appropriate model or methodology. (Guideline 15064.4(a)(1).) "Proposed reduction with Assembly Bill 32's reduction goal is a proper methodology within the agencies' discretion." (Center for Biological Diversity v. Department of Fish & Wildlife (2015) 62 Cal. 4th 204, 248.)

Notwithstanding such, City did conduct supplemental GHG analysis based on a 2035 significance threshold consistent with SB 32. (See AR 4201-4202; AR 5386-5388.) Under the 2035 threshold, the Project's GHG emissions would remain less than significant. (AR 4202, 5387.) City's experts explained that in 2035, the GHG emissions would be further reduced by new vehicle emissions standards and Cal Green Building Standards. (AR 5387-88.)

Accordingly, the court finds that Petitioners failed to establish a fair argument that the project will have significant effect on GHG.

Traffic Impacts

Petitioners contend the MND did not consider cumulative traffic impacts when the Project's traffic impacts are added to the 139 other "related" development projects that could be constructed in the vicinity of the Project. However, Table IV-30 (AR      306) did consider cumulative future project scenarios. See Column 8 of 9, labeled "Future + Project" "Change". Thus, the MND concluded that the cumulative impacts would be less than significant. Further, the LA Department of Transportation peer reviews the traffic analysis and found that it "accounted for other known development projects in evaluating potential cumulative impacts." (AR 1200.)

Accordingly, the court finds that Petitioners failed to establish a fair argument that the project will have significant effect on traffic.

Air Quality

Petitioners contend the MND fail to discuss exposure to diesel emissions from the trucks. (AR 211-212, 5120-5121.)

However, City performed an analysis of potential air quality impacts. (AR 206-213.) The MND's analysis was supported by a technical study using California Emissions Estimator Model, as recommended by SCAQMD. (AR 346-347.) The analysis determined that all emissions would fall under the applicable thresholds of significance, and therefore would be less than significant without mitigation. City's analysis of construction-related air quality impacts does include emissions associated with heavy diesel trucks. (AR 5388.) SCAQMD concurs with

City's assessment and "does not consider diesel-related cancer risks from construction to be an issue due to the short-term nature of construction activities." (Id.)

Accordingly, the court finds that Petitioners failed to establish a fair argument that the project will have significant effect on air quality.

**IT IS SO ORDERED.**

Dated:   DEC 1 9 2018

JOHN A. TORRIBIO
JUDGE OF THE SUPERIOR COURT

ORDER - 7

# EXHIBIT S

**FILED**
Superior Court Of California
County Of Los Angeles

*Superior Court of California*

JAN 1 1 2021

*County of Los Angeles*

Sherri R. Carter, Executive Officer/Clerk
*Department 32*                By _____ , Deputy
Shantal Luqueño

| | |
|---|---|
| THE SUNSET LANDMARK INVESTMENT, LLC, | Case Nos.: |
| | 19STCP01027 (Sunset Case) |
| Petitioner, | 19STCP00988 (Maddren Case) |
| v. | Hearing Date: January 6, 2021 |
| CITY OF LOS ANGELES, et al. | **ORDER RE:** |
| Respondents. | PETITIONS FOR WRIT OF MANDATE |
| | |
| CASEY MADDREN, | |
| Petitioner, | |
| v. | |
| CITY OF LOS ANGELES, et al. | |
| Respondents. | |

## Background

### I. Sunset Petition

Petitioner the Sunset Landmark Investment, LLC (Sunset) commenced this mandamus action against Respondents City of Los Angeles and the City of Los Angeles City Council (collectively, City) and Real Party-in-Interest 6421 Selma Wilcox Hotel LLC (Real Party) on April 2, 2019. The operative pleading is the First Amended Petition (FAP) filed on November 4,



**Exhibit
8**
Friedman
03/21/2022

1  2019.  The FAP asserts two causes of action for writ of mandate based on CEQA violations.  The

2  FAP alleges in pertinent part as follows.

3       The Selma Wilcox Hotel Project is an 8-story, approximately 88.6-foot tall, 79,878-

4  square-foot hotel with 114 rooms / suites, restaurants/bars, and a three-level underground parking

5  garage.  The Project Site is located at the northeast corner of the intersection of Wilcox Avenue

6  and Selma Avenue in Hollywood.

7       On March 5, 2019, the City approved the Selma Wilcox Hotel Project's (1) Mitigated

8  Negative Declaration (MND), (2) Vesting Zone and Height District Changes, (3) Zoning

9  Administrator's Adjustment, (4) Site Plan Review, (5) Conditional Use Beverage, and other

10  entitlements.

11       Two types of CEQA violations warrant setting aside these land use entitlements.  First,

12  the City improperly piecemealed analysis of the Project.  The City "internally" piecemealed the

13  Project by piecemealing it into a series of ministerial building permits followed by two

14  discretionary entitlement processes.  The City "externally" piecemealed the Project by studying

15  it in isolation from other parts of the integrated complex of hotels, restaurants, bars, and

16  nightclubs that are being developed by Relevant Group, LLC (Relevant Group), Real Party's

17  parent company.  Second, the City improperly approved an MND as the record contains

18  substantial evidence to support a fair argument that the Project may cause significant unmitigable

19  impacts to the environment.

20  **II. Maddren Petition**

21       Petitioner Casey Maddren (Maddren) commenced this mandamus action against the City

22  and Real Party on March 29, 2019.  Maddren's petition asserts three causes of action for writ of

23  mandate: two causes of action based on CEQA violations and one cause of action based on a

24  violation of the Los Angeles Municipal Code (LAMC).  By these causes of action, Maddren

25  seeks to set aside the Project entitlements.  In the first cause of action, Maddren alleges that the

2

1 City violated CEQA by improperly piecemealing review of the Project.  In the second cause of

2 action, Maddren alleges that the City violated CEQA by approving the MND without sufficiently

3 analyzing and mitigating the Project's impacts on criminal activity.  In the third cause of action,

4 Maddren alleges that the City violated LAMC section 12.24.W by issuing Real Party a

5 conditional use permit for the sale of alcohol.

6         **Requests for Judicial Notice**

7    Sunset requests judicial notice of four documents: (1) LAMC section 12.03 (Ex. 1), (2)

8 LAMC section 21.7.2 (Ex. 2), (3) an April 4, 2014 Letter of Determination of the City of Los

9 Angeles approving certain modifications to the plans of the Dream Hotel (Phase 1) (Ex. 3), and

10 (4) a September 13, 2013 "Standard Offer, Agreement, and Escrow Instructions for Purchase of

11 Real Estate" for the site that became the Thompson Hotel (Ex. 4).

12    The City opposes Sunset's request for judicial notice only as to Exhibits 3 and 4.  The

13 City points out that a trial court's power to take judicial notice in a CEQA action is limited.

14 According to the California Supreme Court, "it would never be proper to take judicial notice of

15 evidence that (1) is absent from the administrative record, and (2) was not before the agency at

16 the time it made its decision.  This is so because only relevant evidence is subject to judicial

17 notice [citations], and the only evidence that is relevant to the question of whether there was

18 substantial evidence to support a quasi-legislative administrative decision under Public

19 Resources Code section 21168.5 is that which was before the agency at the time it made its

20 decision." (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 574.)  The

21 City contends that the Court should not take judicial notice of these two exhibits because the

22 exhibits were not before the City at the time it approved the Project.

23    In reply, Sunset tackles a strawman, querying "[w]hat can be more relevant to the

24 external piecemealing claim than evidence showing the interrelationship of the piecemealed parts

25 of the Relevant Group Hotel District project as contained in Exhibits 3 and 4?" (Reply at 3.)  As

3

1   noted *ante*, relevancy in this context is not measured exclusively by its statutory definition (Evid.

2   Code § 210). In general, relevancy in this context requires a showing that the evidence "was

3   before the agency at the time it made its decision."

4       In addition, Sunset argues that Exhibits 3 and 4 are not extra-record evidence because the

5   exhibits should have been included in the record under Public Resources Code section

6   21167.6(7) and (10). Sunset waived this argument by failing to raise it in its moving papers.

7   Furthermore, this argument appears to be an untimely request for reconsideration of the

8   December 3, 2019 court order denying Sunset's motion to augment the record. (*Powell v.*

9   *County of Orange* (2011) 197 Cal.App.4th 1573, 1577 (noting that "a motion asking the trial

10   court to decide the same matter previously ruled on is a motion for reconsideration under Code

11   of Civil Procedure section 1008").)

12       Finally, Sunset argues that Exhibits 3 and 4 ought to be admissible as extra-record

13   evidence because the exhibits provide background information and explicate the City's decision.

14   To repeat, Sunset waived this argument by failing to raise it in its moving papers.

15       Sunset's requests for judicial notice are granted as to Exhibits 1 and 2. (Evid. Code §

16   452(b).)

17                             **Objections**

18       The City objects to Sunset's Opening Brief (OB), claiming that it does not comply with

19   the line-spacing requirements of CRC 2.108(1) as well as the court order setting the parties'

20   briefing schedule. Pursuant to this objection, the City requests that the Court strike the final two

21   pages of Sunset's OB.

22       The City's objection is overruled. The court order setting the briefing schedule does not

23   set forth line spacing requirements. CRC 2.108(1) authorizes a party to file a brief with one and

24

25

4

one-half spacing.  A legal brief with one and one-half spacing has 37 lines per page.[1]  Sunset's OB is one and one-half spaced and has 37 lines per page.  As such, the brief complies with CRC 2.108.

That said, double-spacing of briefs is the uniform practice, and the parties' briefing schedule does not suggest any deviation therefrom.  Moreover, double-spacing is the norm because it makes briefs easier to read.  While the Court may have 20/20 vision with corrective lenses, one and one-half spacing imposed an unnecessary burden on this Court.

Further, Sunset violated the CRCs, just not CRC 2.108.  CRC 2.104 requires papers filed with the court to use a font size no smaller than 12 points.  The font size of Sunset's OB is 11.5 points.  The Court, in its discretion, shall not penalize Sunset for this CRC violation.

## Discussion

Sunset seeks a writ of mandate directing the City to vacate the project's land use entitlements on the grounds that (1) substantial evidence supports a fair argument that the project may have significant effects on the environment and (2) CEQA review of the project was improperly piecemealed.  Maddren seeks a writ of mandate directing the City to vacate the project's land use entitlements on the grounds that (1) substantial evidence supports a fair argument that the project may have significant effects, (2) CEQA review of the project was improperly piecemealed, and (3) the City's CUP findings are not supported by substantial evidence.  Apart from Sunset's and Maddren's piecemealing challenges, the Court evaluates each argument separately.

### I. Significant Impacts on the Environment

---

[1] A typical legal brief with double-spacing contains 28 lines of text.  A legal brief with single-spacing would therefore contain 56 lines (28 x 2).  After performing some basic algebra ($1.5x = 56$), the Court has deduced that a legal brief with one and one-half spacing would contain 37 lines ($56 / 1.5 = 37.33$).

1    Sunset and Maddren contend that substantial evidence supports a fair argument that the

2    project may have significant impacts on the environment.

3    **A. Standard of Review**

4    These contentions are reviewed for abuse of discretion under the "fair argument"

5    standard. (*Wollmer v. City of Berkeley* (2009) 179 Cal.App.4th 933, 939.) "CEQA requires

6    preparation of an EIR 'whenever it can be fairly argued on the basis of substantial evidence that

7    the project may have significant environmental impact.' [Citations.] Thus, if substantial

8    evidence in the record supports a 'fair argument' significant impacts or effects may occur, an

9    EIR is required and a negative declaration cannot be certified." (*Ibid.*) "The fair argument

10   standard is a 'low threshold' test for requiring the preparation of an EIR. [Citations.] It is a

11   question of law, not fact, whether a fair argument exists, and the courts owe no deference to the

12   lead agency's determination.  Review is de novo, *with a preference for resolving doubts in favor*

13   *of environmental review*." (*Ibid.* (emphasis in original).) "When a challenge is brought to an

14   agency's determination an EIR is not required, 'the reviewing court's "function is to determine

15   whether substantial evidence supported the agency's conclusion as to whether the prescribed

16   'fair argument' could be made." ' " (*Ibid.*) "If such evidence exists, the reviewing court must

17   set aside the agency's decision to adopt a negative declaration or a mitigated negative declaration

18   as an abuse of discretion in failing to proceed in a manner as required by law." (*Id.* at 939-40.)

19   **B. Air Quality Impacts**

20   The initial study checklist form set forth in the CEQA Guidelines requires a lead agency

21   to evaluate air quality. (14 CCR Appendix G.)  Specifically, the form asks lead agencies to

22   consider whether the project will "expose sensitive receptors to substantial pollutant

23   concentrations." (*Ibid.*)  Sensitive receptors "are considered more sensitive to changes in air

24   quality than others." (AR 136.)  According to SCAQMD, sensitive receptors include residences,

25   schools, playgrounds, athletic facilities, long-term health care facilities, and the like. (*Ibid.*)

6

1    In assessing the Project's air quality impacts, the City examined toxic air contaminants

2  (TACs).  TACs "are airborne pollutants that may increase a person's risk of developing cancer or

3  other serious health effects.  TACs include over 700 chemical compounds that are identified by

4  state and federal agencies based on a review of available scientific evidence."  (AR 120.)

5  According to a SCAQMD study conducted in May 2015, TAC concentrations in the South Coast

6  Air Basin "equate to a background cancer risk of approximately 897 in 1,000,000 primarily due

7  to diesel exhaust particulate matter (DPM)."  (AR 125.)

8    In the MND, the City concludes that the Project would not expose sensitive receptors to

9  substantial pollutant concentrations and its impacts would be less than significant.  (AR 137-38.)

10  With respect to TACs, the City finds that "TAC emissions are not expected to be significant, as

11  the Project does not include typical sources of acutely and chronically hazardous TACs such as

12  industrial manufacturing processes and automotive repair facilities.  In addition, SCAQMD

13  recommends that health risk assessments be conducted for substantial sources of diesel

14  particulate emissions (e.g., truck stops and warehouse distribution facilities) and has provided

15  guidance for analyzing mobile source diesel emissions.  The Project is not anticipated to generate

16  a substantial number of truck trips.  Based on the limited activity of TAC sources, the Project

17  would not warrant the need for a health risk assessment associated with on-site activities, and

18  any minimal TAC impacts are expected to be less than significant.  Long-term operation of the

19  Project would not have any significant impacts on pollutant concentrations at nearby receptors."

20  (AR 137.)

21    Sunset asserts that there is substantial evidence supporting a fair argument that the

22  Project's diesel emissions will pose a significant risk of cancer to nearby sensitive receptors,

23  such as school children.  Sunset argues that, as such, 14 CCR section 15065(a)(4) necessitates a

24  mandatory finding of significant impact.  14 CCR section 15065(a)(4) states that "[a] lead

25  agency *shall find* that a project may have a significant effect on the environment and thereby

1  require an EIR to be prepared for the project where there is substantial evidence, in light of the

2  whole record, that … [t]he environmental effects of a project will cause substantial adverse

3  effects on human beings, either directly or indirectly." (Emphasis added.)

4       Sunset's argument is predicated on comments submitted to the City by SWAPE, an

5  environmental consulting firm. (AR 8743-62.) SWAPE's founding partner Matt Hagemann

6  (Hagemann) has a master's degree in geology and certifications as a geologist. (AR 8807.)

7  Hagemann has 30 years of experience in environmental policy, contaminant assessment and

8  remediation, stormwater compliance, and CEQA review. (*Ibid.*) Hagemann has served as a lead

9  analyst and an expert in the review of over 300 EIRs and negative declarations since 2003. (AR

10  8808.)

11       In its comment letter, SWAPE asserts that the City erred by not preparing a health risk

12  assessment (HRA). (AR 8749-51.) According to SWAPE, an HRA is necessary because

13  sensitive receptors are located within close proximity of the Project Site (*see* AR 96 (noting that

14  elementary school is 700 feet west of the Project Site, park is 475 feet west of the Project Site,

15  and nearest residence is 300 west of Project Site)), and construction and operation of the Project

16  Site will lead to the production of substantial amounts of DPM (AR 8750 (construction of

17  Project Site involves use of off-road equipment and heavy-duty on-road hauling trucks and

18  operation of Project Site will generate vehicle trips)). (AR 8749-50.) SWAPE also contends that

19  the City misunderstood SCAQMD's guidance on when an HRA is necessary. (AR 8750-51.)

20  SWAPE contends that SCAQMD requires HRAs not only for projects with specific land uses

21  obviously emitting TACs (like truck stops) but also to "any project that is expected to generate

22  mobile emissions from diesel powered equipment and trucks." (AR 8751.)

23       To demonstrate the Project's potential risks to nearby sensitive receptors, SWAPE

24  conducted its own preliminary health risk screening assessment of the Project's construction and

25  operational impacts to sensitive receptors using a screening level air quality dispersion model

1   (AERSCREEN) recommended by the EPA. (AR 8752-53.) SWAPE's preliminary HRA shows

2   that "[t]he excess cancer risk posed to adults, children, and infants at the [maximally exposed

3   individual resident (MEIR)] located approximately 100 meters away, over the course of Project

4   construction and operation are approximately 8.0, 53, and 120 in one million, respectively." (AR

5   8755.) Furthermore, "over the course of a residential lifetime (30 years) at the MEIR is

6   approximately 180 in one million." (*Ibid.*) Based on these results, SWAPE concludes that "[t]he

7   infant, child, and lifetime cancer risks exceed the SCAQMD's threshold of 10 in one million."

8   (*Ibid.*) SWAPE opines: "Our screening-level HRA demonstrates that construction and operation

9   of the Project could result in a potentially significant health risk impact...." (AR 8752.)

