1   **NORTON ROSE FULBRIGHT US LLP**
    JAMES H. TURKEN (BAR NO. 89618)
2   CHRISTOPHER K. PELHAM (BAR NO. 241068)
    NEIL P. THAKOR (BAR NO. 308743)
3   555 South Flower Street
    Forty-First Floor
4   Los Angeles, CA 90071
    Telephone:   (213) 892-9200
5   Facsimile:   (213) 892-9494
    james.turken@nortonrosefulbright.com
6   neil.thakor@nortonrosefulbright.com
    christopher.pelham@nortonrosefulbright.com
7
    Attorneys for Defendants,
8   STEPHAN "SAEED" NOURMAND, and THE
    SUNSET LANDMARK INVESTMENT LLC
9
                  IN THE UNITED STATES DISTRICT COURT
10              FOR THE CENTRAL DISTRICT OF CALIFORNIA

11  RELEVANT GROUP, LLC, a                Case No. 2:19-cv-05019-ODW-KSx
    Delaware limited liability company;   *[Assigned to the Hon. Otis D. Wright*
12  1541 WILCOX HOTEL LLC, a              *II]*
    Delaware limited liability company;
13  6516 TOMMIE HOTEL LLC, a             **DEFENDANTS STEPHAN**
    Delaware limited liability company;  **"SAEED" NOURMAND AND**
14  and 6421 SELMA WILCOX HOTEL          **THE SUNSET LANDMARK**
    LLC, a California limited liability   **INVESTMENT LLC'S**
15  company,                             **MEMORANDUM OF POINTS**
                                         **AND AUTHORITIES IN**
16              Plaintiffs,              **SUPPORT OF MOTION FOR**
                                         **SUMMARY JUDGMENT OR,**
17        v.                             **ALTERNATIVELY, FOR**
                                         **PARTIAL SUMMARY**
18  STEPHEN "SAEED" NOURMAND,            **JUDGMENT**
    an individual; THE SUNSET
19  LANDMARK INVESTMENT LLC, a           *[Notice of Motion; Separate*
    California limited liability company; *Statement of Undisputed Material*
20  and DOES 1-10,                        *Fact and Conclusions of Law;*
                                          *Request for Judicial Notice;*
21              Defendants.               *Declarations of Stephen "Saeed"*
                                          *Nourmand and Neil P. Thakor Filed*
22                                        *Concurrently Herewith; [Proposed]*
                                          *Order and [Proposed] Judgment*
23                                        *Submitted Concurrently Herewith]*

24                                       **Date:  June 13, 2022**
                                         **Time: 1:30 p.m.**
25                                       **Place: Courtroom 5D**

26                                       Complaint Filed: June 10, 2019
                                         TAC Filed:  September 14, 2021
27                                       Trial Date:  August 2, 2022

28

DOCUMENT PREPARED
ON RECYCLED PAPER

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S MOTION FOR
SUMMARY JUDGMENT OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

|  |  |  | **Page** |
|---|---|---|---|
| I. | | INTRODUCTION | 1 |
| II. | | FACTUAL BACKGROUND: | 2 |
| | A. | The Key Players | 2 |
| | B. | Relevant's Efforts to Develop the Neighborhood the HAC | 3 |
| | C. | General Principles of CEQA | 4 |
| | D. | The Neighborhood's Opposition To Plaintiffs' Hotels and Subsequent CEQA Lawsuits | 5 |
| | | 1. Sunset, Along With Other Community Members, Opposes the Thompson Hotel | 5 |
| | | 2. Sunset, Along With Other Community Members, Opposes The Tommie Hotel | 6 |
| | E. | Relevant Repeatedly Made Efforts To Settle the Thompson Hotel and Tommie Hotel CEQA Actions | 7 |
| | F. | The Settlement Agreements and Releases | 8 |
| | G. | The Selma Hotel | 9 |
| | H. | The Schrader Hotel | 9 |
| III. | | LEGAL ARGUMENT | 10 |
| | A. | Legal Standard | 10 |
| | B. | Plaintiffs Are Entitled to Judgment as a Matter of Law Because the Supposed RICO Predicate Acts Are All Based on Litigation Activity | 11 |
| | | 1. RICO Categorically Precludes Recasting Litigation Activity as Hobbs Act Extortion | 11 |
| | | 2. California's Extortion Laws Categorically Exclude Litigation Activity | 13 |
| | C. | S Defendants are Immune to Plaintiffs Claims Under the *Noerr-Pennington* Doctrine | 14 |
| | | a. S Defendants Are Entitled To Judgment Because Their CEQA Lawsuits Were Not Objectively Baseless | 17 |
| | | b. Plaintiffs Have Failed to Create a Genuine Dispute of Material Fact Regarding Sunset's Subjective Motivation | 19 |

- i -

DOCUMENT PREPARED
ON RECYCLED PAPER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

|   | D. | Plaintiffs Cannot Establish That The Challenged Litigation Was "Wrongful" Under The Hobbs Act | 20 |
|   | E. | Plaintiffs Also Fail to Establish Any Triable Issue of Fact to Show that S Defendants Extorted or Attempted to Extort the Schrader Hotel | 21 |
|   | F. | Plaintiffs Fail To Create A Genuine Dispute As To Their Claims Of A Conspiracy Between S Defendants and Maddren | 22 |
|   | G. | The Thompson and Tommie Settlement Releases Preclude Plaintiffs from Raising Any Claims Related to Those Developments, Including Civil RICO Claims | 23 |
|   | H. | Relevant Lacks Standing | 24 |
| IV. | | CONCLUSION | 25 |

DOCUMENT PREPARED
ON RECYCLED PAPER

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Action Apartment Assn., Inc. v. City of Santa Monica*,
5    41 Cal. 4th 1232 (2007) ........................................................................ 14

6

*Amarel v. Connell*,
    102 F.3d 1494 (9th Cir. 1996) ........................................................... 15
7

*Andersen v. Atl. Recording Corp.*,
8    2009 WL 3806449 (D. Or. Nov. 12, 2009) ..................................... 17

9

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................ 10
10

*Banning Ranch Conservancy v. City of Newport Beach*,
11    211 Cal. App. 4th 1209 (2012) ............................................................ 5

12

*Barapind v. Enomoto*,
    400 F.3d 744 (9th Cir. 2005) (en banc) ........................................... 12
13

*Bhan v. NME Hosps., Inc.*,
14    929 F.2d 1404 (9th Cir. 1991) ........................................................... 11

15

*Carbo v. United States*,
    314 F.2d 718 (9th Cir. 1963) ............................................................. 22
16

*Catch Curve, Inc. v. Venali, Inc.*,
17    2008 WL 11334024 (C.D. Cal. Nov. 3, 2008) .............................. 17

18

*Citizens Assn. for Sensible Dev. of Bishop Area v. Cty. of Inyo*,
    172 Cal. App. 3d 151 (1985) ......................................................... 5, 16
19

*Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*,
20    944 F.2d 1525 (9th Cir. 1991), aff'd, 508 U.S. 49, 113 S. Ct. 1920,
    123 L. Ed. 2d 611 (1993)...................................................... 15, 17, 18, 20
21

*Deck v. Engineered Laminates*,
22    349 F.3d 1253 (10th Cir. 2003) .................................................. 11, 13

23

*Desoto v. Condon*,
    371 F. App'x 822 (9th Cir. 2010) .................................................... 25
24

*Dias v. Bogins*,
25    134 F.3d 361 (1st Cir. 1998) ............................................................. 11

26

*DriveCam, Inc. v. SmartDrive Sys., Inc.*,
    No. 11-CV-0997-H (RBB), 2012 WL 13175930 (S.D. Cal. Mar. 26,
27    2012)..................................................................................................... 18

28

- iii -

*E. Sav. Bank, FSB v. Papageorge*,
    31 F. Supp. 3d 1 (D.D.C. 2014) .................................................................. 1

