Patrick M. Maloney – CSBN 197844
Gregory M. Smith – CSBN 259971
Elizabeth T. Schaus– CSBN 272258
**THE MALONEY FIRM, APC**
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
T: 310-540-1505 | F: 310-540-1507
E: pmaloney@maloneyfirm.com
E: gsmith@maloneyfirm.com
E: eschaus@maloneyfirm.com

Attorneys for Defendant, NOURMAND & ASSOCIATES

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, | Case No.:   2:19-cv-05019-ODW (KSx)<br>Judge:      Hon. Otis D. Wright II<br>Dept.:      Courtroom 5D, 5th Floor<br>Filed:      June 10, 2019 |
| Plaintiffs, | **DEFENDANT NOURMAND & ASSOCIATES' OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, | Date    June 13, 2022<br>Time    1:30 p.m.<br>Dept.   Courtroom 5D |
| Defendants. | |

*(Vertical left margin text:)* THE MALONEY FIRM, APC — 2381 ROSECRANS AVENUE, SUITE 405 — EL SEGUNDO, CALIFORNIA 90245 — T: (310) 540-1505 | F: (310) 540-1507

00194700

1

**TABLE OF CONTENTS AND AUTHORITIES**

2

**I.       INTRODUCTION** ....................................................................1

3

**II.      ADDITIONAL MATERIAL FACTS** ...............................................3

      A.     The Settlement Agreements .........................................3

4

      B.     Plaintiffs' Allegations Reflect That Any Involvement of N&A

5

             Employees In The Enterprise Was Solely The Product of The

6

             Direction And Control Of Saeed Nourmand On Behalf Of Sunset

7

             Landmark .................................................................5

8

**III.     LEGAL ARGUMENT** ..................................................................6

      A.     Legal Standard ..........................................................6

9

      B.     Plaintiffs Must *First* Prove Extortion for the Court to Determine the

10

             Enforceability of the Settlement Agreements ..........................6

      C.     Plaintiffs Have Failed to Prove Extortion, Which is a Condition

11

             Precedent to a Judicial Determination that the Releases in the

12

             Settlement Agreements are Unenforceable ............................8

      D.     Plaintiffs Have Additionally Failed to Show that the Settlement

13

             Agreements Were Unenforceable, Under Either Federal and

14

             California Law ..........................................................11

          1.     *Plaintiffs Ratified the Settlement Agreements By Retaining the*

15

                *Valuable Consideration They Received, and Have Not and Now*

16

                *Cannot Move to Rescind the Settlement Agreements* ...................11

          2.     *Plaintiffs Allege in the TAC that Defendants' Extortion was*

17

                *Intrinsic to the Settlement Agreements, and that They Believed*

18

                *They Were Being Extorted Before Signing the*

                *Settlement Agreements thereby Knowingly Releasing*

19

                *their Civil RICO Claims* ...............................................12

20

      E.     Plaintiffs' Contradictory Positions Regarding N&A Defeats Their

             Argument that N&A Lacks Standing to Enforce the Settlement

21

             Agreements ............................................................13

22

**IV.     CONCLUSION** ......................................................................17

23

24

25

26

27

28

**DEFENDANT NOURMAND & ASSOCIATES' OPPOSITION TO PLAINTIFFS'
PARTIAL MOTION FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# <u>TABLE OF CONTENTS AND AUTHORITIES</u>

**Cases**

*Aikins v. Tosco Ref. Co.,*
 No. C-98-00755-CRB, 1999 WL 179686, at *4 (N.D. Cal. Mar. 26, 1999)............11

*Bhakta v. Bhakta,*
 2022 WL 301522 .................................................................................................7

*Boyle v. United States,*
 556 U.S. 938, 945-46 (2009) ..............................................................................8

*Coca–Cola Co. v. Omni Pac. Co.,*
 1998 U.S. Dist. LEXIS 23277, at *24 (N.D.Cal. Dec. 9, 1998)..............................9

*Dice v. Akron, Canton & Youngstown Railroad,*
 342 U.S. 359, 361, 72 S.Ct. 312 L.Ed. 398 (1952) .............................................11

*H.J., Inc. v. Nw. Bell Tel. Co.,*
 492 U.S. 229 (1989).............................................................................................8

*Hardwick v. Wilcox,*
 11 Cal.App.5th 975, 217 Cal. Rptr. 3d 883 (Cal. Ct. App. 2017)........................7

*Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.,*
 863 F.3d 1178 (9th Cir. 2017) ...........................................................................10

*Jones v. Taber,*
 648 F.2d 1201 (9th Cir.1981) .............................................................................11

*Kallen v. Delug,*
 157 Cal.App.3d 940 (1984) ..................................................................................7

*Kottle v. Nw. Kidney Ctrs.,*
 146 F.3d 1056 (9th Cir. 1998) ...........................................................................10

*LA Open Door Presbyterian Church v. Evangelical Christian Credit Union,*
 2016 WL 4987116 (Cal. Ct. App. Sept. 19, 2016 (unpublished)...........................7

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,*
 431 F.3d 353 (9th Cir. 2005) ...............................................................................8

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00194700

ii

1

## <u>TABLE OF CONTENTS AND AUTHORITIES</u>

2

*Marani v. Cramer*,
3     2021 WL 254308 (N.D. Cal. Jan. 26, 2021)...............................................................6

