**NORTON ROSE FULBRIGHT US LLP**
JAMES H. TURKEN (BAR NO. 89618)
CHRISTOPHER K. PELHAM (BAR NO. 241068)
NEIL P. THAKOR (BAR NO. 308743)
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Telephone:  (213) 892-9200
Facsimile:   (213) 892-9494
james.turken@nortonrosefulbright.com
neil.thakor@nortonrosefulbright.com
christopher.pelham@nortonrosefulbright.com

Attorneys for Defendants,
STEPHAN "SAEED" NOURMAND, and THE
SUNSET LANDMARK INVESTMENT LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,<br><br>                    Plaintiffs,<br><br>          v.<br><br>STEPHEN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; and DOES 1-10,<br><br>                    Defendants. | Case No. 2:19-cv-05019-ODW-KSx<br>*[Assigned to the Hon. Otis D. Wright II]*<br><br>**DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*[Separate Statement of Undisputed Material Fact and Conclusions of Law; and Declaration of Neil P. Thakor Filed Concurrently Herewith]*<br><br>**Date:  June 13, 2022**<br>**Time: 1:30 p.m.**<br>**Place: Courtroom 5D**<br><br>Complaint Filed: June 10, 2019<br>TAC Filed:  September 14, 2021 |

108008751.3

DOCUMENT PREPARED ON RECYCLED PAPER

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND: ....................................... 2

III. LEGAL ARGUMENT ...................................................................... 4

   A.   Legal Standard ...................................................................... 4

   B.   Under Federal Law, The Thompson and Tommie Settlement
        Releases Are Enforceable ..................................................... 5

        1.   Federal Law, not State Law, Govern The Releases .................. 5

        2.   Plaintiffs Have Not Met Their Burden of Establishing that
             the Settlement Agreements or Releases Were Procured
             Through Fraud, Duress, or Material Mistake ........................... 6

        3.   Under Federal Law, Plaintiffs Cannot Invalidate the
             Releases After Having Accepted the Settlement
             Agreements' Benefits ................................................................ 8

        4.   Plaintiffs Offer No Evidence That the Releases
             Themselves Were Procured Through Extortion or Other
             Improper Means ......................................................................... 9

   C.   Even if California Law Does Apply, The Thompson and
        Tommie Settlement Releases are Enforceable ................... 10

        1.   The Releases Do Not Affect a Concurrent Tort, and Were
             Instead Intended to Resolve a Past Dispute ........................... 10

        2.   In RICO Cases, Section 1668 Does Not Invalidate
             Releases That Are "Extrinsic to the Contractual
             Relationship" ........................................................................... 12

        3.   Plaintiffs are Barred from Disregarding the Settlement
             Agreements Because the Only Remedy for an Agreement
             Induced by Extortion is Recission, and that Remedy no
             Longer Available to Plaintiffs ................................................ 15

   D.   As A Matter Of Law, There Was No Extortion ................... 17

IV.  CONCLUSION ............................................................................ 18

108008751.3

- i -

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

DOCUMENT PREPARED
ON RECYCLED PAPER

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aikins v. Tosco Ref. Co.*,
No. C-98-00755-CRB, 1999 WL 179686 (N.D. Cal. Mar. 26, 1999) ................ 8

*Basco v. Toyota Motor Corp.*,
2011 WL 13127142 (C.D. Cal. Nov. 30, 2011) ........................................... 6, 16

*Brandt v. Verizon Communications, Inc.*,
2019 WL 2124338 (N.D. Cal. 2019) ................................................................ 10

*Brooklands, Inc. v. Sweeney*,
2015 WL 1930239 (S.D. Fla. Apr. 28, 2015) .................................................... 5

*Casey v. Proctor*,
59 Cal. 2d 97 (1963) ......................................................................................... 13

*Ford v. Shearson Lehman/Am. Express, Inc.*,
180 Cal. App. 3d 1011 (1986) .......................................................................... 15

*Hardwick v. Wilcox*
11 Cal. App. 5th 975, 990-91 (2017) ............................................................... 13

*Home Ins. Co. v. Zurich Ins. Co.*,
96 Cal. App. 4th 17 (2002) ............................................................................... 16

*IMO Dev. Corp. v. Dow Corning Corp.*,
49 Cal. App. 3d 315 (1975) ................................................................................ 8

*Infa-Lab, Inc. v. KDS Nail Int'l*,
2009 WL 10691370 (E.D. Cal. Apr. 1, 2009) ................................................... 7

*Ingram Corp. v. J. Ray McDermott & Co., Inc.*,
698 F.2d 1295 (5th Cir. 1983) ................................................................... 5, 6, 7

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) .......................................................................... 17

*Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*,
558 F.2d 1113 (2d Cir. 1977) ............................................................................ 5

*Marani v. Cramer*,
2021 WL 254308 (N.D. Cal. 2021) ............................................................ 10, 12

*Margolis v. Ryan*,
140 F.3d 850 (9th Cir. 1998) .............................................................................. 4

*Monterey Bay Military Housing, LLC v. Pinnacle Monterey LLC,*
    116 F. Supp. 3d 1010 (N.D. Cal. 2015) ........................................................ 9, 12

