1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
ALI R. RABBANI, State Bar No. 253730
arabbani@wsgr.com
CONOR TUCKER, State Bar No. 318075
ctucker@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, California 90071-2027
Telephone:   (323) 210-2900
Facsimile:   (323) 974-7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Plaintiffs Relevant Group,
LLC; 1541 Wilcox Hotel LLC; 6516
Tommie Hotel LLC; and 6421 Selma
Wilcox Hotel LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: 2:19-cv-05019-ODW-KS <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S STATEMENT OF UNCONTROVERTED FACTS** <br><br> Date:   June 13, 2022 <br> Time:   1:30 p.m. <br> Dept:   Courtroom 5D, Fifth Floor <br> Before:   Hon. Otis D. Wright II |

1

## TABLE OF ABBREVIATIONS

2

| Abbreviation | Document | ECF Nos. |
|---|---|---|
| "De Castro Decl." | Declaration of Maria Rachelle DeCastro in Support of Defendant Nourmand & Associates' ("N&A") Motion for Summary Judgment | 123-6 |
| "Gould Decl." | Declaration of Sarah Gould in Support of Defendant N&A's Motion for Summary Judgment | 123-7 |
| "Kaufman Decl." | Declaration of Granville C. Kaufman in Support of Plaintiffs' Response to Defendants Saeed Nourmand's and The Sunset Landmark Investment, LLC's (together, the "Sunset Defendants")Motion for Summary Judgment | 139 |
| "King Decl." | Declaration of Grant King in Support of Plaintiffs' Response to the Sunset Defendants' Motion for Summary Judgment | 137-1 |
| "Nourmand Decl." | Declaration of Saeed Nourmand in Support of the Sunset Defendants' Motion for Summary Judgment | 124-2 |
| "RJN" | Request for Judicial Notice in Support of the Sunset Defendants' Motion for Summary Judgment | 127-3 127-4 127-5 127-6 |
| "Shayne Decl." | Declaration of Andrew Shayne in Support of Plaintiffs' Response to the Sunset Defendants' Motion for Summary Judgment | 137-2 |
| "Thakor Decl." | Declaration of Neil P. Thakor in Support of Sunset Defendants' Motion for Summary Judgment | 127-1 127-2 |
| "Thomas Decl." | Declaration of Tina Thomas in Support of Plaintiffs' Oppositions to Defendants' Motions for Summary Judgment | 137-3 |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pursuant to the Central District of California's Local Rule 56-2 and this Court's Scheduling and Case Management Order, Plaintiffs respectfully submit the following separate statement of genuine issues of material facts in support of its opposition to Defendant Sunset Landmark Investment, LLC and Saeed Nourmand's Motion for Summary Judgment.

