**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
ALI R. RABBANI, State Bar No. 253730
arabbani@wsgr.com
CONOR TUCKER, State Bar No. 318075
ctucker@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, California 90071-2027
Telephone:   (323) 210-2900
Facsimile:   (323) 974-7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone:   (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Plaintiffs Relevant Group,
LLC; 1541 Wilcox Hotel LLC; 6516
Tommie Hotel LLC; and 6421 Selma
Wilcox Hotel LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, | Case No.: 2:19-cv-05019-ODW-KS |
| | **PLAINTIFFS' RESPONSE TO DEFENDANT NOURMAND & ASSOCIATES' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** |
| Plaintiffs, | |
| v. | |
| STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, inclusive, | Date:      June 13, 2022 <br> Time:      1:30 p.m. <br> Dept:      Courtroom 5D, Fifth Floor <br> Before:   Hon. Otis D. Wright II |
| Defendants. | |

# TABLE OF ABBREVIATIONS

| **Abbreviation** | **Document** | **ECF Nos.** |
|---|---|---|
| "Balitzer Decl." | Declaration of Stephanie Balitzer in Support of Plaintiffs' Response to Defendant Nourmand & Associates' ("N&A") Motion for Summary Judgment | 147 |
| "Cole Decl." | Declaration of Carolyn Rae Cole in Support of N&A's Motion for Summary Judgment | 123-9 |
| "Gould Dec." | Declaration of Sarah Gould in Support of Defendant N&A's Motion for Summary Judgment | 123-7 |
| "Iravani Decl." | Declaration of Mohamad Mohajer Iravani in Support of N&A's Motion for Summary Judgment | 123-8 |
| "M. Nourmand Decl." or "Michael Decl." | Declaration of Michael Nourmand in Support of N&A's Motion for Summary Judgment | 123-4 |
| "S. Nourmand Decl." | Declaration of Stephan Saeed Nourmand in Support of Defendants Stephan "Saeed" Nourmand and The Sunset Landmark Investment LLC's Motion for Summary Judgment | 123-5 |
| "Schaus Decl." | Declaration of Elizabeth Schaus in Support of N&A's Motion for Summary Judgment | 123-13 |
| "Shapiro Decl." | Declaration of Elizabeth Shapiro in Support of N&A's Motion for Summary Judgment | 123-11 |
| "Thomas Decl." | Declaration of Tina Thomas in Support of Plaintiffs' Oppositions to Defendants' Motions for Summary Judgment | 137-3 |

Pursuant to the Central District of California's Local Rule 56-2 and this Court's Scheduling and Case Management Order, Plaintiffs respectfully submit the following separate statement of genuine issues of material facts in support of its opposition to Defendant Nourmand &Associate's Motion for Summary Judgment. It does not appear that N&A filed the required Conclusions of Law so no response is provided.

