Patrick M. Maloney – CSBN 197844
Gregory M. Smith – CSBN 259971
Elizabeth T. Schaus – CSBN 272258
**THE MALONEY FIRM, APC**
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
T: 310-540-1505 | F: 310-540-1507
E: pmaloney@maloneyfirm.com
E: gsmith@maloneyfirm.com

Attorneys for Defendant,
NOURMAND & ASSOCIATES

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10,<br><br>Defendants. | Case No.: 2:19-cv-05019-ODW (KSx)<br>Judge: Hon. Otis D. Wright II<br>Dept.: Courtroom 5D, 5th Floor<br>Filed: June 10, 2019<br><br>**DEFENDANT NOURMAND & ASSOCIATES' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' OPERATIVE THIRD AMENDED COMPLAINT**<br><br>**Date  June 13, 2022**<br>**Time  1:30 p.m.**<br>**Dept. Courtroom 5D** |

00195106

**NOURMAND & ASSOCIATES' SUMMARY JUDGMENT REPLY**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Plaintiffs Fail to Establish A Triable Issue of Fact as to Whether N&A Participated in the Operation and Management of the Alleged Enterprise

Responding to Nourmand & Associates ("N&A") separate statement, Plaintiffs concede that the majority of the materials facts are undisputed and merely quibble with the others. The undisputed facts establish that N&A was not a direct participant in a RICO enterprise operating to bring sham litigation. Plaintiffs admit that N&A did not file any of the CEQA lawsuits and did not participate in the litigation of those suits. Plaintiffs admit that N&A did not negotiate or sign the settlement agreements. And they admit that N&A did not receive any settlement funds. The reason N&A was not a participant in the asserted RICO enterprise is simple. N&A is in the business of assisting buyers and sellers of residential real estate. It does not own or develop commercial real estate in Hollywood.

Faced with the undisputed facts demonstrating that N&A was not a participant in the enterprise, Plaintiffs focus on the actions of N&A's employees, suggesting their conduct should be attributed to N&A under *respondeat superior*. In RICO cases, *respondeat superior* does not apply <u>unless</u> the employer benefitted from the conduct. Because N&A did not receive the settlement money, Plaintiffs were compelled to write a work of fiction to suggest a benefit to N&A. Plaintiffs suggest there is an "inference" that Saeed's wife Myra would "presumably" benefit from the settlement, apparently through a community property right. There are two problems with this theory. First, the fact that a corporate shareholder receives a community interest in funds because of her spouse's role with another entity does not confer any benefit on the first corporation. Second, to the extent Myra benefitted from the settlement payment, it was because the funds circulated through Sunset, to Saeed, and their community estate – not through N&A –nor do Plaintiffs have evidence that N&A received any such funds.

Plaintiffs also speculate that N&A benefited from design concessions Relevant made because N&A leases office space at the Sunset Property. Plaintiffs also offer no explanation of how any setbacks, remodeled features or any other design concession benefitted N&A as a tenant in nearby space or as a corporation. See *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment").

Plaintiffs next argue that N&A need not be vital to the enterprise for RICO liability to attach, despite N&A's cited caselaw that a person or enterprise is indispensable to an enterprise's goal *only* when the alleged scheme cannot be accomplished without that individual. *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, at *15 (C.D. Cal. July 19, 2013). Plaintiffs' cases are inapposite because they involve individuals who were, in fact, vital to the enterprise. For example, in *United States v. Shryock*, 342 F.3d 948, 985-86 (9th Cir. 2003), the defendant was convicted of conspiracy to commit murder, possession of firearms, and RICO violations based on his involvement with the Mexican Mafia. On appeal, the Court held that the individual participated in the criminal enterprise because he served "a messenger between incarcerated members and members on the street". In other words, the individual was vital to the enterprise because he was the necessary conduit between members where in jail and those who were not.

In *United States v. Middlemiss*, 217 F.3d 112, 119 (2d Cir. 2000), the defendant was convicted of extortion, mail fraud and tax-related criminal offenses. Plaintiffs frame the court's holding as stating that he was "sufficiently involved in the extortion scheme based on his help in drafting documents, collecting extortionate payments from victim, and denying knowledge of coconspirator's participation." Plaintiff's characterization is misleading. The Court found the defendant, an attorney, "***played an active role in all phases of the extortion scheme*** because (1) he helped draw up the JFK Diner, Inc. documents hiding the interests of the other enterprise members; (2) he wrote letters to the plaintiff in connection with payment demands; (3) he

negotiated and collected the cash payments from plaintiff; and (4) he helped create the impression that a buyer for the subject premises existed. Moreover, [the individual] made false exculpatory statements to investigators in which he denied knowledge of the participation of the other enterprise members."*Id.* at 119 (emphasis added).

