**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
ALI R. RABBANI, State Bar No. 253730
arabbani@wsgr.com
CONOR TUCKER, State Bar No. 318075
ctucker@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
Telephone: (323) 210-2900
Facsimile: (866) 974.7329

**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Plaintiffs Relevant Group, LLC; 1541 Wilcox Hotel LLC; 6516 Tommie Hotel LLC; and 6421 Selma Wilcox Hotel LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, inclusive,<br><br>　　　　Defendants. | Case No.: 2:19-cv-05019-ODW-KS<br><br>**PLAINTIFFS' REPLY (TO S-DEFENDANTS' OPPOSITION) IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:　June 13, 2022<br>Time:　1:30 p.m.<br>Dept:　Courtroom 5D, Fifth Floor<br>Before:　Hon. Otis D. Wright II |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I. DEFENDANTS FUNDAMENTALLY MISREAD AND MISAPPLY FEDERAL COMMON LAW ................................................................. 2

    A. Under Binding Ninth Circuit Precedent, California Law Governs the Enforcement of the Settlement Agreements ..................... 2

    B. Even Under Plaintiffs' Standard, the Releases Are Unenforceable as "Part and Parcel" of Defendants' RICO Conspiracy ......................................................................................... 4

II. THE RELEASES ARE UNENFORCEABLE UNDER CALIFORNIA LAW .............................................................................. 5

    A. There Is No Material Dispute That the Releases Were Concurrent With an Act of Extortion to Be Proven at Trial ................. 6

    B. There Is No Material Dispute That Plaintiffs' RICO Claims Were Not Actionable at the Time of the Releases .............................. 6

    C. There Is No Genuine Dispute That the Settlement Agreements Were a "Key Tool" of and "Part and Parcel" with Defendants' RICO Scheme ........................................................ 8

    D. Defendants Misapprehend the Requirements of California Law ..................................................................................................... 10

III. DEFENDANTS' EXTORTION ARGUMENT IS NOT MATERIAL ........ 11

CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aikins v. Tosco Refin. Co.*,
  No. C-98-00755-CRB, 1999 WL 179686
  (N.D. Cal. Mar. 26, 1999) ...................................................................................... 11

*ASARCO, LLC v. Celanese Chem. Co.*,
  792 F.3d 1203 (9th Cir. 2015) ............................................................................... 2, 3

*Basco v. Toyota Motor Corp.*,
  No. CV 09-6307-GHK, 2011 WL 13127142
  (C.D. Cal. Nov. 30, 2011) ......................................................................................... 5

*Brooklands, Inc. v. Sweeney*,
  No. 14-81298-CIV, 2015 WL 1930239
  (S.D. Fla. Apr. 28, 2015) ........................................................................................... 3

*Cnty. of El Paso v. Jones*,
  No. EP-09-CV-00119-KC, 2009 WL 4730303
  (W.D. Tex. Dec. 4, 2009) ......................................................................................... 4

*Hardwick v. Wilcox*,
  11 Cal. App. 5th 975 (2017) .............................................................................. 5, 7, 8

*Hines v. Clearwater Paper Corp.*,
  793 F. App'x 582 (9th Cir. 2020) ............................................................................. 3

*Howard v. Am. Online Inc.*,
  208 F.3d 741 (9th Cir. 2000) .................................................................................... 7

*Ingram Corp. v. J. Ray McDermott & Co.*,
  698 F.2d 1295 (5th Cir. 1983) .................................................................................. 4

*Marani v. Cramer*,
  No. 4:19-cv-05538-YGR, 2021 WL 254308
  (N.D. Cal. Jan. 26, 2021) ..................................................................................... 5, 10

*Mardan Corp. v. C.G.C. Music, Ltd.*,
  804 F.2d 1454 (9th Cir. 1986) .................................................................................. 4

*Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*,
  116 F. Supp. 3d 1010 (N.D. Cal. 2015) ............................................................. 6, 12

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  No. CV 05-6838 CAS, 2010 WL 4116852
  (C.D. Cal. Aug. 18, 2020) ....................................................................................... 12

*Operating Engineers' Pension Tr. Fund v. Clark's Welding & Mach.*,
    688 F. Supp. 2d 902 (N.D. Cal. 2010) .................................................................. 4

