**NORTON ROSE FULBRIGHT US LLP**
JAMES H. TURKEN (BAR NO. 89618)
CHRISTOPHER K. PELHAM (BAR NO. 241068)
NEIL P. THAKOR (BAR NO. 308743)
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Telephone:  (213) 892-9200
Facsimile:   (213) 892-9494
james.turken@nortonrosefulbright.com
neil.thakor@nortonrosefulbright.com
christopher.pelham@nortonrosefulbright.com

Attorneys for Defendants,
STEPHAN "SAEED" NOURMAND, and THE
SUNSET LANDMARK INVESTMENT LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHEN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; and DOES 1-10,<br><br>Defendants. | Case No. 2:19-cv-05019-ODW-KSx<br>*[Assigned to the Hon. Otis D. Wright II]*<br><br>**DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>*[Declaration of Neil P. Thakor; Evidentiary Objections; and Response to Additional Facts Filed Concurrently Herewith]*<br><br>**Date:  June 13, 2022**<br>**Time: 1:30 p.m.**<br>**Place: Courtroom 5D**<br><br>Complaint Filed: June 10, 2019<br>TAC Filed:  September 14, 2021 |

1
DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

DOCUMENT PREPARED ON RECYCLED PAPER

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 1

II. AS THE NINTH CIRCUIT'S DECISION IN KOZIOL CONFIRMS, PLAINTIFFS CANNOT STATE A CIVIL RICO CLAIM BASED ON LITIGATION CONDUCT. ........................................................................ 2

III. PLAINTIFFS FAIL TO MEET THEIR BURDEN OF ESTABLISHING S-DEFENDANTS' LAWSUITS WERE SHAMS .......... 3

    A. Plaintiffs Fail To Meet Their Burden Of Establishing *USS-POSCO* Applies ..................................................................................... 3

    B. Plaintiffs Failed To Meet Their Burden Of Establishing "Sham" Under USS-POSCO Because They Fail To Establish The Petitions Were Brought Without Regards To The Merits ................... 5

    C. Plaintiffs Failed To Meet Their Burden Of Establishing "Sham" Under PRE. ............................................................................. 8

IV. DEFENDANTS CANNOT ESTABLISH THAT THE CHALLENGED LITIGATION WAS "WRONGFUL" UNDER THE HOBBS ACT .................................................................................................... 9

V. PLAINTIFFS CANNOT DEMONSTRATE PREDICATE ACTS BASED ON STATE-LAW EXTORTION ................................................... 10

VI. THE RELEASES BAR PLAINTIFFS' RICO CLAIMS ........................... 11

VII. THERE IS NO DIRECT EVIDENCE OF MADDREN'S CONSPIRACY: ................................................................................................ 12

VIII. CONCLUSION ............................................................................................... 12

i

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andersen v. Atl. Recording Corp.*, No. 07-CV-934-BR, 2009 WL 3806449 (D. Or. Nov. 12, 2009) .................................................................................................................. 6

*Barapind v. Enomoto*, 400 F.3d 744 (9th Cir. 2005) (en banc) ............................................................... 2

*In re Burlington N., Inc.*, 822 F.2d 518 (5th Cir.1987) .............................................................................. 8

*DriveCam, Inc. v. SmartDrive Sys., Inc.*, No. 11-CV-0997-H (RBB), 2012 WL 13175930 (S.D. Cal. Mar. 26, 2012) ............................................................................................................... 8, 9

*Elemary v. Phillip Holzmann A.G.*, 2008 WL 11389164 (D.D.C. Aug. 18, 2008) ................................................ 11

*First Pacific Bancorp, Inc. v. Bro*, 847 F.2d 542 (9th Cir. 1988) .................................................................... 3

*Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948 (S.D. Cal. 1996) ......................................................... 6

*Kaiser Found. Health Plan, Inc. v. Abbott Lab'ys, Inc.*, 552 F.3d 1033 (9th Cir. 2009) .................................................................. 5

*Kottle v. Nw. Kidney Centers*, 146 F.3d 1056 (9th Cir. 1998) ................................................................... 7

*La Suisse, Societe D'Assurances Sur La Vie v. Kraus*, 2014 WL 3610890 (S.D.N.Y. July 21, 2014) ......................................... 10

