Patrick M. Maloney – CSBN 197844
Gregory M. Smith – CSBN 259971
Elizabeth T. Schaus – CSBN 272258
**THE MALONEY FIRM, APC**
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
T: 310-540-1505 | F: 310-540-1507
E: pmaloney@maloneyfirm.com
E: gsmith@maloneyfirm.com
E: eschaus@maloneyfirm.com

Attorneys for Defendant,
Nourmand & Associates

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, <br><br> Defendants. | Case No.:  2:19-cv-05019-ODW (KSx) <br> Judge:  Hon. Otis D. Wright II <br> Dept.:  Courtroom 5D, 5th Floor <br> Filed:  June 10, 2019 <br><br> **DEFENDANT NOURMAND & ASSOCIATES' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br> **Trial** <br> Date  August 30, 2022 <br> Time  1:30 p.m. <br> Dept.  Courtroom 5D <br><br> **Pretrial Conference** <br> Date  August 9, 2022 <br> Time  11:30 p.m. <br> Dept.  Courtroom 5D |

## TABLE OF CONTENTS AND AUTHORITIES

**I.    CLAIMS AND DEFENSES** ............................................................................1

  A.   Plaintiff's Claims ...........................................................................................1

  B.   Elements of Plaintiff's Claims ......................................................................2

  C.   N&A's Evidence In Opposition to Plaintiffs' Claims ....................................4

    i.   *Claim 1: Violation of 18 U.S.C. § 1962(c)* ...........................................4

      1.   Plaintiffs Cannot Establish the Requisite Number of Predicate Acts ........4

      2.   N&A Did Not Manage or Operate The Asserted RICO Enterprise. ..........5

        a.   RICO Liability Requires Management or Operation of the Enterprise. 5

          i.   N&A is a Residential Real Estate Brokerage. ...................................5

          ii.   Saeed Maintains Relationships With N&A Employees, Who Occasionally Provide Only Administrative Assistance to Him. ...............6

        b.   N&A's Employees' Conduct Does Not Expose N&A to Liability......10

      3.   *Noerr-Pennington* Immunizes Litigants From Liability. ........................12

        a.   The CEQA Lawsuits Are Immunized By *Noerr-Pennington*. .............14

        b.   Courts Apply A "Low Threshold" In CEQA Suits. ...........................14

        c.   Plaintiffs Have Not Identified Any Particular Evidence Establishing that the CEQA Suits Lack Merit................................................................15

        d.   Sunsets' CEQA Lawsuits Were Not Objectively Baseless. .................16

    ii.   *Claim 2: Violation of 18 U.S.C. § 1962(d)* ........................................19

  D.   N&A'S Affirmative Defenses .......................................................................19

    i.   *Noerr Pennington* ................................................................................19

  E.   Evidence in Support of N&A's Affirmative Defenses ..................................19

    i.   *Noerr-Pennington Immunizes Litigants From Liability.* ............................19

      1.   The CEQA Lawsuits Are Immunized By *Noerr-Pennington*. .................21

      2.   Courts Apply A "Low Threshold" In CEQA Suits.Noerr-Pennington Immunizes Litigants From Liability.............................................................22

      3.   Plaintiffs Have Not Identified Any Particular Evidence Establishing that the CEQA Suits Lack Merit............................................................................23

      4.   Sunsets' CEQA Lawsuits Were Not Objectively Baseless. .....................24

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# TABLE OF CONTENTS AND AUTHORITIES

F.   Evidentiary Issues ...................................................................27

    i.   *Plaintiffs' Motions In Limine*................................................27

    ii.   *S Defendants' Motions In Limine* ........................................27

    iii.   *Nourmand & Associates' Motions In Limine* ............................27

    iv.   *Additional Evidentiary Issues* ...........................................28

G.   Issues of Law ......................................................................28

**II.   BIFURCATION OF ISSUES**.................................................**29**

**III.   JURY TRIAL.**....................................................................**29**

**IV.   ATTORNEYS' FEES.** .........................................................**29**

**V.   ABANDONMENT OF ISSUES.**.............................................**30**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**NOURMAND & ASSOCIATES' MEMORANDUM OF CONTENTIONS OF FACT AND LA**

# TABLE OF CONTENTS AND AUTHORITIES

## Cases

*Amarel v. Connell*,
102 F.3d 1494, 1519–20 (9th Cir.1996) ................................................................26

*Aydin Corp. v. Loral Corp.*,
718 F.2d 897 (9th Cir. 1983) at 903 ...........................................5, 15, 23, 25

*Baumer v. Pachl*,
8 F.3d 1341(9th Cir.1993) ................................................................11, 19

*Boone v.  Redevelopment Agent of City of San Jose*,
841 F.2d 886, 893 (9th Cir. 1988) ................................................................15, 23

*Brocade Securities Litigation*,
2008 WL 2050847 at *3 ................................................................10

*Bunnett & Company, Inc. v. Gearhart*,
*2018 WL 1070298,  *8* (N.D. Cal. Feb. 27, 2018)................................................12

*C&M Café v. Kinetic Farm, Inc.*,
2016 WL 682071 (N.D. Cal. Nov. 18, 2016) ................................................11

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 510, 511 (1972)................................................................12, 20

*Coca–Cola Co. v. Omni Pac. Co.*,
1998 U.S. Dist. LEXIS 23277, at *24 (N.D.Cal. Dec. 9, 1998)................................26

*Coquina Investments v. Rothstein*,
2011 WL 4971923, *8 (S.D. Fla. Oct. 19, 2011) ................................................9, 10

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)................................................................12, 20

*Energy Conservation, Inc. v. Heliodyne, Inc.*,
698 F.2d 386, 389 (9th Cir. 1983) ................................................................12, 20

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

NOURMAND & ASSOCIATES' MEMORANDUM OF CONTENTIONS OF FACT AND LA

## TABLE OF CONTENTS AND AUTHORITIES

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
629 F.3d 1278, 1291 (Fed. Cir. 2010) ............................................................26

*Evans Hotels, LLC v. Unite Here Loc.*
*30*, 433 F. Supp. 3d 1130, 1149 (S.D. Cal. 2020) ..................................16, 23

*Freeney v. Bank of Am. Corp.*,
2016 WL 5897773, at *13 (C.D. Cal. Aug. 4, 2016) ....................................10

*Gianelli v. Schoenfeld*,
2021 WL 4690724, *11 (E.D. Cal. Oct. 6, 2021)...........................................10

*Howard v. Am. Online Inc.*,
208 F.3d 741, 751 (9th Cir. 2000) ................................................................19

*Icon at Panorama, LLC v. Sw. Reg'l Council of Carpenters*,
2019 WL 7205899, at *3 (C.D. Cal. Aug. 7, 2019) ................................13, 21

In *Brady v. Dairy Fresh Prod. Co.*,
974 F.2d 1149 (9th Cir. 1992) .......................................................................10

*In re Flonase Antitrust Litig.*,
795 F. Supp. 2d 300, 310 (E.D. Pa. 2011)....................................................26

*In re Terazosin Hydrochloride Antitrust Litig.*,
335 F. Supp. 2d 1336, 1358 (S.D. Fla. 2004)...........................................17, 24

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
2013 WL 12130034, at *15 (C.D. Cal. July 19, 2013).....................................9

*Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*,
863 F.3d 1178, 1187 (9th Cir. 2017) .......................................................14, 21

*Keep Our Mtns Quiet v. Cnty of Santa Clara*,
236 Cal.App.4th 714, 731, (2015) ...........................................................15, 22

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# <u>TABLE OF CONTENTS AND AUTHORITIES</u>

*Kottle v. Nw. Kidney Ctrs.*,
146 F.3d 1056, 1060 (9th Cir. 1998) ...................................................... 13, 21

*Koziol v. United States*,
993 F. 3d 1160 ........................................................................................ 13, 21

*Linens of Europe, Inc. v. Best Mfg., Inc.*,
2004 WL2071689 (S.D.N.Y 2004)................................................................ 1, 5

*Living Designs, Inc. v. E.I. de Nemours & Co.*,
431 F.3d 353, 361 (9th Cir. 2005)) ................................................................. 2

*Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*,
192 F.Supp.2d 519, 538–39 (M.D.La.2001) .................................................. 26

*Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*,
404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005) ......................................... 13, 20

*New West v. City of Joliet*,
491 F.3d 717 (7th Cir. 2007) .............................................................. 5, 16, 24

