**NORTON ROSE FULBRIGHT US LLP**
JAMES H. TURKEN (BAR NO. 89618)
CHRISTOPHER K. PELHAM (BAR NO. 241068)
NEIL P. THAKOR (BAR NO. 308743)
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Telephone:   (213) 892-9200
Facsimile:    (213) 892-9494
james.turken@nortonrosefulbright.com
neil.thakor@nortonrosefulbright.com
christopher.pelham@nortonrosefulbright.com

Attorneys for Defendants,
STEPHAN "SAEED" NOURMAND, and THE
SUNSET LANDMARK INVESTMENT LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHEN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; and DOES 1-10,<br><br>Defendants. | Case No. 2:19-cv-05019-ODW-KSx<br>*[Assigned to the Hon. Otis D. Wright II]*<br><br>**DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Complaint Filed: June 10, 2019<br>TAC Filed:  September 14, 2021<br>Trial Date:  August 30, 2022 |

| | |
|---|---|
| S-DEFENDANT 'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW | 2 |
| I. CLAIMS AND DEFENSES | 2 |
|    A. Claim 1: Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) | 2 |
|       1. Key Evidence In Opposition | 3 |
|    B. Claim 2: Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d), by conspiring to violate 18 U.S.C. § 1962(c) | 5 |
|       1. Key Evidence In Opposition | 6 |
| II. AFFIRMATIVE DEFENSES | 6 |
|    A. Third Affirmative Defense: *Noerr-Pennington* Doctrine. | 6 |
|       1. Key Evidence In Support: | 7 |
|    B. Sixth Affirmative Defense: Waiver | 8 |
|       1. Key Evidence In Support: | 8 |
|    C. Twentieth Affirmative Defense: Ratification | 9 |
|       1. Key Evidence in Support: | 9 |
| III. ANTICIPATED EVIDENTIARY ISSUES | 10 |
| IV. GERMAINE ISSUES OF LAW | 10 |
|    A. Pattern of Racketeering Activity | 10 |
|    B. Elements of Violation of the Hobbs Act | 11 |
|    C. Causation and Standing Issues | 12 |
| V. JURY TRIAL | 12 |
| VI. ABANDONMENT OF ISSUES | 13 |

# S-DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**I.     CLAIMS AND DEFENSES**

**A.     Claim 1: Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)**

To recover under § 1962(c), Plaintiffs must prove establish the following elements:

i. conduct;

ii. of an enterprise;

iii. through a pattern;

iv. of racketeering activity (known as "predicate acts");

v. causing injury to Plaintiffs' "business or property" by the conduct constituting the violation.

*See* Ninth Circuit Manual of Model Civil Jury Instructions at § 8, Civil RICO (2017) (citing *Living Designs, Inc. v. E.I. de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).[1]

Here, Plaintiffs' have alleged Defendants The Sunset Landmark Investment, LLC ("Sunset") and Stephan Saeed Nourmand ("Saeed") (collectively S-Defendants) committed predicate acts of extortion under the Hobbs Act and under California law. The elements required to establish Plaintiffs' claims for extortion, or attempted extortion, by nonviolent threat under the Hobbs Act are:

i. The defendant induced, or intended to induce, Plaintiffs to part with property by wrongful threat of economic harm;

ii. The defendant acted with the intent to obtain property;

iii. Commerce from one state to another was or would have been affected in some way; and

iv. For attempted extortion: the defendant did something that was a substantial step toward committing the violation and that strongly corroborated the defendant's intent to commit the violation.

*See* Ninth Circuit Manual of Model Criminal Jury Instructions at § 9.6 (2022).

The elements required to establish Plaintiffs' claims for extortion under California law are:

    i. The defendant threatened to unlawfully injure the property of Plaintiffs;

    ii. When making the threat, the defendant intended to use that fear to obtain Plaintiffs' consent to give the defendant money or property;

    iii. As a result of the threat, Plaintiffs consented to give the defendant money or property; and

    iv. As a result of the threat, Plaintiffs then gave the defendant money or property.

Judicial Council of California Criminal Jury Instructions (2022), Instruction 1830.

