**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
ALI R. RABBANI, State Bar No. 253730
arabbani@wsgr.com
STEPHANIE V. BALITZER, State Bar No. 316133
sbalitzer@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
Telephone:  (323) 210-2900
Facsimile:   (866) 974.7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel
LLC, 6516 Tommie Hotel LLC, and 6421
Selma Wilcox Hotel LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10,<br><br>Defendants. | Case No.: 2:19-cv-05019-ODW(KSx)<br><br>**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Date:         August 9, 2022<br>Time:        11:30 a.m.<br>Dept:         Courtroom 5D, Fifth Floor<br>Before:      Hon. Otis D. Wright, II<br><br>Trial Date:  August 30, 2022 |

# **TABLE OF CONTENTS**

I.    SUMMARY STATEMENT OF CLAIMS ......................................................2

    A.    Overview of Plaintiff's Claims ............................................................2

        1.    The Elements of Plaintiff's Claims and the Applicable Law ............................................................................................2

            a.    Claim 1: Racketeering in Violation of 18 U.S.C. § 1962(c) ..............................................................................2

            b.    Claim 2: Violation of 18 U.S.C. § 1962(d) ....................6

        2.    The Evidence In Support of Plaintiffs' Claims .........................7

            a.    Claim 1: Violation of 18 U.S.C. § 1962(c) ....................7

            b.    Claim 2: Violation of 18 U.S.C. § 1962(d) ..................10

    B.    Defendants' Affirmative Defenses to Plaintiffs' Claims...................10

        1.    Defendants' *Noerr-Pennington* Defense .................................10

            a.    *Elements of the* Noerr Pennington *Defense.*...................11

        2.    Defendants' Affirmative Defense of Waiver/Release.............13

        3.    Defendants' Affirmative Defense of Waiver/Release.............15

II.   OTHER ISSUES ......................................................................................15

    A.    LEGAL ISSUES FOR RESOLUTION ............................................15

    B.    ISSUES TO BE TRIED ....................................................................16

    C.    ANTICIPATED EVIDENTIARY ISSUES / MOTIONS *IN LIMINE* ...........................................................................................16

    D.    BIFURCATION ................................................................................18

    E.    JURY TRIAL ....................................................................................18

    F.    ABANDONMENT OF ISSUES........................................................18

**INTRODUCTION**

This case concerns an extortion scheme by which Defendants used sham environmental litigation and sham administrative challenges to threaten Plaintiffs' development projects with costs and potentially ruinous delay.  The purpose of this scheme was not to advance legitimate environmental interests but to extract millions of dollars in payments and other valuable concessions that Defendants could never have recovered by prevailing.  That is extortion.

The Defendants operate and control the Hollywood Athletic Club ("HAC") and several adjoining properties located in the heart of Hollywood, just steps from the Palladium, the Hollywood Walk of Fame, and Grauman's Chinese Theater.  The HAC is a large event space that hosts parties for hundreds of guests at a time.  The site also has room for a large dance club/nightclub, once called Boulevard3.

Founded in 2007 by Richard Heyman and Grant King, Relevant Group, LLC ("Relevant") has helped revitalize Hollywood by building high-end boutique hotels and restaurants.  When the 2008 market crash forced their first hotel project (the "Dream") into foreclosure, and no investor would touch their projects, King took his last $70,000 and flew to China.  He spent years learning Mandarin and raising capital through the EB-5 investment program.  Under the program, each EB-5 investor contributes capital to a specific project, which must create ten local jobs per investor. In return, the foreign investors can earn permanent residency visas, but—if the jobs do not materialize or are delayed—investors cannot receive their visas.  When he returned to the United States, Relevant repurchased the Dream and turned it into a major success.  Since then, Relevant has continued to revitalize Hollywood through its high-end hotels, upscale restaurants and vibrant nightlife.  And, importantly, local jobs.  While Relevant contributes capital to each project entity, along with loan guarantees and other financial commitments, EB-5 investors are at the heart of many projects.  The need to create jobs as planned puts unique pressure on Relevant to meet project timelines.

