**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
MATTHEW A. MACDONALD, State Bar No. 255269
matthew.macdonald@wsgr.com
ALI R. RABBANI, State Bar No. 253730
arabbani@wsgr.com
STEPHANIE V. BALITZER, State Bar No. 316133
sbalitzer@wsgr.com
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027
Telephone:  (323) 210-2900
Facsimile:  (866) 974.7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
CHARLES A. TALPAS, State Bar No. 308505
ctalpas@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel
LLC, 6516 Tommie Hotel LLC, and 6421
Selma Wilcox Hotel LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,

        Plaintiffs,

        v.

STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10,

        Defendants.

Case No.: 2:19-cv-05019-PSG-KSx

**PLAINTIFFS' TRIAL BRIEF**

Date:     January 26, 2023
Time:    9:00 a.m.
Place:   Courtroom 6A, Sixth Fl.
Judge:  Hon. Philip S. Gutierrez

1

## I.    INTRODUCTION

2   In their respective Memoranda of Contentions of Fact and Law, Defendants
3   confuse several important legal issues for trial and invite multiple errors. *See* ECF
4   Nos. 168, 176.   To begin, Defendants assert two contract-based affirmative
5   defenses—waiver and ratification—that are inapplicable to the facts of this case.
6   But this is not a breach of contract case.  Defendants cannot absolve themselves of
7   liability under RICO by asserting that Plaintiffs have somehow "waived" the right
8   to sue for extortion.  Nor can Defendants assert that Plaintiffs "ratified" an illegal
9   contract by acknowledging receipt of sham "consideration."  Both of those theories
10  contradict California statutory law, federal common law, and the law of the case.
11  Contracts that are "part and parcel" of an extortionate scheme—such as the
12  Settlement Agreements—are void and unenforceable.  The Court should reject these
13  inapplicable affirmative defenses and decline to instruct the jury on them.

14  Further, Defendants' "Issues of Law" improperly conflate aspects of their
15  *Noerr-Pennington* affirmative defense with Plaintiffs' prima facie RICO case.  *First*,
16  Defendants confuse the number of sham legal challenges relevant to their *Noerr-*
17  *Pennington* defense with the number of predicate acts under RICO.   Each of
18  Defendants' sham legal challenges is relevant to the *USS-POSCO* standard, which
19  this Court has repeatedly held is the applicable exception to *Noerr-Pennington* in
20  this case.  That is an entirely separate analysis from the number of predicate acts
21  Defendants are alleged to have committed in their pattern of racketeering.  The Court
22  should appropriately distinguish these two issues to avoid juror confusion and legal
23  error.  *Second*, Defendants erroneously seek to modify the meaning of "wrongful"
24  under the Hobbs Act.  Under Ninth Circuit law, Defendants are simply incorrect that
25  sham litigation cannot constitute "wrongful" conduct under the Hobbs Act in a civil
26  RICO case.  Therefore, for the reasons discussed in greater detail below, Defendants'
27  "Issues of Law" should be rejected.

28

## II.   THE SUNSET DEFENDANTS' AFFIRMATIVE DEFENSES OF WAIVER AND RATIFICATION ARE INAPPLICABLE

The Sunset Defendants assert two irrelevant affirmative defenses that lack any basis in law or the facts of the case and, if presented, would only result in juror confusion.  For the reasons below, they should not be a part of this case at trial.[1]

### A.   Sunset Defendants' Sixth Affirmative Defense: Waiver

The Sunset Defendants assert that contractual "waiver" of Plaintiffs' RICO claims could apply in this case.  ECF No. 176 at 8-9; *see also* ECF No. 255, Instruction No. 8.  They are wrong.  As the model jury instruction makes clear, "waiver" is an affirmative defense to a *contractual obligation*.  *Compare* CACI 336, *with* ECF No. 255, Instruction No. 8.  Here, Plaintiffs are not asserting any claim for breach of contract.  On the contrary, Plaintiffs contend the only contract between the parties is void as a matter of law.  Because this affirmative defense is inapplicable, Defendants nowhere identify the contractual obligation they contend is waived.  *Id.*

