**NORTON ROSE FULBRIGHT US LLP**
JAMES H. TURKEN (BAR NO. 89618)
CHRISTOPHER K. PELHAM (BAR NO. 241068)
NEIL P. THAKOR (BAR NO. 308743)
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Telephone:   (213) 892-9200
Facsimile:    (213) 892-9494
james.turken@nortonrosefulbright.com
neil.thakor@nortonrosefulbright.com
christopher.pelham@nortonrosefulbright.com

Attorneys for Defendants,
STEPHAN "SAEED" NOURMAND, and THE
SUNSET LANDMARK INVESTMENT LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, | Case No. 2:19-cv-05019-PSG-KSx<br>*[Assigned to the Hon. Philip S. Gutierrez]*<br><br>**DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| Plaintiffs, | *[Supplemental Statement of Undisputed Material Facts; Declaration of Neil P. Thakor Filed Concurrently Herewith]* |
| v. | |
| STEPHEN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; and DOES 1-10, | Date: April 27, 2023<br>Time: 1:30 pm<br>Place: Courtroom 6A |
| Defendants. | Complaint Filed: June 10, 2019<br>TAC Filed: September 14, 2021<br>Trial Date: TBD |

DOCUMENT PREPARED
ON RECYCLED PAPER

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S MOTION FOR
SUMMARY JUDGMENT OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................. iii

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT ......................................................................................... 1

FACTUAL BACKGROUND................................................................................. 2

ARGUMENT........................................................................................................ 5

I.    THE *PRE* TEST GOVERNS, RELEVANT CANNOT
ESTABLISH "SHAM" UNDER *ANY* STANDARD, AND THE
FIRST AMENDMENT AND *NOERR-PENNINGTON*
THEREFORE BAR RELEVANT'S CLAIMS. ................................. 6

    A.    Relevant Fails Both Prongs Of *PRE*............................. 7

        1.    Relevant Cannot Demonstrate Objective
Baselessness. ................................................... 7

        2.    Relevant's Concessions Foreclose Any Finding Of
Bad Faith. ....................................................... 9

    B.    *POSCO* Does Not Apply, But Relevant Cannot Satisfy It
Anyway. ................................................................... 9

        1.    Relevant Cannot Establish The Requisite
Numerosity. ................................................... 10

        2.    Relevant Cannot Establish That Sunset Maintained
A Policy Of Starting Legal Proceedings Without
Regard To Their Merits................................... 12

        3.    Relevant Cannot Establish That Sunset Filed
Lawsuits With An Impermissible Purpose..................... 14

II.    IN ALL EVENTS, RELEVANT'S CLAIMS FAIL UNDER
*KOZIOL* AND OTHER ESTABLISHED RICO PRECEDENT. ...... 15

    A.    Under *Koziol*, Relevant Cannot Base A RICO Claim On
Litigation Activity. .................................................. 15

    B.    The Predicate Acts Relevant Seeks To Establish—All Of
Which Allegedly Targeted Relevant Alone—Do Not
Amount To A RICO "Pattern." ................................. 18

III.    RELEVANT CANNOT ESTABLISH TRIABLE ISSUES ON
ANY ALLEGED PREDICATE ACT. ................................. 19

    A.    As A Matter Of Law, Relevant Cannot Establish Any
"Wrongful" Threat, As The Hobbs Act Requires, For Any
of Its Alleged Predicate Acts................................... 19

- i -

DOCUMENT PREPARED
ON RECYCLED PAPER

B.   As A Matter Of Law, Relevant Cannot Count *One* Transaction (Thompson/Tommie) As *Two* Predicate Acts. ..... 20

C.   As A Matter Of Law, Relevant Cannot Establish Attempted Extortion As To Selma. ........................................... 21

D.   Relevant Has Correctly Conceded That "The Schrader Episode . . . Was Not An Independent Predicate Act." ............ 22

E.   As A Matter Of Law, Relevant Cannot Rely On State-Law Extortion To Establish Predicate Acts. ........................... 22

CONCLUSION ........................................................................................ 24

DOCUMENT PREPARED ON RECYCLED PAPER

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

*Acres Bonusing, Inc. v. Ramsey*,
4   2022 WL 17170856 (N.D. Cal. Nov. 22, 2022), *appeal filed*, No.
22-16994 (9th Cir. Dec. 27, 2022) ................................................................ 17

5

*Amarel v. Connell*,
6   102 F.3d 1494 (9th Cir. 1996) ..................................................................... 10

7   *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
790 F. Supp.2d 1024 (N.D. Cal. 2011) ........................................................ 23

8

*Aviva USA Corp. v. Vazirani*,
9   632 F. App'x 885 (9th Cir. 2015) ................................................................ 21

10   *Barapind v. Enomoto*,
400 F.3d 744 (9th Cir. 2005) (en banc) (per curiam) .................................. 16

11   *Boone v. Redevelopment Agency of San Jose*,
12   841 F.2d 886 (9th Cir. 1988) ....................................................................... 11

13   *Burlington N., Inc., In re*,
822 F.2d 518 (5th Cir. 1987) ....................................................................... 12

14   *Camm v. Kennickell*,
15   1990 WL 198621 (D.D.C. Nov. 20, 1990) .............................................. 14, 15

16   *Catch Curve, Inc. v. Venali, Inc.*,
2008 WL 11334024 (C.D. Cal. Nov. 3, 2008) ............................................. 13

17   *Citizens Ass'n for Sensible Dev. of Bishop Area v. County of Inyo*,
18   172 Cal. App. 3d 151 (Cal. Ct. App. 1985) .............................................. 2, 12

19   *City of Columbia v. Omni Outdoor Advert., Inc.*,
499 U.S. 365 (1991) ...................................................................................... 9

20   *Coca-Cola Co. v. Omni Pac. Co.*,
21   1998 U.S. Dist. LEXIS 23277 (N.D. Cal. Dec. 9, 1998) .............................. 10

22   *Columbia Pictures Indus., Inc. v. Pro. Real Est. Investors, Inc.*,
944 F.2d 1525 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993) ........................... 11

23   *Deck v. Engineered Laminates*,
24   349 F.3d 1253 (10th Cir. 2003) ............................................................... 15, 16

25   *Dias v. Bogins*,
134 F.3d 361 (1st Cir. 1998) (unpublished per curiam) ............................... 15

26   *Edelson PC v. Bandas L. Firm PC*,
27   2018 WL 723287 (N.D. Ill. Feb. 6, 2018) ................................................... 15

28   *ERBE Elektromedizin GmbH v. Canady Tech., LLC*,
629 F.3d 1278 (Fed. Cir. 2010) ................................................................... 10

DOCUMENT PREPARED
ON RECYCLED PAPER

*Evans Hotels, LLC v. Unite Here Loc. 30*,
    433 F. Supp. 3d 1130 (S.D. Cal. 2020) .......................................... 12

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
    20 F. Supp. 3d 451 (S.D.N.Y. 2014) ............................................. 15

*Flonase Antitrust Litig., In re*,
    795 F. Supp. 2d 300 (E.D. Pa. 2011) ............................................ 10

*Franchise Realty Interstate Corp. v. S.F. Loc. Joint Exec. Bd. of
    Culinary Workers*,
    542 F.2d 1076 (9th Cir. 1976) ...................................................... 11

*Gen-Probe, Inc. v. Amoco Corp.*,
    926 F. Supp. 948 (S.D. Cal. 1996) .......................................6, 7, 11, 13

*Grauberger v. St. Francis Hosp.*,
    169 F. Supp. 2d 1172 (N.D. Cal. 2001) ........................................ 16

