Patrick M. Maloney – CSBN 197844
Gregory M. Smith – CSBN 259971
Elizabeth T. Schaus – CSBN 272258
**THE MALONEY FIRM, APC**
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
T: 310-540-1505 | F: 310-540-1507
E: pmaloney@maloneyfirm.com
E: gsmith@maloneyfirm.com
E: eschaus@maloneyfirm.com

Attorneys for Defendant,
NOURMAND & ASSOCIATES

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10,<br><br>Defendants. | Case No.:   2:19-cv-05019 PSG(KSx)<br>Judge:      Hon. Philips S. Gutierrez<br>Dept.:      Courtroom 6A, 6th Floor<br>Filed:      June 10, 2019<br><br>**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with Separate Statement of Uncontroverted Facts and Conclusions of Law; Declaration of Elizabeth Schaus; Declaration of Michael Nourmand; and Request for Judicial Notice]* |

## <u>TABLE OF CONTENT AND AUTHORITIES</u>

I.    INTRODUCTION ...................................................................................1

II.   FACTS ..................................................................................................3

    A. Plaintiffs' Operative Third Amended Complaint.............................3

    B. General Principles of CEQA ..........................................................5

    C. CEQA Issue Exhaustion .................................................................6

    D. The Thompson Hotel Litigation ......................................................7

    E. The Tommie Hotel Litigation .........................................................7

    F. Plaintiffs Chose to Settle the Thompson Lawsuit and the Tommie Lawsuit..7

    G. The Selma Lawsuit..........................................................................8

    H. Additional Challenges to the Projects ............................................9

    I.  The Schrader Hotel Administrative Appeal .....................................9

III.  LEGAL ARGUMENT .........................................................................9

    A. Noerr-Pennington Immunity and RICO ..........................................9

    B. Plaintiffs Cannot Demonstrate that the Sham Litigation Exception to *Noerr-Pennington* Immunity Applies ........................................................10

       1. There Are Three Tests for the Sham Litigation Exception.....................10

       2. The Sham Tests at Issue Both Require a Determination of Objective Baselessness ........................................................................11

    C. Six Federal Circuit Decisions and the Ninth Circuit's Reasoning in *Koziol*, Demonstrate that Civil RICO Liability *Cannot* Be Based on Litigation Tactics or Activities ......................................................................13

    D. Plaintiffs Cannot Establish Sufficient RICO Predicate Acts To Show A Pattern of Racketeering ..........................................................18

       1. The Schrader Appeal Was Not A Sham...............................18

       2. The Thompson Lawsuit and Tommie Lawsuit Settled and Were Not a Sham .................................................................19

       3. The Selma Lawsuit Ended with a Victory for Plaintiffs and Therefore Was Not Objectively Baseless ................................19

       4. Litigants in the Thompson, Tommie and Selma Lawsuits Could Have Reasonably Expected Success on the Merits .........................20

    E. The "Series" Test Does Not Apply .................................................21

    F. Plaintiffs Cannot Establish that the S-Defendants or N&A is a Market Rival ...........................................................................24

IV.  CONCLUSION ...................................................................................25

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00206000

**1**

# <u>TABLE OF CONTENT AND AUTHORITIES</u>

## <u>Cases</u>

*Acres Bonusing, Inc. v. Ramsey*,
No. 19-CV-05418-WHO, 2022 WL 17170856, at \*10 (N.D. Cal. Nov. 22, 2022).....16

*Amarel v. Connell*,
102 F.3d 1494, 1519 (9th Cir. 1996) ...........................................................................22

*American Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224, 227 (9th Cir.1988) ...............................................................................22

*Architectural Heritage Assn. v. County of Monterey*,
122 Cal. App. 4th 1095, 1101 (2004) ...........................................................................5

*Berkeley Hillside Pres. v. City of Berkeley*,
60 Cal. 4th 1086, 1091–92 (2015) .................................................................................5

*California Motor Transport Co. v. Trucking Unlimited*,
404 U.S. 508, 92 S.Ct. 609 (1972)................................................................11, 12, 21

*Citizens Assn. for Sensible Dev. of Bishop Area v. County of Inyo*,
172 Cal. App. 3d 151, 158 (1985) .................................................................................6

*Deck v. Engineered Laminates*,
349 F.3d 1253, 1258 (10th Cir. 2003) ...........................................................................1

*ERBE Elektromedizin GmbH v. Canady Tech, LLC*,
629 F.3d 1278, 1291-1292 (Fed. Cir. 2010) .............................................................3, 22

*Evans Hotels, LLC v. Unite Here Loc.
30*, 433 F. Supp. 3d 1130, 1149 (S.D. Cal. 2020) ........................................................24

*Friends of "B" St. v. City of Hayward*,
106 Cal. App. 3d 988, 994–95 (1980) ...........................................................................6

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*,
806 F.3d 162 (2015)...............................................................................................12, 21

*I.S. Joseph Co., Inc. v. J. Lauritzen A/S*,
751 F.2d 265 (8th Cir. 1984) .........................................................................................1

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00206000

**2**

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE:
RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENT AND AUTHORITIES</u>

*In re Flonase Antitrust Litig.,*
795 F. Supp. 2d 300, 309–10 n.10 (E.D. Pa. 2011)......................................................21

*In re Twitter, Inc. Securities Litigation,*
No. 16-cv-05314-JST, 2020WL 5904407, at *2 (N.D. Cal. Oct. 6, 2020) ................23

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class,*
868 F.3d 132, 157 (3d. Cir. 2017) ..........................................................2, 18, 21, 23

*Kaiser Found. Health Plan, Inc. v. Abbott Labs, Inc.,*
552 F.3d 1033, 1047 (9th Cir. 2009) ........................................................................2, 23

*Kamal v. County of Los Angeles*,
No. 17-cv-1986, 2019 WL 2502433, at *10 (C.D. Cal. May 2, 2019) ......................16

*Kearney v. Foley & Lardner, LLP*,
590 F.3d 638, 648 (9th Cir. 2009) ................................................................................10

*Keep Our Mountains Quiet v. County of Santa Clara*,
236 Cal. App. 4th 714, 731 (2015). ........................................................................6, 21

*Kim v. Kimm*,
884 F.3d 98, 104-105 (2d Cir. 2018) ............................................................................1

*Kottle v. Nw. Kidney Ctrs.*,
146 F.3d 1056, 1063 (9th Cir. 1998). ................................................................3, 10, 22

*Mani Brothers Real Estate Group v. City of Los Angeles,*
153 Cal.App.4th 1385, 1394 (2007) ..............................................................................7

New West, L.P. v. City of Joliet,
491 F.3d 717, 722 (7th Cir. 2007) ....................................................................2, 19, 20

*Primetime 24 Joint Venture v. Nat'l Broad., Co.*,
219 F.3d 92, 101 (2d. Cir. 2000) ..........................................................................3, 21

*Prof'l Real Estate Inv'rs, Inc.*,
508 U.S. at 60-61, 113 S. Ct. 1920 ("PRE") ..............................................................10

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00206000

**3**

DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE:
RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

1

## **<u>TABLE OF CONTENT AND AUTHORITIES</u>**

2

3

*Puerto Rico Telephone Co. v. San Juan Cable LLC*,
874 F.3d 767 (2017) ............................................................................. 11

4

5

*Rickards v. Canine Eye Registration Found.*,
783 F.2d 1329, 1334 (9th Cir. 1986) ............................................. 15, 17

6

7

*Rosen v. Duel*,
2022 WL 18231777, at *9 (C.D. Cal. Nov. 23, 2022) ........................ 22

8

9

*San Bernardino Valley Audubon Soc'y v. Metropolitan Water Dist.*,
71 Cal. App. 4th 386 (1999) ................................................................. 6

10

11

12

*San Lorenzo Valley Cmty. Advocs. for Responsible Educ. v.
San Lorenzo Unified Sch. Dist.*, 139 Cal. App. 4th 1356, 1372 (2006) ......................... 5

