Patrick M. Maloney – CSBN 197844
Gregory M. Smith – CSBN 259971
Elizabeth T. Schaus – CSBN 272258
**THE MALONEY FIRM, APC**
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
T: 310-540-1505 | F: 310-540-1507
E: pmaloney@maloneyfirm.com
E: gsmith@maloneyfirm.com
E: eschaus@maloneyfirm.com

Attorneys for Defendant
Nourmand & Associates

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10,<br><br>Defendants. | Case No.: 2:19-cv-05019 PSG(KSx)<br>Judge: Hon. Philips S. Gutierrez<br>Dept.: Courtroom 6A, 6th Floor<br>Filed: June 10, 2019<br><br>**DEFENDANT NOURMAND & ASSOCIATES' REPLY BRIEF IN SUPPORT OF COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>[*Filed concurrently with Response to Plaintiffs' Separate Statement; and Evidentiary Objections*]<br><br>Date: April 27, 2023<br>Time: 1:30 p.m.<br>Place: Courtroom 6A |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# <u>TABLE OF CONTENT AND AUTHORITIES</u>

I.     **INTRODUCTION** ................................................................1

II.    **LEGAL ARGUMENT** ........................................................4

    A. The Court Must Consider Only Plaintiffs' Four Alleged RICO Predicate Acts in Determining Which Sham Litigation Test Applies ...........................4

    B. Plaintiffs Cannot Meet the Requisite Numerosity for the *POSCO* Test........6

    C. Plaintiffs Ignore that Both *PRE* and *POSCO* Require a Determination of Objective Baselessness ........................................7

    D. Plaintiffs' Claims Fail as a Matter of Law Under Both The *PRE* and *POSCO* Tests ........................................10

    E. Plaintiffs Misinterpret *Koziol* .....................................12

    F. *POSCO's* Market Rival Element Applies in this RICO Case, and Plaintiffs Have Not Established that N&A is their Market Rival .................15

III.   **CONCLUSION** ...............................................................15

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1

# **TABLE OF AUTHORITIES**

2

**Cases**

3

4
*Acosta v. FCE Benefit Administrators, Inc.*,
2018 WL 11447534, at *5 (N.D. Cal. Jan. 22, 2018)..................................15

5

6
*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996) ...........................................................6, 7, 9

7

8
*Aviva USA Corp. v. Vazirani*,
632 F. App'x 885 (9th Cir. 2015) ..............................................................10

9

10
*Aydin Corp. v. Loral Corp.*,
718 F.2d 897 (9th Cir. 1983) ....................................................................11

11

12
*B&G Foods North America, Inc. v. Embry*,
29 F.4th 527 (9th Cir. 2022) .......................................................................9

13

14
*California Motor Transport Co. v. Trucking Unlimited*,
404 U.S. 508, 92 S.Ct. 609 (1972)..............................................................8

15

16
*Catch Curve, Inc. v. Venali, Inc.*,
2008 WL 11334024, at *6 (C.D. Cal. Nov. 3, 2008) ..................................9

17

18
*City of Columbia v. Omni Outdoor Advertising, Inc.*,
499 U.S. 365 (1991)................................................................................2, 3

19

20
*Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.*,
690 F.2d 1240 n. 25 (9th Cir. 1982) ...........................................................6

21

22
*CSX Transp., Inc. v. Gilkison*,
2012 WL 5906716, at *7 (N.D. W.Va. Nov. 26, 2012) .............................11

23

24
*ERBE Elektromedizin GmbH v. Canady Tech, LLC*,
629 F.3d 1278 (Fed. Cir. 2010) ..................................................................7

25

26
*Evans Hotels, LLC v. Unite Here Loc.*
*30*, 433 F. Supp. 3d 1130 (S.D. Cal. 2020) ...........................................6, 10

27

28
*Gen-Probe, Inc. v. Amoco Corp., Inc.*,
926 F. Supp. 948 (S.D. Cal. 1996)........................................................9, 14

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## <u>TABLE OF AUTHORITIES</u>

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.,*
 806 F.3d 162 (3rd Cir. 2015) ...................................................................................passim

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
868 F.3d 132 (3d. Cir. 2017) ...................................................................................7, 10

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.,*
552 F.3d 1033 (9th Cir. 2009 ....................................................................................8, 9

*Kottle v. Nw. Kidney Ctrs.*,
146 F.3d 1056 (9th Cir. 1998) ...................................................................................6, 9

*Limon v. Carpenters Loc. Union*
*721*, 2021 WL 4925444, at *5 (C.D. Cal. Jan. 11, 2021) ...........................................12

*Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC,*
404 F. Supp. 2d 1214 (E.D. Cal. 2005) ......................................................................12

*New West, L.P. v. City of Joliet*,
491 F.3d 717 (7th Cir. 2007) ......................................................................................11

*Primetime 24 Joint Venture v. Nat'l Broad., Co.,*
219 F.3d 92 (2d. Cir. 2000) ..........................................................................................7

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.,*
508 U.S. 49 (1993)...............................................................................................passim

