Patrick M. Maloney – CSBN 197844
Gregory M. Smith – CSBN 259971
Elizabeth T. Schaus – CSBN 272258
**THE MALONEY FIRM, APC**
2381 Rosecrans Avenue, Suite 405
El Segundo, California 90245
T: 310-540-1505 | F: 310-540-1507
E: pmaloney@maloneyfirm.com
E: gsmith@maloneyfirm.com
E: eschaus@maloneyfirm.com

Attorneys for Defendant,
NOURMAND & ASSOCIATES

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC, a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10,<br><br>Defendants. | Case No.: 2:19-cv-05019 PSG(KSx)<br>Judge: Hon. Philips S. Gutierrez<br>Dept.: Courtroom 6A, 6th Floor<br>Filed: June 10, 2019<br><br>**DEFENDANT, NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>[*Filed concurrently with Reply; and Evidentiary Objections*]<br><br>Date: April 27, 2023<br>Time: 1:30 p.m.<br>Place: Courtroom 6A |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Defendant Nourmand & Associates ("N&A") hereby submits the following responses to Plaintiffs' Supplemental Statement of Facts:

| | Plaintiffs' Supplemental Separate Statement of Facts | N&A's Response and Supporting Evidence |
|---|---|---|
| 1. | Saeed Nourmand ("Nourmand") founded Nourmand & Associates ("N&A") in the 1970s. | Undisputed. |
| 2. | Saeed Nourmand's wife, Myra Nourmand, owns N&A. | Undisputed that Myra Nourmand is an owner of N&A.<br><br>The evidence does not support the proffered fact that Myra Nourmand is Saeed Nourmand's wife. Therefore, this fact is disputed, but immaterial.<br><br>Disputed to the extent the fact implies that Myra Nourmand is the sole owner of N&A, but immaterial.<br><br>**N&A's Evidence**<br>Declaration of Michael Nourmand, ECF 123-4, ¶ 4 [Since the sale, N&A has been owned by me, my siblings and [Myra Nourmand]."]<br><br>**Plaintiffs' Evidence**<br>Ex. 5 [JX291] ¶¶ 1-2 |
| 3. | N&A markets itself as a "family-run business." | Undisputed but immaterial. |
| 4. | Through his company, The Sunset Landmark Investment LLC ("Sunset Landmark"), Nourmand owns five contiguous parcels of land in Hollywood, | Undisputed. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | | |
|---|---|---|---|
| | | located at the northeast corner of Sunset Boulevard and Schrader Boulevard (the "Sunset Property"). | |
| 5. | | The Sunset Property includes a parking lot, a nightclub, an outdoor courtyard and multiple structures, including a nine-story building known as the Hollywood Athletic Club ("HAC"). It also includes a residential structure that Sunset wants to demolish. | Disputed that the Sunset Property presently includes a nightclub, on the grounds the evidence does not support the proffered fact, but immaterial.<br><br>Undisputed that the Sunset Property includes a parking lot, an outdoor courtyard, and multiple other structures, including a nine-story building known as the Hollywood Athletic Club.<br><br>Undisputed that Sunset presently wants to demolish a residential structure on the Sunset Property, but immaterial. |
| 6. | | HAC is a former hotel that is used as an event space for weddings, banquets, business meetings and conferences. | Undisputed.<br>The HAC was used as a hotel in the 1920's. There is no evidence that the Hollywood Athletic Club ever operated as a hotel while owned by Sunset Landmark. |
| 7. | | During the relevant time period, the nightclub on the Sunset Property, known as Boulevard3, consisted of 13,900 square feet of indoor floor space, a dance hall and an outdoor courtyard with a full liquor license, live entertainment, and an approved occupancy load of 900 persons. Nourmand was an owner of Boulevard3 and received $10,000 to $60,000 in monthly profits from its operations. | Disputed that Saeed Nourmand was an owner of Boulevard3, as the evidence does not support the proffered fact.<br><br>Undisputed that at one time Boulevard3 was a tenant of Sunset Landmark. Undisputed that Boulevard3 had an indoor and outdoor space, was able to serve liquor, and had a dance hall.<br><br>Undisputed for purposes of this motion that Saeed Nourmand was a partner of Boulevard 3 and would receive a share of the profit generated by Boulevard 3, which varied, as each month was |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | | |
|---|---|---|---|
| | | | different, from like $10,000 to like $60,000.<br><br>Undisputed that the space was 13,900 square feet or had an approved occupancy load of 900 persons, as the evidence does not support the proffered facts, but immaterial. |
| 8. | | Nourmand has wanted to develop the Sunset Property, including the parking lot thereon, and he pursued various opportunities to do so. | Undisputed that Saeed Nourmand has considered other proposed uses for the Sunset Property, including developing the Sunset Property, and engaged in communications in this regard, but immaterial.<br><br>Disputed that Saeed Nourmand "has wanted to develop the Sunset Property" and "he pursued various opportunities to do so," on the grounds the evidence does not support any other proffered these proffered facts, but immaterial. |

## PLAINTIFFS

| | | | |
|---|---|---|---|
| 9. | | Richard Heyman and Grant King formed Relevant Group, LLC ("Relevant") in 2007 in order to develop a hotel in Hollywood, which eventually became known as the Dream Hotel Hollywood (the "Dream"). | Undisputed. |
| 10. | | Relevant lost the Dream property to foreclosure during the financial crisis of 2008. Subsequently, Relevant began raising funds through the EB-5 investment program, which it used to repurchase the property and resume development. | Undisputed. |

| 11. | After successfully funding its reacquisition of the Dream, Relevant sought to develop four other hotel projects in the heart of Hollywood, including the "Thompson Project" at 1541 Wilcox Avenue, the "Tommie Project" at 6516 Selma Avenue, the "Selma Project" at 6421 Selma Avenue, and the "Schrader Project" at 1600 Schrader Boulevard. | Undisputed. |
|---|---|---|
| 12. | Relevant contributes capital to its project entities. However, Relevant is largely dependent on outside funding for its projects, including through bank loans, construction loans, and capital raised through the EB-5 program. Due to its funding structure, Relevant is particularly vulnerable to project delays. | Disputed that Relevant's funding structure is particularly vulnerable to project delays, on the grounds the evidence does not support the proffered fact. |
| 13. | Beginning in 2015, Defendants challenged and delayed Relevant's four hotel projects by, *inter alia*, opposing them during the entitlements process with the City of Los Angeles (the "City") and by filing CEQA lawsuits against the City in California Superior Court. | Undisputed that Sunset opposed three of Plaintiffs' hotels: the Thompson hotel, the Tommie hotel, and the Selma hotel.

