**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
MARK R. YOHALEM, State Bar No. 243596
myohalem@wsgr.com
MATTHEW A. MACDONALD, State Bar No. 255269
matthew.macdonald@wsgr.com
633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
Telephone:   (323) 210-2900
Facsimile:    (866) 974-7329

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
dbish@wsgr.com
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:   (650) 493-9300
Facsimile:    (650) 565-5100

Attorneys for Plaintiffs Relevant Group, LLC,
1541 Wilcox Hotel LLC, 6516 Tommie Hotel
LLC, and 6421 Selma Wilcox Hotel LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10, <br><br> Defendants. | Case No.: 2:19-cv-05019-PSG-KSx <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLMENTAL BRIEFS (ECF NOS. 270, 273)** <br><br> Date:     April 27, 2023 <br> Time:     1:30 p.m. <br> Dept:     Courtroom 6A <br> Before:   Hon. Philip S. Gutierrez |

# TABLE OF CONTENTS

**Page**

I.  CIVIL RICO ...................................................................................4

    A.  The RICO Statute Does Not Exempt Litigation Activity ...................4

    B.  Defendants Engaged in a Pattern of Racketeering Activity ...............8

        1.  There Is No RICO Immunity for Targeting a Single Victim ...................................................................................8

        2.  There Were More than Two Predicate Acts ...........................9

II. THE *NOERR-PENNINGTON* DOCTRINE DOES NOT IMMUNIZE DEFENDANTS' EXTORTIONATE ACTS ....................................15

    A.  The *USS-POSCO* Test Applies ...............................................15

    B.  There Is a Triable Issue Under *USS-POSCO* .............................19

    C.  There is a Triable Issue under *PREI* .......................................22

        1.  Objective Baselessness ......................................................22

        2.  There Is a Triable Issue on Bad Faith ..................................24

III. CONCLUSION ...........................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

### CASES

*Acres Bonusing, Inc. v. Ramsey*,
    2022 WL 17170856 (N.D. Cal. Nov. 22, 2022)..........................................7, 8, 13

*Allwaste, Inc. v. Hecht*,
    65 F.3d 1523 (9th Cir. 1995) ...................................................................9

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
    790 F. Supp. 2d 1024 (N.D. Cal. 2011)..................................................13

*Aviva USA Corp. v. Vazirani*,
    632 F. App'x 885 (9th Cir. 2015).........................................................10

*Bill Johnson's Rests., Inc. v. N.L.R.B.*,
    461 U.S. 731 (1983) ...............................................................................7

*Boyle v. United States*,
    556 U.S. 938 (2009) ...............................................................................6

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008) ...............................................................................6

*California Motor Transport Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972) .........................................................................17, 18

*Camm v. Kennickell*,
    1990 WL 198621 (D.D.C. Nov. 20, 1990)............................................22

*City of Columbia v. Omni Outdoor Advertising, Inc.*,
    499 U.S. 365 (1991) .....................................................................1, 21, 25

*Coca-Cola Co. v. Omni Pac. Co.*,
    1998 U.S. Dist. LEXIS 23277 (N.D. Cal. Dec. 9, 1998) .....................16

*Cox v. Adm'r U.S. Steel & Carnegie*,
    17 F.3d 1386 (11th Cir. 1994)..............................................................10

*Deck v. Engineered Laminates*,
    349 F.3d 1253 (10th Cir. 2003).............................................................4

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Dias v. Bogins*,
    134 F.3d 361 (1st Cir. 1998) ................................................................... 4

*Dooley v. Crab Boat Owners Ass'n*,
    2004 WL 902361 (N.D. Cal. Apr. 26, 2004)......................................... 11

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
    629 F.3d 1278 (Fed. Cir. 2010) ............................................................ 16

*Fairbank v. Wunderman Cato Johnson*,
    212 F.3d 528 (9th Cir. 2000) .................................................................. 1

*Giles v. GMAC*,
    494 F.3d 865 (9th Cir. 2007) ................................................................ 23

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) ............................................................................ 6, 8

*Hall American Center Associates Ltd. Partnership v. Dick*,
    726 F. Supp. 1083 (E.D. Mich. 1989) ..................................................... 5

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*,
    806 F.3d 162 (3d Cir. 2015) ................................................... 3, 16, 20, 21

*Heritage Guitar, Inc. v. Gibson Brands, Inc.*,
    2022 WL 1954361 (W.D. Mich. June 6, 2022)..................................... 22

*I.S. Joseph Co. v. J. Lauritzen A/S*,
    751 F.2d 265 (8th Cir. 1984) .................................................................. 4

*In re Flonase Antitrust Litig.*,
    795 F. Supp. 2d 300 (E.D. Pa. 2011)..................................................... 16

*In re Teleglobe Commc'ns Corp.*,
    493 F.3d 345 (3d Cir. 2007) ................................................................. 13

*In re Terazosin Hydrocholoride Antitrust Litig.*,
    335 F. Supp. 2d 1336 (S.D. Fla. 2004).................................................. 18

*In re Wellbutrin XL Antitrust Litigation Indirect Purchaser Class*,
    868 F.3d 132 (3d Cir. 2017) ................................................................. 22

*Kearney v. Foley & Lardner, LLP*,
    607 F. App'x 757 (9th Cir. 2015)......................................................... 8, 9

*Kim v. Kimm*,
884 F.3d 98 (2d Cir. 2018) ..................................................................... 7, 8

*Kottle v. Nw. Kidney Ctrs.*,
146 F.3d 1056 (9th Cir. 1998) .......................................................... 17, 18

*La Suisse, Societe D'Assurances Sur La Vie v. Kraus*,
2014 WL 3610890 (S.D.N.Y. July 21, 2014) ........................................... 5

*Lemelson v. Wang Lab'ys, Inc.*,
874 F. Supp. 430 (D. Mass. 1994) ........................................................... 5

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) ............................................................... 14

*Limon v. Carpenters Loc. Union 721*,
2021 WL 4925444 (C.D. Cal. Jan. 11, 2021) .................................... 22, 23

*Liquid Air Corp. v. Rogers*,
834 F.2d 1297 (7th Cir. 1987) ................................................................. 9

*Livingston Downs Racing Association Inc. v. Jefferson Downs Corp.*,
192 F. Supp. 2d 519 (M.D. La. 2001) .................................................... 16

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*,
354 F. Supp. 2d 293 (S.D.N.Y. 2004) .................................................... 10

*Meridian Project Sys., Inc. v. Hardin Constr. Co.*,
404 F. Supp. 2d 1214 (E.D. Cal. 2005) .................................................. 22

*Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*,
1988 WL 238040 (W.D. Wis. Feb. 24, 1988) ........................................... 9

*Nader v. Democratic Nat'l Comm.*,
555 F. Supp. 2d 137 (D.D.C. 2008) ....................................................... 22

*Nugent v. St. Agnes Med. Ctr.*,
53 F. App'x 828 (9th Cir. 2002) .............................................................. 9

*Obeng-Amponsah v. Fin. Am., LLC*,
2009 WL 10646147 (C.D. Cal. Dec. 21, 2009) ....................................... 9

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ................................................................... 6

*Polaris Indus. Inc. v. Arctic Cat Inc.*,
    2017 WL 1180426 (D. Minn. Mar. 29, 2017) ............................................. 16

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ........................................................................................ 25

*Puerto Rico Tel. Co. v. San Juan Cable LLC*,
    874 F.3d 767 (1st Cir. 2017) ....................................................................... 20

*Richards v. County of Los Angeles*,
    2017 WL 7411159 (C.D. Cal. Mar. 31, 2017) ........................................... 13

*Rickards v. Canine Eye Reg. Found.*,
    783 F.2d 1329 (9th Cir. 1986) ........................................................................ 8

*RJR Nabisco, Inc. v. European Community*,
    579 U.S. 325 (2016) .................................................................................... 5, 6

*Rosen v. Duel*,
    2022 WL 18231777 (C.D. Cal. Nov. 23, 2022) .......................................... 16

*Safe Streets All. v. Hickenlooper*,
    859 F.3d 865 (10th Cir. 2017) ........................................................................ 6

