1 | **WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
2 | SUSAN K. LEADER, State Bar No. 216743
sleader@wsgr.com
3 | MARK R. YOHALEM, State Bar No. 243596
myohalem@wsgr.com
4 | MATTHEW A. MACDONALD, State Bar No. 255269
Matthew.Macdonald@wsgr.com
5 | 633 West Fifth Avenue, Suite 1550
Los Angeles, CA 90071-2027
6 | Telephone: (323) 210-2900
Facsimile: (866) 974-7329
7 |
8 | **WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
DALE R. BISH, State Bar No. 235390
9 | dbish@wsgr.com
650 Page Mill Road
10 | Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
11 | Facsimile: (650) 565-5100

12 | Attorneys for Plaintiffs Relevant Group, LLC,
1541 Wilcox Hotel LLC, 6516 Tommie Hotel
13 | LLC, and 6421 Selma Wilcox Hotel LLC

14 | <center>**UNITED STATES DISTRICT COURT**</center>

15 | <center>**CENTRAL DISTRICT OF CALIFORNIA**</center>

16 |

17 | RELEVANT GROUP, LLC, a Delaware limited liability company; 1541 WILCOX HOTEL LLC, a Delaware limited liability company; 6516 TOMMIE HOTEL LLC; a Delaware limited liability company; and 6421 SELMA WILCOX HOTEL LLC, a California limited liability company,

Plaintiffs,

v.

STEPHAN "SAEED" NOURMAND, an individual; THE SUNSET LANDMARK INVESTMENT LLC, a California limited liability company; NOURMAND & ASSOCIATES, a California corporation; and DOES 1-10,

Defendants.

Case No.: 2:19-cv-05019-PSG-KSx

**PLAINTIFFS' SEPARATE STATEMENT OF GENUINE ISSUES OF DISPUTED FACTS IN OPPOSITION TO DEFENDANTS NOURMAND & ASSOCIATES' SUPPLMENTAL BRIEFING**

Date: April 27, 2023
Time: 1:30 p.m.
Dept: Courtroom 6A
Before: Hon. Philip S. Gutierrez

Pursuant to Local Rule 56-1 and the Court's Order for Supplemental Briefing (ECF No. 260), Plaintiffs Relevant Group, LLC ("Relevant Group"), 1541 Wilcox Hotel LLC ("Wilcox"), 6516 Tommie Hotel LLC ("Tommie") and 6421 Selma Wilcox Hotel LLC ("Selma") (collectively, "Relevant") submit this Separate Statement of Genuine Issues of Disputed Fact in Opposition to Defendant Nourmand & Associates' ("N&A") Supplemental Briefing.

**PLAINTIFFS' STATEMENT OF GENUINE ISSUES OF DISPUTED FACT**

| Defendants' Undisputed Facts | Plaintiffs' Response and Evidence |
|---|---|
| 1. In the past ten years, Relevant-affiliated companies have developed several properties within one block of the Hollywood Athletic Club, including the hotel development projects at issue in this litigation: the Thompson Hotel, Tommie Hotel, and Selma Hotel. | Undisputed that the Thompson, Tommie and Selma project sites were located within one adjacent block of the Hollywood Athletic Club. Disputed that the Thompson Hotel, Tommie Hotel and Selma Hotel are the only projects at issue in this litigation.<br><br>Defendants' Evidence: TAC, ₱23; Declaration of Elizabeth Schaus ("Schaus Decl."), Exhibit A, King Transcript, 81:18-24. |
| 2. N&A is a residential real estate brokerage. | Undisputed. |
| 3. N&A does not engage in either residential or commercial real estate development. | Undisputed. |
| 4. N&A was not a party to the Thompson, Tommie or Selma CEQA lawsuits filed by Sunset. | Undisputed. |
| 5. N&A was not a party to the settlements of the Thompson or Tommie CEQA lawsuits filed by Sunset. | Undisputed. |
| 6. N&A did not receive any financial or other benefits from the Thompson, | Disputed. The settlement payments were collected by N&A's CFO and |

