# EXHIBIT 100

```
1           IN THE UNITED STATES DISTRICT COURT
2          FOR THE CENTRAL DISTRICT OF CALIFORNIA
3
4   RELEVANT GROUP, LLC, a Delaware)
5   limited liability company;    )
6   et al.,                       )
7             Plaintiffs,         )
8        VS.                      ) Case No.
9   STEPHAN "SAEED" NOURMAND, an  ) 2:19-CV-05019 ODW-Ksx
10  individual, et al.,           )
11            Defendants.         )
12  _____)
13
14
15       VIDEOCONFERENCE DEPOSITION OF:
16              CASEY MADDREN
17          FRIDAY, APRIL 15, 2022
18                10:11 A.M.
19
20
21  Reported by:
22  Sari M. Knudsen, CSR No. 13109
23  JOB No. 5171442
24
25
                                              Page 1
```

```
 1            Videoconference deposition of CASEY
 2            MADDREN, taken on behalf of the DEFENDANTS,
 3            at 555 South Flower Street, 41st Floor,
 4            Los Angeles, California, on FRIDAY,
 5            APRIL 15, 2022, before Sari M. Knudsen, CSR
 6            No. 13109.
 7
 8   APPEARANCES OF COUNSEL:
 9
10   FOR THE PLAINTIFFS:
11            WILSON SONSINI GOODRICH & ROSATI
12            BY:  CHARLES TALPAS, ESQ.
13            AND CLAY KAUFMAN, ESQ
14            650 Page Mill Road
15            Palo Alto, California  94304
16            650-493-9300
17            (VIA VIDEOCONFERENCE)
18
19   FOR THE DEFENDANTS:
20            NORTON ROSE FULBRIGHT US LLP
21            BY:  NEIL THAKOR, ESQ.
22            555 South Flower Street, 41st Floor
23            Los Angeles, California  90071
24            213-892-9200
25            (VIA VIDEOCONFERENCE)
```

```
 1   APPEARANCES OF COUNSEL:  (CONTINUED)
 2
 3   FOR THE DEFENDANT NOURMAND & ASSOCIATES:
 4           THE MALONEY FIRM, APC
 5           BY:  ELIZABETH SCHAUS, ESQ.
 6           2381 Rosecrans Avenue, Suite 405
 7           El Segundo, California  90245
 8           310-540-1505
 9           (VIA VIDEOCONFERENCE)
10
11   FOR THE DEPONENT:
12           VENSKUS & ASSOCIATES
13           BY:  SABRINA VENSKUS, ESQ.
14           1055 Wilshire Boulevard, Suite 1996
15           Los Angeles, California  90017
16           213-482-4200
17           (VIA VIDEOCONFERENCE)
18
19   ALSO PRESENT:
20           CASSIA LEET, VIDEOGRAPHER
21
22
23
24
25
```