10          This preliminary assessment was conducted by an expert, and the assessment's results

11   appear to be based on reliable matter. (*See* Evid. Code § 801.) Absent a persuasive credibility

12   challenge, the results of SWAPE's preliminary health risk screening assessment qualify as

13   substantial evidence that the Project's air quality impacts may cause substantial adverse effects

14   on human beings.

15          In response, Real Party argues that the City had no legal obligation to prepare an HRA

16   for the Project. (RPI Opp. at 10.) This argument is a red herring. Sunset has not reasserted

17   SWAPE's contention that SCAQMD required the City to prepare an HRA. Sunset is reasserting

18   SWAPE's contention that approval of an MND is improper because the Project's diesel

19   emissions may pose significant health effects on human beings. As Sunset stresses (OB at 12),

20   the Court reviews this challenge under the fair argument standard. Under this standard, the

21   reviewing court "may not uphold an agency's decision [not to prepare an EIR] 'merely because

22   substantial evidence was presented that the project would not have [a significant environmental]

23   impact. The [reviewing] court's function is to determine whether substantial evidence support[s]

24   the agency's conclusion as to whether the prescribed 'fair argument' could be made. If there [is]

25   substantial evidence that the proposed project might have a significant environmental impact,

9

1  evidence to the contrary is not sufficient to support a decision to dispense with preparation of an

2  EIR and adopt a negative declaration, because it [can] be 'fairly argued' that the project might

3  have a significant environmental impact." (*Save the Agoura Cornell Knoll v. City of Agoura*

4  *Hills* (2020) 46 Cal.App.5th 665, 675-76.)  Regardless of whether the City had to prepare an

5  HRA, the City had to prepare an EIR in the event that it was presented with substantial evidence

6  that the Project might have a significant environmental impact.

7      Real Party contends that the preliminary HRA does not qualify as substantial evidence

8  because SWAPE acknowledges that the results may overestimate the cancer risk posed by the

9  Project. (*See* AR 8755 (stating that test is a "screening-level" HRA "which is known to be

10  conservative, and tends to err on the side of health protection").)  Real Party asserts that this

11  preliminary HRA amounts to "speculation" and "unsubstantiated opinion."

12      The Court disagrees.  Real Party presents no evidence or law showing that a preliminary

13  HRA has no evidentiary value.  SWAPE, an expert, opines that "[t]he results of [the preliminary

14  HRA] provide substantial evidence that the Project's construction and operational DPM

15  emissions may result in a potentially significant health risk impact that was not previously

16  identified." (AR 8752.)  This expert opinion supported by the preliminary HRA results is, by

17  definition, substantial evidence.  (Pub. Res. Code § 21080 (defining substantial evidence as

18  including "expert opinion supported by fact").)

19      That the preliminary HRA may overestimate the cancer risk does not present cause to

20  completely disregard its results but, instead, begs further inquiry by the lead agency.  This is

21  particularly true in a situation like this where the preliminary HRA results show that the cancer

22  risks *far exceed* SCAQMD's threshold of 10 in one million.  (AR 8755 (cancer risk for children

23  is five times SCAQMD threshold; cancer risk for infants is 12 times SCAQMD threshold; and

24  lifetime cancer risk is 18 times SCAQMD threshold).)  As SWAPE notes, "[t]he purpose of a

25  screening-level HRA … is to determine if a more refined HRA needs to be conducted.  If the

1    results of a screening-level health risk are above applicable thresholds, then the Project needs to

2    conduct a more refined HRA that is more representative of site specific concentrations." (AR

3    8755.)

4         Next, Real Party argues that the City "did rebut SWAPE's analysis, pointing out the

5    flaws in its methodology and its claim that an HRA was required. (AR 10938.)" (RPI Opp. at

6    11.) Real Party's failure to specify these purported flaws is telling. The page in the record

7    identified by Real Party (AR 10938) contains the City's response to SWAPE's comments about

8    health risks associated with DPMs. The City's response attempts to rebut only one point — that

9    an HRA is required. The City states in full:

> The MND's analysis of potential health risks from TAC emissions during the
> construction and operations phase is consistent with SCAQMD's guidance on this
> topic and their comment letter in response to the Notice of Preparation.
> OEHHA's guidance is intended to implement the Air Toxics "Hot Spots"
> Information and Assessment Act (AB 2588) and establishes protocols for analysis
> but does not establish when projects must prepare an HRA. AB 2588 delegates to
> SCAQMD (as the local air district) the task of determining when a project must
> prepare an HRA. SCAQMD recommends, as pertinent to the Project, that health
> risk assessments be considered for substantial sources of diesel particulate
> emissions (e.g., truck stops and warehouse distribution facilities) and has
> provided guidance for analyzing mobile source diesel emissions. Yet since the
> Project is not the type that would emit substantial diesel PM, no HRA is required
> under the applicable SCAQMD guidance[.]
>
> Further, the Project does not qualify as a "facility" subject to AB 2588. But even
> if it did, as set forth in SCAQMD's most recent guidance interpreting the OEHHA
> guidance, a Project would only require further preliminary analysis—not a
> complete HRA. The guidance explains that SCAQMD then ranks projects
> surpassing preliminary thresholds, and only requires HRAs for the highest priority
> projects. (http://www.aqmd.gov/docs/default-source/planning/risk-
> assessment/ab2588-supplementalguidelines.pdf.). An HRA was not required, and
> the OEHHA guidance does not apply.

(AR 10938.)

     Nowhere in this response does the City conclude that SWAPE's preliminary HRA results

are not credible. While lead agencies are given "the benefit of the doubt on any legitimate,

1   disputed issues of credibility" (*Clews Land & Livestock, LLC v. City of San Diego* (2017) 19

2   Cal.App.5th 161, 193), the lead agency must identify the evidence in question with particularity

3   and explain why the agency regards the evidence as insubstantial in order to qualify for such

4   deference. (*Georgetown Preservation Society v. County of El Dorado* (2018) 30 Cal.App.5th

5   358, 378-79.)  Because the City did not explain why the preliminary HRA results do not qualify

6   as substantial evidence, the City is entitled to no deference on this issue.

7        Sunset has presented substantial evidence supporting a fair argument that the Project may

8   have significant effects on air quality.  As such, the City's decision to adopt an MND was an

9   abuse of discretion.

10       **C. Greenhouse Gas Emissions Impacts**

11       **1. Relevant CEQA Laws**

12       In an initial study, a lead agency must consider whether the project may (1) generate

13   greenhouse gas (GHG) emissions, directly or indirectly, that may have a significant impact on

14   the environment and (2) conflict with an applicable plan, policy, or regulation adopted for the

15   purpose of reducing GHG emissions.  (14 CCR Appendix G.)

16       The principal regulatory provision governing CEQA analysis of greenhouse gas

17   emissions is 14 CCR section 15064.4.  (*Association of Irritated Residents v. Kern County Bd. of*

18   *Supervisors (AIR)* (2017) 17 Cal.App.5th 708, 738-39.)  This section states that "a lead agency

19   should attempt to 'describe, calculate or estimate' the amount of greenhouse gases the project

20   will emit, but recognizes that agencies have discretion in how to do so."  (*Center for Biological*

21   *Diversity v. Department of Fish & Wildlife (CBD)* (2015) 62 Cal.4th 204, 217 (citing 14 CCR §

22   15064.4(a)).)  According to this section, the agency should consider the following factors in

23   assessing the significance of a project's GHG emissions: "(1) The extent to which the project

24   may increase or reduce greenhouse gas emissions as compared to the existing environmental

25   setting;  [¶]  (2) Whether the project emissions exceed a threshold of significance that the lead

1    agency determines applies to the project[;] [¶] (3) The extent to which the project complies with

2    regulations or requirements adopted to implement a statewide, regional, or local plan for the

3    reduction or mitigation of greenhouse gas emissions." (14 CCR § 15064.4(b).) These factors are

4    nonexclusive. (*AIR*, *supra*, 17 Cal.App.5th at 733-34.)

5        "The challenge for CEQA purposes is to determine whether the impact of the project's

6    emissions of greenhouse gases is *cumulatively* considerable, in the sense that 'the incremental

7    effects of [the] individual project are considerable when viewed in connection with the effects of

8    past projects, the effects of other current projects, and the effects of probable future projects.'

9    [Citations.] 'With respect to climate change, an individual project's emissions will most likely

10    not have any appreciable impact on the global problem by themselves, but they will contribute to

11    the significant cumulative impact caused by greenhouse gas emissions from other sources around

12    the globe. The question therefore becomes whether the project's incremental addition of

13    greenhouse gases is "cumulatively considerable" in light of the global problem, and thus

14    significant.' " (*CBD*, *supra*, 62 Cal.4th at 219.)

15        **2. Relevant Regulatory Laws, Plans, and Policies**

16        The City concluded that the Project's GHG emissions would be less than significant if the

17    Project was consistent with the following laws, plans, and policies: (1) Executive Orders S-3-05

18    and B-30-15, (2) Assembly Bill 32 Scoping Plan, (3) Southern California Association of

19    Government's (SCAG) 2016-2040 Regional Transportation Plan Sustainable Communities

20    Strategy (RTP/SCS), and (4) the City's transportation and air quality plans including the Green

21    Building Ordinance, ClimateLA Implementation Plan, and Mobility 2035 Plan. (AR 174.)

22        **a. Executive Order S-3-05 and Assembly Bill 32**

23        In June 2005, Governor Schwarzenegger signed Executive Order S-3-05 which set

24    greenhouse gas emissions reduction targets for California. (*Cleveland National Forest*

25    *Foundation v. San Diego Assn. of Governments* (*CNFF*) (2017) 3 Cal.5th 497, 504.) The

13

Executive Order established three general benchmarks: (1) reduce emissions to 2000 levels by

2010; (2) reduce emissions to 1990 levels by 2020; and (3) reduce emissions to 80 percent below

1990 levels by 2050. (*Ibid.*; *see also* AR 159.)

In 2006, shortly after Executive Order S-3-05 was issued, the Legislature enacted the

California Global Warming Solutions Act of 2006, commonly known as Assembly Bill No. 32

(AB 32). (*CNFF*, *supra*, 3 Cal.5th at 505.)

> Assembly Bill No. 32 partially adopted the Executive Order's goals by directing
> CARB to "determine what the statewide greenhouse gas emissions level was in
> 1990, and approve in a public hearing, a statewide greenhouse gas emissions limit
> that is equivalent to that level, to be achieved by 2020." [Citation.] The
> Legislature also directed CARB to prepare a "scoping plan" to identify how to
> achieve the "maximum technologically feasible and cost-effective reductions in
> greenhouse gas emissions by ... 2020." [Citation.] The scoping plan prepared by
> CARB explained that " '[r]educing greenhouse gas emissions to 1990 levels
> means cutting approximately 30 percent from business-as-usual emission levels
> projected for 2020, or about 15 percent from today's levels.' [Citation.] The
> Scoping Plan then set out a 'comprehensive array of emissions reduction
> approaches and tools' to meet the goal, including expanding energy efficiency
> programs, achieving a statewide renewable energy mix of 33 percent, developing
> with our regional partners a cap-and-trade program for greenhouse gases,
> establishing targets and policies for emissions in transportation and implementing
> existing clean transportation programs, and creating targeted fees on certain
> activities affecting emissions.

(*CNFF*, *supra*, 3 Cal.5th at 505.)

As explained more fully in the MND, CARB approved in May 2014 its first update to the

AB 32 Scoping Plan. (AR 161.) Based on revised estimates, CARB concluded that achieving

1990 GHG emission levels would require a reduction of 76 million $MTCO_2e$ or a reduction by

approximately 15.3 percent to achieve 2020 emission levels in the business-as-usual condition.

(AR 161.)

**b. Executive Order B-30-15 and SB 32**

In April 2015, Governor Brown signed Executive Order No. B-30-15. The executive

order "added a [GHG] reduction target of 40 percent below 1990 levels by 2030." (*Golden Door*

1    *Properties, LLC v. County of San Diego* (2018) 27 Cal.App.5th 892, 896; *see also* AR 162.)  In

2    2016, the Legislature enacted Senate Bill No. 32 (SB 32), "adding Health and Safety Code

3    section 38566, which adopts a goal of reducing gas emissions by 40 percent below 1990 levels

4    by the year 2030."  (*CNFF, supra,* 3 Cal.5th at 519.)

5            **c. SCAG's SCS**

6            In April 2016, SCAG adopted its RTP/SCS "calling for a continuation of integrated

7    planning for land use and transportation that will help achieve the State's goal of reducing per

8    capita GHG emissions by eight percent by 2020 compared to 2005 levels, by 18 percent by 2035,

9    and 21 percent by 2040."  (AR 166.)  "The RTP/SCS calls for public transportation

10   improvements that will reduce GHG emissions per household by up to 30 percent, one percent

11   reduction in GHG from having ZEVs, neighborhood vehicles, and carsharing/ridesourcing make

12   up two percent of the vehicle fleet by 2040."  (*Ibid.*)

13           **d. City Measures**

14           In May 2007, the City released its Green LA Plan that sets a goal to reduce the generation

15   of GHG emissions 35 percent below 1990 levels by 2030.  (AR 167.)  To implement the Green

16   LA Plan, the City published "ClimateLA" which includes a baseline GHG emissions inventory

17   for the City, identified enforceable strategies, and provided a means to monitor and report on

18   progress toward the 2030 goal of reducing GHG emissions by 35 percent from 1990 levels.

19   (*Ibid.*)  ClimateLA includes "a comprehensive set of green building policies to guide and support

20   private sector development."  (*Ibid.*)

21           In April 2008, the City adopted a Green Building Ordinance that calls for reduction of the

22   use of natural resources for new development.  (AR 168.)  Larger projects must meet the

23   equivalent of the certification at the Leadership in Energy and Environmental Design (LEED)

24   certified level.  (*Ibid.*)

25

In January 2016, the City adopted its Mobility 2035 Plan (Mobility Plan), the Circulation Element of its General Plan. (AR 167.)  The Mobility Plan focuses on developing a multi-modal transportation system that can address the City's mobility needs through 2035.  (*Ibid.*)  One of the Mobility Plan's key policy initiatives includes targeting GHG through a more sustainable transportation system.  (*Ibid.*)

**3. City's Findings**

**Existing Emissions:** The City found that existing development at the Project Site generates about 3,749 metric tonnes of cardon dioxide equivalent (MTCO$_2$e) annually, with the majority of emissions generated by mobile sources traveling to and from the Project Site.  (AR 170.)

**Methodology:** The City quantified GHG emissions from construction and operation of the Project using SCAQMD's CalEEMod. (AR 172.)  "CalEEMod is a statewide land use emissions computer model designed to provide a uniform platform for government agencies, land use planners, and environmental professionals to quantify potential criteria pollutant and GHG emissions associated with both construction and operations from a variety of land use projects.  The model is considered by the SCAQMD to be an accurate and comprehensive tool for quantifying air quality and GHG impacts from land use projects throughout California." (*Ibid.*)

**Significance Criteria:** CARB, SCAQMD, and the City have not yet adopted project-level significance thresholds for GHG emissions applicable to the Project. (AR 172.)  As a result, the City took primary direction from the CEQA Guidelines.  (*Ibid.* (citing 14 CCR § 15064.4).)  The City concluded that "in the absence of any adopted, quantitative, threshold, the Project would not have a significant effect on the environment if it is found to be consistent with the applicable regulatory plans and policies to reduce GHG emissions" including the aforementioned regulatory plans, policies, and laws. (AR 174.)

16

1   **Project Impacts:** The City concluded that the environmental impacts of the Project's

2   GHG emissions would be less than significant and that the Project was consistent with a number

3   of relevant plans and policies that govern climate change.  (AR 178-79.)

4   In reaching these conclusions, the City estimated and compared the GHG emissions for

5   the operations of the Project and a "No Action Taken Scenario" (NAT Scenario).  (AR 175.)

6   Mirroring the approach taken by CARB in its Scoping Plan, the NAT Scenario captures the

7   Project's GHG emissions in the absence of any GHG reduction measures.  (*Ibid.*)  The NAT

8   Scenario "does not consider site-specific conditions, Project design features, or prescribed

9   mitigation measures." (*Ibid.*)

10   The City estimated that the GHG emissions resulting from the Project's operation would

11   be 1,979 $MTCO_2e$ per year and that the GHG emissions resulting from the NAT Scenario would

12   be 2,980 $MTCO_2e$ per year.  (AR 175.)  These results reflect that the Project would reduce

13   emissions by 34 percent from the CARB 2020 NAT Scenario.  (*Ibid.*)  The City concluded that

14   the Project's GHG emissions are thus consistent with the reduction targets set forth in AB 32's

15   Scoping Plan (15.3 percent).  (AR 176.)

16   **4. Analysis of 14 CCR Section 15064.4 Factors**

17   Sunset challenges the City's finding that the environmental impacts of the Project's GHG

18   emissions are less than significant.  Sunset contends that the City misapplies the three factors

19   expressly enumerated in 14 CCR section 15064.4(b).

20   **a. First Factor**

21   A lead agency should consider "the extent to which the project may increase or reduce

22   greenhouse gas emissions as compared to the existing environmental setting." (14 CCR §

23   15064.4(b)(1).)

24   Sunset correctly points out that the Project will increase GHG emissions as compared to

25   the existing environmental setting by 1,979 $MTCO_2e$ per year.  (AR 175.)  Accordingly, this

1   factor does not favor a finding of insignificance.  By the same token, however, it cannot be fairly

2   concluded that this factor favors a finding of significance without further context.  If increased

3   GHG emissions were the sole criterion, then CEQA would essentially serve as a population

4   control measure.  (*See CBD*, *supra*, 62 Cal.4th at 219 ("For projects, like the present residential

5   and commercial development, which are designed to accommodate longterm growth in

6   California's population and economic activity, ... a certain amount of greenhouse gas emissions

7   is as inevitable as population growth.... [A] significance criterion framed in terms of efficiency

8   is superior to a simple numerical threshold because CEQA is not intended as a population control

9   measure.").)