*Edelson PC v. Bandas L. Firm PC*,
    No. 16 C 11057, 2018 WL 723287 (N.D. Ill. Feb. 6, 2018) ............................ 11

*Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*,
    914 F.2d 556 (4th Cir. 1990), cert. denied, 499 U.S. 947 (1991) ..................... 18

*ERBE Elektromedizin GMBH v. Canady Technology, LLC*,
    629 F.3d 1278 (Fed. Cir. 2010) ................................................................. 15

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
    20 F. Supp. 3d 451 (S.D.N.Y. 2014) .......................................................... 11

*Friends of "B" St. v. City of Hayward*,
    106 Cal. App. 3d 988 (1980) ....................................................................... 5

*People ex rel. Gallegos v. Pacific Lumber Co.*,
    158 Cal. App. 4th 950 (2008) .................................................................... 14

*Grauberger v. St. Francis Hosp.*,
    169 F. Supp. 2d 1172 (N.D. Cal. 2001) ....................................................... 12

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*,
    806 F.3d 162 (3d Cir. 2015) ...................................................................... 16

*Henderson v. City of Simi Valley*,
    305 F.3d 1052 (9th Cir. 2002) .................................................................... 11

*Howard v. America Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ............................................................... 24, 25

*I.S. Joseph Co. v. J. Lauritzen A/S*,
    751 F.2d 265 (8th Cir. 1984) ................................................................. 2, 11

*Kaiser Found. Health Plan, Inc. v. Abbott Lab'ys, Inc.*,
    552 F.3d 1033 (9th Cir. 2009) .................................................................... 17

*Keep Our Mountains Quiet v. County of Santa Clara*
    (2015) 236 Cal.App.4th 714 ...................................................................... 19

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018) ................................................................... 12, 13

*Malin v. Singer*,
    159 Cal. App. 4th 1283 (2013) ................................................................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................ 11

*Nelson v. Kremer*,
    No. A144130, 2016 WL 1749769 (Cal. Ct. App. Apr. 29, 2016) ...................... 14

*Oracle Sec. Litig.*,
627 F.3d at 387 .................................................................................... 11

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990) ...................................................................... 14

*Pedrina v. Chun*,
97 F.3d 1296 (9th Cir. 1996) ............................................................. 25

*People v. Toledano*,
249 Cal. Rptr. 3d 100 (Ct. App. 2019) ............................................. 14

*Polaris Industries, Inc. v. Arctic Cat, Inc.*,
2017 WL 1180426 (D. Minn. 2017) .................................................. 15

*Pres. Poway v. City of Poway*,
245 Cal. App. 4th 560, 199 Cal. Rptr. 3d 600 (2016) ........................ 4

*Raney v. Allstate Ins. Co.*,
370 F.3d 1086 (11th Cir. 2004) ......................................................... 11

*Rickards v. Canine Eye Reg. Found.*,
783 F.2d 1329 (9th Cir. 1986) ........................................................... 15

*RJR Nabisco, Inc. v. Eur. Cmty.*,
579 U.S. 325 (2016) ........................................................................... 13

*Rusheen v. Cohen*,
37 Cal. 4th 1048 (2006) ..................................................................... 14

*Save the Agoura Cornell Knoll v. City of Agoura Hills*,
46 Cal. App. 5th 665 (2020), reh'g denied (Apr. 10, 2020), review
denied (June 24, 2020) ......................................................................... 5

*Silberg v. Anderson*, 50 Cal. 3d 205, 218 (1990) ................................. 14

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
833 F.3d 512 (5th Cir. 2016) ............................................................. 11

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) ............................................................. 14

*Sparling v. Hoffman Const. Co.*,
864 F.2d 635 (9th Cir. 1988) ............................................................. 25

*Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*,
207 F. Supp. 2d 221 (S.D.N.Y. 2002) ............................................... 18

*United States v. Koziol*,
993 F.3d 1160 (9th Cir. 2021) ............................................... 12, 13, 21

*United States v. Nelson*,
66 F.3d 1036 (9th Cir. 1995) ............................................................. 22

*United States v. Villalobos*,
748 F.3d 953 (9th Cir. 2014) ................................................................. 21

*Uthe Tech. Corp. v. Aetrium Inc.*,
739 F. App'x 903 (9th Cir. 2018) .......................................................... 25

*Vemco, Inc. v. Camardella*,
23 F.3d 129 (6th Cir. 1994) ............................................................ 11, 12

*Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27*,
728 F.3d 354 (4th Cir. 2013) ................................................................. 16

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
868 F.3d 132 (3d Cir. 2017)(finding *Hanover* "easily distinguishable") ...................................................................................... 16

*Wonderful Real Estate Development LLC v. Laborers International Union of North America Local 220*,
2020 WL 91998 ...................................................................................... 15

**Rules and Statutes**

Cal. Civ. Code § 47(b) ........................................................................... 14

Cal. Code Regs. tit. 14, § 15384(a) ......................................................... 5

Fed. R. Civ. P. 56(c) .............................................................................. 10

Pub. Res. Code §21151 .......................................................................... 19

**Other Authorities**

CEQA Guidelines § 21167.6 .................................................................... 5

Jennifer L. Hernandez, et al., Holland & Knight LLP, In the Name of Environment: How Litigation Abuse under the California Environmental Quality Act Undermines California's Environmental, Social, Equity and Economic Priorities – and Proposed Reforms to Protect the Environment from CEQA Litigation Abuse (Jul. 15, 2015), available at https://issuu.com/hollandknight/docs/ceqa_litigation_abuseissuu ................... 19

## I.    **INTRODUCTION**

Cases like this one are the reason why federal courts have repeatedly rejected the use of RICO as a means of attacking lawful state-court litigation.  As detailed below, Defendant Sunset Landmark Development, LLC ("Sunset") was just one among numerous neighborhood constituents who objected to three hotels that Plaintiff Relevant Group LLC ("Relevant") was developing in Sunset's immediate vicinity in Hollywood.  Relevant markets the hotels, which constitute only half of its LA hotel and restaurant portfolio, as lifestyle destinations with outdoor, nightclub, and alcohol amenities.  Sunset and other neighborhood constituents had valid concerns that the hotels would adversely impact the local community's traffic, noise, air pollution, and aesthetic character, among other aspects.  Sunset, exercising its First Amendment right to petition its state and local governments under state law, filed petitions under the California Environmental Quality Act (CEQA) when the City of Los Angeles (the "City") approved those hotels over constituents' objections.  Relevant did not move to summarily dismiss those petitions, request a court to adjudge them frivolous, or request sanctions against Sunset's counsel.  Instead, over the course of almost a year, Relevant repeatedly requested that Sunset settle two of its lawsuits, even up to the eve of trial on one of the suits.

Having obtained the settlements it pursued, Relevant now seeks to turn those settlements into a RICO extortion action.  Relevant's claims defy common sense and are barred as a matter of law.  Relevant entered into the settlements while being advised by two prominent national law firms with land use law specialist partners. Relevant confirmed in writing that the settlements were not the product of duress and waived all claims stemming from them.  Relevant did not prevail on the merits in any of the litigation it now challenges as "sham"; to the contrary, Relevant lost most of it.  Meanwhile, Sunset was only one of many constituents to file public objections to the Relevant hotels, and it was Relevant, not Sunset, that pursued and proposed the very settlements Relevant now calls extortionate.  Moreover, Relevant failed to seek

- 1 -

Document Prepared on Recycled Paper

any state-level remedies for its alleged harms, such as moving to rescind the settlements in Superior Court, moving for sanctions, seeking a ruling that the suits were frivolous, or even contacting law enforcement.  Instead, Relevant now asks the Court to, *inter alia*, parse the state courts' rulings under a complex state-law regulatory and statutory scheme (CEQA actions, notably, are heard by only five Los Angeles Superior Court judges) and declare that, even though Sunset was just one of many constituents to engage in the challenged conduct, Sunset's petitions were so baseless as to be devoid of First Amendment protection and constitute criminal extortion under federal law.  That Hail Mary effort exemplifies why federal courts have rejected claims like these, instead concluding that "[i]f a suit is groundless or filed in bad faith, the law of torts may provide a remedy," but "[r]esort to [RICO]" is prohibited.  *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267–68 (8th Cir. 1984).