4

*Mardan Corp. v. C.G.C. Music, Ltd.*,
5     804 F.2d 1454 (9th Cir.1986) ..............................................................11

6

*Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*,
7     116 F. Supp. 3d 1010 (N.D. Cal. 2015).............................................6, 7, 12

8

*Murphy v. DirecTV, Inc.*,
9     724 F.3d 1218 (9th Cir. 2013) ..............................................................16

10

*New West, L.P. v. City of Joliet*,
11     491 F.3d 717 (7th Cir. 2007) ..............................................................10

12

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
13     508 U.S. 49 S. Ct. 1920 (1993).............................................................10

14

*Reves v. Ernst & Young*,
15     507 U.S. 170 (1993)..............................................................8

16

*Rosenthal v. Great Western Fin. Securities Corp.*
17     (1996) 14 Cal. 4th 394, 41)..............................................................12

18

*Salmeron v. United States*,
19     724 F.2d 1357 (9th Cir.1983) ..............................................................11

20

*Scott v. Ross*,
21     140 F.3d 1275 (9th Cir.1998) ..............................................................16

22

*So. Cal. Gas Co. v. City of Santa Ana*,
23     336 R.3d 885 (9th Cir. 2003).............................................................6

24

*Sosa v. DIRECTV, Inc.*,
25     437 F.3d 923 (9th Cir. 2006)]..............................................................10

26

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
27     546 F.3d 991 (9th Cir. 2008) ..............................................................10

28

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00194700

iii

**DEFENDANT NOURMAND & ASSOCIATES' OPPOSITION TO PLAINTIFFS'**
**PARTIAL MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS AND AUTHORITIES</u>

*United States v. Bonds,*
  608 F.3d 495 (9th Cir.2010) .................................................................16

*United States v. Koziol,*
  993 F.3d 1160 (9th Cir. 2021) ...........................................................9, 10

*United States v. Turkette,*
  452 U.S. 576 (1981)................................................................................8

*Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.,*
  50 Cal. 4th 913 (2010).........................................................................12

*Williams v. Phillips Petroleum Co.,*
  23 F.3d 930 (5th Cir. 1994) .................................................................11

*Wonderful Real Est. Dev. LLC v. Laborers Int'l Union of N. Am. Loc.*
  *220,* 2020 WL 91998, at *10 (E.D. Cal. Jan. 8, 2020) ...........................9

**Statutes**
18 U.S.C. § 1962........................................................................................8

18 U.S.C. § 1961(5) ...................................................................................8

Cal. Civ. Code § 2295...............................................................................16

Cal. Civ. Code § 1542 ............................................................................5, 7

Fed. R. of Civ. Proc. 56 ..............................................................................6

**Other Authorities**
Restatement (Third) Of Agency § 1.01 .....................................................17

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00194700

**DEFENDANT NOURMAND & ASSOCIATES' OPPOSITION TO PLAINTIFFS'**
**PARTIAL MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Defendant Nourmand & Associates ("N&A") submits the following Opposition to Plaintiffs' Motion for Partial Summary Judgment.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs' motion is premature and must be denied because releases may be voided only *if* they are found to be the product of illegal conduct. Plaintiffs' motion fails to sufficiently demonstrate—let alone establish as a matter of law—that they were the victim of either RICO or extortion.

Plaintiffs' own case authority demonstrates that releases may be voided only *if* they are found to be the product of illegal conduct. However, Plaintiffs' twelve-page memorandum does not set out the essential elements Plaintiffs must establish to provide either RICO or extortion.  Nor do Plaintiffs identify the undisputed facts that establish, as a matter of law, that they have been subjected to RICO violations or extortion by any defendant. Nor do Plaintiffs establish as a matter of law that the lawsuits that precipitated the settlement agreements were objectively baseless.

In fact, Plaintiffs cite to no legal authority even discussing the very high burden of proof that they must meet to establish objective baselessness: that no reasonable litigant would believe the lawsuits lack merit. Rather, they focus on the irrelevant and disputed "facts" that the terms of the settlement do not match the relief sought in the CEQA petitions—however, the terms of a settlement agreement in no way tends to establish objective baselessness. Tellingly, Plaintiffs cite to no supporting legal authority for such a notion. And Plaintiffs own cited facts undermine any claim of objective baseless and at the very least create a triable issue of material fact on this issue. As cited to in N&A concurrently pending motion for summary judgment, federal courts regard the settlement agreements themselves as demonstrating the merits of the

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

underlying lawsuits.[1]

Indeed, Plaintiffs' own motion admits that the merits of its RICO claims are based on contentions at this stage. As examples, as early as the introduction Plaintiffs allege that "fact and expert witnesses alike *will testify at trial*" regarding the merits of the allegedly sham litigation, but no supporting facts or evidence are actually offered in the Separate Statement. Plaintiffs "*contend* the [CEQA lawsuits] were pretextual shams" brought for an improper purpose, but again no supporting facts or evidence are actually offered in the Separate Statement. Plaintiffs *argue* that "[t]he CEQA suits had generated significant business uncertainty for Plaintiffs," and once again offer no supporting facts or evidence. Plaintiffs' motion clearly asks the Court to *assume*, without the requisite supporting law, facts or evidence, that the Settlement Agreements were the product of extortion.