*Petro-Ventures, Inc. v. Takessian,*
    967 F.2d 1337 (9th Cir. 1992) .................................................................... 5

*Reid v. IBM Corp.,*
    1997 WL 357969 (S.D.N.Y. June 26, 1997) ............................................ 8

*Religious Tech. Ctr. v. Wollersheim,*
    796 F.2d 1076 (9th Cir. 1986) ................................................................ 16

*Rosenthal v. Great Western Fin. Sec. Corp.,*
    14 Cal. 4th 394 (1996) ............................................................................ 15

*Simila v. Am. Sterling Bank,*
    2010 WL 11442911 (S.D. Cal. Apr. 27, 2010) ...................................... 15

*Simmons v. Cal. Inst. Of Tech.,*
    34 Cal. 2d 264 (1949) ............................................................................... 9

*So. Cal. Gas Co. v. City of Santa Ana,*
    336 F.3d 885 (9th Cir. 2003) ................................................................... 4

*Spell v. Cty of Los Angeles,*
    2020 WL 5949238 (C.D. Cal. May 29, 2020) ........................................ 6

*State Compensation Ins. Fund v. Khan,*
    2012 WL 12887395 (C.D. Cal. Dec. 28, 2012) .............................. 15, 17

*TANO Automation, Inc. v. U.S.,*
    939 F. Supp. 483 (E.D. La. 1996) ........................................................ 5, 6

*U.S. v. Albertson,*
    971 F. Supp. 837 (D. Del. 1997), *aff'd* 156 F.3d 1225 (3d. Cir.
    1998) .................................................................................................. 7, 17

*Ukiah Auto Invs. v. Mitsubishi Motors of N. Am., Inc.,*
    2006 WL 2067059 (N.D. Cal. July 25, 2006) ......................................... 5

*Viacom Int'l Inc. v. Icahn,*
    747 F. Supp. 205 (S.D.N.Y. 1990), aff'd, 946 F.2d 998 (2d Cir.
    1991) ...................................................................................................... 18

*Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
    50 Cal. 4th 913 (2010) ........................................................................ 15

*Volckmann v. Edwards*,
    642 F. Supp. 109 (N.D. Cal. 1986) ..................................................... 17

*Williams v. Phillips Petroleum Co.*,
    23 F.3d 930 (5th Cir. 1994) .............................................................. 5, 6

*Wittorf v. Shell Oil Co.*,
    37 F.3d 1151 (5th Cir. 1994) ............................................................... 8

**Rules and Statutes**

Fed. R. Civ. P. 56(c) ................................................................................ 4

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.  **INTRODUCTION**

Plaintiffs' Motion for Partial Summary Judgment (the "Motion") is based on the false premise that the parties, in resolving their disputes related to Plaintiffs' hotel projects—Plaintiffs 1541 Wilcox Hotel, LLC ("Thompson" or the "Thompson Hotel") and 6516 Tommie Hotel, LLC ("Tommie" or the "Tommie Hotel")—could not release one another from tort liability for conduct undertaken in those disputes. Of course, such releases are standard practice in settlement agreements, particularly between sophisticated parties acting through the assistance of counsel (as occurred here). And Plaintiffs benefited from the settlement agreements through an easement and a tie-back that were granted to them therein as well as the withdrawal of pending CEQA actions. Plaintiffs have never sought to return those benefits or rescind the settlement agreements as a whole. Even in the instant action, Plaintiffs do not ask the Court to invalidate the entirety of the settlement agreements. Nevertheless, Plaintiffs argue that under California law (specifically, California Civil Code Section 1668), the release provisions in those settlement agreements, if enforced in favor of Defendants Sunset Landmark Investment LLC ("Sunset") and Stephan "Saeed" Nourmand (collectively "S-Defendants"), would "exempt a party from liability for RICO based on its own misconduct." (Motion at 6:24.) Plaintiffs' arguments are erroneous because:

- Federal common law, not California state law, determines the enforceability of the subject releases since they pertain to federal statutory rights, and federal common law does not recognize Plaintiffs' asserted grounds for invalidating the releases;

- Even if state law controls here:

  - Section 1668 applies only to future or concurrent torts, not torts (such as the one at issue here) that have already occurred at the time of the execution of the subject release;

  - Section 1668 also does not apply where the tortious conduct is

"intrinsic" to the contractual relationship underlying the release (that is, the tortious conduct was contemplated by the parties when negotiating the release), unlike in this case where the Plaintiffs were fully aware of the nature and scope of the claims targeted by the releases;

- o Section 1668 only bars a release from applying to alleged RICO activity where the release is a "key tool" of the tortious conduct, unlike here where the releases (which are not even mentioned in the Third Amended Complaint) were not essential to the alleged racketeering scheme; and

- Plaintiffs cannot move to invalidate the releases on the grounds that they were procured through extortion when they have never sought to rescind the underlying settlements and have enjoyed the benefit of the balance of those bargains.

## II.   RELEVANT FACTUAL BACKGROUND:

S-Defendants will not repeat the lengthy factual and procedural background at issue in this case; and instead will focus only on the relevant facts put at issue in Plaintiffs' narrow Motion.