## PLAINTIFFS' RESPONSES TO DEFENDANTS' UNCONTROVERTED FACTS

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| 1. Defendant Sunset Landmark Investment, LLC ("Sunset") owns the historic Hollywood Athletic Club Building on Sunset Boulevard. Sunset's principal is Stephan "Saeed" Nourmand ("S. Nourmand") (together with Sunset the "S Defendants"). | Undisputed. |
| 2. Except for the three petitions challenging Plaintiffs' hotels, Sunset has never filed a CEQA petition or a city appeal challenging a development. | Disputed.  In addition to its administrative challenges, Sunset filed an appeal of six LADBS permits and/or permit applications in August 2016.  On July 13, 2018, Sunset filed a letter objecting to the proposed Schrader hotel.  On August 10, 2018, Sunset filed an appeal of the approval of the Schrader Hotel project, which it later withdrew without any changes to the project. <u>Plaintiffs' Evidence:</u> Kaufman Decl. Exs. 1, 2, 3, 4 at 105 (tr. 93:14-18); Thakor Decl. Ex. E at 64-65 (tr. 75:6-76:11). <u>Defendants' Evidence:</u> Nourmand Decl., ¶ 10; Thakor Decl., Ex. A, King Tr., 64, 66-68, 60 75-78,187-188. |
| 3. Prior to forming Sunset Landmark, Saeed was the owner/operator of | Undisputed as to first sentence. Disputed as to second sentence. |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| Nourmand & Associates ("N&A"). Before 2010, Saeed relinquished not only all operational control of N&A to his wife and sons. | Evidence shows that Saeed Nourmand continued to exert control over N&A operations, employees, and office resources. <br><br>Plaintiffs' Evidence: <br>Kaufman Decl. Exs. 5-12. <br><br>Defendants' Evidence: <br>Nourmand Decl., ¶ 3. |
| 4. Relevant Group, LLC ("Relevant") is an umbrella company that describes itself as "a vertically integrated, design-focused real estate development company that creates distinctive hospitality, real estate, and lifestyle destinations." | Undisputed. |
| 5. Relevant does not have a direct ownership interest in Plaintiff 1541 Wilcox, LLC. | Undisputed that Relevant's ownership interest in 1541 Wilcox, LLC is through Hollywood International Regional Center (HIRC).   Relevant contributed key money and equity financing for the entity; its principals have personal guarantees on the construction loans, which Relevant must indemnify; and its employees have operational responsibilities for the hotel as its owner. <br><br>Plaintiffs' Evidence: <br>*See* Shayne Decl. ¶¶ 3-6. <br><br>Defendants' Evidence: <br>Thakor Decl., Ex. B, Shayne Tr.,126:10-22; 78:08-12, 131:16-132:7,162:17-22. |
| 6. Relevant does not have a direct ownership interest in Plaintiff 6516 Tommie, LLC. | Undisputed that Relevant's ownership interest in 6516 Tommie, LLC is through HIRC.   Relevant contributed key money and equity financing for the entity; its principals have personal guarantees on the construction loans, which Relevant must indemnify; and its employees |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| | have operational responsibilities for the hotel. |
| | <u>Plaintiffs' Evidence:</u> <br> *See* Shayne Decl. ¶¶ 3-6. |
| | <u>Defendants' Evidence:</u> <br> Thakor Decl., Ex. B, Shayne Tr., 126:10-22; 78:08-12. |
| 7.  Relevant does not have a direct ownership interest in Plaintiff 6421 Selma Wilcox, LLC. | Undisputed that Relevant's ownership interest in 6421 Selma Wilcox, LLC is through HIRC. Relevant contributed key money and equity financing for the entity; its principals have personal guarantees on the construction loans, which Relevant must indemnify; and its employees have operational responsibilities for the hotel. <br><br> <u>Plaintiffs' Evidence:</u> <br> *See* Shayne Decl. ¶¶ 3-6. <br><br> <u>Defendants' Evidence:</u> <br> Thakor Decl., Ex. B, Shayne Tr., 126:04-16. |
| 8.  In total, Relevant has been involved in the development of at least 9 separate projects in Hollywood and Downtown Los Angeles in the past ten years. | Undisputed. |
| 9.  On February 23, 2015, the City of Los Angeles (the "City") issued a Notice of Public Comment for the Thompson Hotel. | Undisputed. |
| 10. Sunset had concerns that another 12-story hotel with a roof top bar would negatively impact the environment and neighborhood. | Disputed.  Sunset did not have *bona fide* concerns that the proposed hotel would negatively impact the environment. The evidence shows that Sunset was concerned that a 12-story hotel with a rooftop bar would impair its ability to build competing |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| | developments and compete with its business interests. <br><br> Plaintiffs' Evidence: <br> Thakor Decl. Ex. P; Kaufman Decl. Exs. 13-19. <br><br> Defendants' Evidence: <br> RJN, Ex. 11 ("Wilcox AR Index"), REL33532. |
| 11. Several other residents and commercial property owners also opposed the Thompson Hotel. | Undisputed that other persons objected in the City's administrative process. |
| 12. From 2015 to 2018, Relevant made multiple efforts to convince Sunset to drop its opposition to the Thompson and Tommie Hotels. | Undisputed. |
| 13. On October 19, 2015, the City approved the Thompson Hotel Project with a mitigated negative declaration ("MND") | Disputed.  The City approved the Thompson Hotel Project with a mitigated negative declaration on February 10, 2016. <br><br> Plaintiffs' Evidence: <br> Kaufman Decl. Ex. 20 (Wilcox AR). <br><br> Defendants' Evidence: <br> RJN, Ex. 11, Wilcox AR Index, REL33552, REL33569. |
| 14. In CEQA actions, challengers prevail 50% of the time, and 58% of the time when the challenge involved a negative declaration. | Undisputed. |
| 15. On January 11, 2016, Sunset filed an appeal challenging the City's approval of the Thompson Hotel. | Undisputed that on January 11, 2016 Sunset filed an appeal with the City's Planning and Land Use Management regarding the City's approval of the Thompson Hotel. <br><br> Defendants' Evidence: <br> RJN, Ex. 11, Wilcox AR Index, REL33560-33561. |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| 16. David Carrera, Girodo, Gideon Kracov, and [Doug] Haines supported Sunset's appeal. | Undisputed that, according to the Administrative Record Index lodged in *Sunset Landmark v. City of Los Angeles*, Case No. BS160807, those individuals "opposed project, support appeal." <br><br> Defendants' Evidence: <br> RJN, Ex. 11, Wilcox AR Index, REL33562, 33565, 33567. <br><br> **Plaintiffs' Objection**:  Plaintiffs object to this fact to the extent it calls for speculation and lacks foundation. |
| 17.  Several other persons appealed the approval of the Thompson Hotel. | Undisputed that the administrative record reflects two other persons (David Carrera and Fran Offenhauser) filed appeals with the City's Planning and Land Use Management regarding the City's approval of the Thompson Hotel. <br><br> Defendants' Evidence: <br> RJN, Ex. 11, Wilcox AR Index, REL33556-33559. |
| 18.  On February 3, 2016, the City of Los Angeles issued a Notice of Determination denying all appeals. | Undisputed. |