### PLAINTIFFS' RESPONSES TO DEFENDANT'S UNCONTROVERTED FACTS

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| 1. Sunset filed the lawsuit styled as *The Sunset Landmark Investment LLC v. City of Los Angeles (1541 Wilcox Hotel LLC, Real Party-in-Interest)*, Case No. BS160807. | Undisputed. |
| 2. The operative Second Amended Petition for Writ of Mandamus and Complaint for Declaratory Relief was filed on or about January 20, 2017. | Undisputed. |
| 3. N&A was not a party to this lawsuit. | Undisputed. |
| 4. N&A was not a party to the settlement of the Thompson lawsuit. | Undisputed. |
| 5. N&A did not receive any money, financial or other benefits from the suit or the settlement. | Disputed.  The settlement payments were collected by N&A's CFO and initially  received by Sunset, which Plaintiffs contend is intermingled with N&A in its operations, management, and ownership.  The settlement agreement contains costly design changes and concessions to benefit Plaintiffs' property where N&A's Hollywood office is located. <br> Plaintiffs' Evidence: <br> S. Nourmand Decl. ¶ 15; Balitzer Decl. Exs. 1 at 8-9 (tr. 14:18-15:1), |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| | 2, 3. 30 at 288-91 (tr. 11:14-12:11, 13:25-14:17).<br><br>Defendant's Evidence:<br>Michael Decl., ¶¶ 16-17. Schaus Decl., ¶ 5, Exhibit C. |
| 6.   Sunset filed the lawsuit styled as *The Sunset Landmark Investment LLC v. City of Los Angeles (6516 Tommie Hotel LLC, Real Party in Interest)*, Case No. BS169821. | Undisputed. |
| 7.   Sunset filed this lawsuit on June 9, 2017. | Undisputed. |
| 8.   N&A was not a party to this lawsuit. | Undisputed. |
| 9.   N&A was not a party to the settlement of the Tommie lawsuit. | Undisputed. |
| 10.   N&A did not receive any of the benefits from the suit or the settlement. | Disputed.  The settlement payments were collected by N&A's CFO and initially  received by Sunset, which Plaintiffs contend is intermingled with N&A in its operations, management, and ownership.  The settlement agreement contains costly design changes and concessions to benefit Plaintiffs' property where N&A's offices are located.<br><br>Plaintiffs' Evidence:<br>S. Nourmand Decl. ¶ 15; Balitzer Decl. Exs. 1 at 8-9 (tr. 14:18-15:1), 2, 3, 30 at 288-91 (tr. 11:14-12:1, 13:25-14:17).<br><br>Defendant's Evidence:<br>Michael Decl., ¶¶ 16-17. Schaus Decl., ¶ 7, Exhibit E. |
| 11.   Sunset filed a lawsuit styled as The Sunset Landmark Investment LLC v. City of Los Angeles (6421 Selma | Undisputed. |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| Wilcox Hotel LLC, Real Party Interest), Case No. 19STCP01027. | |
| 12.  N&A is not a party to this lawsuit. | Undisputed. |
| 13.  Sunset filed this suit on April 2, 2019 | Undisputed that Sunset filed Case No. 19STCP01027 on April 2, 2019. |
| 14.  This suit remains pending | Undisputed at the time of this filing. |
| 15.  Finding Sunset had met its burden, the Court remanded the CEQA determination to the City, granting the City the option of conducting an environmental impact report. | Disputed.  The Court's order found Sunset had not met its burden on the majority of claims, including arguments described as baseless and/or wholly lacking any evidentiary support.  The court remanded to the City to "clarify and resolve" discrepancies in the record on two minor issues.<br><br>Plaintiffs' Evidence:<br>Schaus Decl. ¶ 21 Ex. S.<br>Defendant's Evidence:<br>Schaus Decl., ¶ 21, Exhibit S, Order re: Petitions for Writ of Mandate at pg. 65 and Interlocutory Writ and Order of Remand, pgs. 1-2. |
| 16.  Maddren filed a lawsuit styled as *Maddren v. City of Los Angeles (6421 Selma Wilcox Hotel LLC, Real Party in Interest)*, Case No. 19STCP00988. | Undisputed. |
| 17.  N&A and Sunset are not parties to this lawsuit. | Undisputed. |
| 18.  Maddren vehemently denies being a co-conspirator with Saeed or bringing this lawsuit in furtherance of the alleged RICO enterprise. | Undisputed that Maddren denies being a conspirator. Disputed whether Maddern is in fact a co-conspirator and whether his lawsuit was in furtherance of the Nourmand Enterprise. |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| | <u>Plaintiffs' Evidence:</u> Balitzer Decl. Exs. 4-5. <u>Defendant's Evidence:</u> Schaus Decl., ¶ 10, Exhibit H, 101:18-102:4, 111:8-19. |
| 19. Maddren brought his CEQA lawsuit believing it to be meritious [*sic*]. | Disputed. Maddren employed tactics and arguments for an improper purpose. The court in Selma Wilcox rejected Maddren's three causes of action, finding arguments to be "without merit" and unsupported by evidence. <u>Plaintiffs' Evidence:</u> Thomas Decl. Ex. A at 31-33; Schaus Decl. Ex. S. <u>Defendant's Evidence:</u> Schaus Decl., ¶ 10, Exhibit H, 110:12-111:7, 97:16-21, 102:24-103:20, 104:9-106:7. |