*Cohen v. Trump*, 200 F. Supp. 3d 1063, 1071-72 (S.D. Cal. 2016), involved RICO claims against Donald Trump and the "Trump University". TU was a private, for-profit entity offering real estate seminars and purporting to teach Trump's "master strategies" for real estate success.  Trump was vital to the alleged enterprise, since he founded TU, its classes were based on Trump's own real estate success, and Trumps affiliation with the school motivated students to enroll and pay tuition.  Furthermore, on summary judgment, Plaintiffs provided evidence that Trump, himself, had reviewed and approved all advertisements and that Trump's "very hands-on" nature of Defendant's involvement with the marketing materials. *Id*. at 1066, 1071.

Plaintiffs assert N&A was in the enterprise's "chain of command" because N&A was allegedly consulted in the decision-making process and affirmatively directed its employees to engage in the predicate acts. Plaintiffs contend that Saeed consulted Michael about the projects and that N&A directed its employee to attend a public hearing and oppose the projects. Plaintiffs misrepresent the facts, and this is shown through their own cited evidence. Saeed' Declaration states that Saeed sent emails to Michael about a *single* project Saeed wanted to be sure N&A was not concerned about the project might impact it. This in no way states that Saeed consulted Michael about all of the projects, that Michael provided advice, or that N&A was in the extortionate enterprise's chain of command.

Further, Plaintiffs misrepresent that N&A directed its employees to attend a public hearing. A plain reading of Michael's email is that he was passing on Saeed's request.  The email from Michael states "I spoke to my dad and ***he would*** like to have 15 people at this Public Hearing. (emphasis added)" Michael did not direct nor require N&A employees to attend, let alone on behalf of N&A.

Plaintiffs also contend that N&A was directly involved in the alleged extortion and that N&A's cited *respondeat superior* cases are distinguishable, but they don't explain how those cases are different.  Relatedly, Plaintiffs cite to no facts which tend to show that it was corporate policy for N&A – a residential real estate company - to promote or engage in illegal conduct to stifle commercial development, as is required to establish direct RICO liability against a corporation. *Brady. v. Dairy Fresh Products, Co.,* 974 F.2d 1149, 1152-1153 (9th Cir. 1992). As such, as demonstrated by Plaintiff's TAC and discovery responses, Plaintiffs are left to rely on the acts of N&A's individual employees to support their claims.  But because, as discussed above, N&A did not benefit from the alleged extortion, these individual's actions do not attach to N&A under *respondeat superior*.

Hoping to keep N&A in the case, Plaintiffs make arguments unsupported by the evidence.  For example, Plaintiffs focus almost Iravani to establish N&A's alleged participation in the enterprise. Plaintiffs ignore, and do not dispute, that from 2008 to 2020, Iravani worked for *both* Sunset and N&A. Plaintiffs ignore, and do not dispute, Iravani's declaration that all of his conduct relating to the subject hotel projects and CEQA lawsuits was done in connection with his work for Saeed and Sunset, and *not* in connection with his work for N&A. Plaintiffs ignore, and do not dispute, that Iravani's emails regarding settlement payments directed them to go to *Sunset's* bank account, not N&A's. Plaintiffs ignore, and do not dispute, that their cited evidence relates only to tax advice given to *Sunset* and Saeed, not N&A.

Plaintiffs also contend that N&A was part of managing and operating the enterprise because Carolyn Rae Cole provided advice to Saeed on in an isolated and sporadic fashion. Ms. Cole denies that she provided advise to Saeed by or through N&A.  She states she provided limited legal assistance to Saeed for a single public hearing.  She attended a single hearing in her individual capacity, as a favor to Saeed. The email Ms. Cole sent to Saeed, upon which Plaintiffs rely, also belies Plaintiffs' contention – therein Ms. Cole states she had volunteered to provide advice to Saeed.

Because Plaintiffs did not depose Ms. Cole, they have no actual *evidence* with which to dispute Ms. Cole's Declaration and email.

Plaintiffs also focus on the remaining few employees who attended the public hearing, nearly a year before Sunset filed the first of the CEQA lawsuits. Again, Plaintiffs did not bother to depose these individuals, and therefore cannot and do not dispute the Declarations that these individuals attended in their individual capacity. Further, that N&A did require that they attend, or espouse any company position in opposition to the project.