*Petro-Ventures, Inc. v. Takessian*,
    967 F.2d 1337 (9th Cir. 1992) ......................................................................... 3, 4

*SI 59 LLC v. Variel Warner Ventures, LLC*,
    29 Cal. App. 5th 146 (2018) ............................................................................ 5, 6

*Spell v. Cnty. of Los Angeles*,
    No. 2:19-06652 DOC (ADS), 2020 WL 5949238
    (C.D. Cal. May 29, 2020) ..................................................................................... 3

*TANO Automation, Inc. v. United States*,
    939 F. Supp. 483 (E.D. La. 1996) ....................................................................... 5

*Ukiah Auto. Invs. v. Mitsubishi Motors of N. Am., Inc.*,
    No. 04-3932-MMC, 2006 WL 2067059
    (N.D. Cal. July 25, 2006) ..................................................................................... 3

*United Com. Ins. Serv., Inc. v. Paymaster Corp.*,
    962 F.2d 853 (9th Cir. 1992) ............................................................................... 2

*United States v. Koziol*,
    993 F.3d 1160 (9th Cir. 2021) ........................................................................... 11

*Village Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
    50 Cal. 4th 913 (2010) ....................................................................................... 10

*Williams v. Phillips Petroleum Co.*,
    23 F.3d 930 (5th Cir. 1994) ................................................................................. 5

**Statutes**

Cal. Civ. Code § 1668 ............................................................................................. *passim*

# INTRODUCTION

Defendants' Opposition (ECF No. 140, "Opposition" or "Opp.") rests on a theory contrary to controlling law, sound policy, and common sense: that an extortioner can insulate himself from liability by demanding concurrently signed releases as part of his extortion. Under Defendants' view, if an extortioner threatened a victim, "I will disseminate compromising information about you on the internet unless you agree to pay me $1 million for my consulting services," and the victim acquiesced, the ill-gotten release would bar a claim of extortion. That is obviously wrong. As set forth below, Defendants' arguments lack merit and are contrary to black letter law.

Defendants purport to find their theory of contract law in a uniform federal standard. But California contract law governs California contracts settling California litigation between two California companies over California CEQA claims. Moreover, the federal common law cases cited by Defendants do not establish the extortioner-immunity rule that Defendants advance. Instead, like California law, they hold a release unenforceable when—as here—it is "part and parcel" of the alleged conspiracy. *See infra* Section I. Defendants are simply wrong when they argue that Plaintiffs can succeed "only" by proving fraud, duress, or material mistake, or that the releases are not unenforceable "unless" Plaintiffs rescind the agreements. *See infra* Section II.D.

Under either California or the federal law cited by Defendants, the key facts are undisputed and preclude enforcement of the releases. The evidence will demonstrate that Defendants used the settlement agreements to extort millions of dollars and other costly concessions to which they had no legal claim under CEQA, and concurrently executed a release therewith. *See infra* Section II.A. No sooner had the ink dried on these agreements than Defendants initiated a copycat CEQA suit against an unrelated hotel project and told Plaintiffs, "you know the drill. It's going to take a check." Whether under California law or the out-of-circuit federal standard cited by

Defendants, releases are not enforceable as affirmative defenses under these circumstances. *See infra* Section II.B.

Defendants cannot genuinely dispute that the settlement agreements (and releases) were "key tools" of Defendants' extortionate scheme. Defendants argue (without supporting facts) that the releases were unimportant. But Sunset's prior legal positions contradict that contention. In 2019 (while Defendants' motion to dismiss *this* case based on the releases was pending), Sunset filed two motions in separate state court actions to "enforce" the releases. Sunset told the Los Angeles Superior Court that the releases were a "main provision[]" of the agreements and sought to sanction Plaintiffs for filing suit in this Court. Defendants' collateral attack was unsuccessful; and their self-serving about-face on the releases' "importance" does not defeat this Motion. *See infra* Section II.C. Nor were the agreements "ratified" in some manner that guarantees their enforceability. *See infra* Section II.D.

Finally, because Defendants' affirmative defenses would come into play only if Plaintiffs prove extortion to the jury, Defendants cannot save those defenses by saying that extortion has not yet been proven. *See infra* Section III.