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016) ............................................................................... 2

*Rock River Commc'n, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343 (9th Cir.2014) ..................................................................... 8

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890 (N.D. Cal. 2009) ..................................................... 12

*United States v. Albertson*, 971 F. Supp. 837 (D. Del. 1997) .............................................................. 9

*United States v. Avenatti*, 2020 WL 70951 (S.D.N.Y. Jan 6, 2020) ................................................. 10

*United States v. Koziol*, 993 F.3d 1160 (2021) ......................................................................... 2, 9


*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*,
   31 F.3d 800 (9th Cir. 1994) ............................................................. 3, 5, 6, 7

*Viacom Int'l Inc. v. Icahn*,
   747 F. Supp. 205 (S.D.N.Y. 1990), *aff'd*, 946 F.2d 998 (2d Cir. 1991) ........................................................................................................ 10

**Rules and Statutes**

18 U.S.C. § 1961(1) .............................................................................................. 10

Cal. Civ. Code § 47(b) .......................................................................................... 10

Fed. R. Civ. P. 56 .................................................................................................. 12

RICO ............................................................................................... 2, 3, 10, 11

Rule 56(g) ............................................................................................................. 12

102695218.3

- iii -

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

DOCUMENT PREPARED ON RECYCLED PAPER

## I. INTRODUCTION

Plaintiffs' Opposition makes clear that their claims are all based on rhetoric, and not actual evidence. Plaintiffs cite to zero evidence that they were "vulnerable" because of their EB-5 funding, that the CEQA lawsuits caused any delay in construction, or that Sunset ever sought to exploit these purported vulnerabilities. All of the inflammatory quotations paraded in the Opposition about "blood money" and "taking a check to make take this check go away" are entirely based on fabricated, self-serving, statements from Plaintiffs and their lawyers that are notably not contemporaneously documented in any way.

The actual evidence shows that Plaintiffs - a group that boasts over $1 billion in assets - was not vulnerable to delay at all. For example, it is undisputed that construction continued while lawsuits were pending. Opp., 17:13-14; 18:5; *see also*, Response to Additional Facts ("RAF"), 120. In reality, the reason Plaintiffs begged, ***and admittedly lied to Sunset***, to induce it into settling is because Plaintiffs were afraid of losing at trial — something that occurred in nearly every single instance Plaintiffs failed to procure a settlement from a petitioner challenging one of their hotels.

This case is not about any extortion. It is about Plaintiffs trying to quash legitimate opposition to their "re-gentrification" efforts in Hollywood. All Sunset did was hire a well-known and respected attorney to oppose the party hotels being built right next to the property it owned, and acquiesced to Plaintiffs repeated requests

- 1 -

DOCUMENT PREPARED ON RECYCLED PAPER

to "Pls counter…" As a matter of law, there can be no liability for those actions.

## II. AS THE NINTH CIRCUIT'S DECISION IN KOZIOL CONFIRMS, PLAINTIFFS CANNOT STATE A CIVIL RICO CLAIM BASED ON LITIGATION CONDUCT.

Plaintiffs cannot rebut the fact that six United States courts of appeals have held that civil RICO does not reach litigation conduct. Nor can they credibly deny that the Ninth Circuit already resolved this issue against them in *United States v. Koziol*, 993 F.3d 1160, 1174 (2021).

Plaintiffs assert that "[n]othing" in *Koziol* suggests a "differen[ce]" between criminal Hobbs Act cases and civil RICO cases, but that is a demonstrable falsehood. Opp. 9. *Koziol* unambiguously holds that "the scope of *civil* liability under RICO" are different and distinguishable from those about "*criminal* liability under the Hobbs Act." 993 F.3d at 1174 (emphasis added)). Indeed, *Koziol* cites an array of cases rejecting civil RICO claims based on sham litigation, and then distinguishes "all th[o]se cases" precisely because they "involve civil RICO claims" and are therefore "significant[ly] differen[t]" from Hobbs Act "criminal charges." *Id. Koziol* explains that the distinction between those contexts is dispositive, because while criminal Hobbs Act cases can rest on litigation activity, civil RICO claims cannot. *Id.* (quoting *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 346 (2016).).[1]

---

[1] Plaintiffs suggest that *Koziol*'s discussion of civil RICO is irrelevant because *Koziol* itself involved a criminal Hobbs Act claim. Opp. 8-9. But the Ninth Circuit has made clear that its dicta is binding on district courts within the Circuit. *See Barapind v. Enomoto*, 400 F.3d 744, 751 (9th Cir. 2005) (en banc).