*Ocean View Estates Homeowners Assn., Inc. v. Montecito Water Dist.*
(2004) 116 Cal.App.4th 396, 399, 10 Cal.Rptr.3d 451 .......................... 15, 23

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*,
298 F.3d 768, 775 (9th Cir. 2002) ............................................................... 11

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*,
298 F.3d 768, 774-75 (9th Cir. 2002).............................................................. 4

*Oregon Nat. Res. Council v. Mohla*,
944 F.2d 531, 533 (9th Cir. 1991) .......................................................... 15, 23

*People v. Sales*,
116 Cal. App. 4th 741, 749 (2004) .................................................................. 4

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## <u>TABLE OF CONTENTS AND AUTHORITIES</u>

*Perdomo v. Garcia*,
2010 WL 3324304, at *2 (N.D. Cal. Aug. 23, 2010) ...................................................11

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49, 56 (1993) ("*PRE*") ..................................................................................passim

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ................................................................................................7, 8

*Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*,
745 F.3d 343, 352 (9th Cir. 2014) .........................................................................14, 21

*Save Our Big Trees v. City of Santa Cruz*,
241 Cal.App.4th 694, 704–705 (2015) ...................................................................14, 22

*Sever v. Alaska Pulp Corp.*,
 978 F.2d 1529, 1535 (9th Cir. 1992) ......................................................................1, 5

*Sierra Club v. County of Sonoma*
(1992) Cal.App.4th 1307, 1316-1317, 8 Cal.Rptr.2d 473 ......................................15, 23

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923, 929 (9th Cir.2006) ....................................................................12, 13, 20

*STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.*,
2011 WL 1362163, at *2 (N.D.Cal. Apr. 11, 2011)..............................................17, 25

*Tatung Co., Ltd. v. Shu Tze Hsu*,
217 F. Supp. 3d 1138, 1152–53 (C.D. Cal. 2016) ..........................................................7

*Theme Promotions v. News America Marketing Fsi*,
546 F.3d 991, 539 F.3d 1046 (9th Cir. 2008) at 1007 ............................12, 16, 20, 24

*U.S. v. Viola*,
35 F.3d 37, 43 (1994)...................................................................................................8

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## <u>TABLE OF CONTENTS AND AUTHORITIES</u>

*United Mine Workers v. Pennington*,
381 U.S. 657 (1965)................................................................12, 20

*United States v. Valera*,
845 F.2d 923, 929 (11th Cir.1988) ..................................................19

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*,
 31 F.3d 800, 811 (9th Cir. 1994) .........................................14, 18, 22, 26

*Walter v. Drayson*,
538 F.3d 1244, 1249 (9th Cir.2008) ..............................................7, 11

*White v. Lee,*
227 F.3d 1214, 1231 (9th Cir. 2000) ..........................................passim

*Wonderful Real Est. Dev. LLC v. Laborers Int'l Union of N. Am. Loc.*
*220,* 2020 WL 91998, at *10 (E.D. Cal. Jan. 8, 2020) ................................26


**<u>Statutes</u>**
18 U.S. Code § 1861(5) ......................................................................4
18 U.S. Code § 1962(c) ...................................................................2, 4
18 U.S. Code § 1962(d) ...............................................................2, 4, 19
Cal. Pub. R. Code § 21060.5 .......................................................17, 24


**<u>Other Authorities</u>**
Judicial Council of California Criminal Jury Instructions (2022), Instruction 1830 .....4
Ninth Circuit Manual of Model Civil Jury Instructions at § 8, Civil RICO (2017).......2
Ninth Circuit Manual of Model Criminal Jury Instructions at § 9.6 (2022) .................2
Ninth Circuit Manual of Model Criminal Jury Instructions at § 9.7 (2022) .................3

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Defendant, NOURMAND & ASSOCIATES ("N&A"), hereby submits this Memorandum of Contentions of Fact and Law.

## I.   CLAIMS AND DEFENSES

### A.   Plaintiff's Claims

Plaintiffs allege that Saeed Nourmand and The Sunset Landmark Investment LLC filed sham lawsuits under the California Environmental Quality Act, known as CEQA, to obstruct and delay the development of certain of Plaintiffs' hotel projects in Hollywood, and to ultimately force Relevant to the pay the price Defendants demanded in exchange for dropping the lawsuits. Plaintiffs allege that although Nourmand & Associates was not a party to the CEQA lawsuits or settlements, and did not participate in negotiating the settlements, Nourmand & Associates participated in the operation or management of the alleged RICO enterprise.

Plaintiffs have yet to specifically identify the predicate acts which form the basis of their claims that they intend to pursue at trial.  Based on Plaintiffs' discovery responses, N&A expects Plaintiffs intend to break series of events into constituent parts in order to expand a single episode into multiple predicate acts.   *Linens of Europe, Inc. v. Best Mfg., Inc.,* 2004 WL2071689 (S.D.N.Y 2004) ("[M]ultiple acts in furtherance of a single extortion episode constitute only a single predicate act of extortion, not a pattern of two or more acts."); *Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1535 (9th Cir. 1992) ("First, although Sever alleges a number of "acts," APC's collective conduct is in a sense a single episode having the singular purpose of impoverishing Sever, rather than a series of separate, related acts."). N&A requests that the Court require the Plaintiffs to identify a specific list of asserted predicate acts prior to commencement of trial, so that it is clear what predicate acts are being asserted and to ensure that all asserted predicate acts meet the requirements of the RICO statute.

N&A understands Plaintiffs plan to pursue the following claims against all Defendants:

/ / /

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1    Claim 1: Defendants violated RICO, 18 U.S.C. § 1962(c);

2    Claim 2: Defendants violated RICO, 18 U.S.C. § 1962(d), by conspiring to

3    violate RICO, 18 U.S.C. § 1962(c).

4    **B.    Elements of Plaintiff's Claims**

5    The elements required to establish Plaintiffs' claims are:

6    **Claim 1: Violation of 18 U.S.C. § 1962(c)**

7        i.      conduct;

8        ii.     of an enterprise;

9        iii.    through a pattern;

10       iv.     of racketeering activity (known as "predicate acts");

11       v.      causing injury to Plaintiffs' "business or property" by the conduct

12               constituting the violation.

13   *See* Ninth Circuit Manual of Model Civil Jury Instructions at § 8, Civil RICO (2017)

14   (citing *Living Designs, Inc. v. E.I. de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir.

15   2005)).

16       The elements required to establish Plaintiffs' claims for extortion, or attempted

17   extortion, by nonviolent threat under the Hobbs Act are:

18       i.      The defendant induced, or intended to induce, Plaintiffs to part with

19               property by wrongful threat of economic harm;

20       ii.     The defendant acted with the intent to obtain property;

21       iii.    Commerce from one state to another was or would have been

22               affected in some way; and

23       iv.     For attempted extortion:  the defendant did something that was a

24               substantial step toward committing the crime and that strongly

25               corroborated the defendant's intent to commit the crime.

26   *See* Ninth Circuit Manual of Model Criminal Jury Instructions at § 9.6 (2022).

27       Although it was not pled in Plaintiffs' Third Amended Complaint, Plaintiffs have

28   indicated for the first time in their Proposed Pre-Trial Conference Order that they intend

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

to assert as a predicate act of attempted extortion under color of official right under the Hobbs Act. **N&A disputes that Plaintiffs can pursue a claim for attempted extortion under color of official right under the Hobbs Act, on the grounds it was never pled in the Third Amended Complaint. N&A disputes this claim on the additional ground that no defendant was acting as a public official or under color as a public official title.** The elements for attempted extortion under color of official right under the Hobbs Act are:

  i. The defendant was a public official or acting under color as a public official title;

  ii. The defendant obtained or intended to obtain property that the defendant knew it was not entitled to receive;

  iii. The defendant knew that the property was or would be given in return for taking some official action;

  iv. Commerce or the movement of an article or commodity in commerce from one state to another was or would have been affected in some way; and

  v. For attempted extortion: the defendant did something that was a substantial step toward committing the violation and that strongly corroborated the defendant's intent to commit the violation.

*See* Ninth Circuit Manual of Model Criminal Jury Instructions at § 9.7 (2022).

 The elements required to establish Plaintiffs' claims for extortion under California law are:

  i. The defendant threatened to unlawfully injure the property of Plaintiffs;

  ii. When making the threat, the defendant intended to use that fear to obtain Plaintiffs' consent to give the defendant money or property;

  iii. As a result of the threat, Plaintiffs consented to give the defendant money or property; and

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

iv.    As a result of the threat, Plaintiffs then gave the defendant money or property.