    1.    Key Evidence In Opposition

The evidence will show that Sunset, among numerous other neighborhood constituents, objected to three hotels that Relevant was developing in Sunset's immediate vicinity in Hollywood (Sunset also objected to a fourth hotel that was later purchased by Relevant). The issues raised by these various constituents ranged from increased neighborhood traffic, over-utilization of city services, air pollution, noise, and diminution of the neighborhood's aesthetic character. Defendants also intend to show the jury that California and Los Angeles land use regulations, including CEQA, apply broad standing requirements that allow diverse groups of constituents to object to projects like Relevant's hotels, regardless of direct economic harm, environmentalist "bona fides" (that is, regardless of whether the petitioner has a background of, or experience in, environmental activism), or even immediate proximity to the project. Defendants also intend to show the jury that under CEQA,

---

[1] The Ninth Circuit Manual of Model Civil Jury Instructions provides certain guidance on Plaintiffs' RICO claims and refers to the Eleventh Circuit's model jury instructions. *See id.* ("For model jury instructions that may be helpful, *see* Eleventh Circuit Pattern Jury Instructions—Civil Cases (2013), Instructions 7.1 *et seq.*").

a petitioner can challenge a city's approval under the relatively lenient "fair argument" standard, that is, on the assertion of a "fair argument" that a project may cause environmental harm.

Defendants also intend to show that their challenges and objections to the Relevant hotels was not part of any "kiss the ring" exercise in Hollywood, as though defendants were the gatekeepers of Hollywood development. Instead, defendants challenged a specific number of projects in the defendants' vicinity. Defendants did not challenge other developers' Hollywood projects or even all of Relevants' Hollywood projects.

The evidence will show that Relevant put themselves in a vulnerable position through the type of financing they arranged for these projects; Relevant relied on a combination of bank loans and individual investors to fund construction. These sources, however, apparently left Relevant no margin for delay. As Relevant witnesses have already testified, Relevant was desperate to avoid any delay caused by court or administrative challenges to their projects, regardless of the merits of those challenges. As the evidence will show, for that reason, Relevant did not move to summarily dismiss Sunset's lawsuits, request a court to adjudge them frivolous, or request sanctions against Sunset's counsel. It was Relevant that first approached Sunset to settle Sunset's litigation, not the other way around. It was also Relevant, and not Sunset, that restarted those negotiations when they initially broke down. In fact, Relevant pushed for those continued negotiations despite Sunset's indications that it was prepared to go to trial on its challenges. It was also Relevant, not Sunset, that was the primary drafter of settlement agreements related to the Thompson and Tommie Hotels. In those settlements, which the parties negotiated with the participation of their respective counsel, Sunset agreed to dismiss its challenges and, in the case of the Thompson Hotel, grant Relevant an easement and tieback on its property (which would allow Relevant to access Sunset's property with equipment to help complete the Thompson Hotel). In exchange, Relevant agreed to conditions

on the operation of the Tommie and Thompson Hotels as well as to the payment of $2.5 million to Sunset.

The evidence will show that at no point before this lawsuit did Relevant claim that these settlements were extortionate or unlawful. In fact, Relevant represented on both settlement agreements, with the benefit of oversight and participation by able counsel, that the agreements were not the product of duress or coercion. Relevant never sought to rescind either of the settlement agreements (even until today, in the instant case). Relevant did not try to restore to Sunset the equivalent value of Sunset's obligations under the settlement agreement (thereby indicating its expectation that Sunset would continue to fulfill those obligations). Relevant never contacted law enforcement to report that it was the victim of a crime. Relevant nevertheless now seeks to turn those settlements into a RICO extortion action, despite the fact that no published federal case has upheld a civil judgment based on a theory of frivolous (as opposed to fraudulent) litigation-based extortion. In addition to the above issues, however, defendants expect that the evidence of plaintiff's harm caused by defendants' conduct will not be sufficient to establish liability, let alone damages. Defendants will emphasize that there is insufficient evidence of harm caused specifically by defendants' challenges (as opposed to those of the other constituents who objected to, and/or filed litigation against, Relevant's hotels), of harm to the particular holding company LLCs that are the plaintiffs in this case or even to Relevant (for example, documents showing profits lost, or costs born, by each entity), or of costs that would not simply be borne by any developer trying to avoid meritorious (but still inconvenient) litigation.