Defendants, however, had other plans.  Defendants intended to expand and develop their own property into a hotel, mixed-use apartment and retail, or something similar.  Apparently concerned that allowing Relevant to build would make it harder for Defendants to secure their own approvals, Defendants launched a scorched-earth campaign of sham legal and administrative challenges to block Plaintiffs' development plans, including CEQA lawsuits and complaints to City planning authorities.   Knowing that delays could threaten Relevant with the loss of its financing, Defendants then weaponized these challenges to extract millions of dollars in cash and many millions more in non-cash concessions from Relevant.  Defendants brought these challenges reflexively and without regard to their merit.  As such, it is actionable extortion.

Plaintiffs are pursuing two causes of action.  Count one is a civil RICO claim alleging that Defendants are a racketeering enterprise that engaged in multiple acts of extortion and attempted extortion.   Count two is a civil RICO conspiracy claim alleging that Defendants conspired to commit multiple acts of extortion and attempted extortion.

# I.    SUMMARY STATEMENT OF CLAIMS

## A.    Overview of Plaintiff's Claims

Plaintiffs intend to pursue two causes of action, both of which are asserted against all defendants.  These claims are: (1) Claim 1: Defendants violated RICO, 18 U.S.C. § 1962(c); and (2) Claim 2: Defendants violated RICO, 18 U.S.C. § 1962(d), by conspiring to violate RICO, 18 U.S.C. § 1962(c).

### 1.    The Elements of Plaintiff's Claims and the Applicable Law

#### a.    Claim 1: Racketeering in Violation of 18 U.S.C. § 1962(c)

The elements of a claim for racketeering under 18 U.S.C. § 1962(c) are:

a.    conduct;

b.    of an enterprise;

c.    through a pattern;

d.    of racketeering activity (known as "predicate acts");

e.    causing injury to Plaintiffs' "business or property" by the conduct constituting the violation.

*See* Ninth Circuit Manual of Model Civil Jury Instructions at § 8, Civil RICO (2017) (citing *Living Designs, Inc. v. E.I. de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).[1]

A RICO enterprise exists if the underlying conduct is carried out by one person in conjunction with any other person or entity that is formally "distinct" from the person (here, each of the Defendants is a "person" under 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d)). *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992). An enterprise may consist of an "inter-related group of corporate entities," *Alexander v. Incway Corp.*, 633 F. App'x 472, 473 (9th Cir. 2016), a "corporate owner" and corporate employee, *id.*, or, where litigation activity is involved, a client and its legal team. *Living Designs*, 431 F.3d at 361-62. A RICO enterprise "does not require any particular organizational structure," *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007). A RICO enterprise encompasses both "upper management" of the enterprise and "lower rung participants" who merely take direction from above. *Reeves v. Ernst & Young*, 507 U.S. 170, 184 (1993); *accord MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F.3d 967, 978-79 (7th Cir. 1995).

To constitute racketeering activity, the relevant conduct must consist of at least one of the predicate acts listed in 18 U.S.C. § 1961. *See* Ninth Circuit Manual of Model Civil Jury Instructions at § 8, Civil RICO (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985)). Here, Plaintiffs allege that Defendants engaged in racketeering by committing acts of extortion and attempted extortion in violation of

---

[1] The Ninth Circuit Manual of Model Civil Jury Instructions provides certain guidance on Plaintiffs' RICO claims and refers to the Eleventh Circuit's model jury instructions. *See id.* ("For model jury instructions that may be helpful, *see* Eleventh Circuit Pattern Jury Instructions—Civil Cases (2013), Instructions 7.1 *et seq.*").

California Penal Code Sections 518 and 524 and the Hobbs Act, 18 U.S.C. § 1951(b)(2).