To fit this square peg into a round hole, Defendants argue that Plaintiffs could waive the right to bring extortion claims by signing a settlement agreement while knowing they were being extorted.  ECF No. 255, Instruction No. 8.  That is wrong under California law and federal common law alike, as the Court has previously explained.  As to California law (applicable to the Settlement Agreements), Civil Code section 1668 renders unenforceable any contracts contrary to public policy, including a release of RICO claims when that "provision was a 'key tool' of the RICO scheme."  ECF No. 167 at 40-41 (citing *Monterey Bay Military Housing, LLC v. Pinnacle Monterey LLC*, 116 F. Supp. 3d 1010, 1051 (N.D. Cal.), *vacated in part on other grounds*, No. 14-cv-03953-BLF, 2015 WL 4624678 (N.D. Cal. Aug. 3, 2015)).  Federal common law similarly renders unenforceable settlement agreements

---

[1] This section focuses on the Sunset Defendants' affirmative defenses of waiver and ratification because the Court has already held that N&A cannot assert affirmative defenses based on the release in the Settlement Agreements.  ECF No. 167 at 38-40, 43.

procured as an "integral part" or "part and parcel" with a RICO conspiracy. *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1315 (5th Cir. 1983). And this Court has already held that the releases are unenforceable if either (1) "the provision was a 'key tool' of the RICO scheme" (ECF No. 167 at 40-41 (citing *Monterey Bay*, 116 F. Supp. 3d at 1051)) or (2) the releases "were procured as an 'integral part' or 'part and parcel' of a wrongful conspiracy" (*id.* at 41 (quoting *Ingram*, 698 F.2d at 1315)).

The *only* issue for trial on the enforceability of the releases is "whether Defendants violated RICO" through an extortionate scheme that included the Settlement Agreements. *Id.* at 42. If so, then the releases were unenforceable as a matter of law. *Id.* That is law of the case.[2] Indeed, Defendants themselves concede this point in their jury instruction submissions. For example, in their objections to Plaintiffs' Proposed Instruction J, Defendants correctly explain that "[i]f Plaintiffs meet their burden of proving extortion, as a matter of law the settlement agreement will be void." ECF No. 254, Defendant' Obj. to Instruction J. On that issue, the parties agree and—as a result—there is no reason to complicate this matter with inapposite argument and inapposite jury instructions.

**B.    Sunset Defendants' Twentieth Affirmative Defense: Ratification**

Defendants' ratification defense (ECF No. 176 at 9-10) fails for the same reason: ratification is an affirmative defense to a breach of contract claim, *not* a civil RICO claim. Moreover, Defendants confuse contracts that are voidable at the option of one party (such as those entered into by a minor or induced by fraud) with

---

[2] Principles of comity give great weight to interlocutory orders or rulings of prior district judges in the same case before final judgment, and "one judge should not overrule another except for the most cogent reasons." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, No. 20-CV-709 JLS (JLB), 2021 WL 230029, at *9-10 (S.D. Cal. Jan. 22, 2021) (quoting *E.E.O.C. v. Serrano's Mexican Restaurants, LLC*, 306 F. App'x 406, 407 (9th Cir. 2009)). No such cogent reasons exist to depart from Judge Wright's considered and detailed summary judgment order this close to trial, and thus those decisions are "law of the case." *Id.* at *10.

contracts that are *void ab initio* and unenforceable.  This case involves the latter.  And while the former is just a distraction, Defendants continue to conflate these concepts (*see* ECF No. 154 at 7-9) without any basis in law or facts to do so.

This case does not involve a contract that is alleged to be *voidable* at Plaintiffs' option; it involves a contract alleged to be *unenforceable* because it is contrary to public policy as part of the Defendants' RICO scheme (and therefore *void ab initio*).  *See* Cal. Civ. Code § 1668.  Such unenforceability is legally distinct from a contract that is voidable but may be ratified.  *See Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal. 4th 913, 920 n.4 (2010) (Sections 1667 and 1668 "generally govern contracts that are fraudulent and contrary to public policy; however . . . such contracts are not at issue in this case" regarding voidability under Sections 1567 and 1575).  When violation of public policy renders a contract unenforceable, ratification does not apply.  To hold otherwise could mean that a contract for child labor is merely voidable, and might be ratified and rendered enforceable by, say, accepting payment.  That's absurd.  An illegal contract is not "voidable"—it is void ab initio and therefore unenforceable as a matter of law.  As this Court has held, a contract that consummates an extortionate scheme is illegal and therefore unenforceable.  *See* ECF No. 167 at 40-41 (applying *Monterey Bay*, 116 F. Supp. 3d at 1051; *see also id.* at 41 (discussing *Ingram*, 698 F.2d at 1315).  "Ratification" does not circumvent this law and is therefore inapplicable.