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*,
    8 F. App'x 676 (9th Cir. 2001) ..................................................... 10

*Hernandez-Cruz v. Holder*,
    651 F.3d 1094 (9th Cir. 2011) ...................................................... 21

*Hilao v. Estate of Marcos*,
    393 F.3d 987 (9th Cir. 2004) ........................................................ 22

*Hurd v. Terhune*,
    8 F. App'x 676 (9th Cir. 2001) ....................................................... 9

*I.S. Joseph Co. v. J. Lauritzen A/S*,
    751 F.2d 265 (8th Cir. 1984) ........................................................ 15

*Kaiser Found. Health Plan, Inc. v. Abbott Lab'ys, Inc.*,
    552 F.3d 1033 (9th Cir. 2009) ........................................................ 8

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018) ...................................................... 16, 17

*Kottle v. Nw. Kidney Ctrs.*,
    146 F.3d 1056 (9th Cir. 1998) ..............................................7, 8, 10, 11

*Limon v. Carpenters Loc. Union 721*,
    2021 WL 4925444 (C.D. Cal. Jan. 11, 2021) .................................. 8

*Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*,
    192 F. Supp. 2d 519 (M.D. La. 2001) ........................................... 10

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*,
    354 F. Supp. 2d 293 (S.D.N.Y. 2004) ........................................... 21

*Marina Point Dev. Assocs. v. United States*,
    364 F. Supp. 2d 1144 (C.D. Cal. 2005) ......................................... 11

- iv -

*Meridian Project Sys., Inc. v. Hardin Constr. Co.*,
    404 F. Supp. 2d 1214 (E.D. Cal. 2005) ............................................ 8

*Nader v. Dem. Nat'l Comm.*,
    555 F. Supp. 2d 137 (D.D.C. 2008) ................................................ 14

*Nugent v. St. Agnes Med. Ctr.*,
    53 F. App'x 828 (9th Cir. 2002) ............................................ 18, 19

*Obeng-Amponsah v. Chase Home Fin., LLC*,
    624 F. App'x 459 (9th Cir. 2015) .................................................. 18

*Polaris Indus., Inc. v. Arctic Cat Inc.*,
    2017 WL 1180426 (D. Minn. Mar. 29, 2017) ................................ 10

*Pro. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ..........................................................5, 6, 7, 10

*Puerto Rico Tel. Co. v. San Juan Cable LLC*,
    874 F.3d 767 (1st Cir. 2017) ................................................ 11, 15

*Raney v. Allstate Ins. Co.*,
    370 F.3d 1086 (11th Cir. 2004) (per curiam) .............................. 15

*Religious Tech. Ctr. v. Wollersheim*,
    971 F.2d 367 (9th Cir. 1992) ........................................................ 23

*Reynoso v. Giurbino*,
    462 F.3d 1099 (9th Cir. 2006) ...................................................... 22

*Richards v. County of Los Angeles*,
    2017 WL 7411159 (C.D. Cal. Mar. 31, 2017) .............................. 23

*RJR Nabisco, Inc. v. Eur. Cmty.*,
    579 U.S. 325 (2016) ...................................................................... 16

*Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*,
    745 F.3d 343 (9th Cir. 2014) ........................................................ 12

*Rosen v. Duel*,
    2022 WL 18231777 (C.D. Cal. Nov. 23, 2022) ............................ 10

*Russell v. Rolfs*,
    893 F.2d 1033 (9th Cir. 1990) ...................................................... 22

*Sever v. Alaska Pulp Corp.*,
    978 F.2d 1529 (9th Cir. 1992) ...................................................... 19

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
    833 F.3d 512 (5th Cir. 2016) ........................................................ 15

*Swayne v. Salinas*,
    996 F.2d 1227 (9th Cir. 1993) (unpublished) .............................. 19

- v -

*Terazosin Hydrochloride Antitrust Litig., In re*,
    335 F. Supp. 2d 1336 (S.D. Fla. 2004) ................................................ 11

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008) ............................................................... 8

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.*,
    2015 WL 4545187 (C.D. Cal. July 8, 2015) ..................................... 8, 10

*Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*,
    207 F. Supp. 2d 221 (S.D.N.Y. 2002) ............................................ 12, 13

*United States v. Albertson*,
    971 F. Supp. 837 (D. Del. 1997) ........................................................ 20

*United States v. Koziol*,
    993 F.3d 1160 (9th Cir. 2021) ............................... 5, 15, 16, 17, 19

*United States v. Villalobos*,
    748 F.3d 953 (9th Cir. 2014) ............................................................. 19

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades
    Council*,
    31 F.3d 800 (9th Cir. 1994) ....................................................... *passim*

*Viacom Int'l Inc. v. Icahn*,
    747 F. Supp. 205 (S.D.N.Y. 1990), *aff'd*, 946 F.2d 998 (2d Cir.
    1991) ................................................................................................. 20

*Vemco, Inc. v. Camardella*,
    23 F.3d 129 (6th Cir. 1994) .............................................................. 15

*Wellbutrin XL Antitrust Litig. Indirect Purchaser Class, In re*,
    868 F.3d 132 (3d Cir. 2017) ...................................................... 8, 10, 12

*Wonderful Real Estate Dev. LLC v. Laborers Int'l Union of N. Am.*,
    2020 WL 91998 (E.D. Cal. Jan. 8, 2020) ................................... 9, 10, 11

**Rules and Statutes**

18 U.S.C. § 1951(b)(2) ............................................................... 20, 21

18 U.S.C. § 1961(1) ......................................................................... 23

Cal. Code Regs. tit. 14, § 15382 ........................................................ 2

Cal. Pub. Res. Code § 21177(a) ........................................................ 2

**Other Authorities**

Cal. Governor's Off. of Plan. & Rsrch., *CEQA: The California
    Environmental Quality Act*, (https://opr.ca.gov/ceqa/) ....................... 7

Cal. Governor's Off. of Plan. & Rsrch., *Getting Started with CEQA*,
    (https://opr.ca.gov/ceqa/getting-started/) ......................................... 2

1

Ninth Cir. Model Crim Jury Inst. No. 9.6 (2022 ed.) ............................................... 19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS STEPHAN "SAEED" NOURMAND AND THE SUNSET LANDMARK INVESTMENT LLC'S MOTION FOR
SUMMARY JUDGMENT OR, ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT

## SUPPLEMENTAL BRIEF IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

The operative facts in this case are straightforward and undisputed. Numerous individuals and businesses in Hollywood's historic Vinyl District objected on environmental grounds to two hotel, restaurant, and nightlife developments pursued by a large developer. The developer and its subsidiaries (collectively, "Relevant"), sought to overcome that community opposition in part by pursuing and proposing financial settlements with objecting stakeholders. Relevant was successful in obtaining settlements with some stakeholders, including Defendant Sunset Landmark Development, LLC ("Sunset"), which eventually accepted $5.5 million from Relevant to drop its objections under the California Environmental Quality Act ("CEQA") and make its own land available to aid in the construction of one of Relevant's projects. The agreement was drafted largely by two prominent law firms working on Relevant's own behalf, and, while still advised by those firms, Relevant confirmed in writing that the agreement was freely entered into, that it was not the product of duress, and that Relevant would never claim otherwise, seek to invalidate it, or base any legal claim on it. Relevant also pursued a third large development that met with the community's (and Sunset's) opposition, as did a fourth project not developed by Relevant. Relevant further contends (i) that Relevant structured its business in a manner that made it "unique[ly]" vulnerable to construction delays; (ii) that Relevant—*not Sunset*—referred to a possible settlement as "blood money"; and (iii) disputedly, but immaterially, that during a meeting regarding the third development, Sunset told Relevant it would "take a check" to settle.