13

14

*Save Our Big Trees v. City of Santa Cruz,
241 Cal. App. 4th 694, 704 (2015)* .................................................. 5, 6

15

16

*Save Our Carmel River v. Monterey Peninsula Water Mgmt. Dist.*,
141 Cal. App. 4th 677, 687 (2006) ....................................................... 5

17

18

*Sever v. Alaska Pulp Corp.*,
978 F.2d 1529, 1535 (9th Cir. 1992) ............................................... 3, 23

19

20

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
833 F.3d 512, 525 (5th Cir. 2016) ........................................................ 1

21

22

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923, 929 (9th Cir. 2006) .................................................. 9, 10

23

24

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991, 1008 (9th Cir.2008) ................................................. 2, 19

25

26

*U.S. Futures Exchange, L.L.C. v. Board of Trade of the City of Chicago, Inc.*,
953 F.3d 955 (7th Cir. 2020) .............................................................. 12

27

28

*United States v. Koziol*,
993 F.3d 1160 (9th Cir. 2021) ...................................................... passim

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00206000

**4**

# <u>TABLE OF CONTENT AND AUTHORITIES</u>

*United States v. McFall*,
558 F.3d 951, 957 (9th Cir. 2009) ........................................................18

*United States v. Pendergraft*,
297 F.3d 1198, 1205-1208 (11th Cir. 2002).....................................1, 15, 16

USS–POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council,
31 F.3d 800, 810–11 (9th Cir.1994) .....................................................passim

*Vemco, Inc. v. Camardella*,
23 F.3d 129, 134 (6th Cir. 1994) ...............................................................1

*Wonderful Real Est. Dev.*,
2020 WL 91998, at *10 (E.D. Cal. Jan. 8, 2020) .............................2, 18, 22


## <u>Statutes</u>

14 Cal. Code Regs. § 15063(b).....................................................................6
18 U.S.C. § 1962(b)....................................................................................5
18 U.S.C. § 1962(c).................................................................................4, 5
18 U.S.C. § 1962(d)....................................................................................5
Cal. Pub. Res. Code § 21177 ....................................................................2, 7

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

At least six federal circuits have held that civil RICO liability cannot be based on a defendant's litigation conduct, even if the conduct is baseless or in bad faith. *Kim v. Kimm*, 884 F.3d 98, 104-105 (2d Cir. 2018); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003); *United States v. Pendergraft*, 297 F.3d 1198, 1205-1208 (11th Cir. 2002); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994); and *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir. 1984). In rejecting RICO liability based on litigation conduct, these courts have expressed policy concerns related to ensuring access to the courts, promoting finality, and avoiding collateral litigation. The Ninth Circuit has not squarely addressed this issue, although it has extended *Noerr-Pennington* immunity to civil RICO claims. However, the Ninth Circuit's recent substantive analysis in *United States v. Koziol*, 993 F.3d 1160 (9th Cir. 2021), a criminal RICO case, demonstrates that litigation conduct in prior or continuing civil litigation *cannot* be wrongful under the Hobbs Act, and is not subject to the sham litigation exception to Noerr-Pennington immunity. District courts within the Ninth Circuit have interpreted *Koziol* as supporting that litigation activities cannot serve as RICO predicate acts, or expressed doubts in that regard.

Nevertheless, even if sham litigation conduct could serve as a predicate act, Plaintiffs cannot show that Defendants' litigation conduct is a sham. The facts in *Koziol* demonstrate that where an individual demands money from another party premised on events that never occurred, and never files a lawsuit, he cannot find refuge under *Noerr-Pennington* immunity. This case is nothing like *Koziol*. Sunset filed actual lawsuits, two of which were settled on the eve of trial, and the third of which resulted in relief explicitly sought by Sunset.

The Schrader appeal did not involve Plaintiffs, and therefore cannot be a sham. *Wonderful Real Est. Dev.*, 2020 WL 91998, at *10 (E.D. Cal. Jan. 8, 2020). Nor can

00206000   **1**

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

the Maddren lawsuit, which was not filed by any Defendant. *Id; In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 157 (3d. Cir. 2017). The Thompson and Tommie lawsuits settled, and therefore cannot be shams. *See, e.g., Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir.2008). By settling these cases, Plaintiffs have precluded any determination that the lawsuits are shams. The Selma Lawsuit was adjudicated in Sunset's favor. The Court disposed of the lawsuit by ruling that the mitigated negative declaration did not satisfy CEQA requirements (relief sought by Sunset in the lawsuit). See, *e.g.*, *New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007) (rejecting plaintiff's argument that defendant filed sham lawsuits when none had been adjudicated in plaintiff's favor).

Furthermore, other litigants filed their own CEQA lawsuits challenging the approval of the Tommie and Selma hotel projects and sought similar relief. One litigant, Lauren "Elle" Farmer, obtained a ruling that "the MND is defective, and cannot be upheld," and granted the writ as to her first cause of action. Defendants' CEQA expert, an attorney, has opined that a reasonable litigant could have expected success on the merits of the Thompson, Tommie and Selma Lawsuits. For these reasons, the lawsuits cannot stand as RICO predicate acts because they were neither objectively baseless nor were they brought without regard to the merits.

Any attempt by Plaintiffs to argue that the administrative level petitioning challenging the Thompson, Tommie or Selma hotel projects are distinct predicate acts is inconsistent with Plaintiffs' representations in trial documents and the recent pre-trial conference. Moreover, the claim fails on its own because (1) the administrative petitioning is required by statute to exhaust all issues. Cal. Pub. Res. Code § 21177(a). Sunset was statutorily required to exhaust all issues by making the same arguments at the administrative level it would make in the CEQA lawsuit, and this cannot constitute independent sham petitioning. *Wellbutrin*, 868 F.3d at 157-158 (citing to *Kaiser Found. Health Plan, Inc. v. Abbott Labs, Inc.,* 552 F.3d 1033, 1047 (9th Cir. 2009). The claim also fails because (2) the administrative level petitioning is part and parcel

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

1    of a single predicate act of extortion—the lawsuits and corresponding settlements.

2    *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992).

3        As well, the series test contemplates voluminous legal challenges." *See*

4    *Primetime 24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 101 (2d. Cir. 2000).

5    While the Ninth Circuit has not articulated a bright line rule on how many lawsuits are

6    needed to trigger the "series" test, a "handful" of lawsuits is not enough. *Kottle v. Nw.*

7    *Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir. 1998). District courts within the Ninth

8    Circuit have held that "five or six lawsuits is on the lower end of what can constitute a

9    pattern."  The Federal Circuit has held that three lawsuits do not constitute a series.

10   *ERBE Elektromedizin GmbH v. Canady Tech, LLC*, 629 F.3d 1278, 1291-1292 (Fed.

11   Cir. 2010).

12       Finally, the "series" test fails because Plaintiffs are in the market of commercial

13   hotel development, and compete with other hotel developers. The S-Defendants own

14   and lease a commercial building. N&A is a residential real estate brokerage. The

15   "series" test requires that the alleged sham litigation be brought for the purpose of

16   injuring a market rival, and Plaintiffs cannot show that either Sunset or N&A is a

17   market rival. Thus, summary judgment for all Defendants is required.

18   **II.    FACTS**

19       **A.    Plaintiffs' Operative Third Amended Complaint**

20       Plaintiff Relevant Group, LLC develops hotels, restaurants, and entertainment

21   venues in urban markets. TAC ¶ 8. Defendant Sunset Landmark Investment, LLC

22   ("Sunset") is a real estate company that owns the historic Hollywood Athletic Club

23   ("HAC"), and its principal is Defendant Stephan "Saeed" Nourmand ("collectively the

24   S-Defendants"). TAC, ¶¶ 25, 111. In the past ten years, Relevant-affiliated companies

25   have developed several properties within one block of the Hollywood Athletic Club,

26   including the hotel development projects at issue in this litigation: the Thompson

27   Hotel, Tommie Hotel, and Selma Hotel. TAC, ¶ 23; SUF 1. Defendant N&A is a

28   residential real estate brokerage. N&A does not engage in either residential or

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE:**
**RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

commercial real estate development. SUF 2-3.