*Sever v. Alaska Pulp Corp.*,
978 F.2d 1529 (9th Cir. 1992) ...................................................................................5, 10

*STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.*,
No. 10 Civ. 5023(JF) (PSG), 2011 WL 1362163, at *2 (N.D. Cal. Apr. 11, 2011) ....11

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991 (9th Cir.2008) .......................................................................................10

*U.S. Futures Exchange, L.L.C. v. Board of Trade of the City of Chicago, Inc.*
953 F.3d 955 (7th Cir. 2020) .......................................................................................4

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# <u>TABLE OF AUTHORITIES</u>

2

*United States v. Albertson*,

3   971 F. Supp. 837 (D. Del. 1997)........................................................14

4

*United States v. Koziol*,

5   993 F.3d 1160 n.12 (9th Cir. 2021) ..............................................12, 13, 14

6

*United States v. McFall*,

7   558 F.3d 951 (9th Cir. 2009) ...........................................................10

8

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg & Const. Trades Council*,

9   31 F.3d 800 (9th Cir. 1994) .......................................................passim

10

*Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local*

11   *27l*, 728 F.3d 354 (4th Cir. 2013) ........................................................7

12

*White v. Lee*,

13   227 F.3d 1214 (9th Cir. 2000) ...........................................................15

14

*Wonderful Real Est. Dev. LLC v. Laborers, Int'l Union of N. Am.*,

15   2020 WL 91998 at *10 (E.D. Cal. Jan. 8, 2020) .......................................6, 10

16

17   **Statutes**

18   18 U.S.C. §§ 1961-1968 ...................................................................5

19

20

21

22

23

24

25

26

27

28

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs have finally committed that they intend to attempt to prove four predicate acts at trial. But Plaintiffs also continue to argue that in determining what sham litigation test applies, "what should be counted is not 'lawsuits' filed but total 'proceedings,' which number nearly twenty." ECF 269-2, pg. 9. This argument makes no sense, particularly in a RICO case, where a plaintiff must prove distinct predicate acts. It also is not supported by any applicable legal authority.

Plaintiffs take this position because they hope to invoke the *POSCO*[1] test and not the *PRE*[2] test. They erroneously believe that, under *POSCO*, they do not have to show that any of the three filed lawsuits was objectively baseless. Plaintiffs cannot sustain their burden in this regard.  Plaintiffs' decision to settle two of the suits reveals their belief those matters were meritorious. The third suit is ongoing, and the only finding on the merits in that matter was a clear victory for Sunset. Nor do they establish that the fourth proceeding, an administrative appeal to which they are not a party, is a predicate act, let alone objectively baseless. Instead, Plaintiffs attempt to manufacture triable issues by presenting the court with hundreds of (improperly grouped) "undisputed facts" which almost exclusively bear on subjective intent. Even under Plaintiffs' authority, subjective intent is relevant only when the suits have first been demonstrated to be baseless. Many of these purported facts are irrelevant, lack foundation, or appear designed solely to inflame the court. When Plaintiffs do address litigation conduct, they argue about expense or delay (which plague all lawsuits, meritorious or not), or the success of earlier administrative "proceedings." Plaintiffs do not address the merits of the lawsuits themselves.

---

[1] *USS-POSCO Indus. v. Contra Costa Cnty. Bldg & Const. Trades Council*, 31 F.3d 800 (9th Cir. 1994) ("*POSCO*").

[2] *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993)("*PRE*").

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Plaintiffs also attempt to distract attention from the controlling law and persuasive authority by presenting incomplete case citations, or citations from cases in other circuits that have evaluated the sham litigation tests differently than the Ninth Circuit. Their campaign begins in the first paragraph of their brief, wherein Plaintiffs selectively cite to the Supreme Court case of *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991) (*Omni*), an antitrust action <u>predating</u> the Supreme Court's decision in *PRE* and the Ninth Circuit's decision in *POSCO*. Plaintiffs claim that under *Omni* the First Amendment does not protect those who use "government process—as opposed to the outcome of the process—as [a] weapon." *Id.* at 380. They claim "the classic example" of improperly weaponizing litigation is the "filing of frivolous objections to the license application of a competitor with no expectation of achieving denial of the license, but simply in order to impose expense and delay." Plaintiffs ignore that this relates *only* to the second, subjective motivation prong of *PRE*, which the Court need not reach unless it first finds the challenged conduct meritless:

> Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of the definition a court should focus on whether the baseless suit conceals "an attempt to interfere directly" with a competitor's business relationships, *Noerr, supra,* 365 U.S., at 144, 81 S.Ct., at 533, through the "use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon," *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380, 111 S.Ct. 1344, 1354, 113 L.Ed.2d 382. This two-tiered process requires a plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* viability. Pp. 1925–1929.