Disputed that the Schrader hotel was ever a "Relevant hotel project", as no evidence supports this proffered fact. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | **CEQA** | |
|---|---|---|---|
| | 14. | Defendants challenged Relevant's hotel projects under a statute called the California Environmental Quality Act ("CEQA").<br><br>Under CEQA, a municipal agency is required to study the environmental impacts of a proposed development project before the agency can grant approvals.  To that end, during the entitlement process, the agency is required to prepare and publish a report that describes the project's environmental impacts. | Disputed that N&A was part of Sunset's CEQA challenges, on the grounds the evidence does not support this proffered fact.<br><br>Undisputed as to the remaining facts. |
| | 15. | Under CEQA, there are different types of environmental reports that require varying levels of analysis. Negative declarations are the least onerous type of report, while an environmental impact report ("EIR") is the most. A mitigated negative declaration ("MND") is between the two. The lead agency overseeing a project must decide what type of environmental report is required by CEQA, based on the nature of the project in question. | Undisputed. |
| | 16. | At issue here, the lead agency can prepare an MND if it determines that a project would not cause significant environmental impacts after certain mitigation measures are applied.  If a project would still cause significant environmental | Undisputed. |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | impacts, even after mitigation measures, then the lead agency is required to prepare an EIR. | |
| 17. | Under CEQA, a private citizen may bring a mandamus action against the lead agency if it relied on an MND despite "substantial evidence to support a fair argument" that a project would have "significant environmental impacts," even after mitigation. | Undisputed. |

**Thompson Project**

| | | |
|---|---|---|
| 18. | The first project that Defendants challenged was the Thompson Project. The City published the initial MND for the Thompson Project on March 5, 2015. It was over 1,000 pages long, including its technical appendices. | Disputed that N&A challenged the Thompson Project, on the grounds the evidence does not support this proffered fact.<br><br>Undisputed as to the remaining facts. |
| 19. | Nourmand did not receive a copy of the MND until March 11, 2015. | Undisputed but immaterial. |
| 20. | Nourmand already had begun to brainstorm pretextual objections to the Thompson Project before the MND was published. He decided to put his objections "into the record" before he received a copy of the MND. Just two days after he received the MND, he told City officials that the "Mitigated Negative Declaration report should be rejected and instead the developer should be required to submit a full EIR." Thereafter, throughout the entitlements | Undisputed that Nourmand emailed the quoted portion to a city official.<br><br>Undisputed that Saeed Nourmand had concerns with the Thompson Project before the MND was published.<br><br>Disputed that Saeed Nourmand ever brainstormed "pretextual objections," on the grounds the evidence does not support the proffered fact.<br><br>Disputed that Saeed Nourmand ever sought to challenge and delay the project throughout the entitlements process on |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | process, he sought to challenge and delay the project based on those pretextual concerns. | pretextual concerns, on the gorunds the evidence does not support the proffered fact. |
| 21. | For example, Nourmand purported to oppose the Thompson Project based on concerns about shade/shadow impacts.  The shadow study for the project made clear that it would not cause any negative shadow impacts to his property. His concern was based on his false belief about the direction that shadows are cast in the northern hemisphere. | Undisputed that Saeed Nourmand had a concern with the Thompson Project due to shade/shadow impacts.<br><br>Disputed that this concern was a "false belief," on the grounds the evidence does not support the proffered fact, but immaterial. |
| 22. | Nourmand also purported to oppose the Thompson Project based on concerns about noise impacts and the project's party atmosphere, even though he was part owner of Boulevard3, a raucous nightclub that was operated on the Sunset Property. | Undisputed that Saeed Nourmand opposed the Thompson Project based on concerns about noise impacts and the project's party atmosphere.<br><br>Disputed that Saeed Nourmand was a part owner of Boulevard3, or that Boulevard3 was a "raucous" nightclub, on the grounds the evidence does not support the proffered fact. |
| 23. | Nourmand also purported to oppose the Thompson Project based upon concerns about traffic impacts, but he never could articulate what his specific traffic concerns were, nor why the MND's voluminous traffic study was inadequate. | Undisputed that a reason Saeed Nourmand opposed the Thompson Project was concern about the increase in traffic caused by the project.<br><br>Disputed that Saeed Nourmand could never articulate what his specific traffic concerns were, nor why the MND's voluminous traffic study was inadequate. These concerns were articulated through Normand's lawyers in Plaintiffs' Exhibit 20. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| 24. | Nourmand expressed concerns about how the Thompson Project would impact the low-income tenant who occupied the duplex in the back of the Sunset Property parking lot. The duplex was located a few dozen feet from the Boulevard3 nightclub, and it was entirely shielded from sunlight by a large tree, a tight brick retaining wall and debris. Nourmand admitted that the duplex was in a dilapidated condition, that he was cited by the City for its state of disrepair, and that he tried to evict the tenant and demolish the duplex. | Undisputed that Saeed Nourmand was concerned with the noise impact the Thompson Project and hotel would have on Sunset's commercial and residential tenants.

Undisputed as to the remaining for purposes of this motion, but immaterial. |
|---|---|---|
| 25. | Nourmand expressed concerns about how the Thompson Project was out of character with the surrounding neighborhood, which he described as quiet and residential.  The Sunset Property is adjacent to the site of the Thompson Project.  In liquor license applications for Boulevard3, Nourmand described the Sunset Property as an ideal location for a nightclub because of its primarily commercial setting in the heart of Hollywood's entertainment district, with very few residential uses in the surrounding area. | Undisputed that Saeed Nourmand was concerned that the Thompson Project would change the character of the surrounding neighborhood.

Disputed that Saeed Nourmand or Sunset applied for a liquor license or described the Sunset Property in any way.

**N&A's Evidence**
Rabbani Decl., Ex. 28 [JX166] at JX166.0067-0082. The liquor license application was submitted by applicant Peter Famulari, the owner of Boulevard3.  Saeed Nourmand signed the application as the building owner.

**Plaintiffs' Evidence**
 Ex. 27 [JX040" Ex. 20 [JX057] at JX057.0008
 Ex. 28 [JX166] at JX166.0067-0082 |

DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL
STATEMENT OF UNCONTROVERTED FACTS

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| 26. | Nourmand also purportedly was concerned about the density of the Thompson Project, referred to as its floor-area-ratio ("FAR"). His FAR argument was based on a frivolous view that a decades-old zoning ordinance, which restricted the site's FAR, was "permanent." Nourmand also demanded that Relevant not object to future development projects on the Sunset Property, including based on the same FAR argument. | Undisputed that Saeed Nourmand was concerned about the increased density of the Thompson Project.

Disputed that Nourmand's concern was "frivolous," on the grounds the evidence does not support the proffered fact. |
| 27. | Nourmand has never been actively involved in environmental causes, nor is he anti-development.

He  stated that he opposed the Thompson Project because he did not want other projects to go forward on the same block where he intended to develop the Sunset Property one day.

He also did not want a project to go forward with restaurant/bar uses that would compete with similar uses on the Sunset Property, namely the HAC and Boulevard3. | Undisputed that Saeed Nourmand has not been involved in environmental causes, and is not "anti-development," but immaterial.

Undisputed that Stephan Nourmand was concerned about the number or projects on the same block as the Sunset Property.

Disputed that Nourmand stated he did not want the Thompson Project to go forward because of restaurant or bar uses that would compete with the Sunset Property, on the grounds the evidence does not support the proffered fact. |
| 28. | On March 11, 2015, Nourmand instructed N&A employees to attend a hearing for the Thompson Project, in order to present a false appearance of widespread opposition.  N&A management circulated his directive to employees, stating that Nourmand | Undisputed that an email was sent by Michael Nourmand to certain N&A employees, requesting that they attend the hearing, but immaterial.