*Scheidler v. Nat'l Org. for Women, Inc.*,
    537 U.S. 393 (2003) ........................................................................................ 4

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ............................................................................. 1, 2, 5, 6

*Sever v. Alaska Pulp Corp.*,
    978 F.2d 1529 (9th Cir. 1992) ........................................................................ 9

*Sicor Ltd. v. Cetus Corp.*,
    51 F.3d 848 (9th Cir. 1995) .......................................................................... 13

*Snow Ingredients, Inc. v. SnoWizard, Inc.*,
    833 F.3d 512 (5th Cir. 2016) .......................................................................... 8

*Stirone v. United States*,
    361 U.S. 212 (1960) ........................................................................................ 4

*Sun Sav. & Loan Ass'n v. Dierdorff*,
    825 F.2d 187 (9th Cir. 1987) .................................................................... 9, 10

*Swayne v. Salinas*,
   996 F.2d 1227 (9th Cir. 1993) (unpublished)........................................................ 9

*Sywula v. Teleport Mobility, Inc.*,
   2023 WL 362504 (S.D. Cal. Jan. 23, 2023) .......................................................... 13

*Terryberry v. Liberty Mut. Fire Ins. Co.*,
   688 F. App'x 489 (9th Cir. 2017)........................................................................... 13

*Toyo Tire & Rubber Co. v. CIA Wheel Group*,
   2015 WL 4545187 (C.D. Cal. July 8, 2015) ......................................................... 16

*Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*,
   207 F. Supp. 2d 221 (S.D.N.Y. 2002) ................................................................... 18

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
   2015 WL 4610894 (S.D.N.Y. July 30, 2015).......................................................... 13

*United States v. Albertson*,
   971 F. Supp. 837 (D. Del. 1997) ........................................................................... 15

*United States v. Boffa*,
   688 F.2d 919 (3d Cir. 1982) .................................................................................. 10

*United States v. Ibrahim*,
   522 F.3d 1003 (9th Cir. 2008)................................................................................ 13

*United States v. Johnson*,
   256 F.3d 895 (9th Cir. 2001) ................................................................................... 7

*United States v. Kaplan*,
   836 F.3d 1199 (9th Cir. 2016)................................................................................ 11

*United States v. Koziol*,
   993 F.3d 1160 (9th Cir. 2021)................................................. 1, 2, 8, 11, 14, 21, 23

*United States v. McFall*,
   2006 WL 2331130 (E.D. Cal. Aug. 10, 2006), *aff'd in part*, 319 F.
   App'x 528 (9th Cir. 2009) ..................................................................................... 15

*United States v. Pendergraft*,
   297 F.3d 1198 (11th Cir. 2002)................................................................................ 4

*United States v. Soto-Barraza*,
   947 F.3d 1111 (9th Cir. 2020)................................................................................ 11

*United States v. Universal C.I.T. Credit Corp.,*
  344 U.S. 218 (1952) ........................................................................ 10

*United States v. Villalobos,*
  748 F.3d 953 (9th Cir. 2014) ......................................... 11, 14, 15, 19

*United States v. Watchmaker,*
  761 F.2d 1459 (11th Cir. 1985) ..................................................... 10

*USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO,*
  31 F.3d 800 (9th Cir. 1994) ............................................. 1, 2, 20, 21

*Vemco, Inc. v. Camardella,*
  23 F.3d 129 (6th Cir. 1994) ............................................................. 4

*Viacom Int'l Inc. v. Icahn,*
  747 F. Supp. 205 (S.D.N.Y. 1990) ................................................ 15

*Waugh Chapel S., LLC v. United Food & Com. Workers Union Local 27,*
  728 F.3d 354 (4th Cir. 2013) ......................................................... 16

*Waxler v. Tillerson,*
  2017 WL 8185853 (C.D. Cal. Aug. 11, 2017) ................................. 4

*Wonderful Real Estate Development LLC v. Laborers International Union of North America Local 220,*
  2020 WL 91998 (E.D. Cal. Jan. 8, 2020) ..................................... 18

**STATUTES**

18 U.S.C. § 1951(b)(2) .......................................................................... 2

1    Plaintiffs do not seek to impose liability on Defendants for protected "civic
2    engagement" or bona fide participation in "a neighborhood's opposition to its own
3    redevelopment." *Cf.* ECF No. 270 at 2.  This case concerns Defendants' *unprotected*
4    extortionate lawfare:  their wrongful use of "governmental process … as [a] weapon"
5    of "expense and delay," *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499
6    U.S. 365, 380 (1991), in order to "obtain property to which [Defendants] had no
7    lawful claim," *United States v. Koziol*, 993 F.3d 1160, 1170 (9th Cir. 2021).  Such
8    extortion is criminal under the Hobbs Act and is a paradigmatic predicate act for
9    RICO.  Binding Supreme Court precedent establishes that conduct that can form a
10   predicate for a criminal RICO action is equally a predicate for a civil RICO action.
11   *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985).  To quote Nourmand &
12   Associates, "Defendants' litigation conduct deserves all the chilling effect the law
13   allows." ECF No. 273 at 17.

14   Defendants themselves made clear this was not a "single action" that might
15   ultimately come to an end, but rather "a whole series of such proceedings [that would]
16   inflict a crushing burden on a business."  *USS-POSCO Indus. v. Contra Costa Cnty.*
17   *Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994).
18   Defendants threatened they would always "find something else to challenge"; that
19   weaponizing CEQA for economic gain was the "drill," and it would "take a check" to
20   make those challenges stop.  A jury that simply takes Defendants at their word will
21   find that civil RICO liability is established.

22   That is the conclusion the Court reached repeatedly in this case, including when
23   denying Defendants' summary judgment motions.  Since then, there has been no new
24   precedent and no new facts.  Nothing has changed except the judge hearing the case,
25   and that is not a basis for changing prior rulings.  *See Fairbank v. Wunderman Cato*
26   *Johnson*, 212 F.3d 528, 530 (9th Cir. 2000) ("[O]ne judge should not overrule the
27   prior decisions of another sitting in the same case because of the 'principles of comity
28   and uniformity [which] … preserve the orderly functioning of the judicial process.'")

1   (citation omitted).  Plaintiffs are entitled to have a jury weigh the disputed evidence.

2     ***Civil RICO.*** Extortion-by-lawfare is not exempt from civil RICO.  A RICO

3   predicate is a RICO predicate, whether the liability is civil or criminal.  *See Sedima*,

4   473 U.S. at 489.  Hobbs Act extortion is the paradigmatic RICO predicate—indeed,

5   the Hobbs Act's earlier incarnation was part of the Anti-Racketeering Act of 1934.

6   "[T]here is no statutory, constitutional, or policy basis to support [the] argument that

7   threats of sham litigation are categorically excluded from criminal liability under the

8   Hobbs Act."  *Koziol*, 993 F.3d at 1168.  Nor is there any basis to draw a distinction

9   between the "threat of sham litigation" and actual "sham litigation."  *See* 18 U.S.C. §

10  1951(b)(2) (covering "wrongful use of actual or threatened force, violence, or fear").

11  *Koziol* and this case alike both involve "the wrongful use of fear," and *Koziol*

12  explicitly rejected the notion that, "by filing his threatened sham complaint, Koziol

13  could have automatically prevented the government from proving improper motive.

14  Indeed, extortionists are not free simply to file a complaint and thus don the protective

15  mantle of *Noerr-Pennington* immunity."  993 F.3d at 1167, 1172 n.12.  The fear here

16  was all the greater because Defendants proved willing actually to use sham litigation.

17    The bulk of the cases on which Defendants rely are either directly contrary to

18  *Koziol*, or contrary to *Sedima* in light of *Koziol*'s interpretation of the Hobbs Act.  As

19  the Solicitor General has explained, "nothing in the court's analysis" in *Koziol*

20  "suggests that the court believed it could have properly adopted a different

21  interpretation of the same statutory language" in a civil versus criminal context.  *See*

22  Brief for the United States in Opposition at 16, *Koziol v. United States*, No. 21-6054

23  (U.S. Feb. 14, 2022) (hereinafter "*Koziol* BIO").