| | |
|---|---|
| Tommie or Selma CEQA lawsuits filed by Sunset, or the settlements. | initially received by Sunset, which Plaintiffs contend is intermingled with N&A in its operations, management, and ownership.  The settlement agreement contains costly design changes and concessions to benefit Plaintiffs' property where N&A offices are located.<br><br>Plaintiffs' Evidence: *See* ECF No. 148, SUF 10.<br><br>Defendants' Evidence: Michael Decl., ¶¶16-17. |
| 7.   Prior to forming Sunset, Saeed Nourmand founded N&A, but over twelve years ago he relinquished all operational control of N&A to his son, Michael Nourmand, as well as his ownership interest in the company. | Undisputed that Nourmand sold his interest in N&A, which is now owned by his wife (Myra Nourmand), who is the majority shareholder and sole director, and his son (Michael Nourmand).  Disputed that Nourmand relinquished all operational control. Saeed Nourmand continues to direct and use N&A employees, office equipment, and other resources; and, according to N&A's website, he remains part of the management.<br><br>Plaintiffs' Evidence: *See* ECF No. 148, SUF 43.<br><br>Defendants' Evidence: Michael Decl., ¶¶1, 4-5. |
| 8.   Sunset filed a Verified Petition for Writ of Mandate against the City of Los Angeles challenging the City's approval of the Thompson Hotel Project, including the approval of an MND for the project. | Undisputed. |
| 9.   Sunset filed a Petition for Writ of Mandate against the City, challenging the City's approval of the [Tommie] Hotel | Undisputed. |

| | |
|---|---|
| Project, including approval of an MND for the project ("Tommie Lawsuit"). | |
| 10. Lauren "Elle" Farmer filed a petition against the Tommie Hotel which also challenged, among other things, the City's approval of an MND for the project. | Undisputed. |
| 11. Mama Wilcox, LLC, the owner of another newly built neighboring hotel, also filed a petition challenging the approval of the Tommie Hotel, including the City's approval of an MND for the project. | Undisputed. |
| 12. Plaintiffs settled the Thompson Lawsuit and the Tommie Lawsuit with Sunset, and executed settlement agreements pursuant to which they entered into covenants to reduce the hotels' environment impact and paid $5.5M to Sunset. | Undisputed that Plaintiffs entered into settlement agreements to end the Thompson and the Tommie lawsuits, through which Plaintiffs paid Sunset $5.5 million and agreed to make other costly design changes that benefited Defendants. Disputed that the settlement agreements were intended to reduce environmental impacts.<br><br>Plaintiffs' Evidence: Thomas Decl., ECF No. 137-3 at 33-35.<br><br>Defendants' Evidence: Schaus Decl., Exhibits B-C (Thompson Settlement Agreement, Tommie Settlement Agreement). |
| 13. During the settlement negotiations, Richard Heyman, a principal for Relevant, advised Saeed that Relevant was "willing to develop a solution in part because we recognize that you, like us, are a businessman with good intentions, and so we should be able to come to a common ground." | Undisputed that the quoted language appears in correspondence from Mr. Heyman. Disputed that Mr. Heyman believed that Mr. Nourmand had good intentions. Mr. Heyman believed that Relevant was being extorted by Defendants. |

| | |
|---|---|
| | Plaintiffs' Evidence: *See* Heyman Decl., ECF No. 268-2 ¶¶ 7-9; Ex. 101 [JX117] at JX117.0002 ("Btw this is by no means a closing meeting[.]  It's a bend over extortion meeting!").<br><br>Defendants' Evidence: Schaus Decl., Exhibit D. |
| 14.  The settlements were reached one day before trial in the Thompson Lawsuit, after a tentative ruling was issued by the Court denying an ex parte motion by the City to augment the administrative record. | Disputed.  The parties reached an agreement in principle at a face-to-face meeting on August 23, 2017, one day before the tentative ruling was issued.<br><br>Plaintiffs' Evidence: *See* ECF No. 268-1, SSF 80-83.<br><br>Defendants' Evidence: Schaus Decl., Exhibit E, Guy Maisnik email to Jayesh Patel re: settlement agreement in principal; RJN, Exhibit 5. |
| 15.  The motion was filed after Sunset's attorneys discovered that the City analyzed an out-of-date version of the hotel plans, which had the building facing the opposite direction and failed to include the two planned rooftop bars. | Disputed.  On multiple occasions prior to when Sunset's attorneys purportedly "discovered" the change described in Sunset's motion, Defendants had been informed—on several occasions—that the rooftop orientation had been changed in the hotel plans because the change was made to satisfy Mr. Nourmand's demands.  Defendants used the rooftop orientation change as an excuse to request a continuance of the trial date, as part of their campaign to delay the Thompson project.<br><br>Plaintiffs' Evidence: *See* ECF No. 268-1, SSF 67-69.<br><br>Defendants' Evidence: RJN, Ex. 5, August 24, 2017 Tentative Ruling. |