Page 3

| | | |
|---|---|---|
| 1 | time between the two. | 10:28:26 |
| 2 | Q    And your -- your two CEQA lawsuits were | 10:28:30 |
| 3 | related at the Superior Court? | 10:28:34 |
| 4 | MS. SCHAUS:  May lack foundation.  Call for | 10:28:37 |
| 5 | speculation or call for a legal opinion. | 10:28:41 |
| 6 | THE WITNESS:  If you are asking did the judge | 10:28:44 |
| 7 | cause the cases to be related in the court, yes. | 10:28:48 |
| 8 | BY MR. TALPAS: | 10:28:48 |
| 9 | Q    Correct. | 10:28:49 |
| 10 | At the time of the Dream 2 entitlement | 10:28:58 |
| 11 | proceedings, were you aware that the Silverstein Law | 10:29:03 |
| 12 | Firm had filed CEQA lawsuits on behalf of the same | 10:29:08 |
| 13 | client challenging two other hotel projects by | 10:29:10 |
| 14 | Relevant Group? | 10:29:12 |
| 15 | A    I became aware of that at some point.  I'm | 10:29:15 |
| 16 | not sure if it was -- if I knew that then or -- yes. | 10:29:19 |
| 17 | I -- yes.  I'm sure I did know at that time that | 10:29:25 |
| 18 | they had filed previous lawsuits against Relevant, | 10:29:28 |
| 19 | yes. | 10:29:28 |
| 20 | Q    And why are you sure you did know it then? | 10:29:30 |
| 21 | A    Because I remember one of my reasons for | 10:29:33 |
| 22 | filing the suit was initially I thought well, | 10:29:39 |
| 23 | somebody is suing Relevant.  That's good.  They will | 10:29:41 |
| 24 | stop the project.  And then, as I recall, in talking | 10:29:45 |
| 25 | to people, I was told that they had settled on the | 10:29:47 |

```
 1   other projects, and so my feeling was I've got to            10:29:54
 2   file a lawsuit because if they settle again -- I             10:29:56
 3   just didn't want to the project to go forward.  If           10:29:59
 4   they settled that, that would happen.  So I decided          10:30:02
 5   I would file a pro per lawsuit.                              10:30:08
 6        Q    And what do you recall about how you found         10:30:16
 7   out that they had settled the prior two lawsuits?            10:30:20
 8        A    It's hard to say exactly.  I'm in                  10:30:27
 9   conversation with many people in the Hollywood area          10:30:29
10   about a number of projects.  And I'm -- my guess and         10:30:34
11   it's -- you know, I don't have a specific                    10:30:35
12   recollection -- is that I was told by people in the          10:30:38
13   community that the -- the Silverstein's client had           10:30:45
14   settled on the previous two projects.                        10:30:48
15        Q    And what do you recall hearing about that?         10:30:57
16   Anything else?                                               10:31:00
17        A    I don't understand the question.                   10:31:02
18        Q    Yes.  Sorry.                                       10:31:03
19             Do you have a specific conversation in mind        10:31:10
20   about, you know, when somebody told you that this            10:31:12
21   happened?                                                    10:31:14
22        A    No.  I -- I'm sorry.  I talked to many             10:31:18
23   people about many different projects, and aside from         10:31:21
24   the fact that I assume I gained the knowledge from           10:31:24
25   someone I spoke to within the community, I have no           10:31:26
```

| | | |
|---|---|---|
| 1 | recollection. | 10:31:29 |
| 2 |     Q    Fair enough. | 10:31:30 |
| 3 |         Aside from hearing that they had settled | 10:31:33 |
| 4 | those two prior lawsuits, did you hear any other | 10:31:38 |
| 5 | details about the settlement? | 10:31:44 |
| 6 |     A    I -- offhand, I don't recall anything.  I | 10:31:49 |
| 7 | mean, it's been a couple of years.  It could have | 10:31:52 |
| 8 | been -- I might have learned other things but I | 10:31:53 |
| 9 | don't recall hearing anything other than the fact | 10:31:56 |
| 10 | that they had settled. | 10:31:56 |
| 11 |     Q    Okay.  Did you have any knowledge about the | 10:32:02 |
| 12 | terms of the settlement? | 10:32:03 |
| 13 |     A    I don't believe so.  Someone may have told | 10:32:08 |
| 14 | me the terms.  I don't recall any specifics. | 10:32:16 |
| 15 |     Q    And did you ever hear that there was a | 10:32:19 |
| 16 | monetary component to the settlement? | 10:32:20 |
| 17 |     A    I know at some point I learned that there | 10:32:23 |
| 18 | was.  I'm not sure when I learned that.  It could | 10:32:25 |
| 19 | have been then.  It could have been later on.  I | 10:32:28 |
| 20 | don't know. | 10:32:28 |
| 21 |     Q    And again, any other details about the | 10:32:33 |
| 22 | monetary component?  You know, how much or anything | 10:32:36 |
| 23 | like that? | 10:32:41 |
| 24 |     A    I know it was in the millions.  Offhand, I | 10:32:44 |
| 25 | can't say.  I don't have any specific recollection. | 10:32:48 |

```
 1            I, SARI M. KNUDSEN, CSR NO. 13109, in and
 2   for the State of California, do hereby certify:
 3            I am the deposition officer that
 4   stenographically recorded the testimony in the
 5   foregoing deposition;
 6            Prior to being examined, the deponent was
 7   first duly sworn by me;
 8            The foregoing transcript is a true record of
 9   the testimony given;
10            Before completion of the deposition, review
11   of the transcript was requested.  If requested, any
12   changes made by the deponent (and provided to the
13   reporter) during the period allowed are appended
14   hereto.
15
16            Dated the 4th day of May, 2022.
17
18
19
20            [signature]
21
22       SARI M. KNUDSEN, CSR NO. 13109
23
24
25
```

Page 114