10          **b. Second Factor**

11          A lead agency should consider "whether the project emissions exceed a threshold of

12   significance that the lead agency determines applies to the project."  (14 CCR § 15064.4(b)(2).)

13          Sunset acknowledges that the City has not set a generally-applicable or project-specific

14   GHG threshold of significance.  (OB at 13-14.)  Nonetheless, Sunset contends that the City

15   ignored potentially applicable GHG thresholds of significance such as SCAQMD's nonbinding

16   guide of 3,000 MTCO$_2$e per year for mixed use projects (AR 166).  Sunset asserts that the City

17   has routinely applied this threshold to other mixed use projects.  (*See* AR 11973-74.)

18          Sunset's argument is unpersuasive.  The fact of the matter is that the City was not

19   required to apply any particular threshold of significance and the City concluded that no general

20   thresholds of significance applied.  Accordingly, this factor is inapplicable.

21          In addition, Sunset has not submitted sufficient evidence showing that the City has

22   *routinely* applied SCAQMD's nonbinding guide for thresholds of significance to past projects.

23   Insofar as the record discloses, the City may have used SCAQMD's threshold of significance

24   with respect to a handful of projects.  In any event, the City is not required to apply those

25   thresholds simply because it has done so in the past.

1    Having so concluded, the Court accepts Sunset's general point that SCAQMD has a

2    threshold of significance of 3,000 MTCO$_2$e per year for mixed use projects and the Project

3    exceeds said threshold when the Project Site's existing emissions (3,749 MTCO$_2$e per year) and

4    the Project's operational emissions (1,979 MTCO$_2$e per year) are summed.  (*See CBD*, *supra*, 62

5    Cal.4th at 230 (noting that "a lead agency may rely on existing numerical thresholds of

6    significance for greenhouse gas emissions," such as those set by an air quality management

7    district).)

8    **c. Third Factor**

9    A lead agency should consider "the extent to which the project complies with regulations

10   or requirements adopted to implement a statewide, regional, or local plan for the reduction or

11   mitigation of greenhouse gas emissions."  (14 CCR § 15064.4(b)(3).)  "Such requirements must

12   be adopted by the relevant public agency through a public review process and must reduce or

13   mitigate the project's incremental contribution of greenhouse gas emissions.  If there is

14   substantial evidence that the possible effects of a particular project are still cumulatively

15   considerable notwithstanding compliance with the adopted regulations or requirements, an EIR

16   must be prepared for the project.  In determining the significance of impacts, the lead agency

17   may consider a project's consistency with the State's long-term climate goals or strategies,

18   provided that substantial evidence supports the agency's analysis of how those goals or strategies

19   address the project's incremental contribution to climate change and its conclusion that the

20   project's incremental contribution is not cumulatively considerable."  (*Ibid.*)

21   Sunset discusses this factor extensively.

22   **i. Consistency with AB 32 and SB 32**

23   Sunset has two quarrels with the City's reliance on AB 32.  First, Sunset contends that the

24   City improperly focuses on the Project's consistency with AB 32 (requiring a GHG reduction to

25   1990 levels by 2020) as opposed to its consistency with the more stringent standards of SB 32

19

1  (requiring a GHG reduction of 40 percent below 1990 levels by 2030).  Second, Sunset contends

2  that the City significance findings based on AB 32 are insufficient because the City fails to show

3  that it is "doing its fair share to achieve the plan's goals."  The Court agrees with both points.

4        The leading case on this issue is the California Supreme Court case *CBD*.  There, the lead

5  agency the Department of Fish and Wildlife (DFW) prepared an EIR for two natural resource

6  plans related to a proposed land development called Newhall Ranch, a massive mixed-use

7  development project.

8        One question examined by the California Supreme Court was whether DFW "abused its

9  discretion in adopting consistency with A.B. 32's reduction goals as its significance criterion for

10  the project's greenhouse gas emissions."  The court examined this question "de novo, as it is

11  predominately a legal question of correct CEQA procedure."

12        The California Supreme Court concluded that DFW did not abuse its discretion in doing

13  so.  The California Supreme Court reasoned in pertinent part: "The critical CEQA question is the

14  cumulative significance of a project's greenhouse gas emissions, and from a climate change

15  point of view it does not matter where in the state those emissions are produced.  Under these

16  circumstances, evaluating the significance of a residential or mixed use project's greenhouse gas

17  emissions by their effect on the state's efforts to meet its longterm goals makes at least as much

18  sense as measuring them against an absolute numerical threshold."  Moreover, while neither AB

19  32 nor the Scoping Plan ware express factors under section 15064.4, analyzing those documents

20  "is consistent with CEQA's 'inherent recognition ... that if a plan is in place to address a

21  cumulative problem, a new project's incremental addition to the problem will not be

22  "cumulatively considerable" if it is consistent with the plan and is doing its fair share to achieve

23  the plan's goals.'"

24        In reaching this conclusion, the California Supreme Court offers a caveat about longer

25  term emissions reduction targets: "A qualification regarding the passage of time is in order here.

20

1    Plaintiffs do not claim it was improper for this EIR, issued in 2010, to look forward only to 2020

2    for a guidepost on reductions in greenhouse gas emissions, and we therefore do not consider the

3    question whether CEQA required the EIR to address the state's goals beyond 2020.

4    Nevertheless, over time consistency with year 2020 goals will become a less definitive guide,

5    especially for longterm projects that will not begin operations for several years.  An EIR taking a

6    goal-consistency approach to CEQA significance may in the near future need to consider the

7    project's effects on meeting longer term emissions reduction targets."  (Citing Executive Order

8    No. B-30-15.)

9        *CBD* teaches that the City can rely on AB 32 as a significance criterion in evaluating the

10    Project's GHG emissions, and the City thoroughly discusses AB 32 in the MND. (AR 159-61,

11    175-77, 179-80) The MND concluded that the Project will reduce emissions by 34

12    percent compared to the NAT scenario, which is well over the 15.3 reduction required by the AB

13    32 Scoping Plan. (AR 175, 176 [Table 3.75 shows the Project will emit approximately 2,980

14    metric tons of $CO_2e$]) As such, the Project complies with the Scoping Plan.

15        The Court disagrees with Sunset that the MND fails to discuss SB 32.  The MND

16    expressly discloses that Governor Brown "issued an executive order setting a Statewide GHG

17    reduction target of 40 percent below 1990 levels by 2030."  (AR 162.) This executive order was

18    the precursor to SB 32.  (See CNFF, supra, 3 Cal.5th at 519.)  The MND then evaluates the

19    Project's consistency with this executive order.  (AR 179.)  The MND therefore sufficiently

20    disclosed the state's 2030 GHG reduction target to the public.

21        According to the MND, "a recent study" concluded that SB's 2030 target goal would be

22    reached through regulatory and technological changes: "A recent study shows that the State's

23    existing and proposed regulatory framework will allow the State to reduce its GHG emissions

24    level to 40 percent below 1990 levels by 2030 (consistent with [SB 32]), and to 60 percent below

25    1990 levels by 2050.  Even though this study did not provide an exact regulatory and

1  technological roadmap to achieve the 2030 and 2050 goals, it demonstrated that various

2  combinations of policies could allow the statewide emissions level to remain very low through

3  2050, suggesting that the combination of new technologies and other regulations not analyzed in

4  the study could allow the State to meet the 2030 and 2050 targets." (AR 162.)

5      Further, according to the MND, CARB's "emission reduction strategies" will reduce the

6  Project's post-2020 GHG emissions levels: "Many of the emission reduction strategies

7  recommended by CARB would serve to reduce the Project's post-2020 emissions level to the

8  extent applicable by law and help lay the foundation '... for establishing a broad framework for

9  continued emission reductions beyond 2020, on the path to 80 percent below 1990 levels by

10  2050,' as called for in CARB's First Update to the AB 32 Scoping Plan.  As such, the Project's

11  post-2020 emissions trajectory is expected to follow a declining trend, consistent with the 2030

12  and 2050 targets and Executive Orders S-3-05 and B-30-15." (AR 179.)

13      As set forth above, the MND considered the Project's consistency with Executive Orders

14  S-3-05 and B-30-15 (AR 178, 179) and CARB's Climate Change Scoping Plan (Scoping Plan)

15  (AR 175-178, 180-182).  The MND also considered the Projects consistency with Southern

16  California Association of Government's Regional Transportation Plan/Sustainable Communities

17  Strategy (RTP/SCS) (AR 182-184), the City's Green Building Ordinance (AR 185-186),

18  ClimateLA Implementation Plan (AR 184-185), and Mobility Plan (AR 186).

19      In sum, the City concluded that the Project's GHG emissions would be less than

20  significant.  Sunset has not shown that the City's findings with these policies/laws are

21  unfounded.

22  **5. Existence of Fair Argument**

23      If Sunset's only showing is that the City failed to engage in sufficient environmental

24  analysis of the Project's GHG emissions, then Sunset has not shown that an EIR is required on

25  that basis.  To prevail, Sunset must still cite facts or reasonable assumptions based on facts

showing that a significant environmental impact may result from deficiencies in the City's analysis. (*Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714.)

The Court concludes that Sunset has failed to establish a fair argument that the Project's GHG emissions may be significant.

**D. Noise Impacts**

In an initial study, a lead agency must consider whether the project generates a substantial temporary or permanent increase in ambient noise levels in the vicinity of the project. (14 CCR Appendix G.)

Sunset challenges the City's significance findings concerning the Project's noise impacts.

**1. City's Findings**

**Regulatory Setting:** The LAMC contains a number of regulations that would apply to the Project's temporary construction activities and long-term operations. (AR 250-52 (listing relevant regulations).)

In 2006, the City released the LA CEQA Thresholds Guide (Guide) "to provide further guidance for the determination of significant construction and operational noise impacts." (AR 252.) According to the Guide, "land uses sensitive to noise include residences, transient lodgings, schools, libraries, churches, hospitals, nursing homes, auditoriums, concert halls, amphitheaters, playgrounds, and parks." (AR 256.)

The Guide states that a project's construction noise impacts are significant if, among other things, construction activities lasting more than 10 days in a three month period would exceed existing ambient exterior noise levels by 5 dBA or more at a noise sensitive use. (AR 252.) The Guide states that a project's operation noise impacts are significant if the project increases noise by 5 dBA or greater. (*Ibid.*)

**Existing Conditions:** A noise consultant, DKA Planning, took short-term noise readings at three locations surrounding the Project Site to determine sensitive receptors' ambient noise

23

1 conditions.  (AR 252.)  At all three locations, ambient noise was primarily attributable to vehicle

2 traffic along Wilcox Avenue, Selma Avenue, and Cahuenga Boulevard.  (AR 252-53.)  The

3 readings provided ambient noise levels of (1) 69.3 dBA at the intersection of Wilcox Avenue and

4 Selma Avenue, (2) 67.1 dBA at Selma Avenue, and (3) 70.5 dBA at Cahuenga Boulevard.  (AR

5 253.)  The MND also relied upon noise readings taken in 2015 in connection with an MND for

6 the Tao Restaurant Project.  (*Ibid.*)

7     **Construction Impacts:** The MND acknowledges that "there are a number of noise-

8 sensitive receptors in the vicinity of the Project Site."  (AR 256.)  The MND chose three noise-

9 sensitive receptors to analyze for construction noise impact in light of "their potential

10 sensitivities to noise and their proximity to the Project Site": (1) the Hollywood Walk-In Clinic

11 located at 6430 Selma Avenue, approximately 60 feet south of the Project Site, (2) Jay Silverman

12 Productions, a production studio located at 1541 Cahuenga Boulevard, approximately 110 feet

13 south of the Project Site, and (3) Cosmo Lofts, a multi-family residence located at 1617 Cosmo

14 Street, approximately 350 feet east of the Project Site.  (*Ibid.*)

15     Noise-generating activities during the Project's construction phases will occur at the

16 Project Site between 7:00 AM and 9:00 PM, Monday through Friday.  (AR 256.)  The MND

17 points out that noise from demolition and grading activities — typically the foremost concern

18 when evaluating a project's construction noise impacts — would not arise because the Project

19 does not require demolition, grading, or excavation activities.  (*Ibid.*)  Instead, the MND

20 concludes that "the bulk of the Project's construction noises would result from the operation[al]

21 use of welders and other various electric and pneumatic handheld tools.  Welding activities can

22 produce average noise levels of 70.0 dBA [] at a reference distance of 50 feet."  (*Ibid.*)  As such,

23 the MND modeled construction noise impacts using the noise reference levels of welding

24 equipment.  (AR 257.)

25

1       The MND finds that the Project's construction noise would increase noise levels by (1)

2   2.6 dBA at the Hollywood Walk-In Clinic, (2) 1.5 dBA at Jay Silverman Productions, and (3) by

3   less than 0.1 dBA at Cosmo Lofts.  (AR 257.)  Because the Project's construction noises increase

4   dBA levels at these sites by less than 5 dBA, the MND concludes that the Project's construction

5   noise impacts are less than significant.  (*Ibid.*)

6       **Operation Impacts:** The MND notes that the Project would produce both direct and

7   indirect noise impacts during its operation.  (AR 259.)

8       The MND examines noise from use of mechanical equipment such as HVAC equipment,

9   pool pumps, and filtration systems.  (AR 259.)  The MND notes that noise impacts from such

10  equipment would be nominal because LAMC section 112.02 prohibits operation of such

11  equipment "in such manner as to create any noise which would cause the noise level on the

12  premises of any other occupied property ... to exceed the ambient noise level by more than five

13  decibels." (AR 252.)  The MND also notes that such noises are rendered inaudible for the

14  majority of any 24-hour cycle due to elevated existing ambient noise levels in the Project's

15  vicinity.  (*Ibid.*)

16      The MND examines noises from hotel land uses.  The MND finds that "most noise

17  generated by the proposed uses would be internal, and audibility would be mostly confined to

18  within the Project itself."  The MND bases this finding in part upon LAMC section 112.01 which

19  prohibits any amplified noises, especially those from outdoor sources like outdoor speakers, from

20  (1) exceeding the ambient noise levels of adjacent properties by more than 5 dBA and (2) being

21  audible at any distance greater than 150 feet from the Project's property line.  (AR 251, 260.)

22      In particular, the MND notes that noise from the Project's rooftop deck is unlikely to be

23  significant because noise from rooftop events at nearby hotels measured on a Friday evening was

24  not substantially audible at street level over pedestrian and transportation noises.  (AR 260.)  As

25

1  a precaution, the MND requires installation of a glass or heavy plastic safety wall around the

2  Project's perimeter. (*Ibid.*)

3       The MND examines noise from restaurant use. (AR 261.) The MND finds no significant

4  impact because noises from indoor areas would be internally contained and because

5  conversations between patrons would not have a substantial effect on ambient noise levels given

6  the restaurant's close proximity to a busy intersection. (*Ibid.*)

7       Finally, the MND examines noises from auto-related activities. (AR 261-62.) The MND

8  measured Project-related traffic and found that noise therefrom were negligible. (*Ibid.*) The

9  MND also points out that such noises would be intermittent and would be mitigated in part by

10  the Project's underground parking. (*Ibid.*)

11     **Conditions of Approval:** The MND imposes several relevant conditions of approval

12  (COAs) on the Project which reduce its noise impacts.

13       COA 5(a) states that "the covered bar and lounge area ... shall [be] designed to be able to

14  be fully enclosed with noise-attenuating features (physical as well as operational) by a licensed

15  acoustical sound engineer to assure that operational sounds shall be inaudible beyond the

16  property line." (AR 44.) COA 5(c) states that "a minimum six (6) foot high glass wall shall be

17  installed around the perimeter of the rooftop deck." (*Ibid.*)

18       COA 15(c) limits the rooftop bar and lounge's hours of operation to 7:00 am to midnight.

19  (AR 47.)

20       COA 18(d) states that "any ambient or amplified music, sound, vibration or noise emitted

21  that is under the control of the petitioner(s) shall not be audible or otherwise perceivable beyond

22  the subject premises. Any sound, vibration or noise emitted that is under the control of the

23  petitioner which is discernible outside of the subject premises shall constitute a violation of

24  Section 116.01 of the Los Angeles Municipal Code." (AR 48.)

25     **2. Sunset's Arguments**

26

1    Sunset contends that the City failed to evaluate (1) all noise-sensitive receptors, (2) all

2  construction noise generators apart from welding sounds, and (3) all components of operational

3  noise.   As elaborated *post*, the general problem with these contentions is that they ignore

4  Sunset's burden to cite *substantial evidence* supporting a fair argument of a significant

5  environmental impact.

6    **a. Noise-Sensitive Receptors**

7    Sunset contends that the City should have identified all residential and transient lodgings

8  within 500 feet of the Project Site that would likely be impacted by construction noise.  Sunset

9  bases this contention on the Guide which states that a description of the project's environmental

10  setting should identify "noise sensitive land uses within 500 feet of the project site, including

11  description, location, and distance from the project." (AR 11179-80, 11189-90.)

12    The flaw in this argument, as Real Property points out (RPI Opp. at 13), is that the Guide

13  does not have the force of law.  The Guide expressly states that it "does not impact the existing

14  discretionary authority of decision-makers" and "does not change the authority of the lead

15  agency ... to determine significance thresholds on a case-by-case basis dependent upon unique

16  environments, evolving regulatory requirements, and the nature of projects encountered by each

17  lead agency." (Guide at 2.)  Sunset fails to show otherwise.