The factual record developed in discovery confirms that Plaintiffs' claims are barred as a matter of law.  The Court should enter summary judgment for Defendants.

## II.    FACTUAL BACKGROUND:

### A.    The Key Players

Sunset is a real estate company that owns the historic Hollywood Athletic Club building ("HAC") located on Sunset Boulevard.  (Statement of Uncontroverted Facts ("SUF"), No. 1.)  Sunset's principal is Stephan "Saeed" Nourmand ("S. Nourmand") (together with Sunset the "S Defendants").  (*Id*.)  Prior to forming Sunset Landmark, S. Nourmand was the owner/operator of Nourmand & Associates ("N&A").  (*Id.*, No. 3.)  In 2010, S. Nourmand relinquished not only all operational control of N&A to his son, Michael Nourmand ("Nourmand"), but also his ownership stake in the company.  (*Id*.)

Relevant Group, LLC ("Relevant") is an umbrella company that describes itself as "a vertically integrated, design-focused real estate development company that creates distinctive hospitality, real estate, and lifestyle destinations."  (*Id.*, No.

102695218.3

- 2 -

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT

4.)  In total, Relevant has been involved in the development of at least 15 separate buildings in Hollywood and Downtown Los Angeles in the past ten years.  (*Id.*, No. 8.)  Relevant itself does not own, and did not itself raise funding to construct, the individual properties at issue in this case.  (*Id.*, Nos. 5-8.)  Instead, Relevant fits within a complex web of other entities that raise funds for development projects.  (*Id.*, Nos. 62-64.)  In the past ten years, the Relevant-affiliated companies have developed nine properties within one block of the HAC—including the hotels developed by Plaintiffs 1541 Wilcox Hotel, LLC ("Wilcox" or the "Thompson Hotel"), 6516 Tommie Hotel, LLC ("Tommie" or the "Tommie Hotel"), and 6421 Selma Wilcox, LLC ("Selma" or the "Selma Hotel") (collectively the "Relevant Entities").  (*Id.*)

The ownership of the Relevant Entities provides a useful illustration of this this complex web of corporate ownership.  For example, Relevant's subsidiary, HIRC, owns another subsidiary, HIRC Wilcox, which in turn owns a portion of Wilcox.  (*Id.*, No. 62.)  Further complicating the picture, Wilcox does not directly own the Thompson Hotel, which is instead owned by Wilcox's subsidiary, 1541 Wilcox Holdings, LLC.  (*Id.*, No. 63.)  Tommie and Selma are similarly held through multiple layers of holding companies.  (*Id.*, No. 64.)

## B.    Relevant's Efforts to Develop the Neighborhood the HAC

In 2007, Relevant began developing a series of hotel and hospitality-related buildings within one block of the HAC.  (*Id.*, No. 65.)  The first of these was the Dream Hotel, a 10 story hotel with a rooftop bar near the HAC.  (*Id.*, No. 66.)  After successfully developing the Dream Hotel, Relevant moved on to additional properties adjacent to the HAC and in Downtown Los Angeles.  (*Id.*, No. 67.)  Of Relevant's nine projects, including eight within a block of the HAC, Sunset filed CEQA petitions against just three: the Thompson Hotel, the Tommie Hotel, and Selma Hotel.  (SUF, No. 2.)

## C.   General Principles of CEQA

CEQA requires that a public agency (here, the City) determine whether a project may have significant environmental impacts before approving it.[1]  Under CEQA, environmental impacts are broadly defined, and include such aspects as traffic, noise, light, aesthetic character, and air quality.[2]  The agency must undertake an initial threshold study to determine whether to prepare, among others, a Mitigated Negative Declaration ("MND")—a declaration that a project will not have a significant environmental impact—or an Environmental Impact Report ("EIR")—a required report for any project that may have a significant environmental impact.  As part of this review process, CEQA forbids an agency from reviewing the significance of a project's environmental impact in a "piecemeal" fashion, that is, by allowing environmental considerations "to become submerged by chopping a large project into many little ones—each with a minimal potential impact on the environment—which cumulatively may have disastrous consequences."[3]

If an MND is approved by an agency, that decision may be appealed to a superior decision making body overseeing the agency prior to the filing of litigation.[4]  If that appeal is denied, a plaintiff may challenge the MND in state court through a writ of mandate[5] by arguing that "substantial evidence supports a fair argument that a proposed project may have a significant effect on the environment."[6]  The "fair

---

[1] *Pres. Poway v. City of Poway*, 245 Cal. App. 4th 560, 574, 199 Cal. Rptr. 3d 600, 609–10 (2016).

[2] *See generally* CEQA Guidelines.

[3] *Banning Ranch Conservancy v. City of Newport Beach*, 211 Cal. App. 4th 1209, 1222 (2012).

[4] CEQA Guidelines § 21167.6.

[5] 8 Cal. Real Est. § 26:23 (4th ed.); *Id.* ("[n]o action or proceeding may be brought to challenge a decision under CEQA unless the grounds for the alleged noncompliance were presented to the public agency . . . during the public comment period")

[6] *Pocket Protectors v. City of Sacramento*, 124 Cal. App. 4th 903, 927, 21 Cal. Rptr. 3d 791, 808 (2004) ("If there is substantial evidence in the whole record

argument standard . . . creates a low threshold for requiring an EIR, reflecting the legislative preference for resolving doubts in favor of environmental review."[7] "Substantial evidence" means "enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached."[8]  Standing to bring such a writ is quite broad, and found where "a property owner, taxpayer, or elector . . . establishes a geographical nexus with the site of the challenged project."[9] A litigant who successfully challenges an agency's MND or EIR determination in court may be entitled to attorneys' fees.[10]

**D.** **The Neighborhood's Opposition To Plaintiffs' Hotels and Subsequent CEQA Lawsuits**

    1.    Sunset, Along With Other Community Members, Opposes the Thompson Hotel

Sunset learned of the Thompson Hotel's planned development on around February 23, 2015.  (SUF, No. 9.)  Sunset had concerns that the planned 12-story hotel with a rooftop bar would increase noise and traffic, add further strain on local infrastructure, and negatively impact the overall aesthetic of the neighborhood.  (*Id.*, No. 10.)  Several other residents and commercial property owners shared Sunset's concerns, and even tried to "recruit" Sunset to challenge the hotel.  (*Id.*, No. 11.)  At least 10 other individuals voiced opposition to the Thompson Hotel.  (*Id.*)

Despite these objections, the City adopted a MND and approved the Thompson

---

supporting a fair argument . . . the lead agency shall prepare an EIR, even though it may also be presented with other substantial evidence that the project will not have a significant effect").

[7] *Save the Agoura Cornell Knoll v. City of Agoura Hills*, 46 Cal. App. 5th 665, 676 (2020), reh'g denied (Apr. 10, 2020), review denied (June 24, 2020) (emphasis added).

[8] *Pocket Protectors*, 124 Cal. App. 4th at 927.

[9] *Citizens Assn. for Sensible Dev. of Bishop Area v. Cty. of Inyo*, 172 Cal. App. 3d 151, 158 (1985).

[10] *Friends of "B" St. v. City of Hayward*, 106 Cal. App. 3d 988, 994-95 (1980).

Hotel on October 19, 2015. (*Id.*, No. 13.) Sunset appealed on the grounds that the approval violated both CEQA and local zoning ordinances. (*Id.*, No. 15.) Many stakeholders formally supported Sunset's appeal. (*Id.*, No. 16.) Nevertheless, the City denied the appeal. (*Id.*, No. 18.) Sunset then filed a Verified Petition For Writ of Mandate against the City—also naming Wilcox as a real party in interest—alleging the same challenges raised in its prior appeal to the City. (*Id.*, No. 19.)