Even *assuming* that Plaintiffs could prove that they have been subjected to RICO violations or extortion by any defendant, their own conduct and pleadings preclude any judicial determination that the Settlement Agreements are unenforceable. First, Plaintiffs received valuable consideration in the Settlement Agreements which they have not and now cannot move to rescind, and their repeated ratification of the Settlement Agreements requires that their motion be denied. Second, Plaintiffs' plead that they believed they were being extorted both before and when the Settlement Agreements were signed. They executed the Settlement Agreements with the assistance of counsel and with their eyes wide open, knowingly releasing any and all claims arising out of the CEQA litigation including the instant RICO claims. Plaintiffs' knowledge and belief they were being extorted prevents them from making a remotely convincing argument that the instant claims were not within their contemplation at the time the Settlement Agreements were signed. Plaintiffs also plead that the Settlement

---

[1] Both N&A and the S Defendants' concurrently pending Motions for Summary Judgment set forth the ample undisputed evidence in the record which clearly demonstrates that the CEQA lawsuits were not objectively baseless.

00194700

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT NOURMAND & ASSOCIATES' OPPOSITION TO PLAINTIFFS'**
**PARTIAL MOTION FOR SUMMARY JUDGMENT**

Agreements were the consummation of Defendants' RICO scheme. Plaintiffs' claims are therefore also barred because the alleged extortion was not extrinsic to the Settlement Agreements.

Finally, Plaintiffs' argument that N&A lacks standing to enforce the Settlement Agreements only highlights the inconsistency of Plaintiffs' claims in this action against N&A and lacks merit. Plaintiffs contend that although N&A did not file the underlying CEQA litigation and was not a named party to the Settlement Agreements, they participated in the operation and management of the enterprise. Importantly Plaintiffs' allegations in the operative Third Amended Complaint and written discovery allege that N&A's participation in the enterprise was by virtue of its employees, some of whom Plaintiffs contend were shared employees of The Sunset Landmark Investment, LLC ("Sunset"), and all of whom allegedly acting at the direction and under the control of Saeed Nourmand ("Saeed") on behalf of Sunset. In other words, Plaintiffs allege that N&A employees were acting as employees or agents of Sunset when they allegedly participated in the operation or management of the enterprise. The releases in the Settlement Agreements include Sunset and, in pertinent part, its "employees" and "agents". Therefore, Plaintiffs' allegations, although untrue, at the very least create a triable issue of material fact as to whether N&A comes within the scope of "agents" and "employees" of Sunset included as released parties in the Settlement Agreements. Plaintiffs cannot duplicitously claim that N&A employees both did and did not act as an employee or agent of Saeed and Sunset when it suits them.

## II.    ADDITIONAL MATERIAL FACTS

### A.    The Settlement Agreements

At issue in Plaintiffs' Motion are the Settlement Agreements resolving the CEQA litigation pertaining to the Thompson Hotel ("Thompson lawsuit") and the Tommie Hotel ("Tommie Lawsuit") filed by The Sunset Landmark Investment, LLC ("Sunset").

/ / /

/ / /

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT NOURMAND & ASSOCIATES' OPPOSITION TO PLAINTIFFS'
PARTIAL MOTION FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

The Thompson lawsuit was litigated for 18 months, during which the parties discovered that the City had analyzed and disclosed an out-of-date version of the hotel which did not include significant structural alterations. AUF 36. The City brought a motion to augment the administrative record (to include the current version of the hotel plans), which was to be heard the day before trial in the Thompson lawsuit was set to begin. AUF 37. On August 24, 2017, the day before trial, the trial court issued a tentative ruling denying the motion, stating the motion was "intertwined with fair notice," had "significance on the parties' arguments on the merits," and that the "City's failure to tell the public about the design changes…prejudiced [Sunset's] rights under CEQA." AUF 38.

The next day of August 25, 2017, the parties gave notice to the Court that a settlement had been reached in the Thompson Hotel lawsuit, at which time Plaintiff's counsel represented to the Court that he was "pleased" a settlement was reached. AUF 39. He further informed the Court that the settlement involved design changes and "of course, a monetary component." AUF 40. Plaintiffs' counsel made no representation to the Court that the settlement was improper. *Id.* Plaintiffs' 30(b)(6) witness in the instant lawsuit, Richard Heyman, initially testified the agreements were not signed under duress. AUF 46.

After Sunset settled with Tommie, the Los Angeles Superior Court found that the City of Los Angeles' approval of the Tommie Hotel violated CEQA and issued an injunction against the Tommie Hotel in the Tommie lawsuit. AUF 49.

The parties signed separate agreements settling the Thompson Hotel and Tommie Hotel lawsuits. Plaintiffs' Motion for Partial Summary Judgment, Declaration of Charles Talpas, Exhibits 9 (Dk. 121-12) and 10 (Dk. 121-13). Plaintiffs were represented by counsel during the pendency of the Thompson Hotel and Tommie Hotel CEQA litigation. AUF 50, 51.