In the past ten years, Relevant, through affiliated companies, have developed several properties within one block of a property owned by Sunset.  (S-Defendants Statement of Additional Uncontroverted Fact (SAF), No. 30.)  This includes the Thompson Hotel and the Tommie Hotel, and the hotel developed by Plaintiff 6421 Selma Wilcox, LLC ("Selma" or the "Selma Hotel").  (*Id.*)  Except for the three petitions challenging the Thompson Hotel, the Tommie Hotel, and the Selma Hotel, Sunset has never filed a CEQA petition challenging a development.  (*Id.*, No. 31.) The Thompson lawsuit was litigated for 18 months, during which the parties discovered that the City impermissibly analyzed and disclosed an out-of-date version

of the hotel which did not include significant structural alterations. (*Id.*, No. 36.) The City brought a motion to augment the administrative record, which was to be heard the day before trial in the Thompson lawsuit was set to begin. (*Id.*, No. 37.) The day before trial, the trial court issued a tentative ruling denying the motion, stating the motion was "intertwined with fair notice," had "significance on the parties' arguments on the merits," and that the "City's failure to tell the public about the design changes…prejudiced [Sunset's] rights under CEQA." (*Id.*, No. 38.) In denying the motion to augment, the Court made factual findings that "significant information" was withheld from the public because the City "failed to follow standard procedures." (*Id.*) Just three hours after the tentative ruling was issued, Wilcox and Sunset agreed in principle to a settlement and the trial and the hearing on the City's motion were vacated.[1] (*Id.*, No. 39.) The next day, at the start of trial, Plaintiffs told the Court they were "pleased" to announce the parties had reached a settlement. Plaintiffs' counsel informed the Court that the settlement required both design changes and "of course, a monetary component." (*Id.*, No. 40.) Neither Plaintiffs' counsel, the City's counsel, nor the Court made any remarks indicating that such a settlement was improper. (*Id.*)

The parties signed separate agreements settling both the Thompson Hotel and Tommie Hotel lawsuits. (Plaintiffs' Statement of Uncontroverted Facts ("PSUF") Nos. 19-20.) The parties negotiated those agreements while represented by counsel, and counsel drafted and negotiated the specific terms of the agreements. (SAF, No. 43.) The agreements included a number of covenants to reduce the hotels' environmental impact, such a reduction in height, setoffs, delivery timeframes, and rooftop operation curfews for the Thompson Hotel. (PSUF, Nos. 19-20.) Both agreements contained mutual releases for any claims relating to, arising out of, or in

---

[1] From 2015 to 2018, Relevant made repeated, and unsolicited, efforts to convince Sunset to "consider changing [its] position regarding supporting, or at least not opposing," Plaintiffs' projects. (*Id.*, No. 35.)

any way stemming from the underlying litigations, as well as a waiver releasing unknown claims under California Civil Code section 1542.  (*Id.*)  Both agreements also contained representations by all parties that the agreements were signed under the advice of counsel and not the product of any duress.  (*Id.*; SAF, No. 45.)  In exchange for monetary and structural alterations, Sunset granted Tommie a temporary easement and a tieback agreement that allowed it to excavate under Sunset's parcel of land to "assist with the construction of the Tommie Hotel," and agreed to dismiss the CEQA lawsuits.  (SAF, Nos. 47-48.)

Immediately thereafter, Sunset filed both dismissals and recorded the easement in favor of Plaintiffs.  (*Id.*)  Because of CEQA's statute of limitations, Sunset cannot refile its CEQA challenges against either the Tommie or Thompson Hotels.  Nor, of course, can Sunset undo the now-expired easement that it granted under both settlement agreements.

## III. LEGAL ARGUMENT

### A. Legal Standard

Summary judgment may only be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  As the parties with the burden of persuasion at trial, Plaintiffs must establish "beyond controversy every essential elements of [their]" claims.  *So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).  The evidence must be viewed in the light most favorable to S-Defendants as the non-moving party, and S-Defendants "can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in [their] favor."  *Id.* (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)).

**B.** <u>Under Federal Law, The Thompson and Tommie Settlement Releases Are Enforceable</u>

    **1.** **Federal Law, not State Law, Govern The Releases**

Plaintiffs' Motion fails from the outset because it is held up by the false premise that the Thompson and Tommie settlement agreements—which contain broad releases encompassing, among others, the civil RICO claims at issue here—are unenforceable under California law. This premises incorrect, however, because **federal law, not state law,** governs the validity of the Thompson and Tommie releases. *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1340 (9th Cir. 1992); *accord Ingram Corp. v. J. Ray McDermott & Co., Inc.*, 698 F.2d 1295, 1323 (5th Cir. 1983); *TANO Automation, Inc. v. U.S.*, 939 F. Supp. 483, 486-87 (E.D. La. 1996) (affirming the rule that "normally the release of federal claims is governed by federal law") (quoting *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994)). Indeed, even where a settlement agreement calls for the application of state law, but violations of federal law are alleged, "it is well established that federal law governs all questions relating to the validity of and defenses to purported releases of federal statutory causes of action." *Petro-Ventures, Inc.*, 967 F.2d at 1340 (quoting *Locafrance U.S. Corp. v. Intermodal Sys. Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977)). "The reason for this rule is that federal statutory rights could be easily defeated if state law could be used to control the incidents of those rights and the defenses to them." *Id.* (internal quotations omitted).