| 19.  On March 6, 2016, Sunset filed a Verified Petition For Writ of Mandate against the City of Los Angeles challenging the approval of the Thompson Hotel Project. Wilcox was named as a real party in interest. | Undisputed. |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| 20. In the Thompson Litigation, Sunset supported its argument that the City unlawfully approved the project with a mitigated negative declaration with citations to expert analysis. | Undisputed that Sunset provided citations.  It is disputed that the cited expert analysis applied to the actual project approved by the City pursuant to a mitigated negative declaration.<br><br>Plaintiffs' Evidence:<br>Thomas Decl. Ex. A at 24; Kaufman Decl. Ex. 21 at 208-09.<br><br>Defendants' Evidence:<br>RJN, Ex. 12, ("Wilcox Trial Brief") RJN, Ex. 13. |
| 21. The Thompson Litigation was litigated for over 18 months. | Undisputed. |
| 22. On April 21, 2017, in response to Plaintiffs' requests to settle, Robert Silverstein sent a proposal indicating terms Sunset would be willing to settle on. | Undisputed that on April 21, 2017, Robert Silverstein sent a proposal indicating terms that Sunset would be willing to settle on.<br><br>Disputed that the settlement discussions were initiated by Plaintiffs.  Defendants had previously made demands in 2015 and 2016, including several of the terms listed in the April 21, 2017 letter.<br><br>Plaintiffs' Evidence:<br>Kaufman Decl. Exs. 19, 22; Thakor Decl. Ex. U.<br><br>Defendants' Evidence:<br>Thakor Decl., Ex. N |
| 23. That proposal was rejected by Plaintiffs. | Undisputed. |
| 24. In June 2017, Relevant instructed its outside counsel, Guy Maisnik to settle the lawsuits. | Undisputed that Guy Maisnik represented Relevant in settlement negotiations with Defendants and made efforts to resolve the Thompson and Tommie lawsuits in June 2017. Disputed as to the term "instructed" or that the settlement |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| | discussions were initiated by Relevant.<br><br>Defendants' Evidence:<br>Thakor Decl., Ex. F, Maisnik Tr., 105-107 |
| 25. Mr. Maisnik then reached out to Sunset's counsel, Jayesh Patel, to act as "mediators" to bring their respective clients to reach a deal which "[had] to happen quickly." | Undisputed. |
| 26. During negotiations, Maisnik believed Mr. Patel's "candor and approach were refreshing and will help move these discussions in the right direction for both parties," that Mr. Patel did not come across as "unyielding, or unwilling to negotiate," and that he and Mr. Patel "got along pretty well" throughout the entire settlement process. | Undisputed that Guy Maisnik wrote an email to Jayesh Patel stating "Your candor and approach were refreshing and will help move these discussions in the right direction for both parties" in a June 23, 2017 email. Undisputed that Guy Maisnik testified that Jayesh Patel's style did not come across as "unyielding,or unwilling to negotiate." Guy Maisnik explained that Jayesh Patel's demands were "unreasonable."<br><br>Plaintiffs' Evidence:<br>Kaufman Decl. Exs. 23 at 239, 24 at 245-46 (tr. 117:14-118:1, 118:10-12).<br><br>Defendants' Evidence:<br>Thakor Decl., Ex. F, Maisnik Tr., 107-118, Ex. 3. |
| 27. On August 24, 2017, three hours after a "favorable" ruling for Sunset, Guy Maisnik emailed Jay Patel memorializing an agreement in principle to settle the Thompson and Tommie litigations. | Undisputed that, on August 24, 2017, Maisnik emailed Patel memorializing the parties agreement in principle to settle the Thompson and Tommie litigations.<br><br>Disputed that the August 24, 2017 tentative ruling was "favorable" on the merits of the litigation. Maisnik testified that he does not recall the ruling but that "something that might have been ruled in favor of Sunset |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| | but I just don't remember what it was or what its merits were or what its weight or value was." <br><br> <u>Plaintiffs' Evidence:</u> <br> Kaufman Decl. Ex. 24 at 247-48 (tr. 187:22-188:6). <br><br> <u>Defendants' Evidence:</u> <br> Thakor Decl., Ex. F, Maisnik Tr., Ex. 6 |
| 28. On August 25, 2017, the parties gave notice that a settlement had been reached, and vacated the hearing on the petition for writ of mandate. | Undisputed. |
| 29. From August 25, 2017 to January 8, 2018, the parties further negotiated the terms of the settlement. | Undisputed. |
| 30. On January 8, 2018, Sunset and Wilcox entered into a settlement agreement to resolve the Wilcox Litigation. | Undisputed. |
| 31. On January 8, 2018, Sunset and Tommie entered into a settlement agreement to resolve the Tommie Litigation. | Undisputed. |
| 32. The agreements, which were drafted by both parties, included a reduction in height, set-offs, delivery timeframes, and rooftop operation curfews. | Undisputed. |
| 33. Both agreements contained mutual releases for any claims relating to, arising out of, or in any way stemming from the underlying litigation, as well as a waiver releasing unknown claims under California Code of Civil Procedure section 1542. | Undisputed that the settlement agreements contained mutual releases and a CCP Section 1542 waiver. <br><br> <u>Defendants' Evidence:</u> <br> Thakor Decl., Ex. H <br> Thakor Decl., Ex. I |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| | **Plaintiffs' Objection**:  Plaintiffs object to this fact to the extent it calls for a legal conclusion as to enforceability of the releases and waivers. |
| 34.  Both agreements also contained representations that they were signed under the advice of counsel and not the product of any duress. Sunset also granted Tommie a temporary five year easement and a tieback agreement that allowed it to excavate under Sunset's parcel of land to "assist with the construction of the Tommie Hotel." | Undisputed. |
| 35.  Sunset also granted Tommie a temporary five year easement and a tieback agreement that allowed it to excavate under Sunset's parcel of land to "assist with the construction of the Tommie Hotel." Immediately thereafter, Sunset filed dismissals of both lawsuits and recorded the easement in favor of Plaintiffs. For its part, Relevant paid the entirety of the $5.5 million settlement amount within just three months. | Undisputed. |
| 36.  On May 12, 2017, the City of Los Angeles overruled the appeal and approved the Tommie Hotel. | Undisputed. |
| 37.  On June 9, 2017, Sunset filed a Petition For Writ of Mandate challenging the approval of the Tommie Hotel. | Undisputed. |
| 38.  On June 8, 2017, Lauren "Elle" Farmer filed a Petition against the Tommie Hotel. | Undisputed. |
| 39.  On June 9, 2017, Mama Wilcox, LLC, the owner of another newly | Undisputed. |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| built neighboring hotel, also filed a Petition challenging the approval of the Tommie Hotel. | |
| 40.  In July of 2018, Tommie settled the Mama Wilcox action. | Undisputed. |
| 41.  On January 8, 2019, an injunction was issued against the Tommie Hotel in the Farmer litigation. | Disputed.  When the Court remanded to the City to clarify its analysis and findings regarding the Project's potential construction and operational noise impacts, the court modified its injunction to allow certain construction activities  during remand.<br><br>Plaintiffs' Evidence:<br>RJN Ex. 14, Exs. B, C, D, E.<br><br>Defendants' Evidence:<br>RJN, Ex. 14. |