| 20. Plaintiffs also contend Sunset attempted, but failed, to extort the proponents of the Schrader Hotel project. | Undisputed that Plaintiffs alleged in the TAC that Sunset attempted to extort the proponents of the Schrader Hotel. <u>Defendant's Evidence:</u> TAC, ¶¶ 99-103. |
| 21. Plaintiffs also assert that Sunset brought these lawsuits to settlements and that Sunset received the settlement payments: 47. Sunset Landmark conducts the business of Nourmand Enterprise through its role as the entity that formally initiates the sham CEQA litigation that is used to extort competing developers into making payments in order to avoid the devastating costs associated with the delay of projects. **Sunset Landmark is also the entity that receives the immediate financial benefit of the** | Undisputed. |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| **extortion payments made by victims.** | |
| 22.  The TAC does not contain any specific allegation that N&A received any benefit from its participation in the enterprise or the assistance its employees provided to the enterprise. | Disputed.  The Court held that TAC contains sufficient allegations regarding N&A's role in the enterprise.<br><br>Plaintiffs' Evidence:<br>March 4, 2022, Order on Motion to Dismiss (ECF No. 114).<br><br>Defendant's Evidence:<br>See TAC. |
| 23.  In Paragraph 129, of the TAC, Plaintiffs assert that the predicate acts are extortion arising under state and federal criminal statutes:<br><br>129 ….<br>through a pattern of activity unlawful under 18 U.S.C. § 1961(1)(A) and (B), including multiple, repeated, and continuous acts or threats involving extortion and/or attempted extortion, chargeable under 18 U.S.C. § 1951 and California Penal Code §§ 518, 522, 523, 524. | Undisputed. |
| 24.  The TAC reflects that Saeed directed the asserted enterprise:<br><br>48. Nourmand conducts the business of the enterprise through his role as the owner, manager, and principal of Sunset Landmark. **Nourmand is also the ultimate decision-maker** as to which competing developers will be targeted. **Nourmand also makes the overt threats** telling developers that their projects will continue to be subject to sham litigation until they accede to Nourmand Enterprise's demands, and **he leads the "negotiations"** with these developers that ultimately lead to | Undisputed as to the accuracy of the quote from Plaintiffs Third Amended Complaint.  Disputed to the extent that Defendants' misleading exposition suggests that Saeed Nourmand alone directed the enterprise, which discovery has refuted.<br><br>Plaintiffs' Evidence:<br>See Plaintiffs' SGI26.<br><br>Defendant's Evidence:<br>TAC, ¶ 48 (emphasis added). |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| multi-million dollar ransom payments | |
| 25.  Plaintiffs do not allege in the TAC that N&A adopted or maintained corporate policies to engage in CEQA litigation or to extort developers. | Disputed.  The Court found the TAC sufficiently describes N&A's role in the enterprise, which engaged in a pattern of CEQA litigation. <br><br> <u>Plaintiffs' Evidence:</u> <br> March 4, 2022, Order on Motion to Dismiss (ECF No. 114). <br><br> <u>Defendant's Evidence:</u> <br> See TAC. |
| 26.  For example, in Paragraphs 51, 53, 54, 55, and 56 the TAC refers to acts taken by "Nourmand & Associates' ***employees***." | Undisputed as to the quotation from Plaintiffs Third Amended Complaint. Disputed to the extent of Defendants' misleading exposition of facts, which through discovery indicates N&A's role, including by officers of N&A (M. Nourmand, C. Rae Cole, M. Iravani) and S. Nourmand. <br><br> <u>Plaintiffs' Evidence:</u> <br> Schaus Decl. Ex. O at 523, 528, 534, 558; Balitzer Decl. Exs. 1 at 9-10, 26 (tr. 31:21-32:4, 62:5-21), 2 at 43, 30 at 304-05 (tr. 46:25-47:14). <br><br> <u>Defendant's Evidence:</u> <br> TAC, ¶¶ 51, 53, 54, 55, and 56. |
| 27.  Paragraph 53 alleges that "**<u>Nourmand insisted</u>** that Michael Nourmand participate in the meeting where Sunset Landmark and Nourmand extorted the $5.5 million ransom payment." | Undisputed. |
| 28.  Paragraph 56, Plaintiffs make clear that the supposed conduct taken by N&A employees was ***directed by Saeed***, asserting, in relevant part: <br><br> 56. In this and similar ways, Nourmand & Associates' employees functioned as Nourmand's own | Undisputed as to the quotation from the Third Amended Complaint. Disputed to the extent Defendants' misleading exposition ignores the evidence that certain activity, including objecting to Plaintiffs' |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| recruiting pool **through which Nourmand tasked Nourmand & Associates' employees** with critical support functions to extort competing developers into making payments avoid the devastating costs associated with the delay of projects. | project, was also directed by others at N&A, including Michael Nourmand.<br><br>Plaintiffs' Evidence:<br>Schaus Decl. Ex O at 523; Balitzer Decl. Ex. 30 at 304-05 (tr. 46:25-47:14).<br><br>Defendant's Evidence:<br>TAC, ¶ 56. |