Plaintiffs are left to rely on the secretarial support provided by Rachel DeCastro and Sarah Gould. Plaintiffs also did not bother to depose these individuals. Plaintiffs cannot and do not dispute their Declarations that they provided occasional secretarial support to Saeed for a variety of matters without any specific knowledge, legal support or otherwise for any CEQA lawsuits or extortion. As well, many of these emails explicitly state that they are being sent on behalf of Saeed.

Unable to contradict the declarations submitted by N&A because they did not depose the employees (i.e., Carolyn Rae Cole, Rachel DeCastro, Sarah Gould, etc.), failed ask the right questions when they did depose them (i.e., Iravani), or have no other contradictory evidence, Plaintiffs assert that the declarations are self-serving and therefore should be given little weight. That is not how summary judgment works. As the Ninth Circuit recognized, 'declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position." A "district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature.'" *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

Finally, Plaintiffs repeatedly emphasize the use of @nourmand.com email addresses, although sharing an email server does not mean that RICO liability attaches. *Bunnett & Company, Inc. v. Gearhart*, 2018 WL 1070298, *8 (N.D. Cal. Feb. 27, 2018). Neither does RICO liability attach due to simply performing services

for the enterprise. *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir.2008). This type of benign conduct does not equate to RICO liability.

Unable to manufacture a triable issue, Plaintiffs try to inflame the Court by claiming that N&A has "continued to hide the ball" and withhold documents in this case. Plaintiffs want the Court to believe their inability to produce evidence is due to discovery games. But Plaintiffs received thousands upon thousands of pages of documents and participated in some 20 witness depositions, including depositions of Michael, Saeed, and Iravani. Despite this extensive discovery effort, Plaintiffs do not indicate what evidence they requested that both exists and has not been provided to them. At bottom, Plaintiff's lack of evidence to create an actual issue of material fact is not due to discovery gamesmanship; it is because no such evidence exists.

Plaintiff's discovery argument reflects revisionist history. There have been no discovery disputes between Plaintiffs and N&A for the better part of a year, when N&A provided a supplemental response to a records subpoena producing reams of documents. Since that time, Plaintiffs have not asserted that N&A has withheld documents or that N&A was obligated to provide a privilege log. **N&A does not have privileged documents to log because it was not a party to the CEQA suits and did not retain counsel regarding those suits or Plaintiffs projects.**

The first time Plaintiffs have complained about N&A's prior document production is in response to this motion, when they realized their case against N&A was crumbling. The issues Plaintiffs now raise arose and were resolved long ago. And Plaintiffs' continued reliance on Michael's failure to understand the scope of the initial subpoena as a layperson (since N&A did not file and was not a party to any of the subject CEQA lawsuits) and his inability to articulate what his lawyers did to locate supplemental responsive documents (due to attorney-client privilege), is absurd and at best irrelevant, since that initial confusion was long ago remedied.

Plaintiffs also forget that they *agreed* that *Sunset* would review and withhold privileged emails sent by Saeed or Iravani from their @nourmand.com email

addresses, because *Sunset* Landmark held the privilege. Since that time and through the close of fact discovery, Plaintiffs did not make a peep about a discovery dispute involving N&A. Therefore, Plaintiffs' assertions that there is a discovery dispute or that N&A is withholding documents is entirely unfounded, improper, and borders on unethical. Based on the seriousness of these unfounded allegations, N&A has submitted a Declaration of counsel addressing these issues.

Finally, Plaintiffs also attempt to manufacture a triable issue of fact by reference to the Court's ruling denying a Motion to Dismiss the Third Amended Complaint, in which the Court held that Plaintiffs *allegations* of N&A's involvement could proceed. This is obviously irrelevant to a Motion for Summary Judgment which addresses facts and evidence, and not allegations. Plaintiffs' inability to proffer admissible evidence speaks volumes. Simply put, N&A should not be a party to Plaintiffs' RICO claims, just as it was not a party to or beneficiary of, the underlying CEQA lawsuits or settlements.

## II. There is No Triable Issue of Fact as to Whether the CEQA Lawsuits Were Shams

The second part of Plaintiff's Opposition attacks N&A's arguments, also addressed by the S Defendants, that the lawsuits are subject to protection under *Noerr-Pennington*. Plaintiffs argue that N&A has relied on the incorrect standard for evaluating the merits of the subject CEQA suits, because the standards articulated for a single sham lawsuit ("PREI") versus a series (USS-POSCO) are different. The reality is that the standards are fundamentally the same because *objective baseless is a component of both standards*. "Whether the lawsuits at issue are objectively baseless is a component of the USS-POSCO approach. As the USS-POSCO court framed the test, the overarching question is whether the defendant's policy was to file lawsuits '***without regard to the merits*** and for the purpose of injuring a market rival." *Catch Curve, Inc. v. Venali, Inc.* 2008 WL1133024, at *6 (C.D. Cal. Nov. 3, 2008) (emphasis added). "Under either the [Professional Real Estate Investors] or the USS-