The facts and law are clear: the releases are unenforceable under Section 1668.

# ARGUMENT

## I. DEFENDANTS FUNDAMENTALLY MISREAD AND MISAPPLY FEDERAL COMMON LAW

California contract principles control, not the Fifth Circuit's federal common law standard. But under either view, the releases are unenforceable.

### A. Under Binding Ninth Circuit Precedent, California Law Governs the Enforcement of the Settlement Agreements

It is blackletter Ninth Circuit law that "[t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally. This is true even though the underlying cause of action is federal." *United Com. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856

(9th Cir. 1992) (citations omitted); *accord, e.g.*, *ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1212 (9th Cir. 2015) (district court erred by not explicitly applying California law to interpret release of federal CERCLA claims by settlement agreement); *Hines v. Clearwater Paper Corp.*, 793 F. App'x 582 (9th Cir. 2020) (applying Nevada law to interpreting release of "federal age discrimination claims"). Defendants ignore this controlling precedent. The Court should reject their facially implausible argument that "federal common law" governs the enforceability of these California contracts.

Defendants rely on *Petro-Ventures, Inc. v. Takessian*, 967 F.2d 1337 (9th Cir. 1992), for the contrary proposition that "**federal law, not state law**, governs the validity of the Thompson and Tommie releases." Opp. at 5 (Defendants' emphasis). This seriously misreads *Petro-Ventures*. That case stands for the straightforward proposition that where federal law *limits* the release of a federal claim, such an anti-release policy should be viewed skeptically, for "[f]ederal statutory rights could be easily defeated if state law could be used to control the incidents of those rights and the defenses to them." *Petro-Ventures*, 967 F.3d at 1340 (citation omitted). Here, Defendants do not invoke federal law to *preserve* a federal claim, but to preclude one. The agreements at issue are not ones releasing a federal claim, but settling state CEQA litigation. To the extent *Petro-Ventures* teaches anything here, it is that courts should avoid deeming federal claims released pursuant to state-law settlements. Beyond that, *Petro-Ventures* has no effect, and the general rule of applying state law governs.[1]

Defendants' argument fails for a second reason. Even assuming *arguendo* that the starting point of the analysis was federal law, rather than California law, that

---

[1] The other cases cited by Defendants are even less persuasive. *Ukiah Auto* makes no explicit choice of law determination. *Ukiah Auto. Invs. v. Mitsubishi Motors of N. Am., Inc.*, No. 04-3932-MMC, 2006 WL 2067059, at *2-4 (N.D. Cal. July 25, 2006). *Brooklands* and *Spell* apply state law. *Brooklands, Inc. v. Sweeney*, No. 14-81298-CIV, 2015 WL 1930239, at *5 (S.D. Fla. Apr. 28, 2015); *Spell v. Cnty. of Los Angeles*, No. 2:19-06652 DOC (ADS), 2020 WL 5949238, at *8 (C.D. Cal. May 29, 2020). And while *Brooklands* and *Spell* find a release of RICO claims, they are distinguishable at least because both cases released claims that fully matured prior to the release. *See* 2015 WL 1930239, at *5; 2020 WL 5949238, at *8.

would make no difference because "both approaches yield the same result." *ASARCO*, 792 F.3d at 1212 n.4. That is so because "state law should be incorporated to provide the content of that federal law" in this context. *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1457-58 (9th Cir. 1986). In other words, even when "[f]ederal law governs the validity of and defenses to purported releases of federal causes of action," the substance of that law remains local state law because "[t]he federal law in this area arises through the incorporation of 'state rules of decision,' which 'furnish an appropriate and convenient measure of the governing federal law.'" *Operating Engineers' Pension Tr. Fund v. Clark's Welding & Mach.*, 688 F. Supp. 2d 902, 910 (N.D. Cal. 2010) (citing *Petro-Ventures* and quoting *Mardan*). Only in the rare circumstances where uniform federal law is necessary to *protect* federal claims from release would something other than the local state law standard govern. *See Mardan*, 804 F.2d at 1458. That is not the case here.