Plaintiffs' remaining arguments are likewise hollow. They invite this Court to follow a handful of decisions from New York district courts, *cf. id.* at 10, or engage in *de novo* "statutory interpretation," *id.* at 9, as if following Ninth Circuit precedent is optional. They also purport to rely on the Ninth Circuit's 34-year-old decision in *First Pacific Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir. 1988), which *rejected* a civil RICO claim based on litigation conduct. Plaintiffs' efforts to base civil RICO claims on litigation conduct therefore all fail.

### III. PLAINTIFFS FAIL TO MEET THEIR BURDEN OF ESTABLISHING S-DEFENDANTS' LAWSUITS WERE SHAMS

Even if "sham litigation" could provide liability for civil RICO, Plaintiffs have failed to establish the sham exception applies. Even as the non-movant on summary judgment, *Plaintiffs* have the burden of establishing the "sham litigation" exception. *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994). Plaintiffs fail that burden because their arguments in Opposition either (a) contradict the Third Amended Complaint ("TAC"); (b) are not sufficiently supported by evidence; or (c) shifts the burden to Defendants.

#### A. Plaintiffs Fail To Meet Their Burden Of Establishing *USS-POSCO* Applies

In Opposition, Plaintiffs' completely back away from the story alleged in the TAC initially triggering *USS-POSCO* – that Sunset has a policy of "target[ing] competing developers" to "extract ransom payments." ECF No. 89 at 4, 17. Perhaps realizing Sunset has no history of "extract[ing] ransom payments" from "other

developers," Plaintiffs now claim that Sunset had a policy of opposing only Plaintiffs' hotels because Plaintiffs' rooftop bars competed with S-Defendants' business interests. Opp. 12:5-7. This new theory that Sunset was motivated by some business interest to contest rooftop bars, and not to extract ransom payments as initially alleged, is directly contradictory, should be disregarded, and shows Plaintiffs are grasping at straws to trigger *USS-POSCO*. Regardless, Plaintiffs fail to meet their burden under their new, contradictory, "rooftop bar competitor" theory too.

First, the notion that Sunset, a commercial landlord, competes with hotels, strains credulity and is lacks evidence. Plaintiffs cite to no specific instance in which Sunset and Plaintiffs ever competed for developments, funding, customers or any other business pursuit.[2]

Second, Plaintiffs fail to establish a "policy" of targeting Plaintiffs since it has no credible explanation for why Sunset did not object to Plaintiffs' other development projects. Plaintiffs speculate that Sunset had "no opportunity to challenge" Plaintiffs' other developments, but offer no *evidence* explaining why Sunset could not have objected to the Tao (restaurant), Citizen News (event space)[3],

---

[2] Plaintiffs offer evidence that S-Defendants' former tenant, Boulevard3, was a nightclub, but at best, this is evidence that the *tenant* competed with Plaintiffs, not Sunset.

[3] Plaintiffs claim that Maddren missed the public hearing for Citizen News, but offer no evidence that *S-Defendants* tried to object to the project. Simply claiming Maddren "was almost certainly acting on Nourmand's behalf" without any evidence Maddren and Nourmand ever communicated directly, is insufficient to inflate Plaintiffs' numbers for the *USS-POSCO* test.

102695218.3

- 4 -

Dream (hotel), or Morrison (hotel), all of which went through formal approval process with the City; or the two other restaurants that purportedly required only required alcohol permits. RAF, 120. The limited evidence Plaintiffs' do offer shows that Sunset did not object to the Dream hotel because it did not receive a Notice of Public Hearing – something only sent to property owners within a 500-foot radius – making clear that S-Defendants' three lawsuits were solely based on the number of hotels being built immediately around it, "a matter over which [Sunset] had no control." *Kaiser Found. Health Plan, Inc. v. Abbott Lab'ys, Inc.*, 552 F.3d 1033, 1047 (9th Cir. 2009).