Judicial Council of California Criminal Jury Instructions (2022), Instruction 1830. The elements of attempted extortion under California law are "(i) a specific intent to commit extortion and (2) a direct ineffectual act done in towards its commission." *People v. Sales*, 116 Cal. App. 4th 741, 749 (2004).

### Claim 2: Violation of 18 U.S.C. § 1962(d)

A RICO conspiracy under § 1962(d) may be established by proof of an agreement to commit a substantive violation of RICO. *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 774-75 (9th Cir. 2002) ("It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy."). To recover under § 1962(d) for conspiring to violate § 1962(c), Plaintiffs must prove each of the elements of their first cause of action for violation of § 1962(c). In addition, Plaintiffs must prove that (1) two or more of the Defendants tried to accomplish an unlawful plan to engage in a pattern of racketeering activity, and (2) each Defendant agreed to the overall objective of the conspiracy. As an alternative to the second element, the Plaintiffs must prove that a Defendant agreed with at least one other Defendant to commit two predicate acts as part of the conspiracy.

### C.    N&A's Evidence In Opposition to Plaintiffs' Claims

### i.    Claim 1: Violation of 18 U.S.C. § 1962(c)

### 1.    Plaintiffs Cannot Establish the Requisite Number of Predicate Acts

A pattern of racketeering activity requires at least two acts of racketeering activity, i.e., two predicate acts. 18 U.S.C. § 1861(5). Plaintiffs cannot establish the requisite number of predicate acts.

•    The lawsuits concerning Tommie and Thompson have been settled, and thus cannot be established to be shams. *New West v. City of Joliet*, 491 F.3d 717 (7th

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Cir. 2007) ("New West has settled (for a substantial payment) one of the suits that Joliet filed in state court, so that one cannot have been a sham;")

•     The lawsuit concerning Selma is ongoing, and thus it cannot yet be determined if that suit is a sham. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897 (9th Cir. 1983) at 903 premature to determine whether still pending suit was objectively baseless).

•     The supposed threat regarding Schader did not violate the Hobbs Act, because there is no evidence it induced fear.

•     Maddren filed his lawsuit entirely on his own, and the court found that he raised valid, albeit unsuccessful, arguments.

•     The numerous predicate acts claimed in Plaintiffs' discovery responses are not separate offenses and do not establish a pattern. *Sever, supra*, 978 F.2d at 1535; Linens of Europe, supra, 2004 WL2071689.

**2.     N&A Did Not Manage or Operate The Asserted RICO Enterprise.**

**a.     RICO Liability Requires Management or Operation of the Enterprise.**

**i.     N&A is a Residential Real Estate Brokerage.**

N&A is a residential real estate brokerage. N&A does not engage in either residential or commercial real estate development. N&A generally does not take a position on commercial real estate development. Although Saeed founded N&A some years ago, at least a decade ago, Saeed sold the entirety of his interest in N&A. Since the sale, N&A has been owned by Michael Nourmand, his siblings, and his mother. Since the sale, Saeed has not had any ownership interest, management role or other involvement in the operations of N&A. For over a decade, Michael Nourmand has been the CEO and President of N&A.

/ / /

/ / /

ii.     **Saeed Maintains Relationships With N&A Employees, Who Occasionally Provide Only Administrative Assistance to Him.**

Because Saeed founded N&A, he maintains relationships with certain of N&A's personnel, including Mohammed Iravani. TAC, ¶ 26 (Sunset and N&A share employees). Until 2020, Iravani worked for both N&A and Sunset. Iravani's involvement in the CEQA suits stemmed solely from his work with Sunset, not his role with N&A. For example, Plaintiffs erroneously assert that Iravani was working on behalf of N&A when pursuing the collection of the settlement payments Plaintiffs owed only to Sunset. When Iravani pursued the unpaid settlement payments, he was doing so on behalf of Sunset. Demonstrating this, Iravani provided Plaintiffs with wire instructions so they could transmit the settlement funds into Sunset's account – not N&A's.

Plaintiffs contend that N&A employee Carolyn Rae Cole provided advice to regarding the CEQA lawsuits. She did not. In March 2015, Saeed sought advice from her regarding upcoming public hearings, and she volunteered to provide advice to him outside of her role at N&A.  Since March 2015, she has not provided any additional advice to Saeed or Sunset regarding Plaintiffs' projects.

Plaintiffs make similar arguments concerning Sarah Gould, contending she was an N&A employee centrally involved in the managing and directing the supposed enterprise. Gould worked at N&A as a Receptionist, Listing Coordinator, and Relocation Director.  She also occasionally handled secretarial tasks for Saeed, such as helping with calendaring or setting meetings. When she assisted Saeed, Gould typically updated her email signature block to reflect that her emails were being sent for the "Office of Saeed Nourmand" or she was acting as "Saeed Nourmand's assistant."

Gould did not provide advice to Saeed or Sunset regarding CEQA or how CEQA applies in a lawsuit. The same is true of Rachelle DeCastro, who Plaintiffs accuse of similar conduct.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

For an individual or entity to be liable for civil damages by virtue of being a RICO enterprise, the defendant **must** be involved in the management or operations of the enterprise. *Reves v. Ernst & Young, 507 U.S. 170 (1993).* Liability does not attach merely because a defendant is a member of an enterprise. *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir.2008). "One can be 'part' of an enterprise without having a role in its management and operation." *Id.*

> In evaluating whether a defendant "had some part in directing the affairs" of the enterprise, the Ninth Circuit has considered whether that defendant (1) gave or took directions; (2) occupied a position in the "chain of command" through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; or (4) was indispensable to the achievement of the enterprise's goal.

*Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1152–53 (C.D. Cal. 2016) (*citing Walter*, 538 F.3d at 1249).

Plaintiffs' supposed scheme involve the filing of frivolous lawsuits to extort settlements from plaintiffs. TAC ¶ 65 ("namely a series of extortionate sham environmental lawsuits"). N&A was not a central actor to or a participant in this allegedly extortionate conduct. N&A was not a party to the CEQA suits purportedly filed in furtherance of the enterprise. Nor was N&A in the chain of command regarding the lawsuits. N&A did not participate in the allegedly extortionate settlement demands made with respect to the CEQA suits. Rather, Plaintiffs concede the demands were communicated by others not employed by N&A. N&A was not a party to the settlement agreements resolving the Tommie and Thompson suits. N&A did not receive money or any financial or other benefit from those settlements. The settlement money was paid to and received by Sunset. Iravani collected the funds for Sunset, directing the settlement money be wired to Sunset's account.

/ / /

N&A also was not in the enterprises' chain of command. Illustrating how the "chain of command" concept applies, in *U.S. v. Viola,* 35 F.3d 37, 43 (1994), the Second Circuit overturned a criminal conviction against an individual who had limited participation in the enterprise and had no role in the decision-making process:

> The entirety of the proof with respect to Formisano showed that, acting under Viola's instructions, he transported some stolen beer and lamps to buyers and returned most of the proceeds from the sales to Viola. In contrast with the other defendants, Formisano's participation was limited to these two acts which were undertaken without the exercise of appreciable discretionary authority. Viola was the kingpin of the operation who was contacted by drug owners and who would decide how best to remove the drugs from the docks. Viola and the other defendants also decided to whom to sell stolen goods, and for how much. Formisano, on the other hand, was not consulted in the decision-making process and exercised no discretion in carrying out Viola's orders. *Compare Thai*, 29 F.3d at 816 (defendant conceived and performed racketeering acts without prior approval). There was no evidence that he was even aware of the broader enterprise. While Formisano's acts might have contributed to the success of the RICO enterprise, he simply did not come within the circle of people who operated or managed the enterprise's affairs. Although *Reves* still attaches liability to those down the "ladder of operation" who nonetheless played some management role, it is plain to us that, since *Reves*, § 1962(c) liability cannot cover Formisano. Formisano was not on the ladder at all, but rather, as Viola's janitor and handyman, was sweeping up the floor underneath it.