### B. Claim 2: Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d), by conspiring to violate 18 U.S.C. § 1962(c)

To recover under § 1962(d) for conspiring to violate § 1962(c), Plaintiffs must prove each of the elements of their first cause of action for violation of § 1962(c). In

addition, Plaintiffs must prove that (1) two or more of the Defendants tried to accomplish an unlawful plan to engage in a pattern of racketeering activity, and (2) each Defendant agreed to the overall objective of the conspiracy. As an alternative to the second element, the Plaintiffs must prove that a Defendant agreed with at least one other Defendant to commit two predicate acts as part of the conspiracy.

### 1. Key Evidence In Opposition

In addition to the key evidence cited above in section A.2, S-Defendants will also offer testimony from Casey Maddren and Saeed Nourmand indicating that the two individuals do know each other and have not spoken to each other. In addition, the evidence will show that Nourmand & Associates were not in any way involved in the lawsuits.

## II. AFFIRMATIVE DEFENSES

### A. Third Affirmative Defense: *Noerr-Pennington* Doctrine.

"Under the Noerr-Pennington doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The Noerr-Pennington doctrine requires a three step analysis:

    i.    Would an adverse adjudication impose a burden on the defendant's petitioning activity;

    ii.    Does the burdened petitioning conduct fall within the protection of the Petition Clause; and

    iii.    Can the statute be construed in a way to avoid the burden.

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935-936 (9th Cir. 2006)

Plaintiffs have asserted that Defendants' conduct is not protected by the First Amendment because the "sham litigation" exception applies to the *Noerr-Pennington* defense. To establish the "sham litigation" exception, Plaintiffs have the burden of establishing that Defendants brought a series of legal challenges pursuant to a policy

of starting legal proceedings without regard to the merits for the purpose of injuring a market rival. *USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994).  Plaintiffs must prove that Defendants' legal filings were not made "out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment." *Id.* at 11.

          1.      Key Evidence In Support:

S-Defendants will offer the following key evidence in support of its affirmative defense of Noerr-Pennington Immunity.

- Filings made in the CEQA actions and administrative hearings challenging the Plaintiffs' hotels that demonstrate the merits of the CEQA lawsuits;
- Rulings made in the CEQA actions challenging the Plaintiffs hotels that demonstrate the merits of the CEQA lawsuits;
- Expert testimony of Douglas Carstens as to the merits of the CEQA lawsuits;
- Testimony from other individuals who opposed Plaintiffs hotels and were concerned about the impact such hotels. These individuals include:  David Carrera, Casey Maddren, Fran Offenhauser, Allen Shamoolian, and Lauren Farmer;
- Testimony from Plaintiffs' lawyers, including Guy Maisnik, Arthur Friedman, and Matt Hinks on lack of certain actions taken in litigation to dispose of the allegedly "sham" lawsuits.
- Testimony and documentary evidence of other projects that Sunset did not challenge.
- Testimony by Saeed Nourmand as to Sunset Landmark's for the reasons for the challenges to Plaintiffs' hotel projects;
- Documentary evidence, including email correspondence, letters, social media posts and video footage demonstrating the merits of the CEQA

lawsuits;

- Communications from Saeed Nourmand to various community stakeholders and city officials outlining legitimate concerns with Plaintiffs' hotels.
- Testimony by Jayesh Patel, Robert Silverstein, Richard Heyman, Guy Maisnik, and Matthew Hinks as to the negotiation and terms of the settlement agreements of the Thompson and Tommie hotel lawsuits;
- Documentary evidence of Plaintiffs' attempts to illegally lobby for the approval of its various hotels;

Documentary evidence in the administrative record demonstrating the City's approval of Plaintiffs' hotels were improper.