Under the Hobbs Act, extortion is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  The elements required to establish Plaintiffs' claims for extortion, or attempted extortion, by nonviolent threat under the Hobbs Act are:

> a.  The defendant induced, or intended to induce, Plaintiffs to part with property by wrongful threat of economic harm;[2]

> b.  The defendant acted with the intent to obtain property;

> c.  Commerce from one state to another was or would have been affected in some way; and

> d.  For attempted extortion:  the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime.

*See* Ninth Circuit Manual of Model Criminal Jury Instructions at § 9.6 (2022).  The analysis considers whether the "means" used were wrongful and whether the "ends" demanded were wrongful.  *Koziol*, 993 F.3d at 1176.  With respect to "wrongful ends," the element "may be supplied by (1) the lack of a plausible claim of entitlement to the property demanded, or (2) the lack of a good faith belief of entitlement, or (3) the lack of a nexus between the threat and the claim of right."  *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 579 (S.D.N.Y. 2014).

---

[2] A threat is wrongful if the defendant knew that he was not entitled to obtain the property.  Ninth Circuit Manual of Model Criminal Jury Instructions at § 9.6 (2022). "Obtaining property is generally 'wrongful' if the alleged extortionist has no lawful claim to that property." *United States v. Dischner*, 974 F.2d 1502, 1516 (9th Cir. 1992). "[T]hreats of sham litigation, which are made to obtain property to which the defendant knows he has no lawful claim, are 'wrongful' under the Hobbs Act." *United States v. Koziol*, 993 F.3d 1160, 1170 (9th Cir. 2021).

The elements required to establish Plaintiffs' claims for extortion and attempted extortion under color of official right under the Hobbs Act are:

  a. The defendant was a public official or acting under color as a public official title;

  b. The defendant obtained or intended to obtain property that the defendant knew it was not entitled to receive;

  c. The defendant knew that the property was or would be given in return for taking some official action;

  d. Commerce or the movement of an article or commodity in commerce from one state to another was or would have been affected in some way; and

  e. For attempted extortion: the defendant did something that was a substantial step toward committing the violation and that strongly corroborated the defendant's intent to commit the violation.

*See* Ninth Circuit Manual of Model Criminal Jury Instructions at § 9.7 (2022).

 Under California law, extortion is the "obtaining of property or other consideration from another, with his or her consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." Cal. Penal Code § 518(a); *see also id.* § 522. "Fear, such as will constitute extortion, may be induced by a threat . . . [t]o do an unlawful injury to the person or property of the individual threatened . . . ." *Id.* § 519(a). The elements required to establish Plaintiffs' claims for extortion under California law are:

  a. The defendant threatened to unlawfully injure the property of Plaintiffs;

  b. When making the threat, the defendant intended to use that fear to obtain Plaintiffs' consent to give the defendant money or property;

  c. As a result of the threat, Plaintiffs consented to give the defendant money or property; and

1           d.    As a result of the threat, Plaintiffs then gave the defendant money

2   or property.

3   Judicial Council of California Criminal Jury Instructions (2022), Instruction 1830.

4   The elements of attempted extortion under California law are "(i) a specific intent to

5   commit extortion and (2) a direct ineffectual act done in towards its commission."

6   *People v. Sales*, 116 Cal. App. 4th 741, 749 (2004).

7           **b.**    **Claim 2: Violation of 18 U.S.C. § 1962(d)**

8       A RICO conspiracy under § 1962(d) may be established by proof of an

9   agreement to commit a substantive violation of RICO.  *Oki Semiconductor Co. v.*

10   *Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 774-75 (9th Cir. 2002) ("It is the mere

11   agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any

12   substantive RICO violations ever occurred as a result of the conspiracy.").  The

13   conspirator need not have agreed to commit or facilitate each and every part of the

14   substantive offense.  *Howard v. American Online Inc.*, 208 F.3d 741, 751 (9th Cir.