Additionally, submitting this affirmative defense to the jury—and allowing them to find that an illegal contract can be "ratified"—would contradict California law, federal common law, and the law of the case by allowing the jury to enforce an otherwise void and unenforceable provision.  *See supra* Section II.A.  The only issue for trial is whether the release was part of Defendants' RICO scheme.  If it was, then Defendants are liable—and there is nothing to ratify.

Defendants' cited cases are inapposite: one applies New York law and the other addresses a failure to return monetary consideration in light of discovered

misrepresentation and duress.  *See* ECF No. 176 at 9.  But California law governs the Settlement Agreements.  Even if these were void*able* contracts (and they are not), Plaintiffs were not paid any monetary consideration (or any consideration) that they could return.  In fact, as previously explained by Plaintiffs, the supposed "consideration"—a tie-back agreement and construction easement—does not support ratification.  These terms existed in only one of the Agreements (with the Tommie), could not be returned, failed as consideration because they had little-to-no-economic value, were used by Defendants to further their extortionate scheme by manufacturing additional harmful delay, and, in any event, *were not even used* by Tommie (let alone any other Plaintiff).  *See* ECF No. 153 at 11.  Defendants thus lack a factual basis—as well as a legal basis—to argue ratification.

## III.    PLAINTIFFS' RESPONSES TO DEFENDANTS' ISSUES OF LAW

### A.    Pattern of Racketeering Activity

Defendants' argument conflates the elements of Plaintiffs' RICO claims with the evidence pertinent to Defendants' *Noerr-Pennington* affirmative defense.  *See* ECF No. 176 at 10-11; ECF No. 168 at 1, 28-29.  To prove their RICO claims, Plaintiffs must provide evidence demonstrating a "pattern of racketeering activity involving more than one transaction." *Cf. Orcilla v. Bank of Am., N.A.*, 519 F. App'x 477, 478 (9th Cir. 2013) (citing *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992)).  And they will.  As Plaintiffs have made clear from the outset of this litigation, the evidence will show that Defendants committed multiple acts of extortion (*e.g.*, against Thompson and Tommie) and attempted extortion (*e.g.*, against Selma and Schrader).  Defendants are thus wrong to suggest that this is a situation where a "series of alleged attempts to extort a victim . . . culminated in one alleged criminal act."  ECF No. 176 at 10-11.  Indeed, a pattern of racketeering can be shown even where only a single victim—such as Relevant—is "harmed multiple times through multiple predicate acts . . . by the defendants." *Kearney v. Foley & Lardner, LLP*, 607 F. App'x 757, 759 n.1 (9th Cir. 2015) (applying rule in *Sun Sav.*

*& Loan Ass'n v. Dierdorff*, 825 F.2d 187,191-94 (9th Cir. 1987)).   It clearly follows—as the Ninth Circuit has confirmed—that where, as here, the defendants commit "separate acts . . . against [multiple] separate victims" (here, the different project entities), those acts constitute separate predicates for the purpose of analyzing a pattern of racketeering activity.   *See Sever*, 978 F.2d at 1535 (summarizing *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447 (9th Cir. 1991)).[3]   Defendants' out-of-circuit cases are distinguishable: they involve multiple intermediate steps to complete a single crime against a single victim.