Once the two developments the agreement encompassed were up and running, Relevant brought this action, seeking more than $100,000,000 from Sunset on claims that (i) the agreement was criminally extortionate; (ii) Sunset's challenge to the third project (which was never the subject of any agreement) was attempted extortion; and (iii) Sunset and its employees are therefore criminal racketeers. But if Relevant's

- 1 -

DOCUMENT PREPARED
ON RECYCLED PAPER

effort to punish and profit from the civic engagement that gave rise to this case were viable, the nine-figure freebie Relevant seeks would not be the most concerning result. Instead, to hold that this case can proceed would be to endorse the ideas that the First Amendment does not protect a neighborhood's opposition to its own redevelopment and that the citizens who participate in such opposition can be convicted as federal criminals and locked up for 20-year terms. Fortunately, in this Country, the law is clearly to the contrary. The Court was correct to vacate the trial date and consider summary judgment anew, and it should now enter judgment in Defendants' favor.

## FACTUAL BACKGROUND

Sunset's Motion for Summary Judgment recounts the detailed background of this case. *See* ECF No. 124-1 at 2-10. Set forth here is a brief summary of undisputed facts material to the issues on which the Court requested supplemental briefing.

*CEQA*. CEQA "generally requires state and local government agencies to inform decision makers and the public about the potential environmental impacts of proposed projects, and to reduce those environmental impacts to the extent feasible." *See* Cal. Governor's Off. of Plan. & Rsrch., *Getting Started with CEQA* (https://opr.ca.gov/ceqa/getting-started/). The environmental impacts with which CEQA is concerned include matters such as traffic, noise, light, aesthetic character, and air quality, Cal. Code Regs. tit. 14, § 15382, and anyone with "a geographical nexus with the site of the challenged project" may file a CEQA challenge. *Citizens Ass'n for Sensible Dev. of Bishop Area v. County of Inyo*, 172 Cal. App. 3d 151, 159 (Cal. Ct. App. 1985). Before doing so, however, a challenger is required to exhaust its objection through an administrative appeal of the permitting body's decision. Cal. Pub. Res. Code § 21177(a).

*Thompson* and *Tommie*. Sunset was one of at least 17 community members to voice opposition to the Thompson development, five of whom filed formal appeals. At least six community members (including Sunset) voiced opposition to the Tommie

- 2 -

development, with three of them filing CEQA lawsuits, one of which ultimately led to an injunction. In both instances, every challenge brought by someone other than Sunset rested on at least one ground that Sunset also raised. *See* Supplemental Statement of Undisputed Facts ("SSUF") 7-13, 32-41; *see also infra* at 4-5 n.1.

When Sunset joined the community's challenges to Thompson and Tommie, it did so without initiating contact with Relevant. Instead, for more than two years from March 2015 on, *Relevant* made repeated, often unsolicited, and often unsuccessful efforts to contact *Sunset* regarding the two projects. SSUF 57-79. Finally, in August 2017—eighteen months into Sunset's Thompson lawsuit and the day before the trial—the CEQA court determined that the City could not simply supplement the record *post hoc* to correct its failure in impermissibly analyzing and disclosing an out-of-date version of the project that omitted two rooftop bars and depicted the building facing the wrong direction. SSUF 18-19. Three hours later, Relevant and Sunset reached an agreement-in-principle under which Relevant would pay Sunset to end its two lawsuits and provide certain other consideration. SSUF 20.

The next day, which was to be the first day of trial, Relevant's counsel from Sheppard Mullin stood up in Los Angeles County Superior Court and reported to the Judge, Richard L. Fruin, Jr., that he was "pleased" to announce the parties' agreement, which he made clear included a "financial component" and "some modification of the design of the building." SSUF 21. The trial was stayed at Relevant's request, and four months later, after exchanging roughly eight drafts, Relevant and Sunset finalized the agreement. SSUF 22, 24-25. One provision of the agreement—included by Relevant's lawyers from the first draft onwards—stated that Relevant was executing the agreement "without duress or undue influence on the part of or on behalf of the other Party or any other person or entity." SSUF 23, 28. The agreement also contained broad mutual releases, waivers of all known and unknown

claims, warranties that the agreement was binding, and boldface representations that both parties had a chance to consult with counsel. SSUF 28-29.

Although Sunset's lawsuits thus ended, another objector, Lauren "Elle" Farmer, went on to win an injunction against the Tommie project in a lawsuit virtually identical to Sunset's. SSUF 36, 39, 41-42. Thereafter, Relevant settled with Farmer and another challenger, Mama Wilcox LLC, and was thus able to proceed with construction. SSUF 40, 43. Relevant contends (on a record that is disputed, but immaterially so) that during a negotiation, Relevant's counsel described any possible settlement as "blood money," as distinct from attorneys' fees, and Sunset's counsel did not stop the negotiation to dispute that term. *See, e.g.*, ECF No. 137 at 1.

*Selma*. Sunset was one of six community members who objected to the Selma development, and one of two to file a CEQA lawsuit. SSUF 44-47. On January 8, 2021, the CEQA court remanded the Selma project to the City to correct errors in the City's environmental analysis. SSUF 48. Sunset's suit never resulted in any settlement or transfer of property from Relevant to Sunset, and to this day, the City has been unable to correct its errors and the Selma project has not been approved. SSUF 49. Relevant also avers—in testimony that is uncorroborated, self-interested, and vigorously disputed, but in all events immaterial—that during a lunch meeting proposed by Relevant to "thank" Sunset for dropping its challenge to Thompson and Tommie, Sunset's principal told Relevant "You know the drill. It's going to take a check to make [Sunset's challenge to Selma] go away."[1]

---

[1]     In all, 17 objectors challenged Thompson, with six either supporting or filing formal appeals on grounds similar to those Sunset raised. SSUF 8, 10-11. Six objectors challenged Tommie, with two others (Elle Farmer and Mama Wilcox, LLC) filing petitions and lawsuits that overlapped with Sunset's objections and quoted those objections extensively. SSUF 32-39. Relevant settled with Mama Wilcox; Farmer went to trial and obtained an injunction before agreeing to a settlement. SSUF 40-43. Six objectors challenged Selma, all on the same grounds as Sunset, with two filing eventual lawsuits. SSUF 44-47. To the extent the Court has opined that Sunset previously failed to demonstrate a sufficiently close

- 4 -

*Schrader*. The Schrader Hotel was not a Relevant project. ECF No. 89 ¶ 16. Relevant contends that Sunset "initially objected to the Schrader project, believing it was owned by [Relevant]," but "withdrew their appeal, asking nothing in return, once [Sunset] learned Relevant was not involved[.]" ECF No. 137 at 15. Assuming the truth of that narrative, it remains undisputed that Sunset never filed a CEQA suit regarding Schrader or engaged in a single discussion with Relevant regarding that project. In addition, Relevant has unambiguously waived reliance on Schrader as part of its alleged RICO pattern, conceding that "the Schrader episode, by itself, *was not an independent predicate act*." ECF No. 137 at 25 (emphasis added).