The "TAC" alleges that Defendants are members of a criminal enterprise that, by and through Sunset, filed sham CEQA lawsuits for the purpose of delaying the development of competing properties and to extract personally enriching settlements. TAC ⁋ 4. N&A is alleged to be a member of the enterprise, although it was not a party to any of the lawsuits, was not a party to any of the settlements, and received no financial or other benefits from the settlements. SUF 4-6. Prior to forming Sunset, Saeed Nourmand founded N&A, but over twelve years ago he relinquished all operational control of N&A to his son, Michael Nourmand, as well as his ownership interest in the company. SUF 7.

The TAC alleges that Sunset filed sham CEQA lawsuits challenging the City's adoption and approval of a Mitigated Negative Declaration ("MND")—a declaration that the project will not have a significant environmental impact—for Plaintiffs' Thompson Hotel Project ("Thompson Lawsuit") and Tommie Hotel Project ("Tommie Lawsuit"). TAC, ⁋⁋ 1, 9, 133. Plaintiffs settled these lawsuits, agreeing to pay $5.5M to Sunset, in exchange for Sunset's dismissal of the lawsuits. TAC, ⁋ 10. The TAC alleges that thereafter, Sunset filed a sham CEQA lawsuit challenging the City's adoption and approval of a MND for Plaintiffs' Selma Project. TAC, ⁋ 11. As well, that another community member, Casey Maddren, filed a CEQA lawsuit challenging the Selma Project at the direction of the enterprise ("Maddren Lawsuit"). TAC, ⁋⁋ 13-14. Finally, the TAC alleges that Sunset filed a sham administrative appeal against a nearby hotel development project (the "Schrader Hotel"), but concede the project was owned by another developer, and not Plaintiffs. TAC, ⁋ 16. After a meeting with Schrader Hotel owners, Sunset withdrew the appeal. *Id.*

Plaintiffs assert their first RICO claim under 18 U.S.C. § 1962(c), which prohibits any person employed by or associated with an enterprise engaged in interstate commerce to conduct, or participate in the conduct of, the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). Plaintiffs bring

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

a second RICO claim under 18 U.S.C. § 1962(d) for conspiracy to violate 18 U.S.C. § 1962(c). Plaintiffs assert both these claims against all three Defendants. At this stage in the litigation, Plaintiffs have abandoned their third claim under 18 U.S.C. § 1962(d) for conspiracy to violate 18 U.S.C. § 1962(b). Dkt. 187-1, pg. 3.

### B.   General Principles of CEQA

"[T]he overriding purpose of CEQA is to ensure that agencies regulating activities that may affect the quality of the environment give primary consideration to preventing environmental damage." *Save Our Carmel River v. Monterey Peninsula Water Mgmt. Dist.*, 141 Cal. App. 4th 677, 687 (2006). The statute and its implementing regulations, the CEQA Guidelines, "prescribe[] review procedures a public agency must follow before approving or carrying out certain projects." *Berkeley Hillside Pres. v. City of Berkeley*, 60 Cal. 4th 1086, 1091–92 (2015).

The CEQA review procedure is a "three-tiered process." *San Lorenzo Valley Cmty. Advocs. for Responsible Educ. v. San Lorenzo Unified Sch. Dist.*, 139 Cal. App. 4th 1356, 1372 (2006). "The first tier requires an agency to conduct a preliminary review to determine whether CEQA applies to a proposed project." *Save Our Big Trees v. City of Santa Cruz, 241 Cal. App. 4th 694, 704 (2015)*. "If CEQA applies, the agency must proceed to the second tier of the process by conducting an initial study of the project." *Id.* A principal purpose of this initial study is "to inform the choice between a negative declaration and an environmental impact report (EIR)." *San Lorenzo, supra*, 139 Cal. App. 4th at 1373.

If "the initial study identifies potentially significant effects on the environment but revisions in the project plans would avoid the effects or mitigate the effects to a point where clearly no significant effect on the environment would occur," then the agency may publish a mitigated negative declaration ("MND") identifying the necessary revisions. *Architectural Heritage Assn. v. County of Monterey*, 122 Cal. App. 4th 1095, 1101 (2004) (internal quotation marks removed). But "if the initial study uncovers 'substantial evidence that any aspect of the project, either individually

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1  or cumulatively, may cause a significant effect on the environment,' the agency must

2  proceed to the third tier of the review process and prepare a full EIR." *Save Our Big*

3  *Trees, supra*, 241 Cal. App. 4th at 705 (citing 14 Cal. Code Regs. § 15063(b)(1)).

4  When an agency issues an MND, third parties with standing may seek judicial

5  review of the adoption of the negative declaration by filing a petition for writ of

6  mandate in a California court. See, e.g., *San Bernardino Valley Audubon Soc'y v.*

7  *Metropolitan Water Dist.,* 71 Cal. App. 4th 386 (1999). The challenger must submit

8  "substantial evidence . . . supporting a fair argument that the [p]roject will

9  significantly impact the environment; if there is, it was an abuse of discretion not to

10  require an EIR." *Keep Our Mountains Quiet v. County of Santa Clara*, 236 Cal. App.

11  4th 714, 731 (2015). The fair argument standard of review over a public agency's

12  decision has been characterized as setting a "*low threshold* requirement for initial

13  preparation of an EIR and reflects a preference for resolving doubts in favor of

14  environmental review when the question is whether any such review is warranted." *Id.*

15  (emphasis added). Standing to file a petition for writ of mandate exists where a

16  property owner, taxpayer, or elector establishes a geographical nexus with the

17  challenged project site." *Citizens Assn. for Sensible Dev. of Bishop Area v. County of*

18  *Inyo*, 172 Cal. App. 3d 151, 158 (1985).

19  A litigant who successfully challenges an agency's issuance of a negative

20  declaration in court may be entitled to attorneys' fees. *Friends of "B" St. v. City of*

21  *Hayward*, 106 Cal. App. 3d 988, 994–95 (1980) (explaining fees may be awarded

22  "when the litigant, proceeding in a representative capacity, obtains a decision resulting

23  in the conferral of a 'substantial benefit' of a pecuniary or nonpecuniary nature"). By

24  contrast, compensatory and other monetary damages are not remedies under CEQA.

25  **C.**   **CEQA Issue Exhaustion**

26  Under CEQA, no action or proceeding may be brought "unless the alleged

27  grounds for noncompliance with [CEQA] were presented to the public agency orally

28  or in writing by any person during the public comment period ... or prior to the close

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE:
RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

of the public hearing on the project before the issuance of the notice of determination." Cal. Pub. Res. Code § 21177(a). Before an issue may be heard in court, "[t]he exact issue must have been presented to the administrative agency to satisfy the exhaustion requirement." *Mani Brothers Real Estate Group v. City of Los Angeles,* 153 Cal.App.4th 1385, 1394 (2007) (internal quotation marks omitted).

### D. The Thompson Hotel Litigation

Sunset filed a Verified Petition For Writ of Mandate against the City of Los Angeles ("City") challenging the City's approval of the Thompson Hotel Project, including approval of an MND for the project ("Thompson Lawsuit"). SUF 8.

### E. The Tommie Hotel Litigation

Sunset filed a Petition for Writ of Mandate against the City, challenging the City's approval of the Thompson Hotel Project, including approval of an MND for the project ("Tommie Lawsuit"). SUF 9.

Lauren "Elle" Farmer filed a petition against the Tommie Hotel which also challenged, among other things, the City's approval of an MND for the project. SUF 10. In that case, the Court held that "the MND is defective, and cannot be upheld," and granted the writ as to the first cause of action. SUF 23.