In fact, the Supreme Court later explained that its decision in *Omni* "dispelled the notion that an antitrust plaintiff could prove a sham merely by showing that its

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

competitor's 'purposes were to delay [the plaintiff's] entry into the market and even to deny it a meaningful access to the appropriate ... administrative and legislative fora.'" *PRE*, 508 U.S. at 59–60, 113 S.Ct. 1920 (quoting *Omni*). In other words, a litigants' subjective intent is relevant only when the challenged conduct lacks merit. Analyzing the intent before the merits would eviscerate the right to petition embodied in the First Amendment.

Plaintiffs' Supplemental Brief is heavy on the "facts" they claim show improper motive, but light on the law compelling a finding that the asserted predicate acts were sham lawsuits undeserving of First Amendment protection. Controlling Ninth Circuit authority and persuasive authority establishes that the *PRE* test applies to the facts of this case. Irrespective, objective baselessness is an essential component of both the *PRE* and *POSCO* tests. Thus, Plaintiffs' claims fail under either test. The Schrader appeal cannot be a predicate act or a sham because it does not involve Plaintiffs' property. Plaintiffs settled the Thompson and Tommie lawsuits, with a single settlement payment. None of the lawsuits were adjudicated as lacking in merit. Sunset obtained a victory in the Thompson lawsuit which precipitated the settlement, and a victory on the merits in the Selma lawsuit. Other litigants also filed lawsuits challenging the issuance of a MND for the Tommie and Selma hotel projects, lending substantial support to the notion that others perceived issues with those projects.

Controlling Ninth Circuit authority also reflects that civil RICO liability cannot be based on litigation conduct in prior or continuing civil litigation. It most certainly cannot be based on the litigation conduct at issue in this case. Sunset filed CEQA lawsuits for which it had standing and plausible legal and factual arguments, and for which it could have obtained the relief prayed for in the lawsuits if it had prevailed. That Plaintiffs made the business decision to pay Sunset to settle the suits is irrelevant to the analysis. Plaintiffs were free to proceed to trial on the merits in any of the CEQA actions rather than settle, and they chose not to. Indeed, if the suits were truly "baseless," Plaintiffs would certainty have prevailed at trial.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Finally, notably absent is any evidence that N&A was a party to any of the lawsuits, a beneficiary of any of the settlement agreements, a participant in the operation or management of the affairs of the alleged enterprise, or a market rival of Plaintiffs. Plaintiffs have failed to sustain their burden on summary judgment as to any defendant, and most certainly have failed as to N&A.

## II.   LEGAL ARGUMENT

### A.   The Court Must Consider Only Plaintiffs' Four Alleged RICO Predicate Acts in Determining Which Sham Litigation Test Applies

Plaintiffs cannot invoke the sham litigation test to magically transform their *four* RICO predicate acts into ***nearly twenty***. Plaintiffs cite to no RICO case in which a court has considered litigation conduct *other* than the alleged predicate acts in determining whether the *PRE* or the *POSCO* sham litigation test applies. Even in the antitrust context, similar arguments have been rejected.  For example, in *U.S. Futures Exchange, L.L.C. v. Board of Trade of the City of Chicago, Inc.* 953 F.3d 955 (7th Cir. 2020), with respect to lobbying efforts. There, the Seventh Circuit made specific reference to *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.,* 806 F.3d 162 (3rd Cir. 2015), upon which Plaintiffs primarily rely to argue for application of the series sham litigation test. Rejecting the same type of argument Plaintiffs make here, the Seventh Circuit stated as follows:

> Just as motions within a lawsuit support the lawsuit's objective, individual lobbying efforts play a part in obtaining the ultimate desired legislative action. But in neither scenario do multiple filings, submissions, or other efforts transform one lawsuit or proceeding into many. See, e.g., *Hanover*, 806 F. 3d at 169 and 181 (applying "pattern" standard where defendants initiated four distinct legal proceedings, but counting multiple letters submitted to a state agency as *one proceeding*.)

*Id.* at 955-956.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Further, the inquiry in the antitrust arena is significantly different than in a RICO case. The RICO statute is a specialized statute that provides for extended criminal and civil penalties, including treble damages and attorneys' fees, for separate predicate acts performed as part of an ongoing criminal organization, and which together demonstrate the existence or threat of continued criminal activity. 18 U.S.C. §§ 1961-1968. More to the point, in an antitrust case the court is tasked with ascertaining whether the defendant engaged in a singular course of conduct that injures competition. Conversely, in a RICO case, the plaintiff must prove a multitude of separate and distinct, but related, felonies. By relying on the *POSCO* test, Plaintiffs hope to avoid the requirement of establishing that each predicate act, is in and of itself, objectively baseless and thus a separate act of felony extortion unworthy of First Amendment protection.

Similarly, the relevant inquiry can only be the identified predicate acts, not the collective conduct that is part and parcel of a single predicate act. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992). If Plaintiffs assert *four* predicate acts in a RICO case, then in determining what sham litigation test applies, the law overwhelmingly supports that the number considered can be no more than *four*.