Disputed that Saeed Nourmand gave any "instruction" or "directive" to any N&A employees, on the grounds the evidence does not support the proffered fact. |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | "just wants some bodies there." | Disputed that Saeed Nourmand intended to "present a false appearance of widespread opposition", on the grounds the evidence does not support the proffered fact, but immaterial. |
| 29. | At the public hearing on March 18, 2015, a number of N&A employees attended and signed a petition against the Thompson Project. The petition falsely stated that the signatories were concerned about the impact that the Thompson Project would have on "our largely residential streets." | Undisputed that a number of N&A employees attended and signed a petition against the Thompson project.<br><br>Disputed that the signatories falsely stated that they were concerned about the impact that the Thompson hotel would have, on the grounds the evidence does not support the proffered fact. |
| 30. | N&A employees only attended the March 18, 2015 hearing because Nourmand instructed them to go. Of the N&A employees in attendance, none lived in Hollywood, and only a few actually worked out of N&A's Hollywood office, while the rest worked out of N&A's Beverly Hills and Brentwood offices. | Disputed that Saeed Nourmand or any Nourmand instructed the subject N&A employees to attend, on the grounds the evidence does not support the proffered fact.<br><br>Disputed that none of the agents lived in Hollywood, on the grounds the evidence does not support the proffered fact. |
| 31. | Relevant met with Nourmand several times during 2015, at which he demanded certain design changes to the Thompson Project. Relevant agreed to certain of his demands, fearing Nourmand would continue to challenge and delay the project if they did not.<br><br>After one meeting, Relevant increased the setbacks for the project, eliminated the proposed nightclub from the roof, lowered | Disputed that Relevant made any design changes "fearing [Saeed] Nourmand would continue to challenge and delay the project if they did not," on the grounds the evidence does not support the proffered fact, but immaterial.<br><br>Undisputed as to the remaining facts for purposes of this motion, but immaterial. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | the height of the building and reduced the number of rooms. Following another meeting, Relevant further reduced the height of the project and reoriented the rooftop layout, moving the structures on the roof (the bar, restaurant, and fitness center) to the east so that they were farther away from the Sunset Property. | |
| 32. | During one meeting, Nourmand asked "myriad questions" about Relevant's financing. Relevant was candid about its financial position, revealing to Nourmand that Relevant was particularly vulnerable to project delays. | Disputed that Relevant revealed to Saeed Nourmand that it "was particularly vulnerable to project delays" on the grounds the evidence does not support the proffered fact..<br><br>Undisputed, for purposes of this motion, that Saeed Nourmand asked questions about Relevant's financing, but immaterial |
| 33. | A revised MND for the Thompson Project was published in July 2015. The revised MND, *inter alia*, added several new mitigation measures to further address noise impacts. | Undisputed but immaterial. |
| 34. | After Relevant made changes to appease Nourmand, Defendants never stopped trying to challenge and delay the project during the course of the entitlement process. Defendants objected to the project the Zoning Administrator hearing on March 18, 2015 and City Planning Commission hearing on September 10, 2015. They filed an administrative appeal on | Plaintiffs present several facts as a single fact which is improper.<br><br>Disputed that N&A engaged in any of the referenced conduct, on the grounds the evidence does not support the proffered fact.<br><br>Undisputed as to the remaining facts for purposes of this motion, but immaterial. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | November 3, 2015, challenging the City Planning Commission's approval recommendation. Then, they objected at the Planning and Land Use Management ("PLUM") hearing on January 26, 2016 and City Council hearing on February 3, 2016. | |
| 35. | The Thompson Project was approved unanimously at every administrative level during the entitlements process, and the City granted final approvals for the project in early February 2016. | Undisputed. |

### Thompson CEQA Litigation and Other Administrative Challenges

| | | |
|---|---|---|
| 36. | Sunset engaged The Silverstein Law Firm ("TSLF"). Sunset filed a Petition for Writ of Mandamus (the "Thompson Writ Petition") against the City, challenging its approval of the Thompson Project. The lawsuit was filed on March 3, 2016, in the Superior Court of California, County of Los Angeles, and was captioned *The Sunset Landmark Investment, LLC v. City of Los Angeles, et al.*, Case No. BS160807 (the "Thompson Litigation"). | Undisputed. |
| 37. | In the Thompson Writ Petition, Sunset alleged that it was suing the City "on behalf of others who will be affected in the Hollywood area, as well as for all citizens of the City of Los Angeles." | Undisputed. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| 38. | In the Thompson Writ Petition, Sunset alleged that the City violated CEQA by failing to prepare an EIR for the Thompson Project. | Undisputed. |
|---|---|---|
| 39. | In the Thompson Writ Petition, Sunset alleged that the City's reliance on the MND was inadequate under CEQA because the City ignored "substantial evidence to support a fair argument that the Project may cause significant, unmitigable impacts to the environment, including but not limited to land use, transportation, traffic operational, circulation, emergency response times, parking, pedestrian safety, noise, air quality and health risks, historic resources, shade/shadow, public services, cumulative impacts and growth inducing impacts." | Undisputed. |
| 40. | On May 5, 2016, Sunset initiated a new administrative challenge against the Thompson Project—increasing the threat of delay on top of the already pending Thompson Litigation—by opposing an Owner Participation Agreement ("OPA") between Relevant and the City of Los Angeles Redevelopment Authority ("CRA/LA"). Sunset argued that the CRA/LA could not "lawfully approve the OPA" based on the same meritless arguments that Sunset had advanced during the entitlement | Plaintiffs present several facts as a single fact, which is improper.

Undisputed that as part of its opposition to the Thompson hotel Sunset opposed an Owner Participation Agreement between Relevant and the City of Los Angeles.

Disputed as to all other facts, on the grounds the evidence does not support the proffered facts. There is no evidence that Sunset's arguments that the City unlawfully granted the Thompson hotel a density bonus of a 5.5:1 floor to area ratio was meritless. There is no evidence |

DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL
STATEMENT OF UNCONTROVERTED FACTS

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | process: i.e., that the City could not amend a purportedly "permanent" FAR limitation and that noise from the project's "massive outdoor party space" rendered the MND invalid. | that this challenge "increase[ed] the threat of delay" in any way. |
| 41. | On August 11, 2016, Sunset brought another administrative challenge against the project—threatening more delay on top of the pending Thompson Litigation—by filing an appeal with the Los Angeles Department of Building Safety ("LADBS").<br><br>In its appeal, Sunset asserted that LADBS had "no lawful basis" to process permits for the Thompson Project because its entitlements were invalid for the same reasons alleged in the Thompson Writ Petition. Thus, Sunset argued that LADBS was required to revoke a demolition permit, allowing Relevant to raze the existing structure at the project site, and that LADBS had to suspend its review of any building permit applications filed by Relevant. | Plaintiffs present several facts as a single fact, which is improper.<br><br>Undisputed for purposes of this motion, but immaterial. |
| 42. | By the time Sunset filed the LADBS appeal, Relevant already had completed the authorized demolition work, meaning Sunset sought to invalidate a demolition permit for a building that was already torn down. | Undisputed for purposes of this motion, but immaterial. |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| 43. | On October 13, 2016, LADBS denied Sunset's appeal. Five days later, Sunset appealed the LADBS denial of its permit challenges to the Los Angeles Director of Planning.<br><br>On February 16, 2017, the Director of Planning denied Sunset's appeal and issued a report, which rejected the fundamental premise of Sunset's appeal, holding that LADBS had no "authority to invalidate discretionary entitlements already approved by Planning and City Council."<br><br>After the LBS denial, Sunset continued to challenge and delay the permitting process for the Thompson Project. Sunset appealed the Director of Planning decision to the Los Angeles Central Area Planning Commission, which ultimately denied Sunset's appeal as well on May 31, 2017. | Plaintiffs present several facts as a single fact, which is improper.<br><br>Undisputed for purposes of this motion, but immaterial. |
| --- | --- | --- |
| 44. | Meanwhile, trial in the Thompson Litigation was scheduled to begin on May 19, 2017. Sunset filed its merits brief on March 28, 2017. In its brief, Sunset addressed its allegations only with respect to land use, noise and traffic impacts. Sunset made no attempt to address—and completely abandoned—its allegations regarding the other eleven categories of environmental impacts. | Plaintiffs present several facts as a single fact, which is improper.<br><br>Undisputed but immaterial. |

DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL
STATEMENT OF UNCONTROVERTED FACTS

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| 45. | Regarding land use impacts, Sunset tried to turn a discretionary zoning matter into a CEQA issue by arguing that the project conflicted with the purportedly "permanent" FAR limitation.  There was no conflict because the City replaced the FAR limitation with an increased allowance, a routine legislative change exercised under the City's general police power. | Plaintiffs present several facts as a single fact, which is improper.<br><br>Disputed that "There was no conflict" because the evidence does not support the proffered fact.<br><br>Undisputed as to all other facts purposes of this motion, but immaterial. |
|---|---|---|
| 46. | Regarding noise impacts, Sunset relied solely on an outdated and inapplicable letter by one noise consultant, Acentech. The Acentech letter was prepared before significant design changes were made to the Thompson Project and before the revised MND was published, which included additional noise mitigation measure. The Acentech letter ignored several substantial new design changes and mitigation measures related to noise, and Sunset never offered an updated study or other analysis regarding noise impacts following those changes. | Undisputed for purposes of this motion, but immaterial. |
| 47. | Regarding traffic impacts, Sunset neither offered nor cited any competing traffic analysis. Instead, Sunset argued that the City failed to address traffic questions, based on its mischaracterization of a single letter from Caltrans.<br><br>In the letter, Caltrans noted that it had not received any technical | Undisputed for purposes of this motion, but immaterial. |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | appendices to the MND and asked the City to prepare a traffic study, if one had not been prepared already. Sunset failed to acknowledge that the City responded to Caltrans—later that same day—and provided the technical appendices, including the traffic study. The City concluded that no further traffic analysis required because, after it received the traffic study, Caltrans never posed follow-up questions or provided substantive comments regarding the City's traffic analysis. | |
| | **Tommie Project** | |
| 48. | The next project that Defendants challenged was the Tommie Project. The first public hearing for the Tommie Project was noticed for January 26, 2017. | Disputed that N&A challenged the Tommie Project, on the grounds the evidence does not support the proffered fact.<br><br>Undisputed that Sunset challenged the Tommie Project.<br><br>Undisputed that the first public hearing for the Tommie Project was noticed for January 26, 2017, but immaterial. |
| 49. | The MND for the Tommie Project was circulated in December 2016. It was over 1,000 pages long, including technical appendices. | Undisputed but immaterial. |
| 50. | On January 25, 2017, Sunset submitted a letter objecting to the Tommie Project. | Undisputed but immaterial. |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| 51. | The vast majority of the content in Sunset's January 25, 2017 letter against the Tommie Project was copied and pasted from the letter that Sunset submitted on August 12, 2016 against the Thompson Project. | Undisputed for purposes of this motion, but immaterial. |
| 52. | On January 26, 2017, TSLF spoke at the public hearing, on behalf of Sunset, in opposition to the Tommie Project. | Undisputed but immaterial. |

**April 21, 2017 Demand Letter**

| | | |
|---|---|---|
| 53. | On April 2, 2017, Nourmand sent a text message to Richard Heyman asking for a "new proposal" to end the Thompson Litigation. | Undisputed but immaterial. |
| 54. | On April 5, 2017, Heyman sent an email to Nourmand regarding an "Updated Proposal" to end the Thompson Litigation. In the email, Heyman asked Nourmand for guidance regarding any issues that Nourmand wanted to be addressed in order to end the Thompson Litigation.  Heyman also offered to "cover [Mr. Nourmand's] attorneys' fees and costs from [the Thompson Litigation]" in order to make him "whole." | Undisputed but immaterial. |
| 55. | On April 14, 2017, Heyman followed up with Nourmand via text message and asked when Nourmand expected to respond to the "Updated Proposal." | Undisputed but immaterial. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | | |
|---|---|---|---|
| | | Nourmand said that he was "planning to get back to [Mr. Heyman] hopefully before the end of next week." | |
| | 56. | On April 21, 2017, TSLF sent a letter, on behalf of Sunset, to Matt Hinks, a land use attorney for Relevant in connection with the Thompson Litigation.<br><br>In the letter, TSLF listed a number of demands that Sunset sought in order to end the Thompson Litigation, including a monetary demand:<br><br> "Mr. Heyman has also offered to pay some money in settlement of the case, based on legal fees incurred to date.  That is not adequate.  Please call me and I will<br>inform you what figure is acceptable to my client." | Undisputed but immaterial. |
| | 57. | Later on April 21, 2017, Hinks called Robert Silverstein of TSLF and  asked what amount of money Sunset demanded to end the Thompson Litigation. Silverstein stated the amount was $2 million.<br><br>Hinks asked Silverstein how much of that was attorney's fees and how much was "blood money." Silverstein responded that attorneys' fees were approximately $500,000 and did not dispute that the remainder was "blood money." | Disputed as to all statements attributed to Silverstein, which are based on inadmissible hearsay. The evidence therefore does not support the proffered fact.<br><br>This includes that "Silverstein stated the amount was $2 million," "Silverstein responded that attorneys' fees were approximately $500,000", and Silverstein "did not dispute that the remainder was 'blood money.'" |

DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL
STATEMENT OF UNCONTROVERTED FACTS

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**Continued Opposition to the Tommie Project**

| | | |
|---|---|---|
| 58. | On April 25, 2017, Sunset submitted another objection letter in opposition to the Tommie Project. In the letter, Sunset referred to the Tommie Project as a "nuisance-generating, 'party hotel,'" a "noise-generating party hotel" and "an ill-conceived, noise generating nuisance 'party hotel' that should have never come out of a planning department conference room." | Undisputed but immaterial. |
| 59. | Nourmand admitted that his main objection to the Tommie Project— and Relevant's other projects—was his belief that a "party hotel" would negatively impact the neighborhood, while acknowledging that he himself owns a raucous nightclub on the exact same block. | Disputed that Saeed Nourmand "owns a raucous nightclub on the exact same block", on the grounds the evidence does not support the proffered fact.<br><br>Undisputed as to all remaining facts for purposes of this motion, but immaterial. |
| 60. | On April 25, 2017, TSLF spoke at a public hearing, on behalf of Sunset, in opposition to the Tommie Project and in support of the administrative appeal that Sunset filed against the Tommie Project. | Undisputed but immaterial. |
| 61. | On May 5, 2017, TSLF spoke at a public hearing, on behalf of Sunset, in opposition to the Tommie Project. | Undisputed but immaterial. |
| 62. | The City unanimously voted to approve the Tommie Project, over Sunset's objections, at every level during the entitlement process. | Undisputed but immaterial. |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

## May 8, 2017 Meeting

| | | |
|---|---|---|
| 63. | On May 8, 2017, Relevant and Sunset attended a meeting with their respective attorneys to further discuss a potential resolution to Sunset's CEQA litigation. Heyman and Hinks attended on behalf of Relevant. Nourmand, Silverstein, and Jayesh Patel attended on behalf of Sunset. | Undisputed but immaterial. |
| 64. | During the meeting, Hinks told Nourmand, Patel and Silverstein that their demands were far outside the scope of what Sunset could obtain through a successful CEQA lawsuit. Hinks suggested that the City could elect to prepare an EIR, and Sunset would be entitled to nothing.<br><br>In response, Silverstein commented that he would challenge the EIR, if the City elected to do that, and that he "could always find something else to challenge." | Disputed as to the statement attributed to Silverstein, which is based on inadmissible hearsay:<br><br>"In response, Silverstein commented that he would challenge the EIR, if the City elected to do that, and that he "could always find something else to challenge." |
| 65. | Relevant understood Silverstein's comment to be a threat of indefinite delay against its projects, irrespective of the merits of any CEQA lawsuit, unless Relevant agreed to meet Defendants' demands, including the monetary payment and other costly design changes. | Disputed on the grounds the proffered fact is based upon inadmissible hearsay—a purported statement by Silverstein.<br><br>Wat Relevant "understood" is immaterial. |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| 66. | At the time, Sunset was taking steps to challenge and delay both the Thompson Project (through the Thompson Litigation and permitting appeals) and the Tommie Project (through the entitlements process, and future litigation was expected). | Disputed on the grounds that Plaintiffs fail to cite to any evidence to support this proffered fact, and simply reference other proffered facts. |
|---|---|---|