24    ***Noerr-Pennington.*** *First*, *USS-POSCO*, not *PREI*, controls.  Defendants'

25  conduct goes far beyond a "single action," *USS-POSCO*, 31 F.3d at 811, or even

26  "three petitions," as they claim, ECF No. 270 at 9-15.  At the point where an

27  extortioner declares "you know the drill," the scheme has evolved into a pattern and

28  is not just an isolated act or acts.  Even within a single CEQA proceeding, Defendants

made clear they would always "find something else to challenge," such that the threat arose from the *process* entailed by a "*series*" of challenges, not the potential outcome of one petition. Both these considerations make clear that *USS-POSCO* provides the relevant framework without regard to counting.

But a counting approach reaches the same result, even if the "crushing burden" of Defendants' challenges as to each project are considered just one action. This case is about *at least* four such actions: Thompson, Tommie, Selma, and Schrader (which, contrary to what Defendants say, was a Relevant project when the sham challenge was initiated). That is enough. *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 180 (3d Cir. 2015). If anything, this case presents a stronger case for the application of *USS-POSCO* than did *Hanover*, as it concerns far more involved challenges over a much longer period of time.

Under *USS-POSCO*, there is plainly a triable issue of fact. The parties vigorously dispute the significance of the victories that Defendants claim to have achieved, and there is ample evidence that Defendants deliberately used the "crushing burden" and delay of the CEQA *process* to take things that Defendants could never get as an *outcome* of that process. Defendants' self-serving assertions about their motivations are arguments for the jury, not summary judgment.

*Second*, even under *PREI*, there is a triable issue of fact. The test for "objective baselessness" requires more than a speck of merit among a sea of meritless claims. Defendants' claimed successes are not proof that their myriad cookie-cutter objections were objectively well-founded. And even if Defendants did not pursue a wrongful *means*, there would still be a triable question based of the wrongful *ends* sought, as the Solicitor General has made clear. *See Koziol* BIO at 15 (noting that extortion-by-litigation can be based on either "a wrongful means—the threat of litigation that he knew was a sham" or "a wrongful end—obtaining property to which he had no lawful claim").

This case requires a trial.

1  **I.      CIVIL RICO**

2      **A.      The RICO Statute Does Not Exempt Litigation Activity**

3          Defendants' lead argument appears to be that, for purported policy reasons,

4  litigation conduct can *never* constitute a predicate act for purposes of civil RICO.

5  ECF Nos. 270 at 15-16; 273 at 1, 13-17.  Defendants already made these arguments

6  to the Court (citing the same cases), and the Court rejected them.  *See, e.g.*, ECF Nos.

7  124-1 at 11-14; 167 at 20-21.  The Court's January 20, 2023 order did not invite

8  further briefing on this issue, and Defendants have not properly sought

9  reconsideration.  Defendants' argument should be rejected for that reason alone.  *See,*

10 *e.g.*, *Waxler v. Tillerson*, 2017 WL 8185853, at *1 (C.D. Cal. Aug. 11, 2017)

11 (declining to consider argument outside the court's order for supplemental briefing).

12         In any event, Defendants are wrong.  The cases on which they rely are out of

13 circuit and foreclosed by *Koziol* because they reason that litigation (or threats thereof)

14 cannot be extortion, which is not the law in the Ninth Circuit.  *E.g.*, *Dias v. Bogins*,

15 134 F.3d 361, at *1 (1st Cir. 1998) (unpublished) ("threat to sue … is not extortion

16 under federal law."); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir.

17 1984) (threats of litigation are not extortion); *Deck v. Engineered Laminates*, 349 F.3d

18 1253, 1258 (10th Cir. 2003) (litigation conduct is not extortion); *United States v.*

19 *Pendergraft*, 297 F.3d 1198 (11th Cir. 2002) (similar); *Vemco, Inc. v. Camardella*, 23

20 F.3d 129, 134 (6th Cir. 1994).  Even absent *Koziol*, it would be improper to limit the

21 Hobbs Act on grounds of policy because the Act "manifest[s] a purpose to use all the

22 constitutional power Congress has to punish interference with interstate commerce by

23 extortion."  *Stirone v. United States*, 361 U.S. 212, 215 (1960).

24         Defendants' suggestion that conduct constituting Hobbs Act extortion cannot

25 form a predicate in a civil RICO action is equally baseless.   Extortion is the

26 paradigmatic predicate act under RICO.  *See Scheidler v. Nat'l Org. for Women, Inc.*,

27 537 U.S. 393, 410 (2003).  RICO draws no distinction between predicates for civil or

28 criminal actions.  "Section 1962 renders certain conduct 'unlawful'; § 1963 and §

1964 impose consequences, criminal and civil, for 'violations' of § 1962." *Sedima*, 473 U.S. at 489.  The Supreme Court has already rejected the notion "that Congress intended the term to have wholly different meanings in [these] neighboring subsections [of RICO]." *Id.*  Thus, "[i]f the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c)." *Id.* at 495.  To hold that certain kinds of Hobbs Act extortion cannot be predicates in a civil RICO action would mean they cannot be predicates in a criminal RICO action.  *Id.*; *see also Koziol* BIO at 16.  There is no language in Section 1964 that would permit the courts—on policy grounds—to pick and choose which crimes listed in Section 1962 count for purposes of Section 1964.

Caselaw is in accord.  As explained in *Hall American Center Associates Ltd. Partnership v. Dick*, 726 F. Supp. 1083, 1092-97 (E.D. Mich. 1989), plaintiffs can properly "resort to RICO and the Hobbs Act" to bring claims against defendants who "illegitimately pursued their legal remedies."   After carefully discussing key precedent and statutory text, the court ruled that "the defendants' filing of lawsuits and notices of *lis pendens* as part of a scheme to extort the plaintiffs' Property, which included the defendants' interference with the Joint Venture, the defendants' attempt to involve the United States Attorney in the matter, and other harassment of third persons involved with the Property, Property to which they knew they were not entitled—suffice to state a claim under the Hobbs Act and consequently a predicate act under RICO."  *Id.* at 1097; *accord Lemelson v. Wang Lab'ys, Inc.*, 874 F. Supp. 430, 434 (D. Mass. 1994) (permitting civil RICO claim where the defendant "extorted millions of dollars in settlement monies through a pattern of litigation" involving "fraudulently obtained patents"); *La Suisse, Societe D'Assurances Sur La Vie v. Kraus*, 2014 WL 3610890, at *9-10 (S.D.N.Y. July 21, 2014).

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325 (2016), does not require a different result.  There, the Court "separately appl[ied] the presumption

against extraterritoriality to RICO's [civil] cause of action" and its "substantive prohibitions." *Id.* at 346. Simply because the Supreme Court drew distinctions between RICO provisions for the purposes of deciding RICO's extraterritorial scope (*id.* at 349-51) does not mean that courts can pick and choose which predicate acts may be enforced through civil versus criminal RICO actions. *RJR Nabisco* has nothing to say on that question. It did not overrule *Sedima* or even call it into doubt; the Court simply noted that *Sedima* did not decide the specific extraterritoriality question. *Id.* at 350 n.10; *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017) (citing both cases as affirming the broad scope of civil RICO).

Congress's "express admonition that RICO is to be 'liberally construed to effectuate its remedial purposes'" is "nowhere more evident than in the provision of a private action for those injured by racketeering activity." *Sedima*, 473 U.S. at 498 (citation omitted). The Supreme Court has "repeatedly refused to adopt narrowing constructions of RICO in order to make it conform to a preconceived notion of what Congress intended to proscribe." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 660 (2008); *see also, e.g.*, *Boyle v. United States*, 556 U.S. 938, 950 (2009) ("In prior cases, we have rejected [arguments about legislative purpose and similar considerations] in favor of the clear but expansive text of the statute."); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249 (1989) ("RICO may be a poorly drafted statute; but rewriting it is a job for Congress, if it is so inclined, and not for this Court."). This Court must "take from these cases the general instruction that [it] should not read the statutory terms of RICO narrowly. Rather, as the Court wrote in *Sedima*, "RICO is to be read broadly." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007).