| | |
|---|---|
| 16. In the tentative ruling, the Court stated that the motion was "intertwined with fair notice," that "the City did not follow standard procedures to inform the public of the design changes," and these facts implicated "the issue…[of] whether the City's failure to tell the public of the design changes in the Project as submitted to the CPC has prejudiced petitioners' rights under CEQA." | Undisputed. |
| 17. Sunset filed a Verified Petition for Writ of Mandamus against the City, challenging the City's approval of the Selma Wilcox Hotel Project, including approval of an MND for the project ("Selma Lawsuit"). | Undisputed. |
| 18. Casey Maddren also filed a Verified Petition for Writ of Mandamus against the City, in pro per, also challenging the City's approval of a MND for the Selma Wilcox Project. | Undisputed. |
| 19. Maddren does not know, and has never spoken to, Saeed Nourmand. | Undisputed that Mr. Maddren does not know Mr. Nourmand, personally. Disputed to the extent that Defendants contend Mr. Maddren was unaware of who Mr. Nourmand was. Maddren was aware that Nourmand's company, Sunset, had filed CEQA lawsuits against the City in connection with the Thompson and Tommie projects, that Mr. Nourmand had dropped those lawsuits after receiving a large monetary payment, and he believed that Mr. Nourmand would do the same with respect to the Selma litigation. |

| | |
|---|---|
| | Plaintiffs' Evidence: Ex. 100 [Madden Tr. at 19:10-21:25]. |
| | Defendants' Evidence: Schaus Decl., Ex. F, Madden Tr., 100:17-25. |
| 20. Madden filed his lawsuit of his own volition, believing it to be meritorious, and did not formulate any legal arguments with the assistance of Sunset's lawyers. | Disputed. Mr. Madden filed his lawsuit because he was concerned that Mr. Nourmand would drop his lawsuit in exchange for a large monetary payment. Mr. Madden's legal arguments lacked any merit. Sunset's attorneys assisted and collaborated with Mr. Madden throughout the litigation.<br><br>Plaintiffs' Evidence: Ex. 100 [Madden Tr. at 19:10-21:25].<br><br>Defendants' Evidence: Schaus Decl., Exhibit F, Madden Tr. 101:18-102:4; 110:12-111:7-19; 97:16-21; 102:24-103:20; 104:9-106:7. |
| 21. The Trial Court ultimately disposed of the Selma Lawsuit by issuing an interlocutory writ and order of remand ("Order"), finding that "Sunset has presented substantial evidence supporting a fair argument that the Project may have significant effects on air quality. As such, the City's decision to adopt an MND was an abuse of discretion." | Disputed. The court rejected the vast majority of objections, found several arguments to be "baseless" or lacking any evidentiary support. The Court remanded to the City to "clarify" and "confirm" the record on two issues and allowed construction to continue with certain conditions, which was inconsistent with the relief sought by Sunset.<br><br>Plaintiffs' Evidence: See ECF No. 268-1, SSF 135.<br><br>Defendants' Evidence: RJN Ex. 8, Order re: Petitions for Writ of Mandate at pg. 65 and Interlocutory Writ and Order of Remand, pgs. 1-2. |
| 22. The Order remanded the Selma Hotel Project to the City for further | Disputed. The court did not require the City to prepare an EIR. The court held |