18    More important, Sunset fails to cite evidence showing that identifying and analyzing all

19  residential and transient lodgings within 500 feet of the Project Site would serve any meaningful

20  function.  Sound obviously decreases "as the distance from the noise source to the receiver

21  increases." (AR 248.)  As such, analyzing an accurate sample size of proximate noise-sensitive

22  receptors is presumably sufficient to measure the Project's noise impacts.

23    Sunset further claims that omitting this information is a procedural violation which the

24  Court reviews with no deference to the agency's determination.  Sunset relies on *Association of*

25  *Irritated Residents v. County of Madera* (2003) 107 Cal.App.4th 1383, 1392 in which the

27

1   appellate court concluded that the existence of substantial evidence is irrelevant "when one is

2   assessing a violation of the information disclosure provisions of CEQA." This argument fails for

3   similar reasons. Sunset has not cited any *CEQA provision* requiring the City to identify and

4   analyze all noise-sensitive receptors within 500 feet of the Project Site. The CEQA Guidelines's

5   content requirements for an initial study and negative declaration certainly do not require

6   inclusion of this information. (14 CCR §§ 15063(d), 15071.)

7        As to construction noise impacts specifically, Sunset contends that the City "cherry-

8   picked" three locations for testing and conspicuously omitted "five much closer hotels and four

9   nearby apartment buildings." (OB at 17.)

10       The evidence in support of this point is lacking. First, the places cited in the record by

11  Sunset (AR 762-64, 1138, 34103, 34106) fail to show that any of these other hotels and

12  apartment buildings are "closer," let alone meaningfully closer. Two of the three testing

13  locations — the clinic and production studio — are located *directly across* the street from the

14  Project Site. (AR 763, 1138.) The clinic, in particular, is located only 60 feet away from the

15  Project Site. (AR 256.) The City's methodology for studying noise impacts did not yield

16  different results depending on whether the site was a clinic or a hotel. (AR 257 (looking for 5

17  dBA increase in accordance with Guide).) Second, assuming *arguendo* that these hotels and

18  apartment buildings are closer, Sunset cites no substantial evidence in the record supporting a

19  fair argument that the Project's noise impacts might then be deemed significant. Sunset's

20  contention rests on speculation as to what the Project's noise impacts might be with respect to

21  those facilities. In light of the MND's finding that the clinic located 60 feet south of the Project

22  Site experienced an increase of only 2.6 dBA, the record does not reasonably support Sunset's

23  view.

24       As to operation noise impacts, Sunset contends that the City should have analyzed other

25  hotels where sensitive receptors would try to sleep amid increased noise. Once again, however,

1   Sunset fails to cite evidence in the record supporting a reasonable inference that analyzing these

2   other hotels might show an environmental impact.  In the MND, the City assessed anticipated

3   noise impacts from use of mechanical equipment, the hotel, and the restaurant as well as indirect

4   noise impacts arising from automobile use.  The City reasonably concluded that the Project's

5   operational noise impacts would be mostly confined to the Project Site and would be negligible

6   to the extent such noise travelled outside the Project Site given the busy intersection.

7         In reply, Sunset cites to complaints from nearby residents about operational noise impacts

8   from Relevant Group's other projects to show that the Project's operational noise impacts will

9   likely be significant.  (*See* Reply to RPI at 13.)  The issue with these complaints is foundation.

10  In the absence of a specific factual foundation in the record, dire predictions regarding the

11  consequences of a project are not substantial evidence.  (*Keep Our Mountains*, *supra*, 236

12  Cal.App.4th at 730-31.)  There is insufficient foundation to ascribe weight to these complaints

13  because (1) this is a different mixed-use development, (2) the City has imposed several COAs to

14  mitigate any potential noise impacts (e.g., the six-foot wall, limited hours of operation, and the

15  prohibition of audible sound outside premises), and (3) the City made its own evidence-based

16  findings about noise (concluding that rooftop events at nearby hotels on Friday evening were not

17  audible at street level) (AR 260).

18      **b. Analysis of Construction Noise Impacts**

19        Sunset takes issue with the City's analysis of the Project's construction noise impacts

20  based on welding sounds.  Sunset argues that this analysis is too narrow.  The Guide states that

21  lead agencies should anticipate 85 dBA at 50 feet for the structural phase of construction and 89

22  dBA at 50 feet for the finishing phase of construction.  (AR 11076.)

23        This argument is, once again, too speculative.  The MND examined welding sounds

24  because "welding activities would have the greatest potential to cause sustained and significant

25  noise impacts at nearby receptors.  The impacts of other construction tools and equipment would

29

1    be neither as loud nor as extensive over the duration of the Project's buildout." (AR 257.)

2    Sunset fails to cite to substantial evidence in the record showing that the Project's construction

3    phases would generate sounds of greater magnitude or showing that the MND's examination of

4    welding sounds was unreasonable.  The Guide is non-binding and offers only recommendations.

5          **c. Analysis of Operation Noise Impacts**

6          Sunset contends that the City failed to analyze all components of operational noise.

7    Sunset contends that "public skepticism abounds" as to whether the Project's nighttime noises

8    will be heard past the hotel's property line.  Sunset contends that the MND fails to quantify

9    likely pedestrian noise levels and their impacts.

10         These contentions fare no better.  "Public skepticism" is not substantial evidence.  Sunset

11    offers only speculation to support the inference that the Project's operational noise impacts will

12    be significant.  And, to the extent that Sunset is correct that the MND fails to adequately quantify

13    noises from increased pedestrian activity, this does not absolve Sunset of its burden to cite to

14    evidence which supports a reasonable inference that such noises are significant.

15         In reply, Sunset cites to a comment submitted by Acentech, an acoustical consulting firm.

16    (AR 11074.)  On this point, Acentech opines that increased pedestrian traffic is "another

17    contributory noise source, and may cause individual and cumulative significant, unmitigable

18    noise impacts." (AR 11077.)  However, "[a] lead agency need not accept expert testimony that

19    lacks an adequate factual foundation." (Kostka & Zischke, Practice Under the California

20    Environmental Quality Act (CEB 2d ed.) § 6.41.)  "An agency also need not accept expert

21    opinion that lacks specificity or fails to adequately explain why the project might cause a

22    significant impact." (*Ibid.*)  This expert opinion fails to explain with specificity or with any

23    supporting evidence how such noise impacts might be individually or cumulatively significant.

24    As such, this opinion does not rise to the dignity of substantial evidence.

25

1    In sum, Sunset has not established a fair argument that the Project's noise impacts may be

2    significant.

3    **E. Transportation Impacts**

4    **1. MM-Traffic-2**

5    The MND imposed a traffic mitigation measure (MM-Traffic-2) upon the Project.  (AR

6    89.)  The mitigation measure requires Real Party to prepare and submit a preliminary

7    Transportation Demand Management Plan (TDM) to the Department of Transportation (DOT)

8    prior to issuance of the first building permit for the Project.  (*Ibid.*)  The mitigation measure

9    requires Real Party to submit the final TDM to DOT and obtain DOT's final approval of the final

10   TDM prior to the issuance of the certificate of occupancy for the Project.  (*Ibid.*)

11   According to the MND, the TDM shall include strategies, as determined to be appropriate

12   by DOT, which would have a minimum 10% effectiveness in reducing new vehicle trips.  (AR

13   89.)  If the Project provides 20 or more required parking spaces off-site, the TDM must

14   demonstrate a minimum 20% effectiveness in reducing new vehicle trips.  (*Ibid.*)  The MND lists

15   several strategies which the TDM may include.  (AR 89-90.)

16   The MND also requires Real Party to prepare a Monitoring Program (MP) in the event

17   that the 20% effectiveness standard is required.  (AR 89.)  "The MP shall continue until such

18   time that the Project has shown, for three consecutive years, at a minimum of 85 percent

19   occupancy, achievement of the peak hour trip volume requirements listed.  Should the review

20   show that the peak hour trip cap threshold has been exceeded the Project shall have one year to

21   attain compliance or be subject to a penalty program."  (*Ibid.*)

22   Sunset argues that this mitigation measure improperly defers mitigation by postponing

23   development of the TDM.

24   "Formulation of mitigation measures shall not be deferred until some future time.  The

25   specific details of a mitigation measure, however, may be developed after project approval when

31

1   it is impractical or infeasible to include those details during the project's environmental review

2   provided that the agency (1) commits itself to the mitigation, (2) adopts specific performance

3   standards the mitigation will achieve, and (3) identifies the type(s) of potential action(s) that can

4   feasibly achieve that performance standard and that will [be] considered, analyzed, and

5   potentially incorporated in the mitigation measure." (14 CCR § 15126.4(a)(1).)

6          In opposition, the City persuasively explains that this mitigation measure fits the three

7   criteria in section 15126.4(a)(1). The City has committed Real Party to preparing and submitting

8   a preliminary and final TDM to DOT for approval. The TDM adopts specific performance

9   standards the mitigation must achieve — 10% or 20% effectiveness in reducing new vehicle trips

10   depending on how many off-site parking spaces the Project provides. And the MND identifies a

11   number of strategies which the TDM may employ in order to reduce vehicle trips.

12          The City correctly points out that this mitigation measure is similar to the one approved

13   in *City of Hayward v. Trustees of California State University* (2015) 242 Cal.App.4th 833.

14   There, an EIR included a mitigation measure requiring the lead agency to "prepare a

15   comprehensive TDM Implementation Plan that includes steps necessary to plan for, fund,

16   implement, and monitor the effectiveness of the measures outline[d]" in the EIR. The appellate

17   court rejected the petitioner's contention that this mitigation measure created impermissible

18   deferred mitigation, concluding that the lead agency had committed to perform the feasible

19   mitigation measures included in the TDM, enumerated specific measures to be evaluated,

20   incorporated quantitative criteria, and set specific deadlines for completion. The same is true

21   here.

22          The City also points out that DOT reviewed and approved of this mitigation measure.

23   (AR 1495-99 ("Consistent with City policies on sustainability and smart growth and with DOT's

24   trip reduction and multi-modal transportation goals, the project's mitigation focuses on

25   developing a trip reduction program and on solutions that promote other modes of travel.").)

1    *In reply*, Sunset raises a bevy of new arguments, all of which it waived by failing to raise

2    these arguments in its opening brief. (Reply to City at 17-20.) This is the foreseeable and fair

3    consequence of devoting only five sentences to a nuanced CEQA argument in its opening brief.

4    (Sunset OB at 19.) A contrary conclusion violates due process by divesting the City of a

5    reasonable opportunity to respond. Moreover, the Court will not countenance Sunset's blatant

6    sandbagging which, in this case, entails raising a point in its moving papers and addressing the

7    real substance of the point and the City's likely counterresponses in reply.

8       Assuming *arguendo* these arguments were not waived, the Court evaluates their merits.

9       Sunset argues that the City improperly relies on section 15126.4(a)(1)(B) because that

10   section applies to EIRs, not MNDs. However, Sunset relied on this same section in its opening

11   brief when asserting that the City's mitigation measure is flawed. (Sunset OB at 19.) More to

12   the point, Sunset cites no legal basis for finding this mitigation measure invalid absent

13   application of this section.

14      Sunset argues that the City has not shown that preparing a TDM and publishing it for

15   public review was infeasible or impractical prior to the MND's approval. Yet, Sunset bears the

16   burden of proof in this action. Sunset has not shown that preparation of the TDM prior to the

17   MND's approval was feasible.

18      Sunset argues that the MND provides no certainty that the TDM will be feasible so as to

19   mitigate the Project's traffic impacts to the requisite level of insignificance. This argument, once

20   again, flips the burden of proof on its head. If Sunset seeks to prevail on this issue, Sunset must

21   present substantial evidence supporting a fair argument that this mitigation measure will not be

22   effective. (*See Architectural Heritage Assn. v. County of Monterey* (2004) 122 Cal.App.4th

23   1095, 1112 ("Upon the issuance of an MND, the project opponent must demonstrate by

24   substantial evidence that the proposed mitigation measures are inadequate and that the project as

25   revised and/or mitigated may have a significant adverse effect on the environment.").)

33

1    Sunset's only apparent evidence is a comment from Daniel T. Smith (Smith), a civil and

2    traffic engineer.  (AR 8727.)  After reviewing the MND, Smith opines that this mitigation

3    measure "ignores the nature of the uses involved and the nature of the people who travel to and

4    from those uses.  Some employees are generally responsive to elements of typical TDM plans.

5    However, hotel, restaurant and bar workers typically are not traveling during the normal PM

6    peak traffic period so any TDM effects on employees will be irrelevant to mitigation of a

7    PM peak traffic problem.  Hotel guests and bar and restaurant patrons are fairly impervious to

8    TDM efforts, so TDM programs are unlikely to make measurable inroads on their travel

9    penchants.  Hence, the assumption that a TDM program (still undefined) will achieve a 10 or 20

10   percent reduction in PM peak traffic is nonsense."  (AR 8729-30.)  The City (apparently)

11   responded to this comment (*see* AR 11914), but the Court has been unable to locate that

12   comment in this record.  In any event, the Court does not find this evidence to be substantial.  "A

13   lead agency need not accept expert testimony that lacks an adequate factual foundation."

14   (Kostka & Zischke, Practice Under the California Environmental Quality Act (CEB 2d ed.) §

15   6.41.)  "An agency also need not accept expert opinion that lacks specificity or fails to

16   adequately explain why the project might cause a significant impact."  (*Ibid.*)  In this case, Smith

17   concedes that "some employees are generally responsive to elements of typical TDM plans" but

18   concludes, without any supporting evidence, that the TDM will still be ineffective because other

19   employees and some patrons will not be.  Because this opinion lacks foundation and specificity

20   — e.g., which employees will or will not be responsive — this opinion does not rise to the

21   dignity of substantial evidence.

22   **2. Ride-Sharing Services**

23   Sunset contends that a fair argument exists that the Project may have significant traffic

24   impacts because the MND failed to study the traffic impacts of ride-sharing services such as

25   Uber and Lyft.

34

1    In support, Sunset cites to the comment letter from Smith.  According to Smith, the

2    MND's traffic analysis "completely fails to account for the increasing popularity of reliance of

3    ride-hailing services like Uber, Lyft and others…. If patrons arrive and depart via one of these

4    services or by conventional taxi, they generate four trips instead of two (the arrival trip, the

5    departure of the transport vehicle, the arrival of the departure vehicle and its departure).  And

6    recent research indicates that a majority of rides on such services are diverted from transit, bike

7    and walking or are induced trips (ones that would not be made if the services were not available).

8    In failing to account for Project traffic caused by these increasingly relied-upon services, the

9    IS/MND understates traffic impacts."  (AR 8730 (citing to an article about the impacts of "ride-

10   hailing in the United States" authored by individuals at the UC Davis Institute of

11   Transportation).)

12   In response to Smith's comment, the City stated that the impacts of ride-sharing services

13   were not studied because the impacts "have yet to be fully identified or quantified and would be

14   speculative at this time."  (AR 11916-17.)

15   In opposition, the City argues, and the Court agrees, that Sunset has not established a fair

16   argument on this point.

17   First, "[i]f, after thorough investigation, a lead agency finds that a particular impact is too

18   speculative for evaluation, the agency should note its conclusion and terminate discussion of the

19   impact."  (14 CCR § 15145.)  The City did not discuss the impacts of ride-sharing services

20   because the City found the impacts too speculative.  The City substantiated this finding by

21   pointing out that (1) DOT does not have standards to evaluate how these services impact traffic

22   and (2) the effects of these services "have yet to be fully identified or quantified."  (AR 11916-

23   17.)  Absent evidence of a fair argument to the contrary, this finding is sufficient.  Sunset's

24   rebuttal that the City refused to make a "thorough investigation" of the impacts is devoid of

25

35

1    supporting evidence.  The law presumes that the City complied with this requirement.  (Evid.

2    Code § 664.)

3         Second, assuming *arguendo* that these services were measurable, Sunset fails to cite

4    substantial evidence supporting a fair argument that the services might have a significant impact.

5    To reiterate, "the lack of study is hardly evidence that there will be a significant impact."

6    (*Gentry*, *supra*, 36 Cal.App.4th at 1378-79.)  Sunset's expert, Smith, fails to quantify the amount

7    of traffic which these ride-sharing services might generate and only speculates that these services

8    might have a significant impact.

9        **3. Secondary Parking Impacts**

10        Sunset's final transportation-related argument raises a hodge-podge of points.  Sunset

11    states in pertinent part: "The MND's parking analysis omitted required information by: (1)

12    misstating the actual seating of the rooftop bar/lounge (AR 6, 260, 8717); (2) excluding parking

13    for the rooftop and lobby bar accessible to the public (AR 97 vs. 99, 1227); (3) misstating the

14    actual parking available in light of expected shared parking with adjacent hotels (AR 1232 vs.

15    308, 99); (4) relying on valet parking and ride-sharing without considering their impacts on air

16    quality and safety. (AR 308, 1232, 8727-28, 1852.)  The City's reliance on estimates of '90% of

17    the patrons using the valet service and 10% self-parking' or that 'patrons and guests of the

18    Project would utilize public transit or other forms of ride-share services that would not require

19    the parking of vehicles at the site or within the off-site parking location' (AR 27) is

20    unsubstantiated, and is not substantial evidence of mitigation.  (AR 308; 8729-8730.)"  (OB at

21    19-20.)

22        Sunset fails to explain in its opening brief why any of this information is "required."

23    Sunset also fails to develop these points in any reasonable manner.  As such, Sunset waived these

24    arguments.