The action was thoroughly litigated for 18 months. (*Id.*, No. 21.) In March of 2017, the parties discovered that the City impermissibly analyzed and disclosed an out-of-date version of the Thompson Hotel which not only failed to include the two planned rooftop bars, but even had the building facing the opposite direction. (*Id.*, No. 68.) The City brought a motion to augment the administrative record to include materials purportedly showing the City analyzed the correct version of the project, which was continued to the day the trial was set to begin. (*Id.*, No. 69.) The day before trial, the trial court issued a tentative ruling denying the motion, stating the motion was "intertwined with fair notice," had "significance on the parties' arguments on the merits" and that the "City's failure to tell the public about the design changes…prejudiced [Sunset's] rights under CEQA." (*Id.*, No. 70.) In denying the motion to augment, the Court made factual findings that "significant information" was withheld from the public because the City "failed to follow standard procedures." (*Id.*.) Just three hours after the tentative ruling was issued, Wilcox and Sunset agreed in principle to a settlement and the trial and the hearing on the City's motion were vacated. (*Id.*, No. 28.)

### 2. Sunset, Along With Other Community Members, Opposes The Tommie Hotel

While the Thompson Hotel litigation was pending, the City issued a notice of public comment for the approval of the Tommie Hotel. (*Id.*, No. 71.) As was the case with the Thompson Hotel, Sunset and other community members opposed the Tommie Hotel on the grounds that it would increase noise and traffic, add further

102695218.3

- 6 -

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S MOTION FOR
SUMMARY JUDGMENT OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT

strain on local infrastructure, and negatively impact the overall aesthetic of the neighborhood. (*Id.*, No. 72.) Once again, the City approved the project in spite of those objections. (*Id.*, No. 73.) Sunset then appealed the approval, which was again rejected by the City. (*Id.*, No. 36.)

Thus, on June 9, 2017, Sunset was forced to file another Petition For Writ of Mandate challenging that approval. (*Id.*, No. 37.) In addition, two other similar petitions were filed by other members of the neighborhood setting forth identical challenges as Sunset—including a June 8, 2017 petition filed by Lauren "Elle" Farmer, and a June 9, 2017 petition filed by Mama Wilcox, the owner of another newly built neighboring hotel. (*Id.*, Nos. 38-39.) Tommie settled both the Mama Wilcox action and the Farmer action. (*Id.*, Nos. 40, 42.)

### E.   Relevant Repeatedly Made Efforts To Settle the Thompson Hotel and Tommie Hotel CEQA Actions

Sunset was ready to litigate its objections to Plaintiffs' hotels without ever discussing settlement with Plaintiffs. However, from 2015 to 2018, Relevant made repeated, and unsolicited, efforts to convince Sunset to "consider changing [its] position regarding supporting, or at least not opposing," Plaintiffs' projects. (*Id.*, No. 74.) Sunset either repeatedly ignored or declined those attempts. (*Id.*, No. 22.) In response to Plaintiffs' requests, Sunset's litigation counsel, Robert Silverstein, sent a letter listing 12 terms Sunset would be willing to settle on. (*Id.*) That counter-offer was declined by Plaintiffs. (*Id.*, No. 23.)

Then, in June 2017 with trial quickly approaching, Relevant instructed its outside counsel, Guy Maisnik of Sheppard Mullin, to settle the lawsuits. (*Id.*, No. 24.) Mr. Maisnik immediately reached out to Sunset's counsel, Jayesh Patel, to act as "mediators" to bring their respective clients to reach a deal which "[had] to happen

quickly." [11] (*Id.*, No. 25.)  After Mr. Maisnik's initial efforts were declined, he asked Sunset to settle again one week before trial, this time also asking to settle the Tommie litigation.  (*Id.*, No. 75.)

As discussed above, the parties ultimately resolved the cases after the trial court in the Thompson Hotel litigation issued a tentative order which Mr. Maisnik admitted was "favorable to Sunset." (*Id.*, No. 76.)  On January 8, 2018, after months of back-and-forth on the details of the agreement, the parties signed two settlement agreements resolving both actions.  (*Id.*, Nos. 30-31.)

## F.     The Settlement Agreements and Releases

The parties signed separate agreements settling both the Thompson Hotel and Tommie Hotel lawsuits.  (*Id.*)  The agreements, which were drafted by both parties, include a number of covenants to reduce the hotels' environmental impact, including (for the Thompson Hotel) a reduction in height, setoffs, delivery timeframes, and rooftop operation curfews. (*Id.*, No. 32.)  Both agreements contained mutual releases for any claims relating to, arising out of, or in any way stemming from the underlying litigation, as well as a waiver releasing unknown claims under California Code of Civil Procedure section 1542.  (*Id.*, No. 33.)   Both agreements also contained representations that they were signed under the advice of counsel and not the product of any duress.  (*Id.*, No. 34.)  Sunset also granted Tommie a temporary five year easement and a tieback agreement that allowed it to excavate under Sunset's parcel of land to "assist with the construction of the Tommie Hotel."  (*Id.*, No. 35.) Immediately thereafter, Sunset filed dismissals of both lawsuits and recorded the easement in favor of Plaintiffs.  (*Id.*)  For its part, Relevant paid the entirety of the

---

[11] During meetings between the two, Maisnik believed Mr. Patel's "candor and approach were refreshing and will help move these discussions in the right direction for both parties," that Mr. Patel did not come across as "unyielding, or unwilling to negotiate," and that he and Mr. Patel "got along pretty well" throughout the entire settlement process. ( (Ex. 4 Maisnik), Maisnik, 107.)

- 8 -

$5.5 million settlement amount within just three months.  (*Id.*)

## G.   The Selma Hotel

Days after Relevant paid off the entirety of the settlement amount in the Thompson Hotel and Tommie Hotel lawsuits, Mr. Heyman invited S. Nourmand to lunch as a "thank you," and "to express how glad I am we have resolved our issues . . ." (*Id.*, No. 77.)  S. Nourmand accepted the invitation, and the meeting took place about 10 days later on the roof of the Dream Hotel.  (*Id.*, No. 78.)  The TAC claims that during this meeting, Mr. Heyman asked S. Nourmand why Sunset was "appealing" another of Relevant's projects just one block from the HAC called the Selma Hotel.  (TAC ¶ 113.)  Despite claims that during the meeting S. Nourmand supposedly said, "You know the drill. It's going to make a check go away," Plaintiffs have provided no proof of that statement memorialized in any notes, emails, or any other document.  (*Id.*, ¶ 114.)

Sunset, along with other community members, continued to voice its objections to the Selma Hotel, appealed the City's approval, and eventually filed a CEQA petition challenging the approval.  (SUF, Nos. 48, 50.)  On January 8, 2021, the Court issued an interlocutory writ on Sunset's petition remanding the Selma Hotel to the City because the City improperly piecemealed the Selma Hotel, and the Selma Hotel had a significant impact on air quality.  (*Id.*, No. 54.)

## H.   The Schrader Hotel

In approximately March 2019, the City approved another hotel development project located near the HAC (the "Schrader Hotel") initiated by the development company the Koar Group ("Koar").  (*Id.*, No. 56.)  As with the Thompson Hotel and the Tommie Hotel, Sunset had serious concerns with the project, challenged the City's approval, and met with Koar's principal, Bruce Rothman, to discuss its concerns.  (*Id.*, No. 57.)  Rothman testified that representatives of the parties met at the offices of N&A for about one hour, the meeting was "cordial," and the parties

1   were clearly just trying to "figure out the best path forward." (*Id.*, No. 58.)  Rothman

2   recalled that Sunset was concerned the hotel would try to modify the restrictions

3   imposed by the City regarding service of alcohol on the roof late at night, but that he

4   assured Sunset that the hotel would abide by all City restrictions. (*Id.*, No. 59.)  After

5   the meeting, Sunset withdrew its objections and did not file a CEQA action. (*Id.*)  In

6   April 2018, Relevant announced that it had acquired the Schrader Hotel project

7   (which remains undeveloped to this date). (*Id.*, No. 79.)