Both Settlement Agreements contain mutual releases for any claims relating to,

00194700

**DEFENDANT NOURMAND & ASSOCIATES' OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

arising out of, or in any way stemming from the underlying litigations, as well as a waiver releasing unknown claims under California Civil Code section 1542.  Dk. 121-12, section 5.1 and Dk. 121-13, section 6.1.  In the mutual releases, Plaintiffs released, in pertinent part, "Sunset and its….agents, employees…from any and all claims, demands, liens, actions, suits, causes of action,…costs, attorneys' fees, expenses, damages, judgments, orders…and liabilities of every kind or nature, in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether concealed or hidden, relating to, arising out of, or in any way stemming from" the Thompson and Tommie lawsuits. AUF 53.

As well, Both Settlement Agreements contain representations by all parties that the agreements were signed under the advice of counsel and were not the product of any duress. AUF 45.

In exchange for monetary and structural covenants, Sunset granted Tommie a tieback agreement, and temporary easement to "assist with the construction of the Tommie Hotel."  AUF 47, 48. The agreements also included a number of covenants to reduce the hotels' environmental impact, such a reduction in height, setoffs, delivery timeframes, and rooftop operation curfews for the Thompson Hotel. Dk. 121-12, section 3 and Dk. 121-13, section 3.

**B.**     **Plaintiffs' Allegations Reflect That Any Involvement of N&A Employees in the Enterprise Was Solely the Product of The Direction and Control of Saeed Nourmand on behalf of Sunset Landmark**

Plaintiffs' allegations in the TAC reflect that any involvement of N&A employees in the enterprise was the product of the direction and control of Saeed on behalf of Sunset Landmark. TAC, ¶¶ 111, 6, 26, 52, 53, 56. Similarly, Plaintiffs' discovery responses also reflect that any involvement of N&A employees in the enterprise was solely the product of Saeed's direction and control. All instances of Saeed or Sunset allegedly directing N&A employees as part of the enterprise is found in Plaintiffs' Response to N&A Interrogatory No. 14. AUF 52.

III.   **LEGAL ARGUMENT**

   A.   **Legal Standard**

   Under the Federal Rules of Civil Procedure, summary judgment may only be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. The non-moving party "can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in [its] favor. *So. Cal. Gas Co. v. City of Santa Ana*, 336 R.3d 885, 888 (9th Cir. 2003) (internal citations omitted).

   B.   **Plaintiffs Must *First* Prove Extortion for the Court to Determine the Enforceability of the Settlement Agreements**

   A release or limitation of liability may be voided only *if* they are found to be the product of illegal conduct. This is demonstrated by Plaintiffs cited legal authority, which exclusively involve *defendants'* attempts to use a contractual release as a sword to attack the pleadings, or an appeal a trial judgment where a release was only held to be unenforceable *after* a factual finding of illegal conduct was made.

   In *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, 116 F. Supp. 3d 1010, 1051 (N.D. Cal. 2015), a *defendant* moved for summary judgment of the plaintiff's civil RICO claims, on the grounds that the limitation of liability language in an operating agreement which allowed defendants to carry out the alleged fraud, and insulated them from future liability resulting from that scheme, was unenforceable. The court denied the motion, holding that "*[t]o the extent that Plaintiffs can prove their RICO claim*," the moving defendants' reading of the language would exculpate him from liability for his own misconduct and therefore be unenforceable." *Id.* at 1051.

   In *Marani v. Cramer*, 2021 WL 254308 (N.D. Cal. Jan. 26, 2021), a *defendant* brought motion to dismiss and motion to enforce a settlement agreement to bar the

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

plaintiff's RICO claims. The court granted the motion and therefore held that the motion to enforce the settlement agreement was moot. Citing to *Monterey Bay*, the court discussed that courts have "permitted civil RICO claims to *proceed* where the behavior…is extrinsic to the contractual relationship and could not possibly have been within the contemplation of the contracting parties. *Id.* at 2 (internal citations omitted).

In *Hardwick v. Wilcox*, the *defendant* appealed a judgment following a court trial, on the grounds that a 1542 waiver in an illegal forbearance agreement that violated California usury law. However, the trial court judgment that the waiver was unenforceable was *based upon a finding of fact by the trial court* that the forbearance agreement violated the usury law. *Id.* at 985.

In *LA Open Door Presbyterian Church v. Evangelical Christian Credit Union*, 2016 WL 4987116 (Cal. Ct. App. Sept. 19, 2016 (unpublished), the plaintiff appealed the granting of a *defendant's* motion for summary judgment on the grounds that plaintiff's claims were barred by a 1542 waiver in a forbearance agreement.

*Kallen v. Delug*, 157 Cal.App.3d 940 (1984), did not involve any release language at all. Rather, the case involved whether a fee splitting agreement between two attorneys was illegal and contrary to public policy.

Finally, in *Bhakta v. Bhakta*, 2022 WL 301522, the plaintiff appealed a district court's granting of *defendants'* motion to dismiss the plaintiff's federal claims, in which court held that the plaintiffs' federal claims were precluded by a settlement agreement in a state court case based on the same underlying dispute.

Plaintiffs cite to no legal authority supporting that a plaintiff does not have to first prove illegal conduct as a matter of law, in order for the Court to determine whether a contractual release is unenforceable. Based on Plaintiffs' own caselaw, they must establish that defendants committed a RICO violation and engaged in extortion *before* the Court can determine whether the Settlement Agreements are enforceable.