The validity of the Thompson and Tommie releases must be examined under federal law.[2] Federal common law does not invalidate releases on the grounds that

---

[2] Federal courts routinely recognize the validity of broadly-worded settlement releases encompassing civil RICO claims. *See Ingram*, 698 F.2d at 1298-99, 1323; *Ukiah Auto Invs. v. Mitsubishi Motors of N. Am., Inc.*, 2006 WL 2067059, at *3-4 (N.D. Cal. July 25, 2006) (granting summary judgment against a plaintiff's RICO claims where they fell within the scope of a broad release); *see also Brooklands, Inc. v. Sweeney,* 2015 WL 1930239, at *3-6 (S.D. Fla. Apr. 28, 2015) (dismissing RICO

those releases excuse contemporaneous tortious action.  Rather, because "public policy favors voluntary settlement of claims and enforcement of releases," the validity of a settlement agreement and release is subject to the general rules of contract interpretation.  *See TANO*, 939 F. Supp. at 486-87.  Where a settlement agreement was negotiated and executed by sophisticated parties, the parties were represented by counsel throughout the process, and adequate consideration was received, the agreement will only be invalidated if it was the result of fraud, duress, or material mistake.  *Id. (citing Phillips Petroleum*, 23 F.3d at 935); *accord Ingram*, 698 F.2d at 1312; *Basco v. Toyota Motor Corp.*, 2011 WL 13127142, at *8 (C.D. Cal. Nov. 30, 2011) (finding that a settlement agreement encompassed civil RICO claims and was enforceable where the conduct and communications leading up to the agreement did not constitute fraud).  The releasing party has the  burden of establishing these facts under a totality of the circumstances.  *Phillips Petroleum*, 23 F.3d at 935.

Furthermore, federal common law recognizes that "even if a release is tainted by misrepresentation or duress, it is ratified if the releasor retains the consideration after learning that the release is voidable."  *Phillips Petroleum*, 23 F.3d at 937.

### 2.    Plaintiffs Have Not Met Their Burden of Establishing that the Settlement Agreements or Releases Were Procured Through Fraud, Duress, or Material Mistake

Here, Plaintiffs cannot point to undisputed material facts which conclusively establish that the Thompson and Tommie settlement agreements were the product of fraud, duress, or any other defense to contract formation.  Rather, as set forth extensively in S-Defendants' Motion for Summary Judgment (Docket No. 124), the

---

claims where the parties' settlement agreement contained releases and a section 1542 waiver barring such claims under either federal or California law); *Spell v. Cty of Los Angeles*, 2020 WL 5949238, at *9 (C.D. Cal. May 29, 2020) (dismissing civil RICO claims where the plaintiff signed a settlement agreement which contained a release and section 1542 waiver, and the plaintiff failed to show that the settlement agreement was void for fraudulent inducement or unconscionability).

- 6 -

record in this case proves the opposite.

Indeed, it was Plaintiffs who consistently solicited a settlement to the Thompson and Tommie lawsuits for nearly three years, and who pushed the settlement agreements over the finish-line after Sunset won a key ruling the day before trial was set to begin in the Thompson litigation.  (SAF, Nos. 35, 38-39.)  Plaintiffs were represented by counsel in the negotiations, drafted the agreements and the mutual releases, and agreed that the settlements were not the product of any duress.  (*Id.*, Nos. 43, 44-46, 50-52.)  Plaintiffs were clearly not overwhelmed or unequally matched in the negotiations leading up to the settlement agreements, and cannot now claim that the releases were the product of duress or some other unfair advantage.  *See Ingram*, 698 F.2d at 1315-16 (enforcing release of civil RICO claims where "the facts demonstrate that the releases were procured after nearly two years of negotiations over disputes" between the parties, and "[u]nder these circumstances—unlike those where a party with superior economic power forces unfounded provisions of a release on the other party—plaintiff should not be allowed to undermine the provisions of valid releases to which it agreed").

Plaintiffs also repeatedly emphasize that the settlements contain concessions and payments that are not provided-for under CEQA, suggesting that the settlements must have been extortionate because S-Defendants requested items that it was not entitled to recover under the statute.  First, the fact that a settlement contains concessions that are separate and additional to the underlying cause of action does not invalidate such settlements; federal law does not invalidate settlements because they go beyond the scope of the underlying dispute.  *U.S. v. Albertson*, 971 F. Supp. 837, 838 (D. Del. 1997), *aff'd* 156 F.3d 1225 (3d. Cir. 1998).  Further, the law does not penalize sharp or strong-armed negotiations.  *Infa-Lab, Inc. v. KDS Nail Int'l*, 2009 WL 10691370, at *3 (E.D. Cal. Apr. 1, 2009) ("[A]lleged statements and posturing in the context of settlement negotiations can hardly provide compelling

proof that a [party] acted capriciously, pursued litigation to harass the defendant, or intended to bring a meritless or unreasonable case."). Second, and more importantly, the settlement agreements bilaterally went beyond the CEQA statute, with both sides receiving non-CEQA terms. Plaintiffs, tellingly, do not mention the easement and tie-back granted them under the settlements as if to suggest that they had no value to S-Defendants or were immaterial to those agreements.