| 42.  [In] April 2019, Tommie settled the Farmer action. | Undisputed. |
| 43.  On March 6, 2018 the City of Los Angeles issued a Notice of Public Comment for the Selma Hotel. | Undisputed. |
| 44.  Several persons opposed the Selma Hotel. | Undisputed. |
| 45.  Immediately thereafter, Sunset filed dismissals of both lawsuits and recorded the easement in favor of Plaintiffs. | Undisputed. |
| 46.  Plaintiffs paid the entirety of the $5.5 million in three months. | Undisputed. |
| 47.  On September 6, 2018, Sunset filed an appeal against the approval of the Selma Hotel. | Undisputed. |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| 48. Several other persons filed an appeal against the approval of the Selma Hotel. | Undisputed. |
| 49. On March 6, 2019, the City issued a Notice of Determination denying all appeals. | Undisputed. |
| 50. On April 2, 2019 Sunset filed a Petition for Writ of Mandate [against the Selma Hotel]. | Undisputed. |
| 51. On April 4, 2019, Casey Maddren filed a Petition for Writ of Mandate. | Undisputed. |
| 52. Maddren testified that he does not know Stephan "Saeed" Nourmand and has never spoken to Mr. Nourmand. | Undisputed. |
| 53. Sunset's Petition for Writ of Mandate included citations to expert testimony on air quality for a fair argument that there may be significant impacts on the environment. | Disputed. While Sunset's Petition for Writ of Mandate cited a calculation made by a consulting firm, this does not constitute a "fair argument" that the proposed Selma Wilcox Hotel may create a significant impact on air quality. <br><br> <u>Plaintiffs' Evidence:</u> Thomas Decl. Ex. A at 29; Kaufman Decl. Ex. 21 at 217-18. <br><br> <u>Defendants' Evidence:</u> RJN, Ex. 24 |
| 54. On January 8, 2020, the trial court issued an interlocutory order remanding the Selma Hotel back to the City. | Undisputed that the court in *Selma Wilcox* litigation issued an interlocutory order remanding the matter to the City to "clarify its analysis and findings regarding the [MND] baseline and air quality analysis." <br><br> <u>Defendants' Evidence:</u> RJN, Ex. 21. |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| 55. Maddren's petition against the Selma Hotel was denied by the Court. | Undisputed. |
| 56. [In or around March 2019,] the City approved another hotel development project located near the HAC (the "Schrader Hotel") initiated by the development company the KoarGroup ("Koar"). | Undisputed that the Schrader Hotel was approved by the department of City Planning on August 3, 2018.<br>Defendants' Evidence:<br>Thakor Decl., Ex. E, Rothman Tr. 89:1-91:15 |
| 57. Sunset had concerns about another hotel with a rooftop bar being built in the neighborhood and filed an appeal to the Schrader Hotel. | Undisputed that Sunset filed objections regarding the Schrader, which included rote objections regarding "another alcohol soaked hotel" with a rooftop bar. Disputed that Sunset's concerns were genuine or that the appeal was made for a proper purpose.<br>Defendants' Evidence:<br>Thakor Decl., Ex. E, Rothman Tr. 63:15-24, 75:25-76:11. |
| 58. Representatives of the parties met to "figure out the best path forward." | Undisputed. |
| 59. After Schrader owners indicated that they did not intend to try to modify restrictions imposed by the City, Sunset withdrew its appeal. The hotel's representative, Mr. Rothman, testified that he did not feel Sunset was pressuring him in any way. | Undisputed that the owners of the proposed Schrader Hotel (at that time) indicated that they did not intend to try to modify restrictions imposed by the City.  Undisputed that Sunset withdrew its appeal at the City after Sunset's meeting with Rothman at Nourmand & Associates' office and after Nourmand learned that Relevant was not the developer behind the Schrader at that time.  Otherwise disputed.  The cited testimony does not support the assertion that Mr. Rothman did not feel Sunset was pressuring him "in any way." Rothman testified that "because Koar was self-funded ***it didn't have*** |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| | ***that time pressure*** in terms of when it started construction." |
| | Koar's other principal, Laurent Opman, believed that Sunset's objections to the Schrader project were part of Nourmand's "business plan" to "make money off his neighbors." |
| | <u>Plaintiffs' Evidence:</u> Kaufman Decl. Exs. 4 at 100 (tr. 88:18-21), 25. |
| | <u>Defendants' Evidence:</u> Thakor Decl., Ex. E, Rothman Tr. 63:15-24, 75:25-76:11; 82:7-14, 84:3-11. |
| 60.  The harm Relevant has suffered is the same as each of the other Plaintiffs. | Disputed.  Relevant has suffered cumulative harm from being challenged on multiple projects, such as the threat of losing investor support, which is distinct from the harm to each of its subsidiaries. |
| | <u>Defendants' Evidence:</u> Thakor Decl., Ex. W Thakor Decl., Ex. X Thakor Decl., Ex. Y Thakor Decl., Ex. Z |
| | **<u>Plaintiffs' Objection</u>:**  Plaintiffs object to this fact to the extent it calls for a legal conclusion. |
| 61.  The Sacramento Superior Court has found "the [City of Los Angeles'] practice of granting density bonuses…without complying with the Hollywood Redevelopment Plan…is unlawful." | Undisputed that this is partially excerpted language appears in a Sacramento Superior Court decision. |
| | <u>Defendants' Evidence:</u> RJN, Ex. 26. |
| | **<u>Plaintiffs' Objection</u>:**  Plaintiffs object to this fact to the extent it calls for a legal conclusion. |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| 62. Relevant's subsidiary, HIRC, owns another subsidiary, HIRC Wilcox, which in turn owns a portion of Wilcox. | Undisputed that HIRC is a subsidiary of Relevant Group and that HIRC Wilcox currently owns B Shares in 1541 Wilcox Hotel LLC.<br><br>Defendants' Evidence:<br>Thakor Decl., Ex. B, Shayne Tr., 126:10-22; 78:08-12, 131:16-132:7, 162:17-22. |
| 63. Wilcox does not directly own the Thompson Hotel, which is instead owned by Wilcox's subsidiary, 1541 Wilcox Holdings, LLC. | Undisputed that 1541 Wilcox Hotel, LLC owns 100% of 1541 Wilcox Holdings, LLC, which currently owns the physical land and property of the Thompson Hotel. 1541 Wilcox Hotel, LLC owns the operations of the Thompson Hotel.<br><br>Defendants' Evidence:<br>Thakor Decl., Ex. B, Shayne Tr., 126:10-22; 78:08-12, 131:16-132:7, 162:17-22. |
| 64. Tommie and Selma are similarly held through multiple layers of holding companies. | Undisputed that Relevant's ownership interest in Tommie and Selma Wilcox are through HIRC. Disputed as to the "multiple layers of holding companies" as vague.<br><br>Defendants' Evidence:<br>Thakor Decl., Ex. D, Shayne Tr., 126:10-22; 78:08-12, 131:16-132:7, 162:17-22. |
| 65. In 2007, Relevant began developing a series of hotel and hospitality-related buildings within one block of the HAC. | Undisputed that Relevant began developing the Dream Hotel in 2007, which is approximately one block away from the HAC. Disputed that in 2007 Relevant was developing other projects in Hollywood.<br><br>Defendants' Evidence:<br>Thakor Decl., Ex. A, King Tr., 81:18-24. |