| 29. Examples of Saeed directing the enterprise appear in Plaintiffs' response to Interrogatory No. 14:<br><br>• On March 3, 2015, Mohamad Iravani and Sarah Gould **received correspondence from Saeed Nourmand** regarding the Wilcox Hotel<br><br>• On March 6, 2015, pursuant to the **request of Saeed Nourmand**, Sarah Gould assists with forwarding Wilcox Hotel plans, including an environmental assessment form, a site plan review, renderings, and master land use permit application, to zoning consultant Jeff Seymour, and arranges a call for Saeed Nourmand and Jeff Seymour;<br><br>• On March 11, 2015, Sarah Gould forwards public hearing information for the Thompson Hotel and notes that **he** [Saeed] would like a host of people to attend, including Karen Lewis at N&A, Howard Lorey at N&A, and Michael Nourmand; she copies Saeed and Mohamad Iravani;<br><br>• On March 17, 2015, **Saeed Nourmand forwards** his concerns regarding the Thompson Hotel to Carolyn Rae Cole | Undisputed, but Plaintiffs state that this is not a complete set of examples.<br><br>Defendant's Evidence:<br>Schaus Decl., ¶ 16, Exhibit N, Plaintiffs' Responses to N&A Interrogatory No. 14. |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| • On March 17, 2015, Carolyn Rae Cole emails Fred Gains noting that **she has volunteered her assistance to Saeed** to provide arguments that could be helpful at the hearing on Wednesday at the City;<br><br>• On March 18, 2015, **Saeed sends more** information regarding 1541 Wilcox project to Carolyn Rae Cole with respect to arguments against the project<br><br>• In or around March 2015 and April 2015, employees of N&A, **acting under the direction of Saeed Nourmand** and the Nourmand Enterprise, conceived of meritless arguments regarding the 1988 Hollywood Community Plan, in opposition to the Thompson Hotel project and subsequently used against other Relevant Group projects; In or around March 2015 and April 2015, employees of N&A, **acting under the direction of Saeed Nourmand** and the Nourmand Enterprise, concocted and submitted written comments in opposition to the Thompson Hotel project submitted to the Department of City Planning and City Councilmembers;<br><br>• On March 3, 2015, Mohamad Iravani **received the Wilcox Hotel Drawings from Saeed Nourmand**; | |
| 30.  Plaintiffs' responses claim that the enterprise committed some thirty-three predicate acts over the period spanning March 2015 through April 2019. | Undisputed. |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| 31.  Plaintiffs' responses to Interrogatories Nos. 5 and 6 are identical, identifying nine allegedly distinct sets of activities, six of which occurred in March and April 2015, roughly a year before Sunset filed the first CEQA suit. | Undisputed to the extent "CEQA suit" is limited to the first Superior Court lawsuit, which was filed in March 2016.  Defendants initiated legal challenges using the City's administrative process in 2015. <br><br> Defendant's Evidence: <br> Schaus Decl. ¶ 16, Exhibit N, Plaintiffs' Responses to N&A Interrogatory Nos. 5-6. |
| 32.  These responses focus on attendance at public meetings, signing a petition, and reviewing public materials | Undisputed that the cited responses are examples included in Plaintiffs' discovery responses. <br><br> Defendant's Evidence: <br> Schaus Decl., ¶ 16, Exhibit N, Plaintiffs' Responses to N&A Interrogatory Nos. 5-6. |
| 33.  Plaintiffs admit that attendance at public hearings, signing a petition, and reviewing public materials, is generally lawful. | Undisputed.  Dispute whether submitting false and misleading information in petitions to City officials to influence their decision making process is lawful. <br><br> Defendant's Evidence: <br> Schaus Decl., ¶ 15, Exhibit M, Plaintiffs' Responses N&A Request for Admission Nos. 5-7. |
| 34.  N&A employees have submitted declarations stating that they attended the public hearing in their individual capacity and not on behalf of did not ask or require them to attend. | Undisputed that the declarations were submitted.  Disputed as to veracity and credibility. <br><br> Plaintiffs' Evidence: <br> Schaus Decl. Ex. O at 551, 554. <br><br> Defendant's Evidence: <br> Declaration of Carolyn Rae Cole, ¶¶ 8-9. Declaration of Howard Lorey, ¶¶ 3-5. Declaration of Elizabeth Shapiro, ¶¶ 3-5. Declaration of Karen Lewis, ¶¶ 3-5. Declaration of Michael Nourmand, ¶¶ 19. |