POSCO test, *[the plaintiff]…must demonstrate objective baselessness*" because the pattern of claims must be "baseless as a whole." *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F.Supp.948, 958 (S.D. Cal. 1996) (emphasis added). The only important difference with the USS-POSCO test is that a single objectively baseless lawsuit is not enough. The Court must look to the entire pattern and determine the batting average. In other words, even under USS-POSCO the Court must evaluate whether each lawsuit was objectively baseless, but make a determination based upon the pattern of the lawsuits as a whole to determine if the pattern of litigation was a sham.

The problem for Plaintiffs is that even applying USS-POSCO does not create a triable issue of whether the pattern of lawsuits was a sham. The number of lawsuits, 3, does not support a pattern under applicable law. See N&A Motion at 19, fn. 2. Even assuming three lawsuits was enough, the S Defendants are still batting a thousand. Plaintiffs did not prevail on the Thompson or Tommie lawsuits, instead choosing to settle them. Moreover, Court rulings along the way in favor of not only the S Defendants, but other third parties who brought the lawsuits, evidence the merits of the suits. These are not second inning singles, as Plaintiffs claim. The point of a CEQA lawsuit in superior court is to ensure that the administrative process was correctly followed in issuing an MND or EIR in considering environmental impacts. For that reasons, superior court findings that the administrative process was not followed, or environmental impacts were not considered, are absolutely rulings indicating the merits of a CEQA suit. For this reason, Plaintiffs' citations to cases involving New Jersey law, for example, or statutes other than CEQA, are inapplicable.[1] Furthermore, the third CEQA suit concerning Selma is ongoing, and it is therefore premature to determine whether the suit is a sham. *Aydin Corp. v. Loral*

---

[1] Similarly, Plaintiff's references to the *unauthenticated* and *unsworn* reports of experts Thomas and Grassetti, who offer opinions not relied on as issues of fact, and who in the case of Thomas offer legal conclusions that invade the province of a judge or jury, are irrelevant and unavailing even if considered by the Court.

*Corp.,* 718 F.2d 897, 903 (9th Cir. 1983)

Plaintiffs also attempt to argue that the terms of the settlement agreement are relevant to a determination of whether a series of lawsuits is a sham. Plaintiffs are incorrect. The standards articulated in USS-POSCO and PREI do not make any reference to the terms of the settlement as a relevant consideration, nor do Plaintiffs cite to any such cases. While some of the cases Plaintiffs cite may have involved settlements on terms the party could have obtained at trial, that fact was plainly not considered in the Court's analysis of whether the lawsuits were shams. For example, nowhere in the court's opinion in *New West L.P. v. City of Joliet*, 491 F.3d 717 (7th Cir. 2007), are the terms of the settlement even discussed, let alone factored into the Court's analysis of the merits of the underlying lawsuits. In fact, the settlement is referenced only as a defense to Plaintiff's claims that the lawsuits were shams. In the case of *In re Terazosin Hydrochloride Antitrust Litig.,* 335 F. Supp. 2d 1336, 1358 n.13 (S.D. Fla. 2004), in evaluating the alleged baselessness of that alleged lawsuits, the Court noted that the party "*obtained* the relief sought *or additional information*" sought in the lawsuits. *Id*. at 1358.

Furthermore, the beauty of a settlement is that parties have the opportunity to control the outcome of their lawsuits, and parties oftentimes agree to settlements providing benefits available in litigation. That happened here – to **Plaintiffs' benefit**. Plaintiffs received easements for tiebacks and other purposes, notwithstanding that they asserted no affirmative claims in the CEQA suits. Thus, it is remarkably disingenuous for Plaintiffs to contend that a settlement that does mirror the remedies a court is empowered to grant must be a sham.

Plaintiffs admit that in *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008), "the court did not base its analysis on a tangential settlement." Further, Plaintiffs' reliance on *Koziol* is misplaced. Plaintiffs do not dispute that the S Defendants were entitled to bring a superior court action setting aside the approvals for the Thompson and Tommie hotel project. Therefore, unlike

*Koziol*, the S Defendants brought the CEQA suit for relief to which they were entitled, and both sides bargained for valuable concessions when negotiating settlement. There is a difference between bringing a lawsuit for relief one is entitled to, and settling that lawsuit for terms which may go beyond the relief sought, particularly where the settling Plaintiffs are sophisticated parties, represented by counsel, who received consideration in the form of tie-back agreements and an easement.