> **B.    Even Under Plaintiffs' Standard, the Releases Are Unenforceable as "Part and Parcel" of Defendants' RICO Conspiracy**

Even if federal common law did apply, under Defendants' own case (Opp. at 5), the releases cannot be enforced because they "themselves were 'part and parcel' of a[] [RICO] conspiracy." *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1315 (5th Cir. 1983); *accord, e.g.*, *Cnty. of El Paso v. Jones*, No. EP-09-CV-00119-KC, 2009 WL 4730303, at *9 (W.D. Tex. Dec. 4, 2009) (citing *Ingram* for the principle "that a release from liability is invalid if it constitutes 'part and parcel' of a conspiracy").

Contrary to Defendants' assertion, *Ingram* did not hold that a release "will only be invalidated if it was the result of fraud, duress, or mistake." Opp. at 5, 6. It recognized that a release is also unenforceable if a party could "prove that the releases themselves were 'part and parcel' of an antitrust conspiracy." *Ingram*, 698 F.2d at 1315. Just as there is no reason to treat the fruits of an extortion conspiracy differently from the fruits of an antirust conspiracy, there is no meaningful difference between

the "part and parcel" test and California's Section 1668 standard. As with the part-and-parcel test, under Section 1668, releases are unenforceable if they coincide with, are the culmination of, or are "key tools" in, an illegal scheme. *See* Mot. at 7-9; *Hardwick v. Wilcox*, 11 Cal. App. 5th 975, 989 (2017); *Marani v. Cramer*, No. 4:19-cv-05538-YGR, 2021 WL 254308, at *3 (N.D. Cal. Jan. 26, 2021) ("key tool").[2] Because a jury can only return liability after finding Defendants' acts extortionate, and because the settlement agreements indisputably arose from those acts, the "part and parcel" standard would also render the releases unenforceable.

## II. THE RELEASES ARE UNENFORCEABLE UNDER CALIFORNIA LAW

Section 1668 precludes the enforcement of a release "when all or some of the elements of the tort are concurrent or future events at the time the contract is signed." *E.g.*, *SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146, 148 (2018). If any of the elements of Plaintiffs' RICO claim were concurrent with, or subsequent to, the signing of the agreements, then Section 1668 applies. Only if *all of the elements* of the claim were satisfied *before* the signing would Defendants be able to escape Section 1668. But, as explained below, it is indisputable that certain elements were at least concurrent with the signing, if not subsequent to it.

Alternatively, Section 1668 *also* applies when the agreement is the culmination of illegal behavior, *Hardwick*, 11 Cal. App. 5th at 989, or a "key tool" of the

---

[2] Nor do the "general rules of contract interpretation"—purportedly embodied in a hodgepodge of orders cited by Defendants—hold that an "agreement will only be invalidated if it was the result of fraud, duress, or material mistake." Opp. at 6. **None** of the cases cited by Defendants stand for this limiting proposition. *TANO* finds that when a party alleges "[f]raudulent inducement," it cannot meet its burden when it uncovered the alleged fraudulent concealment prior to signing the release. *TANO Automation, Inc. v. United States*, 939 F. Supp. 483, 488-89 (E.D. La. 1996). In *Basco*, the plaintiff argued that the settlement agreement was "induced by Defendants' fraudulent conduct" in litigation (specifically, hiding evidence prior to settlement), and that fraudulent inducement in that specific circumstance requires proof of "extrinsic fraud" (which plaintiffs lacked). *Basco v. Toyota Motor Corp.*, No. CV 09-6307-GHK (RZx), 2011 WL 13127142, at *6, *8 (C.D. Cal. Nov. 30, 2011). In *Phillips Petroleum*, the court makes no such limitation, but notes that "fraud, duress, *or other basis* for holding the release invalid" was required, but not shown. *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 936 (5th Cir. 1994) (emphasis added).

underlying RICO scheme, *Marani*, 2021 WL 254308, at *3. Contrary to Defendants' insistence, this is not a requirement of Section 1668, but an alternative way of satisfying it. Nevertheless, these settlement agreements would meet such a requirement and Defendants have not raised a genuine dispute otherwise.