Third, Plaintiffs fail to establish – or even attempt to offer evidence– that Relevant was vulnerable to delay from a CEQA lawsuit, let alone that Sunset *knew* about this purported vulnerability and sought to exploit it. Plaintiffs had its EB-5 funding long before Sunset objected to the hotels, and Plaintiffs admit that they were constructing their hotels while lawsuits were still pending. Accordingly, Plaintiffs have failed to meet their burden of establishing *USS-POSCO* applies.

**B. Plaintiffs Failed To Meet Their Burden Of Establishing "Sham" Under USS-POSCO Because They Fail To Establish The Petitions Were Brought Without Regards To The Merits**

Thompson Hotel:     "City's failure to tell the public about the design changes…prejudiced [S-Defendants'] rights under CEQA." (RJN, Ex. 27)

Tommie Hotel:     "…the Court finds that the MND is defective, and cannot be upheld." (RJN, Ex. 14.)

102695218.3     - 5 -

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Selma Hotel: | "… the City has not chosen a baseline consistent with CEQA… this defect requires setting aside the City's approval of the MND." (RJN, Ex. 19.) |

Despite having the burden, Plaintiffs tellingly never argue, let alone put forth evidence, that *they* won the CEQA litigations. Instead, Plaintiffs try to gloss over their losses in the CEQA lawsuits as just "circumstantial," and instead jump directly to arguing Sunset's purported subjective motivation, which itself is solely based on speculation and self-serving statements from its experts and lawyers. Opp. 18:10-24. However, even under *USS-POSCO*, Plaintiffs still "must demonstrate objective baselessness because the pattern of claims must be baseless as a whole" *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 958-59 (S.D. Cal. 1996); *see also USS-POSCO*, 31 F.3d at 811 (finding success rate exceeding .500 dispositive to issue of sham).

While Plaintiffs argue that S-Defendants' victories were only "technical", something belied by the actual text of the trial orders,[4] this argument improperly shifts the burden to S-Defendants to establish *Noerr-Pennington* immunity. S-

---

[4] Plaintiffs also disingenuously argue that S-Defendants' petitions were shams because S-Defendants' never obtained an EIR. The reason Sunset never obtained a final ruling on the merits in *Thompson* and *Tommie* is because Plaintiffs fraudulently induced Sunset to settle before trial, and agreed to mitigation measures such as limits on rooftop noise, loading zones to curb traffic, and a hotline for complaints. *Andersen v. Atl. Recording* Corp., No. 07-CV-934-BR, 2009 WL 3806449, at *7 (D. Or. Nov. 12, 2009)(noting "many matters were settled" as evidence of merit.)

Defendants were not required to prove they won the lawsuits; it was Plaintiffs' burden to establish the litigations were brought "willy nilly without regards to merits." *USS-POSCO*, 31 F.3d at 811. Without any real inquiry into the merits of the CEQA petitions, that is a burden Plaintiffs failed to meet.

Plaintiffs next attempt to divert this Court's inquiry from Sunset's successful petitions to Sunset's objections and building appeals at the city level. However, the Court should reject this attempt to once again switch theories of liability, because none of these city objections or building appeals are pled in the TAC, despite Plaintiffs' heightened pleading standard. *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1063 (9th Cir. 1998). Moreover, the focus on S-Defendants' city objections is insufficient to establish a "sham" because those objections were a necessary step for Sunset to bring its successful CEQA petitions. An objector is *required* to object at the city level first to sufficiently exhaust administrative remedies prior to bringing a CEQA petition.[5] RAF, 97. It also ignores the fact that those objections, while denied by the city, were later vindicated by the trial court. As a result, under *USS-POSCO*, Plaintiffs' failed to establish the lawsuits were shams.

---

[5] While Plaintiffs now claim that Sunset objected to much at the City, in the CEQA litigations, Plaintiffs argued Sunset did not object enough and argued Sunset failed to exhaust its administrative remedies – an argument Judge Fruin called "misleading." ECF No. 127-3, RJN, Ex. 27.