*Id.*

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Similarly, in *Coquina Investments v. Rothstein*, 2011 WL 4971923, *8 (S.D. Fla. Oct. 19, 2011), the court found that individuals doing what they were told by the central actor were not responsible for management or operation of the enterprise:

> First, there is no evidence that Spinosa or other employees directed the affairs of the enterprise. Even viewed in the light most favorable to Coquina, the facts show that Rothstein was the person responsible for directing and managing the Ponzi scheme. The evidence shows that Rothstein directed his associates, Villegas, Renie, and Caputi, among others, to forge TD Bank documents, create fake TD Bank websites, and pose as TD Bank bankers and as plaintiffs. The evidence shows that Rothstein told Spinosa what to say during a conference call with Coquina investors. The evidence also shows that Rothstein provided Spinosa with a draft "lock letter" and directed him to place it on TD Bank letterhead and sign it. In short, there is no evidence whatsoever that TD Bank, through Spinosa or any other employee, directed the enterprise's affairs.

Plaintiffs' allegations and discovery responses plainly reflect their contention that Saeed – not N&A - managed and operated the RICO enterprise, to the exclusion of all others, including N&A. *Coquina*, 2011 WL 4971923, *8.

Nor was N&A vital to the enterprises' purpose of using lawsuits to extract allegedly extortionate settlement. A person or enterprise is indispensable to an enterprise's goal when the goal cannot be accomplished without that individual. *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, at *15 (C.D. Cal. July 19, 2013) ("The allegations do not, however, indicate that Ingenix could not have continued with the alleged scheme absent WellPoint's participation."). Since N&A did not file the suits, did not make demands in connection with them, did not sign the settlement agreements, and did not receive the settlement funds, N&A plainly was not indispensable to the scheme to bring extortionate lawsuits. *Coquina Investments,* 2011

WL 4971923, *8 ("Moreover, the evidence shows that, to operate his Ponzi scheme, Rothstein directed others to create fake TD Bank account statements, TD Bank websites, and TD Bank correspondence, and pose as TD Bank bankers. The evidence demonstrates that the TD Bank's participation was not vital.")

**b.      N&A's Employees' Conduct Does Not Expose N&A to Liability.**

Because N&A did not, itself, carry out RICO violations, nor manage or operate the enterprise, Plaintiffs are left to focus on the acts of N&A's employees. In *Brady v. Dairy Fresh Prod. Co.*, 974 F.2d 1149 (9th Cir. 1992). the Ninth Circuit rejected the plaintiff's argument that a corporation was liable under RICO because corrupt conduct occurred at the managerial level, because "the involvement of high level officials in the underlying scheme would have to be much more pervasive" than had been established. *Id.* at 1153. Plaintiffs' evidence of N&A's employees' involvement with the alleged enterprise is isolated and sporadic and outside the scope of their employment.

The doctrine of *respondeat superior* does not assist Plaintiffs in establishing corporate liability. Under Ninth Circuit precedent, *respondeat superior* applies in RICO cases only where the corporation benefits from the employee's conduct. *Brady,* 974 F.2d at 1154. "Unlike *respondeat superior* under California law, 'benefit to the employer is a threshold requirement that must be satisfied before examining whether the employee's conduct that underlies a RICO claim was 'within the scope of the employee's employment.'" *Freeney v. Bank of Am. Corp.*, 2016 WL 5897773, at *13 (C.D. Cal. Aug. 4, 2016), *quoting See Brocade Securities Litigation*, 2008 WL 2050847 at *3. N&A did not benefit from either the RICO enterprise or its employees' supposed acts in furtherance of it because N&A did not receive any of the allegedly extorted settlement funds, nor any other benefits.

Plaintiffs suggest that N&A is liable because Saeed asked his son, Michael, to attend settlement meetings. *Gianelli v. Schoenfeld*, 2021 WL 4690724, *11 (E.D. Cal. Oct. 6, 2021) ("Being a friend or mentor to a person conducting a RICO enterprise does

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

not amount to participating in the conduct of the enterprise.")  Michael did not go to those meetings, which his father asked him to attend.

Plaintiffs have asserted that N&A employee Carolyn Rae Cole provided legal advice to the enterprise. But that argument fails for several reasons. <u>First</u>, Carolyn Rae Cole was not providing any advice to the enterprise through or on behalf of N&A – she **volunteered** her advice because Saeed requested her to do so. *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002) (*respondeat superior* requires that "(2) the employee was motivated, at least in part, by a purpose to serve the employer"). <u>Second</u>, "providing legal services does not constitute the operation or management of a RICO enterprise." *Walter*, 538 F.3d at 1246 *see also Baumer v. Pachl*, 8 F.3d 1341(9th Cir.1993). <u>Third</u>, Cole provided limited advice in 2015 regarding public hearings, not the allegedly extortionate lawsuits, the first of which was not filed until March 2016, nearly a full year later. *Id.*  (attorney's sporadic involvement not management or operation).

Plaintiffs have also claimed that Iravani pursued payments due under the settlement agreements while he was an officer of N&A.  But the evidence is that (a) Iravani also worked for Sunset, (b) the settlement proceeds belonged to Sunset, not N&A, (c) Iravani was pursuing payment on behalf of Sunset. There is no evidence that N&A benefitted from Iravani's work for Sunset, nor is there any evidence Iravani was motivated to collect funds for Sunset due to his employment with N&A. *See also C&M Café v. Kinetic Farm, Inc.*, 2016 WL 682071 (N.D. Cal. Nov. 18, 2016) (individual's position alone does not show management or operation of RICO enterprise); *Perdomo v. Garcia*, 2010 WL 3324304, at *2 (N.D. Cal. Aug. 23, 2010). ("Rather, Plaintiffs allege that Ms. Garcia used her position within Biomeda, which involved processing invoices and receiving and depositing payments, to transfer funds from Biomeda's accounts to her own accounts. When the Court accepts these allegations as true and, in the light, most favorable to Plaintiffs, the Court concludes that they are insufficient to establish that Ms. Garcia's position within Biomeda gave her the ability to control its

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

affairs.")

Finally, Plaintiffs' assertion that liability attached due to the use of "nourmand.com" email addresses fails. In *Bunnett & Company, Inc. v. Gearhart, 2018 WL 1070298, *8* (N.D. Cal. Feb. 27, 2018) (use of corporate email address did not render entity liable for employee's conduct).

### 3. *Noerr-Pennington* Immunizes Litigants From Liability.

The asserted enterprises' conduct – petitioning through lobbying at the local level and filing lawsuits - is immunized under *Noerr Pennington*. TAC ¶ 65 ("a series of extortionate sham environmental lawsuits.") "The *Noerr–Pennington* doctrine ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved. *White v. Lee,* 227 F.3d 1214, 1231 (9th Cir. 2000) (citing *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("*PRE*"). Under the *Noerr–Pennington* doctrine, those who petition the government for redress are generally immune from antitrust, statutory, or tort liability as part of the First Amendment right to petition the government. *Theme Promotions v. News America Marketing Fsi*, 546 F.3d 991, 539 F.3d 1046 (9th Cir. 2008) at 1007; *Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 929 (9th Cir.2006) (citing *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)).

The *Noerr–Pennington* doctrine protects a party's effort initiate lawsuits, ***unless*** the litigation "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 510, 511 (1972) (internal quotation omitted; emphasis added). Thus, the court "must be critical in reviewing claims to determine whether the sham exception is properly invoked." *Energy Conservation, Inc. v. Heliodyne, Inc.*, 698 F.2d 386, 389 (9th Cir. 1983). "Courts may properly be more critical in reviewing complaints which invoke the sham exception to the *Noerr-*

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00196906
12
NOURMAND & ASSOCIATES' MEMORANDUM OF CONTENTIONS OF FACT AND LA

*Pennington* doctrine since the conduct is presumptively protected by the first amendment, involving here the right of access to the court." *Id.*

"A suit is not objectively meritless if it is 'arguably warranted by existing law or at the very least [is] based on an objectively good faith argument for the extension, modification, or reversal of existing law." *PRE,* 508 U.S. at 65. "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000) (*quoting Christiansburg, supra*, 434 U.S. at 422, 98 S.Ct. 694. The entire lawsuit must be objectively baseless, not just a single claim. *Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*, 404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005).

In *Koziol v. United States*, 993 F. 3d 1160, a criminal RICO case, the Ninth Circuit departed from its sister circuits in holding that a sham lawsuit may provide a basis for extortion under the Hobbs Act. The Ninth Circuit rationalized that sham lawsuits are not immunized by *Noerr-Pennington*. *Id.* at 1171. Elaborating on the type of suits that constitutes a sham, the *Koziol* Court explained:

> Litigation is a sham "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful." [*Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 938 (9th Cir. 2006)] (*citing Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)). A lawsuit is objectively baseless where "no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs.*, 508 U.S. at 60, 113 S.Ct. 1920.