### B. Sixth Affirmative Defense: Waiver

Waiver is the intentional relinquishment of a known right. *See* CACI 336; *see also United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). To determine whether a release in a settlement agreement waives civil RICO claims, the inquiry is whether the RICO claims accrued at the time of the release entered. ECF No. 167, p. 34, ln. 16-17.

    1. Key Evidence In Support:

Key evidence in support of S-Defendants affirmative defense of waiver includes:

- Testimony by Jayesh Patel, Robert Silverstein, Richard Heyman, Guy Maisnik, and Matthew Hinks as to the negotiation and terms of the settlement agreements of the Thompson and Tommie hotel lawsuits;
- Email correspondence and draft agreements relating to the negotiation and terms of the settlement agreements;
- Testimony by Richard Heyman, Grant King, and Andrew Shayne regarding the status of construction of their projects and the basis of their claims that the settlement agreement was extortionate;

- Testimony by Saeed Nourmand, Jayesh Patel and Richard Heyman, and documentary evidence including text messages and email communications, relating to post-settlement conduct by Plaintiffs and their communications with Saeed Nourmand leading up to the filing of the subject lawsuit;
- Email and text message communications between the parties before, during and after the settlement agreement demonstrating;
- Communications from Plaintiffs inviting Sunset Landmark to propose a counter-offer to Plaintiffs' settlement requests.
- Communications between Jay Patel and Guy Maisnik regarding Plaintiffs' request for a "blank check" to allow their projects to proceed unchallenged.
- Testimony from Saeed Nourmand, Jay Patel, Richard Heyman, Guy Maisnik and Grant King regarding knowledge that Defendants reserved the right to object to further projects by Plaintiffs;
- Testimony from Richard Heyman and Grant King about knowledge of additional projects from Plaintiffs to be built near Sunset Landmark property.

### C. Twentieth Affirmative Defense: Ratification

Under the theory of ratification, "a voidable contract can be cured by ratification through express or implied conduct, but that a person 'charged with ratification of such a contract must have acted voluntarily with knowledge of the facts.'" *Monster Content, LLC v. HomesCom., Inc.*, No. C 04-0570, 2005 WL 1522159, at *6 (N.D. Cal. June 28, 2005). A party can ratify a voidable agreement if it "retained the consideration received in the settlement agreements after allegedly learning that the settlement agreements were voidable? *Williams v. Phillips Petroleum Co.*, 23 F.3d 930 (5th Cir. 1994).

1. Key Evidence in Support:

S-Defendants intend to offer the following key evidence in support of its affirmative defense of ratification.

- Testimony by Richard Heyman, Grant King, Demien Ferrell, and Guy Maisnik regarding the use of the tieback agreement and easement, the dismissal of the CEQA actions;
- Testimony by Saeed Nourmand, Jayesh Patel and Richard Heyman, Grant King, Demien Ferrell, and documentary evidence including the settlement agreements, re: Plaintiffs' use and retention of the consideration received from the settlement agreements;
- Recorded easements granted by Sunset in favor of Plaintiffs.

### III. ANTICIPATED EVIDENTIARY ISSUES

S-Defendants anticipate to raise the following Motions in Limine:

a. Motion to exclude expert testimony from Joe Anastasi;

b. Motion to exclude expert testimony from Richard Grassetti;

c. Motion to exclude expert testimony from Tina Thomas;

d. Motion to exclude expert testimony from John Hekman; and

e. Motion to exclude any testimony or evidence of obligations, costs, or other potential damages purportedly incurred by Plaintiffs' subsidiaries, parent corporation, or other affiliated companies not named as parties to this lawsuit.

Aside from the anticipated motions in limines, S-Defendants do not anticipate any significant evidentiary issues.