15   2000) (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)).  However, the

16   conspirator must have been "aware of the essential nature and scope of the enterprise

17   and intended to participate in it."  *Id*. (quoting *Baumer v. Pachl*, 8 F.3d 1341, 1346

18   (9th Cir. 1993)).  The "agreement need not be express as long as its existence can be

19   inferred from the words, actions, or interdependence of activities and persons

20   involved."  *Oki Semiconductor*, 298 F.3d at 775.  If a RICO conspiracy is

21   demonstrated, "[a]ll conspirators are liable for the acts of their co-conspirators."  *Id*.

22   (citation omitted).

23       A defendant can be held liable for a RICO conspiracy if the evidence shows

24   that he or she "knowingly agree[d] to facilitate a scheme which includes the

25   operation or management of a RICO enterprise."  *United States v. Fernandez*, 388

26   F.3d 1199, 1229-30 (9th Cir. 2004) (citation omitted).  There is no requirement that

27   the defendants have actually conspired to operate or manage the enterprise himself

28   or herself.  *Id*. (affirming conviction under § 1962(d) of defendant who collected

money on behalf of member of enterprise, facilitated communications between conspirators and accepted payment for drugs sold through enterprise).  Ninth Circuit Manual of Model Civil Jury Instructions at § 8, Civil RICO (2017).

### 2.    The Evidence In Support of Plaintiffs' Claims

#### a.    Claim 1: Violation of 18 U.S.C. § 1962(c)

***Enterprise Elements.***  The evidence will show that the enterprise consisted of Defendant Saeed Nourmand, Defendant Sunset Landmark LLC (Nourmand's closely held development company), Defendant Nourmand & Associates (Nourmand's real estate agency), Jayesh Patel (Sunset's general counsel), the Silverstein Law Firm (Sunset's outside counsel), and others.  The key evidence of the existence of this enterprise will include:

- The testimony of Richard Heyman and Grant King regarding meetings and communications in which Defendants, Patel, and Silverstein repeatedly communicated extortionate demands and threats.

- Letters, emails, and text messages exchanged between the parties containing extortionate demands and threats and made in furtherance of the scheme.

- Testimony from Saeed Nourmand regarding the meetings and communications with Plaintiffs.

- The administrative and judicial filings that constituted sham and/or wrongful legal challenges to Plaintiffs' hotel projects.

- The settlement agreements in which Plaintiffs agreed to pay Defendants $5.5 million and make costly changes to the Thompson and Tommie hotels, which were part and parcel of the extortionate scheme.

- Testimony from Mohamad Iravani (CFO of N&A) and Michael Nourmand (CEO of N&A), concerning the role of N&A and its staff and resources in the operations of the enterprise, and concerning the meetings and communications in which extortionate demands were made.

• Internal emails between Saeed Nourmand and N&A staff that reflect direction of N&A staff and resources in the operations of Nourmand Enterprise operations.

• Testimony of Andrew Shayne that reflects N&A's role in collecting money and enforcing the terms of the settlement agreements.

• Emails between Mohamad Iravani and Relevant that reflect N&A's role in collecting money and enforcing the terms of the settlement agreement.

• Testimony and emails of Casey Maddren, Robert Silverstein, and/or Daniel Wright regarding their role in conducting the operations of the Nourmand Enterprise.

***Conduct / The Pattern of Racketeering Activity Elements.***  The evidence will show that Defendants and their co-conspirators engaged in a lengthy campaign of extortion designed to extract valuable concessions from Plaintiffs in the form of large cash payments, expensive design changes designed to benefit the Defendants' property, and other valuable rights.  Defendants did this through at least five separate sets of sham lawsuits and administrative challenges (or attempted legal and administrative challenges), including challenges to three of Relevant's projects, an attempted challenge to a fourth project, and a challenge to a fifth project owned by different developers.  The key evidence of this pattern of racketeering activity will include:

• Testimony of Richard Heyman and Grant King regarding meetings and communications with Defendants in which extortionate demands and threats were conveyed.

• Letters, emails, and text messages exchanged between the parties that included extortionate demands and threats.

• The administrative and judicial filings that constituted sham and/or wrongful legal challenges to Plaintiffs' hotel projects.