As Plaintiffs have repeatedly explained, including at the last pretrial conference, Defendants are conflating two separate and entirely distinct legal concepts.   Specifically, the number of predicate acts required under RICO (*i.e.*, two predicate acts) is an entirely separate question from Defendants' *Noerr-Pennington* affirmative defense.   As this Court has repeatedly held, Defendants' *Noerr-Pennington* defense is subject to the *USS-POSCO* exception, which applies where multiple proceedings are "brought . . . pursuant to a policy of starting legal proceedings without regard to the merits and . . . for the purpose of injuring a market rival."   ECF No. 167 at 23 (quoting *USS-POSCO Indus. v. Contra Costa County Bldg. & Const.*, 31 F.3d 800, 811 (1994); *see also* ECF No. 39 at 7, 8-9; ECF No. 114 at 5; ECF No. 246 at 4.   Other exceptions may apply where there is only one sham legal proceeding.   *See* ECF No. 114 at 5 (identifying "three types of sham litigation exceptions to *Noerr-Pennington* immunity").   The inquiry under *USS-POSCO* "is prospective: Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?"   ECF No. 167 at 23 (quoting *USS-POSCO*, 31 F.3d at 811).   Thus, under Defendants' *Noerr-Pennington* defense,

---

[3] A RICO claim is not actionable until completion of the scheme or threat of continuing criminal activity—neither of which had occurred at the time the Thompson and Tommie Settlement Agreements were entered.

the multiplicative and reflexive nature of sham legal challenges (including at the administrative level) bears on Defendants' motives: were the administrative and superior court actions pursued out of a genuine interest in specific environmental concerns, or, as Plaintiffs contend, were these boilerplate and indiscriminate objections part of an overarching policy and scheme designed to harass and intimidate Plaintiffs? As the Court has previously held, the numerous administrative challenges are particularly relevant to the *Noerr-Pennington* analysis, which is separate and apart from the issue of whether there were two or more predicate acts under RICO.[4]

Keeping these issues distinct is critical to avoid juror confusion. By arguing that two completed acts of extortion and two acts of attempted extortion somehow collapse into one predicate event, Defendants are not only wrong under RICO law but appear to be inviting confusion regarding Defendants' *Noerr-Pennington* affirmative defense. The Court should not follow Defendants into their own thicket of confusion—nor should it allow Defendants to take the jury there.

## B.   Elements of Violation of the Hobbs Act

Defendants suggest that *United States v. Koziol*, 993 F.3d 1160 (9th Cir. 2021) does not authorize RICO civil suits based on sham litigation and somehow splits from other circuits on the issue. ECF No. 176 at 11-12; ECF No. 168 at 28. The Court rejected this argument on summary judgment, cautioning the Sunset Defendants on "their use of incomplete quotations to make points of dubious merit." ECF No. 167 at 20 n.8. Yet they persist—and continue to be wrong. *Koziol* directly "reject[ed] [the defendant's] argument that these civil RICO cases from other

---

[4] On summary judgment, this Court determined that "it does not appear appropriate to consider the entire Thompson matter (or the entire Tommie matter) to be one single putatively sham legal challenge; throughout each matter, the Sunset Defendants filed multiple objections and appeals with different government agencies, and viewing each suit as just one instance of sham litigation activity impermissibly oversimplifies the analysis." ECF No. 167 at 28.

circuits establish that threats of sham litigation can never constitute extortion under the Hobbs Act." *Koziol*, 993 F.3d at 1174-75.  Rather, the Ninth Circuit concluded, "there is no statutory, constitutional, or policy basis to exclude categorically threats of sham litigation from liability under the Hobbs Act."  *Id.* at 1187.[5]  The Court previously ruled that sham litigation may constitute extortion, which in turn may form a pattern of racketeering activity supporting a RICO claim.  ECF No. 167 at 21.  Defendants do not acknowledge this fact, much less provide law, fact, or reasoning to overcome the Ninth Circuit's decision or revisit this Court's summary judgment order.