## ARGUMENT

Relevant's case fails on every issue the Court ordered re-briefed. Applying established law, the Court can and should grant summary judgment on each of the following grounds:

- o As a threshold matter, this action fails under *Noerr-Pennington*. Sunset did not forfeit First Amendment protection by threatening, filing, and/or settling non-frivolous lawsuits. The *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60 (1993) ("*PRE*") test applies, and in any event, there are no triable issues of fact under *any* test;

- o Because the lawsuits are not sham litigation, they are protected by *Noerr-Pennington* and the First Amendment, cannot be predicate acts, and cannot give rise to a RICO claim;

- o Even setting aside *Noerr-Pennington*, the Ninth Circuit's decision in *United States v. Koziol*, 993 F.3d 1160 (2021), forecloses Relevant's

---

relationship between other objectors' grounds and Sunset's own, *see* ECF No. 246 at 17, the materials cited in this footnote demonstrate that relationship beyond genuine dispute.

- 5 -

claims by making clear that a civil RICO claim cannot be based on litigation activity;

o Under clear Ninth Circuit precedent, Relevant cannot establish a "pattern" of racketeering activity by alleging three predicate acts aimed at a single victim;

o Settling non-frivolous litigation (as in Thompson/Tommie) is not criminally indictable as Hobbs Act extortion;

o Seeking to settle non-frivolous litigation (as in Selma) is not criminally indictable as *attempted* Hobbs Act extortion; and

o Relevant has conceded that "the Schrader episode . . . was not an independent predicate act," and that anyone who thinks otherwise is "confuse[d]," ECF No. 137 at 25.

Relevant's effort to enlist this Court in punishing constitutionally protected opposition to its developments has gone on long enough. Summary judgment should be granted.

## I.   THE *PRE* TEST GOVERNS, RELEVANT CANNOT ESTABLISH "SHAM" UNDER *ANY* STANDARD, AND THE FIRST AMENDMENT AND *NOERR-PENNINGTON* THEREFORE BAR RELEVANT'S CLAIMS.

Under *PRE.*, there can be no liability for Sunset's lawsuits unless Relevant demonstrates that it was *both* objectively baseless *and* brought in subjective bad faith. Relevant's showing on those issues is so paltry that the prior order deemed the issues conceded. ECF No. 167 at 23.

Unable to satisfy either of *PRE*'s mandatory elements, Relevant instead focuses on the *USS-POSCO* test. *See USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council*, 31 F.3d 800 (9th Cir. 1994) ("*POSCO*"). But Relevant cannot show baselessness under *any* standard. Even if *POSCO* applied—which it does not, *see infra* at 10-12—that standard "does not deviate from the requirement that the pattern of claims must be baseless as a whole." *Gen-Probe, Inc. v. Amoco*

- 6 -

*Corp.*, 926 F. Supp. 948, 959 (S.D. Cal. 1996). Put simply, neither the Ninth Circuit nor any other federal court has ever endorsed any conception of the First Amendment that would strip protection from Sunset's non-frivolous lawsuits, and allow Sunset's principals *to be imprisoned* for filing them, merely because Sunset brought suit three times.

### A. Relevant Fails Both Prongs Of *PRE*.

#### 1. Relevant Cannot Demonstrate Objective Baselessness.

The record contains *no* evidence of objective baselessness. Instead, in the less-than-a-page their original opposition devoted to *PRE*, Relevant argued only that Sunset's Thompson, Tommie, and Selma CEQA actions were not *outright wins*. ECF No. 137 at 19:15-20:10; *see also id.* at 17:7-18:24. That is not the standard. To prove objective baselessness, Relevant would need to delve into the law of CEQA, delve into the specifics of each case, and demonstrate that, *from the outset*, *no reasonable person* would have viewed Sunset's CEQA lawsuits as winnable. *PRE*, 508 U.S. at 60. Relevant has never even attempted to make that required showing.

Successful litigation cannot be baseless. *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1062 (9th Cir. 1998). And to the extent Relevant seeks to belittle the success Sunset, Mama Wilcox, and Elle Farmer achieved as mere "remand[s]" for "clarification," ECF No. 137 at 17-18, it is criticizing CEQA, not the lawsuits themselves. Much of CEQA's purpose is to require agencies "to 'look before they leap,' and consider the environmental consequences of their discretionary actions." Cal. Governor's Off. of Plan. & Rsrch., *CEQA: The California Environmental Quality Act* (https://opr.ca.gov/ceqa/). Relevant may think CEQA's purpose is trivial. But it cannot demonstrate baselessness when its opponents obtained the very relief CEQA was designed to provide.

To state the obvious, Relevant also cannot leverage the fact that "[t]he Thompson court never granted any relief," the Tommie "court never reached the merits," and Relevant ultimately "proceeded with construction" of the Tommie Hotel

- 7 -

despite Elle Farmer's injunction. *Cf.* ECF No. 137 at 17. *Those are artifacts of Relevant's settlement of each lawsuit.* And settlement is confirmation of each lawsuit's *merits*, not evidence of baselessness. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) (fact that "litigation settled suggest[ed] that" it "was not objectively baseless"); *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, 2015 WL 4545187, at *3 (C.D. Cal. July 8, 2015) (similar). Moreover, even if Sunset and the other challengers had lost their cases outright, that would still be insufficient to create a jury issue on lack of probable cause to bring them. *See, e.g.*, *Kaiser Found. Health Plan, Inc. v. Abbott Lab'ys, Inc.*, 552 F.3d 1033, 1046 (9th Cir. 2009) (*POSCO* inapplicable where party brought 17 suits, "won seven," and made "a plausible argument" in the remaining ten).

Relevant's attempts to pluck out *its own* nuggets of success in each case are also irrelevant. *Cf.* ECF No. 137 at 17:16-18:6. As to each CEQA suit, Relevant would need to show that *the entire suit* was objectively baseless. *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 156 (3d Cir. 2017); *Limon v. Carpenters Loc. Union 721*, 2021 WL 4925444, at *5 (C.D. Cal. Jan. 11, 2021); *Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1221-22 (E.D. Cal. 2005). Yet it is undisputed that Relevant never moved for summary judgment, never filed for sanctions, and never won anything at trial. By contrast, Sunset obtained a key ruling in *Thompson* that had "significance on the parties' arguments on the merits," SSUF 16, pressed arguments in *Tommie* that Elle Farmer won on at trial, *see supra* at 4 n.1, and won an interlocutory remand in *Selma* on the ground that the City failed to analyze an entire portion of the project, SSUF 45. The City has *still* failed to remedy its defective analysis regarding Selma, with the result that the Selma Hotel remains a vacant lot to this day. SSUF 46. That degree of success is far from necessary to foreclose a showing of baselessness, but it is sufficient to preclude one as a matter of law. *Kottle,* 146 F.3d at 1063.

- 8 -

2.      Relevant's Concessions Foreclose Any Finding Of Bad Faith.

The record also contains no evidence that could satisfy Relevant's burden to demonstrate subjective bad faith. Indeed, the cursory discussion in Relevant's summary judgment opposition does not include a single word on the issue. ECF No. 137 at 19:15-20:10. That should be the end of the matter. *E.g.*, *Hurd v. Terhune*, 8 F. App'x 676, 677 (9th Cir. 2001) (plaintiff waives claim "by failing to delineate it specifically and explicitly in his opposition to defendant's motion for summary judgment").

In any event, Relevant's own concessions warrant judgment in Sunset's favor. The operative complaint alleges that Sunset challenged Thompson for the specific purpose of "invalidat[ing]" it, ECF No. 89 ¶ 73, *i.e.*, *winning its CEQA case*. Relevant also maintains that Sunset invoked CEQA because Sunset wanted to block competition from "bars and nightclubs on hotel rooftops," with which it supposedly "competes." ECF No. 137 at 12:5-7. Blocking new construction is a quintessentially *appropriate* reason to pursue a CEQA case. Indeed, "[i]f *Noerr* teaches anything," it is that a petitioner's genuine desire to obtain "the government action sought" forecloses a finding of sham. *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 381 (1991) (citation omitted); *id.* at 382 (First Amendment protects "genuine attempt[s] to influence governmental action," regardless of their underlying purpose); *see infra* at 14-15.