Mama Wilcox, LLC, the owner of another newly built neighboring hotel, also filed a petition challenging the approval of the Tommie Hotel, including the City's approval of an MND for the project. SUF 11.

### F. Plaintiffs Chose to Settle the Thompson Lawsuit and the Tommie Lawsuit

Plaintiffs settled the Thompson Lawsuit and the Tommie Lawsuit with Sunset, and executed settlement agreements pursuant to which they entered into covenants to reduce the hotels' environment impact and paid $5.5M to Sunset. SUF 12. In exchange, Sunset dismissed the lawsuits, and granted a tie-back agreement that allowed Plaintiffs to excavate under Sunset's land to assist with construction of the Tommie Hotel. *Id.* During the settlement negotiations, Richard Heyman, a principal at

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Relevant, advised Saeed that Relevant was "willing to develop a solution in part because we recognize that you, like us, are a businessman with good intentions, and so we should be able to come to a common ground." SUF 13.

The settlements were reached one day before trial in the Thompson Lawsuit, after the Court issued a tentative ruling which denied a motion by the City to augment the administrative record. SUF 14. The motion was filed after Sunset's attorneys discovered that the City analyzed an out-of-date version of the hotel plans, which had the building facing the opposite direction and failed to include the two planned rooftop bars. SUF 15. In the tentative ruling, the Court stated that the motion was "intertwined with fair notice," that "the City did not follow standard procedures to inform the public of the design changes," and these facts implicated "the issue…[of] whether the City's failure to tell the public of the design changes in the Project as submitted to the CPC has prejudiced petitioners' rights under CEQA." SUF 16.

### G.   The Selma Lawsuit

Sunset filed a Verified Petition for Writ of Mandamus against the City, challenging the City's approval of the Selma Wilcox Hotel Project, including approval of an MND for the project ("Selma Lawsuit"). SUF 17. Casey Maddren ("Maddren") filed a Verified Petition for Writ of Mandamus against the City, in pro per, also challenging the City's approval of an MND for the Selma Wilcox Project. SUF 18. Maddren does not know Stephan "Saeed Nourmand" and has never spoken to Mr. Nourmand. SUF 19. Maddren filed his lawsuit of his own volition, believing it to be meritorious, and did not formulate any legal arguments with the assistance of Sunset's lawyers. SUF 20.

The trial court ultimately disposed of the matter by issuing an interlocutory writ and order of remand ("Order"), finding that "Sunset has presented substantial evidence supporting a fair argument that the Project may have significant effects on air quality. As such, the City's decision to adopt an MND was an abuse of discretion." SUF 21. The Order remanded the Selma Hotel Project to the City for further

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

proceedings. SUF 22. The Order required a public hearing, allowed the City to consider and accept additional evidence and to prepare an environmental impact report or submit a return setting forth clarifications to its analysis and findings. *Id.*

### H.   Additional Challenges to the Projects

In addition to Farmer, Mama Wilcox and Maddren, numerous others initiated CEQA challenges concerning the Tommie, Thompson, and Selma projects, including: Unite Here Local 1l; Alexis Olbrei; Southwest Carpenters; Fran Offenhauser; Hollywood Heritage; and David Carrera. SUF 24.

### I.   The Schrader Hotel Administrative Appeal

In 2019, the City approved a hotel development called the Schrader Hotel, owned by another development company ("Schrader Owners"), and not by Plaintiffs. SUF 25. Sunset filed an administrative appeal challenging the approval of the Shrader Hotel Project. SUF 26. Sunset met with the Schrader Owners to discuss Sunset's concerns regarding the development. SUF 27. The Schrader Owners indicated that they did not intend to try to modify restrictions imposed by the City, and Sunset withdrew its appeal and did not file a CEQA lawsuit. SUF 28.

## III.   LEGAL ARGUMENT

### A.   Noerr-Pennington Immunity and RICO

Under the Noerr-Pennington doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct. *Koziol*, 993 F.3d at 1171 (quoting *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). "The constitutional right to petition includes the right of access to the courts and therefore most litigation activities, including pre-suit demands, are immunized from statutory liability." *Koziol*, 993 F.3d 1160. The defense, however, does not protect "sham litigation." The Supreme Court has applied *Noerr-Pennington* immunity outside of the antitrust field based on the First Amendment Petition Clause. *Sosa,* 437 F.3d at 929-930. The Ninth Circuit has extended *Noerr-Pennington* immunity to bar RICO actions brought against a

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

protected petitioner. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 648 (9th Cir. 2009). However, the Ninth Circuit has not specifically addressed the issue of whether sham litigation activities can serve as predicate acts for purposes of stating a civil RICO claim.

**B.** **Plaintiffs Cannot Demonstrate that the Sham Litigation Exception to *Noerr-Pennington* Immunity Applies**

**1.** **There Are Three Tests for the Sham Litigation Exception**

The Ninth Circuit has identified three circumstances in which the sham litigation exception to *Noerr-Pennington* immunity might apply. *See Sosa,* 437 F.3d at 938; see also *Kottle*, 146 F.3d at 1060. <u>*First*</u>, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful. *Kottle*, 146 F.3d at 1060. <u>*Second*</u>, where the conduct involves a series of lawsuits "brought pursuant to a policy of starting legal proceedings without regard to the merits" and for an unlawful purpose. *Id.* (citing *USS–POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council,* 31 F.3d 800, 810–11 (9th Cir.1994)). <u>*Third*</u>, if the allegedly unlawful conduct "consists of making intentional misrepresentations to the court, litigation can be deemed a sham if 'a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.' " *Id.* (internal citations omitted.) The third exception does not apply to the instant matter. The parties disagree as to which sham litigation test applies.

If a defendant is accused of bringing a single sham lawsuit, or a small number of such suits, the plaintiff must show the following: (1) the lawsuit was objectively baseless, meaning that no reasonable litigant could realistically expect success on the merits, and (2) the defendant's motive in bringing the lawsuit was unlawful. *Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 60-61, 113 S. Ct. 1920 ("PRE"). "Only if the challenged litigation is objectively meritless may a court examine a litigant's subjective motivation," under the second prong of the test. *Id.* at 60.

If a petitioner is accused of bringing a series of sham lawsuits, "the question is

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

not whether any one of the legal proceedings has merit —some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival. *USS-POSCO*, 31 F.3d at 811. In other words, "[w]ere the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment." *Id.*

### 2. The Sham Tests at Issue Both Require a Determination of Objective Baselessness

Plaintiffs have repeatedly argued in this case that the "series" test relieves them of any burden to establish that the allegedly sham lawsuits are objectively baseless. This approach stems from the Supreme Court's language in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609 (1972): "[A] pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes" have been used improperly "to deprive the competitors of meaningful access to the agencies and courts." *Id.* at 512-513. Filing petitions with "such a purpose or intent," the Court stated, would "fall within the exception to *Noerr*." *Id.* at 512. However, even when a series of sham lawsuits are alleged, the plaintiff "must demonstrate objective baselessness because the pattern of claims must be baseless as a whole." *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 958-959 (S.D. Cal. 1996). *California Motor* does not provide a separate rubric to use whenever a "series" of sham filings is alleged.

The First Circuit rejected the Plaintiffs' interpretation of *California Motor* in *Puerto Rico Telephone Co. v. San Juan Cable LLC*, 874 F.3d 767 (2017), The Court reasoned that "[There is no] pragmatic reason to presume that [*PRE*'s] protections for nonfrivolous petitioning activity disappear merely because the defendant exercises its right to engage in such activity on multiple occasions. One large lawsuit or intervention in an agency proceeding can impose much more of a burden on a competitor than might a series of smaller claims." *Id.* at 772. The Seventh

DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Circuit has also rejected the argument that objective baselessness is not a requirement when an alleged series of sham litigation is alleged. *U.S. Futures Exchange, L.L.C. v. Board of Trade of the City of Chicago, Inc.*, 953 F.3d 955 (7th Cir. 2020). "The Court in *PRE* described *California Motor* as requiring courts to draw the "difficult line" that *separates out* objectively reasonable claims from patterns of "*baseless*, repetitive claims" before finding a sham. [Citations]. In that sense, *California Motor*—issued more than twenty years before *PRE*—contains the very origins of the sham exception inquiry's first step: an objective reasonableness assessment." *PRE,* 508 U.S. at 58.