In their Supplemental Briefs, N&A and the S-Defendants have also extensively discussed several additional grounds, separate and apart from the fact this is a RICO case, for why the Court should not count the administrative level petitioning in determining which sham litigation test applies. <u>First</u>, until it becomes a lawsuit, the permitting process is non-judicial, and thus there is no such thing as a "sham" request for official action by a non-judicial body, such as a permitting board or city council, that can grant or deny approval based on non-objective factors. See ECF 270, pg. 11. <u>Second</u>, the administrative level petitioning is required by statute and thus cannot be considered a sham. See ECF 273, pg. 23. <u>Third</u>, the arguments made in the CEQA lawsuits cannot be different from those made during the administrative level petitioning. See ECF 273, pg. 24. Thus, Plaintiffs' effort to claim nearly twenty

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

proceedings grossly and erroneously overstates the actual number of proceedings.

## B. Plaintiffs Cannot Meet the Requisite Numerosity for the *POSCO* Test

Plaintiffs also argue that determining which sham litigation test applies "means more than just counting." ECF 269-2, pg. 10, ln. 8. The only controlling authority on which they rely, *Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1256 n. 25 (9th Cir. 1982), is inapposite. The case pre-dates both *PRE* and *POSCO*, and simply holds that in an antitrust case, a single suit or a single protest before a government body is sufficient to invoke the sham litigation exception to *Noerr-Pennington* immunity. *Id*. at 1254-1256. This, of course, makes sense in the antitrust realm, where the focus is on injury to competition – which can occur with a single lawsuit – but not in the RICO arena where the plaintiffs bear the burden of establishing a multitude of separate felonies to meet the burden of establishing a pattern of predicate acts. Similarly, as discussed in both N&A and the S-Defendants' Supplemental Briefs, controlling Ninth Circuit precedent establishes that *PRE* is *not* limited to the filing of a single lawsuit.

Contrary to Plaintiffs' position, counting is exactly what the court must do in determining which sham litigation test applies. While there is no bright line rule in the Ninth Circuit, the court has held that two lawsuits are not enough, and a handful of lawsuits are not enough, to invoke the *POSCO* test. *Amarel v. Connell*, 102 F.3d 1494, 1519 (9th Cir. 1996); *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir. 1998). *USS-POSCO* involved twenty-nine lawsuits. Here Plaintiffs' four allegedly sham lawsuits are, in actuality, only three. Plaintiffs' brief does not provide any authority for counting petitions against *other* parties, as they do with the Schrader appeal. District courts within the Ninth Circuit (and even the Third Circuit which decided *Hanover*) have rejected Plaintiffs' argument. *Evans Hotels, LLC v. Unite Here Loc. 30*, 433 F. Supp. 3d 1130, 1149 (S.D. Cal. 2020); *Wonderful Real Est. Dev. LLC v. Laborers, Int'l Union of N. Am.*, 2020 WL 91998 at *10 (E.D. Cal. Jan. 8, 2020); *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 157 (3d. Cir.

2017). Thus, Plaintiffs have not established that the *POSCO* test governs.

Furthermore, several other circuits have reached similarly conclusions. The Federal Circuit has held that three lawsuits do not constitute a series. *ERBE Elektromedizin GmbH v. Canady Tech, LLC*, 629 F.3d 1278, 1291-1292 (Fed. Cir. 2010). The Second Circuit has applied the series test only where there were "voluminous" legal challenges. *See Primetime 24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 101 (2d. Cir. 2000).

Plaintiffs rely on decisions from the Third and Fourth Circuits which contradict relevant Ninth Circuit authority. Citing *Hanover*, a Third Circuit case, Plaintiffs argue that four lawsuits are enough to invoke the *POSCO* test. They cite *Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27l*, 728 F.3d 354 (4th Cir. 2013) to argue that the focus is not on any single case, but rather "holistic." However, in both cases the Third Circuit and Fourth Circuit seemingly concluded that *PRE* only applies where a *single* sham proceeding has been alleged. *Hanover*, 806 F.3d at 180; *Waugh*, 728 F.3d at 363-364. The Ninth Circuit, however, has not limited *PRE* in this regard. Rather, the Ninth Circuit holds that even two lawsuits are not enough to jettison the *PRE* test in favor of *POSCO*. *Amarel*, 102 F.3d at 1519. Certainly the Ninth Circuit, which actually formulated the *POSCO* test, knows better than the Third and Fourth Circuits how the test should apply.

## C. Plaintiffs Ignore that Both *PRE* and *POSCO* Require a Determination of Objective Baselessness

Plaintiffs do not dispute that *PRE* requires a determination that each lawsuit was objectively baseless to avoid *Noerr Pennington* immunity. They do, however, continue to ignore that objective baselessness is a critical component of the *POSCO* test, because they know that they cannot establish that the challenged suits were not objectively baseless. As expected, Plaintiffs continue to put all their eggs in one basket, relying on *Hanover* to argue that "the correct *Noerr-Pennington* analysis here is "holistic" not piecemeal: whether the Defendants' overall course of conduct is

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

protected, not whether any particular claim or act is defensible." Plaintiffs' argument is not supported by *Hanover* itself, nor any controlling caselaw.