**<u>Continued Opposition and Delays Against the Thompson Project and Tommie Project</u>**

| 67. | On May 9, 2017, Sunset filed an *Ex Parte* application to continue the date of trial in the Thompson Litigation. | Undisputed. |
|---|---|---|
| 68. | In the *Ex Parte* application, Sunset argued that the trial date needed to be continued to allow for supplemental briefing regarding a "stunning fact" that Sunset purportedly discovered on May 6, 2017. Specifically, Sunset claimed that—at the City Planning Commission hearing—the City approved an undisclosed change to the Thompson Project's rooftop orientation, which was different from the rooftop orientation included in the July 2015 MND. | Undisputed. |
| 69. | Sunset was informed about the rooftop orientation change on many occasions because Relevant only made the change in order to satisfy Nourmand's prior demands. | Disputed on the grounds that the evidence does not support the proffered fact, but immaterial. |
| 70. | On May 23, 2017, on behalf of Sunset, TSLF continued to challenge Relevant's efforts to obtain permits for the Thompson Project. TSLF appeared before the | Plaintiffs present several facts as a single fact, which is improper.<br><br>Undisputed but immaterial. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | Central Los Angeles Area Planning Commission (the "CLA APC") to argue that the LADBS erred or abused its discretion by "not suspending action" on pending construction permits for the Thompson Project and by issuing permits to demolish the existing structure at the site of the Thompson Project. The CLA APC voted to deny Sunset's appeals. | |
| 71. | On June 9, 2017, Sunset filed a Petition for Writ of Mandamus (the "Tommie Writ Petition") against the City challenging its approval of the Tommie Project. The lawsuit was filed in the Superior Court of California, County of Los Angeles and captioned The Sunset Landmark Investment, LLC v. City of Los Angeles, et al., Case No. BS169821 (the "Tommie Litigation") | Undisputed. |
| 72. | In the Tommie Writ Petition, Sunset alleged that it was suing "on behalf of others who will be affected in the Hollywood area, as well as for all citizens of the City of Los Angeles." | Undisputed. |
| 73. | In the Tommie Writ Petition, Sunset alleged that the City violated CEQA by failing to prepare an EIR for the Tommie Project. | Undisputed. |
| 74. | In the Tommie Writ Petition, Sunset alleged that the City's reliance on the MND was inadequate under CEQA because the City ignored "substantial | Undisputed. |

DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | evidence to support a fair argument that the Project may cause significant, unmitigable impacts to the environment, including but not limited to land use, transportation, traffic operational, circulation, emergency response times, parking, pedestrian safety, noise, air quality and health risks, greenhouse gasses, historic resources, shade/shadow, public services, cumulative impacts and growth inducing impacts." | |
| 75. | In the Tommie Writ Petition, Sunset alleged that the Tommie Project was "more accurately described as a youth hostel swimming in alcohol." | Undisputed but immaterial. |

**June 26, 2017 Email**

| | | |
|---|---|---|
| 76. | By mid-June 2017, settlement negotiations between Relevant and Sunset were being led by Guy Maisnik (on behalf of Relevant) and Jayesh Patel (on behalf of Sunset), rather than the parties' respective CEQA lawyers. | Undisputed but immaterial. |
| 77. | On June 26, 2017, Patel sent an email to Maisnik regarding settlement discussions.  Patel wrote: "Our perspective is that, if we are successful in the litigation, and assuming that you successful [*sic*] to move your project forward with an EIR, the developer needs an additional two years to process the project., [*sic*] with many of the same challenges to address going forward."  Patel also | Undisputed but immaterial. |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | wrote: "My hope is that once there is a hard- pencil costing assessment done by the developer, that you will see what that balance looks like, and we will have a productive discussion going forward." | |
| 78. | Relevant understood Patel's comments to be a threat of continued delay to its projects, and a suggestion that Relevant should calculate the financial cost of those further delays when considering Defendants' demands, including the monetary demand. | Disputed on the grounds the evidence does not support the proffered facts, particularly that Relevant had any understanding from purported comments, and immaterial. |

**Settlement of Thompson Litigation and Tommie Litigation**

| | | |
|---|---|---|
| 79. | On July 13, 2017, Patel sent an email to Maisnik regarding settlement discussions.  In the letter, Patel wrote that Sunset would end the Thompson Litigation in exchange for, *inter alia*, a $4 million monetary payment. | Undisputed but immaterial. |
| 80. | On August 22, 2017, Patel proposed to have a "sit down [meeting] with all those involved in decision- making and hammering out a deal." Initially, Patel stated that the deal would include only the Thompson Litigation. However, later that day, Patel agreed that the scope of the deal could include the Tommie Litigation as well. The parties agreed to have the meeting the next day, on August 23, 2017. | Undisputed but immaterial. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| 81. | At the August 23, 2017 meeting, the parties reached an agreement in principle to end the Thompson Litigation and the Tommie Litigation in exchange for a $5.5 million payment and other design changes. | Undisputed. |
|---|---|---|
| 82. | During the August 23, 2017 meeting, Patel refused to discuss CEQA with Relevant and threatened to end the meeting if Relevant wanted to discuss CEQA. | Disputed on the grounds the evidence does not support the proffered fact. |
| 83. | The parties finalized and executed the settlement agreements for the Thompson Litigation and Tommie Litigation in early January 2018. As part of the settlement agreements, Relevant was required to support any development plans that Sunset pursued on its own property | Undisputed but immaterial. |
| 84. | Relevant made the final payment to Sunset for the $5.5 million on March 13, 2018. | Undisputed. |

### Selma Project

| 85. | The next project that Defendants challenged was the Selma Project. The initial hearing for the Selma Project was scheduled for March 28, 2018. | Disputed that N&A challenged the Selma Project, as the evidence does not support the proffered fact.<br><br>Undisputed as to all remaining facts. |
|---|---|---|
| 86. | The MND for the Selma Project was published on December 29, 2017. It was over 1,000 pages long, including its technical appendices. | Undisputed but immaterial. |
| 87. | Unbeknown to Relevant, on behalf of Sunset, TSLF already | Undisputed but immaterial. |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | had begun to work on challenging the Selma Project by March 8, 2018. | |
| 88. | On March 19, 2018, Heyman sent a text message to Nourmand. Heyman informed Nourmand that he had "been paid in full" and invited Nourmand to lunch at the Dream. | Undisputed. |
| 89. | On March 22, 2018, Nourmand responded to Heyman's text message and accepted the lunch invitation. The lunch meeting at the Dream was scheduled for March 29, 2018. | Undisputed but immaterial. |
| 90. | On March 23, 2018, Sunset submitted an objection letter against the Selma Project. | Undisputed but immaterial. |
| 91. | The vast majority of the content in Sunset's March 23, 2018 letter against the Selma Project was copied and pasted from the letter that Sunset submitted on April 25, 2017 against the Tommie Project. | Undisputed for purposes of this motion, but immaterial. |
| 92. | In the March 23, 2018 letter, Sunset referred to the Selma Project as a "nuisance-generating, 'party hotel,'" an "alcohol-soaked 'Animal House' party hotel," a "noise-generating party hotel" and "an ill-conceived, noise generating nuisance 'party hotel' that should have never come out of a planning department conference room." | Undisputed but immaterial. |
| 93. | On March 28, 2018, on behalf of Sunset, TSLF attended the public hearing | Undisputed but immaterial. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | for the Selma Project and spoke in opposition to the project. | |