These are binding precedents—unlike the out-of-circuit cases relied on by Defendants suggesting that extortion by sham litigation cannot constitute a civil RICO predicate. In a backwards argument, Defendants suggest that when the Ninth Circuit *rejected* those cases as inapposite to the Hobbs Act in *Koziol*, it somehow *adopted* them as binding the Ninth Circuit in future civil RICO cases. That is not how it works.

The Court had no obligation to address non-binding cases at all, and once it deemed them inapposite to the matter before the Court, that was the end of the matter. The *Koziol* Court was not "focused on the legal issue presented by" those out-of-circuit civil RICO cases, and the Court did not "ma[k]e a deliberate decision to resolve the issue" presented in those cases; at most, its distinguishing of those cases was "a prelude to another legal issue that command[ed] the panel's full attention," namely, the scope of the Hobbs Act. *See generally United States v. Johnson*, 256 F.3d 895, 914-16 (9th Cir. 2001) (Kozinski, J., concurring) (describing what constitutes dicta).[1]

Thus, the *Koziol* Court *did not* hold that the conduct before it was Hobbs Act extortion but only for purposes of criminal RICO. And it *could not* have so held, given the blackletter law that the same predicate acts are shared between RICO's criminal and civil remedies. The out of circuit courts that have reached a different result have failed to address the lack of distinction in the law between civil and criminal RICO liability or consider the impact of their holdings in the civil context on criminal RICO liability or the Hobbs Act. But in this circuit, *Koziol* has already answered the question whether the paradigmatic RICO predicate of extortion can be carried out through lawfare, and the answer is yes. Moreover, the policy concerns raised in these out-of-circuit decisions are already addressed by the *Noerr-Pennington* doctrine, which makes clear that sham petitioning and litigation is not immunized by the First Amendment. *See, e.g., Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983). Defendants' conduct falls outside the scope of *Noerr-Pennington* and therefore ought not be immunized by an impermissible construction of RICO.

Finally, the cases on which Defendants rely do not preclude liability here. These cases have held only that "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act.'" *Kim*

---

[1] The recent unpublished order in *Acres Bonusing, Inc. v. Ramsey*, 2022 WL 17170856 (N.D. Cal. Nov. 22, 2022), is neither precedential nor persuasive—the court undertook no analysis of the relevant statutory or case authorities.

*v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018); *cf. id.* at 103 (predicate acts included filing allegedly false declarations); *Acres Bonusing*, 2022 WL 17170856, at *10-11 (payment of billing invoices and submission of allegedly false declarations); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016) (obstructive litigation tactics). But here, there is "more." Defendants did not just bring weak cases or give doubtful testimony (though they certainly did that). Defendants used sham lawsuits purportedly brought on behalf of the public as a tool of private enrichment— *i.e.*, to obtain property to which they had "no lawful claim." *Koziol*, 993 F.3d at 1170. That additional element (*i.e.*, the unlawful end) distinguishes this case from those cited by Defendants. Allowing a civil RICO claim to proceed under these circumstances will not mean that "every unsuccessful lawsuit could spawn a retaliatory action" or "inundate the federal courts" with RICO claims. *Cf. Kim*, 884 F.3d at 104. Rather, it will deter the filing of sham public interest litigation to derive a personal benefit, money or property to which the petitioner does not have a lawful claim. This kind of abuse of the legal process as a tool of private enrichment "deserves all the chilling effect the law allows." *Koziol*, 993 F.3d at 1174 (quoting *Rickards v. Canine Eye Reg. Found.*, 783 F.2d 1329, 1334 (9th Cir. 1986)).

**B.     Defendants Engaged in a Pattern of Racketeering Activity**

A "pattern of racketeering activity" has three requirements: (1) at least two predicate acts (2) that are "related" and (3) "amount to or pose a threat of continued criminal activity." *See Nw. Bell*, 492 U.S. at 239, 241-43. The "continuity" prong is a "temporal concept" satisfied by either "closed-ended" or "open-ended" continuity. *Id.*; *Kearney v. Foley & Lardner, LLP*, 607 F. App'x 757, 758-59 (9th Cir. 2015). Defendants' arguments fall far short of defeating a pattern as a matter of law.

**1.     There Is No RICO Immunity for Targeting a Single Victim**

Contrary to Defendants' suggestion, there is no rule that a defendant is immune from RICO simply because the "pattern" targeted only a "single victim." ECF No. 270 at 18-19. To the contrary, "a pattern does not require multiple victims." *Kearney*,

607 F. App'x at 759; *see also Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 193 (9th Cir. 1987) (holding that multiple criminal acts against a single victim were sufficient to establish a RICO pattern); *accord Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1304-05 (7th Cir. 1987) (citing *Sun Sav.*, 825 F.2d 187); *see also Mgmt. Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 1988 WL 238040, at *6 (W.D. Wis. Feb. 24, 1988) ("repeated infliction of economic injury upon a single victim of a single scheme is sufficient to establish a pattern … for purposes of civil RICO").

The authority that Defendants rely on is readily distinguishable.  What mattered in those cases was not just that there was a single *victim* but a single *episode* of alleged wrongdoing.  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (where defendants fired and allegedly "blacklisted" an employee, no pattern in part because the conduct was "in a sense a single episode"); *Nugent v. St. Agnes Med. Ctr.*, 53 F. App'x 828, 829 (9th Cir. 2002) ("a single alleged fraud with a single victim"); *Swayne v. Salinas*, 996 F.2d 1227, at *2 (9th Cir. 1993) (unpublished) (no pattern given the "isolated nature" of the alleged wrongdoing); *see also Obeng-Amponsah v. Fin. Am., LLC*, 2009 WL 10646147, at *10 (C.D. Cal. Dec. 21, 2009) ("only a single perpetration of fraud against a single victim in the past").  By contrast here, Defendants targeted four separate projects, each of which was sufficiently "distinct" that a jury could conclude that there was a pattern.[2]  *Cf. Sever*, 978 F.2d at 1535.

In any event, there was not just one victim—Relevant and multiple affiliates were all victims of Defendants' conduct.  ECF No. 141, SUF 5-7, 60, 63.

## 2.   There Were More than Two Predicate Acts

Nor can Defendants establish that there are fewer than two predicate acts.

---

[2] Moreover, the "continuity" test is clearly satisfied here both because Defendants' conduct spanned multiple years ("closed-end continuity"), *see Kearney*, 607 F. App'x at 758-59 (two years sufficient for closed-end continuity); *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995) (thirteen months is sufficient), and because Nourmand's "you know the drill" statement shows there was a clear threat that the conduct would continue ("open-ended continuity"), *id.* at 1528-30.

***The Thompson and Tommie Are Two Predicate Acts Not One.*** Contrary to Sunset's arguments, ECF No. 270 at 21, the Thompson and Tommie constituted two separate predicate acts. There were two separate lawsuits. SSF 36, 71 (ECF No. 268-1). There were two separate settlement agreements. SSF 83. Defendants made separate settlement demands for each project—$4 million for the Thompson and $1.5 million for the Tommie. SSF 79-84. That stands in marked contrast to Defendants' cases, which involve a "single plan" carried out over a "series of steps." *Aviva USA Corp. v. Vazirani*, 632 F. App'x 885, 888-89 (9th Cir. 2015); *see also Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293 (S.D.N.Y. 2004).

Contrary to what Defendants argue, the timing of when the settlement agreements were executed or paid does not preclude a finding of two distinct predicate acts under RICO. "[A]cts that are part of the same scheme or transaction can qualify as distinct predicate acts." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1397 (11th Cir. 1994) (citation omitted) (predicate acts arising out of single collective bargaining agreement); *see also United States v. Boffa*, 688 F.2d 919, 934-36 (3d Cir. 1982) (each monthly lease payment made to secure use of an automobile for union official could constitute a separate predicate act); *United States v. Watchmaker*, 761 F.2d 1459, 1457 (11th Cir. 1985) (simultaneous shootings of three police officers were three predicate acts); *see generally Sun Sav.*, 825 F.2d at 193 ("a series of predicate acts related to … one … scheme" is sufficient to create a pattern).