| | |
|---|---|
| proceedings. The Order required a public hearing, allowed the City to consider and accept additional evidence and to prepare an environmental impact report or submit a return setting forth clarifications to its analysis and findings. | that the "City could remedy" two technical deficiencies in the MND and remanded back to "the City to make specific findings to clarify" those two technical deficiencies.<br><br>Plaintiffs' Evidence: *See* ECF No. 268-1, SSF 135.<br><br>Defendants' Evidence: RJN Ex. 8, Order re: Petitions for Writ of Mandate at pgs. 56, 65, 74, and Interlocutory Writ and Order of Remand, pgs. 1-2. |
| 23.  In the *Farmer* Case, the Court held that "the MND is defective and cannot be upheld," and granted the writ as to the first cause of action. | Disputed.  The court remanded to the City to clarify its analysis and findings regarding the projects' potential construction and operational noise impacts, and the court issued a modified, partial injunction to allow certain construction activities during remand.<br><br>Plaintiffs' Evidence: Thomas Decl., ECF No. 137-3 at 28; Ex. 102 [JX242].<br><br>Defendants' Evidence: RJN Ex. 9. |
| 24.  In addition to Farmer, Mama Wilcox and Maddren, numerous others initiated CEQA challenges concerning the Tommie, Thompson, and Selma projects, including: Unite Here Local 11; Alexis Olbrei; Southwest Carpenters; Fran Offenhauser; Hollywood Heritage; and David Carrera. | Undisputed that others opposed the projects during the administrative processes.  Disputed that anyone other than Sunset, Farmer, Mama Wilcox and Maddren filed a CEQA lawsuit against any of the projects, or that anyone other than Sunset filed CEQA lawsuits against all of the projects.<br><br>Defendants' Evidence: Schaus Decl., Exhibit G, Plaintiffs' Supplemental Responses to Sunset Landmark's First Set of Interrogatories, No. 1. |

| | |
|---|---|
| 25. In 2019, the City approved a hotel development called the Schrader Hotel, owned by another development company ("Schrader Owners"), and not by Plaintiffs. | Undisputed that Relevant did not have an interest in the Schrader project at the time it was approved by the City. Disputed that Relevant did not have an ownership interest in the Schrader project during the entitlement process. Relevant had executed a Purchase Agreement and paid a $1 million nonrefundable down payment to purchase the Schrader property in December 2017. Relevant thus had an ownership interest at the time that Sunset submitted opposition letters and filed an administrative appeal against the project. Defendants only ended their opposition to the Schrader project after they learned that Relevant had lost its interest in the Schrader project as of September 28, 2018.<br><br>Plaintiffs' Evidence: *See* ECF No. 268-1, SSF 97-101, 107-111, 117.<br><br>Defendants' Evidence: TAC, ¶16. Schaus Decl., Ex. H, Rothman Tr., 89:1-91:15 |
| 26. Sunset filed an administrative appeal challenging the approval of the Shrader Hotel Project. | Undisputed. |
| 27. Sunset met with the Schrader Owners to discuss Sunset's concerns regarding the development. After the Schrader Owners indicated that they did not intend to try to modify restrictions imposed by the City, Sunset withdrew its appeal and did not file a CEQA lawsuit." | Undisputed that Defendants met with the Schrader owners to discuss the Schrader project on October 4, 2018. Otherwise disputed. Defendants only ended their opposition to the Schrader project after they learned that Relevant had lost its interest in the Schrader project as of September 28, 2018, and that, unlike Relevant, the |

| | |
|---|---|
| | Schrader owners (KOAR) were not vulnerable to project delays.<br><br>Plaintiffs' Evidence: *See* ECF No. 268-1, SSF 112-117.<br><br>Defendants' Evidence: Schaus Decl., Ex. H, Rothman Tr. 63:15-24, 75:25-76:11. |

Dated:  March 23, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Susan K. Leader*
        Susan K. Leader

Attorneys for Plaintiffs
Relevant Group, LLC, 1541 Wilcox Hotel
LLC, 6516 Tommie Hotel LLC and 6421
Selma Wilcox Hotel LLC