25        The Court also agrees with the City that Sunset failed to exhaust these arguments.

"Exhaustion of administrative remedies is a jurisdictional prerequisite to maintenance of a CEQA action." (*California Native Plant Society v. City of Rancho Cordova* (2009) 172 Cal.App.4th 603, 615.) "The essence of the exhaustion doctrine is the public agency's opportunity to receive and respond to articulated factual issues and legal theories *before* its actions are subjected to judicial review." (*Coalition for Student Action v. City of Fullerton* (1984) 153 Cal.App.3d 1194, 1198 (emphasis in original).) "The purpose of the exhaustion doctrine is to ensure public agencies are given the opportunity to decide matters within their expertise, respond to objections, and correct any errors before the courts intervene." (*Bridges, supra*, 14 Cal.App.5th at 115.)

To satisfy the exhaustion requirement, the "exact issue" must have been presented to the administrative agency. (*Cleveland National Forest Foundation v. San Diego Assn. of Governments* (2017) 17 Cal.App.5th 413, 446.) While less specificity is required to preserve an issue for appeal in an administrative proceeding than in a judicial proceeding, the presentation must nonetheless consist of more than "generalized environmental comments," "general objections to project approval," "relatively ... bland and general references to environmental matters," or "isolated and unelaborated comment[s]." (*Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 536.) Objections must "fairly apprise" the agency of the purported CEQA defects. (*See Save the Agoura Cornell Knoll v. City of Agoura Hills* (2020) 46 Cal.App.5th 665, 685; *accord* Kostka & Zischke, Practice Under the California Environmental Quality Act (CEB 2d ed.) § 23.98.)

A CEQA petitioner bears the burden of demonstrating exhaustion of administrative remedies. (*Bridges v. Mt. San Jacinto Community College Dist.* (2017) 14 Cal.App.5th 104, 116.)

**Misstating Actual Seating of Rooftop Bar/Lounge:** The commenter states that the MND misstated rooftop seating with respect to noise impacts, not traffic impacts. (AR 8717.)

**Excluding Parking for Rooftop and Lobby Bar Accessible to Public:** Sunset cites no comments to show exhaustion of this argument.

**Misstating Actual Parking Available in Light of Adjacent Hotels:** Sunset cites no comments to show exhaustion of this argument.[2]

**Relying on Valet Parking and Ride-Sharing Without Considering Air Quality and Safety Impacts:** Sunset cites to the Smith letter. However, Smith states that the MND "must analyze the number of valets required and the size of valet transfer zones required to handle concentrated arrivals and departures without causing queues and lane blockages." (AR 8727.) Smith does not mention impacts on air quality and safety. In reply, Sunset cites to the SWAPE comment. (AR 9517.) However, the SWAPE letter complains of air quality impacts resulting from parking operations, not valet services and ride-sharing specifically.

**City's reliance on Allegedly Unsubstantiated Estimates:** Sunset cites no comments to show exhaustion of this argument.

In sum, Sunset has not established a fair argument that the Project's transportation impacts may be significant.

**F. Public Services**

**1. Relevant CEQA Laws**

An agency conducts an initial study to determine "if the project may have a significant effect on the environment." (14 CCR § 15063.) CEQA defines "environment" as "the physical conditions which exist within the area which will be affected by a proposed project, including land, air, water, minerals, flora, fauna, noise, objects of historic or aesthetic significance." (Pub. Res. Code § 21060.5.)

---

[2] In addition, Sunset has not rebutted the City's point that the Project's parking impacts shall not be deemed significant on the environment because the Project is a mixed-use residential project on an infill site within a transit priority area. (Pub. Res. Code § 21099(d)(1).)

1    Accordingly, economic and social impacts of proposed projects are outside CEQA's

2    purview. (*Anderson First Coalition v. City of Anderson* (2005) 130 Cal.App.4th 1173, 1182.)

3    "Economic or social changes may be used, however, to determine that a physical change shall be

4    regarded as a significant effect on the environment.  Where a physical change is caused by

5    economic or social effects of a project, the physical change may be regarded as a significant

6    effect in the same manner as any other physical change resulting from the project.  Alternatively,

7    economic and social effects of a physical change may be used to determine that the physical

8    change is a significant effect on the environment.  If the physical change causes adverse

9    economic or social effects on people, those adverse effects may be used as a factor in

10   determining whether the physical change is significant.  For example, if a project would cause

11   overcrowding of a public facility and the overcrowding causes an adverse effect on people, the

12   overcrowding would be regarded as a significant effect." (14 CCR § 15064(e); *cf. Friends of*

13   *Davis v. City of Davis* (2000) 83 Cal.App.4th 1004, 1019 ("But the rule remains that economic

14   and social changes are not, in themselves, significant effects on the environment.").)

15       Pursuant to this law, the environmental checklist in the CEQA Guidelines does not

16   require a lead agency to evaluate social or economic impacts *per se*.  As relevant to this issue of

17   public services impacts, the checklist requires a lead agency to consider whether the project

18   would "result in substantial adverse physical impacts associated with the provision of new or

19   physically altered governmental facilities ... the construction of which would cause significant

20   environmental impacts, in order to maintain acceptable service ratios, response times or other

21   performance objectives for ... police protection." (14 CCR Appendix G.)

22   **2. City's Findings**

23       In the MND, the City examined the Project's impacts on public services and, as relevant

24   here, police protection.  (AR 277-88.)

25

39

1    **Existing Conditions:** According to the MND, the Project Site is served by the LAPD's

2    West Bureau which oversees LAPD operations in the Hollywood community, among others.

3    (AR 280.)  An LAPD police station is located approximately 1,700 feet from the Project Site.

4    (*Ibid.*)  The average response time to emergency calls for service in the Project Site area was 5.3

5    minutes in 2014 which is below the Citywide average of 6.2 minutes during 2014 and the LAPD

6    set standard of 7 minutes.  (AR 280-81.)

7    The MND discloses the "[y]ear to date crime rate for [the] week ending January 28,

8    2017."  (*Ibid.*)  During this span of time, a total of 386 crimes were reported in the Hollywood

9    area.  (*Ibid.*)

10   **Significance Criterion:** The City framed its significance criterion in accordance with the

11   CEQA Guidelines: "A significant impact may occur if a project creates the need for new or

12   physically altered police facilities, the construction of which could cause significant

13   environmental impacts, in order to maintain acceptable service ratios, response times or other

14   performance objectives."  (AR 280.)

15   **Impacts:** The City found the Project's construction impacts to be less than significant.

16   While construction sites "can be sources of attractive nuisances, providing hazards, and inviting

17   theft and vandalism," Real Party "will employ construction security features, such as fencing,

18   which could serve to minimize the need for LAPD services."  (AR 281.)

19   The City also found the Project's operation impacts to be less than significant.  While

20   acknowledging that "the Project could potentially increase … the number of police service calls

21   due to an increase in onsite persons," the City implemented two mitigation measures to reduce

22   any police protection problems.  One mitigation measure requires Real Party to (1) submit plans

23   which "incorporate a design that references the 'Design Out Crime Guidelines: Crime Prevention

24   Through Environmental Design, published by the LAPD" and (2) obtain the LAPD's design

25   approval prior to the issuance of building permits.  The plans must include "standard security

40

1    measures such as adequate security lighting, secure key access to hotel rooms, secured onsite

2    parking, and valet parking, and front desk that offers a visual deterrent and human surveillance

3    feature." The second mitigation measure requires Real Party, upon completion of the Project, to

4    provide the LAPD Hollywood Area commanding officer with a diagram of each portion of the

5    property to facilitate police response. (AR 282-83.)

6        **3. Maddren's Arguments**

7        Maddren argues that the MND fails as an informational document with respect to its

8    evaluation of the Project's police protection impacts. Specifically, Maddren argues that the

9    MND provides misleading and incomplete information about crime in the Project Site area.

10   Maddren points out that crime rates in the Project Site area are actually much higher than the

11   Citywide average. (AR 2276 (showing that a total of 1,777 crimes were reported in the Project

12   Site area in 2017 and that the Citywide average was 191 crimes during that same time span).)

13   Maddren cites to *Kings County Farm Bureau v. City of Hanford* (1990) 221 Cal.App.3d 692,

14   712: "The absence of information in an EIR, or the failure to reflect disagreement among the

15   experts, does not per se constitute a prejudicial abuse of discretion. [Citation.] A prejudicial

16   abuse of discretion occurs if the failure to include relevant information precludes informed

17   decisionmaking and informed public participation, thereby thwarting the statutory goals of the

18   EIR process."

19       A major flaw in Maddren's argument is that MNDs and EIRs are not subject to the same

20   informational requirements. Initial studies leading to an MND "provide the basis for concluding

21   that [a] project will not have a significant effect on the environment." (*Gentry, supra*, 36

22   Cal.App.4th at 1378-79.) "[T]he [CEQA] Guidelines merely require an initial study, in contrast

23   to an EIR, to briefly identify the environmental setting. (Guidelines, § 15063, subd. (d)(2); cf.

24   Guidelines, § 15125, subd. (a).) An initial study is only a 'preliminary analysis' (Guidelines, §

25   15365) and the regulatory requirements regarding its contents are not as demanding as those

41

1   imposed upon an EIR.  (See Guidelines, § 15063, subd. (d), cf. Guidelines, § 15120 et seq.)

2   '[A]n initial study is neither intended nor required to include the level of detail included in an

3   EIR.'  (Guidelines, § 15063, subd. (a)(3).)"  (*Lighthouse Field Beach Rescue v. City of Santa*

4   *Cruz* (2005) 131 Cal.App.4th 1170, 1192.)

5        More specifically, EIRs must include "a detailed statement setting forth" (1) all

6   significant effects on the environment of the proposed project, (2) mitigation measures, and (3)

7   proposed project alternatives.  (Pub. Res. Code § 21100(b).)  EIRs "should be prepared with a

8   sufficient degree of analysis to provide decisionmakers with information which enables them to

9   make a decision which intelligently takes account of environmental consequences." (14 CCR §

10  15151.)  Conversely, initial studies must contain only "in brief form" (1) a description of the

11  project, (2) an identification of the environmental setting, (3) an identification of environmental

12  effects by use of a checklist and a brief explanation for entries thereon, (4) a discussion of

13  mitigation measures, (5) an examination of whether the project is consistent with land use plans,

14  and (6) the names of the preparers.  (14 CCR § 15063(d).)

15       The City's initial study / MND complies with these basic information requirements.  The

16  initial study gives a brief identification of the pertinent environmental setting by stating that (1)

17  the Project Site is served by the LAPD's West Bureau, (2) the Project Site is 1,700 feet from a

18  police station, (3) the average response time of the area is 5.3 minutes, and (4) the number of

19  crimes reported in the area for January 2017 was 386.

20       Maddren cites no legal authority which requires the City to have disclosed further crime

21  rate statistics.  Maddren's reliance on *Kings County* is misplaced because the appellate court

22  there examined an EIR and relied upon 14 CCR section 15151, an EIR provision.

23       Maddren also contends that the City's mitigation measures to reduce the Project's

24  adverse impacts related to police protection are ineffective.  According to Maddren, the "Design

25  Out Guidelines" is only "a two-page pamphlet with general design recommendations" and

1    "providing LAPD with a diagram of the site will not address problems caused by intoxicated

2    hotel visitors after they leave the hotel's bars/restaurants." (Maddren OB at 15.)

3         Maddren's argument misapplies the burden of proof.  "Upon the issuance of an MND, the

4    project opponent must demonstrate by substantial evidence that the proposed mitigation

5    measures are inadequate and that the project as revised and/or mitigated may have a significant

6    adverse effect on the environment." (*Architectural Heritage Assn. v. County of Monterey* (2004)

7    122 Cal.App.4th 1095, 1112.)  The mitigation measures appear reasonably calculated to reduce

8    adverse impacts related to police protection as they impose standard security measures and

9    facilitate police response.  Maddren provides no facts or reasonable inferences to support a fair

10   argument otherwise.

11        Finally, Maddren argues that the Project's adverse impacts related to police protection

12   militate a mandatory finding of significance because they will cause substantial adverse effects

13   on human beings.  (14 CCR § 15065(a)(4).)  Maddren explains: "The construction of a hotel in

14   which alcohol is offered for sale in every component (restaurants, bars, guest rooms) in an area

15   that already suffers from high crime could well cause 'substantial adverse effects on human

16   beings.' " (Maddren OB at 15-16.)  However, as noted *ante*, it is black-letter law that CEQA

17   does not consider social or economic impacts *per se*.  This includes claims of increased crime

18   problems stemming from the proposed project.  (*Baird v. County of Contra Costa* (1995) 32

19   Cal.App.4th 1464, 1470 fn. 2 ("Baird's claim of increased crime problems is not a proper subject

20   of CEQA inquiry.").)  14 CCR section 15065(a)(4) is no different.  That regulation requires a

21   mandatory finding of significance where "*environmental effects* of a project ... cause substantial

22   adverse effects on human beings." (Emphasis added.)  Because the purported adverse impacts

23   are social, not environmental, these purported impacts do not warrant setting aside the MND.

24        In sum, Maddren has not established a fair argument that the Project's public services

25   impacts may be significant.

43

## II. Piecemealing Review of the Project

### A. Relevant CEQA Law

"Project" is a term of art. "CEQA broadly defines a 'project' as 'an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment, and ... [¶] ... [¶] ... that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies.' (Pub. Resources Code, § 21065.)  [¶]  The statutory definition is augmented by the Guidelines, which define a 'project' as '*the whole of an action*, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment....'  [Citations.]"  (*Tuolumne County Citizens for Responsible Growth, Inc. v. City of Sonora* (2007) 155 Cal.App.4th 1214, 1222 (emphasis in original).)

CEQA forbids piecemeal review of the significant environmental impacts of a project. (*Banning Ranch Conservancy v. City of Newport Beach* (2012) 211 Cal.App.4th 1209, 1222.) Piecemealing is "[t]he process of attempting to avoid a full environmental review by splitting a project into several smaller projects which appear more innocuous than the total planned project."  (*East Sacramento Partnerships for a Livable City v. City of Sacramento* (2016) 5 Cal.App.5th 281, 293.)  "The prohibition against piecemeal review is the flip side of the requirement that the whole of a project be reviewed under CEQA."  (*Lighthouse*, *supra*, 131 Cal.App.4th at 1208.)

In *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, the California Supreme Court set forth a "piecemealing test."  (*Banning Ranch*, *supra*, 211 Cal.App.4th at 1222.)  The California Supreme Court held "an EIR must include an analysis of the environmental effects of future expansion or other action if: (1) it is a reasonably foreseeable consequence of the initial project; and (2) the future expansion or action will be significant in that it will likely change the scope or nature of the initial project or its

44

1   environmental effects.  Absent these two circumstances, the future expansion need not be

2   considered in the EIR for the proposed project." (*Laurel Heights*, *supra*, 47 Cal.3d at 396.)

3   "Under this standard, the facts of each case will determine whether and to what extent an EIR

4   must analyze future expansion or other action." (*Ibid.*)

5         In assessing the first prong of this test, the appellate court in *Banning Ranch* surveyed the

6   piecemealing case law and grouped the leading cases by their stated reasoning into two

7   categories. (*Banning Ranch*, *supra*, 211 Cal.App.4th at 1223.)  The first category of cases finds

8   improper piecemealing "when the purpose of the reviewed project is to be the first step toward

9   future development." (*Ibid.* (citing cases))  For example in *Laurel Heights*, the Supreme Court

10  determined a university improperly piecemealed environmental review of the relocation of its

11  pharmacy school by only assessing its initial move into 100,000 square feet of the building when

12  it conceded that it would use the building's remaining 254,000 square feet when it became

13  available. (*Ibid.*)  The second category of cases finds improper piecemealing "when the

14  reviewed project legally compels or practically presumes completion of  another action." (*Ibid.*

15  (citing cases).)  For example, in *Tuolumne County*, the appellate court determined the City of

16  Sonora improperly piecemealed review of the building of a shopping center and the widening of

17  a street because the widening of the street was a condition precedent to the development. (*Ibid.*)

18        Conversely, the *Banning Ranch* court cautions that "two projects may properly undergo

19  separate environmental review (i.e., no piecemealing) when the projects have different

20  proponents, serve different purposes, or can be implemented independently." (*Banning Ranch*,

21  *supra*, 211 Cal.App.4th at 1224.)

22        Whether developments constitute a single project under CEQA and whether the lead

23  agency improperly engaged in piecemeal environmental review are questions of law that courts

24  review independently. (*Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 278.)

25

1    In maintaining its piecemealing challenge to the Project, Sunset ignores the California

2  Supreme Court's piecemealing test.  According to Sunset, that piecemealing test applies to cases

3  involving "prospective piecemealing," whereas this case involves "retrospective piecemealing —

4  i.e., where the lead agency was misled by a developer about the whole of the action, and upon

5  later discovery, the agency should have required fuller environmental review as part of the later

6  CEQA document."  (Reply to RPI at 19.)

7    Sunset's arguments miss the mark.  Sunset cites no legal authorities which distinguish

8  between prospective and retrospective piecemealing in determining whether piecemealing

9  occurred.  Indeed, irrespective of whether piecemealing occurs based on projects already

10  developed or projects to be developed, a piecemealing finding must still rest on a fact-intensive

11  evaluation of the relationship of the purported projects to one another.  The California Supreme

12  Court's piecemealing test set forth in *Laurel Heights* controls this evaluation.

13    Sunset claims that *Arviv Enterprises, Inc. v. South Valley Area Planning Com.* (2002)

14  101 Cal.App.4th 1333 is controlling on how courts handle "retrospective piecemealing" claims.