8   **III.    LEGAL ARGUMENT**

9       **A.    Legal Standard**

10      Summary judgment is proper when "the pleadings, the discovery and

11  disclosure materials on file, and any affidavits show that there is no genuine issue as

12  to any material fact and that the movant is entitled to judgment as a matter of law."

13  Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary

14  basis on which a reasonable fact finder could find for the nonmoving party, and a

15  dispute is "material" only if it could affect the outcome of the suit under the

16  governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The party

17  moving for summary judgment has the burden of showing the absence of a genuine

18  issue of material fact. *Id.* at 256–57.

19      In response to a properly submitted summary judgment motion, the burden

20  shifts to the opposing party to set forth specific facts showing that there is a genuine

21  issue for trial. *Henderson v. City of Simi Valley,* 305 F.3d 1052, 1055–56 (9th Cir.

22  2002).  The nonmovant's burden of production at this point "is not a light one"—it

23  "must show more than the mere existence of a scintilla of evidence" or "some

24  'metaphysical doubt' as to the material facts at issue." *Oracle Sec. Litig.*, 627 F.3d

25  at 387 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

26  (1986)).  The nonmoving party "may not rely on denials in the pleadings but must

27  produce specific evidence, through affidavits or admissible discovery material, to

28

102695218.3

- 10 -

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S MOTION FOR
SUMMARY JUDGMENT OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT

show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

### B.   **Plaintiffs Are Entitled to Judgment as a Matter of Law Because the Supposed RICO Predicate Acts Are All Based on Litigation Activity**

#### 1.   RICO Categorically Precludes Recasting Litigation Activity as Hobbs Act Extortion

Plaintiffs' RICO claims fail for the simple reason that every one of the supposed predicate acts at issue occurred in litigation.  An overwhelming body of precedent, which includes the holdings of at least six federal courts of appeals, confirms that RICO liability cannot be based on a defendant's conduct in threatening, filing, or maintaining a lawsuit.[12]  That remains true regardless of whether the litigation is alleged or proven to be "sham."  For instance, in rejecting RICO claims in *Deck*, the Tenth Circuit held that filing even "groundless" or "meritless litigation **is not extortion** under § 1951." *Deck*, 349 F.3d at 1258 (emphasis added).  The Sixth Circuit similarly held in *Vemco* that even a "fraudulent" "threat of litigation . . . does not constitute extortion" for the purposes of RICO.  23 F.3d at 134.  And the Eighth Circuit held in *I.S. Joseph Co.* that while threats of sham litigation "may be tortious under state law," they are not a RICO predicate.  751 F.2d at 267.

The Ninth Circuit recently recognized—and approved—that extensive authority.  In the course of confirming that sham litigation is not immune from **criminal** liability where the Hobbs Act's elements are otherwise satisfied, the court

---

[12] *See, e.g.*, *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086 (11th Cir. 2004); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) ("A threat of litigation if a party fails to fulfill even a fraudulent contract . . . does not constitute extortion."); *I.S. Joseph*, 751 F.2d at 267 (groundless threat to sue, made in bad faith, "may be tortious under state law, but we decline to expand the federal extortion statute to make it a crime"); *Dias v. Bogins*, 134 F.3d 361 (1st Cir. 1998) (similar); *Edelson PC v. Bandas L. Firm PC*, No. 16 C 11057, 2018 WL 723287, at *5 (N.D. Ill. Feb. 6, 2018); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014).

of appeals cited with approval many of the cases "conclud[ing] that RICO does not authorize suits by private parties . . . based on litigation activities." *United States v. Koziol*, 993 F.3d 1160, 1174 (9th Cir. 2021). The court further acknowledged that "[t]here are significant differences between" criminal Hobbs Act claims and "civil RICO claims," and, based on those "significant differences," observed that civil RICO cases "are distinguishable" from the criminal Hobbs Act claims in which litigation conduct can be actionable. *Id.* at 1173-74.

The Ninth Circuit's conclusions on that issue bind this Court. *See, e.g., Barapind v. Enomoto*, 400 F.3d 744, 751 (9th Cir. 2005) (en banc). Moreover, they are exceedingly well-reasoned. As many courts have acknowledged, the appropriate civil remedy for alleged misconduct in litigation is traditional state tort law, not a treble-damages RICO suit. *See, e.g., Grauberger v. St. Francis Hosp.*, 169 F. Supp. 2d 1172, 1178 (N.D. Cal. 2001) ("[A]llegations of improper legal filings, which are inevitably ubiquitous in a litigious society, are best addressed through state law tort remedies rather than resort to criminal statutes and RICO claims[.]"). Indeed, as the Second Circuit has explained, "[i]f litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action, which would inundate the federal courts with procedurally complex RICO pleadings." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (quoted in *Koziol*, 993 F.3d at 1174). The Tenth Circuit has elaborated on the point, recognizing that permitting civil RICO claims based on "abusive litigation . . . would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim." *Deck*, 349 F.3d at 1258. And the Ninth Circuit has reiterated the point, quoting *Kim* (and approvingly citing *Deck*, along with Fifth and Eighth Circuit precedents) to explain that "permitting [civil] RICO suits based on prior litigation activities would 'engender wasteful satellite litigation,' 'erode the principles undergirding the doctrines of res judicata and collateral estoppel,' and 'chill litigants and lawyers and frustrate the well-

established public policy goal of maintaining open access to the courts' because 'pleading[s] and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability.'" *Koziol*, 993 F.3d at 1174 (quoting *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)); *see also, e.g.*, *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 346 (2016) (noting that RICO's "private right of action raises issues beyond the mere consideration whether underlying primary conduct should be allowed or not, entailing, for example, a decision to permit enforcement without the check imposed by prosecutorial discretion"). The Ninth Circuit's policy concerns are at their zenith in a case such as this one, where Plaintiffs have not even attempted to demonstrate that the litigation activities in question lacked merit.

Application of these principles is straightforward. The only supposed predicate acts Plaintiffs assert are Sunset's acts in threatening and instituting litigation. Even assuming the litigation at issue was "sham"—which it was not (*see infra* at section C(2))—the conduct at issue cannot give rise to RICO liability. Plaintiffs' claims therefore fail as a matter of law.

### 2. California's Extortion Laws Categorically Exclude Litigation Activity

Plaintiffs' RICO claims are also predicated on supposed violations of California criminal extortion laws. (TAC ¶¶ 129, 139, 143, 149, 157, 161, 167, 175, 178). But those alleged violations are premised entirely on communications made in connection with CEQA lawsuits and appeals. Every one of those communications is protected by California's litigation privilege and thus categorically excluded from California's extortion law.

The litigation privilege precludes liability arising from communications made in connection with any judicial proceeding. Cal. Civ. Code § 47(b). The privilege covers not only statements made during a proceeding, but also those made before or after one. *See Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007); *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006). The privilege is

absolute: it is not qualified and contains no sham exception.  *Silberg v. Anderson*, 50 Cal. 3d, 205, 218 (1990). It "therefore protects even extortionate threats," including "extortionate demand letters sent in connection with legal action, whether judicial or administrative," *Nelson v. Kremer*, No. A144130, 2016 WL 1749769, at *6 (Cal. Ct. App. Apr. 29, 2016) (citing *Malin v. Singer*, 159 Cal. App. 4th 1283, 1294, 1300, 1302 (2013)), and bars liability in "any action except for one for malicious prosecution." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1132 (1990); *see, e.g., People ex rel. Gallegos v. Pacific Lumber Co.*, 158 Cal. App. 4th 950, 955-956, 958-959 (2008) (privilege barred a UCL claim intentional misrepresentations made in administrative CEQA proceedings); *People v. Toledano*, 249 Cal. Rptr. 3d 100, 110–11, 114 (Ct. App. 2019) (privilege barring criminal prosecutions for extortion arising out of alleged extortionate litigation threats). Accordingly, these communications are not extortion under California law. Plaintiffs' RICO claims predicated on supposed state-law extortion thus fail.