///

///

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00194700

7

**C.** **Plaintiffs Have Failed to Prove Extortion, Which is a Condition Precedent to a Judicial Determination that the Releases in the Settlement Agreements are Unenforceable**

To recover on their RICO claims, Plaintiffs must prove (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation. *See Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

The conduct element requires that the defendant have some part in directing the affairs of the enterprise. Liability is not limited to those with primary responsibility for the enterprise's affairs, nor is a formal position within the enterprise required. However, the defendant is not liable under 18 U.S.C. § 1962(c) unless the defendant has participated in the operation or management of the enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Here, Plaintiffs' MSJ is devoid of any evidence or legal authority even addressing this element of their RICO claims as against N&A.

Where an associated-in-fact enterprise is pled, as in the TAC, its existence is proven through evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit. *Boyle v. United States*, 556 U.S. 938, 945-46 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)). Once again, Plaintiffs' MSJ is devoid of any evidence or legal authority even addressing this element of their RICO claims as against N&A.

A pattern is defined as "at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5). Proving two predicate acts is a necessary condition for finding a violation, but may not be sufficient. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). To establish a "pattern of racketeering activity," the predicate acts must be both "related" and "continuous." *Id.*; *Sever*, 978 F.2d at 1529. Where sham litigation serves as the alleged predicate acts, applicable federal law supports that "five or six lawsuits is on the lower end of what can constitute a pattern or series of harassing

**DEFENDANT NOURMAND & ASSOCIATES' OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

litigation." *Wonderful Real Est. Dev. LLC v. Laborers Int'l Union of N. Am. Loc. 220,* 2020 WL 91998, at \*10 (E.D. Cal. Jan. 8, 2020). Four lawsuits is insufficient to establish a pattern. *Coca–Cola Co. v. Omni Pac. Co.,* 1998 U.S. Dist. LEXIS 23277, at \*24 (N.D.Cal. Dec. 9, 1998). Here, the only supposed predicate acts are *Sunset's* acts in threatening and instituting three CEQA lawsuits. Plaintiffs MSJ is devoid of any law or facts to establish a pattern of racketeering under applicable federal law. Plaintiffs' MSJ is also devoid of any law or facts to establish that RICO liability can be based on a defendant's conduct in threatening, filing or maintaining a lawsuit. *United States v. Koziol*, 993 F.3d 1160, 1174 (9th Cir. 2021) (citing to overwhelming body of precedent confirming that RICO liability cannot be based on a defendant's conduct in threatening or filing a lawsuit, and discussing Ninth Circuit's approval of that authority.)

Most importantly, Plaintiffs' MSJ is devoid of any law setting forth the definition of the sham litigation exception to the *Noerr-Pennington* doctrine. Plaintiffs primarily rely on contentions and promises of future conduct to establish extortion. (i.e., "fact and expert witnesses alike *will testify at trial*" regarding the merits of the litigation; Plaintiffs "*contend* the [CEQA lawsuits] were pretextual shams" brought for an improper purpose; Plaintiffs *argue* that "[t]he CEQA suits had generated significant business uncertainty for Plaintiffs," and once again offer no supporting facts or evidence.) They offer only the purportedly undisputed facts that the Settlement Agreements neither granted Sunset the relief it sought through its CEQA suits, nor included remedies Sunset could have received had it succeeded at trial. Plaintiffs' MSJ, Docket 121-1, pg. 4, SUF 18, 26. Based on these facts alone, Plaintiffs "contend" that Defendants were not actually interested in the relief sought or available under CEQA, and the Petitions were pretextual shams brought for an improper purpose. *Id.* at pg. 4, lines 16-20.

Plaintiffs' argument is without merit. First, the terms of a Settlement Agreement are completely irrelevant to whether a lawsuit constitutes sham litigation. Rather, as the Ninth Circuit explained in *Koziol*:

**DEFENDANT NOURMAND & ASSOCIATES' OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

1
2
3
4
5
6
7

> Litigation is a sham "where the lawsuit is objectively baseless **and** the defendant's motive in bringing it was unlawful." [*Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 938 (9th Cir. 2006)] (*citing Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)). A lawsuit is objectively baseless where "no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs.*, 508 U.S. at 60, 113 S.Ct. 1920.

8
9
10
11

*Koziol*, *supra*, 993 F.3d. at 1171 ( (italics in original) (emphasis added). The burden is on Plaintiffs to disprove the challenged CEQA litigations' legal viability. *Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 863 F.3d 1178, 1187 (9th Cir. 2017) (internal citations and emphasis omitted).

12
13
14
15
16
17
18
19
20
21
22
23
24
25

Second, the proffered "facts" are disputed. Several objective facts demonstrate that the lawsuits were *not* objectively baseless. For example, in the Thompson lawsuit, the day before trial, the trial court issued a tentative ruling denying the motion, stating the motion was "intertwined with fair notice," had "significance on the parties' arguments on the merits," and that the "City's failure to tell the public about the design changes…prejudiced [Sunset's] rights under CEQA." AUF 36-38. Plaintiffs settled the lawsuit within a day of the tentative ruling being issued. AUF 39. As well, after Sunset settled with Tommie, the Los Angeles Superior Court found that the City of Los Angeles' approval of the Tommie Hotel violated CEQA and issued an injunction against the Tommie Hotel in the Tommie lawsuit. AUF 49. Third, where, as here, the parties settle their disputes short of trial, federal courts regard the settlement as demonstrating the merits of the underlying lawsuits. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008); *New West, L.P. v. City of Joliet*, 491 F.3d 717, 772 (7th Cir. 2007).