### 3.   Under Federal Law, Plaintiffs Cannot Invalidate the Releases After Having Accepted the Settlement Agreements' Benefits

Even if the Court finds that the releases were procured through duress, fraud, or some other ground, Plaintiffs ratified those releases by accepting the benefits of the settlement agreements and never, even now, acting to invalidate them or declare them wholly unenforceable. *See, e.g. Aikins v. Tosco Ref. Co.,* No. C-98-00755-CRB, 1999 WL 179686, at *4 (N.D. Cal. Mar. 26, 1999) ("Numerous federal courts hold that by accepting and retaining the benefits of a voidable release, a party ratifies the release and cannot avoid its obligation").

Plaintiffs have never moved to rescind the settlements in state court, have not asked for rescission of the settlements in the instant action, and have not tried to return any value from the easements that they received thereunder. "By accepting and retaining the benefits of a voidable release, a party ratifies the release and cannot avoid its obligations." *Aikins*, 1999 WL 179686, at *4; *accord Wittorf v. Shell Oil Co.*, 37 F.3d 1151, 1154 (5th Cir. 1994) ("A voidable waiver and release can still be enforced if it is ratified"); *Reid v. IBM Corp.,* 1997 WL 357969, at *10 (S.D.N.Y. June 26, 1997) (by accepting severance pay benefits of release after the alleged undue influence, duress, and incapacity was removed plaintiff ratified the release); *see also IMO Dev. Corp. v. Dow Corning Corp.*, 49 Cal. App. 3d 315, 326 (1975) ("It is axiomatic that . . . the entitled party must rescind the entire contract and may not retain the rights under it which he deems desirable and repudiate the remainder") (quoting *Yeng Sue Chow v. Levi Strauss & Co.*, 49 Cal. App. 3d 315, 326 (1975));

*Simmons v. Cal. Inst. Of Tech.*, 34 Cal. 2d 264, 275 (1949) (holding that retention of only the benefits constitutes unjust enrichment and binds the parties to terms not contemplated within the agreement).

**4.     Plaintiffs Offer No Evidence That the Releases Themselves Were Procured Through Extortion or Other Improper Means**

Finally, the idea that Plaintiffs were extorted into agreeing to the broad release language cuts against the theory of their case, which is that S-Defendants filed the underlying CEQA actions for money and concessions (not for a release from tort liability related to those actions).  Plaintiffs' Third Amended Complaint ("TAC") alleges that S-Defendants advanced meritless CEQA lawsuits in order "to delay a competing development and unlawfully extort millions of dollars" from Plaintiffs despite knowing the challenge was frivolous before they even filed the lawsuit.  (TAC ¶¶ 73-74.)  Plaintiffs then supposedly "succumbed to the threats, and ultimately paid S-Defendants millions of dollars in blood money."  (*Id.*)  Nowhere in the 45-page TAC do Plaintiffs complain of being extorted into signing an overbroad release in the Thompson and Tommie settlement agreements.  Plaintiffs do not even allege which of the parties first proposed the release provisions, or that the release was a major sticking point in negotiations (unlike, for example, the amount of the payment or the building concessions).

Even assuming that a release is not enforceable where it is "a key tool" of a RICO scheme, *Monterey Bay Military Housing, LLC v. Pinnacle Monterey LLC*, 116 F. Supp. 3d 1010, 1051 (N.D. Cal. 2015), Plaintiffs cannot demonstrate that the releases themselves, as opposed to the monetary and structural alterations at the heart of the settlement agreements, were part of such a scheme—for then they would have to explain why the releases would be of any importance to S-Defendants after they already squeezed the "blood money" out of the Thompson and Tommie projects.

For these reasons, Plaintiffs' RICO claims, to the extent they arise out of the

Thompson and Tommie lawsuits and settlement agreements, are barred by the releases under federal law and the Motion must be denied.

C.      **Even if California Law Does Apply, The Thompson and Tommie Settlement Releases are Enforceable**

1.      **The Releases Do Not Affect a Concurrent Tort, and Were Instead Intended to Resolve a Past Dispute**

Even if the validity of the releases is construed under California law, they are nonetheless still enforceable as Plaintiffs cannot show that the releases were concurrent with the alleged RICO tort.  While courts construe Section 1668 as "prohibit[ing] a party from avoiding liability for concurrent or future torts" (*Brandt v. Verizon Communications, Inc.*, 2019 WL 2124338 at *7 (N.D. Cal. 2019)), the section does not invalidate a release where the elements of the affected tort occurred before the release was executed.  For instance, in *Brandt*, plaintiffs tried to invalidate a release under Section 1668 because defendants allegedly made misrepresentations to induce plaintiffs' employment and then required plaintiffs' execution of releases to receive severance benefits from that employment.  *Id.*  The court held, however, that at the time plaintiffs executed the release they were already aware of the elements and scope of the alleged fraud.  *Id.* at *7 (noting that "plaintiffs signed the releases anyway" and emphasizing that "at the time they signed the releases, plaintiffs had obtained legal counsel who had been communicating on their behalf with Verizon regarding their severance benefits").  Similarly, in *Marani v. Cramer*, 2021 WL 254308 (N.D. Cal. 2021), the court noted that Section 1668 does not "prohibit settlements of disputes relating to past conduct," and noted that courts have generally (if not always) applied the concurrent tort rule to cases alleging "fraudulent inducement of the very contracts with the exemption clauses."  2021 WL 254308 at *2.