-14-

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| 66. The first of these was the Dream Hotel, a 10 story hotel with a rooftop bar near the HAC. | Undisputed that the Dream Hotel is 10 stories, has a bar on its rooftop, is near the HAC, and is the first hotel project developed by Relevant.<br><br>Defendants' Evidence:<br>Thakor Decl., Ex. A, King Tr., 51:4-25. |
| 67. After successfully developing the Dream Hotel, Relevant moved on to additional properties adjacent to the HAC and in Downtown Los Angeles. | Undisputed that the Dream Hotel was the first hotel developed by Relevant and that, subsequently, Relevant began developing additional properties in Hollywood and Downtown Los Angeles, two of which hotels are adjacent to the HAC.<br><br>Defendants' Evidence:<br>Thakor Decl., Ex. A, King Tr., 51:4-25, 72:2-7, 79:13-80:3. |
| 68. In March of 2017, the parties discovered that the City impermissibly analyzed and disclosed an out-of-date version of the Thompson Hotel which not only failed to include the two planned rooftop bars, but even had the building facing the opposite direction. | Disputed.  The City had appropriately analyzed and disclosed the final plans for the Thompson. The parties, including Saeed Nourmand, were aware of these changed plans before March 2017 because it was Mr. Nourmand who had requested the changes and Relevant provided him links to the approved plans.<br><br>Plaintiffs' Evidence:<br>Kaufman Decl. Exs. 26-27.<br><br>Defendants' Evidence:<br>RJN, Ex. 27, August 24, 2017 Tentative Ruling. |
| 69. The City brought a motion to augment the administrative record to | Undisputed that the City brought a motion to augment the |

-15-

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| include materials purportedly showing the City analyzed the correct version of the project, which was continued to the day the trial was set to begin. | administrative record to include a PowerPoint presentation.<br><br>Otherwise disputed.  The motion did not address whether the City analyzed the correct version of the project.<br><br>Defendants' Evidence:<br>RJN, Ex. 1, Wilcox Docket. |
| 70.  The day before trial, on August 24, 2017, the trial court issued a tentative ruling denying the motion. | Undisputed. |
| 71.  [In March of 2017,] while the Thompson Hotel litigation was pending, the City issued a notice of public comment for the approval of the Tommie Hotel. | Undisputed. |
| 72.  As was the case with the Thompson Hotel, Sunset and other community members opposed the Tommie Hotel on the grounds that it would increase noise and traffic, add further strain on local infrastructure, and negatively impact the overall aesthetic of the neighborhood. | Undisputed that Sunset submitted objections that purported to raise these concerns.  Disputed that Sunset genuinely held such concerns.<br><br>Defendants' Evidence:<br>RJN, Ex 15.<br><br>**Plaintiffs' Objection**:  Plaintiffs object to this fact to the extent it calls for a speculation and lacks foundation with respect to unidentified community members. |
| 73.  Once again, the City approved the project in spite of those objections. | Undisputed. |
| 74.  From 2015 to 2018, Relevant made repeated, and unsolicited, efforts to convince Sunset to "consider changing [its] position regarding supporting, or at least not opposing," Plaintiffs' projects. | Disputed.  Relevant's offers were solicited by, and made in response to, Defendants' demands to change Relevant's proposed hotel projects. Those demands began in March 2015 and culminated in a demand for monetary payments to settle the litigation.  The quoted language was from John Tronson, principal of |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| | Avision Young, not Relevant. Defendants complained that Relevant did not adequately try to resolve Nourmand's concerns in 2015. <br><br> <u>Plaintiffs' Evidence:</u> <br> Kaufman Decl. Exs. 19, 28; Thakor Decl. Ex. U. <br><br> <u>Defendants' Evidence:</u> <br> Thakor Decl., Ex. J <br> Thakor Decl., Ex. K <br> Thakor Decl., Ex. L <br> Thakor Decl., Ex. M <br> Thakor Decl., Ex. N <br> Thakor Decl., Ex. O <br> Thakor Decl., Ex. P <br> Thakor Decl., Ex. Q <br> Thakor Decl., Ex. R <br> Thakor Decl., Ex. S <br> Thakor Decl., Ex. T <br> Thakor Decl., Ex. U |
| 75.  Mr. Maisnik's asked Sunset to settle the Thompson Hotel litigation again one week before trial, this time also asking to settle the Tommie litigation. | Undisputed that Maisnik sent the cited emails.  Disputed that Maisnik initiated settlement discussions. Beginning in 2015,  Defendants made demands to change Relevant's hotel projects. <br><br> <u>Plaintiffs' Evidence:</u> <br> Kaufman Decl. Exs. 19, 22; Thakor Decl. Ex. U. <br><br> <u>Defendants' Evidence:</u> <br> Thakor Decl., Ex. K <br> Thakor Decl., Ex. L |
| 76.  Mr. Maisnik admitted the tentative order denying the City's Motion to Augment was "favorable to Sunset." | Disputed that the August 24, 2017 tentative ruling was favorable on the merits of the litigation.  Maisnik testified that he does not recall the ruling but that "something that might have been ruled in favor of Sunset but I just don't remember what it |