-9-

PLAINTIFFS' RESPONSE TO DEFENDANT N&A'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW
CASE NO.: 2:19-CV-05019-ODW-KS

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| 35. The remaining categories of activities allegedly taken by N&A are as follows:<br><br>● N&A employees participated in communications regarding legal strategy related to sham CEQA lawsuits brought by the Nourmand Enterprise;<br><br>● N&A employees assisted in facilitating payment to attorneys engaged in sham CEQA lawsuits;<br><br>● N&A employees enforced and extracted extortionate payments from Plaintiffs in early 2018. | Undisputed that these activities are additional examples of N&A's participation.<br><br>Defendant's Evidence:<br>Schaus Decl., ¶ 16, Exhibit N, Plaintiffs' Responses to N&A Interrogatory Nos. 5-6. |
| 36. The identified documents predominantly focus on events during March and April 2015 and Saeed's use of certain individuals for secretarial support. | Disputed.  The documents include evidence that (1) N&A directed its management to attend a public hearing and object to the Thompson hotel, including through the submission of false and misleading Petition to increase pressure and extract additional concessions from Relevant; (2) that Mohammad Iravani participated at initial meeting with Relevant where Saeed Nourmand demanded substantial changes to hotel plans, including removal of night club, enclosure of rooftop dining space, and other concessions to benefit Sunset; and (3) legal research and development work performed by Carolyn Rae Cole.<br><br>Plaintiffs' Evidence:<br>Schaus Decl. Ex. O.<br><br>Defendant's Evidence:<br>Schaus Decl., ¶ 16, Exhibit N, Plaintiffs' Responses to N&A Interrogatory No. 7. Schaus Decl., ¶ 17, Exhibit O, copies of all documents identified by Plaintiffs. Schaus Decl., ¶ 22, Exhibit T, email correspondence from S Defendants |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| | withdrawing confidentiality designation. |
| 37. In response to N&A's interrogatories Plaintiffs identified the following employees of N&A as engaging in the activities carried out by the enterprise as a result of being directed by Saeed:<br><br>Despite having "no role" at N&A himself, **Saeed Nourmand would regularly use, direct, and assign** N&A staff, including Mohammad Iravani, Sarah Gould, Rachelle DeCastro and Carolyn Rae Cole, for the benefit of the Nourmand Enterprise. | Undisputed. |
| 38. N&A is a residential real estate brokerage. | Undisputed. |
| 39. N&A does not engage in either residential or commercial real estate development. | Undisputed. |
| 40. N&A generally does not take a position on commercial real estate development. | Undisputed. |
| 41. Although Saeed founded N&A some years ago, at least a decade ago, Saeed sold the entirety of his interest in N&A. | Undisputed. |
| 42. Since the sale, N&A has been owned by Michael Nourmand, his siblings, and his mother. | Undisputed. |
| 43. Since the sale, Saeed has not had any ownership interest, management role or other involvement in the operations of N&A. | Disputed. S. Nourmand continues to direct and use N&A employees, office equipment, and other resources and, according to N&A's website, remains part of N&A management. S. Nourmand's wife is the majority |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| | shareholder and sole director of N&A. <br><br> <u>Plaintiffs' Evidence:</u> <br> Schaus Decl. Ex. O; Balitzer Decl. Ex. 30 at 296 (tr. 24:2-20); *see also* Plaintiffs' SGI83, 91. <br><br> <u>Defendant's Evidence:</u> <br> Michael Decl., ¶ 5. Saeed Decl., ¶ 3. |
| 44.  For over a decade, Michael Nourmand has been the CEO and President of N&A. | Undisputed. |
| 45.  Until 2020, Iravani worked for both N&A and Sunset | Undisputed that Iravani has been an N&A employee and that Iravani was an independent contractor for Sunset. <br><br> <u>Defendant's Evidence:</u> <br> Iravani Decl., ¶¶ 2-3. |
| 46.  Iravani's involvement in the CEQA suits stemmed solely from his work with Sunset, not his role with N&A. | Disputed. <br><br> In March 2015, after Saeed Nourmand insisted that Michael Nourmand attend a meeting with Relevant Group (and Michael Nourmand could not attend),  Mr. Iravani attended the meeting in his place.  Later in 2015, Mr. Iravani, and other full-time employees of N&A, helped Saeed Nourmand research and draft letters to the City of Los Angeles. In 2015-2018, Saeed Nourmand used Mohammad Iravani to manage his personal financial matters and financial matters. <br><br> <u>Plaintiffs' Evidence:</u> <br> Schaus Decl. Ex. O at 559, 561, 563, 565; Balitzer Decl. Exs. 6-10. <br><br> <u>Defendant's Evidence:</u> <br> Iravani Decl., ¶¶ 6-11. |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| 47. When Iravani pursued the unpaid settlement payments, he was doing so on behalf of Sunset. | Undisputed that the settlement funds were initially deposited into a Sunset bank account. Otherwise disputed. Iravani was N&A's Controller, sitting in N&A office space, using his N&A computer and email account to collect the settlement payments. <u>Plaintiffs' Evidence:</u> *See* Plaintiffs' SGI10. <u>Defendant's Evidence:</u> Iravani Decl., ¶¶ 9f, Exhibit A. Schaus Decl., ¶ 22, Exhibit T, email correspondence from S Defendants withdrawing confidentiality designation. |
| 48. Iravani provided Plaintiffs with wire instructions so they could transmit the settlement funds into Sunset's account – not N&A's. | Undisputed that the settlement funds were initially deposited into a Sunset bank account. Defendants have refused to produce documents regarding the use of and distribution of those funds. <u>Plaintiffs' Evidence:</u> Balitzer Decl. Exs. 1 at 8-9 (tr. 14:18-15:1), 2 at 43, 3. <u>Defendant's Evidence:</u> Iravani Decl., ¶¶ 9f, Exhibit A. Schaus Decl., ¶ 22, Exhibit T, email correspondence from S Defendants withdrawing confidentiality designation. |
| 49. In March 2015, Saeed sought advice from Carolyn Rae Cole regarding upcoming public hearings. | Undisputed, except as to the word "sought". The evidence reflects that Ms. Cole was "directed" to provide legal assistance at Saeed Nourmand's request. <u>Plaintiffs' Evidence:</u> Schaus Decl. Ex. O at 551. <u>Defendant's Evidence:</u> Cole Decl., ¶ 4. |