Finally, Plaintiffs argue that N&A employees who attended a public hearing and signed a petition did not do so for proper petitioning activity and therefore the attendance is not protected by the *Noerr-Pennington* doctrine. Plaintiffs miss the point. Attendance at a public hearing is *not a Hobbs Act violation* that can form the basis of Plaintiffs' RICO claims (as opposed to, for example, an anti-trust claim). Even Plaintiffs admit that submitting comments to city bodies, attending hearings, and signing petitions are generally lawful. Moreover, the single public meeting occurred nearly a year before Sunset files the first CEQA suit, to which N&A was not a party. The cases that Plaintiffs rely on are distinguishable because they do *not* address alleged Hobbs Act violations. Further, Plaintiffs chose not to depose any such N&A employees, who have submitted declarations stating that they attended the public hearing in their individual capacity and not on behalf of N&A, and N&A did not ask or require them to attend. N&A UF. 34.

## III. CONCLUSION

In sum, Plaintiffs have failed to demonstrate a triable issues of material fact sufficient to withstand summary judgment of its claims against N&A. It is respectfully requested that the Court grant N&A's Motion for Summary Judgment in its entirety.

Dated: May 27, 2022                                   **THE MALONEY FIRM, APC**

By:   /s/ Patrick M. Maloney
           Patrick M. Maloney, Esq.
           Attorneys for Defendant,
           NOURMAND & ASSOCIATES

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2381 Rosecrans Avenue, Suite 405, El Segundo, CA 90245.

I served the foregoing document(s) described as:

**DEFENDANT NOURMAND & ASSOCIATES' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' OPERATIVE THIRD AMENDED COMPLAINT**

on the interested party(ies) below, using the following means:

SEE ATTACHED SERVICE LIST

☐ BY PERSONAL SERVICE I delivered such envelope(s) by hand to the offices of the addressee(s).

☐ BY UNITED STATES MAIL I enclosed the documents in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at El Segundo, California.

☐ BY OVERNIGHT DELIVERY I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the respective address(es) of the party(ies) stated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ BY MESSENGER SERVICE I served the documents by placing them in an envelope or package addressed to the respective address(es) of the party(ies) stated above and providing them to a professional messenger service for service.

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 27, 2022, at El Segundo, California.

          /s/ Marilyn Vigil
          Marilyn Vigil

# MAILING LIST

| | |
|---|---|
| WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>Susan K. Leader, Esq.<br>Granville C. Kaufman, Esq.<br>633 West Fifth Avenue, Suite 1550<br>Los Angeles, CA 90071-2027<br>T: (323) 210-2900 \| F: (866) 974.7329<br>E: sleader@wsgr.com<br>E: gkaufman@wsgr.com | Attorneys for Plaintiffs,<br>Relevant Group, LLC<br>1541 Wilcox Hotel LLC,<br>6516 Tommie Hotel LLC,<br>and 6421 Selma Wilcox<br>Hotel LLC |
| WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>Dale R. Bish, Esq.<br>Charles A. Talpa, Esq.<br>Karen Kwok, Esq.<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>T: (650) 493-9300 \| F: (650) 565-5100<br>E: dbish@wsgr.com<br>E: Sctalpas@wsgr.com<br>E: kkwok@wsgr.com | |
| WILSON SONSINI GOODRICH &ROSATI<br>Conor Tucker, Esq.<br>633 West Fifth Street, Suite 1550<br>Los Angeles, CA 90071-2048<br>T: (323) 210-2900 \| F: (866) 974-7329<br>E: ctucker@wsgr.com | Attorneys for Plaintiffs<br>Relevant Group, LLC; 1541<br>Wilcox Hotel, LLC; 6516<br>Tommie Hotel, LLC: 6421<br>Selma Wilcox Hotel, LLC |
| NORTON ROSE FULBRIGHT US LLP<br>James H. Turken, Esq.<br>Neil P. Thakor, Esq.<br>Phillip R. Di Tullio, Esq.<br>Christopher Pelham, Esq.<br>555 South Flower Street, Forty-First Floor<br>Los Angeles, CA 90071<br>T: (213) 892-9200 \| (323) 892-9200<br>F: (213) 892-9494 \| (323) 892-9400<br>E: james.turken@nortonrosefulbright.com<br>E: neil.thakor@nortonrosefulbright.com<br>E: christopher.pelham@nortonrosefulbright.com | Attorneys for Defendants<br>STEPHEN "SAEED"<br>NOURMAND and<br>THE SUNSET<br>LANDMARK<br>INVESTMENT, LLC |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507