### A. There Is No Material Dispute That the Releases Were Concurrent With an Act of Extortion to Be Proven at Trial

Defendants do not dispute (in relevant part) that they did not, and could not, seek monetary damages as part of their CEQA suits, SUF ¶¶ 4, 8, 11; that Defendants required Plaintiffs to pay money unrelated to legal fees to settle the CEQA suits, SUF ¶¶ 13, 19-20 (providing both parties pay own attorney's fees in settlement); that the settlement agreements included a payment of $5.5 million through the consent of Plaintiffs, SUF ¶¶ 18-20; and that the settlement agreements included a general release against Sunset, SUF ¶ 23. An element of Plaintiffs' extortion predicate is that Plaintiffs consented to give Defendants money, and this did not occur until Plaintiffs signed the settlement agreements. As such, the settlement agreements were the means by which Defendants at least (1) received property of the Plaintiffs (2) through Plaintiffs' consent. Thus, at least two elements of extortion under the Hobbs Act occurred through the execution of the settlement agreement.

As such, under Section 1668, the releases are unenforceable. *See SI 59*, 29 Cal. App. 5th at 148; *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, 116 F. Supp. 3d 1010, 1051 (N.D. Cal. 2015) ("To the extent that Plaintiffs can prove their RICO claim . . . [the contractual provision] would accordingly be unenforceable under California Civil Code § 1668.").

### B. There Is No Material Dispute That Plaintiffs' RICO Claims Were Not Actionable at the Time of the Releases

It is also indisputable that Plaintiffs could not bring their RICO claims before executing the releases, and thus those claims were "future events at the time the contract was signed." *SI 59*, 29 Cal. App. 5th at 148.

Defendants are seeking, through their affirmative defenses, to release Plaintiffs' *RICO* claims—not merely the extortion predicates. Defendants state that the "elements of [their] alleged racketeering and extortion therefore existed before the settlements' execution." Opp. at 12. But they cite to no disputed fact nor any additional fact in support of that statement. Instead, relying on allegations in the Third Amended Complaint ("TAC") rather than facts, Defendants claim that Plaintiffs were aware they were being *extorted* during the process. But while extortion is a RICO predicate, past predicates alone are not enough. Defendants fail to explain how the entire RICO claim was ripe at the time of the releases.

At most, Defendants' citation to the TAC would suggest that Plaintiffs were aware of the reflexive sham legal proceedings filed by Defendants and knew they were being extorted. But past predicate acts are not enough for a RICO claim. RICO requires a pattern and continuation with future acts (or threats of future acts). Defendants' case acknowledges that a pattern requires at least a "threat of *continuing* [predicate] activity." *See, e.g.*, *Howard v. Am. Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000) (emphasis added) (citation omitted). Yet Saeed Nourmand (as Sunset's 30(b)(6) designee) and Jayesh Patel both admitted that no threats of *additional* sham legal proceedings were made prior to the execution of the releases. *See* ECF No. 139 (Kaufman Decl. Ex. 56 at 589 (tr. 172:6-16); *id.* Ex. 36 at 373 (tr. 410:3-25)). And it is undisputed that the third litigation was not filed until after the releases were signed. SUF ¶ 27. Accordingly, Plaintiffs' RICO claims were not actionable until after the releases were signed.

Even so, considering each of the individual sham legal proceedings as predicate acts under RICO does not change the analysis. Section 1668 renders a release unenforceable where it serves as the culmination of an illegal scheme—that is, the attempt to tie it off. *Hardwick*, 11 Cal. App. 5th at 982. In *Hardwick*, the defendant engaged in a decade-long usurious scheme, involving nine separate promissory notes and nearly as many amendments. *Id.* at 979-82. The scheme culminated in a

-7-

"Forbearance Agreement" that included a release of all prior claims and a Section 1542 waiver. *Id.* at 982-83. The defendant argued that the Forbearance Agreement released liability for all of the usurious conduct that came before it, an argument which both the California trial court and the court of appeals rejected. *Id.* at 989. "[T]he Forbearance Agreement was an extension of the underlying usurious loan transaction. Thus, construing the unilateral general release in that agreement as a waiver of usury would allow Wilcox to escape the consequences of his violation of the law by permitting him to benefit from his illegal contract and retain the usurious interest he [had previously] extracted from Hardwick." *Id.*