102695218.3

- 7 -

### C. Plaintiffs Failed To Meet Their Burden Of Establishing "Sham" Under PRE.

Under the *PRE* standard, Plaintiffs have the burden of establishing *all claims* advanced in the Thompson, Tommie and Selma actions were objectively baseless. *DriveCam, Inc. v. SmartDrive Sys., Inc*., No. 11-CV-0997-H (RBB), 2012 WL 13175930, at *3 (S.D. Cal. Mar. 26, 2012)("Litigation is not considered a sham so long as at least one claim in the lawsuit has objective merit.")  While Plaintiffs baldly claim "no reasonable litigant" could expect to seek relief, they ignore that it is undisputed that other reasonable litigants did seek relief, and were granted relief.  Once again, Plaintiffs' failure to even consider the merits of the actual claims in the petitions, or provide any evidence that their hotels did not violate CEQA, precludes a finding of sham.

Plaintiffs also wrongly claim that S-Defendants are precluded from establishing subjective motivation because of properly asserted attorney-client privilege objections during the deposition of Robert Silverstein and Daniel Wright.  First, this once again, shifts the burden on to S-Defendants to establish subjective motivation.  Second, Plaintiffs do not get to invade the attorney-client privilege simply by filing a lawsuit based on Defendants' petitioning activity. *Rock River Commc'n, Inc. v. Universal Music Grp., Inc*., 745 F.3d 343, 353–54 (9th Cir.2014) ("Noerr-Pennington defense…does not implicitly waive privilege"); *In re Burlington N., Inc*., 822 F.2d 518, 533 (5th Cir.1987).  In any event, Plaintiffs admit that S-

102695218.3 - 8 - DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

DOCUMENT PREPARED ON RECYCLED PAPER

Defendants' subjective motivation was to "invalidate" the project, the exact relief it sought in its petition. ECF No. 89, para. 73. This admission is binding on Plaintiffs.

## IV. DEFENDANTS CANNOT ESTABLISH THAT THE CHALLENGED LITIGATION WAS "WRONGFUL" UNDER THE HOBBS ACT

Even if S-Defendants' petitioning activity were not immune, Plaintiffs cannot establish that it was "wrongful" under the Hobbs Act. Plaintiffs claim *Koziol*, *supra*, establishes that "sham litigation" is wrongful *per se*, *id.* 21, but *Koziol* only holds that **objectively meritless**, **subjectively ill-motivated** litigation is wrongful, because it involves pursuit of property as to which the litigant has "no lawful claim." 993 F.3d at 1170. To the extent USS-POSCO enables a "sham" finding based on **potentially meritorious** litigation, Plaintiffs need to show wrongfulness based on something more than a mere "sham" finding.

Plaintiffs' only such effort is to assert that accepting money to settle a CEQA suit is *per se* a federal crime simply because CEQA itself does not provide for damages, something already rejected by federal courts. *See*, *e.g.*, *United States v. Albertson*, 971 F. Supp. 837, 838 (D. Del. 1997) (developer possessed no legal entitlement to be free of opposition to development, and defendant did not commit extortion by accepting payment to drop opposition).[6] Plaintiffs' theory also fails to

---

[6] Plaintiffs contend in a footnote that because of CEQA's broad standing provisions, S Defendants exercised "government power" when they brought a suit under it. Opp. 22 n.5. The cases Plaintiffs cite, which by their own admission involved "court appointed" officials, *id.*, are self-evidently inapposite.

account for the fact that it was they, not Defendants, who initiated the settlement and that **both sides** received concessions (such as the dismissal of the CEQA lawsuit, the granting of the tieback, and the temporary easement) "to which [they were] not otherwise entitled by law." *Viacom Int'l Inc. v. Icahn*, 747 F. Supp. 205, 213 (S.D.N.Y. 1990), *aff'd*, 946 F.2d 998 (2d Cir. 1991).

All of the cases relied on by Plaintiffs are inapposite because they involve unlawful attempts to settle **other people**'s lawsuits. *La Suisse, Societe D'Assurances Sur La Vie v. Kraus*, 2014 WL 3610890, at *10 (S.D.N.Y. July 21, 2014) (insurance brokers sought to "negotiate a payment to themselves, rather than the policyholders," to settle **policyholders**' claims); *United States v. Avenatti*, 2020 WL 70951, at *8-9 (S.D.N.Y. Jan 6, 2020) (lawyer-defendant sought kickback from company to settle **his client's** claim against company). But that is not the case here. Plaintiffs therefore cannot establish that S Defendants' petitioning was "wrongful" under the Hobbs Act.