*Koziol*, 993 F.3d. at 1171 (italics in original; bolding added).

The facts that have allowed courts to determine that a lawsuit was objectively baseless generally reflect egregious circumstances. In *Koziol,* Koziol used falsified evidence and lied about the existence of evidence to support his claims. *Koziol*, 993 F.3d. at 1170. In *Icon at Panorama, LLC v. Sw. Reg'l Council of Carpenters*, 2019 WL 7205899, at *3 (C.D. Cal. Aug. 7, 2019), the plaintiff alleged a reviewing official had

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1  labelled the CEQA lawsuits "specious at best" and "patently false."  In *Rock River*

2  *Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 352 (9th Cir. 2014), the

3  court found a jury could conclude litigation was a sham litigation when a party sent

4  cease and desist letter concerning rights it did not hold.

### a.    The CEQA Lawsuits Are Immunized By *Noerr-Pennington*.

7  Plaintiffs bear the burden of proving that Defendants lacked probable cause to

8  bring the alleged shame lawsuits. The burden is on "the plaintiff to disprove the

9  challenged lawsuit's legal viability." *Int'l Longshore & Warehouse Union v. ICTSI*

10 *Oregon, Inc.,* 863 F.3d 1178, 1187 (9th Cir. 2017) (*quoting Prof'l Real Estate Investors*,

11 508 U.S. at 61, 113 S.Ct. 1920 (emphasis omitted); *USS-POSCO Indus. v. Contra Costa*

12 *Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994)

13 (plaintiff bears burden in cases involving pattern of allegedly baseless litigation: "Given

14 that the plaintiff has the burden in litigation, a batting average exceeding .500 cannot

15 support BE & K's theory.")

### b.    Courts Apply A "Low Threshold" In CEQA Suits.

17 Sunset's lawsuits arose from the CEQA environmental review process. In this

18 process, agencies evaluate proposed development projects to determine if they fall

19 within the scope of CEQA.  If CEQA is implicated, then the agencies determine whether

20 the project will have environmental impacts. If not, then the agency issues a negative

21 declaration. If the project will have environmental impacts, then further study through

22 an environmental impact report is required. *Save Our Big Trees v. City of Santa Cruz*,

23 241 Cal.App.4th 694, 704–705 (2015).

24 Where a negative declaration issues, third parties with standing may seek judicial

25 review of the adoption of the negative declaration. The standard on review is very low.

26 The party challenging the negative declaration need only establish with substantial

27 evidence there is a "fair argument" concerning environmental impacts:

28 / / /

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

"whether there is substantial evidence in the record supporting a fair argument that the Project will significantly impact the environment; if there is, it was an abuse of discretion not to require an EIR. [Citation.] ' "Whether a fair argument can be made is to be determined by examining the entire record." ' [Citation.]"

*Keep Our Mtns Quiet v. Cnty of Santa Clara,* 236 Cal.App.4th 714, 731, (2015).

This unusual "fair argument" standard of review over a public agency's decision has been characterized as setting a "low threshold requirement for initial preparation of an EIR and reflects a preference for resolving doubts in favor of environmental review when the question is whether any such review is warranted. [Citations.]" (*Sierra Club v. County of Sonoma* (1992) Cal.App.4th 1307, 1316-1317, 8 Cal.Rptr.2d 473 ; *see Ocean View Estates Homeowners Assn., Inc. v. Montecito Water Dist.* (2004) 116 Cal.App.4th 396, 399, 10 Cal.Rptr.3d 451 ["Because a negative declaration ends environmental review, the fair argument test provides a low threshold for requiring an EIR"].)

*Id.*

### c.   Plaintiffs Have Not Identified Any Particular Evidence Establishing that the CEQA Suits Lack Merit.

Though Plaintiffs bear the burden of establishing that Sunset's CEQA suits lack merit, Plaintiffs have failed to articulate plainly how the any of the cases lack merit. Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr–Pennington* protection. *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991), *citing Boone v. Redevelopment Agent of City of San Jose*, 841 F.2d 886, 893 (9th Cir. 1988); *Aydin Corp*, 718 F.2d at 903 ("No evidence of sham, aside from the filings of the actions, was pointed out to us by Aydin.").

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

In response to Interrogatories Nos. 1 and 2, Plaintiffs primarily focused on conclusory assertions that Sunset brought the lawsuits in bad faith. This puts the cart before the horse. "Defendants' subjective motivations are irrelevant unless Defendants could not "realistically expect success on the merits" of a petition." *Evans Hotels, LLC v. Unite Here Loc. 30*, 433 F. Supp. 3d 1130, 1149 (S.D. Cal. 2020) (citing *White*, 227 F.3d at 1232 (holding that "a court may not even consider the defendant's allegedly illegal objective unless it first determines that his lawsuit was objectively baseless); *see also PRE*, 508 U.S. at 61, 113 S. Ct. at 1928, 123 L. Ed. 2d at 611 (plaintiff must "disprove the challenged lawsuit's legal viability **before** the court will entertain evidence of the suit's economic viability.").

Similarly, Plaintiffs also refused to allow their attorney from the underlying CEQA case, Arthur Friedman, answer questions concerning the merits of the lawsuits in deposition, asserting the attorney client privilege.  Thus, the record established through discovery does not show that the lawsuits were shams.

### d.      Sunsets' CEQA Lawsuits Were Not Objectively Baseless.

Several objective facts demonstrate that the lawsuits concerning the Tommie, Thompson, and Selma projects were ***not*** objectively baseless. To begin, Plaintiffs have not yet prevailed in any of the suits. *New West*, *supra,* 491 F.3d at 722.  Unable to show even a single victory, it entirely disingenuous for Plaintiffs to claim that all of the environmental suits were completely frivolous.

Where, as here, the parties settle their disputes short of trial, federal courts regard the settlement as establishing the merits of the underlying suit. *Theme Promotions,* 546 F.3d at 1008 ("The fact that this ongoing litigation settled suggests that the original suit was not objectively baseless"); *New West,* 491 F.3d at 722 ("New West has settled (for a substantial payment) one of the suits that Joliet filed in state court, so that one cannot have been a sham;"). Far from prevailing on the merits, 1541 Wilcox Hotel LLC and 6516 Tommie Hotel LLC settled the Tommie and Thompson suits at the same time, for

**NOURMAND & ASSOCIATES' MEMORANDUM OF CONTENTIONS OF FACT AND LA**

a total payment of $5.5M as well as environmental concessions.

To detract from the significance of the settlements, Plaintiffs assert the settlements did not provide any relief on environmental concerns. They are wrong. Noise is plainly within the scope of CEQA. Cal. Pub. R. Code § 21060.5. Noise was raised in Sunset's CEQA suits.  The settlements include environmental concessions including those relating to noise. The settlement terms included, among other things, limiting the hours for deliveries and trash pickup, and mitigating noise generated by the outdoor bars, pools, and restaurants to be located on the hotel roofs. *In re Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1358 (S.D. Fla. 2004) ("Moreover, the Court cannot agree with Plaintiffs that a plaintiff who has filed suit and receives the relief sought (e.g., monetary compensation, a change in conduct, etc.) could only have been deemed to have "won" under PRE if it continued to litigate the case and received a favorable judgment from the court.")

Plaintiffs have not secured victory in the still pending Selma suit. *Aydin*, 718 F.2d at 902 (affirming grant of summary judgment where plaintiff produced no evidence of sham aside from the filings of the actions; court was unable to determine whether the suit was baseless because the action was still pending). Moreover, the court presiding over the Selma suit found merit to Sunset's claims:

> Sunset has presented substantial evidence supporting a fair argument that the Project may have significant effects on air quality.
>
> As such, the City's decision to adopt an MND was an abuse of discretion.

*PRE*, 508 U.S. at 63, ("a proper probable cause determination irrefutably demonstrates that an antitrust plaintiff has not proved the objective prong of the sham exception and that the defendant is accordingly entitled to Noerr immunity"; *STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.*, 2011 WL 1362163, at *2 (N.D.Cal. Apr. 11, 2011) (" . . .courts often look to . . . rulings on dispositive motions as evidence of the merits of the case.")

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Also demonstrating that viability of the CEQA challenges, Plaintiffs concede that numerous others initiated similar CEQA challenges concerning the Tommie, Thompson, and Selma projects, including: Casey Maddren, Lauren Farmer and Liliana Hernandez, Unite Here Local 1l; Mama Wilcox Land, LLC; Alexis Olbrei; Southwest Carpenters; Fran Offenhauser; Hollywood Heritage; and David CarreraPlaintiffs admit to settling several of these CEQA disputes, once again demonstrating the validity of the CEQA challenges.

Further, other litigants filed CEQA suits concerning Plaintiffs' projects, showing that other "reasonable litigant[s] in the defendant's position could realistically expect success on the merits of the challenged lawsuit. *PRE*, 508 U.S. at 63-64.

- *Mama Wilcox Land LLC v. City of Los Angeles,* Case No. BS169883. In that suit, Mama Wilcox Land LLC is represented by the law firm of Greenberg Glusker Fields Claman & Matchinger, LLP.

- *Farmer v. City of Los Angeles,* Case No.BS169855.  In that suit, Farmer, et al., is represented by the Law Office of Gideon Kracov.

- *Maddren v. City of Los Angeles (6421 Selma Wilcox Hotel LLC, Real Party in Interest),* Case No. 19STCP00988.

In one of these matters, the *Farmer Wilcox* Case, concerning the Tommie project, the Superior Court held that the Mitigated Negative Declaration issued by the City of Los Angeles was defective, and on that basis granted a writ of mandate:

> Accordingly, the court finds that the MND is defective, and cannot be upheld. Thus, writ of mandate is GRANTED as to the 1st cause of action.

Thus, the Court's finding for Mama Wilcox establishes that Sunset's CEQA suit regarding the Tommie project was not objectively baseless.

Whether the three lawsuits are evaluated individually or as series does not change the *Noerr-Pennington* analysis. *USS-POSCO* at 31 F.3d 800, 811("The fact that more than half of all the actions as to which we know the results turn out to have merit cannot

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

be reconciled with the charge that the unions were filing lawsuits and other actions willy-nilly without regard to success. Given that the plaintiff has the burden in litigation, a batting average exceeding .500 cannot support BE & K's theory.")  Sunset has not lost any of the lawsuits. It settled two of them, and the third remains ongoing.

### ii.    Claim 2: Violation of 18 U.S.C. § 1962(d)

"Association, alone, with the enterprise is, of course, insufficient for violation of RICO: an individual must agree to participate in the affairs of the enterprise." *Baumer*, 8 F.3d at 1347 (quoting *United States v. Valera*, 845 F.2d 923, 929 (11th Cir.1988)). "A defendant must also have been 'aware of the essential nature and scope of the enterprise and intended to participate in it." *Howard v. Am. Online Inc*., 208 F.3d 741, 751 (9th Cir. 2000) (*quoting Baumer*, 8 F.3d at 1346.)

The evidence will show that N&A did not try to accomplish an unlawful plan to engage in a pattern of racketeering activity, and that N&A did not agree to the overall objective of the conspiracy.  N&A was unaware of any unlawful activity, extortion or attempts at extortion, and never agreed to the same.

### D.    N&A'S Affirmative Defenses

#### i.    Noerr Pennington

"The Noerr–Pennington doctrine ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved. *White v. Lee,* 227 F.3d 1214, 1231 (9th Cir. 2000) (citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 56 (1993) ("PRE").

### E.    Evidence in Support of N&A's Affirmative Defenses

#### i.    *Noerr-Pennington* Immunizes Litigants From Liability.

The asserted enterprises' conduct – petitioning through lobbying at the local level and filing lawsuits - is immunized under *Noerr Pennington*. TAC ¶ 65 ("a series of extortionate sham environmental lawsuits.")  "The *Noerr–Pennington* doctrine ensures that those who petition the government for redress of grievances remain immune from

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved. *White v. Lee,* 227 F.3d 1214, 1231 (9th Cir. 2000) (citing *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("*PRE*"). Under the *Noerr–Pennington* doctrine, those who petition the government for redress are generally immune from antitrust, statutory, or tort liability as part of the First Amendment right to petition the government. *Theme Promotions, supra,* 546 F.3d at 1007; *Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 929 (9th Cir.2006) (citing *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)).

The *Noerr–Pennington* doctrine protects a party's effort initiate lawsuits, ***unless*** the litigation "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 510, 511 (1972) (internal quotation omitted; emphasis added). Thus, the court "must be critical in reviewing claims to determine whether the sham exception is properly invoked." *Energy Conservation, Inc. v. Heliodyne, Inc.*, 698 F.2d 386, 389 (9th Cir. 1983). "Courts may properly be more critical in reviewing complaints which invoke the sham exception to the *Noerr-Pennington* doctrine since the conduct is presumptively protected by the first amendment, involving here the right of access to the court." *Id.*

"A suit is not objectively meritless if it is 'arguably warranted by existing law or at the very least [is] based on an objectively good faith argument for the extension, modification, or reversal of existing law.'" *PRE,* 508 U.S. at 65. "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000) (*quoting Christiansburg, supra*, 434 U.S. at 422, 98 S.Ct. 694. The entire lawsuit must be objectively baseless, not just a single claim. *Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*, 404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005).

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

In *Koziol v. United States*, 993 F. 3d 1160, a criminal RICO case, the Ninth Circuit departed from its sister circuits in holding that a sham lawsuit may provide a basis for extortion under the Hobbs Act. The Ninth Circuit rationalized that sham lawsuits are not immunized by *Noerr-Pennington*. *Id.* at 1171. Elaborating on the type of suits that constitutes a sham, the *Koziol* Court explained:

> Litigation is a sham "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful." [*Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 938 (9th Cir. 2006)] (*citing Kottle v. Nw. Kidney Ctrs*., 146 F.3d 1056, 1060 (9th Cir. 1998)). A lawsuit is objectively baseless where "no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs.*, 508 U.S. at 60, 113 S.Ct. 1920.

*Koziol*, 993 F.3d. at 1171 (italics in original; bolding added).

The facts that have allowed courts to determine that a lawsuit was objectively baseless generally reflect egregious circumstances. In *Koziol,* Koziol used falsified evidence and lied about the existence of evidence to support his claims. *Koziol*, 993 F.3d. at 1170. In *Icon at Panorama, LLC v. Sw. Reg'l Council of Carpenters*, 2019 WL 7205899, at \*3 (C.D. Cal. Aug. 7, 2019), the plaintiff alleged a reviewing official had labelled the CEQA lawsuits "specious at best" and "patently false."  In *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 352 (9th Cir. 2014), the court found a jury could conclude litigation was a sham litigation when a party sent cease and desist letter concerning rights it did not hold.

### 1.    The CEQA Lawsuits Are Immunized By *Noerr-Pennington*.

Plaintiffs bear the burden of proving that Defendants lacked probable cause to bring the alleged shame lawsuits. The burden is on "the plaintiff to disprove the challenged lawsuit's legal viability." *Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.,* 863 F.3d 1178, 1187 (9th Cir. 2017) (*quoting Prof'l Real Estate Investors*,

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**NOURMAND & ASSOCIATES' MEMORANDUM OF CONTENTIONS OF FACT AND LA**

508 U.S. at 61, 113 S.Ct. 1920 (emphasis omitted); *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994) (plaintiff bears burden in cases involving pattern of allegedly baseless litigation: "Given that the plaintiff has the burden in litigation, a batting average exceeding .500 cannot support BE & K's theory.")

### 2. Courts Apply A "Low Threshold" In CEQA Suits. Noerr-Pennington Immunizes Litigants From Liability.

Sunset's lawsuits arose from the CEQA environmental review process. In this process, agencies evaluate proposed development projects to determine if they fall within the scope of CEQA. If CEQA is implicated, then the agencies determine whether the project will have environmental impacts. If not, then the agency issues a negative declaration. If the project will have environmental impacts, then further study through an environmental impact report is required. *Save Our Big Trees v. City of Santa Cruz*, 241 Cal.App.4th 694, 704–705 (2015).

Where a negative declaration issues, third parties with standing may seek judicial review of the adoption of the negative declaration. The standard on review is very low. The party challenging the negative declaration need only establish with substantial evidence there is a "fair argument" concerning environmental impacts:

> "whether there is substantial evidence in the record supporting a fair argument that the Project will significantly impact the environment; if there is, it was an abuse of discretion not to require an EIR. [Citation.] ' "Whether a fair argument can be made is to be determined by examining the entire record." ' [Citation.]"

*Keep Our Mtns Quiet v. Cnty of Santa Clara,* 236 Cal.App.4th 714, 731, (2015).

> This unusual "fair argument" standard of review over a public agency's decision has been characterized as setting a "low threshold requirement for initial preparation of an EIR and reflects a preference for resolving doubts in favor of environmental review

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

when the question is whether any such review is warranted. [Citations.]" (*Sierra Club v. County of Sonoma* (1992) Cal.App.4th 1307, 1316-1317, 8 Cal.Rptr.2d 473 ; *see Ocean View Estates Homeowners Assn., Inc. v. Montecito Water Dist.* (2004) 116 Cal.App.4th 396, 399, 10 Cal.Rptr.3d 451 ["Because a negative declaration ends environmental review, the fair argument test provides a low threshold for requiring an EIR"].)

*Id.*

### 3.     Plaintiffs Have Not Identified Any Particular Evidence Establishing that the CEQA Suits Lack Merit.

Though Plaintiffs bear the burden of establishing that Sunset's CEQA suits lack merit, Plaintiffs have failed to articulate plainly how the any of the cases lack merit. Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr–Pennington* protection. *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991), *citing Boone v. Redevelopment Agent of City of San Jose*, 841 F.2d 886, 893 (9th Cir. 1988); *Aydin Corp*, 718 F.2d at 903 ("No evidence of sham, aside from the filings of the actions, was pointed out to us by Aydin.").

In response to Interrogatories Nos. 1 and 2, Plaintiffs primarily focused on conclusory assertions that Sunset brought the lawsuits in bad faith. This puts the cart before the horse. "Defendants' subjective motivations are irrelevant unless Defendants could not "realistically expect success on the merits" of a petition." *Evans Hotels, LLC v. Unite Here Loc. 30*, 433 F. Supp. 3d 1130, 1149 (S.D. Cal. 2020) (citing *White*, 227 F.3d at 1232 (holding that "a court may not even consider the defendant's allegedly illegal objective unless it first determines that his lawsuit was objectively baseless); *see also PRE,* 508 U.S. at 61, 113 S. Ct. at 1928, 123 L. Ed. 2d at 611 (plaintiff must "disprove the challenged lawsuit's legal viability **before** the court will entertain evidence of the suit's economic viability.").

/ / /

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Similarly, Plaintiffs also refused to allow their attorney from the underlying CEQA case, Arthur Friedman, answer questions concerning the merits of the lawsuits in deposition, asserting the attorney client privilege. Thus, the record established through discovery does not show that the lawsuits were shams.

### 4. Sunsets' CEQA Lawsuits Were Not Objectively Baseless.

Several objective facts demonstrate that the lawsuits concerning the Tommie, Thompson, and Selma projects were ***not*** objectively baseless. To begin, Plaintiffs have not yet prevailed in any of the suits. *New West*, *supra,* 491 F.3d at 722. Unable to show even a single victory, it entirely disingenuous for Plaintiffs to claim that all of the environmental suits were completely frivolous.

Where, as here, the parties settle their disputes short of trial, federal courts regard the settlement as establishing the merits of the underlying suit. *Theme Promotions,* 546 F.3d at 1008 ("The fact that this ongoing litigation settled suggests that the original suit was not objectively baseless"); *New West,* 491 F.3d at 722 ("New West has settled (for a substantial payment) one of the suits that Joliet filed in state court, so that one cannot have been a sham;"). Far from prevailing on the merits, 1541 Wilcox Hotel LLC and 6516 Tommie Hotel LLC settled the Tommie and Thompson suits at the same time, for a total payment of $5.5M as well as environmental concessions.

To detract from the significance of the settlements, Plaintiffs assert the settlements did not provide any relief on environmental concerns. They are wrong. Noise is plainly within the scope of CEQA. Cal. Pub. R. Code § 21060.5. Noise was raised in Sunset's CEQA suits. The settlements include environmental concessions including those relating to noise. The settlement terms included, among other things, limiting the hours for deliveries and trash pickup, and mitigating noise generated by the outdoor bars, pools, and restaurants to be located on the hotel roofs. *In re Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1358 (S.D. Fla. 2004) ("Moreover, the Court cannot agree with Plaintiffs that a plaintiff who has filed suit and receives the relief sought (e.g., monetary compensation, a change in conduct, etc.) could

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

only have been deemed to have "won" under PRE if it continued to litigate the case and received a favorable judgment from the court.")

Plaintiffs have not secured victory in the still pending Selma suit. *Aydin*, 718 F.2d at 902 (affirming grant of summary judgment where plaintiff produced no evidence of sham aside from the filings of the actions; court was unable to determine whether the suit was baseless because the action was still pending). Moreover, the court presiding over the Selma suit found merit to Sunset's claims:

> Sunset has presented substantial evidence supporting a fair argument that the Project may have significant effects on air quality.
>
> As such, the City's decision to adopt an MND was an abuse of discretion.

*PRE*, 508 U.S. at 63, ("a proper probable cause determination irrefutably demonstrates that an antitrust plaintiff has not proved the objective prong of the sham exception and that the defendant is accordingly entitled to Noerr immunity"; *STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.*, 2011 WL 1362163, at *2 (N.D.Cal. Apr. 11, 2011) (" . . .courts often look to . . . rulings on dispositive motions as evidence of the merits of the case.")

Also demonstrating that viability of the CEQA challenges, Plaintiffs concede that numerous others initiated similar CEQA challenges concerning the Tommie, Thompson, and Selma projects, including: Casey Maddren, Lauren Farmer and Liliana Hernandez, Unite Here Local 1l; Mama Wilcox Land, LLC; Alexis Olbrei; Southwest Carpenters; Fran Offenhauser; Hollywood Heritage; and David CarreraPlaintiffs admit to settling several of these CEQA disputes, once again demonstrating the validity of the CEQA challenges.

Further, other litigants filed CEQA suits concerning Plaintiffs' projects, showing that other "reasonable litigant[s] in the defendant's position could realistically expect success on the merits of the challenged lawsuit. *PRE*, 508 U.S. at 63-64.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

- *Mama Wilcox Land LLC v. City of Los Angeles,* Case No. BS169883. In that suit, Mama Wilcox Land LLC is represented by the law firm of Greenberg Glusker Fields Claman & Matchinger, LLP.

- *Farmer v. City of Los Angeles,* Case No.BS169855.  In that suit, Farmer, et al., is represented by the Law Office of Gideon Kracov.

- *Maddren v. City of Los Angeles (6421 Selma Wilcox Hotel LLC, Real Party in Interest),* Case No. 19STCP00988.

In one of these matters, the *Farmer Wilcox* Case, concerning the Tommie project, the Superior Court held that the Mitigated Negative Declaration issued by the City of Los Angeles was defective, and on that basis granted a writ of mandate:

> Accordingly, the court finds that the MND is defective, and cannot
> be upheld. Thus, writ of mandate is GRANTED as to the 1st cause
> of action.

Thus, the Court's finding for Mama Wilcox establishes that Sunset's CEQA suit regarding the Tommie project was not objectively baseless.

Whether the three lawsuits are evaluated individually or as series does not change the *Noerr-Pennington* analysis.[1] *USS-POSCO* at 31 F.3d 800, 811 (9th Cir. 1994) ("The fact that more than half of all the actions as to which we know the results turn out to have merit cannot be reconciled with the charge that the unions were filing lawsuits and other actions willy-nilly without regard to success. Given that the plaintiff has the burden in litigation, a batting average exceeding .500 cannot support BE & K's theory.") Sunset has not lost any of the lawsuits. It settled two of them, and the third remains

---

[1] *See Coca–Cola Co. v. Omni Pac. Co.,* 1998 U.S. Dist. LEXIS 23277, at *24 (N.D.Cal. Dec. 9, 1998) (**four** lawsuits not a series) *Wonderful Real Est. Dev. LLC v. Laborers Int'l Union of N. Am. Loc. 220,* 2020 WL 91998, at *10 (E.D. Cal. Jan. 8, 2020)(" **five or six** lawsuits is on the lower end of what can constitute a pattern or series of harassing litigation.") *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.,* 192 F.Supp.2d 519, 538–39 (M.D.La.2001) (**nine** petitions); *ERBE Elektromedizin GmbH v. Canady Tech. LLC,* 629 F.3d 1278, 1291 (Fed. Cir. 2010)(**three** lawsuits); *Amarel v. Connell,* 102 F.3d 1494, 1519–20 (9th Cir.1996) (**two** lawsuits); *In re Flonase Antitrust Litig.,* 795 F. Supp. 2d 300, 310 (E.D. Pa. 2011) (**five** petitions).

ongoing.

**F.    Evidentiary Issues**

The following evidentiary issues will be raised in motions in limine:

**i.    Plaintiffs' Motions In Limine**

a.    Motion to exclude any testimony or evidence regarding allegations that Plaintiffs did not meet the EB-5 job creation requirements;

b.    Motion to exclude any testimony or evidence regarding other persons or entities that objected to the hotel projects at issue at the City level;

c.    Motion to exclude any testimony or evidence regarding that Sunset's tenants suffered any harm as a result of Plaintiffs' hotel projects;

d.    Motion to exclude any testimony or evidence regarding Defendants' or their attorneys' subjective views of the merits of the underlying CEQA litigation; and

e.    Motion to exclude any testimony or evidence regarding Plaintiffs' other actual or potential development projects.

**ii.    S Defendants' Motions In Limine**

a.    Motion to exclude expert testimony from Joe Anastasi;

b.    Motion to exclude expert testimony from Richard Grassetti;

c.    Motion to exclude expert testimony from Tina Thomas;

d.    Motion to exclude expert testimony from John Hekman; and

e.    Motion to exclude any testimony or evidence of obligations, costs, or other potential damages purportedly incurred by Plaintiffs' subsidiaries, parent corporation, or other affiliated companies not named as parties to this lawsuit.

**iii.    Nourmand & Associates' Motions In Limine**

a.    Motion to exclude testimony as to Plaintiffs' subjective beliefs about the CEQA litigation process that are based upon attorney-client privileged communications;

/ / /

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

b.      Motion to exclude testimony regarding inferences or presumptions that N&A received proceeds from the settlement agreements pertaining to the Thompson and Tommie CEQA litigation otherwise benefited from the settlements;

c.      Motion to exclude testimony that N&A withheld, refused or failed to produce documents in this case; and

d.      Motion to exclude testimony by Laurie Goldman.

iv.   **Additional Evidentiary Issues**

a.      Plaintiffs' voluminous deposition designations, coupled with extensive witness examination times, suggest Plaintiffs intend to offer cumulative testimony, by asking live witnesses about subjects that have been presented to the jury through deposition;

b.      Plaintiffs' deposition designations suggest that Plaintiff intends to ask questions solely to cause Defendants to assert attorney-client or work product objections for the purpose of prejudicing Defendants;

c.      Plaintiffs' have indicated they intend to offer evidence and testimony regarding a supposed predicate act related to Citizen News, notwithstanding that Citizen News was not identified in discovery as a predicate act;

d.      Plaintiffs have indicated they intend to offer evidence and testimony that Defendants acted under color of law, notwithstanding that this theory of a predicate act was neither raised in the pleadings, nor disclosed in discovery;

e.      Plaintiffs have note clearly identified the specific predicate acts they intend to pursue at trial, which makes it challenging to define the scope of relevant evidence.

G.   **Issues of Law**

N&A adopts the issues of law set out in the S Defendants Memorandum of Contentions of Fact and Law.  Additionally, N&A identifies the following, addition issues of law:

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1.     N&A is immune to Plaintiffs' claims under the Noerr-Pennington doctrine;

2.     N&A was not a member of any RICO enterprise;

3.     N&A did not direct, manage, or operate a RICO enterprise;

4.     N&A was not a member of a conspiracy to violate RICO;

5.     N&A did not benefit from the conduct of the RICO enterprise;

6.     Application of Noerr Pennington, where, as in this case, each predicate act must be evaluated on its own merit;

7.     Whether individual acts of petitioning activity, which are condition of and must be taken in order to pursue further activity, may be treated as separate, distinct predicate acts.

## II.   **BIFURCATION OF ISSUES.**

N&A does not believe any issues should be bifurcated at trial.  Plaintiff has claimed the release defense asserted by the S Defendants should be bifurcated, offering the premise that certain evidence is relevant only to that defense.  N&A disagrees.  The evidence relevant to the assertion of the affirmative defense regarding the release is also relevant to whether any party was engaged in extortion.  To wit, on summary judgment, the Plaintiffs argued that the release was the product of the extortion.

## III.   **JURY TRIAL.**

The Parties have timely requested a trial by jury.

## IV.   **ATTORNEYS' FEES.**

18 USC § 1964 provides for a prevailing RICO plaintiff to recover attorneys' fees.

/ / /

/ / /

/ / /

/ / /

## V.   **ABANDONMENT OF ISSUES.**

N&A abandons its affirmative defenses beyond those asserted herein.

Dated: August 1, 2022                                    **THE MALONEY FIRM, APC**

By:  _____/s/ Elizabeth T. Schaus_____

Patrick M. Maloney, Esq.
Gregory M. Smith, Esq.
Elizabeth T. Schaus, Esq.
Attorneys for Defendant,
NOURMAND & ASSOCIATES

**PROOF OF SERVICE**

Relevant Group, LLC v. Stephan "Saeed" Nourmand

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California, I am over the age of 18 and not a party to the within action; my business address is 2381 Rosecrans Avenue, Suite 405, El Segundo, CA 90245.

On **August 1, 2022,** I served the foregoing document(s) described as:
**DEFENDANT NOURMAND & ASSOCIATES' MEMORANDUM OF CONTENTIONS OF FACT AND LAW)**
on the interested parties in this action, at the address(es) listed, as follows:

**SEE SERVICE LIST**

☐  For Collection.   By placing a true copy(ies) thereof enclosed in a sealed envelope(s), to the address(es) listed above and by placing said sealed envelope(s) for collection and mailing on that date following ordinary business practices.  I am "readily familiar" with the business practice for collection and processing of correspondence for mailing the U.S. Postal Service.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.

☐  Overnight Delivery.  By placing a true copy(ies) thereof enclosed in a sealed envelope(s) or package(s) to the address(es) listed above and placing said envelope(s) or package(s) for collection with delivery fees provided for.

☐  Electronic Mail.  Via e-mail to the email address(es) listed above.

☐  Personal Delivery.  I caused to be served by messenger for personal delivery that same day the foregoing documents in a sealed envelope to the persons at the address(es) listed above.

☒  Electronic Service [CM/ECF].   Via electronic service to the email address(es)/registered participants with the CM/ECF System.

☒  State.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **August 1, 2022**, at Los Angeles, California.

_____
/s/ Marilyn Vigil
MARILYN VIGIL

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00196906

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## SERVICE LIST

Susan K. Leader, Esq.
Granville C. Kaufman, Esq.
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
T: (323) 210-2900 | F: (866) 974.7329
E: sleader@wsgr.com
E: gkaufman@wsgr.com

Attorneys for Plaintiffs,
Relevant Group, LLC
1541 Wilcox Hotel LLC,
6516 Tommie Hotel LLC,
and 6421 Selma Wilcox
Hotel LLC

Dale R. Bish, Esq.
Charles A. Talpa, Esq.
Karen Kwok, Esq.
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
T: (650) 493-9300 | F: (650) 565-5100
E: dbish@wsgr.com
E: Sctalpas@wsgr.com
E: kkwok@wsgr.com

Conor Tucker, Esq.
WILSON SONSINI GOODRICH &ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2048
T: (323) 210-2900 | F: (866) 974-7329
E: ctucker@wsgr.com

Attorneys for Plaintiffs
Relevant Group, LLC; 1541
Wilcox Hotel, LLC; 6516
Tommie Hotel, LLC: 6421
Selma Wilcox Hotel, LLC

James H. Turken, Esq.
Neil P. Thakor, Esq.
Phillip R. Di Tullio, Esq.
Christopher Pelham, Esq.
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, Forty-First Floor
Los Angeles, CA 90071
T: (213) 892-9200 | (323) 892-9200
F: (213) 892-9494 | (323) 892-9400
E: james.turken@nortonrosefulbright.com
E: neil.thakor@nortonrosefulbright.com
E: christopher.pelham@nortonrosefulbright.com

Attorneys for Defendants
STEPHEN "SAEED"
NOURMAND and
THE SUNSET
LANDMARK
INVESTMENT, LLC

00196906