### IV. GERMAINE ISSUES OF LAW

#### A. Pattern of Racketeering Activity

Defendants contend that Plaintiffs may only ask the jury to identify a pattern of racketeering activity based on two alleged acts of extortion: (1) defendants' alleged extortion of Plaintiffs with respect to the Thompson Hotel and Tommie Hotel projects and (2) defendants' alleged attempted extortion of plaintiffs with respect to the Selma Hotel project. While plaintiffs identify "five separate sets of sham lawsuits and administrative challenges (or attempted legal and administrative challenges)," four of those supposed events comprise a single unit of prosecution. A series of

alleged attempts to extort a victim cannot be broken up into multiple acts of extortion if they culminated in one alleged criminal act. *See, e.g. Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F.Supp.2d 293, 303-04 (S.D.N.Y. 2004) (a completed act of extortion along with the intermediate steps toward completion of that act constitute one predicate act, not multiple distinct attempts). Here (assuming *arguendo* the truth of the allegations), there is no evidence that defendants' challenges and litigation vis-à-vis the Thompson and Tommie Hotels contemplated more than one "shakedown." The parties simultaneously signed two settlements agreements to resolve those disputes and agreed to a single settlement payment. Accordingly, plaintiffs' allegations with respect to the Thompson and Tommie hotels form a single alleged extortion episode. *Id.* at 304 (citing *Linens of Europe, Inc. v. Best Mfg., Inc.*, 2014 WL 2071689 at *16 (S.D.N.Y. 2004) (rejecting argument that "laundry list of incidents [established multiple] predicate acts")).

Defendants have proposed jury instructions that require the jury to find each one of these two racketeering predicates in order to find defendants liable.

### B. Elements of Violation of the Hobbs Act

Defendants have also sought to instruct the jury that plaintiffs have the burden of proving, in order to establish liability under the Hobbs Act, that defendants' alleged sham litigation was "involve[d] the filing of a whole series of lawsuits and other legal actions without regard to the merits," and that the jury should consider, in analyzing whether defendants had regard for the merits of their claims, whether the litigation was "objectively baseless" such that "no reasonable litigant could realistically expect success on the merits." *United States* v. Koziol, 993 F.3d 1160, 1171 (9th Cir. 2021) (citing *Prof. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993); *USS-Posco Indus. V. Contra Costa County Bldg. & Const.*, 31 F.3d 800 (1994). Defendants continue to argue (and preserve for appeal) that *Koziol* does not extend to civil RICO liability based on sham litigation (and, indeed, all federal circuit courts to have considered the issue have explicitly held that RICO

does *not* permit such civil liability). Defendants also continue to argue that the *Prof. Real Estate* test for objective baselessness should be the principal inquiry for determining whether litigation is a sham. Nevertheless, if plaintiffs' theories are permitted to go forward, *Koziol* requires this formulation to avoid an unconstitutional finding by the jury that defendants could be civilly liable for advancing objectively nonfrivolous (or at least not objectively frivolous) lawsuits.

### C. Causation and Standing Issues

As discussed above, defendants anticipate there will extensive litigation over whether plaintiffs can meet their burden of showing that each plaintiff was proximately injured by defendants' racketeering activity. Each plaintiff must show, as an element of the claim and in order to establish damages, that defendants' RICO violations were both a proximate and but-for cause of harm. *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1249 (9th Cir. 2019) (RICO "demand[s] ... some direct relation between the injury asserted and the injurious conduct alleged"). As defendants have argued in pretrial motions, the plaintiffs are several special purpose entities and a holding company from within a complex web of companies, and it is unclear which of them was responsible for receiving investor funds, paying construction costs, or bearing the costs from any litigation delays or legal challenges. It is also unclear how plaintiffs will attribute these damages to defendants' specific conduct separate from the other legal challenges that were filed against each of the subject hotels. In addition, there is also issues of proximate cause, as Plaintiffs are seeking to recover damages that Plaintiffs admit were not a foreseeable result of the purported design changes Plaintiffs made to resolve Defendants objections.

### V. JURY TRIAL

Plaintiffs have timely requested a jury trial.

## VI. ABANDONMENT OF ISSUES

S-Defendants abandons any affirmative defenses not explicitly stated herein.

Dated: August 1, 2022      **NORTON ROSE FULBRIGHT US LLP**

By */s/ Christopher Pelham*
    CHRISTOPHER PELHAM
    Attorneys for Defendants
    THE SUNSET LANDMARK INVESTMENT, LLC, and STEPHEN "SAEED" NOURMAND