- The settlement agreements in which Plaintiffs agreed to pay Defendants $5.5 million and make costly changes to the Thompson and Tommie hotels, which were part and parcel of the extortionate scheme.

- The expert testimony of Tina Thomas and Richard Grassetti regarding the pattern of sham environmental challenges and litigation carried out by the Nourmand Enterprise.

- Testimony of Tina Thomas and Richard Grassetti regarding CEQA litigation, generally, and the relief available to litigants under CEQA.

- Testimony (including deposition testimony) of Saeed Nourmand reflecting the sham nature of Defendants' CEQA challenges and litigation.

- Testimony of Richard Heyman, Matt Hinks, and Guy Maisnik regarding the communication of threatened project delays and extortionate demands made by Robert Silverstein and Jayesh Patel on behalf of the Nourmand Enterprise (and emails reflecting the same), as well as a lack of genuine interest in CEQA and/or the relief available under CEQA.

- Testimony of Richard Heyman and Grant King regarding Plaintiffs' fear of threatened project delays, economic harm, and reputational harm caused by the Nourmand Enterprise, as well as Plaintiffs' decisions to enter the settlement agreements and the terms of the settlement agreements.

- Testimony from representatives from Koar Group regarding Defendants' challenge to the Schrader Hotel.

***Damages/Injury Element.***  With respect to Plaintiffs' injury and damages, the key evidence will include:

- Settlement agreements showing cash payments and other non-cash consideration extorted by Defendants.

- Testimony of Richard Heyman, Grant King, Andrew Shayne, and Demien Farrell regarding the delays and increased costs and lost value suffered as a result of the Nourmand Enterprise's conduct.

● Financial documents, including construction budgets for the Thompson/Tommie, loan documentation, vendor invoices (including for legal services), and settlement payments.

● Testimony of Joseph Anastasi regarding the damages suffered by Plaintiffs and value obtained by Defendants through the extortionate scheme.

### b.   Claim 2: Violation of 18 U.S.C. § 1962(d)

Plaintiffs anticipate that the same evidence that supports Claim 1 will be offered in support of Claim 2, including emails between Defendants, and others, regarding the wrongful demands for property and payment, coordinated threats to delay Plaintiffs' projects, and efforts to collect and enforce the settlement agreement.

**Attorney's Fees.**   Under 18 U.S.C. § 1964, a prevailing plaintiff is entitled to recover attorney's fees and costs.  Plaintiff will seek attorney's fees and costs in an amount to be determined.

### B.   Defendants' Affirmative Defenses to Plaintiffs' Claims.

Defendants are expected to assert three affirmative defenses: (i) that their extortionate acts are not actionable under RICO because their conduct was protected petitioning activity under the *Noerr-Pennington* doctrine; (ii) that certain of Relevant's claims were released in the settlement agreements that were the product of Defendants' extortion scheme; and (iii) ratification.  The first two defenses are contrary to the law and will be unsupported by the evidence.  The third does not even exist as a defense to extortion or a Civil RICO claim.

### 1.   Defendants' *Noerr-Pennington* Defense

Defendants' first affirmative defense is that their extortionate scheme is protected by the First Amendment because they were merely petitioning the government for redress of legitimate grievances.  While the First Amendment protects *legitimate* activity, it does not protect sham litigation or permit litigants to demand property to which they have no legitimate claim.  But that is exactly what happened here.  Defendants reflexively brought and maintained their challenges to Plaintiffs'

projects irrespective of the merits of those challenges and for the purpose of harming a market rival.  Defendants used these challenges to demand and obtain relief— including millions of dollars and other concessions—to which they had no entitlement.  Such conduct is not protected by the First Amendment.

### a. *Elements of the* Noerr Pennington *Defense.*

The *Noerr Pennington* doctrine protects legitimate attempts to petition the government for relief, including through litigation.  *See USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994).  However, the *Noerr-Pennington* doctrine, however, does not protect "sham" litigation.  *Id.* At 810-11.  Under *USS-POSCO*, the "sham" exception can be established if Plaintiffs can show: a series of legal challenges that were "brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival."  *Id.* at 811.  The key inquiry under USS-POSCO is whether Defendants acted with a "genuine interest" in CEQA or whether the legal challenges were initiated to "harass" Plaintiffs.  Notably, the question is not whether Defendants prevailed on one or more of their claims—some challenges may prevail just as a matter of chance.  *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 180 (3d Cir. 2015).  Relatedly, the success or failure rate is the only indication of whether the litigation was a sham.  Rather, the core inquiry is whether Defendants acted in good faith or bad faith on all of the evidence presented.  In determining whether Defendants acted with an improper purpose, evidence of bad-faith as well as the magnitude and nature of the collateral harm imposed on Plaintiffs by Defendants' petitioning activity can be considered.  *Hanover*, 806 F.3d at 181.  Further, Defendants are not entitled to protection if the legal challenges were a pretext that defendants used to obtain property that they had no lawful claim to, or if there was no nexus between the legal claim and the property that the defendants demanded.  *United States v. Koziol*, 993 F.3d 1160, 1171-72, n.12 (9th Cir. 2021); *La Suisse, Societe*

*D'Assurances Sur La Vie v. Kraus*, 2014 U.S. Dist. LEXIS 99847, at *27-29 (S.D.N.Y. July 21, 2014); *United States v. Tobin*, 155 F.3d 636, 649 (3d Cir. 1998); *United States v. Avenatti*, 2020 U.S. Dist. LEXIS 3908 at, *21-24 (S.D.N.Y. Jan. 6, 2020).

***Key Evidence Against Affirmative Defense.*** Defendants cannot invoke the *Noerr-Pennington* defense to excuse their extortionate acts. The evidence will show that the Defendants did not act out of a genuine concern for the environment or of the interests of the community they were purporting to represent, but instead brought the claims for the purpose of harassing Relevant and ultimately extracting valuable concessions that Defendants could not have obtained by prevailing. The key evidence will include:

- The administrative and judicial filings that constituted or were part of sham and/or wrongful legal challenges to Plaintiffs' hotel projects, and which were pursued in a manner that demonstrates Defendants' goal was delay, harassment and extortion rather than an interest in the merits of their claims.

- The settlement agreements in which Defendants extracted $5.5 million and other concessions not available under CEQA or any other law under which Defendants asserted claims.

- Testimony of Richard Heyman, Matt Hinks and Guy Maisnik regarding the content and course of the parties' settlement discussions which demonstrates that Defendants had no genuine interest in CEQA and instead acted for the purpose of harassing and extorting Defendants. This evidence may also include testimony of Defendants' representatives and evidence of email correspondence and draft agreements.

- Documents, including permit applications, development contracts for Plaintiffs' own development projects, email correspondence, social media posts, and photographs showing that Defendants' own conduct was inconsistent with the positions that Defendants took in legal proceedings.

- Testimony of Saeed Nourmand, Mohammad Iravani, and others showing that Defendants had an ownership and profit interest in a nightclub and event space on the Sunset property and that these compete with Relevant's proposed hotels.

- Expert testimony of Tina Thomas and Richard Grassetti showing that Defendants' CEQA and administrative challenges were a sham.

- The actual rulings on and results of Defendants' administrative and legal challenges, which demonstrate that the claims were brought without regard to the merits.

- Statements Defendants made to their tax advisors that the settlement payment was to compensate Sunset for the "economic harm" purportedly caused by having a competing development nearby, rather than to address any harm cognizable under CEQA.

- Testimony of Saeed Nourmand, Jayesh Patel, Robert Silverstein and third party representatives from the KOAR group showing that Defendants brought legal challenges to another nearby project—the Schrader Hotel—and then withdrew the challenge when they learned that Relevant was not associated with that project and that the development was not reliant on EB-5 investment and thus would not be a good target for an extortion scheme.

- Testimony from Saeed Nourmand and representatives of the Harridge Development Group showing that Defendants did not object to a proposed project with far more significant environmental impacts—the Crossroads project. This will include documentary evidence, including plans and designs, about the nature of the Crossroads project.

- The lack of any nexus between the relief obtainable under CEQA and the property Defendants demanded.

Plaintiffs reserve the right to offer additional evidence depending on the evidence that Defendants offer at trial.

## 2. Defendants' Affirmative Defense of Waiver/Release

Defendants also appear poised to assert the affirmative defense of waiver, which will argue that Plaintiffs released the claims asserted here in settlement agreements.   These settlement agreements are the same settlement agreements that were the product of Defendants' extortionate scheme.   Defendants cannot prevail on this defense because, among other reasons, Defendants cannot establish that the release covers the claims at issue or that the claims were known at the time of the settlement.   Moreover, to the extent that the release is construed to cover the claims here, it is unenforceable.

**Elements of the Defense.**   Waiver requires that the defendant prove that the plaintiff *knowingly* and *voluntarily* relinquished a known right.   *See* CACI 336.

A release or waiver that was procured by extortion is not enforceable as a matter of law.   California Civil Code Section 1668 reads:

> All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

Cal. Civ. Code § 1668.   The provision "reflects the policy of [California] to look with disfavor upon those who attempt to contract away their legal liability to others for the commission of torts." *Blankenheim v. E.F. Hutton & Co.*, 217 Cal. App. 3d 1463, 1471 (1990).   Section 1668 applies "when all or some of the elements of the tort are concurrent or future events at the time the contract is signed," and renders inapplicable and unenforceable clauses "exempting a party from responsibility for fraud or a statutory violation . . . ."   *See, e.g.*, *SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146, 148 (2018).

Section 1668 renders inapplicable and unenforceable contractual provisions purporting to exempt a party from liability for RICO based on its "own misconduct," or where the settlement agreement was a "key tool" of the RICO scheme.   *Monterey Bay Military Housing, LLC v. Pinnacle Monterey LLC*, 116 F. Supp. 3d 1010, 1051 (N.D. Cal. 2015) ("own misconduct"), *vacated in part on other grounds*, No. 14-CV-

03953-BLF, 2015 WL 4624678 (N.D. Cal. Aug. 3, 2015); *Marani v. Cramer*, No. 4:19-CV-05538-YGR, 2021 WL 254308, at *3 (N.D. Cal. Jan. 26, 2021) ("key tool"). Under California law, Section 1668 applies with equal force to general releases purporting to include waivers of Section 1542. *See Hardwick v. Wilcox*, 11 Cal. App. 5th 975, 989 (2017) (general release cannot be construed to allow a party "to escape the consequences of his violation of the law").

***Key Evidence in Opposition to the Defense.***   The evidence in opposition to the defense will include:

- The settlement agreements themselves, which shows that the releases do not cover the claims and parties at issue.

- The above-listed testimony demonstrating that the settlement was procured as part of a scheme of extortion.

- Testimony of Richard Heyman, Matt Hinks and Guy Maisnik showing that the RICO claims were not complete at the time of the settlement.

### 3.   Defendants' Affirmative Defense of Waiver/Release

Certain Defendants have also indicated that they intend to pursue a standalone defense of ratification.  No such defense exists.  Ratification is a legal doctrine that renders certain otherwise voidable contracts valid.  Ratification of a release requires "the releasor, with full knowledge of the material facts entitling him to rescind, has engaged in some unequivocal conduct giving rise to a reasonable inference that he intended the conduct to amount to a ratification." *Union Pac. R. Co. v. Zimmer*, 87 Cal. App. 2d 524, 532 (1948).

## II.   OTHER ISSUES

### A.   LEGAL ISSUES FOR RESOLUTION

Many of the substantial legal issues in dispute have been determined in ruling on the parties' summary judgment motions.  Defendants anticipate that the following legal issues may remain for decision by the Court:

a.   Whether ratification is available as a defense to a claim of extortion;

b.   The appropriate legal standard that should apply to ratification;

**B.   ISSUES TO BE TRIED**

In view of the admitted facts and the elements required the establish the claims and affirmative defenses, Plaintiffs submit that the following issues remain to be tried:

a.   Did Defendants make demands for property from Plaintiffs?

b.   Did Defendants have a legal right to the property they demanded from Plaintiffs?

c.   Did Defendants know they had no legal right to the property they demanded from Plaintiffs?

d.   Did Defendants induce, or intend to induce, Plaintiffs to part with their property by wrongful threat of economic harm?

e.   Did Defendants have a genuine interest in vindicating their rights under CEQA or were the legal challenges initiated to harass Plaintiffs?

f.   Was there an enterprise?

g.   Did Defendants direct the alleged enterprise?

h.   Did Defendants benefit from the extortionate scheme of the enterprise?

i.   Were Plaintiffs injured by Defendants' conduct?

j.   What damages did Plaintiffs suffer as a result of Defendants' conduct?

**C.   ANTICIPATED EVIDENTIARY ISSUES / MOTIONS *IN LIMINE***

Plaintiffs anticipate filing the following motions *in limine*.

a.   Plaintiffs' Motion *in Limine* #1 to exclude testimony and evidence regarding allegations that Plaintiffs did not meet the EB-5 job creation requirements;

b.      Plaintiffs' Motion *in Limine* #2 to exclude testimony and evidence regarding other persons or entities that objected to the hotel projects at issue at the City level;

c.      Plaintiffs' Motion *in Limine* #3 to exclude testimony and evidence regarding allegations that Sunset's tenants suffered any harm as a result of Plaintiffs' hotel projects;

d.      Plaintiffs' Motion *in Limine* #4 to exclude testimony and evidence regarding Defendants' or their attorneys' subjective views of the merits of the underlying CEQA litigation;

e.      Plaintiffs' Motion *in Limine* #5 to exclude testimony and evidence regarding Plaintiffs' other actual or potential development projects.

Separately, Plaintiffs also note that Defendant Sunset Landmark has refused to produce the transcript of the August 8, 2018 deposition of Defendant Nourmand in the case captioned *The Sunset Landmark, LLC v. Chubb Custom Insurance Co.*, 2:17-cv-04021 (C.D. Cal.) and all exhibits introduced during the deposition.  Plaintiffs timely requested this deposition transcript from Sunset on March 9, 2022, well before the fact discovery cutoff.  In response, Sunset agreed "to obtain a copy of the transcript . . . to provide to Relevant Group."  Subsequently, Sunset's counsel indicated that the deposition transcript could be obtained from the court reporter, and agreed to split the costs with Plaintiffs to get a copy.  This agreement was memorialized in Sunset's filing with the Court, which stated that "Sunset is willing to stipulate to this relief"—*i.e.*, obtaining and producing a copy of the deposition transcript—and claimed that Sunset had already purchased a copy of the transcript "and provided it to Plaintiffs."  However, not only was this representation inaccurate at the time it was made (the transcript had not been provided, even though Plaintiffs have paid their half of the costs to Sunset's counsel), it has now been rendered false by Sunset's refusal to produce the transcript at all.

### D.    BIFURCATION

In light of the Court's order on Plaintiffs' Motion for Partial Summary Adjudication, Plaintiffs believe bifurcation of Defendants' affirmative defenses of waiver and ratification may promote judicial economy by allowing a finding on California Civil Code Section 1668, which may dispose of those affirmative defenses.

### E.    JURY TRIAL

Except for those issues identified in part II.D above, Plaintiffs request and are entitled to a jury trial.

### F.    ABANDONMENT OF ISSUES

Plaintiff no longer intends to pursue a claim under 18 U.S.C. § 1862(b).

Respectfully Submitted,

Dated: August 1, 2022          WILSON SONSINI GOODRICH & ROSATI
                               Professional Corporation

                               By:   */s/ Susan K. Leader*
                                     Susan K. Leader

                               Attorneys for Plaintiffs