Instead, Defendants again conflate the facts necessary to prove RICO predicates with facts relevant to their affirmative defense.  They want the Court to incorporate *PREI*'s "objectively baseless" test into the Hobbs Act.  ECF No. 176 at 11-12; *see also* ECF No. 168 at 12-14, 28.  But Defendants have no legal or factual basis to do so, for two reasons.  First, a Hobbs Act violation and a *Noerr-Pennington* affirmative defense are analytically and factually separate questions.  *Koziol* itself demonstrates this.  The Ninth Circuit first analyzed whether the threat of sham litigation was "wrongful" under the Hobbs Act using the Ninth Circuit's means-ends framework.  *See* 993 F.3d at 1169-70 (citing and applying means-ends framework from *United States v. Villalobos*, 748 F.3d 953, 957-58 (9th Cir. 2014)).  Under that approach, even legitimate activities (such as litigation) can be "wrongful" where a defendant "ha[s] no lawful claim to the property he demand[s]."  *Id.* at 1169-70.  This is a standard and accepted approach.  *Cf. United States v. Avenatti*, 2020 WL 70951, at *8-9 n.2 (S.D.N.Y. Jan. 6, 2020) (lawyer-defendant demanded that Nike

---

[5] Koziol reiterated this argument in his petition for certiorari, asking the Supreme Court to address the very questions the Defendants contend are open: whether the Ninth Circuit incorrectly "criminaliz[ed] any baseless threat to sue as Hobbs Act extortion" and whether "interpretation of a statute when applied in the criminal context can be different from an interpretation of that same statute in the civil context."  *See* Petition for a Writ of *Certiorari* at ii, *Koziol v. United* States, No. 21-6054 (U.S. Oct. 15, 2021).  The Court rejected certiorari.  *See* 142 S. Ct. 1372 (2022).

hire him to conduct a $25M "internal investigation" as condition of settling claims with lawyer-defendant's other client); *United States v. Tobin*, 155 F.3d 636, 640 (3d Cir. 1998) (defendant "threatened unrelated lawsuits alleging sexual harassment" rather than action to enforce oral contract).  Only then—after concluding that a Hobbs Act violation had occurred—did the Ninth Circuit look to Koziol's affirmative defense and whether the applicable exception to *Noerr-Pennington* applied.  *Koziol*, 996 F.3d at 1171.

There is no reason to deviate from this approach.  Considering the means-ends framework, Defendants' actions were "wrongful" within the meaning of the Hobbs Act: they sought (and received) monetary and costly design concessions to which they had no entitlement under CEQA.  *See id.* at 1170 (defendant's threats of sham litigation were "wrongful" under the Hobbs Act "because he sought to obtain money to which he knew he had no lawful claim").  *Noerr-Pennington* and its exceptions have no place in that analysis—they are only considered later.

Turning to the second reason why *PREI* should not be imported into the Hobbs Act: it is an inapplicable standard in this case.  As this Court has recognized, there are "three types of sham litigation exceptions to *Noerr-Pennington* immunity," including separate exceptions under *PREI* and *USS-POSCO*.  ECF No. 114 at 5. *PREI* applies in situations where a *single* legal proceeding is threatened or instigated. *USS-POSCO* applies where *multiple* proceedings are brought "without regard to the merits."  31 F.3d at 811.  Because only a single lawsuit was threatened in *Koziol*, the Ninth Circuit applied the standard from *PREI* to analyze the defendant's *Noerr-Pennington* affirmative defense.  993 F.3d 1160, 1172.  But this Court has repeatedly held that "the *USS-POSCO* exception" "applies to this case."  ECF No. 114 at 5; *see also* ECF No. 39 at 7, 8-9; ECF No. 167 at 23; ECF No. 246 at 4.  *PREI* is inapplicable.

1    The Court should not accept Defendants' invitation to improperly conflate

2    what is necessary to show a Hobbs Act violation with the legal requirements of one

3    exception (out of many) to their affirmative defense.

4    **C.    Causation and Standing Issues**

5    On summary judgment, Judge Wright held that the "Sunset Defendants

6    argument that Relevant lacks standing utterly lacks any basis and is borderline

7    frivolous." ECF No. 167 at 34 n.11. On the eve of trial, that conclusion is no less

8    warranted. Likewise, the harm suffered by Plaintiffs is subject to proof at trial,

9    where it will be shown that the injuries were the direct and foreseeable result of

10   Defendants' extortionate acts.

11                                    Respectfully Submitted,

12   Dated: January 19, 2023          WILSON SONSINI GOODRICH & ROSATI
13                                    Professional Corporation

14
15                                    By:   _/s/ Susan K. Leader_____
                                            Susan K. Leader
16
17                                    Attorneys for Plaintiffs

18
19
20
21
22
23
24
25
26
27
28