**B.      *POSCO* Does Not Apply, But Relevant Cannot Satisfy It Anyway.**

Under *POSCO*, a lawsuit lacks First Amendment protection only if each of three elements is met. Specifically, the plaintiff must have (1) filed a "huge volume[]" of lawsuits; (2) pursuant to *a policy of filing them without regard to their merits*, and (3) with a *legally impermissible purpose*. *POSCO*, 31 F.3d at 811; *Wonderful Real Est. Dev. LLC v. Laborers Int'l Union of N. Am.*, 2020 WL 91998, at \*10 (E.D. Cal. Jan. 8, 2020). Relevant cannot establish a single one of those three required elements.

1.     Relevant Cannot Establish The Requisite Numerosity.

Sunset's three non-frivolous lawsuits do not qualify as the "huge volume" of lawsuits required to invoke *POSCO. See POSCO*, 31 F.3d at 811; *Wonderful Real Est.*, 2020 WL 91998, at *10. To begin, the Ninth Circuit has squarely held that merely filing more than one lawsuit does not automatically render *PRE* inapplicable. *Amarel v. Connell*, 102 F.3d 1494, 1519 (9th Cir. 1996); *see also Kottle,* 146 F.3d at 1060 (case involving "a small number of . . . suits" falls under *PRE*). In the wake of that holding, courts have overwhelmingly—and unanimously—held that a case involving three actions falls under *PRE*, not under *POSCO. See, e.g., ERBE Elektromedizin GmbH v. Canady Tech., LLC*, 629 F.3d 1278, 1291-92 (Fed. Cir. 2010); *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 2017 WL 1180426, at *5-7 (D. Minn. Mar. 29, 2017); *Toyo Tire*, 2015 WL 4545187, at *3.[2]

Relevant does not identify a single source of law to the contrary. Thus far, the only authority it has cited is *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162 (3d Cir. 2015), a single case decided at the motion-to-dismiss stage in a different circuit. But *Hanover* involved *four* petitions, not three, and—most glaringly—two of them were frivolous under *PRE*, making anything said about *POSCO* irrelevant. *Id.* at 181-82.[3] Indeed, in explaining *Hanover*'s result, the First Circuit has observed that neither *Hanover* nor any other circuit-court case "ha[s] *ever*

_____

[2] *See also, e.g., Rosen v. Duel*, 2022 WL 18231777, at *9 (C.D. Cal. Nov. 23, 2022) (five petitions not "series"); *In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 309 n.10 (E.D. Pa. 2011) (five); *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 192 F. Supp. 2d 519, 538-39 (M.D. La. 2001) (nine); *Coca-Cola Co. v. Omni Pac. Co.*, 1998 U.S. Dist. LEXIS 23277, at *24 (N.D. Cal. Dec. 9, 1998) (four).

[3] Relevant will likely claim that the events surrounding the Schrader Hotel, which was not a Relevant project, count as a fourth action. But even the court that decided *Hanover* would disagree. *Wellbutrin*, 868 F.3d at 157 (proceeding brought against "independent defendant[]" did not count, particularly where, as here, petitioner "withdrew from" it).

- 10 -

sustained a finding of liability while simultaneously determining that no frivolous petitions were filed." *Puerto Rico Tel. Co. v. San Juan Cable LLC*, 874 F.3d 767, 772 (2017) (emphasis added). Accordingly, for this case to proceed, this Court would need to go where no court has gone before, breaking new ground *both* by recognizing three lawsuits as a "series" *and* by doing so despite Relevant's failure to demonstrate baselessness. No case would support that result. *See id.*; *see also, e.g.*, *Gen-Probe, Inc.*, 926 F. Supp. at 958-59.

Relevant also attempts to pump the numbers by counting challenges to *non-Relevant* developments, objections before the permitting board, city council appeals that were necessary to exhaust the three CEQA challenges, and even a challenge that *someone other than Sunset* supposedly "*wanted* to" file, but never did. ECF No. 137 at 13, 16-17; Thakor Decl., Ex. YY, Jan. 20 Tr. 26:7-27:22. But the "sham exception" is to "be applied with caution," not stretched beyond recognition. *Cf. Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc*., 944 F.2d 1525, 1531 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993). Moreover, *there is no such thing* as a "sham" request for official action by a non-judicial body, such as a permitting board or city council, that can grant or deny approval based on non-objective factors. *See, e.g.*, *Kottle*, 146 F.3d at 1062; *Franchise Realty Interstate Corp. v. S.F. Loc. Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1079 (9th Cir. 1976); *Marina Point Dev. Assocs. v. United States*, 364 F. Supp. 2d 1144, 1147 (CD. Cal. 2005). Until it becomes a lawsuit, the permitting process is quintessentially non-judicial. *Boone v. Redev. Agency of San Jose*, 841 F.2d 886, 896 (9th Cir. 1988) (city council is "distinctly legislative body").

Relevant's effort to double- or triple-count each CEQA action is also directly contrary to precedent. *See Wonderful Real Est.,* 2020 WL 91998, at *10 (each CEQA action is one); *see also, e.g.*, *In re Terazosin Hydrochloride Antitrust Litig*., 335 F. Supp. 2d 1336, 1360 (S.D. Fla. 2004) (one "action" for *POSCO* purposes where six lawsuits involved "the same patent and the same underlying legal issue"). And that

- 11 -

precedent is well-reasoned. If Sunset was *required by law* to file a given challenge in order to exhaust its CEQA claim, Relevant cannot show that the challenge was filed for an impermissible purpose. And it would be "unreasonable" (and unconstitutional) to force Sunset to choose between its First Amendment rights and exhausting its CEQA claims. *Twin City Bakery Workers & Welfare Fund. v. Astra Aktiebolag*, 207 F. Supp. 2d 221, 224 n.2 (S.D.N.Y. 2002).

Nor is there any basis for counting petitions *by* other parties or *against* other parties, to say nothing of petitions that were never threatened or filed at all. Courts reject such efforts, *e.g.*, *Wellbutrin*, 868 F.3d 157; *Evans Hotels, LLC v. Unite Here Loc. 30*, 433 F. Supp. 3d 1130, 1149 (S.D. Cal. 2020) (similar), and Relevant has offered no reason why this Court should do otherwise.

> 2.  Relevant Cannot Establish That Sunset Maintained A Policy Of Starting Legal Proceedings Without Regard To Their Merits.

The record also contains no evidence that Sunset's lawsuits, whether three or 300, were brought pursuant to a policy of filing CEQA actions without regard to their merits. As with all elements of the "sham" exception, the burden rests squarely on Relevant, *e.g.*, *POSCO*, 31 F.3d at 811, which has abjectly failed to meet it. There is no evidence Sunset maintained *any* policy in this area. And Relevant's effort to blame that lack of evidence on Sunset's attorney-client privilege, ECF No. 137 at 16, is simply an admission of failure. *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 353-54 (9th Cir. 2014) ("We cannot accept the proposition that a defendant who relies on the protection afforded by *Noerr-Pennington* necessarily gives up the right to keep his communications with his attorney confidential.") (*quoting In re Burlington N., Inc.*, 822 F.2d 518, 533 (5th Cir. 1987) (alteration omitted)).

In fact, to the extent there is evidence at all, it demonstrates the *lack* of a policy. Sunset had CEQA standing to challenge each of Relevant's *nine* developments in Hollywood. *Citizens Ass'n*, 172 Cal. App. 3d at 159. Eight of Relevant's

- 12 -

developments are *within one block* of Sunset's business. SSUF 4-5. Yet it is undisputed that, in its 30-year existence, Sunset has filed only three CEQA actions (Thompson, Tommie, and Selma) pertaining to those developments. Relevant attempts to distinguish some of the projects as involving liquor licenses rather than buildings, ECF No. 137 at 13, but it leaves others unrebutted, and it never explains why Sunset's supposedly reflexive policy would have depended on that nuance anyway.

The merits of Sunset's CEQA actions also refute any notion of reflexiveness. *See, e.g.*, *Catch Curve, Inc. v. Venali, Inc.*, 2008 WL 11334024, at *6 (C.D. Cal. Nov. 3, 2008) (Pregerson, J.) ("Whether the lawsuits at issue are baseless is a component of the *USS-POSCO* approach."); *Gen-Probe*, 926 F. Supp. at 959 (noting that in *POSCO* itself, the Ninth Circuit "held that *Noerr* immunity barred an antitrust claim where the defendants had won fifteen of their twenty-nine lawsuits"). Indeed, while Relevant has tried to diminish Sunset's victories, Relevant has never argued that *it* won a single one of the cases. *See Gen-Probe*, 926 F. Supp. at 959 (no *POSCO* pattern where suits made it past summary judgment); *Twin City*, 207 F. Supp. 2d at 224 (same). As noted, *Selma* resulted in a remand to the city, and that project remains undeveloped. *See supra* at 4. *Thompson* and *Tommie* both involved interim victories that led Relevant to settle not only with Sunset, but also with *other community members* who have no relation to Sunset, one of whom obtained an injunction. *See supra* at 2-4 & n.1. If Sunset were a criminal extortioner, then so must be Elle Farmer and Mama Wilcox. Yet Relevant has made no showing that either of them had a *POSCO*-violative "policy" either.

With nothing else to rely on, Relevant attempts to shift the focus away from Sunset's CEQA actions and onto the supposed failure of Sunset's *political* efforts to "sway[] . . . City officials" *during the initial approval process*. ECF 137 at 16:27-28 (emphasis added). But attempting to influence discretionary political and

- 13 -

administrative outcomes is an *exercise* of First Amendment rights, not a waiver of them, which is why the Ninth Circuit has held that such efforts by definition cannot be a "sham litigation." *See supra* at 11. And to the extent Relevant points out that Sunset challenged only projects that were approved at the City level, ECF No. 137 at 16:27-28, that argument borders on the absurd: *there is no such thing* as a CEQA challenge to a project the City rejected. Thus, if Relevant were right, *every* CEQA action would be constitutionally suspect—which may be exactly what Relevant wants.

> 3.    Relevant Cannot Establish That Sunset Filed Lawsuits With An Impermissible Purpose.

As also explained above, the record contains no evidence from which a jury could conclude that the CEQA suits were initiated for an impermissible purpose. *See supra* at 9. To the contrary, Relevant has effectively conceded the sole material fact: Sunset desired to block and/or delay the developments by obtaining additional, more scrupulous environmental review. *Id.* Relevant may disdain those objectives. But they are quintessentially *permissible* purposes, because they are exactly what CEQA provides for. *Id.*

Relevant assaults Sunset's motives on numerous irrelevant grounds. It slanders Sunset's "'environmental' concerns" as "pretextual," ECF No. 137 at 14, but one need not be John Muir to object to projects that will affect traffic, noise, light, aesthetic character, and air quality next door. *See supra* at 2 (noting CEQA's broad coverage). Nor is it surprising that Sunset—a company operating a business in a historic building in a historic district—viewed such matters as pertaining to *both* its CEQA rights *and* its economic self-interest. *Cf.* ECF No. 137 at 14. And Sunset's willingness to obtain in a settlement consideration it might have been unable to obtain in litigation, *see* ECF No. 137 at 14-15, does not come close to stripping its lawsuits of First Amendment protection. *See, e.g.*, *Nader v. Dem. Nat'l Comm.*, 555 F. Supp. 2d 137, 160 (D.D.C. 2008); *Camm v. Kennickell*, 1990 WL 198621, at *3 (D.D.C.

- 14 -

Nov. 20, 1990) ("It is intended and expected that lawyers in our adversary system will in some cases . . . explore unconventional settlement proposals."). Relevant's claims fail for that reason also.[4]

## II. IN ALL EVENTS, RELEVANT'S CLAIMS FAIL UNDER *KOZIOL* AND OTHER ESTABLISHED RICO PRECEDENT.

### A. Under *Koziol*, Relevant Cannot Base A RICO Claim On Litigation Activity.

Relevant's RICO claims also fail for the independent reason that every one of the supposed predicate acts occurred in litigation. In *Koziol*, 993 F.3d at 1173-74, the Ninth Circuit unambiguously endorsed the extensive authority confirming that a defendant's conduct in threatening, filing, or maintaining a lawsuit cannot form the basis of a RICO claim.[5] In the course of confirming that fraudulent litigation is not immune from *criminal* liability where the Hobbs Act's elements are otherwise satisfied, the Ninth Circuit expressed its agreement with the many cases "conclud[ing] that *RICO* does not authorize suits by private parties . . . based on litigation activities." *Id.* at 1174 (emphasis added). The court further acknowledged

---

[4] To the extent the Court concludes *POSCO* applies, Sunset preserves for appellate and Supreme Court review the arguments that *POSCO* was wrongly decided, *see, e.g.*, *Puerto Rico Tel. Co.*, 874 F.3d at 771-72 ("We find ourselves quite skeptical of the notion that . . . *PRE[]*'s protections for nonfrivolous petitioning activity disappear merely because the defendant exercises its right to engage in such activity on multiple occasions."), and does not apply to RICO claims.

[5] *See, e.g.*, *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004) (per curaim); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) ("A threat of litigation if a party fails to fulfill even a fraudulent contract . . . does not constitute extortion."); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984); *Dias v. Bogins*, 134 F.3d 361 (1st Cir. 1998) (unpublished per curiam) (similar); *Edelson PC v. Bandas L. Firm PC*, 2018 WL 723287, at *5 (N.D. Ill. Feb. 6, 2018); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014).

that "[t]here are significant differences between" criminal Hobbs Act claims and "civil RICO claims," and, based on those "significant differences," observed that civil RICO cases "are distinguishable" from the criminal Hobbs Act claims in which litigation conduct can sometimes be actionable. *Id.* at 1173-74; *see, e.g.*, *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 346 (2016) (noting that RICO's "private right of action raises issues beyond the mere consideration whether underlying primary conduct should be allowed or not, entailing, for example, a decision to permit enforcement without the check imposed by prosecutorial discretion").

That analysis is binding on this Court. *See, e.g.*, *Barapind v. Enomoto*, 400 F.3d 744, 751 (9th Cir. 2005) (en banc) (per curiam). Moreover, it is exceedingly well-reasoned. As many courts have acknowledged, the appropriate civil remedy for alleged misconduct in litigation is traditional state tort law, not a treble-damages RICO suit. *See, e.g.*, *Grauberger v. St. Francis Hosp.*, 169 F. Supp. 2d 1172, 1178 (N.D. Cal. 2001) ("[A]llegations of improper legal filings, which are inevitably ubiquitous in a litigious society, are best addressed through state law tort remedies rather than resort to criminal statutes and RICO claims[.]"). Indeed, as the Second Circuit has explained, "[i]f litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action, which would inundate the federal courts with procedurally complex RICO pleadings." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (quoted in *Koziol*, 993 F.3d at 1174). The Tenth Circuit has elaborated on the point, recognizing that permitting civil RICO claims based on "abusive litigation . . . would subject almost any unsuccessful lawsuit to a colorable extortion (and often a RICO) claim." *Deck*, 349 F.3d at 1258. And the Ninth Circuit reiterated the point in *Koziol*, quoting *Kim* (and approvingly citing *Deck*, along with Fifth and Eighth Circuit precedents) to explain that "permitting [civil] RICO suits based on prior litigation activities would 'engender wasteful satellite litigation,' 'erode the principles undergirding the doctrines of res judicata

- 16 -

and collateral estoppel,' and 'chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts' because 'pleading[s] and correspondence in an unsuccessful lawsuit could lead to drastic RICO liability.'" *Koziol*, 993 F.3d at 1174 (quoting *Kim*, 884 F.3d at 104). Although *Koziol*'s analysis applies regardless of the outcome of any *Noerr-Pennington* inquiry, the Ninth Circuit's policy concerns are at their zenith in a case such as this one, where Relevant cannot come close to demonstrating that the litigation activities in question lacked merit.

The prior summary judgment order disagreed with the above analysis solely because in *Koziol*, the Ninth Circuit concluded that sham litigation can constitute "*extortion* under *the Hobbs Act*." SJ Order 20-21 & n.8 (emphasis added). That misses *Koziol*'s point. Indeed, the distinction between *criminal Hobbs Act* liability and *civil RICO* liability is the precise distinction on which *Koziol* principally rests. *See Koziol*, 993 F.3d at 1173-74 (criminal Hobbs Act and civil RICO "are distinguishable"); *Acres Bonusing, Inc. v. Ramsey*, 2022 WL 17170856, at *12 (N.D. Cal. Nov. 22, 2022) (concluding that, under *Koziol*, "litigation activity alone cannot serve as a predicate act for a civil RICO claim"), *appeal filed*, No. 22-16994 (9th Cir. Dec. 27, 2022); *supra* at 15-16. Defendants' contentions to the contrary, *see, e.g.*, ECF No. 137 at 9, are nothing short of misleading. And the question in this case, unlike in *Koziol*, is whether litigation activities are actionable under *civil RICO*. What *Koziol* says about *the Hobbs Act* is irrelevant.

Application of *Koziol* here is thus straightforward. The only supposed predicate acts Relevant asserts are Sunset's acts in threatening, instituting, and maintaining litigation. Even assuming *arguendo* the litigation at issue was "sham"—which it was not (*see supra* at 6-15)—the conduct at issue cannot give rise to RICO liability. Relevant's claims therefore fail as a matter of law.

- 17 -

### B. The Predicate Acts Relevant Seeks To Establish—All Of Which Allegedly Targeted Relevant Alone—Do Not Amount To A RICO "Pattern."

In the Complaint, Relevant claimed it would demonstrate that Sunset "has decided that *any developer wishing to do business in Hollywood* must first seek its permission before it can go forward (referred to as 'kissing the ring')." ECF No. 89 ¶ 3 (emphasis added). "When developers stand up to [Sunset] and refuse to comply with its demands," Relevant alleged, "[Sunset] switches tactics from pressure to outright extortion." *Id.*

Relevant has abandoned that theory completely. Now, it paints Sunset as a schoolyard bully and itself as the weakest kid on the playground. Specifically, in Relevant's telling, Sunset "ignored other projects," targeting Relevant and Relevant alone, and doing so only because Relevant's funding model imposed "unique" timing "pressure" that made it particularly "vulnerable." ECF No. 137 at 4, 15 (emphasis omitted). Indeed, Relevant expressly admits that Sunset will not extort other developers: Sunset "initially objected to the Schrader project, believing it was owned by [Relevant]," but "withdrew [its] appeal, asking nothing in return, once [it] learned Relevant was not involved and the project was not vulnerable to delay." *Id.* at 15.

Relevant's theory fails as a matter of law. Even assuming Relevant could prove the predicate acts it desires to, the Ninth Circuit has repeatedly rejected the notion that a RICO "pattern" can exist based on a small number of predicate acts targeting a single victim. *Obeng-Amponsah v. Chase Home Fin., LLC*, 624 F. App'x 459, 462 (9th Cir. 2015) (affirming dismissal because plaintiff "alleged underlying fraud and forgery as to a single victim (himself), which is insufficient for RICO"); *see, e.g.*, *Nugent v. St. Agnes Med. Ctr.*, 53 F. App'x 828, 829 (9th Cir. 2002) (dismissing where "[t]he predicate acts all were allegedly committed with the singular purpose of harming Dr. Nugent's practice," and Dr. Nugent pled no facts indicating that Defendants aimed to harm any other physician through the same or a similar

- 18 -

scheme"); *Swayne v. Salinas*, 996 F.2d 1227 (9th Cir. 1993) (unpublished) (dismissing where "[t]here [was] no evidence that defendants engaged in such conduct as a regular way of business, or that defendants intended to harm anyone other than [plaintiff]"); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (similar). That simple principle should be the end of this case.

## III. RELEVANT CANNOT ESTABLISH TRIABLE ISSUES ON ANY ALLEGED PREDICATE ACT.

Even setting aside the First Amendment and RICO principles discussed above, Relevant cannot prove two, three, or even one predicate act of extortion under the Hobbs Act or California law. Its claims fail for that reason also.

### A. As A Matter Of Law, Relevant Cannot Establish Any "Wrongful" Threat, As The Hobbs Act Requires, For Any of Its Alleged Predicate Acts.

To establish a Hobbs Act violation, it is not enough for Relevant to show that Sunset filed lawsuits that caused Relevant to fear losing money or with the hope of obtaining a settlement. Indeed, if that were the case, virtually every lawsuit would be a federal crime. Instead, Relevant must establish that the lawsuits were "wrongful." *United States v. Villalobos*, 748 F.3d 953, 956-57 (9th Cir. 2014) (mere "intent to induce or take advantage of fear" does not render a threat extortionate); *Koziol*, 993 F.3d at 1170 ("[T]hreats of sham litigation, *which are made to obtain property to which the defendant knows he has no lawful claim*, are 'wrongful' under the Hobbs Act.") (emphasis added); Ninth Cir. Model Crim. Jury Inst. No. 9.6 (2022 ed.).

The prior summary judgment order erroneously concluded that, under *Koziol*, Relevant can demonstrate wrongfulness merely by invoking the *POSCO* exception to *Noerr-Pennington*. But *Koziol*, which does not cite *POSCO* (or any case that applied it) a single time, holds only that *objectively meritless*, *subjectively ill-motivated* litigation is wrongful. 993 F.3d at 1170. That is because *objectively meritless* litigation involves pursuit of property as to which the litigant has "no lawful claim." *Id.* But to the extent *POSCO* would enable a "sham" finding based on

- 19 -

*potentially meritorious* litigation, Relevant needs to show wrongfulness based on something more than the "sham" exception.

Relevant cannot make that showing. Absent objective baselessness—which, Relevant cannot establish, *see supra* at 7-8—no jury could find that Sunset committed federal crimes by suing under CEQA or by requesting money or other lawful consideration as part of settlement negotiations. *See, e.g.*, *United States v. Albertson*, 971 F. Supp. 837, 846, 850 (D. Del. 1997) (developer possessed no legal entitlement to be free of opposition to development, and defendant did not commit extortion by accepting payment to drop opposition). Nor, contrary to the prior order's analysis, was there anything else about "the course of the parties' settlement discussions," ECF No. 167 at 32, that would warrant criminal liability. Indeed, it is undisputed that it was *Relevant*, not Sunset, who initiated discussions, *see* Thakor Decl. Ex. Z (settlement-negotiation timeline), and that both sides received concessions—such as the dismissal of the CEQA lawsuit and Sunset's agreement to provide Relevant access to its property for construction purposes—broader than anything set forth in the CEQA statute. That is the very nature of contractual negotiations, including settlements, and obviously cannot by itself be a reason to impose criminal liability on otherwise-protected litigation activity. *See, e.g.*, *Viacom Int'l Inc. v. Icahn*, 747 F. Supp. 205, 213-14 (S.D.N.Y. 1990) ("[A]ny intentional exploitation of fear by defendants was only part of 'hard-bargaining' in a deal which resulted in plaintiff receiving a benefit to which it was not otherwise entitled by law. Accordingly, defendants did not obtain property from plaintiff to which they had no lawful claim and therefore did not commit extortion."), *aff'd*, 946 F.2d 998 (2d Cir. 1991).

## B.   As A Matter Of Law, Relevant Cannot Count *One* Transaction (Thompson/Tommie) As *Two* Predicate Acts.

The *actus reus* for a Hobbs Act violation is "*the obtaining of property* from another" when other elements (including wrongfulness) are present. 18 U.S.C.

- 20 -

§ 1951(b)(2) (emphasis added). With respect to Thompson and Tommie, it is undisputed that Sunset "obtain[ed] . . . property" only *once*. Specifically, the Tommie and Thompson agreement documents were executed simultaneously, cross-referenced one another, and depended on the transfer of the same consideration from Relevant to Sunset, with each containing a provision that the agreement would "not be complete until and unless" the obligations set forth in the other were satisfied. SSUF 27-28. Accordingly, if it were extortion at all, the conduct surrounding Tommie and Thompson would constitute at most *one* predicate act thereof. *See Aviva USA Corp. v. Vazirani*, 632 F. App'x 885, 888-89 (9th Cir. 2015) (one predicate act—and thus no viable RICO claim—where plaintiff alleged only "[a] series of steps that were part of a single plan" to extort plaintiff); *see also Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293, 303-04 (S.D.N.Y. 2004) (holding that multiple attempts at extortion that "culminated in [one] payment" constituted "a single criminal act," and further noting that "courts should guard against the meritless fragmentation of a single predicate act into multiple acts for the mere purpose of pursuing a RICO claim").

### C. As A Matter Of Law, Relevant Cannot Establish Attempted Extortion As To Selma.

With respect to Selma, Relevant cannot establish a criminal *actus reus*. It is undisputed that Selma (like Schrader) was not the subject of any settlement or other payment of any kind, as would be necessary to establish the completed crime of extortion. *See supra* at 4; 18 U.S.C. § 1951(b)(2). Nor did Sunset take a "substantial step" toward extortion on Selma, as would be necessary to prove attempt. *See, e.g.*, *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1102-03 (9th Cir. 2011) (setting forth requirements for "substantial step"). In Selma, the CEQA court determined that at least some of Sunset's arguments had merit, found that Sunset's citation to expert testimony on air quality was persuasive, and ruled in Sunset's favor; even today, the Selma project has not been reapproved. SSUF 49. And even setting aside the lack of

- 21 -

wrongfulness with respect to the Selma lawsuit, *see supra* at 19-20, and further assuming *arguendo* that the supposed "take a check" quote occurred (even though Sunset would prove at trial that it did not), a single settlement request at a meeting *initiated by Relevant* at which *Relevant brought up the subject of Selma* is not an indictable substantial step toward extortion.

**D.    Relevant Has Correctly Conceded That "The Schrader Episode . . . Was Not An Independent Predicate Act."**

In opposing summary judgment, Relevant waived reliance on Schrader, conceding without ambiguity that "the Schrader episode, by itself, *was not an independent predicate act*." ECF No. 137 at 25 (emphasis added). Relevant "is bound by its concessions." *Reynoso v. Giurbino*, 462 F.3d 1099, 1110 (9th Cir. 2006) (citing *Russell v. Rolfs*, 893 F.2d 1033, 1038-39 (9th Cir. 1990)); *Hilao v. Estate of Marcos*, 393 F.3d 987, 993 (9th Cir. 2004) ("A party . . . is bound by concessions made in its brief or at oral argument.").

Relevant's concession was also correct. It is undisputed that Sunset unilaterally dropped its challenge to Schrader after Sunset met with Schrader's owner; that that owner described his meeting with Sunset as polite and nonconfrontational; and that Sunset never demanded anything from that owner in exchange for not challenging the project. *See, e.g.*, ECF No. 137 at 15 (Relevant's narrative that Sunset "initially objected to the Schrader project," but "withdrew their appeal, asking nothing in return, once they learned Relevant was not involved and the project was not vulnerable to delay"). Any prosecutor who sought to charge attempted extortion on those facts would be laughed out of court. *See supra* at 21 (discussing "substantial step" requirement).

**E.    As A Matter Of Law, Relevant Cannot Rely On State-Law Extortion To Establish Predicate Acts.**

Sunset's prior briefing explained that Relevant cannot invoke California law in lieu of the Hobbs Act, because litigation activities are categorically non-

- 22 -

"chargeable" under California law. *E.g.*, ECF No. 124-1 at 13-14; ECF No. 157 at 10-11. The prior summary judgment order apparently agreed with the premise, which is both undisputed and incontrovertible, that California law "precludes liability arising from communications made in connection with any judicial proceeding." ECF No. 167 at 21-22. Nevertheless, at Relevant's express urging, ECF No. 137 at 10, the prior order concluded that such immunity has no application in the context of a RICO case. ECF No. 167 at 21-22.

That analysis is flatly wrong. RICO clearly provides that conduct can constitute a state-law predicate act only if it is "chargeable under State law." 18 U.S.C. § 1961(1). That means, as a matter of basic logic, that if litigation conduct is *not* "chargeable under state law," it *cannot* constitute a state-law predicate act. *Id.*

Relevant's claim that there is precedent to the contrary, ECF No. 137 at 10, is nothing short of a misrepresentation. When courts have said that "the litigation privilege does not apply to RICO claims," *see id.*, they have done so because under basic Supremacy Clause principles, a *state* litigation privilege cannot overcome a RICO claim based on *federal* predicate acts. *See, e.g.*, *Richards v. County of Los Angeles*, 2017 WL 7411159, at *4 (C.D. Cal. Mar. 31, 2017) (*citing Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 367, 364 n.10 (9th Cir. 1992)). But the issue here are *state-law* predicate acts, for which RICO expressly incorporates state law as the relevant rule of decision. *See* 18 U.S.C. § 1961(1); *Religious Tech. Ctr.*, 971 F.3d at 364 n.10 (noting that privilege applies when "state law supplies the rule of decision") (quotation marks omitted). And again, under that state law, the litigation privilege renders litigation conduct non-"chargeable." *See, e.g.*, *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1030 (N.D. Cal. 2011) (observing that "California's litigation privilege" amounts to "*immunity under California law* from liability for certain types of conduct") (emphasis added).

- 23 -

1

## CONCLUSION

2      For the foregoing reasons, Sunset respectfully requests that the Court enter

3  judgment in Defendants' favor.

4

5  Dated:  February 23, 2023      **NORTON ROSE FULBRIGHT US LLP**

6

7                              By *  /s/ Christopher Pelham*

8                                 CHRISTOPHER PELHAM

9                                 Attorneys for Defendants
                                   THE SUNSET LANDMARK INVESTMENT,
10                                LLC, and STEPHEN "SAEED" NOURMAND

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 24 -