Plaintiffs rely on the Third Circuit opinion of *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162 (2015), an antitrust case, for the premise that four lawsuits can constitute a series of sham litigation, and that Courts should consider other evidence of bad faith. *Id.* at 806. In *Hanover*, the Court found that the <u>antitrust</u> plaintiff could show that Defendants had a policy of filing <u>anticompetitive</u> sham petitions. However, even in *Hanover*, the court made individual determinations of whether the subject petitions were objectively baseless. Indeed, the court concluded that two of the four petitions were objectively baseless. One petition was dismissed because the petitioner had no standing and was not an aggrieved party. A second petition (an action in lieu of prerogative writs), was dismissed because the petitioner again was not an aggrieved party. Faced with a batting average of just .500, the court looked to the series as a whole, concluding that, with respect to the other two petitions, the "ostensible goal" was for the administrative body to deny a permit, and petitioners "were unsuccessful on that front." *Id.* at 182. The *Hanover* court therefore concluded that the sham litigation exception applied.

Thus, both sham lawsuit tests require a determination of whether the accused's' lawsuit was objective baselessness. The difference is that when evaluating a series of lawsuits, a determination that a single lawsuit in the series is not objectively baseless does not end the inquiry. For example, the Court in *USS-POSCO* made a determination which of the twenty-nine lawsuits at issue had merit, and which did not.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

*Id.* at 811. The Court found that fifteen of the twenty-nine lawsuits were successful. *Id.* The Ninth Circuit analogized these facts to a "batting average exceeding .500," which it found could not support the theory "that the unions were filing lawsuits and other actions willy-nilly without regard to success." *Id.* Accordingly, the plaintiff there could not "sustain its burden of showing that the unions' conduct fell within the sham exception to the *Noerr–Pennington* doctrine." *Id.* The Ninth Circuit affirmed summary judgment in favor of the unions on that ground. *Id.* In other words, the Ninth Circuit in *USS-POSCO* evaluated the merits of each lawsuit, and then examined the pattern of lawsuits to determine if they were baseless as a whole. Thus, regardless of the test employed to evaluate Plaintiffs' sham litigation claim, each separate lawsuit must be evaluated to determine whether it is objectively baseless.

**C.**  **Six Federal Circuit Decisions and the Ninth Circuit's Reasoning in *Koziol*, Demonstrate that Civil RICO Liability *Cannot* Be Based on Litigation Tactics or Activities**

The Ninth Circuit's recent reasoning and holding in *Koziol* demonstrates that litigation conduct in prior or continuing civil litigation cannot be a sham. In *Koziol,* the manager for a well-known celebrity received a massage at the apartment of the masseuse. *Id.* at 1165. The masseuse claimed she was assaulted, and the manager entered into a confidential settlement with the masseuse, denying the allegations and paying money to settle any potential lawsuit. *Id.* Many months later Koziol, the masseuse's husband, sent a settlement demand to the entertainer, who was not even present when the massage took place. *Id.* at 1166. In the demand letter, Koziol threatened to file a lawsuit against the entertainer for both assaulting Koziol and attempting to sexually assault the masseuse, unless the entertainer paid Koziol $1 million dollars. *Id.* at 1166-167. The entertainer refused to settle, repeatedly advising Koziol through counsel that the event never happened and the threats were extortionate. *Id.* Koziol never filed a lawsuit. *Id.* at 1167. In short, Koziol engaged in blatant attempted criminal extortion by threatening to file a lawsuit based on a

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1  fabricated event, and never actually filed the lawsuit because his claims were false.

2      Koziol was convicted of attempted extortion under the Hobbs Act. *Id.* at 1164.

3  On appeal, Koziol argued that his conviction should be vacated because, among other

4  things, threats of sham litigation are categorically excluded from criminal liability

5  under the Hobbs Act. *Id.* at 1168. The Ninth Circuit rejected Koziol's argument and

6  affirmed the denial of his motion for acquittal. The Ninth Circuit employed a "means-

7  end framework" formulated in prior cases to evaluate a claim for extortion (or

8  attempted extortion) under the Hobbs Act. Relying on this precedent, the Ninth

9  Circuit considered "whether the means Koziol used to attempt to obtain property

10  (threats of sham litigation) were wrongful under the circumstances, or whether the

11  ends were wrongful because he had no lawful claim to the property he demanded." *Id.*

12  at 1169-1170.

13      The Ninth Circuit held that "threats of sham litigation, which are made to obtain

14  property to which the defendant knows he has no lawful claim, are 'wrongful' under

15  the Hobbs Act." *Id.* at 1170. The Court concluded that Koziol had no lawful claim to

16  the property because his threats were based on a fabricated event, and therefore were

17  palpably and demonstrably false. Further, the fact Koziol never actually filed a lawsuit

18  supported the second prong of the sham litigation exception: that Koziol had an

19  improper motive, and hoped to "achieve his aim through the litigation process rather

20  than the result of that process" *Id.* (internal quotations and citation omitted.) The

21  Court explicitly did not determine whether Koziol's threats of sham litigation were

22  wrongful under the Hobbs Act; rather, only that the ends were wrongful. *Id.* at 1170

23  ("we need not decide whether the means that Koziol employed in his threats (baseless

24  threats of sham litigation using falsified evidence and deceit) were 'wrongful' under

25  the Hobbs Act because he sought to obtain money to which he knew he had no lawful

26  claim and, thus, the ends were 'wrongful.')

27  

28  / / /

Significantly, the Ninth Circuit distinguished *Koziol* from cases in six other circuits holding that threats of sham litigation can never constitute "wrongful" conduct under the Hobbs Act, <u>because they arose from litigation tactics or activities in prior or continuing civil litigation.</u> *Id.* at 1174. "In rejecting RICO liability based on litigation activities, these courts expressed policy concerns relating to ensuring access to the courts, promoting finality, and avoiding collateral litigation. (Internal citations omitted)." "These cases also suggest that the victim of bad faith litigation tactics may have remedies and protections in state tort law through claims of malicious prosecution, wrongful use of civil proceedings, and abuse of process, and that wrongful litigation conduct will be deterred by the penalties for perjury, obstruction of justice, and witness tampering. [Citations]. But these remedies and penalties will rarely, if ever, protect the victim of extortionate threats of sham litigation when, as in this case, the sham lawsuit is threatened but not filed." *Id.* at fn. 15.

The Ninth Circuit held that these cases "do not address the issue presented in this case: whether threats of sham litigation can establish criminal liability under the Hobbs Act." *Id.* at 1174.

> Furthermore, the policy concerns asserted in these cases are not implicated when a defendant, who has no relationship with his alleged extortion victim, including any prior or pending litigation, threatens sham litigation to obtain property to which he knows he has no lawful claims. *See Rickards v. Canine Eye Registration Found.*, 783 F.2d 1329, 1334 (9th Cir. 1986) ("This kind of litigation deserves all the chilling effect the law allows.").

*Koziol*, 993 F.3d at 1174.

The Court also distinguished *Pendergraft*, a criminal case, as it "turned on policy considerations that do not apply in this case." *Id.* at 1175. Specifically, that "[c]riminalizing false testimony via the Hobbs Act would expand the scope of witness liability," which it did not believe Congress intended. *Id.* at 1200. The Ninth Circuit

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1   explained that, like the civil RICO cases, the court in *Pendergraft* was concerned that

2   "[a]llowing litigants to be charged with extortion would open yet another collateral

3   way for litigants to attack one another. The reality is that litigating parties often accuse

4   each other of bad faith. The prospect of such civil cases ending as criminal

5   prosecutions gives us pause." *Id.* at 1175 (internal citation omitted).

6        Most significantly, in contrasting the facts of *Koziol* with these civil RICO

7   cases, the Ninth Circuit essentially stated that litigation activities *during* civil

8   litigation *cannot* be a sham: "But as we previously explained, these policy concerns—

9   promoting access to the courts and avoiding collateral litigation—are not implicated

10  by threats of sham litigation." *Id.* at 1175. Thus, "neither the narrow holding of

11  *Pendergraft* nor its reasoning apply to the situation here—liability for extortion under

12  the Hobbs Act that is not based on litigation tactics or activities in prior or continuing

13  civil litigation but instead is based on a threat of sham litigation to obtain property to

14  which the defendant knows he has no lawful claim." *Id.*

15       Several district courts within the Ninth Circuit have interpreted *Koziol* as

16  precluding sham litigation as a basis for civil RICO liability. For example, the United

17  States District Court, Northern District of California, recently held in a slip opinion as

18  follows: "While the Ninth Circuit has not squarely addressed this issue, I am

19  persuaded by the circuit's reasoning in *United States v. Koziol* as well as other

20  circuits' discussion of this issue. Litigation activities alone generally cannot serve as

21  predicate acts for civil RICO claims." *Acres Bonusing, Inc. v. Ramsey*, No. 19-CV-

22  05418-WHO, 2022 WL 17170856, at *10 (N.D. Cal. Nov. 22, 2022). As well, this

23  district has recently expressed doubts that litigation activities can serve as predicate

24  acts for a civil RICO claim, albeit in an unpublished opinion. *Kamal v. County of Los

25  Angeles*, No. 17-cv-1986, 2019 WL 2502433, at *10 (C.D. Cal. May 2, 2019) ("While

26  the Courts [sic] has doubts that the SAC's allegations of litigation misconduct could

27  act as predicate offenses for a civil RICO claim…the Court need not decide this issue

28  because Plaintiff has failed to demonstrate standing or the existence of a RICO

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

1    enterprise.")

2        Based on the Ninth Circuit's holding in *Koziol*, Defendants' litigation conduct

3    in this case <u>cannot</u> be a sham. <u>*First*</u>, unlike *Koziol,* this case does *not* involve threats of

4    sham lawsuits that were never filed. In contrast, all of the litigation conduct occurred

5    during civil litigation, or resulted in civil litigation. Plaintiffs and Sunset were not

6    strangers to one another, as were the parties in *Koziol*. <u>*Second*</u>, unlike *Koziol,* none of

7    the CEQA lawsuits involved fabricated events. Plaintiffs do not dispute that Sunset

8    had standing to file the subject CEQA lawsuits, and sought relief which could have

9    been granted if Sunset prevailed on its claims. Sunset's lawsuits did *not* seek relief to

10   which they were not entitled (and had Sunset done so, Plaintiffs would have been

11   entitled to a civil remedy—to bring a motion to strike the improper prayer.) Indeed,

12   Sunset was willing to take the Thompson lawsuit to trial. The settlement only

13   occurred one day prior to trial, after a tentative ruling was issued that was in Sunset's

14   favor. While Plaintiffs ultimately paid money which they now claim Sunset was not

15   entitled to, that was their choice. It is disingenuous that after agreeing to a settlement

16   negotiated by lawyers, Plaintiffs claim the litigation was a sham because the money

17   they agreed to pay was not relief sought in the lawsuits. Taking Plaintiffs' logic to its

18   full extension, any civil plaintiff who prays for relief not supported by their claims

19   would expose themselves to civil RICO liability. This implicates the exact policy

20   concerns that the Ninth Circuit took care to distinguish from the facts in *Koziol*. <u>*Third*</u>,

21   unlike *Koziol*, there are no repeated indicia of extortionate settlement demands.

22   Instead, Plaintiffs acknowledged that Saeed was "a businessman with good intentions,

23   and so we should be able to come to a common ground." SUF 13.

24       Based on the Court's holding and reasoning in *Koziol*, Plaintiffs cannot show

25   that the litigation tactics or activities in the prior and continuing civil litigation is a

26   RICO predicate act. Rather, Defendants' litigation conduct "deserves all the chilling

27   effect the law allows. *Rickards,* 783 F.2d at 1334.

28   / / /

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00206000

**17**

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE:
RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**D.**   **Plaintiffs Cannot Establish Sufficient RICO Predicate Acts To Show A Pattern of Racketeering**

Plaintiffs cannot establish sufficient RICO predicate acts to establish a pattern of racketeering, let alone a series of sham lawsuits. Plaintiffs have been inconsistent in the predicate acts that the allege. The TAC identifies the *three* lawsuits that any Defendant (Sunset) filed against Plaintiffs' projects (Thompson, Tommie and Selma); the *one* administrative appeal by Sunset as to a project unrelated to any Plaintiff, that never resulted in a lawsuit (Schrader); and the *one* lawsuit challenging one of Plaintiffs' projects (Selma) filed by a third party, Casey Maddren, who is not a defendant in this case. At the recent Pre-Trial Conference in this matter, one week before the January 6, 2023 Trial Date, Plaintiffs' counsel unequivocally represented to the Court that Plaintiffs allege *four* RICO predicate acts as the basis of their claims: two predicate acts of extortion (Thompson and Tommie) and attempted extortion (Selma and Schrader). Dkt 265, 5:20-6:6. The Pre-Trial Conference Order makes a similar assertion. Dkt 187-1. Nevertheless, none of the lawsuits in question can constitute a RICO predicate act.

### 1.   The Schrader Appeal Was Not A Sham

Sunset's Schrader administrative appeal challenged a project owned by a *different* developer (and never resulted in a lawsuit). TAC, ¶ 16; SUF 26-28. The Schrader appeal did not involve Plaintiffs, and therefore cannot constitute a RICO predicate act of attempted extortion. *Wellbutrin*, 868 F.3d at 157; (rejecting claim of serial petitioning through "four lawsuits and a petition," where two of the lawsuits were against an independent defendant; *Wonderful*, 2020 WL 91998, at *10 ("While the FAC alleges six sham CEQA petitions, only one is brought against Wonderful and by [RICO defendant].) This is consistent with the language of the Hobbs Act, which requires that an alleged extortionist must actually appropriate (or attempt to appropriate) the *victim's* property such that it can be exercised, transferred or sold. *United States v. McFall*, 558 F.3d 951, 957 (9th Cir. 2009).

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

### 2. The Thompson Lawsuit and Tommie Lawsuit Settled and Were Not a Sham

Plaintiffs cannot show that the Thompson or Tommie lawsuits are objectively baseless or were brought without regard to the merits. The fact that these lawsuits settled cannot be reconciled with Plaintiffs' allegation that they were 'objectively baseless. *See Theme Promotions,* 546 F.3d at 1008 (9th Cir.2008) ('We begin by analyzing whether the underlying litigation was objectively baseless…. The fact that this ongoing litigation settled suggests that the original suit was not objectively baseless.'); *New West,* 491 F.3d at 722 (holding a lawsuit that was settled for a significant amount could not form the basis for the sham litigation exception); *STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.*, No. 10 Civ. 5023(JF) (PSG), 2011 WL 1362163, at *2 (N.D. Cal. Apr. 11, 2011) ('In determining whether particular litigation is a sham, courts often look to settlements and rulings on dispositive motions as evidence of the merits of the case.') (citation omitted); *Movers & Warehousemen's Ass'n of Greater N.Y. v. Long Island Moving & Storage Ass'n*, No. 98 Civ. 5373(SJ), 1999 WL 1243054, at *6 (E.D.N.Y.Dec.16, 1999) (stating that 'resolution [by settlement] does not lend itself well to the label objectively baseless').

### 3. The Selma Lawsuit Ended with a Victory for Plaintiffs and Therefore Was Not Objectively Baseless

The Selma Lawsuit can only be viewed as a victory for Sunset. Therefore, it was not objectively baseless, or brought without regard to the merits. The ostensible goal of the Selma Lawsuit was to obtain a determination that the MND for the Project was not properly evaluated and was improperly approved. The Los Angeles Superior Court made just such a determination. SUF 21-22. The Selma Lawsuit was disposed of when the court issued an interlocutory writ and order of remand back to the City of Los Angeles for further proceedings, instructing that the city may "clarify its analysis and findings" on two issues—air quality and the baseline—on which the city's mitigated negative declaration did not satisfy CEQA requirements. *Id.* The order

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1   allowed the city to prepare an environmental impact report addressing the court's

2   concerns, or, alternatively, consider and accept additional evidence, hold a public

3   hearing, and submit a return setting forth the clarifications to its analysis and findings.

4   *Id.* This order alone evidences a victory that precludes a finding that the lawsuit is

5   objectively baseless. See, *e.g.*, *New West*, 491 F.3d at 722 (finding lawsuits were not a

6   sham when none had been adjudicated in plaintiff's favor).

7               **4.      Litigants in the *Thompson*, *Tommie* and *Selma* Lawsuits**

8               **Could Have Reasonably Expected Success on the Merits**

9               Defendants have demonstrated as a matter of law that reasonable litigants in the

10   *Thompson*, *Tommie* and *Selma* Lawsuits could have reasonably expected success on

11   the merits. Sunset itself achieved victory in the *Selma* lawsuit, in an order adjudicating

12   that the MND did not satisfy CEQA requirements, as discussed above. SUF 21-22.

13   Sunset itself also achieved success in the *Thompson* Lawsuit, in the tentative ruling

14   issued the day before trial, finding that the City's failure to analyze the correct version

15   of the hotel plans may have "prejudiced petitioners' rights under CEQA." SUF 14-16.

16   When the *Thompson* lawsuit settled hours later, Plaintiffs can hardly call this an

17   occasional or insignificant success. Simply put, since the matter had reached the

18   proverbial "eve of trial," if it was baseless, as Plaintiffs now claim, they would have

19   won at trial. Their decision to settle speaks volumes.

20               Furthermore, other litigants filed administrative petitions or lawsuits

21   challenging the projects: Farmer, Mama Wilcox, Maddren, Unite Here Local 1l;

22   Alexis Olbrei; Southwest Carpenters; Fran Offenhauser; Hollywood Heritage; and

23   David Carrera. SUF 10, 11, 18, 24. At least one of those litigants, Farmer, achieved

24   her own victory. In that case, the Court held that "the MND is defective, and cannot

25   be upheld," and granted the writ as to the first cause of action. SUF 23.

26               Finally, Sunset's CEQA litigation expert, Douglas Carstens, Esq., has reviewed

27   the relevant record and pleadings. Schaus Decl., ¶ 11, Exhibit 11. In his expert

28   opinion, as an attorney specializing in CEQA litigation, each of the *Thompson*,

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Tommie and Selma lawsuits made claims for which a reasonable litigant could expect success on the merits. *Id.* This alone evidences that the lawsuits were not objectively baseless or brought without regard to the merits, even despite Plaintiff's competing expert opinions. Indeed, the CEQA fair argument standard of review over a public agency's decision has been characterized as setting a "*low threshold* requirement for initial preparation of an EIR and reflects a preference for resolving doubts in favor of environmental review when the question is whether any such review is warranted." *Keep Our Mountains Quiet*, 236 Cal. App. 4th at 731. A petitioner merely needs to show that the lawsuit is arguably warranted by existing law or at the very least [is] based on an objectively good faith argument for the extension, modification, or reversal of existing law. *Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 863 F.3d 1178, 1188 (9th Cir. 2017). Accordingly, Plaintiffs cannot meet their burden at summary judgment to show that any lawsuit was objectively baseless, or that any lawsuit was brought without regard to the merits.

### E.   The "Series" Test Does Not Apply

Whether the Court considers all or some of the lawsuits, they are insufficient to constitute a series or pattern. There is no bright-line rule on how many lawsuits are needed to trigger the "series" sham lawsuit test. The Second Circuit has concluded that the *California Motor Transport* sham exception requires "huge volumes of challenges." *See Primetime 24 Joint Venture*, 219 F.3d at 101; *In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 309–10 n.10 (E.D. Pa. 2011) ("In order to qualify as a 'pattern or practice' of successive filings, however, the number of petitions must be voluminous…"); *cf Hanover* 806 F.3d at181 (holding that while four actions will not always qualify for the *USS-POSCO* standard of a pattern of sham litigation, in that case it was sufficiently alleged) (The Third Circuit later found *Hanover* "easily distinguishable" in *Wellbutrin,* 868 F.3d. 132).

/ / /

/ / /

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

The Ninth Circuit has cited to *Amarel v. Connell*, 102 F.3d 1494, 1519 (9th Cir. 1996) for the premise that "a handful of legal proceedings does not amount to a "pattern" of baseless claims." *Kottle*, 146 F.3d at 1063. Several district courts within the Ninth Circuit have held that "five or six lawsuits is on the lower end of what can constitute a pattern." See *Wonderful*, 2020 WL 91998, at *10 (E.D. Cal. Jan. 8, 2020); *Rosen v. Duel*, 2022 WL 18231777, at *9 (C.D. Cal. Nov. 23, 2022) ("five or six alleged actions filed in court… is likely on the low-end of the requisite number of suits to constitute a "pattern." (internal citations omitted). The Federal Circuit has held that three lawsuits do not constitute a series. *ERBE*, 629 F.3d at 1291-1292 (Fed. Cir. 2010). *USS-POSCO* involved twenty-nine legal proceedings. See *Amarel*, 102 F.3d at 1519. Plaintiffs have alleged at most "a handful" of legal proceedings (Thompson, Tommie, Selma, Schrader, Maddren). Per the Ninth Circuit, this "does not amount to a pattern of baseless claims." *Kottle,* 146 F.3d at 1063.

Importantly, Sunset has not lost any of its CEQA lawsuits. In no instance has a court ruled against Sunset on the merits. Thus, employing the USS-POSCO batting average test, Plaintiffs can't establish that Sunset is batting less than .500, let alone 0, because Plaintiffs precluded a determination of the merits by settling the Thompson and Tommie lawsuits. The Selma Lawsuit has yet to be tried. The Court cannot assess the "win-loss percentage" that is essential for application of the "series" test.

Plaintiffs have endeavored to preserve the ability to argue that appeals and challenges at the administrative level are distinct predicate acts, in order to increase their chance of establishing a sufficient number of predicate acts. Their strategy is not well-taken, based on representations made by Plaintiffs' counsel at the most recent Pre-Trial Conference, and in the context of a CEQA lawsuit. Plaintiffs are bound by their admissions in court that there are just four predicate acts. *See American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 227 (9th Cir.1988) (statements of fact contained in a brief may be considered admissions of the party in discretion of the district court); *In re Twitter, Inc. Securities Litigation,* No. 16-cv-05314-JST, 2020WL 5904407, at

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

*2 (N.D. Cal. Oct. 6, 2020) (attorney statement during oral argument may constitute a judicial admission if it is deliberate, unambiguous and unequivocal).

Additionally, as discussed above, a CEQA lawsuit cannot be filed until the petitioner has exhausted all administrative remedies. Known as the "exhaustion doctrine," the petitioner must raise the exact claims before the public agency in the administrative process that it seeks to make in a CEQA lawsuit. Thus, Sunset's administrative level petitioning conduct cannot serve as distinct predicate acts because, "multiple acts in furtherance of a single extortion episode constitute *only* a single predicate act of extortion, not a pattern of two or more predicate acts. *Sever*, 978 F.2d at1535 (emphasis added) ("First, although Sever alleges a number of "acts," APC's collective conduct is in a sense a single episode having the singular purpose of impoverishing Sever, rather than a series of separate, related acts."). Here, both the Thompson and Tommie lawsuits (including the administrative level petitioning activity) were part and parcel of a single alleged predicate act of extortion: the $5.5M settlement payment made to Sunset to resolve the lawsuits. Furthermore, because the only issues that could be raised in the CEQA lawsuits are the *exact* arguments made at the administrative level, the administrative level petitioning and resulting CEQA lawsuit are inextricably intertwined.

In addition, because CEQA petitioners are *required* by statute to engage in the administrative level petitioning to achieve issue exhaustion before filing a lawsuit, the initial administrative petitioning is not a separate act. For example, in *Wellbutrin,* the Third Circuit noted that the serial petitioning charge in that case was "particularly inapt" because many of the alleged sham petitions were required by statute, and therefore were outside of the petitioner's control. *Id.* at 157-158. The court reasoned that "[w]e are not inclined to penalize a brand name manufacturer whose 'litigiousness was a product of [the statute]". *Id.* at 157-158 (citing to *Kaiser Found. Health Plan, Inc. v. Abbott Labs, Inc.,* 552 F.3d 1033, 1047 (9th Cir. 2009).

/ / /

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE:
RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

However, regardless of whether the administrative level petitioning is considered to be distinct predicate acts, a determination of whether the challenges are objectively baseless both rises and falls with the Court's analysis of whether the lawsuits themselves were objectively baseless. That is because the arguments made in the CEQA lawsuits cannot differ from the arguments made at the administrative level. Because Plaintiffs cannot show that any of those lawsuits were objectively baseless, neither can they show that the administrative level petitioning, wherein those same arguments were made, was objectively baseless.

**F.** **Plaintiffs Cannot Establish that the S-Defendants or N&A is a Market Rival**

Whether the series test should even apply in the RICO context remains in dispute, because it is an anti-trust concept. Employing the *USS-POSCO* series test in the RICO context essentially treats what is otherwise required to be a series of distinct predicate acts as a single event, which runs afoul of the RICO statutes. Nevertheless, if the series test can apply in the RICO context, the requirement that Defendants be "market rival(s)" of Plaintiffs is not met here.

Per USS-POSCO, the series test requires a determination that the parties are market rivals. The Court in *USS-POSCO* never had to make a finding that the two entities were competitors, because it ultimately found that Plaintiff had not carried its burden of showing that the defendant was a non-labor group, stripping the union of the statutory labor exemption for antitrust violations. The USS-POSCO Court said that "in most statutory labor exemption cases, the focus has been on whether the union combined with a competitor of the targeted employer", who in that case was the Plaintiff. The Court simply never reached the issue of whether the general contractor or union were market rivals. The Court *did*, however, affirm the "market rival" requirement of the sham litigation exception. *USS-POSCO,* 31 F.3d at 811; see also, e.g., *Evans Hotels, LLC v. Unite Here Loc. 30*, 433 F. Supp. 3d 1130, 1149 (S.D. Cal. 2020) (Granting motion to dismiss in part on the following: "…the Court cannot

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

conclude that Defendants filed the allegedly sham past lawsuits, or threatened to file future lawsuits, to "injure a market rival." *USS-POSCO Indus.*, 31 F.3d at 811. Unions and hotel developers are not market rivals. *See* ECF No. 19 ¶ 122 ("[T]he union is a business and its objective is to sign up members...."). The serial petition sham exception does not apply.)

Common sense dictates that a hotel developer is not a market rival of the owner of a single commercial building (Sunset), let alone a residential real estate brokerage that has never engaged in commercial development (N&A). TAC, ¶¶ 25, 111; SUF 2-3. Plaintiffs can offer no evidence that Sunset or N&A, and Plaintiffs, ever competed for developments, funding, customers or any other business pursuit. The fact that Sunset could one day sell its property to be developed is insufficient to establish the market rival element of the series test.

## IV.   **CONCLUSION**

For the reasons set forth herein and in Defendants' motions for summary judgment, the Court should grant summary judgment in favor of Defendants.

Dated: February 23, 2023                     **THE MALONEY FIRM, APC**

By:  _____/s/ Elizabeth T. Schaus_____
Patrick M. Maloney, Esq.
Gregory M. Smith, Esq.
Elizabeth T. Schaus, Esq.
Attorneys for Defendant,
NOURMAND & ASSOCIATES

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2381 Rosecrans Avenue, Suite 405, El Segundo, CA 90245.

I served true copies of the following document on the date listed below, described as **DEFENDANT, NOURMAND & ASSOCIATES' COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

## SEE SERVICE LIST

☐ <u>For Collection</u>.  By placing a true copy(ies) thereof enclosed in a sealed envelope(s), to the address(es) listed above and by placing said sealed envelope(s) for collection and mailing on that date following ordinary business practices. I am "readily familiar" with the business practice for collection and processing of correspondence for mailing the U.S. Postal Service.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.

☐ <u>Overnight Delivery</u>.  By placing a true copy(ies) thereof enclosed in a sealed envelope(s) or package(s) to the address(es) listed above and placing said envelope(s) or package(s) for collection with delivery fees provided for.

☒ <u>Electronic Service</u>.

    ☐  Via e-mail transmission to the email address(es) listed herein.

    ☒  Electronic Service [CM/ECF].  Via electronic service to the email address(es)/registered participants with the CM/ECF System.

☐ <u>Personal Delivery</u>.  I caused to be served by messenger for personal delivery that same day the foregoing documents in a sealed envelope to the persons at the address(es) listed above.

☒ <u>State</u>.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 23, 2023, at El Segundo, California.

_____
Marilyn Vigil

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

<div style="writing-mode: vertical;">THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507</div>

## <u>SERVICE LIST</u>

| | |
|---|---|
| Susan K. Leader, Esq.<br>Granville C. Kaufman, Esq.<br>Conor Tucker, Esq.<br>Mark Yohalem, Esq.<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>633 West Fifth Avenue, Suite 1550<br>Los Angeles, CA 90071-2027<br>T: (323) 210-2900 | F: (866) 974.7329<br>E: sleader@wsgr.com<br>E: gkaufman@wsgr.com<br>E: ctucker@wsgr.com<br>E: mark.yohalem@wsgr.com | Attorneys for Plaintiffs<br>RELEVANT GROUP, LLC;<br>1541 WILCOX HOTEL, LLC;<br>6516 TOMMIE HOTEL, LLC:<br>6421 SELMA WILCOX<br>HOTEL, LLC |
| Dale R. Bish, Esq.<br>Charles A. Talpa, Esq.<br>Karen Kwok, Esq.<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>T: (650) 493-9300 | F: (650) 565-5100<br>E: dbish@wsgr.com<br>E: Sctalpas@wsgr.com<br>E: kkwok@wsgr.com | |
| James H. Turken, Esq.<br>Neil P. Thakor, Esq.<br>Phillip R. Di Tullio, Esq.<br>Christopher Pelham, Esq.<br>NORTON ROSE FULBRIGHT US LLP<br>555 South Flower Street, Forty-First Floor<br>Los Angeles, CA 90071<br>T: (213) 892-9200 | (323) 892-9200<br>F: (213) 892-9494 | (323) 892-9400<br>E: james.turken@nortonrosefulbright.com<br>E: neil.thakor@nortonrosefulbright.com<br>E: christopher.pelham@nortonrosefulbright.com | Attorneys for Defendants<br>STEPHEN "SAEED"<br>NOURMAND and<br>THE SUNSET LANDMARK<br>INVESTMENT, LLC |

00206000

ii

**PROOF OF SERVICE**