As discussed in N&A's Supplemental Brief, the Supreme Court's decisions in both *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609 (1972) and *PRE* affirm that objective baselessness is the first step of the sham litigation exception inquiry. In *PRE*, the Court described *California Motor* as requiring courts to draw the "difficult line" that separates objectively reasonable claims from patterns of "*baseless*, repetitive claims" before finding a sham. *PRE,* 508 U.S. at 58 (emphasis added). The Supreme Court further stated in *PRE* that "[o]ur decisions therefore establish that the legality of objectively reasonable petitioning "directed toward obtaining governmental action" is "not at all affected by any anticompetitive purpose [the actor] may have had." *Id.* (internal citations omitted). This also applies when *Noerr-Pennington* immunity is invoked in other contexts. *Id.*

Consistent with *California Motor* and *PRE*, the Ninth Circuit in *POSCO* began its evaluation of the sham litigation test by analyzing the merits of the twenty-nine lawsuits alleged, concluding that fifteen of the twenty-nine lawsuits turned out to have merit. *POSCO*, 31 F.3d at 811. The court held that "[g]iven that the plaintiff has the burden in litigation, a batting average exceeding .500 cannot support plaintiff's theory. Plaintiff therefore cannot sustain its burden of showing that the lawsuits fall within the sham litigation exception." *Id.* The Ninth Circuit engaged in *no further* analysis. The court did not look to, for example, whether the lawsuits included "voluminous" or "boilerplate" allegations, whether the antitrust defendant had a "genuine interest" in the merits of the case, or the nature of any settlement demands in the lawsuits. The court confirmed the objective baselessness requirement by stating that "[i]f more than an insignificant number of filings have objective merit, a defendant likely did not have a policy of filing "willy-nilly without regard to success." *See USS–POSCO,* 31 F.3d at 811. Further, in *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.,* 552 F.3d 1033, 1046 (9th Cir. 2009), the Ninth Circuit found that the plaintiffs' claims failed under

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1    either sham test where the defendant "won seven of the seventeen suits" and each of

2    the ten remaining cases "had a plausible argument on which it could have prevailed."

3          District courts within the Ninth Circuit applying *POSCO* have also held that

4    when a series of sham lawsuits are alleged, the plaintiff "must demonstrate objective

5    baselessness because the pattern of claims must be baseless as a whole." *Gen-Probe,*

6    *Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 958-959 (S.D. Cal. 1996); see also *Catch*

7    *Curve, Inc. v. Venali, Inc.*, 2008 WL 11334024, at *6 (C.D. Cal. Nov. 3, 2008)

8    ("Whether the lawsuits at issue are baseless is a component of the USS-POSCO

9    approach."). Even in *Hanover*, the court made individual determinations of whether

10   the subject petitions were objectively baseless, before looking to whether the lawsuits

11   were brought to redress any actual grievances or, alternately, for an ulterior motive.

12         Both sham tests clearly require a determination of whether the accused's'

13   lawsuit(s) were objective baseless. The difference is that when evaluating a series of

14   lawsuits, a determination that a *single* lawsuit in the series is not objectively baseless

15   may not end the inquiry. *USS-POSCO*, 31 F.3d at 811 ("When dealing with a series of

16   lawsuits, the question is not whether any *one* of them has merit—some may turn out

17   to, just as a matter of chance—but whether they are brought pursuant to a policy of

18   starting legal proceedings without regard to the merits and for the purpose of injuring

19   a market rival" (emphasis added). The Ninth Circuit has repeatedly cited to this in

20   subsequent cases evaluating application of *PRE* versus *POSCO. See, e.g., Amarel*, 102

21   F.3d 1494, 1519 (9th Cir. 1996); *Kottle*, 146 F.3d 1056, 1060 (9th Cir. 1998); *Kaiser*

22   *Foundation*, 552 F.3d 103, 1046 (9th Cir. 2009); *B&G Foods North America, Inc. v.*

23   *Embry*, 29 F.4th 527, 539 (9th Cir. 2022). Again, certainly the Ninth Circuit, which

24   actually formulated the *POSCO* test, knows better than other circuits how the test

25   should apply.

26   / / /

27   / / /

28   / / /

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**D.**    **Plaintiffs' Claims Fail as a Matter of Law Under Both The *PRE* and *POSCO* Tests**

Plaintiffs cannot meet their burden, on summary judgment or otherwise, of demonstrating that the Thompson lawsuit or the Tommie lawsuit were shams. Nor can they establish sufficient RICO predicate acts to show a pattern of racketeering.

The Schrader appeal did not involve a project owned by Plaintiffs, and therefore cannot constitute a sham. *Evans Hotels, supra*, 433 F. Supp. 3d at 1149; *Wonderful Real Est. Dev.*, 2020 WL 91998 at *10; *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d at 157. Plaintiffs claim that the Schrader Project was "a Relevant project" when the appeal was filed. SSF105-107. Yet, their own evidence shows that claim to be false.[3] Because no defendant attempted to appropriate Plaintiffs' property, the Schrader appeal cannot constitute a RICO predicate act of attempted extortion. *United States v. McFall*, 558 F.3d 951, 957 (9th Cir. 2009). Plaintiffs' Brief offers no legal authority to the contrary. Furthermore, the Schrader appeal was withdrawn by Sunset.

The Thompson and Tommie lawsuits culminated in a single allegedly extortionate payment, and therefore constitute a single predicate act. *Sever*, 978 F.2d at 1535; See *Aviva USA Corp. v. Vazirani*, 632 F. App'x 885, 888-89 (9th Cir. 2015) (one predicate act—and thus no viable RICO claim—where plaintiff alleged only "[a] series of steps that were part of a single plan" to extort plaintiff). Further, because Plaintiffs chose to settle the lawsuits, they were *not* objectively baseless. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir.2008); *New*

---

[3] Per Plaintiffs' evidence in support of SSF 105-107, the Hollywood International Regional Center LLC ("HIRC"), not any of the plaintiffs, entered into a Purchase Agreement for the Schrader Project. There is no evidence supporting the claim that HIRC is "an affiliate of Relevant"). The Purchase Agreement allowed for HIRC to pay a $1M non-refundable deposit for an option to purchase the property for an additional $20M. No evidence is provided to show the deposit was ever paid. Regardless, HIRC failed to pay the additional $20M. Thus, neither Relevant nor HIRC ever owned or had an ownership interest in the Schrader Project. The Schrader Project was never "a Relevant project" based upon the evidence provided.

*West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007); *STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.*, No. 10 Civ. 5023(JF) (PSG), 2011 WL 1362163, at *2 (N.D. Cal. Apr. 11, 2011). Plaintiffs' reliance on a single, *unreported*, district court case in the northern district of West Virginia (within the Fourth Circuit) for the proposition that a settlement agreement is not conclusive evidence of merit, *CSX Transp., Inc. v. Gilkison*, 2012 WL 5906716, at *7 (N.D. W.Va. Nov. 26, 2012), is unavailing. Plaintiffs cite to no controlling or even persuasive legal authority wherein a court found a settled lawsuit to be a sham. It would be absurd to allow a litigant to settle to avoid a trial, and then maintain an extortion lawsuit because the case was never tried on the merits.

None of the lawsuits have been adjudicated in Plaintiffs' favor, at trial, on summary judgment, on a motion to dismiss, or any other time. Therefore, they cannot be shams. *New West, L.P,* 491 F.3d at 722 (rejecting plaintiff's argument that defendant filed sham lawsuits when none had been adjudicated in plaintiff's favor). The Selma lawsuit is still pending, and on this ground alone cannot be a sham. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 903 (9th Cir. 1983) (granting summary judgment; it was premature to find pending lawsuit a sham). Further, Defendants can point to victories in both the Thompson and Selma lawsuits. Plaintiffs' attempts to minimize those wins are meritless. In the Thompson lawsuit, the only substantive ruling was a tentative ruling, the day of the settlement and the day before trial, wherein the Court determined that the City's failure to analyze the correct version of the hotel plans may have "prejudiced petitioners' rights under CEQA." SUF 14-16. In the Selma lawsuit, Plaintiffs' claim that the interlocutory order was not a win for Sunset, when the Court held that "the City's decision to adopt an MND was an abuse of discretion" and remanded the matter to the City with instructions that they could prepare an EIR, is absurd. SUF 21. Plaintiffs cannot point to any of their own purported "wins" in which the Court ruled, let alone indicated, that any of Sunset's lawsuits lacked merit.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

Finally, the facts that (1) the parties' experts disagree as to whether the lawsuits had merit, (2) other litigants filed CEQA lawsuits asserting that the MND was improperly approved, and (3) at least one other litigant obtained an order in the Tommie lawsuit that "the MND is defective and cannot be upheld," SUF 23, evidences that other litigants reasonably expected success on the merits. It is Plaintiffs who bear the burden of demonstrating triable issues as to the application of the sham litigation exception on summary judgment, and they have wholly failed to do so.

Plaintiffs also argue they need not show that the entirety of any of the suits were objectively baseless. Not so. As to each CEQA lawsuit, Plaintiffs must show that the entire lawsuit was objectively baseless. *Limon v. Carpenters Loc. Union 721*, 2021 WL 4925444, at *5 (C.D. Cal. Jan. 11, 2021) ("Further, it is not enough for Limon to show that a single claim is objectively baseless. The "*lawsuit* must be objectively baseless." *PRE*, 508 U.S. at 60 (emphasis added); see also *Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*, 404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005) (an "allegation that a single claim is objectively baseless does not bring [the] filing of the entire complaint within the sham exception").

### E.   Plaintiffs Misinterpret *Koziol*

Plaintiffs make limited reference to the Ninth Circuit's decision in *United States v. Koziol*, 993 F.3d 1160, 1172 n.12 (9th Cir. 2021). When they do, Plaintiffs argue that, even if the Thompson and Tommie lawsuits were not meritless, those lawsuits were improper because Plaintiffs agreed to pay money in settlement. Plaintiffs even argue that the incongruity between a person's settlement demand and the available recovery is "probative evidence" that the litigation is a sham, and "almost inherently seeks a payoff based on "the litigation process rather than through [any] *result* of that process. *Id.* at pg. 3, pg. 12, pg. 18.

Plaintiffs' analysis of *Koziol* is fundamentally incorrect. In *Koziol*, the Ninth Circuit explicitly did *not* address whether Koziol's threats of sham litigation were wrongful under the Hobbs Act; rather, only that the ends were wrongful. *Id.* at 1170.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

The *Koziol* court explained "we need not decide whether the means that Koziol employed in his threats (baseless threats of sham litigation using falsified evidence and deceit) were 'wrongful' under the Hobbs Act because he sought to obtain money to which he knew he had no lawful claim and, thus, the ends were 'wrongful.'" *Id*.

Plaintiffs' citations to *Koziol* also highlight its striking dissimilarities with the instant case. In the section of the opinion cited by Plaintiffs, the Ninth Circuit rejected Koziol's argument that his litigation threats did not rise to a sham because he did not act with improper motive; instead he sought "the outcome of a successful lawsuit [ ]— a cash settlement." The court determined that Koziol's failure to file the threatened lawsuit demonstrated that he acted with an improper motive, because he "hoped to enforce his claim 'through the threat of litigation rather than through action litigation' and therefore sought to achieve his 'aim[s] through the litigation process rather than through the *result* of that process." *Koziol*, *supra*, 993 F.3d at 1171-1172.

Importantly, Koziol did not argue his litigation threats were meritorious. He couldn't. "Koziol fabricated evidence, lied about the existence of evidence, and knew that his claims were baseless, all of which further demonstrates that his threats to file a lawsuit were made with an improper motive. From this evidence, we conclude that Koziol knew that his threatened lawsuit could never prove fruitful if brought before a jury, which is why he attempted to intimidate the entertainer into a settlement based on admittedly falsified evidence and an implied threat that scandalous allegations in a publicly filed lawsuit would irrevocably damage the entertainer's reputation and livelihood. Therefore, we reject Koziol's argument that his litigation threats did not rise to the level of a sham as a matter of law." *Id.* at 1172.

Here, unlike *Koziol*, Sunset filed lawsuits. Here, unlike *Koziol*, Sunset's lawsuits could have proven fruitful at trial because Sunset had standing to file the lawsuits, and the disputes were not based upon fabricated events. Further, Sunset's lawsuits sought relief to which it would have been entitled, had it prevailed at trial.

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

1   Plaintiffs' argument regarding "incongruity" is based exclusively upon a
2   footnote in *Koziol*. *Id.* at fn. 12.  In the footnote, the court explained that had Koziol
3   filed the lawsuit, this alone would not have entitled him to *Noerr-Pennington*
4   immunity, because the incongruity between his settlement demands and the *complaint*
5   would be probative evidence of sham litigation as well, especially when considered
6   with the evidence that *Koziol knew he had no lawful claim to the settlement he*
7   *demanded*..." *Id.* at 1172 n.12 (emphasis added). Significantly, *Koziol* does *not* hold
8   that a settlement negotiated with the assistance to competent counsel that includes
9   consideration that could not be obtained by judgment is a sham, as Plaintiffs intimate.

10   Plaintiffs argue that Sunset's actual objective was to achieve the settlement that
11   Plaintiffs ultimately *offered* and *negotiated*, through their counsel. This is silly; most
12   lawsuits generate settlement discussions. *Gen-Probe,* 926 F. Supp. at 959 ("While an
13   allegation that a lawsuit was brought in order to inflict harm upon a market rival might
14   provide an adequate basis for asserting an antitrust or unfair competition claim, simply
15   alleging that a lawsuit is brought for the purpose of inducing settlement negotiations is
16   insufficient: this could be said of any lawsuit"). Further, a defendant does not commit
17   extortion by accepting payment to settle an opposition to a development project. See,
18   e.g., *United States v. Albertson*, 971 F. Supp. 837, 846, 850 (D. Del. 1997). If
19   Plaintiffs wanted to avoid paying money to settle the cases, their option was to go to
20   trial, and secure a victory in the cases they assert were objectively baseless.

21   Plaintiffs also argue that the imposition of liability here would not burden the
22   exercise of any First Amendment rights. Of course it would. Litigants would expose
23   themselves to civil RICO liability any time they settle a lawsuit and the other side has
24   buyer's remorse. As the Ninth Circuit correctly noted, "[t]he reality is that litigating
25   parties often accuse each other of bad faith. The prospect of such civil cases ending as
26   criminal prosecutions gives us pause." *Id.* at 1175 (citings omitted).

27   At bottom, *Koziol* does not support Plaintiffs' arguments. *Koziol* and its
28   progeny overwhelmingly establish that litigation tactics or activities in civil litigation,

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

cannot constitute Hobbs Act extortion or establish RICO liability.  That is particularly so based upon the striking differences between the facts of *Koziol* and the facts of this case, which further implicate the host of policy concerns discussed in *Koziol*: ensuring access to the courts, promoting finality, and avoiding collateral litigation. *Id.* at 1174.

### F.    *POSCO's* Market Rival Element Applies in this RICO Case, and Plaintiffs Have Not Established that N&A is their Market Rival

Plaintiffs' Supplemental Brief states in a footnote that it is not necessary to establish that Plaintiffs and Defendants are market rival. However, no controlling legal authority has disposed of the market rival requirement of the *POSCO* test. Most certainly N&A, as a residential real estate developer, is not a market rival of Plaintiffs. Plaintiffs must prove all of the elements of their RICO claims against each defendant. Thus, they must establish that N&A is a market rival, and have wholly failed to do so.

## III.   CONCLUSION

The Ninth Circuit requires courts to approach the sham litigation exception to *Noerr-Pennington* with caution. *Acosta v. FCE Benefit Administrators, Inc.*, 2018 WL 11447534, at *5 (N.D. Cal. Jan. 22, 2018). The Ninth Circuit has held that a conclusion in any *Noerr-Pennington* case that the litigation is objectively baseless must be reached with "great reluctance," "as doing so would leave the action without the ordinary protections afforded by the First Amendment." *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000). Plaintiffs have failed to meet their burden of proof on summary judgment, and have failed to establish that the sham litigation exception authorizes their RICO lawsuit against N&A. For these reasons, summary judgment should be granted in favor of N&A, and against Plaintiffs.

Dated: March 23, 2023

THE MALONEY FIRM, APC

By: _____*Elizabeth Schaus*_____
Patrick M. Maloney, Esq.
Elizabeth T. Schaus, Esq.
Attorneys for Defendant,
NOURMAND & ASSOCIATES

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2381 Rosecrans Avenue, Suite 405, El Segundo, CA 90245.

I served true copies of the following document on the date listed below, described as **DEFENDANT NOURMAND & ASSOCIATES' REPLY BRIEF IN SUPPORT OF COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

## **SEE SERVICE LIST**

☐ <u>For Collection</u>. By placing a true copy(ies) thereof enclosed in a sealed envelope(s), to the address(es) listed above and by placing said sealed envelope(s) for collection and mailing on that date following ordinary business practices. I am "readily familiar" with the business practice for collection and processing of correspondence for mailing the U.S. Postal Service. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.

☐ <u>Overnight Delivery</u>. By placing a true copy(ies) thereof enclosed in a sealed envelope(s) or package(s) to the address(es) listed above and placing said envelope(s) or package(s) for collection with delivery fees provided for.

☒ <u>Electronic Service</u>.

   ☐ Via e-mail transmission to the email address(es) listed herein.

   ☒ Electronic Service [CM/ECF]. Via electronic service to the email address(es)/registered participants with the CM/ECF System.

☐ <u>Personal Delivery</u>. I caused to be served by messenger for personal delivery that same day the foregoing documents in a sealed envelope to the persons at the address(es) listed above.

☒ <u>State</u>. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 23, 2023, at El Segundo, California.

_____
Marilyn Vigil

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## <u>SERVICE LIST</u>

| | |
|---|---|
| Susan K. Leader, Esq.<br>Granville C. Kaufman, Esq.<br>Conor Tucker, Esq.<br>Mark Yohalem, Esq.<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>633 West Fifth Avenue, Suite 1550<br>Los Angeles, CA 90071-2027<br>T: (323) 210-2900 \| F: (866) 974.7329<br>E: sleader@wsgr.com<br>E: gkaufman@wsgr.com<br>E: ctucker@wsgr.com<br>E: mark.yohalem@wsgr.com | Attorneys for Plaintiffs<br>RELEVANT GROUP, LLC;<br>1541 WILCOX HOTEL, LLC;<br>6516 TOMMIE HOTEL, LLC:<br>6421 SELMA WILCOX<br>HOTEL, LLC |
| Dale R. Bish, Esq.<br>Charles A. Talpa, Esq.<br>Karen Kwok, Esq.<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>T: (650) 493-9300 \| F: (650) 565-5100<br>E: dbish@wsgr.com<br>E: Sctalpas@wsgr.com<br>E: kkwok@wsgr.com | |
| James H. Turken, Esq.<br>Neil P. Thakor, Esq.<br>Phillip R. Di Tullio, Esq.<br>Christopher Pelham, Esq.<br>NORTON ROSE FULBRIGHT US LLP<br>555 South Flower Street, Forty-First Floor<br>Los Angeles, CA 90071<br>T: (213) 892-9200 \| (323) 892-9200<br>F: (213) 892-9494 \| (323) 892-9400<br>E: james.turken@nortonrosefulbright.com<br>E: neil.thakor@nortonrosefulbright.com<br>E: christopher.pelham@nortonrosefulbright.com | Attorneys for Defendants<br>STEPHEN "SAEED"<br>NOURMAND and<br>THE SUNSET LANDMARK<br>INVESTMENT, LLC |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00207388

ii

PROOF OF SERVICE