**March 29, 2018 Meeting**

| | | |
|---|---|---|
| 94. | On March 29, 2018, Heyman showed up to the roof of the Dream for his lunch meeting with Nourmand. Heyman brought a copy of Sunset's March 23, 2018 letter opposing the Selma Project.  At the lunch meeting, Heyman referenced the letter and asked Nourmand why he was opposing Relevant's projects again. | Undisputed but immaterial. |
| 95. | In response to Heyman's question, Nourmand said: "you know the drill, it's going to take a check to make this go away." | Undisputed for purposes of this motion, but immaterial. |
| 96. | Heyman understood Nourmand's "you know the drill" comment as a threat that Nourmand would continue to challenge Relevant's projects going forward. | Undisputed for purposes of this motion, but immaterial. |

**Schrader Project**

| | | |
|---|---|---|
| 97. | By the time of Heyman's lunch meeting with Nourmand, aside from the Selma Project, Relevant had acquired an interest in another hotel project that was going through the entitlements process.  That project was known as the Schrader Project. | Disputed Relevant ever acquired an interest in the Schrader Project, or signed a Purchase Agreement for the Schrader Project, on the grounds the evidence does not support the proffered fact. |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| 98. | On December 14, 2017, Relevant had entered into a Purchase Agreement with KOAR Institutional Advisors ("KOAR") to purchase the property for the Schrader Project for $21 million. (The Purchase Agreement was between Hollywood International Regional Center LLC ("HIRC"), an affiliate of Relevant, and 1600 Hudson LLC, an affiliate of KOAR.) | Disputed that HIRC is an affiliate of Relevant, on the grounds the evidence does not support the proffered fact.<br><br>Disputed that Relevant entered into the Purchase Agreement for the Schrader Project, on the grounds the evidence does not support the proffered fact. |
|---|---|---|
| 99. | Pursuant to the Purchase Agreement, Relevant (HIRC) agreed to pay a $1 million nonrefundable deposit for the Schrader Project property, and the remainder of the closing price was due by no later than September 28, 2018. | Disputed that Relevant agreed to pay a $1 million nonrefundable deposit, on the grounds the evidence does not support the proffered fact (HIRC is the only signatory to the Purchase Agreement).<br><br>Undisputed that "The remainder of the closing price was due by no later than September 28, 2018."<br><br>Further, the evidence does not support that any person paid the $1 million non-refundable deposit. |
| 100. | KOAR already had submitted entitlement applications with the City for the Schrader Project in September 2016. By the time the Purchase Agreement was executed, the entitlement process was underway. | Undisputed but immaterial. |
| 101. | The MND for the Schrader Project was published in April 2018. | Undisputed. |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

**Continued Opposition to the Selma Project and Schrader Project**

| 102. | On July 12, 2018, a public hearing for the Selma Project was held before the City Planning Commission. | Undisputed but immaterial. |
|------|------|------|
| 103. | At the July 12, 2018 City Planning Commission hearing for the Selma Project, Grant King spoke on behalf of Relevant. King stated:<br><br>"You're going to hear some nay- sayers here that come -- will come in front of you today. And I want you to know what they're going to be saying. You're going to be hearing from people like the Silverstein Law Firm that's representing a client that has sued us twice on other projects that were adjacent to his project. Why he's here today is very clear, and it's for financial gain. They want money from us. I guess they want some more blood from us." | Undisputed that the comment was made. The comment itself is inadmissible hearsay. |
| 104. | Less than four minutes after King finished speaking at the July 12, 2018 hearing, TSLF spoke in opposition to the Selma Project, on behalf of Sunset. TSLF did not address or deny any of the comments made by King regarding Sunset's purpose in opposing the Selma Project. | Undisputed that TSLF spoke in opposition to the Selma Project on behalf of Sunset, but immaterial.<br><br>Any comments themselves are inadmissible hearsay. |

THE MALONEY FIRM, APC<br>2381 ROSECRANS AVENUE, SUITE 405<br>EL SEGUNDO, CALIFORNIA 90245<br>T: (310) 540-1505 | F: (310) 540-1507

DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS

| | | |
|---|---|---|
| 105. | On July 13, 2018, Sunset submitted an objection letter against the Schrader Project. In the letter, Sunset noted that Relevant had an interest in the Schrader Project. | Disputed that "Sunset noted that Relevant had an interest in the Schrader Project" on the grounds the evidence does not support the proffered fact.<br><br>Undisputed that "On July 13, 2018, Sunset submitted an objection letter against the Schrader Project." |
| 106. | The vast majority of the content in Sunset's July 13, 2018 letter against the Schrader Project was copied and pasted from the letter that Sunset submitted on March 23, 2018 against the Selma Project. | Undisputed for purposes of this motion, but immaterial. |
| 107. | In the July 13, 2018 letter, Sunset referred to the Schrader Project as a "nuisance-generating, 'party hotel,'" an "alcohol-soaked 'Animal House' party hotel," a "noise-generating party hotel" and "an ill-conceived, noise generating nuisance 'party hotel' that should have never come out of a planning department conference room." | Undisputed but immaterial. |
| 108. | On July 14, 2018, Laurent Opman, a managing member of KOAR, sent Heyman an email regarding Sunset's objection letter against the Schrader Project. In his email, Opman said: "Looks like [Saeed's] business plan is to make money off his neighbors." | Undisputed but immaterial. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS

| 109. | On August 10, 2018, Sunset filed an administrative appeal against the Schrader Project. | Undisputed. |
|---|---|---|
| 110. | On September 6, 2018, Sunset filed an administrative appeal against the Selma Project. | Undisputed. |
| 111. | On September 28, 2018, Relevant failed to make the closing payment to complete its acquisition of the Schrader Project property. Pursuant to the terms of the Purchase Agreement, KOAR terminated the agreement and Relevant lost its $1 million deposit. As of the date of the termination letter, Relevant no longer had any interest in the Schrader Project. | Undisputed that Relevant failed to make any closing payment to acquire any interest in the Schrader Project, because only HIRC was a party to the Purchase Agreement.<br><br>Disputed that Relevant ever had any ownership, investment or other interest in the Schrader Project, on the grounds the evidence does not support the proffered fact. |

**October 4, 2018 Meeting**

| 112. | After the Purchase Agreement was terminated, Laurent Opman and Bruce Rothman (managing members of KOAR) decided to contact Nourmand to make clear that Relevant was no longer associated with the Schrader Project and that Nourmand would not be able to use Sunset's CEQA challenges to get money from the Schrader Project, since KOAR was not under financial pressure to begin construction. | Disputed that Relevant ever had any ownership, investment or other interest in the Schrader Project, on the grounds the evidence does not support the proffered fact.<br><br>Undisputed that after Purchase Agreement terminated, Mr. Opman contacted Saeed Nourmand and asked to meet with him to discuss his opposition to the project. Undisputed that Mr. Opman's strategy heading into the meeting was to make clear to Mr. Nourmand that Relevant Group was not associated with the project and that he were not under any time pressure to build, but immaterial. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| 113. | Opman and Rothman scheduled a meeting with Nourmand and Patel for October 4, 2018 to discuss the Schrader project. | Undisputed but immaterial. |
|---|---|---|
| 114. | Prior to the meeting, Opman had concerns that Nourmand would try to extort money from the Schrader Project based on Nourmand's prior pattern of opposing projects associated with Relevant and Nourmand's belief that the Schrader Project was associated with Relevant. | Undisputed that Mr. Opman had concerns that Saeed Nourmand would try to use a CEQA opposition to obtain money, but immaterial.<br><br>Disputed as to all other facts, on the grounds the evidence does not support the proffered facts. |
| 115. | On October 4, 2018, Laurent Opman and Bruce Rothman (managing members of KOAR) met with Nourmand and Patel to discuss the Schrader Project. | Undisputed. |
| 116. | At the October 4, 2018 meeting, Opman and Rothman told Nourmand and Patel that Relevant no longer had an interest in the Schrader Project and that, unlike Relevant, KOAR was not dependent on outside investors. Therefore, KOAR would be able to wait if Sunset decided to litigate its CEQA claims against the City in connection with the Schrader Project. | Plaintiffs present several facts as a single fact which is improper.<br><br>Disputed that Relevant ever had any ownership, investment or other interest in the Schrader Project, on the grounds the evidence does not support the proffered fact.<br><br>Undisputed that Mr. Opman may have stated that.<br><br>Disputed that Relevant Group was dependent on outside investors, or that Mr. Opman made this statement with respect to Relevant Group, on the grounds the evidence does not support the proffered facts. |

DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL
STATEMENT OF UNCONTROVERTED FACTS

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| 117. | After Opman and Rothman made those points clear, Nourmand agreed to withdraw Sunset's appeal against the Schrader Project if KOAR signed a separate agreement promising to abide by the conditions of approval that the City had imposed on the Schrader Project. Opman said that he would have no problem signing the agreement, as long as the conditions were mutually binding in the event that Nourmand decided to develop the Sunset Property. Nourmand never pursued the agreement but shortly after the October 4, 2018 meeting, Sunset withdrew its appeal. | Plaintiffs present several facts as a single fact which is improper.<br><br>Undisputed that Sunset withdrew its appeal of the Schrader Project.<br><br>Undisputed as to all other facts for purposes of this motion, but immaterial. |
|---|---|---|

**Continued Opposition to the Selma Project**

| 118. | On November 27, 2018, on behalf of Sunset, TSLF attended a public hearing before the PLUM Committee to give comments in support of Sunset's administrative appeal challenging the Selma Project. | Undisputed but immaterial. |
|---|---|---|
| 119. | On November 27, 2018, the same day as the PLUM Committee hearing, TSLF submitted a 468-page objection letter against the Selma Project, on behalf of Sunset. | Undisputed for purposes of this motion, but immaterial. |
| 120. | During the administrative processes for the Thompson Project, the Tommie Project and the Selma Project, Sunset submitted more than | Plaintiffs present multiple facts as a single fact, which is improper. Undisputed for purposes of this motion, but immaterial. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | | |
|---|---|---|---|
| | | 4,000 pages of comment letters challenging Relevant's projects. Thirteen of those comment letters were submitted on the same day as a hearing or the day before. The average length of those thirteen comment letters was 297-pages. Seven comment letters were more than 300 pages long. The longest comment letter—submitted against the Selma Project on November 21, 2018—was 841-pages long. | |
| | 121. | After Robert Silverstein of TSLF finished speaking on behalf of Sunset at the November 27, 2018 public hearing, a member of the PLUM Committee said to Silverstein:<br><br>"We are in receipt of your voluminous arguments that you just submitted.  Just a thought for future because I know you've been before this body, many, many, many times and have submitted very similar stacks of paper.  Just in the interest of the environment, if you could double-side these next time, that would will [*sic*] great." | Undisputed but immaterial. |
| | 122. | During the administrative processes for the Thompson Project, Tommie Project and Selma Project, Sunset requested to postpone or delay administrative hearings on at least five occasions. | Undisputed but immaterial. |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| 123. | During December 2018 and January 2019, TSLF drafted a letter to the Los Angeles County District Attorney's Office, the California Attorney General, and the U.S. Attorney for the Central District of California, requesting that the prosecutors open an investigation into the City's approvals of Relevant projects in Hollywood.  The letter contained unsupported allegations that Relevant had bribed City officials in order to obtain favorable outcomes on their projects. TSLF asked Casey Maddren, a member of a community group called United Neighborhoods for Los Angeles ("UN4LA") to send the letter on UN4LA letterhead, in order to conceal TSLF's involvement. Maddren and UN4LA agreed to do so as **REDACTED** to TSLF, and UN4LA submitted the letter on January 14, 2019. The purpose of the letter to prosecutors was to publicize the letter itself and thereby to make the City nervous about a potential investigation and to make the City **REDACTED** about approving Relevant projects in the future.  No investigation materialized. | Plaintiffs present multiple facts as a single fact, which is improper.

Disputed that "The letter contained unsupported allegations that Relevant had bribed City officials in order to obtain favorable outcomes on their projects," on the grounds the evidence does not support the proffered fact, but immaterial.

Disputed that "The purpose of the letter to prosecutors was to publicize the letter itself," on the grounds the evidence does not support the proffered fact, but immaterial.

Disputed that "No investigation materialized," on the grounds the evidence does not support the proffered fact, but immaterial.

All other facts are undisputed for purposes of this motion, but immaterial. |
|---|---|---|

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

| | | |
|---|---|---|
| 124. | TSLF asked Maddren to enter the UN4LA letter to prosecutors in the administrative record for the Selma Project and to email a copy of the letter to City staff prior to the next public hearing. | Undisputed for purposes of this motion but immaterial. |
| 125. | At a hearing on March 5, 2019, the City Council voted to grant final approval for the Selma Project. | Undisputed. |
| 126. | On April 2, 2019, Sunset filed a Petition for Writ of Mandamus (the "Selma Writ Petition") against the City challenging its approval of the Selma Project. The lawsuit was filed in the Superior Court of California, County of Los Angeles and captioned *The Sunset Landmark Investment, LLC v. City of Los Angeles, et al.,* Case No. 19STCP01027 (the "Selma Litigation") | Undisputed. |
| 127. | In the Selma Writ Petition, Sunset alleged that it was suing "on behalf of others who will be affected in the Hollywood area, as well as for all citizens of the City of Los Angeles." | Undisputed. |
| 128. | In the Selma Writ Petition, Sunset alleged that the City violated CEQA by failing to prepare an EIR for the Tommie Project. | Undisputed. |
| 129. | In the Selma Writ Petition, Sunset alleged that the City's reliance on the MND was inadequate under CEQA because the City ignored "substantial evidence to support a fair | Undisputed. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | |
|---|---|---|
| | argument that the Project may cause significant, unmitigable impacts to the environment, including but not limited to land use, transportation, traffic, circulation, emergency response times, parking, pedestrian safety, noise, air quality, GHG, health risks, historic resources, shade/shadow, public services, cumulative impacts and growth inducing impacts." | |
| | **Other Projects** | |
| 130. | In early June 2019, TSLF asked Maddren to help find someone who attended the hearing for another Relevant project, the "Citizen News Project," which sought approvals to rehabilitate the historic Citizen News Building for use as a restaurant and event space.<br><br>Maddren reached out to people who may have attended, noting that his "friend is a lawyer and I think he wants to challenge the approval of the Citizen News Conversion." Because no one had timely appealed, however, TSLF was not able to find someone to challenge the Citizen News Project. | Plaintiffs present multiple facts as a single fact, which is improper.<br><br>Disputed that "Because no one had timely appealed, however, TSLF was not able to find someone to challenge the Citizen News Project" on the grounds the evidence does not support the proffered fact.<br><br>The remaining facts are undisputed but immaterial. |
| 131. | On September 13, 2018, the City Planning Commission held a hearing on the Crossroads development project, which proposed an 8.34- acre development that included over 1.3 million square feet of | Undisputed for purposes of this motion, but immaterial. |

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | | |
|---|---|---|---|
| | | residential, hotel and commercial uses at a site that was just two blocks away from the Sunset Property.  Nourmand did not show up to the hearing to oppose the Crossroads project. | |
| 132. | | In or around August 2018, Nourmand was negotiating a deal with the Crossroads developers, Harridge Development Group, LLC ("Harridge"), to develop the Sunset Property that would have included $6 million rent payments from Harridge to Nourmand. | Undisputed for purposes of this motion, but immaterial. |
| 133. | | During the course of the Selma Litigation, on behalf of Sunset, TSFL filed at least four motions that delayed the certification of the administrative record, including on November 5, 2019 (motion to determine scope of the administrative record), January 27, 2019 (motion to compel documents for the administrative record), January 29, 2019 (objection to the City's certification of the administrative record), and February 25, 2019 (motion to augment the administrative record).<br><br>Sunset also filed at least two motions to delay merits briefing and the trial date, including on May 11, 2020 (objection to request for order setting briefing schedule) and January 6, 2021 (*ex parte* application to continue | Plaintiffs present multiple facts as a single fact, which is improper.<br><br>Undisputed but immaterial.<br><br>[Note: Plaintiffs tellingly do not reference the success or failure of any of the motions] |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

| | | | |
|---|---|---|---|
| | | trial date). | |
| | 134. | As a result of Sunset's motion practice, the trial court did not issue an order on the merits in the Selma Litigation until January 11, 2021. | Undisputed for purposes of this motion, but immaterial. |
| | 135. | The trial court in the Selma Litigation issued an Interlocutory Writ and Order of Remand, which found that Sunset failed to raise fair argument that there were significant environmental impacts related to greenhouse gasses, noise, transportation, parking, public services, or external piecemealing.<br><br>The trial court issued an interlocutory remand for the City to clarify technical issues in the MND related to air quality impacts and the baseline used in its internal piecemealing analysis, rather than an order the City to prepare an EIR or a revocation of approvals. | Plaintiffs present multiple facts as a single fact, which is improper.<br><br>Undisputed but an incomplete description of the Interlocutory Writ and Order of Remand ("Selma Order"). In the Selma Order, the Court also found that "Sunset has presented substantial evidence supporting a fair argument that the Project may have significant effects on air quality. As such, the City's decision to adopt an MND was an abuse of discretion." The Order remanded the Selma Hotel Project to the City for further proceedings. SUF 22. The Order required a public hearing, allowed the City to consider and accept additional evidence and to prepare an environmental impact report or submit a return setting forth clarifications to its analysis and findings.<br><br>**N&A Evidence**<br>Request for Judicial Notice, ¶ 8, Exhibit 8.<br><br>**Plaintiffs' Evidence**<br>Thomas Decl., ECF No. 137-3 at 29-33; Ex. 98 [JX170] |

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

| 136. | On February 1, 2021, Sunset filed a post-judgment motion objecting to the trial court's interlocutory remand order.  The trial court entered the Interlocutory Writ and Order of Remand on February 8, 2021. | Undisputed but immaterial. |
|------|------|------|
| 137. | On March 26, 2021, in the Second Appellate District for the Court of Appeal of the State of California, Sunset filed a notice of appeal of the February 8, 2021 order in the Selma Litigation. On June 10, 2021, the Second Appellate District issued an order dismissing the appeal. | Undisputed but immaterial. |

Dated: March 23, 2023

**THE MALONEY FIRM, APC**

By: _____
Elizabeth Schaus

Patrick M. Maloney, Esq.
Gregory M. Smith, Esq.
Elizabeth T. Schaus, Esq.
Attorneys for Defendant,
NOURMAND & ASSOCIATES

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

**DEFENDANT NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS**

# **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2381 Rosecrans Avenue, Suite 405, El Segundo, CA 90245.

I served true copies of the following document on the date listed below, described as **DEFENDANT, NOURMAND & ASSOCIATES' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF COURT-ORDERED SUPPLEMENTAL BRIEF RE: RECONSIDERATION OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

## **SEE SERVICE LIST**

☐ <u>For Collection</u>.   By placing a true copy(ies) thereof enclosed in a sealed envelope(s), to the address(es) listed above and by placing said sealed envelope(s) for collection and mailing on that date following ordinary business practices. I am "readily familiar" with the business practice for collection and processing of correspondence for mailing the U.S. Postal Service.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.

☐ <u>Overnight Delivery</u>.  By placing a true copy(ies) thereof enclosed in a sealed envelope(s) or package(s) to the address(es) listed above and placing said envelope(s) or package(s) for collection with delivery fees provided for.

☒ <u>Electronic Service</u>.
   ☐ Via e-mail transmission to the email address(es) listed herein.
   ☒ Electronic Service [CM/ECF].   Via electronic service to the email address(es)/registered participants with the CM/ECF System.

☐ <u>Personal Delivery</u>.  I caused to be served by messenger for personal delivery that same day the foregoing documents in a sealed envelope to the persons at the address(es) listed above.

☒ <u>State</u>.   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 23, 2023, at El Segundo, California.

_____
Marilyn Vigil

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

# SERVICE LIST

Susan K. Leader, Esq.
Granville C. Kaufman, Esq.
Conor Tucker, Esq.
Mark Yohalem, Esq.
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
T: (323) 210-2900 | F: (866) 974.7329
E: sleader@wsgr.com
E: gkaufman@wsgr.com
E: ctucker@wsgr.com
E: mark.yohalem@wsgr.com

Attorneys for Plaintiffs
RELEVANT GROUP, LLC;
1541 WILCOX HOTEL, LLC;
6516 TOMMIE HOTEL, LLC:
6421 SELMA WILCOX
HOTEL, LLC

Dale R. Bish, Esq.
Charles A. Talpa, Esq.
Karen Kwok, Esq.
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
T: (650) 493-9300 | F: (650) 565-5100
E: dbish@wsgr.com
E: Sctalpas@wsgr.com
E: kkwok@wsgr.com

James H. Turken, Esq.
Neil P. Thakor, Esq.
Phillip R. Di Tullio, Esq.
Christopher Pelham, Esq.
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, Forty-First Floor
Los Angeles, CA 90071
T: (213) 892-9200 | (323) 892-9200
F: (213) 892-9494 | (323) 892-9400
E: james.turken@nortonrosefulbright.com
E: neil.thakor@nortonrosefulbright.com
E: christopher.pelham@nortonrosefulbright.com

Attorneys for Defendants
STEPHEN "SAEED"
NOURMAND and
THE SUNSET LANDMARK
INVESTMENT, LLC

THE MALONEY FIRM, APC
2381 ROSECRANS AVENUE, SUITE 405
EL SEGUNDO, CALIFORNIA 90245
T: (310) 540-1505 | F: (310) 540-1507

00206743

ii