Predicate acts "are determined by reference to the applicable statute." *Boffa*, 688 F.2d at 934 (citing *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218 (1952)). Here, Defendants demanded money and other concessions based on their wrongful threats to delay the Thompson project. SSF 53-57, 77-78, 79. Defendants then began to threaten delays to the Tommie project as well, and demanded additional money and design changes to end that separate challenge. SSF 64-66, 79-84. Under the Hobbs Act, these constitute distinct "wrongful" threats to delay each project and separate demands for "property" from each entity, even though the vehicles used to

obtain that property—the settlement agreements—were executed on the same day.

**Defendants Committed Attempted Extortion (and Conspiracy to Commit Extortion) in Connection with the Selma.**  "[A]ttempting or conspiring to commit extortion … may be considered a predicate act for purposes of RICO," *Dooley v. Crab Boat Owners Ass'n*, 2004 WL 902361, at *5 (N.D. Cal. Apr. 26, 2004), and Defendants have not come close to establishing as a matter of law that the Selma did not constitute an act of attempted extortion (or conspiracy to commit extortion).

Saeed Nourmand made an express demand for money in connection with the Selma administrative challenge: "you know the drill, it's going to take a check."  SSF 94-96.  That is more than sufficient to constitute an "external manifestation" of an intention to commit extortion.  *See, e.g.*, *United States v. Villalobos*, 748 F.3d 953, 957-58 (9th Cir. 2014) (attempted extortion where lawyer threatened that his client would cooperate with or impede an investigation depending upon whether the extortion victim paid him).  That Relevant refused to give in to the shakedown provides no more help to Defendants than it did to Koziol.  *Koziol*, 993 F.3d at 1167. A reasonable jury could readily conclude from Nourmand's statement, from Defendants' prior acts of extortion, and Defendants' continued abuse of CEQA process that this was an attempted extortion.  *See generally United States v. Soto-Barraza*, 947 F.3d 1111 (9th Cir. 2020); *see also id.* at 1120 ("[W]e have generally characterized [the point at which actions ripen into attempt] as when a defendant's actions demonstrate 'that the crime will take place unless interrupted by independent circumstances.'") (citation omitted).  Indeed, Defendants previously conceded as much.  *See* ECF No. 124-1 at 22.  A jury could also conclude from Defendants' conduct that there was an agreement to commit extortion and thus that the Selma project shakedown constituted a conspiracy to commit extortion.  *United States v. Kaplan*, 836 F.3d 1199, 1212 (9th Cir. 2016) ("An agreement to commit a crime 'can be explicit or tacit, and can be proved by direct or circumstantial evidence, including inferences from circumstantial evidence.'") (citation omitted).

***Defendants Committed Attempted Extortion (and Conspiracy to Commit Extortion) in Connection with the Schrader.*** A jury could also find attempted extortion and conspiracy to commit extortion concerning the Schrader. The Schrader administrative challenge was not brought in a vacuum. It occurred only after Defendants had obtained $5.5 million by bringing the first two CEQA challenges. It occurred after Nourmand had explained that the "drill" for Relevant going forward would be writing Defendants a check whenever Relevant wanted to build a new project. A reasonable jury could well find that under those circumstances the mere filing of the new administrative challenge was a "substantial step" towards extortion (or evidence of conspiracy)—that is, the first step in the "drill" and an implicit if not explicit demand for more blood money. Contrary to Defendants' arguments, the events of their meeting with KOAR (the subsequent owner of the Schrader) are hotly disputed. *Cf.* ECF No. 270 at 5, 22. As set forth in Plaintiffs' opening briefing, that meeting establishes the wrongful nature of what Defendants were doing to Plaintiffs, not Defendants' innocence. ECF No. 268 at 7, 14, 25.

Nor have Plaintiffs ever waived the right to assert the Schrader as a predicate act. *Cf.* ECF No. 270 at 22. Plaintiffs have consistently maintained, both before and after the summary judgment briefing, that the Schrader was an act of attempted extortion and a separate predicate act. *See, e.g.*, ECF No. 89 ¶¶ 16, 99-103; ECF No. 104 at 4-5; ECF No. 181 at 8-9. Defendants take a single awkwardly phrased line from one brief and take it out of context. As Plaintiffs explained, the Schrader episode was not "by itself" an "independent" predicate act because it could only properly be understood in the context of Defendants' prior pattern of racketeering activity. ECF No. 137 at 25. The *very next sentence* made clear that the Schrader was an "overt act" in furtherance of an attempt to extort yet another check out of Plaintiffs. *Id.*; *see also* ECF No. 141 at 26. Judge Wright understood that Plaintiffs were claiming the Schrader as an act of attempted extortion. ECF No. 167 at 30. In any event, because Plaintiffs *prevailed* on summary judgment, they are not now precluded from arguing

1  different evidence or new legal theories. *See generally U.S. Bank Nat'l Ass'n v. PHL*

2  *Variable Ins. Co.*, 2015 WL 4610894, at *2 (S.D.N.Y. July 30, 2015). Nor is there

3  any basis to treat that phrase as a judicial admission or impose judicial estoppel. *See,*

4  *e.g.*, *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 377 (3d Cir. 2007) (conclusions

5  of law are not judicial admissions); *see also Terryberry v. Liberty Mut. Fire Ins. Co.*,

6  688 F. App'x 489, 490-91 (9th Cir. 2017) (unpublished) ("A judicial admission that

7  has been effectively retracted by a subsequent explanatory statement no longer has

8  any conclusive effect.") (citing *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859-60 (9th

9  Cir. 1995)); *see also, e.g.*, *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir.

10  2008) (no judicial estoppel absent proof that party obtained an unfair advantage).

11    ***California's Litigation Privilege Does Not Apply.*** Contrary to Defendants'

12  contention, Plaintiffs can rely on state extortion law as a predicate act. As this Court

13  held previously, "it is 'settled precedent' in the Ninth Circuit that [California's

14  litigation privilege] 'does not apply to RICO claims.'" ECF No. 167 at 22; *accord*

15  *Sywula v. Teleport Mobility, Inc.*, 2023 WL 362504, at *20 (S.D. Cal. Jan. 23, 2023).

16  Defendants fail to cite a case that holds otherwise.[3] In fact, Defendants' own authority

17  (cited elsewhere in their brief) makes clear that the litigation privilege *does not* shield

18  a defendant from a RICO claim based on state-law predicate acts even if those acts

19  might have been immunized by the litigation privilege in state court. *Acres Bonusing*,

20  2022 WL 17170856, at **9-10, 22.

21    ***Defendants' Use of CEQA Was Wrongful under the Hobbs Act.*** Nor can

22  Defendants establish as a matter of law that their use of litigation was not wrongful

23  under the Hobbs Act. ECF No. 270 at 19-20. As Sunset concedes, *Koziol* held that

24  "threats of sham litigation, which are made to obtain property to which the defendant

25

26    [3] Defendants instead cite one case where the Ninth Circuit refused to apply it to a
27  federal law claim (*Richards v. County of Los Angeles*, 2017 WL 7411159, at *4 (C.D.
 Cal. Mar. 31, 2017)) and another case where the Northern District held that it could
28  apply to pendent state law claims (*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
 790 F. Supp. 2d 1024, 1030 (N.D. Cal. 2011)).

knows he has no lawful claim are wrongful under the Hobbs Act." ECF No. 270 at 19 (quoting *Koziol*, 993 F.3d at 1170)). There is ample evidence that Defendants' conduct satisfies the "sham" litigation test under both the *USS-POSCO* and *PREI* tests. Nothing in *Koziol* suggests that the *USS-POSCO* test cannot be used to show that litigation is a sham. As the Court concluded, Plaintiffs had a "pre-existing right to be free" of litigation brought for an improper purpose without regard to its merit. ECF No. 167 at 32 (citing *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir. 2014)).

Moreover, the Ninth Circuit made clear that conduct can be wrongful *either* as wrongful means (*i.e.*, the bringing of a meritless claim) *or* wrongful ends (*i.e.*, a demand for property to which the extortioner has "no lawful claim"). *Koziol*, 993 F.3d at 1169. Put otherwise, *even when* a threat is based on a legitimate legal claim, it is nevertheless extortion if "no nexus existed between the threat and the property demanded." *Villalobos*, 748 F.3d at 959 (Watford, J., concurring) (collecting cases). Thus, even if Defendants proved the litigation "was not a sham," the jury would still need to determine whether Defendants sought to "obtain[] property to which [they] had no lawful claim." *See Koziol* BIO at 16. Defendants do not dispute that CEQA does not provide for monetary recovery (other than attorney's fees). The settlement agreements state on their face that the payments were not for attorney's fees, and Defendants admitted they did not incur anything close to $5.5 million in fees. *See* SSF 84 (in opposition to Sunset's Supp. Statement); SSF 56-57. Defendants had no lawful claim to the $4 million they demanded for the Thompson, the $1.5 million they tacked on for the Tommie, or the "check" that they demanded for the Selma and any future developments such as the Schrader. Defendants do not even attempt to show (because they cannot) a "nexus" between their demands and any possible CEQA outcome. At a minimum, this is a question for the jury.[4]

---

[4] Plaintiffs' opening brief incorrectly described *Koziol* as being a decision about wrongful "means." ECF No. 276 at 23. *Koziol* actually framed its holding as one about wrongful "ends," but the distinction is immaterial. *Koziol* confirms that litigation conduct can be wrongful when the petitioner demands property to which it
(continued...)

Defendants' out-of-circuit order in *United States v. Albertson*, 971 F. Supp. 837 (D. Del. 1997), cannot be reconciled with *Villalobos*—for there, too, the extortioner offered something of value to the victim, 748 F.3d at 955 ("[I]n return for payment, Villalobos promised that Orit would do 'whatever it is we need her to do'[.]"), and nevertheless there was Hobbs Act extortion.  Even if not precluded by *Villalobos*, the order would not be persuasive.  Among other reasons, the court itself acknowledges that its approach would immunize a range of Act "disgraceful, offensive, and ethically repugnant" conduct that "some would argue cross[es] the line separating lawful bargaining from extortion."  *Albertson*, 971 F. Supp at 850.[5]

Further, "in *Albertson* there was no question that the [defendant] had legitimate reasons for initially opposing local development."  *United States v. McFall*, 2006 WL 2331130, at \*10 (E.D. Cal. Aug. 10, 2006), *aff'd in part*, 319 F. App'x 528 (9th Cir. 2009).   Here, there are substantial (and triable) issues of fact as to whether Defendants' opposition to Plaintiffs' projects "from the start" had anything to do with legitimate environmental concerns or whether they had "everything to do with compelling payments [and other concessions] to which [they] [were] not entitled."  *McFall*, 319 F. App'x at 533.  In this Circuit, that entitles Plaintiffs to a trial.

## II.   THE *NOERR-PENNINGTON* DOCTRINE DOES NOT IMMUNIZE DEFENDANTS' EXTORTIONATE ACTS

### A.   The *USS-POSCO* Test Applies

The case involves a sprawling, years-long campaign comprising dozens of administrative proceedings, multiple lawsuits (each asserting a raft of different claims), and letters to prosecutors.  In each of these proceedings, Defendants did everything they could to overwhelm Plaintiffs with the legal process.  Defendants

---

has no lawful claim.  The decision does not in any way suggest that the abuse of environmental laws to obtain private remuneration would not constitute extortion.

[5] *Viacom Int'l Inc. v. Icahn*, 747 F. Supp. 205 (S.D.N.Y. 1990), also cited by Defendants (ECF No. 270 at 20), was a private shareholder dispute that has no bearing on this case.

filed massive, boilerplate objections running into the hundreds of pages, and asserted scattershot claims.  The right analytical framework for this is *USS-POSCO*, which looks at the "crushing burden" of a series of actions, rather than *PREI*, which looks at the merits of an isolate claim or claims.  *See Hanover*, 806 F.3d at 181-82.  In deciding which framework to employ, the Court should not simply count actions, but instead should take a holistic approach to determining whether Defendants were using legal *process* to achieve their goals.  *Waugh Chapel S., LLC v. United Food & Com. Workers Union Local 27*, 728 F.3d 354, 363-64 (4th Cir. 2013).

Defendants cite no case applying *PREI* to facts like these.  The cases they cite apply *PREI* to far weaker records.  *See Rosen v. Duel*, 2022 WL 18231777 (C.D. Cal. Nov. 23, 2022) (five unlawful detainer actions filed against five different tenants); *In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 305-08, 309 n.10 (E.D. Pa. 2011) (challenges to the FDA approval of a single drug); *Coca-Cola Co. v. Omni Pac. Co.*, 1998 U.S. Dist. LEXIS 23277, at *24 (N.D. Cal. Dec. 9, 1998) (four trademark actions); *Toyo Tire & Rubber Co. v. CIA Wheel Group*, 2015 WL 4545187 (C.D. Cal. July 8, 2015) (three trademark actions); *Polaris Indus. Inc. v. Arctic Cat Inc.*, 2017 WL 1180426, at *5-7 (D. Minn. Mar. 29, 2017) (three patent cases); *ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1291-92 (Fed. Cir. 2010) (three patent cases).  The last case Plaintiffs cite—*Livingston Downs Racing Association Inc. v. Jefferson Downs Corp.*, 192 F. Supp. 2d 519, 538-39 (M.D. La. 2001)—applied *USS-POSCO*, not *PREI*.

Even focusing solely on "numerosity," as Defendants insist the court must, there are enough petitions to apply *USS-POSCO*.  Though Defendants repeatedly *say* that this is a case about "three petitions," that is wrong.  At a minimum and even accepting Defendants' arguments about administrative exhaustion, there are four—Thompson, Tommie, Selma, and Schrader.  Defendants' claim that the Schrader was not a Relevant project (ECF Nos. 270 at 10 n.3; 273 at 9) is untrue: the project was a Relevant project at the time Defendants filed the claim, which is why Defendants filed

it.  SSF 97-101, 105-111.  *Hanover* holds that four can be sufficient, and this case presents a much stronger case for application of *USS-POSCO* than did *Hanover*.

The real number is much higher than four.  Defendants fail to cite any case that supports their sweeping assertion that "*there is no such thing* as a 'sham'" administrative challenge.  ECF No. 270 at 11.  To the contrary, the seminal Supreme Court case on the topic, *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972), expressly recognized that the sham exception can apply in the context of administrative proceedings like those at issue here: "a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the ***administrative and*** judicial processes have been abused."  *Id.* at 509-13 (emphasis added).  The alleged sham activities in *Cal. Motor* involved a group of highway carriers that sought to "harass and deter" a competitor from obtaining operating licenses through a pattern of successive challenges at each stop along the way during the administrative process and in the courts:

> The conspiracy alleged is a concerted action by petitioners to institute state and federal proceedings to resist and defeat applications by respondents to acquire operating rights or to transfer or register those rights. ***These activities, it is alleged, extended to rehearings and to reviews or appeals from agency or court decisions on these matters***.

*Id.* at 509, 511-13, 515-16 (emphasis added).  The Supreme Court clearly counted pre-litigation challenges during administrative proceedings, as well as judicial challenges, in its analysis of whether the sham pattern existed.  *Id.*[6]

Defendants' attempt to distinguish this case based on the holding in *Kottle* is unavailing.  *See* ECF No. 270 at 10.  In *Kottle*, the Ninth Circuit drew a distinction

---

[6] The Ninth Circuit likewise has recognized that the sham exception can apply in the context of administrative proceedings: "The Supreme Court suggested as much in *California Motor Transp.* when it lumped together courts and certain administrative agencies, and referred to them collectively as 'adjudicatory tribunals' for purposes of the sham exception."  *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1061 n.5 (9th Cir. 1998).  Here, the Court correctly cited *Cal. Motor Transp.* when it rejected the exact same argument in Defendants' motion for summary judgment, holding that it would be inappropriate "to consider the entire Thompson matter (or the entire Tommie matter) to be one single putatively sham legal challenge."  ECF No. 167 at 28 (citing and quoting *Cal. Motor*, 404 U.S. at 513).

between administrative proceedings that were more "adjudicatory" versus "legislative" in nature, holding that the sham exception applies in the former but not the latter. *See* 146 F.3d at 1060-62. *Kottle* held that administrative proceedings at issue were ***not*** legislative, citing "many indicia of a true adjudicatory proceeding," such as: "conduct[ing] public hearings," "accept[ing] written and oral arguments," "permit[ting] representation by counsel," "issu[ing] written findings after its hearings," decisions that area appealable, and an "appeal [that] is governed by [procedures and standards]." 146 F.3d at 1062. Those same indicia are present here (*e.g.*, SSF 14-17, 20, 28-30, 34, 35, 36, 40, 41-43, 118-122), and Defendants do not even try to distinguish the proceedings here from those in *Kottle*.

Defendants argue that the administrative-exhaustion doctrine means that their administrative activity merges with everything thereafter. ECF No. 270 at 11-12. Defendants' contention cannot be squared with the Supreme Court including among the "activities" at issue "rehearings and … reviews or appeals from agency or court decisions," *Cal. Motor*, 404 U.S. at 509, since those are steps that follow some prior proceeding. The out-of-circuit orders relied on by Defendants do not point away from the Supreme Court's clear signal. *Wonderful Real Estate Development LLC v. Laborers International Union of North America Local 220*, 2020 WL 91998, at *10-11 (E.D. Cal. Jan. 8, 2020), had no occasion to consider this question because the court simply *assumed* that each CEQA case counted as one; there is no suggestion in the decision that the plaintiff pointed to administrative activity at all. In any event, the court's decision on the *USS-POSCO* standard turned not on numerosity but the absence of any allegations on the merits. *Id.* *In re Terazosin Hydrocholoride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1360 (S.D. Fla. 2004) is not a case about counting cases for purposes of the *USS-POSCO* test at all. And contrary to Defendants' arguments, *Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag*, 207 F. Supp. 2d 221, 224 (S.D.N.Y. 2002) does not say anything about administrative exhaustion or remotely suggest that it would be "unconstitutional" to

1  include administrative activity in the count.  *Cf.* ECF No. 270 at 12.

2          Furthermore, this administrative exhaustion theory does not actually explain

3  much of Defendants' conduct at the administrative level.  Three of their petitions had

4  nothing to do with CEQA administrative exhaustion: (i) the administrative challenge

5  to a demolition permit related to the Thompson; (ii) the administrative challenge to

6  an owner participation agreement for the Thompson; and (iii) the letter to prosecutors

7  that Defendants ghostwrote.  *See, e.g.*, *Villalobos*, 748 F.3d at 957 (threatened

8  extortionate petitioning activity was assisting in a criminal investigation).  At most

9  this argument cuts the count to seven, not three.

10         **B.     There Is a Triable Issue Under *USS-POSCO***

11         A jury could certainly find that Defendants had a policy—what Defendants

12 themselves called a "drill" of "find[ing] something else to challenge"—of bringing

13 claims without regard to the merits in order to impose a "crushing burden" of CEQA

14 process that could then be used as an extortionate weapon against Plaintiffs.

15         As to the "policy," the evidence shows that, beginning sometime in 2015 or

16 2016, Defendants challenged every one of Relevant's Hollywood hotel projects.

17 There were only four proposed during that period; Defendants challenged all of them.

18 The other five projects do not disprove the existence of a policy.  One (the remodeling

19 of the Citizen News building) avoided a challenge only because Defendants missed

20 the filing deadline and could not find a stalking horse to bring the challenge for them.

21 SSF 130.  Another (the Morrison) is outside of Hollywood in downtown LA, so

22 Defendants could not challenge it.  ECF No. 141, SUF 8, 120.  The remaining three—

23 a hotel and two restaurants—were all proposed before Nourmand knew about

24 Relevant, had retained counsel, or formulated his plan.  Regardless, Defendants have

25 cited no authority holding that a "policy" can exist only if the Defendants brought

26 literally every challenge they could have.  They can argue this inferences to the jury,

27 but these facts do not disprove a policy as a matter of law.

28

1   Further, Defendants fail to address the express threats to bring future challenges
2   embodied in "you know the drill" and the promise to just "find something else to
3   challenge." From this alone, the jury could find a policy. Defendants can attempt to
4   deny or explain the statements, but this Court must make all credibility determinations
5   and inferences in favor of Plaintiffs when weighing summary judgment.

6   As to the merits of their challenges, Defendants again misleadingly state the
7   legal standard. ECF Nos. 270 at 13-14; 273 at 11-13. The legal test under *USS-*
8   *POSCO* is clear and has been repeatedly briefed in this case. *See, e.g.*, ECF Nos. 26
9   at 5, 7-10; 146 at 15-16; 268 at 1. Plaintiffs do not, as Defendants again imply, need
10   to show that *every* argument in *every* suit was "objectively baseless." *USS-POSCO*
11   made clear that the "occasional success" of a sham lawsuit is "irrelevant" because
12   even a stopped clock is right twice a day. 31 F.3d at 811.[7] The test is *prospective* and
13   evaluates the claimant's intentions at the time they filed their lawsuit, *not* merely how
14   they did. *Id.* The "batting average" analysis is merely circumstantial evidence under
15   the test. *Hanover*, 806 F.3d at 180-81. As detailed at length in Plaintiffs' opening
16   papers (ECF No. 276 at 11-20), Defendants' batting average was terrible, both at the
17   city level and in court. Defendants abandoned most of their claims and lost nearly all
18   the rest. There will be expert testimony that these claims were objectively baseless.
19   The successes that Defendants claim were trivial. The Court already correctly
20   concluded that the significance of these alleged victories is a question for the jury
21   (ECF No. 167 at 27), and there has been no intervening change of law or fact.

22   As to wrongful intent, there is ample evidence that Defendants acted for an
23   improper purpose. Defendants are right that "one need not be John Muir" to bring a
24   CEQA case and are free to argue to the jury that they genuinely wanted "more
25   scrupulous environmental review." *See* ECF No. 270 at 14. But that implausible

26
27   [7] The out-of-circuit *Puerto Rico Tel. Co. v. San Juan Cable LLC*, 874 F.3d 767
     (1st Cir. 2017), does not change the analysis. That case verged on rejecting the *USS-*
28   *POSCO* test and has little value where *USS-POSCO* is binding precedent. Moreover,
     it involved a series of lawsuits *nearly all of which* had objective merit.

assertion is not appropriate for summary judgment in light of the contrary evidence suggesting that Defendants were not pursuing their claims in good faith, including evidence that Defendants had no prior expressed interest in environmental issues, that they intended to develop their own property and that they ignored other, larger developments with greater impact.  SSF 8, 27, 131-132.

The bottom-line question is not whether Defendants are John Muir or Montgomery Burns, but whether they brought their challenges to use "process—as opposed to the outcome of that process—as [a] weapon." *Omni Outdoor*, 499 U.S. at 380.  There is ample evidence that is what Defendants did here—they brought weak and unsupported copycat claims in which they had no genuine interest; they filed voluminous boilerplate objections, they repeatedly delayed resolution of those objections and sought to drag out the process, and they explicitly *said* that their weapon was delay.  *See* ECF No. 276 at 11-20.

It is no answer to say, as Defendants do, that they would have liked to win.  *Cf.* ECF No. 270 at 14; *cf. also id.* at 9.  That will almost always be true.  The "classic case" of sham litigation is one competitor bringing frivolous objections to another competitor's permit application.  *Omni Outdoor*, 499 U.S. at 382.  In that situation, the claimant doubtless would be pleased to win.  But that is not the question.  The question is whether the petitioner was motivated by the desire to inflict collateral harm, rather than by a genuine hope of success.  *See USS-POSCO*, 31 F.3d at 811; *Hanover*, 806 F.3d at 180-81.

Finally, Defendants' demand for money is absolutely relevant to the inquiry.  *Cf.* ECF No. 270 at 14-15.  The jury should consider all evidence of "bad faith," *Hanover*, 806 F.3d at 180-81, including evidence that the Defendants demanded something in settlement that they never could have obtained in the litigation, *Koziol*, 993 F.3d at 1172 n.12.  The cases that Defendants cite do not speak at all to the sham

litigation inquiry and are readily distinguishable—what Defendants demanded here was not merely an "unconventional" settlement proposal, it was simple extortion.[8]

### C. There is a Triable Issue under *PREI*

#### 1. Objective Baselessness

Even under the inapplicable *PREI* test, there is a triable issue of fact as to the baselessness of Defendants' claims. As detailed in Plaintiffs' opening papers (ECF No. 276 at 21-22), the test for baselessness is *not* whether there turns out to be some kernel of merit buried somewhere in their scattershot, boilerplate pleadings. *Cf.* ECF No. 270 at 7. Such a rule would make the sham litigation exception meaningless and give extorters and monopolists immunity provided they attached *any* colorable claim, no matter how trivial, to an otherwise meritless lawsuit. The test is whether, looking at the lawsuit as a whole, baseless claims "dominate." *Heritage Guitar, Inc. v. Gibson Brands, Inc.*, 2022 WL 1954361, at *8-9 (W.D. Mich. June 6, 2022).

Defendants cite no authority supporting their theory that a drop of wine can save a barrel of sewage. The Third Circuit's decision in *In re Wellbutrin XL Antitrust Litigation Indirect Purchaser Class*, 868 F.3d 132, 156 (3d Cir. 2017) holds that the question is whether the lawsuit has merit "as a whole." *See also Heritage Guitar*, 2022 WL 1954361, at *8-9 (interpreting *Wellbutrin*). Defendants' other cited cases deal with the opposite situation, where one baseless claim has been appended to many meritorious ones. *Meridian Project Sys., Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1221-22 (E.D. Cal. 2005) (plaintiff alleged that only one out of eight claims were objectively baseless); *Limon v. Carpenters Loc. Union 721*, 2021 WL 4925444,

---

[8] *Nader v. Democratic Nat'l Comm.*, 555 F. Supp. 2d 137, 160 (D.D.C. 2008), does not address the settlement question at all. *Camm v. Kennickell*, 1990 WL 198621, at *3 (D.D.C. Nov. 20, 1990), similarly does not address application of the *USS-POSCO* standard. Nor does *Camm* hold that any settlement demand, no matter how outlandish, is permissible in litigation. As we explain above, (*supra* at 14) the applicable test is whether there is a sufficient nexus between the property demanded and the claims asserted. *Camm* involved a dispute over government contracting, and the "unconventional" settlement proposal was to award government contracts to the plaintiff. 1990 WL 198621, at **1, 3. That is a far cry from demanding a multi-million dollar "check" to resolve purported environmental litigation.

at *5 (C.D. Cal. Jan. 11, 2021) ("[I]t is not enough for Limon to show that a single claim is objectively baseless."). If anything, these cases make Plaintiffs' point: the presence of an outlier claim (whether baseless or meritorious) does not change the overall character of the litigation.

Defendants also repeatedly misstate Plaintiffs' burden on summary judgment. *See* ECF No. 270 at 11-13; ECF No. 273 at 20-21. The burden is *not* to prove a negative or to *conclusively* demonstrate that their claims were meritless; rather, the burden at summary judgment is to come forward with evidence sufficient to raise a triable issue on that question, which Plaintiffs have done. *See Giles v. GMAC*, 494 F.3d 865, 872 (9th Cir. 2007) ("the issue of material fact … is not required to be resolved conclusively in favor of the party asserting its existence").

Looking at the record under the correct legal standards, there is a triable issue under *PREI*. That is true even though Plaintiffs ultimately gave in to the extortion and settled. Plaintiffs have addressed at length in their opening papers why the settlements here are not evidence of merit, and certainly not *conclusive* evidence of merit that would justify taking the issue away from a jury. ECF No. 276 at 18-20. Indeed, *Koziol* itself proves the point. There, the Court upheld a conviction for "attempted extortion" where Koziol had "attempted to intimidate the entertainer into a settlement." *Koziol*, 993 F.3d at 1172. On Defendants' theory, if that attempt had *succeeded*, Koziol would have walked. That cannot be right.

Defendants' other arguments add nothing new to what they unsuccessfully argued to the Court in their prior failed summary judgment motions. Defendants merely proclaim "[t]he record contains no evidence of objective baselessness." ECF Nos. 270 at 7; 273 at 18 (arguing "none of the lawsuits in question can constitute a RICO predicate act" because they were not objectively baseless). Nonsense.

Among other things, the record includes dozens of filings (administrative challenges, superior court complaints, motions, and appeals) in which Sunset made repetitive, boilerplate arguments lacking any factual support. *E.g.*, SUF 39, 74, 129.

Then, when it came time to muster evidence to support their claims, Sunset either presented inapposite materials or, more often than not, simply abandoned its arguments altogether.  SUF 39, 44-47, 135, 137.  Sunset's litigation conduct was facially vexatious (SUF 41-43, 67-69, 133) and its lawyers ultimately admitted they were pursuing the litigation to cause delay and expense (SUF 64, 77).  In the end, Defendants did not win any of their CEQA suits or administrative challenges. They withdrew the overwhelming majority of their claims and lost the overwhelming majority of the rest.  *E.g.*, SUF 129, 135 (Sunset failed to raise fair argument as to greenhouse gasses, noise, transportation, parking, public services, or external piecemealing).[9]  After losing *Selma-Wilcox* in the Superior Court (an order where Defendants now claim victory), they appealed and lost again.  SUF 137. The victories that they claim are trivial and pyrrhic—limited remands for clarification that are not "wins."  The MNDs were never set aside.  No project approval was ever invalidated.

Based on this record, Plaintiffs' CEQA expert had no difficulty reaching the conclusion that Defendants' legal challenges were objectively baseless and contained the hallmarks of CEQA abuse.  ECF No. 137-3 (Thomas Report).  In reaching her opinions, Ms. Thomas *did* "delve into the law of CEQA" and into "the specifics of each case" to opine that the claims were objectively baseless.  ECF No. 270 at 7.  She is prepared to present that analysis to the jury who can then "decide not only *how much* of a win each disposition was for the Sunset Defendants but also *how compelling* a given disposition is."  ECF No. 167 at 27.[10]

### 2.      There Is a Triable Issue on Bad Faith

Finally, raising an issue not called for in the Court's request for supplemental

---

[9] Defendants overstate the order in the *Farmer* litigation, which found only "narrow" deficiencies in the Tommie MND that easily could be corrected by a clarification and which allowed construction to proceed during the remand.  *See* ECF No. 141, SUF 41-42; *cf.* ECF No. 270 at 2-4 n.1, 13.

[10] N&A's contention that there is a market rival requirement, ECF No. 273 at 24-25, is addressed in Plaintiffs' opening papers (ECF No. 268 at 12 n.1).

briefing, Defendants incorrectly argue there is insufficient evidence of bad faith to allow this case to go to a jury.  ECF No. 270 at 9; *see also id.* at 14.  It is no defense that Defendants might have liked to prevail on their (meritless) legal challenges.  A sham petitioner would always be pleased to somehow win the case.  The very case on which Defendants rely—*Omni Outdoor*—proves the point.  There, the Supreme Court explained that the "classic case" of sham litigation is one competitor bringing frivolous objections to a second competitor's permit application.  499 U.S. at 382.  Obviously, the first competitor would be happy to win on those claims.  It makes no sense to say that this subjective mental state precludes application of the sham litigation exception.  But what is true in both *Omni Outdoor* and this case is that the leverage exerted by the wrongdoer does not depend on winning and is not destroyed by losing.  The harmful delay is caused the very fact of "process—as opposed to the outcome of that process."  *Id.* at 380; *accord PREI*, 508 U.S. 49, 61 (1993).  As detailed at length in Plaintiffs' opening papers (and in Plaintiffs' opposition to Defendants' previous rounds of summary judgment briefing), there is ample evidence that Defendants used governmental process—and specifically the threat of delay—as a weapon to harm Relevant, and there is no basis on which to take that question away from the finder of fact.  ECF No. 276 at 11-20.

## III.   CONCLUSION

This is not a case about genuine efforts to obtain governmental relief, but about the abuse of the environmental laws as a tool of personal enrichment.   That is extortion, not First Amendment-protected advocacy.

Dated:  March 23, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Susan K. Leader*
     Susan K. Leader

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel LLC, 6516 Tommie Hotel LLC and 6421 Selma Wilcox Hotel LLC