15  However, *Arviv* does not purport to provide a different piecemealing test.  There, the developer

16  obtained piecemealed review of his 21-house development and conceded at the administrative

17  hearing that "all along he owned and intended to develop all 21 lots."  The appellate court found

18  piecemealing and, in support of this finding, pointed to the developer's concession.[3]  Where, as

19  here, a piecemealing claim is contested, fact-intensive, and not so readily apparent, *Arviv* is not

20  instructive.

21    **B. Piecemealing Relevant Facts**

22    **1. Relevant Group's Original Hotel Project**

23

24

_____

25  [3] Notably, a review of the opinion in *Arviv* and the developer's appellate opening brief show that the developer did not contest the trial court's piecemealing finding.

46

1    In June 2007, 6417 Selma, LLC, a Relevant Group sub-corporation, purchased the

2    property which eventually became the Dream Hotel. (AR 7519-42.) The property lies to the

3    immediate east of the Project Site. (AR 10932, 10934.)

4    In March 2008, the City circulated an MND for the project. (AR 33727, 33736.)

5    Relevant Group principal Richard Heyman (Heyman) and 6417 Selma, LLC thereafter obtained

6    City approval of the Dream Hotel in its original form: a rooftop wedding event space / tourist

7    hotel. (AR 2247, 33724-33735.) The plans for this hotel had about 1,749 square feet of kitchen,

8    120 guestrooms, and 107 parking spaces to service its guests and event space. (*Ibid.*)

9    In November 2010, Heyman obtained changes to the project that deleted the event space

10   on a claim that there was no market for event spaces, added 16 guestrooms, and reduced parking

11   to 90 spaces, with parking provided on the first and second floors of the Dream building. (AR

12   33726-33733.) One month later, the project went into default and foreclosure. (AR 7534,

13   10913.)

14   **2. Hollywood International Regional Center**

15   From 2011 forward, Relevant Group's principals converted a 2010 investment fund into

16   the Hollywood International Regional Center, LLC (HIRC), a Relevant Group sub-corporation

17   (AR 7367, 7370), and courted foreign investors. (AR 4910-15, 4932-39, 7362-7428.) HIRC

18   targeted foreign investors who wanted to buy US green cards and citizenship under the investor

19   visa, EB-5 program. (AR 7283-88, 7292, 7401-06.) According to the HIRC website, "HIRC

20   assists international investors in receiving lawful permanent U.S. residence through secure real

21   estate investments or loans secured by real estate. [Its] investment opportunities allow foreign

22   nationals to invest in the U.S. and receive permanent U.S. residency green cards through the EB-

23   5 Visa Program." (AR 7368.) HIRC raised over $250 million. (AR 7356-57.)

24   **3. Dream Hotel**

25

47

In late 2013, a new entity "6417 Selma Hotel, LLC" bought back the Dream Hotel property. (AR 7532-33, 10913.) In 2014, 6417 Selma Hotel, LLC sought and obtained revisions of the hotel construction plans for the property to provide for the development of a ten-story, 182-room hotel. (AR 10913.) Construction began in 2014 and was completed in 2017. (*Ibid.*)

**4. Thompson Hotel**

In November 2013, Relevant Group formed 1541 Wilcox Hotel, LLC. (AR 7511-14.) In September 2015, 1541 Wilcox Hotel, LLC took title to property located at 1541 Wilcox Avenue (AR 7508-10) and sought entitlements to construct the Thompson Hotel, a ten-story hotel with 200 rooms, a lobby bar, and restaurant (AR 32950). In February 2016, the City approved the Thompson Hotel using an MND. (AR 32943-33169.) Relevant Group marketed the Thompson Hotel as "located just around the corner from The Dream Hollywood." (AR 7516.)

**5. Tao Restaurant**

In June 2015, LADBS issued building permits for the Project Site to authorize the construction of the Tao Restaurant and the creation of three levels of underground parking. (AR 26216-19.)

In July 2015, Real Party submitted a request for a CUP for the sale of a full line of alcoholic beverages in conjunction with the operations of the Tao Restaurant. (AR 2749.)

While the CUP application was pending, Real Party proceeded with construction of the development because the restaurant and retail uses were permitted by right in the C4-2D zone district. (*See, e.g.,* AR 6148-51 (demolition permit), 6157-61 (building permit for construction of retail with 3 levels of subterranean parking), 26210 (shoring permit for one story commercial building with three levels of underground parking).)

In December 2015, the City prepared an MND (Tao MND) for the CUP. (AR 5059.) The MND discloses: "The Project Site contains an area that has already been excavated, a 3,174 square-foot restaurant, a 1,650 square-foot piano bar, and a 4,893 square-foot building with

1    vacant retail space on the ground floor and four residential units on the second floor.  The

2    existing restaurant, piano bar, and retail/residential buildings will be removed as part of the

3    Project[.]  The Project would construct a 20,624 square foot quality restaurant and a 6,000 square

4    foot retail space." (AR 5059, 5079.)

5           **6. Selma Wilcox Hotel (The Project)**

6          In July 2014, an operating agreement for Real Party, a Relevant Group sub-corporation,

7    was signed with HIRC as a 50% partner.  (AR 4940-5032.)  The operating agreement states that

8    "[t]he initial purpose of the Company is to develop three (3) parcels of real property located at

9    the corner of Selma Avenue and Wilcox Avenue in Hollywood, California, commonly described

10    as 1600 Wilcox Avenue and 6421-6429 Selma Avenue.... Specifically, the parties intend to

11    engage in the design, development, construction, leasing, and operation of a mixed-use

12    development, including a hotel, tentatively branded as the Dream Hotel or other hotel consistent

13    with the Development Budget and Business Plan and retail space (the 'Project')." (AR 4944.)

14          Real Party's members include "6421 Dream 2 Holdings LLC." (AR 7495.)  Relevant

15    Group referred to the Project as "Dream Hotel (Phase 2)" in its marketing brochures.  (AR 7283,

16    7689-2, 12216, 16261.)

17          In February 2014, the principals began studies for the Project.  (AR 631.)  In November

18    2014, the principals submitted a soils report ("Preliminary Geotechnical Engineering

19    Investigation" report) for the proposed development of a six- to seven-story mixed use building

20    over three levels of underground parking at the Project Site.  (AR 634-35.)  In December 2014,

21    the City approved the soils report "for the proposed six to seven levels of mix-used structure over

22    three levels of subterranean parking." (AR 711.)

23          In July 2016, Real Party applied for several land use entitlements to construct the Project

24    on the Project Site.  (AR 2749, 5033-46.)  The Project entails constructing a new 1,939 square-

25

1   foot ground floor restaurant and a 114 guestroom hotel with a pool and rooftop bar while

2   maintaining the Tao Restaurant and three levels of subterranean parking.  (AR 72.)

3        During the review process, the City was alerted to potential piecemealing with respect to

4   the Selma Wilcox Hotel and the Tao Restaurant.  (AR 13362, 26209, 26224.)  Accordingly, the

5   City required Real Party to revise the project description "to reflect entirety of project, including

6   subterranean parking and ground floor level of proposed hotel.  Environmental analysis shall

7   reflect all construction activities related to the project, including grading."  (AR 6509, 13366.)

8      **7. Tommie Hotel**

9        In February 2014, a company called SE Edinger, LLC (SE Edinger), an entity of KOAR

10   Institutional Advisors, LLC, both headed by Bruce Rothman (AR 7340-47), purchased property

11   and entitlements at 6515-6526 Selma Avenue which later become the site for the Tommie Hotel.

12   (AR 7453, 7465-71.)  At the same time, HIRC sought investors to fund the Tommie Hotel.  (AR

13   7403-04.)

14        In September 2015, HIRC formed a corporation called 6515 Mama Hotel, LLC.  (AR

15   7445-46.)  In April 2016, Heyman renamed 6515 Mama Hotel, LLC to 6516 Tommie Hotel,

16   LLC (AR 7444) and bought Tommie from SE Edinger (AR 7439-43).

17        In January 2017, the City approved an MND in connection with land use entitlements for

18   the Tommie Hotel.  (AR 2217-18, 33171-33424.)  The MND describes the Tommie Hotel as "an

19   8-story, approximately 95-foot-tall, 79,621-square-foot mixed-use building consisting of a 212-

20   guest-room hotel with guest amenities, and ground-floor and rooftop bars/lounges." (AR 33171.)

21      **8. Schrader Hotel**

22        In May 2016, SE Edinger formed 1600 Hudson, LLC.  (AR 7307-08.)  In October 2016

23   and March 2017, 1600 Hudson took title to the Schrader Hotel site (AR 7309-11, 7324-26.)

24        In April 2018, the City issued an MND in connection with land-use entitlements for the

25   Schrader Hotel.  (AR 33426-33722.)  The MND describes the project as involving "the

1  construction, use, and maintenance of a mixed-use hotel that would contain 198 guestrooms and

2  5,557 square feet of restaurant, coffee bar and rooftop/lounge space." (AR 33426.)

3  ### 9. Hollywood Citizens News Event Space

4  In July 2016, HIRC and Relevant Group formed Hollywood Citizen News, LLC. (AR

5  7555-56.) In August 2016, SE Edinger entered into a $9.7 million loan to purchase property

6  located at 1545 Wilcox Avenue (AR 7559), and in September 2017, SE Edinger conveyed title to

7  the property to Hollywood Citizen News (AR 7544-47). In January 2019, the City circulated an

8  MND in connection with land use entitlements at the property. (AR 33964-34186.) The MND

9  describes the project as involving the rehabilitation of "an existing two-story office building for

10  the construction, use, and maintenance of two full-service restaurants on the ground floor and

11  flexible event space on the second level." (AR 33964.)

12  ### C. Piecemealing Arguments

13  ### 1. Internal Piecemealing / Dual Baseline Approach

14  Sunset argues that the City internally piecemealed environmental review of the Project by

15  reviewing the Tao Restaurant portion of the Project Site separate from the Selma Wilcox Hotel.

16  Real Party responds that no internal piecemealing occurred because the two

17  developments are separate projects. Real Party explains that the two developments (1) had

18  different investors, operators, and managers, (2) will be implemented independently on different

19  timelines, (3) serve different purposes and different customers, and (4) have independent utility.

20  While some factors (e.g., independent utility) weigh against a piecemealing finding, the

21  most important factors weigh in favor of a piecemealing finding. The two developments are

22  related in time (undertaken within a year of one another), physical location (the same Project

23  Site), and the entity undertaking the action (Real Party). (*Tuolumne County*, *supra*, 155

24  Cal.App.4th at 1227 (looking to whether purported projects are "related in (1) time, (2) physical

25  location and (3) the entity undertaking the action" to resolve piecemealing challenge).) Most

1    important, Real Party is incorrect that the developments can be implemented independently. The

2    Selma Wilcox Hotel will literally be built on top of the Tao Restaurant. (AR 2745.) The Selma

3    Wilcox Hotel will involve the completion and use of the Tao Restaurant's underground parking

4    garage. (AR 99, 2745, 2747.) And the Selma Wilcox Hotel's lobby is converting the 6,000

5    square-foot retail space (approved in connection with the Tao MND) into its ground-floor

6    restaurant and lobby. (AR 2749.)

7         Turning to the *Laurel Heights* piecemealing test, the test's first prong asks whether the

8    Selma Wilcox Hotel Project is a "reasonably foreseeable consequence" of the Tao Restaurant

9    and Retail Project. In general, case law has found piecemealing in one of two situations: (1)

10   "when the purpose of the reviewed project is to be the first step toward future development" and

11   (2) "when the reviewed project legally compels or practically presumes completion of another

12   action." The aforementioned interconnections between the developments strongly weigh in

13   favor of a finding of reasonable foreseeability. Further support for this finding is (1) the soils

14   report prepared for Real Party and attached to the Tao MND which expressly contemplates

15   review of "a mixed use type development" with six to seven stories (AR 5407), (2) Relevant

16   Group's marketing materials which discussed placing a hotel at the Project Site long before the

17   Tao Restaurant's construction (AR 7283, 7357, 7689-2, 12216, 16261), (3) Real Party's

18   operating agreement executed prior to the Tao MND which contemplates placing a hotel at the

19   Project Site (AR 4944), and (4) the City's adoption of a dual baseline approach which indicates

20   that the City also had doubts about the propriety of Real Party's actions (*see* AR 13362 (City

21   staff espousing belief that "project splitting" occurred)). In light of this evidence, the Court

22   concludes that Sunset's internal piecemealing claim is valid.

23        The City and Real Party assert that the City cured any potential internal piecemealing

24   issues by implementing a dual baseline approach to environmental analysis of the Selma Wilcox

25   Hotel.

52

Specifically, the MND analyzes the Project based on two baseline conditions: the "Original Baseline" and the "Current Baseline." (AR 91.) "The Original Baseline is the Project Site as it existed prior to the buildout of the development analyzed in the [Tao] MND related to the CUB Approval, and contains an excavated area, an existing 3,174 square foot restaurant, an existing 1,650 square foot piano bar, and an existing 4,893 square foot building with vacant retail space on the ground floor and four residential units on the second floor." (AR 95.) "The Current Baseline includes the development contemplated in the Adopted MND [i.e., the Tao MND]. This development, as currently constructed, includes the following: a 20,624 square-foot quality restaurant and a partially constructed, three-level subterranean structure on the eastern portion of the Project Site, and an excavated area, on the western portion of the Project Site that would be the 6,000 square feet of retail and remaining portion of the three-level subterranean structure contemplated in and to be constructed in accordance with the Adopted MND." (AR 95-96.)

Sunset concedes that using an earlier baseline can cure a piecemealing defect. (*See* Sunset OB at 20 ("[C]onsistent with case law[,] when piecemealing deception is discovered during construction of parts of the whole of action [citation], the City ordered the Project here to use a revised baseline that would reflect the conditions on the ground <u>before</u> any construction began." (emphasis in original)).) Sunset argues, however, the dual baseline approach implemented by the MND is confusing and flawed because the "original baseline" includes Tao excavation activity and Tao building renovation. Sunset contends that the "original baseline" should have reached back before any construction began onsite in order to evaluate the two developments' true impacts. (Sunset OB at 21.) The Court agrees.

As noted *ante*, Real Party obtained a building permit to construct the Tao Restaurant at the Project Site prior to obtaining City approval for the Tao Restaurant CUP. At the time of the Tao MND's approval, the restaurant portion of the development was "undergoing excavation and construction." (AR 5081.) In order to ensure complete environmental review, the Tao MND

53

adopted a "conservative" baseline that included the "total excavation and construction" relating to the development. (*Ibid.*)

Instead of mirroring the baseline in the Tao MND, the MND at issue (ostensibly) includes the excavated area as part of its "Original Baseline." (AR 95 ("The Original Baseline is the Project Site as it existed prior to the buildout of the development analyzed in the MND related to the [Tao] CUB Approval, and *contains an excavated area....*") (Emphasis added).)

The MND should have included an evaluation of the impacts of the excavation activity. While the building permits may have been ministerial (14 CCR § 15268(b)(1) (presumption that building permits are ministerial)), the building permits were only an element of the project, not the project itself. The project is the greater Selma Wilcox Hotel / Tao Restaurant complex which has discretionary components (e.g., the CUP) and is therefore subject to CEQA review. (14 CCR § 15268(d) ("Where a project involves an approval that contains elements of both a ministerial action and a discretionary action, the project will be deemed to be discretionary and will be subject to the requirements of CEQA."); *Katzeff v. Department of Forestry & Fire Protection* (2010) 181 Cal.App.4th 601, 611 (noting that "an applicant cannot avoid environmental review of a portion of a larger project simply by securing a separate ministerial permit"); *Prentiss v. City of South Pasadena* (1993) 15 Cal.App.4th 85, 91 (noting that building permits may be subject to CEQA "when the permit is integral to a larger project subject to CEQA").)

The City argues that the "Original Baseline" does encompass "the physical conditions that existed in 2015 prior to the issuance of any ministerial permits related to the Tao Restaurant. (AR 72, 95-97, 2749-2750, 4673-4674.)" (Opp. to Maddren at 15.) The City's citations do not support this claim. AR 72, 95-97, and 2749-59 each repeat the same characterization of the "Original Baseline" as the Project Site's "environmental conditions that originally existed at the time of submittal of" the Tao MND. This description does not support the City's argument

1    because, at the time of the Tao MND's submittal, the excavation activity had already been

2    performed.  (AR 2746, 2867.)  AR 4673-4674 does provide some support to the City's argument.

3    AR 4673-4674 is a portion of a transcript of a PLUMC hearing in connection with the Selma

4    Wilcox Hotel.  City staff represented at the hearing that "the first baseline, cited as the original

5    baseline, takes into consideration the environment as it existed prior to the issuance of ministerial

6    permits back in 2015."  (AR 4674.)  The problem with these oral statements is that they

7    contradict the aforementioned descriptions of the "Original Baseline" in the MND.  The MND's

8    plain language must control over this conflicting oral statement.  Just as important, if the MND

9    did adopt the same baseline implemented in the Tao MND, the MND should have made this

10   clearer to the public.

11        The City also points out that the MND incorporates by reference the Tao MND.  (City

12   Opp. at 15.)  However, the MND only does so in part.  (*See* AR 131, 170, 178.)  Incorporating

13   the Tao MND in part does not ensure that the City measured all of the project's environmental

14   impacts against a proper baseline.

15        A "baseline" under CEQA is the "measure of the environment's state absent the project."

16   (*Communities for a Better Environment v. South Coast Air Quality Management Dist.* (2010) 48

17   Cal.4th 310, 315; *accord Neighbors for Smart Rail v. Exposition Metro Line Construction*

18   *Authority* (2013) 57 Cal.4th 439, 447.)  A trial court reviews "de novo whether an agency has

19   chosen to rely upon a [baseline] standard that is consistent with CEQA." (*John R. Lawson Rock*

20   *& Oil, Inc. v. State Air Resources Bd.* (2018) 20 Cal.App.5th 77, 103-04 (an MND case).)  A

21   baseline that is inaccurate, incomplete, or misleading does not comply with CEQA.  (*Cadiz Land*

22   *Co., Inc. v. Rail Cycle, L.P.* (2000) 83 Cal.App.4th 74, 87.)  "Once that [baseline] standard is set,

23   'an agency enjoys the discretion to decide, in the first instance, exactly how the existing physical

24   conditions without the project can most realistically be measured, subject to review, as with all

25

55

1  CEQA factual determinations, for support by substantial evidence.' " (*John R. Lawson*, *supra*,

2  20 Cal.App.5th at 104.)

3        In this case, the City has not chosen a baseline consistent with CEQA because the

4  "Original Baseline" does not evaluate the environment's state absent the project as a whole. This

5  defect has potential prejudicial consequences because an examination of only a portion of the

6  project may understate the entire project's environmental impacts.[4]  This defect requires setting

7  aside the City's approval of the MND.

8      **2. External Piecemealing**

9        Sunset and Maddren contend that the City externally piecemealed review of the Project

10  by reviewing the Selma Wilcox Hotel separate from the "Hollywood Hotel District" to which it

11  purportedly belongs.  The Court disagrees.

12        As a starting point, the Court examines the question of law which asks "which acts

13  constitute the 'whole of an action' for purposes of Guidelines section 15378." (*Tuolumne*

---

14 / 15  [4] Sunset's other arguments directed at the City's dual baseline approach are without merit. (Sunset OB at 20-21.)

16 / 17  Sunset argues that the City should not have used a dual baseline approach at all because such an approach is confusing.  The Court disagrees.  There is nothing inherently unlawful or confusing about implementing a dual baseline approach. (*See Neighbors for Smart Rail v. Exposition Metro Line Construction Authority* (2013) 57 Cal.4th 439, 462 (noting that "the use of multiple baselines for direct impacts does not violate CEQA").)  Sunset cites no legal authority prohibiting the practice.  Moreover, such an approach does not necessarily create piecemealed review of impacts.  A proper "original baseline" would measure all environmental impacts relating to the Tao Restaurant and Selma Wilcox Hotel.

21-25  Sunset also argues that the City failed to measure an appropriate ambient noise baseline.  Sunset explains that the MND's ambient noise baseline is based on measurements taken in 2017 which were faulty because of ongoing construction.  This argument fails because Sunset has not shown that it exhausted administrative remedies with respect to this exact issue.  Furthermore, the MND did not base its noise impact findings exclusively on the 2017 measurements.  The MND also relied upon ambient noise results from May 2015 which had been used in the Tao MND. (AR 253, 5178-79.)  The project's noise impacts, when measured against the May 2015 ambient noise baseline, showed a less than significant impact. (AR 258.)  Sunset has not shown that these May 2015 results were tainted by nearby construction noises. (*See* AR 5179 (predominant noise was caused by motor vehicles on adjacent roadways).)

1   *County, supra*, 155 Cal.App.4th at 1224; *see also Lighthouse, supra*, 131 Cal.App.4th at 1208

2   ("The prohibition against piecemeal review is the flip side of the requirement that the whole of a

3   project be reviewed under CEQA.").)

4       To answer this question, Sunset contends that the Selma Wilcox Hotel and the other

5   hotels such as the Dream Hotel and Tommie are part of a coordinated endeavor undertaken by

6   Relevant Group to accomplish a singular objective — the establishment of a "Hollywood Hotel

7   District." "One way to evaluate which acts are part of a project is to examine how closely

8   related the acts are to the overall objective of the project. The relationship between the particular

9   act and the remainder of the project is sufficiently close when the proposed physical act is among

10   the 'various steps which taken together obtain an objective.' " (*Tuolumne County, supra*, 155

11   Cal.App.4th at 1227.)

12       The Court finds this approach unhelpful in this case because it presupposes a clear overall

13   project objective. For example, in *Tuolumne County*, a nonprofit group challenged Lowe's

14   proposal to construct a home improvement center in the City of Sonora. The nonprofit group

15   asserted that the proposed home improvement center and the realignment of a nearby road were

16   part of a single "project" for purposes of CEQA. The appellate court agreed: "Lowe's objective

17   is to open and operate a home improvement center in Sonora. The commencement of business

18   operations at the site is conditioned upon the completion of the realignment of [the road]. As a

19   result, the road alignment is a step that Lowe's must take to achieve its objective." In this case,

20   unlike *Tuolumne County*, there is more than one plausible overall project objective served by

21   these developments — (1) to establish independent mixed-use developments and (2) to establish

22   a Hollywood Hotel District — and the record does not convincingly disclose which objective

23   predominates.

24       Furthermore, project objectives should be tangible and clear. (*See Aptos Council v.*

25   *County of Santa Cruz* (2017) 10 Cal.App.5th 266, 284 (finding the objective "of modernizing the

1  County Code is vague" and "not the type of tangible 'objective' that has been found to be the

2  basis of a CEQA project").)  The objective posited by Sunset resembles nothing in case law and

3  is somewhat vague in terms of its scope.  Conversely, the objective posited by Real Party —

4  establishing an independent mixed-use development — more closely resembles the one

5  articulated in *Tuolumne County*: the opening and operation of a home improvement center.

6      As with the internal piecemealing argument, the Court examines whether the projects are

7  "related in (1) time, (2) physical location and (3) the entity undertaking the action." (*Tuolumne*

8  *County, supra*, 155 Cal.App.4th at 1227.)  This factor leads to mixed results.  The various

9  developments are *loosely related* in time (a five- to six- year period of development), physical

10 location (largely located on or near the same block), and entity undertaking the action (Relevant

11 Group sub-corporations).  The developments are certainly not as related in time, physical

12 location, and the entity undertaking the action as (1) the Selma Wilcox Hotel and Tao

13 Restaurant, (2) the home improvement center in *Tuolumne County*, or (3) the 21-house

14 development in *Arviv*.

15     Turning now to the *Laurel Heights* piecemealing test, the test's first prong asks whether

16 "the environmental effects of future expansion or other action" is a reasonably foreseeable of the

17 initial project.  In general, case law has found piecemealing in one of two situations: (1) "when

18 the purpose of the reviewed project is to be the first step toward future development" and (2)

19 "when the reviewed project legally compels or practically presumes completion of another

20 action."  Conversely, a no piecemealing finding may be proper "when the projects have different

21 proponents, serve different purposes, or can be implemented independently."

22     Sunset provides no explanation as to how this test's requirements are met.  Maddren

23 implicitly acknowledges that the *Laurel Heights* test applies (*see* Maddren Reply at 8-9) but

24 cautions that a "reasonably foreseeable consequence" does not necessarily require a causal

25 relationship between two projects.  Maddren correctly points out that in *Laurel Heights*, for

1  example, the university's partial relocation into a new facility did not cause the university to

2  move into the remainder of the facility but evidence in the record made it plain that the

3  university planned to do so.

4       Maddren argues (and Sunset impliedly argues) that the Hollywood Hotel District was a

5  reasonable foreseeable consequence of these various developments because Relevant Group

6  planned this hotel district all along.  In support, Maddren and Sunset point to Relevant Group's

7  marketing brochures which advertised the Selma Wilcox Hotel as "Dream Hotel (Phase 2)" (AR

8  7283, 7689-2) and marketed Relevant Group's various hotels and establishments in the Project

9  Site area as the "Hollywood Hotel District."  (AR 32745-47, 32773 (stating that the "Hollywood

10  Hotel District" includes five projects: the Dream Hotel, Selma Wilcox Hotel, Thompson Hotel,

11  Tommie Hotel, and Citizen News)).

12       The Court concludes that these marketing brochures have limited evidentiary value.

13       First, the brochures are promotional materials for investors.  Labeling this area as the

14  "Hollywood Hotel District" is obvious proof of this.  As promotional materials, the brochures are

15  liable to puffery and spin.

16       Second, these marketing materials are not a "smoking gun" in the sense that they do not

17  definitively show that Relevant Group planned this "Hollywood Hotel District" all along and

18  sought piecemeal review of its projects to obtain an end-run around CEQA.  Such were the

19  circumstances in *Arviv*.  (*Hollywoodians Encouraging Rental Opportunities v. City of Los*

20  *Angeles* (2019) 37 Cal.App.5th 768, 781.)  Indeed, one of these marketing materials presents an

21  alternate conclusion: Relevant Group developed the Selma Wilcox Hotel separate from the

22  Dream Hotel (and not concurrent therewith) in light of the Dream Hotel's success.  (AR 7286

23  ("Following the success of Phase 1, we are working with Hollywood International Regional

24  Center to raise EB-5 capital for Phase 2 of the Dream Hotel Hollywood.").)

25

59

1    On this issue, the City and Real Party argue that the project's independent

2  implementation and operations support a no piecemealing finding.  This point is well-taken.  The

3  Selma Wilcox Hotel, Dream Hotel, Tommie Hotel, and Thompson Hotel are separate mixed-use

4  establishments that do not require the others to operate.  Citizen News is an event space and

5  restaurant venue that does not require the other hotels to operate.  Sunset and Maddren have not

6  argued otherwise.

7    Real Party also persuasively emphasizes the work that goes into developing these hotels

8  and restaurants: "Successfully developing a hotel or restaurant requires the existence of multiple

9  conditions, including property rights, investors, management partners, and location-specific

10  demand.  (AR 10912-13.)"  To show that the Hollywood Hotel District was a reasonably

11  foreseeable consequence of these various developments, Sunset and Maddren would need to

12  show that it was reasonably foreseeable that these multitude of conditions would be satisfied.  On

13  this record, such a finding seems impractical given the manner in which Relevant Group's

14  funding system operates as well as the inherent market fluctuations which can affect the

15  desirability of developing these hotels.  (*See* AR 10995 (explaining that the EB-5 program used

16  to fund the developments requires Relevant Group "to complete proposed deals quickly" because

17  "investors are motivated to secure their visas").)

18    On balance, the Court concludes that Sunset and Maddren have not shown external

19  piecemealing.  The projects are independent hotels and restaurants located on different lots,

20  funded with different investors, managed by different persons, and implemented for discrete

21  purposes.

22  **III. Conditional Use Permit**

23    Maddren challenges the City's issuance of a CUP for the onsite sale and dispensing of

24  alcoholic beverages to Real Party.

25  **A. Standard of Review**

1    The issuance of a CUP is a quasi-judicial administrative action which the trial court

2    reviews under administrative mandamus procedures pursuant to CCP section 1094.5.

3    (*Neighbors in Support of Appropriate Land Use v. County of Tuolumne* (2007) 157 Cal.App.4th

4    997, 1005.)

5        CCP section 1094.5 does not on its face specify which cases are subject to independent

6    review and which cases are subject to the substantial evidence standard, leaving that issue to the

7    courts.  (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 811.)  In cases reviewing decisions

8    which affect a vested fundamental right, the trial court exercises independent judgment on the

9    evidence.  (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143; *see* CCP §1094.5(c).)  In this case,

10   Maddren does not have a present possessory or vested right in the Project or Project Site.  As

11   such, the substantial evidence standard applies.  (*See Cadiz Land Co., Inc. v. Rail Cycle, L.P.*

12   (2000) 83 Cal.App.4th 74, 112; *Breakzone Billiards v. City of Torrance* (2000) 81 Cal.App.4th

13   1205, 1245.)

14       "Substantial evidence" is relevant evidence that a reasonable mind might accept as

15   adequate to support a conclusion (*California Youth Authority v. State Personnel Board* (2002)

16   104 Cal.App.4th 575, 585) or evidence of ponderable legal significance, which is reasonable in

17   nature, credible and of solid value (*Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 305, n. 28).

18   The petitioner has the burden of demonstrating that the agency's findings are not supported by

19   substantial evidence in light of the whole record.  (*Young v. Gannon* (2002) 97 Cal.App.4th 209,

20   225.)  The trial court considers all evidence in the administrative record, including evidence that

21   detracts from evidence supporting the agency's decision.  (*California Youth Authority, supra,*

22   104 Cal.App.4th at 585.)

23       An agency is presumed to have regularly performed its official duties (Evid. Code §664),

24   and the petitioner therefore has the burden of proof.  (*Steele v. Los Angeles County Civil Service*

25   *Commission* (1958) 166 Cal.App.2d 129, 137.)  "[T]he burden of proof falls upon the party

1   attacking the administrative decision to demonstrate wherein the proceedings were unfair, in

2   excess of jurisdiction or showed prejudicial abuse of discretion." (*Afford v. Pierno* (1972) 27

3   Cal.App.3d 682, 691.)

4   **B. City's CUP Laws**

5       In approving a CUP for the onsite sale or dispensing of alcoholic beverages, the City

6   must make the following three findings pursuant to LAMC section 12.24.W.1(a):

7       (1) That the proposed use will not adversely affect the welfare of the pertinent

8           community;

9       (2) That the granting of the application will not result in an undue concentration of

10           premises for the sale or dispensing for consideration of alcoholic beverages, including

11           beer and wine, in the area of the City involved, giving consideration to applicable

12           State laws and to the California Department of Alcoholic Beverage Control's (ABC)

13           guidelines for undue concentration; and also giving consideration to the number and

14           proximity of these establishments within a one thousand foot radius of the site, the

15           crime rate in the area (especially those crimes involving public drunkenness, the

16           illegal sale or use of narcotics, drugs or alcohol, disturbing the peace and disorderly

17           conduct), and whether revocation or nuisance proceedings have been initiated for any

18           use in the area; and

19       (3) That the proposed use will not detrimentally affect nearby residentially zoned

20           communities in the area of the City involved, after giving consideration to the

21           distance of the proposed use from residential buildings, churches, schools, hospitals,

22           public playgrounds and other similar uses, and other establishments dispensing, for

23           sale or other consideration, alcoholic beverages, including beer and wine.

24   **C. Maddren's Arguments**

25

1    Maddren argues that the CUP must be set aside because the City ignored substantial

2  evidence in the record that contradict its findings.  Maddren claims that (1) the Hollywood area

3  is already oversaturated with establishments selling liquor (AR 2276), (2) the crime rate in the

4  area is disproportionately high as compared to other areas of the City (AR 2276-77), and (3) the

5  Project is located near numerous sensitive uses such as a park, school, and church (AR 2277).

6  (Maddren OB at 17.)

7    From the outset, Maddren's argument misses the mark because the Court's inquiry here is

8  not whether there is substantial evidence in the record that *undermines* the City's findings but

9  whether there is substantial evidence in the record that *supports* the City's findings.  Maddren

10  does not attempt to prove the latter.

11    Assuming *arguendo* that Maddren maintained that the City's findings are not supported

12  by substantial evidence, Maddren's argument would still be unsuccessful.  Each of the City's

13  findings are supported by substantial evidence.

14    **First Finding (LAMC § 12.24.W(a)(1)):** The City found that the proposed sale and

15  dispensing of alcoholic beverages would not adversely affect the welfare of the community

16  surrounding the Project Site for two reasons.  (AR 2275-76.)

17    First, the City pointed out that the sale and dispersing of alcoholic beverages is a

18  "common amenity … compatible with the range of commercial uses such as restaurants,

19  nightclubs, theaters, retail, and other hotels" in the area.

20    Second, the City pointed out that the Project's COAs ensure protection of the

21  community's welfare.  (AR 46-52, 2775 (no adverse effect for project "as conditioned").)  For

22  example, COA 20 requires Real Party to provide a minimum of two security guards in the

23  ground floor hotel restaurant and two security guards in the rooftop bar / lounge area on

24  Thursdays, Fridays, and Saturdays from 8:00 pm to 2:30 am.  (AR 49.)  COA 20 further requires

25  Real Party to provide a minimum of two security guards on the premises during all hours of hotel

63

1   operation. (*Ibid.*)  COA 25 prohibits loitering on the premises.  (AR 50.)  COA 27 requires all

2   personnel serving alcoholic beverages to attend a Standardized Training for Alcohol Retailers

3   (STAR) session sponsored by the LAPD.  (*Ibid.*)  COA 28 requires Real Party to provide a 24-

4   hour hot line telephone number for any inquiries or complaints from the community regarding

5   the subject facility.  (*Ibid.*)  COA 29 requires Real Party to install and maintain security cameras

6   covering all common areas of the busines and high risk areas.  (*Ibid.*)  COA 40 authorizes the

7   City to conduct random compliance checks.  (AR 52.)  COA 43 requires Real Party to

8   incorporate safety design measures in compliance with the LAPD's "Design Out Crime

9   Guidelines: Crime Prevention through Environmental Design."  (*Ibid.*)

10      **Second Finding (LAMC § 12.24.W(a)(2)):**  The City acknowledges that there are a

11   significant number of active alcohol licenses (62) within 1,000 feet of the Project Site and the

12   number of existing onsite licenses exceeds ABC guidelines.  (AR 2276.)  The City also

13   acknowledges that the crime rate of the crime reporting district in which the Project Site is

14   located is higher than the area-wide average.  (AR 2277.)  However, the City persuasively

15   concludes that the concentration of premises for the sale or dispensing of alcoholic beverages is

16   not undue where, as here, "the approval of a license does not negatively impact an area, but

17   rather such a license benefits the public welfare and convenience."  (AR 2276.)  As noted *ante*,

18   the City has imposed COAs on the Project which will ensure that potential adverse impacts from

19   issuance of the liquor license are mitigated.  Moreover, the Project benefits "the public welfare

20   and convenience" by creating lodging, food, and entertainment for Hollywood visitors and

21   denizens.  (*See* AR 2276.)

22      **Third Finding (LAMC § 12.24.W(a)(3)):**  The City states that six sensitive uses are

23   located within 1000 feet of the Project Site: a park, two schools, a gymnasium, and two churches.

24   (AR 2277.)  The City persuasively concludes that the proposed sale and dispensation of alcohol

25   will not detrimentally affect these sensitive uses and nearby residential developments because of

1   the aforementioned conditions and because the Project will help support a "developing

2   commercial corridor along Selva Avenue and in the Regional Center Commercial, which has

3   long been a center of entertainment in the City." (*Ibid.*)a

4        In sum, Maddren's challenge to the CUP is without merit.

5                                    **Conclusion**

6        Based upon the foregoing, the court enters an interlocutory writ as to Sunset's petition.

7   Sunset has established a fair argument that the Project may have significant impact on air quality

8   and that the Project's baseline does not comply with CEQA. However, it appears that that City

9   could remedy these deficiencies.   Accordingly, the court will remand for further proceedings

10  and for the City to make specific findings to clarify the Project's baseline and resolve the issue of

11  the impact on air quality.   The City is not limited to the existing administrative record on

12  remand in addressing these issues.

13       This Court shall reserve and retain jurisdiction over this action until such time as

14  Respondent files a return evidencing it has complied with this order.

15       Maddren's petition for writ of mandate is denied.   While Maddren raised a valid internal

16  piecemealing argument, Maddren did not address the Project's baseline which, apart from the

17  defect identified by Sunset, cured this piecemealing error.

18       City shall give notice and prepare orders consistent with the court's decision.

19

20  DATED: January 11, 2021

21                                      Honorable Daniel S. Murphy
                                        Judge, Los Angeles Superior Court
22

23

24

25

65

Electronically FILED by Superior Court of California, County of Los Angeles on 02/08/2021 05:00 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Lara,Deputy Clerk

**MICHAEL N. FEUER**, SBN 111529
City Attorney
**TERRY KAUFMANN MACIAS**, SBN 137182
Sr. Assistant City Attorney
**JOHN W. FOX**, SBN 171426
**MORGAN L. HECTOR**, SBN 246573
Deputy City Attorneys
LOS ANGELES CITY ATTORNEY'S OFFICE
200 N. Main Street, City Hall East Rm 701
Los Angeles, CA 90012
Tel.: (213) 978-7121
Fax: (213) 978-8214
Email: morgan.hector@lacity.org

**EXEMPT FROM FILING FEES**
**[GOVERNMENT CODE § 6103]**

**ANDREA K. LEISY**, SBN 206681
REMY MOOSE MANLEY, LLP
555 Capitol Mall, Suite 800
Sacramento, CA 95814
Tel.: (916) 443-2745
Fax: (916) 443-9017
Email: aleisy@rmmenvirolaw.com

Attorneys for Respondents
CITY OF LOS ANGELES and
CITY OF LOS ANGELES CITY COUNCIL

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| THE SUNSET LANDMARK INVESTMENT, LLC, a California limited liability company,<br><br>           Petitioner,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal corporation; CITY OF LOS ANGELES CITY COUNCIL; and DOES 1 through 10, inclusive,<br><br>           Respondents,<br> | Case No. 19STCP01027<br>[*Related to Case No. 19STCP00988*]<br><br>**NOTICE OF ENTRY OF INTERLOCUTORY WRIT AND ORDER OF REMAND**<br><br>ASSIGNED FOR ALL PURPOSES:<br>Hon. Daniel S. Murphy<br>Dept. 32<br> |
| 6421 SELMA WILCOX HOTEL, LLC, a California limited liability company; and ROES 1 through 10, inclusive,<br><br>           Real Parties in Interest. | Petition filed: April 2, 2019<br>(CEQA) |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

NOTICE IS HEREBY GIVEN that on February 8, 2021, the Court entered an Interlocutory Writ and Order of Remand pertaining to Petitioner The Sunset Landmark Investment, LLC's Petition for Writ of Mandamus. A true and correct copy of the order is attached hereto as **Exhibit A**.

Respectfully submitted,

Dated: February 8, 2021                 REMY MOOSE MANLEY, LLP


By: _/s/ *Andrea K. Leisy*_____
        ANDREA K. LEISY

Attorneys for Respondents
CITY OF LOS ANGELES and
CITY OF LOS ANGELES CITY COUNCIL

2
**NOTICE OF ENTRY OF INTERLOCUTORY WRIT AND ORDER OF REMAND**

NOTICE OF ENTRY OF INTERLOCUTORY
WRIT AND ORDER OF REMAND

# EXHIBIT A

Electronically Received 01/29/2021 04:15 PM

**MICHAEL N. FEUER**, SBN 111529
City Attorney
**TERRY KAUFMANN MACIAS**, SBN 137182
Sr. Assistant City Attorney
**JOHN W. FOX**, SBN 171426
**MORGAN L. HECTOR**, SBN 246573
Deputy City Attorneys
LOS ANGELES CITY ATTORNEY'S OFFICE
200 N. Main Street, City Hall East Rm 701
Los Angeles, CA 90012
Tel.: (213) 978-7121
Fax: (213) 978-8214
Email: morgan.hector@lacity.org

**ANDREA K. LEISY**, SBN 206681
REMY MOOSE MANLEY, LLP
555 Capitol Mall, Suite 800
Sacramento, CA 95814
Tel.: (916) 443-2745
Fax: (916) 443-9017
Email: aleisy@rmmenvirolaw.com

Attorneys for Respondents
CITY OF LOS ANGELES and
CITY OF LOS ANGELES CITY COUNCIL

**FILED**
Superior Court of California
County of Los Angeles

**02/08/2021**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ S. Luqueno _____ Deputy

**EXEMPT FROM FILING FEES**
**[GOVERNMENT CODE § 6103]**

# SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| THE SUNSET LANDMARK INVESTMENT, LLC, a California limited liability company,<br><br>　　　　　Petitioner,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal corporation; CITY OF LOS ANGELES CITY COUNCIL; and DOES 1 through 10, inclusive,<br><br>　　　　　Respondents,<br><br>6421 SELMA WILCOX HOTEL, LLC, a California limited liability company; and ROES 1 through 10, inclusive,<br><br>　　　　　Real Parties in Interest. | Case No. 19STCP01027<br>[*Related to Case No. 19STCP00988*]<br><br>**[PROPOSED] INTERLOCUTORY WRIT AND ORDER OF REMAND**<br><br>ASSIGNED FOR ALL PURPOSES:<br>Hon. Daniel S. Murphy<br>Dept. 32<br><br>Petition filed: April 2, 2019<br>(CEQA) |

1  TO REPONDENTS CITY OF LOS ANGELES AND CITY COUNCIL OF THE CITY OF LOS

2  ANGELES:

3      A decision having been rendered in this matter on January 11, 2021, ordering that an

4  interlocutory writ be issued from this Court,

5      RESPONDENTS ARE HEREBY ORDERED, upon service of this writ, as follows:

6  1.    The hotel development project located at 6421-6429 ½ West Selma Avenue and 1600-

7        1604 North Wilcox Avenue, Los Angeles, CA ("Project") is remanded to the City for

8        further proceedings during which the City may clarify its analysis and findings regarding

9        the Project's Mitigated Negative Declaration's ("MND") baseline and air quality

10       analysis consistent with the Court's January 11, 2021, Ruling on Submitted Matter and

11       Minute Order, fully incorporated herein.

12 2.    The City may consider and accept additional evidence before, during and after a duly-

13       noticed public hearing, at which Petitioner shall have the opportunity to appear and

14       participate.

15 3.    The City shall submit a return to this Court setting forth the clarifications to its analysis

16       and findings regarding the MND's baseline and air quality analysis consistent with the

17       Court's January 11, 2021, Ruling.

18 4.    Alternatively, the City may elect to prepare an Environmental Impact Report ("EIR")

19       which addresses this Court's concerns as set forth in the January 11, 2021, Ruling.

20 5.    This Court shall reserve and retain jurisdiction over this action until such time as

21       Respondent files a return evidencing it has complied with this order.

22

23 **IT IS SO ORDERED.**

24 DATED: 02/08/2021 , 2021

25



Daniel S. Murphy / Judge

26      HON. DANIEL S. MURPHY
        Judge of the Superior Court

27

28

**[PROPOSED] INTERLOCUTORY WRIT AND ORDER OF REMAND**

*Sunset Landmark Investment, LLC v. City of Los Angeles et al.*
Los Angeles County Superior Court No. 19STCP01027
[Related Case: *Casey Maddren v. City of Los Angeles et al.*, Los Angeles County Superior Court No. 19STCP00988]

### PROOF OF SERVICE

I, Kathryn A. Ramirez, am employed in the County of Sacramento. My business address is 555 Capitol Mall, Suite 800, Sacramento, CA 95814, and my email address is kramirez@rmmenvirolaw.com. I am over the age of 18 years and I am not a party to the above-titled action.

On January 29, 2021, I served the following:

### [PROPOSED] INTERLOCUTORY WRIT AND ORDER OF REMAND

**VIA ELECTRONIC TRANSMISSION OR EMAIL** by causing a true copy thereof to be electronically delivered to the following person(s) or representative(s) at the email address(es) listed below.

| | |
|---|---|
| Robert Silverstein<br>Daniel Wright<br>THE SILVERSTEIN LAW FIRM, APC<br>215 North Marengo Avenue, 3rd Floor<br>Pasadena, CA 91101<br>Tel.: (626) 449-4200<br>Email: robert@robertsilversteinlaw.com<br>      dan@robertsilversteinlaw.com<br>      esther@robertsilversteinlaw.com<br>      veronica@robertsilversteinlaw.com | Attorneys for Petitioner<br>*Sunset Landmark Investment* |
| Arthur Friedman<br>Alexander Merritt<br>SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>4 Embarcadero Center, 17th Floor<br>San Francisco, CA 94111<br>Tel.: (415) 434-9100<br>Email: afriedman@sheppardmullin.com<br>      amerritt@sheppardmullin.com | Attorneys for Real Party in Interest<br>*Selma Wilcox Hotel* |
| John W. Fox<br>Morgan L. Hector<br>LOS ANGELES CITY ATTORNEY'S OFFICE<br>200 North Main Street<br>City Hall East, Room 701<br>Los Angeles, CA 90012<br>Tel.: (213) 978-7121<br>Email: john.fox@lacity.org<br>      morgan.hector@lacity.org | Attorneys for Respondents<br>*City of Los Angeles, et al.* |

| Casey Maddren<br>2141 Cahuenga Boulevard, Apt. 17<br>Los Angeles, CA 90068<br>Tel.: (323) 462-7804<br>Email: cmaddren@gmail.com | Attorneys for Petitioner<br>*Pro Per*<br>[Related Case No. 19STCP00988] |
|---|---|

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of January 2021 at Carmichael, California.

Kathryn A. Ramirez

**PROOF OF SERVICE**

*Sunset Landmark Investment, LLC v. City of Los Angeles et al.*
Los Angeles County Superior Court No. 19STCP01027
[Related Case: *Casey Maddren v. City of Los Angeles et al.*, Los Angeles County Superior Court No. 19STCP00988]

### PROOF OF SERVICE

I, Kathryn A. Ramirez, am employed in the County of Sacramento. My business address is 555 Capitol Mall, Suite 800, Sacramento, CA 95814, and my email address is kramirez@rmmenvirolaw.com. I am over the age of 18 years and I am not a party to the above-titled action.

On February 8, 2021, I served the following:

### NOTICE OF ENTRY OF INTERLOCUTORY WRIT AND ORDER OF REMAND

**VIA ELECTRONIC TRANSMISSION OR EMAIL** by causing a true copy thereof to be electronically delivered to the following person(s) or representative(s) at the email address(es) listed below.

| | |
|---|---|
| Robert Silverstein<br>Daniel Wright<br>THE SILVERSTEIN LAW FIRM, APC<br>215 North Marengo Avenue, 3rd Floor<br>Pasadena, CA 91101<br>Tel.: (626) 449-4200<br>Email: robert@robertsilversteinlaw.com<br>    dan@robertsilversteinlaw.com<br>    esther@robertsilversteinlaw.com<br>    veronica@robertsilversteinlaw.com | Attorneys for Petitioner<br>*Sunset Landmark Investment* |
| Arthur Friedman<br>Alexander Merritt<br>SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>4 Embarcadero Center, 17th Floor<br>San Francisco, CA 94111<br>Tel.: (415) 434-9100<br>Email: afriedman@sheppardmullin.com<br>    amerritt@sheppardmullin.com | Attorneys for Real Party in Interest<br>*Selma Wilcox Hotel* |
| John W. Fox<br>Morgan L. Hector<br>LOS ANGELES CITY ATTORNEY'S OFFICE<br>200 North Main Street<br>City Hall East, Room 701<br>Los Angeles, CA 90012<br>Tel.: (213) 978-7121<br>Email: john.fox@lacity.org<br>    morgan.hector@lacity.org | Attorneys for Respondents<br>*City of Los Angeles, et al.* |

| Casey Maddren | Attorneys for Petitioner |
| 2141 Cahuenga Boulevard, Apt. 17 | *Pro Per* |
| Los Angeles, CA 90068 | [Related Case No. 19STCP00988] |
| Tel.: (323) 462-7804 | |
| Email: cmaddren@gmail.com | |

    I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of February 2021 at Carmichael, California.

_____
Kathryn A. Ramirez

9

# EXHIBIT T

| | |
|---|---|
| **From:** | Thakor, Neil |
| **To:** | Elizabeth Schaus |
| **Cc:** | Pelham, Christopher; Turken, James; Patrick Maloney |
| **Subject:** | RE: Relevant v. Nourmand: Meet and Confer re: MSJ |
| **Date:** | Sunday, May 8, 2022 10:20:01 AM |

HI Elizabeth —

We will withdraw the designation.

**From:** Elizabeth Schaus <eschaus@maloneyfirm.com>
**Sent:** Sunday, May 8, 2022 10:18 AM
**To:** Thakor, Neil <neil.thakor@nortonrosefulbright.com>
**Cc:** Pelham, Christopher <christopher.pelham@nortonrosefulbright.com>; Turken, James <james.turken@nortonrosefulbright.com>; Patrick Maloney <pmaloney@maloneyfirm.com>
**Subject:** RE: Relevant v. Nourmand: Meet and Confer re: MSJ

Hi Neil,

I am writing to meet and confer with respect to an additional email thread, attached, which was Exhibit 13 to the deposition of Mohamad Iravani and discusses wire transfer instructions. This email was produced and designated as confidential by the S Defendants.  We are writing to meet and confer to request that the S Defendants withdraw the confidentiality designation as to this document. Thank you.

**Elizabeth Schaus**
**THE MALONEY FIRM, APC**
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
Main:  310-540-1505
Direct: 310-347-4692
eschaus@maloneyfirm.com
www.maloneyfirm.com



**From:** Thakor, Neil <neil.thakor@nortonrosefulbright.com>
**Sent:** Friday, May 6, 2022 6:07 PM
**To:** Elizabeth Schaus <eschaus@maloneyfirm.com>
**Cc:** Pelham, Christopher <christopher.pelham@nortonrosefulbright.com>; Turken, James <james.turken@nortonrosefulbright.com>; Patrick Maloney <pmaloney@maloneyfirm.com>
**Subject:** Re: Relevant v. Nourmand: Meet and Confer re: MSJ

Hi Elizabeth - we will withdraw.

Sent from my iPhone

On May 6, 2022, at 5:25 PM, Elizabeth Schaus <eschaus@maloneyfirm.com> wrote:

[External Email – Use Caution]

Hello counsel,

I am following up on my email below. Please let us know if the S Defendants will withdraw their confidentiality designation as to the attached documents.

Elizabeth Schaus
THE MALONEY FIRM, APC
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
Main:   310-540-1505
Direct: 310-347-4692
eschaus@maloneyfirm.com <mailto:eschaus@maloneyfirm.com%20%0d>
www.maloneyfirm.com<http://www.maloneyfirm.com/>

[Description: Description: Description: Logo-Final cropped]

From: Elizabeth Schaus
Sent: Friday, May 6, 2022 9:52 AM
To: 'Pelham, Christopher' <christopher.pelham@nortonrosefulbright.com>; Turken, James <james.turken@nortonrosefulbright.com>; Thakor, Neil <neil.thakor@nortonrosefulbright.com>
Cc: Patrick Maloney <pmaloney@maloneyfirm.com>
Subject: Relevant v. Nourmand: Meet and Confer re: MSJ

Good morning counsel,

In follow up to my conversation with Chris yesterday, N&A intends to rely on the attached documents in support of its Motion for Summary Judgment. These documents were identified by Plaintiffs in response to N&A's Special Interrogatory No. 7 as documents produced by the S Defendants which support their claims against N&A. The S Defendants have marked the documents as confidential. We are meeting and conferring to request that the confidentiality designation as to these documents be withdrawn.

Please let us know if the S Defendants will agree to do so. Thank you.

Elizabeth Schaus

THE MALONEY FIRM, APC

2381 Rosecrans Avenue, Suite 405

El Segundo, California 90245

Main:  310-540-1505

Direct: 310-347-4692

eschaus@maloneyfirm.com <mailto:eschaus@maloneyfirm.com%20%0d>

www.maloneyfirm.com<http://www.maloneyfirm.com/>

[Description: Description: Description: Logo-Final cropped]

**CONFIDENTIALITY NOTICE:** This email, including any attachments, is confidential and may be privileged. If you are not the intended recipient please notify the sender immediately, and please delete it; you should not copy it or use it for any purpose or disclose its contents to any other person. Norton Rose Fulbright entities reserve the right to monitor all email communications through their networks.

Norton Rose Fulbright Australia, Norton Rose Fulbright LLP, Norton Rose Fulbright Canada LLP, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.