## C.   S Defendants are Immune to Plaintiffs Claims Under the *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine and the First Amendment provide that a party cannot be held liable for petitioning a government body unless the petitioning activity is shown to have been a "sham." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).  It is undisputed that the conduct for which Plaintiffs seek to hold S Defendants liable constituted petitioning activity under *Noerr-Pennington*.   Plaintiffs cannot make the showing required to invoke the "sham" exception.

### 1.   Plaintiffs Cannot Invoke *USS-POSCO* Because They Cannot Demonstrate That S Defendants Maintained a Policy of Reflexively Filing Lawsuits Without Regard to Their Merit

At the Rule 12(b)(6) stage, the Court determined that Plaintiffs had adequately alleged that S Defendants maintain a policy of "initiat[ing] or threaten[ing] to initiate

- 14 -

reflexive sham environmental lawsuits for the sole purpose of delaying the development of competing properties." (Dkt. 39 (citing *USS-POSCO*, 31 F.3d at 811.)) Plaintiffs have utterly failed to support those allegations.

*First*, there is zero evidence that Sunset and Relevant, or any of the Relevant Entities, are "market rivals." The evidence conclusively demonstrates the opposite. Sunset owns five parcels that are being used as commercial *office* space. (SUF., No. 80.) It is undisputed that those parcels do not compete with hotels. (*Id.*, (conceding that Plaintiffs' hotels compete with other "hotels").)

*Second*, there is zero evidence that S Defendants maintained a policy of reflexively filing CEQA lawsuits. Again, the undisputed evidence is to the contrary. Under CEQA, Sunset had standing to challenge each of Relevant's *nine* developments in Hollywood and *seven* developments in downtown Los Angeles—in addition to the countless other developments in and around Los Angeles during the past 30 years. *Citizens Assn. for Sensible Dev.*, 172 Cal. App. 3d at 159 (extending CEQA standing to "beyond the city limits" of the challenged project). Yet it is undisputed that, in its 30-year existence, Sunset has filed only *four* CEQA actions: three against the Relevant Entities, and a single appeal concerning the Schrader Hotel.[13] (SUF, No. 2.) Plaintiffs' effort to invoke the *USS-POSCO* exception thus fails, not only because the raw number of actions Sunset has filed is at or below the minimum necessary for the exception to apply,[14] but also—more to the point—

---

[13] At the pleading stage, this Court cited to *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.,* 806 F.3d 162 (3d Cir. 2015) as persuasive and said *USS-POSCO* applies because there are allegations of four lawsuits. *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 157 (3d Cir. 2017) (finding *Hanover* "easily distinguishable"). The Third Circuit has later distinguished that *Hanover* does not apply when some of the lawsuits concern a non-party. *Id.*

[14] *Wonderful Real Estate Development LLC v. Laborers International Union of North America Local 220*, 2020 WL 91998 at *10 (E.D. Cal., Jan. 8, 2020) (holding that "five or six lawsuits is on the lower end of what can constitute a pattern or series of harassing litigation") (collecting cases); *Amarel v. Connell*, 102 F.3d 1494, 1519 (9th

- 15 -

because the suits were by definition not reflexive.  Indeed, the record is undisputed that other parties unrelated to Sunset brought materially identical claims.

*Third*, there is also no evidence that the suits were brought without regard for their merits.  That question is often resolved by win-loss percentage.  *See, e.g., USS-POSCO*, 31 F.3d at 811 (finding that that "a batting average exceeding .500 cannot support" a finding of sham litigation, and granting summary judgment on the success rate of 15 of 29 lawsuits); *Kaiser Found. Health Plan, Inc. v. Abbott Lab'ys, Inc.*, 552 F.3d 1033, 1046 (9th Cir. 2009) (affirming a grant of summary judgment where a defendant "won seven of the seventeen suits" and each of the other ten cases "had a plausible argument on which it could have prevailed").  Sunset is batting 1.000.  In the Thompson Hotel suit, the day before trial, Sunset won a key ruling indicating Sunset was going to prevail on the merits.  (SUF, No. 70.)  Wilcox and Tommie agreed to settle just hours after the ruling was released.  (*Id.*, Nos. 27-28.)  *See Andersen v. Atl. Recording Corp.*, 2009 WL 3806449, at *7 (D. Or. Nov. 12, 2009) (noting settlements as evidence of merit); *Catch Curve, Inc. v. Venali, Inc.*, 2008 WL 11334024, at *5 (C.D. Cal. Nov. 3, 2008) (same).  Moreover, while Sunset settled with Tommie, it is undisputed that **other litigants unrelated to Sunset won injunctions against Tommie** on arguments virtually identical to Sunset's petition, and Tommie ultimately settled three CEQA lawsuits with seven different litigants in total.  (SUF, No. 41.)  Similarly, in the Selma suit, Sunset won an interlocutory writ at trial remanding the Selma Hotel to the City because of impermissible "piecemealing" and because the Selma Hotel would cause significant impacts on air quality.  (*Id.*, No. 54.)

---

Cir. 1996) (two lawsuits cannot be "series"); *ERBE Elektromedizin GMBH v. Canady Technology, LLC*, 629 F.3d 1278, 1291 (Fed. Cir. 2010) (finding three lawsuits not to be a "series" under *USS-POSCO*); *Polaris Industries, Inc. v. Arctic Cat, Inc.*, 2017 WL 1180426, at *5-7 (D. Minn. 2017) (same); *but see, Hanover*, 806 F.3d 162 (3d Cir. 2015) (four lawsuits can sometimes, but not always, constitute a "series").

The undisputed record thus confirms that (i) Plaintiffs and S Defendants were not competitors, (ii) Defendants did not have a policy of reflexively filing lawsuits, and (iii) the lawsuits at issue here were not filed without "willy-nilly without regard to success." *USS–POSCO*, 31 F.3d at 811.  Plaintiffs' effort to circumvent *Noerr-Pennington* and the First Amendment by invoking *USS-POSCO* therefore fails.

        2.      Plaintiffs Cannot Establish That S Defendants' CEQA Suits, Which Were Overwhelmingly Successful, Constituted Sham Litigation

To satisfy the *Professional Real Estate* (*PRE*) exception, the lawsuit must be *both* (1) "objectively baseless in the sense that **no reasonable litigant could realistically expect success** on the merits"; **and** (2) subjectively brought in bad faith, as "an attempt to interfere directly with the business relationships of a competitor" regardless of the merits.  *Professional Real Estate Investors, Inc. v. Columbia Pictures Indust., Inc.*, 508 U.S. 49, 60–61 (1993) (emphasis added).  To overcome *Noerr-Pennington* and the First Amendment, a plaintiff must establish both prongs. *Id.*  Plaintiffs cannot establish either.

        a.      S Defendants Are Entitled To Judgment Because Their CEQA Lawsuits Were Not Objectively Baseless

Plaintiffs cannot possibly establish objective baselessness.  Petitioning activity can be deemed objectively baseless only if the Plaintiff demonstrates that "no reasonable litigant could realistically [have] expect[ed] to secure favorable relief" **and** that there was no "probable cause to institute legal proceedings." *PRE*, 508 U.S. at 62.  This is an exceedingly high standard, which essentially requires that the original suit have been sanctionable.  "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* at 61.  A defendant does not need to have prevailed on the original action's merits to defeat the "sham" exception at summary judgment. *Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*, 207 F. Supp. 2d 221, 224 (S.D.N.Y. 2002) (granting summary judgment under *Noerr-Pennington* because

102695218.3

- 17 -

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT

four of six lawsuits survived motions summary judgment, and two were ongoing).

Plaintiffs cannot establish that **any**—much less **all**—of Sunset's petitioning activity was objectively baseless.  As explained, not only did Sunset have a good-faith basis for the Thompson Hotel and Tommie Hotel litigations, it **would have prevailed** in that litigation had the litigation proceeded.  (SUF, No. 70.)  And Sunset **did prevail** on key issues in the Selma lawsuit, in which it obtained a remand.  (*Id.*, No. 54.)  Those facts alone eliminate any genuine factual dispute over Plaintiffs' spurious claim that S Defendants' petitioning activity was not protected.

The specifics of each case further confirm the point.  In the Thompson Hotel litigation, Sunset supported its argument that the City unlawfully approved the project with a MND despite contrary expert analysis on noise (Acentech) and traffic (CalTrans).[15]  (*Id.*, No. 70.)  Sunset's arguments about due process and the City's failure to analyze revised plans were vindicated by the August 24, 2017 tentative ruling from the trial court.  (*Id.*)  And the exact argument Sunset advanced about violations of the Hollywood Redevelopment Plan was recently endorsed by a superior court ruling that found "the [City of Los Angeles'] practice of granting density bonuses…without complying with the Hollywood Redevelopment Plan…is

---

[15] The standard to set aside an approval for an MND is low. All that needs to be shown is that there is a "fair argument" that substantial evidence exists that the project "may have" significant impacts on the environment, something that can be established with just lay testimony.  Pub. Res. Code §21151; Guidelines §§ 15002(f)(1) & (2), 15063; *Keep Our Mountains Quiet v. Cty. of Santa Clara* (2015) 236 Cal.App.4th 714.  A study cited by Plantiffs in the TAC found that CEQA challengers prevail 50% in CEQA actions, and 58% of petitions prevail when the challenge involved a negative declaration like in this case.  Jennifer L. Hernandez, et al., Holland & Knight LLP, In the Name of Environment: How Litigation Abuse under the California Environmental Quality Act Undermines California's Environmental, Social, Equity and Economic Priorities – and Proposed Reforms to Protect the Environment from CEQA Litigation Abuse, (Jul. 15, 2015), available at https://issuu.com/hollandknight/docs/ceqa_litigation_abuseissuu.  This alone should create probable cause to challenge the projects, all of which were approved by MND.

unlawful." (*Id*.)   Those meritorious arguments by themselves demonstrate that Sunset's claims were not objectively baseless.  *See, e.g.*,  *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 565 (4th Cir. 1990) (holding success on one of four claims indicates suit was "hardly a sham"), cert. denied, 499 U.S. 947 (1991); see also, *DriveCam, Inc. v. SmartDrive Sys., Inc*., No. 11-CV-0997-H (RBB), 2012 WL 13175930, at *3 (S.D. Cal. Mar. 26, 2012) (similar).

Plaintiffs have attempted to support their assertion that the Tommie Hotel litigation was "sham" by claiming that Sunset failed to cite any "evidence" of environmental impact.  That claim is itself objectively baseless.  Sunset's petition was supported with expert testimony on noise, air quality, and transportation. (SUF, No. 37.)   The CEQA court cited **that very expert evidence** when it issued an injunction against the Tommie Hotel in the Farmer litigation, which Plaintiffs eventually settled. (*Id.*, No. 41.)  In Selma, the Court determined that Sunset's single cause of action was meritorious. (*Id.*, No. 54.)  Not only did the Court find Sunset's citation to expert testimony on air quality persuasive, but it also ruled in favor of Sunset on its piecemealing argument, finding that the City's improper piecemealing had potential prejudicial consequences…that may understand the entire project's environmental impact." (*Id.*)  Plaintiffs' effort to deem that piecemealing argument baseless therefore fails as a matter of law.

In sum, Sunset won key victories in each litigation, had community support for each litigation, and advanced claims supported by a fact and law in each litigation. Many of Sunset's claims were successful, which **by definition** means they were not objectively baseless.  Plaintiffs have thus failed to create a genuine dispute of material fact on *Noerr-Pennington*'s objective prong.

> b. Plaintiffs Have Failed to Create a Genuine Dispute of Material Fact Regarding Sunset's Subjective Motivation

Under the second prong of *PRE*, Plaintiffs must prove that Sunset's CEQA suits constituted "an attempt to interfere directly with the business relationships of a

competitor, through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *PRE*, 508 U.S. at 61.

Here, no reasonable jury could find that Sunset did not genuinely want the relief it was seeking in the litigations: to set aside the City's approvals of the hotels. The TAC explicitly admits this fact, which should be the end of the inquiry. (TAC, ¶ 73 ("Sunset sought to exploit CEQA's low threshold standard of review **to invalidate this well-studied project**.") (emphasis added).) The remainder of the record confirms the point. Sunset was ready to take each of the lawsuits all the way to trial (and did so in Selma). Sunset consistently opposed the projects through lobbying efforts, community outreach, and city appeals without ever affirmatively approaching Relevant to settle. Even when Sunset struggled to pay its legal fees, it was solely focused on obtaining relief in the litigation. That is why Sunset was ready to go to trial in each lawsuit, whereas it was Plaintiffs who consistently avoided the "outcome" of the process by asking Sunset to settle.

### D.   Plaintiffs Cannot Establish That The Challenged Litigation Was "Wrongful" Under The Hobbs Act

Even assuming that Sunset's petitioning activity is not immunized by *Noerr-Pennington*, Plaintiffs cannot establish that Sunset induced, or attempted to induce, them to part with property through a "wrongful" threat, as required under the Hobbs Act. *See* Ninth Cir. Model Crim. Jury Inst. No. 8.142. It is not enough under the Hobbs Act for Plaintiffs to show that Sunset filed lawsuits that caused Plaintiffs to fear losing money or with the hope of obtaining a settlement. Indeed, if that were the case, virtually every lawsuit would be a federal crime. Instead, plaintiffs must establish that the lawsuits were "wrongful." *United States v. Villalobos*, 748 F.3d 953, 956 (9th Cir. 2014) (holding as erroneous Hobbs Act jury instructions that indicated "all threats to testify or provide information are 'wrongful' under the Hobbs Act if made with the intent to induce or take advantage of fear"); *Koziol*, 993 F.3d

1160, 1170 (9th Cir. 2021) ("[T]hreats of sham litigation, which are made to obtain property to which the defendant knows he has no lawful claim, are 'wrongful' under the Hobbs Act").

As discussed above, far from being frivolous, each of Sunset's CEQA lawsuits was potentially meritorious and either achieved a favorable substantive outcome (in the case of the Selma Hotel) or was settled after achieving favorable procedural outcomes that likely portended favorable substantive outcomes (in the cases of the Thompson Hotel and Tommie Hotel).

### E.   Plaintiffs Fail to Establish Any Triable Issue of Fact to Show that S Defendants Extorted or Attempted to Extort the Schrader Hotel

With respect to S Defendants' alleged extortion of the Schrader Hotel. Plaintiffs cannot show an "attempt to instill fear," and therefore cannot establish a claim for extortion. *Carbo v. United States*, 314 F.2d 718, 741 (9th Cir. 1963). The undisputed evidence shows that Sunset filed only objections to the City's approval of the Schrader Hotel; Sunset did not actually file a CEQA lawsuit related to the development. (SUF, No. 59.) **Nor was Sunset the only party that filed objections to the Schrader Hotel.** (*Id.*, No. 81.) Sunset and the representatives of the Schrader Hotel met to discuss the objections, and the Schrader Hotel explained that they would not seek to change city requirements for its rooftop bar, after which Sunset agreed to withdraw its objections. (*Id.*, No. 59.) A CEQA action was not filed or threatened, no cash payment was made (or referenced), and no modifications were made to the hotel—nor was there even a discussion that such actions would be taken or required. Tellingly, the hotel's representative, Mr. Rothman, testified that he did not feel Sunset was pressuring him in any way. (*Id.*)

Plaintiffs nevertheless insist that Sunset attempted to extort the Schrader Hotel and apparently only backed off when the hotel indicated that it was threat-proof. Under federal law, such a claim requires evidence that the defendant

intentionally took a substantial step toward violating the statute. *United States v. Nelson*, 66 F.3d 1036, 1042 (9th Cir. 1995). "To constitute a substantial step, the actions must go beyond mere preparation, and must corroborate strongly the firmness of the defendant's criminal intent . . . [t]he conduct must be necessary to the consummation of the crime and of such nature that a reasonable observer, viewing it in context, could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute." *Id.* (citations and quotations omitted). "A substantial step is an 'appreciable fragment' of a crime, an action of 'such substantiality that, unless frustrated, the crime would have occurred." *Id.*

As Mr. Rothman's testimony indicates, all Sunset did was file objections to the Schrader Hotel (among other objectors) at the city level and then have a cordial meeting with the hotel's owners, during which the parties were undisputedly just trying to "figure out the best path forward." (SUF, No. 58.) Mr. Rothman recalled that Sunset was concerned the Schrader Hotel would try to modify the restrictions imposed by the City regarding service of alcohol on the roof late at night. (*Id.*, No. 59.) Sunset took no steps that would be an "appreciable fragment" of the crime, like suggesting or explicitly requesting concessions or payments in exchange for withdrawing Sunset's challenges (akin to what Relevant has alleged Sunset did as to Relevant). Accordingly, there is no basis for a jury finding that the Schrader Hotel conduct constitutes a RICO predicate or evidence of the alleged racketeering pattern.

### F.  Plaintiffs Fail To Create A Genuine Dispute As To Their Claims Of A Conspiracy Between S Defendants and Maddren

The Court should also find as a matter of law there is no conspiracy between S Defendants and Maddren because it is based on only speculation. Both S Defendants and Maddren testified without refutation they do not know each other and have never spoken to each other, even today. (SUF, No. 52.) Maddren just happened to also object to the Selma Hotel, although he raised different claims, and

1  unlike Sunset, had his petition denied by the Court.  (*Id.*, No. 55.)  While there is

2  evidence that Maddren and Mr. Silverstein communicated at times during the course

3  of the litigation, that is commonplace amongst aligned parties in a litigation and

4  cannot, standing alone, be the basis for a conspiracy claim.

5  **G.    The Thompson and Tommie Settlement Releases Preclude Plaintiffs**

6  **from Raising Any Claims Related to Those Developments,**

7  **Including Civil RICO Claims**

8  The Thompson and Tommie settlement agreements both contain broad release

9  language that preclude "any and all claims, demands, liens, actions, suits, causes of

10  action . . . and liabilities of every kind or nature, in law, equity or otherwise, whether

11  now known or unknown, suspected, or unsuspected, and whether concealed or

12  hidden, relating to, arising out of, or in any way stemming from [the referenced

13  Action] or any claim or cause of action alleged in [the referenced Action]."  (SUF,

14  No. 33.)  Furthermore, in not only the release provisions themselves but also in

15  provisions titled "Waiver of Cal. Civ. Code sec. 1542," the settlement agreements

16  clearly release Thompson Hotel- and Tommie Hotel-related claims that are based on

17  facts that **unknown** to the parties at the time of those settlements.  (*Id.*, ("The Parties

18  acknowledge and agree that by reason of this Agreement, and the releases contained

19  in this Section 6 above, they are assuming the risk of any such unknown and

20  unsuspected facts and claims").)

21  The effect of the plain language from both provisions is that Plaintiffs are

22  barred from asserting <u>any</u> claims related to the Thompson and Tommie lawsuits at

23  all, whether in the form of standalone actions, predicates in a RICO action, or as

24  evidence in a RICO action.  *See Howard v. America Online Inc.*, 208 F.3d 741,  (9th

25  Cir. 2000) (holding that court-approved settlement of prior class action precluded

26  RICO action based on events encompassed by that settlement by members of that

27  class).  In their September 30, 2019 Opposition to Sunset's Motion to Dismiss the

28

- 23 -

First Amended Complaint (Dkt. 26), which raised this argument, Plaintiffs argued that "because the racketeering activity alleged was is a "*pattern* of *reflexively* initiating and pursuing sham litigation," and because key factual predicates of Plaintiffs' RICO claim had not yet occurred when these settlements were entered into, Plaintiffs' RICO claims were not released. (Dkt. 26 at 11:15-19 (internal quotations and citations omitted)). This argument, however, misses the mark. Plaintiffs could have raised racketeering allegations against Sunset before the settlements were executed, given their allegation that the settlements were the product of coercion. *Howard*, 208 F.3d at 748 ("there is no support for Plaintiffs' contention that the *Hagen* class could not claim RICO violations because the requisite pattern had not yet developed. Plaintiffs are part of the *Hagen* class and asserted identical billing claims that occurred during the same time period . . . The *Hagen* class could have claimed a RICO violation based on billing fraud").

Plaintiffs also argued that the Court must not allow the Thompson Hotel and Tommie Hotel settlements to "prevent[] a RICO claim based on a continuing pattern of sham litigation" occurred after those settlements. Sunset's argument, however, is not that the settlements forever bar all claims of racketeering by Plaintiffs; it is that the Thompson Hotel and Tommie Hotel lawsuits themselves cannot form the basis or evidence of any such claims. *Howard*, 208 F.3d at 747 (noting that the settlement "unequivocally bars claims that arise out of or are related to the matters referred to in the underlying complaint") (citing *Pedrina v. Chun*, 97 F.3d 1296, 1301 (9th Cir. 1996) (finding that res judicata barred adjudicated events from being relitigated as racketeering predicates. Nor have plaintiffs ever, either here or in any state court proceedings, argued that the settlements should be set aside in their entirety. Accordingly, those lawsuits must play no role here.

## H.  <u>Relevant Lacks Standing</u>

Relevant also lacks standing to sue under RICO because it has not suffered any

102695218.3

- 24 -

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT

harm that is distinct from its subsidiaries, Wilcox, Tommie, and Selma.   In civil RICO cases, a "plaintiff has no standing to assert a claim for injuries inflicted on a different legal entity that affect him only indirectly." *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 640–41 (9th Cir. 1988) (parentheticals omitted).   As a result, shareholders and limited partners typically lack standing to assert RICO claims where their harm is derivative of their corporation or partnership's harm. *Desoto v. Condon*, 371 F. App'x 822, 824 (9th Cir. 2010).   "Such plaintiffs can establish standing only by showing an injury "distinct from that to other shareholders" or a special duty between the shareholder and the defendant. *Id.*; *Uthe Tech. Corp. v. Aetrium Inc.*, 739 F. App'x 903, 905 (9th Cir. 2018).

Here, Relevant is not even a direct shareholder in Wilcox, Tommie, and Selma, and is, at a minimum, five shell corporations removed from each.   (SUF, Nos. 5-7.) Relevant has also admitted in discovery that it did not suffer any harm that is distinct from the entities.   (*Id.*, No. 60.)   When the entities were asked to identify their respective harms, each entity (including Relevant) provided the same rote answer. (*Id.*)   As a result, it is undisputed that Relevant did not suffer a distinct legal harm, and thus has no standing and summary judgment is warranted.

## IV.   **CONCLUSION**

For the foregoing reasons, S Defendants respectfully request that the Court grant its Motion for Summary Judgment.

Dated:  May 9, 2022          **NORTON ROSE FULBRIGHT US LLP**

By */s/ Christopher Pelham*
     CHRISTOPHER PELHAM
     Attorneys for Defendants
     THE SUNSET LANDMARK INVESTMENT,
     LLC, and STEPHEN "SAEED" NOURMAND