26
27
28

Finally, Plaintiffs fail to present any facts, let alone undisputed facts, that they executed the Settlement Agreements under duress. The sole reference to fear or duress in their motion is the contention, unsupported by any facts, that "[t]he CEQA suits had

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00194700

10

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

generated significant business uncertainty for Plaintiffs." Docket 121-1, pg. 8. Despite Plaintiffs' allegations in the TAC, numerous objective facts and deposition testimony also undermine any duress in the execution of the Settlement Agreements. This includes the fact Plaintiffs were represented by counsel at two prominent law firms in the negotiation and execution of the Settlement Agreement, AUF 50-51; Plaintiffs' counsel represented to the Court that he was "pleased" with the settlements, AUF 40; the Settlement Agreements include language that they were signed on the advice of counsel and were not the product of duress, AUF 45; and Plaintiffs' 30(b)(6) witness, Richard Heyman, initially testified the agreements were not signed under duress, AUF 46.

> D.  **Plaintiffs Have Additionally Failed to Show that the Settlement Agreements Were Unenforceable, Under Either Federal and California Law**
>
>> 1.  *Plaintiffs Ratified the Settlement Agreements By Retaining the Valuable Consideration They Received, and Have Not and Now Cannot Move to Rescind the Settlement Agreements*

Plaintiffs cite to only California law and not federal law in support of their motion, although federal law arguably governs whether Plaintiffs released their federal RICO claims in the Settlement Agreements.[2] Under federal law, even extortionate releases are ratified, and therefore enforceable, if the releasor retains the consideration after learning the release is voidable. *Phillips Petroleum*, *supra*, 23 F.3d at 937 ("even if a release is tainted by misrepresentation or duress, it is ratified if the releasor retains the consideration after learning that the release is voidable"); *See Aikins v. Tosco Ref. Co.*, No. C-98-00755-CRB, 1999 WL 179686, at *4 (N.D. Cal. Mar. 26, 1999)

---

[2] "[F]ederal law always governs the validity of releases of federal causes of action." *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1457 (9th Cir.1986) (citing *Dice v. Akron, Canton & Youngstown Railroad,* 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952); *Salmeron v. United States,* 724 F.2d 1357, 1361 (9th Cir.1983); *Jones v. Taber,* 648 F.2d 1201, 1203 (9th Cir.1981)).

00194700

11

("Numerous federal courts hold that by accepting and retaining the benefits of a voidable release, a party ratifies the release and cannot avoid its obligation").

Regardless, under California law, "if a party believes it has been fraudulently induced to enter into a contract, 'in order to escape from its obligations the aggrieved party *must* rescind' " *Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 921 (2010) (quoting *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 41) (emphasis added).

Here, Plaintiffs kept the valuable consideration they received from the Settlement Agreements, in the form of a temporary five-year easement and a tieback agreement that allowed Plaintiffs to construct the now-completed Thompson and Tommie Hotels. AUF 47-48. In fact, Plaintiffs have made abundantly clear that they have no intention of attempting to rescind the Settlement Agreements. *See Plaintiffs' Opposition to S Defendants' Motion to Dismiss First Amended Complaint*, Docket 26, page 12, fn.8: "Defendants' concerns about finality would perhaps be warranted if Plaintiffs were seeking rescission of the earlier settlement agreements. That is not what this case is about."

> **2.    Plaintiffs Allege in the TAC that Defendants' Extortion was Intrinsic to the Settlement Agreements, and that They Believed They Were Being Extorted Before Signing the Settlement Agreements thereby Knowingly Releasing their Civil RICO Claims**

Furthermore, under California law, for Plaintiffs' RICO claims to proceed, they are required to prove *both* that "the behavior…is extrinsic to the contractual relationship <u>and</u> could not possibly have been within the contemplation of the contracting parties." *Monterey Bay, supra,* 116 F. Supp at 1051 (emphasis added).

As to the first element, Plaintiffs allege in the TAC that the extortion was intrinsic to, not extrinsic to, the Settlement Agreements. Plaintiffs allege that Defendants "utilize environmental statues to delay economically vitalizing developments—often for years—in order to secure rich monetary payouts and personal concessions." TAC, ₱ 5.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

In other words, Plaintiffs claim that the Settlement Agreements are *intrinsic* (not extrinsic) to the alleged extortion, because they were the culmination of Defendants' extortion and provided the mechanism by which the "rich monetary payouts and personal concessions [were] obtained."

As to the second element, Plaintiffs allege in the TAC that they believed the Settlement Agreements were extortionate *both before and at the time they were signed*. Specifically, the TAC alleges that "[a]lthough Relevant believed that the CEQA litigation was frivolous and a sham, it nonetheless made the decision to try to negotiate a resolution with Nourmand and Sunset Landmark." TAC ¶ 83. Further, that "on our around January 8, 2018, Wilcox and Relevant succumbed to Defendants' threats and agreed to pay Sunset Landmark the millions of dollars demanded as well as make the requested design changes." TAC ¶ 87. Plaintiffs' admission that they believed the underlying CEQA litigation was a sham, and that they believed the Settlement Agreements to be extortionate when they signed them, is evidence that their present civil RICO claims were absolutely within their contemplation. Furthermore, Plaintiffs were represented by two law firms during the negotiation of and drafting of the terms of the Settlement Agreements, which included advice of counsel and no duress provisions. AUF 45. Plaintiffs cannot now claim that they were hoodwinked and did not knowingly release the instant civil RICO claims.

Under either federal or California law, even assuming Plaintiffs could prove extortion, they have failed to establish as a matter of law that the Settlement Agreements are unenforceable.

**E.    Plaintiffs' Contradictory Positions Regarding N&A Defeats Their Argument that N&A Lacks Standing to Enforce the Settlement Agreements**

Plaintiffs argue that N&A was not a party to the Settlement Agreements and therefore cannot enforce the releases in the Settlement Agreements. This argument fails because it contradicts Plaintiffs' allegations that at Saeed's N&A employees acted as

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

employees of Sunset Landmark, or otherwise acted at the direction or control of Saeed, to materially support and effectuate the extortionate demands of the alleged enterprise. Taken together, Plaintiffs allege that N&A employees acted as the employees or agents of Sunset when they participated in the alleged enterprise. Therefore, there is a triable issue of facts as to whether N&A constitute an "agent" or "employee" of Sunset included as released parties in the Settlement Agreements, and which therefore has standing to enforce the Settlement Agreements. Plaintiffs cannot have it both ways. They cannot claim that N&A employees acted as employees or agents under the direction and control of Saeed and Sunset to obtain the Settlement Agreements (and establish their RICO claims against N&A), while also claiming that N&A does not come within the broad scope of the released entities in those Settlement Agreements, which explicitly include Sunset's agents.

The explicit terms of the releases in the Settlement Agreements include "Sunset and its officers, members, managers, **agents**, **employees**, subsidiaries, affiliates…." Plaintiffs' SUF 23 (emphasis added); AUF 53. N&A clearly disputes that it participated in the conduct of the alleged enterprise or received any benefit from the alleged enterprise, such that Plaintiffs could prevail on their RICO claims against N&A. These arguments are the subject of N&A's pending Motion for Summary Judgment.

Nevertheless, true or not, Plaintiffs claim in their pleadings and discovery that N&A employees acted as employees or agents of Sunset Landmark in conducting the affairs of the enterprise, such that N&A can be held vicariously liable under the civil RICO statute.

Plaintiffs' allegations in the TAC reflect that any involvement of N&A employees in the enterprise was the product of the direction and control of Saeed Nourmand ("Saeed"). Plaintiffs allege that Saeed "wields immense control over Michael [Nourmand] and the other Nourmand & Associates employees. At Nourmand's request, Michael and Nourmand & Associates lend material support to Nourmand Enterprise." TAC, ¶ 6. Plaintiffs allege that "Sunset Landmark and Nourmand &

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Associates share a registered address as well as employees and officers. Nourmand & Associates provides material support to [Saeed] and Sunset Landmark in connection with Sunset Landmark's filing of sham and extortionate CEQA challenges." TAC, ¶ 26. Plaintiffs allege that "Nourmand & Associates played a key role in the initiation of sham CEQA litigation, including by strategically attending public hearings at Nourmand's request" and by "offering its own employees to perform support and administrative functions for Sunset Landmark and [Saeed]." TAC, ¶ 52. Plaintiffs allege that "[Saeed] insisted that Michael Nourmand participate in a meeting where Sunset Landmark and [Saeed] extracted the $5.5 million ransom payment." TAC, ¶ 53 (Plaintiffs were well-aware Michael Nourmand did not attend). Further, that "Nourmand & Associates' employees functioned as [Saeed]'s own recruiting pool through which [Saeed] tasked Nourmand & Associates' employees with critical support functions to extort competing developers into making payments avoid the devastating costs associated with the delay of projects. TAC, ¶ 56.

Similarly, Plaintiffs' discovery responses reflect that any involvement of N&A employees in the enterprise was the product of Saeed's direction, and while he owned or controlled Sunset. For example:

- On March 3, 2015, Mohamad Iravani and Sarah Gould <u>received correspondence from Saeed Nourmand</u> regarding the Wilcox Hotel

- On March 6, 2015, pursuant to the <u>request of Saeed Nourmand</u>, Sarah Gould assists with forwarding Wilcox Hotel plans, including an environmental assessment form, a site plan review, renderings, and master land use permit application, to zoning consultant Jeff Seymour, and arranges a call for Saeed Nourmand and Jeff Seymour;

- On March 11, 2015, Sarah Gould forwards public hearing information for the Thompson Hotel and notes that <u>he</u> [Saeed] would like a host of people to attend, including Karen Lewis at N&A, Howard Lorey at N&A, and Michael Nourmand; she copies Saeed and Mohamad Iravani;

**DEFENDANT NOURMAND & ASSOCIATES' OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

- On March 17, 2015, <u>Saeed Nourmand forwards</u> his concerns regarding the Thompson Hotel to Carolyn Rae Cole;

- On March 17, 2015, Carolyn Rae Cole emails Fred Gains noting that <u>she has volunteered her assistance to Saeed</u> to provide arguments that could be helpful at the hearing on Wednesday at the City;

- On March 18, 2015, <u>Saeed sends more</u> information regarding 1541 Wilcox project to Carolyn Rae Cole with respect to arguments against the project;

- In or around March 2015 and April 2015, employees of N&A, <u>acting under the direction of Saeed Nourmand</u> and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects;

- In or around March 2015 and April 2015, employees of N&A, <u>acting under the direction of Saeed Nourmand</u> and the Nourmand Enterprise, concocted and submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;

- On March 3, 2015, Mohamad Iravani <u>received the Wilcox Hotel Drawings from Saeed Nourmand;</u>

AUF 52.

Under federal law, "[a]n agent is one who 'act[s] on the principal's behalf and subject to the principal's control.' To form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent." *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir.2010) (internal citations omitted); *see also Scott v. Ross*, 140 F.3d 1275, 1280 (9th Cir.1998) ("To incur liability the agent must be acting on the parent's behalf, within the scope of its authority as agent.").

Under California law, is "one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295. "Agency requires that the principal

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

maintain control over the agent's actions," *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013).

For an agency relationship to exist, an agent must have authority to act on behalf of the principal and the person represented must have a right to control the actions of the agent. One theory of agency, actual authority, arises through the principal's assent that the agent take action on the principal's behalf. An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act. Restatement (Third) Of Agency § 1.01 (citations, quotations, and alterations omitted).

Here, Plaintiffs' allegations in the TAC and written discovery, taken together, reflect that N&A's alleged participation in the enterprise was when its employees acted as shared employees or agents under the direction and control of Saeed and Sunset. The releases in the Settlement Agreements explicitly release all claims against Sunset Landmark's employees and agents. Therefore, Plaintiffs allegations alone, although inaccurate, create a triable issue of material fact as to whether N&A is a released entity with standing to enforce the releases in the Settlement Agreements.

## IV.   **CONCLUSION**

For the foregoing reasons, N&A respectfully requests that the Court deny Plaintiffs' Motion for Partial Summary Judgment in its entirety.

Dated: May 23, 2022

**THE MALONEY FIRM, APC**

By: _____/s/ Patrick M. Maloney_____
Patrick M. Maloney, Esq.
Gregory M. Smith, Esq.
Elizabeth T. Schaus, Esq.
Attorneys for Defendant,
NOURMAND & ASSOCIATES

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2381 Rosecrans Avenue, Suite 405, El Segundo, CA 90245.

I served the foregoing document(s) described as:
**DEFENDANT NOURMAND & ASSOCIATES' OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT**
on the interested party(ies) below, using the following means:

SEE ATTACHED SERVICE LIST

☐ BY PERSONAL SERVICE I delivered such envelope(s) by hand to the offices of the addressee(s).

☐ BY UNITED STATES MAIL I enclosed the documents in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at El Segundo, California.

☐ BY OVERNIGHT DELIVERY I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the respective address(es) of the party(ies) stated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ BY MESSENGER SERVICE I served the documents by placing them in an envelope or package addressed to the respective address(es) of the party(ies) stated above and providing them to a professional messenger service for service.

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 9, 2022, at El Selgundo, California.

_____
/s/ Marilyn Vigil
Marilyn Vigil

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00194700

PROOF OF SERVICE - 1

## **MAILING LIST**

| | |
|---|---|
| WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>Susan K. Leader, Esq.<br>Granville C. Kaufman, Esq.<br>633 West Fifth Avenue, Suite 1550<br>Los Angeles, CA 90071-2027<br>T: (323) 210-2900 | F: (866) 974.7329<br>E: sleader@wsgr.com<br>E: gkaufman@wsgr.com | Attorneys for Plaintiffs,<br>Relevant Group, LLC<br>1541 Wilcox Hotel LLC,<br>6516 Tommie Hotel LLC,<br>and 6421 Selma Wilcox<br>Hotel LLC |
| WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>Dale R. Bish, Esq.<br>Charles A. Talpa, Esq.<br>Karen Kwok, Esq.<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>T: (650) 493-9300 | F: (650) 565-5100<br>E: dbish@wsgr.com<br>E: Sctalpas@wsgr.com<br>E: kkwok@wsgr.com | |
| WILSON SONSINI GOODRICH &ROSATI<br>Conor Tucker, Esq.<br>633 West Fifth Street, Suite 1550<br>Los Angeles, CA 90071-2048<br>T: (323) 210-2900 | F: (866) 974-7329<br>E: ctucker@wsgr.com | Attorneys for Plaintiffs<br>Relevant Group, LLC; 1541<br>Wilcox Hotel, LLC; 6516<br>Tommie Hotel, LLC: 6421<br>Selma Wilcox Hotel, LLC |
| NORTON ROSE FULBRIGHT US LLP<br>James H. Turken, Esq.<br>Neil P. Thakor, Esq.<br>Phillip R. Di Tullio, Esq.<br>Christopher Pelham, Esq.<br>555 South Flower Street, Forty-First Floor<br>Los Angeles, CA 90071<br>T: (213) 892-9200 | (323) 892-9200<br>F: (213) 892-9494 | (323) 892-9400<br>E: james.turken@nortonrosefulbright.com<br>E: neil.thakor@nortonrosefulbright.com<br>E: christopher.pelham@nortonrosefulbright.com | Attorneys for Defendants<br>STEPHEN "SAEED"<br>NOURMAND and<br>THE SUNSET<br>LANDMARK<br>INVESTMENT, LLC |

00194700

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507