Here, by Plaintiffs' own allegations, S-Defendants' extortion scheme began long before the parties started negotiating settlement agreements, and Plaintiffs were

aware of that extortion.  Plaintiffs allege that S-Defendants filed meritless CEQA petitions against the Thompson and Tommie projects months (22 months and 7 months, respectively) before the settlements were signed.  Plaintiffs allege that almost a year before the settlements' execution, Sunset sent Plaintiffs a list of demands regarding the Thompson Hotel and indicated that "even if [Thompson and Relevant] agreed to all of its non-monetary demands—which were largely unrelated to the CEQA litigation—it would continue to pursue and litigate these lawsuits unless [Thompson] and Relevant agreed to pay Sunset Landmark a significant amount of money."  (TAC ¶ 76.)  Plaintiffs even allege that during these negotiations they challenged Sunset's monetary demands as including "blood money," and that during meetings Sunset's objective was "primarily, if not exclusively, about extracting a monetary payout."  (TAC ¶ 82.)  As to the Tommie Hotel, Plaintiffs allege that S-Defendants engaged in "meritless objections and legal arguments . . . both in the administrative entitlement process and in the CEQA action."  (TAC ¶ 96.)

In fact, Plaintiffs go to great lengths to explain how the supposedly extortionate scheme was immediately apparent when Sunset filed its initial objections to the Thompson Hotel in advance of filing the CEQA lawsuit.  Moreover, Plaintiffs point out that when Sunset filed an initial objection to the Selma Hotel—while "the ink was barely dry on the" Thompson and Tommie settlements—they were supposedly told "You know the drill. It's going to take a check to make this go away."  (TAC ¶ 15.)  If Plaintiffs' allegations are to be believed, they were already well aware of S-Defendants' extortionate tactics before they settled the Thompson and Tommie lawsuits.  While Plaintiffs proudly claimed they "refused to succumb to this renewed extortionate threat" (*Id.* ¶ 115), they also refused to return the valuable consideration they received in the settlements—namely, the five-year easement and tie-back agreement for the Tommie Hotel, and the dismissals of the underlying CEQA lawsuits.  This is not the conduct of a party shocked to discover it was nothing but a

108008751.3

- 11 -

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

mark in a racketeering ring.  Nevertheless, Plaintiffs amazingly now claim that S-Defendants' behavior "could not possibly have been within the contemplation of the contracting parties," when the settlements were negotiated and executed.  *Marani*, 2021 WL 254308, at * 2.

The elements of S-Defendants' alleged racketeering and extortion therefore existed before the settlements' execution, and Plaintiffs understood the nature and scope of their potential RICO claims against S-Defendants at the time they (through the aid of counsel) signed the settlement agreements.  Rather than seek contemporaneous remedies against that alleged extortion (such as requesting sanctions in the Superior Court, bringing counterclaims against S-Defendants, or even alerting law enforcement), Plaintiffs signed releases exculpating both sides from claims relating to their disputes.  The Court should view the releases as "settling disputes relating to past conduct," and therefore unaffected by Section 1668.  *Marani*, 2021 WL 254308, at * 2.

### 2.   In RICO Cases, Section 1668 Does Not Invalidate Releases That Are "Extrinsic to the Contractual Relationship"

Courts also do not apply Section 1668 in civil RICO cases unless "the [tortious] behavior is extrinsic to the contractual relationship and could not have been within the contemplation of the contracting parties."  *Marani*, 2021 WL 254308 at *2.  Moreover, unless the release was a "'key tool" in the fraud underpinning the civil RICO claim and done in furtherance of the goal," Section 1668 does not apply.  *Id*. Plaintiffs rely on *Monterey Bay Military Housing, LLC v. Pinnacle Monterey LLC*, for the proposition that Section 1668 bars the release of RICO claims where the release was a "key tool" of a RICO scheme.  116 F. Supp. 3d 1010, 1051 (N.D. Cal. 2015).  *Monterey Bay* provides no support to Plaintiffs' claims, however, as the agreement at issue was an operating agreement between two companies, and not a settlement agreement.  *Id*.  This distinction was key because the operating agreement not only provided the defendants with the mechanism through which they would

carry out their fraudulent scheme, but also insulated them from future liability resulting from that scheme. *Id.* In other words, plaintiffs in *Monterey Bay* did not, and could not, know of the defendants' fraudulent scheme at the time of signing the agreements, and through the release were then foreclosed from bringing a case arising out of that fraud. *Id.* Accordingly, the release provision of the operating agreement was a "key tool" in advancing the scheme, and was thus unenforceable under Section 1668. *Id.*

Similarly, in *Hardwick v. Wilcox*, a waiver of unknown claims under California Civil Code section 1542 ("Section 1542") was unenforceable for the same reasons. 11 Cal. App. 5th 975, 990-91 (2017). There, the release was not part of a settlement agreement, but was instead a provision within an illegal loan agreement that violated California usury law. *Id.* Again, because the release was a "key tool" in the execution of a plan to bind a company to a usurious loan while depriving them of the ability to bring claims arising out of that illegal loan, it was unenforceable under Section 1668. *Id.* Nevertheless, *Hardwick* noted that had there been a future dispute as to whether the loan agreement was usurious, and the parties then entered into settlement agreements resolving that dispute and releasing not only the usury claims but also all other known and unknown claims under Section 1542, those releases **would be enforceable**. *Id.* (citing *Casey v. Proctor*, 59 Cal. 2d 97, 111 (1963) ("The policy of the law is to encourage out-of-court settlements. To further this policy, the parties to a dispute should be encouraged to negotiate settlements and to enter into releases")).

Unlike in *Monterey Bay* and *Hardwick*, the settlement agreements here are not the mechanisms through which S-Defendants carried out their purported extortionate scheme, nor are the releases within the agreements a "key tool" in that scheme. Rather, Plaintiffs' case is solely based on a scheme to use plainly frivolous CEQA lawsuits in order "to delay a competing development company and unlawfully extort

108008751.3

- 13 -

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

. . . millions of dollars in blood money" from them, despite knowing the challenges were frivolous before the lawsuits were even filed.  (TAC ¶¶ 73-74.)  In that telling, the CEQA lawsuits and S-Defendants' subsequent negotiation demands, not the settlement releases, were the "key tools" used to extract the "blood money" from Plaintiffs.  Nor do Plaintiffs complain that they were extorted into signing overbroad releases in the Thompson and Tommie settlement agreements.  Instead, they supposedly "succumbed to the threats," posed by the CEQA lawsuits "and ultimately paid Defendants millions of dollars in blood money." (*Id.*)  Plaintiffs do not even allege which of the parties first proposed the release provisions, or that the release was a major sticking point in negotiations (unlike, for example, the amount of the payment or the building alterations).  And unlike *Monterey* and *Hardwick*, Plaintiffs cannot demonstrate that the releases themselves, as opposed to the monetary and structural alterations at the heart of the settlement agreements, were ever part of S-Defendants' extortionate scheme.  Nor can they explain why the releases would be of any importance to S-Defendants after they already squeezed the "blood money" out of the Thompson and Tommie projects.

Instead, this case is precisely like the situation discussed in *Hardwick* where a broad release of claims under Section 1542 would be enforceable.  *See* 11 Cal. App. 5th 975, 990-91 (noting that where a party was subject to an extortionate or fraudulent scheme, the parties litigated the issue, and then the parties entered into settlement agreements resolving that dispute and releasing all claims known and unknown, those releases **would be enforceable**).  Even indulging Plaintiffs' fantasies that the CEQA lawsuits were part of an extortion racket, the parties litigated those cases for 18 months, and on the eve of trial—after S-Defendants received a favorable ruling on a key motion—Plaintiffs immediately settled the lawsuits.  As part of the settlements, the parties agreed to release each other not only from the underlying CEQA claims, but also from "any and all claims, demands, liens, actions, suits, causes of action . . .

and liabilities of every kind or nature, in law, equity or otherwise, whether now known or unknown, suspected, or unsuspected, and whether concealed or hidden, relating to, arising out of, or in any way stemming from [the referenced Action] or any claim or cause of action alleged in [the referenced Action]." (S-Defendants SUF, No. 33.) This is exactly the type of dispute resulting in a settlement and broad release of known and unknown claims contemplated by *Hardwick* and permitted by California law.

### 3. Plaintiffs are Barred from Disregarding the Settlement Agreements Because the Only Remedy for an Agreement Induced by Extortion is Rescission, and that Remedy no Longer Available to Plaintiffs

Even if the settlement releases were procured through extortion, Plaintiffs are still barred from invalidating those agreements through a RICO claim. In California, a party that believes it has been wrongfully induced to enter into a contract must **rescind the contract**; it cannot simply argue that the contract is unenforceable while retaining the consideration it obtained. *See State Compensation Ins. Fund v. Khan*, 2012 WL 12887395, at *3-4 (C.D. Cal. Dec. 28, 2012) ("If a party believes it has been fraudulently induced to enter into a contract, in order to escape from its obligations the aggrieved party must rescind" the contract) (quoting *Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 921 (2010) and *Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996)); *see also Simila v. Am. Sterling Bank*, 2010 WL 11442911, at *7 (S.D. Cal. Apr. 27, 2010) (dismissing claim for rescission brought under California Civil Code section 1668 where plaintiff failed to fulfill the procedural requirements for rescission under California Civil Code section 1691).

Here, and as noted above, Plaintiffs have not sought rescission as remedy (*see* TAC, Prayer for Relief), nor are they now able to rescind the settlement agreements through a RICO claim. First, they have not fulfilled the procedural requirements necessary for rescission. California Civil Code section 1691 ("Section 1691")

requires that before rescinding a contract, the Plaintiffs must "promptly upon discovering facts which entitle [them] to rescind . . . give notice of rescission to the party as to whom [they] rescind[], and restore to the other party everything of value which [they] ha[ve] received . . . under the contract or offer to restore the same upon condition that the other party do likewise." *See also Ford v. Shearson Lehman/Am. Express, Inc.*, 180 Cal. App. 3d 1011, 1028 (1986) ("Recission requires that the aggrieved party provide the other party to the agreement with prompt notice and an offer to restore the consideration received, if any") (internal quotations omitted). Plaintiffs have done neither. Moreover, Plaintiffs claim to have known of S-Defendants' extortionate tactics when they filed their initial objections to the Thompson Hotel. (TAC ¶ 74.) They are also quick to point out that when Sunset filed a new objection to the Selma Hotel—while "the ink was barely dry on the" Thompson and Tommie settlements—they were supposedly told "You know the drill. It's going to take a check to make this go away." (TAC ¶ 15.) Thus while they clearly "knew" that S-Defendants' CEQA challenges were frivolous before they entered into the settlement agreements, they undoubtedly knew immediately after. Yet at no point after that threat did Plaintiffs ever seek to rescind the settlement agreements or inform S-Defendants of their intent to do so. Unsurprisingly, Plaintiffs never offered to return the consideration provided to them through the Thompson and Tommie settlement agreements.

Additionally, as discussed at-length in S-Defendants' Motion for Summary Judgment (Docket No. 124), Plaintiffs are barred by the litigation privilege from attempting to set aside the releases through rescission. *See Basco*, 2011 WL 13127142, at *8 (citing *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal. App. 4th 17, 27 (2002) (rejecting plaintiff's efforts to set aside a "fraudulently induced release" because the alleged fraud at issue was considered intrinsic, not extrinsic, fraud)). Finally, where rescission is not presented as a separate cause of action, it may not be

108008751.3

- 16 -

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

sought as a remedy under a RICO claim because RICO does not allow for equitable relief. *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1088 (9th Cir. 1986). "The legislative history and statutory language suggest overwhelmingly that no private equitable action should be implied under civil RICO." *Id.* Further, recission is not available as a remedy under RICO where, as here, "rescission would require more than a simple return of out-of-pocket loss." *State Compensation*, 2012 WL 12887395, at *3-4 (quoting *Volckmann v. Edwards*, 642 F. Supp. 109 (N.D. Cal. 1986) (rescission unavailable where it would require the unraveling of a complex set of transactions)).

Because Plaintiffs are unable to rescind the settlement agreements and releases, they are enforceable regardless of how they were obtained and Plaintiffs' RICO claims arising out of the Thompson and Tommie lawsuits are therefore barred.

### D.   As A Matter Of Law, There Was No Extortion

Finally, even assuming the Plaintiffs applied the correct law, moved to rescind the agreements, and returned the value of the benefits of the agreement, Plaintiffs' Motion still fails because the settlements were not extortionate as a matter of law.

Conspicuously, Plaintiffs do not offer any analysis of the elements of extortion in their Motion.  However, in order to establish the "wrongfulness" element of extortion, Plaintiffs must establish they had a "pre-existing right to be free from the threatened harm, or that the defendant had no right to seek payment for the service offered." *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1133 (9th Cir. 2014).  Settling a legitimate legal dispute for consideration that was not requested in a prayer for relief is not considered extortion under the Hobbs Act because a developer has no pre-existing right to be free from legitimate legal challenges. *Albertson*, 971 F. Supp. at 838 (finding defendant's unsolicited offer to drop his legal opposition to a development project in exchange for the plaintiff providing a $20,000 sponsorship for defendant's semi-professional football team was not "wrongful" under the Hobbs

1   Act).

2       Here, like in *Albertson*, Plaintiffs had no pre-existing right to be free from any

3   harm associated with legitimate legal opposition to their hotel projects.  Plaintiffs

4   also did not have a pre-existing right to the tie-back agreement and temporary

5   easement granted under the settlement agreements to "assist with the construction of

6   the Tommie Hotel."   Both Sunset's dismissal of its CEQA lawsuit, and the granting

7   of the tieback and temporary easement, conferred a benefit to Plaintiffs that they

8   "[were] not otherwise entitled by law." *Viacom Int'l Inc. v. Icahn*, 747 F. Supp. 205,

9   213 (S.D.N.Y. 1990), aff'd, 946 F.2d 998 (2d Cir. 1991).  Accordingly, as a matter

10  of law, the settlements were not extortionate.  *Id.*

11  **IV.    CONCLUSION**

12      For the foregoing reasons, S-Defendants respectfully request that the Court

13  deny Plaintiffs' Motion for Partial Summary Judgment in its entirety.

14

15  Dated:  May 23, 2022        **NORTON ROSE FULBRIGHT US LLP**

16

17                  By  */s/ Christopher Pelham*

18                      CHRISTOPHER PELHAM
                        Attorneys for Defendants
19                      THE SUNSET LANDMARK INVESTMENT,
                        LLC, and STEPHEN "SAEED" NOURMAND
20

21

22

23

24

25

26

27

28