-17-

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| | was or what its merits were or what its weight or value was." <u>Defendants' Evidence:</u> Thakor Decl., Ex. F, Maisnik Tr., 188:2-10. |
| 77. Days after Relevant paid off the entirety of the settlement amount in the Thompson Hotel and Tommie Hotel lawsuits, Mr. Heyman invited S. Nourmand to lunch as a "thank you," and "to express how glad I am we have resolved our issues . . . ." | Undisputed that after Relevant made the settlement payment, Richard Heyman sent a text message that reads "Hi Saeed I wanted to reach out to express how glad I am we have resolved our issues . . . ." Disputed as to whether the purpose of the lunch was to thank Saeed Nourmand. <u>Defendants' Evidence:</u> Thakor Decl., Ex. T, March 2018 Text messages. |
| 78. S. Nourmand accepted the invitation, and the meeting took place about 10 days later on the roof of the Dream Hotel. | Undisputed. |
| 79. In or around 2018, Relevant announced that it had acquired the Schrader Hotel project (which remains undeveloped to this date). | Undisputed. |
| 80. Sunset's property does not compete with hotels. | Disputed.  Sunset's property includes a night club (formerly Boulevard3) and a former hotel (HAC) that is now a commercial venue for weddings, banquets, and business events.  Nourmand has expressed interest in future competing developments on Sunset's property. <u>Plaintiffs' Evidence:</u> Kaufman Decl. Exs. 15, 16, 18, 29 at 269-74 (tr. 79:3-12, 84:7-19, 87:2-9, 87:12-19, 83:1-5, 96:9-97:4), 30 at 289-90 (tr. 21:9-22:9), 56 at 574-75 |

| Defendants' Uncontroverted Fact | Plaintiffs' Response and Evidence |
|---|---|
| | (tr. 69:15-19, 72:16-24); King Decl. ¶ 12.<br>Defendants' Evidence:<br>Thakor Decl., Ex. A, King Tr., 159-160. |
| 81. Sunset was not the only party that filed objections to the Schrader Hotel. | Undisputed. |

## PLAINTIFFS' ADDITIONAL FACTS

| Undisputed Fact | Supporting Evidence |
|---|---|
| 82. Relevant was founded in 2007 by Grant King and Richard Heyman. After Relevant's first hotel project (the "Dream") went into foreclosure, Mr. King began raising capital through the EB-5 investment program. | King Decl. ¶¶ 2, 3; Kaufman Decl. Exs. 31 at 309-10, 314-15 (tr. 40:17-41:1, 41:10-12, 57:17-19, 69:8-10), 32 at 324 (tr. at 51:17-22). |
| 83. Relevant's hotel projects received funds through the EB5 program. | King Decl. ¶ 3; Kaufman Decl. Ex. 31 at 312-13, 317 (tr. 46:23-47:4, 76:14-16). |
| 84. Relevant contributes capital to its project entities. | Shayne Decl. ¶ 4; Kaufman Decl. Ex. 31 at 311 (tr. 43:11-25). |
| 85. Relevant secures construction loans to complete its hotel projects. | Shayne Decl. ¶ 5; Kaufman Decl. Ex. 31 at 316, 318 (tr. 73:16-23, 78:14-15). |
| 86. The principals of Relevant guarantee the construction loans and are indemnified by Relevant for any losses on those loans. | Shayne Decl. ¶ 5; Kaufman Decl. Ex. 31 at 319-21 (tr. 94:9-19, 116:15-117:6). |
| 87. Relevant's hotels, and proposed hotels, have event space for weddings, banquets, business meetings and conferences. | King Decl. ¶ 12. |

| Undisputed Fact | Supporting Evidence |
|---|---|
| 88. Saeed Nourmand continued to use Nourmand & Associates employees and resources to manage the Sunset Property, help prepare his taxes, schedule his meetings, print his documents using Nourmand & Associates' office equipment, and host his email account. | Kaufman Decl. Exs. 8, 33, 29 at 276 (tr. 141:1-8), 30 at 291, 294-95, 297, 301-02 (tr. 23:8-9, 31:20-32:4, 53:18-20, 90:23-91:3); Gould Decl. ¶ 3 & Ex. A; DeCastro Decl. ¶ 3. |
| 89. The Sunset Property includes a parking lot, a nightclub, an outdoor courtyard and multiple structures, including a nine-story building known as the Hollywood Athletic Club and a residential structure that Sunset wants to demolish. | Kaufman Decl. Exs. 29 at 264-69, 272 (tr. 58:23-59:11, 68:4-6, 77:17-19, 78:23-79:12, 87:2-9), 30 at 287, 303-04 (tr. 19:17-21, 96:19-25, 97:20-22). |
| 90. The Hollywood Athletic Club is a former hotel that, today, is used as an event space for weddings, banquets, business meetings and conferences. | Kaufman Decl. Ex. 30 at 289-90 (tr. 21:9-22:9). |
| 91. The night club on Sunset's property, which was known as Boulevard3 during the relevant time period, consists of 13,900 square feet of indoor floor space, a dance hall and an outdoor courtyard with a full liquor license, live entertainment, an occupancy load of 900 persons, and approved hours of operations from 10:00 am to 4:00 am daily. | Kaufman Decl. Exs. 30 at 288 (tr. 20:2-7), 29 at 270, 272-74 (tr. 83:1-5, 87:12-19, 87:2-9, 96:9-97:4). |
| 92. Saeed Nourmand was an owner of Boulevard3 and received $10,000 to $60,000 in monthly profits from the operations of Boulevard3. Boulevard3 also paid $45,000 in monthly rent to Sunset Landmark. | Kaufman Decl. Ex. 30 at 292-93 (tr. 25:1-26:9). |

| Undisputed Fact | Supporting Evidence |
|---|---|
| 93. In February 2015, Allen Shamoolian received notice of public hearing regarding 1541 Wilcox Hotel and asked Nourmand for his thoughts on the project. | Kaufman Decl. Exs. 34 at 362 (tr. 19:10-20), 35. |
| 94. Shamooilian and Nourmand discussed their concerns about a hotel development on the same block because they each intended to develop their own land one day, which they told the City of Los Angeles. | Kaufman Decl. Exs. 34 at 365 (tr. 34:1-9), 13 at 136-37. |
| 95. Nourmand began drafting objections to the 1541 Wilcox Hotel, before he received the City's Mitigated Negative Declaration on March 11, 2015. | Kaufman Decl. Exs. 34 at 366 (tr. 49:7-20), 29 at 278-79 (tr. 145:19-146:23). |
| 96. Nourmand directed employees at Nourmand & Associates to help him oppose the 1541 Wilcox Hotel project. At his request, N&A employees attended a public hearing and signed a petition submitted to the City opposing the 1541 Wilcox Hotel project. | Kaufman Decl. Exs. 5-12, 29 at 277 (tr. 143:1-11), 30 at 296, 298 (tr. 50:2-3, 55:3-9), 57 at 597 (tr. 48:2-9). |
| 97. Between 2015 and 2018, Sunset filed more than 15 legal challenges using the City's administrative process, which included more than 4,000 pages of objections and appeals, and filed 3 separate actions in Superior Court regarding Plaintiffs' hotel projects. | Thomas Decl. Ex. A at 13-15, 36-38. |
| 98. The City of Los Angeles rejected each of Sunset's objections to Relevant's hotel projects and never concluded that the projects required preparation of an Environmental Impact Report. | RJN Exs. 13 ¶¶ 59-65 (Thompson), 9 ¶¶ 53-57, 59 (Tommie), 8 ¶¶ 14-20 (Selma). |

-21-

| Undisputed Fact | Supporting Evidence |
|---|---|
| 99. Sunset's objective of the Petitions for Writ of Mandamus against each of Relevant's hotel projects was to require the City of Los Angeles to prepare an Environmental Impact Report for the projects. | Kaufman Decl. Exs. 29 at 281 (tr. 253:19-23), 37 at 391, 394-95 (tr. 91:21-25, 103:23-104:14), 38 at 414-417 (tr. 107:8-108:9, 112:23-113:1). |
| 100. No court has ever ordered that the City must prepare an Environmental Impact Report for any of Relevant's projects. | Kaufman Decl. Exs. 38 at 412-13 (tr. 55:25-56:2), 37 at 392 (tr. 92:14-21); RJN Ex. 21. |
| 101. In 2016, TSLF challenged the building permits for the Thompson Hotel, including the demolition permit, even though demolition of the prior structure had already been performed. | Kaufman Decl. Exs. 1, 39, 37 at 388 (tr. at 63:10-15). |
| 102. On May 31, 2017, the City denied Sunset's building permit challenge and rejected all of TSLF's arguments. | Kaufman Decl. Exs. 39 (5/31/17 Denial of challenge to Thompson building permit), 37 at 390 (tr. at 71:17-21). |
| 103. TSLF appealed the denial of the building permit challenge to the Central Area Planning Commission, where it lost again. | Kaufman Decl. Ex. 39 (May 31, 2017, Letter of Determination from Central Area Planning Commission re Thompson Appeal). |
| 104. TSLF worked with Casey Maddren, United For Los Angeles, and union representatives to draft a letter to prosecutors, to create fear of a potential investigation and pressure the City into not approving Relevant projects. | Kaufman Decl. Exs. 40 at 453, 41, 42. |

| Undisputed Fact | Supporting Evidence |
|---|---|
| 105. On or around March 13, 2015, Nourmand and Mohamad Iravani met with Relevant. At this meeting, Nourmand conveyed that he wanted Relevant to: (1) eliminate the proposed night club on the rooftop; (2) move the second-story pool deck (3) increase the setback with the Sunset Property; and (4) reduce the height of the building. | Thakor Decl. Ex. U; Kaufman Decl. Ex. 43. |
| 106. By March 17, Relevant had agreed to change the design of the Thompson Hotel in response to Mr. Nourmand's demands. | Thakor Decl. Ex. U; Kaufman Decl. Ex. 44. |
| 107. Nourmand knew that Relevant was vulnerable to project delays by virtue of its reliance on EB-5 funding. | King Decl. ¶ 10; Thakor Decl. Ex. P; Kaufman Decl. Ex. 45. |
| 108. At a May 5, 2015 meeting between the parties, Nourmand could not articulate his concerns regarding traffic, requested additional changes to the Thompson project, and asked questions about the funding structure for the hotel project. | King Decl. ¶ 9; Thakor Decl. Ex. P; Kaufman Decl. Ex. 46. |
| 109. During an April 2017 phone call, Matt Hinks asked Robert Silverstein what Sunset's legal fees were to date and how much of the monetary demand was "blood money." | Kaufman Decl. Exs. 47 at 484-85 (tr. 61:23-62:15), 48, 49, 37 at 397-98 (tr. at 114:10-115:12). |
| 110. During settlement discussions, Defendants made clear they would continue to delay Plaintiffs' projects even if there was an EIR.  For example, in a May 2017 meeting, Robert Silverstein said that even if the City prepared an EIR, Silverstein would find something else to challenge. | Kaufman Decl. Exs. 18, 50 at 502 (tr. 312:9-22), 47 at 487-88 (tr. 85:9-86:3), 38 at 421-22 (tr. at 171:21-172:1). |

-23-

| Undisputed Fact | Supporting Evidence |
|---|---|
| 111. During settlement discussions, Defendants refused to discuss the merits of CEQA or the relief under CEQA.  For example, during an August 23 meeting, Defendants refused to discuss the CEQA litigation with Plaintiffs or the relief sought in the CEQA petitions. | Kaufman Decl. Exs. 47 at 487-88 (tr. 85:9-86:3), 56 at 593-94 (tr. 225:9-226:8). |
| 112. Defendants did not involve the City of Los Angeles in any of the settlement discussions between the parties. | Thakor Decl. Exs. J-U; Kaufman Decl. Exs. 19, 28. |
| 113. Defendants' CEQA lawyers at The Silverstein Law Firm were not involved in drafting or executing the settlement agreements; that role was filled by Jayesh Patel who is not familiar with CEQA or the relief available under CEQA. | Kaufman Decl. Exs. 38 at 420 (tr. 137:16-19), 56 at 571-73, 576-78 (tr. 16-17, 86-87). |
| 114. The aesthetic concessions in the settlement agreements were intended to benefit Sunset's property, not the general public. | Kaufman Decl. Exs. 23, 56 at 579-80 (tr. 92:24-93:21). |
| 115. Sunset made representations to its tax advisors that the settlement was intended to compensate Sunset for economic harm it claimed it would sustain. | Kaufman Decl. Ex. 17. |
| 116. During a March 29, 2018 lunch meeting, Saeed Nourmand told Richard Heyman that "You know the drill.  It will take a check to make this go away" in reference to the pending *Selma Wilcox* litigation. | Kaufman Decl. Exs. 50 at 503 (tr. 411:2-20), 36 at 374-76 (tr. 434:2-435:4, 435:14-23, 436:12-14). |

| Undisputed Fact | Supporting Evidence |
|---|---|
| 117. Sunset objected to the Schrader Hotel project on the same grounds that it objected to the Selma Wilcox Hotel project when it believed the Schrader Hotel project was associated with Relevant Group, which it dropped after Sunset discovered Relevant was not associated with that project. | RJN Ex. 7 at 143; Kaufman Decl. Exs. 2, 51, 55, 36 at 377 (tr. 456:6-14), 4 at 105 (tr. 93:2-18) |
| 118. Sunset never challenged the Crossroads project, which is an eight-acre development that includes multiple hotels and commercial buildings. | Kaufman Decl. Ex. 29 at 280 (tr. 149:5-9, 149:20-22). |
| 119. At the time of the approval hearings for the Crossroads, Nourmand was negotiating a letter of intent with its developer, Harridge Development, LLC regarding a commercial development on the Sunset Property | Kaufman Decl. Ex. 15. |
| 120. The Dream was approved before Defendants ever learned about Relevant (and its particular vulnerability to delay). Relevant's two restaurants projects were not susceptible to CEQA challenges as they were approved in 2015 and only needed conditional use permits for alcohol sales. The City did not hold a hearing regarding Relevant's Morrison Hotel project downtown prior to the initiation of this lawsuit. | Kaufman Decl. Exs. 36 at 380-81 (tr. 491:19-492:10), 32 at 325-26 (tr. 59:22-60:9); Thomas Decl. Ex. A at 32. |
| 121. Maddren and TSLF wanted to appeal Citizen News but missed the hearing. TSLF and Maddren then searched for someone who had timely objected so they could object and appeal the Citizen News project. | Kaufman Decl. Exs. 52, 53, 54 at 541-42, 544-45 (tr. 89:16-90:3, 96:15-97:21). |

**PLAINTIFFS' RESPONSES TO DEFENDANTS'**

**CONCLUSIONS OF LAW**

| Defendants' Conclusions of Law | Plaintiffs' Response |
|---|---|
| Sunset is immune to Plaintiffs' claims under the *Noerr-Pennington* doctrine | Disputed. Sunset is not entitled to *Noerr-Pennington* immunity for its "sham" petitioning activity; extortion is not a form of petitioning activity protected by the *Noerr-Pennington* doctrine or the First Amendment generally. |
| Plaintiffs cannot establish that any threat posed by Sunset's CEQA lawsuits was "wrongful" | Disputed. Sunset's CEQA lawsuits can be "wrongful" for several independent reasons, including the lack of any nexus between the property demanded from Plaintiffs and/or the lack of any "lawful claim" to such property, which was obtained under color of law and/or through the use of economic fear. On that basis, Sunset's use of the CEQA lawsuits to obtain Plaintiffs' property was "wrongful." |
| Plaintiffs cannot establish any triable issue of fact to show that Sunset extorted or attempted to extort the owners of the Schrader Hotel | Disputed. The enterprise actions with respect to the Schrader Hotel were in furtherance of its attempted extortion of Plaintiffs and reflect a pattern and policy of automatic filings without regards to the merits of the claim. |
| Plaintiffs cannot establish any triable issue of fact that there was conspiracy between Sunset and Casey Maddren | Disputed. Casey Maddren knowingly participated in the activities of the Nourmand Enterprise, including agreeing to cooperate with The Silverstein Laws Firm to advance meritless claims, conceal facts,and cause intimidation. |

| Defendants' Conclusions of Law | Plaintiffs' Response |
|---|---|
| The releases in the settlement agreements regarding the Thompson and Tommie lawsuits preclude Plaintiffs from raising any claims related to those developments including civil RICO claims | Disputed.  The releases in the settlement agreements are not enforceable by Sunset and Defendants have not carried their burden to demonstrate the releases, even if enforceable, extend to the claims in the case and/or release such claims against the other defendants. |
| Relevant lacks standing to bring these claims because it has not suffered any harm that is distinct from the other Plaintiffs (its subsidiaries) | Disputed.  Relevant suffered injury-in-fact, incurred damages, and suffered harm that is distinct from the other Plaintiffs. |

Dated:  May 23, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   *s/Susan K. Leader*
      Susan K. Leader

Attorneys for Plaintiffs