-13-

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| 50. Ms. Cole volunteered to provide advice to Saeed outside of her role at N&A. | Disputed. After first receiving the initial request on behalf of Saeed Nourmand, Cole responded "Why me?" Saeed Nourmand then provided "directions" to her.<br><br>Plaintiffs' Evidence:<br>Schaus Decl. Ex. O at 551, 561, 565, 577; Balitzer Decl. Exs. 1 at 28-29 (tr. 70:16-71:19). 11 at 126-27 (tr. 168:21-169:7 ), 12.<br><br>Defendant's Evidence:<br>Cole Decl., ¶¶ 5-6. |
| 51. Since March 2015, Ms. Cole has not provided any additional advice to Saeed or Sunset regarding Plaintiffs' projects | Undisputed. |
| 52. Gould worked at N&A as a Receptionist, Listing Coordinator, and Relocation Director. | Undisputed. |
| 53. She also occasionally handled secretarial tasks for Saeed, such as helping with calendaring or setting meetings. | Undisputed. |
| 54. When she assisted Saeed, Gould typically updated her email signature block to reflect that her emails were being sent for the "Office of Saeed Nourmand" or she was acting as "Saeed Nourmand's assistant | Undisputed that Sarah Gould sent emails with the signature block "Office of Saeed Nourmand". Disputed that she did so all of the time.<br><br>Plaintiffs' Evidence:<br>Schaus Decl. Ex. O at 551.<br><br>Defendant's Evidence:<br>Gould Dec. ¶ 3 |
| 55. Gould did not provide advice to Saeed or Sunset regarding CEQA or how CEQA applies in a lawsuit | Undisputed that Sarah Gould did not provide legal advice. Disputed that Sarah Gould did not provide assistance to those providing advice. |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| | Plaintiffs' Evidence:<br>Schaus Decl. Ex. O at 551.<br>Defendant's Evidence:<br>Gould Dec. ¶ 4. |
| 56. Rachelle DeCastro did not provide advice to Saeed or Sunset regarding CEQA or how CEQA applies in a lawsuit. | Disputed. Ms. DeCastro was the author of a document that Sunset used to challenge Plaintiffs' projects.<br>Plaintiffs' Evidence:<br>Schaus Decl. Ex. O at 561.<br>Defendants have not produced documents reflecting how Ms. DeCastro obtained the information and arguments set forth in her letter.<br>Defendant's Evidence:<br>Declaration of Maria Rachelle DeCastro, ¶¶ 4-9. |
| 57. 1541 Wilcox Hotel LLC and 6516 Tommie Hotel LLC settled the Tommie and Thompson suits with Sunset. | Undisputed. |
| 58. Plaintiffs refused to allow their attorney from the underlying CEQA case, Arthur Friedman, answer questions concerning the merits of the lawsuits in deposition, asserting client privilege. | Undisputed that Plaintiffs asserted attorney client privilege objections, and instructed Mr. Friedman not to answer questions that would reveal the contents of such communication. Otherwise disputed because Mr. Friedman answered non-privileged questions regarding the lawsuits.<br>Defendant's Evidence:<br>Schaus Decl., ¶ 12, Exhibit J, 57:13-58:22. |
| 59. The Tommie and Thompson suits settled at the same time, for a total payment of $5.5M as well as environmental concessions. | Undisputed as to the payment of $5.5 million. Disputed as to whether Sunset's demands were "environmental concessions" and were not the relief sought in Sunset's CEQA Petitions.<br>Plaintiffs' Evidence:<br>Thomas Decl. Ex A at 33-35; |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| | Balitzer Decl. Ex. 13 at 139-41 (tr. 97:17-98:6, 98:18-99:7).<br><br><u>Defendant's Evidence:</u><br>Schaus Decl., ¶ 5, Exhibit C, pgs. 1-4; Schaus Decl., ¶ 7, Exhibit E, pgs. 2-3. |
| 60. Noise was raised in Sunset's CEQA suits. | Undisputed. |
| 61. The settlement terms included, among other things, limiting the hours for deliveries and trash pickup, and mitigating noise generated by the outdoor bars, pools, and restaurants to be located on the hotel roofs. | Disputed to the extent the settlement agreement is mischaracterized and to the extent Plaintiffs had already agreed to the operational restrictions with the City as part of the approval process.<br><br><u>Defendant's Evidence:</u><br>Schaus Decl., ¶ 5, Exhibit C, pgs. 2-4; Schaus Decl., ¶ 7, Exhibit E, pgs. 2-3. |
| 62. The court presiding over the Selma suit found merit to Sunset's claims:<br><br>Sunset has presented substantial evidence supporting a fair argument that the Project may have significant effects on air quality. As such, the City's decision to adopt an MND was an abuse of discretion. | Disputed.<br><br>Court in Selma Wilcox rejected the vast majority of objections, found several arguments to be "baseless" or lack any evidentiary support. Court remanded to the City to "clarify" and "confirm" record on two issues and allowed construction to continue with certain conditions, which was inconsistent with the relief sought by Sunset and inconsistent with its objectives.<br><br><u>Plaintiffs' Evidence:</u><br>Schaus Decl. Ex. S at 750; Thomas Decl. Ex. A at 27-31.<br><br><u>Defendant's Evidence:</u><br>Schaus Decl., ¶ 21, Exhibit S, Order re: Petitions for Writ of Mandate at pg. 12. |
| 63. Numerous others initiated similar CEQA challenges concerning the | Undisputed that challenges were submitted vis-a-vis the Tommie, |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| Tommie, Thompson, and Selma projects, including: Casey Maddren, Lauren Farmer and Liliana Hernandez, Unite Here Local 1l; Mama Wilcox Land, LLC; Alexis Olbrei; Southwest Carpenters; Fran Offenhauser; Hollywood Heritage; and David Carrera. | Thompson, and Selma projects, but disputed that there were other CEQA lawsuits to the Thompson.  Also disputed that the challenges were "similar" to those asserted by Sunset.<br><br>Defendant's Evidence:<br>Schaus Decl., ¶ 14, Exhibit L, Plaintiffs' Supplemental Responses to Sunset Landmark's First Set of Interrogatories, No. 1. |
| 64.  Plaintiffs admit to settling several of these CEQA disputes. | Undisputed that Plaintiffs settled the *Mama Shelter* and *Farmer* litigations.<br><br>Defendant's Evidence:<br>Schaus Decl., ¶ 14, Exhibit L, Plaintiffs' Supplemental Responses to Sunset Landmark's First Set of Interrogatories, No. 3. |
| 65.  *Mama Wilcox Land LLC v. City of Los Angeles*, Case No. BS169883, was filed by a litigant other than Sunset | Undisputed. |
| 66.  In that suit, Mama Wilcox Land LLC is represented by the law firm of Greenberg Glusker Fields Claman & Matchinger, LLP. | Undisputed. |
| 67.  *Farmer v. City of Los Angeles*, Case No.BS169855 was filed by a litigant other than Sunset. | Undisputed. |
| 68.  In that suit, Lauren "Elle" Farmer, Liliana Hernandez and Hollywood for the Environmental and Equitable Development are represented by the Law Office of Gideon Kracov. | Undisputed. |
| 69.  *Maddren v. City of Los Angeles (6421 Selma Wilcox Hotel LLC, Real Party in Interest)*, Case No. | Undisputed.  Maddren is alleged to be part of the Nourmand Enterprise. |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| 19STCP00988 was filed by a litigant other than Sunset. | <u>Defendant's Evidence:</u> Schaus Decl., ¶ 9, Exhibit G. |
| 70.  In the *Farmer* Case, concerning the Tommie project, the Superior Court held that the Mitigated Negative Declaration issued by the City of Los Angeles was defective, and on that basis granted a writ of mandate:<br><br>Accordingly, the court finds that the MND is defective, and cannot be upheld. Thus, writ of mandate is GRANTED as to the 1st cause of action. | Disputed.  The Court issued an interlocutory order holding that "the deficiencies identified in the Court's tentative ruling are narrow in scope and may be remedied by the City's clarification of its analysis and findings" and ordered "[t]he Project is remanded to the City for further proceedings during which the City may clarify its analysis and findings regarding the Project's potential construction and operational noise impacts."<br><br><u>Plaintiffs' Evidence:</u> Balitzer Decl. Ex. 14.<br><br><u>Defendant's Evidence:</u> Schaus Decl., ¶ 20, Exhibit R, pg. 1. |
| 71.  N&A did not participate in the allegedly extortionate settlement demands made with respect to the suits. | Disputed.<br>N&A's employees participated at initial meeting with Relevant where S. Nourmand demanded substantial changes to hotel plans. N&A directed its management to attend a public hearing and object to the Thompson hotel, including through the submission of false and misleading Petition to increase pressure and extract additional concessions from Relevant. N&A made its offices available the enterprise for settlement discussions.N&A's Controller enforced the terms of the settlement agreement.<br><br><u>Plaintiffs' Evidence:</u> Schaus Decl. Ex. O at 523-29, 531, 533, 535, 546-51, 554, 561-66, 568, 576-79, 583; M. Nourmand Decl. ¶¶ 13, 14. |

| Defendant's Undisputed Fact | Plaintiffs' Response and Evidence |
|---|---|
| | Defendant's Evidence: <br> Michael Decl., ¶¶ 10-15. |
| 72. Rather, Plaintiffs concede the demands were communicated by others not employed by N&A. | Disputed to the extent Saeed Nourmand continues to be affiliated with and exert control over N&A. <br><br> Plaintiffs' Evidence: <br> Schaus Decl. Ex. O at 523-29, 533, 535, 546-51, 554, 561-66, 568, 576-79, 583; M. Nourmand Decl. ¶¶ 6, 8, 14. <br><br> Defendant's Evidence: <br> Schaus Decl., ¶ 13, Exhibit K, Plaintiffs' Responses to Sunset's Second Set of Interrogatories, No. 20. |
| 73. While it did not find in Casey Maddren's favor, the court found that "Maddren raised a valid internal piecemealing argument, . . ." | Undisputed that the Court used that phrase but went on to find that the City could clarify the record and easily address the technicality. Maddren and Silverstein recognized this would be the result, making the argument futile. <br><br> Defendant's Evidence: <br> Schaus Decl., ¶ 21, Exhibit S, Order re: Petitions for Writ of Mandate at pg. 65. |

## PLAINTIFFS' ADDITIONAL FACTS

| Undisputed Fact | Supporting Evidence |
|---|---|
| 74. Saeed Nourmand founded N&A and was the President for 30 years. | Balitzer Decl. Ex. 11 at 115-16 (tr. at 24:17-22, 25:4-6). |
| 75. N&A initially operated out of its offices in Beverly Hills and Brentwood. | Balitzer Decl. Exs. 30 at 292 (tr. 16:6-17), 11 at 117 (tr. 48:14-17). |

| Undisputed Fact | Supporting Evidence |
|---|---|
| 76. Nourmand erroneously claims he "sold" N&A to his son, Michael Nourmand. | Balitzer Decl. Ex. 11 at 118 (tr. 49:16-22). |
| 77. Michael Nourmand has been the President of N&A since 2008. | Balitzer Decl. Ex. 15 at 146 (tr. 23:7-11). |
| 78. N&A is a "family run" organization. | Balitzer Decl. Exs. 30 at 288, 296-97 (tr. 11:14-12:11, 24:2-20, 25:9-16), 11 at 118 (tr. 49:4-6). |
| 79. Michael Nourmand erroneously believes he is a director of N&A. | Balitzer Decl. Ex. 15 at 146-27 (tr. 23:23-24:9). |
| 80. Nourmand & Associates has offices in Brentwood and Beverly Hills, where Michael Nourmand maintains his personal offices. | Balitzer Decl. Ex. 30 at 292 (tr. 16:6-17). |
| 81. In 2012, Nourmand & Associates opened its Hollywood branch office in leased space from Sunset Landmark Investment LLC. | Balitzer Decl. Exs. 11 at 119-22 (tr. 77:17-19, 58:5-60:15), 30 at 293-94 (tr. 18:23-19:6), 15 at 149-50 (tr. 36:19-37:9). |
| 82. Myra Nourmand has been majority shareholder and sole director of N&A for more than a decade. | Balitzer Decl. Exs. 30 at 288-91 (tr. 11:14-12:11, 13:25-14:17), 15 at 148 (tr. 26:20-22), 1 at 29-31 (tr. 71:10-73:17). |
| 83. Saeed has a personal office on the Sunset Property, where he uses N&A offices, employees, and other resources (e.g., emails, printers, office meeting space). | Balitzer Decl. Exs. 1 at 9-10, 26 (tr. 31:1-7, 31:21-32:4, 62:5-21), 2, 9, 10, 11 at 114, 122-23 (tr. 12:19-24, 77:17-19, 141:1-8), 30 at 295 (tr. 20:2-12); Schaus Decl. Ex. O at 524. |
| 84. When Saeed learned of Relevant's development plans near the Sunset Property, Saeed wanted Michael Nourmand to attend a meeting with Relevant. | Schaus Decl. Ex. O at 559, 573; Balitzer Decl. Ex. 30 at 302-03 (tr. 44:25-45:25). |

| Undisputed Fact | Supporting Evidence |
|---|---|
| 85. When Michael Nourmand was unavailable for the initial meeting with Relevant, the meeting was first postponed before N&A's Controller (Mohamad Iravani) attended in Michael's stead. | Schaus Decl. Ex. O at 531, 559, 573; Balitzer Decl. Ex. 1 at 11-18 (tr. 35:24-42:4). |
| 86. Relevant agreed to many of the changes demanded by Saeed Nourmand and Iravani in the hopes that Saeed would support or at least not oppose Relevant's projects. | Schaus Decl. Ex. O at 531; Balitzer Decl. Exs. 1 at 22-24 (tr. 58:4-60:25), 17. |
| 87. When Michael Nourmand directed N&A employees, at Saeed's request, to attend public hearings and object to Relevant's projects, several of those employees did not work or live in Hollywood. | Balitzer Decl. Exs. 30 at 298-99, 306-08, 312-14 (tr. 49:12-51:9, 72:22-73:3, 26:19-27:18, 74:13-24), 1 at 19 (tr. 51:8-14); Shapiro Decl. ¶ 2; Schaus Decl. Ex. O at 523. |
| 88. N&A's office manager, Karen Lewis, canceled the regularly-scheduled agent meeting in Brentwood so that its agents could attend. | Schaus Decl. Ex. O at 523. |
| 89. Even though several of the employees did not live or work in Hollywood, they signed a petition reading: "I hereby object to the proposed 162 foot high proposed Hotel at 1541 Wilcox Avenue on the grounds that it is out of character with the neighborhood, will cast shadows on our properties, will make the traffic even worse in our neighborhood and will be a noise and parking nuisance with its proposed nightclub, bar and restaurant and will contribute to the already intolerable late night foot and car traffic on our largely residential streets late into the night." | Schaus Decl. Ex. O at 554; Balitzer Decl. Ex. 30 at 311-14 (tr. 71:18-74:24); Shapiro Decl. ¶ 2. |

| Undisputed Fact | Supporting Evidence |
|---|---|
| 90. When signing the petition, all of the attendees listed N&A's Hollywood office address, not their home addresses. | Schaus Decl. Ex. O at 554; Balitzer Decl. Ex. 30 at 311-14 (tr. 71:18-74:24). |
| 91. N&A staff kept the enterprise informed and on task, by monitoring documents related to Relevant projects during the City's approval process, including notices of public hearings, project plans and drawings, determination notices and appeal deadlines. | Schaus Decl. Ex. O at 523, 531, 534, 546, 551, 556, 559, 561, 562, 565, 566, 571, 576, 580; Balitzer Decl. Exs. 18-22. |
| 92. Iravani was involved in enforcing the settlement: he collected the initial amount due on the settlement agreement, was responsible for "strictly" enforcing the settlement agreement and worked with tax advisors to ensure favorable tax treatment for the proceeds. | Baltizar Decl. Exs. 1 at 32-36 (tr. 82:8-85:18, 89:3-20), 2, 9, 10. |
| 93. On March 3, 2015, N&A employee, Sarah Gould, forwarded the Thompson plans to Ms. Cole, whose first (and candid) reaction was "Why me?" to which Sarah Gould replied "Not sure. Please stand by for directions. Per Saeed." | Schaus Decl. Ex. O at 551. |
| 94. Over the next several weeks, Ms. Cole researched potential objections—notwithstanding her lack of training in land use law—and appears to have developed the principal objection that permeated each and every challenge to Plaintiffs' projects. | Schaus Decl. Ex. O at 561, 577; Balitzer Decl. Exs. 11 at 126-29 (tr. 168:4-171:4), 12. |

| Undisputed Fact | Supporting Evidence |
|---|---|
| 95. Ms. Cole speculated that the City somehow lacked authority to remove the "D Development Limitation" from the Hollywood Community Plan and, instead, enact a different zoning ordinance for the specific property at issue | Balitzer Decl. Ex. 15 at 166-67 (tr. 189:11-190:13); Schaus Decl. Ex. O at 561, 565-66. |
| 96. N&A employees including Rachelle DeCastro and Mohamad Iravani reduced Ms. Rae Cole's arguments to writing, including by drafting a letter on or around September 2, 2015 for Saeed Nourmand that mirrors the arguments developed by Ms. Rae Cole. | Balitzer Decl. Ex. 1 at 25-26 (tr. 61:1-62:21); Schaus Decl. Ex. O at 561-62, 565-66. |
| 97. Defendants have refused to produce any documents regarding use of the funds received from Relevant in Settlement | Balitzer Decl. Ex. 23. |
| 98. N&A's responses to Plaintiffs' discovery requests were incomplete or false. | *Compare* Balitzer Decl. Ex. 24 at Nos. 1, 4, 26, 27, *and* Balitzer Decl. Ex. 25, *with* Schaus Decl. Ex. O at 586-624, *and* Balitzer Decl. Ex. 15 at 157-162 (tr. 108:15-113:25), *and* ECF No. 114. |
| 99. In response to Plaintiff Relevant's 34 document requests, Michael Nourmand attested that N&A had only a single responsive document in its possession or control. | Balitzer Decl. Exs. 24-25. |
| 100. Almost every document from Sunset Landmark's production and privilege log resides on N&A's servers. | Balitzer Decl. ¶ 33 & Ex. 15 at 163-65 (tr. 158:18-160:9); Schaus Decl. Ex. O at 586-624. |

| Undisputed Fact | Supporting Evidence |
|---|---|
| 101. Only 7 of the 729 entries from Sunset's privilege log indicate that the correspondence did not originate from or go to an @nourmand.com email address, owned by N&A. All remaining communications on the log include correspondence to or from @nourmand.com email addresses, with the remainder of documents appearing to be attachments to those communications. | Schaus Decl. Ex. O at 586-624; *see also id.* at 559. |
| 102. M. Nourmand had no concerns or issues with the Thompson and generally supports development in the neighborhood. | Balitzer Decl. & Ex. 30 at 300-01, 309 (tr. 34:23-35:16, 60:18-61:2); Schaus Decl. Ex. O at 544. |

Dated:  May 23, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  *s/Susan K. Leader*
Susan K. Leader

Attorneys for Plaintiffs