As in *Hardwick*, Defendants here cannot use the settlement agreements to escape the consequences of their parade of sham legal proceedings. Defendants try to distinguish *Hardwick* as not involving a settlement agreement. Opp. at 13. But the California Court of Appeal made a distinction in quality, not in kind. It found that the release in the Forbearance Agreement was not akin to releases in settlement agreements ending litigation over usurious loans. *Hardwick*, at 990-91. Certainly, RICO claims can be released if they are settled subject to general releases and Section 1542 waivers. But that does not mean that Defendants can insulate their campaign of extortion through settlement agreements executed concurrently with a further act of extortion. Section 1668 does not permit Defendants "to benefit from [their] illegal contract and retain the [extorted property]." *Id.* at 989

Defendants therefore fail to raise a material dispute that Plaintiffs' RICO claims—the claims Defendants seek to release through their affirmative defenses—were actionable prior to signing the settlement agreements.

### C. There Is No Genuine Dispute That the Settlement Agreements Were a "Key Tool" of and "Part and Parcel" with Defendants' RICO Scheme

Defendants were not entitled to the monetary compensation or the costly design changes they extorted from Plaintiffs through the settlement agreements. Defendants

themselves acknowledge that the "monetary" component Plaintiffs consented to pay was at the "heart of the settlement agreements." Opp. at 9. As such, the settlement agreements were clearly "key tools" of and "part and parcel" with the extortion at the core of Defendants' RICO scheme.

Rather than contest this issue, Defendants attempt to parse the provisions of the settlement agreements to argue that the *releases* (as opposed to the agreements as a whole) were not a key tool of the scheme or part and parcel with the extortion. However, this argument does nothing to change the analysis because Defendants are unable to provide any evidence (disputed or otherwise) to support this assertion.

In fact, Defendants' prior legal positions contradict their contention and demonstrate the key role the releases played in Defendants' scheme. In 2019, while the S-Defendants' first motion to dismiss this litigation based on the releases was pending (*see* ECF No. 15-1 at 12), Sunset filed two motions in separate state court actions to "enforce" the releases. *See* Ex. 17; Ex. 18.[3] Sunset represented to the Los Angeles Superior Court that the releases were a "main provision[]" of the settlement agreements and sought monetary sanctions against Plaintiffs for initiating litigation in this Court. Ex. 17 at 17; *see also* Ex. 18. at 31-32. The signatory of those motions, Jayesh Patel, would clearly have known the importance of those releases: he was Sunset's general counsel, outside counsel in this litigation, and the key drafter of the Settlement Agreements themselves.[4] In the end, Defendants' collateral attack was unsuccessful, and their self-serving (and unsupported) shift in view about the "importance" of the releases does not create a genuine issue of material fact.

---

[3] Unless otherwise stated, "Ex." refers to exhibits attached to the Declaration of Conor Tucker in Support of Plaintiffs' Evidentiary Objections, Response to Defendants' Joint Statement of Additional Facts, and Reply Brief ("Tucker Decl.") concurrently filed herewith. Tucker Decl. Ex. 17 and Tucker Decl. Ex. 18 are subject of the concurrently-filed Request for Judicial Notice in Support of Plaintiffs' Reply Brief.

[4] Mr. Patel (now a partner at Norton Rose Fulbright) has, until recently, appeared on the filings in this action.

### D. Defendants Misapprehend the Requirements of California Law

Defendants contend that courts "do not apply Section 1668 in civil RICO cases unless 'the [tortious] behavior is extrinsic to the contractual relationship and could not have been within the contemplation of the parties.'" Opp. at 12 (citing *Marani*, 2021 WL 254308, at *2). This is wrong. The *Marani* court simply noted that courts "have permitted" RICO claims to proceed when the tortious behavior was "extrinsic" to the contract. 2021 WL 254308, at *2. It did not *require* such proof. *Id.*

Defendants' other contention—that Plaintiffs are required to rescind the contract to succeed under Section 1668—also misses the mark. Recission under California law is a distinct cause of action governed by California Civil Code §§ 1691-93. Section 1668 does not require recission prior to a finding of unenforceability. Rather, Section 1691 recission is a doctrinally distinct issue in the enforceability of contracts under California law. Defendants' core case on this point, *Village Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, recognizes as much by distinguishing the statutes at issue (Sections 1691 *et seq.*) from Section 1668. 50 Cal. 4th 913, 920 n.4 (2010) ("[S]uch contracts [governed by sections 1667 and 1668] are not at issue in this case."). And, unlike the plaintiffs in Defendants' cases, Plaintiffs here are not suing for recission or fraudulent inducement and therefore do not need to meet those requirements.

Defendants likewise misapply the law of ratification. Ratification is implicated when a contract is voidable (for example, under theories of fraudulent inducement or economic duress). As explained in Plaintiffs Reply to N&A, ratification is *not* implicated by Section 1668, which renders unenforceable contracts that are contrary to the public policy. But even if ratification were implicated, Defendants do not meet their burden if Plaintiffs simply "accept[] the benefits of the settlement agreements." Opp. at 8. As Defendants' primary case explains: ratification requires acceptance with knowledge that of the facts permitting recission as well as "some unequivocal conduct" giving rise to the "reasonable inference that he or she intended the conduct

to amount to ratification." *Aikins v. Tosco Refin. Co.*, No. C-98-00755-CRB, 1999 WL 179686, at *4 (N.D. Cal. Mar. 26, 1999). Defendants point to no conduct—because there is none—suggesting that Plaintiffs intended ratification. Rather, the undisputed facts show the opposite: shortly after Defendants filed their third sham lawsuit (*e.g.*, the earliest Plaintiffs could have known of facts permitting recission), Plaintiffs filed this lawsuit to protect themselves from further extortion and recover for damage caused by Defendants' extortionate scheme. SUF ¶¶ 27, 28. That is not conduct amounting to ratification.

Defendants imply that a tie-back agreement and construction easement, contained only in the Tommie settlement agreement, somehow "ratifies" the settlement agreements or constitutes consideration. This is wrong. Such agreements are routine in the construction of buildings, commonly provided by neighbors, and have little to no economic value. Ex. 16 at 11 (tr. 245:18-20); Ex. 15 at 5, 7 (tr. 179:10-15, 181:6-15). Defendants leveraged this tie-back to create harmful delay for Plaintiffs. Ex. 16 at 11-12 (tr. 245:15-246:10). And that single tie-back *was never used*: Defendants' campaign of delay resulted in Tommie deciding to permit and develop the property without a tie-back. Ex. 16 at 11-12 (tr. 245:15-246:10); Ex. 15 at 6-8 (tr. 180:12-23, 181:25-182:10). To say Tommie (let alone all Plaintiffs) retained the benefit of the agreements therefore makes no sense: there was no benefit to retain (or intent to ratify).

**III.   DEFENDANTS' EXTORTION ARGUMENT IS NOT MATERIAL**

Finally, Defendants argue that there was no extortion as a matter of law. They are wrong. The "means-ends framework" of *Koziol* controls this point, as Plaintiffs have explained elsewhere. *See* ECF No. 137 at 8-10, 20-21 (discussing applicability of *Koziol* to Defendants wrongful conduct). Where, as here, a party conducts litigation "to obtain property to which the defendant knows he has no lawful claim," those actions are "'wrongful' under the Hobbs Act." *United States v. Koziol*, 993 F.3d 1160, 1170 (9th Cir. 2021).

More importantly, however, disputes over extortion are not material to whether summary judgment should be granted as to Defendants' *affirmative defenses*. Those affirmative defenses are only applicable if Defendants are found liable: otherwise there is no claim to "release." *See, e.g.*, *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838 CAS (MANx), 2010 WL 4116852, at *8 (C.D. Cal. Aug. 18, 2020) (granting summary judgment on affirmative defense to RICO claims without assessing liability); *Monterey Bay*, 116 F. Supp. 3d at 1051 ("To the extent that Plaintiffs can prove their RICO claim . . . [Defendants'] reading of [the contractual provision] would completely exculpate him from liability . . . and would accordingly be unenforceable under California Civil Code § 1668.").

## CONCLUSION

For the reasons discussed above and in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court grant their Motion for Partial Summary Judgment and hold that the releases in the Settlement Agreements are unenforceable.

Dated: May 27, 2022

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Susan K. Leader*
 Susan K. Leader

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel LLC, 6516 Tommie Hotel LLC and 6421 Selma Wilcox Hotel LLC