## V. PLAINTIFFS CANNOT DEMONSTRATE PREDICATE ACTS BASED ON STATE-LAW EXTORTION

Plaintiffs also cannot rely on state-law extortion to establish predicate offenses. It is undisputed that in light of California's litigation privilege, litigation communications are not "chargeable" under California law. Plaintiffs therefore cannot use California law to establish predicate acts. Plaintiffs' only attempted response is to assert that the "litigation privilege does not bar RICO claims." Opp. 10. That is no response at all. The Memorandum did not argue that the litigation

102695218.3 - 10 -
DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

DOCUMENT PREPARED ON RECYCLED PAPER

privilege **prevails over** RICO. Instead, it argued that **RICO itself** incorporates "State law," 18 U.S.C. § 1961(1), which in turn incorporates the litigation privilege, Cal. Civ. Code § 47(b), which in turn immunizes the conduct on which plaintiffs seek to rely. Plaintiffs' effort to establish RICO predicates by invoking California law therefore fails.

## VI. THE RELEASES BAR PLAINTIFFS' RICO CLAIMS

Plaintiffs' own allegations in the TAC belie their contention that they were not aware they were being extorted until after the Thompson and Tommie settlement agreements were executed. For example, Plaintiffs allege that prior to the settlements Sunset made threats that unless Plaintiffs "agreed to pay Sunset Landmark a significant amount of money," ECF No. 89, ¶ 76. Likewise, Plaintiffs claim they challenged S-Defendants' monetary demands as "blood money," and that during meetings they knew S-Defendants' objective was "primarily, if not exclusively, about extracting a monetary payout." *Id*. at ¶ 82.

For this reason, the law relied on in the Opposition does not support Plaintiffs' argument that the releases do not bar Plaintiffs RICO claims. In *Elemary v. Phillip Holzmann A.G.*, 2008 WL 11389164, at *3-4 (D.D.C. Aug. 18, 2008), cited in the Opposition, the court found that because the injury and claims **undisputedly occurred after the signing of a settlement agreement**, it could not be within the scope of that agreement. *Id.* Here, of course, the exact opposite is true. Plaintiffs' misconstrue extrinsic versus intrinsic fraud. Contrary to Plaintiffs' contentions, a

release can only be invalidated by extrinsic fraud (i.e. acts taken outside of the contractual negotiations and unbeknownst to the defrauded party). *Marani*, 2021 WL 254308, at *2; *see also Monterey Bay Military Housing, LLC v. Pinnacle Monterey LLC*, 116 F. Supp. 3d 1010, 1051 (N.D. Cal. 2015). Again, that is simply not the case here and Plaintiffs have provided no evidence to suggest otherwise.

## VII. THERE IS NO DIRECT EVIDENCE OF MADDREN'S CONSPIRACY:

Casey Maddren and Stephan Nourmand do not know each other and have never spoken to each other. Grasping at straws, Plaintiffs argue there is a conspiracy because Maddren discussed his independent objections to with Silverstein. Plaintiffs call this "plainly a disputed fact" of a criminal conspiracy but it is speculative at best and insufficient to raise a genuine dispute. *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 904 (N.D. Cal. 2009)("conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy.")[7]

## VIII. CONCLUSION

For the foregoing reasons, S-Defendants respectfully request that the Court

---

[7] Plaintiffs argue that S-Defendants' argument about Schrader and Maddren do not negate an essential element of their claim and are inappropriate for summary judgment. However, Rule 56(g) provides that: "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case. Fed. R. Civ. P. 56.

102695218.3
- 12 -

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

grant its Motion for Summary Judgment in its entirety.

Dated: May 27, 2022

**NORTON ROSE FULBRIGHT US LLP**

By */s/ Christopher Pelham*
CHRISTOPHER PELHAM
Attorneys for Defendants
THE SUNSET LANDMARK
INVESTMENT, LLC, and STEPHEN
"SAEED" NOURMAND

102695218.3

- 13 -

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT